**BERKAN/MENDEZ**
LAW OFFICE
Calle O'Neill G-11
San Juan, P.R. 00918-2301

Judith Berkan
Mary Jo Mendez Vilella

Tel   (787) 764-0814
Fax   (787) 250-0986

February 7, 2023

All ONLY BY EMAIL

To: Hermann Bauer, Esq.,   Hermann.Bauer@oneillborges.com
    Counsel for the Oversight Board

    Ubaldo M. Fernández Barrera,   Ubaldo.fernandez@oneillborges.com
    Counsel for the Oversight Board

    Diana M. Pérez,   dperez@omm.com
    Counsel for AAFAF

    Luis C. Marini-Biaggi, lmarini@mpmlawpr.com
    Counsel for AAFAF

    Carolina Velaz-Rivero, cvelaz@mpmlawpr.com
    Counsel for AAFAF

    Arturo Díaz-Anguiera,adiaz@diazvaz.law
    Counsel for PREPA

    Katiuska Bolanos-Lugo, kbolanos@diazvaz.law
    Counsel for PREPA

       *Re: Petitioners' Intent to lift Stay for* **remaining count for attorneys fees**,
       *Mandamus action, Ares v. Secretary of Labor, Civ.No. SJ2017CV02280*
       ***Notice pursuant to Amended Case Management Procedures***

From: Judith Berkan
    Counsel for the Petitioners in *Ares v. Secretary*

---

Dear colleagues:

      I write this letter in compliance with the *conferral* process mandated by Judge Taylor Swain in Case No. 17-03283, to request your agreement to stipulate to the lifting the stay with respect to ***the one remaining count in the mandamus action*** *in Ares et al v. Secretario del Trabajo, SJ-2017-02280,* ***the Request for Attorneys Fees***, *Second Count of the Mandamus. (Copy of the Mandamus Complaint included herewith.)*

**Notification pursuant to Amended Case  Management Procedures page 2**

Please note that every other issue in the case has been resolved.  The undersigned, however, has not received any compensation at all for her work in this case, due to the provisions of Law 402-1950, 32 LPRA sec. 2114 et seq., which *prohibits* an attorney representing employees from changing *any* amounts to their client, under threat of a potential law suit against them and ethical issues  See, *Berkan/Méndez v. Mead Johnson, 204 DPR 183 (2020)* (affirming the interpretation of Law 402 put forth by the undersigned); See, also, *In re Martí, 2016 TSPR* 1; and *In re Rivera Franco, 169 DPR 237 (2006)* (concerning the ethical violations.)

As stated in my earlier correspondence to several of you, regarding the lifting of the stay, dated August 23, 2019 and June 11, 2019, (sent pursuant to an earlier Amended Case Management Procedure Order) the original mandamus action in the local court, presented on **October 31, 2017** (i.e. *after* the Title III action) addressed the failure of the Department of Labor and Human Resources and its then secretary, to perform the ministerial duty which would have mandated the pre-retirement of my clients, pursuant to Law 211-2015 "pre-retirement" program (later amended by Law 106-2017, by Law 262-2018) and more recently by Law 72-2019.

After the Superior Court initially issued a ruling in favor of the petitioners on a preliminary issue back in late 2017, the Government requested discretionary review in the Puerto Rico Court of Appeals (TA).  When the Government failed to prevail on the interlocutory appeal and on its request for reconsideration thereof, it notified the PROMESA Stay, and the case was paralyzed for over a year.

Thereafter, further efforts were made to be able to litigate the case.  These efforts resulted in a Stipulation and an agreement to modify the Stay, to permit litigation of the action.  This was finally done in August of 2019, when a stipulation was signed by the parties, allowing for "modification of the Title III Stay, to the limited extent necessary to proceed to final judgment," short of execution. By Motion dated September 17, 2019, the attorneys for the Government in the PROMESA Action informed the Title III court that they were joining the lift-stay relief contemplated in the aforementioned agreed upon modification of the stay. *See, Docket No. 8825 in 17 BK 3283-LTS; see, also, Stipulation* **regarding the Lifting of Stay, both documents appended hereto.**

Following the lifting Judge Taylor Swain's lifting of the stay, the parties in *Ares v. Secretary,* continued the litigation.  After several hearings and a trial, on July 15, 2020, Judge Judge Laurecelis Roqués) of the Extraordinary Remedies Section of the Court of First Instance in San Juan ("TPI") issued a Judgment finding in favor of the petitioners. *See, Attached Judgment of July 15, 2020 in Case No. SJ2017CV02280.* Judge Roqués, however, explicitly reserved decision any determination on the *Second Cause of Action* (for statutory attorneys fees), because in her understanding, "the Stipulation for the modification of the

**Notification pursuant to Amended Case Management Procedures page 3**

Stay excluded from her consideration all "*monetary claims.*"[1]

The Commonwealth appealed the Judgment to the Puerto Rico Court of Appeals, in Case No. 2020-0715. On November 18, 2020, the Court of Appeals (TA) affirmed the Judgment, modifying it, however, to return the matter to the Office of Management and Budget (OPG) "to reevaluate the viability of funds taking into account the current economic situation of the agency." *November 18th TA Judgment, at page 26 (translation provided)*.

This was followed by close to two years of administrative bureaucracy, coupled with several hearings in the Superior Court. Eventually all of the petitioners were "pre-retired" appropriately (upon the required positive feedback from OPG regarding budgetary impact). According to representations the trial attorney for the Commonwealth, Department of Justice (DOJ) attorney, Susanne Lugo, made to the Superior Court, the FOMB was consulted throughout the process.

On December 9, 2022, the DOJ presented a motion to the TPI, affirming that the underlying issues in the case, concerning the pre-retirement of the petitioners, were finally resolved. We quote from the motion, Entry Number 120 in SUMAC, in the original Spanish:

> Este Honorable Tribunal ha ordenado a las partes a mantenerlo informado de cualquier desarrollo relacionado al cumplimiento con las órdenes dictadas en el presente caso.
>
> 2) Conforme a ello, el compareciente informa que la Oficina de Gerencia y Presupuesto (OGP) aprobó el planteamiento sometido en agosto de 2022. Este planteamiento tenía el propósito de añadir a los empleados [Fulano y Sutano] quienes eran los últimos dos empleados demandantes que restaban por ser incluidos a los beneficios del Preretiro ….y finiquitar los asuntos concernientes con la sentencia adversa en este caso.
>
> … 3) Ante ello, toda vez que todos los trámites requeridos a la Agencia han sido realizados y no resta acción a realizar por el DTRH para preretirar empleados demandantes, se solicita con el mayor de los respetos que se dé por cumplida la sentencia dictada y se decrete el cierre y archivo del caso de autos.

---

[1] Note that the undersigned disputes this interpretation on the basis of (1) the language of the Stipulation; and (2) the nature of statutory attorneys fees, which have been analyzed in the analogous Eleventh Amendment context. *See, for example, Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) (discussing waiver and Section 5 of the 14th Amendment).* There is a difference between money claims - which were not involved in this case about pre-retirement - and a claim for statutory fees.)

**Notification pursuant to Amended
Case  Management Procedures
page 4**

In compliance with an Order of the TPI, the undersigned presented an Informative Motion, dated December 19, 2022, in which she advised the court that the underlying issues of pre-retirement had finally been resolved, but that there remained the issue issue of statutory attorneys fees, stating *inter alia,* as follows:

> On the other hand, the Cause of Action numbered "b", about attorneys fees, remains pending.  That cause of action is primarily based on Law 402 of 1950, which prohibits attorneys for employees from charging for their services rendered ... and condemns the employer to pay those fees.
>
> Pursuant to the statutory prohibition, as well as her ethical duty, the undersigned affirms before this Honorable Court that she has not charged any amount for her professional services ...." (*Motion presented December 19, 2022 in Ares v. Sec., 2017-CV02199, Translation provided*)[2]

The undersigned also informed the TPI that on December 19, 2022, she had written to DOJ attorney Lugo, asking for the *DOJ* to *agree to a stipulation lifting any stay with respect to attorneys fees*.  Please note that  the undersigned addressed her request directly to the DOJ at that time, in light of previous experience, since in 2018, when she first attempted to lift the stay, addressing a letter to attorneys Hermann Bauer, Ubaldo Fernánez, Diana Pérez and Andrés López (pursuant to the Case Management Order then in effect), she was instructed to direct her request to the Department of Justice (DOJ).

In her December 19th email to atty. Lugo, the undersigned specifically invoked the conferral procedures, but stated that "I am writing to you first, but if there is someone else to whom I must direct this request, please let me know. (In the past, I've been told to direct it to the Board's attorneys, but they in turn have told me to direct it to the DOJ.")

Having heard no response from the DOJ, on January 9, 2023, the undersigned sent a follow-up email, dated January 9, 2023, in which she noted that the TPI had set a close deadline for a further report on the matter.  That same day, attorney Lugo informed the undersigned that"[e]l asunto ha sido referido a la Secretaría Auxiliar de lo Civil (SAC) [o sea, sus supervisores dentro del Departamento de Justicia] para la determinación correspondiente. Una vez tenga una respuesta de la SAC, le informaré. Por el momento, no tengo información adicional para brindarle."

---

[2]In the motion, the undersigned also made a request for "temerity" fees.

**Notification pursuant to Amended
Case  Management Procedures
page 5**

It was not until January 18th, 2023, that the DOJ finally expressed its position.  It did so in a filing before the TPI titled *"Moción en Cumplimiento de Orden y Oposición a Reapetura (sic) de Segunda Causa de Acción". See, attached.*  Rather than address the request by the undersigned made as early as December to lift any remaining stay, the  DOJ, now urges the TPI to declare itself *without* jurisdiction to hear the request for attorneys fees, by adopting its view that Judge Taylor Swain's January Confirmation Order, and the Injunction enforcing the Adjustment Plan applies to this case.  The DOJ also argues that the claim is barred because there has been no proof of claim filed (this, despite the fact that the underlying case was stayed for years, as a claim against the Commonwealth).

Please note that in all of the *years* of litigation, including several motions and hearings *after* the aforementioned Confirmation order and Injunction, the DOJ has *never* before raised these issues as a bar to the attorneys fees claim.  Moreover, it should be noticed that the attorneys fees claim, although first *alleged* in 2017, did not *ripen* until all the matters in the underlying case were resolved in November of 2022.

I eagerly await your determination with respect to this issue.

Sincerely,

Judith Berkan

cc: Susanne Lugo
    Tan1a Fernández
    Both by email



t\ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| GILBERTO ARES CANDELARIA<br>NILDA P. BARBOSA RODRIGUEZ<br>ANA E. COLLAZO GUZMÁN<br>ARNALDO COLÓN COLÓN<br>MELVIN COLÓN VÉLEZ<br>ANGEL L. DE JESÚS FERNÁNDEZ<br>MARIBEL GARCÍA CRUZ<br>CARLOS GONZÁLEZ JUARBE<br>MARILYN HERNÁNDEZ SANTIAGO<br>CARMEN D. LÓPEZ HERNÁNDEZ<br>TOMÁS MONTAÑEZ ROSADO<br>JULIA T. PENA DE JESÚS<br>EVELYN PRATTS COLLAZO<br>NORMA I. RIVERA NIEVES<br>EDNA SÁEZ SÁNCHEZ<br>MANUEL F. SÁNCHEZ INCLE<br>JUAN D. SIERRA ORTEGA<br><br>    Peticionarios<br><br>v.<br><br>HON. CARLOS SAAVEDRA GONZÁLEZ<br>Secretario del Departamento del Trabajo y<br>Recursos Humanos<br><br>    Peticionado | CIV. Núm 2017-<br><br><br>Sobre: *Mandamus,*<br><br>    *Derecho de Participar en el*<br>*programa de pre-retiro al*<br>*amparo de la Ley 211-2015* |

## PETICIÓN DE MANDAMUS

AL HONORABLE TRIBUNAL:

COMPARECE la parte peticionaria, los empleados del Departamento del Trabajo y

Recursos Humanos, GILBERTO ARES CANDELARIA, NILDA P. BARBOSA

RODRIGUEZ, ANA E. COLLAZO GUZMÁN, ARNALDO COLÓN COLÓN, MELVIN

COLÓN VÉLEZ, MARIBEL GARCÍA CRUZ, CARLOS GONZÁLEZ JUARBE, MARILYN

HERNÁNDEZ SANTIAGO, CARMEN D. LÓPEZ HERNÁNDEZ, TOMÁS MONTAÑEZ

ROSADO, JULIA T. PENA DE JESÚS, EVELYN PRATTS COLLAZO, NORMA I. RIVERA

NIEVES, EDNA SÁEZ SÁNCHEZ, MANUEL F. SÁNCHEZ INCLE y JUAN D. SIERRA

ORTEGA, por conducto de la representación legal que suscribe y muy respetuosamente Expone,

Alega y Solicita:

1

# I. INTRODUCCIÓN

1.1 Se presenta este recurso de *mandamus* para hacer valer los derechos al "pre-retiro" de de

diecisiete (17) empleados del Departamento del Trabajo y Recursos Humanos de Puerto Rico, quienes

cualifican para los beneficios de la Ley 211-2015 de 8 de diciembre de 2015 (en adelante "Ley 211".)

1.2 La Ley 211 estableció un programa de "Preretiro Voluntario"para que empleados del

Gobierno que cualificaban pudieron optar voluntariamente por separarse de su empleo, incentivizado

por unos beneficios que le corresponderían hasta que cumplan los requisitos para acogerse al retiro.

El referido programa de preretiro aplica únicamente a empleados cobijados por la Ley Núm. 447 de

15 de mayo de 1951, según enmendada.

1.3 Cada uno de los peticionarios cualifican para el programa debido a que empezaron en el

servicio antes de 1990.

1.4 La referida Ley contempla un proceso mediante el cual las entidades gubernamentales

concernidas sometieran una solicitud ante la Oficina de Gerencia y Presupuesto (OGP) para que esa

agenica evaluara la viabilidad de que los empleados del departamento se acojan al programa preretiro

y certificara la elegibilidad de los empleados, excluyendo aquellos empleados cuyo preretiro no

implicaba ahorros para el sistema, aquellos que son "indispensables" y aquellos que no cumplan con

los años de servicio requeridos.

1.5 En cumplimiento de la ley, tanto la OGP como el Sistema de Retiro certificaron a cada

uno de los peticionarios como elegible para el pre-retiro y el Departamento de Trabajo y Recursos

Humanos ("el Departamento") les informó que cualificaban para el programa. Cada uno se acogió

a los beneficios de la Ley 211 y esperaban salir del servicio público en el 2016, como hicieron

aproximadamente 121 de sus colegas en el departamento.

1.6 Cada uno firmó una certificación a los efectos de que su selección al programa de pre-

retiro era "irrevocable".

1.7 No obstante lo anterior, el Departamento ha rehusado permitirles retirarse al amparo de

la Ley 211. El Departamento ha admitido que los peticionarios cualifican por el programa

1.8 Esta decisión es arbitraria y caprichosa. Es contrario al deber ministerial del Departamento

y su Secretario de hacer cumplir la ley y de proveerles a los peticionarios todos los beneficios que en

derecho les corresponden.

II. **JURISDICCION Y COMPETENCIA DEL TRIBUNAL**

2.1 La Sala Superior de San Juan del Tribunal de Primera Instancia tiene jurisdicción y competencia para entender en el caso de epígrafe en virtud de los Artículos 5001, 5.003 y 5.005 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003. *4 LPRA §§25a, 25c, 25e (2015),* los Artículos 549 a 661 del Código de Enjuiciamiento Civil, *32 LPRA §§ 3421-3433,* y las Reglas 3.1, 3.2, 3.5 y 54de las de Procedimiento Civil de Puerto Rico, 31 LPRA Ap. V, Reglas 3.1, 3.2, 3.5 y 54.

2.3 El *mandamus* es el remedio apropiado para obligarle a un funcionario del gobierno cumplir con su deber ministerial de hacer cumplir las disposiciones claras de la Ley.

### III. LAS PARTES

3.1 Desde principios del 20176, el peticionado **HON,. CARLOS SAAVEDRA GUTIÉRREZ** es el Secretario del Departamento de Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico ("Secretario de Trabajo") y cumple las funciones correspondientes al referido cargo. Su dirección es Edif. Prudencio Rivera Martínez, Piso 21, Avenida Muñoz Rivera 505, Hato Rey, PR 00918. El Secretario de Trabajo tiene su residencia en Río Piedras, San Juan, Puerto Rico.

3.2 El peticionario **GILBERTO ARES CANDELARIA** tiene 60 años. El Sr. Ares es Auxiliar Administrativo III en el Departamento de Trabajo y Recursos Humanos. Ha estado en el servicio público desde agosto de 1978 y como empleado regular en el 1989. Su diección es Calle 39 M13, Urb. Parque Ecuestre, Carolina, Puerto Rico 00987.

3.3 La peticionaria **NILDA P. BARBOSA RODRIGUEZ** es Técnica Legal en el Departamento de Trabajo y Recursos Humanos. La Sra. Barbosa tiene 60 años y ha estado en el servicio público desde 1986 y como empleada regular en el 1989. Su diección es Cond. Torre de los Frailes, Apt. 9G, Guaynabo, Puerto Rico 00969.

3.4 La peticionaria **ANA E. COLLAZO GUZMÁN** tiene 60 años de edad. La Sra. Collazo actualmente es Funcionaria Administrativa III en el Departamento de Trabajo y Recursos Humanos. La Sra. Collazo empezó en el servicio público en el 1986 y como empleada regular en el 1989. Su dirección es Calle 31 AJ-45, Rexville, Bayamón, Puerto Rico 00956.

3.5 El peticionario **ARNALDO COLÓN COLÓN** tiene 50 años de edad. El Sr. Colón

3

actualmente es Auxiliar Administrativo, Negociado de Seguridad y Empleo en el Departamento de Trabajo y Recursos Humanos. El Sr. Colón empezó como empleado regular en el servicio público en el 1989. Su dirección es Su dirección es Barrio Garrochales, Carr. 682, Km 7.5, Arecibo, Puerto Rico 00612.

3.6 El peticionario **MELVIN COLÓN VÉLEZ.** El Sr. Colón tiene 60 años de edad. actualmente es Funcionario Administrativo III en el Departamento de Trabajo y Recursos Humanos. El Sr. Colón empezó en el servicio público en el 1986 y como empleado regular en el 1989. Su dirección es Barrio Los Puertos, Calle 17 Núm 362, Dorado, Puerto Rico 00646.

3.7 El peticionario **ANGEL L. DE JESÚS FERNÁNDEZ** actualmente es Funcionaria Administrativa II en el Departamento de Trabajo y Recursos Humanos, Oficina de Servicios Administrativos. Empezó en el servicio público como empleado regular en el 1989. Su dirección es Calle Márquez de Santa Cruz 2J-18, Covandonga, Toa Baja, Puerto Rico 00949.

3.8 La peticionaria **MARIBEL GARCÍA CRUZ** tiene 50 años de edad. La Sra. García ctualmente es Funcionaria Administrativa I en el Departamento de Trabajo y Recursos Huano. La Sra. García empezó como empleada regular en el servicio público en el 1989. Su dirección es Urb. Sunville, Calle 16 R-26, Trujillo Alto, Puerto Rico 00976.

3.9 El peticionario **CARLOS GONZÁLEZ JUARBE** tiene 50 años de edad. El Sr. González actualmente es a Conductor en el Departamento de Trabajo y Recursos Humanos. El Sr. González empezó como empleado regular en el servicio público en el 1989. Su dirección Su dirección es Calle Trinidad T 590, Ext. Forest Hills, Bayamón, Puerto Rico 00959.

3.10 La peticionaria **MARILYN HERNÁNDEZ SANTIAGO** tiene 60 años de edad. Atualmente es Especialista de Seguridad y Salud I, OSHA. La Sra. Hernández empezó como empleada regular en el servicio público en el 1989. Su dirección es Urb. Regional Calle 1, Casa B9, Arecibo, Puerto Rico 00612.

3.11 La peticionaria **CARMEN D. LÓPEZ HERNÁNDEZ** tiene 60 años de edad. La Sra. López actualmente es Investigadora, Ofic. SINOD. La Sra. Hernández empezó como empleada regular en el servicio público en el 1989. Su dirección es Barrio Malpaso, Carr. 417, Km. 2.3, Aguada, Puerto Rico 00602.

3.12 El peticionario **TOMÁS MONTAÑEZ ROSADO** tiene 50 años. El Sr. Monta ñez actualmente es Director Ejecutivo 1 en Nómina del Departamento de Trabajo y Recursos Humanos.

4

Ha estado en el servicio público desde agosto de 1987 y como empleado regular en el 1989. Su dirección es Calle 8 F-11, Colinas de el Yunque, Río Grande, Puerto RICO 00745.

3.13 La peticionaria **JULIA T. PEÑA DE JESÚS** tiene 50 años de edad. La Sra. Peña actualmente es Funcionaria Administrativa II en el Departamento de Trabajo y Recursos Huano. La Sra. Peña empezó como empleada regular en el servicio público en el 1989.Su dirección es San Ciprián I, Apt. 122, 694 Victoria, Carolina, Puerto Rico. 00985.

3.14 La peticionaria **EVELYN PRATTS COLLAZO** tiene 60 años de edad. La Sra. Pratts actualmente es Auxiliar de Sistema de Oficina III en el Departamento de Trabajo y Recursos Humanos. La Sra. Pratts empezó en el servicio público en el 1978 y como empleado regular en el 1980. Su dirección es Urb. Carolina Alta M-5, Calle Víctor Salamán, Carolina, Puerto Rico 00987.

3.15 La peticionaria **NORMA I. RIVERA NIEVES** tiene 50 años de edad. La Sra. Rivera actualmente es Auxiliar Sistema de Oficina II en el Departamento de Trabajo y Recursos Humanos. La Sra. Rivera empezó en el servicio público en el 1986 y como empleada regular en el 1989. Su dirección es Carr 110, Km. 8.2, Inf Barrio Marís, Aguada, Puerto Rico 00602.

3.16 Ls peticionaria **EDNA SÁEZ SÁNCHEZ** tiene 60 años de edad. La Sra. Sáez actualmente es Directora Ejecutiva IV el Departamento de Trabajo y Recursos Humanos de la Oficina de Planificación. La Sra. Sáez empezó en el servicio público como empleada regular en el 1989.Su dirección es Cond. Hato Rey Plaza, Apt. 16J, San Juan, Puerto Rico 00918.

3.17 El peticionario **MANUEL F. SÁNCHEZ INCLE** tiene 60 años de edad. El Sr. Sánchez actualmente es Director de OSHA del Area de Ponce del Departamento de Trabajo y Recursos Humano. El Sr. Sánchez empezó como empleado regular en el servicio público en el 1989.Su dirección es PO Box 2141, Mayaguez, Puerto Rico 00681.

3.18 El peticionario **JUAN D. SIERRA ORTEGA**, tiene 60 años de edad. El Sr. Sierra actualmente es Conductor en el Departamento de Trabajo y Recursos Huano. El Sr. Sierra empezó en el servicio público en el 1981 y como empleado regular en el 1989. Su dirección es Barrio Campanillas 364, Parcelas, Calle Fortaleza, Toa Baja 00949.

## IV. LOS HECHOS

### a. El programa de "Preretiro Voluntario"

4.1   En diciembre de 2015, se aprobo la Ley 211, la cual ofrece beneficios de "preretiro" a los empleados cobijados por la Ley 447. *Véase Anejo A, Ley 211.*

4.2 Según expuesto en la Exposición de Motivos de la referida ley, el Programa de Preretiro Voluntario representa un "ahorro ignifictivo" al gobierno, mientras a su vez ofrece "una oportunidad a los servidores públicos que tantos años han brindado a nuetro País, de culminar su carrer en el servicio público de forma digna..." *Id, a la página 2.*

4.3 La Ley 211 establece un programa de pre-retiro que contempla los siguientes pasos:

a. En un término de sesenta (60) días, cada departamento o agencia  realizará una tasación de implementación del Programa de Preretiro Voluntario. *Id, Artículo 4.*

b. El departamento o agencia tiene la obligación de garantizar que quien solicite acogerse al Programa cumpla con los requisitos del mismo.  *Id, Artículo 7 (a).*

c. El departamento someterá su solicitud de participación a la Oficina de Gerencia y Presupuesto (OGP), incluyendo la tasación de implementación del Plan Patronal de Preretiro. *Id, Articulo 12 (b)(1).*

d. La OGP y la Administració de los Sistemas de Retiro de los Empleados certificará la eligibilidad de los empleados que soliciten al Programa. *Id, Artículo 12 (b)(2) y (3).*

e.  Se notificará al empleado que es elegible sobre la certificación de su elegibilidad y el empleado tendrá un plazo de treinta (30) días a partir de la notificación para ejercer la opción de participar en el programa. *Id., Artículo 12(b)(4).*

f. La agencia tiene la obligación de proveer a todos sus empleados que cualifican para el Programa de Preretiro una orientación en torno a los beneficios y criterios del Programa. *Id., Artículo 12( c).*

g.  Una vez que el empleado seleccione participar en el programa, el Departamento tiene la obligación de. pagar a cada pre-retirado el sesenta por ciento (60 %) de su retribución promedio al 31 de diciembre de 2015, hacer las aportaciones patronales e individuales al Sistema de Retiro y mantener a los preretirados en la cubierta del plan médico por el término de dos (2) años.  También debe pagar las liquidaciones de vacaciones

6

y enfermedad. *Id.*

4.4 La elección de un empleado de participación en el Programa será "final e irrovacable". *Id,
Artículo 9.* La elección del emmpleado también constituye "un relevo total y absoluto y una renuncia

de derechos de toda reclamación relacionada con su trabajo, constituyendo el referido relevo y renuncia

de derechos "cosa juzgada" en cualquier relcamación posterior. *Id.*

4.5 Una vez que el empleado se acoja al programa, su efecto será inmediato, a menos que el

Departamento decida "retener[lo] en su puesto durante un término no mayor de seis (6) meses, sujeto

a prórroga por seis (6) meses adicionales con aprobación de OGP, a los únicos fines de culminar

alguna labor, encomienda, función u ofrecer adiestramiento". *Id, Artículo 10.*

4.6 Salvo en esas circunstancias, "el resto de los empleados que se acojan el Programa de

Preretiro Voluntario lo harán de forma inmediata ...." *Id.* En otras palabras, el Departamento no tiene

discreción de dejar a los empleados que cumplen con los requisito fuera de los beneficios otorgados

en la referida Ley 211.

4.7 De acuerdo al Programa establecido por la Ley 211, los empleados cualificados tienen

derecho a los siguientes beneficios:

a. Sesenta por ciento (60%) de su retribución promedio al 31 de diciembre de 2015,

hasta que cumpla los sesenta y un (61) años de edad;

b. Liquidación del pago de licencias por vacaciones y enfermedad acumuladas;

c. Participación en la cubierta del plan médico de conformidad con las aportaciones

anteriores, por espacio de dos años;

d. Garantía del cincuenta por ciento (50%) de su retribución promedio al 30 de junio

de 2013 (fecha en que se aprobó la Ley 3-2013, la cual enmendó significativamente los

derechos de los empleados públicos de Puerto Rico en cuanto al retiro garantizado por la Ley

447).

