**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA DE SAN JUAN**

| | |
|---|---|
| GILBERTO ARES CANDELARIA y otros,<br>**PARTE PETICIONARIA**<br><br>v.<br><br>SECRETARIO DEL DEPARTAMENTO<br>DEL TRABAJO Y RECURSOS HUMANOS<br>DEL ESTADO LIBRE ASOCIADO<br>DE PUERTO RICO<br>**PARTE PETICIONADA** | **CIVIL NÚM.:** SJ2017CV02199<br><br>**SALÓN DE SESIONES**: 907<br><br>**SOBRE**:  MANDAMUS |

**RESOLUCIÓN**

El Tribunal tiene ante su consideración una petición de reapertura de la causa de acción de honorarios de abogado instada por la parte peticionaria en virtud de la Ley Núm. 402 de 12 de mayo de 1950 y la Regla 44.1 de Procedimiento Civil, *infra. Entradas núm. 122, 124, 126, 130 y 135 del expediente electrónico*. Ello en atención a que dicha causa de acción no fue adjudicada por el Tribunal en la Sentencia de mandamus emitida el 15 de julio de 2020. *Entrada núm. 66 del expediente electrónico*.

Al atender esta solicitud, también se debe evaluar la oposición presentada por la parte peticionada. A su entender, el Tribunal no tiene jurisdicción para atender dicha causa de acción en esta etapa de los procedimientos, debido a que la petición de quiebra bajo la Ley PROMESA y la aprobación subsiguiente del Plan de Ajuste de la Deuda que entró en vigor el 22 de marzo de 2022 tuvieron el efecto práctico de primero paralizar, y luego descargar, dicha reclamación. Además, también enfatizó que no consiente ni otorga su aval para que se levante la paralización decretada en cuanto a los honorarios de abogado. *Entradas núm. 127 y 134 del expediente electrónico*.

Como se sabe, la petición de quiebra presentada el 13 de mayo de 2017 en virtud del Título III de la Ley PROMESA paralizó el inicio o la continuación de cualquier acción monetaria en contra del Estado Libre Asociado de Puerto Rico y sus funcionarios. A su vez, el presente caso continuó su curso procesal luego de que se modificara la referida paralización a tenor de un acuerdo alcanzado entre las partes y notificado al Tribunal en octubre de 2019. *Entrada núm. 33 del expediente electrónico*, pág. 2.

En lo pertinente, las partes acordaron en ese momento lo siguiente:

The Title III Stay is hereby modified **solely to the limited extent necessary to allow the Prepetition Action to proceed to final judgment** before the Prepetition Court, Court of Appeals of Puerto Rico, and Supreme Court of Puerto Rico; provided,

however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment and for any claims for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor. Anejo 1, *Entrada núm. 131 del expediente electrónico*, pág. 16 (énfasis suplido).

A su vez, surge del expediente que luego de que el presente caso continuara su curso procesal en atención a dicho acuerdo y subsiguientemente se dictara un mandamus a favor de la parte peticionaria, en la Sentencia dictada por el Tribunal el 15 de julio de 2020 se dispuso específicamente lo siguiente:

> Finalmente, en relación con la reclamación de honorarios de abogados instada por la parte demandante, este Tribunal dicta Sentencia decretando la paralización de la misma, toda vez que se trata de una reclamación monetaria que está paralizada por PROMESA. Adviértase que el Acuerdo Para Modificar la Paralización Automática expresamente dispone que la paralización automática del Título III de PROMESA continuará aplicando en todo lo relacionado con reclamaciones monetarias. Expresamente reservamos jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso de que dicha orden de paralización sea dejada sin efecto en cualquier momento con posterioridad a la fecha de la presente sentencia y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos. *Entrada núm. 66 del expediente electrónico*, pág. 18.

Somos conscientes de los argumentos vertidos por la parte peticionaria --en esta etapa de los procedimientos-- en cuanto a que tal decreto de paralización que realizó el Tribunal en la Sentencia emitida hace casi tres años no era correcto. Ello así, ya que entiende que la "desparalización" acordada entre las partes ante el foro federal no hizo distinción alguna entre una reclamación "monetaria" versus una reclamación de otra índole. *Entrada núm. 131 del expediente electrónico*, pág. 7. Además, tenemos presente que, según la parte peticionaria, aún no se ha emitido una "determinación final" en este caso para propósitos del acuerdo alcanzado por las partes en el tribunal federal (el cual permitía la adjudicación del caso hasta que se emitiera una *determinación final*), dado que todavía no se ha adjudicado una de las dos reclamaciones principales del caso: los honorarios de abogado (que de otro modo no podían ser cobrados en atención a lo dispuesto en la Ley Núm. Ley Núm. 402 de 12 de mayo de 1950 y la normativa aplicable a los honorarios de abogado en reclamaciones laborales).

