# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                                 Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 24103, 23621, 23612, and 21326.**<br><br>**This filing relates only to HTA** |

**THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY'S (1) OPPOSITION TO (A) MOTION REQUESTING PAYMENT OF SEVERANCE DAMAGES [ECF NO. 23612], AND (B) AMENDED PETITION REQUESTING PAYMENT OF SEVERANCE DAMAGES [ECF NO. 24103], AND (2) REPLY TO RESPONSE FILED BY CLAIMANT ADRIÁN MERCADO JIMÉNEZ [ECF NO. 21326] IN CONNECTION WITH THE FOUR HUNDRED FIFTY-FOURTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO SATISFIED CLAIMS**

To the Honorable United States District Court Judge Laura Taylor Swain:

        Pursuant to the Court's *Order Scheduling Briefing of Motion Requesting Payment of Severance Damages* [ECF No. 23621], the Puerto Rico Highways and Transportation Authority

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of HTA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),² files this (1) opposition to the (a) *Motion Requesting Payment of Severance Damages* [ECF No. 23612] (the "Initial Motion"), and (b) *Amended Petition Requesting Payment of Severance Damages* [ECF No. 24103] (the "Motion" and, together with the Initial Motion, the "Motions")³ and (2) reply to the *Corrected Response* [ECF No. 21326] (the "Response")⁴ filed by claimants associated with Proof of Claim No. 44390 (the "Claim") in opposition to the *Four Hundred Fifty-Fourth Omnibus Objection (Non-Substantive) of the Puerto Rico Highways and Transportation Authority to Satisfied Claims* [ECF No. 20785] (the "Four Hundred Fifty-Fourth Omnibus Objection"), and respectfully states as follows:

## INTRODUCTION

1. The Motions and the Claim seek payment for amounts for which Movants have not established liability for HTA.

2. On June 22, 2018, Teresa Vizcarrondo Toro, Adrián Mercado Jiménez, and their legal partnership (collectively, "Claimants") entered into a comprehensive settlement agreement with HTA (the "Settlement Agreement") that provided Claimants just compensation for HTA's

---

² PROMESA is codified at 48 U.S.C. §§ 2101–2241.

³ Movant previously filed the Initial Motion, for which the Court ordered briefing. *See* [ECF No. 23621]. Because the Court has not ordered a briefing schedule in connection with the Motion, out of an abundance of caution, HTA addresses the Motion herein. However, HTA reserves all rights with respect to any aspect of the Initial Motion to the extent not superseded by the Motion and to supplement the objection to the Motion on any grounds.

⁴ Although the Initial Motion attaches a copy of Claimants' response to the Four Hundred Fifty-Fourth Omnibus Objection dated June 9, 2022 [ECF No. 23612-1], on June 23, 2022, Claimants filed the Response. Accordingly, because the Response post-dates Claimants' prior response and purports to be "corrected," HTA addresses that version.

2

expropriation of parcels of their land. Therein, Claimants agreed that, among other things, (1) the $31,641.32 they were receiving constituted just compensation for HTA's expropriation, and (2) there were no remaining matters in dispute and, even if there were, they were waived with prejudice.

3. A Commonwealth appellate court endorsed and upheld the Settlement Agreement, and Claimants withdrew the approved settlement moneys. Based upon the consummation of the Settlement Agreement, pursuant to the Four Hundred Fifty-Fourth Omnibus Objection, HTA objected to the Claim.

4. Notwithstanding such satisfaction, through the Motions and the Responses, Claimants continue to assert they are entitled to damages based upon allegations that HTA failed to abide by an obligation to provide access to a remaining portion of property, which Claimants assert is enclosed. The Settlement Agreement establishes no such obligation on HTA or any other Title III Debtor, and Claimants fail to demonstrate otherwise. In fact, pursuant to the Settlement Agreement, Claimants waived any such liability.

5. Accordingly, for the reasons set forth below, the Motions should be denied in their entirety and the Four Hundred Fifty-Fourth Omnibus Objection should be sustained as to the Claim notwithstanding the Response.

