# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>   Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**REPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO THE OPPOSITION OF THE AD HOC GROUP OF PREPA BONDHOLDERS TO THE OVERSIGHT BOARD'S URGENT MOTION TO SEAL AND FOR LEAVE TO FILE REDACTED DOCUMENT**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**To the Honorable United States District Court Judge Laura Taylor Swain:**

Pursuant to the Court's *Order Granting Motion to Seal for Limited Duration and for Supplemental Briefing* [ECF No. 3429], the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's sole representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply to the *Opposition of the Ad Hoc Group of PREPA Bondholders to the Urgent Motion of the Financial Oversight and Management Board to Seal and for Leave to File Redacted Document* [ECF No. 3447] (the "Opposition" or "Opp.").

## ARGUMENT

**A. The George Report Contains Confidential Information that Warrants Sealing and Redaction**

1. In the *Response of the Financial Oversight and Management Board for Puerto Rico to the Court's Order Granting Motion to Seal for Limited Duration and for Supplemental Briefing* [ECF No. 3449] (the "Sealing Brief"), the Oversight Board explained that it inadvertently filed the George Report[3] on the PREPA Title III docket without redacting confidential information included in portions of two sentences therein. Sealing Br. ¶ 5.

2. For the reasons stated in the Sealing Brief, the limited information that the Oversight Board seeks to redact from the George Report is indeed confidential. *See id.* ¶¶ 9-13. Such confidential information consists of LUMA's sensitive analyses of PREPA's future operating costs and capital expenditure needs. These analyses are subject to ongoing review and revision,

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sealing Brief.

2

and their disclosure could hinder LUMA's operations. *Id.* Further, there is no public interest in the disclosure of such preliminary analyses, as they cannot accurately inform the public of LUMA's current opinions or assessments. *Id.* ¶¶ 12-13.

3. Contrary to the Bondholders' implications (Opp. ¶ 10), the Oversight Board is not taking a needlessly broad view of what constitutes confidential information in order to justify sealing portions of two sentences in the George Report. As explained in the Sealing Brief (¶ 8), the Oversight Board is only seeking to redact portions of two sentences in the 58-page George Report, and neither redaction affects the context or comprehensibility of the Report as a whole. Should the Court grant the Oversight Board's Motion to Seal, the public will be able to access, read, and understand nearly the entirety of the George Report even with these limited redactions. Moreover, the Oversight Board's dealings with the Bondholders demonstrate that the Oversight Board is not applying an expansive view of confidentiality in this matter, as it has informed Bondholders' counsel that it does not believe the expert reports of Dr. Maureen Chakraborty or Sebastian Edwards, both of which were proffered by the Bondholders, include any confidential information. Accordingly, on May 3 and 8, the Oversight Board informed counsel for the Bondholders that those reports could be refiled without redactions. This demonstrates the Oversight Board's goal is not, as the Bondholders contend, to unnecessarily or unreasonably restrict public access to these materials. *Id.* n.3. Rather, the Oversight Board interprets the Confirmation Procedures Order's provisions on confidentiality narrowly and only seeks to redact information that is truly confidential, potentially harmful if disclosed, and not necessary for the general public to access.

4. For these reasons, and those stated in the Sealing Brief, the Oversight Board respectfully submits that the George Report contains confidential information that warrants its continued sealing and refiling in redacted form.

**B.     The George Report Should Be Sealed Despite Availability on Paid Third-Party Websites and Limited Availability on the Public Docket**

5. The public availability of the George Report should not determine the outcome of this motion. The Oversight Board acknowledges that the George Report was available on the public docket from the evening of Friday, April 28 to the morning of Monday, May 1. However, this was not due to any delay by the Oversight Board, as the Bondholders imply. Rather, because the George Report was filed after hours on a Friday evening, the Oversight Board was not able to contact a staff member of the clerk's office until the following Monday morning (which it did shortly after the clerk's office opened). The Report was promptly sealed on a temporary basis thereafter. Thus, the length of time that the George Report remained on the public docket was due to factors outside the Oversight Board's control (*i.e.*, the closure of the clerk's office for the weekend). This "delay" does not warrant unsealing the George Report. *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 196-197 (S.D.N.Y. 2011) (finding no undue delay in seeking injunctive relief where plaintiff was not responsible for procedural delays).

6. The Oversight Board also acknowledges that the George Report has been summarized and quoted in an article published by Reorg Research, a third-party subscription-based data and analysis service. As noted by the Bondholders (Opp. ¶ 8), this article also includes a link to the unredacted George Report. However, such dissemination does not justify unsealing the George Report on the public docket.

7. Importantly, the article published by Reorg Research is not accessible to the general public. Only individuals with a paid subscription to Reorg Research can view it. In contrast, an

4

unsealed George Report would be available in perpetuity on the court docket and could be accessed, free of charge, by any individual who visits Kroll Restructuring's website. The Bondholders' cited case, *United States v. Doe (In re l 98 Cr. 1101)*, 891 F. Supp. 2d 296 (E.D.N.Y. 2012), does not compel otherwise, because the confidential information there had already been widely disseminated by the time the court was evaluating whether it should be sealed. In *Doe*, the court found that sealing information that had been publicly disclosed would be "futile" because the information had not only been available on the court's public docket, but was also highly publicized by outlets like *The New York Times* and *The Miami Herald*. It was also contained in a government press release and in a court opinion available on Lexis and Westlaw. *Id.* at 299-300. In contrast, the information in the George Report has been disseminated only to Reorg Research's limited paid-subscriber base and to those who reviewed the Commonwealth or PREPA Title III dockets between the evening of Friday, April 28 to the morning of Monday, May 1.

8. In addition, contrary to the Bondholders' assertion (*see* Opp. ¶ 9), this Court may choose to keep information under seal even if it cannot completely put the "genie back in the bottle." In *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), the court declined to seal a court opinion that contained a confidential settlement amount that had been disclosed to the judge during a conference. However, the court chose to keep under seal the transcript of the conference in which the amount had been disclosed. Even though the confidential information it contained had already been disclosed, the court still held that it would be an abuse of discretion to unseal the transcript unless all confidential information within it was redacted. *Id.*

9. The same outcome is warranted here. While the Oversight Board cannot compel Reorg Research to remove its article discussing the George Report, the Court can limit the further dissemination of LUMA's confidential information by allowing the George Report to remain

5

under seal and to be refiled with the confidential information redacted.[4] In requesting this outcome, the Oversight Board seeks to follow the procedures imposed by this Court which permit confidential information to be filed under seal.

---

[4] It is worth noting that, by attaching the Reorg Research article as an exhibit to its Opposition—despite knowing the Oversight Board's position that the George Report contains confidential information—the Bondholders have further disseminated the George Report beyond its initial limited audience. This is improper given the pendency of this dispute. The Oversight Board respectfully requests that, should the Court grant the Oversight Board's request to seal, it also remove the Opposition, including its exhibit, from the public docket, and authorize the filing of a redacted version of the Opposition that redacts the last sentence in the citation at the end of paragraph 8. That said, even if the Opposition continues to be publicly available, it does not quote all of the confidential information that the Oversight Board is seeking to redact. Thus, sealing is still appropriate notwithstanding the Bondholders' conduct.

6

Dated: May 8, 2023
New York, New York

Respectfully submitted,

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Julia D. Alonzo
Laura Stafford
Javier F. Sosa
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board, as representative for PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board, as representative for PREPA*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer