**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- X
:
In re: :
:
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
:
Debtors.[1] :
---------------------------------------------------------------------- X
:
In re: :
:
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-4780 (LTS)
:
PUERTO RICO ELECTRIC POWER AUTHORITY, : (Jointly Administered)
:
Debtor. :
---------------------------------------------------------------------- X

**JOINT INFORMATIVE MOTION OF DISCOVERY DISPUTE BETWEEN THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, THE PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

To the Honorable United States Magistrate Judge Judith Gail Dein:

Pursuant to paragraph 22 of the *Court's Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith*, Dkt. 3294 (the "Discovery Order"), this Court is hereby informed of a Discovery Dispute (as that term is defined in the Discovery Order) between the Official Committee of Unsecured Creditors (the "Committee"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Puerto Rico Electric Power Authority ("PREPA"), and PREPA regarding the Committee's *First Set of Document Requests* (the "Requests," and each individual request therein a "Request").

## BACKGROUND

1. On March 24, 2023, the Committee served the Requests on the Oversight Board, PREPA, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").

2. On April 7, 2023, the Oversight Board served its Responses and Objections to the Requests (Ex. 1, the "Responses and Objections") on behalf of itself and PREPA.

3. On April 19, 2023, counsel for the Committee and the Oversight Board participated in a telephonic meet and confer to discuss the Responses and Objections (the "Meet and Confer").

4. Since the Meet and Confer, counsel for the Committee and the Oversight Board (together, the "Parties") have continued to discuss the Responses and Objections, including through written correspondence on April 21, April 24, April 25, April 26, April 27, May 1, May 2, May 5, and May 7.

5. The Parties submit this joint informative motion pursuant to paragraph 22 of the Discovery Order. The Parties' respective positions are set out below.

**PARTIES' POSITIONS ON EXISTENCE OF DISCOVERY DISPUTES**

6. Because the Parties have divergent positions on the existence and nature of their discovery disputes, the Parties set forth their respective positions below.

**Production of Communications.**

7. <u>Committee's Position</u>. During the parties' meet and confer session, the Oversight Board took the position that the production of communications, including emails and text messages, is "not proportional" to the needs of this litigation, and, therefore, the Oversight Board is unwilling to search for such communications. Specifically, the Oversight Board said it is not willing to search for or produce the communications called for by the following Requests: 2, 3, 5, 6, 7, 8, 9, 11, 15, 16, 17, 18, 19, 21, 24, 25, 27, 28, 49, 50, and 51. These requests seek, among other things, communications of the members of the Oversight Board relating to the reasonableness of the disparate treatment that the plan of adjustment provides to general unsecured creditors, among other issues.

8. In correspondence since the parties' meet and confer, the Oversight Board has sought to blame the Committee for refusing to "narrow" its requests or "propose search terms." The Committee views this as a transparent delay tactic given the Oversight Board's initial staunch refusal, for weeks, to conduct any search for communications in response to the requests. The Committee has no reason to believe the Oversight Board will in fact conduct reasonable searches for requests without Court intervention.

9. The Oversight Board has also said it will provide the Committee with general access to certain communications it has produced or will produce to *other requestors* in response to their requests for communications, some of which may, coincidentally, overlap with Requests by the Committee. This response is facially inadequate to comply with the *Committee*'s

3

Requests. Moreover, the Oversight Board is also not being transparent with respect to its efforts to produce these communications for *others* (but not the Committee), in that the Oversight Board has ignored the Committee's request for (1) the custodians from whom it has or will be collecting responsive documents, and (2) the date ranges for such custodial collections.

10. For these reasons, the Committee believes Court intervention is required on the issue of the Oversight Board's refusal to produce communications to the Committee.

11. <u>Oversight Board's Position</u>. The Oversight Board's position regarding communications is the same as it was entering the April 5 discovery hearing regarding its disputes (the "<u>Discovery Hearing</u>") with the Ad Hoc Group of PREPA Bondholders (the "<u>Ad Hoc Group</u>"): searches to find "all communications" on nearly two dozen document requests covering numerous subject matters and implicating numerous privileges are not proportional to the needs of the case and are therefore unduly burdensome. Prior to the Discovery Hearing, the Oversight Board and the Ad Hoc Group were already negotiating *narrowly tailored* search parameters with respect to two specific document requests in an effort to determine whether the parties could agree on a sufficiently narrow search for responsive communications. But the Ad Hoc Group, like the Committee here, initially sought an order requiring the Oversight Board to search for "all communications" for multiple additional requests.

