# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>This filing relates to the Commonwealth.<br><br>This filing also relates to ECF Nos. 24033, 23272, 22621, and 22614. |

## NOTICE OF HEARING ON OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO PROOF OF CLAIM (CLAIM NO. 70324) OF EMPRESAS OMAJEDE, INC. AND TO MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503

**PLEASE TAKE NOTICE** that, on May 10, 2023, the Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] filed the *Objection of the Commonwealth of Puerto Rico to Proof of Claim (Claim No. 70324) of*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Empresas Omajede, Inc. and to Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503* (the "Objection") with the United States District Court for the District of Puerto Rico (the "Court"), seeking to disallow Proof of Claim No. 70324 with respect to $400,365.03 in asserted liabilities and allow the remaining liabilities asserted in Proof of Claim No. 70324, totaling $4,805.00 in liabilities.

**PLEASE TAKE FURTHER NOTICE** that any response to the Objection must be filed in writing with the Court <u>and</u> must be served upon and received by the undersigned counsel for the Commonwealth by **4:00 pm (Atlantic Time)** on **July 31, 2023**.

**PLEASE TAKE FURTHER NOTICE** that, in the event that one or more responses to the Objection are timely filed, the Objection shall be considered by The Honorable Laura Taylor Swain, at a hearing to be held at the United States District Court for the District of Puerto Rico, 150 Carlos Chardón Street, Federal Building, San Juan, Puerto Rico 00918-1767, at **9:30 a.m.** on **August 30, 2023**.

**PLEASE TAKE FURTHER NOTICE THAT, IF NO RESPONSES TO THE OBJECTION ARE TIMELY FILED, SERVED, AND RECEIVED, IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

*[Remainder of page intentionally left blank.]*

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these Title III Cases are available (a) free of charge by visiting https://cases.ra.kroll.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

Dated: May 10, 2023
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative of the Commonwealth of Puerto Rico*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[3] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>This filing relates to the Commonwealth.<br><br>This filing also relates to ECF Nos. 24033, 23272, 22621, and 22614. |

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO PROOF OF CLAIM (CLAIM NO. 70324) OF EMPRESAS OMAJEDE, INC. AND TO MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[4] files this objection (the "Objection") to Proof of Claim

---

[3]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[4]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

No. 70324 (the "Claim") of Empresas Omajede, Inc. ("Empresas" or the "Lessor") and to the related *Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503* (the "Administrative Expense Motion," ECF No. 23272), seeking to (i) disallow the portion of the Claim asserting liabilities associated with electricity charges, which the Commonwealth has already fully satisfied, (ii) to disallow the portion of the claim asserting liabilities associated with allegedly unpaid rent payments, because no valid written contract was in place at the time such asserted liabilities were purportedly incurred, and (iii) to allow the remaining portion of the claim asserting liabilities associated with unpaid repair charges.   In support of the Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Commonwealth Title III Case and Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][5] (the "Bar Date Motion").   By the *Order (A) Establishing*

---

[5]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17-BK 3283-LTS.

5

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.    Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA and CCDA Qualifying Modifications**

5.    On November 3, 2021, on behalf of the Commonwealth, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed the *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended and modified, the "Plan") [ECF No. 19053].  The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.    Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth*

*Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 19784].

7.     On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

8.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.     The Plan became effective on March 15, 2022, when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.    The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**C.     Proofs of Claim, Commonwealth Claims and Claim Objections**

11.    To date, approximately 179,410 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.     Of the proofs of claim filed, approximately 118,771 proofs of claim have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, being partially or fully satisfied, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

**D.      The Public Service Commission's Lease with Empresas Omajede**

13.     On March 9, 2011, the Public Service Commission ("CSP," by its Spanish initials), an agency of the Commonwealth, and Empresas entered into a lease agreement, see *Agreement to Lease Premises for Five to Thirty Years*, Contract Number 2011-000009 (the "Lease Agreement") [Case No. 22-AP-00076, ECF No. 6-1, attached hereto as **Exhibit B**, at 18],[6]  pursuant to which, CSP leased  certain commercial property in the "La Electrónica" building located on Road 1, Bori Street, No. 1608, San Juan, PR.  The Lease Agreement provides that rental payment "shall be seventeen dollars and twenty-five cents ($17.25) per square foot for a total of forty-six thousand dollars ($46,000) a month."  Exh. B at 21, FOURTH Clause.

