**Exhibit F**

**Judgment**

COMMONWEALTH OF PUERTO RICO
COURT OF APPEALS
PANEL IV

| | | |
|---|---|---|
| WPR LA CERÁMICA LP, S.E.<br>**Respondent**<br>v.<br>COMMONWEALTH OF PUERTO RICO; DEPARTMENT OF FAMILY AFFAIRS<br>**Petitioners** | KLCE202101045 | *CERTIORARI*<br>from the Court of First Instance, Court of Carolina<br><br>Civil No.: CA2020CV00895<br><br>Collection of Money |

Panel comprised of its presiding judge, Judge Cintrón DPR, Judge Pagán Ocasio and Judge Barresi Ramos.

Cintrón Cintrón, Judge Rapporteur.

**JUDGMENT**

In San Juan, Puerto Rico, on November 15, 2021.

Comes now the Department of Family Affairs, through the Attorney General's Office (Department or petitioner), requesting the overturning of the *Decision* notified on May 26, 2021 by the Court of First Instance, Superior Court of Carolina (CFI (Court of First Instance)). By means of said decision, the CFI validated clause forty-two, included via an amendment to the lease agreement signed between the above-captioned parties. In turn, it Dismissed the petitions for summary judgment filed before it.

Based on the grounds set out below, we issue the requested writ of *certiorari* and overturn the appealed pronouncement.

I.

As shown in the file, on March 1, 2014, WPR La Cerámica LP, S.E. (Hereinafter WPR or respondent) executed a lease agreement in which it figured as lessor and the Department of Family Affairs as

Identifier Number
SEN2021 _____

lessee. By means of said agreement, a premises located in Carolina was leased, to be used as a central warehouse. On August 7, 2018, the parties amended the agreement to reduce the leased space and agreed to a monthly rent of $19,479.17. Specifically, the amendment resulted in Clause Forty-Two of the agreement being worded as follows:

> EFFECTIVE TERM: This contract will be in effect as from March 1, 2014 until February 28, 2019, subject to the availability of funds. After February 28, 2019, if the LESSEE continues to occupy the leased property, it will pay the agreed monthly sum ($19,479.17) each month until the agreement is renewed or the LESSEE hands over the key and vacates the property. The rent payments will be paid from the amounts of accounts identified by the FIRST PARTY.

This being the case, on March 9, 2020 WPR filed a complaint for collection of money against the Department of Family Affairs. It alleged that, in accordance with clause forty-two of the amendment to the lease agreement, the agreement terminated on February 28, 2019, unless the Department continued to occupy the premises, in which case, it would be extended from on a monthly basis. It claimed that the Department continued occupying the premises until August 2019, in view of which it agreed to extend the agreement on a monthly basis, with a rent of $19,479.17. It added that the Department paid it the rent of June 2019, but not the rent for the months of May, July, and August of said year. As such, it stated that it was the creditor of $58,115.13, which, it argued, was due and payable.

In turn, on August 6, 2020, the Department answered the complaint. It argued against the clause on which WPR based its claim, given its understanding that it implied the application of the tacit renewal doctrine against the State. Specifically, it reasoned that said doctrine was not compatible with the laws and case law governing

government contracting. Therefore, it requested the CFI to *Dismiss* the complaint filed against it.

After various procedures, on December 15, 2020, it requested the lower court to issue a summary judgment in its favor. It alleged that there was no dispute as to the following facts: (1) that the parties appropriately executed and formalized a lease agreement and its subsequent amendment; (2) that the term of the agreement in question was from March 1, 2014 until February 28, 2019; (3) that during the effective term of the agreement, it was amended in order to reduce the leased space and monthly rent; (4) that the expiration date continued to be February 28, 2019 and the amendment stipulated that, in case the Department continued to occupy the premises, the agreement would be extended, on a monthly basis, until renewed or terminated, and (5) that, on February 28, 2019, the Department continued to occupy the leased building for a term of six (6) months, from March to August 2019, until the contract ended due to the sale of the leased lots to a third party entity.

