**<u>Exhibit F</u>**

**Sentencia

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| WPR LA CERÁMICA LP, S.E. **Recurrido** v. ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE LA FAMILIA **Peticionarios** | KLCE202101045 | CERTIORARI procedente del Tribunal de Primera Instancia, Sala de Carolina Civil Núm.: CA2020CV00895 Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2021.

Comparece ante nos el Departamento de la Familia, por conducto de la Oficina del Procurador General (Departamento o peticionario), y solicita la revocación de la *Resolución* notificada el 26 de mayo de 2021 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante la referida determinación, el TPI validó la cláusula cuadragésima segunda incluida a través de una enmienda al contrato de arrendamiento suscrito entre las partes de epígrafe. A su vez, declaró *No Ha Lugar* las solicitudes de sentencia sumaria traídas a su atención.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos el pronunciamiento recurrido.

I.

Según surge del expediente, el 1 de marzo de 2014 WPR La Cerámica LP, S.E. (en adelante, WPR o recurrida) otorgó un contrato de alquiler en el que figuró como parte arrendadora y el

Número Identificador
SEN2021 _____

Departamento de la Familia como arrendatario. Mediante el mismo se arrendó un local situado en Carolina, con el objetivo de utilizarlo como almacén central. El 7 de agosto de 2018, las partes enmendaron el contrato para reducir el área arrendada y acordaron un canon mensual de $19,479.17. En específico, la enmienda conllevó que la Cláusula Cuadragésima Segunda del convenio dispusiera lo siguiente:

> VIGENCIA: Este contrato estará vigente a partir del 1 de marzo de 2014 hasta el 28 de febrero de 2019, sujeto a la disponibilidad de fondos. Luego del 28 de febrero de 2019, si el ARRENDATARIO continúa ocupando el inmueble arrendado, le pagará de mes a mes la cantidad mensual pactada ($19,479.17) hasta que se renueve el contrato o el ARRENDATARIO entregue la llave y desaloje el inmueble. Los cánones se pagarán de las cifras de cuentas identificadas por la PRIMERA PARTE.

Así las cosas, el 9 de marzo de 2020 WPR presentó una demanda de cobro de dinero contra el Estado y el Departamento de la Familia. Alegó que, a tenor con la cláusula cuadragésima segunda de la enmienda al contrato de alquiler, el acuerdo terminaba el 28 de febrero de 2019, salvo que el Departamento continuara ocupando el local, en cuyo caso, se extendería de mes a mes. Adujo que el Departamento permaneció ocupando el local hasta agosto de 2019, por lo que el convenio se prolongó de mes a mes con un canon de $19,479.17. Añadió que el Departamento le pagó la renta de junio de 2019, más no así aquella relacionada a los meses de mayo, julio y agosto de dicho año. A tales efectos, esbozó que era acreedor de $58,115.13, deuda que arguyó estaba vencida, líquida y exigible.

Por su parte, el 6 de agosto de 2020 el Departamento contestó la demanda. En lo pertinente, argumentó en contra de la cláusula en la cual WPR basó su reclamación, por entender que esta conllevaba aplicar la doctrina de la tácita reconducción en contra del Estado. Específicamente, razonó que la referida doctrina no era compatible con las leyes y la jurisprudencia que regulan la

contratación gubernamental. Por tanto, solicitó al TPI que declarara *No Ha Lugar* la demanda instada en su contra.

Tras varios trámites, el 15 de diciembre de 2020 WPR solicitó al foro primario que emitiera una sentencia sumaria a su favor. Alegó que no existía controversia sobre los siguientes hechos: (1) que entre las partes se perfeccionó y formalizó adecuadamente un contrato de arrendamiento y su posterior enmienda; (2) que el término del acuerdo concernido era del 1 de marzo de 2014 al 28 de febrero de 2019; (3) que durante la vigencia del contrato este se enmendó para reducir el espacio alquilado y el canon mensual; (4) que la fecha de vencimiento continuó siendo el 28 de febrero de 2019 y la enmienda especificó que, en caso de que el Departamento continuara ocupando el local, el acuerdo se extendería de mes a mes hasta que se renovase o se diera por terminado y (5) que llegado el 28 de febrero de 2019, el Departamento continuó ocupando el edificio arrendado por un término de seis (6) meses, de marzo a agosto de 2019, hasta que el contrato culminó debido a la venta de los predios alquilados a una tercera entidad.

