**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA DE SAN JUAN**

| | |
|---|---|
| **RAFAEL SUAREZ DURAND**<br>**Demandantes**<br>**Vs.** | **CIVIL NUM.  K PE2005-2001**<br>**(801)** |
| **GUARDIA NACIONAL DE**<br>**PUERTO RICO y/o ESTADO**<br>**LIBRE ASOCIADO DE PUERTO**<br>**RICO**<br>**Demandados** | **SOBRE:**<br>**DESPIDO ILEGAL;**<br>**DAÑOS Y PERJUICIOS** |

## MOCION EN CUMPLIMIENTO DE ORDEN

**AL HONORABLE TRIBUNAL:**

Comparece el Estado Libre Asociado de Puerto Rico, por conducto de la representación legal que suscribe y muy respetuosamente ante este Honorable Tribunal EXPONE, ALEGA y SOLICITA:

1- Que en el caso de epígrafe, y luego de moción de la parte demandante, éste Honorable Tribunal ordena a la parte que aquí comparece, exponer su posición sobre la oferta de plan de pago del remanente de la Sentencia emitida.

2- Que con el propósito de cumplir con dicha Orden, la parte que aquí comparece informa al respecto.

3- Tal y como se le comunicó al abogado de la parte demandante, la evaluación inicial de su plan de pago, está a cargo de la Guardia Nacional de Puerto Rico.

4- Con respecto a ese procedimiento, el abogado que aquí suscribe ha estado en comunicación con la Lcda. Silvia M. Aponte Arroyo, Abogada de la División Legal de la GNPR.

5- Producto de ello, la GNPR ha realizado un análisis de la propuesta de Plan de Pago de la parte demandante y ha realizado las siguientes correcciones y modificaciones:

- El interés prevaleciente del remanente de la Sentencia fue identificado erróneamente por la parte demandante como del 6% de interés anual

cuando (y por Sentencia de éste Honorable Tribunal) dicho calculo fue corregido a 2% de interés anual.

- Haciéndose los descuentos de los pagos de la indemnización por daños y sus respectivos honorarios que ya la parte que aquí comparece consignó, a la fecha de hoy, queda por satisfacer la cuantía de **$330,276.58 por concepto de salarios dejados de percibir hasta la fecha de re-instalación e intereses y $34,069.68 por concepto de honorarios de abogados e intereses para un total de $364,346.26 (Véase Anejo I).**

- Contrario a lo planteado por la parte demandante, y por disposiciones de la Ley de Sustentabilidad Fiscal de 2014, y por ser mayor de $100,000.00, pero menor de $1,000,000.00 , el remanente de la Sentencia solamente puede ser colocado en un plan de pago desde 3 años y un día hasta 4 años y no de 10 años como plantea la parte demandante.

6- Con esas modificaciones realizadas, la Guardia Nacional de Puerto Rico, estaría en principio dispuesta a adoptar un Plan de Pago mediando el aval del mismo por la Oficina de Gerencia y Presupuesto.

7- Se acompañan en Anejo, certificaciones de la Guardia Nacional de Puerto Rico que establecen que a la fecha de hoy, la GNPR no cuenta con los fondos necesarios para satisfacer la sentencia (Véase Anejos 2 y 3).

8- La Guardia Nacional de Puerto Rico continuará en gestiones de obtener el aval de la Oficina de Gerencia y Presupuesto y/o de cualquier otra entidad que por Ley se requiera para la aprobación de la asignación de fondos necesarios para el pago del remanente de la Sentencia.

**POR TODO LO CUAL** se solicita respetuosamente a este Honorable Tribunal que acoja la moción aquí presentada y en consecuencia, declare cumplida su Orden notificada el día 19 de octubre de 201 , además de cualquier otra disposición que en Derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

**CERTIFICO:** Que en el día de hoy se ha enviado copia fiel y exacta del presente escrito al **LCDO. HECTOR L. CLAUDIO** a su dirección de correo electrónico

bufetehectorclaudio@gmail.com

En San Juan, Puerto Rico, a  28 de octubre de 2016.

**HON. CESAR MIRANDA RODRIGUEZ**
**Secretario de Justicia**

**LCDA. MARTA ELISA GONZALEZ Y.**
**Secretaria Auxiliar de lo Civil**

**LCDA. WANDA RAICES ROMAN**
**Directora de Asuntos Legales**
**División de Asuntos Civiles – Daños y Perjuicios**

**LCDO. JUAN A. BARRIOS MOLINA**
**TS: 12828**
**Departamento de Justicia**
**Secretaría Auxiliar de lo Civil**
**División de Asuntos Civiles – Daños y Perjuicios**
**PO Box 9020192**
**San Juan, Puerto Rico 00902-0192**
**Tel: (787)721-2900, Ext. 2569 2520**
**Fax: (787)722-1595**
**E-mail: jubarrios@justicia.pr.gov**

RAFAEL SUAREZ DURAN
KDP 2005-2001

| SALARIO DIARIO | DEMANDA | | TOTAL SALARIO | TOTAL DOBLE PRINCIPAL | | INTERESES | | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SALARIO A RAZON DE $ 3,333.00 | | | | DOBLE | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | | |
| | 2008 | 2009 | 2010 | | | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | | |
| TOTAL | 3M | 12M | 4M | SALARIO | PRINCIPAL | 3M | 3M | | | | | | | 10M | | |
| $ 97,086.00 | $6,939.00 | $27,591.00 | $5,312.00 | $44,127.00 | $204,262.00 | $ 2,431.14 | $ 5,692.52 | $ 5,692.52 | $ 5,692.52 | $ 5,692.52 | $ 5,692.52 | $ 5,692.52 | $ 3,692.52 | $ 4,743.80 | | $ 45,014.58 |
| | | | | | | | | | | | | | | | | $204,262.00 |
| | | | | | | | | | | | | | | | | $330,276.58 |

HONORARIOS

| **SUMA BASICA CONTERDIARIA | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 167,313.00 | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | | |
| X 2% | | | | | | | | | 10M | | |
| $ 3,346.26 | | | | | | | | | | | $ 29,328.25 |
| -12,300 | | | | | | | | | | | $ 4,741.43 |
| PAGO POR EL ESTADO | | | | | | | | | $ 488.80 | | $ 34,069.68 |
| $ 29,328.25 | $ 146.64 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | | | |

| TOTAL A OCTUBRE 31, 2016 | $ | 330,276.58 |
|---|---|---|
| DEMANDANTE | $ | 34,069.68 |
| ABOGADO | $ | |
| TOTAL | $ | 364,346.26 |

004

2

EN EL TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| RAFAEL SUÁREZ DURAND **DEMANDANTE** | CIVIL NÚM.:K PE05-2001 |
| v. | SALA : 801 |
| GUARDIA NACIONAL DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO **DEMANDADOS** | SOBRE: DESPIDO INJUSTIFICADO |

# RESOLUCIÓN
# Y ORDEN

## I

El 21 de noviembre de 2008, se dictó Sentencia en el caso de epígrafe a favor del demandante Rafael Suárez Durand (en adelante el demandante); y se ordenó a la Guardia Nacional de Puerto Rico (la parte demandada) satisfacer las sumas de: $25,000.00 por concepto de angustias mentales; $97,986.00, por los salarios dejados de percibir; una suma equivalente al doble de las cuantías antes relacionadas; una suma equivalente al 25% de todas las sumas concedidas, por concepto de honorarios de abogado; e intereses a razón del 2% sobre las cantidades otorgadas a favor del demandante.

El 21 de mayo y 3 de junio de 2009, se ordenó a la Guardia Nacional satisfacer el pago total de la Sentencia. El 3 de agosto de 2009, tras una solicitud de desacato de la parte demandante, se concedió a la demandada un término de 30 días para satisfacer la totalidad de la Sentencia. El 30 de noviembre de 2009, tras la consignación de fondos por parte del Estado Libre Asociado de Puerto Rico, se ordenó el desembolso de los mismos a favor de la parte demandante y lo consignado fue considerado como una satisfacción parcial. El 14 de diciembre de 2009, se ordenó a la Guardia Nacional que mostrara causa para no dictar una orden de desacato en su contra por el incumplimiento total de la sentencia. El 28 de junio de 2010, la parte demandante declaró en moción en

005

2.

cumplimiento de orden, que la deuda a su favor asciende $284,626.00, a favor del señor Suárez Durand y $29,328.25, en honorarios a favor de su abogado.

El 8 de febrero de 2011, se dictó Orden dirigida a la Guardia Nacional para que incluyera en el presupuesto del próximo año fiscal una partida de $284,626.00, a favor del señor Suárez Durand y $29,328.25, por concepto de honorarios de abogado. El 17 de marzo de 2011, reconsideramos la antes citada orden y se ordenó a la Guardia Nacional incluir para el próximo presupuesto de la Agencia una partida para satisfacer la suma neta, más el porcentaje considerado en la Sentencia por concepto de honorarios de abogado, y los intereses devengados hasta el momento de realizarse el pago.

El 15 de febrero de 2012, se ordenó nuevamente a la Guardia Nacional que incluyera en el próximo presupuesto de la Agencia una partida para satisfacer la suma neta, producto de todas las deducciones consideradas por ley, de la partida adeudada a la parte demandante; más el porcentaje correspondiente a honorarios de abogado; y, una partida para el pago de los intereses devengados hasta el momento de realizarse el pago.

El 16 de julio de 2013, se celebró una vista evidenciaria en donde se discutieron los motivos por los que la partida de fondos correspondiente al cumplimiento de la Sentencia de epígrafe no fue incluida en el Presupuesto del año fiscal 2013-2014 de la Guardia Nacional de Puerto Rico. La parte demandada presentó el testimonio del Coronel Retirado Carmelo Crespo Cabán, Oficial Ejecutivo de Asuntos Estatales de la Guardia Nacional, y de la señora Josefa Burgos Reyes, Directora de Asuntos de Finanzas de la Guardia Nacional. Ambos testigos coincidieron en que la partida adeudada al demandante fue incluida en el formulario de petición de fondos que debe ser presentado anualmente ante la Oficina de Gerencia y Presupuesto (OGP). No obstante, la OGP no incluyó la partida adeudada en el caso de autos en el Memorial Explicativo que finalmente se presentó ante la Legislatura para la aprobación del Presupuesto 2013-2014. De acuerdo con el Coronel Crespo Cabán, la OGP no incluyó la partida adeudada al demandante en el Memorial Explicativo porque no había dinero para satisfacer la Sentencia. Asimismo, según la testigo

3

4

Burgos Reyes, el presupuesto recomendado a OGP incluía esta Sentencia, pero en el Memorial Explicativo aprobado por la OGP, no.

## II

El Artículo 7 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. sec. 3077a, conocida como la "Ley de Reclamaciones y Demandas contra el Estado", dispone lo siguiente respecto al pago de deudas por sentencias dictadas en contra del Estado:

> "El Estado satisfará prontamente cualquier fallo en su contra hasta el máximo señalado en la sec. 3077 de este título. Si se tratase del pago de una suma de dinero y no fuere posible hacerlo por no existir fondos en el presupuesto corriente, se hará la correspondiente asignación de fondos para su pago en la parte del presupuesto general de gastos del siguiente año del departamento o agencia correspondiente."

En Librotex, Inc. v. A.A.A., 138 D.P.R. 938, 942-943 (1995), el Tribunal Supremo de Puerto Rico expresó que el embargo de fondos públicos no procede como mecanismo para hacer que una agencia cumpla con una orden judicial.  No obstante, sí es viable ordenar a la agencia que incluya la partida adeudada en su próximo presupuesto, más los intereses devengados hasta el momento en que se realice su pago. En el citado caso, la Autoridad de Acueductos y Alcantarillados (AAA) había incumplido con una sentencia que superaba los dos millones de dólares. Fue tomado conocimiento judicial de la crisis que atravesaba la corporación pública como consecuencia de múltiples factores, entre ellos la sequía que afectaba al país desde hacía un año. Librotex v. A.A.A., supra, a la pág. 942. En consideración a tales hechos, el Tribunal Supremo declinó ordenar el embargo de los bienes del Estado para dar cumplimiento a la Sentencia y manifestó que "las consecuencias extraordinarias que el embargo tendría sobre dicha entidad requiere que reconozcamos esta protección". Id., a la pág. 942.

En el caso que nos ocupa, el Tribunal ha emitido varias órdenes para que la demandada Guardia Nacional cumpla y satisfaga la totalidad de la Sentencia  a favor del demandante Suárez Durand. Se le ha ordenado, a

4

*5*

su vez, que incluya una partida en el Presupuesto Anual de la Agencia para que cumpla con la Sentencia dictada en su contra. No obstante, la misma aún no ha sido satisfecha. Según se desprende de la prueba presentada por la parte demandada durante la vista de 16 de julio de 2013, la Guardia Nacional sí incluyó el dinero adeudado a favor del demandante en la petición de fondos dirigida a la OGP. Sin embargo, la OGP excluyó la partida por la alegada insuficiencia de fondos; y no la incluyó en el Memorial Explicativo que finalmente fue sometido ante la Legislatura para la aprobación del Presupuesto del Año Fiscal 2013-2014.

Conforme con los hechos particulares de este caso, resolvemos que procede incluir nuevamente la partida adeudada, según la Sentencia dictada en el caso de epígrafe, en la petición de fondos para el Presupuesto del Año Fiscal 2014-2015 de la Guardia Nacional de Puerto Rico. Asimismo, procede ordenar a la Oficina de Gerencia y Presupuesto que incluya la referida partida de fondos en el Memorial Explicativo que será dirigido a la Legislatura para la aprobación del Presupuesto del Año Fiscal 2014-2015.

## III

Por los fundamentos antes expuestos, dictamos la siguiente:

# ORDEN

Se ordena a la demandada Guardia Nacional de Puerto Rico incluir en el próximo presupuesto de la Agencia: una partida para satisfacer la suma neta, producto de todas las deducciones consideradas por ley, de la partida adeudada a la parte demandante de epígrafe por concepto de salarios dejados de percibir, según sentencia dictada a su favor; más el porcentaje considerado en la misma sentencia por concepto de honorarios de abogado, calculado el mismo sobre el monto neto de los salarios dejados de percibir. También deberá incluirse una partida para el pago de los intereses devengados hasta el momento de realizarse el pago.

Se ordena a la Oficina de Gerencia y Presupuesto incluir la partida de fondos para satisfacer la Sentencia a favor del demandante, según solicitada por la Guardia Nacional en la petición de fondos, en el Memorial

008

5

Explicativo que será presentado ante la Legislatura para la aprobación del Presupuesto del Año Fiscal 2014-2015 de la Guardia Nacional de Puerto Rico.

Copia de la presente deberá ser diligenciada por la parte demandante en la Oficina de Gerencia y Presupuesto, a tenor con las Reglas de Procedimiento Civil.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, a 30 de octubre de 2013.

OLGA GARCÍA VINCENTY
JUEZ SUPERIOR

009

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

*25*

| | |
|---|---|
| **RAFAEL SUAREZ DURAND** | CIVIL NÚM.: K PE2005-2001 |
| Demandante | (801) |
| v. | SOBRE: |
| **GUARDIA NACIONAL DE PUERTO RICO y/o ESTADO LIBRE ASOCIADO DE PUERTO RICO** | DESPIDO ILEGAL |
| Demandados | |

## SENTENCIA

El demandante Rafael Suarez Durand radicó la presente demanda contra la Guardia Nacional de Puerto Rico el 9 de junio de 2005; siendo la misma la enmendada el 4 de abril de 2008. Se alega en la demanda enmendada, que el demandante fue despedido en represalia por haber prevalecido en una reclamación de salarios contra la Guardia Nacional y por problemas de salud.

La querellada presentó alegación responsiva negando las alegaciones sobre sus actuaciones. Levantó como defensas afirmativas que no existe relación causal entre los daños y las actuaciones de la agencia; prescripción; que las sumas reclamadas son exageradas; que los daños fueron causados por otra entidad; que aplicaban las disposiciones de la Ley de Pleitos Contra el Estado y que el demandante no agotó remedios administrativos. Ningún otro hecho o defensa afirmativa fue alegada por la Guardia Nacional. La agencia nunca presentó alegación afirmativa contra la demanda enmendada.

De esta forma quedó trabada la controversia entre las partes, y luego de agotado el descubrimiento de prueba, se celebró vista en su fondo el 24

1

de septiembre de 2008. A la vista compareció el demandante asistido por el

licenciado Héctor L. Claudio Rosario. En representación de la Guardia

Nacional compareció el licenciado Juan A. Barrios Molina.

*26*

Declararon por la parte demandante el Sr. Rafael Suarez Durand. Por

la parte demandada testificó el Sr. Angel L. Miranda Ortíz.

Evaluada la totalidad de la prueba ventilada durante el juicio, y

considerando el crédito que esta le merece, el Tribunal formula las

siguientes:

## DETERMINACIONES DE HECHOS

El demandante Rafael Suarez Durand (en adelante Suarez), comenzó a

trabajar con la Guardia Nacional el 2 de marzo de 1981. Se desempeñaba

como policía militar estatal I, empleado civil. Trabajaba bajo la supervisión

del Sr. Raúl Vázquez.

Suarez trabajaba en tres (3) turnos rotativos distintos. Uno de 6:00am

a 2:00pm, otro de 2:00pm a las 10:00pm y otro de 10:00 a 6:00am. El

devengaba un salario de $2,333.00 mensuales.

La relación de empleo de Suarez con su patrono fue buena hasta que

prevaleció en una reclamación de salarios contra la Guardia Nacional en o

alrededor del mes de noviembre de 2000. La prueba no controvertida

establece que el trato de los gerenciales de la agencia hacía Suarez cambió a

partir de esa fecha. Las relaciones se enfriaron. Ya no lo saludaban, lo

miraban serio. Además Suarez, quien nunca había sido amonestado previó a

que prevaleciera en su reclamación de salarios, comenzó a ser objeto de

amonestaciones falsas y sanciones desproporcionales con las sanciones que

imponía el Manual de empleados de la agencia.

La primera acción disciplinaria contra el demandante fue por hechos

alegadamente ocurridos el 14 de agosto de 2001. Se le imputaba a Suarez

haber abandonado su área de trabajo y haber descuidado su arma de fuego.

2

*27*

La investigación estuvo inicialmente a cargo del mayor Lucas Velázquez, quien luego de terminar su investigación, concluyó que no existía base suficiente para una formulación de cargos contra Suarez. Suarez declaró que el informe de investigación del mayor Lucas confirmaba su declaración de que las imputaciones eran falsas.

