# Exhibit A

COMMONWEALTH OF PUERTO RICO
COURT OF APPEALS
PANEL IV

| | | |
|---|---|---|
| WPR LA CERÁMICA LP, S.E.<br>**Respondent**<br>v.<br>COMMONWEALTH OF PUERTO RICO; DEPARTMENT OF THE FAMILY<br>**Petitioners** | KLCE202101045 | CERTIORARI from the Court of First Instance, Court of Carolina<br><br>Civil Case No.: CA2020CV00895<br><br>Collection of Money |

Panel comprised of its chairwoman, Judge Cintrón Cintrón, as well as Judges Pagán Ocasio and Barresi Ramos.

Cintrón Cintrón, Judge Rapporteur

**JUDGMENT**

In San Juan, Puerto Rico, on November 15, 2021.

The Department of the Family appears before us, through the Office of the Attorney General (Department or petitioner), and requests that the *Resolution* notified by the Court of First Instance, Superior Court of Carolina (CFI) on May 26, 2021, be revoked. Through the aforementioned determination, the CFI validated clause forty-two which had been included through an amendment to the lease agreement signed by and between the above-captioned parties. In turn, it declared the requests for summary judgment brought before it to be *Inadmissible*.

For the reasons that we will explain below, we hereby issue the requested writ of *certiorari* and revoke the appealed resolution.

I.

According to the case record, on March 1, 2014, WPR La Cerámica LP, S.E. (hereinafter, WPR or appellant) signed a lease agreement in which it appeared as the lessor and the Department of the Family as the lessee. Through it, a store located in

Identifying Number
SEN2021 _____

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Carolina was leased, for use as a central warehouse. On August 7, 2018, the parties amended the agreement to reduce the leased area and agreed to a monthly fee of $19,479.17. Specifically, the amendment led to Clause Forty-Two of the agreement providing the following:

> TERM: This agreement shall be valid from March 1, 2014, until February 28, 2019, subject to the availability of funds. After February 28, 2019, should the LESSEE continue to occupy the leased property, it shall pay the agreed monthly amount ($19,479.17) on a month-to-month basis until such time as the agreement is renewed or the LESSEE returns the key and vacates the property. The fees shall be paid from the account numbers identified by the FIRST PARTY.

Thus, on March 9, 2020, WPR filed a money collection lawsuit against the State and the Department of the Family. It alleged that, in accordance with clause forty-two of the amendment to the lease agreement, the agreement ended on February 28, 2019, unless the Department continued to occupy the premises, in which case, it would be extended on a month-to-month basis. It argued that the Department remained occupying the premises until August 2019, and therefore the agreement was extended on a month-to-month basis at a fee of $19,479.17. It added that the Department paid them the rent for June 2019, but not the one for the months of May, July, and August of said year. To this end, it stated that it was the creditor of $58,115.13, a debt that, according to it, was due and payable.

In turn, on August 6, 2020, the Department answered the lawsuit. In the pertinent part, it argued against the clause on which WPR based its claim, because it understood that it involved applying the doctrine of renewal by tacit agreement against the State. Specifically, it reasoned that the aforementioned doctrine was not compatible with the laws and jurisprudence that regulate government contracting. Therefore, it asked the CFI to declare *Inadmissible* the lawsuit filed against it.

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 4 of 16

KLCE202101045  Page **3** of **14**

After several formalities, on December 15, 2020, WPR requested the primary forum to issue a summary judgment in its favor. It alleged that there was no dispute regarding the following facts: (1) that a lease agreement and its subsequent amendment had been properly executed and formalized by and between the parties; (2) that the term of the agreement in question was from March 1, 2014, to February 28, 2019; (3) that during the term of the agreement, said agreement was amended to reduce the leased space and the monthly fee; (4) that the expiration date continued to be February 28, 2019, and the amendment specified that, should the Department continue to occupy the premises, the agreement would extend on a month-to-month basis until renewed or terminated, and (5) that on February 28, 2019, the Department continued to occupy the leased building for a term of six (6) months, from March to August 2019, until the contract ended due to the sale of the leased premises to a third entity.

