Hearing Date: June 7, 2023 at 9:30 a.m. (AST)
Objection Deadline: May 23, 2023 at 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

## COBRA ACQUISITIONS LLC'S MOTION TO MODIFY STAY ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ...................................................................................................................5

RELIEF REQUESTED.........................................................................................................13

ARGUMENT ......................................................................................................................13

I.     THE INTERESTS OF JUSTICE FAVOR MODIFYING THE STAY ON THE
ADMINISTRATIVE EXPENSE MOTION ........................................................................13

     A.     Cobra Continues to Suffer Substantial Harm by Prolonged Extension of
the Stay........................................................................................................15

     B.     The Hardship on the Government Parties Is Vastly Overstated...........................17

CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin v. Unarco Indus., Inc.*,
705 F.2d 1 (1st Cir. 1983) .........................................................................17

*Gonzalez v. Cruz*,
926 F.2d 1 (1st Cir. 1991) .........................................................................14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)......................................................................13, 14, 17

*Marquis v. F.D.I.C.*,
965 F.2d 1148 (1st Cir. 1998).....................................................................14

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) ...........................................................14, 15, 17

*Ramirez Lluveras v. Pagan Cruz*,
No. 08-CV-1486 (FAB), 2010 WL 11679649 (D.P.R. Aug. 5, 2010) ...........................................14

**Statutes**

11 U.S.C. § 105(a) ...................................................................................1

11 U.S.C. § 503(b) ...................................................................................5

18 U.S.C. § 201 ......................................................................................9

PROMESA § 301 .....................................................................................1

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these cases by PROMESA section 301, for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), modifying the stay applicable to Cobra's *Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8789] (the "Administrative Expense Motion") in the Title III Case commenced by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on behalf of the Puerto Rico Electric Power Authority ("PREPA" and, together with the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the "Government Parties").  In support of this Motion, Cobra respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Cobra, one of PREPA's largest administrative creditors (if not the largest), is owed approximately $216 million (excluding interest) on account of postpetition work that Cobra completed for PREPA in March 2019—more than four years ago.  Since March 27, 2023, PREPA has had access to at least $231 million in obligated public assistance funding from FEMA (the "Available FEMA Funds") for the work Cobra successfully performed and completed.  Approximately $99 million of the Available FEMA Funds is in respect of a subset of Cobra's unpaid invoices for which FEMA now has reviewed and obligated under the Second Contract (as defined below) (the "Approved Unpaid Invoices").[1]  The balance of the Available FEMA Funds is in respect of Cobra's invoices that PREPA has paid previously.  Notwithstanding the Available

---

[1]   The approximately $231 million in public assistance funding was obligated through a cost-share, in which FEMA covered 90% of the total invoice costs.  Accordingly, Cobra also is owed matching funds from PREPA for the obligated amounts (approximately $11 million).  As such amounts are in respect of invoices for which FEMA obligated funds, there also should be no dispute as to Cobra's entitlement to these matching funds from PREPA.

FEMA Funds, PREPA has failed to pay Cobra the approximately $99 million available to satisfy the Approved Unpaid Invoices.  Given this material change in circumstances and others as detailed below, the stay applicable to the Administrative Expense Motion should be modified to permit Cobra to seek allowance of an administrative expense claim for the Approved Unpaid Invoices and, if necessary, litigate Cobra's immediate entitlement to the Available FEMA Funds to satisfy such invoices if PREPA continues to refuse to pay Cobra.

2.     The stay, originally imposed in October 2019, halted all litigation relating to Cobra's claims stemming from two postpetition contracts dated October 19, 2017 (the "First Contract") and May 26, 2018 (the "Second Contract" and, together with the First Contract, the "Contracts") between Cobra and PREPA.  The Court has continued the stay at regular six-month intervals, with the most recent continuance extending to July 31, 2023.

3.     The bases for the stay are twofold.  *First*, the Government Parties have asserted that a—now dismissed—criminal indictment against three individuals (the "Criminal Matter"), including Cobra's former president but not Cobra itself, could affect the outcome of the Administrative Expense Motion.  *Second*, the Government Parties have contended that an ongoing analysis by FEMA of the Contracts and performance of hurricane restoration work (the "FEMA Analysis") could affect Cobra's entitlements to payment for the work it performed at PREPA's direction and after multiple rounds of approval by both PREPA and FEMA.

