## Exhibit C

**April 7, 2023 Cobra Letter to the Oversight Board**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T +1 212.872.1000
F +1 212.872.1002
akingump.com



**Abid Qureshi**
+1 212.872.8027
aqureshi@akingump.com

April 7, 2023

VIA E-MAIL

Paul V. Possinger
Proskauer Rose LLP
70 West Madison
Suite 3800
Chicago, Illinois 60602-4342

Re: Cobra Acquisitions LLC's Unpaid Contractual Invoices

Dear Paul:

As you know, we represent Cobra Acquisitions LLC ("Cobra"), which is a wholly-owned subsidiary of Mammoth Energy Services, Inc. ("Mammoth"). This letter responds to the settlement proposal dated April 3 by the Puerto Rico Electric Power Authority ("PREPA"), which Cobra believes is wholly inadequate. To be clear, however, this letter is not a settlement proposal and is not subject to Rule 408 of the Federal Rules of Evidence. Rather this letter requests that PREPA provide for the payment of certain undisputed amounts to Cobra now, which will significantly reduce PREPA's exposure for continuing interest on the amounts that are paid and set the stage for Cobra and PREPA to resolve—either through future settlement or litigation—the remaining items in dispute.

**Background**

In the aftermath of Hurricane Maria, PREPA contracted Cobra to provide emergency services to restore Puerto Rico's devastated electrical grid. Under perilous and harsh conditions, Cobra mobilized a substantial workforce of more than a thousand line crew members and met the challenge. Within a year, 75% of the island's power was restored and, by March 2019, Cobra had restored the island's transmission and distribution infrastructure and successfully completed all contracted work.

PREPA recognized the need for timely payment in its two contracts with Cobra. The contracts between Cobra and PREPA require PREPA to accept or reject invoices within 15 calendar days and pay the undisputed invoices within 30 days from date of receipt.[1] Disapproved invoices were to be returned within three days for resubmission by Cobra and approval by PREPA. Disputes of fact were to be responded to by PREPA within ten days.

---

[1] The first contract called for an even quicker partial payment—preliminary approval within seven calendar days of receipt of an invoice and payment of 80% of that invoice based on such preliminarily approval within three calendar days.



Paul V. Possinger
April 7, 2023
Page 2

      PREPA, however, has flouted these contractual obligations. Over four years later, Cobra remains unpaid on more than $227 million of invoices, excluding interest on late payments that continues to accrue under the contracts (as of December 31, 2022, those interest charges amounted to $152 million). Cobra has expended significant efforts and incurred substantial costs—which Cobra believes it is also entitled to recover—in attempting to obtain payment on these invoices. But every attempt by Cobra to collect what it contractually is owed for these unpaid invoices has been met by delay and obstruction—including by PREPA's position that it would not pay Cobra anything until it received money from FEMA. Inexplicably, PREPA has taken this position even though material amounts that are owed to Cobra are not subject to reimbursement or payment by FEMA. For a company of Mammoth's size, the amount owed is an incredible amount of money, and Cobra never agreed, and the contracts with PREPA do not state, that Cobra would receive payment only once PREPA receives funds from FEMA. But that is exactly the position into which Cobra has been forced.

      **Recent FEMA Approvals and Undisputed Invoices**

      Now, following an exhaustive and multi-year review and approval process conducted by FEMA that PREPA demanded be completed first, PREPA has money available to it from FEMA. Cobra understands that no less than $99,190,635.28 is available to PREPA from FEMA to partially satisfy Cobra's unpaid invoices. To reiterate, this approximately $99 million in FEMA funding is in respect of Cobra's invoices that are *not* in dispute, that have been *reviewed* and *approved* by both PREPA and FEMA for the reasonableness of the rates and that the work was actually performed in accordance with the terms of the contract. By law, PREPA cannot keep these funds for its own account: it must pay them to Cobra under the approved invoices. Yet, months after FEMA issued its decisions on the invoices for this work, Cobra has yet to see a single penny. In addition, Cobra is entitled to payment from PREPA for additional undisputed amounts, including PREPA's matching funds in the amount of approximately $11 million, related to the $99 million referred to above.

      By this letter, Cobra requests that PREPA take all steps to ensure Cobra receives these amounts immediately, unconditionally and without further delay. Indeed, PREPA must do so. Any failure by PREPA to pay these amounts raises very significant questions concerning its good faith and creates additional exposure for not only continuing interest charges on these undisputed amounts, but also Cobra's costs of collection. There is no reason that these amounts should not be paid immediately.

      The approximately $99 million, along with the other undisputed amounts, is only a portion of what Cobra is owed. Cobra understands that PREPA and other interested parties, including the Financial Oversight and Management Board (the "<u>Oversight Board</u>"), may dispute certain of Cobra's charges under the remaining invoices. While Cobra appreciates the recent efforts by the Oversight Board to broker a global resolution of these disputes, absent immediate and full payment to Cobra without condition or further delay of the amounts that are currently available from FEMA as well as all other undisputed amounts, Cobra does not believe that a consensual resolution is possible. Upon payment of these amounts, Cobra will be ready and willing to engage with PREPA and other interested parties on a process—including, if necessary, through mediation—to seek to resolve all disputes regarding the



Paul V. Possinger
April 7, 2023
Page 3

remaining invoices. However, Cobra cannot agree to any further process or settlement of any open disputes without prompt payment of the federal funds PREPA currently has available to it. For the avoidance of doubt, even if PREPA pays Cobra the approximately $99 million and the undisputed amounts, Cobra is not waiving any of its rights to the additional amounts that PREPA has thus far refused to pay, and Cobra expressly reserves all rights with respect thereto.

  Please ensure that a copy of this letter is promptly sent to each member of the Oversight Board.

           Very truly yours,

           /s/ *Abid Qureshi*
           Abid Qureshi

cc: Ehud Barak
   Maria J. DiConza
   Ernie Abbott
   Michelle Zaltsberg