## Exhibit E

**April 24, 2023 Cobra Letter to Oversight Board**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T +1 212.872.1000
F +1 212.872.1002
akingump.com



**Abid Qureshi**
+1 212.872.8027
aqureshi@akingump.com

April 24, 2023

VIA E-MAIL

Paul V. Possinger
Proskauer Rose LLP
70 West Madison
Suite 3800
Chicago, Illinois 60602-4342

Re: Cobra Acquisitions LLC's Unpaid Contractual Invoices

Dear Paul:

As you know, we represent Cobra Acquisitions LLC ("Cobra"), which is a wholly-owned subsidiary of Mammoth Energy Services, Inc. This letter responds to your letter dated April 19, 2023 in response to my letter dated April 7, 2023.

Your letter states that PREPA is willing to make "immediate payment" of the approximately $99 million that has been obligated by FEMA and is available to COR3 "when received from COR3," plus payment of the additional "approximately $11 million in matching funds." However, your letter admits that PREPA has not even submitted a request for reimbursement (RFR) for the $99 million, stating that "PREPA has been working diligently to complete its internal processes so that it can expediently submit its RFR[.]" If PREPA has not even asked COR3 for payment, the promise to pay funds "when received" from COR3 is an empty one. As is plainly evident from the fact that over four years after it provided services Cobra still has not been paid, PREPA's efforts to seek reimbursement from COR3 have been anything but diligent and timely.[1]

Other recent correspondence leaves the unfortunate impression that PREPA or its representatives may be deliberately obstructing Cobra's receipt of federally-obligated funds. While your letter states that no RFR has yet been submitted, a letter from COR3 to Cobra dated April 18, 2023 (attached hereto) states that PREPA in fact submitted an RFR to COR3 on April 4, 2023 in the amount of $130,174,526.41 relating to Cobra. When Cobra and its representatives sought clarification of this amount, COR3

---

[1] It is disappointing that you would invoke in your letter the indictment of Cobra's former president. As you know, the allegations never involved Cobra itself, the indictment has been dismissed and the resulting plea agreement involves a single gratuity charge unrelated to any work that Cobra did or was contracted for. In case there is any dispute on this point: Cobra has never seen evidence that the "delay" and "complication" in PREPA obtaining FEMA funding had anything to do with the indictment. As Cobra has stated previously, such a decision by FEMA would effectively punish PREPA—which now faces substantial charges for accrued interest on the late payments— for actions taken by individuals unaffiliated with PREPA. It also does not accord with the facts that none of FEMA's publicly available memoranda or reports that we have received relating to Cobra's contracts reference the indictment, and FEMA has fully funded no fewer than 15 storm restoration projects undertaken by Cobra's affiliates, many of which occurred after the indictment was unsealed.



Paul V. Possinger
Page 2

responded that the approximately $130 million relates only to reimbursement to PREPA for amounts that PREPA has paid Cobra and none for the $99 million owed to Cobra. PREPA, it would seem, can promptly and efficiently process RFRs when it is a matter of paying itself. Yet, fifteen days after PREPA submitted an RFR for its own reimbursement, PREPA is still undergoing unspecified "internal processes"—which is difficult to understand, given that Cobra and its employees have spent *years* assisting PREPA in reviewing and validating all of Cobra's invoices and in detail far beyond anything required by the contracts (and remains ready and willing to provide whatever other assistance may be necessary)—in order to submit an RFR for the amounts obligated in respect of Cobra's unpaid invoices. PREPA's obligation is simple: submit the RFR with COR3 and do so immediately.

It is our hope that Cobra is mistaken in this impression, and we welcome a full accounting in writing of the RFRs that have been submitted, the timing of any future RFR, the specific "policies and procedures" that must be undertaken by PREPA (and why those were not undertaken previously) and when those may be completed. Given the recent settlement discussions, Cobra refrained from bringing to the Title III court a motion to lift the stay after the $99 million was obligated, but Cobra will not hesitate to do so or to involve the mediation team to the extent there is any indication that PREPA is either deliberately standing in the way of Cobra receiving amounts that FEMA has obligated for its benefit or failing to take all steps to ensure those funds are received by Cobra promptly and without condition. After four years, delay is simply unacceptable.

In addition, as you are aware, under Cobra's first contract with PREPA, Cobra is entitled to a tax gross-up for taxes it paid to Puerto Rico in excess of 8.5%. PREPA fulfilled its obligation in respect of the tax gross-up for 2017. However, since 2019, PREPA has failed to fulfill the same obligation for the tax gross-up owing for 2018 in the amount of $61,668,083.34, notwithstanding the copious level of detail Cobra has provided to facilitate PREPA's review. If PREPA is not willing to reimburse Cobra for the full amount, we request that PREPA identify the specific amount in dispute with an explanation of the reasons for the dispute and pay immediately and without condition what it considers to be the undisputed portion of the tax gross-up amount.

Needless to say, the continued failure by PREPA to seek reimbursement from COR3 and to pay these undisputed amounts only creates additional exposure not only for continuing interest charges on these undisputed amounts, but also Cobra's costs of collection. These items—along with the other undisputed amounts—should be paid immediately. Upon payment of these amounts, Cobra is ready and willing to engage with PREPA and other interested parties on a process to seek to resolve any disputes regarding the remaining invoices. However, Cobra cannot agree to any settlement without first receiving prompt payment of the funds PREPA currently has available to it. For the avoidance of doubt, Cobra is not waiving any of its rights to the additional amounts that PREPA has thus far refused to pay, and Cobra expressly reserves all rights with respect thereto.

Please ensure that a copy of this letter is promptly sent to each member of the Oversight Board.



Paul V. Possinger
Page 3

                      Very truly yours,

                      /s/ *Abid Qureshi*
                      Abid Qureshi

Enclosure: Letter from COR3, dated April 18, 2023

cc:    Ehud Barak
       Maria J. DiConza
       Ernie Abbott
       Michelle Zaltsberg