**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors. | ) PROMESA<br>) Title III<br>)<br>)<br>) No. 17 BK 3283-LTS<br>)<br>) (Jointly Administered)<br>)<br>)<br>)<br>)<br>)<br>) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")<br><br>Debtor.[1] | ) PROMESA<br>) Title III<br>)<br>)<br>) No. 17 BK 4780-LTS<br>)<br>)<br>)<br>)<br>)<br>) **Re: 17-BK-04780-LTS, ECF No. 3507**<br>) |

**JOINT OBJECTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, PUERTO RICO ELECTRIC POWER AUTHORITY, AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO COBRA ACQUISITIONS LLC'S MOTION TO MODIFY STAY ORDER**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

OBJECTION ..................................................................................................................................3

    I.      Cobra Fails to Identify a Change in Circumstances Warranting
Reconsideration of the Stay Order ........................................................................4

           A.      PREPA Does Not Have Access to the Funds Identified by Cobra ...............5

           B.      PREPA is Working Diligently Towards the Release of Funds
Obligated for the Approved Unpaid Invoices ..............................................6

           C.      FEMA's Pending Review Weighs in Favor of the Continued Stay
Overall ..........................................................................................................8
                1.      Material Progress Has Been Made and Is Expected ........................9
                2.      FEMA's Review Remains Critical to Determining Liability ...........9

    II.     The Balance of Harms Weighs Decidedly in Favor of Maintaining the Stay ........10

           A.      Amending the Title III Court's Predetermined Litigation Schedule
Would Create a Severe Detriment to PREPA's Case in the Height
of Confirmation ...........................................................................................11

           B.      PREPA Seeks to Resolve Cobra's Administrative Expense Claim
Through Settlement Rather Than Litigation ..............................................13

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cherena v. Coors Brewing Co.*,
    20 F. Supp. 2d 282 (D.P.R. 1998) ................................................................................................4

*In re Pabon Rodriguez*,
    233 B.R. 212 (Bankr. D.P.R. 1999),
    *aff'd*, 2000 WL 35916017 (B.A.P. 1st Cir. 2000),
    *aff'd*, 17 F. App'x 5 (1st Cir. 2001) ............................................................................................4

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004) ..........................................................................................................4

**STATUTES**

48 U.S.C. § 2165, PROMESA § 305 .......................................................................................6, 10

48 U.S.C. § 2174, PROMESA § 314 ...........................................................................................10

To the Honorable United States District Judge Laura T. Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties"), respectfully submit this objection to *Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3507; Case No. 17-03283, ECF No. 24219][2] ("Motion").[3] In support of this Objection, the Government Parties respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Cobra Acquisitions LLC ("Cobra") asks the Court to reconsider both the Stay Order as well as the litigation schedule set forth in the *Order Setting Deadline for Further Status Report* [ECF No. 3155] (the "January 2023 Order"), and to modify the Stay Order to allow Cobra to commence litigation to obtain payment of what they refer to as the "Approved Unpaid Invoices" from funds PREPA has not yet received. Motion ¶ 41. In support, Cobra points to FEMA's recent obligation of approximately $210 million[4] in funds for PREPA's FEMA-eligible power restoration costs. Specifically, on March 27, 2023, FEMA obligated approximately $117 million of these funds to PREPA as reimbursement for invoices PREPA already paid Cobra, and the remaining $93 million to PREPA on account of the Approved Unpaid Invoices.[5] However, FEMA's *obligation* of

---

[2] Docket numbers refer to Case No. 17-4780 unless otherwise noted.

[3] Terms that are capitalized but not defined herein have the meanings ascribed in the Motion.

[4] The Motion incorrectly states "at least $231 million" in funds have been obligated by FEMA. FEMA approved $233,683,116.80 in funding for Project Worksheet ("PW") 11211 of which a federal cost share of 90% has been obligated, or $210,314,805.10. The remaining 10% of the approved funding is a local cost share, which PREPA must pay to retain FEMA funding.

