SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 1 de 10



JUNTA DE GOBIERNO
UNIVERSIDAD DE PUERTO RICO

9 de agosto de 2021

*A la mano y por correo electrónico: npastrana@senado.pr.gov*

Hon. Juan Zaragoza
Presidente
Comisión de Hacienda, Asuntos Federales y
Junta de Supervisión Fiscal
Senado de Puerto Rico
El Capitolio
San Juan, PR

**RE: Proyecto de la Cámara 119**

Estimado honorable Zaragoza:

La Comisión que preside nos ha solicitado emitir los comentarios en torno al Proyecto de la Cámara 119 ("PC 119"). Esta pieza legislativa, de la autoría de los Representantes María de Lourdes Ramos Rivera y Carlos "Johnny" Méndez Núñez, tiene el propósito de:

> *"Para crear el "Sistema de Retiro de la Universidad de Puerto Rico", conforme a la Escritura de Confirmación y Reconocimiento de Fideicomiso del Sistema de Retiro de la Universidad de Puerto Rico otorgada el 29 de junio de 2016, a los fines de proveer para el establecimiento, mantenimiento y administración de un Sistema de Retiro para la Universidad de Puerto Rico; para proveer para pensiones, bajo un plan de beneficios definidos, y otros beneficios para los funcionarios, empleados permanentes, temporeros que cualifiquen y por contrato de la Universidad; para disponer lo necesario para las finanzas de dicho Sistema; crear la Junta de Retiro del Fideicomiso del Sistema de Retiro de la Universidad de Puerto Rico; enmendar los Artículo 3 y 14 de la Ley Núm. 1 de 20 de enero de 1966, según enmendada, conocida como "Ley de la Universidad de Puerto Rico"; enmendar los Artículos 5 y 6 de la Ley Núm. 2 de 20 de enero de 1966, según enmendada, conocida como "Ley de Asignación de Fondos a la Universidad de Puerto Rico"; enmendar el Artículo 29 de la Ley 3-2017, según enmendada, conocida como "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico"; y para otros fines."*

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc: Appendix Exhibit 8 to Complaint Dkt 1-8 Page 2 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 2 de 10

9 de agosto de 2021<br>
Hon. Juan Zaragoza – PS 119<br>
Página 2

El pasado 9 de junio de 2021, tuvimos la oportunidad de expresarnos sobre el PC 119 ante la Comisión de Asuntos Laborales y Transformación de Sistema de Pensiones para un Retiro Digno de la Cámara de Representantes. Como señalamos entonces, y hemos señalado en el pasado, el análisis del impacto de legislación sobre un andamiaje tan complejo como es el Sistema de Retiro de la UPR ("Sistema de Retiro"), su Plan de Pensiones y el Fideicomiso creado para proteger los activos que se utilizan para el pago de los beneficios de los participantes de dicho Sistema es necesario traer ante la atención de esta Honorable Comisión los aspectos más relevantes que inciden sobre su funcionamiento el impacto de PROMESA sobre este asunto. A pesar de nuestras advertencias, la medida fue aprobada con enmiendas el 24 de junio de 2021. Sin embargo, las enmiendas introducidas por la Cámara de Representantes, no atienden los señalamientos que respetuosamente presentamos ante ese Cuerpo, por lo que nos vemos en la obligación de reiterarlos en esta comparecencia. Además, en esta ocasión hemos discutiremos el impacto que esta legislación pudiera tener en la acreditación de la UPR. Veamos.

**Sistema de Retiro de la Universidad de Puerto Rico**

El plan de pensiones de los empleados de la UPR data del año 1950, cuando fue aprobado por el Consejo Superior de Enseñanza de la UPR (ahora Junta de Gobierno). Según concebido entonces, el plan de pensiones tenía una Junta de Retiro que estaba compuesta por los representantes de varias facultades. Además, se dispuso que el Consejo Superior de Enseñanza sería el "*trustee*", o fiduciario, del plan de pensiones, pero la Junta de Retiro era la encargada de su administración.

