**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS**
**EMPLEADOS DEL GOBIERNO Y LA JUDICATURA**
**JUNTA DE SÍNDICOS**

**FRANCISCO MARTÍNEZ IRIZARRY**
Apelante
v.
**ADMINISTRACIÓN DE LOS**
**SISTEMAS DE RETIRO DE LOS**
**EMPLEADOS DEL GOBIERNO Y LA**
**JUDICATURA**
Apelada

**CASO NÚM.**

**SOBRE: APELACIÓN DE**
**DECISIÓN DEL ADMINISTRADOR**

**APELACIÓN**

A LA HONORABLE JUNTA DE SÍNDICOS:

Comparece la parte apelante del caso de epígrafe. Sr. Francisco Martínez Irizarry. por conducto del abogado que suscribe. y respetuosamente expone, alega y solicita:

**I. Jurisdicción de esta Junta**

1. La jurisdicción de este Foro para atender y adjudicar el presente caso surge del Artículo 4-102 de la Ley Núm. 447 de 15 de mayo de 1951 (Ley Núm. 447). según enmendada. 3 L.P.R.A sec. 776. de las Secciones 1.3. incisos a. b y ch. 1.4 y 3.1 de la Ley Núm. 170 de 12 de agosto de 1988. según enmendada. conocida como Ley de Procedimiento Administrativo Uniforme. 3 L.P.R.A. secs. 2101. 2103 y 2151. y de las Reglas 2.01. 2.02 2.03 del Reglamento Adjudicativo de la Junta de Síndicos de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. Número 6838.

2. Las citadas disposiciones legales y reglamentarias establecen conjuntamente que todo/a pensionado/a tiene el derecho de apelar una decisión del Administrador de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. (el Administrador). mediante un escrito a ser sometido ante esta Junta. dentro del término de treinta (30) días contados a partir de la fecha de notificación de la resolución emitida por el Administrador.

**II. Información personal del apelante y de su abogado**

3. El nombre completo del apelante es Francisco Martínez Irizarry.

4. La dirección residencial del apelante es Carretera 393. Kilómetro 2.1. Interior. Barrio Hoconuco Bajo. San Germán. Puerto Rico.

5. La dirección postal del apelante es P.O. Box 949. San Germán. Puerto Rico 00683.

6. El número telefónico del apelante es (939) 247-8273.

7. El número de Seguro Social del apelante es xxx-xx-0093.

8. El número de empleado o número de puesto (Asistente de Laboratorio-Conductor) del apelante es 30040005.

9. La Autoridad de Acueductos y Alcantarillados (AAA) es la agencia, donde el apelante prestó servicios por última vez.

10. La información personal del representante legal suscribiente del apelante es: Lcdo. Carlos Antonio Ortiz Abrams, RUA 11,714, P.O. Box 40723, Minillas Station, San Juan, Puerto Rico 00940, número telefónico (939) 630-6716 y dirección electrónica evelyn1carlos@gmail.com.

### III. Decisión del Administrador, de la cual se apela

11. Por este medio, el apelante apela la decisión emitida por el Administrador y suscrita en su representación por la Lcda. Virgen Torres Díaz, Directora del Área de Servicios al Participante, el 11 de septiembre de 2015, la cual fue notificada al apelante a través de carta, por correo certificado con acuse de recibo, el 15 de septiembre de 2015, según consta en el matasellos del sobre en que fue notificada.

12. El apelante recibió la referida misiva, el 18 de septiembre de 2015.

13. El apelante está inconforme parcialmente con la decisión apelada, en cuanto a que en su caso sometido a la apelada Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR), le fue aplicada erróneamente la Ley Núm. 3 de 4 de abril de 2013 (Ley Núm. 3), que enmendó la Ley Núm. 447, cuyo efecto perjudicial al apelante fue que con efectividad equivocada al 1 de julio de 2013, fue privado de su derecho a devengar su correspondiente pensión por mérito mensual, durante el período comprendido a partir del 30 de junio del 2013 al 16 de mayo de 2014, y a recibir los beneficios de leyes especiales, que consisten en bono para medicamentos, bono navideño, aportación mensual al plan de salud y que su cónyuge pueda recibir el cincuenta por ciento (50%) de la pensión que su cónyuge estuviese devengando al momento de su fallecimiento.

### IV. Relación de hechos

14. El apelante nació el 21 de febrero de 1955.

15. La Sra. Elba Iris Ayala Rodríguez y el apelante contrajeron nupcias, bajo el régimen de sociedad legal de bienes gananciales, el 26 de diciembre de 1980, en San Germán, Puerto Rico.

16. La trayectoria del apelante de treinta y uno (31) años, como empleado público y participante del sistema de retiro y otros beneficios para el personal de las agencias del Gobierno del Estado Libre Asociado de Puerto Rico y de las corporaciones públicas, entre otros, comprendió los siguientes períodos de servicios cotizados.:

a. 26 de agosto de 1975 al 21 de diciembre de 1975, como empleado transitorio, en el Departamento de Recursos Naturales, período de cuatro meses que eventualmente cotizó para efectos del sistema de retiro, aunque en esta agencia, realmente laboró durante un año, pero los restantes ocho meses previamente trabajados allí bajo el antiguo Plan Ceta no le fueron acreditados, por falta de la documentación correspondiente;

b. 22 de diciembre de 1975 al 16 de junio de 1976, en la AAA, con status temporero, que eventualmente cotizó para efectos del sistema de retiro; y

c. 17 de junio de 1976, fecha en que fue nombrado empleado regular de carrera, por la AAA, donde desde esa fecha continuó trabajando hasta el 4 de octubre de 2004 y del 27 de diciembre de 2004 al 18 de junio de 2006.

17. El primer descuento del salario del apelante, como participante y para propósitos del sistema de retiro, fue hecho el 26 de agosto de 1975.

18. El apelante no cotizó para el sistema de retiro, del 5 de octubre de 2004 al 26 de diciembre de 2004, pues fue el período de la huelga realizada por la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (UIA), en la AAA, en la cual participó como miembro y Presidente del Capítulo de Mayagüez de ese sindicato.

19. Ese conflicto huelgario concluyó con la Estipulación UIA-AAA del 29 de diciembre de 2004; sin embargo, el 18 de mayo de 2004 la AAA ya previamente había repudiado la existencia del Convenio Colectivo 2004-2008, que quedó acordado con esa Estipulación.

20. Precisamente, el 18 de mayo de 2004 la AAA, como medida ilegal para violar el Convenio Colectivo y socavar su administración por los oficiales de la UIA, entre otras violaciones al Convenio, unilateralmente le cambió a los directores del sindicato la licencia de Unión con paga completa, bajo el Artículo VIII-Delegados y Representantes de la Unión- del entonces vigente Convenio Colectivo 1998-2003, según la Estipulación UIA-Ondeo de Puerto Rico, del 4 de agosto de 2003, a una licencia sindical sin paga; en el caso del apelante, quien para el 18 de mayo de 2004 era Presidente del Capítulo de Mayagüez de la UIA y lo fue hasta el 16 de junio de 2006, tal práctica ilícita de trabajo de la AAA causó que ese período del 18 de mayo de 2004 al 16 de junio de 2006 no fuera cotizado para efectos del sistema de retiro, excepto el referido período huelgario del 5 de octubre de 2004 al 26 de diciembre de 2004.

21. Tal repudio del nuevo Convenio Colectivo 2004-2008, por parte de la AAA, el cual mantuvo el Artículo VIII-Delegados y Representantes de la Unión- y como tal, la Licencia Unión con paga completa del apelante, causó que el 31 de agosto de 2005 la UIA radicara un Cargo por práctica ilícita de trabajo ante la Junta de Relaciones del Trabajo (JRT), en el Caso CA-2005-16; el 16 de junio de 2008, la JRT emitió Resolución Y Orden, mediante la cual a virtud de la Estipulación UIA-AAA del 29 de diciembre de 2004, determinó la existencia del Convenio, la que fue apelada infructuosamente por la AAA ante el Tribunal de Apelaciones y el Tribunal Supremo, desde julio de 2008 hasta el 2010.

22. A partir del 19 de junio de 2006 a octubre de 2008, el apelante cumplió pena de cárcel, por un caso federal, en el Centro Metropolitano de Detención, en Guaynabo, Puerto Rico, y en cárceles federales en Estados Unidos.

23. No obstante, el apelante originalmente sometió su carta de renuncia a la AAA, el 5 de octubre de 2006, para jubilarse y acogerse a los beneficios de una pensión por mérito (años de servicio), en la cual le solicitó que presentara su caso ante la ASR; pues entendía que ya había cotizado treinta (30) años de servicio para el sistema de retiro, el 30 de junio de 2005.

24. Con efectividad retroactiva al 17 de junio de 2007, la AAA destituyó sumariamente al apelante el 8 de marzo de 2007, a pesar de que aún se encontraba preso.

25. A través de la UIA, el apelante impugnó su destitución sumaria ante el Negociado de Conciliación y Arbitraje (NCA), del Departamento del Trabajo y Recursos Humanos, por medio de la Querella Número A-07-3700.

26. El 15 de diciembre de 2008, por conducto de comunicación del Lcdo. Ángel Tapia Flores, el apelante inquirió a la AAA sobre su presentación de renuncia y petición de presentación de su caso ante la ASR.

27. En enero de 2009, la Lcda. Belkin Nieves, entonces Directora de Recursos Humanos y Relaciones Laborales de la AAA, contestó en la negativa al apelante su presentación de renuncia, por tener una carta de destitución, y su solicitud de presentación de su caso ante la ASR, por supuesto incumplimiento con los requisitos legales de edad y años de servicio, lo cual era erróneo e hizo referencia a que a través de carta fechada 5 de julio de 2007, el Sr. Andrés García Martinó, Presidente Ejecutivo Interino de la AAA, ya le había respondido también en la negativa; esta última no fue recibida por el apelante.

28. En unión a los Sres. Juan Ramos y Juan Roldán, respectivos ex - Presidentes de los Capítulos de San Juan y Arecibo de la UIA, el apelante instó Demanda contra la AAA el 15 de octubre de 2009, por conducto del licenciado Tapia Flores, ante el Tribunal de Primera Instancia (TPI), Sala de San Juan, en el Caso Civil Número KPE2009-4283 (502), sobre: reclamación de salarios bajo la Ley 180 de 27 de julio de 1998, según enmendada. En ese pleito, le reclamaron a la AAA el pago de beneficios económicos adeudados, que incluían salarios, penalidades, intereses y daños y perjuicios continuos o sucesivos, ya que desde el 18 de mayo de 2004, la AAA cesó unilateralmente todo tipo de pago y acumulación de beneficios a favor de los demandantes y el 8 de marzo de 2007, los despidió sumariamente, sin darles un debido proceso de ley, ni liquidarles sus beneficios y sabiendo que estaban privados de su libertad, todo ello en violación continua al rechazado Convenio Colectivo con la UIA, 2004-2008, y las leyes aplicables.

29. El 4 de febrero de 2010, el Foro primario desestimó la Demanda, por entender que la jurisdicción primaria exclusiva sobre la materia le correspondía a la JRT; el 9 de marzo de 2010, los demandantes recurrieron ante el Tribunal de Apelaciones, en el Caso Número KLAN2010-00318, pero el 15 de junio de 2010 éste confirmó la Sentencia del TPI, refiriendo el asunto a la JRT, como el organismo administrativo que tiene la jurisdicción primaria exclusiva sobre la materia.

