# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

## COBRA ACQUISITIONS LLC'S REPLY
## IN SUPPORT OF MOTION TO MODIFY STAY ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this reply (the "Reply") to the *Joint Objection of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority to Cobra Acquisitions LLC's Motion to Modify Stay Order* [Case No. 17-BK-3283, ECF No. 24301; Case No. 17-BK-4780, ECF No. 3541] (the "Objection") to *Cobra Acquisitions LLC's Motion to Modify Stay Order* [Case No. 17-BK-3283, ECF No. 24219; Case No. 17-BK-4870, ECF No. 3507] (the "Motion").[1] In support of this Reply, Cobra respectfully states as follows:

**REPLY**

1. By the Motion, Cobra seeks relief from the stay—which has been in effect over Cobra's objections for nearly four years—for a narrow purpose: to ensure that Cobra, without further delay or excuse, receives payment in full on all invoices that have been approved by FEMA and for which funds have been advanced by FEMA, *i.e.* the "Approved Unpaid Invoices."[2] The Government Parties argue that, because PREPA *intends* to pay Cobra the money it receives from FEMA, this relief is "unnecessary." Obj. ¶¶ 2, 12. Not so. While FEMA has made available funds for the Approved Unpaid Invoices, it is entirely within PREPA's discretion whether and when it requests the funds to pay these invoices or, notwithstanding FEMA's approval, chooses to challenge certain invoices. The stay only encourages this "procrastinat[ion]" and "foot-dragging," if not outright gamesmanship. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72,

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the Motion or the Objection, as applicable.

[2] To Cobra's indisputable detriment, the payment on its claims have been wedded to the FEMA approval process (despite no such requirement in the Contracts, which are with PREPA, not FEMA). At this time, Cobra is still attempting to reconcile its records with PREPA's apparent determination that approximately $6 million in approved invoices has already been paid to Cobra, thereby reducing the Approved Unpaid Invoices from approximately $99 million to $93 million. *See* Obj. ¶ 1, n. 5. It is not necessary for this discrepancy to be resolved for purposes of the Motion; however, for the avoidance of doubt, Cobra reserves all rights with respect thereto.

2

78, 79 (1st Cir. 2004). Until Cobra is in fact *paid* for the work it completed four years ago, it takes no comfort in PREPA's assurances and its lack of an allowed administrative expense claim. More generally, the Objection misstates the applicable law, ignores key facts and history and posits an entirely new rationale for maintaining the stay. Accordingly, Cobra respectfully requests that the Court grant the Motion and overrule the Objection.

> A. **The Government Parties Misstate the Relief Cobra is Seeking and Ignore the Material Changes in Circumstances that Have Occurred**

2. The Government Parties wrongly characterize the Motion as seeking relief under Rule 59 of the Federal Rules of Civil Procedure. *See* Obj. ¶ 7 (citing the "manifest error of law" or "newly discovered evidence" standards under Rule 59). But litigation of the Administrative Expense Motion is simply stayed; there has been no final judgment. Rather, as this Court has recognized consistently, the Court imposed the stay based on its "inherent power to stay proceedings for prudential reasons." Stay Order at 2 (quoting *Microfinancial*, 385 F.3d at 77). As a result, following imposition of the stay, "the court retains the ability to modify or dissolve the stay . . . ." *Green v. Cosby*, 177 F. Supp. 3d 673, 681 (D. Mass. 2016). As the Government Parties later acknowledge, that analysis rests on balancing competing factors, not whether there was a manifest error of law or new evidence discovered. Accordingly, the correct standard requires only that the Court balance the various factors articulated by the First Circuit in *Microfinancial*—in particular, the deleterious effect a nearly four-year stay has had on Cobra and its right to be paid for the postpetition work it successfully completed against the minimal hardship to PREPA—and any material change in circumstances.