4.8 El 23 de agosto de 2017, se derogó la Ley 211, mediante la aprobación de la Ley 106-2017.

*Véase Anejo B, Ley 106-2017, Artículo 7 (a).*

4.9 Sin embargo, mediante la referida Ley 106, se garantizó "todos los derechos y obligaciones

creados a amparo de dicho estatuto. *Id.* Los empleados que se econtroaban participando en el

Programa de Preretiro Voluntario al momento de aprobarse la presente Ley, coninutaría disfrutando

sus beneficios, *Id, Artículo 7(b),* y cualquier solicitud de Preretiro "que hayan presentado debidamente

lo participantes a la fecha de aprobación [de la Ley 106], continuarán el trámite ordinario", *Id, Artículo 7 ( c).*

4.10  La nueva legislación,en su Artículo 7, establece sin duda alguna el <u>derecho de los empleados</u> "cuyos beneficios de Pre-retiro ya han sido aprobados por la Oficina de Gerencia y Presupuesto ..." *Véase Anejo C, Informe Positivo del Senado de Puerto Rico (sobre P. Del S. 603, 3 de agosto de 2017, a la página 2 (énfasis suplido).*

4.11 Según expresado en la Exposición de Motivos de la Ley 106, "mediante esta Ley se salvaguarda que los pensionados de Puerto Rico reciban las pensiones que con tanto sacrificio y esfuerzo lograron obtener al entregar sus mejores años al servicio del Pueblo de Puerto Rico...."

**b.  La negativa del Departamento de hacer cumplir la ley**

5.1 De conformidad a la referida Ley 211, el OGP certificó la eligibilidad para el programa de 138 empleados del Departamento de Trabajo, incluyendo todos los peticionarios. *Véase, por ejemplo, Anejo D "Notificación de Elegibilidad" entregado al peticionario Melvin Colón Vélez el 26 de enero de 2016.*

5.2 Cada uno de los peticionarios entraron en el servicio público antes del 1 de abril de 1990 y están cobijados por el sistema de retiro al amparo por la referida Ley 447, según enmendada.

5.3 A cada uno, la OGP y el Sistema de Retiro certificaron su elibilidad para el programa de pre-retiro al amparo de la referida Ley 211.

5.4 Cada uno de los peticionarios fue informado por el Departamento de Trabajo que cualificaban para el programa de preretiro ya que la OGP certificó su eligibilidad.

5.5 Cada uno de los peticionarios optaron por participar en el programa.

5.6 Cada uno de los peticionarios siguió las instrucciones impartidas por el Departamento y entregaron el Formulario de Elección para la Participación en el Programa de Preretiro Voluntario en o de la fecha límite del 22 de febrero de 2016.

5.7 Cada uno de los referidos empleados tomó la decisión de optar por los referidos beneficios a base de la orientación recibida por parte de su Departamento y ante la representación de que OGP había certificado su elegibilidad.

5.8 Una vez cada uno eligió la opción ofrecida, su decisión fue "<u>final e irrevocable</u>". *Artículo 9 de a Ley 211.*

8

5.9 A cada uno de los peticionarios, el Departamento del Trabajo le citó a una reunión a celebrarse el 22 de enero de 2016 en el Departamento para orientar al personal sobre sus derechos a participar en el programa de pre-retiro. Cada uno de los peticionarios fue a la referida reunión. Su asistencia a la reunión fue "compulsoria e indelegable. *Véase, por ejemplo, Anejo E, Carta dela Secretaria Auxiliar de Recursos Humanos a la peticionaria Evelyn Pratts, fechada el 15 de enero de 2016.*

5.10 El 27 de diciembre de 2016, 121 empleados del Departamento se acogieron al programa de pre-retiro, autorizados por el Departamento de Trabajo.

5.11 Aunque cada uno de los peticionarios cumple a cabalidad con las disposiciones de la Ley 211 y llenaron todos los formularios pertinentes, ese mismo 27 de diciembre de 2016, el Departamento del Trabajo les informó a estos diecisiete (17) empleados que éstos no iban a poder disfrutar de los beneficios de la ley de inmediato, sino que tendrían que esperar a "una segunda fase según provista y facultada en la legislación aplicable." *Véase, Anejo F, Carta del 27 de de diciembre de 2016, suscrita por la Sra. Nilma Maldonado Colón, Secretaria Auxiliar de Recursos Humanos.*

5.12 La Ley 211 no hace referencia alguna a una "segunda fase" de implantación del programa de preretiro. La referida ley sí contempla la posibilidad de que una agencia retenga un empleado cualificado por un término máximo de seis (6) meses, lo cual puede extenderse por seis (6) meses adicionales con la aprobación de OGP.

5.13 No obstante, según el Artículo 10 de la referida Ley 211, la única razón para hacerlo sería la necesidad "de culminar alguna labor, encomienda, función u ofrecer adiestramiento".

5.14 Esta disposición no aplica a los peticionarios, a quienes el Secretario rehusó incluir en el programa de pre-retiro de forma totalmente arbitraria.

5.15 El Secretario de Trabajo no tiene discreción alguna para tomar esa decisión.

5.16 Hasta la fecha, ningún funcionario del gobierno de Puerto Rico ha ofrecido razón o explicación alguna para negarles a estos empleados en particular el derecho de participar en el programa de pre-retiro y recibir los beneficios que en derecho le corresponden.

5.17 En ningún momento el Departamento ha hecho una determinación de "retener [a uno o más de los peticionarios] en su puesto durante un término no mayor de seis (6) meses, sujeto a prórroga por seis (6) meses adicionales con aprobación de OGP, a los únicos fines de culminar alguna labor, encomienda, función u ofrecer adiestramiento". *Id, Artículo 10.*

9

5.18 Para justificar sus negativa a permitir el pre-retiro de los peticionarios, el Asesor Legal del Departamento y la encargada de Recursos Humanos del Departamento meramente han expresado su opinión de que varios de los pre-retirados que sí se fueron del Departamento al amparo de la Ley 211, en el pasado cuatrienio, como cuestión de hecho no cualificaban por los referidos beneficios.

5.19 Esta no constituye una "explicación". Si otros empleados que no tenían derecho a acogerse al prorgrama de pre-retiro están disfrutando de esos beneficios, ese hecho no tiene nada que ver con el derecho de los peticionarios de acogerse a programa.

5.20 El Departamento de Trabajo no tiene discreción alguna de privarle a los peticionarios sus derechos al amparo de la referida Ley 211.

5.21 Los peticionarios han demostrado al Departamento no sólo que su pre-retiro es garantizado por la Ley 211, sino también que su salida de la agencia al amparo de la disposiciones de la Ley 211 representaría un ahorro para el Departamento.

5.22 El Departamento de Trabajo y su Secretario, Carlos Saavedra Gutiérrez, tiene la obligación y el deber ministerial de hacer valer los derechos que les asiste a lo peticionarios de participar en el programa por lo cual su elibilidad fue certificada hace casi dos años.

### c. El requerimiento al Secretario del Trabaj y la negativa de hacer cumplir la ley - los intentos de resolver esta controversia sin acudir al foro judicial

6.1 Desde el 27 de diciembre de 2016, cuando el Departamento le informó a los peticionarios sobre su negativa de implantar la Ley 211 respecto a ellos,los peticionarios trataron de resolver esta situación mediante mecanismos informales de diálogo, sin efecto alguno.

6.2 El 31 de mayo de 2017, en representación de un grupo de los peticionarios, las abogadas que sucriben solicitaron formalmente al peticionario Hon. Carlos Saavedra Gutiérrez una reunión para discutir este asunto y para asegurar que los derechos de los peticionarios fueran respetados. *Véase Anejo G, carta de Berkan al Secretario de Trabajo, 31 de mayo de 2017*

6.3 La solicitud a nombre de los peticionarios fue copiado al Lcdo. Domingo Chicón, Asesor Legal del Secretario y a Nilda Maldonado Colón, en ese momento Secretaria Auxiliar de Recursos Humanos del Departamento.

6.4 Los funcionarios antes mencionados no respondieron a la carta del 31 de mayo de 2017.

6.5 Entre mediados y finales del mes de junio de 2017, la representación legal de los

10

peticionarios intentó comunicarse con el Lcdo. Chicón, asesor legal del Secretario del Trabajo, pero el Lcdo. Chicón no respondió a sus llamadas.

6.6 El 27 de junio de 2017, la suscribiente Judith Berkan le escribió nuevamente al Secretario del Trabajo, con copia al Lcdo Chicón y a Recursos Humanos del Departamento, expresando su interés en concertar una reunión para discutir este asunto y para hacer valer los derechos de los peticionarios. *Véase Anejo H.*

6.7 En su carta del 27 de junio, la suscribiente recalcó que sus representados cumplieron a cabalidad todos los requisitos para el programa de pre-retiro y que su salida de la agencia representaría un ahorro significativo. *Id*

6.8 La suscribiente expresó además que se había intentado comunicarse con el Lcdo. Chicón, pero que éste estaba alegando que no había recibido sus mensajes, lo cual no es cierto. *Id.*

6.9 Como resultado de esta segunda carta, el 10 de julio de 2017 se celebró una reunión en la sede del Departamento de Trabajo en Hato Rey. El Departamento fue representado por el Lcdo. Chicón y la Sra. Wanda Fontánez, Secretaria Auxiliar de Recursos Humanos. El grupo de empleados fue representada por la suscribiente Lcda. Berkan y los peticionarios Nilda P. Barbosa y Melvin Colón.

6.10 Durante la referida reunión, los representantes del Departamento del Trabajo no ofrecieron explicación que justificara su decisión de no hacer valer la ley. Por el contrario, se concentraron en la alegación de que ciertos *otros* empleados no cualificaron para los beneficios de pre-retiro, a pesar de que éstos se habían ido del Departamento en el 2016, antes del cambio de administración.

6.11 Los funcionarios del Departamento de Trabajo también recalcaron que iban a referir el a la Oficina de la Contralora. Éstos no ofrecieron remedio alguno a los peticionarios, quienes sí cualifican para el pre-retiro.

6.12 El 28 de julio de 2017, la suscribiente solicitó nuevamente una reunión con el Secretario. *Véase Anejo I, carta de Berkan a Saavedra, 28 de julio de 2017.*

6.13 El miércoles, 31 de agosto de 2017, la suscribiente escribió otra comunicación al Secretario del Trabajo. *Véase Anejo J, carta de Berkan a Saavedra, 30 de agosto de 2017.*

6.14 En la referida carta, la suscribiente mencionó la recien aprobada Ley 2017-106, la cual garantizaba la continuidad de los derechos de los empleados que habían sido cualificados por la OGP

11

al amparo de la Ley 211. *Id.*

6.15  La suscribiente también indicó lo siguiente:

> Aunque mi preferencia hubiese sido reunirme con usted, me dirijo a usted
> en este momento con un sólo propósito de saber de una vez y por todas si usted tiene
> la intención de cumplir la ley.  Antes de acudir a los tribunales, quisiera saber si el
> Departamento va a honrar los derechos establecidos en la Ley 211 y la Ley 106 en
> relación con los servidores públicos cuyos intereses representamos.

> Espero su contestación dentro de los próximos cinco (5) días laborales.
*Id (énfasis en el original)*

6.16 Los cinco días laborales mencionados en la referida carta se expiraron el jueves 5 de

septiembre de 2017.


**d. Los huracanes asotan a Puerto Rico, atrasando la presentación de esta Petición**

7.1 El 5 de septiembre de 2017, fecha en que se supone que el Secretario del Departamento de

Trabajo respondiera a la última carta que recibió sobre este asunto, el Huracán Irma llegó a Puerto

Rico.

7.2 Posterior a esa fecha, Puerto Rico estaba sufriendo los efectos del paso del huracán.

7.3  Después del paso del Huracán Irma, no hubo teléfono, internet o electricidad en la oficina

de la suscribiente, imposibilitando la comunicación con sus clientes.

7.4 Dos semanas después de Irma, pasó el Huracán María.  En el periodo entre el paso del

Huracán Irma y el paso del Huracán María el 20 de septiembre de 2017, la oficina de Berkan/Méndez

tuvo servicio eléctrico por espacio de sólo tres (3) días.

7.5 Despues del paso del Huracán María, la oficina de las suscribientes se ha quedado sin

servicio de luz, internet y comunicaciones.

7.6  Debido a esta situación y otras similares que está atravesando Puerto Rico en general, ha

sido sumamente difícil para las suscribientes comunicarse con sus clientes, logrando la comunicación

esta misma semana.

7.7  Hasta el día de hoy, el Secretario de Trabajo no ha respondido a la carta del 30 de agosto.

De igual manera, el peticionado no ha respondido a las cartas entregadas al funcionario y su directores

de asuntos legales y de recursos humanos.  El Secretario no respondió a la carta del 30 de mayo de

2017, ni a la carta del 27 de junio, ni a la carta del 28 de julio, ni a la carta del 30 de agosto de 2017.

7.8 De acuerdo a la Ley 106, el programa de pre-retiro expira <u>a finales de diciembre de 2017.</u>

7.9 Los peticionarios han tratado de resolver este asunto mediante el diálogo, exigiéndole al Secretario el cumplimiento de la Ley 211, pero el Departamento de Trabajo sigue rehusando cumplir la ley, sin ofrecer ninguna explicación sobre por qué estos servidores públicos, quienes promedian 30 años de servicio, y quienes claramente cualifican para los beneficios de la Ley 211, tienen que quedarse en sus funciones, perdiendo los beneficios sustanciales que la ley le garantiza.

## V. CAUSAS DE ACCIÓN

### a. Mandamus

8.1 La parte peticionaria adopta por referencia y hace formar parte de la presente causa de acción todos los hechos alegadas anteriormente.

8.2 El Artículo 649 del Codigo de Enjuiciamiento Civil define el auto de *mandamus* en parte pertinente como sigue:

> [U]n auto altamente privilegiado dictado por ... el Tribunal de Primera Instancia de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persoa o personas naturales .... requiriéndoles para el cumplimiento de algún acto que en dicho auto se epresa y está dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la oarte a quien obliga deberá tener la facultad de poder cumplirlo.

8.3 Una petición de *mandamus* debe cumplir con el requerimiento previo por parte del peticionario hacia el peticionado para que éste cumpla con el deber exigido, salvo algunas excepciones que no son pertinentes al caso de marras. La petición debe incluir ademá una exposición de los hechos que demuestra la negativa del funcionario de cumplir con la ley. *David Rivé Rivera, Recursos Etraordinarios,* citado en *Asociación de Maestros de Puerto Rico v. Hon. Cesar Rey Hernández, 178 DPR 253 (2010)..*

8.4 El recurso solamente procede cuando el peticionario logra demstrar el incumplimiento de un deber ministerial de determinado funcionario público. *Id.* Según la jurisprudencia del Tribunal Supremo de Puerto Rico, un deber ministerial es "un deber impuesto por la ley que no permite discreción en su ejercicio, sino que es mandatorio o imperativo". *Pagán v. Tower, 35 DPR 1, 3 (1926); Véase además Asociacion de Maestros de Puerto Rico, 178 DPR a las páginas 263-64.* Sin embargo, el "deber ministerial no tiene que ser necesariamente epreso ..." *Id, a la página 264.* El peticionario también debe demostrar que no existe un remedio adecuado y eficaz en el curso ordinario de la ley. *Atrículo 651 del Código de Enjuriciamiento Civil, 32 LPRA §3423.*

13

8.5 La petición en el caso de autos cumple con todos estos requisitos. El Secretario del Departamento de Trabajo y Recursos Humanos ha incumplido su deber ministerial de procesar las solicitudes de pre-retiro de los peticionarios. Todos los pasos necesarios para que los peticionarios se acogieran al programo fueron cumplidos. El Departamento de Trabajo sometió su petición de participar en el programa a principios de 2016. El OGP certificó la elegibilidad de los peticionarios para acogerse al pre-retiro. El Departamento celebró una reunión con los peticionarios para orientarlos en cuanto a sus derechos al amparo de la Ley 211. Cada uno de los peticionarios solicitó participación en el programa, siendo su eleccion final e irrevocable. Más de cien de sus compañeros se han ido del Departamento y actulmente están recibiendo su 60% de su remuneración, y los beneficios del plan médico, sin tener que reportarse a trabajar. Estos empleados también tendrán el derecho de recibir no menos del 50% de los beneficios que se iban a recibir en su retiro al amparo de la Ley 447, antes de las enmiendas a la referida ley.

8.6 No hay duda alguna de que los peticionarios cualifican para participar en el Programa de Preretiro. Lo único que falta es que el Secretario del Trabajo cumpla con su deber ministerial.

8.7 El Secretario del Trabajo no tiene discreción de denegarles a los peticionarios de los derechos que tienen al amparo de la Ley 211 y la Ley 106 basado en la noción de que *otros* empleados alegadamente se acogieron a los beneficios durante la pasada administración sin haberse cualificado por los mismos.

8.9 El interés público favorece la concesión del remedio solicitado en el caso de autos, ya que es la política pública de Puerto Rico "salvaguarda[r[ que los pensonados de Puerto Rico reciban las pensiones que con tanto sacrificio y esfuerzo lograran" y "no permit[ir] que nuetros retirados queden desporovistos de sus necesidades básicas y no puedan tener una mejor calidad de vida". *Véase, anejo C, Informe Positivo del Senado de Puerto Rico (sobre P. Del S. 603, 3 de agosto de 2017, a la página 11.*

8.10 No hay remedio adecuado en ley para atender esta situación, ya que el Programa de Preretiro está próximo a terminar y los peticionarios no tendrán oportunidad de participar en el Programa una vez se acabe a finales de diciembre de 2017.

**B. Segunda causa de acción - honorarios de abogado**

9.1 Los peticionarios acogen, adoptan por referencia y hace formar parte de la presente causa

14

de acción todos los hechos alegados en los párrafos anteriores de esta petición,

9..2 Este caso se trata de una reclamación hecha por 17 empleados del Departamento de Trabajo al funcionario más alto del Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado, el peticionado Secretario del Trabajo.

9.3 La política pública de Puerto Rico reconoce la importancia de garantizarle al empleado una representación legal adecuada en relación con sus reclamaciones judiciales y extrajudiciales contra su patrono.

9.4 Según dispone la Ley 402 de 12 de mayo de 1950, 32 LPRA §3114 et seq, en casos de reclamaciones laborales, le corresponde al patrono pagar los honorarios de los/las abogados o abogadas que representan a los empleados. Mediante disposición explícita de la Ley 402, está estríctamente prohibido obligar a los empleados "directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos...." *32 LPRA §3116.*

9.5 La política pública de Puerto Rico es clara: "Permitir el cobro de honorarios de abogado a los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo, equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados."*32 LPRA §3115.*

9.6 Son "nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales" en casos de esta índole. *32 LPRA §3116. In re Rivera, 169 DPR 237, 268 (2006).* Tan reciente como enero del año en curso, el Tribunal Supremo reiteró en *In re Martí Rodríguez,* 2016 TSPR 1, 195 DPR ____ que la Ley Núm. 402, *supra,* prohibe a los abogados contratar honorarios profesionales con los trabajadores o empleados para representarlos en sus reclamaciones laborales, ya sean en el contexto de reclamaciones judiciales o de reclamaciones extrajudiciales. Le corresponde al patrono y no al obrero pagar estos servicios.

9.7 Si este Tribunal entiende que la reclamación en este caso constituye una reclamación de índole laboral de unos empleados contra su patrono, la única forma que las suscribientes pueden recibir compensación alguna por su trabajo en relación con el trámite de este caso ante el Tribunal sería con una imposición de honorarios de abogado.

9.8 Más allá de las disposiciones específicas de la referida Ley 402, surge otra base para la

15

imposición de honorarios en este caso, la Regla 44.1 (d) de las de Procedimiento Civil sobre temeridad.

La Regla 44.1 establece lo siguiente:

> En caso que cualquier parte .... haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico [o] ... sus agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exteno por ley del pago de honorarios de abogado. *32 LPRA Ap. V, R. 44.1.*

9.9 Sabido e que " el concepto de temeridad se refiere a las actuaciones de una parte que <u>hacen</u> <u>necesario un pleito que se pudo evitar</u> o que provocan la indebida prolongación del mismo". *Colón Santos v. Cooperativa de Seguros Múltiples de Puerto Rico, 173 DPR 170, 188 (2008), citando a Blas Toledo v. Hospital La Guadalupe, 146 DPR 267, 335 (1998) (énfasis suplido.)*

9.10 El propósito de la regla sobre temeridad es "establecer una penalidad a um litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obligan a la otra parte innecesariament a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Domínguez Vargas v. Great American Life Assurance, 157 DPR 690, 706 (2002), citando a Rivera v. Tiendas Pitusa, 148 DPR 695, 702(1999)*

9.11 La parte peticionado en este caso ha sido temerario en e manejo de esta controversia dado que el Secretario del Trabajo ha ignorado y desatendido los reclamos de los peticionarios, sin razón legítima.

9.12 Como resultado del proceder termerario de la parte peticionado, los empleados peticionarios se han visto obligados a recurrir ante este foro judicial para solicitar el auto de *mandamu,* para asegurar el cumplimiento de un deber ministerial de parte del Secretario de Trabajo.

9.13 Ante el trasfondo fáctico expuesto en esta petición, y a tenor con la normativa en nuestra jurisdicción, procede la imposición de honorarios de abogado por temeridad.

## VI. SÚPLICA

**EN MÉRITO DE LO ANTERIOR,** se solicita muy respetuosamente a este Honorable Tribunal, que tome conocimiento de lo antes expuesto, declare HA LUGAR la presente petición y, en consecuencia, al amparo de la Regla 54 de las de Procedimiento Civil:

16

1. Ordene <u>perentoriamente</u> al Hon, Secretario de Trabajo Carlos Saavedra Gutiérrez de inmediato cumplir con la Ley 211, según enmendado por la Ley 106, otorgándoles a los peticionarios todos los beneficios de pre-retiro garantizados por la Ley 211-2015 y la Ley 106-2017, *o en la alternativa,*

2. Emita una Orden de Mostrar Causa al Hon. Secretario de Trabajo requiriéndole demostrar por qué el Tribunal no deba declarar CON LUGAR la Petición, *o en la alternativa,*

3. Ordene al Hon. Secretario de Trabajo contestar la Petición dentro de un término corto de no más de cinco (5) días laborales,

Se solicita además la imposición de hoorarios de abogado a favor de las abogadas de la parte peticionaria, además del pago de las costas y los gastos de litigio, así como cualquier otro remedio que prooeda en derecho.

**RESPETUOSAMENTE SOMETIDO,**

En San Juan, Puerto Rico a 31 de octubre de 2017.

Berkan/Méndez
Calle O'Neill G-11,
San Juan, Puerto Rico 00918-2301
Tel.: (787) 764-0814;
Fax.: (787)250-0986
bermen@prtc.net

Judith Berkan
Col Núm. 8059; RUA 6723
berkanj@microjuris.com

Mary Jo Méndez
RUA 10738
mendezmaryjo@microjuris.com



17

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| GILBERTO ARES CANDELARIA<br>NILDA P. BARBOSA RODRIGUEZ<br>ANA E. COLLAZO GUZMÁN<br>ARNALDO COLÓN COLÓN<br>MELVIN COLÓN VÉLEZ<br>ANGEL L. DE JESÚS FERNÁNDEZ<br>MARIBEL GARCÍA CRUZ<br>CARLOS GONZÁLEZ JUARBE<br>MARILYN HERNÁNDEZ SANTIAGO<br>CARMEN D. LÓPEZ HERNÁNDEZ<br>TOMÁS MONTAÑEZ HERNÁNDEZ<br>JULIA T. PENA DE JESÚS<br>EVELYN PRATTS COLLAZO<br>NORMA I. RIVERA NIEVES<br>EDNA SÁEZ SÁNCHEZ<br>MANUEL F. SÁNCHEZ INCLE<br>JUAN D. SIERRA ORTEGA<br><br> Peticionarios<br><br>v.<br><br>HON. CARLOS SAAVEDRA GONZÁLEZ<br>Secretario del Departamento del Trabajo y<br>Recursos Humanos<br><br> Peticionado | CIV. Núm 2017-90__<br>*Recursos Extraordinarios*<br><br><br>Sobre: *Mandamus,*<br><br> *Derecho de Participar en el*<br>*programa de pre-retiro al*<br>*amparo de la Ley 211-2015* |

## JURAMENTO

\Yo, Tomás Montañez Rosado, mayor de edad, casado, Director Ejecutivo I  en el

Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico, y

vecino de Río Grande, Puerto Rico,  bajo el más solemne juramento declaro:

 1. Que mi nombre y dcemás circunstancias personales son las arriba indicadas;

 2. Que el grupo de los 17 empleados que son peticionarios en este caso me autorizaron

para contratar servicios legales en relación con el asunto tratado en el Mandamus que se está

presentando en este caso.

 3. Que cada uno de los mencionados empleados está de acuerdo con la presentación de la

petición en el caso de epígrafe.

4. Que la referida petición de *mandamus* ha sido redactada según mi solicitud expresa

basada en las autorizaciones del referido grupo de empleados.

5. Que he leído la petición de *mandamus* en el caso de marras.

**6** Que la información contenida en la sección 3 y las secciones 5.2-5.8 y 5.11 relacionada

con cada peticionariio fue suplida a mí por cada uno, según requerida, para el propósito explícito

de incluirla en la presentación de la referida petición de *mandamus.*

7. Que la demás información contenida en la petición de *mandamus* y todo lo allí

expuesto es cierta y me consta de propio y personal conocimiento o por información y creencia.

En San Juan, Puerto Rico hoy 31 octubre de 2017.

_____

Tomás Montañez Rosado

AFFIDAVIT NÚM: ___O88___

Jurado y suscrito ante mí por Tomás Montañez Rosado, de las circunstancias arriba

expuestas y a quien doy fe de conocer personalmente o he identificado mediante Número de

licencia de conducir #1789955

En San Juan, Puerto Rico a 31 de octubre de 2017.




NOTARIO PUBLICA

_____

9397
10/20/2017
$5.00
Sello de Asistencia Legal
00279 2017 1020-44266204

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 8027-1 |

## DEBTORS' TWELFTH OMNIBUS MOTION FOR APPROVAL OF MODIFICATIONS TO THE AUTOMATIC STAY

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors"), as Title III debtors, by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and*

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Economic Stability Act* ("<u>PROMESA</u>"),[2] respectfully submits this motion (the "<u>Motion</u>"), pursuant

to sections 362(d)(1) and 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),

made applicable to these cases by PROMESA section 301(a), and in accordance with Paragraph

III.Q of the Case Management Procedures (as defined below), for entry of an order, substantially

in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), retroactively approving the

modifications to the automatic stay set forth in Bankruptcy Code sections 362(a) and 922(a)

(the "<u>Title III Stay</u>"), (a) for the parties and actions set forth in **<u>Exhibit 1</u>** to the Proposed Order,

*nunc pro tunc* to the dates specified therein and (b) to the extent necessary, for the parties and

actions as set forth in **<u>Exhibit 2</u>** to the Proposed Order, *nunc pro tunc* to the date of this Motion.

In support of this Motion, the Debtors respectfully represent as follows:

**<u>Jurisdiction and Venue</u>**

1.      The United States District Court for the District of Puerto Rico (the "<u>Court</u>") has

subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory predicate for the relief sought herein is Bankruptcy Code sections

362(d)(1) and 105(a), made applicable to these Title III cases by PROMESA section 301(a).

**<u>Background</u>**

4.      On June 2, 2017, the Court entered an order approving certain notice, case

management, and administrative procedures for the Title III cases [ECF No. 249] (as amended,

the "<u>Case Management Procedures</u>"), which was subsequently amended on June 6, 2017 to make

certain non-substantive clarifications and amendments [ECF No. 262].

---

[2]    PROMESA is codified at 48 U.S.C. §§ 2101-2241.

5.　　　On August 17, 2017, the Court entered an order further amending the Case Management Procedures to, among other things, implement a protocol (the "Lift Stay Protocol") for filing motions for relief from Title III Stay [ECF No. 1065]. Under the Lift Stay Protocol, a movant is required to (a) send notice (a "Lift Stay Notice") to counsel to the Oversight Board and AAFAF to advise them of the movant's intent to seek relief from the Title III Stay at least fifteen (15) business days prior to filing a motion seeking such relief (the "Lift Stay Notice Period") and (b) meet and confer with the Debtors during the Lift Stay Notice Period.