Sin embargo, no surge del expediente que la parte peticionaria hubiese solicitado la reconsideración de dicho dictamen de la Sentencia mediante el cual se dispuso que dicha reclamación continuaba paralizada en virtud del procedimiento de quiebra instada bajo la Ley PROMESA; ni que hubiese solicitado que se aclarara el récord en atención a lo acordado en el foro federal; ni tampoco que se hubiese cuestionado ese pronunciamiento dispositivo sobre el alcance de la paralización ante el foro apelativo. En fin, dicha Sentencia, a lo sumo, es un dictamen

**firme** del Tribunal que tiene un efecto vinculante para este Tribunal y las partes, por ser la ley del caso. M*gmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606-607 (2000).

Aun así, también tenemos presente que esta doctrina no es invariable o inflexible. De hecho, se ha reconocido que cuando la ley del caso es errónea y puede causar una gran injusticia, el mismo tribunal de instancia o un foro de mayor jerarquía puede aplicar una norma de derecho diferente. Ello siempre y cuando se invoque su exclusión mediante un mecanismo procesalmente adecuado y que el foro que atienda la cuestión tenga jurisdicción para considerarla y emitir la nueva determinación. *Id.*; *Noriega v. Gobernador*, 130 DPR 919, 931 (1992).

A su vez, y en cuanto al aspecto jurisdiccional en controversia, también advertimos que otros tribunales han resuelto que el Plan de Ajuste confirmado por el tribunal federal el 18 de enero de 2022 descargó y liberó al ELA de los reclamos, causas de acción y cualquier otra deuda que haya surgido en o antes de la fecha que entrara en vigor el mismo (el 15 de marzo de 2022), incluyendo aquellas que surgieron **tanto antes como después de que comenzara el proceso de quiebra del ELA** (el 3 de mayo de 2017). Véase, por ejemplo, *López Medina y otros v. ELA*, SJ2021CV08048 (805) (Sentencia del 15 de julio de 2022). Además, también se ha resuelto que la petición de quiebra del Gobierno de Puerto Rico al amparo del Título III de PROMESA el 3 de mayo de 2017 "paralizó el inicio o continuación de cualquier acción monetaria presentada en contra de un oficial o habitante del Gobierno de Puerto Rico que intente ejecutar un reclamo en contra del deudor, **ya sea antes o después de presentada la petición de quiebra**". *Abréu Ayala v. Director Administrativo de los Tribunales*, KLCE202100096 (Sentencia TA 26 de febrero de 2021), pág. 9 (énfasis suplido).

No obstante, se debe tener presente que la Orden de Confirmación del referido Plan de Ajuste –al descargar la deuda del ELA– dispuso para la sustitución de la paralización automática por un nuevo decreto interdictal. Por un lado, se mantuvieron paralizadas las reclamaciones pasadas, presentes y futuras del ELA. Ello incluye aquellas reclamaciones cuyos hechos fueron posteriores a la petición de quiebra, pero antes de la fecha de la efectividad del Plan. Además, se requirió que cualquier reclamación pendiente que se encontrara paralizada previo a la vigencia del Plan de Ajuste tuviera que tramitarse a través de un *proof of claim*, de modo que se atendiera a través de un proceso de reconciliación como parte del proceso de descargar la deuda.

Ahora bien, el 20 de octubre de 2022 el Tribunal Federal emitió una "*Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction*", en la que

extendió la fecha para presentar reclamaciones por gastos administrativos. Además, exceptuó de dicho trámite a aquellas reclamaciones o causas de acción surgidas en o después de la fecha de la petición de quiebra (el 3 de mayo de 2017), y antes de la fecha de efectividad del Plan de Ajuste (15 de marzo de 2022); y que se refieran a causas de acción al amparo de la Ley de Pleitos contra el Estado, Ley Núm. 104 de 29 de junio de 1955 (y cuyas reclamaciones no excedan los topes de indemnización establecidos en dicho estatuto). Véase Doc. Núm. 22650, *In Re: Commonwealth*, 17 BK-3283 LTS, pág. 4.

En este caso, actualmente existe una controversia entre las partes con respecto a si la paralización automática que produjo la presentación de la petición de quiebra bajo las disposiciones de la Ley PROMESA en mayo de 2017 y la aprobación subsiguiente del Plan de Ajuste varios años después (mediante la Orden de Confirmación) privó a este Tribunal de jurisdicción para atender el reclamo pendiente en el caso de epígrafe sobre honorarios de abogado. Según la parte peticionada,

> el acuerdo para la modificación de la paralización que suscribieron el Estado y la parte demandante únicamente contemplaba la litigación del mandamus hasta que se llegara a una determinación final en el Tribunal de Primera Instancia, el Tribunal Apelativo y/o el Tribunal Supremo de Puerto Rico. De modo que cualquier reclamación post-sentencia sobre honorarios de abogado no fue incluida en la modificación de la paralización que suscribieron las partes y continúa paralizada, ahora en virtud del *injunction* emitido por el Tribunal de Distrito federal en el caso de restructuración de la deuda bajo el Título III de PROMESA.