## FACTS AND PROCEDURAL HISTORY

### The Expropriated Property and First Title III Request for Payment

6. On August 25, 2011, HTA instituted expropriation proceedings against several parties in order to acquire certain parcels of land. As relevant here, Claimants were owners of twenty-five percent (25%) of the parcels 021-01 and 021-04 (the "Expropriated Property"), which were subject to one of those actions, litigation styled *Puerto Rico Highways and Transportation*

3

*Authority vs. Luis Alberto Mercado Jiménez et al.*, Superior Court of San Juan, Case No. KEF2011-0240 (the "Lawsuit").

7. On December 7, 2017, Claimant Adrián Mercado Jiménez filed a *Notice of Compliance and Petition for Payment of Funds* [Case No. 17-3567, ECF No. 345] the "Compliance Motion"), seeking payment of $16,448 from HTA in connection with a prepetition agreement purportedly settling the Lawsuit.

8. On February 5, 2018, Claimant Adrián Mercado Jiménez and HTA entered into a stipulation modifying the automatic stay "to the limited extent necessary to allow HTA to pay [Claimant Mercado] the Settlement Amount . . . ." [Case No. 17-3567, ECF No. 433-1.] Thereafter, HTA deposited the settlement amount with the eminent domain Commonwealth court (the "Commonwealth Court").

9. On February 27, 2018, Claimant Adrián Mercado Jiménez filed a *Motion Informing Status of Case and Request of Order* [Case No. 17-3567, ECF No. 406] (the "Informal Motion" and, together with the Compliance Motion, the "First Payment Motions") requesting that the Court direct HTA to pay the settlement amount directly to Claimant Mercado Jiménez.

10. After briefing by Claimant Adrián Mercado Jiménez and AAFAF, on behalf of HTA, on May 29, 2018, the Court denied the First Payment Motions, holding that "[a]ny controversy as to what is required to resolve the Lawsuit should be taken up with the State [Commonwealth] Court." Denial Order[5] at 3.

11. The next day, on May 30, 2018, Claimants filed the Claim, which asserts liabilities against HTA in the amount of an estimated $100,000 based on purported amounts owed by HTA

---

[5] *Order Denying Relief Sought in Notice of Compliance and Petition for Payment of Funds (Docket Entry No. 345) and Motion Informing Status of Case and Request of Order (Docket Entry No. 406)* [Case No. 17-3567, ECF No. 449 (the "Denial Order")].

because "HTA on the local expropriation case TS/SJ 2011-0240 left part of the expropriated property landlocked (enclavada)." Initial Motion ¶ 1; Motion ¶ 2; *see also* Claim at 3 (basis for claim).

**Settlement of Lawsuit**

12. On June 22, 2018, Claimants and HTA entered into the Settlement Agreement "putting an end to all lawsuits and causes of action regarding [the Expropriated Property]." Settlement Agreement ¶ 8.[6] Therein, the parties agreed Claimants were entitled to a total of $31,641.32 (the "Settlement Amount") as just compensation for HTA's expropriation of the Expropriated Property applicable to Claimants. Settlement Agreement, Settlement Provision (g). Specifically, the parties agreed that "from parcel 021-01 [Claimants] are entitled to $20,606.00, and from parcel 021-04 [Claimants] are entitled to $11,035.32." *Id.* at (f). The Settlement Amount was based on an independent appraisal of such parcels at a unit value of $17,300.00 per *cuerda*. *Id.* at (c). In addition, Claimants represented that they had already withdrawn $5,500.00 of the Settlement Amount. *Id.* at (h).

13. The Settlement Agreement provides that (1) the parties "knowingly, freely, and voluntarily and without coercion or intimidation of any kind, hereby ***acknowledge and affirm that with the total allocation of $31,641.32, all inclusive, the petitioner has complied with the payment of fair compensation for the interest of [Claimants], with regard to [the Expropriated Property]***" *id.* at (i) (emphasis added), and (2) "[l]ikewise, in good faith, freely and voluntarily and without coercion or intimidation of any kind, the party in interest hereto knowingly ***acknowledges***

---

[6] A true and correct certified translation of the Settlement Agreement is attached hereto as Exhibit 1.

5

***and affirms that there are no remaining matters in dispute of any kind in this lawsuit and if there are any, they are hereby waived with prejudice.***" *id.* at (j) (emphasis added).