12. The Court rejected the Ad Hoc Group's request, noting that it was "not convinced that a broad search of communications is proportional to the needs of this case, it has to be pretty targeted" and noting the parties should "continu[e] the conversation" to come up with *reasonable* search parameters for the two requests that the parties were already negotiating. Hr'g Tr. 37:6-20 (Apr. 5, 2023).

13. The Committee has not made even the modest efforts made by the Ad Hoc Group to narrow its communications-related requests. Accordingly, during the Meet-and-Confer on April 19, the Oversight Board's position was that it would not be undertaking searches of "all communications" for nearly two dozen requests because the Committee had made no effort to narrow its requests or come up with reasonable search parameters.

14. In the nearly three weeks since the meet-and-confer, the Committee has yet to identify requests for which it would propose narrow and reasonable search parameters, despite counsel for the Oversight Board stating it would consider those proposals in emails on April 27 and May 2. (*See* Ex. 2 at 4-6, Emails between counsel for the Oversight Board and the Committee.) As its position above makes clear, the Committee is still seeking to impose upon the Oversight Board a disproportional and burdensome review of "all communications" for dozens of requests and topics, which is not proportional or appropriate in this case. Moreover, despite its protestations in this motion about the Oversight Board's "delay tactics" and how much time remains until the close of fact discovery, the Committee has taken multiple days to respond to the Parties' most recent correspondence. Given the Committee's failure to engage in negotiations on these issues, along with the impending close of discovery on May 26, the Oversight Board does not believe it should be required to undertake a review of email communications.

**Improper Privilege Claim over Unreviewed Documents and Privilege(s) Asserted.**

15. <u>Committee's Position</u>. The Oversight Board told the Committee that, in addition to the "proportionality" argument described above, the Oversight Board is "declin[ing] to search for documents" because it anticipates potentially responsive documents to be "overwhelmingly privileged." The Committee, in turn, informed the Oversight Board that it is not proper to assert

privilege over documents it has not reviewed, which would be inconsistent with the Court's discovery order during the Rule 9019 litigation. *See* Dkt. 1556, at ¶ 9 ("[I]t is not appropriate to make assumptions of privilege for groups of unreviewed documents."). This dispute includes documents responsive to Requests 2, 3, 5, 6, 7, 15, 16, 17, 18, 19, 27, 28, and 51.

The Oversight Board has referred the Committee to the privilege log it produced on April 28, 2023 and has referenced another log purportedly forthcoming on May 12, 2023. These privilege logs, however, do nothing to cure the deficiency in the Oversight Board's privilege claims because the logs are categorical and do not indicate that that the Oversight Board has conducted a document-by-document review before asserting its privilege claims. Even if it is permissible for the Oversight Board to ***log*** documents categorically, it still must ***review*** each individual document before placing such document in a privilege category on the log. For example, the Committee does not understand how the Oversight Board could have properly asserted mediation privilege over documents it has not reviewed because it has "declined to search," yet completed a privilege log describing these documents within a category including, *inter alia,* "*any* analysis of National's claims" and "the impact of the settlement on the Plan and other creditors." (*See* Ex. 2 at 2, Emails between counsel for the Oversight Board and the Committee; Ex. 3 at 10-11, FOMB's Initial Categorical Privilege Log (April 28, 2023)).

16. <u>Oversight Board's Position</u>. In response to requests received from a half dozen creditor groups, the Oversight Board served a categorical privilege log on April 28 which included specific references to requests covered by each category. The privilege log was prepared in accordance with the Court's guidance at the Discovery Hearing that "if there are categories of documents that you're not producing that are communications on a privileged basis, you ought to put that on your log" and that, where a request seeks privileged documents or

6

communications, the Oversight Board should "put it on a log as a category and not as an individual document by document disclosure." Hr'g Tr. 29:12-15; 37:17-20 (Apr. 5, 2023).

17. As the privilege log makes clear, a number of the Committee's requests fall within the privilege categories logged by the Oversight Board. This includes, for example, the Committee's Request No. 2, which seeks all communications "concerning the Fuel Line Lender Settlement or the Fuel Line Lender PSA" between and among a variety of parties, including the Oversight Board, PREPA, and the Oversight Board's advisors. This request plainly seeks privileged documents and communications, as the entirety of the negotiation of the Fuel Line Lender PSA occurred in the context of the Court-ordered mediation between the Oversight Board and certain creditors. The Oversight Board is not required to undertake the burden and expense of collecting and reviewing these documents solely to prepare a privilege log.