14.     The Lease Agreement further provides the "effective term of the present agreement is five (5) years," which shall "come into effect 30 days after LESSEE enters into possession of the immovable property and shall extend for a period of 60 months."  Exh. B at 20, SECOND Clause.  CSP accepted possession of the leased premises on August 1, 2011.  *Document of Acceptance and Taking Possession of La Electronica Premises, Appendix I to Contract #2011-000009* (the "Acceptance Document") [Adversary Proceeding, ECF No. 6-2].   Accordingly,

---

[6] Empresas submitted a Spanish-language versions of the Lease Agreement and certain related documents, together with certified translations, in its related adversary proceeding, Adv. Proc. No. 22-AP-00076-LTS (the "Adversary Proceeding").

pursuant to the Lease Agreement and the Acceptance Document, the term of the lease began on

August 1, 2011, and ended on August 31, 2016.

15.     The Lease Agreement also explicitly prohibits tacit or automatic renewal upon its

expiration:

> **This lease agreement does not have a renewal clause nor is it subject to renewal.**  The parties waive any explicit right or right by operation of law to any novation of the present lease.  One year before the expiration of the initial term or the extended term, as applicable, of the lease agreement between the parties, the LESSOR shall send the LESSEE a new lease proposal by certified mail.  The LESSEE shall have a period of one hundred and twenty (120) days to notify the LESSOR, in writing, of its interest in remaining in the property for five (5) additional years or vacating the property once the lease agreement expires.  **If, at the time of its expiration, neither of the parties has expressed its intention to terminate the contract, the process shall be carried out for a new lease agreement, establishing that the effective period of the agreement shall be month to month with a rent payment of twenty-five (25) dollars per square foot until the new agreement is executed or the premises are vacated.**

Exh. B at 20, SECOND Clause (emphasis added).

16.     The Lease Agreement also provided that (1) CSP was liable for the cost of

electricity, which Empresas was to invoice CSP on a monthly basis in accordance with the

consumption registered by the electric meter installed in the leased premises, Exh. B at 25,

SIXTEENTH Clause, and (2) CSP was obligated to "carry out minor repairs such as: changing

washers, unclogging sanitary equipment, installing and substituting fluorescent tubes and other

necessary repairs in the leased premises," at its own expense.  Any such minor repairs were to be

"carried out by the LESSEE if their estimated cost is three hundred and fifty ($350.00) dollars or

less, [and] repairs exceeding said amount [to] be paid by the LESSOR."  Exh. B at 24, TENTH

Clause.

17.     On November 6, 2015, approximately 10 months prior to the expiration of the Lease

Agreement, CSP sent a letter to Empresas, noting that the Lease Agreement would expire on June

30, 2016 and beginning the process to evaluate renewal of the Lease Agreement.  [Adversary

Proceeding, ECF No. 11-8, attached here as **Exhibit C**, at 17].  CSP invited to submit a lease proposal by December 30, 2015.  *Id.*

18.     On December 29, 2015, Empresas, noting that the current lease "expires on August 31, 2016," submitted a proposal for a new lease commencing on September 1, 2016, for an additional five-year term, at the original contract price of $46,000.00 per month, together with other conditions.  Exh. C at 8-10.

19.     The Lease Agreement expired on August 31, 2016, and CSP continued to occupy the Property.  Empresas submitted invoices to CSP for $46,000.00 per month for September and October 2016.  *See* Empresas invoices numbered "CSP SEP16" and "CSP OCT16" at Adversary Proceeding, ECF No. 11-7, attached here as **Exhibit D**, at 46 and 43, respectively].

20.     On October 14, 2016, Empresas sent a letter to CSP, stating, among other things, that: (i) the Lease Agreement expired on August 31, 2016, and turned into a month-to-month agreement after that; (ii) for almost ten months since Empresas' proposal on December 29, 2015, CSP had not responded whether it accepts the proposal; (iii) the Lease Agreement provides for a month-to-month rental of $25 per square foot after expiration of the lease; (iv) the additional $20,666.66 per month (reflecting the difference between the original contract price and the month-to-month rental price) is being invoiced per month for September, October, and November 2016; and (v) informing the outstanding balance for the August 2016 rent, September 2016 rent, and October 2016 rent.  *See* Exh. C at 14-16.

21.     On November 29, 2016, Empresas sent CSP an invoice for $4,805.00 in repair charges.  Exh. D at 37.  This invoice is based on 23 repair sub-invoices by third-party service providers, each for an amount ranging $125.00 to $300.00.