Due to the above, WPR alleged that the agreement and the amendment in question complied with the legal requirements applicable to agreements between the government and a private entity, given that they were both in writing and were registered at the Comptroller's Office within 15 days of their execution. In addition, it emphasized that it was not a retroactive agreement because the amendment was made within the effective term of the original agreement. In other respects, it asserted that clause forty-two was in writing, in view of which it was improper to allude to the concept of tacit renewal. In this regard, it argued that said clause was in accordance with the applicable case law in that it managed to prevent

the State from unjustifiably obtaining profit at the expense of the private entity in situations where the State continued occupying the leased property after the expiration date of the agreement. Therefore, it maintained that said stipulation was valid and effective in law in its entirety. In relation to the claimed debt, WPR asserted that the Department made the payments for March, April, and June 2019, but not those corresponding to May, July, and August 2019, generating a debt of $58,115.13, which was due and payable.[1]

In turn, on December 15, 2020, the Department filed a motion for summary judgment. In its motion, it specified that the clause in question violated the law on government contracting and the good handling of public funds. It stressed that WPR was wrong to file a claim for collection of money based on the amendment to the lease agreement in question. It emphasized that said clause stipulated the application of the concept of tacit renewal to the lease, in which one party is a government entity. In accordance with the foregoing, it suggested that said agreement was unlawful, in that **its open and vague language** related to the term of the lease, with the purpose of being automatically renewed on a monthly basis, constituted another agreement that was recorded in writing and lacked the formalities required for government contracting. Thus, it highlighted the fact that the language of the amendment failed to comply with the applicable case law and legislative provisions due to its ambiguity and uncertainty in the public funds required to cover the new agreement on a monthly basis, without a certain or specific termination date. It

---

[1] Together with its request, it attached a copy of the following documents: lease agreement, the amendment made in 2018, invoices for the rent payments related to the months of May, July, and August 2019, certification of payments made to WPR by the Department of Family Affairs, dated September 2, 2020, checks made out to WPR, Sworn Statement of April Carol Niedda, comptroller of WPR, and emails between EPR and the Department.

argued that it would have been different if the parties had agreed to amend the agreement for an additional effective term or to use economic penalty clauses on account of the occupation of property after the effective term of the agreement. In short, the Department requested the CFI to issue summary judgment in its favor.[2] WPR opposed the motion in a timely manner and reiterated its previous arguments.

At this point, on May 20, 2021, the lower court issued the opinion, which we now review. Firstly, the Court decreed the legality of clause forty-two contained in the amendment to the lease agreement in question. In turn, it denied the petitions for summary judgment filed by the parties. The CFI expressed the following:

> In the instant case, it is not fitting to speak of tacit renewal, but rather a manifest will between the contracting parties to continue with the lease, on a monthly basis, for the same sum of rent as agreed until one of two things occur. To wit, that the Department vacates and hands over the property, or until the agreement is renewed.
>
> …
>
> The fact that a fixed date has not been set for the termination of the contractual relationship does not invalidate the agreement, especially when the vacation of the property was left in the hands of the State. Moreover, in the instant case it is a kind of penalty clause stipulated by mutual agreement, which has the effect of holding the State financially accountable for staying in a private premises. For a contract with a government entity to be valid, certain requirements must by met and these requirements are met in the instant case.
>
> …
>
> In other respects, the court *a quo* determined that the instant

case presented a genuine and substantial dispute as to whether the rent corresponding to the month of May 2019 was paid. Due to the above, it concluded that WPR must present evidence at a plenary hearing that it is owed this rent.

Dissatisfied, on June 10, 2021, the State, in representation of the Department of Family Affairs, requested reconsideration, which

---

[2] Together with its request, it included a copy of the lease agreement and the amendment made in 2018.

was opposed by WPR in a timely manner. By Decision issued on July 23, 2021, the CFI denied said petition. By virtue of the above, the Department of Family Affairs, through the Attorney General's Office, came before this Court claiming that the CFI had committed the following error:

> The Court of First Instance erred in Dismissing the Motion for Summary Judgment filed by the petitioner, given that clause forty-two of the Amendment to the Lease Agreement is invalid, in view of which the respondent is not entitled to collect any debt on account of rent payments in accordance with the most basic principles of government contracting which govern in our legal system.

With the benefit of the appearance of the respondent, we proceed to resolve.

II.

A.

Article 1456 of the Civil Code of Puerto Rico 31 LPRA, sec. 4063, provides that if, upon termination of a lease agreement the lessee, with the lessor's consent, continues with the enjoyment of the leased thing for fifteen (15) days, there is tacit renewal.[3] Tacit renewal does not imply an extension of the original agreement, but rather a new agreement. *Dalmau v. Hernández Saldaña,* 103 DPR 487, 490 (1975). This is so because, by express provision of law, the lease ceases when its term expires, thus extinguishing the original agreement. *Cesani Vargas v. Tribunal Superior,* 92 DPR 239 (1965). Notwithstanding, when the requirements for tacit renewal concur, the agreement is renewed. *Id.* A new contract arises from the tacit agreement whose term is not the same as that stipulated in the original contract but as provided in Arts. 1467 and 1471 of the Civil Code, 31 LPRA, secs. 4083 and 4092.