A raíz de lo anterior, WPR adujo que el contrato y la enmienda en cuestión cumplían con los rigores de ley aplicables a los acuerdos entre el gobierno y un ente privado, toda vez que ambos constaban por escrito y fueron registrados en la Oficina del Contralor dentro del término de 15 días siguientes a su otorgación. Además, destacó que no se trataba de una contratación retroactiva porque la enmienda se hizo dentro de la vigencia del convenio original. De otro lado, esgrimió que la cláusula cuadragésima segunda constaba por escrito, por lo que era improcedente aludir a la figura de la tácita reconducción. A tales efectos, razonó que dicha cláusula se ajustaba a las disposiciones de la jurisprudencia aplicable, pues lograba evitar que en situaciones en que el Estado continuara ocupando el local arrendado luego de la fecha de vencimiento del contrato, este

se lucrara injustificadamente a expensas del ente privado. Por ello, sostuvo que la referida estipulación era válida y eficaz en derecho en todos sus extremos. En relación con la deuda reclamada, WPR esbozó que el Departamento satisfizo los pagos de marzo, abril y junio de 2019, pero no los correspondientes a mayo, julio y agosto de 2019, generando una deuda de $58,115.13 que estaba vencida, líquida y exigible.[1]

Por su parte, el 15 de diciembre de 2020 el Departamento incoó una moción de sentencia sumaria. En su escrito, particularizó que la cláusula en cuestión violaba la normativa sobre contratación gubernamental y el buen manejo de fondos públicos. Subrayó que WPR estaba equivocado al entablar la reclamación de cobro de dinero a base de la enmienda al contrato de arrendamiento concernido. Enfatizó que la referida cláusula pactó aplicar la figura de la tácita reconducción al arrendamiento en el cual una parte es un ente gubernamental. Conforme a lo anterior, aludió que dicho acuerdo era contrario a la ley, pues **su lenguaje abierto e indefinido** relacionado al término del arrendamiento, con el propósito de autorrenovarse mes a mes, constituía otro contrato que no constaba por escrito y carecía de las formalidades requeridas para la contratación gubernamental. Así, resaltó que el lenguaje de la enmienda incumplía con las disposiciones jurisprudenciales y legislativas aplicables debido a su ambigüedad e incertidumbre en los fondos públicos necesarios para cubrir el nuevo contrato mes a mes sin fecha cierta o específica de terminación. Arguyó que distinto hubiera sido si las partes hubieran pactado enmendar el acuerdo por un tiempo de vigencia adicional o utilizar cláusulas penales económicas por razón de la ocupación de la propiedad posterior a la

---

[1] Junto a su solicitud anejó copia de los siguientes documentos: contrato de arrendamiento, la enmienda realizada en el 2018, facturas de los cánones de arrendamiento relacionadas a los meses de mayo, julio y agosto de 2019, certificación de pagos realizados a WPR por el Departamento de la Familia fechada 2 de septiembre de 2020, cheques emitidos a favor de WPR, Declaración Jurada de April Carol Niedda, contralora de WPR y correos electrónicos entre WPR y el Departamento.

fecha de vigencia del contrato. En suma, el Departamento requirió al TPI que dictara sentencia sumaria a su favor.[2] WPR se opuso a la antedicha moción oportunamente y reiteró sus argumentos previos.

Llegado a este punto, el 20 de mayo de 2021 el foro primario emitió el dictamen que hoy revisamos. Según adelantamos, el Tribunal decretó la legalidad de la cláusula cuadragésima segunda comprendida en la enmienda al contrato de arrendamiento que nos atañe. A su vez, denegó las solicitudes de sentencia sumaria presentadas por las partes. En lo pertinente, el TPI expresó lo siguiente:

> En este caso no cabe hablar de tácita reconducción sino de una voluntad manifiesta entre las partes contratantes de continuar con el arrendamiento mes a mes por la misma cantidad del canon acordado hasta que ocurran uno de dos supuestos. A saber, que el Departamento desaloje y entregue la propiedad, o hasta que se renueve el contrato.
>
> …
>
> Que no se haya incluido una fecha fija para la terminación de la relación contractual no invalida el acuerdo; máxime, cuando se dejó en manos del Estado desocupar el inmueble. Más bien, se trata en este caso de una especie de cláusula penal pactada en común acuerdo la cual tiene el efecto de responsabilizar pecuniariamente al Estado por su permanencia en un local privado. Para que un contrato con una entidad gubernamental sea válido tienen que concurrir unos requisitos y estos requisitos se cumplen en este caso.
>
> …
>
> De otro lado, el foro *a quo* determinó que el caso de autos presentaba una disputa real y sustancial sobre si el canon correspondiente al mes de mayo de 2019 fue pagado. Debido a lo anterior, concluyó que WPR deberá presentar prueba que este canon se le adeuda en un juicio plenario.