No empece a lo anterior, la Guardia Nacional ordenó una nueva investigación. Esta vez le asignó la investigación al supervisor Angel L. Miranda Ortiz (en adelante "Miranda").

El Sr. Miranda fue parco y/o vago al testificar durante el juicio sobre los cargos imputados a Suárez por los hechos alegadamente ocurridos el 14 de agosto de 2001. No tenía conocimiento personal sobre los hechos. Solo testificó en su directo que trabajo la investigación para septiembre de 2002 y que refirió su informe para que tomaran las acciones disciplinarias pertinentes. Nada declaró en su directo sobre los hechos revelados por su investigación, las personas entrevistadas y/o documentos revisados. No pasó prueba sobre los hechos que reveló su investigación.

Es durante el contrainterrogatorio que Miranda admite que la investigación se realizó porque el Sargento José R. Caraballo (en adelante Caraballo) alegó que el 14 de agosto de 2001 fue a la caseta de seguridad a la que estaba asignado Suarez y no lo encontró presente en la caseta. Además, Caraballo alegó que encontró un arma y una gorra descuidada en la caseta de seguridad.

Miranda admite que las normas de la Guardia Nacional requieren que Caraballo anotara ese alegado incidente en un libro de novedades. Sin embargo, Miranda admite Caraballo no había realizado anotación alguna en el libro de novedades. Nada anotó en el libro de novedades sobre el alegado abandono de puesto y descuido de arma. Miranda admitió que la conducta de Caraballo no fue correcta.

Con el testimonio de Miranda concluyó toda la prueba por parte de la *28*
Guardia Nacional. Con excepción del demandante, no hubo testigo alguno
que tuviera conocimiento personal de los hechos. No se presentó persona
alguna en sala que pudiera refutar las alegaciones del demandante de que los
cargos imputados eran falsos. Tampoco se presentó persona alguna en sala
que participara en la toma de decisión de disciplinar al demandante el 4 de
febrero de 2003. Miranda admitió que no participó en la decisión de
disciplinar al demandante y que estaba fuera de Puerto Rico cuando se tomó
la decisión.

El testimonio de Miranda crea sospechas sobre la credibilidad de los
cargos imputados porque no entró a discutir los detalles de su investigación.
El único testimonio que aportó en cuanto a los hechos de su investigación es
que la persona de acusó al demandante había actuado de manera incorrecta.
Su testimonio es aun más sospechoso porque la persona que realizó la
primera investigación, mayor Lucas, concluyó que no había razón para
disciplinar al demandante.

Lo injusto de la amonestación se demuestra por el hecho de que por
ese incidente suspendieron al demandante de empleo y sueldo por 30 días.
Ello a pesar de que el Manual de Empleados de la Guardia Nacional dispone
específicamente que el "abandonar los predios de vigilancia durante turnos
de trabajo, sin notificación y autorización del supervisor, y dejar de anotarlo
en el Libro de Novedades" conlleva una mera reprimenda escrita cuando
ocurre por primera vez. La prueba no controvertida establece que esta era la
primera vez que se disciplinaba al demandante en sus más de veinte (20)
años de trabajo.

La prueba no controvertida establece que el ambiente de trabajo del
demandante se agravó cuando desarrolló una condición en el estómago a

finales del año 2003. Suarez tenía el efíter del estómago cerrado y vomitaba todo lo que comía.

*29*

La Guardia Nacional tenía conocimiento de la condición de salud del demandante. Suarez declaró que sus jefes lo veían vomitando en los turnos diurnos y que comenzó a tener algunas ausencias para atender su condición.

El historial de ausencias del demandante era excelente previo a que desarrollara su condición estomacal. Suarez no se ausentaba a su empleo. El demandante presentó evidencia de que todos los años la Guardia Nacional le pagaba el exceso de los 90 días acumulados de enfermedad porque no se ausentaba por dicha razón.

Así las cosas, el 1 de marzo de 2004 la Guardia Nacional acusó falsamente al demandante de abandonar su trabajo. La agencia le imputó que había abandonado su puesto porque la persona que lo fue a sustituir, Sr. Carlos L. Buitrago, no lo vio cuando llegó a su turno a las 5:45am el 1 de marzo de 2004. Ese día el turno del demandante comenzaba a las 10:00pm del 29 de febrero y terminaba el 1 de marzo a las 6:00am.

El demandante demostró que tal imputación era falsa porque trabajó el 1 de marzo de 2004 hasta las 6:00 de la mañana. Demostró preponderantemente que era falso que el Sr. Carlos Buitrago lo fue a sustituir ese día a las 5:45am. Explicó que conforme al uso y costumbre entre las partes, su jefe, Raúl Vázquez, le hubiese notificado que Buitrago era su sustituto para que se lo informara por anticipado al cuartel general. Además, explicó que en la hoja de reporte de armerías de 1 de marzo de 2004 hubiese revelado que el Sr. Carlos Buitrago lo sustituyó en su puesto ese día. Aclaró que toda persona que trabajara el turno de seguridad tenía que anotarse en la hoja de reporte de armerías. La parte demandante presentó en evidencia la hoja de reporte de armerías del 1 de marzo de 2004. En dicha

11 f 014

hoja no aparece que Carlos Buitrago sustituyera al demandante en su turno ese día.

*30*

Cabe señalar que el demandante estaba libre ese día. Él Sr. Raúl Vázquez curiosamente le solicitó a Suarez que fuese a trabajar ese día como favor a otro compañero. El demandante hizo el favor y fue a trabajar. Suarez sostiene que su jefe Raul Vázquez y el Sr. Carlos Buitrago acordaron imputarle falsamente que no había trabajado hasta las 6:00am. Sostiene que Vázquez y Buitrago no estaban en la caseta de seguridad ese día a las 5:45am.

El demandante tuvo que someterse a una operación el 18 de febrero de 2005 para tratar su condición estomacal. La Guardia Nacional continuó su investigación administrativa y despidió al demandante a la semana de regresar de su operación, a saber; 17 de abril de 2005.

La Guardia Nacional **no presentó prueba** para justificar el despido del demandante. El único testigo de la Guardia Nacional, Sr. Angel L. Miranda Ortíz, no tenía conocimiento de los hechos relacionados con el despido del demandante. Tampoco trabajó en la investigación, si alguna. Las únicas personas que pudieran tener conocimiento de los hechos, Sres. Raúl Vázquez y Carlos Buitrago, no fueron anunciados como testigos.

Una vez más, la sanción que le impuso la Guardia Nacional se desvió de lo establecido en el Manual de Empleado. La Guardia Nacional lo despidió cuando el Manual de Empleados dispone que, de ser ciertas las alegaciones de la agencia, procedía una suspensión temporera de empleo y sueldo. No procede el despido como sanción por un alegado abandono de trabajo por segunda ocasión según las normas del patrono.

La única prueba relacionada con la terminación del demandante son sus alegaciones de que fue despedido en represalia por prevalecer en su reclamación salarial contra la agencia y sus problemas de salud. La

6

120
015

31

demandada no presentó prueba en contrario. La agencia se limitó a presentar las formulaciones de cargos contra el demandante por los alegados hechos de 14 de agosto de 2001 y 1 de marzo de 2004. Esos documentos, por sí solos, no constituye prueba de los hechos alegados. Solo demuestra que el demandante recibió esas formulaciones de cargos. La persona que preparó las formulaciones de cargo no fue presentada en el juicio, ni establece que la persona que preparó las formulaciones de cargos tuviese conocimiento de los hechos.

El demandante lució afectado y lloroso mientras declaraba sobre los daños que le ocasionó el despido. Suarez explicó como el despido le afecto sus nervios. Su autoestima bajo y lloraba cuando pensaba en el despido. Narró que el despido ocasionó que perdiera su derecho bajo el plan de retiro de los empleados de la Guardia Nacional.

## CONLUSIONES DE DERECHO

### A. Elementos de la causa de represalia en el empleo

La Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194 et seq., también conocida como la Ley de Represalias, se creó para proteger a los empleados contra cualquier medida de discriminatoria que pueda tomar un patrono contra éstos por ofrecer cualquier tipo de testimonio, expresión o información ante un foro legislativo, administrativo o judicial. **Ocasio v. Kelly Servs., Inc.**, 2005 T.S.P.R. 4, 2005 J.T.S. 9, 163 D.P.R. _ (2005). Entre las conductas vedadas al patrono se incluye: despedir, amenazar o discriminar al empleado con relación a los términos condiciones, compensación, ubicación, beneficios o privilegios del empleo. 29 L.P.R.A. sec. 194ª (a).

Cualquier empleado que alegue que su patrono incurrió en alguna de estas conductas podrá instar una acción civil dentro de tres años de la fecha en que ocurrió la violación y solicitar que se le compense por los daños

7

121

016

sufridos, las angustias mentales, la restitución en el empleo, los salarios

dejados de percibir, beneficios y honorarios de abogado. 29 L.P.R.A. sec. *32*

194ª (b). "La responsabilidad del patrono con relación a los daños y a los

salarios dejados de devengar será el doble de la cuantía que se determine

causó la violación a las disposiciones de dichas secciones." 29 L.P.R.A. sec.

194ª(b).

Para establecer un caso prima facie de represalia el empleado solo

tiene que establecer mediante prueba directa o indirecta: (1) que participó en

una de las actividades protegidas y (2) que subsiguientemente fue despedido

o amenazado o fue víctima de discrimen en el empleo. **Marín v. Fastening**

**Systems, Inc.,** 142 D.P.R. 499, 511 (1997). En **Irizarry v. J & J Cons.**

**Prod. Co, Inc.,** 150 D.P.R. 155, 170 (2000) el Tribunal Supremo concluyó

que acudir al Fondo de Seguro del Estado para acogerse a sus beneficios por

incapacidad ocupacional es una actividad protegida al amparo de la Ley de

Represalias. El demandante en este caso participó en actividad protegida al

prevalecer en una reclamación de salarios contra la Guardia Nacional.

La ley 115 crea una presunción juris tantum a favor del empleado que

el patrono deberá rebatir presentando evidencia de que tenía una razón

legítima y no discriminatoria para la conducta que el empleado alega

constituye la represalia. Si el patrono logra rebatir la presunción de conducta

violatoria, el empleado todavía puede prevalecer si establece que la alegada

razón del despido u otra conducta discriminatoria es un mero pretexto. Id.

Destacamos que las leyes laborales deben ser interpretadas

liberalmente, resolviendo toda duda a favor del obrero, para así cumplir con

sus propósitos eminentemente sociales y reparadores. *Irizarry v. J & J*

*Cons. Prod. Co., Inc.,* 150 D.P.R., a la pág. 154.

En el caso de autos el demandante presentó prueba contundente para

establecer el caso prima facie sobre el hecho específico del despido por

8

128

017

represalia. La prueba no refutada estableció que el demandante prevaleció en una reclamación de salarios contra la Guardia Nacional.

*33*

El demandante, quien nunca había sido amonestado, comenzó a ser objetos de acciones disciplinarias injustificadas después de haber prevalecido en su pleito contra la agencia. Ese hecho no fue refutado por la Guardia Nacional. Ésta última ni siquiera presentó prueba en el juicio para justificar el despido del demandante.

Por consiguiente, es forzoso concluir que el demandante estableció un caso prima facie de represalia en el empleo. El paso siguiente es determinar si el patrono pudo rebatir la presunción de represalia establecida por la ley.

El patrono no alegó en su contestación a la demanda que el despido fue justificado. Como mencionáramos anteriormente, tampoco presentó prueba para justificar el despido en el juicio. Su único testigo, Sr. Angel L. Miranda Ortíz no tiene conocimiento personal de los hechos que dieron lugar al despido. No se anunció o presentó testigo alguno para probar los hechos alegadamente ocurridos el 1 de marzo de 2004. Por el contrario, la prueba presentada en juicio demuestra que tales hechos no ocurrieron. La prueba del patrono no rebate la presunción de represalia establecida por la ley y la parte demandante. El testimonio del demandante tampoco fue refutado.

En este caso da la casualidad de que la Guardia Nacional comienza a disciplinar al demandante por primera vez, en más de veinte años, después de que el obrero prevaleciera en una reclamación salarial. Ese hecho, el testimonio no refutado del demandante y la ausencia de prueba de la Guardia Nacional para justificar el despido, hace forzoso concluir que el despido se realizó en represalia por el resultado de la reclamación salarial.

**B. Elementos de la causa bajo el Artículo 1802 del Código Civil**

En **Arroyo v. Rattan Specialties, Inc.,** 117 D.P.R. 35 (1986), el

*34*

Tribunal Supremo resolvió que todo trabajador u obrero puede acudir a los

tribunales para reclamar cualesquiera daños que se le hubieran ocasionado y

que sean atribuibles al patrono. De este modo, un obrero puede acudir a los

tribunales para solicitar el resarcimiento de los daños sufridos como

consecuencia de la lesión a sus derechos constitucionales, como lo son el

derecho a la intimidad y el derecho a la protección contra ataques a la honra

y a la reputación personal. Véanse además, **Acevedo v. Western Digital

Caribe, Inc.,** 140 D.P.R. 452 (1996); **Porto y Soriano v. Bentley P.R.,** Inc.,

132 D.P.R. 331 (1992).

En **S.L.G. v. Royal Bank de P.R.,** 145 D.P.R. 178 (1998), el Tribunal

Supremo dispuso lo siguiente:

"[Q]ueda claro que cuando un obrero contratado sin

tiempo determinado es despedido sin justa causa, y además, ha

sido objeto de actuaciones que lesionan su derecho a la

intimidad o que son

constitutivas de ataques a su integridad personal, puede

reclamar el pago de la compensación económica por concepto

de la mesada y puede, también, instar una acción para reclamar

los daños y perjuicios que dichas actuaciones le han causado.

**En tal caso la reclamación de daños se da en función de las

actuaciones antijurídicas independientes al hecho del

despido que resultan indemnizables al amparo de nuestro

ordenamiento jurídico.** Claro está, si luego de que el obrero

querellante presenta toda su prueba queda demostrado que tan

sólo hubo un despido injustificado y que no mediaron

actuaciones antijurídicas compensables bajo el artículo 1802 del

durante el tiempo en que transcurra luego del 30 de septiembre de 2008, sin

que la Guardia Nacional reinstale a Suarez;

**36**

d- una suma equivalente al 25% de todas las sumas básicas concedidas a Suarez (las ya establecidas y aquellas que se acumulen por razón de cualquier dilación en el cumplimiento de esta sentencia), por concepto de honorarios de abogado a ser pagados directamente al Lcdo. Héctor L. Claudio;

e- intereses a razón del 6.00% anual sobre las sumas indicadas a computarse desde hoy. Se le advierte a la Guardia Nacional, que de negarse a reinstalar a Suarez en su puesto, siendo dicha obligación una de "hacer", podría ser encontrado incurso en desacato y procesado como tal con las consecuencias legales que ello implica.

Se apercibe a la Guardia Nacional de cesar y desistir de toda práctica discriminatoria contra Suarez una vez éste sea reinstalado.

**REGISTRESE Y NOTIFIQUESE.**

**DADA** en San Juan, Puerto Rico, hoy 21 de noviembre de 2008.


CARMENCITA BURGOS PABÓN
JUEZA SUPERIOR


GRISELDA RODRIGUEZ COLLADO


1 2 6

12

020

**EXHIBIT D**


**204 DPR __ 2020TSPR29 Judith Berkan y otros v. Mead Johnson Nutrition Puerto Rico, Inc.**

Número del Caso: AC-2018-62  Fecha: 12 de marzo de 2020


Tribunal de Apelaciones:

    Región Judicial de San Juan- Caguas, Panel I


Abogadas de la parte peticionaria:

    Lcda. Judith Berkan
    Lcda. Mary Jo Méndez


Abogadas de la parte recurrida:

    Lcda. Magda Mariela Rexach-Rexach
    Lcda. Rosalie Irizarry Silvestrini


Materia: Derecho Laboral – Aplicación de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, (Ley Núm. 402), 32 LPRA sec. 3114 et seq., a reclamaciones extrajudiciales laborales. Se decreta la nulidad de las cláusulas contenidas en acuerdos de transacciones extrajudiciales laborales mediante las cuales un empleado renuncia al pago de los honorarios de abogado por ser una práctica contraria a la política pública que persigue la Ley Núm. 402.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 12 de marzo de 2020.

En este recurso se cuestiona la aplicación de la Ley Núm. 402 de 12 de mayo de 1950 (Ley Núm. 402), según enmendada, 32 LPRA sec. 3114 et al., a un acuerdo de separación y relevo general extrajudicial entre un empleado y su antiguo patrono, en ocasión de ser cesanteado.[1] Adelantamos que luego de examinar detenidamente los sucesos pertinentes, a la luz del derecho aplicable, resolvemos que la Ley Núm. 402 es aplicable a **reclamaciones extrajudiciales**. Como resultado de lo anterior, declaramos que en este tipo de acuerdo será nula toda cláusula mediante la cual el empleado cesanteado otorgue un relevo a favor del patrono sobre el pago de los honorarios de abogado, por ser esta práctica contraria a la política pública de la referida ley. Además, aclaramos cuál es el remedio que tienen los abogados ante una disputa sobre honorarios al amparo de esta disposición estatutaria.

I.

El Sr. Luis Ortiz Albino (señor Ortiz) estuvo empleado por Mead Johnson Nutrition Puerto Rico, Inc. (Mead o patrono) desde el 29 de enero de 1979 hasta el 10 de diciembre de 2012, fecha en que fue separado de su empleo por motivo de una reorganización mediante la cual se eliminó su plaza de la compañía. **Ese mismo día**, el patrono le entregó un *Borrador del acuerdo de separación y relevo general* (*Borrador del acuerdo*) [2]2 mediante el cual se le informó que era elegible para recibir un paquete de beneficios condicionado a que suscribiera el *Borrador del acuerdo*. Entre otras cosas, el *Borrador del acuerdo* otorgaba una compensación por separación de empleo, a cambio de su renuncia a posibles reclamaciones al amparo de leyes laborales estatales y federales en contra del patrono.