As a result of the above, WPR argued that the agreement and the amendment in question met the requirements of the law applicable to agreements between the government and a private entity, since both were recorded in writing and registered with the Comptroller's Office within 15 days of being granted. In addition, it stressed that it was not a retroactive agreement because the amendment was made within the term of the original agreement. On the other hand, it argued that clause forty-two was recorded in writing, so it was not correct to refer to the procedure of renewal by tacit agreement. To this end, it reasoned that said clause complied with the provisions of applicable jurisprudence, since it prevented the State from unjustifiably profiting at the expense of the private entity in those situations where the State continued to occupy the leased premises after the expiration date of the contract. Therefore, it maintained that the aforementioned stipulation was valid and effective in law in all its parts. In relation to the claimed debt, WPR indicated that the Department had satisfied

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 5 of 16

KLCE202101045                                                                 Page **4** of **14**

the payments for March, April, and June 2019, but not those for May, July, and August 2019, generating a debt of $58,115.13 that was past due and payable.[1]

In turn, on December 15, 2020, the Department filed a motion for summary judgment. In its writ, it specified that the clause in question violated the regulations on government contracting and the proper management of public funds. It stressed that WPR was wrong to file the money collection lawsuit based on the amendment to the lease agreement in question. It emphasized that the aforementioned clause agreed to apply the procedure of renewal by tacit agreement to the lease in which one party is a government entity. In accordance with the above, it alluded that said agreement was contrary to law, since **its open and indefinite language,** related to the end of the lease, with the purpose of self-renewing month to month, constituted another contract that was not in writing and lacked the formalities required for government contracting. Thus, it highlighted that the language of the amendment failed to comply with the applicable jurisprudential and legislative provisions due to its ambiguity and uncertainty in the public funds necessary to cover the new month-to-month agreement without a certain or specific termination date. It argued that it would have been different if the parties had agreed to amend the agreement for an additional term period or use economic penalty clauses for the occupation of the property after the validity period of the contract. In short, the Department required the CFI to issue a summary judgment in its favor.[2] WPR opposed the aforementioned motion in a timely manner and reiterated its previous arguments.

---

[1] It attached a copy of the following documents to its request: lease agreement, the amendment made in 2018, lease fee invoices for the months of May, July and August 2019, certification of payments made to WPR by the Department of the Family dated September 2, 2020, checks issued in favor of WPR, Affidavit of April Carol Niedda, WPR Controller, and emails between WPR and the Department.
[2] It included a copy of the lease agreement and the amendment made in 2018 along with its request.

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 6 of 16

KLCE202101045 Page **5** of **14**

At this point, on May 20, 2021, the primary court issued the resolution that we are reviewing today. As we anticipated, the Court decreed the legality of clause forty-two included in the amendment to the lease agreement that concerns us. In turn, it denied the requests for summary judgment submitted by the parties. In the pertinent part, the CFI stated the following:

> In this case, it is not possible to speak of renewal by tacit agreement, but of an express will of the contracting parties to continue with the month-to-month lease for the same amount of the agreed fee until one of two events occurs. Namely, that the Department vacate and surrender the property, or until the lease is renewed.
>
> …
>
> The fact that a set date for the termination of the contractual relationship was not included does not invalidate the agreement; especially when it was left to the State to vacate the property. Rather, in this case it is a kind of mutually agreed penalty clause which has the effect of holding the State pecuniarily responsible for their permanence in a private place. For a contract with a government entity to be valid, certain requirements must be met and these requirements are met in this case.
>
> …

On the other hand, the court *a quo* determined that the case before us presented a real and substantial dispute as to whether the fee for the month of May 2019 was paid. Due to the foregoing, it concluded that WPR must present proof that this fee is owed to it in a plenary trial.