4.     Cobra opposed the initial stay and, based on material developments in the Criminal Matter and the FEMA Analysis as well as the immensely prejudicial effect the stay has had on Cobra's financial position, has sought relief from the stay numerous times since it was imposed nearly four years ago.  The Court has denied each of Cobra's motions to lift the stay.  Including

interest (which continues to accrue), Cobra's asserted administrative expense claims now total

approximately $375 million.[2]

5.      Now, further material changes have occurred that require the stay to be lifted in its

entirety or, at minimum, modified to allow parties to litigate Cobra's immediate entitlement to the

Available FEMA Funds for the Approved Unpaid Invoices.    Specifically, these changed

circumstances are as follows:

- **The Criminal Matter is resolved.**  Cobra's former president pled guilty to a single gratuity charge unrelated to the Contracts and, following sentencing on December 13, 2022, the District Court dismissed the indictment.  Contrary to the Government Parties' prior speculations, no further evidence was introduced at the sentencing hearing.  The Court previously had continued the stay on the basis that, among other things, the Criminal Matter was ongoing and its resolution could weigh on the disposition of the Administrative Expense Motion.  Already of tenuous relevance to these disputes, the final resolution of the Criminal Matter should render it indisputable that the Criminal Matter cannot support the continuance of the stay in any form or fashion.

- **The FEMA Analysis effectively is complete.**  FEMA has now issued three determination memorandums (each, a "DM"), one regarding the First Contract and two regarding the Second Contract.  All administrative appeals of the DM for the First Contract have concluded; the administrative appeals for the Second Contract are in process.  One point is critical for this Motion: with the issuance of all the contemplated DMs, a floor now exists as to the quantum of federal funds FEMA will obligate to PREPA for the Contracts.  The outcome of any appeal will either uphold FEMA's original conclusions or result in additional FEMA funds, but will not result in any further de-obligations.

- **PREPA has access to additional FEMA funds to pay Cobra.**  As noted above, as a result of the issuance of the DMs, since March 27, 2023, PREPA has had access to the Available FEMA Funds, of which approximately $99 million is specifically for payment of the Approved Unpaid Invoices.  The balance is in respect of Cobra invoices PREPA already paid.  Yet, to date, to Cobra's

---

[2]    Cobra is engaging in discovery relating to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [Case No. 17-4780, ECF No. 3296] (the "Plan") pursuant to the *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Case No. 17-4780, ECF No. 3294].  The Plan contemplates the issuance of certain bonds by reorganized PREPA in the amount of up to $400 million to fund administrative expense claims, such as Cobra's. Given that, by the effective date of the Plan, Cobra's claim alone may be greater than the amount of funding PREPA has to pay administrative expense claims, Cobra continues to have serious concerns regarding the feasibility of the Plan and whether PREPA can pay the full amount of Cobra's claim.  Accordingly, Cobra reserves all rights with respect thereto.

knowledge, PREPA has not requested the Available FEMA Funds for the Approved Unpaid Invoices and remitted them to Cobra.  By contrast, as Cobra discovered through a third party, immediately after FEMA obligated the approximately $231 million, PREPA sent a request for reimbursement for the portion of the funds (approximately $131 million) in respect of invoices PREPA already had paid.  The availability of these funds constitutes a material change in circumstances that requires the stay to be lifted.  PREPA should not be permitted to use the stay to obstruct Cobra's access to the Available FEMA Funds, as PREPA's course of conduct to date would indicate.  If PREPA disputes Cobra's entitlement to the Available FEMA Funds for the Approved Unpaid Invoices, then the stay should be lifted to resolve PREPA's disputes.

6.     Reason and fairness dictate that the stay be modified as set forth herein as doing so will permit the parties to progress this long-running dispute to conclusion.  Cobra completed its services to PREPA over four years ago, and no one has ever questioned the essential, beneficial work that Cobra performed for Puerto Rico.  As an administrative creditor, Cobra has for four years been subjected to a deeply prejudicial process it never bargained for and over which it has no control.

7.     At this point in the proceedings, a clear path forward exists: modify the stay to allow the parties to litigate Cobra's entitlement to an allowed administrative expense claim in respect of the Approved Unpaid Invoices and, if PREPA fails to pay Cobra for such invoices, Cobra's immediate right to payment of the Available FEMA Funds in respect of such invoices. The relief Cobra seeks is narrowly focused on ensuring that Cobra rightly and without delay receives the funds that FEMA has obligated for paying the Approved Unpaid Invoices and does not seek to burden PREPA with litigating disputes on which there may remain factual or legal disputes.  Focusing on resolving Cobra's entitlement to payment on the Approved Unpaid Invoices will narrow the outstanding issues between the parties, partially relieve Cobra of the substantial prejudice it has suffered, lessen the detrimental effect that further interest accruals will have on PREPA and its creditors and potentially pave the way toward a global resolution—all without

4

imposing undue hardship on PREPA.  Accordingly, Cobra respectfully submits that the interests of justice no longer support the stay of the Administrative Expense Motion and requests that the stay be modified as set forth herein.