[5] Note these figures differ slightly from those identified in the Motion. The figures in the Motion were based on preliminary analysis of FEMA's DM. After issuance of the DM, FEMA communicated more information about

funds does not constitute a sufficient change in circumstances to warrant reconsideration of the Court's previous orders, nor does it tip the balance of interests in favor of modifying the Stay Order to compel PREPA to engage in litigation of a subset of Cobra's asserted claim during the otherwise intense activity leading up to the hearing on confirmation of PREPA's plan of adjustment.

2. First, modification of the Stay Order would not expedite Cobra's receipt of the Available FEMA Funds obligated for the Approved Unpaid Invoices. Although these funds have been obligated, release of the funds to PREPA remains subject to the review and approval of all of the subject invoices by the Puerto Rico Central Office for Recovery, Reconstruction, and Resiliency ("COR3"). PREPA is working diligently to obtain release of the Available FEMA Funds in their entirety, including those obligated for the Approved Unpaid Invoices. As part of this process, PREPA must first conduct its own internal review to validate the invoices before submitting a request for reimbursement (an "RFR") to COR3. Naturally, this work had already been completed for the invoices PREPA has paid and, as a result, PREPA was able to quickly submit an RFR to COR3 for those funds. PREPA is now in the process of completing its internal validation process for the Approved Unpaid Invoices so that it can submit an RFR to COR3 for the federal funding to pay them. Modification of the Stay Order and subsequent litigation would not accelerate either PREPA's or COR3's review process, making such stay modification unnecessary.

3. Second, while the FEMA administrative appeals process has progressed, it remains ongoing. PREPA, with input from Cobra, is pursuing two appeals of determination memoranda ("DMs") issued by FEMA on Cobra's Second Contract. Resolution of these appeals will provide

---

validated amounts it considered paid, and PREPA's Disaster Funds Management Office ("DFMO") performed its own reconciliation. As a result, PREPA determined approximately $6 million more in approved invoices had already been paid to Cobra, reducing the Approved Unpaid Invoices amount from approximately $99 million to $93 million and increasing the amount attributable to paid invoices from $124 million to $130 million.

2

the Title III Court with a complete and final record, and therefore allow the Court to reach a global resolution on any issues that require adjudication at the appropriate time.

4. Third, the factors relevant to modification of a stay weigh heavily in favor of maintaining the status quo. As the Court is well aware, PREPA and its counsel and advisors are working around the clock on the estimation of the bondholders' claims and confirmation of PREPA's Title III Plan. Neither PREPA nor the Title III Court should be required to divert resources litigating an issue the Court has repeatedly held is best left for after confirmation of a plan of adjustment. This is especially true with Cobra's latest request, as the requested relief would not expedite payments to Cobra even if granted.

5. Finally, the Oversight Board believes the ideal path to resolving all outstanding disputes between PREPA and Cobra is through a global settlement rather than litigation. In furtherance of this goal, and as demonstrated by the letters attached to the Motion, the Oversight Board provided Cobra with proposed terms of a settlement of all outstanding disputes (subject to Oversight Board and PREPA approval). Without divulging details, this proposal would provide for payment of a material amount to Cobra upon execution of an agreement, prior to court approval and regardless of FEMA funding. Rather than respond to the proposal in any substantive way, Cobra has asserted payment of the Approved Unpaid Invoices is a prerequisite to any settlement discussions. In essence, Cobra placed an arbitrary gating issue on Cobra's most efficient path to getting paid. This conduct should not be rewarded with modification of the Stay Order.

6. For the reasons set forth herein, Cobra has therefore not identified a material change in circumstances that justifies modifying the stay.