Con la aprobación de la Ley Núm. 1 del 20 de enero de 1966, según enmendada, se constituyó la UPR como una corporación pública del Gobierno de Puerto Rico. Por virtud del Artículo 3 de dicha ley, la UPR tiene el deber de "[m]antener un plan de seguro médico y un sistema de pensiones para todo el personal universitario, el cual incluirá un plan de préstamos sin interponerse a los poderes de la Junta de Retiro."." Del mismo modo, por virtud de su ley orgánica, la UPR tiene la facultad de "[a]probar o enmendar… el Reglamento del Sistema de Retiro…", entre otros. La Ley Núm. 1, *supra*, guarda silencio sobre los beneficios que deben concederse por virtud de su plan de pensiones o la estructura administrativa que debe utilizarse para el manejo de dicho plan. Estos asuntos siempre han sido manejados por la Universidad, respetándose la autonomía de la institución.

Conforme a las facultades y prerrogativas antes mencionadas, el 1 de julio de 1973, la UPR aprobó la Certificación Núm. 27 (1973-74) en la cual estableció el Reglamento del Sistema de Retiro de la UPR (en adelante "Reglamento").

Desde entonces, dicho reglamento, con sus enmiendas, es el documento que rige las operaciones del Sistema y establece los requisitos y beneficios para los participantes.

Case:17-03283-LTS  Doc#:24302-10  Filed:05/24/23  Entered:05/24/23 13:30:00  Desc:
Appendix Exhibit 8 to Complaint Dkt 1-8   Page 3 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 3 de 10

9 de agosto de 2021<br>
Hon. Juan Zaragoza – PS 119<br>
Página 3

En su origen, la Junta de Retiro era administrador y custodio de los fondos del Sistema de Retiro y era el ente responsable al entonces Consejo de Educación Superior por sus actuaciones. Los fondos para el plan de pensiones se depositaban, según el Reglamento, en el Fondo de Retiro de la Universidad de Puerto Rico.

Sin embargo, en el año 1989 se aprobó la Certificación Núm. 53 (1989-90) en la cual enmendó el Reglamento para establecer que el Consejo de Educación (ahora Junta de Gobierno) sería el administrador del Sistema de Retiro y tendría la responsabilidad del funcionamiento adecuado de dicho sistema. Con esta enmienda, se limitaron los deberes y facultades de la Junta de Retiro a solamente asesorar y recomendar sobre ciertos aspectos de la administración del Sistema.

**Fideicomiso del Sistema de Retiro**

En el año 2016, se estableció una escritura de fideicomiso sobre los bienes depositados en el Fondo de Retiro de la Universidad de Puerto Rico. Este documento se otorgó con el propósito de cumplir con las disposiciones de la Ley 219-2012, según enmendada, conocida como" *Ley de Fideicomisos*", en adelante "Escritura del Fideicomiso", la cual requiere que los fideicomisos se constituyan en escritura pública y de registren en el registro creado por dicho estatuto. Este documento fue aprobado por la Junta de Gobierno mediante la Certificación Núm. 118 (2015-2016).

El Fideicomiso del Sistema de Retiro (en adelante "Fideicomiso") es, en esencia, el patrimonio, o un fondo, de los bienes del Sistema de Retiro, que son independientes a los bienes de la UPR y, por tanto, protegidos contra cualquier reclamación que pudieran tener acreedores contra los bienes de la Universidad. Así lo define el Artículo 1 de la Ley 219-2012 y las Secciones 1.9 y 2.1 de la Escritura del Fideicomiso.

La escritura designó a la Junta de Gobierno de la UPR como el fiduciario del Fideicomiso, en armonía con las disposiciones de la Ley Núm. 1, *supra*, y del Reglamento. Ahora bien, a la luz de la determinación del Tribunal de Apelaciones en el caso de Junta de Retiro y otros v. Junta de Gobierno de la UPR y otros, Caso KLAN201900304, la Junta de Retiro fue designada por dicho tribunal como el fiduciario del Fideicomiso.