30. Los demandantes radicaron un Cargo ante la JRT, pero por recomendación del mismo Foro administrativo, lo retiraron para que sus respectivas reclamaciones fueran ventiladas en el NCA, donde la Querella Número A-11-1444 había sido radicada a su nombre.

31. El 1 de noviembre de 2010, la UIA y la AAA otorgaron una Estipulación Y Acuerdo ante el Ledo. Thomas Rivera Schatz, entonces Presidente del Senado, en la cual la AAA reconoció la existencia del repudiado Convenio Colectivo con la UIA, 2004-2008, el cual quedó extendido hasta que se negociara un nuevo Convenio.

32. En enero de 2012, la UIA y la AAA firmaron el vigente Convenio Colectivo 2012-2015.

33. El 6 de junio de 2012, el Sr. Jorge Torres Plaza, Árbitro del NCA, emitió Laudo a favor del apelante, mediante el cual declaró Con Lugar a la referida Querella Número A-07-3700, anuló su despido sumario y ordenó a la AAA que con efectividad retroactiva al 17 de junio de 2007, lo reinstalara en su puesto y le pagara los salarios y beneficios marginales dejados de devengar, penalidades, costas, gastos e intereses legales y sus honorarios, a este abogado, a razón del veinticinco por ciento (25%) de la cuantía total adjudicada al apelante.

34. El 6 de julio de 2012, la AAA impugnó el mencionado Laudo de arbitraje ante el TPI, Sala de San Juan, en el Caso Civil Número KAC2012-0732 (803), el cual todavía se encuentra pendiente.

35. Entre diciembre de 2012 y febrero de 2013, hubo un proceso de propuestas y contrapropuestas relacionadas con el pago adeudado por la AAA al apelante, de salarios regulares del 18 de mayo de 2004 al 3 de octubre de 2004 y del 27 de diciembre de 2004 hasta el 16 de junio de 2006 y los beneficios marginales, que correspondían a una licencia de Unión con paga completa, como Presidente del Capítulo de Mayagüez de la UIA, bajo el Artículo VIII-Delegados y Representantes de la Unión- del Convenio Colectivo 2004-2008, lo cual también incluía los aumentos salariales que fueron otorgados entre el 2005 y el 31 de mayo de 2006 y los niveles de mérito, según la Estipulación del 2 de diciembre de 2011; entre otros, éste era uno de los reclamos de la UIA ante la JRT, en el mencionado Caso CA-2005-16.

36. Ese proceso no rindió resultados, pues la AAA pretendía que el apelante aceptara el pago parcial adeudado de la referida licencia de Unión con paga completa y presentara su renuncia para jubilarse y acogerse a una pensión por veintinueve (29) años de servicio, todo ello con efectividad al 31 de marzo de 2006, y que a cambio de eso, desistiera de todas sus reclamaciones, querellas y demandadas pendientes en foros judiciales y administrativos.

37. Ante la inminencia de enmiendas al sistema de retiro y otros beneficios, según regulado por la Ley Núm. 447, a virtud de la Ley Núm. 3,:

a. El apelante presentó su renuncia a su mencionado puesto regular de carrera de Asistente de Laboratorio-Conductor, número 30040005, en la AAA, a través de carta fechada 3 de mayo de 2013 y entregada personalmente en la oficina del Ing. Alberto Lázaro Castro, Presidente Ejecutivo, el 6 de mayo de 2013, para jubilarse y acogerse a los beneficios de una pensión por mérito (años de servicio).

En su misiva de renuncia, el apelante hizo constar que su fecha de efectividad era el 6 de mayo de 2013 y que hacía reserva de sus derechos y beneficios reclamados en casos ya sometidos ante los Foros adjudicativos correspondientes y que estaban pendientes de resolución final y firme.

b. en seguimiento de su carta de renuncia y para preservar sus derechos y beneficios bajo la Ley Núm. 447, el 10 de mayo de 2013 el apelante visitó la Oficina de Servicios al Empleado de la AAA, donde radicó una Solicitud de Servicio fechada y firmada por él el 9 de mayo de 2013, para ser incluido en la lista de empleados, a quienes le correspondía que sus peticiones de jubilación fueran sometidas a la apelada ASR, conforme a la Ley Núm. 447, pero que tenían casos judiciales y/o administrativos pendientes en Foros adjudicativos.

Posteriormente, el apelante visitó la apelada ASR, con el propósito de ser orientado acerca de sus derechos y beneficios bajo la Ley Núm. 447, en vista de la anunciada Ley Núm. 3; allí participó en una reunión de orientación sobre los posibles cambios de la Ley Núm. 3 y a preguntas del apelante, en que expuso brevemente su situación particular, la orientadora le respondió que toda gestión tenía que ser hecha a través del coordinador de su agencia, en su caso, por conducto del Sr. Boria, quien era muy bueno; y .

c. en representación del apelante, el Sr. Luis De Jesús, Vicepresidente de la UIA, radicó un Cargo ante la JRT contra la AAA también el 10 de mayo de 2013, bajo el Número CA-2013-12.

38. Por medio del Cargo, solicitó a la JRT que encontrara a la AAA incursa en la práctica ilícita de trabajo de violación continua del Convenio Colectivo 2004-2008, según extendido por la Estipulación del 1 de noviembre de 2010, y le ordenara a la AAA a pagarle la referida licencia de Unión con paga completa (salarios regulares y beneficios marginales) del 18 de mayo de 2004 al 16 de junio de 2006 y antes del 30 de junio de 2013, someter su caso a la apelada ASR para jubilarse y acogerse a los beneficios de una pensión por mérito (años de servicio), bajo la Ley Núm. 447, con toda la información requerida por la apelada ASR.

39. Luego de una reunión conciliatoria celebrada entre las partes en la JRT el 23 de mayo de 2013 y de un proceso de propuestas y contrapropuestas, finalmente el 28 de junio de 2013 la AAA, representada por el Ing. Alberto Lázaro Castro, Presidente Ejecutivo, y el Sr. Rubén Lugo López, entonces Director de Recursos Humanos y Relaciones Laborales, la UIA, representada por el Sr. Pedro Irene Maymí, Presidente, y el apelante otorgaron y firmaron una Estipulación.

En lo pertinente, mediante ésta la AAA aceptó su renuncia efectiva al 6 de mayo de 2013 y se comprometió y obligó a pagarle los salarios regulares de la referida licencia de Unión con paga completa, lo cual también incluía los aumentos salariales que fueron otorgados entre el 2005 y el 31 de mayo de 2006 y los niveles de mérito y los beneficios del Convenio Colectivo para los empleados que renuncian para acogerse a los beneficios de la pensión de la apelada ASR, según la Estipulación del 2 de diciembre de 2011, sin perjuicio de que pudiese reclamar los intereses legales y beneficios marginales adeudados y relacionados con el período de esa licencia de Unión con paga completa incluido en la Estipulación, y a que en o antes del 30 de junio de 2013 y/o del vencimiento de prórroga determinada por la apelada ASR, llevaría a cabo los trámites necesarios para la cotización de 31 años de servicio y presentación de su caso ante la apelada ASR para jubilarse y acogerse a los beneficios de una pensión por mérito (años de servicio) (Ver los Acuerdos 1, 2, 3, 4, 5 y 10).

40. El 16 de agosto de 2013, la AAA realizó el pago de los salarios regulares de la mencionada licencia de Unión con paga completa al apelante, de acuerdo a la Estipulación del 28 de junio de 2013, del cual entre otras partidas, dedujo una cantidad de dinero para aportaciones al sistema de retiro.

41. Después de la otorgación y firma de la referida Estipulación el 28 de junio de 2013, el apelante prácticamente le dio seguimiento directo a la obligación contractual de la AAA de presentar su caso ante la apelada ASR, en o antes del 30 de junio de 2013 y/o del vencimiento de prórroga determinada por la apelada ASR; esto lo hizo, mediante conversaciones telefónicas, visitas personales y comunicaciones escritas por correo y "fax" con el Sr. José R. Boria Escobar (Sr. Boria), Director de la División de Servicios Al Empleado y Coordinador de Asuntos de Retiro de la AAA, su subalterna, Sra. Ana Hernández, ya jubilada, y otros y personal al nivel central y regional de la apelada ASR.

Durante sus conversaciones telefónicas y personales con el Sr. Boria, este último siempre le aseguraba al Sr. Martínez que dentro de las prórrogas concedidas por la apelada ASR, la AAA sometió su caso bajo la Ley Núm. 447 y entregó la información requerida. .

Como parte de esas gestiones directas con el Sr. Boria, el Sr. Martínez también siempre tomó la providencia de cuando lo entendió necesario, le remitió las comunicaciones que recibió de la apelada ASR, con sus comentarios para correcciones o aclaraciones.

42. Sin embargo,:

a. El 8 de octubre de 2014, la Lcda. Virgen M. Torres Díaz (licenciada Torres), Directora del Área de Servicios Al Participante de la apelada ASR, cursó una carta al Sr. Boria, como Coordinador de Asuntos de Retiro de la AAA, en la cual en lo pertinente le indicó que en incumplimiento con la Ley Núm. 3, que enmendó la Ley Núm. 447, y la Carta Normativa Especial 2013-01, la AAA no presentó la requerida lista certificada de sus empleados, quienes hayan solicitado jubilarse para acogerse a la pensión de retiro por mérito (años de servicios), bajo la Ley Núm. 447, y tuvieran casos pendientes en Foros judiciales o administrativos, con la información correcta, antes del **30 de junio de 2013**, fecha de preservación de beneficios conforme a la Ley Núm. 447, ni dentro de las prórrogas concedidas y vencederas el **12 de julio de 2013** y **30 de septiembre de 2013**, por lo cual desde el **1 de enero de 2014**, todas las solicitudes de retiro serían evaluadas de acuerdo a la Ley Núm. 3, cuya vigencia comenzó el 1 de julio de 2013.

A través de otro participante del sistema de retiro, el apelante obtuvo copia de la comunicación de la licenciada Torres, el 1 de julio de 2015.

Cabe señalar que al presente, el apelante tiene los siguientes casos pendientes respectivos a la AAA: en el NCA, UIA v. AAA, Querella Número CQ-04-467 (sobre: reclamación de salarios y beneficios marginales bajo Convenio Colectivo), y UIA v. AAA, Querella Número A-11-1444, consolidada con la Querella Número A-13-2729 (sobre: reclamación de salarios y beneficios marginales bajo Convenio Colectivo), en la JRT, los referidos Cargos radicados en los Casos UIA v. AAA, CA-2005-16 y CA-2013-12; y en el TPI, Sala de San Juan, Caso UIA v. Lucas Díaz y otros,

Civil Núm. KAC2001-5068 (sobre: solicitud de ejecución del Laudo arbitral final y firme emitido en la Querella UIA v. AAA. Número CQ-98-176, reclamación de pago del exceso de 60 días de licencia de vacaciones, con penalidades e intereses legales) y el mencionado Caso AAA v UIA, Civil Número KAC2012-0732 (803)

b. La Sra./Srta. Neris Fred, empleada de la División de Servicios Al Empleado de la AAA, y el apelante sostuvieron un diálogo telefónico el **17 de julio de 2014**, en el cual esta última le dijo que el **11 de julio de 2014**, completó la radicación de su caso ante la apelada ASR, en el primer piso, por conducto de la Sra. Pura Ruiz, según el procedimiento corriente, no especial, era el caso más extenso que había preparado, luego haría su estimado de pensión, y le diera seguimiento a su caso y a la liquidación de la AAA; y

c. El 24 de diciembre de 2014, el apelante recibió carta fechada 16 de diciembre de 2014 y firmada por el Sr. Jesús A. Flores Huggins, Director del Área de Servicios Al Pensionado, por medio de la cual fue notificado que con efectividad al **16 de mayo de 2014**, su solicitud de pensión bajo la Ley Núm. 3 fue aprobada y que de conformidad con ese estatuto, le correspondía una pensión mensual de $2,258.12, cuyo primer pago lo recibiría en la primera quincena de enero de 2015, sin perjuicio de que la apelada ASR pudiese hacer los ajustes pertinentes, si determinase la existencia de deficiencias que afectaran esa decisión (Énfasis suplido).