3. In their denial that there has been a material change in circumstances, the Government Parties overlook that one of the two key bases for imposing the stay that they have relied on for the last four years has fallen away completely. Throughout these proceedings, the

3

Government Parties used the Criminal Matter to impugn Cobra's actions (even though Cobra was never party to the Criminal Matter), to argue that PREPA may be absolved of liability to Cobra entirely and to justify the stay. Vindicating Cobra's position throughout these proceedings, all of those arguments now have proven unfounded, and the Government Parties do not argue otherwise in the Objection. *See* Mot. ¶ 5.

4. Similarly, the Government Parties offer only a halfhearted rebuttal to Cobra's position that the FEMA Analysis effectively is complete and therefore is no longer a basis for the stay. As described in the Motion, FEMA has concluded its analysis of what costs under the Contracts are eligible for public assistance funding; the only remaining aspect of the FEMA process are the appeals of amounts that FEMA found were not eligible. Mot. ¶ 5. The appeals are invoice-specific, and the outcome of those appeals will have no effect on the invoices that FEMA already has approved, which are the only invoices that are the subject of the Motion. The Government Parties fail to substantiate how the FEMA appeals will assist the Court or the parties in any manner, reduce inefficiencies or mitigate conflicting rulings, particularly when FEMA has already opined on the Approved Unpaid Invoices and, for that matter, all the other invoices not subject to appeal. *See* Obj. ¶ (arguing that the Court will benefit from a "complete and final record" resulting from the conclusion of the FEMA appeals). In short, none of the bases for the stay remain relevant—surely, a material change in circumstance. Thus, the Government Parties turn to new and equally unpersuasive arguments to maintain the stay.

**B.    The Government Parties Ignore Key Facts and History to Bolster their Opposition to the Motion**

5. Instead of accepting the material changes that have occurred recently, the Government Parties primarily argue that Cobra's requested relief is unnecessary because PREPA will pay Cobra once it receives the FEMA funds. If accurate, then it is unclear why the

Government Parties oppose the Motion. In fact, rather than accept that the stay should be lifted or, alternatively, consent to the allowance of an administrative expense claim for the Approved Unpaid Invoices, the Government Parties appear to carefully avoid saying they will pay Cobra the full amount of the Approved Unpaid Invoices. *See, e.g.*, Obj. ¶ 12 (noting that PREPA is "required to pay Cobra the moneys it *receives* on account of the Approved Unpaid Invoices"). Because PREPA determines the amount of funds it requests, PREPA could decide to challenge certain invoices or not submit a request for the full amount of the Approved Unpaid Invoices. Ultimately, Cobra takes no comfort from these promises: they are contrary to PREPA's contractual obligations—obligations that PREPA has all too frequently ignored.

6. Indeed, the Government Parties, while touting the review process being undertaken, conspicuously ignore these contractual obligations. The Second Contract requires PREPA "to review each invoice to determine whether it is in compliance with the requirements set forth in the contract" and make "commercially reasonable efforts to issue such determination and acceptance of work within *7 calendar days* from when such invoice is received," but, in any event, no later than "*15 calendar days from when it is received*." *See* Tax Claims Mot., Ex. B (Layton Declaration), Ex. 1 (Second Contract), Art. 3 (emphasis added). Cobra completed all work in March 2019 and, with limited exceptions, submitted all of its invoices to PREPA on July 17, 2019.[3]

---

[3] Each of Cobra's invoices was accompanied by a package of supporting documents (including descriptions of the services rendered and an itemization, by line item, showing the quantity, billable daily rate, extended daily billable rate and rate per blended lineman for the relevant date, and each invoice was also duly certified by Cobra's authorized representative). Cobra also provided daily work logs, with the total number of workers in the crew that day and a detailed description of the work performed; daily construction crew reports, with the name and position of each of the linemen in the crew; daily sign-in sheets, indicating the presence of each member of the crew and a date-stamped photograph of the crew; and payroll registers to further establish headcount for invoicing and payment purposes.

The limited exceptions were for demobilization fuel (sent on September 17, 2019), rebilling of demobilization (sent on June 26, 2022) and municipal and construction excise taxes (sent on February 7, 2023). None of these invoices are subject to the relief being sought in the Motion.