6.　　　On September 13, 2017, the Debtors filed a motion to amend the Case Management Procedures [ECF No. 1299] to allow the Debtors (a) to enter into stipulations modifying or lifting the Title III Stay under Paragraph III.Q of the Case Management Procedures without further order of the Court and (b) in their discretion, to modify or lift the Title III Stay with respect to any prepetition ordinary course civil action against a Debtor without the filing of a Lift Stay Notice and further order of the Court.

7.　　　On October 24, 2017, the Court approved the Third Amended Notice, Case Management and Administrative Procedures [ECF No. 1512-1], which implemented the Debtors' requested changes to the Lift Stay Protocol and requires the Debtors to file an omnibus lift stay motion every 60 days, identifying each modification to the Title III Stay agreed to by the Debtors during the relevant period and seeking retroactive Court approval of such modifications nunc pro tunc to the relevant modification date.

8.　　　The Court entered the following orders approving stipulations modifying the Title III Stay nunc pro tunc to the dates specified therein:

• First Omnibus Order Granting Relief From the Automatic Stay [ECF No. 2191], dated December 28, 2017.

• Second Omnibus Order Granting Relief From the Automatic Stay [ECF No. 2565], dated February 21, 2018.

•Third Omnibus Order Granting Relief From the Automatic Stay [ECF No. 2945], dated April 23, 2018.

•Order Supplementing Third Omnibus Order Granting Relief From the Automatic Stay [ECF No. 2988], dated May 1, 2018.

• Fourth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 3326], dated June 20, 2018.

• Fifth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 3925], dated August 21, 2018.

• Order Supplementing Fifth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 3940], dated September 17, 2018.

• Sixth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 4201], dated November 9, 2018.

• Seventh Omnibus Order Granting Relief From the Automatic Stay [ECF No. 4550], dated December 21, 2018.

• Eighth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 5146], dated February 15, 2019.

• Ninth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 6448], dated April 22, 2019.

• Tenth Omnibus Order Granting Relief From the Automatic Stay [ECF No. 7502], dated
June 18, 2019.

• Eleventh Omnibus Order Granting Relief From the Automatic Stay [ECF No. 8499], dated
August 19, 2019.

## **Relief Requested**

9.        By this Motion, the Debtors seek entry of an order, substantially in the form of the
Proposed Order, (i) retroactively approving the modifications to the Title III Stay for the parties
and actions set forth in Exhibit 1 to the Proposed Order, *nunc pro tunc* to the dates specified therein
and (ii) to the extent necessary, approving modifications to the Title III Stay for the parties and
actions as set forth in Exhibit 2, retroactive to the date of this Motion. As required by Paragraph
III.Q of the Case Management Procedures, Exhibit 1 and Exhibit 2 to the Proposed Order include
a brief description of the modification of the Title III Stay and case information (including case
number and court), as applicable, for each party.

10.      This Motion seeks to approve modifications to the Title III Stay listed in Exhibit 1
to the Proposed Order agreed to by the Debtors for the period from August 10, 2019 through
October 8, 2019 (the date of this Motion). Further, the Motion seeks to approve modifications to
the Title III Stay agreed to by the Debtors, through this Motion and without need for a stipulation
in accordance with Paragraph III.Q of the Case Management Procedures as detailed in Exhibit 2
to the Proposed Order.

## **Basis for Relief**

11.      Bankruptcy Code section 362(a), made applicable to Title III cases pursuant to
PROMESA section 301(a), provides, in relevant part, that the commencement of a Title III case
operates as a stay enjoining all persons and entities from, among other things: (i) commencing or

continuing any action or proceeding against a debtor that was or could have been brought against

the debtor before the commencement of the debtor's Title III case, (ii) taking any action to obtain

possession or control over property of the debtor, and (iii) attempting to collect, assess, or recover

on a prepetition claim. See 11 U.S.C. § 362(a). In Title III cases, in addition to the automatic stay

under section 362(a), Bankruptcy Code section 922(a) provides an additional stay of "any judicial,

administrative, or other action or proceeding against an officer or inhabitant of the municipality

that seeks to enforce a claim against the municipal debtor." 11 U.S.C. § 922(a).

12.     Bankruptcy Code section 362(d)(1) provides that a court may grant relief from the

automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to

grant relief from the automatic stay, courts generally examine numerous different factors,

including those set forth in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus.,

Inc.), 907 F.2d 1280 (2d Cir. 1990). See Brigade Leveraged Capital Structures Fund Ltd. v. García-

Padilla, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to

enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry

list of assorted factors." (citing Sonnax, 907 F.2d at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt.

Auth., 369 B.R. 87, 94–5 (D.P.R. 2007))).

13.     Additionally, under Bankruptcy Code section 105(a), made applicable to the Title

III cases by PROMESA section 301(a), the Court "may issue any order, process or judgment that

is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     Since implementing the Lift Stay Protocol on August 17, 2017, the Debtors have

received over 275 Lift Stay Notices seeking relief from the Title III Stay to prosecute various

prepetition actions. The Debtors and their advisors, in consultation with the Oversight Board,

carefully reviewed and analyzed each of the Lift Stay Notices and determined that it was

appropriate to modify the Title III Stay for the parties and actions listed in Exhibits 1 and 2 to the Proposed Order, *nunc pro tunc* to the dates specified therein.

15.     The seven (7) actions listed in Exhibit 2 to the Proposed Order involve (a) six condemnation proceedings commenced by HTA, and (b) one action commenced by an inmate against the Commonwealth for alleged violation of his constitutional rights.  As explained more fully in Exhibit 2 of the Proposed Order, the proposed modification of the automatic stay for these actions would allow such actions to proceed to judgment, but any execution and enforcement of any judgment would remain stayed.

16.     The Debtors believe that modifying the Title III Stay for these matters will alleviate the strain on the Title III cases and this Court, will further interests of judicial economy, and maximize the Debtors' resources for the benefit of all parties in interest by avoiding costly claim litigation in this Court on matters that are already well underway in other fora.  Importantly, the proposed consensual stay modifications will only allow the subject case to proceed to liquidation of any claim amount and will not permit any enforcement or collection of any claim arising prior to the respective Debtors' petition dates. Also, the Debtors reserve all rights, defenses, and protections with respect to any matters pending or that may arise in the Title III Cases, including the treatment of any claim arising from the subject actions under a plan of adjustment or otherwise in the Title III Cases.

17.     Accordingly, the Debtors request that the Court enter an order retroactively approving the modifications of the Title III Stay set forth on Exhibits 1 and 2 to the Proposed Order.

## **Notice**

18.     The Debtors have provided notice of this Motion in accordance with the Case

Management Procedures to the following parties: (a) the Office of the United States Trustee for

the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors'

bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against

COFINA; (d) counsel to the statutory committees appointed in these Title III cases; (e) the Office

of the United States Attorney for the District of Puerto Rico; (f) counsel to the Oversight Board;

(g) the Puerto Rico Department of Justice; (h) the Other Interested Parties;[3] (i) all parties filing a

notice of appearance in these Title III cases; and (j) the parties set forth in Exhibit 1 to the Proposed

Order. A copy of the Motion is also available on the Debtors' case website at

https://cases.primeclerk.com/puertorico/.

19.     The Debtors submit that, in light of the nature of the relief requested, no other or

further notice need be given.

## **No Prior Motion**

20.     The Debtors have not made any prior motion for the relief sought in this Motion to

this or any other court.

*Remainder of Page Intentionally Left Blank*

---

[3]     The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds
issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or
guaranteed by the Debtors.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order in the form attached hereto as **Exhibit A**, retroactively approving the modifications of the Title III Stay set forth on Exhibits 1 and 2 to the Proposed Order, and granting such other and further relief as the Court may deem proper.

Dated: October 8, 2019                    Respectfully submitted,
       San Juan, Puerto Rico

                                          /s/ *Martin J. Bienenstock*

                                          Martin J. Bienenstock (admitted *pro hac vice*)
                                          Brian S. Rosen (admitted *pro hac vice*)
                                          Paul V. Possinger (admitted *pro hac vice*)
                                          Ehud Barak (admitted *pro hac vice*)
                                          Maja Zerjal (admitted *pro hac vice*)
                                          **PROSKAUER ROSE LLP**
                                          Eleven Times Square
                                          New York, NY 10036
                                          Tel: (212) 969-3000
                                          Fax: (212) 969-2900

                                          *Attorneys for the Financial Oversight
                                          and Management Board as Representative
                                          for the Debtors*

                                          /s/ *Hermann D. Bauer*

                                          Hermann D. Bauer
                                          **O'NEILL & BORGES LLC**
                                          250 Muñoz Rivera Ave., Suite 800
                                          San Juan PR 00918-1813
                                          Tel: (787) 764-8181
                                          Fax: (787) 753-8944

                                          *Co-Attorneys for the Financial Oversight
                                          and Management Board as Representative
                                          for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF

participants in this case.

/s/ Hermann D. Bauer

Hermann D. Bauer

**Exhibit A**

**Proposed Order**

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. _____ |

## TWELFTH OMNIBUS ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the *Debtors' Twelfth Omnibus Motion for Approval of Modifications to the Automatic Stay* (the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306; and it appearing that venue in this district is proper pursuant to PROMESA section 307; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the relief requested herein

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      Pursuant to Bankruptcy Code sections 362(d)(1) and 105(a), made applicable to the Title III cases by PROMESA section 301(a), the Title III Stay is modified as set forth in the attached Exhibit 1 for matters subject to prior stipulations among or between the applicable Debtor and counterparty(ies), *nunc pro tunc* to the dates specified therein.

3.      Pursuant to Bankruptcy Code sections 362(d)(1) and 105(a), the Title III Stay, to the extent necessary, is modified as set forth in the attached Exhibit 2 for certain parties and cases agreed to by the Debtors, *nunc pro tunc* to October 8, 2019 (the date of the Motion).

4.      All rights, defenses, and protections of each of the Debtors with respect to any matters pending or that may arise in their respective Title III Cases, including the treatment of any claim arising from the matters set forth on Exhibits 1 and 2 hereof under a plan of adjustment or otherwise in the Title III Case are hereby reserved.  Nothing in this Order or the Debtors' consent to stay modification as set forth in the Motion shall be deemed to be, or construed as, (a) an admission by any party of any liability, wrongdoing, act, or matter or that any claim or defense has or lacks merit; (b) a waiver of the Debtors' rights to dispute, contest, setoff, or recoup any claim, including any claims asserted in the subject actions, or assert any related rights, claims, or defenses and all such rights are reserved; or (c) an approval or assumption of any agreement or contract between the parties under Bankruptcy Code section 365.

5.      Notwithstanding any applicability of any Federal Rule of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      The Court shall retain jurisdiction to hear and determine all matters

(a) arising from or related to the implementation, enforcement, or interpretation of this Order and

(b) concerning the execution or enforcement in the Title III cases of any judgment entered in a

prepetition ordinary course civil action where the Debtors agreed to modify or lift the Title III Stay

to allow the action to proceed to judgment by the underlying court.

      7.     This Order resolves Docket Entry No. ___ in Case No. 17-3283.

Dated: _____

_____
HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

**TITLE III STAY MODIFICATIONS AGREED TO BY THE DEBTORS
FROM AUGUST 10, 2019 THROUGH OCTOBER 8, 2019**

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | STIPULATION DATE |
|---|---|---|---|---|---|
| 1. | *Vázquez Quintana v. Liana Fiol Matta, et als.,*<br><br>Civil No. 19-cv-1491-JAG<br><br>United States District Court for the District of Puerto Rico<br><br>Civil Action in damages | Enrique Vázquez Quintana | Commonwealth | The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment before the District Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. | September 10, 2019 |
| 2. | *Juan Carlos Perez-Irene And Others v. Puerto Rico Electric Power Authority*<br><br>Case No. CC-2019-0515<br><br>Supreme Court of Puerto Rico<br><br>Personal Injury Action | Juan Carlos Perez-Irene, Chinese Oyola Meléndez, Ismael Pérez-Padilla, Yomaira Huertas-Marrero, for herself and in representation of her minor daughters ASH and GSH, Betsy Rivera-Rivera, Carlos Manuel Sánchez-Coriano, Carlos Javier Sánchez-Rivera, Verónica Morales-Ayala, José Claudio-Ramírez, Cynthia Rivera-Muñoz, Pablo | Puerto Rico Electric Power Authority | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Supreme Court; provided, however, that the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages against PREPA, if any, or any other Title III Debtor. | September 11, 2019 |

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | STIPULATION DATE |
|---|---|---|---|---|---|
| | | Claudio-Casiano, and María Judith Ramírez-Salinas | | | |
| 3. | *Ares, et al. v. Secretario del Trabajo,*<br><br>Civil No. SJ2017-2280<br><br>Voluntary Retirement / Employment Action | Gilberto Ares Candelaria, Nilda Barbosa Rodríguez, Ana Collazo Guzmán, Arnaldo Colón Colón, Melvin Colón Vélez, Ángel De Jesús Fernández, Maribel García Cruz, Carlos González Juarbe, Marilyn Hernández Santiago, Carmen López Hernández, Tomás Montañez Rosado, Julia Peña De Jesús, Evelyn Pratts Collazo, Norma Rivera Nieves, Edna Sáez Sánchez, Manuel Sánchez Incle, Juan Sierra Ortega | Commonwealth | The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment before the Prepetition Court, Court of Appeals of Puerto Rico and Supreme Court of Puerto Rico; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. | September 25, 2019 |
| 4. | *José E. López Medina, et al v. Puerto Rico Police Department, et al,*<br><br>Civil No. KLRX201800035 | José E. López Medina | Commonwealth | The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment before the Court of Appeals of Puerto Rico and the Supreme Court of Puerto Rico; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, | September 26, 2019 |

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | STIPULATION DATE |
|---|---|---|---|---|---|
| | Court of Appeals of Puerto Rico<br><br>Employment Action | | | including, but not limited to, the execution and enforcement of any judgment for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. | |
| 5. | *Vergil Almodóvar Sánchez v. Policía de Puerto Rico, et al.*,<br><br>Civil No. 17P-119<br><br>Comisión de Investigación, Procesamiento y Apelación ("CIPA")<br><br>Employment Action | Vergil Almodóvar Sánchez | Commonwealth | The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment before CIPA, the Court of Appeals of Puerto Rico, and the Supreme Court of Puerto Rico; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. | October 3, 2019 |

## EXHIBIT 2

## TITLE III STAY MODIFICATIONS AGREED TO BY THE DEBTORS[6]

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | MODIFICATION DATE |
|---|---|---|---|---|---|
| 1. | *ACT v. Samuel Hernandez Ortiz*<br><br>Case No. K EF2016-0050 (1003)<br><br>Puerto Rico Court of First Instance<br><br>Condemnation Proceeding | Samuel Hernandez Ortiz | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | October 8, 2019 |
| 2. | *ACT v. Sucn. Juan Lao Negron Medina*<br><br>Case No. K EF2016-0064 (1002)<br><br>Puerto Rico Court of First Instance<br><br>Condemnation Proceeding | Sucn. Juan Lao Negron Medina | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | October 8, 2019 |
| 3. | *ACT v. Ricardo Alicea Otero*<br><br>Case No. K EF2004-1251 (1002)<br><br>Puerto Rico Court of First Instance | Ricardo Alicea Otero | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, | October 8, 2019 |

---

[6]    Capitalized terms used herein that are not otherwise defined shall have the meaning given to them in the *Debtors' Twelfth Omnibus Motion for Approval of Modifications of the Automatic Stay*. "Prepetition Court" shall mean the Puerto Rico Court of First Instance. "Prepetition Action" shall mean the action identified in the column, "Case Information."

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | MODIFICATION DATE |
|---|---|---|---|---|---|
| | Condemnation Proceeding | | | but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | |
| 4. | *ACT v. Sucn. Victor Santiago Ortiz*<br><br>Case No. K EF 2014-0075 (1003)<br><br>Puerto Rico Court of First Instance<br><br>Condemnation Proceeding | Sucn. Victor Santiago Ortiz | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | October 8, 2019 |
| 5. | *ACT v. Sucn. Victor Santiago Ortiz*<br><br>Case No. K EF 2014-0076 (1002)<br><br>Puerto Rico Court of First Instance<br><br>Condemnation Proceeding | Sucn. Victor Santiago Ortiz | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | October 8, 2019 |
| 6. | *ACT v. Borinquen Broadcasting Co.*<br><br>Case No. K EF 2016-0048 (1002)<br><br>Puerto Rico Court of First Instance<br><br>Condemnation Proceeding | Borinquen Broadcasting Co. | HTA | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to judgment before the Prepetition Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages and provisional remedies against HTA or | October 8, 2019 |

| | CASE INFORMATION | MOVANT | DEBTOR | BRIEF DESCRIPTION OF THE MODIFICATION | MODIFICATION DATE |
|---|---|---|---|---|---|
| | | | | any other Title III Debtor, and any requirement for HTA to supplement any amounts consigned to the Prepetition Court. | |
| 7. | *Alexis López López v. ELA*, et als, <br><br> Case No. D DPR2012-0851 <br><br> Court of First Instance, Bayamón Superior Part <br><br> Constitutional Rights Action (pro se inmate) | Alexis López López | Commonwealth | The Title III Stay is hereby modified solely to the limited extent necessary to enable the Prepetition Action to proceed to final judgment before the Prepetition Court, Court of Appeals of Puerto Rico, and Supreme Court of Puerto Rico; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. | October 8, 2019 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 8027-1, 8720**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**This Stipulation relates only to the Commonwealth.** |

**STIPULATION MODIFYING THE AUTOMATIC STAY BETWEEN THE
COMMONWEALTH AND GILBERTO ARES CANDELARIA, NILDA BARBOSA
RODRÍGUEZ, ANA COLLAZO GUZMÁN, ARNALDO COLÓN COLÓN, MELVIN
COLÓN VÉLEZ, ÁNGEL DE JESÚS FERNÁNDEZ, MARIBEL GARCÍA CRUZ,
CARLOS GONZÁLEZ JUARBE, MARILYN HERNÁNDEZ SANTIAGO, CARMEN
LÓPEZ HERNÁNDEZ, TOMÁS MONTAÑEZ ROSADO, JULIA PEÑA DE JESÚS,
EVELYN PRATTS COLLAZO, NORMA RIVERA NIEVES, EDNA SÁEZ SÁNCHEZ,
<u>MANUEL SÁNCHEZ INCLE, JUAN SIERRA ORTEGA</u>**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

This stipulation (the "Stipulation") is made as of September 25, 2019, by and between the Commonwealth of Puerto Rico (the "Commonwealth") and Gilberto Ares Candelaria, Nilda Barbosa Rodríguez, Ana Collazo Guzmán, Arnaldo Colón Colón, Melvin Colón Vélez, Ángel De Jesús Fernández, Maribel García Cruz, Carlos González Juarbe, Marilyn Hernández Santiago, Carmen López Hernández, Tomás Montañez Rosado, Julia Peña De Jesús, Evelyn Pratts Collazo, Norma Rivera Nieves, Edna Sáez Sánchez, Manuel Sánchez Incle, Juan Sierra Ortega (collectively, "Movants" and together with the Commonwealth, the "Parties"), plaintiffs in the case captioned *Ares, et al. v. Secretario del Trabajo*, Civil No. SJ2017-2280 (the "Prepetition Action"), pending before the Puerto Rico Court of First Instance, San Juan Part (the "Prepetition Court").[2]

## RECITALS

**WHEREAS**, on May 3, 2017, the Commonwealth, by and through the Oversight Board, as the Commonwealth's representative pursuant to PROMESA section 315(b), filed a petition with the United States District Court for the District of Puerto Rico (the "District Court") under title III of PROMESA (the "Title III Case");

**WHEREAS**, on August 17, 2017, the District Court entered the *Order Amending Case Management Procedures* (as amended from time to time, the "Case Management Order"), which revised the *Notice, Case Management and Administrative Procedures* to implement a protocol (the "Lift Stay Protocol") for filing motions for relief from the automatic stay set forth in Bankruptcy

---

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Commonwealth to enter into this Stipulation.

Code sections 362(a) and 922(a),[3] as made applicable to the Title III Case by PROMESA section 301(a) (the "Title III Stay") [ECF No. 8027];

WHEREAS, under the Lift Stay Protocol, Movants are required to (a) send notice (the "Lift Stay Notice") to counsel to the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") to advise them of Movants' intent to seek relief from the Title III Stay at least fifteen (15) business days prior to filing a motion seeking such relief (the "Lift Stay Notice Period") and (b) meet and confer with the Commonwealth during the Lift Stay Notice Period;

WHEREAS, on August 23, 2019, Movants sent their Lift Stay Notice to the Oversight Board and AAFAF seeking relief from the Title III Stay in order to allow Movants to proceed with the Prepetition Action;

WHEREAS, on September 17, 2019, Movants filed their *Motion for Relief from Stay in Ares et al v. Secretary of Labor after Completion of Conferral Process* [ECF No. 8720] (the "Motion") seeking relief from the Title III Stay to allow the Prepetition Action to proceed to judgment "declaring the rights of the parties and if appropriate, to ordering the Secretary of Labor to comply with his ministerial duties". Motion ¶ 24.

WHEREAS, following the filing of the Motion, the Parties have resolved Movants' request for modification of the Title III Stay.

---

[3]   In a title III case, Bankruptcy Code section 922 extends the self-executing provisions of Bankruptcy Code section 362 to, among other things, actions against officers and inhabitants of the debtor to enforce claims against the debtor. *See Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] ("For the avoidance of doubt, the protections of Bankruptcy Code section 922(a)(1) with respect to officers and inhabitants of the Debtors, as set forth in paragraph 4(a) [of the Order], apply in all respects to the Debtors' officers in both their official and personal capacities with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors.").

3

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among Commonwealth and Movants, through their respective counsel, each of whom represent and warrant they possess the requisite authority to bind the respective Parties hereto, as follows:

1.      The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment before the Prepetition Court, Court of Appeals of Puerto Rico, and Supreme Court of Puerto Rico; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor.

2.      Nothing contained in this Stipulation shall operate as a waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III Debtors of any claim or claims by anyone other than Movants as provided for herein and the Commonwealth reserves all rights, defenses, and protections with respect to any and all matters pending or that may arise in the Title III Case, including the treatment of any claim arising from the Prepetition Action under a plan of adjustment or otherwise in the Title III Case.

3.      The Commonwealth and Movants each represent and warrant that they are properly and fully empowered to enter into and execute this Stipulation, that they know of no contractual commitment or legal limitation of, impediment to, or prohibition against their entry into this Stipulation, and that the Stipulation is legal, valid, and binding upon them.

4.      Neither this Stipulation nor any statement made, action, or position taken, or document prepared or executed in connection with the negotiation, execution, or implementation of this Stipulation shall be deemed to be, or construed as, (a) an admission by any party of any liability, wrongdoing, act, or matter or that any claim or defense has or lacks merit; (b) a waiver

4

of the Commonwealth's rights to dispute, contest, setoff, or recoup any claim, including any claims asserted by Movants in the Prepetition Action, or assert any related rights, claims, or defenses and all such rights are reserved; (c) a waiver of Movants' or the Commonwealth's rights to determine and/or contest the applicability of a discharge to any judgment that may be issued in the Prepetition Action pursuant to 11 U.S.C. § 944, as made applicable to these proceedings by virtue of PROMESA section 301(a); or (d) an approval or assumption of any agreement or contract between the parties under Bankruptcy Code section 365.

5.      Nothing in this Stipulation shall be deemed or construed as (a) creating or conferring any right upon any persons or entities (other than Movant as expressly provided in this Stipulation), or (b) evidence of any willingness or obligation on the Commonwealth's part to consent to any other or future modifications of or relief from the Title III Stay with respect to any persons or entities.

6.      This Stipulation contains the entire agreement by and between the Parties with respect to the subject matter hereof, and all prior understandings or agreements, if any, are merged into this Stipulation.

7.      This Stipulation shall be construed and interpreted in accordance with the laws of Puerto Rico.  For purposes of construing this Stipulation, neither of the Parties shall be deemed to have been the drafter of the Stipulation.

8.      Electronic copies of signatures on this Stipulation are acceptable, and an electronic copy of a signature on this Stipulation is deemed an original. This Stipulation may be executed in counterparts, each of which is deemed an original, but when taken together constitute one and the same document.

9.      This Stipulation may not be modified other than by a signed writing executed by the parties hereto.

10.      The District Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

11.      This Stipulation shall be immediately effective and enforceable upon execution by the Parties hereto.

*Remainder of Page Intentionally Left Blank*

**IN WITNESS WHEREOF** and in agreement herewith, by and through their respective

counsel, the Parties have executed and delivered this Stipulation as of the date first set forth above.


**DENISSE N. LONGO-QUIÑONES**
Secretary of Justice


**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorney for the Commonwealth of Puerto Rico*

/s/ _____

**JUDITH BERKAN**
Calle O'Neill G-11
San Juan, PR 00918-2301
787-764-0814
berkanj@microjuris.com
berkanmendez@gmail.com

*Attorney for Movants*

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

| | |
|---|---|
| GILBERTO ARES CANDELARIA, *et al.,* **Peticionarios,** v. DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS, **Peticionado.** | **CIVIL NÚM.:** SJ2017CV02199 **SALÓN DE SESIONES:** 907 **SOBRE:** *Mandamus, Derecho de Participar en el Programa de Preretiro al amparo de la Ley 211-2015* |

## *SENTENCIA*

### I.

El 31 de octubre de 2017, los demandantes Gilberto Ares Candelaria; Nilda P. Barbosa Rodríguez; Ana E. Collazo Guzmán; Arnaldo Coló Colón; Melvin Colón Vélez; Ángel L. De Jesús Fernández; Maribel García Cruz; Carlos González Juarbe; Marilyn Hernández Santiago; Carmen D. López Hernández; Tomás Montañez Rosado; Julia T. Peña De Jesús; Evelyn Pratts Collazo; Norma I. Rivera Nieves; Edna Sáez Sánchez; Manuel F. Sánchez Incle, y Juan D. Sierra Ortega presentaron la Petición de Mandamus del caso de epígrafe contra el entonces Secretario del Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico.[1] Los demandantes allegaron que cumplieron todos los procedimientos para acogerse al *Programa de Preretiro Voluntario* y que, habiéndose determinado que eran elegibles, el Secretario del DTRH no tiene discreción para denegarles a los demandantes los derechos y beneficios.

El 15 de noviembre de 2017, la parte demandada compareció por escrito y solicitó la desestimación del pleito porque este Tribunal carecía de jurisdicción por falta de parte indispensable, puesto que el Estado Libre Asociado de Puerto Rico no había sido emplazado. La demandada sostuvo que también procedía desestimar este caso porque la

---

[1] El 4 de febrero de 2020, este Tribunal dictó *Sentencia Parcial* desestimando con perjuicio las reclamaciones de los demandantes Nilda Barbosa Rodríguez, Ángel L. De Jesús Fernández, Carmen D. López, Hernández y Edna Sáez Sánchez, ello puesto que renunciaron a su empleo y se acogieron a otro programa de retiro.

petición de *mandamus* no estaba juramentada por todos los demandantes. De igual modo, adujo que no procedía expedir el auto de *mandamus* toda vez que la Ley 211-2015 torga discreción al Secretario del DTRH para determinar la elegibilidad de empleados para recibir los beneficios del *Programa de Preretiro Voluntario*. El 6 de diciembre de 2017 denegamos la solicitud de desestimación por falta de parte indispensable en vista de que la parte demandada se sometió voluntariamente a la jurisdicción del Tribunal mediante la presentación de alegaciones y argumentos sobre los méritos de la petición de *mandamus* de epígrafe.