> Actualmente, el proceso de *meet and confer* para evaluar la modificación de la paralización en los casos *pre-petition* culminó tras la aprobación del Plan de Ajuste de la Deuda. En dichos casos, solo queda esperar que culmine el proceso de reconciliación de reclamaciones en el caso de Título III, en el cual se determinará, conforme al Plan de Ajuste, el trato que se le dará a la misma. En su consecuencia, este Tribunal no tiene jurisdicción para modificar el *injunction* emitido por el Tribunal de Distrito federal en virtud de la Orden de Confirmación y el Plan de Ajuste. […] *Entrada núm. 127 del expediente electrónico*, pág. 5.

A su vez, la parte peticionada sostuvo que "el caso que nos ocupa es *pre-petition* y no es una reclamación bajo la Ley 104-1955". *Id.*, pág. 11. Ante ello, afirmó que tampoco le aplicaba a este caso la excepción dispuesta en la *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction*", la cual –según reseñamos anteriormente– permite la presentación de reclamaciones por gastos administrativos en aquellos casos *post-petition* sin sujeción a la orden interdictal del Plan de Ajuste. Según arguyó, ello es así debido a que los hechos que dieron base al pleito son previos al 13 de mayo de 2017 cuando se instó la petición de quiebra del ELA en virtud de la Ley PROMESA. *Entrada núm. 134 del expediente electrónico*, pág. 3 (según la peticionada, la fecha determinante para la reclamación de autos lo fue el 27 de diciembre

de 2016, cuando el Departamento del Trabajo autorizó el preretiro de algunos empleados y no se lo autorizó a los demandantes en este caso, por lo que resultaba inmaterial que la demanda de epígrafe se presentara con posterioridad a la petición de quiebras).

En respuesta, la parte peticionaria arguyó que el acuerdo para la modificación de la paralización que suscribieron las partes en octubre de 2019 no tuvo un alcance tan restrictivo como el que propone. Particularmente, y tal como reseñamos anteriormente, la postura de la parte peticionaria es que dicho acuerdo de modificación del "*stay*" no hizo distinción alguna entre una reclamación "monetaria" versus una reclamación de otra índole, sino que se refería únicamente a la etapa procesal en la que se encuentra el caso (pues según la peticionaria solo los asuntos post-sentencia y de ejecución continuaban paralizados). *Entrada núm. 131 del expediente electrónico*, pág. 7. Además, enfatizó que aún no se ha emitido una "determinación final" en este caso porque todavía no se ha adjudicado una de las dos reclamaciones principales: los honorarios de abogado (que de otro modo no podían ser cobrados en atención a lo dispuesto en la Ley Núm. Ley Núm. 402 de 12 de mayo de 1950 y la normativa aplicable a los honorarios de abogado en reclamaciones laborales).

En fin, queda claro que para dilucidar la referida controversia jurisdiccional en atención al acuerdo que dio lugar a la modificación de la paralización en octubre de 2019, el Tribunal deberá determinar y aclarar si la Sentencia emitida el 15 de julio de 2020 a los fines de conceder un mandamus fue un dictamen final que dispuso de la totalidad del pleito, o si se trató de una sentencia parcial que solo dispuso de algunas de las reclamaciones del caso (sin disponer de la totalidad del pleito mediante un decreto que pudiera caracterizarse en la actualidad como final y firme). Véase la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V. Es decir, se debe determinar primeramente si dicha Sentencia se trató del "final judgment" o decision final que los tribunales de Puerto Rico estaban autorizados a emitir ("The Title III Stay is hereby modified solely to the limited extent necessary to allow the Prepetition Action to proceed *to final judgment* before the Prepetition Court, Court of Appeals of Puerto Rico, and Supreme Court of Puerto Rico". Anejo 1, *Entrada núm. 131 del expediente electrónico*, pág. 16).