14. Thereafter, Claimants commenced various proceedings in the Commonwealth courts seeking to resolve issues in connection with calculating and withdrawing the outstanding Settlement Amount. Ultimately, the Puerto Rico Court of Appeals endorsed the Settlement Agreement, conducted an accounting of HTA's deposits in performance of the Settlement Amount, and remanded the case to the lower court to "order the delivery of the [remaining] amount of $15,193.32 in full payment of just compensation in favor of the [Claimants]." May 31, 2019 Judgment of the Court of Appeals at 11-12.[7]

15. As shown on an HTA account ledger, a copy of which is attached hereto as Exhibit 3 (the "Account Ledger"), on February 7, 2019, Claimants withdrew $10,948.00 of the Settlement Amount, and, on August 12, 2019, Claimants withdrew the remaining $15,193.32. *See* Ex. 3 at 9. Therefore, Claimants have received the entire Settlement Amount. *Accord* Response ¶ 9 ("Appearing party received the funds there mentioned . . . .").

---

[7] The Court of Appeals' May 31, 2019 Judgment (the "Judgment") is attached hereto as Exhibit 2, a certified copy of which the Oversight Board is in the process of obtaining. The Court of Appeals was asked to correct the lower court's initial calculation of the balance of the Settlement Amount and accounted for HTA's deposits in performance of the Settlement Amount as follows:

> From the *Settlement provision* endorsed by our appellate court in its November 13, 2018 *Judgment*, it appears that the parties agreed to the sum of $31,641.32 as full payment of just compensation for parcels 021-01 and 021-04 in favor of the appellants. Of said sum, on February 23, 2015, the appellants cashed $5,500.00 by virtue of a check issued to it, so that $26,141.32 remained uncollected. The appellee had deposited $16,448.00 with the court, whereupon, on June 22, 2018, it proceeded to deposit the difference, i.e., the sum of $9,693.32 to complete the sum of $26,141.32.

Judgment at 11.

**The Omnibus Objection**

16. As HTA complied with all of its obligations pursuant to the Settlement Agreement and paid Claimants the Settlement Amount, on May 13, 2022, HTA objected to the Claim pursuant to the Four Hundred Fifty-Fourth Omnibus Objection, which objection seeks to disallow certain claims that have been fully satisfied. Indeed, each claim identified in Exhibit A to the Four Hundred Fifty-Fourth Omnibus Objection, including the Claim, purports to assert liabilities based on funds owed pursuant to either an outstanding judgment or a settlement agreement between the claimants and HTA. Four Hundred Fifty-Fourth Omnibus Objection at 7. With respect to the Claim, HTA's records demonstrate that any funds owed pursuant to the Settlement Agreement have already been deposited with the relevant court and withdrawn by Claimants. *See* Four Hundred Fifty-Fourth Omnibus Objection, Ex. A [ECF No. 20785-1] at ln. 4.

**The Response and the Motions**

17. On June 23, 2022, Claimants filed the Response to the Four Hundred Fifty-Fourth Omnibus Objection. Therein, Claimants admit they received the entire Settlement Amount, but, claim "HTA never complied with the agreement it reached so that the parcel will have proper access." Response at 2. Claimants assert they are entitled to $100,000 in damages as well as $5,200 in attorneys' fees in respect of the Claim. *Id*. at 3.

18. Similarly, on February 23, 2023, Claimants filed the Initial Motion, which attaches a previous version of the Response, as well as a copy of the Claim. The Initial Motion, however, purports to seek $178,017.00 on the basis that a remnant portion of property "has remained landlocked (enclavada) since 2011, depriving [Claimants] all viable access to the same." Initial Motion at 2. In addition, Claimants seek interest in an amount of $19,580.00, for a total amount of $197,597.00. *Id*. ¶¶ 12, 15.

7

19. On May 2, 2023, Claimants filed the Motion, removing the attachments from the Initial Motion and adding several purported bases of liability, adjustments to damages and interest, and other costs in connection with the remnant property, and a new assertion regarding a property at issue in another litigation. In the Motion, Claimants now contend they are entitled to (1) $742,004.48, composed of the value of asserted landlocked property ($178,017.00), 12 years of rent ($170,896.32), 12 years of interest ($20,507.52), and additional damages ($341,792.64) in connection therewith, *see* Motion ¶¶ 14, 15, 20-22, an increase in the value of Claimants' asserted portion of a different property called "Camino" in connection with newly-identified case KEF 2011-0244 ($30,791.00), *see id.* ¶¶ 16-18, and (2) $35,000 in costs and attorney's fees, *see id.* at 5.