18. The Oversight Board has not simply "assumed" a subset of documents is privileged; rather, it has determined that, based on the nature of the Committee's particular requests, it is likely that the vast majority of responsive documents are privileged. Accordingly, in its Responses and Objections, at the Meet-and-Confer, and in its subsequent correspondence, the Oversight Board has been clear that it is objecting fully to certain requests, including Request No. 2, because they seek documents that are overwhelmingly privileged, and the burden of reviewing such overwhelmingly privileged communications is disproportionate to the needs of the case.

19. For these reasons, the Court's intervention is required to clarify that the Oversight Board is not required to effectively comply with all of the Committee's requests by collecting and reviewing all responsive documents and communications before it can include a privilege category on its privilege log.

**Timing of Remaining Productions**.

20. <u>Committee's Position</u>. Numerous depositions are ongoing, and the close of fact discovery is just three weeks away. Notwithstanding the fact that the Requests were served more than five weeks ago, and notwithstanding the extensive telephonic and written discussion that have occurred over the last two weeks, the Committee still has no firm understanding of what documents the Oversight Board is going to produce, or when. In addition to the issues identified above, the Oversight Board has refused to confirm that it will produce documents responsive to Requests 9, 10, 23-26, 34, 35, 40, 42, 43, 44, 45, 46, 47, 48, 53, 56, and 57, claiming that it is "investigating" such Requests, without any indication of when such investigations will be complete, or any indication of the likely outcome of such investigations (*i.e.,* what categories of documents will be produced). These requests seek, among other things, documents about the following topics: (i) payments of Current Expenses; (ii) valuation of components within the National Settlement, including the alleged National Reimbursement Claim and Interim Charge; (iii) PREPA's assets; (iv) the Avoidance Actions Trust; and (v) PREPA's payment of prepetition unsecured claims. (*See* Ex. 1, FOMB/PREPA's Responses and Objections to Requests).

21. The Committee needs these documents to prepare for the remaining fact and expert depositions and to otherwise prepare for the confirmation hearing. The Court's intervention is required to ensure that the Oversight Board fully complies with these requests and does so in a timely manner to ensure the Committee's rights are not prejudiced.

22. <u>Oversight Board's Position</u>. The Committee handwaves the Oversight Board's investigations as somehow not being consistent with the Oversight Board's discovery obligations and accuses it of undertaking "endless and open-ended ongoing investigation[s]." Ex. 2 at 3-4 (May 1 email between counsel for Oversight Board and the Committee). As it has done with

requests from every other creditor group, the Oversight Board must investigate document requests to determine whether responsive documents exist and, if so, whether they can be produced or should be withheld. As the Oversight Board works through its advisors and other parties, this necessarily requires specific discussions regarding the requests with these parties, who then must gather documents for the Oversight Board's review. All of this goes into the Oversight Board's "investigations."

23. The Oversight Board has provided the Committee with periodic updates on when it was uploading documents responsive to specific requests. *See* Exs. 4, 5, 6 (Apr. 24, Apr. 26, and May 7 letters). Nevertheless, several of the Oversight Board's investigations remain ongoing, if for no other reason than that the Oversight Board must rely on third parties, such as LUMA, to complete the investigations. The Committee chose not to subpoena LUMA but instead to issue its requests to the Oversight Board and, even though the Oversight Board objected to the extent they sought documents not within its possession, custody, or control, the Committee now resorts to accusations of bad faith when the Oversight Board takes time to fully investigate those requests.

24. For these reasons, the Oversight Board does not believe there is a ripe discovery dispute regarding the Oversight Board's investigations, because they are being in conducted in good faith and remain ongoing.

## CONCLUSION

WHEREFORE the Committee respectfully requests the Court schedule a conference as soon as feasible to resolve the Discovery Dispute, and grant the Committee such other relief as is just and proper.

Dated: May 8, 2023

/s/ Luc A. Despins

PAUL HASTINGS LLP
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC – PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC – PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

*/s/ Margaret Dale*

Martin J. Bienenstock
Margaret Dale
Paul V. Possinger
Ehud Barak
Michael T. Mervis
Daniel S. Desatnik
Elliot R. Stevens
    (Admitted *Pro Hac Vice*)

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for PREPA*