22.     On March 23, 2017, and April 25, 2017, Empresas charged CSP for pass-through electricity charges.  *See* Empresas' customer ledger of CSP for the period January 1, 2011 to June 30, 2017, attached here as **Exhibit E**, at 7 (a charge on March 23, 2017 in the amount of $5,977.02 and a chare on April 25, 2017 in the amount of $3,721.41, for "AEE" or PREPA electricity).

23.     On June 13, 2017, CSP sent Empresas a letter stating that CSP had vacated the Property "several months ago" and requesting to arrange for transfer of the keys.  [Adversary Proceeding, ECF No. 6-4 at 5.]

24.     Empresas' customer ledger reflects CSP submitted rent payments for the six-month period from September 1, 2016 through February 28, 2017, at the original monthly lease rate of $46,000.00.  *See* Exh. E at 6-7.[7]  The ledger further reflects CSP paid Empresas for the pass-through electricity charges assessed on March 23, 2017 and April 25, 2017.  Exh. E at 7 (payment of $9,698.43, or the sum of $5,977.02 and $3,721.41, on May 12, 2017 through transaction #17-048).

**E.     Empresas' Proofs of Claim and Related Proceedings**

25.     On May 25, 2018, Empresas filed Proof of Claim No. 21372 (the "Initial Claim") against the Commonwealth. The Initial Claim asserted prepetition liabilities in the amount of $338,503.37 purportedly arising from allegedly unpaid rent due pursuant to the Lease Agreement with CSP.  The Initial Claim also asserted $66,666.66 in liabilities purportedly entitled to administrative expense priority, which amounts correspond to the alleged unpaid rent for June

---

[7] Empresas charged (debit entries) CSP lease rental for the period September 1, 2016 through February 28, 2017 as follows: (i) $46,000.00 on September 1, 2016; (ii) $20,666.66 on September 1, 2016; (iii) $46,000.00 on October 1, 2016; (iv) $20,666.66 on October 1, 2016; (v) $66,666.66 on November 1, 2016; (vi) $66,666.66 on December 1, 2016; (vii) $66,666.66 on January 1, 2017; and (viii) $66,666.66 on February 1, 2017.

CSP paid (credit entries) the lease rentals for the same period as follows: (a) $46,000.00 on October 31, 2016 [#16-125]; (b) $46,000.00 on December 2, 2016 [#16-137]; (c) $46,000.00 on December 9, 2016 [#16-142]; (d) $46,000.00 on December 19, 2016 [#16-146]; (e) $46,000.00 on February 13, 2017 [#17-019]; and (f) $46,000.00 on February 22, 2017 [#17-022].

2017.  The Initial Claim was disallowed and expunged because it was amended and superseded by the Claim.  *See Order Granting the Two Hundred Ninety-Eighth Omnibus Objection of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Subsequently Amended Claims* [ECF No. 16823].

26.     On June 25, 2018, Empresas filed the Claim, which amended the Initial Claim by providing additional supporting documentation.[8]  The Claim also asserts liabilities in the amount of $338,503.37, as well as alleged administrative expenses in the amount of $66,666.66.[9]  Accordingly, the liabilities asserted in the Claim include:

- $123,999.96 in allegedly unpaid rent for September 2016 through February 2017, reflecting the difference between the original contract price paid by CSP and the $25/square foot month-to-month price;

- $199,999.98 in allegedly unpaid rent for March 2017 through May 2017, charged at the month-to-month price;

- $66,666.66 in allegedly unpaid rent for June 2017, for which Empresas claims administrative expense priority;

- $4,805.00 in allegedly unpaid invoices for minor repairs, each less than $350; and

---

[8] On September 16, 2022, the Commonwealth, by and through the Oversight Board, filed the Five Hundred Nineteenth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Public Buildings Authority, and the Puerto Rico Highways and Transportation Authority to Deficient Claims [ECF No. 22254] (the "Five Hundred Nineteenth Omnibus Objection"), seeking to disallow the Claim for Empresas' "fail[ure] to provide any basis or supporting documentation for asserting a claim against the Commonwealth."  Five Hundred Nineteenth Omnibus Objection, Ex. A at 2.  On October 17, 2022, Empresas filed the Amended Response to the 519th Omnibus Objection (Dkt. 22254) with Respect to Empresas Omajede's Claim (Claim #70324) [ECF No. 22621] (the "Response to Claim Objection"), opposing the Five Hundred Nineteenth Omnibus Objection.  Since October 17, 2022, counsel for the Oversight Board has been in direct communication with counsel for Empresas in order to obtain additional information to evaluate the Claim, including a complete account ledger.  The Commonwealth therefore will withdraw the Five Hundred Nineteenth Omnibus Objection, solely with respect to the Claim, in an accompanying notice of withdrawal.