---
[3] Civil Code applicable to the facts of the instant case.

For tacit renewal to operate, the following requirements must concur: (1) that, upon termination of the lease agreement, the lessee continues to enjoy the leased thing for 15 days; (2) that it do so with the lessor's consent, and (3) that no requirement has been foregone, that is to say, expression made by any of the parties to the other, of its wish to terminate the lease. *Dalmau v. Hernández Saldaña, supra.* In other words, the lease terminates *ipso facto*, by expiration of the term, unless tacit renewal occurs due to the lessee continuing to enjoy the thing with the lessor's consent. Notwithstanding, since this consent is presumed, it derives from its silence and tolerance regarding the fact of the lessee's possession of the thing subject to the contract, there must be an act that demerits that presumption, and this act is the requirement applies to the lessee in order to terminate the agreement. *León Parra v. Gerardino,* 58 DPR 489, 494-495 (1941).

In other respects, government contracting is deemed a matter that implies a high level of public interest. Therefore, the legal precepts that govern it aspire to promote, not only a healthy and upright public administration, but also to prevent squandering, corruption, and cronyism. *Vicar Builders v. ELA,* 192 DPR 256, 263 (2015); *ALGO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011); *CMI Hospital v. Depto. Salud,* 171 DPR 313, 320 (2007). In light of this reality, the provisions governing contracting between private and public entities are rigorous and of restrictive application. *Vicar Builders v. ELA, supra.* The efficacy of this type of contract is determined based on special statutes which regulate it, and not according to general contract theories. *ALCO Corp. v. Mun. de Toa Alta, supra,* p. 537, citing *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009).

With the aim of achieving the healthy administration of public funds, there is legislation to establish control of their disbursement and of government contracting. *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014). To such end, Law No. 230 of July 23, 1974, known as the *Government of Puerto Rico Accounting Act,* 3 LPRA, sec. 283a, establishes, as public policy, the maintenance of "prior control of all government operations"; that the accounting of the government of Puerto Rico "constitutes an effective control over the revenues, disbursements, funds, property, and other assets of the government," and that "government expenditure be carried out within the context of utility and austerity."

In accordance with the above, case law has established certain requirements in such a way that they are indispensable for the legal transaction to which the Government is party, to be valid and enforceable: 1) put the contract in writing; 2) keep a record to establish its existence; 3) send a copy to the Office of the Comptroller of Puerto Rico; and 4) provide proof of compliance with the time period, that is, show it was completed and executed fifteen (15) days earlier. These requirements serve as a mechanism for verifying the continuity of the legal transaction, and to prevent fraudulent payments and claims. *Vicar Builders v. ELA, supra*, p. 264; *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Once said requirements have been satisfied, contracts shall be valid, enforceable and shall be subject to the publication required under our legislation for the effective administration of public policy with respect to government contracting. *ALCO Corp. v. Mun. de Toa Alta, supra,* p. 538, citing *Johnson & Johnson v. Mun. de San Juan,* 172 DPR 840, 853 (2007).

However, in *Vicar Builders v. ELA, supra,* p. 267, the Supreme Court established that the law and powerful reasons of public policy made it impossible to apply the concept of tacit renewal in government

contracting. According to the above, the Supreme Court concluded that the nature of tacit renewal is not compatible with the laws or case law governing government contracting. It explained that, when tacit renewal operates, a new contract arises from a tacit agreement between the parties that results from the behavior of the lessor and the lessee. See *Dalmau v. Hernández Saldaña, supra*. To such end, it stated that a contract to which the State is party cannot arise from a tacit agreement or from the actions of the parties. *Vicar Builders v. ELA, supra*.