Inconforme, el 10 de junio de 2021 el Estado, en representación del Departamento de la Familia, solicitó reconsideración, a lo cual se opuso WPR oportunamente. Mediante

---

[2] Junto a su solicitud incluyó copia del contrato de arrendamiento y la enmienda realizada en el 2018.

*Resolución* dictada el 23 de julio de 2021, el TPI denegó la referida petición. Ante ello, el Departamento de la Familia, por conducto de la Oficina del Procurador General, acude ante este Foro y le señala al TPI la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al declarar No Ha Lugar a la Moción de Sentencia Sumaria presentada por la parte peticionaria habida cuenta de que la cláusula cuadragésima segunda de la Enmienda del Contrato de Arrendamiento no es válida, por lo que la parte recurrida no tiene derecho a recobrar deuda alguna por concepto de cánones de arrendamiento conforme a los principios mas básicos de contratación gubernamental que rigen en nuestro ordenamiento jurídico.

Con el beneficio de la comparecencia de la parte recurrida, procedemos a resolver.

II.

A.

El Artículo 1456 del Código Civil de Puerto Rico, 31 LPRA sec. 4063, dispone que cuando termina un contrato de arrendamiento y el arrendatario permanece disfrutando de la cosa arrendada por quince (15) días con aquiescencia del arrendador, hay tácita reconducción.[3] La tácita reconducción no supone una prórroga del contrato original, sino un contrato nuevo. *Dalmau v. Hernández Saldaña*, 103 DPR 487, 490 (1975). Esto es así porque, por disposición expresa de la ley, el arrendamiento cesa cuando vence su término, extinguiendo así el contrato original. *Cesani Vargas v. Tribunal Superior*, 92 DPR 239 (1965). No obstante, cuando concurren los requisitos de la tácita reconducción se renueva ese contrato. *Íd.* Del acuerdo tácito surge un nuevo contrato, cuyo término no es igual al estipulado en el acuerdo original, sino el que disponen los Arts. 1467 y 1471 del Código Civil, 31 LPRA secs. 4083 y 4092.

---

[3] Código Civil aplicable a los hechos del caso de autos.

Para que opere la tácita reconducción deben concurrir los siguientes requisitos: (1) que al terminar el contrato de arrendamiento permanezca el arrendatario disfrutando por 15 días de la cosa arrendada; (2) que lo haga con aquiescencia del arrendador y (3) que no haya precedido requerimiento, o sea, expresión hecha por cualquiera de las partes a la otra de su voluntad de dar por terminado el arrendamiento. *Dalmau v. Hernández Saldaña*, supra. Es decir, el arrendamiento termina *ipso facto* por la expiración del plazo, a menos que se produzca la tácita reconducción por la permanencia del arrendatario en el disfrute de la cosa con el consentimiento del arrendador. Ahora bien, como este consentimiento es presunto, se deriva de su silencio y tolerancia en el hecho de la posesión del arrendatario sobre la cosa objeto del contrato, se necesita algún acto que desvirtúe aquella presunción, y este acto es el requerimiento hecho al arrendatario para que dé el contrato por terminado. *León Parra v. Gerardino*, 58 DPR 489, 494-495 (1941).

De otra parte, la contratación gubernamental se considera un asunto revestido de alto interés público. Por tanto, los preceptos legales que la rigen aspiran a promover, no sólo una sana y recta administración pública, sino también a prevenir el despilfarro, la corrupción y el amiguismo. *Vicar Builders v. ELA*, 192 DPR 256, 263 (2015); *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 537 (2011); *CMI Hospital v. Depto. Salud*, 171 DPR 313, 320 (2007). Ante esta realidad, las normas que gobiernan la contratación entre entes privados y públicos son rigurosas y de aplicación restrictiva. *Vicar Builders v. ELA*, supra. La eficacia de este tipo de contrato se determina a base de estatutos especiales que lo regulan, y no según las teorías generales de contratos. *ALCO Corp. v. Mun. de Toa Alta*, supra, pág. 537, citando a *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 1000 (2009).