El 12 de diciembre de 2012, antes de firmar el *Borrador del acuerdo*, el señor Ortiz pactó un contrato de servicios profesionales con las Lcdas. Judith Berkan y Mary Jo Méndez (peticionarias o abogadas) quienes formaban parte del Bufete Berkan Méndez Law Offices.  Así pues, las peticionarias representaron al señor Ortiz frente al patrono durante las negociaciones concernientes al referido *Borrador del acuerdo* **desde diciembre de 2012 hasta marzo de 2013**. Como resultado de su intervención se realizaron varias modificaciones al *Borrador del acuerdo*.

En lo pertinente a este recurso, la versión final del *Acuerdo de separación y relevo general* (*Acuerdo final*) estableció que:

ACUERDO DE SEPARACIÓN Y RELEVO GENERAL

Definiciones. […]. Los términos específicos que usen en este Acuerdo tienen los siguientes significados:

.     .     .     .     .     .     .

F. Mis Reclamaciones quiere decir, excepto según específicamente excluidos en el último párrafo de esta sección luego del párrafo F.10 abajo, todos los derechos que tengo en estos momentos a cualquier tipo de remedio contra la Compañía, incluyendo, sin limitación alguna:

.     .     .     .     .     .     .

**9. todas mis reclamaciones por honorarios de abogado[], costas e intereses.**

.     .     .     .     .     .     .

**Acuerdo de Relevo sobre Mis Reclamaciones.** Voy a recibir un Beneficio de Separación de [Mead], si firmo el presente Acuerdo y, si tengo 40 años de edad o más para la fecha que firme este Acuerdo, no revoco, este Acuerdo, según provisto más adelante.  Entiendo y reconozco que no tendré derecho a recibir el Beneficio de Separación si no firmo este Acuerdo, o si tengo 40 años de edad o más para la fecha que firme este Acuerdo, y revoco a tiempo el mismo. A cambio del Beneficio por Separación y cualquier otra consideración descrita en este Acuerdo, **renuncio a todas Mis Reclamaciones hasta el límite máximo permitido por ley, y acepto cumplir con este Acuerdo en todas sus partes. No demandaré a la Compañía ni presentaré reclamación contra la Compañía por compensación o indemnización relacionada a Mis Reclamaciones. El Beneficio de Separación que estoy recibiendo es justa consideración por mis promesas en este Acuerdo y tiene la intención exclusiva de obtener un relevo completo.**

.     .     .     .     .     .     .

**Derecho a Consultar con un Abogado.** Entiendo y reconozco que según establecido por ley, por este medio he sido aconsejado por la Compañía a consultar con un abogado, antes de firmar este Acuerdo.

.     .     .     .     .     .     .

**Interpretación de este Acuerdo.** Este Acuerdo debe ser interpretado lo más ampliamente posible para lograr mi intención de resolver todas **Mis Reclamaciones** en contra de la Compañía, y de lo contrario cumplir con mis obligaciones bajo este Acuerdo. **Si un tribunal determina que este Acuerdo es inadecuado para renunciar a una reclamación en particular, comprendida dentro de Mis Reclamaciones, este Acuerdo permanecerá en efecto y será ejecutable con respecto a todo el resto de Mis Reclamaciones.**

**Separabilidad.** Acuerdo que, de un tribunal con jurisdicción determinar que alguna cláusula de este Acuerdo no es válida, las

> restantes cláusulas continuarán en pleno efecto y vigor […]. Estoy
> relevando voluntariamente Mis Reclamaciones en contra de la
> Compañía y aceptando mis otras obligaciones bajo este Acuerdo. Mi
> intención es que este Acuerdo sea legalmente vinculante.  (Énfasis
> nuestro). [3]3

La disposición relacionada con el relevo del pago de honorarios de abogado provocó una
controversia entre las partes durante las negociaciones, por lo que el patrono reiteró su
denegatoria al pago de honorarios.  No obstante, el **7 de marzo de 2013**, el señor Ortiz firmó el
*Acuerdo final*.  Por su parte, el **11 de marzo de 2013**, las peticionarias renunciaron expresamente
al pago de honorarios de abogado a través de una carta enviada a la representación legal de Mead
y expresaron que lo hacían para evitar incurrir en violaciones éticas frente a su cliente.

## A.  Demanda

Así las cosas, el 6 de febrero de 2014, las peticionarias presentaron una demanda sobre cobro de
honorarios de abogado en contra de Mead al amparo de la Ley Núm. 402.  Sostuvieron que, tras
lograr el *Acuerdo final* que satisfizo la reclamación extrajudicial del señor Ortiz, solicitaron el
pago de honorarios al patrono.  Sin embargo, éste rehusó hacer pago alguno y les indicó que
debían cobrar sus honorarios de la partida que se acordó pagarle al señor Ortiz en el *Acuerdo
final*.  Las abogadas adujeron que, debido a la prohibición de la Ley Núm. 402 sobre los pactos
de honorarios entre abogado y empleado o trabajador en los casos de reclamaciones laborales en
contra de patronos, Mead provocó un potencial conflicto de interés entre ellas y su cliente, pues
se vieron en la obligación de renunciar a sus honorarios ante la necesidad del cliente de recibir el
dinero acordado.  Véase Art. 1 de la Ley Núm. 402, *infra*.  En específico, las peticionarias
puntualizaron que su claudicación fue resultado de la coacción de Mead.  Señalaron además, que
su renuncia a los honorarios carecía de validez y no surtió efecto alguno por contravenir la
política pública de Puerto Rico en protección de los obreros.  A esos efectos, indicaron que "la
práctica de exigir renuncias del pago de honorarios en los casos laborales a cambio de la
transacción de la reclamación de los empleados es contraria a la política pública".  Conforme a lo
anterior, las abogadas solicitaron al Tribunal de Primera Instancia que declarara su renuncia nula
y ordenara a Mead a pagar una suma razonable por concepto de honorarios de abogado.

El 10 de marzo de 2014, Mead presentó una *Moción de desestimación* bajo la Regla 10.2 (5) y
(6) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 10.2, mediante la cual arguyó que la
demanda no estableció que Mead estuviese obligada a pagar los honorarios de abogado por lo
que las peticionarias no tenían derecho a remedio alguno.

En cuanto a la Ley Núm. 402, el patrono planteó que la representación legal se limitó a llevar a
cabo una negociación extrajudicial sobre el *Acuerdo final* por lo que no se configuró una
reclamación laboral que diera paso a la aplicación de las disposiciones de la Ley Núm. 402.  A
esos efectos, argumentó que los Artículos 1, 2 y 3 de la Ley Núm. 402, *infra*, se circunscriben a
la presentación de una **reclamación judicial** al amparo de la legislación laboral, lo cual nunca se
concretizó en este caso.

En cuanto al Artículo 2 de la Ley Núm. 402, *infra*, sostuvo que la **transacción extrajudicial** que
menciona el estatuto está condicionada a la presentación previa de una **reclamación judicial** y
que ese no fue el caso del señor Ortiz.  Con relación al Artículo 4, adujo que tampoco es
aplicable puesto que se limita a reconocerle una causa de acción al obrero por cobro de dinero y
daños en contra de un abogado que le haya cobrado honorarios en violación de esta disposición.
Sostuvo, además, que el estatuto permite a las partes que no hayan llegado a un acuerdo de
transacción de una reclamación judicial someter el asunto de los honorarios de abogado a la
adjudicación del tribunal, pero no le reconoce una causa de acción al abogado del obrero o
empleado en contra del patrono por no ser éste parte en el pleito.  Asimismo, explicó que, aún
asumiendo que el consentimiento de las peticionarias fuese necesario para obtener la renuncia de
honorarios de abogado, éstas no presentaron datos suficientes para establecer los elementos de
intimidación y nulidad del contrato (*Acuerdo final*).  Alegó que una situación difícil no vicia el
consentimiento.  A base de todo lo anterior, aseguró que, tomando como ciertas las alegaciones,
no surgía una causa de acción ni conjunto de hechos que justificaran la concesión de un remedio
en contra de Mead.  En la alternativa, Mead solicitó la desestimación alegando que el señor Ortiz

era parte indispensable en el pleito al firmar el *Acuerdo final* donde renunció a los honorarios que se cuestionan en este caso. Planteó que los honorarios pertenecen a la parte y no al abogado según el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24. Sostuvo que del tribunal entender que las peticionarias tenían una causa de acción en su contra, cualquier sentencia a favor de éstas implicaría un incumplimiento del *Acuerdo final* por parte del señor Ortiz.

En su oposición, las peticionarias indicaron que la política pública de la Ley Núm. 402 se extiende a **reclamaciones extrajudiciales**. Alegaron que las **negociaciones** que realizaron en representación del señor Ortiz dieron base a una **reclamación** que culminó con una **transacción extrajudicial**. Sobre este particular, resaltaron que, en el *Acuerdo final*, el señor Ortiz renunció expresamente a varias causas de acción de naturaleza laboral. Conforme a ello, tenían legitimación activa para demandar por el cobro de honorarios de acuerdo con el Artículo 2 de la Ley Núm. 402, *infra*, puesto que el señor Ortiz culminó su interés como parte en el asunto desde que pactó el *Acuerdo final*. Además, plantearon que el señor Ortiz no era parte indispensable ya que la Ley Núm. 402 le impedía recibir el pago de honorarios de abogado.

Así las cosas, el 1 de junio de 2015, el Tribunal de Primera Instancia denegó la moción de desestimación de Mead y ordenó la continuación de los procedimientos. [4]4 Concluyó que las controversias de derecho planteadas eran de carácter novel, por lo que requerían un estudio más detallado a la luz de la prueba que, en su día, presentaran las partes. Además, indicó que en ese momento no se podía establecer con certeza que las peticionarias carecieran de derecho a remedio alguno. [5]5

En desacuerdo con la determinación del Tribunal de Primera Instancia, Mead recurrió al foro apelativo intermedio mediante un recurso de *certiorari*.

### B. KLCE201500908

En julio de 2015, el Tribunal de Apelaciones emitió una *Resolución* mediante la cual denegó la expedición del recurso presentado por Mead al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, por entender que el carácter novel y la complejidad de la controversia requería que las partes presentaran prueba para ampliar los fundamentos planteados. De este modo coincidió con el foro primario. [6]6

### C. Reconvención

El 2 de julio de 2015, el patrono presentó su contestación a la demanda así como una reconvención en contra de las peticionarias. Admitió que, aunque éstas representaron al señor Ortiz durante los intercambios con Mead, sus comunicaciones no constituyeron una reclamación cubierta por la Ley Núm. 402. Arguyó, además, que las peticionarias incurrieron en incumplimiento de contrato, dolo e interferencia torticera con las relaciones contractuales, ya que indujeron al señor Ortiz a firmar el *Acuerdo final* renunciando a los honorarios de abogado, a pesar de que planeaban presentar la demanda en contra de Mead. Así, entre otras cosas, reclamó una indemnización por los daños sufridos como resultado del incumplimiento.

El 13 de julio de 2015, las peticionarias contestaron la reconvención. Entre otros asuntos, adujeron que la carta renunciando a los honorarios de abogado fue producto de coacción. Ello, debido a que la posición asumida por Mead y sus abogados creó un potencial conflicto de interés con su cliente, quien interesaba recibir los beneficios acordados con el patrono de forma expedita.

### D. Demanda contra tercero

Posteriormente, Mead presentó una demanda contra tercero en contra del señor Ortiz, la Sra. Iris Muñoz y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, terceros demandados). Sostuvo que conforme al *Acuerdo final*, el señor Ortiz se obligó a indemnizar a Mead por todas las reclamaciones, costas y gastos, incluyendo honorarios de abogado, incurridos como resultado de cualquier representación falsa en el *Acuerdo final*. Además, adujo que igualmente se establecía en el *Acuerdo final* que, en caso de iniciar, promover o mantener una demanda en contra de Mead fundamentada en las reclamaciones que renunció en el *Acuerdo*, el

señor Ortiz sería responsable de pagar a Mead todas las costas y honorarios de abogado razonables en los que incurriera Mead para defenderse en el pleito. Conforme a lo anterior, planteó que el señor Ortiz conocía que la renuncia a los honorarios de abogado era una condición esencial para el patrono acceder al *Acuerdo final*, por lo que reclamó la devolución del dinero pagado por entender que resultó nulo por dolo.

Por su parte, los terceros demandados presentaron una moción de desestimación de la demanda en su contra. En resumen, sostuvieron que, conforme a la interpretación de las cláusulas del *Acuerdo final* invocadas por Mead, la Ley Núm. 402 y el Código Civil de Puerto Rico, carecían de potestad para renunciar a los honorarios de las peticionarias por lo que la renuncia no tuvo efecto legal sobre el derecho de las abogadas. Adujeron que las alegaciones de Mead eran insuficientes para establecer una reclamación por dolo. Finalmente, solicitaron la desestimación de la demanda y la imposición de sanciones por temeridad.

Tras evaluar los planteamientos de las partes, el Tribunal de Primera Instancia emitió una *Sentencia parcial* de conformidad con la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, mediante la cual <u>desestimó la demanda contra tercero presentada por Mead</u>. En lo pertinente, el foro primario determinó que Mead no logró demostrar que el señor Ortiz incurrió en incumplimiento de contrato ni dolo. Además, al interpretar la Ley Núm. 402 en el proceso de analizar el derecho como parte de los fundamentos de su dictamen, razonó que:

> De un examen de la Ley Núm. 402 […] en su totalidad, se desprende que la prohibición en cuanto a los honorarios cobrados al empleado, así como la obligación de los patronos de pagar los mismos, **aplica a toda clase de "reclamación"**. El artículo 1 de la Ley Núm. 402 […], **no se limita a los casos presentados ante los tribunales**. El mismo, se refiere, en términos generales, a las situaciones en que los empleados "se ven en la necesidad de reclamar contra sus patronos", sin distinción de reclamaciones extrajudiciales y judiciales […]. (Énfasis suplido).[7]

Conforme a lo anterior, concluyó que el *Acuerdo final* no representó una prohibición a demandas instadas por otras personas. Específicamente, en cuanto a la cláusula de relevo de honorarios que pactó el empleado, entendió que no aplicaba a la reclamación de las peticionarias, ya que el señor Ortiz "no renunció a los honorarios en este caso al amparo de la Ley Núm. 402". [8]8

Por otro lado, citó varias cláusulas del *Acuerdo final* y concluyó que el señor Ortiz no violó el contrato. Añadió que el patrono no logró establecer hechos suficientes para obtener un remedio por dolo. Reiteró que, conforme a la *Resolución* de junio de 2015, se trataba de una cuestión novel de derecho y se negó a imponer honorarios de abogado por temeridad. Como resultado, ordenó la continuación de los procedimientos en lo concerniente a las reclamaciones que continuaban pendientes.

### E. KLAN201600822

Inconforme con esta determinación, Mead recurrió mediante un recurso de apelación ante el Tribunal de Apelaciones. En lo pertinente, impugnó la determinación del foro primario relacionada con la Ley Núm. 402 por no pasar juicio sobre la complejidad y el carácter novel de la controversia. Además, Mead cuestionó la desestimación de la demanda contra tercero por entender que subsistían controversias sobre hechos materiales.

El Tribunal de Apelaciones emitió una *Sentencia* en la que confirmó la *Sentencia parcial* del foro primario en cuanto a la desestimación de la demanda contra tercero. Sin embargo, modificó el alcance de la Ley Núm. 402 al limitarla exclusivamente a reclamaciones judiciales. De esa manera, razonó lo siguiente:

> **Es un hecho no controvertido que, en el presente caso, <u>no hubo una reclamación laboral</u> ante los tribunales, al amparo de la Ley 402, *supra*. Según previamente discutido, la Ley 402, *supra*, aplica cuando un**

empleado ha presentado una reclamación laboral ante los tribunales de **Puerto Rico.** Aquí, el mismo día en que Mead Johnson le informó al señor Ortiz de su separación de empleo, también le notificó que era elegible para recibir un paquete de beneficios, condicionado a la firma del Acuerdo. **Nunca existió una reclamación laboral ante el [Tribunal de Primera Instancia] del señor Ortiz contra Mead Johnson.**

Antes de firmar el Acuerdo, el señor Ortiz contrató a las Lcdas. Berkan y Méndez para que lo asesoraran respecto al Acuerdo, y no porque hubiese una reclamación laboral judicial bajo la Ley 402. El Acuerdo no se firmó mientras hubo conflicto con respecto al pago de honorarios de abogado. Tan pronto las Lcdas. Berkan y Méndez renunciaron expresamente a cualquier reclamación por concepto de honorarios de abogado, lográndose el acuerdo, Mead Johnson emitió el cheque [...], entre otros beneficios.

. . . . . . .

Mead Johnson actuó claro y transparente al efectuar el pago de los beneficios a favor del señor Ortiz, luego de recibir, por escrito, la renuncia de las Lcdas. Berkan y Méndez a reclamar honorarios de abogado. **La prohibición que establece sobre ese particular la Ley 402, *supra*, no aplica a este caso. Aquí no hubo una reclamación laboral ante los tribunales de Puerto Rico; si un contrato de transacción entre partes privadas. Decretamos, pues, que el [Tribunal de Primera Instancia] erró al aplicar la Ley 402, *supra*. (Énfasis suplido). [9]9**

Así las cosas, Mead nuevamente presentó una moción de desestimación de la demanda interpuesta por las abogadas en su contra. Sostuvo que la reclamación estaba fundamentada en la Ley Núm. 402 la cual, conforme a lo resuelto en la *Sentencia* del foro apelativo intermedio (KLAN201600822), no era de aplicación al presente caso.

Las peticionarias ripostaron que Mead solicitaba la desestimación a base de un *dictum* del Tribunal de Apelaciones en un caso sobre la viabilidad de la demanda contra tercero presentada por Mead en contra del señor Ortiz. Arguyeron además, que no fueron parte ni participaron del referido trámite ante el foro revisor intermedio.

Posteriormente, el Tribunal de Primera Instancia celebró una vista en la que las partes tuvieron la oportunidad de exponer sus argumentos con relación a la moción de desestimación. Así, tras escucharlas, el 2 de febrero    de 2018, el foro primario emitió una *Minuta resolución enmendada* en la que denegó la moción de desestimación y concluyó que la *Sentencia* en el KLAN201600822 "atendió una controversia que no guarda relación con la demanda presentada en este caso, la cual no fue objeto de apelación". [10]10

### F.   KLCE201800271

En desacuerdo, el 23 de febrero de 2018, Mead presentó un segundo recurso de *certiorari* ante el Tribunal de Apelaciones en el que señaló que el foro primario erró al no desestimar la demanda de las peticionarias e incumplió con el mandato del foro apelativo intermedio en la *Sentencia* emitida en el caso anterior (KLAN201600822).