Dissatisfied with the ruling, on June 10, 2021, the State, acting on behalf of the Department of the Family, requested reconsideration, which WPR promptly opposed. By Resolution issued on July 23, 2021, the CFI rejected the aforementioned petition. In view of this, the Department of the Family, through the Office of the Attorney General, comes before this Forum and points out to the CFI the commission of the following error:

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 7 of 16

KLCE202101045 Page **6** of **14**

> The Court of First Instance erred by declaring the Motion for Summary Judgment filed by the petitioner inadmissible, given that clause forty-two of the Amendment to the Lease Agreement is invalid, and hence the respondent party has no right to recover any debt for rental fees in accordance with the most basic principles of government contracting that govern our legal system.

With the appearance in the court of the appealed party, we proceed to issue a ruling.

II.

A.

Article 1456 of the Civil Code of Puerto Rico, 31 LPRA sec. 4063, provides that when a lease agreement ends and the lessee continues to enjoy the property leased for fifteen (15) days with the consent of the lessor, renewal by tacit agreement occurs.[3] The renewal by tacit agreement does not mean an extension of the original contract, but rather a new contract. *Dalmau v. Hernández Saldaña*, 103 DPR 487, 490 (1975). This is so because, by express provision of the law, the lease ceases when its term expires, thus ending the original contract. *Cesani Vargas v. Superior Court*, 92 DPR 239 (1965). However, when the requirements for renewal by tacit agreement are met, that contract is renewed. *Id.* A new contract arises from the tacit agreement, the term of which is not the same as the one stipulated in the original agreement, but rather the one provided for in articles 1467 and 1471 of the Civil Code, 31 LPRA secs. 4083 and 4092.

---

[3] Civil Code applicable to the facts of the case before us.

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 8 of 16

KLCE202101045 Page **7** of **14**

In order for renewal by tacit agreement to operate, the following requirements must be met: (1) that at the end of the lease agreement the lessee is still enjoying the leased property for 15 days; (2) that it does so with the consent of the lessor, and (3) that there has been no prior petition, that is, an expression made by either party to the other party of their will to terminate the lease. *Dalmau v. Hernández Saldaña*, supra. In other words, the lease ends *ipso facto* due to the expiration of the term, unless there is renewal by tacit agreement due to the permanence of the lessee in the enjoyment of the property with the consent of the lessor. However, as this consent is presumed, it derives from its silence and tolerance of the fact of the tenant's possession of the object of the contract, some act is needed to disprove that presumption, and this act is the petition made to the tenant to terminate the contract. *Leon Parra v. Gerardino*, 58 DPR 489, 494-495 (1941).

Moreover, government contracting is considered a matter of high public interest. Therefore, the laws that govern it aspire to promote not only a healthy and correct public administration, but also to prevent waste, corruption, and cronyism. *Vicar Builders v. Commonwealth*, 192 DPR 256, 263 (2015); *ALCO Corp. v. Mun. of Toa Alta*, 183 DPR 530, 537 (2011); *CMI Hospital v. Dept. Health*, 171 DPR 313, 320 (2007). Given this reality, the rules that govern contracting between private and public entities are rigorous and restrictive in application. *Vicar Builders v. Commonwealth*, supra. The effectiveness of this type of contract is determined based on special statutes that regulate it, and not according to general contract theories. *ALCO Corp. v. Mun. of Toa Alta*, supra, p. 537, citing *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 1000 (2009).

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 9 of 16

KLCE202101045 Page **8** of **14**

With a view to achieving the sound administration of public funds, there is legislation to establish control over their disbursement and over government contracting. *Rodríguez Ramos et al. v. Commonwealth et al.*, 190 DPR 448 (2014). To this end, Act No. 230 of July 23, 1974, as amended, known as the *Puerto Rico Government Accounting Act*, 3 LPRA sec. 283a, establishes as a public policy to maintain a "prior control of all government operations"; that the accounting of the Government of Puerto Rico "constitute an effective control over the income, disbursements, funds, property and other government assets"; and that "government spending take place within a framework of utility and austerity."