**BACKGROUND**

8.      When Cobra began its work under the First Contract, Puerto Rico had no electrical power.  Hurricanes Irma and Maria left Puerto Rico a Federal Disaster Zone, with critical infrastructure destroyed or severely damaged.  Flooding, storm surge, landslides and the lack of cell phone service made travel and operations difficult.  Housing was not available for the many workers needed to undertake the repair work.  Hundreds of workers and tons of equipment to perform the work needed to be transported from the mainland.  Cobra overcame these difficult conditions to perform the work it contracted to perform to restore Puerto Rico's electrical grid under the First Contract and then, after a competitive bid process, under the Second Contract. Cobra completed its contracted services in March 2019.  PREPA has never disputed that Cobra's work was highly successful in restoring the island's electrical grid and otherwise meeting the goals for which PREPA hired Cobra.

9.      On September 30, 2019, Cobra filed the Administrative Expense Motion, seeking an order allowing an administrative expense claim under Bankruptcy Code section 503(b)(1) in respect of Cobra's unpaid postpetition invoices in excess of $200 million under the Contracts.  *See* Admin. Expense Mot. ¶ 15.

10.     On October 17, 2019, the Court granted the relief sought by the Government Parties by the *Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 8838] ("Gov't Parties Stay Mot."), which Cobra opposed [Case No. 17-3283, ECF No. 8850], and stayed proceedings on the Administrative

5

Expense Motion. *See Order Granting Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8886] (the "Stay Order") at 3. The Stay Order was based on the notion that the outcomes of the pending Criminal Matter and the ongoing FEMA Analysis might affect Cobra's ability to recover the full amount it seeks in its Administrative Expense Motion. *Id.* at 2. At the time the Stay Order was originally entered, the parties expected a jury trial in the Criminal Matter to begin on December 9, 2019 and for FEMA to complete the FEMA Analysis by May 29, 2020.

11. On February 3, 2020, following a joint status report by Cobra and the Government Parties [Case No. 17-3283, ECF No. 10307], the Court entered an order continuing the Stay Order until the June 2020 omnibus hearing [Case No. 17-4780, ECF No. 1894].

12. On March 25, 2020, Cobra filed the *Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* [Case No. 17-3283, ECF No. 12531] (the "Tax Claims Motion"). By the Tax Claims Motion, Cobra sought to lift the stay solely as to claims for reimbursement for taxes (in the amount of approximately $62 million) that Cobra actually paid to Puerto Rico in 2018 pursuant to the tax gross-up provision in the First Contract. Tax Claims Mot. ¶ 15. On April 7, 2020, the Government Parties filed their opposition to the Tax Claims Motion [Case No. 17-4780, ECF No. 1959] and, on April 14, 2020, Cobra filed its reply in support of the Tax Claims Motion [Case No. 17-3283, ECF No. 12752].

13. On May 21, 2020, the Court entered the *Memorandum Order Denying Cobra Acquisitions LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* [Case No. 17-4780, ECF No. 2004] (the "Tax Claims Order"). The Tax Claims Order recognized that the "adjournment of the criminal trial until January 2021, at the earliest, constitutes a

significant change in circumstances since the Court entered the Stay Orders." Tax Claims Order

at 9. The Court also observed that "PREPA's contractual arguments may well be strained." *Id.* at

10. However, after taking account of other relevant factual and procedural considerations, the

Court concluded that "Cobra has not demonstrated that there has been a material change warranting

modification of the stay of litigation[.]" *Id.* at 11.

14.     On June 5, 2020, following a joint status report by Cobra and the Government

Parties [Case No. 17-3283, ECF No. 13253], the Court entered an order continuing the Stay Order

until the December 2020 omnibus hearing [Case No. 17-3283, ECF No. 13373].

15.     On December 9, 2020, following a status report by the Government Parties [Case

No. 17-4780, ECF No. 2314], the Court entered an order continuing the Stay Order until the June

2021 omnibus hearing [Case No. 17-3283, ECF No. 15396].