## **OBJECTION**

7. As this Court has recognized, a "motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and

3

conservation of scarce judicial resources." *Order Denying Caribbean Airport Facilities, Inc.'s Motion for Reconsideration*, Case No. 17-Bk-3283-LTS, ECF No. 1045 at 1 (D.P.R. Aug. 16, 2017) (quoting *In re Pabon Rodriguez*, 233 B.R. 212, 220 (Bankr. D.P.R. 1999), *aff'd*, 2000 WL 35916017 (B.A.P. 1st Cir. 2000), *aff'd*, 17 F. App'x 5 (1st Cir. 2001)). To justify the Court reconsidering its prior order, "[t]he movant 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Id.* at 2 (quoting *Cherena v. Coors Brewing Co.*, 20 F. Supp. 2d 282, 287 (D.P.R. 1998)). The Motion fails to provide a change in circumstances warranting modification of the stay.

8. In addition, all relevant factors set forth in *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004), weigh strongly in favor of maintaining the stay applicable to the Administrative Expense Motion, including the Approved Unpaid Invoices. Specifically, the primary relevant factors are (a) the "hardship to [PREPA]," (b) the interests of Cobra in "proceeding expeditiously" and the prejudice of delay, and (c) the convenience of the courts. *Id.*

## I. Cobra Fails to Identify a Change in Circumstances Warranting Reconsideration of the Stay Order

9. In considering Cobra's request, "the Court must evaluate all aspects of the current factual and procedural landscape." *Memorandum Order Denying Cobra Acquisitions LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* [ECF No. 2004] (the "Tax Claims Order") at 10. Considered in this light, FEMA's obligation of the Available FEMA Funds does not justify modification of the Stay Order.

10. Neither the $93 million FEMA has obligated for Approved Unpaid Invoices nor the $117 million FEMA has obligated for invoices PREPA has already satisfied by payment to Cobra are "available" to PREPA. These funds reside in a federal Smartlink account to which only FEMA

4

and COR3 have access. The movement of these funds from the unobligated Disaster Relief Fund to a Smartlink account from which COR3 can draw them does not constitute a change of circumstances of sufficient magnitude to warrant modification of the Stay Order. There are procedural obstacles that must be cleared before PREPA can receive all of the $210 million in Available FEMA Funds identified in the COR3 Letter, including the $93 million obligated for payment to Cobra, whether the Stay Order remains in place or not. Moreover, PREPA is working diligently towards the timely release of the funds marked for satisfaction of the Approved Unpaid Invoices from COR3 and has already submitted an RFR for the balance.

    **A.    PREPA Does Not Have Access to the Funds Identified by Cobra**

    11.    Cobra argues PREPA "has access to at least $231 million in obligated public assistance funding from FEMA." Motion ¶ 1. This assertion is false. First, the amount is inaccurate—FEMA has obligated $210,314,805.10, which represents the 90% federal share of the total approved amount of the project ($233,683,116.80). Second, as the Oversight Board explained in its letter to Cobra, the "funds, while obligated by FEMA, are currently being held in the SmartLink account to which [COR3] (not PREPA) has access, and cannot be disbursed by COR3 until PREPA submits a request for reimbursement (RFR) and COR3 performs an independent validation process to determine whether to approve the disbursement." Motion, Ex. D at 1. PREPA began this process by requesting reimbursement of the $130 million already paid to Cobra (COR3 will ultimately disburse only the 90% federal share of this amount, $117 million), and upon receipt these funds will constitute PREPA's cash. PREPA has already paid Cobra for the work covered by these approved invoices.

    12.    A modification of the Stay Order would have no effect on PREPA's ability to pay the Approved Unpaid Invoices, as PREPA cannot transfer the funds obligated for payment of those invoices until PREPA itself receives these funds from COR3. Cobra seeks a lift of the stay of its

5

effort to get the Court to decide that the amounts approved by FEMA can be considered an administrative expense. But PREPA will be required to pay Cobra the moneys it receives on account of the Approved Unpaid Invoices even without Court action, including any order allowing Cobra's asserted administrative claim. The proposed modifications to the Stay Order are therefore unnecessary.