Ahora bien, en aras de procurar que esta Honorable Comisión tenga claro los roles de la Junta de Retiro ante su designación como fiduciario del Fideicomiso, es necesario destacar que las facultades de fiduciario se limitan a las establecidas por la Escritura del Fideicomiso, y que éstas solo versan sobre el manejo de los activos en el Fideicomiso. En síntesis, las funciones como fiduciario que le corresponden a la Junta de Retiro son:

1. Administrar, invertir y reinvertir los activos del Fideicomiso a tenor con la Política de Inversión que se adopte conforme al Reglamento. Sección 3.1 de la Escritura del Fideicomiso.
2. Ejecutar los instrumentos y documentos que sean necesarios para cumplir con los poderes que le confiere la Escritura. *Id.*, Sección 3.3.1.

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc:
Appendix Exhibit 8 to Complaint Dkt 1-8 Page 4 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 4 de 10

9 de agosto de 2021<br>
Hon. Juan Zaragoza – PS 119<br>
Página 4

3. Aprobar las certificaciones y reglamentos necesarios para la administración del Fideicomiso. *Id.*, Sección 3.3.2.
4. Procurar que la UPR (Administración Central) realice oportunamente las aportaciones al plan de pensiones. *Id.*, Sección 3.3.3.

Es decir, la sentencia antes mencionada no surte efectos sobre las facultades para el manejo del Sistema de Retiro de la UPR y la reglamentación aplicable que la Ley Núm. 1, *supra*, le confiere a la Junta de Gobierno de la Universidad.

**Situación Fiscal del Sistema**

Los más recientes estados financieros auditados de la UPR al 30 de junio de 2020, preparados a tenor con los GASB 67 y 68, reflejan que el plan de pensiones tiene un "*funding ratio*" de apenas un 29.73%. El 88% de la deuda del plante pensiones está relacionada a los pensionados y empleados elegibles para retirarse. Según estos estados, la deuda actuarial total del Sistema ronda por los $4,722 millones.

Históricamente, la UPR ha realizado las contribuciones recomendadas por los actuarios al plan de pensiones. Para poner en contexto, durante el periodo entre los años 1991 al 2018, la Universidad aportó alrededor de $1.7 billones al plan, $55 millones más que las aportaciones recomendadas por los actuarios. Esto demuestra que la deuda actuarial no surge por falta de aportaciones, sino una consecuencia del diseño del plan, la cual se ha agravado por decisiones del pasado que concedieron mayores beneficios sin el financiamiento adecuado y utilizando premisas actuariales demasiado optimistas.

Al 30 de abril de 2021, el Sistema de Retiro tenía 9331 retirados y 8,740 participantes activos para una brecha negativa del plan de retirados sobre participantes activos de 591. En el año 2009, el número de retirados era de 6,892 y de participantes activos de 12,624, para un "*gap*" de 5,732. Es decir, la brecha entre activos y retirados desapareció en su totalidad en los pasados 10 años.

Tomando en consideración estos escenarios, la Junta de Gobierno de la UPR evalúa constantemente la situación del Sistema para velar por su solvencia y el pago de las pensiones. Además, estudia alternativas para asegurar el balance a largo plazo entre los activos del fondo (aportaciones patronales, individuales y el ingreso por rendimiento de inversiones) y el desembolso para pago de pensiones y gastos del funcionamiento del Sistema de Retiro.

La Universidad de Puerto Rico aporta al Fideicomiso continuamente. Para ello, mantiene vigilancia del flujo de efectivo por concepto de las aportaciones patronales de manera que se realicen a tiempo y en las cantidades que corresponden. La UPR remite de inmediato todas las aportaciones de los participantes que se retienen por descuento de nómina. Además, mediante la Certificación Núm. 104 (2018-2019) se estableció un sistema de revisión trimestral para garantizar que la aportación patronal estimada mediante un por ciento de la nómina se remita al Fideicomiso tan pronto se completa el procesamiento de la nómina.