43. El 15 de enero de 2015, la apelada ASR le expidió un cheque al apelante, el cual incluyó un pago de pensión de $16,972.32, retroactivo al 16 de mayo de 2014, y el primer pago de su pensión, por la suma de $1,129.06, que le pagó por depósito directo, el cual ha seguido recibiendo quincenalmente.

44. En la notificación trimestral recibida en abril de 2015, refleja que el pago de la pensión del apelante se efectúa como anualidad híbrida Ley 3.

45. El 20 de enero de 2015, el apelante se reunió con la Sra. Elizabeth Rivera, empleada de la Oficina Regional de Mayagüez de la apelada ASR, para que lo orientara respecto a la referida decisión de aprobarle su pensión bajo la Ley Núm. 3.

La Sra. Rivera le confirmó el contenido de la decisión de la apelada ASR y le explicó que aunque la mencionada misiva no lo especificaba, no tendría derecho a la aportación mensual de $100.00 para su plan de salud, ni al bono de Navidad, ni tampoco al de 50% de su pensión para el cónyuge sobreviviente.

El apelante le planteó que sí preservó sus derechos y beneficios adquiridos bajo la Ley Núm. 447, pues durante la vigencia de ésta, cotizó 31 años de servicios, renunció a la AAA, con esta última otorgó la referida Estipulación y realizó las gestiones necesarias y correspondientes según ese estatuto, la apelada ASR erró al aprobar su pensión por mérito conforme a la Ley Núm. 3.

La Sra. Rivera le recomendó al apelante que sometiera una apelación por escrito a la apelada ASR.

46. El 23 de enero de 2015, el apelante presentó escrito de revisión ante la apelada ASR, por derecho propio; a través de éste, solicitó la conversión de su pensión por mérito, a tenor con sus derechos y beneficios adquiridos bajo la Ley Núm. 447, todo ello efectivo retroactivamente a junio de 2013, mes posterior a la presentación ante la AAA de su carta de renuncia efectiva al 6 de mayo de 2013 para acogerse a esos derechos y beneficios adquiridos.

47. El 14 de agosto de 2015, por conducto de la UIA, el apelante enmendó el referido Cargo radicado ante la JRT contra la AAA el 10 de mayo de 2013, bajo el Número CA-2013-12, E-1.

Por medio de esa enmienda, ese sindicato y el apelante afirmaron en lo pertinente que en incumplimiento de la mencionada Estipulación del 28 de junio de 2013, " ... el patrono no cumplió con los trámites pertinentes de someter la información requerida por la Administración de (sic: los) Sistemas de Retiro del Estado Libre Asociado de Puerto Rico para el trámite de la pensión por méritos (sic) del señor Martínez antes del 30 de junio de 2013, ni durante los períodos de prórroga concedidos por el Sistema de Retiro ... ".

48. El 4 de septiembre de 2015, la AAA presentó su contestación al mencionado Cargo Número CA-2013-12, E-1, ante la JRT, a través de memorando suscrito por el Lcdo. Obed Colón Morales, Director Interino de Relaciones Laborales de la AAA.

49. En lo pertinente, el licenciado Colón Morales alegó, en insólita contradicción con la referida comunicación de la licenciada Torres, Directora del Área de Servicios Al Participante de la apelada ASR, al señor Boria, Coordinador de Asuntos de Retiro de la AAA, fechada 8 de octubre de 2014, que:

" ... La Autoridad cumplió con lo pactado y remitió toda la documentación relacionada con la jubilación del Sr. Francisco Martínez Irizarry dentro del término prescrito para ello. De hecho, incluyó su caso como parte de todos los casos presentados al 30 de junio de 2013, trámite que acompañó con una declaración jurada, el 16 de julio de 2013; es decir, dentro de la prórroga concedida a la Autoridad por la Administración de Retiro, hasta el 30 de septiembre de 2013. En este caso, la Autoridad se comprometió a presentar los documentos ante la Administración de Retiro en el tiempo concedido, y así lo hizo ... ".

50. El 11 de septiembre de 2015, la apelada ASR emitió la mencionada decisión objeto de la presente Apelación, la cual fue notificada al apelante, el 15 de septiembre de 2015, por correo certificado con acuse de recibo, y recibida por el apelante, el día 18 de ese mes y año.

## V. Solicitud de remedios

51. En su equivocada decisión, la apelada ASR determinó que la pensión por mérito del apelante fue aprobada, con efectividad al 16 de mayo de 2014, pues supuestamente en esa fecha, radicó su solicitud ante el Sr. Boria, y el 30 de agosto de 2013, la AAA pagó a la apelada ASR los salarios dejados de devengar y le efectuó los descuentos de aportaciones; de esos alegados hechos, al apelante sólo le consta que el 30 de agosto de 2013, la AAA le pagó los salarios regulares dejados de devengar, en concepto de la licencia sindical con paga, y que realizó descuentos para fines de retiro.

59. En concepto de bono navideño del 2013 y 2014, el apelante dejó de devengar por cada año, la cantidad de $200.00, que es pagadero en Navidad cada año, para un total de $400.00, al presente, más intereses legales, cuyo pago por este medio le reclama a la apelada ASR, mediante esta Apelación; en la medida en que en el presente año 2015 y subsiguiente/s, el apelante no reciba ese bono navideño, ese remedio económico aumentará anualmente, lo cual por este medio también le reclama a la apelada ASR.

60. Si el presente caso de retiro del apelante no fuese convertido para la solicitada aplicación retroactiva de la Ley Núm. 447, y su esposo le premuriera, como viuda, la Sra. Ayala perdería su derecho a recibir el 50% de la pensión que su cónyuge estuviese devengando al momento de su fallecimiento; por lo cual, por este medio lo reclama.

EN MÉRITO DE TODO LO CUAL, la parte apelante solicita respetuosamente a esta Honorable Junta de Síndicos que emita Resolución final, a través de la cual declare Con Lugar a la presente Apelación y ordene a la apelada Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura que con efectividad al 30 de junio de 2013, cumpla con los remedios antes solicitados.

Respetuosamente sometido, en San Juan, Puerto Rico, hoy 15 de octubre de 2015.

Certifico: haber notificado hoy copia de esta Apelación, a la mano, al Sr. Pedro R. Ortiz Cortés, Administrador de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura.

Carlos Antonio Ortiz Abrams (RUA 11.714)
Abogado de Parte Apelante
P.O. Box 40723-Minillas Station
San Juan, Puerto Rico  00940
Celular: (939) 630-6716
Dirección electrónica:evelyn1carlos@gmail.com

11

**GOBIERNO DE PUERTO RICO**
JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO

| | |
|---|---|
| **FRANCISCO MARTÍNEZ IRIZARRY**<br>Apelante | CASO NÚM.: **2015-0348** |
| v. | Sobre: |
| **ADMINISTRACIÓN DE LOS SISTEMAS DE<br>RETIRO DE LOS EMPLEADOS DEL<br>GOBIERNO Y LA JUDICATURA**<br>Apelada | **JS – REVISIÓN DE PENSIÓN** |

### RESOLUCIÓN

El caso ante nuestra consideración es una Apelación presentada por el Sr. Francisco Martínez Irizarry en adelante el Apelante, recurriendo la determinación de la Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura, en adelante Administración, al amparo de la Ley Núm. 447 del 15 de mayo de 1951, según enmendada, en lo sucesivo, Ley Núm. 447, denegando el reajuste de pensión por mérito de Ley 3 a Ley 447.

Del análisis del expediente administrativo y los planteamientos de las partes, llego a las siguientes:

### DETERMINACIONES DE HECHOS

1) El Sr. Francisco Martínez Irizarry nació el 21 de febrero de 1955. Actualmente tiene 65 años. Se desempeñó como asistente de laboratorio en la Autoridad de Acueducto y Alcantarillado. Tiene 31 años de servicios cotizados en el Sistema de Retiro.

2) Entre el 18 de mayo de 2004 al 15 de junio de 2006, el apelante desempeñó las funciones de Presidente del Capítulo de Mayagüez de la Unión Independiente Auténtica.

3) El 6 de mayo de 2013, se hace efectiva la renuncia al servicio público del apelante en virtud de la Estipulación.

4) El 10 de mayo de 2013, la parte apelante presentó una Solicitud de Servicios[1] y seleccionó el encasillado de jubilación.

5) El 28 de junio de 2013, el apelante llegó a una estipulación con su patrono la AAA en relación a una reclamación laboral. Según la estipulación, al 16 de junio de 2006, el apelante tenía acreditado veintinueve (29) años de servicios cotizados en la AAA. Como parte de la transacción la AAA pagaría los salarios dejados de devengar y las correspondientes aportaciones estatales y federales como parte de su reclamación. El apelante no sería reinstalado en su puesto de carrera y se haría efectivo la renuncia del Sr. Martínez Irizarry efectivo el 6 de mayo de 2013.

6) El 16 de mayo de 2014, la parte apelante firmó el documento Solicitud de Pensión ante el Coordinador de Asuntos de Retiro de su agencia y solicitó la pensión por mérito.

7) El 11 de septiembre de 2015, la Administración emitió carta en la que denegó el beneficio de pensión por mérito en virtud de la Ley 447, sino en virtud de la Ley 3-2013.

8) El 15 de septiembre de 2015, la Administración depositó en el correo postal la decisión del 11 de septiembre de 2015, mediante el correo certificado número 7014-1820-0000-2819-6827.

9) El 15 de octubre de 2015, la parte apelada inconforme con la decisión de la Administración presentó el recurso de apelación ante la Junta de Retiro.

10) El 15 de octubre de 2015, la parte apelante solicitó la anotación de la rebeldía a la parte apelada por no haber contestado la apelación dentro del término dispuesto en el ordenamiento legal de la Junta.

11) El 28 de marzo de 2016, el Lcdo. Carlos Ortiz Abrams solicitó el relevo de representación legal en el caso, y que se le concediera un término de 60 días al apelante para que realizara gestiones para conseguir nueva representación legal.

12) El 20 de mayo de 2016, la Lcda. Sandra M. Lugo Andújar presentó escrito asumiendo representación legal del apelante y solicitó la anotación de la rebeldía a la parte apelada toda vez que ha

---

[1] La *Solicitud de Servicios* es un documento interno de la A.A.A. para trabajar cualquier solicitud de servicio administrativo de los empleados ante la División de Servicios del Empleado.

transcurrido más de cinco (5) meses y la apelada no ha comparecido para oponerse según las leyes y reglamento.