For four years, PREPA has flouted these postpetition contractual obligations without consequence or care, choosing instead to incur hundreds of millions of dollars in late charges while assuring the Court (and its stakeholders who will bear the cost) that Cobra somehow will be denied its contractual entitlement to these amounts. Obj. ¶ 28. This new supposedly "diligent" review process amounts to more of the same. "Naturally," the Government Parties unconvincingly explain, PREPA could almost immediately submit a request to pay itself from the Available FEMA Funds, as if Cobra's contractual entitlements are meaningless. Obj. ¶ 2.

7. The Government Parties also feebly attempt to explain why these invoices—which PREPA has had now for over four years—were not processed already. The explanation not only appears patently absurd, but engages in a fair share of selective history. *First*, the Government Parties appear to state that PREPA submitted invoices to FEMA for federal funding without having first reviewed the invoices itself. Obj. ¶ 15. But this newly stated position is inconsistent with statements by PREPA and its advisors in discussions with Cobra, as well as the Government Parties' prior pleadings. *See, e.g.*, *Joint Objection of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority to Cobra Acquisitions LLC's Motion for Stay Relief*, filed June 14, 2022 [Case No. 17-3283, ECF No. 21241], ¶ 21 ("PREPA is working to ensure all approved invoices are validated and entered into PREPA's accounts payable system, so that when FEMA funds become available they can be promptly paid to Cobra, as appropriate."). Indeed, Cobra personnel had worked tirelessly to ensure PREPA had all documentation it needed to submit these invoices and ensure FEMA funding.[4]

---

[4] Cobra must rely on PREPA and its advisors to inform them of communications with FEMA, and Cobra does not have firsthand knowledge of what invoices have or have not been submitted to FEMA for public assistance funding. In fact, given the apparent admission that PREPA did not review and validate invoices before submitting

8. In a baffling series of explanations, now that FEMA has reviewed the invoices and obligated federal funding for the Approved Unpaid Invoices, PREPA is separately reviewing and validating the invoices through a process that appears to have been underway since November 2022—putting aside that PREPA has had these invoices for four years. Obj. ¶ 16 (noting that PREPA hired a third-party consultant in November 2022 to review the invoices). But, in the Government Parties' consistent assertion, the FEMA Analysis was meant to avoid precisely these types of duplicative efforts while also narrowing and expediting the potential issues PREPA may have with Cobra's invoices. And to add to the incredulity, PREPA was perfectly capable of complying with its contractual obligations to pay invoices within the 15-day window when Cobra was performing services for PREPA. It is simply not credible that PREPA "naturally" was able to complete the review process for the $130 million in invoices it has paid Cobra previously within its contractual timelines, but requires months (if not years) to do the same for the Approved Unpaid Invoices. *See* Mot. ¶ 37 (noting that PREPA was able to submit a request for reimbursement within a week after FEMA funds became available). Indeed, the rationale for these lengthy extra-contractual "processes" appears to be merely another attempt to delay paying Cobra. But when it comes to paying itself, time is apparently of the essence for PREPA.

9. *Second*, attempting to bolster PREPA's unjustified delay in reviewing the Approved Unpaid Invoices, PREPA engages in a selective recounting of history that tellingly omits key details. As noted previously by Cobra, PREPA, without explanation, stopped paying Cobra's invoices *in the summer of 2019*. *But see* Obj. ¶ 15 ("PREPA halted its review process *in 2020* . . . *in March 2020*, FEMA requested COR3 to stop making payments to PREPA for Cobra invoices.") (emphasis added). During the summer of 2019, Cobra met multiple times with PREPA officials to

---

to FEMA, Cobra is concerned that the de-obligated invoices were a result of a failure by PREPA to ensure all appropriate information was provided to FEMA.

7

resolve PREPA's apparent disputes, but PREPA eventually stopped responding to Cobra in August 2019. *See, e.g.*, Tax Claims Mot. ¶ 18.[5] No explanation is offered for why PREPA stopped paying Cobra in 2019, a year before the Government Parties assert FEMA instructed COR3 to stop making payments to Cobra.