El 11 de diciembre de 2017 fue celebrada la vista de *mandamus*, de conformidad con la Regla 54 de Procedimiento Civil. Comparecieron los representantes legales de las partes y expusieron ampliamente sus argumentos. Durante la vista, la representación legal de la parte demandante entregó un documento firmado por todos sus representados en el que ratificaban su autorización para la presentación de este caso. De este modo subsanaron las deficiencias señaladas por la parte demandada en relación con el juramento requerido por la Regla 54 de Procedimiento Civil.

El 29 de diciembre de 2017, este Tribunal expidió una *Resolución* determinando —en síntesis— que no procedía desestimar el pleito toda vez que, "de los demandantes probar que el Departamento del Trabajo y Recursos Humanos obtuvo la aprobación final por parte de la OGP y que la agencia les notificó a éstos su determinación final de elegibilidad al *Programa de Preretiro Voluntario*, el Secretario del Departamento del Trabajo y Recursos Humanos no tendría discreción en dicha etapa para denegarle a los demandantes el ingreso al mismo".[2] Asimismo, en dicha *Resolución*, ordenamos a "las partes de forma simultánea para acreditar si han cumplido con el trámite dispuesto detalladamente en dicha resolución con la documentación de apoyo, en cuanto a cada uno de los demandantes y, si la controversia es una de estricto derecho, por lo que podía ser sometida por el expediente o si por el contrario era necesaria la celebración de una *vista evidenciaria*. El 4 de enero de 2018, la parte demandada solicitó la reconsideración de

---

[2] Resolución (29 de diciembre de 2017), en las págs. 11-12.

la *Resolución* de 29 de diciembre de 2017. Denegamos esta solicitud de reconsideración mediante la *Resolución* de 5 de enero 2018.

El 12 de enero de 2018, la parte demandada presentó una *Petición de Certiorari* y una *Moción en Auxilio de Jurisdicción* ante el Tribunal de Apelaciones. Ese mismo día, el Foro Intermedió expidió una *Resolución* mediante la cual ordenó la paralización inmediata de los procedimientos ante este Tribunal hasta que fuera resuelta la petición de certiorari ante su consideración. El 28 de febrero de 2018, el Tribunal de Apelaciones denegó la *Petición de Certiorari* de la demandada y dejó sin efecto la paralización de los procedimientos ante este Tribunal. El 27 de marzo de 2018, el Foro Intermedio denegó la solicitud de reconsideración presentada por el DTRH. El mandato del Tribunal de Apelaciones fue notificado el 4 de junio de 2018.

El 20 de abril de 2018, la parte demandada presentó una moción en la cual avisó la paralización de este pleito al tenor de las secciones 362(a) y 922(a) del Código de Quiebra, según incorporadas por referencia bajo la sección 301(a) de PROMESA. Ese mismo día, este Tribunal dictó *Sentencia* paralizando los procedimientos de este caso y reservamos nuestra jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejada sin efecto.

Alrededor de dieciocho meses de este Tribunal haber decretado la paralización de los procedimientos de epígrafe, el 1 de octubre de 2019 la parte demandada presentó una *Moción Informativa Sobre Acuerdo Alcanzado Para Modificar el Alcance de la Paralización Automática*. En la misma, notificó al Tribunal lo siguiente:

> Mediante la presente moción, el Estado confirma que aceptó que se modifique la paralización automática establecida por la sección 301 de PROMESA para **los únicos fines de permitirle a los demandantes litigar su caso hasta que se llegue a una determinación final en el Tribunal de Primera Instancia, el Tribunal Apelativo y/o el Tribunal Supremo de Puerto Rico.** Véase, **Exhibit I – Acuerdo.**

> De conformidad con el "Amended Notice, Case Management and Administrative Procedures", el Estado puede entrar en estipulaciones que modifiquen la paralización automática, sin la aprobación inmediata del tribunal, las cuales se presentarán al Tribunal que atiende el caso de Título III cada sesenta (60) días, para su aprobación retroactiva.

> El Estado se reserva todos los derechos, defensas y protecciones bajo el Título III de PROMESA con respecto, incluyendo mas no limitándose a, la ejecución final de la Sentencia, asuntos que estén pendientes o que

puedan surgir en el caso del Título III de PROMESA, incluyendo cualquier reclamación que surja de la presente demanda, bajo un plan de ajustes o de otra manera.[3]

Luego de algunos trámites procesales, el Tribunal señaló una vista para el 5 de diciembre de 2019. En la misma, se discutieron los asuntos pendientes del caso. El Tribunal concedió a la parte demandada un término de cinco días para que proveyera la información y documentación cuya producción fue ordenada en la *Resolución* de 29 de diciembre de 2017. Antes de culminar con los procedimientos, el Tribunal señaló una vista de conformidad con la Regla 54 de Procedimiento Civil para el martes, 21 de enero de 2020.

Según solicitado, la vista señalada para el 21 de enero de 2020 fue convertida en una vista evidenciaria. Llegado el día para la celebración de la misma, y luego de atender algunos asuntos procesales, el Tribunal dejó señalado el caso para la continuación de esta vista evidenciara para los días 28 y 30 de enero de 2020. Así las cosas, se procedió a tomar juramento al primer testigo de la parte demandante, Tomas Montañez Rosado. La parte demandante comenzó a presentar su prueba testifical, basado en el testimonio del señor Montañez Rosado, quien fue interrogado por la licenciada Berkan.

A la continuación de la vista evidenciara, pautada para el 28 de enero de 2020, la representación legal de la parte demandada informó que no estaría contrainterrogando al primer testigo de la parte demandante. Posteriormente, se tomó juramento a los siguientes testigos, Sr. Melvin Colón Nieves y Maribel García Cruz, quienes fueron interrogados por la licenciada Berkan. La representación legal de la parte demandada tampoco contrainterrogó a estos testigos. Así las cosas, la abogada de la parte demandante informó que no presentaría testigos adicionales y dejó sometido el asunto. La parte demandada no presentó prueba testifical. Por resultar innecesario, el Tribunal dejó sin efecto el señalamiento para el 30 de enero de 2020. El Tribunal concedió hasta el 11 de febrero de 2020 para que las partes presentaran, simultáneamente y si fuera necesario, un memorando de derecho.

---

[3] Moción Informativa Sobre Acuerdo Alcanzado Para Modificar el Alcance de la Paralización Automática ¶¶ 5-7 (1 de octubre de 2019) (énfasis en el original*).*

El 11 de febrero de 2020, ambas partes presentaron sus respectivos memorandos de derecho. Así pues, contando con el beneficio de la comparecencia de las partes y habiendo aquilatado la prueba presentada por las partes, este Tribunal está en posición de resolver y, en consecuencia, formula las siguientes:

## II.    DETERMINACIONES DE HECHOS

1.    Todos los demandantes recibieron una Notificación de Elegibilidad para el Programa de Preretiro, de conformidad con el artículo 12(b)(4) de la Ley 211-2015.

2.    Todos los demandantes recibieron una Notificación de Elegibilidad para el Programa de Preretiro, de conformidad con el artículo 12(b)(4) de la Ley 211-2015.

3.    Todos los demandantes suscribieron el Formulario de Elección para la Participación en el Programa de Preretiro Voluntario, de conformidad con la Sección 3, inciso 1, Parte D de la Carta Circular 129-16.

4.    Todos los demandantes constituían un ahorro para la Agencia de haber sido preretirados en el 2016.

5.    Según surge de la Parte A de la Tasación de Implementación, requerida al DTRH por la Sección 1, inciso 4, Parte D de la Carta Circular 129-16, el ahorro neto anual por empleado para el DTRH es:

    a.  El preretiro de **Ana Collazo Guzmán** hubiese constituido una economía de $13,989.92 (Neto anual).

    b.  El preretiro de **Arnaldo Colón Colón** hubiese constituido una economía de $10,093.42 (Neto anual).

    c.  El preretiro de **Carlos González Juarbe** hubiese constituido una economía de $10,155.18 (Neto anual).

    d.  El preretiro de **Evelyn Pratts Collazo** hubiese constituido una economía de $11,227.10 (Neto anual).

    e.  El preretiro de **Gilberto Ares Candelario** hubiese constituido una economía de $10,962.43 (Neto anual).

    f.  El preretiro de **Juan David Sierra Ortega** hubiese constituido una economía de $10,605.12 (Neto anual).

    g.  El preretiro de **Julita Peña De Jesús** hubiese constituido una economía de $13,088.62 (Neto anual).

    h.  El preretiro de **Manuel Sánchez Incle** hubiese constituido una economía de $17,871.78 (Neto anual).

    i.  El preretiro de **Maribel García Cruz** hubiese constituido una economía de $12,396.07 (Neto anual).

    j.  El preretiro de **Marilyn Hernández Santiago** hubiese constituido una economía de $22,170.76 (Neto anual).

    k. El preretiro de **Melvin Colón Vélez** hubiese constituido una economía de $15,935.26 (Neto anual).

    l. El preretiro de **Norma Rivera Nieves** hubiese constituido una economía de $10,411.03 (Neto anual).

    m. El preretiro de **Tomás Montañez Rosado** hubiese constituido una economía de $18,555.52 (Neto anual).

6. El documento correspondiente a la Parte A de la Tasación de Implementación, requerida al DTRH por la Sección 1, inciso 4, Parte D de la Carta Circular 129-16, está fechado al 9 de marzo de 2016.

7. Surge de la Parte B de la Tasación de Implementación, requerida a la ASR por la Sección 2, Parte D de la Carta Circular 129-16, todos los demandantes tienen el tiempo de elegibilidad en cuanto al sistema de retiro para participar del programa de preretiro.

8. En el documento correspondiente a la Parte B de la Tasación de Implementación, requerida a la ASR por la Sección 2, Parte D de la Carta Circular 129-16, la ASR certificó que todos los demandantes cumplían con el tiempo de elegibilidad para participar en el programa.

9. Este documento requerido a la ASR está fechado al 17 de octubre de 2016.

10. Según requerido por la Sección 3, inciso (3), Parte D de la Carta Circular 129-16, el DTRH preparó el documento correspondiente a la Parte C de la Tasación de Implementación para someterlo ante la OGP. Este documento está fechado al 15 de diciembre de 2016.

11. En el referido documento con la Parte C de la Tasación de Implementación, el DTRH excluyó a los demandantes en el documento correspondiente a la Parte C de la Tasación de Implementación.

12. Los demandantes también fueron excluidos de los documentos titulados "Costo Proyectado del Empleado en el Servicio Público sin Programa de Preretito [sic] Voluntario" y "Costo Proyectado Beneficios al Empleado Participante Programa Preretiro Conforme Art. 6 de Ley 211-2015". Estos documentos corresponden a los Anejos 1 y 2, respectivamente, que la Carta Circular 129-16 requiere que se incluyan con la Parte C de la Tabla de Implementación.

13.     El DTRH notificó a todos los demandantes, mediante carta fechada al 27 de diciembre de 2016, que su participación en el Programa de Preretiro sería pospuesta y que éstos pasarían a una segunda fase.

14.     La segunda ronda mencionada en la carta fechada el 27 de diciembre de 2016 nunca se efectuó.

15.     En la carta fechada al 27 de diciembre de 2016, el DTRH informó que recibió la notificación de la OGP sobre la solicitud del DTRH para implementar el Programa de Preretiro.

16.     En dicha misiva, el DTRH también expuso que la OGP informó "de varios factores que limitaban la generación de ahorros significativos".

17.     En dicha carta de 27 de diciembre de 2016, el DTRH no identificó los "factores que limitaban la generación de ahorros significativos".

18.     No existe notificación de OGP denegando a alguno de los demandantes para participar del Programa.

19.     No existe notificación de OGP en cuanto a que los demandantes no cualifican para participar del programa.

20.     Este Tribunal le dio entera credibilidad a los testimonios de los testigos de la parte demandante en cuanto a la negativa de la parte demandada de sacar a los demandantes del Plan de Pre-Retiro. Esto no era parte de su discreción.  Maxime cuando la ASR certificó que todos los demandantes cumplían con el tiempo de elegibilidad para participar en el programa.

### III.     CONCLUSIONES DE DERECHO

Según detallamos en la *Resolución* de 29 de diciembre de 2017, la *Ley del Programa de Preretiro Voluntario*, según enmendada, establece en su exposición de motivos que su "implementación no tendrá un impacto adverso en las arcas del Sistema de Retiro del ELA ni de las entidades gubernamentales que se acojan al mismo". [4] Sobre el procedimiento a seguir en cumplimiento de la ley dispone que:

---

[4] Exposición de motivos, Ley del Programa de Preretiro Voluntario, Ley Núm. 211 de 8 de diciembre de 2015.

Primeramente, la entidad gubernamental que cualifique para, y esté interesada en, acogerse al Programa deberá presentar una solicitud a esos efectos ante la Oficina de Gerencia y Presupuesto (OGP). Esta última evaluará la viabilidad de que los empleados de la entidad gubernamental se acojan al Programa en coordinación con la Administración de los Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Judicatura. Certificada la elegibilidad de los empleados, la OGP solo aprobará la solicitud, de determinar que ello representará un ahorro para la entidad gubernamental. Una vez cualificada la entidad gubernamental y aprobadas las solicitudes de sus empleados, la responsabilidad por el pago de los beneficios dispuestos por esta Ley no recaerá en el Sistema de Retiro del ELA, sino en la entidad gubernamental para la cual trabaje el empleado al momento de acogerse al Programa. Es decir, las cantidades a pagarse como producto de este Programa provienen, en su totalidad, de las cantidades identificadas y separadas por las diversas agencias del Estado Libre Asociado de Puerto Rico para ese propósito.[5]

El Artículo 4 de la Ley 211-2015, según enmendada, sobre elegibilidad de los patronos para participar en el Programa establece que:

> **Toda agencia o municipio, excepto la Oficina del Contralor y la Rama Judicial, deberá realizar y presentar <u>a la OGP</u>, en un término no mayor de sesenta (60) días desde que entre en vigor esta Ley, una <u>tasación de implementación</u> del Programa de Prerretiro Voluntario.** En el caso de la Oficina del Contralor, la Contralora deberá realizar y presentar ante los presidentes de los cuerpos legislativos una tasación de implementación de un programa de prerretiro en su agencia. En el caso de la Rama Judicial, la Oficina de Administración de los Tribunales deberá realizar y presentar ante la Juez Presidente del Tribunal Supremo una tasación de implementación de un programa de prerretiro en su agencia. La agencia o municipio podrá solicitar la asistencia técnica de la OGP, así como el asesoramiento de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos del Estado Libre Asociado de Puerto Rico (OCALARH), libre de costo, para confeccionar dicha tasación. **De surgir de la tasación que acogerse al Programa redundará en un ahorro en el gasto promedio de nómina y beneficios marginales para la Agencia, el patrono <u>deberá diseñar el Plan Patronal para el Prerretiro.</u>**[6]

La Ley 211-2015, otorga al Director de la Oficina de Gerencia y Presupuesto (OGP) todos los poderes necesarios y convenientes para implantar la ley.[7] Éste podrá incluso requerir a las agencias que tomen todos los actos que la OGP estime necesarios y convenientes para implantar el Programa y podrá requerir a las Autoridades Nominadoras que sometan toda la información que la OGP estime necesaria **para que pueda evaluar toda solicitud de <u>declarar cualquier puesto inelegible</u> para participar en**

---

[5] *Id*.

[6] Ley del Programa de Prerretiro Voluntario, art. 4, Ley Núm. 211 de 8 de diciembre de 2015.

[7] *Id*. art. 12 (b)

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 61 of 119

SJ2017CV02199                                                          Pág. **9** de **18**

**el Programa**.[8] A estos fines, el Director de la OGP establecerá el procedimiento para la implantación del Programa y las disposiciones de la ley y preparará el Formulario de Elección.[9]

El procedimiento para la implementación de la ley deberá incluir, como mínimo, lo siguiente: (1) La entidad gubernamental que cualifique y esté interesada en acogerse al Programa deberá presentar una solicitud a esos efectos ante la OGP, incluyendo la *Tasación de Implementación* y el *Plan Patronal de Preretiro*; (2) La OGP deberá evaluar en un término no mayor de 60 días, prorrogables por 30 días adicionales, la viabilidad de que la entidad gubernamental se acoja al Programa y solo aprobará la solicitud de determinar que ello representará un ahorro para la agencia. **De no ser aprobada la solicitud <u>se le concederá a la agencia</u> un término no mayor de 30 días <u>para enmendar el Plan Patronal de Preretiro</u>**, el cual la OGP deberá evaluar en un término no mayor de 60 días; (3) **La Administración de los Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico** (ASR) certificará la elegibilidad de los empleados que soliciten al Programa, en cuanto a los años de servicios cotizados, y (4) Se notificará al empleado que es elegible para solicitar al Programa. Para ejercer la opción de participar en el Programa, el empleado tendrá un término de 30 días calendario a partir de la notificación.

Conforme a lo anterior, el 20 de enero de 2016, el Director de la OGP, Luis F. Cruz Batista emitió la *Carta Circular Núm. 129-16 sobre el Procedimiento Para la Implementación de la Ley Núm. 211-2015, Conocida Como "Ley del Programa de Preretiro Voluntario"* (Carta Circular). En la misma se profundiza el procedimiento a seguir por las distintas entidades gubernamentales, la OGP y la ASR en cumplimiento con la encomienda legislativa. Su primera y segunda secciones versan sobre la elegibilidad de los empleados y las entidades gubernamentales respectivamente. En la Parte C establece, en lo pertinente, que:

> 1. Toda agencia o municipio **deberá realizar compulsoriamente una Tasación de Implementación del Programa de Preretiro Voluntario <u>para</u>**

---

[8] *Id.*

[9] *Id.*

<u>determinar la viabilidad de ofrecer una oportunidad de preretiro a sus empleados</u> […].

2. A los fines de asegurar un análisis uniforme, todas las agencias y municipios deberán completar el formulario titulado "Tasación de Implementación" que se incluye como Anejo I de la presente Carta Circular, y sus exhibits 1 y 2. El mismo deberá ser completado conforme se dispone en la Parte D de la presente Carta Circular.

3. **La Tasación de Implementación, así como cualquier otro documento necesario, deberá ser sometido ante la OGP en formato Excel y PDF en o antes del término de sesenta (60) días a partir de la vigencia de la presente Carta Circular** mediante su presentación a través del sistema de procesamiento de planteamientos conforme al trámite dispuesto en la Parte D de la presente Carta Circular.[10]

La *Tasación de Implementación* es en sí una evaluación preliminar hecha por toda agencia o entidad gubernamental interesada en participar del *Programa de Preretiro Voluntario* mediante la cual, ésta:

1. Determinará si está en cumplimiento con los pagos que le corresponde hacer a la ASR. Si la agencia o municipio tiene deudas con la ASR, deberá realizar las diligencias necesarias para establecer un plan de pago, siempre y cuando destine no menos del 25% del ahorro neto anual generado por el Programa de Preretiro Voluntario al pago de dicha deuda.

2. **Identificará a los empleados que cualifiquen al Programa según los requisitos del Artículo 5 de la Ley 211-2015 y la Sección I de la Parte B de la presente Carta Circular.** La agencia o municipio, a través de su coordinador(a) de retiro y con la asistencia de la OGP y de la ASR, proveerá a todos los empleados que cualifiquen para el Programa de Preretiro Voluntario una orientación en torno a los beneficios y criterios del mismo. La agencia o municipio deberá tomar medidas para ofrecer dicha orientación previo a que el empleado ejerza la opción de participar del Programa.

3. **Determinará <u>si puede ofrecerle al empleado su ingreso</u> al Programa de Preretiro Voluntario <u>sujeto a que</u>: i) <u>el empleado no ocupe una posición esencial</u>; o ii) <u>la posición pueda ser ocupada</u> de conformidad con lo dispuesto en el inciso (b) del Artículo 8 de la Ley 211-2015 y el inciso 3 de la Sección 5 de esta Parte.**

4. **Completará la Parte A de la Tasación de Implementación donde se incluya:** (i) relación de puestos ocupados por empleados elegibles interesados en acogerse al Programa; (ii) resultado de análisis del costo total actual y proyectado del empleado (salario, impuestos sobre nómina y beneficios marginales); (iii) resultado de análisis del costo total de los beneficios que deberá proveer el patrono de acogerse el empleado al Programa de Preretiro Voluntario, según se establecen en los incisos (a) al (f) Artículo 6 de la Ley 211-2015; (iv) resultado de la resta del sub-inciso (ii) menos el inciso (iii).[11]

---

[10] OGP, Carta Circular Núm. 129-16, Parte C (20 de enero de 2016) (*énfasis suplido*).

[11] *Id*. Parte D, Secc. 1 (1-4) (20 de enero de 2016) (*énfasis suplido*).

Si el ejercicio del inciso 4 de la referida Sección 1 de la Parte D no tiene como resultado un ahorro neto anual preliminar, entiéndase la Agencia emite una *Determinación Preliminar de No Ahorro*, entonces la entidad gubernamental "someterá a la OGP la *Tasación de Implementación* mediante el sistema de procesamiento de planteamientos **sin necesidad de trámite ulterior**".[12]Ahora bien, en el caso que la entidad gubernamental emita una *Determinación Preliminar de Ahorro*, porque tras el ejercicio dispuesto en el Inciso (4) Sección 1 de la Parte D tiene como resultado un ahorro neto anual preliminar, entonces la agencia enviará a la ASR la *Tasación de Implementación* para su análisis y certificación de elegibilidad por la ASR.[13]

Nótese que una vez la agencia hace su análisis preliminar – que incluye la identificación de los empleados que cualifiquen al Programa y la determinación sobre si puede ofrecerle al empleado su ingreso al Programa sujeto a los criterios ya mencionados – ésta completa la Parte A de la *Tasación de Implementación* con información específica de: (1) los puestos ocupados por empleados elegibles e interesados en acogerse al Programa; (2) el resultado de análisis del costo total actual y proyectado del empleado (salario, impuestos sobre nómina y beneficios marginales); (3) el resultado de análisis del costo total de los beneficios que deberá proveer el patrono de acogerse el empleado al Programa, entre otros, y lo presenta ante la ASR para que dicha entidad pase juicio sobre el contenido de la misma y sobre la elegibilidad **de los empleados identificados**.[14]

> Una vez sometida por la Agencia o municipio la Evaluación Preliminar, **la ASR realizará su certificación de elegibilidad y la determinación de la aportación necesaria para beneficios al momento del retiro**, conforme se dispone a continuación:
>
> 1. **Certificará la elegibilidad de los empleados identificados, en cuanto a los años de servicios cotizados.**
>
> 2. Determinará, basado en un estudio actuarial, la cantidad de dinero adicional anual por empleado que deberá aportar la Agencia o municipio para garantizarle al participante, al momento de pasar a formar parte del Sistema de Retiro, un beneficio mínimo de 50% de su retribución promedio al 30 de junio de 2013 0 de 60% en el caso de los miembros del Cuerpo de la Policía de la misma, de conformidad con lo dispuesto en el inciso (h) del

---

[12] *Id*. Parte D, Sec. 1 (5) de la Carta Circular.

[13] *Id*. Parte D, Secc. 1 (6).

[14] *Id*. Parte D, Sec. 1 (4).

Artículo 6 de la Ley 211-2015. La agencia o municipio realizará la aportación anual adicional por el tiempo que le falta al empleado de acogerse al retiro.

3. **Completará la Parte B de la Tasación de Implementación y devolverá la misma a la agencia o municipio para la acción correspondiente, conforme se dispone en la Sección 3 de esta Parte.**[15]

Una vez la ASR hace su parte según aquí dispuesto, entonces ésta procede a devolver a la entidad gubernamental la *Tasación de Implementación* con su Parte B cumplimentada por la ASR.

Devuelta al patrono la Tasación de Implementación por la ASR, **corresponderá a la agencia o municipio revisar y completar la misma para su presentación <u>ante la OGP</u> y preparar el Plan Patronal para el Preretiro, de corresponder el mismo**. A tales fines, la agencia o municipio deberá realizar lo siguiente:

1. Notificará al empleado que es elegible para solicitar al Programa mediante la Notificación de Elegibilidad que se incluye como Anejo II de la presente Carta Circular. La notificación deberá estar acompañada de copia de la Ley Núm. 211-2015, incluir el Formulario de Elección para la Participación en el Programa de Preretiro Voluntario, que se incluye como Anejo III de la presente Carta Circular, y deberá informar dónde será entregado.

2. El empleado deberá ejercer la opción de participar en el Programa de Preretiro Voluntario mediante la entrega del Formulario de Elección dentro del término de treinta (30) días calendario a partir de la notificación. La entrega del Formulario de Elección establecerá de forma irrevocable la intención del empleado de participar del Programa de **Preretiro pero está sujeta al <u>análisis final</u> que realice la agencia o municipio, así como a la aprobación de la OGP.**

3. **Determinará costo de la implantación del Programa durante su duración considerando, entre otros factores, los empleados que efectivamente han suscrito el Formulario de Elección y que han sido certificados elegibles por la ASR, el pago de la aportación adicional anual determinada por la ASR por el periodo de duración, el plan médico por dos años, y cualquier otro factor que sea necesario para lo cual completará la Parte C de la Tasación de Implementación**, así como sus correspondientes Exhibits 1 y 2.

4. La agencia o municipio también deberá considerar si ejercerá con respecto a algún empleado el derecho de retención dispuesto en el Artículo 10 de la Ley 211-2015, en cuyo caso solo podrá contabilizar el ahorro que representa el que ese empleado se acoja al Programa una vez culmine el periodo de retención.

5. Determinación de Ahorro: **<u>Si continúa existiendo</u> un ahorro neto anual, la agencia o municipio <u>deberá</u>:**

> a. Preparar un Plan de Patronal para el Preretiro que asegure ahorros netos anuales significativos en el gasto de nómina y beneficios que no sean menores de 70% […].

---

[15] *Id*. Parte D, Secc. 2 (*énfasis suplido*).

SJ2017CV02199 - Exhibit February 7th letter

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 65 of 119

SJ2017CV02199                                                          Pág. **13** de **18**

> b. La agencia o municipio deberá someter a la OGP para evaluación y aprobación **una solicitud a través del sistema de procesamiento de planteamientos, la cual deberá acompañar de la Tasación de Implementación y del Plan Patronal para el Preretiro, para su evaluación y _aprobación_ de conformidad con lo dispuesto en el Artículo 12 de la Ley Núm. 211-2015**[…].

> 6. Determinación de No Ahorro: **Si luego de identificar los empleados potencialmente participantes e incluir la aportación adicional anual determinada por la ASR, entre otros factores, se determina que no existe un ahorro neto anual, la agencia o municipio deberá someter a la OGP la Tasación de Implementación mediante el sistema de procesamiento de planteamientos sin necesidad de tramite ulterior.**[16]

Una vez la ASR hace su parte según aquí dispuesto, entonces ésta procede a devolver a la entidad gubernamental para que ésta cumplimente la Parte C de la Parte C de la _Tasación de Implementación_, así como, los _Exhibits_ 1 y 2 de la Carta Circular. Este trámite conlleva que la agencia lleva a cabo una **segunda** evaluación y determine el costo de la implantación del programa. Esto, con conocimiento de la cantidad de empleados que efectivamente han suscrito el _Formulario de Elección_ y que han sido certificados elegibles por la ASR, si ejercerá con respecto a algún empleado el derecho de retención dispuesto en el Artículo 10 de la Ley 211-2015, entre otros. Una vez se lleva a cabo esa segunda evaluación y la entidad gubernamental confirma que en efecto continúa existiendo un ahorro neto anual, **la agencia _deberá_** preparar el _Plan de Patronal para el Preretiro_ que asegure ahorros netos anuales significativos en el gasto de nómina y beneficios que no sean menores de 70%. Una vez terminado este otro paso, **la entidad gubernamental _deberá_ someter a la OGP para evaluación y aprobación u**na solicitud, la cual deberá acompañar de la _Tasación de Implementación_ y del _Plan Patronal para el Preretiro_, **para su evaluación y _aprobación_ por la OGP**.