En contraste, de entender que por razón de que la reclamación de honorarios de abogados se mantuvo paralizada dicho dictamen se trató realmente de una sentencia parcial bajo la referida Regla 42.3 (y no un *final judgment*), habría que evaluar si el Tribunal aún tendría jurisdicción para evaluar dicha causa de acción en esta etapa de los procedimientos. Para ello, resultaría necesario

examinar si la reclamación de honorarios de abogado se trata de una causa de acción independiente que debió ser adjudicada mediante una sentencia final; o si los honorarios de abogado deben ser considerados meramente como un remedio post-sentencia o de ejecución (el cual estaría dentro del alcance de la paralización acordada y su extensión a partir de la aprobación del Plan de Ajuste que solo podía ser atendida mediante un *proof of claim* ante el foro federal. Ello por tratarse –según la parte peticionada– de una solicitud de ejecución post-sentencia a los fines de "the execution and enforcement of any judgment and for any claims for money damages, backpay and provisional remedies against the Commonwealth or any other Title III Debtor". *Id.*). *Cf. Pagán Rodríguez v. Rivera Schatz*, 206 DPR 277 (2021). Además, el Tribunal también deberá evaluar este asunto bajo la doctrina de la ley del caso, considerando el decreto de paralización de la reclamación de honorarios de abogados que contiene la Sentencia del 15 de julio de 2020. *Entrada núm. 66 del expediente electrónico*.

Ahora bien, y antes de adjudicar esta controversia de manera definitiva, no podemos pasar por alto que el 7 de febrero de 2023, la parte peticionaria cursó una comunicación a la Junta de Supervisión Fiscal y a la AAFAF a los fines de que dicha entidad aclarara este mismo asunto. Anejo 2, *Entrada núm. 131 del expediente electrónico*. Específicamente, la representante legal de la parte peticionaria le solicitó a los representantes legales de dichas entidades que –en atención al procedimiento particular establecido por el Tribunal Federal para el manejo del caso de la quiebra del ELA– estipularan dejar sin efecto la paralización con respecto a la reclamación restante en el presente caso de honorarios de abogado ("I write this letter in compliance with the conferral process mandated by Judge Taylor Swain in Case No. 17-03283, to request your agreement to stipulate to the lifting the stay with respect to the one remaining count in the mandamus action in *Ares et al v. Secretario del Trabajo*, SJ-2017-02280, the Request for Attorneys Fees, Second Count of the Mandamus. […]. *Id.*). Además, surge del expediente que dicha comunicación no ha sido contestada hasta al momento.

En ese sentido, sabido es que este Tribunal no tiene jurisdicción para atender una acción contra la Junta de Supervisión Fiscal ni cualquier acción derivada total o parcialmente de la Ley PROMESA (pues el tribunal de distrito de Estados Unidos del territorio cubierto es el que tiene jurisdicción exclusiva para dilucidar ese tipo de reclamo. 48 USCA sec. 2126). Por esa misma razón, este Tribunal tampoco tendría jurisdicción para intervenir en una solicitud cursada a la Junta de Supervisión Fiscal en virtud del procedimiento de manejo de caso.

Tenemos presente que la parte peticionaria indicó que tomó la decisión de enviar la carta para que se deje sin efecto la paralización de la reclamación de honorarios bajo el procedimiento de manejo de caso establecido por el Tribunal Federal, "a pesar de su convencimiento de que la paralización no aplica a la solicitud de honorarios, la cual es una Causa de Acción en el caso". *Entrada núm. 131 del expediente electrónico*, pág. 8, nota 1. Sin embargo, resulta inevitable concluir que los esfuerzos realizados por la parte peticionaria con la Junta de Supervisión Fiscal y la AAFAF pudieran ser determinantes para esclarecer la controversia jurisdiccional ante nuestra consideración.

Ante tales circunstancias, por razones de prudencia y autolimitación judicial, dictamos la presente **Resolución** mediante la cual mantenemos en suspenso la solicitud de la parte peticionaria a los fines de que se decrete la reapertura de la causa de acción de honorarios de abogado incluida en la demanda de epígrafe. Ello hasta tanto se nos informe el desenlace de la solicitud cursada por la parte peticionaria a la Junta de Supervisión Fiscal y la AAFAF en virtud de la orden de manejo de caso emitida por el Tribunal Federal en el caso núm. 17-03283.

No obstante, se aclara que este Tribunal aún no ha adjudicado la controversia jurisdiccional aquí reseñada. Por consiguiente, el Tribunal se reserva la facultad para emitir una determinación definitiva sobre este asunto y decretar la reapertura de la reclamación de honorarios de abogado, de ello ser procedente (una vez se conteste la carta cursada por la parte peticionaria o a solicitud fundamentada de las partes). A su vez, las partes podrán dar seguimiento a dicho trámite, por lo que se ordena que mantengan al Tribunal informado sobre cualquier desarrollo pertinente con relación a este asunto.

**NOTIFÍQUESE.**

En San Juan, Puerto Rico, a 20 de marzo de 2023.

**f/ALFONSO S. MARTÍNEZ PIOVANETTI
JUEZ SUPERIOR**