## ARGUMENT

20. The Motions should be denied and the Four Hundred Fifty-Fourth Omnibus Objection should be sustained as to the Claim because HTA has fully complied with its obligations under the Settlement Agreement and the Claim has been fully satisfied. The new allegation regarding an increase in value of the "Camino" parcel is not within the scope of the Claim, or, to the extent Claimants contend it is post-petition, it is a late-filed administrative expense request. Attorney's fees and costs are entirely unsupported.

**A. The Settlement Agreement Precludes Liability in Connection with the Asserted Landlocked Property**

21. At a minimum, allowance and payment of a claim in connection with this Title III proceeding requires there be the existence of some liability under applicable law. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law"); *In re Bos. Reg'l Med. Ctr.*, 256 B.R. 212, 220 (Bankr. D. Mass. 2000), *aff'd sub nom. Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 265

8

B.R. 838 (B.A.P. 1st Cir. 2001), *aff'd on other grounds*, 291 F.3d 111 (1st Cir. 2002) ("In determining whether an obligation arising under state law is a tax under the Bankruptcy Code, courts must look to state law to understand the characteristics and incidents of the obligation").

22. Here, Claimants have not met their burden to establish any liability on the part of HTA or any other Title III Debtor for the amounts they assert. Claimants do not clearly identify the properties that are the basis of the Claim and Motions nor the source of the asserted obligation to provide access to the remnant property. The Motion states that the Lawsuit left part of the expropriated property landlocked, *see* Motion ¶ 2, but the Claim appears to refer to a part of property not expropriated. See Claim at 3. The Response states that the asserted 40-acre enclosed parcel is identified as Perseverancia P-2 "C" and cites to Exhibit II therein. Response ¶ 4. Exhibit II (CERTIFICADO DE ESTUDIO DE TITULO), however, clearly identifies the title document as referring to "PARCELAS 021-01 Y 021-04"—*i.e.*, the Expropriated Property. Response, Ex. II at 1. Claimants' papers thus fail to explain whether the asserted enclosed property is the same as the Expropriated Property or different.

23. Nevertheless, whether the Claim is for the Expropriated Property or another property, the Claim is satisfied. Simply put, all liability in connection with the Lawsuit has been settled or waived. To the extent the Claim and/or Motions assert lack of access to the Expropriated Property, as established above and endorsed by the Commonwealth Court of Appeals, pursuant to the Settlement Agreement, Claimants and HTA agreed that $31,641.32 constituted HTA's just compensation to Claimants for HTA's expropriation of the Expropriated Property. Settlement Agreement, Settlement Provision (i); Judgment at 12 ("we remand the case to the primary court to order the delivery of the [remaining] amount of $15,193.32 in full payment of just compensation in favor of the appellants."). And, as HTA has established through documentary evidence and is

undisputed, Claimants received the $31,641.32 they were owed pursuant to the Settlement Agreement. *See* Ex. 3 at 9.

24. The Settlement Agreement did not and does not impose on HTA (or any other Title III Debtor) an obligation to provide access to either the Expropriated Property or any other, "remnant" portion of property. *See* Response ¶ 9 ("Appearing party received the funds there mentioned, but the HTA never complied with the agreement reached so that the parcel will have proper access."); Motion ¶ 11 ("That the property has remained landlocked (enclavada) since 2011, depriving herein appearing party all viable access to the same."). To the extent that Claimants contend the Expropriated Property is enclosed, the Settlement Agreement plainly precludes any further recovery.