[9] On October 17, 2022, Empresas filed Proof of Claim No. 180563 (the "Amended Claim").  The Amended Claim asserted liabilities in the same amount as the Claim, but purported to amend the Claim by adding additional supporting documentation, including an English translation of Empresas' Lease Agreement with CSP and a written statement regarding the basis of the claim.  The Amended Claim was expunged by Kroll as an unauthorized amendment.  Nevertheless, the information accompanying the Amended Claim has been reviewed and considered by the Commonwealth in connection with the evaluation of the Claim.

- $9,698.43 in allegedly unpaid electricity bills for March and April 2017.

27.     Subsequently, on October 17, 2022, Empresas filed the Adversary Proceeding.  The Adversary Proceeding seeks, *inter alia*, a jury trial and a declaratory judgment that the Claim should be allowed in the asserted amount of $338,503.37.  Then, on January 18, 2023, Empresas filed the Administrative Expense Motion, which asks the Court to (*i*) enter an order "granting an allowed Administrative Expense Claim for the overdue post-petition monthly lease payment corresponding to the June 2017 monthly payment of the Lease Agreement evidenced by Empresas Omajede's claim," which totaled $66,666.66, and (*ii*) "determine whether the administrative expense claim should be paid immediately."  *Id.* at 6-7.  The Adversary Proceeding raises substantially the same legal and factual issues as this Objection.  Accordingly, in the interest of efficiency, the Commonwealth is filing contemporaneously herewith a motion to stay the Adversary Proceeding.

## OBJECTION TO PROOF OF CLAIM

28.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

### A.  No Liability for Electricity Charges Which Have Already Been Satisfied

13

29.     As stated above, the Claim asserts, *inter alia*, $9,698.43 in allegedly unpaid electricity bills for March and April 2017.  However, Empresas's complete customer ledger reflects that these electricity bills have already been fully satisfied by the Commonwealth. Accordingly, the Commonwealth is not liable for the electricity charges asserted in the Claim.[10]

**B.  No Liability for Rent Charged When No Written Lease Agreement In Effect**

30.     Commonwealth law provides that government obligations only arise where there is a legally valid written contract evidencing the obligation.  *See Alco Corp. v. Municipality of Toa Alta*, 183 D.P.R. 530, 539 (P.R. 2015) [*see* certified translation at ECF No. 22723-2].  Consistent with that principle, the Puerto Rico Supreme Court (the "PRSC") has held that, in the absence of a written lease agreement, government entities are not liable for rent payments to landlords.  *See Vicar Builders v. Commonwealth of Puerto Rico, et al.*, 192 DPR 256 (P.R. 2015) [*see* certified translation at ECF No. 22723-1]; *see also Order Overruling Responses of ICPR Junior College to the Five Hundred Fourteenth Omnibus Objection*, ECF No. 24002 ("Under Puerto Rico law, no valid claim may be asserted against the government for use of leased premises during a period when a written lease agreement is not in effect. . . . Commonwealth law is clear that the continued use of real estate by the government following the expiration of a written lease is not a basis for asserting a claim against the government.") (citing *Vicar Builders*).

31.     In *Vicar Builders*, the Puerto Rico Department of Justice leased a building from the plaintiff and, upon expiration of the lease, continued occupying the building for several months

---

[10] Based on an incomplete account ledger submitted by Empresas in support of its Claim, the Commonwealth understood that $155,810.96 in asserted liabilities had been fully satisfied, and filed the *Three Hundred Seventy-Second Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Partially Satisfied and Partially No Liability Claims* [ECF No. 17918] (the "Three Hundred Seventy-Second Omnibus Objection"), seeking to partially disallow such portion of the Claim.  The complete account ledger provided by counsel for Empresas demonstrates, however, that only $9,698.43 in liabilities were in fact fully satisfied.  Accordingly, the Commonwealth will withdraw the Three Hundred Seventy-Second Omnibus Objection, solely with respect to the Claim, in an accompanying notice of withdrawal.

until the lease was renewed.  The PRSC held that, due to the absence of a valid contract between the parties covering the interim period, the Commonwealth was not responsible for paying the rent owed for that period.  *Id.* at 267–70.  Pursuant to the Lease Agreement and the Acceptance Document, the Lease Agreement expired on August 31, 2016, and the Commonwealth is therefore not liable for the September 2016 through June 2017 rent payments Empresas asserts.