Likewise, the Supreme Court stated, in *Vicar Builders v. ELA, supra*, p. 267-268:

> From there arises the incompatibility of both legal concepts. If a government contract exists in writing, it is not fitting to speak of tacit renewal. Similarly, if the requirements for tacit renewal are present, there can be no written contract that meets the requirements stipulated to bind the State. In other words, a new contract would arise that does not exist in writing, is not registered, and was not sent to the Office of the Comptroller.
>
> The statutory requirements that exclude the application of the concept of tacit renewal are irremediable. It could be argued that the new contract that tacitly arises could subsequently be put in writing and sent to the Office of the Controller, in compliance with these requirements. However, in that case we would be permitting a practice that this Court has previously invalidated — retroactive contracting with the government. See *ALCO Corp. v. Mun. de Toa Alta, supra*. In other words, one party would be enjoying a leased thing for a period without the existence of a valid and enforceable contractual relationship. Should the parties decide to put the agreement arising from the tacit renewal in writing, the binding effect would arise after one party had obtained a benefit from, or enjoyed, the leased thing. Were we to permit such a circumstance, we would be endorsing an agreement that assumes a prior obligation under which the parties have created benefits. This is precisely what the Court has previously prohibited.
>
> The application of the concept of tacit renewal would grant the State a means of evading compliance with the requirements imposed in the aforementioned statutes, which this Court has recognized as necessary for a government contract to have legal effectiveness. We would

be opening the door to the State to tacitly renew contracts, which, due to lack of publication, could not be audited by third parties and would distort the reality contained in contract registries. We cannot support the application of this concept the effect of which would be to reduce the transparency of transactions involving the government and allow the government to execute contracts for a period in excess of that stipulated in the written contract. This is precisely what the laws in question intend to eradicate.

In this regard, the Supreme Court established that a tacit extension to the effective term of a lease agreement with the State is invalid. See *Fernández & Gutiérrez v. Mun. de San Juan, supra*. Therefore, parties entering into contract with government entities must comply with the requirements of the applicable laws. *CMI Hospital v. Depto. Salud, supra*, p. 321.

Consequently, in order to prevent irregular situations in which the State may obtain undue benefits, the parties must be meticulous in executing their contracts. *Vicar Builders v. ELA, supra*. That is to say, the development of the contractual clauses shall be essential in deciding how to proceed upon the expiration of a lease agreement executed with the government. Only in this way can any situation, which could place a private party at a disadvantage *vis-à-vis* the State, be remedied. *Id.* By virtue of the above, the Supreme Court has stated that it is essential to stipulate the following, beforehand, in the contract: (1) under what conditions the lease would be extended; (2) for what additional period; (3) what the rent payment would be; and (4) penalty clauses to prevent one party from being affected by the non-compliance of the other. *Vicar Builders v. ELA, supra*, p. 270.

B.

Furthermore, a penalty clause has been defined as "an ancillary agreement to a principal obligation, whereby a promise is made to

provide a benefit, generally financial, in case one of the parties fails to comply, or incorrectly or irregularly complies, with the undertaking." *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 175 (2011), citing J.R. Vélez Torres, *Derecho de Obligaciones,* 2nd ed., San Juan, continuing Legal Education Program of the Faculty of Law of the U.I.A., 1997, p. 299. Its function is: (1) to ensure the performance of an obligation and (2) evaluate, beforehand, the possible damages caused to the creditor by the non-performance of the obligation. *R.C. Leasing Corp. v. Williams Int. Ltd.,* 103 DPR 163 (1974).

It is not necessary to allege damages under a penalty clause. *Clausells v. Salas,* 51 DPR 89-95 (1937). That is to say, when such a clause is agreed upon, it is not necessary to prove the damages suffered by the creditor due to the non-performance of the obligation. *C.M. & Finance Corp. v. Cooley,* 103 DPR 6, 9-10 (1974). "In obligations with a penalty clause, the penalty shall replace compensation for damages and payment of interest in the event of non-performance, its purpose is not always the anticipated liquidation of damages. It has a function of sanctioning a violation of the legal obligation, which gives the clause its other name of liquidated damages and which, beyond the motive of gain in the ordinary obligation, introduces an element of coercion and threat that urges the debtor to comply." *Jack's Beach Resort, Inc. v. Cia. Turismo,* 112 DPR 344, 349 (1982).

### III.

In its petition, the petitioner alleges that the CFI erred in issuing its opinion and determining that the respondent is entitled to collect a debt for rent payments. It understands that clause forty-two of the lease agreement in question is inoperative against the Government, due to being contrary to the principles that govern this type of contracting. It is right.

In the instant case, on March 1, 2014, the parties signed a valid lease agreement that met all the requirements applicable to government contracts. That is to say, the agreement was recorded in writing, it was registered and a copy was sent to the Office of the Comptroller. The expiration date was February 28, 2019. However, on August 7, 2018, the parties amended the agreement to include the clause under our consideration, whereby, if the petitioner continued occupying the property after February 28, 2019, it was obligated to pay the agreed amount every month until: (1) the contract was renewed or (2) the key was handed over and the property vacated. Said amendment was also recorded in writing and it was also registered with the Office of the Comptroller within the term stipulated by law.