Con miras a lograr la sana administración de los fondos públicos existe legislación para establecer un control sobre su desembolso y sobre la contratación gubernamental. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448 (2014). A tales efectos, la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como *Ley de Contabilidad del Gobierno de Puerto Rico*, 3 LPRA sec. 283a, establece como política pública mantener un "control previo de todas las operaciones del gobierno"; que la contabilidad del Gobierno de Puerto Rico "constituya un control efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno"; y que "los gastos del gobierno se hagan dentro de un marco de utilidad y austeridad".

Cónsono con lo antes expuesto, la jurisprudencia ha establecido ciertas exigencias de forma que son indispensables para que el negocio jurídico en el que comparezca el Gobierno sea válido y exigible; a saber: (1) reducir el contrato a escrito; (2) mantener un registro para establecer su existencia; (3) enviar copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar la certeza de tiempo, a saber, que el contrato se realizó y otorgó quince (15) días antes. Estos requerimientos pretenden servir como mecanismo de cotejo para perpetuar el negocio jurídico, así como para evitar pagos y reclamaciones fraudulentas. *Vicar Builders v. ELA*, supra, pág. 264; *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 54 (1988). Una vez satisfechos los requisitos mencionados, los contratos serán válidos, exigibles y gozarán de la publicidad que requiere nuestro ordenamiento para la sana administración de la política pública en cuanto a la contratación gubernamental respecta. *ALCO Corp. v. Mun. de Toa Alta*, supra, pág. 538, citando a *Johnson & Johnson v. Mun. de San Juan,* 172 DPR 840, 853 (2007).

Sin embargo, en *Vicar Builders v. ELA*, supra, pág. 267, el Tribunal Supremo dejó establecido que la ley y razones poderosas

de política pública imposibilitan que aplique la figura de la tácita reconducción en la contratación gubernamental. Conforme a ello, el máximo Foro concluyó que la naturaleza de la tácita reconducción no es compatible con las leyes ni con la jurisprudencia que regulan la contratación gubernamental. Explicó que cuando opera dicha figura surge un contrato nuevo mediante un acuerdo tácito entre las partes que emana del comportamiento del arrendador y el arrendatario. Véase, *Dalmau v. Hernández Saldaña*, supra. A tales efectos, puntualizó que un contrato en el que el Estado es parte no puede surgir de un acuerdo tácito ni de las actuaciones de las partes. *Vicar Builders v. ELA*, supra.

Asimismo, el Tribunal Supremo expresó en *Vicar Builders v. ELA*, supra, págs. 267-268:

> De ahí surge la incompatibilidad de ambas figuras jurídicas. Si existe un contrato gubernamental por escrito, no cabe hablar de tácita reconducción. De igual forma, si están presentes los requisitos de la tácita reconducción no existe un contrato escrito que cumpla con las exigencias requeridas para vincular al Estado. Es decir, surgiría un contrato nuevo que no está por escrito, que no está registrado y que no se envió a la Oficina del Contralor.
>
> Las exigencias estatutarias que excluyen la aplicación de la figura de la tácita reconducción son insubsanables. Se podría argüir que el nuevo contrato que surge tácitamente puede reducirse a escrito posteriormente y enviarse a la Oficina del Contralor, en cumplimiento con sus exigencias. Sin embargo, en ese caso estaríamos permitiendo una práctica que este Tribunal ha invalidado anteriormente -la contratación retroactiva con el gobierno-. Véase *ALCO Corp. v. Mun. de Toa Alta*, supra. Es decir, una parte estaría disfrutando de una cosa arrendada por un tiempo sin que exista una relación contractual válida y exigible. Si las partes decidiesen reducir a escrito el acuerdo que nace con la tácita reconducción, el efecto vinculante surgiría luego de que una parte haya obtenido un beneficio o disfrutado de la cosa arrendada. Si permitimos ese supuesto, estaríamos avalando un contrato que recoge una obligación anterior bajo la cual ya las partes han hecho prestaciones. Eso es precisamente lo que este Tribunal ha prohibido anteriormente.
>
> La aplicación de la figura de la tácita reconducción concedería al Estado una vía para evadir el cumplimiento con los requisitos impuestos en los

estatutos citados y que este Tribunal ha reconocido como necesarios para que un contrato gubernamental tenga eficacia jurídica. Estaríamos abriéndole la puerta al Estado para renovar contratos tácitamente que, por falta de publicidad, no puedan ser fiscalizados por terceros y distorsionen la realidad contenida en los registros de contratos. No podemos apoyar la aplicación de esa figura cuando su efecto sería reducir la transparencia de los negocios que involucren al gobierno y dar paso a que el gobierno otorgue contratos por un término mayor al que se expresó en el contrato escrito. Eso es precisamente lo que las leyes en cuestión pretenden erradicar.