El 12 de abril de 2018, el Tribunal de Apelaciones revocó el dictamen del foro primario. [11]11 Determinó que, conforme a la dotrina de la ley del caso, la Ley Núm. 402 era inaplicable a las reclamaciones aducidas por las peticionarias por lo que desestimó la demanda, habida cuenta de que la *Sentencia* (KLAN201600822) había advenido final y firme.

Puntualizó, en relación con la Ley Núm. 402, lo siguiente:

> [E]n el caso KLAN2016000822, la aplicabilidad de la [Ley Núm. 402] fue un señalamiento de error debidamente formulado [...] y como tal fue resuelto en su momento. Las determinaciones sobre la [Ley Núm. 402] que se realizaron en el mencionado caso no

fueron *obiter dictum* y la adjudicación efectuada se convirtió en la ley del caso que, como tal, debió ser respetada por el Tribunal. [12]12

El 14 de mayo de 2018, las peticionarias acudieron ante este Tribunal mediante un recurso de apelación y plantearon los siguientes señalamientos de error:

> 1. Erró el [Tribunal de Apelaciones] al [e]mitir una Sentencia [d]esestimando la [d]emanda de [las peticionarias], sin previamente haber emitido el [auto de *certiorari*], sin [c]onsiderar los [c]riterios aplicable[s] a [l]a [e]xpedición del [a]uto, sin darles una [o]portunidad a la parte adversamente afectada por la decisión de [p]resentar un Alegato al Tribunal, y sin considerar todos los [a]rgumentos presentados por éstas en el [Tribunal de Primera Instancia], todo en violación del Reglamento del Tribunal y de las [g]arantías mínimas del [d]ebido [p]roceso [d]e [l]ey[.]

2. Erró [e]l Tribunal al desestimar la [d]emanda, sin [dar] a las [peticionarias] la oportunidad de desarrollar su prueba y sus argumentos en el [Tribunal de Primera Instancia], contrario al dictamen del Panel que atendió el primer [r]ecurso en [a]lzada presentado por Mead, así negándoles el debido proceso y su día en corte.

3. Erró el [Tribunal de Apelaciones] al aplicar mecánicamente la [doctrina de la ley del caso] a una [p]arte que no había [p]articipado en el [r]ecurso [a]nterior, obviando el propósito de [l]a [d]octrina "… al Servicio de la Justicia, no la Injusticia", *Noriega Rodríguez v. Hernández Colón, 130 DPR 919 (1992), citaciones internas omitidas,* causando un [r]esultado manifiestamente [i]njusto.

4. Erró el [Tribunal de Apelaciones] al [a]plicar la [doctrina de la ley del caso] al tomar como ciertos los hechos expuestos por el Panel II, aún cuando dichos hechos fueron basados en las alegaciones del [tercero demandante] Mead.

5. Erró el [Tribunal de Apelaciones] al ignorar por completo el [t]exto de la Ley Núm. 402.

6. Erró el [Tribunal de Apelaciones] al determinar que las [peticionarias] podían solicitar [r]econsideración o [r]ecurrir en [a]lzada de la Sentencia de [o]tro [p]anel en un [c]aso en que éstas no eran [p]artes.

Expedido el recurso luego de acogerlo como una petición de *certiorari*, y contando con el beneficio de los alegatos de las partes, procedemos a atender las controversias ante nuestra consideración.

**II.**

Como cuestión de umbral, debemos determinar si la utilización de la doctrina de la ley del caso por parte del Tribunal de Apelaciones fue apropiada para disponer de la presente controversia.

**A. Doctrina de la ley del caso**

En nuestro ordenamiento jurídico, es norma reiterada que los derechos y obligaciones que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 606 (2000). La doctrina de la ley del caso tiene como propósito que los tribunales nos resistamos a reexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. Íd., pág. 608; Núñez Borges v.

Pauneto Rivera, 130 DPR 749, 755 (1992); Torres Cruz v. Municipio de San Juan, 103 DPR 217, 222 (1975).

La doctrina de la ley del caso aplica a las controversias adjudicadas, ya sea por tribunales de instancia, como tribunales apelativos. Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 9 (2016). Un dictamen judicial adquiere el carácter de ley del caso al constituir una decisión final en los méritos de la cuestión considerada y decidida. Cacho Pérez v. Hatton Gotay y otros, *supra* (citando a Félix v. Las Haciendas, 165 DPR 832, 843 (2005)).

De manera que, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas, por lo que, generalmente dichas determinaciones obligan, tanto al tribunal de instancia como al foro que las dictó, si el caso vuelve a su consideración. Don Quixote Hotel v. Tribunal Superior, 100 DPR 19, 29-30 (1971) (citando a Srio. del Trabajo v. Tribunal Superior, 95 DPR 136, 140 (1967)).
No obstante, en situaciones excepcionales, si el caso regresa para la evaluación y consideración del tribunal mediante los mecanismos apropiados, y éste entiende que sus **determinaciones previas son erróneas y pueden causar una grave injusticia**, dicho foro puede aplicar una norma de derecho distinta y resolver así de forma justa. Cacho Pérez v. Hatton Gotay y otros, *supra*, pág. 9. Véanse, además: Pueblo v. Serrano Chang, 201 DPR 643, 653 (2019); Félix v. Las Haciendas, *supra*, pág. 844; Don Quixote Hotel v. Tribunal Superior, *supra*, pág. 30.

En atención a lo anterior, "hemos colegido que sólo cuando se presenta un atentado contra los principios básicos de la justicia, es que los tribunales pueden descartar la aplicabilidad de la doctrina de la 'ley del caso'". Cacho Pérez v. Hatton Gotay y otros, *supra*, pág. 10. "Se trata de una doctrina al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados 'manifiestamente injustos'". Noriega v. Gobernador, 130 DPR 919, 931 (1992).

## III.

La *Sentencia* (KLAN201600822) concluyó que la Ley Núm. 402 es inaplicable a los hechos del caso, porque las peticionarias no presentaron una reclamación laboral en los tribunales de Puerto Rico en representación del señor Ortiz. De este modo, el Tribunal de Apelaciones razonó que, una vez advino final y firme la *Sentencia* (KLAN201600822), el Tribunal de Primera Instancia erró al no actuar de acuerdo con el estado de derecho vigente. Consiguientemente, revocó la determinación del foro primario y ordenó la desestimación de la demanda.

Por su parte, las peticionarias arguyen que el uso de esta norma fue injustificado, pues el foro apelativo intermedio ignoró la totalidad del contenido de la Ley Núm. 402, la cual aplica, en efecto, a reclamaciones extrajudiciales como la entablada por ellas en representación del señor Ortiz en contra de Mead.

De entrada, según mencionamos anteriormente, es norma conocida que, como excepción a la aplicación de la doctrina de la ley del caso, un tribunal que entiende que sus determinaciones previas son erróneas y causan una grave injusticia, deberá aplicar una norma de derecho distinta a la anterior. Cacho Pérez v. Hatton Gotay y otros, *supra*, pág. 9. Véanse, además: Pueblo v. Serrano Chang, *supra*; Félix v. Las Haciendas, *supra*; Don Quixote Hotel v. Tribunal Superior, *supra*.

Según discutiremos en detalle más adelante, una evaluación integral y minuciosa del Historial Legislativo y las disposiciones de la Ley Núm. 402, **no** permiten concluir, como hiciera el Tribunal de Apelaciones, que dicho estatuto únicamente opera en función de reclamaciones judiciales. Esa interpretación incorrecta en derecho no debe ser sostenida bajo el mandato de la doctrina de la ley del caso, puesto que, consentir a ello, tendría el efecto de incurrir en una grave injusticia al limitar y hasta impedir la revisión de una controversia de carácter novel como la presente. Además, evitaría que la misma sea evaluada con la cautela y prudencia que amerita y, a su vez, provocaría serias implicaciones en nuestro derecho laboral y la política pública que rodea al referido estatuto.

## IV.

Aclarado lo anterior, procedemos a explicar los fundamentos que nos llevan a concluir que la Ley Núm. 402 es aplicable a reclamaciones extrajudiciales laborales por ser ésta la interpretación más adecuada de dicho estatuto. Veamos.

### A. Reclamación extrajudicial

En el pasado, definimos el concepto de reclamación como la acción de exigir o intimar un derecho. A esos efectos, determinamos que:

> **Nuestro Código civil no ha dado a la palabra 'reclamación' ningún significado preciso, ni técnico. Pero ello no nos exime de tratar de encontrarlo. Reclamación vale, en principio, tanto como <u>exigencia o intimación</u>. Es decir: se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad requiriéndole para que adopte el comportamiento debido. La reclamación es pues una <u>pretensión</u> en sentido técnico.** (Negritas y subrayado suplido). <u>Díaz de Diana v. A.J.A.S. Ins. Co.</u>, 110 DPR 471, 476 (1980) (citando a L. Díez-Picazo, *La prescripción en el Código Civil*, 1ra ed., Barcelona, Ed. Bosch, 1964)).

En este contexto, el concepto de **pretensión** constituye una "solicitación para conseguir algo que se desea". Real Academia Española, *Diccionario de la lengua española*, 23era ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 1782. Desde un aspecto práctico o técnico de una reclamación, **la pretensión** es un "[d]erecho bien o mal fundado que uno juzga tener sobre una cosa". I. Rivera García, *Diccionario de términos jurídicos*, 3ra ed., San Juan, Lexis Publishing, 2000, pág. 208.

También, identificamos la **reclamación** en el momento en que surge alguna **actividad o el diálogo sobre un derecho** durante la relación jurídica que provoca un acontecimiento que rompe el silencio previo. <u>SLG García – Villega v. ELA *et al.*</u>, 190 DPR 799, 814 (2014) (citando a Díez-Picazo, *op. cit.*, págs. 39-40). De esa manera, se anuncia "que el derecho sigue vivo, que va a ser ejercitado o simplemente **que puede serlo**, [por lo que] la pretensión del titular del derecho no será nunca intempestiva ni, por ello, inadmisible". (Énfasis suplido). Díez-Picazo, *op. cit.*, pág. 94. Asimismo, la reclamación se considera como "la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". <u>Miramar Marine *et al.* v. Citi Walk *et al.*</u>, 198 DPR 684, 720 esc. 23 (2017); <u>Díaz Santiago v. International Textiles</u>, 195 DPR 862, 870 (2016); <u>SLG García – Villega v. ELA *et al.*</u>, *supra*, pág. 822; <u>Sánchez v. Aut. de los Puertos</u>, 153 DPR 559, 568 (2001); <u>Galib Frangie v. El Vocero de P.R.</u>, 138 DPR 560, 569 (1995); <u>De Jesús v. Chardón</u>, 116 DPR 238, 246-247 (1985) (citando a <u>Feliciano v. AAA</u>, 93 DPR 655, 660 (1966)).

Cónsono con lo anterior, en materia de derecho laboral, **"reclamar"** se define como "**exigir o solicitar algún beneficio, protección o concesión, por entender que el derecho lo cobija**; dícese además de aquella solicitud que se realiza en conformidad a alguna cláusula o acuerdo entre patrono y el empleado, donde el primero se comprometió con el segundo a honrarlo". (Énfasis nuestro). H.R. Arroyo-Aguilar, *Léxico laboral puertorriqueño: diccionario de términos jurídicos sobre el derecho del trabajo*, San Juan, Ed. Situm, 2010, pág. 247. Finalmente, cuando la reclamación se presenta fuera del ámbito judicial, posee varios propósitos fundamentales como lo es "fomentar las transacciones extrajudiciales". <u>Sánchez v. Aut. de los Puertos</u>, *supra*; <u>Miramar Marine *et al.* v. Citi Walk *et al.*</u>, *supra*.

### B. Contrato de transacción

El Código Civil establece en su Artículo 1709, 31 LPRA sec. 4821 (1990), que "la transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Los elementos esenciales de este tipo de contrato son: (1) una relación jurídica litigiosa, controvertida e incierta; (2) la intención de los contratantes de eliminar las controversias y sustituir, mediante la transacción, esta relación incierta con la seguridad de otra "cierta e incontestable"; y (3) las recíprocas

concesiones de las partes puesto que "toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones", lo que implica una renuncia total o parcial. US Fire Insurance v. AEE, 174 DPR 846, 854 (2008); Mun. de San Juan v. Prof. Research, 171 DPR 219, 239 (2007); G.E. C. & L. v. So. T. & O. Dist., 132 DPR 808, 815 (1993); Citibank v. Dependable Ins. Co. Inc., 121 DPR 503, 512 (1988). Véanse, también: L. R. Rivera Rivera, *El contrato de transacción: sus efectos en situaciones de* solidaridad, 1ra ed., San Juan, Ed. Jurídica Editores, 1998, pág. 35; Neca Mortg. Corp. v. A & W Dev. S.E., 137 DPR 860, 870 (1995). Además, el contrato de transacción posee las características de "un contrato consensual, bilateral, recíproco y oneroso". S. Tamayo Haya, *El contrato de* transacción, 1ra ed., Madrid, Ed. Thomson Civitas, 2003, pág. 54.

En relación con la controversia que debe existir previo a la transacción, el profesor Rivera Rivera nos explica que:

> [N]o reside en el mero conflicto de intereses entre quienes discuten, sino que requiere cualificarse jurídicamente en su conflictividad por plantear en ella **los contendientes pretensiones y oposiciones o, mejor, opuestas pretensiones sobre los derechos que les asisten en torno a la situación o relación jurídica respecto a la que discuten.** Es de notar, sin embargo, que la cuestión controvertida que se resuelve en la transacción puede recaer no sólo sobre aspectos estrictamente jurídicos como el significado o alcance de una norma, sino también sobre cuestiones de hechos cuando éstas repercuten en las consecuencias jurídicas […]. (Énfasis nuestro). Rivera Rivera, *op. cit.*, pág. 36.

Como solución, surgen las **concesiones otorgadas en un acuerdo bilateral** que implican "sacrificios recíprocos, es decir, el abandono de una cosa, derecho o pretensión […] [cuando] [e]l acreedor consiente recibir una parte de su pretensión a cambio de abandonar o renunciar a la otra y en esto su sacrificio". Tamayo Haya, *op. cit.*, pág. 141. **Así, "[l]as partes tras emitir sus opiniones y pretensiones en el marco de un libre debate, llegan a un convenio, a una solución de compromiso intermedia entre los dos extremos contrapuestos inicialmente esgrimidos […]".** (Énfasis suplido). Íd., pág. 42. Estas opiniones o pretensiones forman parte esencial del contrato de transacción, ya que "constituyen no sólo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la propia causa". Mun. de San Juan v. Prof. Research, *supra* (citando a López Tristani v. Maldonado, 168 DPR 838, 857 (2006)). Por tanto, la falta de concesiones mutuas, luego de un libre diálogo entre las partes, impide la transacción por falta de causa. Tamayo Haya, *op. cit.*, pág. 144.

Por otro lado, la transacción sólo abarca los objetos expresamente determinados en ella o los que por una inducción necesaria de sus palabras deban considerarse incorporados en el acuerdo. A tono con lo anterior, cuando el contrato contenga una renuncia general de derechos se considerará que se trata sólo de aquellos que tienen relación con la disputa sobre la que ha recaído la transacción. Blás v. Hospital Guadalupe, 167 DPR 439, 449-450 (2006); Art. 1714 del Código Civil de Puerto Rico, 31 LPRA sec. 4826 (1990). Es decir, "no deberán entenderse comprendidos en el contrato de transacción cosas distintas y casos diferentes de aquellos sobre los que las partes se propusieron contratar". Rivera Rivera, *op. cit.*, pág. 61. Es por lo anterior que se ha afirmado que la interpretación de dichos contratos es de naturaleza restrictiva. Íd. **Por último, la libertad de contratación cede ante cláusulas que sean contrarias a "las leyes, a la moral, [y] al orden público".** (Énfasis suplido). Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3375.

En lo aquí pertinente, la **transacción extrajudicial** es aquella que ocurre "antes de que comience el pleito que se quiere evitar, o cuando una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal". Rodríguez *et al.* v. Hospital *et al.*, 186 DPR 889, 904 (2012). En otras palabras, ésta tiene el objetivo de **evitar la provocación de un pleito.** Rivera Rivera, *op. cit.*, pág. 88.

En Puerto Rico existe una política pública a favor de que se transijan los pleitos sin tener que ir a los tribunales y llegar a un juicio. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ediciones Situm, 2016, pág. 108. Conforme a lo anterior, en lo concerniente a las

comunicaciones realizadas durante las negociaciones, la política pública busca promover "que las partes puedan transigir sus reclamaciones civiles, para lo cual es necesario que hablen entre sí y hagan ofertas, sin temor a que, si no llegan a un acuerdo, se use como evidencia la oferta de transacción o las conversaciones habidas en el curso de las negociaciones". Íd.

No obstante, el profesor Ernesto L. Chiesa explica que:

> **[S]i se perfecciona un contrato de transacción, la regla de exclusión no es aplicable y, por supuesto, es admisible el contrato de transacción en un pleito para hacerlo valer; también son admisibles las conversaciones que condujeron a la transacción, si son pertinentes para esclarecer la intención de las partes o el alcance de la transacción.** (Énfasis suplido). Chiesa Aponte, *op. cit.*, págs. 109-110.

### i. *Acuerdo de separación y relevo general*

En ocasiones anteriores hemos evaluado la figura del acuerdo de separación y relevo general extrajudicial que surge vinculado a una cesantía. Mediante este acuerdo, un patrono ofrece al empleado una compensación y unos beneficios a cambio de un relevo sobre las posibles reclamaciones del empleado, al amparo de leyes laborales. Así, lo hemos catalogado como un **contrato de transacción**. Ortiz Chévere v. Srio. Hacienda, 186 DPR 951 (2012). [13]13

En Bacardí Corp. v. Torres Arroyo, 2019 TSPR 133, 202 DPR__(2019), como resultado de una reorganización que eliminó su plaza, el Sr. Evaristo Torres Arroyo fue cesanteado. Posteriormente, éste suscribió un acuerdo de terminación y relevo de reclamaciones con su antiguo patrono mediante el cual, entre otras consideraciones, "aceptó que no tenía reclamaciones contra Bacardí a raíz del empleo o su terminación, y que de tenerlas renunciaba a ellas, y se comprometió a indemnizar a Bacardí por las costas, gastos y honorarios de abogado en caso de presentar una reclamación contra Bacardí". Íd. Por su parte, el patrono "se comprometió a pagar $27,229 al señor Torres Arroyo". Íd.