In line with the above, the jurisprudence has established certain procedural requirements that are essential for the legal transaction involving the Government to be valid and enforceable; namely: (1) record the contract in writing; (2) maintain a record to establish its existence; (3) send a copy to the Office of the Comptroller of Puerto Rico, and (4) certify the certainty of time, namely, that the contract was made and signed fifteen (15) days before. These requirements are intended to serve as a verification mechanism to preserve legal transactions, as well as to avoid fraudulent payments and claims. *Vicar Builders v. Commonwealth*, supra, p. 264; *Ocasio vs. Mayor of Mun. of Maunabo*, 121 DPR 37, 54 (1988). Once the aforementioned requirements are met, contracts will be valid and enforceable and will enjoy the openness that our legal system requires for the sound administration of public policy in terms of government contracting. *ALCO Corp. v. Mun. of Toa Alta*, supra, p. 538, citing *Johnson & Johnson v. Mun. of San Juan*, 172 DPR 840, 853 (2007).

However, in *Vicar Builders v. Commonwealth*, supra, p. 267, the Supreme Court established that the law and powerful reasons of public policy make it impossible for the concept of renewal by tacit agreement to apply in government contracting. Accordingly, the highest court concluded that the nature of renewal by tacit agreement

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc:
Exhibit A - Certified Translation Page 10 of 16

KLCE202101045  Page **9** of **14**

is not compatible with the laws or jurisprudence that regulate government contracting. It explained that when said concept operates, a new contract arises through a tacit agreement between the parties that emanates from the behavior of the lessor and the lessee. See *Dalmau v. Hernández Saldaña*, supra. To this end, it pointed out that a contract to which the State is a party cannot arise from a tacit agreement or from the actions of the parties. *Vicar Builders v. Commonwealth*, supra.

Likewise, in *Vicar Builders v. Commonwealth*, supra, pp. 267-268, the Supreme Court expressed:

> Therefrom arises the incompatibility of both legal concepts. If there is a written government contract, there can be no talk of renewal by tacit agreement. Likewise, if the requirements for renewal by tacit agreement are present, there is no written contract that meets the requirements required to bind the State. In other words, a new contract would arise that is not in writing, has not been registered, and has not been sent to the Comptroller's Office.
>
> The statutory requirements that exclude the application of the concept of renewal by tacit agreement are irremediable. It could be argued that the new contract that tacitly arises can be recorded in writing later and sent to the Comptroller's Office, in compliance with its demands. In that case, however, we would be allowing a practice that this Court has previously struck down --retroactive government contracting. See *ALCO Corp. v. Mun. of Toa Alta*, supra. That is to say, one party would be enjoying a leased property for a time without there being a valid and enforceable contractual relationship. If the parties decide to put in writing the agreement that arises from the renewal by tacit agreement, the binding effect would emerge after one party has obtained a benefit or enjoyed the leased property. If we allow this scenario, we would be endorsing a contract that includes a prior obligation under which the parties have already provided performances. That is precisely what this Court has previously prohibited.
>
> Applying the concept of renewal by tacit agreement would grant the State a way to evade compliance with the requirements imposed in the aforementioned statutes and which this Court has recognized as necessary for a government contract to be legally valid. We would be opening the door for the State to tacitly renew contracts that, due to lack of publicity, cannot be audited by third parties and distort the reality contained in the contract records. We cannot support the application of this concept when its effect would be to reduce the transparency of business deals involving the government and allow the government to grant contracts for a term longer than that

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 11 of 16

KLCE202101045 Page **10** of **14**

expressed in the written contract. That is precisely what the laws in question are intended to eradicate.

Along the same lines, the Supreme Court ruled that a tacit extension of the term of a lease agreement with the State is null and void. See *Fernández & Gutiérrez v. Mun. of San Juan*, supra. Therefore, it is necessary that parties that contract with government entities comply with the requirements of the applicable laws. *CMI Hospital v. Dept. Health*, supra, p. 321.