16.     On April 6, 2021, Cobra filed the *Motion to Lift the Stay Order* [Case No. 17-3283,

ECF No. 16328] (the "First Lift Stay Motion"). By the First Lift Stay Motion, Cobra sought an

order lifting the stay applicable to the Administrative Expense Motion because, among other

things, (i) trial in the Criminal Matter had, at that time, been postponed indefinitely, (ii) the cost

analysis and determination from FEMA had been continually delayed past its original expected

delivery date, with no indication of when it would be finally delivered and (iii) Cobra continued

to suffer substantial prejudice as a result of the stay.

17.     On May 26, 2021, FEMA issued a determination memorandum (the "May 26, 2021

Determination Memorandum") with respect to the First Contract.

18.     On June 4, 2021, the Government Parties filed the *Opposition of the Oversight

Board, AAFAF, and PREPA to Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No.

17-3283, ECF No. 16889].

19.     On June 7, 2021, the Government Parties filed the *Status Report Pursuant to December 9, 2020 Order Setting Deadline for Further Status Regarding Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 16893].

20.     On June 8, 2021, Cobra filed *Cobra Acquisitions LLC's Reply in Support of Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 16902].

21.     On July 20, 2021, the Government Parties and Cobra filed the *Joint Status Report Pursuant to June 13, 2021 Order Adjourning Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-4780, ECF No. 2563].

22.     On July 23, 2021, with aid from Cobra, PREPA timely filed an administrative appeal of the $46.7 million disallowance under the May 26, 2021 Determination Memorandum. The appeal requested FEMA approve the full amount disallowed and schedule meetings with PREPA necessary to complete FEMA's review in a timely manner.

23.     On August 10, 2021, the Court entered the *Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 17729], which denied the First Lift Stay Motion, continued the Stay Order and directed the parties to file a joint status report by January 19, 2022.

24.     On January 19, 2022, the Government Parties and Cobra filed the *Joint Status Report Pursuant to August 10, 2021 Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 19835].

25.     On January 26, 2022, the Court entered the *Order Setting Deadline for Further Status Report* [Case No. 17-3283, ECF No. 19897], which continued the Stay Order and directed the parties to file a joint status report by July 25, 2022.

26.     On May 18, 2022, the District Court presiding over the Criminal Matter approved a plea agreement by Cobra's former president, Donald Keith Ellison.  *See* ECF Nos. 3, 5, *U.S. v. Ellison*, Case No. 22-cr-00220 (D. P.R.).  Pursuant to the plea agreement, Mr. Ellison pled guilty to a gratuity charge under 18 U.S.C. § 201.  *Id.*  The stipulation of facts filed as part of the plea agreement related to a proposal by Cobra to reconstruct the electrical grid on the island of Vieques in Puerto Rico.  *Id.*  Cobra was not awarded this contract, and the plea agreement makes no mention of any conduct related to the Contracts in any way, the work that Cobra performed under the Contracts or Cobra's right to be paid for such work.  In addition, at the sentencing hearing on December 13, 2022, the U.S. Government introduced no additional evidence and the indictment was dismissed.  *See* ECF No. 31, *U.S. v. Ellison*, Case No. 22-cr-00220 (D. P.R.).

27.     On May 31, 2022, FEMA issued its decision on the appeal of the May 26, 2021 Determination Memorandum, approving in part and denying in part.  In sum, of the $46.7 million that was originally disallowed by the May 26, 2021 Determination Memorandum, FEMA allowed $24.4 million, but disagreed with the contract interpretation that both PREPA and Cobra had adopted in performing the contract and, therefore, disallowed the balance.  PREPA subsequently submitted a request for arbitration to the U.S. Civilian Board of Contract Appeals ("CBCA") challenging FEMA's denial of the balance.

28.     On June 7, 2022, Cobra filed the *Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 21145] (the "Second Lift Stay Motion").  By the Second Lift Stay Motion, Cobra sought an order lifting the stay applicable to the Administrative Expense Motion because, among other things, (i) Cobra's former president had entered into a plea agreement in the Criminal Matter, with a stipulation of facts entered with the plea making clear that the conduct had nothing to do with

the Contracts, (ii) the FEMA Analysis with respect to the First Contract was completed and (iii) Cobra continued to suffer substantial prejudice as a result of the stay.

29.     On June 14, 2022, the Government Parties filed the *Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 21241] (the "Gov't Parties Opp'n to Second Lift Stay Mot.").  Among other things, the Government Parties argued in furtherance of the stay that the prosecution at sentencing in the Criminal Matter "may introduce evidence of additional misconduct outside the stipulated facts," that "FEMA may in turn rely on this evidence in concluding its review processes," and that the "guilty pleas themselves may be relevant to PREPA's liability under the Cobra contracts." *See* Gov't Parties Opp'n to Second Lift Stay Mot. ¶¶ 25, 26.  Notwithstanding these conjectures, as noted herein, no additional evidence regarding the Contracts, Cobra's work thereunder or otherwise was introduced by the prosecution at the sentencing hearing.  Moreover, none of FEMA's publicly available memoranda or reports that Cobra has reviewed relating to the Contracts reference the Criminal Matter or indicate that FEMA relied on any evidence from the Criminal Matter in issuing its DMs.