### B. PREPA is Working Diligently Towards the Release of Funds Obligated for the Approved Unpaid Invoices

13. Contrary to Cobra's assertions otherwise, PREPA is actively working towards the release of funds earmarked for payment of the Approved Unpaid Invoices. This process includes the completion of certain internal review procedures before PREPA submits an RFR to COR3.[6]

14. Cobra argues PREPA "has determined it must undertake further unspecified processes on an unknown timeline in order to make any payments to Cobra." Motion ¶ 50. This statement grossly mischaracterizes PREPA's efforts. Rather, PREPA and its advisors are validating the Approved Unpaid Invoices through PREPA's well-established invoice review process.

15. PREPA halted its invoice review process in 2020 following the criminal indictment of Cobra' former CEO. Indeed, as a result of the criminal indictment, in March 2020, FEMA requested COR3 to stop making payments to PREPA for Cobra invoices. PREPA recommenced the invoice review and validation process in 2021, given FEMA's initial advice that it would not consider any invoices unless they were internally fully validated by PREPA. PREPA, working with Cobra through frequent meetings, made significant progress to identify and quantify issues in the invoices that required resolution prior to payment (notably, many of these issues were

---

[6] Moreover, PROMESA bars orders directing payment from PREPA funds. PROMESA § 305. While the Oversight Board believes Section 305 of PROMESA would apply to the funds obligated to the Approved Unpaid Invoices, the Title III Court need not reach the merits of this issue to resolve and dispose of the Motion for the reasons described throughout the Objection.

6

ultimately the basis for FEMA's denial of funding in its DMs for the Second Contract). Before this work was complete, FEMA advised that it was going to consider all submitted invoices, regardless of whether they were fully validated by PREPA. As FEMA began issuing requests for information and DMs on PREPA's claimed costs, PREPA focused its limited resources, with Cobra's cooperation, on responding to these material and time-sensitive items rather than invoice review.

16. PREPA has since recommenced its invoice review process as part of making requests for reimbursement to COR3. Given staffing shortages resulting from the transition of grid operations to LUMA Energy, PREPA hired a third-party consulting firm on November 4, 2022 that has been specifically tasked to complete this review process. The process requires (1) confirmation that each invoice has all required supporting documentation; (2) accuracy review; (3) purchase order matching to confirm the invoiced services were actually requested; (4) verification that invoices were approved by authorized personnel; (5) expense classification to confirm any credits and discounts were properly applied; (6) tax compliance review to validate any tax calculations on the invoice comply with applicable law and regulation; (7) resolution of any discrepancies; and (8) approval for payment by PREPA's Executive Director and Finance Department Director. Once approved, the invoices are entered into PREPA's Accounts Payable system and PREPA's DFMO can begin preparing an RFR for submission to COR3. PREPA's counsel and the consulting firm hold calls weekly (and sometimes more frequently) to provide updates on the review process's status.

17. To expedite invoice validation, the consulting firm is working first on "low hanging fruit"—e.g., invoices fully approved by FEMA and previously certified by PREPA personnel. PREPA expects to be able to submit an RFR for these invoices in relatively short order. This

7

process will continue for all Approved Unpaid Invoices and RFRs will be submitted to COR3 as the process permits.

18. Cobra points to PREPA's currently pending request for approximately $130 million of Available FEMA Funds in reimbursement for invoices already paid to Cobra as a "contrast" to PREPA's efforts to obtain the funds obligated to the Approved Unpaid Invoices. Motion ¶ 5. However, there is good reason the funding for already-paid invoices was requested earlier. Prior to paying the already-paid invoices, PREPA completed the same invoice review process it is now undertaking for the Approved Unpaid Invoices. Because the invoices were already internally validated, approved, and paid, all of the prerequisites to submission of an RFR were completed. This is not true for the Approved Unpaid Invoices.