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc: Appendix Exhibit 8 to Complaint Dkt 1-8 Page 5 of 10

9 de agosto de 2021
Hon. Juan Zaragoza – PS 119
Página 5

La aportación patronal se computa en una base porcentual de la nómina. Como resultado de la reducción de empleados por jubilación o renuncia en años recientes, tanto la aportación patronal, como la individual, han mermado, en comparación a la recomendación dispuesta en la tabla actuarial. Sin embargo, tanto para el año fiscal 2019-2020, como para el presente año fiscal, hemos tomado las medidas para realizar aportaciones ascendentes a $160 millones anuales.

**Plan Fiscal de la UPR Certificado el 12 de junio de 2020**

El Plan Fiscal de la UPR, según certificado por la Junta de Supervisión Fiscal (en adelante "JSF") al amparo de las disposiciones de PROMESA, contempla cambios al Sistema de Retiro para evitar que este se vuelva insolvente para el año 2031.[1] En ese sentido, la JSF señala que sus propuestas tienen el propósito de que se puedan cumplir con las obligaciones de las pensiones sin que esto requiera aumentos significativos en los ingresos o reducciones significativas en los gastos,[2] como por ejemplo, aumentos adicionales en el costo de matrícula, reducciones de facultad, o cierre de recintos.[3]

Entre los comentarios de la JSF a la situación fiscal del Sistema, señalan preocupación porque las contribuciones no sean adecuadas para mantener la solvencia de este, por lo que la JSF recomendó la reducción de beneficios. El plan de la JSF incluye dos opciones: (i) la congelación de las pensiones y el establecimiento de un plan de aportaciones definidas (similar al de los empleados del Gobierno de Puerto Rico) sin recorte de beneficios; y (ii) la congelación de las pensiones, el establecimiento de un plan de aportaciones definidas y la reducción de beneficios acumulados.[4] El Plan Fiscal de la JSF recomienda que la UPR adopte la segunda opción por lo que separa una aportación patronal anual para la deuda actuarial de $120 millones.

**Plan Fiscal de la UPR según aprobado por la Junta de Gobierno**

Mediante la Certificación Núm. 77 (2020-2021) la Junta de Gobierno de la UPR aprobó un borrador para la revisión del Plan Fiscal de la Universidad el cual fue sometido a la JSF conforme a las disposiciones de PROMESA.[5] La propuesta que contiene esta Certificación se diferencia del Plan Fiscal de la JSF en:

5. Acoge la propuesta que no reduce beneficios de las pensiones; y
6. Establece una aportación patronal anual para la reducción de la deuda actuarial de $160 millones.[6]

---

[1] Véase pág. 15 del Plan Fiscal para la Universidad de Puerto Rico del 12 de junio de 2020.
[2] *Id.*, pág. 6.
[3] *Id.*, pág. 48.
[4] *Id.*
[5] Aprobada el 25 de marzo de 2021.
[6] Véase págs. 50-51 del Plan Fiscal de la Universidad adoptado por la Certificación Núm. 77.

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc: Appendix Exhibit 8 to Complaint Dkt 1-8 Page 6 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 6 de 10

9 de agosto de 2021<br>
Hon. Juan Zaragoza – PS 119<br>
Página 6

Con la propuesta adoptada por la UPR, el plan de beneficios definidos cerraría al 31 de diciembre de 2021, para los empleados "*non-vested*" y los de nuevo ingreso luego de esa fecha (12% de los participantes). Estos empleados participarían en un plan de aportaciones definidas a partir del 1 de enero de 2022. Los participantes del Sistema que están retirados y los empleados "*vested*" no se afectarían con esta alternativa (50% y 38% de los participantes respectivamente).

Con las aportaciones antes mencionadas la UPR estaría depositando más de $240 millones adicionales a la propuesta de la JSF durante el periodo correspondiente a los años fiscales 2018 al 2026.

**Plan Fiscal de la UPR Certificado por la JSF el 27 de mayo de 2021**

El 27 de mayo de 2021, la JSF certificó el Plan Fiscal para UPR para los años 2022-2026. Dicho plan implica una reducción de $94 millones adicionales al presupuesto operacional de la UPR en comparación con la propuesta de Plan Fiscal para la UPR, según aprobada por la Junta de Gobierno de la Universidad el 25 de marzo de 2021, en la Certificación Núm. 77 (2020-2021).