13) El 28 de junio de 2016, la Junta de Retiro emitió Orden para la celebración de la Conferencia con Antelación a la Vista el día 13 de septiembre de 2016, a las 1:00pm.

14) El 12 de julio de 2016, la parte apelante presentó ante la Junta de Retiro copia de una carta de reclamación extrajudicial por daños y perjuicios que cursó a la Administración de los Sistemas de Retiros, a la Autoridad de Acueducto y Alcantarillado

15) El 8 de septiembre de 2016, la parte apelante presentó la Moción Informativa Conjunta del caso.

16) El 13 de septiembre de 2016, se celebró la Conferencia con Antelación a la Vista. La Lcda. Carina Medina Morales fungió como oficial examinadora. La parte apelante estuvo representada por la Lcda. Sandra M. Lugo Andújar y la parte apelada por Lcdo. Isaías Ojeda y la Lcda. Mayrangely Rodríguez. La parte apelada presentó los escritos titulados "Contestación a Apelación" y "Moción Informativa para Status Conference". En la conferencia se comenta que el Apelante recibe los beneficios de pensión por mérito bajo las disposiciones de Ley 3-2013. La Administración otorgó los beneficios de Ley 3 al Apelante debido a que la solicitud que consideró tiene fecha de presentada de 16 de mayo de 2014. Por lo cual, solicita se revise su pensión toda vez que alega haber solicitado su pensión antes de la vigencia de la Ley 3. La parte Apelante solicita la citación del Coordinador de Asuntos de Retiro de AAA para que ofrezca su testimonio en vista. Además, se ordena a la Administración que produzca la lista certificada que todo coordinador presentó a Retiro el 30 de junio de 2013 en cumplimiento con las normas de la Administración, en la cual se incluyeron los casos que a esa fecha del coordinador tuviera ante su consideración, pero aún no estaban listos para ser sometidos a Retiro. Tomando en consideración que la Administración otorgó prórrogas a AAA para presentar dicha certificación. Se ordena además que presente listado que se envió a Retiro con los casos pendientes de litigio ante los tribunales y las agencias. Tiene la Administración un término de 30 días. El caso será citado a Vista Administrativa.

17) El 3 de octubre de 2016, la parte apelante solicitó la citación del Sr. José R. Boria Escobar coordinador de asuntos de retiros de la AAA.



3

18) El 14 de octubre de 2016, la Junta de Retiro emitió Notificación de Vista para la celebración de la Vista Administrativa el día 12 de enero de 2017, a las 8:30am. También se emitió citación para el Sr. José R. Boria Escobar.

19) El 19 de octubre de 2016, la parte apelante solicitó la citación de la Lcda. Virgen Torres Díaz.

20) La Junta de Retiro emitió Segunda Orden para que en el término de 30 días la parte apelada  para cumplir con la Orden del 13 de setiembre de 2016, sobre el listado de casos que los coordinadores no sometieron a la ASR por no estar listos para someterse por estar en ventilándose ante un foro administrativo o judicial el caso.

21) El 18 de noviembre de 2016, la parte apelante presentó moción en relación al listado de casos que le fue solicitado mediante Orden a la ASR. Expuso que en el expediente de personal del apelante encontró una hoja que hace referencia en los comentarios de tener un anejo sobre la solicitud de jubilaciones bajo estipulaciones como es el caso del Sr. Martínez.

22) El 5 de diciembre de 2016, la Administración presentó moción en cumplimiento de orden. En su escrito la parte apelada presentó carta del 22 de noviembre de 2013 y del 27 de enero de 2014. El anejo de la Hoja de Control y Trámite expresa que se radicó la solicitud el 5 de julio de 2013, y se contestó el Estado de Cuenta el 16 de septiembre de 2013. El desglose de los anejos es el siguiente:

1. Hoja de Control y Trámite de la A.A.A. de José R. Boria Escobar a Gisela Santiago de la División de Pensiones de la Administración sobre el Asunto y entre los mismos Francisco Martínez Irizarry radicado el 5 de julio de 2013 y contestado el Estado de Cuenta el 16 de septiembre de 2013.

2. Comunicación con fecha del 27 de enero de 2014 a la Lcda. Virgen Torres de parte de José R. Boria Escobar, solicitando estatus de la petición que se hiciera en reunión efectuada el 30 de octubre de 2013 a los efectos de procesar y completar los trámites de jubilación de varios empleados entre ellos Francisco Martínez.

3. Comunicación con fecha del 22 de noviembre de 2013 al Lcdo. Francisco Del Castillo, Administrador de la A.S.R. del Director de Recursos Humanos de la A.A.A., Rubén Lugo López, sobre estipulaciones en reunión efectuada el 30 de octubre de 2013



4

con varios coordinadores entre ellos el Sr. José Boria con la Lcda. Virgen Torres y la Sra. Janet Fargas de la ASR, en las cuales existían unas dudas relacionadas con la fecha de efectividad de la Solicitud de Pensión, sobre si la efectividad sería al 2006 o al 2013 sobre varios empleados entre ellos Francisco Martínez.

23) El 17 de enero de 2017, la parte apelante presentó copia de la Solicitud de Servicios con ponche de la AAA del 10 de mayo de 2013.

24) El 12 de enero de 2017, se celebró la Vista Administrativa. La Lcda. Carina Medina Morales fungió como oficial examinadora. La parte apelante estuvo representada por la Lcda. Milagros Lugo y la parte apelada por Lcdo. Isaías Ojeda. En la vista testificaron el Sr. Francisco Martínez Irizarry y el Sr. José R. Boria, coordinador de asuntos de retiros de la AAA. Partes de lo declarado por los testigos fue lo siguiente:

**Francisco Martínez Irizarry:**

Manifestó que comenzó a trabajar en la AAA en el 1975 hasta el 2013 cuando presentó su renuncia. La fecha de su renuncia fue el 6 de mayo del 2013. Su renuncia la presentó ante la Oficina de Servicios al Empleado de la AAA que es donde está la Coordinadora de tramitar los procesos con Retiro. Para ello llenó el documento titulado Solicitud de Servicios con fecha del 10 de mayo de 2013. El Sr. Martínez expresó que luego de la solicitud estuvo realizando varias gestiones en la AAA para firmar los documentos que le requerían. Todos estos documentos los trabajó con el Sr. Boria. No recuerda cuando fue que le dijeron que había culminado todo el proceso para su solicitud de jubilación. Sin embargo, fue alrededor del 2015 que recibió la carta de la ASR indicando que su pensión fue aprobada con retroactividad al 2014. El entendí que su pensión era retroactiva al 2013, por lo que fue en la Oficina de Retiro de Mayagüez que le indicaron que la carta no surge por qué el retroactivo fue al 2014 y no 2013. Al ser efectiva en el 2014 perdió beneficios razón por la cual apela ante el foro. El aceptó que firmó varios documentos durante el año 2014, y es posible que entre los firmados está la solicitud de pensión. Sin embargo, el trámite lo inició ante el coordinador de su agencia el 10 de mayo de 2013. Solicitó su pensión porque tenía 31 años de servicios. Al presente recibe la pensión por mérito. Para el 2006, tenía 29 años de



5

servicios. Durante el periodo del 2004 al 2006 estuvo como líder sindical de la Unión Independiente Auténtica y la AAA no le quería reconocer esos dos años de licencia sindical como tiempo cumplido el convenio colectivo. Si le acreditaban esos dos años completaba los 31 años de servicios y tendría derecho a la pensión por Ley 447. Al no reconocerle los años presentó querella ante la Junta de Relaciones del Trabajo, donde se validó y se le ordenó acreditar los dos años. Antes de que entrara en vigor la Ley 3 presenté la solicitud de la pensión por mérito según le indicó el coordinador de asuntos de retiro de su agencia. Por tal razón, hasta que no se ganó el caso puede ser que la AAA se tardó en procesar la solicitud de retiro. La estipulación que se logró con la AAA fue el 28 de junio del 2013. Antes de trabajar en la AAA trabajó en el Departamento de Recursos Naturales. Aunque para el Sistema el pudiera tener 29.5 años de servicios tenía 31 trabajando para el Gobierno de Puerto Rico.

**José R. Boria Escobar:**

Es empelado gerencial y dirige la División de Servicios al Empleado como Coordinador Principal en la AAA. En sus funciones está orientar a los empleados sobre los procedimientos o solicitudes que le requieran a la agencia. En el caso de los empleados cuando solicitan un servicio tienen que llenar el formulario que provee la AAA titulada Solicitud de Servicios y selecciona el servicio. Ese es el proceso para la jubilación. Al seleccionar jubilación se evalúa el expediente del empleado y si cumple con los requisitos. El documento lo proporcionamos y es el empleado quien llena la información personal y lo firma. El documento es la solicitud inicial de la agencia para acogerse a la jubilación. El documento que provee la AAA para acogerse a la jubilación fue llenado por el Sr. Martínez el 10 de mayo de 2013. En Hoja de Trámite se hace constar la fecha en que le entregamos el documento a la ASR. La AAA tenía prórroga para presentar y radicar las solicitudes de jubilación ante la ASR. Francisco Martínez radicó su solicitud el 5 de julio del 2013 ante la ASR  y el Estado de Cuenta se le contestó el 16 de septiembre de 2013. Sin embargo, el 5 de julio de 2013 estaba dentro del periodo de prórroga concedido. A la ASR se le hizo un listado con los participantes que caían dentro de la prórroga y entre esos estaba el Sr. Martínez Irizarry. Los documentos que complementan la solicitud de jubilación son el Certificado de



6

Nacimiento, fotos dos por dos y la certificación bancaria. Antes de radicar la solicitud de pensión se solicita un estado de cuenta. Se le orienta al participante que antes de radicar la solicitud de pensión tiene que tener el estado de Cuenta al día. Al momento de la solicitud el participante contaba con 29 años de servicios porque había unos años que no le habían acreditado. Debido a los procedimientos aplicables el caso de Martínez y las otras personas tenía un procedimiento más largo. La solicitud de pensión se entregó el 16 de mayo del 2014 cuando se culminó todo el proceso del Estado de Cuenta. La solicitud de pensión del Sr. Martínez con 31 años de servicios tiene fecha del 16 de mayo del 2014. Aun si fuera trabajado con la fecha del 9 de mayo del 213, se podía haber trabajado como mérito porque el periodo acreditar fue antes del 30 de junio del 2013. La Solicitud de Estado de Cuenta se firmó por el participante el 21 de junio del 2013 y se presentó en Retiro el 5 de julio del 2013.  Una vez se recibe el Estado de Cuenta acreditando los años, el Sr. Martínez volvió a llenar los documentos el 16 de mayo de 2014. La Solicitud de Servicios es un documento interno de la AAA para asignar el caso a un empleado de la agencia y luego se tiene la totalidad de los documentos incluyendo el Estado de Cuenta proceder a llenar y solicitar la pensión con los formularios de la ASR.

Luego del testimonio del Sr. Martínez Irizarry y el Sr. Boria Escobar la Administración solicitó término para presentar argumentación final escrita mediante memorando de derecho. La Junta ordenó a la parte apelante que presente el memorando de derecho en el término de 30 días y también el alegado listado de casos presentados a la Administración. Luego la Administración tendrá el término de 30 días para replicar el escrito. Con la presentación del memorando de las partes el caso quedó sometido para su adjudicación.