10. PREPA states that it "recommenced" the invoice review and validation process in 2021, but fails to explain *why*. In earlier pleadings in these proceedings, the Government Parties consistently asserted that "PREPA [] disputes hundreds of Cobra invoices with an aggregate face value in excess of $200 million[.]" *Opp'n of the Oversight Bd., AAFAF, and PREPA to Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-4780, ECF No. 2507]. And specifically with respect to the Second Contract, PREPA asserted that there were "over $135 million [in invoices], which have not been validated for payment for various reasons." *See Joint Status Report Pursuant to June 14, 2021 Order Adjourning Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-4780, ECF No. 2563] at 13. PREPA made these assertions, but, since 2019, had failed to engage with Cobra in any substantive discussions to resolve these issues notwithstanding Cobra's repeated attempts to do so. Indeed, it was not until the August 4, 2021 hearing that, after counsel for Cobra corrected counsel for the Government Parties' gross mischaracterization that "PREPA and Cobra have engaged in substantial back and forth communications with respect to the outstanding invoices" (Aug. 4, 2021 Hr'g Tr. 63:8-11) and the Court expressed its concerns and desire to see genuine engagement between the parties (*id.* 70:22-

---

[5] While the Tax Claims Motion details additional requests PREPA made of Cobra in the summer of 2019 with respect to the tax gross-up amount, Cobra's comprehensive efforts to satisfy those requests and PREPA's eventual cessation of communications in August 2019, the same pattern of events is true of other categories of invoices for which PREPA asserted disputes. *See, e.g., Joint Status Report Pursuant to August 10, 2021 Order Denying Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-3283, ECF No. 19835], ¶ 28 (detailing Cobra's efforts to correct PREPA's error on headcount issues since the summer of 2019 and the lack of response thereto until this Court's intervention at the August 2021 hearing).

8

71:2), that the Government Parties began re-engaging with Cobra and holding the "frequent meetings" referenced in the Objection. *See* Obj. ¶ 15. It was a result of these meetings, which came at Cobra's instigation following the Court's intervention, that Cobra had understood PREPA to have already reviewed and validated Cobra's invoices.

        **C.    PREPA's Self-Created Exigencies Should Not Be a Basis for Continuing the Stay**

11.    Finally, the Government Parties urge the Court to maintain the stay because their attention is on confirming PREPA's plan of adjustment, and PREPA should not be forced to divert their resources from that effort. Obj. ¶ 25. But any overlap between confirmation and the allowance of Cobra's claims is a direct result of the Government Parties' actions, not Cobra's. This behavior should not be countenanced by the Court. Cobra has sought repeatedly throughout the duration of the stay to engage with the Government Parties, and it was the Government Parties who chose to delay resolution. It is fundamentally unfair for the consequence of this choice by the Government Parties to fall on Cobra alone.

12.    In support of this position, the Government Parties cite the January 2023 Stay Order as evidence that the "Court therefore intends to resolve the remaining outstanding issues between PREPA and Cobra as a whole *after* Plan confirmation proceedings come to a close." Obj. ¶ 26. But the January 2023 Stay Order contains no mention of confirmation or the Court's "vision." *Id*. In any event, when the Court entered the January 2023 Stay Order, (i) the Government Parties had not acknowledged the Criminal Matter had no remaining relevance to the Administrative Expense Motion, (ii) PREPA was still reviewing the recently issued DMs and (iii) no FEMA funds had yet been obligated. Since the January 2023 Stay Order, all these circumstances have changed. The Government Parties no longer assert that the Criminal Matter has any continuing relevance, the

9

FEMA appeals are in process (and have no relevance to the Approved Unpaid Invoices that are the subject of the Motion) and FEMA has obligated funding for the Approved Unpaid Invoices.