Acto seguido, procede que la OGP evalúe y apruebe la solicitud de la entidad gubernamental y los documentos anejados.

1. Una vez remitida la solicitud de la Agencia o municipio acompañada de los documentos correspondientes, la OGP deberá evaluar la misma conforme se establece a continuación:

> a. Dentro del término no mayor de sesenta (60) días, prorrogables por treinta (30) días adicionales, **la OGP evaluará la viabilidad de**

---

[16] _Id_. Parte D, Secc. 3 (_énfasis suplido_).

que la Agencia o municipio <u>ofrezca</u> a sus empleados el acogerse al Programa de Preretiro Voluntario.

b. La OGP podrá requerir que la agencia o municipio solicitante someta toda la información que estime necesaria para analizar toda solicitud, así como la Tasación de Implementación y Plan Patronal, en cuyo caso el término para completar la evaluación quedará paralizado y comenzará a decursar una vez la agencia o municipio cumpla con el requerimiento de información. Disponiéndose que, la OGP podrá denegar una solicitud cuando la agencia o municipio incurra en una dilación irrazonable en la entrega de la información solicitada.

c. Salvo lo dispuesto en el inciso 2 de esta Sección, **la OGP sólo aprobará la solicitud si se determina que la misma representa un ahorro neto anual en nómina y beneficios marginales para la agencia, según se dispone en el Artículo 12 de la Ley 211-2015.**

d. **La OGP notificará a la agencia o municipio mediante el sistema de procesamiento de planteamientos <u>su determinación con relación a la solicitud.</u>** Salvo según se dispone en el inciso 2 de esta Sección, dicha notificación podrá requerir los actos que estime necesarios y convenientes para implantar el Programa. Además, de denegarse la solicitud, la OGP podrá hacer las recomendaciones que estime necesarias con respecto al mismo.

e. **De no ser aprobada la solicitud,** la OGP le concederá a la agencia o municipio un término no mayor de treinta (30) días calendario a partir de la notificación a la agencia o municipio para enmendar el Plan Patronal para el Preretiro, el cual deberá evaluar en un término no mayor de sesenta (60) días a partir de la fecha en que la agencia o municipio someta el Plan Patronal para el Preretiro enmendado.[17]

Una vez culminado el procedimiento reseñado, únicamente resta la implementación continua de los planes patronales de preretiro. Sobre ello, la Carta Circular dispone que:

La implementación continua de los Planes Patronales para el Preretiro se llevará a cabo conforme se establece a continuación:

1. Ajuste al presupuesto:

b. **Una vez aprobada la solicitud de la agencia cuyo presupuesto se sufrague total o parcialmente con cargo al Fondo General, la OGP ajustará el presupuesto de la agencia y separará en un objeto de gasto, fuera del control de la ésta, los fondos necesarios para cumplir con las obligaciones de la agencia para con los participantes del Programa de Preretiro Voluntario** (60% de la retribución promedio al 31 de diciembre de 2015, aportación al seguro social, aportaciones al sistema de retiro y aportación al plan médico**). La OGP actuará de conformidad con lo antes dispuesto, en presupuestos futuros hasta que todos de los empleados que se acojan al programa cumplan con los requisitos para ingresar el sistema de retiro.**

c. En el caso de agencias cuyos presupuestos no se nutran en todo o en parte del Fondo General, los municipios, la Rama Judicial y la

---

[17] *Id*. Parte D, Secc. 4.

AEELA, corresponderá a sus Jefes o cuerpos rectores tomar las medidas presupuestarias necesarias para cumplir con las obligaciones que les corresponda con relación a los participantes del Programa de Preretiro Voluntario.

d. Notificación a los emplead[s]: **Corresponderá a las agencias o municipios notificar dentro de término de cinco (5) días laborales desde el recibo de la aprobación de su solicitud a los empleados que presentaron oportunamente su Formulario de Elección que se ha acogido el Programa de Preretiro Voluntario para la entidad, si el mismo según ha sido aprobado incluye el puesto ocupado por el empleado y la Fecha de Efectividad de ingreso del empleado al mismo. Dicha comunicación deberá también notificar al empleado si la agencia o municipio se reserva el derecho de retener en su puesto al empleado y periodo durante el cual ejercerá el derecho de retención, de conformidad con lo dispuesto en el Artículo IO de la Ley 211-2015.** A tales efectos, se incluye un Anejo VI en la presente Carta Circular. [Que corresponde a la *Notificación de Aprobación*].[18]

Ahora bien, la parte demandante solicita la expedición de un auto de *mandamus* ordenando al DTRH otorgarles a los demandantes todos los beneficios del Programa de Preretiro de conformidad con la Ley 211-2015, según enmendada. La parte demandada sostiene que actuó correctamente y que, al tenor con la Ley 211-2015, hizo un "estudio del ahorro estimado *vis a vis* el gasto estimado que conllevaría acogerse al Programa, más la liquidez con la que cuenta la Agencia en determinado momento, la Agencia decide qué empleados preretirar".[19] Según visto, el planteamiento del DTRH está predicado en que tiene autoridad y discreción para incluir o excluir empleados particulares del Programa de Preretiro de la Ley 211-2015.

El *mandamus* es un recurso altamente privilegiado y discrecional.[20] Su expedición depende inexorablemente del carácter del acto que se pretende compeler.[21] Este recurso solo procede "para exigir el cumplimiento con un deber impuesto por la ley; es decir, de un deber calificado de ministerial".[22] Un deber es ministerial cuando la ley lo prescribe y define con tal precisión y certeza que no admite el ejercicio de la discreción o juicio, y en consecuencia es mandatorio e imperativo.[23] Además, el deber ministerial "debe emanar

---

[18] *Id*. Parte D, Secc. 5 (*énfasis suplido*).

[19] Memorando de Derecho Final (11 de febrero de 2020), en la pág. 6.

[20] COD. ENJ. CIV. PR art. 649, 32 LPRA § 3421 (2018).

[21] Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 454 (2006).

[22] AMPR v. Srio. Educación, ELA, 178 DPR 253, 263 (2010).

[23] *Id*. en la pág. 264.

de un empleo, cargo o función pública, por lo que el recurso procede contra todos los funcionarios del ejecutivo, desde el más alto hasta el último en la escala jerárquica".[24] "Si el deber surge o no claramente de las disposiciones aplicables, es cuestión sujeta a interpretación judicial que no depende de un juicio a priori fundado exclusivamente en la letra del estatuto".[25] El remedio para otorgar mediante el recurso de *mandamus* puede aplicarse, "no sólo a funcionarios públicos, sino a cualquier agencia, junta o tribunal inferior de nuestro sistema judicial, siempre que estos estén obligados a ejecutar un acto por mandato de ley".[26]

De conformidad con la Sección 3 de la Parte D de la Carta Circular 129-16, contando con el beneficio de conocer la cantidad de empleados que efectivamente han suscrito el Formulario de Elección y que han sido certificados elegibles por la ASR, y considerando factores como el pago de la aportación adicional anual determinada por la ASR por el periodo de duración, el plan médico por dos años, entre otros, el DTRH debía determinar el costo de la implantación del Programa. Si concluía que existía un ahorro neto anual, el DRTC entonces tenía que preparar su Plan Patronal para el Preretiro. Luego, el procedimiento establecido requería que el DTRH sometiera s solicitud a la OGP para la correspondiente evaluación y aprobación; dicha solicitud debía incluir la Tasación de Implementación (completa) y el Plan Patronal para el Preretiro que el DTRH tenía que preparar.

El DTRH sostiene que tenía jurisdicción para excluir aquellos empleados particulares que, si se acogían a los beneficios del Programa de Preretiro, tendrían un impacto negativo en la liquidez de la Agencia. No tiene razón. En tal escenario de impacto negativo, y solamente luego de concluir que no habría un ahorro neto anual, entonces habría correspondido que el DTRH efectuara una Determinación de No Ahorro, según dispone la Sección 3, inciso 6, Parte D de la Carta Circular 129-16. La determinación de

---

[24] *Id*. en la pág. 265.

[25] Hernández Agosto v. Romero Barceló, 112 DPR 407, 418 (1982).

[26] AMPR v. Srio. Educación, ELA, 178 DPR 253, 265 (2010).

ahorro neto anual que el DTRH tenía que efectuar una vez completado el trámite con la

ASR, <u>era sobre el costo total de la implantación del Programa</u>.

Esta determinación sobre el costo de implantación estaba dirigida a establecer la

viabilidad de que la agencia, en este caso el DTRH, pudiera participar del Programa de

Preretiro Voluntario de la Ley 211-2015. El DTRH ninguna discreción tenía para excluir

de la Tasación de Implementación y el Plan Patronal para el Preretiro a empleados que

suscribieron el Formulario de Elección y que fueron certificados como elegibles por la

ASR. Incluso, en adición a lo anterior, surge de la prueba estipulada por las partes que el

preretiro de cada uno de los demandantes de epígrafe habría resultado en ahorros netos

anuales para el DTRH. Asimismo, según la prueba aquilatada y creída por este Tribunal,

la parte demandante demostró que el DRTRH nunca articuló explicación alguna en torno

a las circunstancias en que los demandantes de epígrafe fueron excluidos del documento

correspondiente a la Parte C de la Tasación de Implementación. La parte demandada no

aportó prueba alguna para concluir lo contrario.

El *mandamus* procede "para exigir el cumplimiento con un deber impuesto por la

ley; es decir, de un deber calificado de ministerial".[27] En este caso, una vez los

demandantes suscribieron el Formulario de Elección y la ASR los certificó como elegibles,

el DTRH tenía el deber ministerial de mantener a los demandantes en su solicitud a la

OGP para que, una vez aprobada, el DTRH se acogiera al Programa de Preretiro. El

DTRH tenía discreción para diseñar el Plan Patronal para el Preretiro y determinar, como

parte de ese plan, qué **puestos** serían eliminados. Subrayamos —nuevamente— que el

DTRH ninguna discreción tenía para excluir a empleados particulares del Programa de

Preretiro, máxime cuando éstos suscribieron el Formulario de Elección y la ASR los

certificó como elegibles.

---

[27] AMPR v. Srio. Educación, ELA, 178 DPR 253, 263 (2010).

## IV.

## SENTENCIA

Por todos los fundamentos antes expuestos, que se hacen formar parte de la presente Sentencia, este Tribunal declara con lugar la *Petición de Mandamus* presentada por los demandantes. El DTRH tiene el deber ministerial de otorgarle a los demandantes todos los beneficios del Programa de Preretiro de conformidad con la Ley 211-2015, según enmendada.

Finalmente, en relación con la reclamación de honorarios de abogados instada por la parte demandante, este Tribunal dicta *Sentencia* decretando la paralización de la misma, toda vez que se trata de una reclamación monetaria que está paralizada por PROMESA. Adviértase que el *Acuerdo Para Modificar la Paralización Automática* expresamente dispone que la paralización automática del Título III de PROMESA continuará aplicando en todo lo relacionado con reclamaciones monetarias. Expresamente reservamos jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejada sin efecto en cualquier momento con posterioridad a la fecha de la presente sentencia y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos.

**REGÍSTRESE Y NOTIFÍQUESE.**

Dada en San Juan, Puerto Rico a 15 de julio de 2020.

**F/LAURACELIS ROQUES ARROYO**
**JUEZA SUPERIOR**

Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL III**

| | | |
|---|---|---|
| Gilberto Ares Candelaria, Nilda P. Barbosa Rodríguez, Ana E. Collazo Guzmán, Arnaldo Colón Colón, Melvin Colón Vélez, Ángel L. De Jesús Fernández, Maribel García Cruz, Carlos González Juarbe, Marilyn Hernández Santiago, Carmen D. López Hernández, Tomás Montañez Hernández, Julia T. Pena de Jesús, Evelyn Pratts Collazo, Norma I. Rivera Nieves, Edna Sáez Sánchez, Manuel F. Sánchez Incle, Juan D. Sierra Ortega<br><br>Apelados<br><br>vs.<br><br>Hon. Carlos Saavedra González, Secretario del Departamento del Trabajo y Recursos Humanos<br><br>Apelante | KLAN202000715 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br><br>Sobre: Derecho de Participar en el Programa de pre-retiro al amparo de la Ley 211-2015<br><br><br>Civil Núm.: SJ2017CV02199 |

Panel integrado por su presidente, el Juez Vizcarrondo Irizarry, el Juez Rivera Colón y el Juez Adames Soto.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de noviembre de 2020.

Comparece el Gobierno de Puerto Rico representado por la Oficina del Procurador General (Gobierno), mediante recurso de apelación. Solicita que revisemos la Sentencia dictada el 15 de julio de 2020, notificada el 17 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante su dictamen, el TPI declaró Ha Lugar la Petición de *Mandamus* presentada por los apelados de epígrafe y resolvió que

Número Identificador

SEN2020 _____

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:11:36 Desc:
Exhibit February 7th letter w attachments Page 72 of 119

KLAN202000715                                                            2

el Departamento del Trabajo y Recursos Humanos tiene un deber ministerial de incorporar a los apelados al Programa de Preretiro Voluntario bajo la Ley 211-2015.

Examinadas las comparecencias de las partes, procedemos con la disposición del presente recurso.

-I-

El origen de la presente controversia surge por la aprobación de la Ley 211 del 8 de diciembre de 2015, mejor conocida como la Ley del Programa del Preretiro Voluntario, 3 LPRA sec. 9531, (Ley 211-2015).[1] De conformidad con la referida ley, se certificó la elegibilidad de 138 empleados del Departamento del Trabajo y Recursos Humanos (Departamento) para el Programa de Preretiro Voluntario, incluyendo a los apelados. Cada empleado llenó el Formulario de Elección para la participación en el Programa de Preretiro Voluntario, según requerido por ley. Así, el 27 de diciembre de 2016, 121 empleados se acogieron al programa de preretiro según autorizado por el Departamento, excluyendo a los apelados de sus beneficios. El mismo día, el Departamento les notificó mediante carta a los apelados que no iban a poder disfrutar de los beneficios de la ley en el inmediato, sino que tendrían que esperar a una segunda fase. La segunda fase nunca se efectuó.

El 31 de octubre de 2017 los apelados instaron una "Petición de *Mandamus*" contra el antiguo Secretario del Departamento del Trabajo y Recursos Humanos (Secretario), el Hon. Carlos Saavedra Gutiérrez.[2] Alegaron que eran empleados del Departamento desde

---

[1] Cabe destacar que la Ley 211-2015, *supra*, fue enmendada por la Ley Núm. 170 del 9 de agosto de 2016 y posteriormente fue derogada por la Ley Núm. 106 del 23 de agosto de 2017, mejor conocida como la Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos.

[2] En vista de que la presente causa de acción es presentada contra el Secretario del Departamento del Trabajo y Recursos Humanos en su carácter oficial, se sustituyó automáticamente al Hon. Carlos Saavedra Gutiérrez, siendo al momento de la presentación del recurso de apelación el Secretario del Departamento del Trabajo el Hon. Carlos Rivera Santiago.

antes del 1990; que cualificaban para el Programa de Preretiro Voluntario del Departamento; y que su salida de la agencia significaba un ahorro para el Departamento como requería la Ley 211-2015, *supra*. Señalaron que el 27 de diciembre de 2016 el Departamento les notificó mediante carta su decisión de no incluirlos en el programa, sin darle una explicación y sin autoridad en ley para tomar dicha determinación. Indicaron que habían realizado varias gestiones extrajudiciales con el Departamento, las cuales resultaron infructuosas. Además, argumentaron que el Secretario había incumplido con su deber ministerial de procesar las solicitudes de preretiro de los apelados, las cuales fueron denegadas por éste sin tener la discreción para ello. Por lo anterior, solicitaron que se ordenara al Secretario a otorgarles los beneficios de preretiro garantizados por la Ley 211-2015, *supra*, más la imposición de costas, gastos y honorarios de abogado.

Por su parte, el Departamento de Justicia, en representación del Secretario del Departamento del Trabajo, presentó una "Moción de Desestimación", sin someterse a la jurisdicción del tribunal. Allí, alegó que procedía la desestimación de la reclamación, ya que no se había adquirido jurisdicción sobre el Secretario por no haberse emplazado conforme a derecho, pues se requería que se emplazara al Estado Libre Asociado de Puerto Rico. Señaló que la petición de *mandamus* no estuvo debidamente juramentada, ya que no existía prueba de que el firmante del juramento, el señor Tomás Montañez Rosado (uno de los demandantes), fuera un representante de todos los demandantes o que tenía autoridad en ley para representarlos. A su vez, indicó que no existía deber ministerial alguno que cumplir por parte del Secretario, pues la Ley 211-2015, *supra*, no limitaba su discreción en su gestión de implementar la ley. Añadió que intervenir con las determinaciones del Secretario sería una violación a la doctrina de separación de

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 74 of 119

KLAN202000715                                                          4

poderes, ya que es la Rama Ejecutiva quien determina qué funcionarios se acogerán a los beneficios de la Ley 211-2015, *supra*.

El 1 de diciembre de 2017 los apelados presentaron su "Oposición a Moción de Desestimación". Así, el 6 de diciembre de 2017 el foro primario emitió Resolución en la que declaró No Ha Lugar a la moción de desestimación en cuanto a la falta de jurisdicción por falta de emplazamiento. Sobre ello, determinó que el Departamento se había sometido a la jurisdicción voluntariamente mediante la presentación de alegaciones y argumentos sobre los méritos de la petición de *mandamus*. Asimismo, señaló vista conforme a la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, R. 54, para dilucidar si se cumplieron con los requisitos para la expedición del *mandamus* y los requisitos dispuestos en la Ley 211-2015, *supra*.

Luego de celebrada la vista, el foro primario dictó Resolución en la que formuló las siguientes determinaciones de hechos:[3]

> 1. Todos los demandantes entraron al servicio público antes de abril de 1990.
>
> 2. Todos los demandantes son empleados actuales del Departamento del Trabajo.
>
> 3. La parte demandante hizo un requerimiento previo a la parte demandada sobre los remedios que solicita mediante la presentación de este recurso.
>
> 4. La agencia realizó un plan patronal.
>
> 5. La agencia realizó una tasación de implementación.
>
> 6. Se sometieron tanto un plan patronal como una tasación de implementación a la OGP.
>
> 7. Algunos empleados fueron preretirados.
>
> 8. Ninguno de los demandantes fue preretirado.

En esencia, el foro de instancia resolvió que la falta de juramento de la petición de *mandamus* fue subsanado en la vista

---

[3] Apéndice del escrito de apelación, a las págs. 118-129.

celebrada el 11 de diciembre de 2017. Señaló que conforme al procedimiento establecido en la Ley 211-2015, *supra*, la Administración de los Sistemas de Retiro de los Empleados de Gobierno del Estado Libre Asociado de Puerto Rico (ASR), el Secretario del Departamento y la Oficina de Gerencia y Presupuesto (OGP) debían trabajar en conjunto a los fines de determinar si el Programa de Preretiro Voluntario representaría un ahorro para la agencia gubernamental. Ante las alegaciones de los apelados de que recibieron una Notificación de Elegibilidad para el programa de preretiro, no procede la desestimación de la reclamación en esta etapa. Sobre ello, abundó que si los apelados podían probar que el Departamento obtuvo la aprobación final de la OGP y que le notificó su elegibilidad al programa, el Departamento no tenía discreción para denegarle los beneficios del preretiro. Por lo cual, declaró No Ha Lugar la solicitud de desestimación presentada por el Departamento.

Luego de varias incidencias procesales, el 20 de abril de 2018, el Departamento presentó un "Aviso de Paralización de los Procedimientos por Virtud de la Petición Presentada por el Gobierno de Puerto Rico bajo el Título III de PROMESA". En este escrito, solicitó que se paralizaran los procedimientos dada la presentación del Gobierno de la Petición bajo la Ley PROMESA. El mismo día, el foro de instancia dictó Sentencia en la que ordenó la paralización de los procedimientos. Sin embargo, reservó la jurisdicción de la reclamación para decretar su apertura a solicitud de parte interesada, en caso de la orden de paralización fuera dejada sin efecto.

Posteriormente, el 1 de octubre de 2019 el Departamento presentó una "Moción Informativa sobre Acuerdo Alcanzado para Modificar el Alcance de la Paralización". Mediante la moción, el Estado informó que había aceptado la solicitud de los apelados de

Case:17-03283-LTS   Doc#:23894-1   Filed:03/30/23   Entered:03/30/23 11:13:36   Desc:
Exhibit February 7th letter w attachments   Page 76 of 119

KLAN202000715                                                                        6

modificar la paralización automática, a los únicos fines de permitir la litigación del caso hasta que llegara a su determinación final en el Tribunal de Primera Instancia, Tribunal de Apelaciones y/o Tribunal Supremo.

Continuados los procedimientos ante el foro primario, el 10 de diciembre de 2019 el Departamento presentó su "Contestación a la Demanda". Alegó que los apelados no cualificaban para recibir los beneficios del preretiro, sino que sólo eran elegibles para participar del mismo. Señaló que no procedía el *mandamus* debido a que no existía un deber ministerial incumplido y por falta de un daño irreparable. Además, argumentó lo siguiente:

> a) La OGP no certifica la elegibilidad de los empleados— lo hace la Administración de Sistema de Retiro;
>
> b) La OGP evalúa la tasación de implementación (así como el Plan Patronal) para determinar la viabilidad de la implementación del Programa en la Agencia si se demuestran ahorros globales en el presupuesto de la Agencia sin afectar los servicios que ésta provee;
>
> c) no existe un derecho a participar del Programa de Preretiro;
>
> d) la notificación de elegibilidad a solicitar participar del programa no genera en sí un derecho a acogerse al programa;
>
> e) los demandantes eligieron participar del programa, pero no se acogieron al Programa porque no fueron incluidos en el Plan Patronal;
>
> f) la Ley 211-2015 tiene como propósito la reducción de gastos y de estabilización fiscal;
>
> g) las disposiciones vigentes de la Ley 211-2015, según enmendada, y lo dispuesto en la Ley 106-2017, no sólo establecen la discreción que tiene la autoridad nominadora para tomar la determinación de a quienes incluir en el plan de preretiro ante la Oficina de Gerencia de Presupuesto y modificar el mismo, sino que a su vez, establece la discreción del Secretario como autoridad nominadora de denegar el mismo.[4]

Así las cosas, se celebraron varias vistas evidenciarias. En la vista del 28 de enero de 2020, el Departamento no contrainterrogó los testigos de los apelados, ni presentó prueba

---

[4] Apéndice del escrito de apelación, págs. 157-166.

testifical alguna.  Quedando sometido el caso, el TPI ordenó a las partes a presentar un memorando de derecho.  Más tarde, el 3 de febrero de 2020 los demandantes Nilda Barbosa Rodríguez, Ángel L. De Jesús Fernández, Carmen D. López Hernández y Enda Sáez Sánchez presentaron una solicitud de desistimiento de la reclamación, pues se habían acogido a los beneficios de otro programa de retiro incentivado.  Así, el 4 de febrero de 2020, notificada al siguiente día el foro primario dictó Sentencia Parcial en la que desestimó con perjuicio la reclamación sobre los empleados antes mencionados.

Evaluadas las alegaciones de las partes, el 15 de julio de 2020 el TPI dictó la Sentencia apelada, mediante la cual declaró Ha Lugar la "Petición de Mandamus" presentada por los apelados. Así, el foro primario formuló las siguientes determinaciones de hechos:[5]

> 1. Todos los demandantes recibieron una Notificación de Elegibilidad para el Programa de Preretiro, de conformidad con el artículo 12(b)(4) de la Ley 211-2015.
>
> 2. Todos los demandantes recibieron una Notificación de Elegibilidad para el Programa de Preretiro, de conformidad con el artículo 12(b)(4) de la Ley 211-2015.
>
> 3. Todos los demandantes suscribieron el Formulario de Elección para la Participación en el Programa de Preretiro Voluntario, de conformidad con la Sección 3, inciso 1, Parte D de la Carta Circular 129-16.
>
> 4. Todos los demandantes constituían un ahorro para la Agencia de haber sido preretirados en el 2016.
>
> 5. Según surge de la Parte A de la Tasación de Implementación, requerida al DTRH por la Sección 1, inciso 4, Parte D de la Carta Circular 129-16, el ahorro neto anual por empleado para el DTRH es:
>
>> a. El preretiro de Ana Collazo Guzmán hubiese constituido una economía de $13,989.92 (Neto anual).
>>
>> b. El preretiro de Arnaldo Colón Colón hubiese constituido una economía de $10,093.42 (Neto anual).

---

[5] Apéndice del escrito de apelación, a las págs. 331-349.

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 78 of 119

KLAN202000715                                                    8

c. El preretiro de Carlos González Juarbe hubiese constituido una economía de $10,155.18 (Neto anual).

d. El preretiro de Evelyn Pratts Collazo hubiese constituido una economía de $11,227.10 (Neto anual).

e. El preretiro de Gilberto Ares Candelario hubiese constituido una economía de $10,962.43 (Neto anual).

f. El preretiro de Juan David Sierra Ortega hubiese constituido una economía de $10,605.12 (Neto anual).

g. El preretiro de Julita Peña De Jesús hubiese constituido una economía de $13,088.62 (Neto anual).

h. El preretiro de Manuel Sánchez Incle hubiese constituido una economía de $17,871.78 (Neto anual).

i. El preretiro de Maribel García Cruz hubiese constituido una economía de $12,396.07 (Neto anual).

j. El preretiro de Marilyn Hernández Santiago hubiese constituido una economía de $22,170.76 (Neto anual).

k. El preretiro de Melvin Colón Vélez hubiese constituido una economía de $15,935.26 (Neto anual).

l. El preretiro de Norma Rivera Nieves hubiese constituido una economía de $10,411.03 (Neto anual).

m. El preretiro de Tomás Montañez Rosado hubiese constituido una economía de $18,555.52 (Neto anual).

6. El documento correspondiente a la Parte A de la Tasación de Implementación, requerida al DTRH por la Sección 1, inciso 4, Parte D de la Carta Circular 129-16, está fechado al 9 de marzo de 2016.

7. Surge de la Parte B de la Tasación de Implementación, requerida a la ASR por la Sección 2, Parte D de la Carta Circular 129-16, todos los demandantes tienen el tiempo de elegibilidad en cuanto al sistema de retiro para participar del programa de preretiro.

8. En el documento correspondiente a la Parte B de la Tasación de Implementación, requerida a la ASR por la Sección 2, Parte D de la Carta Circular 129-16, la ASR certificó que todos los demandantes cumplían con el tiempo de elegibilidad para participar en el programa.