25. If Claimants mean to assert that HTA's alleged obligation to provide access to a portion of property different from the Expropriated Property, such a contention also fails. Despite alleging an enclosure of property has existed since 2011—years before HTA's Title III Case— HTA is unaware of any lawsuit filed by Movants in Commonwealth courts. In the Settlement Agreement, Claimants explicitly "waived with prejudice" any "remaining matters in dispute of any kind in this lawsuit . . . if there are any . . . ."[8] Settlement Agreement, Settlement Provision (j). The Settlement Agreement continues, stating, "considering that no matters remain pending, the parties hereto request that this [Commonwealth] Court to enter judgment by provision, concluding in its entirety any matter between the parties hereto." *Id.* ¶ 9. The Settlement Agreement was intended to put "an end to all lawsuits and causes of action regarding parcels 021-

---

[8] Claimant has also asserted that HTA must, by law, offer to purchase the asserted enclosed property, but the cited provision applies to federal, not Commonwealth, agencies. *See* 42 U.S.C. § 4651 ("If the acquisition of only a portion of a property would leave the owner with an uneconomic remnant, the head of the **Federal** agency concerned shall offer to acquire that remnant.") (emphasis added).

10

01 and 021-04." *Id.* ¶ 8. Claimants thus waived any remaining rights and interests not otherwise expressly provided for in the Settlement Agreement.

26. The Claim and Motions plainly seek payment in connection with the *Lawsuit*: that "HTA on the local expropriation [Lawsuit] left part of the expropriated property landlocked (enclavada)." Initial Motion ¶ 1; Motion ¶ 2; *see* Claim at 3 (basis for claim).[9] By virtue of the Settlement Agreement, such liability was settled or waived. Claimants have the burden of establishing liability but the Settlement Agreement precludes it. Therefore, Claimants have failed to establish any liability as to HTA or any other Title III Debtor.

**B. Asserted Liability in Connection with the "Camino" Parcel is Barred and Unsupported and Attorney's Costs and Fees Are without Basis**

27. Claimants add a new contention in the Motion that they are entitled to compensation in connection with the "Camino" parcel. Claimants assert they own 7.96% of "Camino" and that, in a different case, KEF 2011-0244, Camino's value corresponding to another party (Perseverancia, Inc.) increased. Motion ¶ 17. Accordingly, Claimants' portion also is alleged to have increased in value. *Id.* ¶ 18.

28. This new assertion does not fall within the scope of the Claim, which was in connection with property asserted to be left landlocked by the Lawsuit. *See* Initial Motion ¶ 1; Motion ¶ 2; *see* Claim at 3 (basis for claim). Compensation for the Camino parcel arises from a different case, the asserted basis for entitlement to payment is a change in valuation, rather than enclosure, and Claimants fail to provide any explanation of how the assertion would fall within the scope of the Claim. Accordingly, to the extent this assertion seeks to supplement the Claim, such attempt fails.

---

[9] As discussed above, it is not clear whether Claimants' papers identify as landlocked the Expropriated Property or some other property.

11

29. Furthermore, Claimants do not identify when the alleged increase in the Camino parcel's value took place or when the initial valuation relates to. Accordingly, to the extent the assertion is a post-petition one rather than a supplement to the prepetition Claim, it is a late-filed request for an administrative expense. The deadline to file administrative expense claims was March 6, 2023.[10] Accordingly, if it is an administrative expense request, the "Camino" assertion being made in the Motion filed May 2, 2023 is untimely and no justification is provided for the delay.

30. Finally, the new Camino parcel theory identified above as well as the new demand for attorney's costs and fees fall well below Movants' burden. Movants' cursory and conclusory statements and absence of any legal basis as to these demands fail to establish liability.

## **CONCLUSION**

31. For the foregoing reasons, the Motions should be denied in their entirety and the Four Hundred Fifty-Fourth Omnibus Objection should be sustained as to the Claim.

[*Remainder of Page Intentionally Left Blank*]

---

[10] On October 12, 2022, the Court entered an order [Case No. 17-03567, ECF No. 1415] (the "Confirmation Order"), which, among other things, confirmed the HTA Plan of Adjustment and established the deadline to file administrative expense claims as ninety (90) days after the effective date of the plan. Confirmation Order ¶ 31. The effective date of the plan occurred on December 6, 2022. [Case No. 17-03567, ECF No. 1450].

Dated: May 5, 2023
      San Juan, Puerto Rico

Respectfully submitted,

  */s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944


  */s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Puerto Rico Highways and Transportation Authority*

13