32.     Although the Lease Agreement contains a month-to-month renewal provision, that provision is invalid under Commonwealth law and therefore also cannot obligate the Commonwealth to make rent payments following expiration of the contract.  In *Vicar Builders*, the PRSC held that lease agreements could not be tacitly renewed, holding "if there are present the requirements of tacit renewal there does not exist a written contract that complies with the requirements required to bind the State, [sic]  That is, there would arise a new contract that is not in writing, is not recorded, and that was not sent to the Office of the Comptroller."  *Id.* at 268. *Vicar Builders* also set forth strict criteria that must be met in order for an automatic renewal or bridge provision to be effective:

> We understand that, by not applying the tacit renewal, there is a situation in which the government could remain in a property without paying rent until it is evicted after the expiration of the lease agreement.  This situation could be foreseen in the lease agreement, by agreeing beforehand under what conditions the lease would be extended, for how much additional time, and what would be the rent to be paid.  In fact, and without pretending to be exhaustive, the parties have the alternative of including penal clauses in their contracts to prevent that a party be affected by the non-compliance of the other.

> *Id.* at 269–70.

33.     Although the PRSC does not specify "how much additional time" must be identified in a renewal provision for it to be legally valid, a recent opinion by the Court of Appeals of Puerto Rico provides persuasive guidance.  In *WPR La Cerámica LP, S.E. v. Estado Libre Asociado de Puerto Rico*, Case No. KLCE202101045 (PR Appeals Nov. 15, 2021) ("La

Cerámica"), [11] the Court of Appeals of Puerto Rico rejected an automatic month-to-month extension clause very similar to the extension clause at issue here.  The La Cerámica lease agreement provided in relevant part that if the lessee continues to occupy the leased property after the expiration of the original lease term, the lessee would pay a specified rental amount "each month until the agreement is renewed or the LESSEE hands over the key and vacates the property." KLCE202101045, at *2.  The *La Cerámica* court found the extension clause too vague and invalid:

> Indeed, it could be interpreted that the literal text of the clause complies with the applicable legal requirements. However, we should bear in mind that when entering into contract with the Government, the interpretation of said provision must be restrictive. Let us not forget that these cases imply the highest level of public interest.
>
> Thus, analyzing the content of clause forty-two, we notice that it intended to activate a type of renewal, given that it extended, on a monthly basis, the term of the lease agreement until the occurrence of one of the circumstances set forth therein. We deem that this practice creates uncertainty, which is incompatible in matters in which the Government is party, particularly concerning the availability of the necessary public funds to make the subsequent rent payments. . . .  In light of the above, we believe that the language is vague and fails to comply with that required by our legal system. It would have been different if said article had an exact start and termination date of the agreement, and not merely leaving it to be renewed "on a monthly basis," attributing the moment of its termination to the petitioner.

*Id.* at *13.

34.    The Lease Agreement's month-to-month renewal provision is flawed for the same reasons.  Like the lease at issue in *La Cerámica*, the Lease Agreement does not provide a specific start or end date of the month-to-month agreement, thereby leading to precisely the indefiniteness in government contracting that *Vicar Builders*' rejection of tacit renewal was meant to avoid. Because the Lease Agreement's month-to-month renewal provision is too vague to establish a written contract as required by Puerto Rico law, no written agreement was in place following

---

[11] See **Exhibit F** for an uncertified translation of this opinion.  The opinion in its original Spanish version is also attached hereto as **Exhibit G**.

expiration of the Lease Agreement in August 2016, and the Commonwealth is therefore not liable

for the unpaid rent asserted in Empresas' Claim.

### C. No Administrative Expense Priority for June 2017 Rent

35.     Both the Claim and the Administrative Expense Motion seek administrative

expense priority for the allegedly unpaid June 2017 rent.  No such priority is appropriate here,

however: even if the assertion of June 2017 rent represented a valid claim against the

Commonwealth—which, for the reasons set forth above, it does not—Empresas has not

demonstrated entitlement to administrative expense priority.