In this regard, the petitioner alleges that an exhaustive analysis of its text shows prejudicial effects to government contracting because it has the same effects as the application of the doctrine of tacit renewal. The CFI concluded that it was not fitting to speak of said doctrine, but rather a manifest will between the contracting parties to continue with the lease, on a monthly basis, for the same sum of rent as agreed until the occurrence of one of the two aforementioned circumstances. In turn, the respondent agrees with the result of the lower court, in that it believes that the clause in question, included in the amendment, complies with all the legal requirements concerning government contracting. Specifically, it points out that the amendment left the remaining terms of the agreement unaltered, all subject to the availability of funds. It specifies that the total sum of the monthly rent payments under the agreement, including those attributable to the period of six (6) months covered by the amendment, was less than the originally budgeted amount.

> After a prudent examination of the circumstances of the instant case, together with the pleadings of both parties, we find that clause forty-two is invalid. Let us explain.
>
> Indeed, it could be interpreted that the literal text of the clause complies with the applicable legal requirements. However, we should bear in mind that when entering into contract with the Government, the interpretation of said provision must be restrictive. Let us not forget that these cases imply the highest level of public interest.
>
> Thus, analyzing the content of clause forty-two, we notice that it intended to activate a type of renewal, given that it extended, on a monthly basis, the term of the lease agreement until the occurrence of one of the circumstances set forth therein. We deem that this practice creates uncertainty, which is incompatible in matters in which the Government is party, particularly concerning the availability of the necessary public funds to make the subsequent rent payments.
>
> As explained by the Supreme Court in *Vicar Builder v. ELA, supra,*, it is clear that in this case, the parties were not meticulous upon introducing the amendment in question, in such a way as to address any situation in which a party might fail to comply with that agreed upon therein. In particular, because one of the contracting parties is the Government. In light of the above, we believe that the language is vague and fails to comply with that required by our legal system. It would have been different if said article had an exact start and termination date of the agreement, and not merely leaving it to be renewed "on a monthly basis," attributing the moment of its termination to the petitioner.
>
> In other respects, we also deem that the clause in question does not contain the elements of a penalty clause. Although the existence

of a clause of this nature does not depend on the evaluation of the contracting parties, but rather the authentic function implied by the agreement,[4] we deem that the lower court erred in thus accepting it, and concluding that it had the effect of holding the petitioner financially responsible for its remaining in a private premises after the agreement had lost validity.

In accordance with the foregoing, and in order to prevent a failing of justice, it is applicable to issue the petitioned writ of *certiorari* and overturn the appealed decision.[5]

IV.

Due to the above grounds, the writ of *certiorari* is issued and the appealed decision is overturned. The case is returned to the CFI for the continuation of the proceedings.

Thus decided and ordered by the Court and certified by the Clerk.

Judge Barresi Ramos agrees with the result, without written opinion.

                                                         Lilia M. Oquendo Solis, Esq.
                                                         Court of Appeals Clerk

---

[4] *Jack's Beach Resort, Inc. v. Cía. Turismo, supra*, p. 349.

[5] As we know, the writ of *certiorari* is of a discretionary nature. Rule 52.1 of Civil Procedure, 32 LPRA, App. V, R. 52.1, restrictively provides for the matters we can address by means of said writ. *Scotiabank de Puerto Rico v. ZAF Corporation,* 202 DPR 478 (2019). Our decision regarding its issuance is subject to the consideration of the following criteria:

   (A) Whether the remedy and the issuance of the appealed decision, unlike its grounds, are unlawful.
   (B) Whether the situation of facts raised is the most appropriate for the analysis of the problem.
   (C) Whether prejudice, partiality or gross and manifest error is involved in the evaluation of the evidence by the Court of First Instance.
   (D) Whether the matter raised requires more meticulous consideration in light of the original case records, which should be submitted, or of more elaborate pleadings.
   (E) Whether the stage of the proceeding at which this case is presented, is the most favorable for its consideration.
   (F) Whether the issuance of the decision or the order to show cause do not cause undue fractioning of the dispute and an undesirable delay in the ultimate resolution of the litigation.
   (G) Whether the issuance of the decision or the order to show cause avoids a failure of justice.

Rule 40 of the Regulations of the Court of Appeals, 4 LPRA, App. XXII-B, R. 40; *García v. Padró,* 165 DPR 324, 334 (2005).