Bajo esa misma línea, el Tribunal Supremo instituyó que resulta nula una extensión tácita de la vigencia de un acuerdo de arrendamiento con el Estado. Véase, *Fernández & Gutiérrez v. Mun. de San Juan*, supra. Por tanto, es menester que las partes que contratan con entidades gubernamentales se ajusten a las exigencias de las leyes aplicables. *CMI Hospital v. Depto. Salud*, supra, pág. 321.

Así, para evadir circunstancias irregulares en las que el Estado pueda lucrarse injustificadamente, las partes deberán ser minuciosas al otorgar sus contratos. *Vicar Builders v. ELA*, supra. Es decir, el desarrollo de las cláusulas del convenio será determinante al decidir qué procede cuando vence un contrato de arrendamiento otorgado con el gobierno. Solo así podrá subsanarse cualquier situación que pueda poner en desventaja a una parte privada ante el Estado. *Íd.* Debido a lo anterior, el Tribunal Supremo expresó que es esencial pactar de antemano en el contrato: (1) en qué condiciones se extendería el arrendamiento; (2) por cuánto tiempo adicional; (3) cuál será el canon por pagar; y (4) cláusulas penales para evitar que una parte se vea afectada ante el incumplimiento de la otra. *Vicar Builders v. ELA*, supra, pág. 270.

B.

Por otro lado, se ha definido una cláusula penal como "una convención accesoria a una obligación principal mediante la cual se promete realizar una prestación, generalmente pecuniaria, para el

caso en que una de las partes no cumpla o cumpla mal o irregularmente lo prometido". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 175 (2011), citando a J.R. Vélez Torres, *Derecho de Obligaciones*, 2da ed., San Juan, Programa de Educación Jurídica Continua de la Facultad de Derecho de la U.I.A., 1997, pág. 299. Su función es: (1) asegurar el cumplimiento de una obligación y (2) evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento de la obligación. R.*C. Leasing Corp. v. Williams Int. Ltd.,* 103 DPR 163 (1974).

No es necesario alegar daños bajo una cláusula penal. *Clausells v. Salas*, 51 DPR 89-95 (1937). Es decir, cuando se pacta este tipo de cláusula no es necesario probar los daños que sufrió el acreedor por el incumplimiento de la obligación. *C.M. & Finance Corp. v. Cooley*, 103 DPR 6, 9-10 (1974). "En las obligaciones con cláusula penal la pena substituirá la indemnización de daños y el abono de intereses en caso de falta de cumplimiento, no siempre su fin es la liquidación anticipada de los daños. Tiene una función punitiva de violación del deber jurídico que da a la cláusula su otro nombre de pena convencional y que, rebasando el motivo de lucro en la obligación ordinaria, introduce un elemento de coerción y amenaza que apremia al deudor al cumplimiento." *Jack's Beach Resort, Inc. v. Cia. Turismo*, 112 DPR 344, 349 (1982).

III.

En su escrito, el peticionario alega que el TPI se equivocó al emitir su dictamen y determinar que la recurrida tiene derecho a recobrar una deuda por concepto de cánones de arrendamiento. Entiende que la cláusula cuadragésima segunda del contrato de alquiler en cuestión resulta inoperante contra el Gobierno, por ser contraria a los postulados que rigen este tipo de contratación. Le asiste la razón.