En cuanto al acuerdo pactado, en ese caso opinamos que "[e]s común que patronos y empleados **transijan** posibles reclamaciones relacionadas al despido con el fin de ahorrar tiempo, dinero y esfuerzo". (Énfasis suplido). Íd., pág. 5. Igualmente, descartamos la sentencia del Tribunal de Apelaciones por ser errónea en derecho, y porque "**arremetería contra el interés público en promover la transacción de las controversias**". (Énfasis suplido). Íd. [14]14

## C. Ley Núm. 402

En nuestro ordenamiento, el legislador puede imponer o limitar de forma expresa los honorarios de abogado para promover la política pública. *In re* Otero, Pacheco, 200 DPR 561, 576 (2018). S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria,* San Juan, Ed. Situm, 2016, sec. 3.18, pág. 194.

En cuanto a la política pública, tras realizar un análisis del Historial Legislativo, debemos resaltar que la Ley Núm. 402 prohíbe los contratos en los que los obreros pacten un *Acuerdo final* y se obligan al pago de honorarios de abogado. Durante las discusiones del proyecto que culminó en la aprobación del estatuto, se aclaró lo siguiente en torno a este tema:

> [E]ste proyecto de ley, partiendo de la base de que toda **reclamación** por parte de un obrero es justa y razonable y de que es la mejor política pública que el obrero obtenga **la totalidad** de su reclamación, prohíbe y declara nulos los contratos entre abogado y obrero a virtud del cual el obrero vendría obligado a pagarle honorarios de abogado por tramitarle el pleito. Bajo la filosofía de que en una situación tal **lo razonable y lo justo es que el patrono demandado pague todos los honorarios del obrero cuando este obtiene sentencia a su favor,** el proyecto declara nulos los contratos entre abogado y obrero para la reclamación de salarios y **ordena a los Tribunales conceder los honorarios a favor del abogado del obrero en todos estos casos de reclamación de salarios.**

> **De manera que, por un lado declara nulos los contratos entre el obrero y el abogado y por otro lado impone la obligación de condenar al patrono al pago de los honorarios del obrero.**
>
> **El proyecto tiene el alcance de prohibir el que se paguen por los obreros honorarios a sus abogados, o a los abogados que puedan intervenir en contiendas o luchas entre el Capital y el Trabajo por discusiones en relación con el trabajo, incluyendo salarios.** Prohíbe el contrato, toda vez que hemos tenido la experiencia reciente de que entró a la mesa de discusiones entre el Capital y el Trabajo un factor que imposibilitó que una desavenencia entre los obreros y los patronos pudiera resolverse a tiempo y que se prolongara un estado de huelga en una empresa del Gobierno, en cuyo caso había abogados que tenían una participación de un tanto por ciento de beneficios de lo que obtuviesen los obreros con motivo de esa discusión de salarios. Los abogados detuvieron la solución del conflicto y perjudicaron los intereses de los obreros prolongando innecesariamente la huelga. D[e] manera que este proyecto contiene el propósito saludable de que en la mesa de contratación no intervendrá el factor 'honorarios de abogado' en forma alguna, y que solamente se discutirá lo que corresponde a los trabajadores. Esa parte del proyecto es muy importante y saludable para los obreros y la Comisión Jurídica Civil informó favorablemente parte del proyecto.

La otra parte se refiere a la reclamación de salarios por parte de los trabajadores y el proyecto encarna el principio de que el obrero reciba su jornal sin que pague honorarios de abogado, y que debe obligarse al patrono a que pague los honorarios.  (Énfasis y subrayado suplido).  P. de la C. 205 de 16 de febrero de 1950, 2da Sesión Legislatura Ordinaria, 17ma Asamblea Legislativa, pág. 882.

Posteriormente, los Artículos 1, 2 y 3 de la Ley Núm. 402, *supra*, fueron enmendados por la Ley Núm. 90 de   3 de junio de 1980.  Así, el Legislador consignó en la correspondiente Exposición de Motivos que:

> **[S]e promulga la presente ley a los fines de dejar claramente establecido que lo dispuesto en la referida Ley Núm. 402 es aplicable a <u>cualquier tipo de reclamación</u> que tuviere un trabajador o empleado contra su patrono al amparo de la legislación laboral local** o federal, o bajo un convenio de trabajo de naturaleza individual o colectivo.  (Negritas y subrayado suplido). Exposición de Motivos, Ley Núm. 90 de 3 de junio de 1980 (1980 Leyes de Puerto Rico 246).

Específicamente, el Artículo 1 de la Ley Núm. 402, 32 LPRA sec. 3114, establece la política pública que promueve la legislación.  A esos efectos, dispone:

> **Por la presente <u>la Asamblea Legislativa de Puerto Rico declara que permitir el cobro de honorarios de abogado a los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos, al amparo de la legislación laboral</u> federal o <u>local</u> o convenio de trabajo de naturaleza individual o colectivo, equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados […].**
>
> **Se declara, por lo tanto, que <u>la política del Gobierno de Puerto Rico es proteger a los trabajadores y empleados contra tales reducciones en el valor de su trabajo […].**  (Negritas y subrayado suplido).  <u>Íd.</u>

032

Conforme a lo anterior, la Ley Núm. 402 prohíbe cualquier contrato o acuerdo en que un empleado se obligue directa o **indirectamente** a pagar honorarios en casos de **reclamaciones laborales** judiciales o **extrajudiciales** en contra de su patrono. D. Fernández Quiñones, *Derecho Laboral*, 67 Rev. Jur. UPR 749, 761 (1998). Así, un abogado que inste una reclamación laboral en contra del patrono de un **empleado o trabajador** está impedido de cobrar los honorarios a este último, ya que "equivale a permitir que se reduzca el valor del trabajo del obrero en la cantidad que pague a su representante legal". COPR v. SPU, 181 DPR 299, 349 (2011); Belk v. Martínez, 163 DPR 196, 203 esc. 5 (2004). Véanse, también: Hernández Maldonado v. Taco Maker, 181 DPR 281, 295 (2011); *In re* Otero, Pacheco, *supra*, pág. 577; G. Figueroa Prieto, *Conducta Profesional*, 77 Rev. Jur. UPR 833, 855-856 (2008).

Consiguientemente, el Artículo 2 de la Ley Núm. 402, 32 LPRA sec. 3115, provee un remedio en casos de una reclamación extrajudicial, cuando las partes no puedan acordar los honorarios que debe pagar el patrono al abogado del trabajador o empleado. Íd. Específicamente, señala que:

> En todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado, si éste no fuere uno de los abogados del Departamento del Trabajo y Recursos Humanos. Cuando se dicte sentencia a favor del patrono querellado no se condenará al trabajador o empleado querellante al pago de honorarios de abogado; Disponiéndose, que para los efectos de las secs. 3114 a 3117 de este título la palabra 'patrono' incluirá a las autoridades y corporaciones públicas del Gobierno Estadual y/o sus representantes.
>
> **En los casos en que la reclamación sea satisfecha extrajudicialmente, las partes, además de cumplir con las disposiciones de ley sobre transacciones, deberán, si no se pusieren de acuerdo sobre los honorarios a ser pagados por el patrono querellado al abogado del trabajador o empleado querellante, someter su determinación al tribunal que hubiera tenido jurisdicción sobre el caso.** Las costas de estos procedimientos serán de oficio. (Negritas y subrayado nuestro). Íd. [15]15

Por su parte, el Artículo 3 de la Ley Núm. 402, 32 LPRA sec. 3116, establece que:

> **Serán nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos bajo la legislación laboral de Puerto Rico** o bajo la legislación laboral del Congreso de Estados Unidos aplicable a Puerto Rico, o al amparo de un convenio de naturaleza individual o colectivo […]. (Negritas y subrayado nuestro). Íd.

Claramente, el referido artículo prohíbe **todo** contrato mediante el cual los trabajadores o empleados ya sea directa o **indirectamente** se comprometan a pagar los honorarios de su representación legal devengados en el trámite de una **reclamación** judicial o **extrajudicial** presentada en contra de su patrono. (Ènfasis nuestro). López Vicil v. ITT Intermedia, Inc., 142 DPR 857, 868–869 (1997) (*Per Curiam*).

Ahora bien, el Artículo 2 de la Ley Núm. 402, *supra*, señala que cuando "el obrero prevalezca en un caso mediante sentencia emitida luego del juicio, […] el tribunal deberá condenar al patrono al pago de honorarios de abogado". Así, para que proceda la imposición de honorarios de abogado al patrono deben concurrir las siguientes condiciones: "1) que un empleado haga una

reclamación a su empleador, 2) que la reclamación surja al amparo de la legislación laboral, 3) que el empleador sea un "patrono" bajo la Ley Núm. 402, y 4) que se conceda la reclamación". Ortiz y otros v. Mun. de Lajas, 153 DPR 744, 751 (2001). Véase, también, COPR v. SPU, *supra*, pág. 339 esc. 33. [16]16

Para hacer efectivos los anteriores preceptos estatutarios, el Artículo 4 de la Ley Núm. 402, 32 LPRA sec. 3117, establece que todo abogado que reciba compensación de un empleado o grupo de obreros "en violación a las disposiciones de las secs. 3114 a 3117 de este título" tendrá que reembolsar al empleado o grupo de obreros la cantidad que le haya sido pagada, más una suma igual de dinero en concepto de daños. Íd. Finalmente, el estatuto prescribe que "[e]l Secretario del Trabajo y Recursos Humanos queda autorizado para comparecer, en representación de los obreros, en las acciones para hacer efectivas dichas sumas", contrarias a la Ley Núm. 402. Íd.


## D. Honorarios de abogado

En ocasiones anteriores hemos indicado que "[l]a Ley Núm. 402, *supra*, omite [definir los honorarios razonables y] establecer criterio alguno que guíe a los tribunales en su encomienda de fijar los honorarios de abogado que deberá pagar el patrono [al abogado del empleado]". COPR v. SPU, *supra*, pág. 340; Fernández Quiñones, *op. cit.*, *supra*. Ante este escenario, para poder subsanar el vacío legislativo, interpretamos la Ley Núm. 402 en conjunto con otras leyes laborales que se refieren al mismo asunto tales como la Ley Núm. 100 de 23 de junio de 1955, según enmendada, 29 LPRA sec. 146 *et seq.*, y la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, que fijan un tope para los honorarios de abogado a base de un por ciento de la indemnización otorgada al empleado. [17]17 De esa manera, por analogía, superamos el silencio del estatuto. [18]18

Como norma general, el contrato de servicios profesionales de abogado se considera una variante del contrato de arrendamiento de servicios de acuerdo con el Artículo 1434 del Código Civil de Puerto Rico, 31 LPRA sec. 4013. No obstante, por estar revestido de un alto contenido ético, el contrato de servicios profesionales de abogado es de naturaleza *sui géneris*, que lo distingue de los contratos típicos de arrendamiento de servicios. Nassar Rizek v. Hernández, 123 DPR 360, 369-370 (1989). De esa manera, presenta una "relación contractual en abono de un interés público superior que puede trascender el interés exclusivo de las partes". Íd., pág. 370.

Desde el inicio, la gestión profesional queda establecida conforme a las normas generales que rigen la fijación de honorarios de abogado según el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX. Así, hemos resuelto que "es deseable que el acuerdo o pacto sobre honorarios a ser cobrados sea reducido a escrito, con la mayor claridad en sus términos y libre de ambigüedades". Pérez v. Col. Cirujanos Dentistas de P.R., 131 DPR 545, 553-554 (1992); Colón v. All Amer. Life & Cas. Co., 110 DPR 772, 773 (1981).

Ante la ausencia de un pacto expreso sobre la cuantía a cobrar por servicios profesionales, el abogado tiene derecho a recibir una **compensación razonable** por los servicios que rinde a sus clientes. Art. 1473 del Código Civil de Puerto Rico, 31 LPRA sec. 4111. [19]19 Véanse, también: In re Franco Rivera, 169 DPR 237, 267 (2006); Méndez v. Morales, 142 DPR 26, 35 (1996).

En relación con este asunto, denominamos este principio como *quantum meruit*, que significa "[t]anto como se merece". I. Rivera García, *op. cit.*, pág. 395; Blanco Matos v. Colón Mulero, 200 DPR 398, 412 (2018); In re Franco Rivera, *supra*, págs. 266-267; Pérez v. Col. Cirujanos Dentistas de P.R., *supra*, pág. 557.

En el pasado hemos aplicado la norma de *quantum meruit* para fijar el monto de los honorarios de abogado en distintos escenarios tales como: (1) el abogado que pactó un contrato de honorarios con su cliente el cual se invalidó por alguna irregularidad en su ejecución; (2) el abogado que fue destituido por su cliente sin culminar el trabajo para el que fue contratado; (3) el abogado que pactó honorarios contingentes, se vio obligado a desistir voluntariamente de la reclamación por instrucción de su cliente y no contempló esa eventualidad en el contrato de servicios legales; y (4) el abogado que renunció a la representación legal de su cliente, antes de

culminar la gestión profesional para la que fue contratado por honorarios contingentes.  Véanse: Blanco Matos v. Colón Mulero, *supra*, pág. 416; Pérez v. Col. Cirujanos Dentistas de P.R., *supra*, pág. 561; Colón v. All Amer. Life & Cas. Co., 110 DPR 772, 773 (1981).

**V.**                   **Discusión**

El señor Ortiz fue empleado de Mead hasta el 10 de diciembre de 2012, fecha en que fue cesanteado y, se le proveyó el *Borrador del acuerdo* mediante el cual se le informó sobre su elegibilidad a beneficios condicionados a la renuncia de posibles reclamaciones al amparo de leyes laborales estatales y federales en contra del patrono.  En ese momento, surgió una relación jurídica incierta entre las partes.  La entrega del *Borrador del acuerdo* fue un intento legítimo de conciliar las pretensiones en tensión de cada una de las partes y con ello, procurar eliminar la incertidumbre entre éstas.  Posteriormente, el señor Ortiz contrató los servicios legales de las peticionarias.  Desde su intervención inicial como representantes legales del empleado, las peticionarias le exigieron al patrono modificaciones sobre los términos del *Borrador del acuerdo* a favor del señor Ortiz.  Con ello, se concretizó una reclamación extrajudicial frente a Mead a nombre del empleado.

Las negociaciones entre el patrono y las peticionarias, en representación del empleado, se llevaron a cabo durante tres (3) meses aproximadamente.  Sin embargo, Mead condicionó el perfeccionamiento del *Acuerdo final* a que el empleado suscribiera una cláusula de relevo del pago de honorarios de abogado.  La imposición de esta cláusula y la denegatoria del patrono a estipular el pago de honorarios de abogado provocó una desavenencia entre Mead y las peticionarias quienes, ante las exigencias del patrono y la apariencia de un posible conflicto ético, se vieron forzadas a renunciar a sus honorarios para colocar los intereses de su cliente sobre los propios.  Consecuentemente, el *Acuerdo final* se firmó el 7 de marzo de 2013 y la renuncia de las peticionarias sobre los honorarios se concretó a través de una misiva el 11 de marzo de 2013.

La disputa sobre los honorarios durante el curso de las negociaciones, que a su vez, provocó un potencial conflicto de interés entre las peticionarias y el empleado es uno de los escenarios que viene a atender la Ley Núm. 402.  Precisamente, la política pública que promueve el estatuto es clara al establecer que será nulo y contrario al orden público todo contrato o acuerdo en el que un empleado se obligue al pago directo o indirecto de honorarios de abogado, pues ello, claramente, atenta contra el principio que protege el que no se vea reducido el valor del trabajo del empleado ante una reclamación presentada en contra de su patrono.  Véase Exposición de Motivos, Ley Núm. 90 de 3 de junio de 1980 (1980 Leyes de Puerto Rico 246); Art. 3 de la Ley Núm. 402, *supra*.

En el presente caso, la cláusula de renuncia de honorarios de abogado incluida en el *Acuerdo final* entre el patrono y el señor Ortiz tuvo el efecto de imponerle al empleado de manera indirecta la obligación de costear los honorarios de abogado -reduciendo, a su vez, el valor de su trabajo-, para poder informarse adecuadamente sobre sus derechos y negociar mejores condiciones ante su cesantía.  Ello, colocó al empleado en desventaja frente a Mead, quien en todo momento contó con representación legal desde la redacción del *Borrador del acuerdo* y durante el curso de las negociaciones.  Ese no fue el caso del empleado, quien, ante la negativa del patrono a estipular el pago de honorarios, tendría que costear su propia representación legal.

Más aún, la referida cláusula de relevo junto con la denegatoria del patrono a estipular el pago de honorarios de abogado, obligó a las abogadas aquí peticionarias a enfrentar cuestionamientos éticos que las llevaron a renunciar a sus honorarios de abogado.  Lo anterior, dado a que se encontraron en la disyuntiva de tener que escoger entre favorecer los intereses de su cliente a obtener el acuerdo más beneficioso y expedito posible *versus* preferir su conveniencia económica al colocarse sus honorarios sobre la mesa de negociación como pieza clave para la culminación de la disputa.

Ante ese dilema, tal y como hicieron las peticionarias, el profesional del derecho siempre deberá optar por el cumplimiento con los principios éticos, favorecer los intereses de su cliente y renunciar a los honorarios de abogado, para así evitar, incluso, la mera apariencia de un conflicto de interés.

Resolver esta controversia de otra forma tendría el efecto de privar a los empleados cesanteados que confronten este tipo de acuerdo de una representación legal adecuada que vele por sus intereses. Por eso, no podemos avalar las pretensiones del patrono en este caso, pues, en lugar de fomentar un "libre debate" entre las partes, informado e inteligente, silenciaríamos al empleado, quien es la parte más vulnerable en el proceso.

Por las razones antes expresadas, decretamos que la inclusión de la cláusula de relevo del pago de honorarios de abogado en el *Acuerdo final* es **nula** por ser contraria a la Ley Núm. 402. Igualmente, entendemos que la renuncia **forzada** de las peticionarias a los honorarios de abogado por consideraciones puramente éticas fue ineficaz, ya que resulta contraria a los principios que encarna la Ley Núm. 402 y no puede avalarse en este caso.