Thus, in order to avoid irregular circumstances where the State can profit unjustifiably, the parties must be meticulous when granting their contracts. *Vicar Builders v. Commonwealth*, supra. In other words, the text of the clauses of an agreement will be decisive when deciding what is appropriate when a lease agreement with the government expires. Only in this way can any situation that could put a private party at a disadvantage before the State be remedied. *Id.* Due to the foregoing, the Supreme Court stated that it is fundamental to come to an agreement about the following in advance in the contract: (1) under what conditions would the lease be extended; (2) length of additional time; (3) what will be the fee payable; and (4) penalty clauses to prevent one party from being affected by a breach by the other. *Vicar Builders v. Commonwealth,* supra, p. 270.b.

B.

On the other hand, a penalty clause has been defined as "an accessory convention to a main obligation by means of which a performance is promised, generally pecuniary in nature, in the event that one of the parties fails to fulfill what was promised or fulfills it poorly or irregularly." *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 175 (2011), citing J.R. Vélez Torres, *Law of Obligations*, 2nd ed., San Juan, Continuing Legal Education Program, Law School of the U.I.A., 1997, p. 299. Its function is: (1) to ensure compliance with an obligation, and (2) to assess in advance

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 12 of 16

KLCE202101045 Page **11** of **14**

the damages that a breach of the obligation would cause the creditor. *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 DPR 163 (1974).

It is unnecessary to allege damages under a penalty clause. *Clausells v. Salas*, 51 DPR 89-95 (1937). In other words, when this type of clause is agreed, it is not necessary to prove the damages suffered by the creditor due to the breach of the obligation. *C.M. & Finance Corp. v. Cooley*, 103 DPR 6, 9-10 (1974). "In obligations containing a penalty clause, the penalty shall replace the compensation for damages and the payment of interest in the event of a breach; its purpose is not always to obtain the early payment of damages. It has a punitive role for the violation of the legal duty that gives the clause its other name of conventional penalty and that, going beyond the motive of profit found in ordinary obligations, introduces an element of coercion and threat that pressures the debtor to comply." *Jack's Beach Resort, Inc. v. Cia. Turismo*, 112 DPR 344, 349 (1982).

III.

In its brief, the petitioner alleges that the CFI erred in issuing its opinion and determining that the respondent has the right to recover a debt for rental fees. In its understanding, clause forty-two of the lease agreement in question is inoperative against the Government, as it is contrary to the principles that govern this type of contract. The petitioner is right.

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 13 of 16

KLCE202101045												Page **12** of **14**

In this case, on March 1, 2014, the parties entered into a valid lease agreement that met all the requirements applicable to government contracts. In other words, the agreement was in writing, it was registered and a copy was sent to the Comptroller's Office. The expiration date was February 28, 2019. However, on August 7, 2018, the parties amended the agreement to include the clause under our consideration, whereby, if the petitioner continued to occupy the property after February 28, of 2019, it would be required to pay the agreed amount on a month to month basis until: (1) the agreement was renewed or (2) the key was returned and the property vacated. The aforementioned amendment was also recorded in writing and was also registered with the Comptroller's Office within the term provided by law.

In this regard, the petitioner argues that an in-depth analysis of its text has detrimental effects on government contracting because it has the same effects as the application of the doctrine of renewal by tacit agreement. The CFI concluded that it was not possible to speak of the aforementioned doctrine, but rather of an express will of the contracting parties to continue with the month-to-month lease for the same amount of the agreed fee until one of the two aforementioned events occurred. In turn, the respondent agrees with the resolution issued by the primary forum, since it considers that the clause in question included in the amendment complies with all the legal requirements related to government contracting. Specifically, it stands out that the amendment left the rest of the terms of the contract unchanged, all subject to the availability of funds. It points out that the total amount of the monthly fees under the agreement, including those attributable to the six (6) month period covered by the amendment, was less than originally budgeted.

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

Case:17-03283-LTS Doc#:24207-1 Filed:05/15/23 Entered:05/15/23 16:36:24 Desc: Exhibit A - Certified Translation Page 14 of 16

KLCE202101045 Page **13** of **14**

After a careful examination of the circumstances of this case, along with the writs of both parties, we conclude that clause forty-two is invalid. We will explain ourselves below.