30.     On June 21, 2022, Cobra filed *Cobra Acquisitions LLC's Reply in Support of Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 21286].

31.     On June 29, 2022, the Court entered the *Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 21385], which denied the Second Lift Stay Motion.  In explaining its ruling, while the Court acknowledged the interest of Cobra in proceeding expeditiously, the Court found, among other things, that (i) the Criminal Matter could be significant to party positions in litigating certain aspects of the Administrative Expense Motion and (ii) the FEMA process has reduced the need for extensive litigation and discovery proceedings

and thereby has conserved Court and party resources and avoided duplication and potentially conflicting outcomes. *See* June 29, 2022 Hr'g Tr. 39:23-41:16.

32.    On November 16, 2022, the CBCA issued its decision on the First Contract, agreeing with FEMA that the approximately $21.5 million in costs claimed were not eligible for reimbursement. The CBCA's decision is final as to the public assistance that PREPA is eligible for from FEMA, but is not binding on Cobra or this Court. Cobra maintains that the approximately $21.5 million were validly incurred under the First Contract and are allowable administrative expenses.[3]

33.    On November 21, 2022, FEMA issued a first DM for the Second Contract, determining that approximately $5.6 million of approximately $49 million in costs were ineligible for reimbursement.

34.    On December 21, 2022, FEMA issued a second DM for the Second Contract (the "December 21 DM"), determining that approximately $68 million in costs were ineligible for reimbursement and approximately $234 million in costs were eligible for reimbursement. PREPA has appealed both of the DMs issued for the Second Contract.

35.    On January 7, 2023, the Government Parties and Cobra filed the *Joint Status Report Pursuant to June 29, 2022 Ruling Denying Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-3283, ECF No. 23211].

36.    On January 18, 2023, the Court entered an order continuing the stay and directing the parties to file a further status report regarding the FEMA Analysis, the Criminal Matter and a summary of amounts outstanding and whether the Government Parties dispute such amounts by July 31, 2023 [Case No. 17-4780, ECF No. 3155].

---

[3]   For the avoidance of doubt, by this Motion, Cobra is not requesting at this time that the stay be modified to permit litigation of whether these costs are allowable administrative expenses.

37.     On March 27, 2023, consistent with the December 21 DM, FEMA obligated $233,683,116.76, as detailed in a letter from the Government of Puerto Rico, Central Recovery Reconstruction and Resilience Office ("COR3"), dated April 18, 2023, attached hereto as **Exhibit B** (the "COR3 Letter").  The COR3 Letter also states that, on April 4, 2023, PREPA submitted a request for reimbursement to COR3 in the amount of $130,174,526.41.  Through additional correspondence, PREPA representatives clarified that this approximately $130 million relates only to reimbursement to PREPA for amounts that PREPA has paid Cobra.  None of the requested reimbursement relates to the Available FEMA Funds that PREPA owes Cobra in respect of the Approved Unpaid Invoices.

38.     On April 7, 2023, counsel for Cobra sent a letter to counsel for the Oversight Board, attached hereto as **Exhibit C**, requesting that PREPA take all steps to ensure that Cobra receives the Available FEMA Funds attributable to the Approved Unpaid Invoices immediately and without condition or further delay.

39.     On April 19, 2023, counsel for the Oversight Board sent a letter to counsel for Cobra, attached hereto as **Exhibit D**, stating that PREPA must first "complete its internal processes so that it can expediently submit its [request for reimbursement for the approximately $99 million in Available FEMA Funds] in compliance with its own policies and procedures, at which point COR3's validation process, which is outside of PREPA's control, will commence."  No explanation is given for what the referenced "policies and procedures" of PREPA are or why, over four years after the work was performed and after multiple FEMA and third party reviews to validate these invoices, these invoices had not already been approved.  This is particularly so given that the Contracts required that PREPA was obligated to accept or reject an invoice within 15 days of receipt and pay the undisputed amounts within 30 days from the date of receipt.  Accordingly,

on April 24, 2023, counsel for Cobra sent a letter to counsel for the Oversight Board, attached hereto as **Exhibit E**, stating that Cobra would welcome an explanation of what specific policies and procedures must be undertaken by PREPA (and why those were not undertaken previously), when those would be completed and when PREPA would submit the request for reimbursement in respect of the Available FEMA Funds.