19. The Oversight Board included in its letter to Cobra that "PREPA has been working diligently to complete its internal processes so that it can expediently submit its RFR in compliance with its own policies and procedures, at which point COR3's validation process, which is outside of PREPA's control, will commence." Motion, Ex. D at 1. The Oversight Board also assured Cobra that "PREPA has always worked and continues to work in good faith to obtain access to FEMA funding to pay Cobra, despite the delay and complication of this process caused by the felony indictment of Cobra's former CEO." *Id.* PREPA stands by these representations. For the avoidance of doubt, PREPA is diligently completing the invoice review process and will submit to COR3 one or more RFRs for funding to pay the Approved Unpaid Invoices as expeditiously as possible. At that point, release of the funds is in COR3's hands. Upon receipt from COR3, PREPA will distribute these funds to Cobra.

C. **FEMA's Pending Review Weighs in Favor of the Continued Stay Overall**

20. Since the Stay Order was entered, the Court has consistently identified the FEMA Analysis, independent of the criminal proceedings, as a primary basis for the stay. *See* Stay Order

8

at 2 ("[C]oncurrent litigation of both matters presents the potential for duplication of effort by the parties and courts, inefficiencies in discovery, and inconsistent rulings. FEMA's ongoing analysis of Cobra's contracts with PREPA similarly weighs in favor of a stay."). The FEMA Analysis remains ongoing, thus necessitating continued enforcement of the Stay Order.

### 1. Material Progress Has Been Made and Is Expected

21. At present, the FEMA Analysis is complete with respect to the First Contract,[7] and FEMA has issued two DMs regarding the Second Contract which complete FEMA's initial review of the Second Contract as well. However, and as Cobra recognizes, administrative appeals of FEMA's rejection of certain costs remain ongoing. *See* Motion ¶ 5. FEMA can issue Requests for Information as it considers PREPA's First Appeals on the DMs or it can issue a First Appeal Decision approving or denying some or all of the costs at issue. Should FEMA continue to deny costs, PREPA can, for each project, file a Second Appeal to FEMA Headquarters or submit the dispute to arbitration before the Civilian Board of Contract Appeals (the "CBCA"). Until FEMA issues a Second Appeal Decision or the CBCA issues a final order on arbitration, the administrative process remains ongoing.

### 2. FEMA's Review Remains Critical to Determining Liability

22. In addition to narrowing the issues and saving the parties time and effort in discovery, FEMA's (and the CBCA's) decisions on PREPA's pending appeals are critical to determining whether Cobra's costs denied by FEMA complied with regulatory cost principles and with the contract. To the extent they did not, such costs might not be owed under the Second Contract. *See* Second Contract Art. 53.H. ("All costs incurred by [Cobra] in performance of this

---

[7] FEMA deferred decision on the tax gross-up payable under the contract to project closeout, and indicated that it needed PREPA to provide specific documentation establishing the amount of taxes paid in excess of 8.5% that were payable under the gross-up provision.

9

Contract must be in accord with the cost principles of 2 C.F.R. pt. 200, Subpart [E.] PREPA shall not be required to make payments to the Contractor for costs which are found to be contrary to the cost principles 2 C.F.R. pt. 200, Subpart E.").

23. In the meantime, FEMA has made material progress by approving over $233 million in Cobra invoices, including the $103 million in Approved Unpaid Invoices for which FEMA's 90% share of $93 million has been obligated. As described above, PREPA is pursuing release of these funds and will pay Cobra as these funds are released from COR3.

**II.     The Balance of Harms Weighs Decidedly in Favor of Maintaining the Stay**

24. From the start of these proceedings, the Court has consistently held Cobra is unlikely to be prejudiced by delay in litigation because PREPA cannot be required to pay or reserve for Cobra's claim until the effective date of a plan of adjustment. *See* Stay Order at 2-3 (citing 48 U.S.C. §§ 2165, 2174); *Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [ECF No. 2590] at 5 (explaining feasibility of a potential plan need not be established before confirmation and can be accomplished by establishing a reserve for Cobra's claim at that time). Nothing has changed in this respect.[8] The Court should therefore deny the Motion for substantially the same reasons as articulated in PREPA and the Oversight Board's previous pleadings. *See* [ECF No. 2848] ¶¶ 29-34; [ECF No. 2507] ¶¶ 17-18; [ECF No. 1959] ¶¶ 53-55. In addition, the below-described recent developments further support maintaining the Stay Order in its current form.