En lo concerniente al Sistema de Retiro de la UPR, el Plan Fiscal de la UPR según certificado por la JSF reconoce que la opción de reforma del plan de retiro adoptada por la UPR es la menos onerosa a los participantes del Sistema de Retiro de la UPR. No obstante, dicha opción requiere una inyección de al menos $64 millones al presupuesto de la Universidad, lo cual requiere que la UPR (dentro de las limitaciones ya existentes) identifique dichos recursos de otras fuentes para satisfacer las necesidades actuariales del Sistema de Retiro, entiéndase, aumentar ingresos en partidas como el costo de matrícula, o reducir gastos administrativos como eficiencia administrativa, el cierre y/o consolidación de recintos, reducciones en gastos de nómina, entre otros.

**Proyecto de la Cámara 119**

Como se desprende del título de la pieza legislativa ante la consideración de esta Honorable Comisión, sus autores pretenden elevar a rango de ley el Sistema de Retiro de la UPR, el cual ha operado hasta el presente mediante reglamentación adoptada por la Universidad. Además, fija en la Junta de Retiro la responsabilidad de fiducia del Fideicomiso, al tiempo que establece que el plan será uno de beneficios definidos.

Como ya mencionamos anteriormente, la política de la presente administración de la UPR es procurar que los beneficios de los participantes retirados y "*vested*" no se afecten y así lo demuestra nuestra propuesta del Plan Fiscal para los años fiscales 2022-2026. No obstante, es una realidad que las determinaciones de la JSF con respecto a las aportaciones que recibe la UPR provenientes del Fondo General, han significado una reducción de ingresos anuales que sobrepasan los $330 millones. A consecuencia de ello, la UPR cuenta con recursos limitados.

9 de agosto de 2021<br>
Hon. Juan Zaragoza – PS 119<br>
Página 7

Es pertinente señalar que, si no se adoptan reformas al Sistema de Retiro, las aportaciones anuales requeridas, para el pago de la aportación patronal de la UPR asciende a $201 millones, es decir, $41 millones más que la aportación que contiene el Plan Fiscal propuesto por la UPR y $91 millones más que la versión de la JSF. En ese sentido, en cualquiera de los dos escenarios, para que el PC 119 sea viable, la legislación que finalmente apruebe esta Asamblea Legislativa debe proveer una asignación de fondos para cubrir la deficiencia.

Por otro lado, muchas de las disposiciones del PC 119 siguen el modelo del Reglamento por lo que no tenemos mayores objeciones o comentarios a las mismas. Sin embargo, entendemos necesario puntualizar varios artículos de la pieza legislativa que contienen lenguaje que necesita ser evaluado con detenimiento por esta Honorable Comisión, según señalamos a continuación.

1. Artículo 1- El lenguaje es confuso pues podría interpretarse que la Escritura del Fideicomiso crea el Sistema. En ese sentido, hacemos hincapié que la Escritura del Fideicomiso incide en los asuntos relacionados al manejo del Sistema de Retiro, sino que inclusive reconoce que el mismo se rige por el Reglamento, y la reglamentación que adopte la Junta de Gobierno. Por otro lado, como señaláramos anteriormente, establecer que el plan de pensiones será un plan de beneficios definidos es inconsistente con el Plan Fiscal. Del mismo modo, aun cuando reconocemos que la Asamblea Legislativa tiene la facultad para establecer mediante legislación que la Junta de Retiro sea quien administre el Sistema de Retiro, lo cual es una unidad de la UPR, debe tenerse presente que el Sistema y el Fideicomiso son dos entidades distintas con propósitos diferentes. Finalmente, señala que la Junta de Retiro administrará el Sistema conforme a las disposiciones de la Ley 219-2012. Sugerimos que tal lenguaje sea clarificado porque dicha legislación no versa sobre la administración de sistemas de retiros.

2. Artículo 2- Este artículo invoca la Sección 19 del Artículo II de la Constitución sin expresar cuál es la emergencia que atiende para ello.