25) El 7 de febrero de 2017, la parte apelante presentó Memorando en el cual expresó los fundamentos legales por los que entiende que debe ser revocada la decisión del administrador.  A su escrito anejó varios documentos como la Carta normativa Núm. 2013-001 del 3 de mayo de 2013, y la Certificación de Solicitudes Radicadas para el Retiro

26) El 28 de febrero de 2017, la parte apelante solicitó que si la parte apelada cumplió con la Orden del 7 de febrero de 2017, provea copia de su Memorando su cumplió con la Orden toda vez que no ha recibido notificación de la misma.



27) El 9 de marzo de 2017, la parte apelada presentó Contestación a Memorando replicando el Memorando que presentó la parte apelante.

28) El 9 de enero de 2019, la parte apelante presentó escrito solicitando la Resolución del caso.

29) El 30 de septiembre de 2020, la Junta de Retiro como guardián de su jurisdicción emitió Orden Jurisdiccional para que en el término de 20 días las partes evidenciaran la jurisdicción del foro.

30) El 7 de octubre de 2020, la parte apelante en cumplimiento con la Orden de la Junta de Retiro y presentó copia del sobre con el matasello de la carta denegatoria del 11 de septiembre de 2015.

Parte de la evidencia que obra en el expediente y que fue evaluada por la Administración al momento de tomar la determinación, se describe a continuación:

1) Hoja Cotejo Requisitos Pensiones ASR. 16/4/2014. Firma Neris Fred.

2) AAA. División Servicios al Empleado. 9/julio/2014. Firma: José R. Boria Escobar.

3) Solicitud de Pensión. ASR. Fecha: 16/5/2014. Firma: Francisco Martínez Irizarry. Firma: Neris Fred Acevedo.

4) Hoja Control y Trámite. 28/4/2015.a: Gisela Santiago De: José R. Boria Escobar.

5) Carta. 22/11/2013. Recibido por: Janette Fargas. Firma: Ruben Lugo López.

6) Carta. 27/1/2014. Firma: José R. Boria Escobar. Contenido: a los efectos de procesar y completar los trámites de jubilación del siguiente empleado: ... Francisco Martínez...

7) Carta. 22/9/2014. Firma: José R. Boria Re: Casos pro Resolución. Consulta sobre el proceder del caso de aquellos participantes que por razón de suspensión de empleo y sueldo, están para ser reinstalados o pueden solicitar pensión de ASR.

8) Estipulación: 28/6/2014. Acreditar periodo del 2004-2006. Firma: María I. Rivera Rivera, oficial Recursos Humanos.



9) Carta ASR. 16/12/2014. Firma: Jesús A. Flores Huggins, director Área de Servicios al Pensionado. Se aprobó pensión por Ley 3 con efectividad al 16 de mayo de 2014.

10) Carta Francisco Martínez a ASR. 23/1/2015. Firma: Francisco Martínez. Desea apelar la decisión de que su pensión fue trabajada mediante Ley 3 cuando el solicitó Ley 447.

11) Carta sobre Estado de Cuenta. 14/4/2014. Años Acreditados: 31.00

12) Hoja Cotejo Requisitos Estado de Cuenta ASR. 19/3/2014. Firma: Ana M. Hernández Ortiz.

13) Solicitud Estado de Cuenta ASR. 11/marzo/2014. Firma: Francisco Martinez Irizarry. Jubilación.

14) Estipulación. 28/6/2013. Firma: Alberto Lázaro, director ejecutivo AAA, Francisco Martínez, empleado, Ruben Lugo López, director Recursos Humanos y Relaciones Laborales, Pedro Irene Maymi, presidente UIA.

15) Solicitud Estado de Cuenta ASR. 21/junio/2013. Firma: Francisco Martínez Irizarry. Jubilación.

A tenor con las anteriores determinaciones de hechos, llevo a cabo las siguientes:

## CONCLUSIONES DE DERECHO

El Sistema de Retiro para los Empleados del Gobierno de Puerto Rico fue creado por la Ley Número 447 del 15 de mayo de 1951, según enmendada, tiene como fin primordial proveerle un seguro de dignidad de forma tal que luego de haber "dedicado al servicio público sus años fecundos", no se encuentre "en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado". Bayrón Toro v Serra, 119 D.P.R. 605, 616 (1987).[2] Es un beneficio marginal de su empleo de considerable importancia que debe ser recibido por mérito. "Esta legislación se caracteriza por ser una general y abarcadora que provee beneficios y anualidades de retiro para empleados del Gobierno estatal y sus instrumentalidades, entre otros." Rafael Domingo Pagán v. Administración

---

[2] La Ley Núm. 3 del 4 de abril de 2013, según enmendada, modifica los derechos de los participantes en lo relacionado a los beneficios por incapacidad. Sin embargo, la misma dispone la preservación de los derechos de aquellos empleados que hayan solicitado una pensión por incapacidad antes de su vigencia.

de los Sistemas de Retiro, 2012 T.S.P.R. 68. La importancia y los objetivos principales de un sistema de retiro fueron esbozados por el Tribunal Supremo de Puerto Rico en el caso Bayrón Toro v. Rafael Serra y otros, 119 D.P.R. 605, 616 (1987). A tal efecto, expresó:

> Un sistema de retiro es un beneficio marginal de considerable importancia. Para muchos significa una fuente de ingreso futuro, que le permitirá disfrutar su vejez con razonable seguridad económica. "El derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado." Rosa Resto v. Rodríguez Solís, 111 D.P.R. 89, 92 (1981); Román Mayol v. Tribunal Superior, 101 D.P.R. 807, 811 (1973).

Dentro del marco jurídico antes señalado, el Artículo 4-102 (d) de la Ley Núm. 447, supra, establece entre las facultades y deberes de la Junta de Retiro: "Investigar y resolver en apelación, a solicitud de parte, controversias surgidas entre miembros del Sistema y el Administrador." Además, se facultó a la Junta a resolver "de acuerdo con la prueba, sosteniendo, modificando o revocando la acción del Administrador, o podrá dictar la resolución que en Ley debió haber dictado el Administrador o devolver el caso al Administrador." Id. Por tanto, la Junta de Retiro, en el ejercicio de sus facultades tiene también aquellos poderes incidentales y necesarios para el ejercicio de su jurisdicción y autoridad para adjudicar controversias.[3]

La Ley Núm. 447, supra, en su artículo 4-108 sobre la preservación de beneficios dispone lo siguiente:

> (a) Los beneficios bajo esta Ley de los participantes del Sistema que se pensionaron en o antes del 30 de junio de 2013 no serán modificados, incluyendo los beneficios que reciben o recibirían sus beneficiarios en caso de su muerte.
> (b) Se preserva el derecho de todo participante que, al 30 de junio de 2013 era elegible a recibir una pensión diferida por cumplir con todos los requisitos de ésta, a recibir dicha pensión independientemente de que la haya solicitado.
> (c) Se preserva el derecho de todo empleado que haya solicitado una pensión por incapacidad antes de entrar en

---

[3] Regla 5.06 del Reglamento Adjudicativo de la Junta de Síndicos de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, Reglamento 6838, del 11 de junio de 2004.

vigor esta Ley y se encuentre pendiente de evaluación por el Sistema.

(d) En el caso de un pensionado que se había reintegrado al servicio público antes del 30 de junio de 2013, se preservarán sus aportaciones hasta esa fecha, al amparo de la opción seleccionada bajo el inciso (c) del Artículo 2-101 de la Ley Núm. 447 del 15 de mayo de 1951, según enmendada. Una vez se separe permanentemente del servicio, se le otorgará el beneficio bajo el inciso (c) del Artículo 2-101 antes mencionado, con los salarios y aportaciones que había realizado hasta el 30 de junio de 2013; disponiéndose que a partir del 1ro de julio de 2013, pasará a formar parte del Programa Híbrido de Contribuciones Definidas establecido en el Capítulo 5 de la Ley Núm. 447 del 15 de mayo de 1951, según enmendada.

(e) Todo pensionado que se reintegre al servicio público a partir del 1ro de julio de 2013, le aplicarán las disposiciones del inciso (c) del Artículo 2-101 de la Ley Núm. 447 del 15 de mayo de 1951, según enmendada.

(Énfasis nuestro).

Los beneficios provistos por la referida Ley Núm. 447, *supra*, fueron modificados de manera sustancial mediante las enmiendas introducidas a la misma a través de la Ley Núm. 3 de 2013. Estos cambios incluyeron la congelación de beneficios; el aumento escalonado a la edad de retiro; la reducción de los beneficios provistos por las leyes especiales; y la conversión del monto de las aportaciones hechas por cada empleado público que participa en el programa de la Reforma 2000 a una anualidad vitalicia.

El 11 de septiembre de 2015, la Administración emitió decisión en la que aprobó la solicitud de pensión en virtud de la Ley Núm. 3-2013 y por tanto, no tendría los beneficios de leyes especiales. El apelante inconforme con la determinación del Administrador presentó oportunamente el recurso de apelación ante la Junta de Retiro. Fundamentó su apelación en que la Administración erróneamente le aplicó la Ley Núm. 3-2013 alegando que el presentó su solicitud de retiro el 16 de mayo de 2014, y por tanto, no tiene derecho a los derechos que conceden las leyes especiales. Sostuvo que su solicitud de pensión fue presentada el 10 de mayo de 2013 ante el Coordinador de la AAA para evitar que le fuera de aplicación las disposiciones de la Ley Núm.3-2013. Por lo tanto, solicitó el pago dejado de recibir por el bono de medicamentos, bono de navidad, aportación al plan médico entre otros beneficios.

En su Contestación a la Apelación la parte apelada sostiene que el



11

participante completó los treinta (30) años de servicios al 30 de junio de 2013. A esa fecha tenía la edad 58 años. Por tanto, el apelante cualificó para una pensión de mérito con el 75% de su beneficio pero sin derecho a recibir los beneficios de leyes especiales por qué presentó su Solicitud de Pensión ante el Coordinador Agencial el 16 de mayo de 2014.

Es menester establecer que conforme al expediente administrativo no hay controversia en que el apelante era merecedor de una pensión por mérito luego de tener acreditado treinta y un (31) años de servicios en el servicio público. La controversia en el presente caso es estrictamente de hechos, ¿cuándo el Sr. Martínez Irizarry solicitó su pensión por mérito, sí fuel el 10 de mayo de 2013 cuando llenó la *Solicitud de Servicios* o el 16 de mayo de 2014 cuando firmó la *Solicitud de Pensión de ASR*? Véamos.