13. Finally, the Government Parties criticize Cobra for failing to engage with them on their settlement proposal and for proposing a "scattershot" approach to resolving Cobra's claims. Obj. ¶ 26. Cobra, however, has clearly stated that it is willing to engage in settlement discussions regarding all disputed claims once the undisputed claims that are the subject of the Motion are paid. If PREPA consents to the allowance of an administrative expense claim in the full amount of the Approved Unpaid Invoices or promptly pays Cobra the full amount under such invoices, then the Motion, in fact, is "unnecessary." But instead of such assurances or prompt payment, Cobra received a barrage of byzantine answers on when it will be paid. Given the way that Cobra has been treated over the past four years, the Government Parties should not be surprised by Cobra's hesitance to discuss potential settlements of its claims—all of which Cobra maintains are valid administrative expenses—until it receives the full amount of the Approved Unpaid Invoices.

14. More generally, while the Government Parties deride Cobra's overall approach, it is simply realistic. The parties have multiple, open disputes of sizeable amounts involving discrete invoice-specific issues that must, in some form or fashion, be resolved. A global settlement, of course, is always possible, but Cobra has faced four years of delay and substantial prejudice from the lack of payment because of the Government Parties' decisions, while PREPA has reaped the benefits of Cobra's services since work was completed in 2019. All parties would be better served by discussing and agreeing to a litigation schedule now, instead of delaying this determination again and PREPA incurring even further interest expense.[6] And, importantly, a litigation schedule

---

[6] To be clear, as Cobra set forth in the Motion, litigation may not be necessary with respect to the Approved Unpaid Invoices as Cobra believes there are no factual or legal disputes on Cobra's entitlement to be paid for the Approved Unpaid Invoices. Cobra sought relief from the stay to seek allowance of an administrative expense claim in respect

10

and litigation does not foreclose the parallel negotiation of a settlement—indeed, it likely encourages a settlement. Caterwauling that PREPA lacks the resources to address Cobra's claims does not change this reality.

15. As throughout these proceedings, the Government Parties are playing for delay and creating obstacles that have no basis in the Contracts. Until the stay is lifted, it is all too apparent that PREPA will continue to drag out any process and any resolution of Cobra's claims as long as possible. The interests of justice demand that the stay be lifted in order to begin to resolve the parties' disputes. Every day increases the substantial prejudice to Cobra, and it is now 895 days since the Stay Order was entered and Cobra was prevented from seeking any redress for its unpaid invoices. While Cobra believes the stay should be lifted entirely, Cobra sought only limited relief from the stay in order to ensure it has an allowed administrative expense claim for the Approved Unpaid Invoices or receives immediate payment for such invoices. Rather than consent to the allowance of such a claim or commit to paying the amount of the Approved Unpaid Invoices immediately, the Government Parties have again chosen delay and excuse.

## CONCLUSION

WHEREFORE, for the reasons set forth in the Motion and herein, Cobra respectfully requests that this Court enter an order, substantially in form attached as **Exhibit A** to the Motion, granting the relief requested therein, and granting Cobra such other relief as this Court deems just and proper.

---

of the Approved Unpaid Invoices and its immediate right to payment of the Available FEMA Funds to satisfy such invoices. Mot. ¶ 41.

Dated: May 30, 2023

Respectfully submitted,

/s/ Carlos R. Rivera-Ortiz
Rafael Escalera Rodríguez (No. 122609)
Sylvia M. Arizmendi (No. 210714)
Carlos R. Rivera-Ortiz (No. 303409)
REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888
Email:  escalera@reichardescalera.com
        arizmendis@reichardescalera.com
        riverac@reichardescalera.com

Ira S. Dizengoff (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
Philip C. Dublin (*pro hac vice*)
Zach D. Lanier (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1000
Fax: (214) 872-1002
Email:  idizengoff@akingump.com
        aqureshi@akingump.com
        pdublin@akingump.com
        zlanier@akingump.com

--and--

Scott M. Heimberg (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email:  tmclish@akingump.com
        sheimberg@akingump.com

*Attorneys for Cobra Acquisitions LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ *Carlos R. Rivera-Ortiz*

**REICHARD & ESCALERA**

Carlos R. Rivera-Ortiz
USDC No. 303409
riverac@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913

PO Box 364148
San Juan, PR 00936-4148
Tel: (787) 777-8888
Fax: (787) 765-4225