9. *Este documento requerido a la ASR está fechado al 17 de octubre de 2016.*

10. *Según requerido por la Sección 3, inciso (3), Parte D de la Carta Circular 129-16, el DTRH preparó el documento correspondiente a la Parte C de la Tasación de Implementación para someterlo ante la OGP. Este documento está fechado al 15 de diciembre de 2016.*

11. *En el referido documento con la Parte C de la Tasación de Implementación, el DTRH excluyó a los demandantes en el documento correspondiente a la Parte C de la Tasación de Implementación.*

12. *Los demandantes también fueron excluidos de los documentos titulados "Costo Proyectado del Empleado en el Servicio Público sin Programa de Preretito [sic] Voluntario" y "Costo Proyectado Beneficios al Empleado Participante Programa Preretiro Conforme Art. 6 de Ley 211-2015". Estos documentos corresponden a los Anejos 1 y 2, respectivamente, que la Carta Circular 129-16 requiere que se incluyan con la Parte C de la Tabla de Implementación.*

13. *El DTRH notificó a todos los demandantes, mediante carta fechada al 27 de diciembre de 2016, que su participación en el Programa de Preretiro sería pospuesta y que éstos pasarían a una segunda fase.*

14. *La segunda ronda mencionada en la carta fechada el 27 de diciembre de 2016 nunca se efectuó.*

15. *En la carta fechada al 27 de diciembre de 2016, el DTRH informó que recibió la notificación de la OGP sobre la solicitud del DTRH para implementar el Programa de Preretiro.*

16. *En dicha misiva, el DTRH también expuso que la OGP informó "de varios factores que limitaban la generación de ahorros significativos".*

17. *En dicha carta de 27 de diciembre de 2016, el DTRH no identificó los "factores que limitaban la generación de ahorros significativos".*

18. *No existe notificación de OGP denegando a alguno de los demandantes para participar del Programa.*

19. *No existe notificación de OGP en cuanto a que los demandantes no cualifican para participar del programa.*

20. *Este Tribunal le dio entera credibilidad a los testimonios de los testigos de la parte demandante en cuanto a la negativa de la parte demandada de sacar a los demandantes del Plan de Pre-Retiro. Esto no era parte de su discreción. Maxime cuando la ASR certificó que todos los demandantes cumplían con el tiempo de elegibilidad para participar en el programa.*

Case:17-03283-LTS   Doc#:23894-1   Filed:03/30/23   Entered:03/30/23 11:13:36   Desc:
Exhibit February 7th letter w attachments   Page 80 of 119

KLAN202000715                                                          10

A base de las determinaciones de hechos incontrovertidos antes descritas, el foro primario resolvió que, de conformidad con la Sec. 3 de la Parte D de la Carta Circular 129-16, el Departamento debía determinar el costo de la implementación del Programa de Preretiro Voluntario de sus empleados, pues conocían la cantidad de empleados que habían suscrito el Formulario de Elección. Indicó que estos empleados fueron certificados como elegibles por la ASR y se consideraron factores como el pago de la aportación adicional, plan médico, entre otros. Señaló que el Departamento no tenía discreción para excluir a los empleados que suscribieron el Formulario de Elección y que fueron certificados como elegibles por la ASR. Sobre ello, abundó que si el Departamento entendía que el Programa de Preretiro tenía un impacto negativo para la liquidez de la agencia, le correspondía emitir una Determinación de No Ahorro del plan de preretiro, conforme a la Sec. 3 (6), Parte D de la Carta Circular 129-16. Añadió que, una vez los empleados suscribieron el Formulario de Elección y la ASR los certificó como elegibles, el Departamento tenía el deber ministerial de mantener a los empleados en su solicitud de la OGP y una vez aprobada por esta agencia, el Departamento se acogiera al Programa del Plan de Retiro. Por lo que, declaró con lugar la Petición de *Mandamus* presentada por los apelados. A su vez, declaró la paralización de la reclamación de honorarios de abogado presentada por los apelados, ya que es una reclamación monetaria que estaba paralizada en virtud de la Ley PROMESA.

Inconforme, el 15 de septiembre de 2020 el Gobierno compareció ante este Tribunal de Apelaciones mediante el presente recurso de apelación y le imputó al TPI la comisión del siguiente error:

*Erró el TPI al utilizar la petición de mandamus para usurpar la autoridad que la Rama Legislativa le concedió a la OGP en la Ley 211-2015, y así violar la doctrina de separación de poderes.*

El 2 de noviembre de 2020 los apelados comparecieron ante este Foro mediante un escrito titulado "Alegato de la Parte Apelada".

-II-

-A-

El Art. 649 del Código de Enjuiciamiento Civil define el recurso del *mandamus* de la siguiente manera:

> **El auto de mandamus es un auto altamente privilegiado** dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal de Primera Instancia de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y **dirigido** a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría dentro de su jurisdicción **requiriéndoles para el cumplimiento de algún acto que en dicho auto no se exprese y que esté dentro de sus atribuciones o deberes**. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. (Énfasis nuestro).
> 32 LPRA sec. 3421.

El *mandamus* sólo procede para exigir el cumplimiento de un deber impuesto por ley, es decir, un deber calificado como ministerial. *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 263 (2010). Un deber se cataloga como ministerial cuando la ley lo prescribe y define con tal precisión y certeza que no admite el ejercicio de la discreción o juicio. Íd., pág. 264. Este deber ministerial no tiene que ser necesariamente expreso, pues pudiera estar sujeto a la interpretación judicial. Íd. Esta determinación tiene que surgir de un examen y análisis de todos los elementos de juicio disponibles, de forma tal que se pueda descubrir el verdadero significado y propósito de las disposiciones legales. Íd., págs. 264-265.

El *mandamus* puede aplicarse no tan sólo a los funcionarios públicos, sino a cualquier agencia, junta o tribunal inferior de

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 82 of 119

KLAN202000715                                                          12

nuestro sistema judicial, cuando éstos estén obligados a ejecutar un acto por mandato de ley. *AMPR v. Srio. Educación, E.L.A., supra*, a la pág. 265. Para que proceda la concesión de un *mandamus*, la parte peticionaria debe demostrar que realizó un requerimiento previo para que se cumpla con el deber exigido y que no fue debidamente atendido. *AMPR v. Srio. Educación, E.L.A., supra*, a la pág. 267; *Noriega v. Hernández Colón*, 135 DPR 406, 448 (1994). Ahora bien, el recurso de *mandamus* sólo procede cuando no exista otro remedio legal adecuado y eficaz en el curso ordinario de la ley. Art. 651 del Código Enjuiciamiento Civil, 32 LPRA sec. 3423.

El Tribunal Supremo de Puerto Rico ha reconocido que la expedición del *mandamus* estará sujeta a los siguientes factores: (1) el posible impacto que el recurso pueda tener sobre los intereses públicos que puedan estar involucrados; (2) evitar intromisiones indebidas en los procedimientos del Poder Ejecutivo, y (3) que el acto no se preste a confusión o perjuicio de los derechos de terceras personas. *AMPR v. Srio. Educación, E.L.A., supra*, a la pág. 268; *Noriega v. Hernández Colón, supra*, a la pág. 448.

-B-

La Ley Núm. 211 del 8 de diciembre de 2015, mejor conocida como la Ley del Programa de Preretiro Voluntario (Ley 211-2015), 3 LPRA sec. 9261, se creó a los fines de establecer un programa para que los empleados del Gobierno del Estado Libre Asociado de Puerto Rico pudieran separarse voluntariamente de forma incentivada de su empleo hasta la fecha en que cumplan con los requisitos de ley para su retiro. Exposición de Motivos de la Ley 211-2015, *supra*. A su vez, el Programa de Preretiro Voluntario tenía como propósito establecer un ahorro significativo en el Gobierno de Puerto Rico. Se perseguía "ofrecerle incentivos para el

personal que sea empleado del Estado Libre Asociado de Puerto
Rico, que haya comenzado a cotizar para el Sistema de Retiro
antes del 1 de abril de 1990 o que habiendo comenzado a cotizar
luego de esa fecha pagó servicios acreditables anteriores al 1 de
abril de 1990, sin haber recibido el reembolso de sus aportaciones
y tengan un mínimo de 20 años de servicio cotizados bajo la
estructura de beneficios de la Ley Núm. 447 [del 15 de mayo de
1951, mejor conocida como la "Ley del Sistema de Retiro de los
Empleados del Gobierno del Estado Libre Asociado de Puerto Rico".
Exposición de Motivos de la Ley 211-2015, *supra.*

A tales fines, la aludida ley aclara que la implementación de
este Programa de Preretiro Voluntario no tendría un efecto adverso
en las arcas del Sistema de Retiro del ELA ni de las entidades
gubernamentales que implementaran el mismo.   Sobre ello, la
Exposición de Motivos establece lo siguiente:

> *Primeramente, la entidad gubernamental que cualifique para, y esté interesada en, acogerse al Programa deberá* **presentar una solicitud a esos efectos ante la Oficina de Gerencia y Presupuesto (OGP).** *Esta última evaluará la viabilidad de que los empleados de la entidad gubernamental se acojan al Programa en coordinación con la Administración de los Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Judicatura.* **Certificada la elegibilidad de los empleados, la OGP solo aprobará la solicitud, de determinar que ello representará un ahorro para la entidad gubernamental. Una vez cualificada la entidad gubernamental y aprobadas las solicitudes de sus empleados, la responsabilidad por el pago de los beneficios dispuestos por esta Ley no recaerá en el Sistema de Retiro del ELA, sino en la entidad gubernamental para la cual trabaje el empleado al momento de acogerse al Programa**. *(Énfasis suplido).*

Para efectos de esta legislación, serían elegibles para
participar del programa "toda agencia o municipio", quienes debían
realizar y presentar a la Oficina de Gerencia y Presupuesto (OGP)
una Tasación de Implementación del Programa de Preretiro

Case:17-03283-LTS   Doc#:23894-1   Filed:03/30/23   Entered:03/30/23 11:13:36   Desc:
Exhibit February 7th letter w attachments   Page 84 of 119

Voluntario.[6]   Art. 4 de la Ley 211-2015, *supra*.   Asimismo, la ley

señala que serán elegibles para el programa todo empleado que

trabaje para el ELA y que cumpla con los siguientes requisitos:

> *1. ser empleado de carrera, ser empleado en el servicio de confianza con derecho a reinstalación en un puesto de carrera o empleado con nombramiento a término de conformidad a una ley, [...], siempre que el participante cumpla los sesenta y un (61) años de edad para acogerse al retiro antes de la fecha de expiración de su término corriente;*

> *2. haber comenzado a cotizar para el Sistema de Retiro antes del 1 de abril de 1990, sin haber solicitado el reembolso de sus aportaciones, o que habiendo comenzado a trabajar para el Estado Libre Asociado de Puerto Rico antes de esa fecha, no pudo aportar al Sistema de Retiro por su estatus laboral, pero con posterioridad haya pagado esos servicios anteriores para acumular años de servicio cotizados con fecha de retroactividad anterior al 1 de abril de 1990; no hubiesen elegido participar del Programa de Cuentas de Ahorro para el Retiro;*

> *3. a la fecha de solicitar acogerse al Programa de Preretiro, tener un mínimo de veinte (20) años de servicios cotizados como participante del Sistema de Retiro bajo las disposiciones de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada por la Ley 3-2013 y otras leyes enmendatorias; y*

> *4. no haber cumplido los requisitos para acogerse al retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en o antes de la fecha de efectividad de ingresar al Programa de Preretiro Voluntario [...].*

De otro lado, el Art. 9 de la referida ley establece **que toda**

**elección del empleado a participar en el programa será final e**

---

[6] El Art. 2(k) de la Ley 211-2015, *supra*, define la tasación de implementación de la siguiente forma:

> *Tasación de Implementación: se referirá a la **evaluación compulsoria** que tendrá que realizar toda agencia o municipio y presentar a OGP, dentro de un periodo no mayor de sesenta (60) días desde la aprobación de esta Ley, para analizar el impacto fiscal que tendría en su organismo adoptar el Programa de Preretiro Voluntario, **tomando en consideración,** entre otros factores **cantidad de empleados que cualificarían con los criterios del Programa,** retribuciones promedios que se aplicarían a la compensación de los participantes del Programa, funciones que realizan los empleados que cumplen con los criterios de elegibilidad y cuáles funciones son esenciales, la forma en que se pueden sustituir internamente los empleados que realizan funciones esenciales y presenten una solicitud para acogerse al Programa, mediante traslado, reclutamiento interno de empleados de carrera del organismo, reclutamiento abierto a todos los servidores públicos de carrera o al público general, qué puestos se podrían eliminar, si el organismo tiene la capacidad económica para participar en el Programa, y estimar el ahorro o gasto total estimado de acogerse al Programa. (Énfasis suplido).*

Case:17-03283-LTS   Doc#:23894-1   Filed:03/30/23   Entered:03/30/23 11:11:36   Desc:
Exhibit February 7th letter w attachments   Page 85 of 119

KLAN202000715                                                                    15

**irrevocable** y constituye un relevo total y absoluto, y una renuncia de derechos de toda reclamación actual o potencial, basada en: (i) la relación de empleo o la terminación de mismo, bajo cualquier ley aplicable o (ii) las acciones, si algunas, que pudieran tomarse como consecuencia de la implementación del programa.  Además, el Art. 12 de la Ley 211-2015, *supra*, dispone que el Director de la OGP tendrá todos los poderes necesarios y convenientes para implementar la Ley.

De conformidad con la autoridad delegada por la Ley 211-2015, *supra*, a la OGP, el Director de dicha agencia, el señor Luis F. Cruz Batista, promulgó la Carta Circular Núm. 129-16[7] del 20 de enero de 2016 denominada como "Procedimiento para la Implantación de la Ley Núm. 211-2015, conocida como "Ley del Programa de Preretiro Voluntario".[8]  El fin primordial de la Carta Circular era establecer un procedimiento de implementación inmediata de las disposiciones de la Ley 211-2015, *supra*.

Entre los requisitos impuestos a las agencias o municipios, el inciso B sec. 2 (C) establece que "toda agencia o municipio deberá realizar compulsoriamente una Tasación de Implementación del Programa de Preretiro Voluntario para determinar la viabilidad de ofrecer una oportunidad de preretiro a sus empleados [...]".[9]  La Tasación de Implementación debía ser sometida ante la OGP en o antes de 60 días a partir de la vigencia de la Carta Circular. Íd.

---

[7] Apéndice del escrito de apelación, a las págs. 350-363.
[8] La Carta Circular 129-16 de la OGP fue enmendada el 20 de junio de 2016 mediante la Carta Circular Núm. 134-16 de la OGP, denominada como "Modificación al Procedimiento para la Implementación de la Ley Núm. 211-2015, conocida como "Ley del Programa de Preretiro Voluntario" del 26 de junio de 2016. Posteriormente, el 30 de agosto de 2016 se enmendó nuevamente la Carta Circular Núm. 129-16 mediante la aprobación de la Carta Circular Núm. 136-16 de la OGP. Finalmente, se promulgo el 15 de septiembre de 2016 la Carta Circular Núm. 2017-04 de la ASR denominada "Enmiendas a la Ley Un. 211-2015 "Ley del Programa de Preretiro Voluntario", en virtud de la Ley Núm. 170-2016", en la que reitero la Carta
[9] El término de Tasación de Implementación establecido en la Carta Circular corresponde al Art. Art. 2(k) de la Ley 211-2015, *supra*.

Sobre la evaluación preliminar que debía realizar la agencia o el municipio, el inciso D sec. 1 dispone lo siguiente:

> *La Agencia o municipio interesado en participar en el Programa de Preretiro Voluntario deberá llevar a cabo una evaluación preliminar mediante la cual:*
>
> *1. Determinará si está en cumplimiento con los pagos que le corresponde hacer a la ASR. Si la agencia o municipio tiene deudas con la ASR, deberá realizar las diligencias necesarias para establecer un plan de pago, siempre y cuando destine no menos del 25% del ahorro neto anual generado por el Programa de Preretiro Voluntario al pago de dicha deuda.*
>
> *2. **Identificará a los empleados que cualifiquen al Programa** según los requisitos del Artículo 5 de la Ley 211-2015 y la Sección 1 de la Parte B de la presente Carta Circular. La agencia o municipio, a través de su coordinador(a) de retiro y con las asistencias de la OGP y de la ASR, **proveerá a todos los empleados que cualifiquen para el Programa de Preretiro Voluntario una orientación en torno a los beneficios y criterios del mismo.** La agencia o municipio deberá tomar las medidas para ofrecer dicha orientación previo a que el empleado ejerza la opción de participar del Programa.*
>
> *3. **Determinará si puede ofrecerle al empleado su ingreso al Programa de Preretiro Voluntario** sujeto a que: i) el empleado no ocupe una posición esencial; o ii) la posición pueda ser ocupada de conformidad con lo dispuesto en el inciso (b) del Artículo 8 de la Ley 211-2015 y el inciso 3 de la Sección 5 de esta Parte.*
>
> *4. Completará la Parte A de la Tasación de Implementación donde se incluya: (i) relación de puestos ocupados por empleados elegibles interesados en acogerse al Programa; (ii) resultado de análisis del costo total actual y proyectado del empleado (salario, impuestos sobre nómina y beneficios marginales); (iii) **resultado del análisis del costo total de los beneficios que deberá proveer el patrono de acogerse el empleado al Programa de Preretiro Voluntario,** según se establecen en los incisos (a) al (f) Artículo 6 de la Ley 211-2015; (iv) resultado de la resta del sub-inciso (ii) menos el inciso (iii).*
>
> *5. **Determinación Preliminar de No Ahorro: Si el ejercicio del inciso (4) no tiene como resultado un ahorro neto anual preliminar, entonces la Agencia someterá a la OGP la Tasación de Implementación mediante el sistema de procesamiento de planteamientos sin necesidad de trámite ulterior.***
>
> *6. Determinación Preliminar de Ahorro: Si el ejercicio dispuesto en el inciso (4) tiene como resultado un ahorro neto anual preliminar, **entonces la Agencia enviará a la ASR la Tasación de Implementación para su***

*análisis y certificación de elegibilidad, conforme se dispone en la Sección 2 de esta Parte. (Énfasis suplido).*

Una vez la agencia o el municipio someta su Evaluación Preliminar sobre el Programa de Preretiro Voluntario, la ASR realizará su certificación de elegibilidad y su determinación sobre la aportación necesaria para beneficios de los empleados al momento del retiro, conforme se establece a continuación:

1. **Certificará la elegibilidad de los empleados identificados**, *en cuanto a los años de servicios cotizados.*

2. **Determinará, basado en un estudio actuarial, la cantidad de dinero adicional anual por empleado que deberá aportar la Agencia** *o municipio para garantizarle al participante, al momento de pasar a formar parte del Sistema de Retiro, un beneficio mínimo de 50% de su retribución promedio al 30 de junio de 2013 [...]. La agencia o municipio deberá realizar la aportación anual adicional por el tiempo que falta al empleado de acogerse al retiro.*

3. *Completará la Parte B de la Tasación de Implementación y devolverá la misma a la agencia o municipio para la acción correspondiente, conforme dispone en la Sección 3 de esta Parte.*
[...].

Inciso D secc. 2 de la Carta Circular 129-16.

Luego de realizado el procedimiento ante la ASR, la Tasación de Implementación sometida es devuelta a la entidad gubernamental. Le corresponderá a la agencia o municipio revisar y completar la Tasación de Implementación para presentarla ante la OGP y preparar un Plan Patronal para el Preretiro, de este ser aprobado por la OGP. A tales fines, la agencia deberá realizar el siguiente procedimiento:

1. **Notificará al empleado que es elegible para solicitar el Programa mediante la Notificación de Elegibilidad** *[...].*

2. *El empleado deberá ejercer la opción de participar en el Programa de Preretiro Voluntario mediante la entrega del Formulario de Elección dentro del término de treinta (30) días calendario a partir de la notificación. La entrega del Formulario de Elección establecerá de forma irrevocable la intención del empleado de participar del Programa de Preretiro* **pero está sujeta al análisis**

Case:17-03283-LTS   Doc#:23894-1   Filed:03/30/23   Entered:03/30/23 11:13:36   Desc:
Exhibit February 7th letter w attachments   Page 88 of 119

KLAN202000715                                                          18

*final que realice la agencia o municipio, así como a la aprobación de la OGP*.

*3. Determinará costo de la implementación del Programa durante su duración considerando, entre otros factores, los empleados que efectivamente han suscrito el Formulario de Elección y que han sido certificados elegibles por la ASR, el pago de la aportación adicional anual determinada por la ASR por el periodo de duración, el plan medico por dos años, y cualquier otro factor que sea necesario […].*

*4. […]*

*5. Determinación de Ahorro: Si continúa existiendo un ahorro neto anual, la agencia o municipio deberá:*

*a. Preparar un Plan Patronal para el Preretiro que asegure ahorros netos anuales significativos en el gasto de nómina y beneficios que no sean menores de 70% […].*

*b. La agencia o municipio deberá someter a la OGP para evaluación y aprobación una solicitud a través del sistema de procesamiento de planteamientos, la cual deberá acompañar de la Tasación de Implementación y del Plan Patronal para el Preretiro, para su evaluación y aprobación de conformidad con lo dispuesto en el Artículo 12 de la Ley Núm. 211-2015. […].*

*6. Determinación de No Ahorro: Si luego de identificar los empleados potencialmente participantes e incluir la aportación adicional anual determinada por la ASR, entre otros factores, se determina que no existe un ahorro neto anual, la agencia o municipio deberá someter a la OGP la Tasación de Implementación mediante el sistema de procesamiento de planteamientos sin necesidad de trámite ulterior.*

Inciso D sec. 3 de la Carta Circular 129-16.

Una vez la agencia o municipio remite su solicitud a la OGP, esta última deberá evaluar su solicitud dentro de un término no mayor de 60 días, prorrogables por 30 días adicionales. Inciso D sec. 4. La OGP evaluará la viabilidad de que la agencia o municipio le ofrezca a sus empleados acogerse al Programa de Preretiro Voluntario y **sólo aprobará la solicitud de la entidad gubernamental "si se determina que la misma representa un ahorro neto anual en nómina y beneficios marginales para la agencia"**. Íd, sec. 4(1)(c). La OGP deberá notificar a la agencia o municipio mediante el sistema de procesamiento de

planteamientos su determinación con relación a la solicitud. Si la OGP denegara la solicitud de la agencia o municipio, le concederá a la entidad gubernamental un término a partir de la notificación de la determinación para enmendar el Plan Patronal para el Preretiro.

Aprobada por la OGP la solicitud de la entidad gubernamental "[...]cuyo presupuesto se sufrague total o parcialmente con cargo al Fondo General, la OGP ajustará el presupuesto de la agencia y separará en un objeto de gasto, fuera del control de la [sic] ésta, los fondos necesarios para cumplir con las obligaciones de la agencia para con los participantes del Programa de Preretiro Voluntario [...]". Inciso D sec. 5 (1)(b). En el caso de las agencias cuyos presupuestos no se nutran en todo o en parte del Fondo General, corresponderá a sus Jefes o cuerpos rectores tomar las medidas presupuestarias necesarias para cumplir con las obligaciones que les corresponde con relación a los participantes del Programa de Preretiro Voluntario. Íd, sec. 5 (1)(c). Además, la agencia deberá notificar el recibo de la aprobación de su solicitud a los empleados que presentaron oportunamente el Formulario de Elección. Íd, sec. 5 (2).

-III-

El Gobierno, en representación del Departamento del Trabajo, plantea que el TPI actuó mediante error, perjuicio y parcialidad al concluir que el Departamento tenía un deber ministerial de incorporar a los apelados en el Plan de Preretiro Voluntario, ya que dicha facultad fue concedida a la Oficina de Gerencia y Presupuesto, atentando el tribunal con la doctrina de separación de poderes. Señala que, aunque la ASR determinó la elegibilidad preliminar de los apelados para el plan de retiro, la OGP denegó el Plan Patronal del Departamento, obligando a éste último a remover a los apelados del plan. Añade que la OGP

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 90 of 119

KLAN202000715                                                                    20

determinó que el primer plan propuesto presentado por el Departamento no contenía ahorros suficientes para su aprobación. Argumenta que el TPI carece de autoridad y la pericia para evaluar si el plan enmendado del Departamento cumple con las metas fiscales de la Ley 211-2015, *supra*, y de las Cartas Circulares de la OGP y la ASR.

Por su parte, los apelados alegan que no fue la OGP sino el Departamento quien excluyó a los empleados de su derecho al preretiro. Señalan que el foro primario actuó conforme a derecho al determinar que las actuaciones del Departamento estaban fuera de su discreción y en contravención con la Ley 211-2015. Añaden que el foro primario le confirió entera credibilidad a la prueba testifical de los apelados vertida en juicio, particularmente porque el Departamento no presentó prueba para refutarla. Además, sostienen que el Departamento mediante las estipulaciones sometidas al TPI por ambas partes, reconoció que no existía una notificación de la OGP denegando a los apelados a participar del programa de preretiro, por lo que sus alegaciones son contradictorias. Exponen que en el presente caso existe una total ausencia de prueba por parte del Departamento, y a base de las estipulaciones de las partes y la prueba ofrecida por los apelados, el foro primario correctamente concluyó que el Secretario no tenía discreción para excluir a los apelados del plan de retiro luego de que éstos fueron aceptados.

Según adelantamos en la exposición de derecho, la Ley 211-2015, *supra*, estableció un Programa de Preretiro Voluntario para que los empleados públicos pudieran separarse de forma incentivada de su empleo hasta que cumplieran con los requisitos de ley para su retiro. A su vez, este programa representaría un ahorro significativo a las arcas del Gobierno de Puerto Rico. La entidad gubernamental que cualificara y estuviera interesada en

Case:17-03283-LTS  Doc#:23894-1  Filed:03/30/23  Entered:03/30/23 11:11:36  Desc:
Exhibit February 7th letter w attachments  Page 91 of 119
KLAN202000715

21

acogerse a los beneficios del Programa de Preretiro Voluntario, debía cumplir con una serie de requisitos impuestos por la Oficina de Gerencia y Presupuesto, en coordinación con los esfuerzos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico.  Para cumplir con el espíritu de la Ley 211-2015, *supra*, se facultó al Director de la OGP de "todos los poderes necesarios y convenientes para implementar la ley".  Art. 12 de la Ley 211-2015, *supra*.  A esos fines, el Director de la OGP promulgó el 20 de enero de 2016 la Carta Circular 129-16, en donde se estableció un procedimiento de implementación inmediata de la Ley 211-2015, *supra*.

En resumen, el procedimiento para la implementación del Programa de Preretiro Voluntario se dividía en tres fases, a saber: la evaluación preliminar de la agencia, la certificación de elegibilidad y determinación de aportación para beneficios al momento del retiro de la ASR y la evaluación y aprobación de la solicitud para acogerse al Programa de Preretiro Voluntario de la OGP.  Entre los requisitos dispuesto en la Carta Circular, la agencia debía hacer una evaluación preliminar e identificar a los empleados que cualificarían para el programa.  Una vez identificados, la agencia debía ofrecerle a éstos empleados una orientación sobre los beneficios y criterios del programa.  A su vez, la agencia debía evaluar si podía ofrecerles a los empleados elegibles e interesados de acogerse al programa los beneficios que disponía la ley, mediante la realización de una Tasación de Implementación.  Si luego de un análisis, por parte de la agencia, se determinaba que existiría un ahorro neto anual, entonces se realizaba una Determinación Preliminar de Ahorro y se enviaría la Tasación de Implementación ante la ASR para su evaluación.  Luego, la ASR debía realizar una certificación de elegibilidad y la determinación de la aportación necesaria que la agencia tendría

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 92 of 119

KLAN202000715                                                                                22

que realizar para los beneficios de los empleados al momento del retiro. En esta etapa, la ASR debía certificar la elegibilidad de los empleados identificados por la agencia. Una vez culminado este proceso, la agencia debía revisar la Tasación de Implementación y preparar un Plan Patronal para el Preretiro y someterlo a la OGP. En esta etapa, la agencia debía notificarle al empleado que es elegible para solicitar el programa mediante una Notificación de Elegibilidad. Asimismo, el empleado debía ejercer de manera irrevocable su intención de participar del programa, **pero estaría sujeto al análisis final de la agencia, así como la aprobación de la OGP.** También, la agencia debía realizar una Determinación de Ahorro. En la fase final, la OGP analizaría la viabilidad del programa y notificaría su determinación a la agencia. Si la OGP emitía una determinación de no aprobación, la agencia podía enmendar su Plan Patronal y someterlo nuevamente para evaluación de la OGP. Cuando la OGP emite la aprobación final, se debía ajustar el presupuesto de la agencia para cumplir con las obligaciones de los participantes que se acogieron al programa. Además, la agencia debía notificar a los empleados que presentaron oportunamente su Formulario de Elección solicitando acogerse al programa.