36.     The Bankruptcy Code provides that "the actual, necessary costs and expenses of

preserving" the Debtor may be allowed as administrative expenses.  11 U.S.C. § 503(b)(1)(A).

Empresas bears the burden of demonstrating its entitlement to such treatment.  *See In re Fin.*

*Oversight and Mgmt. Bd. for P.R.*, 41 F. Supp. 3d 60, 64 (D.P.R. 2020) (citing *Woburn Associates*

*v. Kahn* (*In re Hemingway Transport, Inc.*), 954 F.2d 1, 5 (1st Cir. 1992).

37.      The Administrative Expense Motion does not even attempt to meet that burden.  It

nowhere explains why the unpaid June rent constitutes "the actual, necessary costs and expenses

of preserving" the Commonwealth.  Nor could it: CSP's June 13, 2017 letter to Empresas advised

Empresas that CSP had vacated the Property "several months ago," meaning CSP had vacated the

property before the petition was even filed.  [Adversary Proceeding, ECF No. 6-4 at 5.]  In other

words, CSP was no longer even occupying the property on the petition date, and therefore, charges

for post-petition rent cannot possibly be actual and necessary costs of preserving the Debtor.

Accordingly, because Empresas has failed to demonstrate any benefit to the Commonwealth

associated with the June 2017 rent charges, such charges are not entitled to administrative expense

priority.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, (i) disallowing the portion of the Claim asserting liabilities associated with electricity charges, which the Commonwealth has already fully satisfied, (ii) disallowing the portion of the Claim asserting liabilities associated with allegedly unpaid rent payments, because no valid written contract was in place at the time those liabilities were purportedly incurred, (iii) allowing the remaining portion of the claim asserting liabilities associated with unpaid repair charges, (iv) denying the Administrative Expense Motion, and (v) granting the Commonwealth such other and further relief as is just.

Dated: May 10, 2023                          Respectfully submitted,
San Juan, Puerto Rico

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative of the
the Commonwealth of Puerto Rico*

**Exhibit A**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>This filing relates to the Commonwealth. |

## ORDER GRANTING OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO PROOF OF CLAIM (CLAIM NO. 70324) OF EMPRESAS OMAJEDE, INC. AND DENYING MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503

Upon the *Objection of the Commonwealth of Puerto Rico to Proof of Claim (Claim No. 44885) of Empresas Omajede, Inc. and to Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503* (the "Objection"), dated May 10, 2018, of the Commonwealth of Puerto Rico (the "Commonwealth") for entry of an order disallowing the claim of Empresas Omajede, Inc. (Proof of Claim No. 70324) (the "Claim") with respect to $400,365.03, allowing the Claim with respect to $4,805.00, and denying the Administrative Expense Motion, as more fully set forth in the Objection; and the Court having jurisdiction to consider the Objection

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and to grant the relief requested therein pursuant to Section 306(a) of PROMESA[2]; and venue

being proper pursuant to Section 307(a) of PROMESA; and due and proper notice of the Objection

having been provided to those parties identified therein, and no other or further notice being

required; and the Court having determined that the relief sought in the Objection is in the best

interest of the Commonwealth, its creditors, and all the parties in interest; and the Court having

determined that the legal and factual bases set forth in the Objection establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Objection is GRANTED as set forth herein; and it is further

ORDERED that the Claim is hereby disallowed with respect to (i) $9,698.43 in electricity

bills which the Commonwealth has already fully satisfied, (ii) $390,666.60 in allegedly unpaid

rent payments, because no valid written contract was in place at the time those liabilities were

purportedly incurred, and the Commonwealth is therefore not liable for such amount; and it is

further

ORDERED that the Claim is hereby allowed with respect to $4,805.00 in invoices for

repairs;

ORDERED that the Administrative Expense Motion is denied; and it is further

ORDERED that Prime Clerk is authorized and directed to designate the portions of the

Claim for which the Commonwealth is not liable as disallowed and expunged on the official claims

register in the Commonwealth Title III Case; and it is further

ORDERED that Prime Clerk is authorized and directed to designate the remaining portion

of the Claim as allowed; and it is further

---

[2]  Capitalized terms used but not defined herein shall have the meanings set forth in the Objection.

ORDERED that the remainder of the Claim is subordinated pursuant to 11 U.S.C. § 510(b);

and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____

 

                              _____

Honorable Judge Laura Taylor Swain
United States District Judge