En este caso, el 1 de marzo de 2014 las partes suscribieron un contrato de arrendamiento válido que satisfizo todos los requisitos aplicables a los contratos gubernamentales. Es decir, el convenio constó por escrito, se registró y se remitió copia a la Oficina del Contralor. La fecha de vencimiento era el 28 de febrero de 2019. Sin embargo, el 7 de agosto de 2018 las partes enmendaron el acuerdo para incluir la cláusula bajo nuestra consideración, mediante la cual, si el peticionario continuaba ocupando la propiedad luego del 28 de febrero de 2019, se obligaba a pagar de mes a mes la cantidad pactada hasta que: (1) se renovara el contrato o (2) entregara la llave y desalojara la propiedad. La referida enmienda también constó por escrito y fue igualmente registrada en la Oficina del Contralor dentro del término dispuesto en ley.

Al respecto, el peticionario aduce que un análisis exhaustivo de su texto repercute en efectos perjudiciales a la contratación gubernamental porque tiene los mismos efectos que la aplicación de la doctrina de la tácita reconducción. El TPI concluyó que no cabía hablar de la aludida doctrina, sino de una voluntad manifiesta de las partes contratantes de continuar con el arrendamiento mes a mes por la misma cantidad del canon acordado hasta que ocurrieran uno de los dos supuestos mencionados. Por su parte, la recurrida está de acuerdo con lo resuelto por el foro primario, pues considera que la cláusula concernida incluida en la enmienda cumple con todos los requisitos de ley relativos a la contratación gubernamental. En específico, destaca que la enmienda dejó inalterado el resto de los términos del contrato, todo sujeto a la disponibilidad de fondos. Particulariza que el monto total de los cánones mensuales bajo el acuerdo, incluyendo aquellos atribuibles al periodo de seis (6) meses cubiertos por la enmienda, fue menor al originalmente presupuestado.

Luego de un ponderado examen de las circunstancias del caso de autos, junto a los escritos de ambas partes, colegimos que la cláusula cuadragésima segunda es inválida. Nos explicamos.

Ciertamente, podría interpretarse que el texto literal de la cláusula cumple con los rigores legales aplicables. Sin embargo, debemos tener presente que cuando se contrata con el Gobierno, la interpretación de dicha disposición debe ser de forma restrictiva. Recordemos que estos casos están revestidos del más alto interés público.

Así, analizado el contenido de la cláusula cuadragésima segunda, notamos que esta pretendió activar una modalidad de reconducción, toda vez que extendió de mes a mes el término del contrato de arrendamiento hasta que ocurriera algunos de los supuestos allí sugeridos. Entendemos que esa práctica crea incertidumbre, la cual no es compatible en asuntos en los que sea parte el Gobierno, particularmente en cuanto a la disponibilidad de los fondos públicos necesarios para el pago de los subsiguientes cánones.

Conforme explicó el Tribunal Supremo en *Vicar Builder v. ELA*, supra, es claro que en la presente causa las partes no fueron meticulosas al momento de introducir la enmienda en cuestión, de modo que atendiera cualquier situación en la que una parte incumpliera lo pactado. Característicamente, porque una de las partes contratantes es el Gobierno. Ante ello, somos del criterio que su lenguaje adolece de vaguedad e incumple con lo requerido por nuestro ordenamiento jurídico. Distinto hubiera sido si el referido artículo tuviera una fecha exacta de inicio y fin del acuerdo y no meramente dejarlo en renovarse "mes a mes", atribuyéndole al peticionario el momento de su fin.

Por otro lado, tampoco nos parece que la cláusula concernida contiene los elementos de una cláusula penal. Si bien la existencia

de una cláusula de esa naturaleza no dependerá de la calificación de las partes contratantes, sino de la auténtica función que el pacto entrañe,[4] entendemos que erró el foro primario al así acogerla, y concluir que esta tenía el efecto de responsabilizar monetariamente al peticionario por su permanencia en un local privado tras haber perdido vigencia el contrato.

De conformidad con lo expuesto, y con el objetivo de evitar un fracaso de la justicia, procede expedir el auto de *certiorari* solicitado y revocar la decisión recurrida.[5]

IV.

Por los fundamentos expuestos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La juez Barresi Ramos concurre con el resultado sin opinión escrita.

                              Lcda. Lilia M. Oquendo Solís
                              Secretaria del Tribunal de Apelaciones

---

[4] *Jack's Beach Resort, Inc. v. Cía. Turismo*, supra, pág. 349.

[5] Como se sabe, el recurso de *certiorari* es uno de carácter discrecional. La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478 (2019). Nuestra decisión en cuanto a su expedición está sujeta a la consideración de los siguientes criterios:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; *García v. Padró*, 165 DPR 324, 334 (2005).