A tono con lo anterior, ante un escenario similar al presente, la mejor práctica será que las partes estipulen entre ellas junto al *Acuerdo final* los honorarios de abogado correspondientes que deberán ser sufragados por el patrono.

Ahora bien, si, como ocurrió aquí, las partes no logran ponerse de acuerdo y ocurre una desavenencia con respecto a los honorarios a ser pagados por el patrono a los abogados del empleado, se activará el mecanismo provisto por el Artículo 2 de la Ley Núm. 402, *supra*. Éste le permite a las partes que no lograron estipular los referidos honorarios en una transacción extrajudicial relacionada a reclamaciones laborales, someter la controversia "al tribunal que hubiera tenido jurisdicción". 32 LPRA sec. 3115. En otras palabras, el remedio ante un conflicto sobre honorarios de abogado en el proceso de transacción de una reclamación extrajudicial es recurrir al Tribunal de Primera Instancia correspondiente, sobre quien recaerá la tarea de fijar los honorarios de abogado que deberá pagar el patrono. Véase Art. 2 de la Ley Núm. 402, *supra*.

No obstante, como vimos, la Ley Núm. 402 omite definir los honorarios razonables y tampoco establece criterio alguno que guíe a los tribunales en su encomienda de fijarlos. En el caso ante nos, la declaración de nulidad de la cláusula del relevo de honorarios de abogado al igual que la renuncia forzada de los honorarios de abogado provocada por un conflicto ético, ante la ausencia de un pacto de honorarios, configuró la justa causa necesaria que permite a las abogadas aquí peticionarias ser compensadas por los servicios rendidos a base de la doctrina de *quantum meruit*.

El Tribunal de Primera Instancia deberá, por lo tanto, evaluar la prueba que presenten las peticionarias sobre las gestiones profesionales realizadas a favor del señor Ortiz, tomando en consideración los factores enumerados en el Canon 24, *supra*, con especial énfasis en examinar los beneficios que haya derivado el empleado como resultado de los servicios provistos por ellas.

## VI.

La discusión anterior nos lleva a concluir que el Tribunal de Apelaciones erró al aplicar la doctrina de la ley del caso y ordenar la desestimación de la demanda de las peticionarias, tras determinar que no procedía la aplicación de la Ley Núm. 402 al presente caso. A base de lo anterior, se revoca la Sentencia del Tribunal de Apelaciones de 12 de abril de 2018 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos acorde con lo dispuesto en esta Opinión.

Se dictará Sentencia de conformidad.

(Fdo.) ROBERTO FELIBERTI CINTRÓN
Juez Asociado

036

SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2020.

Por los fundamentos esbozados en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones el 12 de abril de 2018 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos acorde con lo dispuesto en la *Opinión*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.  La Jueza Asociada señora Pabón Charneco no intervino.

(Fdo.) José Ignacio Campos Pérez
Secretario del Tribunal Supremo

[1]1   La Ley Núm. 402 de 12 de mayo de 1950 (Ley Núm. 402), según enmendada, 32 LPRA sec. 3114 *et al.*, específicamente implementa una política pública que prohíbe a los abogados el cobro de honorarios en reclamaciones laborales en contra de los empleados. Asimismo, establece que cuando el obrero prevalezca en este tipo de casos, le corresponde al patrono pagar los honorarios de abogado. Véase Art. 2 de la Ley Núm. 402, 32 LPRA sec. 3115.

[2]2   Para evitar confusión denominaremos el documento entregado inicialmente por Mead Johnson Nutrition Puerto Rico, Inc. (Mead o patrono) como *Borrador del acuerdo de separación y relevo general* (*Borrador del acuerdo*) para distinguirlo de la versión final del *Acuerdo de separación y relevo general* (*Acuerdo final*).

[3]3   *Acuerdo de separación y relevo general*, Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 2-9.

[4]4   *Resolución*, Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 48-54.

[5]5   *Íd.*, págs. 53-54.

[6]6   *Resolución* (KLCE201500908), *íd.*, págs. 87-89.

7   *Sentencia parcial*, Apéndice de *Apelación y/o Petición de certiorari*, págs. 84-85.

[8]8   *Íd.*

[9]9   El 14 de agosto de 2017 se remitió el mandato al Tribunal de Primera Instancia, el cual se notificó a todas las partes en el caso.  Posteriormente, la *Sentencia* del foro apelativo intermedio (KLAN201600822) advino final y firme.  *Sentencia* (KLAN201600822), Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 144-147.

[10]10   *Minuta resolución enmendada*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 196.

[11]11   *Apelación*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 2.

[12]12   *Sentencia*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 11.

[13]13   En esa ocasión examinamos, desde una perspectiva tributaria, las cuantías otorgadas en **acuerdos o contratos de transacción** que un empleado firma después de ser cesanteado con la **intención de transigir** cualquier reclamación obrero patronal que el empleado pueda presentar en contra de su antiguo patrono al amparo de las leyes laborales locales o federales.

De otra parte, el Tribunal de Apelaciones para el Primer Circuito ha reconocido también que un **acuerdo extrajudicial** suscrito entre patrono y empleado cumple con los elementos de un **contrato de transacción**.  A esos efectos, señaló que: la terminación del empleo crea una relación jurídica incierta; el lenguaje del relevo establece claramente la intención de eliminar esa incertidumbre y, finalmente, las partes realizaron concesiones recíprocas.  <u>Ruiz-Sánchez v. Goodyear Tire & Rubber Co.</u>, 717 F.3d 249 (1er Cir. 2013).

[14]14   Debemos mencionar que, como resultado de un aumento en los contratos de transacción se intentó legislarlos sin éxito.  El proyecto correspondiente tenía como "propósito el declarar nula toda transacción extrajudicial entre empleado y patrono, al momento de finalizar su relación como tal [que impusiera] al trabajador condiciones restrictivas".  P. de la C. 417 de 30 de marzo de 1993, 1ra Sesión Ordinaria, 12ma Asamblea Legislativa.  El referido proyecto de ley consideró compeler la participación del Secretario del Departamento del Trabajo, similar a la intervención prevista por la Ley Núm. 379 de 15 de mayo de 1948, según enmendada, conocida como la *Ley para establecer la jornada de trabajo en Puerto Rico* (Ley Núm. 379), 29 LPRA sec. 271 *et seq.*, como una posible alternativa.  Sin embargo, el Hon. César Almodóvar Marchany,      Secretario del Departamento del Trabajo y Recursos Humanos, reseñó lo siguiente respecto a la labor de los abogados del Departamento con relación a estos contratos de transacción, las estipulaciones que contravienen los derechos de los trabajadores y las motivaciones de éstos para firmarlos a pesar de las condiciones restrictivas:

> Los abogados del Departamento del Trabajo examinan anualmente un gran número de estas estipulaciones en calidad de asesores a estos trabajadores envueltos. Lamentablemente, en la mayoría de los casos, a pesar de advertir a éstos las consecuencias negativas de algunas cláusulas y de que expresamente se les explican los reparos que pudieran anteponerse a ellas, los trabajadores firman.   De conformidad con lo expresado por los trabajadores que acuden a nuestras oficinas, firman porque necesitan el dinero urgentemente y porque el trámite judicial de las reclamaciones se demora mucho tiempo. Como podemos apreciar, el Departamento del Trabajo y Recursos Humanos se encuentra atado de manos al sólo poder asesorar y no poder recomendar que los trabajadores no firmen ni acepten estas condiciones onerosas para sus derechos adquiridos como tales.  P. de la C. 417, *supra*, Informe Comisión de lo Jurídico Civil del Senado, págs. 7-8.

Finalmente, el aludido proyecto fue vetado por el Gobernador.

[15]15            En lo pertinente, el 26 de diciembre de 2002, la Oficina de la Procuradora del Trabajo del Departamento del Trabajo y Recursos Humanos en respuesta a la *Consulta Núm. 15054* interpretó el Artículo 2 de la Ley Núm. 402, *supra*, en el contexto de una transacción extrajudicial lograda tras la presentación de la demanda en el foro primario.  Concluyó que la solución a una controversia sobre honorarios durante un acuerdo de transacción extrajudicial debe ser atendida por el Tribunal de Primera Instancia.  Véase Consulta del Procurador del Trabajo Núm. 15054 de 26 de diciembre de 2002.

[16]16     El profesor Steidel Figueroa puntualiza que "[l]a ley no impone al obrero que no prevalece la obligación de pagar los honorarios de los abogados del patrono".  S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. Situm, 2016, sec. 3.18, pág. 209.  Además, explica que el referido Artículo 2 de la Ley Núm. 402, *supra*, presenta otra posibilidad cuando "el abogado [del obrero] resuelva extrajudicialmente su reclamación contra el patrono". *Íd.*

[17]17   Según el Artículo 11 de la Ley Núm. 80, 29 LPRA sec. 185k, el tribunal fijará una cantidad que no será inferior al quince por ciento (15%) del total de la compensación recibida por el trabajador o cien dólares ($100), lo que resulte mayor.  COPR v. SPU, 181 DPR 299, 349 (2011).

        En los casos al amparo de la citada Ley Núm. 100, se concederá una suma equivalente al veinticinco por ciento (25%) de la indemnización base concedida al empleado que prevalece en su demanda.  Art. 4 de la Ley Núm. 100, 29 LPRA sec. 149.  La diferencia se debe a que "los casos por discrimen tienden a ser más complicados y costosos que los casos al amparo de la Ley Núm. 80".  López Vicil v. ITT Intermedia, Inc., 143 DPR 574, 582 (1991).

[18]18   Véase Art. 18 del Código Civil de Puerto Rico, 31 LPRA sec. 18.

[19]19   Específicamente, el Artículo 1473 del Código Civil de Puerto Rico, 31 LPRA sec. 4111, en lo pertinente, provee que "cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, el importe razonable de dichos servicios".  Íd.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). /**
**Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☒ | Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ | Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ | Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ | Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ | Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación           04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?**<br><br>**¿Quién es el acreedor actual?** | **Hector L. Claudio-Rosario**<br>_____<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor   **Hector Claudio**<br>Otros nombres que el acreedor usó con el deudor |

| | | |
|---|---|---|
| **2. Has this claim been acquired from someone else?**<br><br>**¿Esta reclamación se ha adquirido de otra persona?** | ☒ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ | |

| | | |
|---|---|---|
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Hector L. Claudio<br>167 Calle Pedro Flores H-8 Urb.<br>Monticielo<br>Caguas PR 00725<br><br>**787-635-1220**<br>Contact phone / Teléfono de contacto<br><br>**bufetehectorclaudio@gmail.com**<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?** (if different)<br>**¿A dónde deberían enviarse los pagos al acreedor?** (En caso de que sea diferente)<br><br><br><br><br><br><br><br>Contact phone / Teléfono de contacto<br><br><br>Contact email / Correo electrónico de contacto |

| | |
|---|---|
| **4. Does this claim amend one already filed?**<br><br>**¿Esta reclamación es una enmienda de otra presentada anteriormente?** | ☒ No / No<br>☐ Yes.  Claim number on court claims registry (if known) _____<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA) |

| | |
|---|---|
| **5. Do you know if anyone else has filed a proof of claim for this claim?**<br><br>**¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación?** | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí. ¿Quién hizo la reclamación anterior?_____ |

**Part 2 / Parte 2:**      **Give Information About the Claim as of the Petition Date**

**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.**

| | |
|---|---|
| **6. Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**<br><br>**¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico?** | ☐ No / No<br>☒ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>Guardia Nacional de Puerto Rico |

| | |
|---|---|
| **7. Do you supply goods and / or services to the government?**<br><br>**¿Proporciona bienes y / o servicios al gobierno?** | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

**8. How much is the claim?**

¿Cuál es el importe de la reclamación?

$ 34,069.68 _____

. **Does this amount include interest or other charges?**
¿Este importe incluye intereses u otros cargos?

☐ No / No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).
Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A).

**9. What is the basis of the claim?**

¿Cuál es el fundamento de la reclamación?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

### Judgment/Attorney's Fees

_____

**10. Is all or part of the claim secured?**

¿La reclamación está garantizada de manera total o parcial?

☒ No / No

☐ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

**Nature of property / Naturaleza del bien:**
☐ Motor vehicle / Vehículos

☐ Other. Describe:
Otro. Describir: _____

**Basis for perfection / Fundamento de la realización de pasos adicionales:**
_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)

**Value of property / Valor del bien:** $ _____

**Amount of the claim that is secured /**
**Importe de la reclamación que está garantizado:** $ _____

**Amount of the claim that is unsecured /**
**Importe de la reclamación que no está garantizado:** $ _____
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

**Amount necessary to cure any default as of the Petition Date /**
**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :**

$ _____

**Annual Interest Rate** (on the Petition Date)
**Tasa de interés anual** (cuando se presentó el caso) _____%
☐ Fixed / Fija
☐ Variable / Variable

**11. Is this claim based on a lease?**

¿Esta reclamación está basada en un arrendamiento?

☒ No / No

☐ Yes. Amount necessary to cure any default as of the Petition Date.
Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso
$ _____

041

| 12. **Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ☒ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
|---|---|

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☒ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**  $ _____<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |
|---|---|

| **Part 3 / Parte 3:** | **Sign Below / Firmar a continuación** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

Check the appropriate box / Marque la casilla correspondiente:

☒ I am the creditor. / Soy el acreedor.

☐ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Signature: _Hector L. Claudio (Apr 24, 2018)_

Signature / Firma _____ **Email:** bufetehectorclaudio@gmail.com

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

| Name | Hector | Luis | Claudio |
|---|---|---|---|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

| Title / Cargo | Creditor |
|---|---|

| Company / Compañía | _____ |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer.<br>Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador. |

| Address / Dirección | 167 Calle Pedro Flores H-8 Urb. Monticielo |
|---|---|
| | Number / Número    Street / Calle |

| Caguas | PR | 00725 |
|---|---|---|
| City / Ciudad | State / Estado | ZIP Code / Código postal |

Contact phone / Teléfono de contacto 787-635-1220 _____ Email / Correo electrónico bufetehectorclaudio@gmail.com

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do <u>not</u> have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                          12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

## How to fill out this form

- **Fill in all of the information about the claim as of the petition date.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form or contact the Claims and Noticing Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), or by email at puertoricoinfo@primeclerk.com. You may view a list of filed claims in the Title III cases by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/puertorico.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the petition date, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the petition date. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy or confidential information. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

---

**Do not file these instructions with your form**

---

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163–4708

**If by overnight courier or hand delivery:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

# Instrucciones para la Evidencia de reclamación

Tribunal de Quiebras de los Estados Unidos                                                    12/15

**Estas instrucciones y definiciones explican la ley de forma general. En ciertas circunstancias, tales como casos de quiebra que los deudores no presentan de forma voluntaria, se pueden aplicar excepciones a estas normas generales. Debe considerar la posibilidad de obtener el asesoramiento de un abogado, en especial si no conoce el proceso de quiebra y las reglamentaciones de privacidad.**

## Cómo completar este formulario

- **Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

- **Complete el título en la parte superior del formulario.**

- **Si la reclamación se ha adquirido de otra persona, indique la identidad de la última parte** que fue propietaria de la reclamación o fue titular de la reclamación y que la transfirió a usted antes de que se presente la reclamación inicial.

- **Adjunte cualquier documento de respaldo a este formulario.**
  Adjunte copias editadas de cualquier documento que demuestre que la deuda existe, que un gravamen garantiza la deuda, o ambos. (Ver la definición de *edición* en la siguiente página).

  También adjunte copias editadas de cualquier documento que demuestre el perfeccionamiento de un derecho de garantía o cualquier cesión o transferencia de la deuda. Además de los documentos, puede agregarse un resumen. Norma federal del procedimiento de quiebra (denominada "Norma de quiebra") 3001(c) y (d).

- **No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de examinarlos.**

- **Si la reclamación se basa en la prestación de bienes o servicios de atención médica, no divulgue información de atención médica confidencial. Omita o edite la información confidencial tanto en la reclamación como en los documentos adjuntos.**

- **El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo el año de la fecha de nacimiento de una persona.** Ver la Norma de quiebra 9037.

- **En el caso de un menor, complete solamente las iniciales del menor y el nombre completo y la dirección del padre o madre o el tutor del menor.** Por ejemplo, escriba *A.B., un menor* (*John Doe, padre, calle 123, ciudad, estado*). Ver la Norma de quiebra 9037.

## Confirmación de que se ha presentado la reclamación

Para recibir una confirmación de que se ha presentado la reclamación, puede adjuntar un sobre autodirigido y estampillado y una copia de este formulario o comunicarse con el representante de reclamaciones y notificaciones al (844) 822-9231 (número gratuito para EE. UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), o por correo electrónico a puertoricoinfo@primeclerk.com. Para ver una lista de las reclamaciones presentadas en los casos del Título III, visite el sitio web del representante de reclamaciones y notificaciones en https://cases.primeclerk.com/puertorico.

## Comprenda los términos utilizados en este formulario

**Gastos administrativos:** En términos generales, gastos que se generan luego de presentar un caso de quiebra en relación con el manejo, la liquidación o la distribución del patrimonio de la quiebra.
Título 11 § 503 del Código de los Estados Unidos (U.S.C.).

**Reclamación:** El derecho de un acreedor a recibir un pago por una deuda del deudor a la fecha en la que el deudor solicitó la quiebra. Título 11 §101 (5) del U.S.C. Una reclamación puede estar garantizada o no garantizada.

**Reclamación de conformidad con el Título 11 § 503(b)(9) del U.S.C.:** Una reclamación que surge del valor de cualquier bien recibido por el Deudor dentro de los 20 días anteriores a la fecha en la que se presentó el caso , en el que los bienes se han vendido al Deudor en el transcurso normal de los negocios del Deudor. Adjunte la documentación que respalde dicha reclamación.

**Acreedor:** Una persona, una sociedad anónima u otra entidad con la que el deudor tiene una deuda que se contrajo en la fecha en la que el deudor solicitó la quiebra o con anterioridad. Título 11 § 101 (10) del U.S.C.

**Deudor:** Una persona, una sociedad anónima u otra entidad que está en quiebra. Utilice el nombre del deudor y el número de caso tal como se muestran en el aviso de quiebra que recibió. Título 11 § 101 (13) del U.S.C.

**Prueba de pasos adicionales:** La prueba de la realización de pasos adicionales para hacer valer un derecho de garantía puede incluir documentos que demuestren que se ha presentado o registrado un derecho de garantía, tal como una hipoteca, un derecho de retención, un certificado de propiedad o una declaración de financiamiento.