Certainly, it could be interpreted that the literal text of the clause complies with the applicable legal requirements. However, we must keep in mind that when contracting with the Government, the interpretation of said provision must be restrictive. Let us remember that these cases involve the highest public interest.

Thus, having analyzed the content of clause forty-two, we note that it intended to activate a renewal modality, since it extended the term of the lease on a month-to-month basis until one of the events suggested therein occurred. We understand that this practice creates uncertainty, which is not compatible with matters to which the Government is a party, particularly regarding the availability of the public funds necessary for the payment of subsequent fees.

As explained by the Supreme Court in *Vicar Builder v. Commonwealth*, supra, it is clear that in this case the parties were not meticulous when introducing the amendment in question, so that it would address any situation in which a party failed to comply with the agreement. Relevantly, because one of the contracting parties is the Government. Accordingly, we are of the opinion that its language suffers from vagueness and fails to comply with what is required by our legal system. It would have been different if the aforementioned article had an exact start and end date for the agreement and not merely let it be renewed "month to month," attributing to the petitioner the timing of its end.

On the other hand, it does not appear to us that the clause in question contains the elements of a penalty clause. While the existence of a clause of this nature will not depend on the qualification of the contracting parties, but on the true function entailed

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*

by the agreement,[4] it is our understanding that the earlier court erred in accepting it, and concluding that it had the effect of making the petitioner monetarily responsible for remaining in a private place after the contract had expired.

In accordance with the foregoing, and in order to avoid a miscarriage of justice, it is appropriate to issue the writ of *certiorari* requested and revoke the appealed decision.[5]

IV.

For the reasons set forth, the writ of *certiorari* is issued and the appealed *Resolution* is revoked. The case is returned to the CFI for the continuation of the proceedings.

It was so agreed and mandated by the Court and certified by the Clerk of Court.

Judge Barresi Ramos concurs with the result without a written opinion.

Lilia M. Oquendo Solís, Esq.
Clerk of the Court of Appeals

---

[4] *Jack's Beach Resort, Inc. v. Cía. Turismo*, supra, p. 349.

[5] As we know, the writ of *certiorari* is discretionary in nature. Rule 52.1 of Civil Procedure, 32 LPRA Ap. V, R. 52.1, provides in a strict and restrictive manner for the matters that we can address through the aforementioned appeal. *Scotiabank of Puerto Rico v. ZAF Corporation*, 202 DPR 478 (2019). Our decision regarding its issuance is subject to the consideration of the following criteria:

(A) If the remedy and the order contained in the appealed decision, unlike its grounds, are contrary to law.
(B) If the factual circumstance raised is the most appropriate for the analysis of the problem.
(C) If there has been prejudice, partiality or gross and manifest error in the assessment of the evidence by the Court of First Instance.
(D) If the matter raised requires closer examination in light of the original proceedings, which must be consequential or with respect to more elaborate arguments.
(E) If the procedural phase during which the case is submitted is the most conducive to its consideration.
(F) If the issuance of the decree or order to show cause do not cause an undue splitting of the lawsuit and an undesirable delay in the final resolution of the litigation.
(G) If the issuance of the decree or order to show cause prevents a miscarriage of justice.

Rule 40 of the Regulations of the Court of Appeals, 4 LPRA Ap. XXII-B, R. 40; *Garcia v. Padró*, 165 DPR 324, 334 (2005).

*Certified to be a correct and true translation from the source text in Spanish to the target language English. 12 / MAY / 2023 – PHILLIP BERRYMAN ATA-certified Spanish-English [ 432118] by Targem Translations Inc.*



T 718.384.8040
W TargemTranslations.com
E projects@targemtranslations.com
A 185 Clymer St. Brooklyn, NY 11211

**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)

TARGEM Translations Inc.

I, PHILLIP BERRYMAN, ATA-certified Spanish-English #432118, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: **KLCE202101045-15112021**

Signed this 12th day of May, 2023

*Phillip Berryman* (signature)

Phillip Berryman