40.     As of the date of this Motion, Cobra has not been provided with any definitive timeline of when PREPA's "policies and procedures", whatever those may be, will be complete and when the request to reimbursement of the Available FEMA Funds for the Approved Unpaid Invoices will be submitted.

## RELIEF REQUESTED

41.     By this Motion, Cobra respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, modifying the stay applicable to the Administrative Expense Motion to permit Cobra to seek allowance of an administrative expense claim for the Approved Unpaid Invoices and, if necessary, litigate Cobra's immediate right to payment of the Available FEMA Funds to satisfy such invoices.

## ARGUMENT

## I.     THE INTERESTS OF JUSTICE FAVOR MODIFYING THE STAY ON THE ADMINISTRATIVE EXPENSE MOTION

42.     The decision to stay proceedings calls for the trial court to exercise its judgment to "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  In *Landis*, the Supreme Court cautioned against "immoderate" stays without reasonable limits and instructed that, "once those limits have been reached, the fetters should fall off." *Id.* at 257.  The Court of Appeals for the First Circuit, while acknowledging that this

13

determination is "highly nuanced," has articulated the following seven factors "that typically bear

on [a court's] decisional calculus" in staying proceedings:

> (i)   the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire;
>
> (ii)   the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem;
>
> (iii)   the convenience of both the civil and criminal courts;
>
> (iv)   the interests of third parties;
>
> (v)   the public interest;
>
> (vi)   the good faith of the litigants (or the absence of it); and
>
> (vii)   the status of the cases.

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (cleaned up).

43.   A stay, as an extraordinary remedy, "should be granted only in rare circumstances."

*Ramirez Lluveras v. Pagan Cruz*, No. 08-CV-1486 (FAB), 2010 WL 11679649, at *4 (D.P.R. Aug.

5, 2010) (citing *Gonzalez v. Cruz*, 926 F.2d 1, 3 (1st Cir. 1991)).  The First Circuit has cautioned

that "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must

be reasonable in duration; and the court must ensure that the competing equities are weighed and

balanced."  *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992).

44.   The stay applicable to the Administrative Expense Motion has been in effect since

October 2019, nearly four years.  This Motion represents Cobra's fourth formal request for the

stay to be lifted or modified, each of which has been denied.[4]  Here, the relevant factors weigh

strongly in favor of modifying the stay applicable to the Administrative Expense Motion to allow

---

[4]   Cobra also has requested that the stay be lifted in each of the status reports filed with the Court since the stay was instituted in October 2019.

Cobra to seek the allowance of an administrative expense claim in respect of the Approved Unpaid Invoices and permit the parties to litigate Cobra's entitlement to the Available FEMA Funds if PREPA fails to pay Cobra.  The primary factors relevant to this analysis are (a) the interests of Cobra in "proceeding expeditiously" and the prejudice of delay and (b) the "hardship to [PREPA]".[5]  Given this narrow relief from the stay, no issues are implicated by the FEMA appeal process (because FEMA has already obligated the Available FEMA Funds for the Approved Unpaid Invoices) or the Criminal Matter (because it has been resolved now for almost six months).  Accordingly, the convenience of the courts is no longer a relevant concern because there is no risk of duplicative efforts.  Simply put, because the reasons justifying the stay, including the FEMA Analysis and the Criminal Matter, have no bearing on the Approved Unpaid Invoices, there should be no valid reason for why the stay should be continued with respect to such invoices.

### A.  Cobra Continues to Suffer Substantial Harm by Prolonged Extension of the Stay

45.      Cobra has suffered immense prejudice by the multi-year duration of the stay—far beyond what could be called "reasonable"—and the lack of payment on its invoices.  Cobra performed valuable postpetition work that continues to benefit Puerto Rico, PREPA and PREPA's creditors.  The invoices in respect of those indisputably valuable services have been outstanding for almost four years without a single payment.  The obstacles and challenges that Cobra has faced to collect on these invoices are completely contrary to the terms that Cobra bargained for under its postpetition contracts with PREPA.

---

[5]   The public interest, including the general public interest in the prompt resolution of litigation and the policy of encouraging third-parties to continue providing services to a debtor notwithstanding the bankruptcy, also weighs in favor of lifting the stay.  *See Microfinancial*, 385 F.3d at 79 n.4.  In addition, the interest of third parties—most notably PREPA's prepetition creditors—would be served by prompt resolution of the Administrative Expense Motion, given that Cobra's claim (a portion of which may not be reimbursed by FEMA) may have significant effects on PREPA's ongoing efforts to confirm its Plan and exit this Title III case.