---

[8] Cobra spends the majority of its affirmative argument either (i) once again pointing to the general harm suffered by Cobra through nonpayment since the Court issued the Stay Order until now, (ii) explaining Cobra's entitlement to the funds obligated to the Approved Unpaid Invoices, or (iii) chastising PREPA and the Oversight Board for failing/refusing to disperse these funds to Cobra. Motion ¶¶ 44-52. As explained throughout this Objection, none of these arguments warrant reconsideration of the Stay Order.

10

### A. Amending the Title III Court's Predetermined Litigation Schedule Would Create a Severe Detriment to PREPA's Case in the Height of Confirmation

25. First, neither PREPA nor the Title III Court should be forced to divert limited resources litigating an issue the Court has repeatedly stated is best left for after confirmation of a plan of adjustment. *See* Stay Order at 2-3; [ECF No. 2590] at 5 ("PREPA's ability to fund a reserve or resolve [Cobra's] claim, and issues regarding the appropriate magnitude of the claim, can be addressed in the context of confirmation."); June 29, 2022 Hr'g Tr. at 26:1-4 ("[W]e have the practical situation that PREPA is not, in the Title III context, required to make the payment to your client until there is a confirmation proceeding to the extent it's going to be paid as an administrative claim."), 41:12-14 ("[T]he Court also notes that the prejudice being suffered by Cobra isn't materially different from that of others who are awaiting payments of administrative expense claims."). The Court's reasoning in those instances applies with even greater force now, when PREPA is on the precipice of the confirmation hearing on its Title III Plan. As the Court knows, reaching this moment has required the complete attention of the Oversight Board and its legal counsel and advisors. This workload will only increase as the hearing on confirmation of the Plan draws closer. Adding litigation over the Approved Unpaid Invoices serves only to complicate and potentially frustrate the Plan confirmation process.[9] All parties in interest, as well as the people of Puerto Rico, require the efficient resolution of PREPA's Title III case. Indeed, the Court has reminded the parties of its importance on multiple occasions. *See, e.g.*, May 8, 2023 Hr'g Tr. at 48:5-14 ("As I said in the first hearing in these cases, failure is not an option . . . . It's still not an option, and it is time that this very expensive process resolves itself with confirmation of a substantially consensual plan that gives PREPA and the people it serves a fresh start. As Professor

---

[9] Moreover, and as the Title III Court recognized at the June 2022 Omnibus Hearing, "PREPA is not, in the Title III context, required to make the payment to [Cobra] until there is a confirmation proceeding to the extent it's going to be paid as an administrative claim." June 29, 2022 Hr'g Tr. at 26:1-4.

11

Gonzalez pointed out, and Mr. Friedman has as well, it's the people of Puerto Rico who will bear the most serious and lasting consequences if PREPA fails to restructure its debts and move forward."). Modifying the Stay Order in the manner proposed by Cobra would only detract from this goal, without any immediate benefit to Cobra.

26. The Court issued a clear directive in the January 2023 Stay Order: PREPA and Cobra were to file a joint status update on, among other things, "a summary of the outstanding unpaid amounts arising from the First and Second Contracts and whether the Government Parties dispute Cobra's entitlement to these amounts" by July 31, 2023. January 2023 Order at 2. The Court therefore intends to resolve the remaining outstanding issues between PREPA and Cobra as a whole *after* Plan confirmation proceedings come to a close. In defiance of this position, Cobra now asks the Court to bifurcate the issues and transition to a piecemeal and scattershot approach to Cobra's administrative expense claim. Such a proposal would upend the Court's well-considered vision for an orderly resolution of this matter and should therefore be denied.[10]

27. Cobra argues "any litigation costs relevant to the Approved Unpaid Invoices are immaterial, if not non-existent." Motion ¶ 49. On this point Cobra is flat wrong. Any motion practice distracting PREPA and its counsel from confirmation of the Plan is costly and detrimental to PREPA. Even forcing PREPA to litigate, and the Court to decide, this Motion steals precious time otherwise spent on crucial issues related to the resolution of PREPA's Title III case.