3. Artículo 4- Los incisos (F), (G), (I) y (K) son inconsistentes con el Plan Fiscal y PROMESA en cuanto limitan los poderes conferidos a la JSF por virtud de dicha ley lo que puede facilitar su impugnación en los tribunales.

4. Artículo 14- El inciso (B) es inconsistente con el Plan Fiscal toda vez que no toma en consideración el dinero disponible para las aportaciones según el mismo. Por otro lado, establecer que las transferencias del Fondo General a la UPR serán en primer lugar para las aportaciones al Sistema no solo pueden poner en peligro los niveles de flujo de efectivo que requieren las entidades acreditadoras de la Universidad, sino que pueden afectar directamente la capacidad de la Universidad proveer servicios a la comunidad que sirve, los estudiantes, si misión principal. Esto, a su vez limita el cumplimiento con los

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc: Appendix Exhibit 8 to Complaint Dkt 1-8 Page 8 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 8 de 10

9 de agosto de 2021
Hon. Juan Zaragoza – PS 119
Página 8

Estándares de Acreditación y los requisitos de Afiliación para mantener sus acreditaciones.

5. Artículo 18- De nuevo, el texto en el inciso (A) puede dar la impresión que el Fideicomiso y el Sistema son la misma cosa cuando no lo son.

6. Artículo 19- El inciso (B) hace referencia al 31 de diciembre de 2020, como periodo que debe completarse la transición. Esta fecha debe revisarse.

7. Artículo 23- La última oración debe ser consultada con el Departamento de Justicia. A nuestro juicio, si cualquier parte de la ley fuese declarada inconstitucional, esa determinación no "suspendería" el texto impugnado hasta la salida de la JSF, sino que debe determinarse como que nunca fue puesta.

**Acreditación de la UPR**

La Ley de la UPR requiere que su Junta de Gobierno atienda "los requerimientos de las entidades acreditadoras, las regionales y las propias, entre ellas, el Consejo de Educación de Puerto Rico, la *Middle States Commission on Higher Education*, y las que ofrecen acreditaciones profesionales particulares".[7]

En lo que respecta a la *Middle States Commission on Higher Education* ("MSCHE"), esta entidad espera que las instituciones educativas que pretenden mantener su acreditación demuestren cumplimiento, y conduzcan sus operaciones de forma consistente, con sus estándares y requerimientos y que empleen procesos continuos de auto revisión y mejoramiento.[8] Debido a las particularidades del PC 119, entendemos necesario discutir y considerar los requisitos del Estándar VII de MSCHE, titulado "Gobernanza, Liderato y Administración".

En lo pertinente, el Estándar VII de MSCHE requiere que las instituciones educativas tengan un cuerpo rector legalmente constituido. Ese cuerpo rector deberá:

(i) servir el interés público, asegurarse que la institución establezca claramente, y cumpla, con sus metas y visión, que tenga una responsabilidad fiduciaria sobre la institución y que en última instancia, sea quien responde por la calidad académica, planificación y la salud fiscal de la institución;[9]

(ii) supervisa, a nivel de formulación de políticas, la calidad de enseñanza y aprendizaje, la aprobación de programas académicos y la concesión de grados, establecer las políticas y procedimientos sobre el personal, la aprobación de políticas y estatutos y asegurarse de una administración fiscal robusta;[10]

---

[7] Véase inciso (H) (20) del Artículo 3 de la Ley Núm. 1, *supra*.
[8] Véase "Standards for Accreditation and Requirements of Affiliation", Thirteen Edition del Middle States Commission on Higher Education, 2015. https://www.msche.org/standards/
[9] Véase criterio (2) (a) del Estándar VII de MSCHE.
[10] *Id.*, (2) (d).