La figura del Coordinador de Asuntos de Retiro está contenido en el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos 4930 de 1993 de la Administración. Los deberes y funciones del Coordinador de Asuntos de Retiro están contenidos en la Regla 52.3 del Reglamento 4930. A tales efectos, dispone lo siguiente:

> 52.3-Cada patrono gubernamental deberá nombrar un Coordinador de Asuntos de Retiro, que se encargue de mantenerse al día en relación con los requisitos y procedimientos que establezca el Administrador para los diferentes servicios y beneficios. Los Coordinadores de Asuntos de Retiro tendrán los siguientes deberes y funciones:
>
> (a) deberán conocer y tener disponibles todos los formularios necesarios para la tramitación de las diferentes solicitudes;
> (b) deberán orientar a los participantes de sus respectivas agencias en relación a los beneficios y servicios del Sistema;
> (c) llevar un registro de los casos radicados y darles el correspondiente seguimiento;
> (d) distribuir a los participantes de su agencia las comunicaciones oficiales del Sistema que de una u otra manera les afecten o cuyo propósito sea el de información general;
> (e) coordinar con la Administración las orientaciones generales para los participantes de su agencia;
> (f) mantener comunicación con el Centro de Representantes de Servicio de la Administración para el seguimiento de los casos, cuando esto sea necesario.



Las Reglas 52.6 y 52.7 del Reglamento 4930 de 1993, establece el procedimiento para que un participante puede realizar un trámite con la Administración. Las referidas reglas establecen lo siguiente:

52.6-Cuando un participante activo del Sistema, necesite realizar alguna gestión o trámite ante el Administrador, solicitará de su patrono que remita a la Administración su Expediente de Asuntos de Retiro.  Sí el participante está inactivo por haberse desvinculado del servicio gubernamental sin haber pedido el reembolso de sus aportaciones acumuladas, la solicitud deberá presentarla al último patrono para el cual prestó servicios.

52.7-El Coordinador recibirá la solicitud de beneficios o servicio del participante, la incluirá en el Expediente de Asuntos de Retiro y enviara la solicitud junto con el expediente a la Administración.  El envío podrá hacerlo personalmente o a través de un mensajero y el expediente se entregara en el Centro de Representantes de Servicio de la Administración.  El Centro de Representantes de Servicio recibirá la solicitud con el expediente, verificará todos los documentos requeridos y entregará un recibo al Coordinador o su mensajero, como evidencia de la entrega del expediente. Será obligación del Coordinador conservar este recibo con la hoja de control de salida de expedientes que el patrono establezca. El expediente y la solicitud serán referidos dentro de las veinticuatro (24) horas siguientes a su recibo al área correspondiente para ser trabajada.  Terminados los tramites, el Expediente trabajado se referirá a la División de Archivos del Área de Beneficios de la Administración, para preservar en el sistema mecanizado de la Administración, la información necesaria sobre el servicio prestado al participante.  El expediente se devolverá al Coordinador de Retiro, dentro del término de diez (10) días de haberse prestado del servicio al participante.

Un examen a la figura del Coordinador Agencial para Asuntos de Retiro demuestra que el mismo es el enlace entre el Sistema de Retiro y los participantes a través de las agencias y municipio. La Regla 52.6 del Reglamento 4930 y los diversos reglamentos de la Administración demuestran que cualquier solicitud que un participante quiera realizar con el Sistema tiene que ser por conducto del Coordinador. También, cuando un participante se separa del servicio público tiene que tramitar la solicitud a través del Coordinador. Por tanto, el Coordinador es el brazo operador del Sistema con los participantes, pues son los formularios y directrices que



imparte la Administración las que ejecuta en las agencias, corporaciones públicas, instrumentalidaes y municipios. Por tal razón, el proceso de solicitud para retiro de reembolso, pensión o cualquier trámite que envuelva a la Administración inicia desde el momento en que el empleado solicita los servicios ante  el Coordinador de Asuntos de Retiro quien es el encargado de servir de enlace entre la Administración y los servidores públicos en las distintas agencias y municipios.

En su testimonio, la parte apelante sostiene que se hizo efectiva su renuncia el 6 de mayo del 2013 en virtud de la Estipulación que firmó con su patrono y el 10 de mayo de 2013, presentó el formulario denominado *Solicitud de Servicios* que presentó su petición de retiro por mérito. Lo firmó en esa fecha para evitar perder los derechos que estableció la Ley Núm. 3-2013, entiende que quizás la demora que tuvo el patrono fue a causa de las diversas reclamaciones legales que tuvo para vindicar sus derecho laborales. El Sr. Boria Escobar, coordinador agencial de la AAA manifestó que entre sus funciones está orientar a los empleados. La AAA tuvo prorrogar para presentar solicitudes de retiro posterior al 30 de junio de 2013 para los empleados que estaban en controversias legales con el patrono ya fuera en el foro administrativo o judicial. El Estado de Cuenta que se trabajó con la solicitud del 10 de mayo de 2013, le cotiza 29 años al apelante, en cambio, la solicitud del 16 de mayo de 2014, le cotiza 31 años de servicio en el Sistema. Por último, expresó que la Solicitud de Servicios es el documento interno de la AAA para iniciar los trámites de retiro como se gestiona el Estado de Cuenta, asignar el caso a un coordinador y luego que se documenta la totalidad de la solicitud se solicita la pensión con el formulario foral de la Administración.

En su Memorando la parte apelante provee un listado de titulado Certificación de Solicitudes Radicadas para el Retiro pero que no pudieron ser presentadas en su totalidad ante la ASR por el Coordinador de la agencia. El documento contiene dieciocho (18) páginas y en la página seis (6) surge el nombre del apelante. El documento indica que el apelante desea obtener el Estado de Cuenta y la pensión pero no indica la fecha de presentación de la solicitud ante la AAA. La parte apelada en su réplica sostiene que el documento demuestra que no había fecha exacta del trámite ante la agencia. Además, si se hubiera tramitado la pensión con el formulario del 10 de mayo de 2013 el apelante no disfrutara de una pensión por mérito sino diferida. En cambio, debido a que se tramitó la solicitud del 16 de mayo de 2014 es que goza de una pensión por mérito y recibe el 75% de su salario.

Sin embargo, en el presente caso el apelante no completó la totalidad de documentos requeridos para solicitar la pensión por mérito antes de la vigencia de la Ley Núm.3-2013. Entendemos que el apelante



comenzó los trámites para solicitar la pensión por mérito el 10 de mayo de 2013, pero no fue hasta el 16 de mayo de 2014, que radicó la solicitud formal con el formulario que provee la ASR para acogerse a la jubilación. Es en la fecha del 16 de mayo de 2016, que documentó la Hoja de Cotejo Requisitos para Pensiones que establece que es en esa fecha que estaba la totalidad de los documentos para tramitar la solicitud.

Reconocemos que reiteradamente se ha señalado que las leyes que versan sobre pensiones de retiro deben interpretarse liberalmente a favor del beneficiario. Sanfiorenzo v. Adm. Sistemas de Retiro, 138 D.P.R. 94 (1995); Villamil Suárez v. Dpto. de Transportación y Obras Públicas, 133 D.P.R. 805 (1993). No obstante, en Leonides Ruiz Torres v. Adm. Sistemas de Retiro, KLAR201200007, sentencia del 30 de marzo de 2012, 2021 PR App. Lexis 667, el Tribunal de Apelaciones reiteró que conforme a la Resolución Administrativa Núm. 2001-14 del 25 de octubre de 2001 de la Junta de Retiro, "se considera radicada la solicitud de pensión el día en que el participante presenta su solicitud ante el Coordinador de Asuntos de Retiro de su patrono, quien se entiende que actúa así como "brazo extendido" de la Administración". Se entiende presentada una solicitud ante el Coordinador cuando se incluye todos los documentos necesarios para su trámite. Una solicitud que no viene acompañada de la totalidad de los documentos requeridos se entiende que no ha sido presentada y el Coordinador está impedido de tramitar la solicitud.

Corresponde a la parte que impugna la determinación de una agencia administrativa el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987). El concepto de evidencia sustancial ha sido definido por nuestro Tribunal Supremo como un análisis del expediente que refleje la existencia de evidencia relevante que una mente razonable podría aceptar como adecuada para sostener la decisión tomada. Associated Insurance Agencies, Inc. v. Comisionado de Seguros de PR., 144 D.P.R. 425, 437 (1997), Hilton Hotels International, Inc. v. Junta de Salario Mínimo de Puerto Rico, 74 D.P.R. 670, 687 (1953). La parte que alega que la evidencia en la cual se fundamentaron las determinaciones de una agencia no es sustancial, "deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia en la cual se fundamenta la determinación, hasta el punto de que no se pueda prudentemente concluir que la determinación fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". Misión Industrial de PR. v. Junta de Planificación de Puerto Rico, 146 D.P.R. 64, 131 (1998), Metropolitana S.E. v. Administración de Reglamentos y Permisos, 138 D.P.R. 200 (1995).



El Tribunal Supremo de Puerto Rico ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en decisiones administrativas tendrán gran deferencia al ser revisadas. Jesús García Oyola v. Junta de Calidad Ambiental, 142 D.P.R. 532, 540 (1997); Metropolitana S.E. v. Administración de Reglamentos y Permisos, *supra*, Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992). Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 150 D.P.R. 70, 76 (2000); (T-Jac, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999). Por consiguiente, frente a la impugnación de una decisión administrativa, los foros apelativos deberán limitarse a indagar sobre la razonabilidad de la misma y no deben sustituirlas por sus propios criterios, salvo que la misma sea claramente arbitraria o ilegal, o tan irrazonable que la actuación impugnada constituya un claro abuso de discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263 (1999); Misión Industrial de P.R. v. Junta de Planificación, *supra*, Misión Industrial de PR v. Junta de Planificación de PR y Autoridad de Acueductos y Alcantarillados, 142 D.P.R. 656 (1997).

Conforme al artículo 4-102(d) de la Ley 447, *supra*, facultando a la Junta a resolver controversias entre los miembros del Sistema y la Administración, y en virtud de un examen ponderado y minucioso al expediente, basado en los hechos aquí determinados y el derecho aplicable antes citado, concluyo que procede confirmar la decisión de la Administración. La Administración no erró al tramitar la solicitud de pensión por mérito en virtud de la Ley Núm. 3 del 2013 a la parte apelante. La evidencia que obra en el expediente sostiene que la parte apelante completó la totalidad de su solicitud el 16 de mayo de 2014 ante el Coordinador Agencial de Asuntos de Retiro de la A.A.A..

Analizada la prueba en el expediente administrativo y los planteamientos de las partes, luego de un examen desapasionado y minucioso de la totalidad del expediente y a la luz de las disposiciones legales, jurisprudenciales y reglamentarias antes citadas, consideradas las Determinaciones de Hechos y Conclusiones de Derecho antes presentadas, esta Junta de Retiro **CONFIRMA** la determinación de la Administración, a tenor con las disposiciones de ley vigente.

## ADVERTENCIAS

De conformidad con la Sección 3.15 de la Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", la parte adversamente afectada por esta resolución



final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de **reconsideración** de la resolución ante la Junta de Retiro. Dentro de los quince (15) días de haberse presentado dicha moción, la Junta deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión judicial comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión judicial empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la Junta resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la Junta acoge la moción de reconsideración pero deja de tornar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales.

Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

Así mismo y de conformidad con la Sección 4.2 de la Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", la parte adversamente afectada por esta resolución final también podrá presentar una solicitud de **revisión judicial** ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la resolución final de la Junta o a partir de la fecha aplicable, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión judicial a la Junta de Retiro y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo.

Disponiéndose, que si la fecha de archivo en autos de copia de la notificación de la resolución final de la Junta es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

REGISTRESE Y NOTIFIQUESE:



17

En San Juan, Puerto Rico hoy _____ AUG 3 1 2021 _____.