En el presente caso, luego de la aprobación de la Ley 211-2015, *supra,* el Departamento notificó mediante carta a sus empleados de la realización de una orientación sobre la aludida ley a los fines de identificar y cualificar a aquellos empleados que optaran por separarse de forma incentivada de su empleo, hasta que cumplieran con los requisitos de para acogerse al retiro.[10] El 26 de enero de 2016 el Departamento emitió carta a los empleados que cualificaban para el programa, incluidos los apelados, sobre su elegibilidad para participar de los beneficios del preretiro

---

[10] Apéndice del escrito de apelación, a la pág. 60.

voluntario. La aludida carta, denominada como "Notificación de Elegibilidad", Anejo II de la Carta Circular 129-16 de la Ley 211-2015, *supra*, certificaba que los empleados habían sido hallados elegibles por la ASR. A su vez, informaba que éstos tenían 30 días calendario a partir de la notificación para ejercer la opción de acogerse al programa mediante la entrega un Formulario de Elección. Asimismo, la carta establecía lo siguiente:

> [s]u elección de participación en el Programa de Preretiro Voluntario será irrevocable y **está sujeta a la aprobación por la Oficina de Gerencia y Presupuesto de la solicitud de nuestra agencia para acogerse al Programa**. *(Énfasis suplido).*[11]

Posteriormente, el 27 de diciembre de 2016 el Departamento emitió una carta a 11 empleados de la agencia en donde **exponía que la implementación del Programa de Preretiro Voluntario estaba sujeto a la aprobación de la OGP.** Señalaba la misiva que luego de una evaluación realizada por la OGP, ésta última informó de varios factores que limitaban lo generación de ahorros significativos del Departamento. A esos efectos, la carta indicaba lo siguiente:

> [...] a pesar de que en todo momento y en todas las orientaciones ofrecidas explicamos que **la implementación del programa no era garantizada, que dependía de los ahorros que se identificaran y que el Pre-retiro no era un derecho que asistía al empleado**, que más bien surgía como un beneficio marginal resultado de un programa de ahorro, siempre y cuando se generasen dichos ahorros, nos dimos a la tarea de buscar alternativas y soluciones que permitieran la implantación del programa en el Departamento, tanto para el beneficio de nuestro grupo de trabajo, como para este Departamento del Trabajo que lograría ahorros de relevancia como resultado del programa.
>
> Luego de realizar diferentes ajustes llevamos a cabo un análisis sobre lo que representaría en ahorros, **posponer la participación de un grupo mínimo de personas quienes no serán excluidos, sino que participarán de una segunda fase según provista y facultada en la legislación aplicable. Esta acción representa la única opción para lograr implantar el programa en el Departamento del**

---

[11] Apéndice del escrito de apelación, a la pág. 59.

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 94 of 119

KLAN202000715                                                                      24

> ***Trabajo*** *y eventualmente lograr que todos los empleados que solicitaron, y fueron cualificados por las partes inherentes, puedan participar del programa al lograr ahorros para la agencia en cumplimiento tanto con la letra como con el espíritu de la Ley.*
>
> *[...] Nos reiteramos en que esta determinación **No lo excluye del proceso sino, que con esta medida se le permite a la Agencia lograr los ahorros necesarios para la implementación del programa en el Departamento del Trabajo**, lo que a su vez da paso a que eventualmente aquellos solicitantes cualificados por todas las partes puedan participar del Pre-retiro. Repetimos que de no tomar estas medidas no se aprobaría el programa para el Departamento del Trabajo y nadie podría beneficiarse del mismo. (Énfasis y subrayado suplido).*

Aunque es un hecho probado que más de 100 empleados del Departamento se acogieron a los beneficios del Programa de Preretiro Voluntario, la notificación de elegibilidad al programa emitida por la ASR no era un derecho adquirido de los apelados. Recordemos que la propia ley establece que es la agencia quien tiene la responsabilidad del desembolso de los fondos para el cumplir con los beneficios del programa de preretiro autorizado por la Ley 211-2015, *supra*. Además, el espíritu de la Ley 211-2015, *supra*, no era imponer un programa para beneficio de los empleados que dejara inoperante las operaciones de la agencia, por lo que se estableció que la implementación del programa no debía tener un efecto adverso sobre las arcas del Sistema de Retiro ni de las entidades gubernamentales que implementaran el mismo. Véase Exposición de Motivos de la Ley 211-2015, *supra*. También, la ley establece que **"la responsabilidad por el pago de los beneficios dispuestos por esta Ley no recaerá sobre el Sistema de Retiro del ELA, sino en la entidad gubernamental para la cual trabaje el empleado al momento de acogerse al Programa".** Íd. (Énfasis nuestro). Aunque los apelados basan sus argumentos en que **el Departamento aceptó, mediante la "Moción Sometiendo al Expediente Estipulaciones de Hechos de las Partes",** que **"no existe notificación de OGP denegando a**

**alguno de los [apelados] para participar del Programa"**,[12] dicha facultad de excluirlos le es delegada a la agencia. (Énfasis nuestro). Es la agencia quien deberá analizar si la implementación del Programa de Preretiro Voluntario, aun con la aprobación final de la OGP, constituye un ahorro y si en efecto existe la solvencia económica para poder implementarlo. Así, la implementación del Programa de Preretiro Voluntario no es una automática, sino que dependerá de la situación fiscal de la agencia al momento de implementar la ley. En cuyo caso de existir las condiciones de solvencia económica, existe el deber Ministerial del Secretario de implementar dicho programa.

La entidad gubernamental que cualifique y que tenga una aprobación final de la OGP, implementará el programa o podrá dividirlo en fases, en los mejores intereses de la entidad gubernamental. Por lo que, resolvemos que el foro primario no cometió el error planteado.

Por otro lado, los apelados señalan que el Departamento los sustituyó de las listas del programa para incluir algunos empleados que no estuvieron incluidos en las listas originales, quienes cuya salida no representaban un ahorro para el Departamento. Sobre dichas alegaciones, los apelados no han presentado prueba fehaciente que demuestre que el Departamento los haya sustituidos para incluir a otros empleados, ni tampoco se presentó prueba sobre los testimonios vertidos en juicio. Por lo que, este Tribunal no entra en los méritos de esta alegación, pues las partes no nos han puesto en condiciones para evaluar dichas alegaciones.

No obstante, el Departamento del Trabajo no presentó documentos ni evidencia que sustentaría la falta de fondos para la implementación del Programa de Preretiro Voluntario al amparo de

---

[12] Apéndice del escrito de apelación, a las págs. 211-213.

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:11:36 Desc:
Exhibit February 7th letter w attachments Page 96 of 119

KLAN202000715                                                    26

la Ley 211-2015, *supra*. Por tal motivo, es imprescindible que la OGP reevalúe la viabilidad de los fondos para la implementación de dicha ley acorde con la situación económica actual de la agencia. Una vez recibida la determinación en la agencia, el Secretario del Trabajo deberá proceder conforme a la misma.

Queremos hacer referencia a las notas al calce (40) y (44) del recurso titulado "Apelación Civil" donde el Lcdo. Eric O. De La Cruz Iglesias, Procurador General Auxiliar, hace imputaciones sobre el carácter y la imparcialidad de la Jueza que suscribe la Sentencia apelada ante nos. Dichas expresiones son impertinentes y no abonan a la resolución de la presente controversia siendo las mismas percepciones del Lcdo. De La Cruz Iglesias. Exhortamos al abogado a ser prudente en cuanto a sus expresiones futuras sobre los jueces y el tribunal, ya que de continuar con dicho comportamiento podría infringir los Cánones de Ética Profesional.

-IV-

Por los fundamentos expuestos, modificamos la Sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan, a los fines de remitir el caso a la Oficina de Gerencia y Presupuesto (OGP) para que reevalúe la viabilidad de fondos conforme a la situación económica actual de la agencia. De ser identificados los fondos, el Secretario del Trabajo deberá implementar la Ley 211-2015, *supra*. Así modificado, se confirma el dictamen apelado.

El Juez Adames Soto concurre sin opinión escrita.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 122 Página 1 de 7

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**
**SALA DE LOS RECURSOS EXTRAORDINARIOS**

| | |
|---|---|
| GILBERTO ARES CANDELARIA et al, <br><br> Peticionarios <br><br> v. <br><br> Lcdo. Gabriel Maldonado González, <br> en su capacidad oficial como Secretario del <br> Departamento Del Trabajo y Recursos Humanos <br> De Puerto Rico <br><br> Peticionado | CIV. Núm <br> SJ2017-CV 02199 (907) <br><br><br> Sobre: Mandamus; Ley de <br> Preretiro, Ley 2015-211 |

## MOCIÓN EN CUMPLIMIENTO DE ORDEN

**AL HONORABLE TRIBUNAL:**

**COMPARECEN los peticionarios,** ex-empleados del Departamento de Trabajo y Recursos Humanos (*en adelante, "DTRH"*), y por conducto de la representación legal que suscribe, respetuosamente someten esta Moción en Cumplimiento de la Orden emitida el 9 de diciembre de 2022, mediante la cual este Honorable Tribunal ordenó a los peticionarios a exponer su posición referente a la solicitud de la parte peticionada a los fines de que se de por cumplida la Sentencia y se decrete el archivo del caso.

La parte peticionaria expresa la siguiente posición:

Se debe dar por cumplidas las solicitudes contenidas en la Causa de Acción Número "a" del recurso de marras, debido a que finalmente los peticionarios han sido incluidos en el programa de Preretiro.

Por otro lado*, aún queda por resolver* la Causa de Acción Número "b", sobre los honorarios de abogado. La referida causa de acción se basa mayormente en la Ley 402 de 1950, la cual prohíbe que la representación legal de los y las empleadas cobre cantidad alguna por los servicios rendidos por sus abogado/as y condena al patrono a pagar los referidos honorarios.

Conforme a la prohibición estatutaria, así como su deber ético, la suscribiente afirma ante este Honorable Tribunal que ella no ha cobrado cantidad alguna por sus

1

Case:17-03283-LTS Doc#:23899-1 Filed:03/30/23 Entered:03/30/23 21:13:36 Desc:
Exhibit February 7th letter w attachments Page 98 of 119
SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 132 Página 2 de 7

servicios profesionales a través de más de cinco (5) años de litigio. *Véase, Berkan/Méndez v. Mead Johnson, 204 DPR 183(2020); In re Rivera Franco 169 DPR 237 (2006).*

Al día de hoy no se ha adjudicado el asunto de los honorarios. Esto porque el gobierno solicitó la paralización de este asunto debido a PROMESA. En el día de hoy, la suscribiente le escribió a la representación legal de los peticionarios, solicitando su *anuencia* a una estipulación dejando sin efecto la referida paralización vis-a-vis los honorarios solicitados en este caso.

Por las razones que se detallen a continuación, entendemos que este Honorable Tribunal debe analizar y adjudicar el asunto de los honorarios de abogado. Sin embargo, esto tiene que esperar a que se logre dejar sin efecto la paralización impuesta por el Gobierno en el contexto del proceso ante el Tribunal federal relacionada con la Ley "PROMESA" y la "quiebra" de Puerto Rico.

En apoyo a lo anterior, los peticionarios alegan como sigue:

1. El caso de marras trata sobre el derecho de los peticionarios a participar en el programa de preretiro al amparo de la Ley 211-2015, según enmendada. Se presentó el recurso de *mandamus* en octubre de 2017, o sea casi cinco años atrás.

2. Los peticionarios, quienes entraron en el servicio público más de 30 años atrás, explicaron que, a finales del año 2016, el Departamento de Trabajo y Recursos Humanos ("DTRH") les sorprendió con la notificación de que no iban a poder pre-retirarse como habían planificado por casi un año.

3. Los peticionarios trataron de resolver este asunto internamente. Ante la intransigencia del DTRH, éstos presentaron el *31 de octubre de 2017,* el recurso de Mandamos en el caso de epígrafe

4. La Primera Causa de Acción en el recurso presentado ante este Tribunal, titulado *"Mandamus"* trata sobre el derecho que tenían los peticionarios en relación con el Programa de Preretiro. Finalmente, después de cinco años, así como una vista en su fondo, varios recursos en alzada y sendas mociones ante este Honorable Tribunal, los peticionarios están disfrutando del retiro para el cual cualificaron en el 2016.

2

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 21:13:38 Desc:
Exhibit February 7th letter w attachments    Page 99 of 119

SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 132 Página 3 de 7

5. Por otro lado, la abogada que suscribe no ha recibido honorarios algunos por su trabajo en este caso.

6. En el recurso de *Mandamus*, presentado en octubre de 2017, se contempló esta controversia, en la segunda Causa de Acción, la cual reza en parte pertinente como sigue:

**"B.** **Segunda causa de acción - honorarios de abogado**

9.3   La política pública de Puerto Rico reconoce la importancia de garantizarle al empleado una representación legal adecuada en relación con sus reclamaciones judiciales y extrajudiciales contra su patrono.

9.4   Según dispone la Ley 402 de 12 de mayo de 1950, 32 LPRA §3114 et seq, en casos de reclamaciones laborales, le corresponde al patrono pagar los honorarios de los/las abogados o abogadas que representan a los empleados. Mediante disposición explícita de la Ley 402, está estrictamente prohibido obligar a los empleados "directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos...." *32 LPRA §3116*.

9.5   La política pública de Puerto Rico es clara: "Permitir el cobro de honorarios de abogado los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo, equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados." *32 LPRA §3115*.

9.6   Son "nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales" en casos de esta índole. *32 LPRA §3116. In re Rivera, 169 DPR 237, 268 (2006)*. Tan reciente como enero del año en curso, el Tribunal Supremo reiteró en *In re Martí Rodríguez*, 2016 TSPR 1, 195 DPR ____ que la Ley Núm. 402, *supra,* prohibe a los abogados contratar honorarios profesionales con los

trabajadores o empleados para representarlos en sus reclamaciones laborales, ya sean en el contexto de reclamaciones judiciales o de reclamaciones extrajudiciales.   Le corresponde al patrono y no al obrero pagar estos servicios.

9.7   Si este Tribunal entiende que la reclamación en este caso constituye una reclamación de índole laboral de unos empleados contra su patrono, la única forma que las suscribientes pueden recibir compensación alguna por su trabajo en relación con el trámite de este caso ante el Tribunal sería con una imposición de honorarios de abogado.

9.8   Más allá de las disposiciones específicas de la referida Ley 402, surge otra base para la imposición de honorarios en este caso, la Regla 44.1 (d) de las de Procedimiento Civil sobre temeridad.

La Regla 44.1 establece lo siguiente:

> En caso que cualquier parte .... haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.  En caso que el Estado Libre Asociado de Puerto Rico [o] ... sus agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exteno por ley del pago de honorarios de abogado.  *32 LPRA Ap. V, R. 44.1.*

9.9   Sabido e que "el concepto de temeridad se refiere a las actuaciones de una parte que <u>hacen necesario un pleito que se pudo evitar</u> o que provocan la indebida prolongación del mismo". *Colón Santos v. Cooperativa de Seguros Múltiples de Puerto Rico, 173 DPR 170, 188 (2008), citando a Blas Toledo v. Hospital La Guadalupe, 146 DPR 267, 335 (1998) (énfasis suplido.)*

9.10   El propósito de la regla sobre temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obligan a la otra parte innecesariament a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Domínguez Vargas v. Great*

4

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments   Page 101 of 119
SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 122 Página 5 de 7

*American Life Assurance, 157 DPR 690, 706 (2002), citando a Rivera v.*

*Tiendas Pitusa, 148 DPR 695, 702(1999)*

9.11   La parte peticionado en este caso ha sido temerario en e manejo

de esta controversia dado que el Secretario del Trabajo ha ignorado y

desatendido los reclamos de los peticionarios, sin razón legítima.

9.12   Como resultado del proceder termerario [sic] de la parte

peticionado, los empleados peticionarios se han visto obligados a recurrir

ante este foro judicial para solicitar el auto de *mandamu [sic]* para

asegurar el cumplimiento de un deber ministerial de parte del Secretario

de Trabajo.

9.13   Ante el trasfondo fáctico expuesto en esta petición, y a tenor con

la normativa en nuestra jurisdicción procede la imposición de honorarios

de abogado por temeridad." *Demanda Sometida el 31 de octubre de 2017.*

7. Por espacio de casi dos años, este caso fue paralizado en su totalidad, por

virtud de una Notificación presentada por la parte peticionada, dirigiendo el caso a la

consideración del caso de "quiebra" de Puerto Rico, Núm. 17-03283-LTS, ante la Jueza

federal Laura Taylor Swain.

8. Posteriormente, por estipulación de las partes ante el Tribunal Federal, la

paralización fue modificada "to the limited extent necessary to allow the Prepetition

action to proceed to final judgment ...." Por otro lado, la paralización "shall continue to

apply in all other respects ... including but not limited to, the execution and

enforcement of ... any claims for money damages ... against the Commonwealth." *Ver*

*Moción Suplementaria sometida por el Gobierno de Puerto Rico, Anejada a esta*

*Moción, la cual incluye la estipulación referente al caso de epígrafe, en el párrafo 1, a*

*la página 4 de 8.*

9. Después de sendas mociones y vistas argumentativas y evidenciarias, este

Honorable Tribunal, por voz de la Jueza Lauracelis Roques Arroyo, emitió Sentencia

fechada el 15 de julio de 2020, declarando Ha Lugar la Petición de *Mandamus.*  Este

Tribunal determinó que el Secretario del DTRH carecía de discreción para excluir a los

peticionarios del plan de preretiro, por lo que tiene un *deber ministerial* de incorporar a

SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 132 Página 6 de 7
Case:17-03283-LTS Doc#:23869-1 Filed:03/30/23 Entered:03/30/23 11:13:30 Desc:
Exhibit February 7th letter w attachments   Page 102 of 119

los peticionarios al Programa de Preretiro al amparo de la Ley 211-2015.

10. En la referida Sentencia, este Honorable Tribunal resolvió que *en ese momento* no podía atender el asunto de los honorarios de abogado.  Expuso la Jueza Roques Arroyo:

> "Finalmente, en relación con la reclamación de honorarios ... este Tribunal dicta *Sentencia* decretando la paralización de la misma, toda vez que se trata de una *reclamación monetaria* que está paralizada por PROMESA."

11. Por otro lado, la Jueza Roques Arroyo explícitamente reservó "jurisdicción para decretar su apertura, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejada sin efecto .... y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos".

12. La parte peticionada ("el Gobierno") apeló. *Caso KLAN 20202000715.*

13. El 18 de noviembre de 2020, el TA emitió Sentencia confirmando la referida Sentencia, pero modificó la misma en varios aspectos que no son pertinentes a los honorarios de abogado.

14. Como es del conocimiento de este Honorable Tribunal, las partes han comparecido a este Honorable Tribunal varias veces en los últimos dos años, para atender los otros asuntos planteados en este caso.

15. Después de muchos intentos, el Gobierno finalmente ha otorgado a los peticionarios los remedios que solicitaron en relación con su participación en el Programa Preretiro.

16. La abogada que suscribe, quien ha trabajado literalmente *cientos* de horas en relación con este asunto, no ha recibido compensación alguna por el trabajo realizado.

17. Como se mencionara arriba, la suscribiente le ha solicitado a la parte peticionaria que firme una estipulación que permitiría a este Honorable Tribunal ejercer la jurisdicción específicamente reservada por la Jueza Roques Arroyo, sobre los honorarios de abogado.

Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:30 Desc:
Exhibit February 7th letter w attachments Page 103 of 119

SJ2017CV02199 19/12/2022 12:44:23 pm Entrada Núm. 122 Página 7 de 7

18. La suscribiente le informará oportunamente todo relacionado con la referida solicitud.

**POR TODO LO CUAL**, se solicita respetuosamente que este Honorable Tribunal que:

1. De por cumplida la Orden del 9 de diciembre de 2022;

2. Tome conocimiento sobre el estatus de este caso, según aquí informado;

3. Mantenga jurisdicción sobre el asunto de los honorarios de abogado;

4. Ordene a las partes informarle al Tribunal dentro un término de 30 días, o sea en o antes del 18 de enero sobre el estatus de las gestiones en relación con la paralización;

5. Emita cualquiera otra orden que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO,**

En San Juan, Puerto Rico a 19 de diciembre de 2022.

Berkan/Méndez
Calle O'Neill G-11,
San Juan, Puerto Rico 00918-2301
Tel.: (787) 764-0814;
tel temporero 787-399-7657;
Fax.: (787)250-0986
berkanmendez@gmail.com

CERTIFICACIÓN: Por este medio certifico que en el día de hoy, 19 de diciembre de 2022, se está presentando este escrito por el sistema SUMAC, el cual notificará automáticamente a las abogadas de récord.

/f/Judith Berkan
JUDITH BERKAN
Col Núm. 8054; RUA 6723
berkanj@microjuris.com

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE SAN JUAN**
**SALA SUPERIOR**

| | |
|---|---|
| **GILBERTO ARES CANDELARIA *et al.*** | **CIVIL NÚM.:** SJ2017CV02199 |
| Demandantes | **SALA:** 907 |
| v. | **SOBRE:** MANDAMUS, Ley Núm. 211- 2015, "Ley del Programa de Preretiro Voluntario" |
| **HON. CARLOS SAAVEDRA GUTIÉRREZ Secretario del Departamento del Trabajo y Recursos Humanos** | |
| Demandados | |

**MOCIÓN EN CUMPLIMIENTO DE ORDEN Y OPOSICIÓN A REAPETURA DE SEGUNDA CAUSA DE ACCIÓN**

**AL HONORABLE TRIBUNAL:**

**COMPARECE**, el **ESTADO LIBRE ASOCIADO DE PUERTO RICO**, en representación del Departamento del Trabajo y Recursos Humanos (DTRH), de forma especial, sin someterse a la jurisdicción del Tribunal y, sin renunciar a las defensas y derechos que surjan de "Puerto Rico Oversight, Management and Economic Stability Act" ("PROMESA", por sus siglas en inglés), 48 U.S.C. §§ 2101 *et seq*., a través de la representación legal que suscribe y muy respetuosamente **EXPONE** y **SOLICITA:**

**I. INTRODUCCIÓN**

El 20 de diciembre de 2022, este Tribunal ordenó que las partes informaran sobre el estatus de las gestiones en relación con la paralización de la reclamación de honorarios de abogado presentada por la parte demandante.[1] En cumplimiento con la orden dictada, se informa que la reclamación de honorarios de abogado está paralizada en virtud del *injunction* contenido en la *Orden de Confirmación* y el Plan de Ajuste emitido por Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico ("Tribunal de Distrito") en el caso de restructuración de la deuda bajo el Título III de PROMESA ("Caso de Título III"). En lo pertinente, cabe aclarar que la parte demandante fue quien cursó un correo electrónico al Estado con la pretensión de mover la solicitud de honorarios de abogado en el caso de epígrafe, por lo que se informa la oposición a que se continúen los

---

[1] *Véase* Entrada Núm. 123 de SUMAC.

procedimientos debido a que este Tribunal no tiene jurisdicción para atender el asunto planteado. La modificación de la paralización automática a la que consintió el Estado fue limitada a la litigación de la controversia sustantiva y **no** incluyó reclamaciones para honorarios de abogado.[2] Por tanto, toda vez que el caso de epígrafe está sujeto al *injunction* de la Orden de Confirmación y del Plan de Ajuste, no procede la litigación relacionada a los honorarios de abogado que solicita la parte demandante por la falta de jurisdicción de este Ilustrado Tribunal.

## II. RESUMEN PROCESAL

### A. Caso original sobre mandamus

El caso de epígrafe versa sobre un recurso de *mandamus* presentado por 17 empleados del DTRH. En virtud de dicha acción, los empleados demandantes solicitaron a este Ilustre Foro que expidiera el auto solicitado para que se ordenara tramitar su pre-retiro bajo el Programa de Preretiro Voluntario a tenor con la Ley 211-2015. El Estado presentó *Moción de Desestimación* en la que sostuvo que el Secretario del Trabajo cumplió con su deber ministerial al no autorizar el pre-retiro a los empleados demandantes, pues tenía discreción para examinar los casos individualmente conforme disponía la Ley 211-2015 (el Secretario podía determinar qué y cuántos empleados preretirar para cumplir con la Ley sin afectar la liquidez financiera de la agencia y los servicios que la agencia brinda a la ciudadanía).

El 29 de diciembre de 2017, este Tribunal emitió una *Resolución* en la que determinó que no procedía desestimar el pleito dado a que, de los demandantes probar que la agencia obtuvo la aprobación final por parte de la OGP y que les notificó a éstos su determinación final de elegibilidad al Programa de Preretiro Voluntario, el Secretario no tendría discreción para denegarle pre-retiro al mismo en dicha etapa. Asimismo, en la *Resolución* se ordenó a las partes a acreditar si habían cumplido con el trámite dispuesto por este Foro y con la documentación de apoyo en cuanto a cada uno de los demandantes.

---

[2] La violación al *injunction* de descargue—emitido por un tribunal federal de quiebras—por parte de un presunto acreedor podría configurar una causa de acción por daños y perjuicios a favor del deudor, conforme a lo dispuesto en el 11 USC Sec. 105 (Código de Quiebras) que fue incorporado por referencia en el Título III, Sección 30, de PROMESA (48 USC Sec. 2161). *Véanse Ameriquest Mortg. Co. v. Nosek* (*In re Nosek*), 544 F.3d 34, 43-44 (1st Cir. 2008); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) ("[A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages [...] if the merits so require.").

Igualmente, se ordenó a las partes a establecer si la controversia era una de estricto derecho que podía ser sometida por el expediente o si era necesaria la celebración de una vista probatoria. El 4 de enero de 2018, el Estado solicitó la reconsideración de la *Resolución*, pero, el 5 de enero 2018, la solicitud de reconsideración fue denegada .

Luego del trámite apelativo de rigor, el 28 de febrero de 2018, el Tribunal de Apelaciones denegó el recurso de *certiorari* presentado por el Estado y, el 27 de marzo de 2018, denegó la solicitud de reconsideración. Posteriormente, el Estado presentó una moción ante este Tribunal en la cual notificó la paralización del pleito a tenor de las secciones 362(a) y 922(a) del Código de Quiebra, según incorporadas por referencia bajo la sección 301(a) de PROMESA. Ese mismo día, este Tribunal dictó *Sentencia* en la que decretó la paralización de los procedimientos del caso y se reservó la jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso de que dicha orden de paralización fuese dejada sin efecto.

El 1 de octubre de 2019, aproximadamente dieciocho meses después de que se paralizara el caso, el Estado presentó *Moción Informativa Sobre Acuerdo Alcanzado Para Modificar el Alcance de la Paralización Automática*, en la que informó lo siguiente:

> Mediante la presente moción, el Estado confirma que aceptó que se modifique la paralización automática establecida por la sección 301 de PROMESA **para los únicos fines de permitirle a los demandantes litigar su caso hasta que se llegue a una determinación final en el Tribunal de Primera Instancia**, el Tribunal Apelativo y/o el Tribunal Supremo de Puerto Rico. Véase, Exhibit I – Acuerdo.

> De conformidad con el "Amended Notice, Case Management and Administrative Procedures", el Estado puede entrar en estipulaciones que modifiquen la paralización automática, sin la aprobación inmediata del tribunal, las cuales se presentarán al Tribunal que atiende el caso de Título III cada sesenta (60) días, para su aprobación retroactiva. El Estado se reserva todos los derechos, defensas y protecciones bajo el Título III de PROMESA con respecto, incluyendo mas no limitándose a, la ejecución final de la Sentencia, asuntos que estén pendientes o que puedan surgir en el caso del Título III de PROMESA, incluyendo cualquier reclamación que surja de la presente demanda, bajo un plan de ajustes o de otra manera.