**Información que debe mantenerse en privado:** El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo las iniciales del nombre de un menor y el año de la fecha de nacimiento de una persona. Si una reclamación se basa en la prestación de bienes o servicios de atención médica, limite la divulgación de los bienes o servicios a fin de evitar la incomodidad o la divulgación de información de atención médica confidencial. Es posible que, más adelante, se le solicite que brinde más información si el síndico u otra persona de interés se opone a la reclamación.

**Evidencia de reclamación:** Un formulario que detalla el monto de la deuda que el deudor mantiene con un acreedor a la fecha de la presentación. El formulario debe ser presentado en el distrito donde el caso se encuentra pendiente de resolución.

**Edición de información:** Ocultamiento, corrección, o eliminación de cierta información para proteger la privacidad o la información confidencial. Quienes presenten la documentación deben editar u omitir información sujeta a **privacidad** en el formulario de *Evidencia de reclamación* y en cualquier documento adjunto.

**Reclamación garantizada en virtud del Título 11 § 506(a) del U.S.C.:** Una reclamación respaldada por un derecho de retención sobre un bien en particular del deudor. Una reclamación está garantizada en la medida que un acreedor tenga el derecho a recibir un pago proveniente del bien antes de que se les pague a otros acreedores. El monto de una reclamación garantizada generalmente no puede ser mayor que el valor del bien en particular sobre el cual el acreedor mantiene un derecho de retención. Cualquier monto adeudado a un acreedor que sea mayor que el valor del bien generalmente se lo considera una reclamación no garantizada. Sin embargo, existen excepciones; por ejemplo, el Título 11 § 1322(b) del U.S.C., y la oración final de § 1325(a).

Algunos ejemplos de derechos de retención sobre bienes incluyen una hipoteca sobre un inmueble o un derecho de garantía sobre un automóvil. Un derecho de retención puede ser otorgado de manera voluntaria por un deudor o puede obtenerse a través de un procedimiento judicial. En algunos estados, una resolución judicial puede ser un derecho de retención.

**Compensación:** Ocurre cuando un acreedor se paga a sí mismo con dinero que pertenece al deudor y que mantiene en su poder, o cuando el acreedor cancela una deuda que mantiene con el deudor.

**Reclamación no garantizada:** Una reclamación que no cumple con los requisitos de una reclamación garantizada. Una reclamación puede no estar garantizada en parte en la medida que el monto de la reclamación sea mayor que el valor del bien sobre la cual un acreedor tiene un derecho de retención.

## Ofrecimiento de compra de una reclamación

Algunas entidades compran reclamaciones por un monto menor que su valor nominal. Estas entidades pueden contactar a acreedores para ofrecerles la compra de sus reclamaciones. Algunas comunicaciones por escrito de estas entidades pueden confundirse fácilmente con documentación judicial oficial o con comunicaciones del deudor. Estas entidades no representan al tribunal de quiebras, al síndico de la quiebra, ni al deudor. Un acreedor no tiene obligación alguna de vender su reclamación. Sin embargo, si decide hacerlo, cualquier transferencia de esa reclamación está sujeta a la Norma de Quiebras 3001(e), a las correspondientes disposiciones del Código de Quiebras (Título 11 § 101 y subsiguientes del U.S.C.) y a cualquier resolución del tribunal de quiebras que corresponda al caso.

### Envíe la(s) Evidencia(s) de reclamación completa(s) a:

**Si por correo de primera clase:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**Si por el mensajero de una noche o la entrega de mensajero a mano:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**No presente estas instrucciones con su formulario**

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

RAFAEL SUAREZ DURAND
**Demandantes**
Vs.

GUARDIA NACIONAL DE
PUERTO RICO y/o ESTADO
LIBRE ASOCIADO DE PUERTO
RICO
**Demandados**

CIVIL NUM. K PE2005-2001
(801)

SOBRE:
DESPIDO ILEGAL;
DAÑOS Y PERJUICIOS

## MOCION EN CUMPLIMIENTO DE ORDEN

**AL HONORABLE TRIBUNAL:**

Comparece el Estado Libre Asociado de Puerto Rico, por conducto de la representación legal que suscribe y muy respetuosamente ante este Honorable Tribunal EXPONE, ALEGA y SOLICITA:

1- Que en el caso de epígrafe, y luego de moción de la parte demandante, éste Honorable Tribunal ordena a la parte que aquí comparece, exponer su posición sobre la oferta de plan de pago del remanente de la Sentencia emitida.

2- Que con el propósito de cumplir con dicha Orden, la parte que aquí comparece informa al respecto.

3- Tal y como se le comunicó al abogado de la parte demandante, la evaluación inicial de su plan de pago, está a cargo de la Guardia Nacional de Puerto Rico.

4- Con respecto a ese procedimiento, el abogado que aquí suscribe ha estado en comunicación con la Lcda. Silvia M. Aponte Arroyo, Abogada de la División Legal de la GNPR.

5- Producto de ello, la GNPR ha realizado un análisis de la propuesta de Plan de Pago de la parte demandante y ha realizado las siguientes correcciones y modificaciones:

- El interés prevaleciente del remanente de la Sentencia fue identificado erróneamente por la parte demandante como del 6% de interés anual

cuando (y por Sentencia de éste Honorable Tribunal) dicho calculo fue corregido a 2% de interés anual.

- Haciéndose los descuentos de los pagos de la indemnización por daños y sus respectivos honorarios que ya la parte que aquí comparece consignó, a la fecha de hoy, queda por satisfacer la cuantía de **$330,276.58 por concepto de salarios dejados de percibir hasta la fecha de re-instalación e intereses y $34,069.68 por concepto de honorarios de abogados e intereses para un total de $364,346.26 (Véase Anejo I).**

- Contrario a lo planteado por la parte demandante, y por disposiciones de la Ley de Sustentabilidad Fiscal de 2014, y por ser mayor de $100,000.00, pero menor de $1,000,000.00 , el remanente de la Sentencia solamente puede ser colocado en un plan de pago desde 3 años y un día hasta 4 años y no de 10 años como plantea la parte demandante.

6- Con esas modificaciones realizadas, la Guardia Nacional de Puerto Rico, estaría en principio dispuesta a adoptar un Plan de Pago mediando el aval del mismo por la Oficina de Gerencia y Presupuesto.

7- Se acompañan en Anejo, certificaciones de la Guardia Nacional de Puerto Rico que establecen que a la fecha de hoy, la GNPR no cuenta con los fondos necesarios para satisfacer la sentencia (Véase Anejos 2 y 3).

8- La Guardia Nacional de Puerto Rico continuará en gestiones de obtener el aval de la Oficina de Gerencia y Presupuesto y/o de cualquier otra entidad que por Ley se requiera para la aprobación de la asignación de fondos necesarios para el pago del remanente de la Sentencia.

**POR TODO LO CUAL** se solicita respetuosamente a este Honorable Tribunal que acoja la moción aquí presentada y en consecuencia, declare cumplida su Orden notificada el día 19 de octubre de 201 , además de cualquier otra disposición que en Derecho proceda.

**RESPETUOSAMENTE SOMETIDO.**

**CERTIFICO:** Que en el día de hoy se ha enviado copia fiel y exacta del presente escrito al **LCDO. HECTOR L. CLAUDIO** a su dirección de correo electrónico

bufetehectorclaudio@gmail.com

En San Juan, Puerto Rico, a  28 de octubre de 2016.

**HON. CESAR MIRANDA RODRIGUEZ**
**Secretario de Justicia**

**LCDA. MARTA ELISA GONZALEZ Y.**
**Secretaria Auxiliar de lo Civil**

**LCDA. WANDA RAICES ROMAN**
**Directora de Asuntos Legales**
**División de Asuntos Civiles – Daños y Perjuicios**

**LCDO. JUAN A. BARRIOS MOLINA**
**TS. 12828**
**Departamento de Justicia**
**Secretaría Auxiliar de lo Civil**
**División de Asuntos Civiles – Daños y Perjuicios**
**PO Box 9020192**
**San Juan, Puerto Rico 00902-0192**
**Tel: (787)721-2900, Ext. 2569 2520**
**Fax: (787)722-1595**
**E-mail: jubarrios@justicia.pr.gov**

RAFAEL SUAREZ DURAN
KDP 2005-2001

## DEMANDA

| SALARIO DIARIO | SALARIO A RAZON DE $3,333.00 | | TOTAL SALARIO | TOTAL DOBLE DOBLE | TOTAL DOBLE PRINCIPAL | INTERESES | | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2008 | 2009 | 2010 | | | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | |
| | 3M | 12M | 4M | | | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | |
| TOTAL | | | | SALARIO | DOBLE | | | | | | | | | | |
| | $6,999.00 | $27,995.00 | $9,333.00 | $44,327.00 | $284,262.00 | $284,262.00 | | | | | | | | | $46,014.58 |
| $ | | | | | | $ 1,413.14 | $ 5,692.52 | $ 5,692.52 | $ 5,692.52 | $ 7,692.52 | $ 5,692.52 | $ 5,692.52 | $ 3,692.52 | $ 4,743.80 | $284,262.00 |
| | | | | | | | | | | | | | | | $330,276.53 |

## HONORARIOS

| **SUMA BASICA CONCEDIDA** | $ 167,313.00 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | X 25 | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | X 2% | | |
| | 41,828.00 | 3M | | | | | | | | 10M | | |
| | -12,500 | | | | | | | | | | | $ 29,328.25 |
| PAGO POR EL ESTADO | $ 29,328.25 | $ 146.64 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 586.57 | $ 488.80 | | $ 4,741.43 |
| | | | | | | | | | | | | $ 34,069.68 |

| TOTAL A OCTUBRE 31, 2016 | $ | 330,276.58 |
|---|---|---|
| DEMANDANTE | $ | 34,069.68 |
| ABOGADO | $ | |
| TOTAL | $ | 364,346.26 |

**2**

EN EL TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| RAFAEL SUÁREZ DURAND<br>DEMANDANTE<br><br>v.<br><br>GUARDIA NACIONAL DE PUERTO<br>RICO; ESTADO LIBRE ASOCIADO<br>DE PUERTO RICO<br>DEMANDADOS | CIVIL NÚM.:K PE05-2001<br><br>SALA : 801<br><br>SOBRE: DESPIDO<br>INJUSTIFICADO |

# RESOLUCIÓN
# Y ORDEN

## I

El 21 de noviembre de 2008, se dictó Sentencia en el caso de epígrafe a favor del demandante Rafael Suárez Durand (en adelante el demandante); y se ordenó a la Guardia Nacional de Puerto Rico (la parte demandada) satisfacer las sumas de: $25,000.00 por concepto de angustias mentales; $97,986.00, por los salarios dejados de percibir; una suma equivalente al doble de las cuantías antes relacionadas; una suma equivalente al 25% de todas las sumas concedidas, por concepto de honorarios de abogado; e intereses a razón del 2% sobre las cantidades otorgadas a favor del demandante.

El 21 de mayo y 3 de junio de 2009, se ordenó a la Guardia Nacional satisfacer el pago total de la Sentencia. El 3 de agosto de 2009, tras una solicitud de desacato de la parte demandante, se concedió a la demandada un término de 30 días para satisfacer la totalidad de la Sentencia. El 30 de noviembre de 2009, tras la consignación de fondos por parte del Estado Libre Asociado de Puerto Rico, se ordenó el desembolso de los mismos a favor de la parte demandante y lo consignado fue considerado como una satisfacción parcial. El 14 de diciembre de 2009, se ordenó a la Guardia Nacional que mostrara causa para no dictar una orden de desacato en su contra por el incumplimiento total de la sentencia. El 28 de junio de 2010, la parte demandante declaró en moción en

156

2

3

cumplimiento de orden, que la deuda a su favor asciende $284,626.00, a favor del señor Suárez Durand y $29,328.25, en honorarios a favor de su abogado.

El 8 de febrero de 2011, se dictó Orden dirigida a la Guardia Nacional para que incluyera en el presupuesto del próximo año fiscal una partida de $284,626.00, a favor del señor Suárez Durand y $29,328.25, por concepto de honorarios de abogado. El 17 de marzo de 2011, reconsideramos la antes citada orden y se ordenó a la Guardia Nacional incluir para el próximo presupuesto de la Agencia una partida para satisfacer la suma neta, más el porcentaje considerado en la Sentencia por concepto de honorarios de abogado, y los intereses devengados hasta el momento de realizarse el pago.

El 15 de febrero de 2012, se ordenó nuevamente a la Guardia Nacional que incluyera en el próximo presupuesto de la Agencia una partida para satisfacer la suma neta, producto de todas las deducciones consideradas por ley, de la partida adeudada a la parte demandante; más el porcentaje correspondiente a honorarios de abogado; y, una partida para el pago de los intereses devengados hasta el momento de realizarse el pago.

El 16 de julio de 2013, se celebró una vista evidenciaria en donde se discutieron los motivos por los que la partida de fondos correspondiente al cumplimiento de la Sentencia de epígrafe no fue incluida en el Presupuesto del año fiscal 2013-2014 de la Guardia Nacional de Puerto Rico. La parte demandada presentó el testimonio del Coronel Retirado Carmelo Crespo Cabán, Oficial Ejecutivo de Asuntos Estatales de la Guardia Nacional, y de la señora Josefa Burgos Reyes, Directora de Asuntos de Finanzas de la Guardia Nacional. Ambos testigos coincidieron en que la partida adeudada al demandante fue incluida en el formulario de petición de fondos que debe ser presentado anualmente ante la Oficina de Gerencia y Presupuesto (OGP). No obstante, la OGP no incluyó la partida adeudada en el caso de autos en el Memorial Explicativo que finalmente se presentó ante la Legislatura para la aprobación del Presupuesto 2013-2014. De acuerdo con el Coronel Crespo Cabán, la OGP no incluyó la partida adeudada al demandante en el Memorial Explicativo porque no había dinero para satisfacer la Sentencia. Asimismo, según la testigo

3

4

Burgos Reyes, el presupuesto recomendado a OGP incluía esta Sentencia, pero en el Memorial Explicativo aprobado por la OGP, no.

## II

El Artículo 7 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. sec. 3077a, conocida como la "Ley de Reclamaciones y Demandas contra el Estado", dispone lo siguiente respecto al pago de deudas por sentencias dictadas en contra del Estado:

> "El Estado satisfará prontamente cualquier fallo en su contra hasta el máximo señalado en la sec. 3077 de este título. Si se tratase del pago de una suma de dinero y no fuere posible hacerlo por no existir fondos en el presupuesto corriente, se hará la correspondiente asignación de fondos para su pago en la parte del presupuesto general de gastos del siguiente año del departamento o agencia correspondiente."

En *Librotex, Inc. v. A.A.A.*, 138 D.P.R. 938, 942-943 (1995), el Tribunal Supremo de Puerto Rico expresó que el embargo de fondos públicos no procede como mecanismo para hacer que una agencia cumpla con una orden judicial. No obstante, sí es viable ordenar a la agencia que incluya la partida adeudada en su próximo presupuesto, más los intereses devengados hasta el momento en que se realice su pago. En el citado caso, la Autoridad de Acueductos y Alcantarillados (AAA) había incumplido con una sentencia que superaba los dos millones de dólares. Fue tomado conocimiento judicial de la crisis que atravesaba la corporación pública como consecuencia de múltiples factores, entre ellos la sequía que afectaba al país desde hacía un año. *Librotex* v. *A.A.A., supra*, a la pág. 942. En consideración a tales hechos, el Tribunal Supremo declinó ordenar el embargo de los bienes del Estado para dar cumplimiento a la Sentencia y manifestó que "las consecuencias extraordinarias que el embargo tendría sobre dicha entidad requiere que reconozcamos esta protección". *Id.*, a la pág. 942.

En el caso que nos ocupa, el Tribunal ha emitido varias órdenes para que la demandada Guardia Nacional cumpla y satisfaga la totalidad de la Sentencia a favor del demandante Suárez Durand. Se le ha ordenado, a

054

4

5

su vez, que incluya una partida en el Presupuesto Anual de la Agencia para que cumpla con la Sentencia dictada en su contra. No obstante, la misma aún no ha sido satisfecha. Según se desprende de la prueba presentada por la parte demandada durante la vista de 16 de julio de 2013, la Guardia Nacional sí incluyó el dinero adeudado a favor del demandante en la petición de fondos dirigida a la OGP. Sin embargo, la OGP excluyó la partida por la alegada insuficiencia de fondos; y no la incluyó en el Memorial Explicativo que finalmente fue sometido ante la Legislatura para la aprobación del Presupuesto del Año Fiscal 2013-2014.

Conforme con los hechos particulares de este caso, resolvemos que procede incluir nuevamente la partida adeudada, según la Sentencia dictada en el caso de epígrafe, en la petición de fondos para el Presupuesto del Año Fiscal 2014-2015 de la Guardia Nacional de Puerto Rico. Asimismo, procede ordenar a la Oficina de Gerencia y Presupuesto que incluya la referida partida de fondos en el Memorial Explicativo que será dirigido a la Legislatura para la aprobación del Presupuesto del Año Fiscal 2014-2015.

**III**

Por los fundamentos antes expuestos, dictamos la siguiente:

# ORDEN

Se ordena a la demandada Guardia Nacional de Puerto Rico incluir en el próximo presupuesto de la Agencia: una partida para satisfacer la suma neta, producto de todas las deducciones consideradas por ley, de la partida adeudada a la parte demandante de epígrafe por concepto de salarios dejados de percibir, según sentencia dictada a su favor; más el porcentaje considerado en la misma sentencia por concepto de honorarios de abogado, calculado el mismo sobre el monto neto de los salarios dejados de percibir. También deberá incluirse una partida para el pago de los intereses devengados hasta el momento de realizarse el pago.

Se ordena a la Oficina de Gerencia y Presupuesto incluir la partida de fondos para satisfacer la Sentencia a favor del demandante, según solicitada por la Guardia Nacional en la petición de fondos, en el Memorial

055

5

6

Explicativo que será presentado ante la Legislatura para la aprobación del Presupuesto del Año Fiscal 2014-2015 de la Guardia Nacional de Puerto Rico.

Copia de la presente deberá ser diligenciada por la parte demandante en la Oficina de Gerencia y Presupuesto, a tenor con las Reglas de Procedimiento Civil.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, a 30 de octubre de 2013.

OLGA GARCÍA VINCENTY
JUEZ SUPERIOR

1 8 0

056

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

25

**RAFAEL SUAREZ DURAND**

Demandante

v.