46.     Since inception of this dispute, the Government Parties have minimized the prejudice to Cobra by arguing that Cobra knew PREPA could only pay Cobra through FEMA funds (Gov't Parties Stay Mot. ¶ 20) and that this Court cannot grant Cobra the relief it seeks due to the prohibition under section 305 of PROMESA.  As Cobra has pointed out continuously, the Contracts are solely with PREPA, not FEMA, and do not excuse PREPA from paying Cobra's invoices simply because PREPA has yet to receive funds from FEMA.[6]  Now, PREPA has access to the Available FEMA Funds to pay Cobra for the Approved Unpaid Invoices—approximately $99 million of which can *only* be paid to Cobra.[7]  Indeed, section 305 of PROMESA may not even bar this Court from ordering PREPA to transmit the approximately $99 million in Available FEMA Funds to Cobra because such funds may not be "property . . . of the debtor."  48 U.S.C. § 2165(2).  Yet, to date, PREPA has refused to commit that it will promptly pay such funds over to Cobra in respect of the Approved Unpaid Invoices—hiding instead behind unspecified "policies and procedures" that PREPA must first undertake—and, because of the stay, Cobra is prevented from even beginning to seek appropriate relief.  It is fundamentally unfair for PREPA to use the stay to prevent Cobra from receiving funds that Cobra plainly is entitled to.

47.     The Government Parties have presented no basis for not paying Cobra immediately the approximately $99 million in Available FEMA Funds relating to the Approved Unpaid

---

[6]   The Government Parties typically have invoked the provision of the Contracts excusing PREPA from its obligations to pay Cobra in the event that FEMA's failure to reimburse PREPA was Cobra's "sole fault."  The Government Parties, however, have never explained how a determination by FEMA not to reimburse PREPA for certain invoices could be Cobra's sole fault when PREPA, of its own volition, agreed to the terms of the Contracts (after multiple levels of review and approval and advice of counsel) and Cobra performed its work under the Contracts at the direction of PREPA officials.

[7]   As PREPA has previously acknowledged, "[f]unds paid to PREPA by FEMA for the specific purpose of paying unpaid invoices to disaster relief contractors … are required to be paid to the subject contractor under the invoices approved by FEMA for payment … Failure to do so would violate the terms of the grant, and cause FEMA to require return of the funds improperly used at grant closeout."  *See Motion of Puerto Rico Electric Power Authority Pursuant to Bankruptcy Code Section 503(b), PROMESA Section 315(a)(3), and Bankruptcy Rule 9019 for Order Approving Settlement Agreement with Whitefish Energy Holdings, LLC and Granting Related Relief* [Case No. 17-3283, ECF No. 20242], ¶ 21.

Invoices.  Indeed, by the terms of the Contracts themselves, PREPA was obligated to accept or reject an invoice within 15 days of receipt and pay the undisputed amounts within 30 days from the date of receipt—needless to say, a payment deadline that has long since elapsed without PREPA ever identifying a valid dispute on the Approved Unpaid Invoices.  Moreover, any defense that PREPA might manufacture can have nothing to do with the FEMA Analysis (because FEMA has approved the obligations) or implicate concerns regarding the Criminal Matter (because the Criminal Matter has been resolved).

48.    Cobra has been substantially prejudiced by the stay.  The harm to Cobra is further compounded here because, notwithstanding that (i) PREPA has raised no objections to the Approved Unpaid Invoices, (ii) FEMA completed the exhaustive review process (examining both the reasonableness of the rates charged and the actual performance of the work) for the Approved Unpaid Invoices that this Court and the Government Parties urged was the more efficient means of resolving the parties' disputes and (iii) FEMA has now obligated the Available FEMA Funds to pay the Approved Unpaid Invoices, Cobra nonetheless is prevented by the stay from seeking redress to obtain payment on account of those invoices.  Instead, if the Government Parties do intend to withhold funds rightfully belonging to Cobra, the equities demand that the Government Parties make their case now and not simply abuse the stay and further harm Cobra.