28. In addition, Cobra asserts resolving the Approved Unpaid Invoices will benefit PREPA and all stakeholders by avoiding the accrual of interest on these outstanding debts. Motion ¶ 51 (noting PREPA's supposed "cavalier attitude toward the interest accrual"). This argument

---

[10] If anything, the Court should push back the July 31, 2023 deadline further to ensure there is no overlap between confirmation of the Plan and litigation of Cobra's administrative expense claim.

12

presupposes Cobra's entitlement to interest on its outstanding debts. As stated in previous filings, PREPA disputes Cobra's right to such interest for a variety of reasons, including but not limited to (a) Cobra charging interest on amounts FEMA found were not properly billable under the First Contract, (b) Cobra compounding interest, and (c) Cobra charging interest on tax gross-up amounts it has not actually paid to Puerto Rico tax authorities.

29. Finally, and as explained above, the requested modification of the Stay Order and ensuing litigation does little to resolve the issues related to the Approved Unpaid Invoices. Cobra seeks to "litigate Cobra's immediate right to payment of the Available FEMA Funds" to satisfy the Approved Unpaid Invoices. Motion ¶ 41. Yet Cobra fails to explain what issues require litigation. PREPA is currently in the process of reviewing and validating the Approved Unpaid Invoices, and upon validation will submit an RFR to COR3. These funds will in turn be paid to Cobra upon PREPA's receipt whether or not the Court allows an administrative claim for these charges. Litigation would not expedite this process. If anything, it would do the opposite.

### B. PREPA Seeks to Resolve Cobra's Administrative Expense Claim Through Settlement Rather Than Litigation

30. As previewed above, PREPA and the Oversight Board hope to resolve all outstanding issues with Cobra through a consensual settlement and avoid litigation altogether. To this end, the Oversight Board presented Cobra with the initial terms of a proposed settlement that, among other things, would provide for payment of a material amount to Cobra upon execution of an agreement, prior to Court approval and regardless of FEMA funding.

31. Unfortunately, as demonstrated in the correspondences between Cobra and the Oversight Board, Cobra refused to engage in discussions over the proposal. Cobra instead made payment of the Approved Unpaid Invoices a threshold requirement for settlement discussions to begin. *See* Motion, Ex. C at 3 ("Cobra cannot agree to any further process or settlement of any

13

open disputes without prompt payment of the federal funds PREPA currently has available to it."). This stance suggests the Oversight Board and PREPA are purposefully delaying the release of funds obligated for the Approved Unpaid Invoices by COR3, which could not be further from the truth. The Approved Unpaid Invoices remain subject to the established invoice review process every invoice sent to COR3 for reimbursement undergoes. Once completed, PREPA will submit one or more RFRs to COR3 and use the funds disbursed by COR3 pursuant to the RFR(s) to pay Cobra.

32. The COR3 validation and disbursement process will not be impacted or expedited by litigation of Cobra's right to payment of the Allowed Unpaid Invoices. Motion, Ex. D at 2. Modifying the Stay Order will not expedite payments to Cobra. It should therefore allow the invoice review process and RFR process to proceed, and concurrently engage in discussions with the Oversight Board and PREPA for a potential settlement of all issues relating to the asserted administrative claim.

## CONCLUSION

33. For the foregoing reasons, the Government Parties respectfully request the Court deny the Motion.

San Juan, Puerto Rico
May 23, 2023

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/ *Paul V. Possinger*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com
\* admitted *pro hac vice*

*Attorneys for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Arturo Díaz Angueira*
Arturo Díaz Angueira
adiaz@diazvaz.law
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918
Tel. (787) 395-7133
Fax. (787) 497-9664

*Co-Attorneys for Puerto Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
mdiconza@omm.com

15

-and-

Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
pfriedman@omm.com

-and-

Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

16