Case:17-03283-LTS Doc#:24302-10 Filed:05/24/23 Entered:05/24/23 13:30:00 Desc:
Appendix Exhibit 8 to Complaint Dkt 1-8 Page 9 of 10

SJ2023CV04406 11/05/2023 05:14:10 pm Entrada Núm. 1 Página 9 de 10

9 de agosto de 2021
Hon. Juan Zaragoza – PS 119
Página 9

(iii) juega un papel básico en la formulación de políticas sobre asuntos financieros para asegurar una administración financiera íntegra y robusta, lo cual puede incluir la revisión oportuna de estados financieros auditados y/o otros documentos relacionados a la viabilidad fiscal de la institución;[11]
(iv) nombra y evalúa regularmente al principal oficial ejecutivo de la institución;[12]
(v) entre otros.

Nótese que estos estándares requieren que los asuntos administrativos, incluyendo los relacionados al personal, los beneficios que se le conceden, etc., estén bajo el control del ente que tiene a cargo la institución educativa, en el caso de la UPR, la Junta de Gobierno. En ese sentido, legislar los beneficios que se le conceden a los empleados de la UPR, como hace el PC119 con los beneficios de un plan de pensiones, le quita esa autonomía a la Junta de Gobierno como espera MSCHE. Del mismo modo, el PC 119 compromete una cantidad significativa de fondos para sostener un plan de pensiones bajo el modelo de beneficio definido, quitándole a la Junta de Gobierno autoridad para manejar sus asuntos fiscales y en contraposición de los requisitos del Plan Fiscal bajo la Ley PROMESA.

**Conclusión**

La UPR no ha estado ajena al impacto negativo en sus finanzas a consecuencia de varios eventos recientes, entre ellos: la crisis fiscal del Gobierno de Puerto Rico, lo cual provocó una reducción en las transferencias del Fondo General que recibe la UPR, a tenor con las medidas impuestas por la JSF en el presupuesto operacional del gobierno; la reducción de estudiantes a consecuencia de la emigración, lo que ha reducido los ingresos propios; el impacto de los huracanes Irma y María en la infraestructura de la institución y sus operaciones; entre otros así como los efectos e impactos de la Pandemia COVID-19 y el cambio drástico a educación a distancia de todo su ofrecimiento académico. Por tanto, es evidente la Universidad necesita reformar sus operaciones, las cuales tendrán un impacto directo en el Sistema de Retiro.

Ahora bien, aunque la JSF sugiere en el Plan Fiscal de la UPR la implantación de medidas que reducirían los beneficios de todos los participantes del Sistema, la Junta de Gobierno de la Universidad ha tomado las medidas para realizar un estudio abarcador con miras a reformar el Sistema de Retiro, sin que esto signifique que se implantarán las medidas propuestas por la JSF. A esos fines, la Junta de Gobierno procuró los estudios actuariales, legales y financieros pertinentes para atender la situación de la deuda actuarial, el "*funding ratio*", entre otros asuntos de interés.

El Plan Fiscal que propone la Junta de Gobierno según aprobado en la Certificación Núm. 77 (2020-2021) demuestra que la UPR tiene el compromiso de velar por la sana administración del Sistema de Retiro y reducir cualquier impacto negativo en los participantes, particularmente aquellos que ya están retirados o "*vested*". El compromiso de nuestra administración se reafirma en el fiel cumplimiento de las Leyes, Normas y

---

[11] *Id.*, (2) (e).
[12] *Id.*, (2) (f).

9 de agosto de 2021
Hon. Juan Zaragoza – PS 119
Página 10

Reglamentos de la Universidad y del Gobierno de Puerto Rico. Con ello en mente, continuaremos llevando a cabo todas las gestiones necesarias para atender los grandes retos que enfrenta nuestra institución.

Finalmente, la estructura legal existente es cónsona con los estándares de la MSCHE por lo que alterarla puede afectar la acreditación de la Universidad. Esto pondría en riesgo el futuro de miles de estudiantes que han depositado en el primer centro docente de la isla su desarrollo como profesionales.

Esperamos nuestros comentarios le sean de utilidad a esta Comisión y nos ponemos a la disposición de contestar cualquier pregunta que sus distinguidos miembros tengan a su bien hacer.

Cordialmente,

Ing. Emilio M. Colón
Presidente Junta de Gobierno

Dra. Mayda M. Velasco
Vicepresidenta Junta de Gobierno