_____
Lcdo. Carlos Saavedra Gutiérrez
Presidente Designado

_____
Lcda. Raquel Sosa Gierbolini
Secretaria

## NOTIFICACIÓN

**CERTIFICO:** Que en el día de hoy la presente **Resolución** ha sido notificada por correo certificado a las partes:

En San Juan, Puerto Rico, hoy _____ 3 2021 _____.



_____
Lcdo. Luis Collazo Rodríguez
Director Ejecutivo



Rec. Sept
23 2021

18

$ 000.73

GOBIERNO DE PUERTO RICO
Junta de Retiro del Gobierno de Puerto Rico
y la Judicatura
PO Box 40316, San Juan, PR 00940-0316

Recibido
23 sept. 2021

FRANCISCO MARTINEZ IRIZARRY
P O BOX 949
SAN GERMAN PR 00683

00683830949 B002

30/5/22, 23:21                    Gmail - Fwd: Notificación Electrónica KLRA202100534

dogexd 73744637 <evelyn1carlos@gmail.com>

## Fwd: Notificación Electrónica KLRA202100534

2 mensajes

**Sandra lugo-Andujar** <lugolawoffices@gmail.com>                         15 de junio de 2022, 9:37
Para: Evelyn Ortiz <evelyn1carlos@gmail.com>

s. lugo

---------- Forwarded message ---------
From: < uheray@poderjudicial.pr>
Date: Tue. Apr 26, 2022 at 9:56 AM
Subject: Notificación Electrónica KLRA202100534
To: < lugolawfices@gmail.com>

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
REGION JUDICIAL DE SAN JUAN

| | | |
|---|---|---|
| MARTINEZ IRIZARRY, FRANCISCO | CASO NÚM.: | KLRA202100534 |
| V. | SOBRE: | REVISION ADMINISTRATIVA CIVIL |
| ADMINISTRACION DE LOS SISTEMAS DE RETIRO | | |

N O T I F I C A C I Ó N

A:     LIC. LUGO ANDÚJAR,SANDRA M.
       LUGOLAWOFFICES@GMAIL.COM
       JUNTA DE RETIRO DEL GOBIERNO DE PR

       PO BOX 40316
       SAN JUAN PR 00940-0316
       LIC. OJEDA GONZÁLEZ,ISAÍAS
       ISAIAS_OJEDA@OUTLOOK.COM
       LIC. SÁNCHEZ PARÉS,ADRIANA G
       AGPARES@GMAIL.COM

EL (LA) SECRETARIO(A) QUE SUSCRIBE CERTIFICA Y NOTIFICA A USTED QUE CON RELACIÓN AL (A LA): REVISIÓN
JUDICIAL-13 DE OCTUBRE DE 2021
ESTE TRIBUNAL EMITIÓ UNA SENTENCIA EL 25 DE ABRIL DE 2022, DE LA CUAL SE ANEJA COPIA O INCLUYE ENLACE:
[ilegible] a acceder al documento electrónico objeto de esta notificación. El documento estará disponible a través de este
[ilegible] que días desde que se archivó en autos la notificación.
SE LE ADVIERTE QUE AL SER UNA PARTE, O SU REPRESENTANTE LEGAL EN EL CASO SUJETO A ESTA SENTENCIA. DE
LA CUAL PUEDE PRESENTARSE UN RECURSO DE APELACIÓN O CERTIORARI. DE CONFORMIDAD CON EL
PROCEDIMIENTO Y EN EL TÉRMINO ESTABLECIDO POR LEY. REGLA O REGLAMENTO, DIRIJO A USTED ESTA
NOTIFICACION.

CERTIFICO ADEMAS QUE, EN EL DIA DE HOY, ENVIE COPIA DE ESTA NOTIFICACION A LAS PERSONAS ANTES
INDICADAS, A SUS DIRECCIONES REGISTRADAS EN EL CASO, CONFORME A LA NORMATIVA APLICABLE. EN ESTA MISMA
FECHA FUE ARCHIVADA EN AUTOS COPIA DE ESTA NOTIFICACION.

EN SAN JUAN. PUERTO RICO, EL 26 DE ABRIL DE 2022.

LILIA M. OQUENDO SOLIS                          POR: F/ YARILIS RODRIGUEZ BURGOS

NOMBRE DEL (DE LA) SECRETARIO(A) DEL TRIBUNAL DE        NOMBRE Y FIRMA DEL (DE LA) SECRETARIO(A) AUXILIAR
APELACIONES                                     DEL TRIBUNAL

OAT1835 Formulario Único de Notificación -Tribunal de Apelaciones (Marzo 2017)

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| FRANCISCO MARTÍNEZ IRIZARRY<br><br>Recurrente<br><br>v.<br><br>ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO Y LA JUDICATURA<br><br>Recurrido | KLRA202100534 | Revisión Administrativa procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso Núm. 2015-0348<br><br>Sobre: Revisión de Pensión |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de abril de 2022.

Comparece ante nos el Sr. Francisco Martínez Irizarry (en adelante el recurrente) solicitando que revoquemos una *Resolución* notificada el 13 de septiembre de 2021 por la Junta de Retiro del Gobierno de Puerto Rico (en adelante la Junta).[1] Por los fundamentos expuestos a continuación, revocamos la determinación de la Junta y devolvemos el caso a la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura para que actúen conforme a lo aquí dispuesto.

-I-

El aquí recurrente comenzó a trabajar para al Autoridad de Acueductos y Alcantarillados (en adelante la Autoridad) el 17 de junio de 1976 y allí permaneció laborando hasta el 6 de mayo de 2013, cuando fue aceptada su renuncia mediante estipulación firmada el 28 de junio de 2013.[2] Cabe destacar que durante ese

---

[1] Véase Apéndice *Solicitud de Revisión Judicial*, pp. 73-90.
[2] Véase Apéndice *Solicitud de Revisión Judicial*, pp. 68-72.

NÚMERO IDENTIFICADOR
SEN2022_____

tiempo, específicamente entre el 18 de mayo de 2004 hasta el 16 de junio de 2006, el recurrente fungió como presidente del Capítulo de Mayagüez la Unión Independiente Auténtica (en adelante, la UIA). En virtud de la antes mencionada estipulación, la Autoridad le reconoció al recurrente la aplicabilidad del convenio colectivo, por lo que se entendía que completó 31 años de servicio. Adicionalmente, se le concedió el pago de salarios y descuentos correspondientes a los años que sirvió como presidente en la UIA para su cotización ante el Sistema de Retiro, ya que en ese lapso no había devengado salarios ni beneficios. También se acordó que estos pagos se realizarían antes del 30 de junio de 2013.[3]

Así las cosas, y de cara a la vigencia de la Ley Núm. 3 del 2013, el 3 de mayo de 2013, la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante ASR) emitió su *Carta Normativa Especial Núm. 2013-01*. En esta, se estableció que toda Solicitud de Servicio de Jubilación debería radicarse ante el Coordinador Agencial para Asuntos de Retiro en o antes del 15 de junio de 2013 y el Coordinador, a su vez, debía presentar las solicitudes en la ASR en o antes de 30 de junio de 2013. En el caso de solicitudes radicadas antes del 30 de junio, pero no completadas antes de esa fecha, los Coordinadores debían enviar una Certificación firmada de las mismas a la ASR antes del 12 de julio de 2013. Adicionalmente, se establece en la misma que los coordinadores tenían que cumplir con las fechas para la entrega de las diferentes Solicitudes de Servicios de los empleados sometidas antes del 30 de junio de 2013.[4]

Cónsono con lo anterior, el 10 de mayo de 2013 el recurrente presentó su solicitud de servicios de jubilación ante el Coordinador Agencial de la Autoridad para poder preservar su derecho a jubilarse

---

[3] *Id.*
[4] Véase Apéndice *Solicitud de Revisión Judicial*, pp. 22-61.

al amparo de la Ley 447 de 1951 antes de la vigencia de la Ley Núm.
3 del 2013. Dicha solicitud fue incluida en la Certificación enviada
a ASR por parte del coordinador.[5] Luego de varios trámites
procesales con la ASR y el coordinador, el recurrente firmó la
documentación provista por el Coordinador Agencial el 16 de mayo
de 2014.[6]

Así las cosas, el 16 de diciembre de 2014 la ASR emitió un
comunicado informando al recurrente que su solicitud de pensión
al amparo de la Ley 3 había sido aprobada efectivo el 16 de mayo de
2014.[7] Ante esto, el recurrente solicitó revisión de su caso, la cual
fue evaluada y contestada por ASR a través de una comunicación
con fecha del 11 de septiembre de 2015.[8] En esta se le reconocieron
al recurrente sus años de servicio, su estipulación de renuncia con
la Autoridad relativa al pago de su salario por el tiempo en el que se
desempeñó como presidente de la Unión y que su pensión se hizo
efectiva el 16 de mayo de 2014. Sin embargo, se hizo caso omiso en
la comunicación de la solicitud de servicios de jubilación del 10 de
mayo de 2013 y de la certificación preparada por el Coordinador el
1 de julio de 2013, en cumplimiento con la *Carta Normativa Especial
Núm. 2013-01*.

A tales efectos, el aquí recurrente presentó un recurso de
apelación ante la Junta para recurrir la determinación de la ASR.[9]
En síntesis, la Junta concluyó que se entiende que el 10 de mayo de
2013 el recurrente lo que hizo fue iniciar los trámites para solicitar
su pensión por mérito y que, debido a que fue el 16 de mayo de 2014
cuando el recurrente firmó su *Solicitud de Pensión de ASR*, fue en
esa fecha que se completó la totalidad de los documentos requeridos
para solicitar la pensión por mérito. Debido a esto, la Junta confirmó

---

5 Véase Apéndice *Solicitud de Revisión Judicial*. p. 1 y 49.
6 Véase Apéndice *Solicitud de Revisión Judicial*. pp. 92-93.
7 Véase Apéndice *Solicitud de Revisión Judicial*. p. 5.
8 Véase Apéndice *Solicitud de Revisión Judicial*. pp. 6-7.
9 Véase Apéndice *Solicitud de Revisión Judicial*. p. 73-90.

KLRA202100545                                                                    4

la decisión de ASR y se le mantuvo la pensión al recurrente según dispone la Ley 3 de 2013.[10]

Inconforme, la parte recurrente acude ante nos alegando que el foro administrativo recurrido cometió el siguiente error:

> Erró la Junta al emitir la Resolución objeto del presente recurso, al declarar No Ha Lugar a la Apelación, a base de una interpretación restrictiva de la Ley 447 de 15 de mayo de 1951, (en adelante le Ley 447); ello resultó contrario a la propia ley y a la casuística. Los hechos acreditan que el Sr. Martínez cumplió con todas las condiciones para preservar sus beneficios de jubilación bajo la Ley 447 y no la Ley Núm. 3 del 4 de abril de 2013. 3 LPRA sec. 761 y con efectividad al 1 de julio de 2013. El error de hecho o humano administrativo cometido por la ASR en el trámite y evaluación de su solicitud de jubilación de mayo de 2013. no le quita los derechos adquiridos y preservados bajo la Ley 447.