Entrada Núm. 33 de SUMAC, pág. 2 (énfasis nuestro). Luego de celebrada la vista probatoria y las partes someter los escritos jurídicos correspondientes, el 17 de julio de 2020, este Tribunal notificó una *Sentencia* en que declaró *con lugar* la Demanda y

determinó que el DTRH tenía el deber ministerial de otorgarle a los demandantes todos los beneficios del Programa de Preretiro al amparo de la Ley 211-2015, y que la reclamación de honorarios de abogados instada la parte demandante estaba paralizada por PROMESA, al tratarse de una reclamación monetaria.[3] Inconforme con la Sentencia dictada, el Estado apeló la Sentencia de este Foro y, posteriormente, el Tribunal de Apelaciones emitió una Sentencia en la que dispuso lo siguiente:

> Es la agencia quien deberá analizar si la implementación del Programa de Preretiro Voluntario, aun con la aprobación final de la OGP, constituye un ahorro y si en efecto existe la solvencia económica para poder implementarlo. Así, la implementación del Programa de Preretiro Voluntario no es una automática, sino que dependerá de la situación fiscal de la agencia al momento de implementar la ley. En cuyo caso de existir las condiciones de solvencia económica, existe el deber Ministerial del Secretario de implementar dicho programa.
>
> La entidad gubernamental que cualifique y que tenga una aprobación final de la OGP, implementará el programa o podrá dividirlo en fases, en los mejores intereses de la entidad gubernamental. Por lo que, resolvemos que el foro primario no cometió el error planteado.

Véase, Sentencia del 18 de noviembre de 2020, KLAN202000715 a la pág. 25.

Además, el Tribunal de Apelaciones modificó la *Sentencia* de este Ilustrado Foro a los fines de remitir el caso a la Oficina de Gerencia y Presupuesto ("OGP") para que reevaluara la viabilidad de fondos conforme a la situación económica actual de la agencia; y ordenó que, de ser identificados los fondos, el Secretario debía implementar la Ley 211-2015. Posterior al dictamen del Tribunal de Apelaciones, se celebraron varias vistas para el cumplimiento de la Sentencia y, finalmente, la agencia cumplió con aprobar el preretiro de los demandantes y se emitió una *Certificación* a esos efectos el 2 diciembre de 2022.

**B. Reclamación de honorarios de abogado**

El 19 de diciembre de 2022, la representante legal de la parte demandante remitió un correo electrónico para informar al Estado que estaría preparando una moción en

---

[3] En dicha Sentencia el Tribunal determinó también que: "**en relación con la reclamación de honorarios de abogados instada por la parte demandante, este Tribunal dicta Sentencia decretando la paralización de la misma, toda vez que se trata de una reclamación monetaria que está paralizada por PROMESA**. Adviértase que el Acuerdo Para Modificar la Paralización Automática expresamente dispone que la paralización automática del Título III de PROMESA continuará aplicando en todo lo relacionado con reclamaciones monetarias. Expresamente reservamos jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejada sin efecto en cualquier momento con posterioridad a la fecha de la presente sentencia y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos". SUMAC entrada número 66 página 18 ¶2. (Énfasis suplido).

Case:17-03283-LTS Doc#:23684-1 Filed:03/30/23 Entered:03/30/23 21:13:36 Desc:
Exhibit February 7th letter w attachments Page 108 of 119
S J2017CV02199 18/01/2023 02:50:44 pm Entrada Núm. 137 Página 5 de 13

cumplimiento de orden y en cuanto al asunto de honorarios. En consecuencia, se solicitó

al Estado entrar en un acuerdo y estipulación para que el Tribunal conceda los honorarios

de abogados del caso. Sin embargo, el mismo día que la representante legal de los

demandantes cursó el correo electrónico al Estado, ésta presentó una moción ante este

Foro expresando lo siguiente:

> Al día de hoy no se ha adjudicado el asunto de los honorarios. Esto porque
> el gobierno solicitó la paralización de este asunto debido a PROMESA. En
> el día de hoy, la suscribiente le escribió a la representación legal de los
> peticionarios, solicitando su anuencia a una estipulación dejando sin efecto
> la referida paralización vis-a-vis los honorarios solicitados en este caso. Por
> las razones que se detallen a continuación, **entendemos que este
> Honorable Tribunal debe analizar y adjudicar el asunto de los honorarios
> de abogado**. Sin embargo, esto tiene que esperar a que se logre dejar sin
> efecto la paralización impuesta por el Gobierno en el contexto del proceso
> ante el Tribunal federal relacionada con la Ley "PROMESA" y la "quiebra"
> de Puerto Rico.

*Véase* Entrada Núm. 122 de SUMAC, pág. 2 (énfasis nuestro).

Ahora bien, es relevante establecer que el acuerdo para la modificación de la

paralización que suscribieron el Estado y la parte demandante únicamente contemplaba

la litigación del *mandamus* hasta que se llegara a una determinación final en el Tribunal

de Primera Instancia, el Tribunal Apelativo y/o el Tribunal Supremo de Puerto Rico. De

modo que **cualquier reclamación post-sentencia sobre honorarios de abogado no fue

incluida en la modificación de la paralización que suscribieron las partes y continúa

paralizada**, ahora en virtud del *injunction* emitido por el Tribunal de Distrito federal en

el caso de restructuración de la deuda bajo el Título III de PROMESA.

Actualmente, el proceso de *meet and confer* para evaluar la modificación de la

paralización en los casos *pre-petition* culminó tras la aprobación del Plan de Ajuste de la

Deuda. En dichos casos, solo queda esperar que culmine el proceso de reconciliación de

reclamaciones en el caso de Título III, en el cual se determinará, conforme al Plan de

Ajuste, el trato que se le dará a la misma. En su consecuencia, este Tribunal no tiene

jurisdicción para modificar el *injunction* emitido por el Tribunal de Distrito federal en

virtud de la Orden de Confirmación y el Plan de Ajuste. *Véase Morales Pérez v. Policía*, 200

DPR 1 (2018) (Martínez Torres, J., opinión de conformidad) (estableciendo que ante

paralizaciones bajo la Ley PROMESA, los tribunales pierden su jurisdicción y solo la retienen para determinar que no la tienen).

### III. DERECHO APLICABLE

Como es de conocimiento general y para este Ilustre Tribunal, el **3 de mayo de 2017** ("Fecha de la Petición"), el ELA, por sí y a través de la Junta de Supervisión Fiscal y Financiera ("Junta de Supervisión"), y en virtud de la Sección 315(b) de la ley conocida como "Puerto Rico Oversight, Management, and Economic Stability Act" ("PROMESA"), presentó una petición de restructuración de su deuda ante el Tribunal de Distrito bajo el Título III de PROMESA ("Caso de Título III").

El 16 de enero de 2018, el ELA, a través de la Junta de Supervisión, presentó un escrito intitulado *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* ("Moción de Fecha Límite") [Caso Núm. 17-bk-3283-LTS, ECF No. 2255]. A esos efectos, el Tribunal de Distrito emitió una orden intitulada *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [Caso Núm. 17-bk-3283-LTS, ECF No. 2521] ("Orden Inicial de Fecha Límite"), mediante la cual declaró con lugar el remedio solicitado en la Moción de Fecha Límite y estableció tanto las fechas límites como los procedimientos que se debían seguir para presentar los *proofs of claims* en contra del ELA, por ciertas personas e individuos, en virtud de, entre otras cosas, **reclamaciones que hubiesen surgido o que existiesen antes de la Fecha de la Petición**.

Consecuentemente, el Tribunal de Distrito emitió la orden intitulada *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (en conjunto con la Orden Inicial de Fecha Límite, en adelante, "Órdenes de Fechas Límites") extendiendo las fechas límites para presentar los *proof of claims* al 29 de junio de 2018 a las 4:00 pm (*Atlantic Time*). *Véase* Caso Núm. 17-bk-3283-LTS, ECF No. 3160. En el caso que nos ocupa, la abogada tenía que presentar el "proof of claims", si lo presentó, debe esperar a que se determine el proceder.

Ahora bien, el 18 de enero de 2022, el Tribunal de Distrito emitió *Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the*

6

*Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Buildings Authority* [Caso Núm. 17-bk-3283-LTS, ECF No. 19813] ("Orden de Confirmación"), la cual confirmó el *Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Buildings Authority* [Caso Núm. 17-bk-3283-LTS, ECF No. 19784] ("Plan de Ajuste").[4]

La Orden de Confirmación, en el párrafo 56 intitulado *Discharge and Release of Claims and Causes of Action*, dispone, en lo pertinente, lo siguiente:

> (a) Except as expressly provided in the Plan or herein, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of each of the Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and each of their respective Related Persons by any Creditors of the Debtors. Upon the Effective Date and independent of the distributions provided for under the Plan, the Debtors and Reorganized Debtors shall be discharged and released from any and all Claims, Causes of Action, and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code and section 407 of PROMESA, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and section 407 of PROMESA (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained in the Plan or herein shall release, discharge, or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

---

[4] Copias del *Confirmation Order* y el Plan de Ajuste de la deuda están disponibles públicamente y libre de costos en Prime Clerk LLC, accediendo a https://cases.primeclerk.com/puertorico/ o en el sitio web del Tribunal de Distrito federal, https://www.prd.uscourts.gov/.

(https://cases.primeclerk.com/puertorico/Home-DocketInfo?DockRelatedSearchValue=4214-19813)

Case:17-03283-LTS Doc#:23694-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments   Page 111 of 119
S J2017CV02199 18/04/2023 02:50:44 pm Entrada Núm. 137 Página 8 de 13

(b) Except as expressly provided in the Plan or herein, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective employees, officials, Assets, property, rights, remedies, Claims, or Causes of Action of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any and all interest accrued on such Claims, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of each of the Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or herein, this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt, or liability. As of the Effective Date, and in consideration for the distributions or other value provided pursuant to the Plan, each holder of a Claim in any Class under the Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property, all such Claims.

*Véase Orden de Confirmación* en las págs. 60-62, ¶56.

Asimismo, la Orden de Confirmación, en el párrafo 59 intitulado *Injunction on*

*Claims*, dispone lo siguiente:

Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall

extend to all successors and assigns of the Released Parties and their
respective assets and property. Notwithstanding the foregoing, without
prejudice to the exculpation rights set forth in section 92.7 of the Plan and
decretal paragraph 61 hereof, nothing contained in the Plan or this
Confirmation Order is intended, nor shall it be construed, to be a non-
consensual third-party release of the PSA Creditors, AFSCME, and of their
respective Related Persons by Creditors of the Debtors. (énfasis en original).

*Véase Orden de Confirmación*, págs. 67-68, ¶59

La Fecha de Efectividad del Plan de Ajuste ocurrió el 15 de marzo de 2022. *Véase*

*Notice of (A) Entry of Order Confirming Modified Eight Amended Title III Plan of Adjustment*

*of the Commonwealth of Puerto Rico, et al. Pursuant to the Title III of PROMESA and (B)*

*Occurrence of the Effective Date* [Case No. 17-bk-3283-LTS, ECF No. 20349] ("Notificación").

Así pues, se solicita a este Ilustre Tribunal que, al amparo de la Regla 201 (b) de las Reglas

de Evidencia de Puerto Rico, tome conocimiento judicial de las Órdenes de Fechas

Límites, la Orden de Confirmación y la Notificación, descritas anteriormente.

De todo lo anterior queda establecido que, **a partir de la petición de**

**restructuración de la deuda del Gobierno, se ha aplicado la paralización automática a**

**los procedimientos contra el Estado y sus funcionarios, <u>por hechos ocurridos antes de</u>**

**<u>la fecha de la petición</u>**. Tal cual, el presente caso quedó paralizado en virtud de las

disposiciones de la Ley PROMESA.

Posteriormente, una vez confirmado el Plan de Ajuste, el 18 de enero de 2022, la

paralización automática dispuesta en PROMESA fue sustituida por la paralización o

*injunction* del párrafo 66 de la Orden de Confirmación, el cual establece:

Term of Existing Injunctions or Stays. Unless otherwise provided in the
Plan or this Confirmation Order, all injunctions or stays in effect in the Title
III Cases (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or
any order of the Title III Court) and existing on the Confirmation Date
(excluding any injunctions or stays contained in the Plan or this
Confirmation Order) shall remain in full force and effect through the
Effective Date, except that each injunction imposed by a Court order shall
remain in effect permanently unless the order specifies a termination date
or event, in which case, the specification set forth in such order shall govern.
All injunctions or stays contained in the Plan or this Confirmation Order
shall remain in full force and effect in accordance with their terms.

Documento Núm. 19813 en la pág. 79, ¶ 66.

Luego quedó habilitado el párrafo 59 del *Confirmation Order*, que proveyó un

mecanismo de interdicto (*Injunction on Claims*) que, desde el 15 de marzo de 2022, fecha

9

de efectividad del Plan de Ajuste, sustituyó el efecto de la paralización automática que provenían del párrafo 66 de la Orden de Confirmación y, anteriormente, de las secciones 362 y 922 del Código de Quiebras federal, y recogidas en la sección 301 de PROMESA.

Dicho de otro modo, **el mencionado interdicto tiene el efecto de mantener paralizadas las reclamaciones pasadas, presentes y futuras de todas las entidades frente al deudor, incluyendo aquellas cuyos <u>hechos fueron posteriores a la petición de quiebra</u>, pero antes de la fecha de la efectividad del Plan**.

Por otra parte y relacionado a los procedimientos que se llevan a cabo en el Caso de Título III, y lo allí dispuesto, en la medida en que la parte demandante no haya presentado un *proof of claim* relacionado al presente litigio, sus reclamaciones en contra del ELA y funcionarios en su capacidad oficial, según aplique, han sido y fueron descargadas a través de la Orden de Confirmación y mediante la Sección 92.2 del Plan de Ajuste, lo cual redundaría en la desestimación, con perjuicio, del caso de epígrafe. Sin embargo, de la parte demandante haber presentado un *proof of claim*, su reclamación será atendida a través del proceso de reconciliación de las reclamaciones en el Caso de Título III, conforme a los términos establecidos en el Plan de Ajuste y en la Orden de Confirmación.

## IV. ARGUMENTACIÓN Y CONCLUSIÓN

Esbozado todo lo anterior, y tal como se señaló antes, la parte demandante, no puede basar su solicitud para la reapertura en los procedimientos establecidos en virtud del "Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction" ("Orden Modificando *Injunction*"), notificada el 20 de octubre de 2022, por el Tribunal de Distrito federal en el caso de *In Re: Commonwealth,* 17 BK-3283 LTS. La Orden Modificando *Injunction* extendió taxativamente la fecha límite para presentar las reclamaciones de gastos administrativos y modificó el "Discharge Injunction", pero aplica solo a los casos **post-petition** presentados antes de la fecha de efectividad del Plan de Ajuste. La aludida Orden establece, en sus párrafos 4 y 5, lo siguiente:

4. The Extended Administrative Claim Bar Date shall not apply to any Administrative Expense Claim (i) asserted on account of professional

services provided to the Debtors in connection with the Title III Cases, or
(ii) arising solely in connection with the Title III Cases.

5. The requirement to file a proof of Administrative Expense Claim
pursuant to decretal paragraph 44 of the Confirmation Order **shall not
apply to any of the following claims or causes of action arising from and
after the applicable petition date with respect to the Commonwealth,
ERS, and PBA and prior to the Effective Date:** (i) Eminent Domain/Inverse
Condemnation Claims, (ii) claims for property seized by the Debtors
pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (iii)
claims for attorneys' fees and costs pursuant to the Individuals with
Disabilities Education Improvement Act, 20 U.S.C. 1400 et seq., (iv) tax
refund claims, and (v) claims authorized to be asserted pursuant to 32
L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within
such statutory limitation of $75,000 or $150,000, as applicable.

Documento Núm. 22650, en la pág. 4, ¶¶ 4-5, del Caso Núm. 17-3283-LTS (énfasis

nuestro). Asimismo, sobre la modificación del *injunction*, el párrafo 6 de la Orden

dispone:

The injunctions contained in section 92.3 of the Plan and decretal paragraph
59 of the Confirmation Order are modified solely to the limited extent of
allowing litigation with respect to claims authorized to be asserted
pursuant to 32 L.P.R.A. § 3077(a), **to the extent the amount of such claim
asserted is within such statutory limitation of $75,000 or $150,000, as
applicable,** to proceed to final judgment and execution, including any
appeals.

*Id.*, Documento Núm. 22650, en la pág. 4, ¶ 6 (énfasis nuestro).

De lo anterior surge que el relevo de presentar una reclamación de gastos

administrativos y la modificación del *injunction* es **únicamente para reclamaciones o**

**causas de acción surgidas en o después de la fecha de la petición de quiebra del**

**Gobierno de Puerto Rico, a saber el 3 de mayo de 2017, y antes de la fecha de efectividad**

**del Plan de Ajuste, es decir al 15 de marzo de 2022. Además, dicha modificación solo**

**contempla causas de acción al amparo de la** *Ley de Pleitos contra el Estado***, Ley Núm.**

**104 de 29 de junio 1955 ("Ley 104-1955"), y cuyas reclamaciones no excedan los topes**

**de indemnización establecidos en dicho estatuto**. Sin embargo, el caso que nos ocupa **es**

**_pre-petition_** y no es una reclamación bajo la Ley 104-1955. Por lo cual, la Orden que

modifica el *injunction* de la sección 92.3 del Plan de Ajuste y el ¶ 59 del *Confirmation Order*,

**no aplica a casos como el de epígrafe**, por lo que continúa paralizado y este Tribunal no

tiene jurisdicción para atender ninguna reclamación post-sentencia relacionada con

honorarios de abogado. *Véase Morales Pérez*, 200 DPR en la pág. 1 (Martínez Torres, J., opinión de conformidad).

Cabe recalcar que, el 11 de octubre de 2019, el Estado presentó una *Moción Informativa Sobre Acuerdo Alcanzado Para Modificar el Alcance de la Paralización Automática* para informar al Tribunal sobre el alcance limitado del acuerdo de modificación de la paralización. [5] Particularmente, se informó que la paralización se modificó a **los únicos fines de permitirle a los demandantes litigar el *mandamus* hasta que se llegara a una determinación final en el Tribunal de Primera Instancia, el Tribunal Apelativo y/o el Tribunal Supremo de Puerto Rico**, lo cual ya sucedió. Además, se coligió en dicho escrito que el Estado se reservaba todos los derechos, defensas y protecciones bajo el Título III de PROMESA. De hecho, la estipulación para modificar la paralización dispuso específicamente que era "**to allow the Prepetition Action to proceed to judgment 'declararing the Rights of the parties and if appropiate, to ordering the Secretary of Labor to comply with his ministerial duties.**"[6]

Así las cosas, surge sin ambages que la reclamación de honorarios de abogado no estuvo incluida en la estipulación para modificar la paralización del caso y que solo se contempló la litigación de la controversia contemplada en el recurso de *mandamus*, lo cual ya sucedió. Por lo tanto, este Tribunal no tiene jurisdicción para hacer una determinación sobre dicho asunto y **el Estado reitera categóricamente que no consintió ni otorgó su aval para modificar la paralización relacionada a asuntos post-sentencia en el caso de epígrafe**. El presente está paralizado conforme al *injunction* emitido por el Tribunal de Distrito en la Orden de Confirmación y el Plan de Ajuste. Por lo anterior, se solicita que este Ilustre Tribunal tome conocimiento de que no tiene jurisdicción y que toda reclamación monetaria sobre el caso de referencia será atendida oportunamente en el caso de Título III, conforme a lo establecido en el Plan de Ajuste, de haberse presentado un *proof of claim*.

---

[5] *Véase* Entrada Núm. 33 de SUMAC.
[6] *Véase* Entrada Núm. 35 de SUMAC, Anejo de *Moción Informativa Suplementaria*, Estipulación.

SJ2017CV02199 18/01/2023 02:50:44 pm Entrada Núm. 127 Página 13 de 13
Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments Page 116 of 119

**POR TODO LO CUAL**, muy respetuosamente se solicita que este Foro declare **CON LUGAR** este escrito y, en su consecuencia, tome conocimiento de lo informado; dé por cumplida la *Orden* dictada (Entrada Núm. 123 de SUMAC) y decrete que la acción de honorarios de abogado está paralizada en virtud del *injunction* establecido en la Orden de Confirmación y el Plan de Ajuste, con cualquier otro pronunciamiento que proceda en derecho.

**RESPETUOSAMENTE PRESENTADO**.

**CERTIFICO:** Que este escrito ha sido presentado de manera electrónica a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC) el cual da aviso al mismo tiempo a todos los abogados de récord a sus respectivas direcciones electrónicas, lo cual constituye la notificación que debe efectuarse entre abogados y abogadas, según disponen las Reglas de Procedimiento Civil.

En San Juan, Puerto Rico, a 18 de enero de 2023.

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretario de Justicia

**SUSANA I. PEÑAGARÍCANO BROWN**
Secretaria Auxiliar de lo Civil

**JUAN CARLOS RAMÍREZ ORTIZ**
Subsecretario Auxiliar de lo Civil

*f/Tania L. Fernández Medero*
**TANIA L. FERNÁNDEZ MEDERO**
RÚA 16013
Directora de Asuntos Legales
Secretaría Auxiliar de lo Civil
División de Recursos Extraordinarios
Asuntos Ambientales y Política Pública
tfernandez@justicia.pr.gov

*f/Susanne B. Lugo Hernández*
**SUSANNE B. LUGO HERNÁNDEZ**
Abogada
División de Recursos Extraordinarios
Asuntos Ambientales y
Política Pública
RÚA 15512
slugo@justicia.pr.gov

**DEPARTAMENTO DE JUSTICIA**
Apartado 9020192
San Juan, Puerto Rico 00902-0192
Tel. 787-721-2900

SJ2017CV02199 18/01/2023 04:39:09 pm Entrada Núm. 126 Página 1 de 3
Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 11:13:30 Desc:
Exhibit February 7th letter w attachments Page 117 of 119

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**
**SALA DE LOS RECURSOS EXTRAORDINARIOS**

| | |
|---|---|
| GILBERTO ARES CANDELARIA et al,<br><br>    Peticionarios<br><br>      v.<br><br>Lcdo. Gabriel Maldonado González,<br>en su capacidad oficial como Secretario del<br>Departamento Del Trabajo y Recursos Humanos<br>De Puerto Rico<br><br>    Peticionado | CIV. Núm<br>SJ2017-CV 02199 (907)<br><br><br>Sobre: Mandamus; Ley de<br>Preretiro, Ley 2015-211 |

## MOCIÓN EN CUMPLIMIENTO DE ORDEN

**AL HONORABLE TRIBUNAL:**

    **COMPARECEN los peticionarios,** ex-empleados del Departamento de Trabajo y Recursos Humanos (*en adelante, "DTRH"*), y por conducto de la representación legal que suscribe, respetuosamente someten esta Moción en Cumplimiento de la Orden emitida el 19 de diciembre de 2022, mediante la cual este Honorable Tribunal ordenó a las partes informarle dentro un término de 30 días sobre el estatus de las gestiones en relación con la paralización del reclamo de honorarios de abogado.

    La parte peticionaria le informa al Tribunal sobre lo siguiente:

    1. Aún queda por resolver la Causa de Acción Número "b" de la demanda de epígrafe. La referida causa de acción, solicitando honorarios de abogado, se basa mayormente en la Ley 402 de 1950, la cual prohíbe que la representación legal de los y las empleadas cobre cantidad alguna por los servicios rendidos por sus abogado/as y condena al patrono a pagar los referidos honorarios.

    2. Conforme a la prohibición estatutaria, así como su deber ético, la suscribiente afirma ante este Honorable Tribunal que ella no ha cobrado cantidad alguna por sus servicios profesionales a través de más de cinco (5) años de litigio. *Véase, <u>Berkan/Méndez v. Mead Johnson</u>, 204 DPR 183(2020); <u>In re Rivera Franco</u> 169 DPR 237 (2006).*

1

Case:17-03283-LTS Doc#:23869-1 Filed:03/30/23 Entered:03/30/23 11:13:36 Desc:
Exhibit February 7th letter w attachments   Page 118 of 119
SJ2017CV02199 18/01/2023 04:39:09 pm Entrada Núm. 126 Página 2 de 3

3. Al día de hoy no se ha adjudicado el asunto de los honorarios. Esto porque el gobierno solicitó la paralización de este asunto al amparo de las disposiciones de la Ley PROMESA.

4. El 19 de diciembre de 2022, la suscribiente le escribió a la representación legal de los peticionarios, solicitando su *anuencia* a una estipulación dejando sin efecto la referida paralización vis-a-vis los honorarios solicitados en este caso.

5. En su correo electrónico del 19 de diciembre, la suscribiente indicó que escribía "[i]In order to wrap this matter up and reach a final resolution, I am writing to request that you enter into a stipulation with the petitioners, to allow the court to award attorneys fees and give closure to this case."

6. Se hizo esta solicitud extra-judicial para cumplir con los procedimientos que aplican en el caso del "Título III".  La suscribiente escribió: "I am writing to you first, but if there is someone else to whom I must direct this request, please let me know. (In the past, I've been told to direct it to the Board's attorneys, but they in turn have told me to direct it to the DOJ.)"

7. Ya para el 9 de enero de 2023, la suscribiente no había recibido ninguna respuesta por parte de la representación legal del gobierno.  Por ende, la suscribiente le escribió ese día a Susanne Lugo, la representante legal del gobierno, para hacer "follow-up" de la solicitud, notando que había que presentar otro escrito informativo ante este Honorable Tribunal "ya mismo".

8. Ese mismo día, la Lcda. Lugo le informó a la suscribiente que "[e]l asunto ha sido referido a la Secretaría Auxiliar de lo Civil (SAC) [o sea, sus supervisores dentro del Departamento de Justicia] para la determinación correspondiente. Una vez tenga una respuesta de la SAC, le informaré. Por el momento, no tengo información adicional para brindarle."

9. Debido al periodo feriado la suscribiente respetuosamente solicita que se le otorgue un periodo relativamente corto (20 días?) adicionales al gobierno para responder definitivamente sobre la solicitud que tiene pendiente ante sí desde mediados de diciembre.  Una vez agotado ese remedio, las partes pueden informarle al Tribunal el resultado de la gestión, y de ser necesario proceder ante este

SJ2017CV02199 18/01/2023 04:39:09 pm Entrada Núm. 126 Página 3 de 3
Case:17-03283-LTS Doc#:23894-1 Filed:03/30/23 Entered:03/30/23 21:13:36 Desc:
Exhibit February 7th letter w attachments Page 119 of 119

Honorable Tribunal y/o ante la Juez Laura Taylor Swain (a cargo del caso del Título III).

POR TODO LO CUAL, se solicita que este Honorable Tribunal

1. De por cumplida la Orden del 9 de diciembre de 2022 (al menos por parte de los peticionarios);

2. Tome conocimiento sobre el estatus de este caso, según aquí informado;

3. Mantenga jurisdicción sobre el asunto de los honorarios de abogado;

4. Ordene a la parte peticionada informarle al Tribunal dentro un término de 20 días, o sea en o antes del 7 de febrero de 2023, el resultado de la gestión que hizo con sus supervisores (en la SAC del Departamento de Justicia) en relación con la paralización;

5. Emita cualquiera otra orden que en derecho proceda.

**RESPETUOSAMENTE SOMETIDO,**

En San Juan, Puerto Rico a 18 de enero de 2023.

Berkan/Méndez
Calle O'Neill G-11,
San Juan, Puerto Rico 00918-2301
Tel.: (787) 764-0814;
tel temporero 787-399-7657;
Fax.: (787)250-0986
berkanmendez@gmail.com

CERTIFICACIÓN: Por este medio certifico que en el día de hoy, 18 de enero de 2023, se está presentando este escrito por el sistema SUMAC, el cual notificará automáticamente a las abogadas de récord.

/f/Judith Berkan
JUDITH BERKAN
Col Núm. 8054; RUA 6723
berkanj@microjuris.com