**GUARDIA NACIONAL DE
PUERTO RICO y/o ESTADO
LIBRE ASOCIADO DE PUERTO
RICO**

Demandados

CIVIL NÚM.: K PE2005-2001
(801)

SOBRE:

DESPIDO ILEGAL

## SENTENCIA

El demandante Rafael Suarez Durand radicó la presente demanda
contra la Guardia Nacional de Puerto Rico el 9 de junio de 2005; siendo la
misma la enmendada el 4 de abril de 2008. Se alega en la demanda
enmendada, que el demandante fue despedido en represalia por haber
prevalecido en una reclamación de salarios contra la Guardia Nacional y por
problemas de salud.

La querellada presentó alegación responsiva negando las alegaciones
sobre sus actuaciones. Levantó como defensas afirmativas que no existe
relación causal entre los daños y las actuaciones de la agencia; prescripción;
que las sumas reclamadas son exageradas; que los daños fueron causados
por otra entidad; que aplicaban las disposiciones de la Ley de Pleitos Contra
el Estado y que el demandante no agotó remedios administrativos. Ningún
otro hecho o defensa afirmativa fue alegada por la Guardia Nacional. La
agencia nunca presentó alegación afirmativa contra la demanda enmendada.

De esta forma quedó trabada la controversia entre las partes, y luego
de agotado el descubrimiento de prueba, se celebró vista en su fondo el 24

1

115

de septiembre de 2008. A la vista compareció el demandante asistido por el

licenciado Héctor L. Claudio Rosario. En representación de la Guardia

Nacional compareció el licenciado Juan A. Barrios Molina.

Declararon por la parte demandante el Sr. Rafael Suarez Durand. Por

la parte demandada testificó el Sr. Angel L. Miranda Ortíz.

Evaluada la totalidad de la prueba ventilada durante el juicio, y

considerando el crédito que esta le merece, el Tribunal formula las

siguientes:

### DETERMINACIONES DE HECHOS

El demandante Rafael Suarez Durand (en adelante Suarez), comenzó a

trabajar con la Guardia Nacional el 2 de marzo de 1981. Se desempeñaba

como policía militar estatal I, empleado civil. Trabajaba bajo la supervisión

del Sr. Raúl Vázquez.

Suarez trabajaba en tres (3) turnos rotativos distintos. Uno de 6:00am

a 2:00pm, otro de 2:00pm a las 10:00pm y otro de 10:00 a 6:00am. El

devengaba un salario de $2,333.00 mensuales.

La relación de empleo de Suarez con su patrono fue buena hasta que

prevaleció en una reclamación de salarios contra la Guardia Nacional en o

alrededor del mes de noviembre de 2000. La prueba no controvertida

establece que el trato de los gerenciales de la agencia hacía Suarez cambió a

partir de esa fecha. Las relaciones se enfriaron. Ya no lo saludaban, lo

miraban serio. Además Suarez, quien nunca había sido amonestado previó a

que prevaleciera en su reclamación de salarios, comenzó a ser objeto de

amonestaciones falsas y sanciones desproporcionales con las sanciones que

imponía el Manual de empleados de la agencia.

La primera acción disciplinaria contra el demandante fue por hechos

alegadamente ocurridos el 14 de agosto de 2001. Se le imputaba a Suarez

haber abandonado su área de trabajo y haber descuidado su arma de fuego.

2

*27*

La investigación estuvo inicialmente a cargo del mayor Lucas Velázquez, quien luego de terminar su investigación, concluyó que no existía base suficiente para una formulación de cargos contra Suarez. Suarez declaró que el informe de investigación del mayor Lucas confirmaba su declaración de que las imputaciones eran falsas.

No empece a lo anterior, la Guardia Nacional ordenó una nueva investigación. Esta vez le asignó la investigación al supervisor Angel L. Miranda Ortiz (en adelante "Miranda").

El Sr. Miranda fue parco y/o vago al testificar durante el juicio sobre los cargos imputados a Suárez por los hechos alegadamente ocurridos el 14 de agosto de 2001. No tenía conocimiento personal sobre los hechos. Solo testificó en su directo que trabajo la investigación para septiembre de 2002 y que refirió su informe para que tomaran las acciones disciplinarias pertinentes. Nada declaró en su directo sobre los hechos revelados por su investigación, las personas entrevistadas y/o documentos revisados. No pasó prueba sobre los hechos que reveló su investigación.

Es durante el contrainterrogatorio que Miranda admite que la investigación se realizó porque el Sargento José R. Caraballo (en adelante Caraballo) alegó que el 14 de agosto de 2001 fue a la caseta de seguridad a la que estaba asignado Suarez y no lo encontró presente en la caseta. Además, Caraballo alegó que encontró un arma y una gorra descuidada en la caseta de seguridad.

Miranda admite que las normas de la Guardia Nacional requieren que Caraballo anotara ese alegado incidente en un libro de novedades. Sin embargo, Miranda admite Caraballo no había realizado anotación alguna en el libro de novedades. Nada anotó en el libro de novedades sobre el alegado abandono de puesto y descuido de arma. Miranda admitió que la conducta de Caraballo no fue correcta.

117
059

*28*

Con el testimonio de Miranda concluyó toda la prueba por parte de la Guardia Nacional. Con excepción del demandante, no hubo testigo alguno que tuviera conocimiento personal de los hechos. No se presentó persona alguna en sala que pudiera refutar las alegaciones del demandante de que los cargos imputados eran falsos. Tampoco se presentó persona alguna en sala que participara en la toma de decisión de disciplinar al demandante el 4 de febrero de 2003. Miranda admitió que no participó en la decisión de disciplinar al demandante y que estaba fuera de Puerto Rico cuando se tomó la decisión.

El testimonio de Miranda crea sospechas sobre la credibilidad de los cargos imputados porque no entró a discutir los detalles de su investigación. El único testimonio que aportó en cuanto a los hechos de su investigación es que la persona de acusó al demandante había actuado de manera incorrecta. Su testimonio es aun más sospechoso porque la persona que realizó la primera investigación, mayor Lucas, concluyó que no había razón para disciplinar al demandante.

Lo injusto de la amonestación se demuestra por el hecho de que por ese incidente suspendieron al demandante de empleo y sueldo por 30 días. Ello a pesar de que el Manual de Empleados de la Guardia Nacional dispone específicamente que el "abandonar los predios de vigilancia durante turnos de trabajo, sin notificación y autorización del supervisor, y dejar de anotarlo en el Libro de Novedades" conlleva una mera reprimenda escrita cuando ocurre por primera vez. La prueba no controvertida establece que esta era la primera vez que se disciplinaba al demandante en sus más de veinte (20) años de trabajo.

La prueba no controvertida establece que el ambiente de trabajo del demandante se agravó cuando desarrolló una condición en el estómago a

4

finales del año 2003. Suarez tenía el efíter del estómago cerrado y vomitaba todo lo que comía.

**29**

La Guardia Nacional tenía conocimiento de la condición de salud del demandante. Suarez declaró que sus jefes lo veían vomitando en los turnos diurnos y que comenzó a tener algunas ausencias para atender su condición.

El historial de ausencias del demandante era excelente previo a que desarrollara su condición estomacal. Suarez no se ausentaba a su empleo. El demandante presentó evidencia de que todos los años la Guardia Nacional le pagaba el exceso de los 90 días acumulados de enfermedad porque no se ausentaba por dicha razón.

Así las cosas, el 1 de marzo de 2004 la Guardia Nacional acusó falsamente al demandante de abandonar su trabajo. La agencia le imputó que había abandonado su puesto porque la persona que lo fue a sustituir, Sr. Carlos L. Buitrago, no lo vio cuando llegó a su turno a las 5:45am el 1 de marzo de 2004. Ese día el turno del demandante comenzaba a las 10:00pm del 29 de febrero y terminaba el 1 de marzo a las 6:00am.

El demandante demostró que tal imputación era falsa porque trabajó el 1 de marzo de 2004 hasta las 6:00 de la mañana. Demostró preponderantemente que era falso que el Sr. Carlos Buitrago lo fue a sustituir ese día a las 5:45am. Explicó que conforme al uso y costumbre entre las partes, su jefe, Raúl Vázquez, le hubiese notificado que Buitrago era su sustituto para que se lo informara por anticipado al cuartel general. Además, explicó que en la hoja de reporte de armerías de 1 de marzo de 2004 hubiese revelado que el Sr. Carlos Buitrago lo sustituyó en su puesto ese día. Aclaró que toda persona que trabajara el turno de seguridad tenía que anotarse en la hoja de reporte de armerías. La parte demandante presentó en evidencia la hoja de reporte de armerías del 1 de marzo de 2004. En dicha

5

hoja no aparece que Carlos Buitrago sustituyera al demandante en su turno ese día.

*30*

Cabe señalar que el demandante estaba libre ese día. Él Sr. Raúl Vázquez curiosamente le solicitó a Suarez que fuese a trabajar ese día como favor a otro compañero. El demandante hizo el favor y fue a trabajar. Suarez sostiene que su jefe Raul Vázquez y el Sr. Carlos Buitrago acordaron imputarle falsamente que no había trabajado hasta las 6:00am. Sostiene que Vázquez y Buitrago no estaban en la caseta de seguridad ese día a las 5:45am.

El demandante tuvo que someterse a una operación el 18 de febrero de 2005 para tratar su condición estomacal. La Guardia Nacional continuó su investigación administrativa y despidió al demandante a la semana de regresar de su operación, a saber; 17 de abril de 2005.

La Guardia Nacional **no presentó prueba** para justificar el despido del demandante. El único testigo de la Guardia Nacional, Sr. Angel L. Miranda Ortíz, no tenía conocimiento de los hechos relacionados con el despido del demandante. Tampoco trabajó en la investigación, si alguna. Las únicas personas que pudieran tener conocimiento de los hechos, Sres. Raúl Vázquez y Carlos Buitrago, no fueron anunciados como testigos.

Una vez más, la sanción que le impuso la Guardia Nacional se desvió de lo establecido en el Manual de Empleado. La Guardia Nacional lo despidió cuando el Manual de Empleados dispone que, de ser ciertas las alegaciones de la agencia, procedía una suspensión temporera de empleo y sueldo. No procede el despido como sanción por un alegado abandono de trabajo por segunda ocasión según las normas del patrono.

La única prueba relacionada con la terminación del demandante son sus alegaciones de que fue despedido en represalia por prevalecer en su reclamación salarial contra la agencia y sus problemas de salud. La

6

demandada no presentó prueba en contrario. La agencia se limitó a presentar

las formulaciones de cargos contra el demandante por los alegados hechos

de 14 de agosto de 2001 y 1 de marzo de 2004. Esos documentos, por sí

solos, no constituye prueba de los hechos alegados. Solo demuestra que el

demandante recibió esas formulaciones de cargos. La persona que preparó

las formulaciones de cargo no fue presentada en el juicio, ni establece que la

persona que preparó las formulaciones de cargos tuviese conocimiento de

los hechos.

El demandante lució afectado y lloroso mientras declaraba sobre los

daños que le ocasionó el despido. Suarez explicó como el despido le afecto

sus nervios. Su autoestima bajo y lloraba cuando pensaba en el despido.

Narró que el despido ocasionó que perdiera su derecho bajo el plan de retiro

de los empleados de la Guardia Nacional.

## CONLUSIONES DE DERECHO

### A. Elementos de la causa de represalia en el empleo

La Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194 et seq.,

también conocida como la Ley de Represalias, se creó para proteger a los

empleados contra cualquier medida de discriminatoria que pueda tomar un

patrono contra éstos por ofrecer cualquier tipo de testimonio, expresión o

información ante un foro legislativo, administrativo o judicial. **Ocasio v.**

**Kelly Servs., Inc.**, 2005 T.S.P.R. 4, 2005 J.T.S. 9, 163 D.P.R. _ (2005).

Entre las conductas vedadas al patrono se incluye: despedir, amenazar o

discriminar al empleado con relación a los términos condiciones,

compensación, ubicación, beneficios o privilegios del empleo. 29 L.P.R.A.

sec. 194ª (a).

Cualquier empleado que alegue que su patrono incurrió en alguna de

estas conductas podrá instar una acción civil dentro de tres años de la fecha

en que ocurrió la violación y solicitar que se le compense por los daños

7

sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de percibir, beneficios y honorarios de abogado. 29 L.P.R.A. sec. *32*

194ª (b). "La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones." 29 L.P.R.A. sec. 194ª(b).

Para establecer un caso prima facie de represalia el empleado solo tiene que establecer mediante prueba directa o indirecta: (1) que participó en una de las actividades protegidas y (2) que subsiguientemente fue despedido o amenazado o fue víctima de discrimen en el empleo. **Marín v. Fastening Systems, Inc.,** 142 D.P.R. 499, 511 (1997). En **Irizarry v. J & J Cons. Prod. Co, Inc.,** 150 D.P.R. 155, 170 (2000) el Tribunal Supremo concluyó que acudir al Fondo de Seguro del Estado para acogerse a sus beneficios por incapacidad ocupacional es una actividad protegida al amparo de la Ley de Represalias. El demandante en este caso participó en actividad protegida al prevalecer en una reclamación de salarios contra la Guardia Nacional.

La ley 115 crea una presunción juris tantum a favor del empleado que el patrono deberá rebatir presentando evidencia de que tenía una razón legítima y no discriminatoria para la conducta que el empleado alega constituye la represalia. Si el patrono logra rebatir la presunción de conducta violatoria, el empleado todavía puede prevalecer si establece que la alegada razón del despido u otra conducta discriminatoria es un mero pretexto. Id.

Destacamos que las leyes laborales deben ser interpretadas liberalmente, resolviendo toda duda a favor del obrero, para así cumplir con sus propósitos eminentemente sociales y reparadores. *Irizarry v. J & J Cons. Prod. Co., Inc.,* 150 D.P.R., a la pág. 154.

En el caso de autos el demandante presentó prueba contundente para establecer el caso prima facie sobre el hecho específico del despido por

8   128

represalia. La prueba no refutada estableció que el demandante prevaleció en una reclamación de salarios contra la Guardia Nacional.

*33*

El demandante, quien nunca había sido amonestado, comenzó a ser objetos de acciones disciplinarias injustificadas después de haber prevalecido en su pleito contra la agencia. Ese hecho no fue refutado por la Guardia Nacional. Ésta última ni siquiera presentó prueba en el juicio para justificar el despido del demandante.

Por consiguiente, es forzoso concluir que el demandante estableció un caso prima facie de represalia en el empleo. El paso siguiente es determinar si el patrono pudo rebatir la presunción de represalia establecida por la ley.

El patrono no alegó en su contestación a la demanda que el despido fue justificado. Como mencionáramos anteriormente, tampoco presentó prueba para justificar el despido en el juicio. Su único testigo, Sr. Angel L. Miranda Ortíz no tiene conocimiento personal de los hechos que dieron lugar al despido. No se anunció o presentó testigo alguno para probar los hechos alegadamente ocurridos el 1 de marzo de 2004. Por el contrario, la prueba presentada en juicio demuestra que tales hechos no ocurrieron. La prueba del patrono no rebate la presunción de represalia establecida por la ley y la parte demandante. El testimonio del demandante tampoco fue refutado.

En este caso da la casualidad de que la Guardia Nacional comienza a disciplinar al demandante por primera vez, en más de veinte años, después de que el obrero prevaleciera en una reclamación salarial. Ese hecho, el testimonio no refutado del demandante y la ausencia de prueba de la Guardia Nacional para justificar el despido, hace forzoso concluir que el despido se realizó en represalia por el resultado de la reclamación salarial.

**B. Elementos de la causa bajo el Artículo 1802 del Código Civil**

9

123   065

*34*

En **Arroyo v. Rattan Specialties, Inc.**, 117 D.P.R. 35 (1986), el Tribunal Supremo resolvió que todo trabajador u obrero puede acudir a los tribunales para reclamar cualesquiera daños que se le hubieran ocasionado y que sean atribuibles al patrono. De este modo, un obrero puede acudir a los tribunales para solicitar el resarcimiento de los daños sufridos como consecuencia de la lesión a sus derechos constitucionales, como lo son el derecho a la intimidad y el derecho a la protección contra ataques a la honra y a la reputación personal. Véanse además, **Acevedo v. Western Digital Caribe, Inc.**, 140 D.P.R. 452 (1996); **Porto y Soriano v. Bentley P.R., Inc.**, 132 D.P.R. 331 (1992).

En **S.L.G. v. Royal Bank de P.R.**, 145 D.P.R. 178 (1998), el Tribunal Supremo dispuso lo siguiente:

"[Q]ueda claro que cuando un obrero contratado sin tiempo determinado es despedido sin justa causa, y además, ha sido objeto de actuaciones que lesionan su derecho a la intimidad o que son

constitutivas de ataques a su integridad personal, puede reclamar el pago de la compensación económica por concepto de la mesada y puede, también, instar una acción para reclamar los daños y perjuicios que dichas actuaciones le han causado. **En tal caso la reclamación de daños se da en función de las actuaciones antijurídicas independientes al hecho del despido que resultan indemnizables al amparo de nuestro ordenamiento jurídico.** Claro está, si luego de que el obrero querellante presenta toda su prueba queda demostrado que tan sólo hubo un despido injustificado y que no mediaron actuaciones antijurídicas compensables bajo el artículo 1802 del

10

durante el tiempo en que transcurra luego del 30 de septiembre de 2008, sin

que la Guardia Nacional reinstale a Suarez;

d- una suma equivalente al 25% de todas las sumas básicas concedidas a Suarez (las ya establecidas y aquellas que se acumulen por razón de cualquier dilación en el cumplimiento de esta sentencia), por concepto de honorarios de abogado a ser pagados directamente al Lcdo. Héctor L. Claudio;

e- intereses a razón del 6.00% anual sobre las sumas indicadas a computarse desde hoy. Se le advierte a la Guardia Nacional, que de negarse a reinstalar a Suarez en su puesto, siendo dicha obligación una de "hacer", podría ser encontrado incurso en desacato y procesado como tal con las consecuencias legales que ello implica.

Se apercibe a la Guardia Nacional de cesar y desistir de toda práctica discriminatoria contra Suarez una vez éste sea reinstalado.

**REGISTRESE Y NOTIFIQUESE.**

**DADA** en San Juan, Puerto Rico, hoy 21 de noviembre de 2008.

CARMENCITA BURGOS PABÓN
JUEZA SUPERIOR

067