**B.    The Hardship on the Government Parties Is Vastly Overstated**

49.    The Government Parties have touted the same argument for years.  In their view, the Stay Order conserves resources by reducing the need for extensive discovery, litigation and related costs.  Given the relief requested here, any litigation costs relevant to the Approved Unpaid Invoices are immaterial, if not non-existent.  PREPA has articulated no valid contractual basis to not pay Cobra for the Approved Unpaid Invoices (despite having four years to do so) and PREPA has in its possession all the same documents that FEMA relied on in reviewing and obligating the

Available FEMA Funds in respect of such invoices.  Vaguely pointing to costs of discovery does not meet the Government Parties' "heavy burden" of demonstrating a "clear case of hardship." *Microfinancial*, 385 F.3d at 77 (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)); *Landis*, 299 U.S. at 255-56 (a stay must be "kept within the bounds of moderation").  Any other burden faced by the Government Parties is further lessened by the nature of relief Cobra is seeking by this Motion.  The Criminal Matter is resolved; whatever hardship that a parallel proceeding may have had on the Government Parties' efforts to craft a defense or any purported need to preserve resources are non-existent now.  Similarly, Cobra's entitlement to the Available FEMA Funds have absolutely no bearing on the limited remaining aspects of the FEMA Analysis.

50.     Indeed, on the contrary, the fact that FEMA obligated the Available FEMA Funds not only vindicates (i) FEMA's December 2017 conclusion that Cobra's rates for labor and equipment were reasonable, (ii) the RAND Corporation's independent March 2019 finding that the rates PREPA agreed to pay Cobra were reasonable and (iii) Cobra's actual performance under the Second Contract, but would also relieve PREPA of having to pay a significant portion of the amounts that Cobra is currently owed (i.e., approximately $99 million).  Based on these circumstances, it is difficult to understand PREPA's unwillingness to remit the Available FEMA Funds to Cobra promptly when it seemingly would face no undue burden in doing so.  This refusal is even more striking given the Government Parties' often-touted argument in support of the stay was that the FEMA Analysis was a more cost-efficient means of resolving the disputes between the parties.  Now that the FEMA Analysis has produced a result that would require payment to Cobra, PREPA apparently has determined it must undertake further unspecified processes on an unknown timeline in order to make any payments to Cobra—notwithstanding that the Approved

Unpaid Invoices have gone through the foregoing in-depth reviews by FEMA and other third parties and were determined eligible for public assistance.

51.     In fact, PREPA's failure to pay the approximately $99 million of Available FEMA Funds to Cobra harms PREPA and its stakeholders far more than it could benefit them.  Every day that Cobra goes unpaid increases the amount of interest that PREPA ultimately will have to pay. Significantly, FEMA funds will not be used to reimburse the contractual interest that PREPA has accrued through late payments.  Cobra has long been puzzled at PREPA's cavalier attitude toward the interest accrual and the detrimental effect it could have on PREPA and its plan process, and is even more so given that PREPA has ready access to the Available FEMA Funds that could be used to partially offset the continued accruals.

52.     Accordingly, Cobra submits that the interests of justice demand that the stay be lifted in order to permit Cobra the opportunity to seek allowance of an administrative expense claim in respect of the Approved Unpaid Invoices.  If the Government Parties continue to refuse to pay Cobra on account of the Approved Unpaid Invoices, notwithstanding the Available FEMA Funds, Cobra requests that the Court permit litigation of Cobra's immediate right to payment of the Available FEMA Funds.  It is plain that the Government Parties have used the stay to avoid paying Cobra as long as possible to Cobra's clear and indisputable detriment.  Accordingly, the Stay Order should be modified as the interests of justice no longer support its continuance.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Cobra respectfully requests that this Court enter an order, substantially in form attached hereto as **Exhibit A**, granting the relief requested herein, and granting Cobra such other relief as this Court deems just and proper.

[*Remainder of page left blank intentionally.*]

Dated: May 16, 2023

Respectfully submitted,


*/s/ Sylvia M. Arizmendi*
Rafael Escalera Rodríguez (No. 122609)
Sylvia M. Arizmendi (No. 210714)
REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888
Email:  escalera@reichardescalera.com
       arizmendis@reichardescalera.com

Ira S. Dizengoff (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
Philip C. Dublin (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1000
Fax: (214) 872-1002
Email:  idizengoff@akingump.com
       aqureshi@akingump.com
       pdublin@akingump.com

--and--

Scott M. Heimberg (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email:  tmclish@akingump.com
       sheimberg@akingump.com


*Attorneys for Cobra Acquisitions LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ *Sylvia M. Arizmendi*

**REICHARD & ESCALERA**

Sylvia M. Arizmendi
USDC No. 210714
Arizmendis@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913

PO Box 364148
San Juan, PR 00936-4148
Tel: (787) 777-8888
Fax: (787) 765-4225