-II-

-A-

Nuestro Tribunal Supremo ha resuelto que los foros apelativos debemos ser deferentes con las determinaciones de las agencias administrativas. Lo anterior porque son los foros administrativos quienes poseen la experiencia y la pericia para entender sobre los asuntos que el ejecutivo les ha delegado.[11] Precisamente esta es la razón por la cual las determinaciones administrativas poseen una presunción de legalidad y corrección que debe ser respetada por los tribunales, a menos que quien impugne la decisión administrativa presente evidencia suficiente para derrotar dicha presunción.[12]

La Ley de Procedimiento Administrativo Uniforme (en adelante, la LPAU), por su parte, delimita la facultad que ostentan los tribunales para revisar las decisiones administrativas. La misma dispone:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente

---

[10] Id.
[11] Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010).
[12] Díaz v. Fideicomiso, 188 DPR 32, 60 (2013).

> administrativo. Las conclusiones de derecho serán
> revisables en todos sus aspectos por el tribunal.[?]

Jurisprudencialmente, nuestra más alta curia ha establecido tres aspectos a los cuales se deben limitar los tribunales al evaluar las decisiones administrativas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta.[14] En estos casos, el principio rector es el criterio de la razonabilidad de la actuación de la agencia recurrida.[15]

Ahora bien, cuando la interpretación de un estatuto realizado por una agencia produzca resultados incompatibles o contrarios al propósito para el cual se aprobó la legislación y a su política pública, el criterio administrativo no podrá prevalecer. Es por esto por lo que los tribunales debemos armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable.

Finalmente, y relativo a las pensiones por concepto de retiro, nuestro Tribunal Supremo ha resuelto que las leyes que versan e inciden sobre pensiones de retiro deben ser interpretadas de la manera más liberal a favor del beneficiario.[16]

-B-

El Sistema de Retiro para los Empleados del Gobierno de Puerto Rico fue creado por la Ley 447 del 15 de mayo de 1951. Esta tiene el fin de proveer un retiro digno de forma tal que luego de haber

---

[12] Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. Ley 38 de 2017, 3 LPRA sec. 9675.
[14] Pagán Santiago et al. v. ASR, 185 D.P.R. 341 (2012).
[15] Díaz v. Fideicomiso, supra.
[16] Sanfiorenzo v. ASR, 138 DPR 94 (1995).

dedicado al servicio público sus años productivos, los servidores

públicos no se encuentren en la etapa final de su vida en el

desamparo o convertidos en la carga de parientes o del estado.[17]

Explicó nuestro Tribunal Supremo que el derecho a pensión de

retiro por años de servicio tiene un respetable contenido ético y

moral y constituye un seguro de dignidad para quien haya dedicado

se haya dedicado al servicio público.[18] Los beneficios inherentes a la

Ley 447 de 1951 fueron modificados de manera sustancial a través

de las enmiendas que dicha ley sufrió en virtud de la Ley 3 de 2013.

En lo aquí pertinente, dispone el Reglamento General para la

Concesión de Pensiones, Beneficios y Derechos 4930 de 1993 de la

ASR (en adelante el Reglamento 4930) cuáles deberán ser las

funciones del Coordinador de Asuntos de Retiro y el procedimiento

para que un participante pueda realizar un trámite con la ASR. Las

mismas son las siguientes:

> Regla 52 - Expediente de Participantes y Pensionados.
> ...
>
> 52.3 – Cada patrono gubernamental deberá nombrar un
> Coordinador de Asuntos de Retiro, que se encargue de
> mantenerse al día en relación con los requisitos y
> procedimientos que establezca el Administrador para los
> diferentes servicios y beneficios. Los coordinadores de
> Asuntos de Retiro tendrán los siguientes deberes y
> funciones.
> ...
>
> (c) llevar un registro de los casos radicados y darles el
> correspondiente seguimiento:
>
> (f) mantener comunicación con el Centro de Representantes
> de Servicio de la Administración para el seguimiento de los
> casos, cuando sea necesario.
> ...
>
> 52.6 – Cuando un participante activo del Sistema necesite
> realizar alguna gestión o trámite ante el Administrador,
> solicitará de su patrono que remita a la Administración su
> Expediente de Asuntos de Retiro. Si el participante está
> inactivo por haberse desvinculado del servicio
> gubernamental sin haber pedido el reembolso de sus
> aportaciones acumuladas, la solicitud deberá presentarla al
> último patrono al cual prestó servicios.
>
> 52.7 – **El Coordinador recibirá la solicitud de beneficios o
> servicio del participante, la incluirá en el Expediente de
> Asuntos de Retiro y enviará la solicitud junto con el
> expediente a la Administración.** El envío podrá hacerlo
> personalmente o a través de un mensajero y el expediente se
> entregará en el Centro de Representantes de Servicio de la

[17] *Bayron Toro v. Serra*, 119 DPR 605, 616 (1987).
[18] *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 92 (1981).

Administración. El Centro de Representantes de Servicio recibirá la solicitud con el expediente, verificará todos los documentos requeridos y entregará un recibo al Coordinador o su mensajero, como evidencia de la entrega del expediente. Será obligación del Coordinador conservar este recibo con la hija de control de salida de expedientes que el patrono establezca. El expediente y la solicitud serán referidos dentro de las veinticuatro (24) horas siguientes a su recibo al área correspondiente para ser trabajada. [19]
[...] (Énfasis Nuestro).

De lo anterior se desprende que es el Coordinador quien funciona como agente de enlace entre las diferentes agencias y la ASR. Por esto, el proceso pertinente a cualquier trámite que envuelva a la ASR comienza desde el momento en el que el empleado solicita los servicios ante el Coordinador.

-III-

Conforme con la casuística de nuestro Tribunal Supremo, y por entender que estamos ante un error en la apreciación de los hechos que originaron la controversia ante nos, consideramos que la ASR y la Junta erraron en sus conclusiones.

Un análisis del expediente del caso ante nuestra consideración refleja que, en efecto, la parte recurrente sometió su Solicitud de Servicios ante el Coordinador de la Autoridad el 10 de mayo de 2013. Es decir, más de un mes antes de la fecha límite establecida en la *Carta Normativa Especial Núm. 2013-01*, según expedida por la ASR. Otro particular que se desprende del expediente es que el Coordinador de su agencia fue diligente y, aunque no se pudo terminar el proceso antes de la vigencia de la Ley 3 de 2013, este sometió la Certificación según requerida en la *Carta Normativa*, salvaguardando los derechos del aquí recurrente.

Cónsono con lo anterior, nos vemos forzados a concluir que la parte recurrente actuó conforme a lo establecido por la ASR y que, por lo tanto, tiene derecho a su pensión por concepto de retiro al amparo de la Ley 447 de 1951 según esta constaba antes de sufrir

---

[19] Reglas 52.3, 52.6 y 52.7 del Reglamento General para la Concesión de Pensiones, Beneficios y Derechos 4930 de 1993 de la Administración de los Sistemas de Retiro.

enmiendas por la Ley 3 de 2013. Aún si la *Carta Normativa* no fuera clara, nuestro Tribunal Supremo ha sido claro en cuanto a que las leyes que versan e inciden sobre pensiones de retiro deben ser interpretadas de la manera más liberal a favor del beneficiario.[20] Por lo que si hubiera alguna controversia en cuanto a la interpretación del estado de derecho aplicable al recurrente, se debe concluir que le aplica el mismo según existía previo a la enmienda del 2013 ya que éste fue diligente en todo trámite conducente a salvaguardar su derecho a la pensión al amparo de la ley antes de ser enmendada.

A la luz de lo anterior, nos vemos forzados a concluir que la agencia administrativa cometió el error alegado por la parte recurrente y que este mantuvo sus derechos de jubilación al amparo de la Ley 447 de 1951 antes de ser enmendada por la Ley 3 de 2013.

-IV-

Por los fundamentos anteriormente expuestos, se revoca la Resolución de la Junta y se ordena a que el caso sea devuelto a la ASR para que se efectúen los ajustes pertinentes a la pensión por retiro del aquí recurrente.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

[20] *Sanfiorenzo v. ASR, supra.*



GOBIERNO DE PUERTO RICO
JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO

# CERTIFICACION

Certificamos que FRANCISCO MARTINEZ IRIZARRY, disfruta beneficios de PENSION POR MERITO de este Sistema de Retiro. La misma fue efectiva el 07 de mayo de 2013. En la actualidad recibe una anualidad ascendente a $27,094.32 pagadera en mensualidades de $2,257.86.

Además, tiene derecho a un bono de medicamentos de $100.00, un aguinaldo de navidad de $200.00 y una aportación para plan médico de $100.00 mensuales.

Esta certificación se expide hoy 16 de diciembre de 2022, en San Juan, Puerto Rico.

Certifico correcto,

*Lumarie Figueroa Vazquez*

Lumarie Figueroa Vazquez
Gerente Auxiliar
División de Asuntos de Pensionados



**GOBIERNO DE PUERTO RICO**
JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO

# CERTIFICACION

Certifico que, Francisco Martínez Irizarry, recibe beneficios de pensión de nuestro Sistema de Retiro. La efectividad de su pensión fue reajustada al 7 de mayo de 2013, recibiendo un pago retroactivo por la cantidad de $27,746.58. El pago fue emitido para la primera quincena del mes de diciembre de 2022.

El 30 de agosto de 2022 se emitieron los pagos retroactivos por concepto de Bono de Navidad por la cantidad de $1,400, diciembre de 2015 a diciembre de 2021. Además, se emitieron a la misma fecha los pagos retroactivos por concepto de Bono de Medicamentos por la cantidad de $900, julio de 2015 a julio de 2022.

Certifico correcto hoy, 16 de diciembre de 2022, en San Juan, Puerto Rico.

Marlisa Marrero Negrón
Directora
Área de Servicios y Beneficios



GOBIERNO DE PUERTO RICO
JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO

## CERTIFICACIÓN

Certificamos que FRANCISCO MARTINEZ IRIZARRY, disfruta beneficios de Pensión por Mérito de este Sistema de Retiro. La misma fue efectiva el 07 de mayo de 2013. En la actualidad recibe una anualidad ascendente a $27,094.32 pagadera en mensualidades de $2,257.86.

El 15 de diciembre de 2022 recibió un retroactivo de $27,746.58 correspondiente a una Revisión de Pensión según se desglosa:

| 07 mayo a diciembre | 2013 | $17,625.87 |
| Enero a diciembre | 2014 | $27,094.32 |
| Enero a junio 2015 | 2015 | -$16,973.61 |
| | | $27,746.58 |

El 30 de agosto de 2022 recibió el retroactivo de los bonos de Navidad y medicamentos correspondientes a los años 2014 al 2021, el total de ambas partidas fue de $2,390.00.

Ingresos exentos

| Bono Navidad $200 anual | 2015-2021 | Pagado en 30/08/2022 | $1,400.00 |
| | 2022 | 11/18/2022 | $ 200.00 |
| Bono Medicamentos $100 anual | 2014-2022 | 30/08/2022 | $ 900.00 |
| | | | $2,500.00 |

El retroactivo de pensión se pagó para cumplir con la Sentencia del Tribunal de Apelaciones Región Judicial de San Juan Caso Núm. KLRA202100534 y Tribunal de Primera Instancia Caso Núm. 2015-0348 sobre Revisión de Pensión.

Se expide esta certificación, hoy 04 de abril de 2023, en San Juan, Puerto Rico.

Certifico correcto,

Lumarie Figueroa Vázquez
Supervisora
División de Servicios a Pensionados

