*[Proskauer Draft – 5/31/23]*

**AVOIDANCE ACTIONS TRUST AGREEMENT**

between

Puerto Rico Electric Power Authority

and

[●], as trustee of the Avoidance Actions Trust

———————————————————————————————

Dated as of [●], 2023

———————————————————————————————

# TABLE OF CONTENTS

ARTICLE I ......................................................................**Error! Bookmark not defined.**

    1.1    Definitions..................................................................................5

ARTICLE II DECLARATION OF TRUST......................................................7

    2.1    Creation of Trust ......................................................................7
    2.2    Purpose of Avoidance Actions Trust .......................................7
    2.3    Transfer of Avoidance Actions Trust Assets ...........................7
    2.4    No Rights of Debtor..................................................................8
    2.5    Appointment and Acceptance of Trustee..................................8
    2.6    Liquidation of Avoidance Actions Trust Assets.......................8
    2.7    No Reversion to Debtor ............................................................9
    2.8    Incidents of Ownership ............................................................9
    2.9    Privileges..................................................................................9

ARTICLE III AVOIDANCE ACTIONS TRUST BENEFICIARIES ...........10

    3.1    Conflicting Claims ................................................................10
    3.2    Avoidance Actions Trust Beneficiaries ................................10
    3.3    Evidence of Avoidance Actions Trust Interest .....................11
    3.4    Reliance on Debtor for Information.......................................11
    3.5    Transfers of Avoidance Actions Trust Interests ...................11
    3.6    Limited Liability ...................................................................12

ARTICLE IV DURATION AND TERMINATION OF AVOIDANCE ACTIONS TRUST ......12

    4.1    Duration ................................................................................12
    4.2    Effect Dissolution of the Avoidance Actions Trust..............12
    4.3    Continuance of Avoidance Actions Trust for Winding Up ...................12

ARTICLE V ADMINISTRATION OF AVOIDANCE ACTIONS TRUST .............13

    5.1    Payment of Claims, Expenses and Liabilities.......................13
    5.2    Distributions..........................................................................13
    5.3    Distributions After the Effective Date ..................................14
    5.4    Compliance with Laws .........................................................14
    5.5    Fiscal Year ............................................................................14
    5.6    Books and Records ...............................................................14
    5.7    Cash Payments ......................................................................15
    5.8    Insurance...............................................................................15
    5.9    Disputes.................................................................................15
    5.10   Reports from the Trustee ......................................................15

ARTICLE VI TAX MATTERS........................................................................16

    6.1    Tax Treatment.......................................................................16
    6.2    Avoidance Actions Trust Assets Treated as Owned by Avoidance Actions Trust Beneficiaries ................................................................16
    6.3    Tax Reporting .......................................................................17
    6.4    Tax Withholdings by Trustee................................................18

ARTICLE VII POWERS OF AND LIMITATIONS ON THE TRUSTEE ..................................19

    7.1    Trustee............................................................................................................19
    7.2    Powers of the Trustee.....................................................................................19
    7.3    Title III Court.................................................................................................21
    7.4    Exclusive Authority to Pursue Avoidance Actions ........................................21
    7.5    Limitations on Trustee ...................................................................................22
    7.6    Conflicts of Interest.......................................................................................22
    7.7    Establishment of Trust Advisory Board .........................................................22
    7.8    Cooperation with Respect to Claim Allowance...............................................25
    7.9    Agents, Employees and Professionals ............................................................25
    7.10    Investment of Avoidance Actions Trust Monies .............................................25
    7.11    Termination....................................................................................................26

ARTICLE VIII LIABILITY AND INDEMNITY ...................................................................26

    8.1    Liability to Third Persons ..............................................................................26
    8.2    Nonliability for Acts of Others .......................................................................26
    8.3    Exculpation ....................................................................................................27
    8.4    Limitation of Liability....................................................................................27
    8.5    Indemnity .......................................................................................................28
    8.6    Compensation and Expenses...........................................................................28

ARTICLE IX SUCCESSOR TRUSTEE ................................................................................28

    9.1    Resignation ....................................................................................................28
    9.2    Removal .........................................................................................................28
    9.3    Effect of Resignation or Removal...................................................................29
    9.4    Appointment of Successor ..............................................................................29
    9.5    Acceptance of Appointment by Successor Trustee ..........................................29

ARTICLE X MISCELLANEOUS PROVISIONS ...................................................................29

    10.1    Binding on the Debtor.....................................................................................29
    10.2    Governing Law ...............................................................................................30
    10.3    Jurisdiction.....................................................................................................30
    10.4    Severability ....................................................................................................30
    10.5    Notices ...........................................................................................................30
    10.6    Headings ........................................................................................................31
    10.7    Actions Taken on a Date Other Than A Business Day......................................31
    10.8    Relationship to the Plan ..................................................................................31
    10.9    Entire Trust Agreement ..................................................................................32
    10.10    Cooperation....................................................................................................32
    10.11    Amendment and Waiver..................................................................................32
    10.12    Confidentiality ...............................................................................................32
    10.13    Rules of Construction .....................................................................................33
    10.14    Counterparts...................................................................................................33
    10.15    Intention of Parties to Establish Avoidance Actions Trust ..............................33
    10.16    Third Party Beneficiaries ...............................................................................33

137122262v7

<u>AVOIDANCE ACTION TRUST AGREEMENT</u>

**AVOIDANCE ACTIONS TRUST AGREEMENT** dated as of [●], 2023 (this "<u>Trust Agreement</u>"), between the Puerto Rico Electric Power Authority (the "<u>Debtor</u>") and [●], as trustee (together with any successor or additional Trustee appointed under the terms hereof, the "<u>Trustee</u>") of the PREPA Avoidance Actions Trust (the "<u>Avoidance Actions Trust</u>").

<u>ARTICLE I</u> hereof contains a list of capitalized terms used herein.  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Modified Second Amended Title III Joint Plan of Adjustment of the Puerto Rico Electric Power Authority, dated March 1, 2023 (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "<u>Plan</u>").

## **<u>RECITALS</u>**

A.      On June 30, 2016, the President of the United States signed into law legislation passed by Congress, the Puerto Rico Oversight, Management, and Economic Stability Act ("<u>PROMESA</u>"), 48 U.S.C. § 2101 *et seq.*  Title III of PROMESA provide for debt restructurings for Puerto Rico and its instrumentalities.

B.      The Financial Oversight and Management Board (the "<u>FOMB</u>") commenced a Title III case for the Debtor on July 3, 2017 (the "<u>Title III Case</u>").

C.      On [●], 2023, the Court entered the Order and Judgment Confirming Modified Second Amended Title III Joint Plan of Adjustment of the Puerto Rico Electric Power Authority (the "<u>Confirmation Order</u>"), which, among other things, confirmed the Plan and the transactions contemplated thereby.

D.      The Plan provides for the creation of the Avoidance Actions Trust on or before the Effective Date to prosecute the Avoidance Actions and distribute the proceeds thereof, if any, to the GUC Trust in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

E.      The Avoidance Actions Trust is being created on behalf of, and for the benefit of, the Avoidance Actions Trust Beneficiaries.

F.      The Trustee shall have all powers necessary to implement the provisions of this Trust Agreement and administer the Avoidance Actions Trust, including the power to:   (i) prosecute for the benefit of the Avoidance Actions Trust Beneficiaries through Trust Professionals any Avoidance Action or other causes of action that may from time to time be held by the Avoidance Actions Trust; (ii) preserve, maintain and liquidate the Avoidance Actions Trust Assets; (iii) distribute the Avoidance Actions Trust proceeds to the GUC Trust; and (iv) otherwise perform the functions and take the actions provided for in this Trust Agreement or permitted in the Plan and/or the Confirmation Order or in any other agreement executed pursuant to the Plan, in each case subject to the provisions of <u>ARTICLE VII</u> hereof regarding limitation on the Trustee and the oversight and consent rights of the Trust Advisory Board and the Title III Court as provided for herein.

G.     The Avoidance Actions Trust is organized for the sole purpose of liquidating and distributing the Avoidance Actions Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Avoidance Actions Trust.

H.     The Avoidance Actions Trust is intended to qualify as a "Liquidating Trust" under the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder (the "Treasury Regulations"), specifically Treasury Regulations section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes with the Avoidance Actions Trust Beneficiaries treated as the grantors and owners of the Avoidance Actions Trust.

I.     Pursuant to the Plan, the Avoidance Actions Trust is intended to be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.

J.     In accordance with the Plan, the Avoidance Actions Trust is further intended to be exempt from the requirements of (i) the Securities Exchange Act of 1934, as amended, and any applicable state and local laws requiring registration or qualification of securities, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein, the Debtor and the Trustee hereby agree as follows:

## AGREEMENT

## ARTICLE I

1.1     Definitions.

(a)     "**Administrative Funding**" shall have the meaning ascribed to such term in Section 2.3.

(b)     "**Avoidance Actions Trust**" shall have the meaning ascribed to such term in the Preamble.

(c)     "**Book Entry System**" shall have the meaning ascribed to such term in Section 3.3.

(d)     "**Budget**" shall have the meaning ascribed to such term in Section 5.10(b).

(e)     "**Confidential Party**" shall have the meaning ascribed to such term in Section 10.12.

(f)     "**Confirmation Order**" shall have the meaning ascribed to such term in the Recitals.

137122262v7

(g)   **"Creditor Directors"** shall have the meaning ascribed to such term in Section 7.7(b).

(h)   **"Debtor"** shall have the meaning ascribed to such term in the Preamble.

(i)   **"Dispute Resolution"** shall have the meaning ascribed to such term in Section 3.1.

(j)   **"Disputed Claim"** shall have the meaning ascribed to such term in the Plan but shall include, in the period prior to the Debtor's deadline to object to claims, all Claims that have not been Allowed.

(k)   **"Distribution Date"** shall have the meaning ascribed to such term in Section 5.2(b).

(l)   **"Exchange Act"** shall have the meaning ascribed to such term in Section 3.5(c).

(m)   **"FOMB"** shall have the meaning ascribed to such term in the Preamble.

(n)   **"FOMB Directors"** shall have the meaning ascribed to such term in Section 7.7(b).

(o)   **"Indemnified Party"** shall have the meaning ascribed to such term in Section 8.5.

(p)   **"IRC"** shall have the meaning ascribed to such term in the Recitals.

(q)   "**Liquidating Trust**" shall have the meaning ascribed to such term in Recitals.

(r)   **"Permissible Investments"** shall have the meaning ascribed to such term in Section 7.10.

(s)   **"Plan"** shall have the meaning ascribed to such term in the Preamble.

(t)   "**PREPA Avoidance Actions Trust**" shall have the meaning ascribed to such term in Section 2.1.

(u)   **"Privileges"** shall have the meaning ascribed to such term in Section 2.9(a).

(v)   **"PROMESA"** shall have the meaning ascribed to such term in the Recitals.

(w)   **"SEC"** shall have the meaning ascribed to such term in Section 3.5(c).

(x)   **"Title III Case"** shall have the meaning ascribed to such term in the Recitals.

137122262v7

(y)    **"Treasury Regulations"** shall have the meaning ascribed to such term in the Recitals.

(z)    **"Trust Advisory Board"** shall have the meaning ascribed to such term in Section 7.7(a).

(aa)    **"Trust Agreement"** shall have the meaning ascribed to such term in the head of this Trust Agreement.

(bb)    **"Trust Disbursing Agent"** shall have the meaning ascribed to such term in Section 5.2(a).

(cc)    **"Trust Parties"** shall have the meaning ascribed to such term in Section 3.4.

(dd)    **"Trust Professionals"** shall have the meaning ascribed to such term in Section 7.9(a).

(ee)    **"Trustee"** shall have the meaning ascribed to such term in the Preamble.

## ARTICLE II

## DECLARATION OF TRUST

2.1    Creation of Trust.  Effective as of the Effective Date, the Debtor and the Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of Title III of PROMESA, hereby constitute and create the Avoidance Actions Trust, which shall bear the name "PREPA Avoidance Actions Trust." In connection with the exercise of the Trustee's power hereunder, the Trustee may use this name or such variation thereof as the Trustee sees fit.

2.2    Purpose of Avoidance Actions Trust.  The sole purpose of the Avoidance Actions Trust is to implement the Plan on behalf, and for the benefit, of the Avoidance Actions Trust Beneficiaries, and to serve as a mechanism for liquidating, converting to Cash and distributing the Avoidance Actions Trust Assets to the GUC Trust in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Avoidance Actions Trust.

2.3    Transfer of Avoidance Actions Trust Assets.  On the Effective Date, the Debtor shall transfer, for the sole benefit of the Avoidance Actions Trust Beneficiaries, and in accordance with the Plan and the Confirmation Order, all the Avoidance Actions Trust Assets to the Avoidance Actions Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons to the maximum extent contemplated by and permissible pursuant to the Plan and Confirmation Order.  In addition, the Debtor shall fund the Avoidance Actions Trust, on a one time basis, in the amount of One Million U.S. Dollars ($1,000,000) (the "Administrative Funding") by transferring such funds to the Avoidance Actions Trust within ten (10) Business Days of receiving written transfer instructions for such purpose

137122262v7

from the Trustee.  Any portion of the Administrative Funding that is not used to fund the activities of the Avoidance Actions Trust shall be distributed in accordance with <u>Section 5.2</u>.

2.4   <u>No Rights of Debtor</u>.  Following the Effective Date and the transfer of the Avoidance Actions Trust Assets to the Avoidance Actions Trust, the Debtor shall have no authority or control over the Avoidance Actions Trust Assets, including no rights to appear in, prosecute, compromise, or otherwise direct the litigation or settlement of the Avoidance Actions, except as may be necessary to ensure, and for the sole purpose of ensuring, the full transfer of control and authority over the Avoidance Actions Trust Assets to the Avoidance Actions Trust.  The Debtor will take whatever actions may be reasonably necessary, including seeking the amendment of complaints or the restatement of tolling agreements, to ensure that all such authority and control over the Avoidance Actions and other Trust Assets is so transferred to the Trust.  The limitations on the Debtor's rights in this subsection shall not prejudice the ability of the Debtor to appear in or provide testimony in Avoidance Actions or other litigation in order to fulfill the Debtor's cooperation obligations set forth in <u>Section 10.10</u>.

2.5   <u>Appointment and Acceptance of Trustee</u>.  As set forth in the Confirmation Order, the members of the Trust Advisory Board hereby designate [●] to serve as the initial Trustee under the Plan.  The Trustee accepts the Avoidance Actions Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery to the Trustee, on behalf, and for the benefit, of the Avoidance Actions Trust Beneficiaries, by the Debtor of all its right, title and interest in the Avoidance Actions Trust Assets, upon the terms and subject to the conditions set forth herein, in the Plan and in the Confirmation Order.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Avoidance Actions Trust, including the Treasury Regulations, and not otherwise.  The Trustee shall have the authority to bind the Avoidance Actions Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

2.6   <u>Liquidation of Avoidance Actions Trust Assets</u>.  The Trustee shall, in an expeditious but commercially reasonable manner and subject to the provisions of the Plan (including Article XXIII of the Plan), the Confirmation Order and the other provisions of this Trust Agreement, liquidate and convert to Cash the Avoidance Actions Trust Assets, make timely distributions in accordance with the terms hereof and the Plan and not unduly prolong the existence of the Avoidance Actions Trust.  The Trustee shall exercise reasonable business judgment and liquidate the Avoidance Actions Trust Assets to maximize net recoveries; <u>provided</u>, <u>however</u>, that the Trustee shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the maximization of recoveries and the determinations and actions of the Trustee shall in all cases be subject to the limitations provided elsewhere herein.  On the terms and subject to the conditions and limitations of this Trust Agreement, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any of or all the claims, rights or causes of action of the Avoidance Actions Trust or through the sale or other disposition of the Avoidance Actions Trust Assets (in whole or in combination, and including the sale of any claims, rights or causes of action of the Avoidance Actions Trust).  The Trustee may incur any reasonable and necessary expenses in connection with the liquidation or conversion into Cash of the Avoidance Actions Trust Assets or in connection with the administration of the Avoidance Actions Trust and, to the extent that any Administrative Funding, is available, such expenses shall be deducted first from the Administrative Funding, and

8

thereafter from the other Avoidance Actions Trust Assets, subject in each case to the prior written approval of the Trust Advisory Board.

2.7     No Reversion to Debtor.  In no event shall any part of the Avoidance Actions Trust Assets revert to or be distributed to the Debtor or the Reorganized Debtor.

2.8     Incidents of Ownership.  The Avoidance Actions Trust Beneficiaries shall be the sole beneficiaries of the Avoidance Actions Trust and the Avoidance Actions Trust Assets, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in Section 7.2.

2.9     Privileges.

(a)     On the Effective Date, all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtor solely with respect to the Avoidance Actions Trust Assets ("Privileges") shall be transferred, assigned and delivered to the Avoidance Actions Trust, without waiver and in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtor, and shall vest in the Trustee solely in its capacity as such (and any other Person whom the Trustee, with the consent of the Trust Advisory Board, may designate; it being understood that, as of the date of this Trust Agreement, the Trustee shall designate the Trust Advisory Board, solely in its capacity as such, as well as any other Person designated in this Trust Agreement).  The Debtor and the Trustee are authorized to take all necessary actions to effectuate the sharing and vesting of such Privileges.

(b)     Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the FOMB, the Debtor and the Trustee are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure to the Trustee, the Avoidance Actions Trust's professionals, or the Trust Advisory Board of the FOMB's or the Debtor's information subject to attorney-client privileges, work product protections or other immunities or protections from disclosure, or by disclosure among the FOMB, the Debtor, the Trustee and/or the Trust Advisory Board of information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure jointly held by the FOMB, the Debtor, the Trustee and/or the Trust Advisory Board.  The Trustee shall be obligated to respond, on behalf of the Debtor, and with its reasonable cooperation, to all information demands with respect to the Avoidance Actions.  The Trustee may waive, and/or disclose documents subject to, Privileges that are held by the FOMB and/or the Debtor (including the deliberative process privilege) only with the prior written consent of (i) the applicable holder(s) of such Privilege (i.e., the FOMB and/or the Debtor, as the case may be), and (ii) the Trust Advisory Board, and only to the extent the Trustee reasonably determines in good faith that doing so is in the best interests of the Avoidance Actions Trust and its beneficiaries.

(c)     Notwithstanding anything in Section 2.9(b) to the contrary, the Trustee may disclose information that is subject to attorney-client privileges, work product protections or other immunities held by the FOMB or the Debtor (i) pursuant to an order of a court of competent jurisdiction, subject to the procedure described in the next sentence insofar as it applies, or (ii) as

9

otherwise required by law. If the Trustee or the Trust Advisory Board receives a request from a third party to disclose information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure that are jointly held with the Trustee and/or the Trust Advisory Board, the party or parties who receives such request will (A) pursue all reasonable steps to maintain the applicable privileges, protections or immunities from disclosure, including, if necessary, to maintain the privileges, protections or immunities from disclosure by seeking a protective order against and/or otherwise objecting to the production of such material, (B) notify the Trustee or the Trust Advisory Board, as the case may be, (C) notify AAFAF, (D) allow the Trustee or the Trust Advisory Board, as the case may be, reasonable time under the circumstances to seek a protective order against and/or otherwise object to the production of such material, and (E) unless required by law, not disclose the materials in question unless and until any objection raised by the Trustee or the Trust Advisory Board is resolved in favor of disclosure. For the avoidance of doubt, this Section 2.9(c) does not limit the Trustee's obligations under Section 2.9(b) to seek, and be granted, AAFAF and Trust Advisory Board consent prior to waiving Privileges held by the Debtor or Avoidance Action Trust.

## ARTICLE III

## AVOIDANCE ACTIONS TRUST BENEFICIARIES

3.1     Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to an Avoidance Actions Trust Interest, the Trustee shall be entitled, in its sole and absolute discretion, to refuse to comply with any such conflicting claims or demands.  In so refusing, the Trustee, at its sole election, may elect to make no payment or distribution with respect to the Avoidance Actions Trust Interest subject to the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Title III Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands.  The Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Title III Court (or such other court of proper jurisdiction) or (b) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the Avoidance Actions Trust and the Trustee (the occurrence of either (a) or (b) in this Section 3.1 being referred to as a "Dispute Resolution").  Promptly after a Dispute Resolution is reached, the Trustee shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution.  Any payment of any interest or income should be net of any taxes attributable thereto in accordance with Section 6.4.

3.2     Avoidance Actions Trust Beneficiaries.  The interest of an Avoidance Actions Trust Beneficiary is hereby declared and shall be in all respects personal property.  An Avoidance Actions Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Avoidance Actions Trust or the Avoidance Actions Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.  No surviving spouse, heir or devisee of any deceased Avoidance Actions Trust Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Avoidance Actions Trust Assets, but the whole title to the Avoidance Actions Trust Assets shall be vested in the Trustee and the sole interest of each Avoidance Actions Trust Beneficiary shall

137122262v7

be the rights and benefits given to such Person under this Trust Agreement, the Confirmation Order and the Plan.

3.3     Evidence of Avoidance Actions Trust Interest. Ownership of an Avoidance Actions Trust Interest in the Avoidance Actions Trust will be evidenced by the recording of such ownership in an electronic book-entry system (the "Book Entry System") maintained either by the Avoidance Actions Trust or an agent of the Avoidance Actions Trust and containing information provided by the Debtor or an agent of the Debtor.  An Avoidance Actions Trust Beneficiary shall be deemed the "holder of record" (hereinafter "holder") of such Avoidance Actions Trust Beneficiary's Avoidance Actions Trust Interest(s) for purposes of all applicable United States federal and state laws, rules and regulations, including all applicable Commonwealth laws, rules and regulations. The Trustee shall, upon the written request of a holder of an Avoidance Actions Trust Interest, provide reasonably adequate documentary evidence of such holder's Avoidance Actions Trust Interest, as indicated in the Book Entry System.  The expense of providing such documentation shall be borne by the requesting holder.

3.4     Reliance on Debtor for Information.  The (a) Trustee, (b) individual(s) comprising the Trustee, as the case may be, (c) Trust Advisory Board, and (d) members of the Trust Advisory Board (each, a "Trust Party" and, collectively, the "Trust Parties") shall be entitled to rely on information supplied by the Debtor and its agents (including the Distribution Agent) concerning the Avoidance Actions Trust Interests, and shall not be held liable to any party for any incompleteness or inaccuracy of such information.

3.5     Transfers of Avoidance Actions Trust Interests.

(a)     General.  Avoidance Actions Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law.

(b)     Book Entry System.  The Book Entry System shall include a register (which may be electronic) setting forth the names and addresses of the Avoidance Actions Trust Beneficiaries, and the amount and class of their Avoidance Actions Trust Interests from time to time.  Any transfer or assignment of an Avoidance Actions Trust Interest by will, intestate succession or operation of law shall not be effective unless and until such transfer or assignment is recorded in the Book Entry System, which shall be completed as soon as practicable.  Subject to Section 3.5(d), the entries in the Book Entry System shall be conclusive absent manifest error, and the Avoidance Actions Trust and the Trustee shall treat each Person whose name is recorded in the Book Entry System pursuant to the terms hereof as the owner of Avoidance Actions Trust Interests indicated therein for all purposes of this Trust Agreement, notwithstanding notice to the contrary.

(c)     Registration.  In accordance with the Plan, the Trust is intended to be exempt from the requirements of (i) the Securities Exchange Act of 1934, as amended, and any applicable state and local laws requiring registration or qualification of securities, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.  If the Trustee, with the prior written consent of the Trust Advisory Board and upon advice of counsel, determines that any class of Avoidance Actions Trust Interests may be subject to registration

11

pursuant to Section 12 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Trustee shall pursue relief from such registration by obtaining either an exemptive order, a no-action letter or an interpretive letter from the Securities and Exchange Commission (the "SEC") or its staff or, absent its ability to achieve that objective or in lieu thereof, shall register such class pursuant to Section 12 of the Exchange Act (it being understood and agreed that the Trustee with the prior written consent of the Trust Advisory Board shall be authorized, among other things, to register such class and to seek relief from one or more of the requirements then applicable subsequent to such registration and to de-register such class).  Any expenses that are associated with such application for relief and/or registration shall be paid first from the Administrative Funding, and thereafter from the other Avoidance Actions Trust Assets, subject in each case to the prior written approval of the Trust Advisory Board.

(d)     Further Limitations on Transfer.  Notwithstanding any other provision to the contrary, the Trustee may disregard any purported transfer or assignment of Avoidance Actions Trust Interests by will, intestate succession or operation of law if sufficient necessary information (as reasonably determined by the Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the Trustee.

3.6     Limited Liability.  No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of any rights or privileges of any Avoidance Actions Trust Beneficiary, shall give rise to any liability of such Avoidance Actions Trust Beneficiary solely in its capacity as such, whether such liability is asserted by the Debtor, by creditors, employees, or equity interest holders of the Debtor, or by any other Person (except to the extent of the Avoidance Actions Trust Beneficiary's fraud, gross negligence or willful misconduct).  Avoidance Actions Trust Beneficiaries are deemed to receive the Avoidance Actions Trust Assets in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims, without further obligation or liability of any kind (except to the extent of the Avoidance Actions Trust Beneficiary's fraud, gross negligence or willful misconduct), but subject to the provisions of this Trust Agreement, the Confirmation Order and the Plan.

**ARTICLE IV**

**DURATION AND TERMINATION OF AVOIDANCE ACTIONS TRUST**

4.1     Duration.  The Avoidance Actions Trust shall become effective upon the Effective Date of the Plan and shall remain and continue in full force and effect until discharged or dissolved as provided for in Section XXIII.O of the Plan.

4.2     Effect Dissolution of the Avoidance Actions Trust.  Upon the discharge or dissolution of the Avoidance Actions Trust pursuant to Section 4.1, all remaining Avoidance Actions Trust Assets shall be transferred to the GUC Trustee.

4.3     Continuance of Avoidance Actions Trust for Winding Up.  After the dissolution of the Avoidance Actions Trust and solely for the purpose of liquidating and winding up the affairs of the Avoidance Actions Trust, the Trustee shall continue to act as such until its duties have been fully performed.  Upon distribution of all the remaining Avoidance Actions Trust Assets to the

12

GUC Trustee, the Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee. At the Trustee's discretion, all of such records and documents may be destroyed at any time following the date that is six (6) years after the final distribution of the Avoidance Actions Trust Assets, subject to any joint prosecution and common interests agreement(s) to which the Trustee may be party. Provisions with respect to the destruction of documents in this Section 4.3 shall not limit the Trustee's right, prior to the dissolution of the Avoidance Actions Trust, to destroy documents that the Trustee considers no longer necessary to retain, subject to applicable law, the Plan, the Confirmation Order and this Trust Agreement.

**ARTICLE V**

**ADMINISTRATION OF AVOIDANCE ACTIONS TRUST**

5.1     Payment of Claims, Expenses and Liabilities. Subject to the Budget from time to time approved by the Trust Advisory Board in accordance with Section 4.13(b), and in accordance with Sections 7.7(j), 7.9(b),  and 8.6, and except as otherwise provided herein, the Trustee shall use the Avoidance Actions Trust Assets:  (a) to pay reasonable costs and expenses of the Avoidance Actions Trust (including any taxes imposed on the Avoidance Actions Trust, the actual reasonable out-of-pocket fees and expenses incurred by Trust Professionals in connection with the administration and liquidation of the Avoidance Actions Trust Assets, as provided in Section 7.9, and the preservation of books and records of the Avoidance Actions Trust); (b) to satisfy other obligations or other liabilities incurred or assumed by the Avoidance Actions Trust (or to which the Avoidance Actions Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order or this Trust Agreement, including reasonable fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Avoidance Actions Trust Assets and the reasonable costs of investigating, prosecuting, resolving and/or settling any Claims; (c) as reasonably necessary to meet contingent liabilities and to maintain the value of the Avoidance Actions Trust Assets during liquidation; and (d) to satisfy any other obligations of the Avoidance Actions Trust expressly set forth in the Plan, this Trust Agreement, and the Confirmation Order. The costs, expenses and other obligations or other liabilities set forth in this Section 5.1 shall be deducted first from the Administrative Funding, and thereafter from the other Avoidance Actions Trust Assets, subject in each case to the prior written approval of the Trust Advisory Board.

5.2     Distributions.

(a)     Generally. All distributions shall be made to the GUC Trust, at the election and direction of the Trustee, the Debtor and AAFAF by the Distribution Agent appointed by the Debtor in accordance with the terms and provisions of Article XXIV of the Plan (the "Trust Disbursing Agent"). The Trust Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entity or Entities entitled to receive the same. The Trust Disbursing Agent shall not hold an economic or beneficial interest in such property. The Debtor will direct the Trust Disbursing Agent to share information with and otherwise reasonably cooperate with the Trustee to generate administrative efficiencies and reduce duplication of effort in the distribution processes contemplated hereunder and under the Plan, including by sharing claimant tax information with the Trustee and providing access to the Debtor's Claims register.

137122262v7

(b)      Distributions by the Trust Disbursing Agent. The Trust Disbursing Agent, on behalf of the Trustee, is required to distribute to the GUC Trust, on a monthly basis (each such date, a "Distribution Date"), in accordance with the terms of the Plan, all unrestricted Cash then on hand (including any Cash received from the Debtor on the Effective Date), except (i) Cash reserved pursuant to this Trust Agreement to fund the activities of the Avoidance Actions Trust, and (ii) such amounts as are allocable to or retained to pay reasonable incurred or anticipated expenses (including any taxes imposed on or payable by the Avoidance Actions Trust in respect of the Avoidance Actions Trust Assets); provided, however, that the Trust Disbursing Agent shall not be required to make a distribution pursuant to this Section 5.2 if the aggregate net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Trustee, with the consent of the Trust Advisory Board, in accordance with applicable law, and so long as such aggregate net amount is less than One Million Dollars ($1,000,000.00).

5.3      Distributions After the Effective Date.  Distributions made after the Effective Date to the GUC Trust on account of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article XXIII and Article XXIV of the Plan.

5.4      Compliance with Laws.  Any and all distributions of Avoidance Actions Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

5.5      Fiscal Year.  Except for the first and last years of the Avoidance Actions Trust, the fiscal year of the Avoidance Actions Trust shall be the calendar year.  For the first and last years of the Avoidance Actions Trust, the fiscal year of the Avoidance Actions Trust shall be such portion of the calendar year that the Avoidance Actions Trust is in existence.

5.6      Books and Records.

(a)      The Trustee shall retain and preserve the Debtor's books, records and files that shall have been delivered to or created by the Trustee.  Subject to Section 4.3, the Trustee shall maintain, in respect of the Avoidance Actions Trust, the Avoidance Actions Trust Beneficiaries and the GUC Trust books and records relating to the assets and the income of the Avoidance Actions Trust and the payment of expenses of, liabilities of, and claims against or assumed by, the Avoidance Actions Trust and the Trustee, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Trust Agreement and applicable provisions of law, including applicable tax, securities and other federal and state laws.

(b)      Except as otherwise provided herein or in the Plan, nothing in this Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Avoidance Actions Trust, or as a condition for making any payment or distribution out of the Avoidance Actions Trust Assets.  The Trustee shall provide FOMB and any member of the Trust Advisory Board with access to such books and records during normal business hours as may be reasonably requested with three (3) Business Days' advance notice.  The GUC Trustee shall have the right upon thirty (30) days' prior written notice delivered to the Trustee

14

to inspect such books and records; provided, however, that if so requested, all costs associated with such inspection shall be paid in advance by such requesting Avoidance Actions Trust Beneficiary and such Avoidance Actions Trust Beneficiary shall have entered into a confidentiality agreement reasonably satisfactory in form and substance to the Trustee.

5.7     Cash Payments.  All distributions required to be made to the GUC Trust shall be made in Cash denominated in United States dollars by checks drawn on a domestic bank selected by the Trustee or, at the option of the Trustee, by wire transfer from a domestic bank selected by the Trustee or as otherwise required or provided in applicable agreements.

5.8     Insurance.  The Avoidance Actions Trust shall maintain customary insurance coverage for the protection of the Trustee, the members of the Trust Advisory Board, employees and any such other persons serving as administrators and overseers of the Avoidance Actions Trust on and after the Effective Date.  The Trustee also may obtain insurance coverage it deems necessary and appropriate with respect to real and personal property which may become Avoidance Actions Trust Assets, if any.

5.9     Disputes.  To the extent a dispute arises between the Trustee and the Trust Advisory Board concerning the performance of any of the powers, duties, and/or obligations herein, the Trustee or the Trust Advisory Board may file a motion and/or other pleadings with the Title III Court and obtain advice and guidance or such other relief as may be appropriate concerning a resolution of the matter(s) in dispute between the parties.  In the event of a dispute, the Trustee and the Trust Advisory Board, as applicable, shall have the right to engage legal counsel to advise it with respect to the matter(s) in dispute and the reasonable fees and expenses of such legal counsel shall be reimbursed by the Trustee first from the Administrative Funding, and thereafter from any other unrestricted Cash in the Avoidance Actions Trust, subject in each case to the prior written approval of the Trust Advisory Board and subject to Section 8.5.  A motion and/or other pleading described in this Section 5.9 filed by the Trust Advisory Board may only be filed upon the consent of a majority of its members.

5.10     Reports from the Trustee

(a)     The Trustee shall deliver reports to members of the Trust Advisory Board, the Debtor and the FOMB not later than thirty (30) days following the end of each fiscal quarter, or less frequently as may be agreed upon between the Trustee and the Trust Advisory Board.  Such reports shall specify in reasonable detail (i) the status of any Causes of Action, Claims and litigation involving the Avoidance Actions Trust or the Avoidance Actions Trust Assets, including Avoidance Actions, including any settlements entered into by the Avoidance Actions Trust, (ii) the costs and expenses of the Avoidance Actions Trust that are incurred (including any taxes imposed on the Avoidance Actions Trust or actual reasonable out-of-pocket fees and expenses incurred by Trust Professionals in connection with the administration and liquidation of the Avoidance Actions Trust Assets and preservation of books and records as provided in Section 5.6) during the preceding fiscal quarter and the remaining amounts (if any) of the Administrative Funding, (iii) the amounts listed in clause (ii) incurred since the Effective Date, (iv) the amount of Cash and other assets received by the Avoidance Actions Trust during the prior fiscal quarter, (v) the aggregate amount of Cash and other assets received by the Avoidance Actions Trust since the Effective Date, (vi) the calculation of the estimated amount of the Cash and other assets to be

15

distributed on the next Distribution Date, including any Cash on hand that is not to be distributed pursuant to Section 5.2, (vii) the aggregate amount of distributions from the Avoidance Actions Trust to the GUC Trust since the Effective Date, and (viii) such other information as the Trust Advisory Board may reasonably request from time to time.  The Trustee also shall timely prepare, file and distribute such additional statements, reports and submissions (A) as may be necessary to cause the Avoidance Actions Trust and the Trustee to be in compliance with applicable law, or (B) as may be otherwise reasonably requested from time to time by the Trust Advisory Board.

(b)      The Trustee shall prepare and submit to the Trust Advisory Board for approval an annual plan and budget at least thirty (30) days prior to the commencement of each fiscal year of the Avoidance Actions Trust; provided, however, that the first such annual plan and budget shall be submitted no later than ninety (90) days after the Effective Date of the Plan.  Such annual plan and budget shall set forth in reasonable detail:  (i) the Trustee's anticipated actions to administer and liquidate the Avoidance Actions Trust Assets; and (ii) the anticipated expenses, including the expenses of Trust Professionals, associated with conducting the affairs of the Avoidance Actions Trust.  Such annual plan and budget shall be updated and submitted to the Trust Advisory Board for review and approval on a quarterly basis, and each such quarterly update shall reflect the differences between the anticipated actions described in the annual report and actual operations of the Avoidance Actions Trust to date.  Any such annual plan and budget as approved by the Trust Advisory Board is referred to herein as the "Budget".  All actions by the Trustee must be substantially consistent with the then current Budget, provided that the Trustee may take action outside the Budget with the prior approval of the Trust Advisory Board.

(c)      In accordance with the Plan, the Avoidance Actions Trust is intended to be exempt from the requirements of (i) the Securities Exchange Act of 1934, as amended, and any applicable state and local laws requiring registration of securities, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to Sections 7(a) and 7(b) of that Investment Company Act of 1940, as amended, and section 1145 of the Bankruptcy Code.  Notwithstanding the forgoing, if required to do so, and until such time as the Avoidance Actions Trust is dissolved in accordance with Section XXIII.O of the Plan (or otherwise in accordance with this Trust Agreement), the Avoidance Actions Trust shall file with (or furnish to, as the case may be) the SEC such periodic reports as the Avoidance Actions Trust is required to file pursuant to the Exchange Act.

## ARTICLE VI

## TAX MATTERS

6.1      Tax Treatment.  For all United States federal income tax purposes, all parties (including the Debtor, the Avoidance Actions Trustee and the Avoidance Actions Trust Beneficiaries) will treat the Avoidance Actions Trust as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.

6.2      Avoidance Actions Trust Assets Treated as Owned by Avoidance Actions Trust Beneficiaries.  For all United States federal income tax purposes, all parties (including the Debtor, the Trustee, and the Avoidance Actions Trust Beneficiaries) shall treat the transfer of the Avoidance Actions Trust Assets to the Avoidance Actions Trust as (a) a transfer of the Avoidance

16

Actions Trust Assets (subject to any obligations relating to those assets) directly to the Avoidance Actions Trust Beneficiaries, *followed by* (b) the transfer by such beneficiaries to the Avoidance Actions Trust of the Avoidance Actions Trust Assets in exchange for Avoidance Actions Trust Interests. Accordingly, the Avoidance Actions Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Avoidance Actions Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. The establishment of the Avoidance Actions Trust under United States law shall not, by itself, be deemed to subject the Avoidance Actions Trust Beneficiaries to United States federal income taxes.

6.3     Tax Reporting.

(a)     The Trustee shall prepare and file (or cause to be prepared and filed) tax returns for the Avoidance Actions Trust treating the Avoidance Actions Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article V. To the extent and in the manner required by applicable law, the Trustee also will annually send to each holder of an Avoidance Actions Trust Interest a separate statement regarding the receipts and expenditures of the Avoidance Actions Trust as relevant for United States federal income tax purposes and will instruct all such holders to use such information in preparing their United States federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their United States federal income tax returns. The Trustee also shall file (or cause to be filed) any other statement, return or disclosure relating to the Avoidance Actions Trust that is required by any governmental unit.

(b)     The Trustee, in consultation with the Trust Advisory Board, will then in good faith value all other Avoidance Actions Trust Assets, and shall make all such values (including the Tax Refund values) publicly available from time to time (by posting on a website or otherwise), to the extent relevant, and such values shall be used consistently by all parties to the Avoidance Actions Trust (including the Debtor, the Trustee, and the Avoidance Actions Trust Beneficiaries) for all United States federal income tax purposes.

(c)     To the extent and in the manner required by applicable law, allocations of Avoidance Actions Trust taxable income among the Avoidance Actions Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Avoidance Actions Trust had distributed all its assets to the holders of the Avoidance Actions Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Avoidance Actions Trust. Similarly, to the extent and in the manner required by applicable law, taxable loss of the Avoidance Actions Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Avoidance Actions Trust Assets. To the extent and in the manner required by applicable law, the tax book value of the Avoidance Actions Trust Assets for purposes of this Section 6.3(c) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

137122262v7

(d)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall (i) timely elect to treat any reserve for disputed claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Trustee and the Avoidance Actions Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)     The Trustee shall be responsible for payment, out of the Avoidance Actions Trust Assets, of any taxes imposed on the Avoidance Actions Trust or its assets.  If, and to the extent, any Cash retained on account of Disputed Claims is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Trustee as a result of the resolution of such Disputed Claims.

6.4     <u>Tax Withholdings by Trustee</u>.  The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of Avoidance Actions Trust Interests.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of Avoidance Actions Trust Interests for all purposes of the Trust Agreement, it being understood that any such amount withheld shall reduce the amount actually realized by the applicable holder upon distribution.  The Trustee shall be authorized to collect such tax information from the holders of Avoidance Actions Trust Interests (including social security numbers or other tax identification numbers) as in its sole discretion the Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the Trust Agreement.  In order to receive distributions under the Plan, all holders of Avoidance Actions Trust Interests shall be required to identify themselves to the Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes.  To the extent the Distribution Agent collects such tax information in performance of its duties under the Plan, the Debtor agrees to direct the Distribution Agent to provide such tax information concerning Avoidance Action Trust Beneficiaries to the Trust Disbursing Agent for use in accordance with this Trust Agreement.  This identification requirement generally applies to all holders of Avoidance Actions Trust Interests, including those who hold their Claims in "street name."  The Trustee may refuse to make a distribution to any holder of a Avoidance Actions Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered may treat such holder's Avoidance Actions Trust Interests as disputed; <u>provided</u>, <u>however</u>, that if such information is not furnished to the Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the holder of such Avoidance Actions Trust Interest; and, <u>provided</u> <u>further</u>, <u>however</u>, that, upon the delivery of such information by a holder of a Avoidance Actions Trust Interest, the Trustee shall make such distribution to which the holder of the Avoidance Actions Trust Interest is entitled, without additional interest

137122262v7

occasioned by such holder's delay in providing tax information; provided further, however, that if the Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Trustee for such liability (to the extent such amounts were actually distributed to such holder).

Notwithstanding the above, and without limiting any of the other obligations of the Debtor or rights of the Trustee described herein, (a) the Debtor shall be required to supply to the Trustee such tax information of the holders of Avoidance Actions Trust Interests that is in the possession or control of the Debtor or any of its agents, representatives or professionals, including the Distribution Agent and that the Trustee may reasonably request be provided to it by the Debtor, and (b) the Trust Parties shall be entitled to rely on, and shall not be held liable for any omission or inaccuracy with respect to, such tax information so supplied to the Trustee.

## ARTICLE VII

## POWERS OF AND LIMITATIONS ON THE TRUSTEE

7.1   Trustee.

(a)   "Trustee" means [●] so long as it continues in office, and all other Person(s) who have been duly elected and qualify as Trustee of the Avoidance Actions Trust hereunder pursuant to Section 2.4 or ARTICLE IX.  Subject to ARTICLE IX, the Trustee shall hold office until disability, death, resignation, or the termination of the Avoidance Actions Trust in accordance with the terms set forth herein.  References herein to the Trustee shall refer to the Person or Persons serving as the Trustee solely in its capacity as Trustee hereunder.  The Trustee shall be subject to Puerto Rico laws governing ethics, anti-corruption and conflicts of interest.

(b)   Subject to the express limitations set forth herein, any actions of the Trustee contemplated by this Trust Agreement shall be decided and conducted by the Trustee only.

7.2   Powers of the Trustee.

(a)   Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the Trustee shall have various powers, duties and responsibilities concerning the prosecution of certain litigation claims, the disposition of assets, the resolution of claims, and numerous other obligations relating to maximizing the proceeds of the Avoidance Actions Trust Assets and the administration of the Avoidance Actions Trust.  The Trustee shall be obligated to provide prompt written responses to FOMB's questions, from time to time, regarding the Trustee's progress in the administration of the Avoidance Action Trust.

(b)   Nothing in this Trust Agreement shall be deemed to limit the Trust Parties' protections and benefits under the Plan or to prevent a Trust Party from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trust Party reasonably determines it is obligated to take or to refrain from taking in the performance of any duty that the Trust Party may owe the Avoidance Actions Trust Beneficiaries or any other Person under the Plan, Confirmation Order or this Agreement.

137122262v7

(c)      The Trustee shall have only such rights, powers and privileges expressly set forth in the Confirmation Order, the Plan and this Trust Agreement and as otherwise provided by applicable law.  Subject to the Confirmation Order, the Plan and the provisions of this Trust Agreement, including the oversight and approvals by and of the Trust Advisory Board and the Title III Court provided herein, the Trustee shall be expressly authorized to undertake the following actions with respect to the Avoidance Actions Trust Assets:

(i)      to hold, manage, convert to Cash, and timely distribute the Avoidance Actions Trust Assets to the GUC Trust, including prosecuting and resolving the Claims belonging to the Avoidance Actions Trust;

(ii)      to hold the Avoidance Actions Trust Assets for the benefit of the Avoidance Actions Trust Beneficiaries, whether their Claims or Interests are Allowed on or after the Effective Date;

(iii)      in the Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, Causes of Action or litigation of the Avoidance Actions Trust;

(iv)      to prepare and file (or cause to be prepared and filed), from and after the Effective Date, all tax and regulatory forms, returns, reports, and other documents required, or that the Trustee otherwise deems appropriate with respect to the Avoidance Actions Trust;

(v)      to hold, manage, and timely distribute Cash or non-Cash Avoidance Actions Trust Assets obtained through the exercise of its power and authority to the GUC Trustee;

(vi)      to enter into any agreements binding the Avoidance Actions Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Avoidance Actions Trust;

(vii)      to open and maintain bank accounts on behalf of or in the name of the Avoidance Actions Trust;

(viii)      to cause the Avoidance Actions Trust to employ and pay professionals, claims agents, disbursing agents, and other agents and third parties, in accordance with the terms and limitations set forth herein;

(ix)      to cause the Avoidance Actions Trust to pay all its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments required to be made hereunder;

(x)      to cause the Avoidance Actions Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals,

20

137122262v7

may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(xi)     to cause the Avoidance Actions Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

(xii)     to cause the Avoidance Actions Trust to establish out of all Avoidance Actions Trust Assets such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of the Avoidance Actions Trust;

(xiii)     to establish and maintain a website, to the extent the Trustee deems necessary, to provide notice of the Avoidance Actions Trust's activities to Avoidance Actions Trust Beneficiaries, provided that the Trustee determines, on the advice of counsel, that establishing such website does not implicate any securities or other applicable law;

(xiv)     to undertake all administrative functions of the Avoidance Actions Trust, including overseeing the winding down and termination of the Avoidance Actions Trust;

(xv)     to exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties and other provisions of the Plan, the Confirmation Order and this Agreement; and

(xvi)     to take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

(d)     In all circumstances, the Trustee shall act in the best interests of all Avoidance Actions Trust Beneficiaries and in furtherance of the purpose of the Avoidance Actions Trust.

7.3     <u>Title III Court</u>. Except as otherwise provided in this Trust Agreement, the Trustee will not be required to obtain the order or approval of the Title III Court, or any other court of competent jurisdiction in, or account to the Title III Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred hereunder.  Notwithstanding the foregoing, where the Trustee determines, in its reasonable discretion, that it is necessary, appropriate or desirable, the Trustee will have the right to submit to the Title III Court any question or questions regarding any specific action proposed to be taken by the Trustee with respect to this Trust Agreement, the Avoidance Actions Trust, or the Avoidance Actions Trust Assets, including the administration and distribution of the Avoidance Actions Trust Assets and the termination of the Avoidance Actions Trust.  Pursuant to the Plan, the Title III Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the Trustee.

7.4     <u>Exclusive Authority to Pursue Avoidance Actions</u>.  The Trustee shall have the exclusive right and power to (a) litigate any and all of the Avoidance Actions, and (b) compromise and settle such Avoidance Actions, upon approval of the Title III Court.  The Trustee shall be the sole representative of the Debtor under section 1123(b)(3) of the Bankruptcy Code with respect to

21

the Avoidance Actions.  The Trustee shall be vested with and entitled to assert all setoffs and defenses of the Debtor or the Trust to any counterclaims that may be asserted by any defendant in an Avoidance Action.  The Trustee also shall be vested with and entitled to assert all of the Debtor's rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

7.5     Limitations on Trustee.  The Trustee shall, on behalf of the Avoidance Actions Trust, hold the Avoidance Actions Trust out as a trust in the process of liquidation and not as an investment company.  The Trustee shall be restricted to the liquidation of the Avoidance Actions Trust Assets on behalf, and for the benefit, of the Avoidance Actions Trust Beneficiaries and the distribution and application of Avoidance Actions Trust Assets for the purposes set forth in, and the conservation and protection of the Avoidance Actions Trust Assets and the administration thereof in accordance with, the provisions of this Trust Agreement, the Plan and the Confirmation Order.

7.6     Conflicts of Interest.  The Trustee will appoint a disinterested Person to handle any matter where the Trustee has identified it has a conflict of interest or the Title III Court, on motion of the any party in interest, determines one exists.  If the Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Title III Court, on notice and hearing, may do so.

7.7     Establishment of Trust Advisory Board.

(a)     The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Trust Agreement, which duties shall be (i) to oversee the liquidation and distribution of the Avoidance Actions Trust Assets by the Trustee in accordance with this Trust Agreement, the Plan and the Confirmation Order, (ii) to approve (or withhold approval) of those matters submitted to it for approval in accordance with the terms of this Trust Agreement, and (iii) to remove and appoint any successor to the Trustee as provided for in this Trust Agreement.  Notwithstanding anything that may be to the contrary contained herein, the initial FOMB Directors need not be selected by the FOMB on the date hereof, but may be selected at any time after the date hereof.

(b)     The Trust Advisory Board initially shall be comprised of three (3) directors selected by the FOMB (the "FOMB Directors").  The initial members of the Trust Advisory Board are set forth on Annex A hereto.  Each member of the Trust Advisory Board shall have a fiduciary duty to act in the best interests of the Avoidance Actions Trust Beneficiaries as a whole. The Trust Advisory Board shall be subject to provisions consistent with Puerto Rico laws governing ethics, anti-corruption and conflicts of interest, and such laws shall be, and shall be deemed to be, incorporated into the Trust Advisory Board's by-laws.  The Trust Advisor Board's may adopt by-laws in connection with the conduct of its duties, which by-laws (i) shall be consistent with this Trust Agreement, the Confirmation Order and the Plan, and (ii) shall be subject to the approval of the FOMB.

(c)     The authority of the members of the Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Avoidance Actions Trust is dissolved in accordance with Section 4.2.  The service of the members of the Trust Advisory Board shall be subject to the following:

22

(i)        the members of the Trust Advisory Board shall serve until disability, death, or resignation pursuant to clause (ii) below, or removal pursuant to clause (iii) below;

(ii)        a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board.  Such resignation shall be effective when a successor is appointed as provided herein;

(iii)        a member of the Trust Advisory Board may be removed by the unanimous vote of the other members for (a) fraud, gross negligence or willful misconduct in connection with the affairs of the Avoidance Actions Trust, or (b) cause, which shall include a breach of fiduciary duty other than as specified in the foregoing clause (a).  Such removal shall be effective immediately upon such vote;

(iv)        in the event of a vacancy in a member's position (whether by removal, death or resignation), a new member may be appointed by the FOMB, as notified in writing to the Trust Advisory Board within ten (10) Business Days, or if the FOMB has been dissolved, by AAFAF, as notified in writing to the Trust Advisory Board and the Trustee within ten (10) Business Days.  In each case, the appointment of a successor member of the Trust Advisory Board shall be evidenced by the filing with the Title III Court by the Trustee of a notice of appointment, which notice shall include the name, address, and telephone number of the successor member of the Trust Advisory Board; and

(v)        immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

(d)        Each member of the Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Trust Advisory Board, and (ii) an alternate representative to attend meetings and participate in other activities of the Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.

(e)        Notwithstanding anything in this Trust Agreement to the contrary, the Trust Advisory Board shall not take any action which will cause the Avoidance Actions Trust to fail to qualify as a "Liquidating Trust" for United States federal income tax purposes.

(f)        A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused, voting members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a voting member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in Person, by telephone or by proxy.

137122262v7

(g)     Except as expressly provided herein, the affirmative vote of a majority of the non-recused, voting members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board.  If an equal number of the non-recused voting members of the Trust Advisory Board vote for and against a particular matter, the Trustee shall only in such circumstances have the authority to cast a vote with respect to such matter.  Any of or all the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a matter in which the Trustee cannot obtain direction or authority from the Trust Advisory Board, the Trustee may file a motion requesting such direction or authority from the Title III Court; provided, however, that any member of the Trust Advisory Board may oppose such motion.

(h)     A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any and all matters as to which such member has a conflicting interest.  If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the unanimous vote of the remaining, voting members of the Trust Advisory Board that are not recused from the matter.

(i)     Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

(j)     The members of the Trust Advisory Board shall be compensated as the Trust Advisory Board shall determine in an amount not to exceed $[●] per board member per year.  Any member of the Trust Advisory Board also shall be reimbursed by the Trustee for its actual, reasonable out-of-pocket expenses, not to include outside counsel fees, incurred for serving on such board in the same manner and priority as the compensation and expenses of the Trustee under this Trust Agreement, in accordance with the Budget after submission of reasonably detailed receipts or invoices evidencing such expenses.  Except as provided for in this Section 7.7, the members of the Trust Advisory Board shall not be entitled to receive any other form of compensation for their services provided as such members.  The Budget shall include a reserve for the fees and expenses of the Trust Advisory Board.  Payment of the compensation and expenses set forth in this Section 7.7(j) shall first be deducted from the Administrative Funding.  Payment of amounts from sources other than the Administrative Funding shall require the prior written approval of the Trust Advisory Board.

137122262v7

7.8     Cooperation with Respect to Claim Allowance.  The Trustee and the Debtor shall cooperate and consult each other with respect to the disallowance or allowance of claims in connection with the litigation and/or resolution of Avoidance Actions, including with respect to any issues arising under sections 502(d) or 502(h) of the Bankruptcy Code.

7.9     Agents, Employees and Professionals.

(a)     The Avoidance Actions Trust may, but shall not be required to, from time to time enter into contracts with, consult with and retain members, managers, agents, representatives, employees, officers and independent contractors, including attorneys, accountants, appraisers, disbursing agents or other parties deemed by the Trustee to have qualifications necessary or desirable to assist in the proper administration of the Avoidance Actions Trust (collectively, the "Trust Professionals"), on such terms and condition as the Trustee deems appropriate, including counsel retained on a contingency-fee basis, subject to the prior written approval of the Trust Advisory Board.  The Debtor agrees that the Avoidance Actions Trust may (but shall not be obligated to) retain as disbursing agent the same disbursing agent as retained by the Debtor, on terms and conditions to facilitate timely and efficient distributions of the Cash proceeds of Avoidance Actions.  None of the professionals that represented parties-in-interest in the Title III Cases shall be precluded from being engaged by the Trustee solely on account of their service as a professional for such parties-in-interest prior to the Effective Date.

(b)     After the Effective Date, Trust Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Trustee and the Trust Advisory Board, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of such Person, plus an itemized statement of expenses. The Trustee shall pay such invoices thirty (30) days after such invoices are approved by the Trustee.  In the event of any dispute concerning the entitlement to, or the reasonableness of any compensation and/or expenses of any Trust Professionals, either the Trustee or the affected party may ask the Title III Court to resolve the dispute.

(c)     All payments to Trust Professionals shall be paid first out of the Administrative Funding, and thereafter from the other Avoidance Actions Trust Assets, subject in each case to the prior written approval of the Trust Advisory Board.

(d)     Nothing in this Agreement shall prevent the Trustee, subject to the prior written approval of the Trust Advisory Board, from seeking and obtaining outside credit or other funding for the prosecution of the Avoidance Actions.

7.10     Investment of Avoidance Actions Trust Monies.  All monies and other assets received by the Trustee as Avoidance Actions Trust Assets (including the proceeds thereof as a result of investment in accordance with this Section 7.10) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Avoidance Actions Trust Beneficiaries, and shall not be segregated from other Avoidance Actions Trust Assets, unless and to the extent required by the Plan.  The Trustee may invest any Cash (including any earnings thereon or proceeds thereof) as permitted by section 345 of the Bankruptcy Code, in the manner set forth in this Section 7.10, but shall otherwise be under no liability for interest or income on any monies received by the Avoidance Actions Trust hereunder and held for distribution or payment to the

137122262v7

GUC Trustee, except as such interest or income shall actually be received.  Investment of any monies held by the Avoidance Actions Trust shall be administered in accordance with the general duties and obligations hereunder.  The right and power of the Trustee to invest the Avoidance Actions Trust Assets, the proceeds thereof, or any interest or income earned by the Avoidance Actions Trust, shall be limited to the right and power to:  (a) invest such Avoidance Actions Trust Assets (pending distributions in accordance with the Plan or this Trust Agreement) in either (i) short-term direct obligations of, or obligations guaranteed by, the United States of America or (ii) short-term obligations of any agency or corporation that is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (b) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments"); provided, however, that the scope of any Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

7.11    Termination.  The duties, responsibilities and powers of the Trustee shall terminate on the date the Avoidance Actions Trust is wound up and dissolved pursuant to Section 4.2 or by an order of the Title III Court; provided, however, that Sections 8.1, 8.2, 8.3, 8.4 and 8.5 shall survive such winding up and dissolution or the entry of such order of the Title III Court.

## ARTICLE VIII

## LIABILITY AND INDEMNITY

8.1    Liability to Third Persons.  The Trustee, the Trust Professionals and the members of the Trust Advisory Board shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person (including, in the case of the Trustee and members of the Trust Advisory Board, to any Trust Professionals retained by the Trustee in accordance with this Trust Agreement) in connection with the Avoidance Actions Trust Assets or the affairs of the Avoidance Actions Trust and shall not be liable with respect to any action taken or omitted to be taken in good faith, except for actions and omissions determined by a final order of the Title III Court to be due to their respective gross negligence, fraud, criminal conduct or willful misconduct, and all such Persons shall look solely to the Avoidance Actions Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Avoidance Actions Trust.  Other than as set forth in the Plan or in the Confirmation Order, nothing in this Section 8.1 shall be deemed to release any Avoidance Actions Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

8.2    Nonliability for Acts of Others.  Except as provided herein, nothing contained in this Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by Trustee, the Trust Advisory Board (or its members) or the Trust Professionals of any of the liabilities, obligations or duties of the Debtor or shall be deemed to be or contain a covenant or agreement by such persons to assume or accept any such liability, obligation or duty.  Any successor Trustee or Trust Advisory Board member may accept and rely upon any accounting made by or on behalf of any predecessor Trustee or Trust Advisory Board hereunder, and any

26

statement or representation made as to the assets comprising the Avoidance Actions Trust Assets or as to any other fact bearing upon the prior administration of the Avoidance Actions Trust, so long as it has a good faith basis to do so.  The Trustee and the Trust Advisory Board members shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue (except to the extent of the Trustee's, or the Trust Advisory Board members', fraud, gross negligence or willful misconduct).  The Trustee or any successor Trustee and the Trust Advisory Board members  or any successor Trust Advisory Board member shall not be liable for any act or omission of any predecessor Trustee or Trust Advisory Board member.  No provision of this Trust Agreement shall require the Trustee or any Trust Advisory Board member to expend or risk his personal funds or otherwise incur any financial liability in the performance of his rights or powers hereunder if the Trustee or Trust Advisory Board member has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him.

8.3    Exculpation.

(a)    As of the Effective Date, each of the Trust Parties, the Trust Parties' firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such Person's successors and assigns shall be and hereby is held harmless and exculpated by all Persons, including Avoidance Actions Trust Beneficiaries, holders of Claims, holders of Equity interests and other parties-in-interest, from any and all claims, causes of action and other assertions of liability arising out of or related to the discharge of their respective powers and duties conferred by the Plan, this Trust Agreement, any order of the Title III Court entered pursuant to or in furtherance of the Plan, applicable law or otherwise, except for any of its actions or omissions to act that are determined by final order of the Title III Court to have arisen out of its fraud, criminal conduct, gross negligence or willful misconduct.

(b)    No Avoidance Actions Trust Beneficiary, holder of a Claim or other party-in-interest shall have or be permitted to pursue any claim or cause of action against the Trust Parties, their employees, professionals or representatives, for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order and this Trust Agreement in good faith.

(c)    Any action taken or omitted to be taken with the express approval of the Title III Court or the Trust Advisory Board shall conclusively be deemed not to constitute gross negligence or willful misconduct; provided, however, that, notwithstanding any provision herein to the contrary, the Trustee shall not be obligated to comply with a direction of the Trust Advisory Board, whether or not express, that would result in a change to the distribution provisions of this Trust Agreement, the Confirmation Order and the Plan. In such instance, the Trustee shall request, within fourteen (14) days, the Title III Court's ratification of its determination not to comply with a direction of the Trust Advisory Board.

8.4    Limitation of Liability.  None of the Trustee, the members of the Trust Advisory Board and the Trust Professionals will be liable for punitive, exemplary, consequential, special or

137122262v7

other damages for a breach of this Trust Agreement under any circumstances, except for those resulting from any of its acts arising out of its own fraud, willful misconduct, or gross negligence.

8.5     Indemnity.  Each of the Trust Parties and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such Person's successors and assigns (each, an "Indemnified Party"), shall not be liable to the Avoidance Actions Trust Beneficiaries for actions taken or omitted in its capacity as, or on behalf of, the Trustee or the Trust Advisory Board, as applicable, except for those acts arising out of its own fraud, willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Avoidance Actions Trust for fees and expenses in defending any and all actions or inactions in its capacity as, or on behalf of, the Trustee or the Trust Advisory Board, as applicable, except for any of its actions or inactions involving fraud, willful misconduct or gross negligence. Any indemnification claim of an Indemnified Party under this Section 8.5 shall be satisfied solely from the Avoidance Actions Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Avoidance Actions Trust Interests and any other claim to or interest in any of the Avoidance Actions Trust Assets. The Indemnified Parties shall be entitled to rely, in good faith, on the advice of their retained professionals.   The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

8.6     Compensation and Expenses.  The Trustee (including the Person(s) serving as or comprising the Trustee) shall receive compensation for its services, to be paid out of the Avoidance Actions Trust Assets, in the manner and amount determined by the Trust Advisory Board.  In addition, the Trustee shall be entitled, with the consent of the Trust Advisory Board, to reimburse itself from the Avoidance Actions Trust Assets on a monthly basis for all reasonable out-of-pocket expenses actually incurred in the performance of duties in accordance with this Trust Agreement, Confirmation Order and the Plan so long as it falls within the amounts provided for in the Budget; otherwise, prior written approval of the Trust Advisory Board is required.  Payment of the compensation and expenses set forth in this Section 8.6 shall be deducted first from the Administrative Funding, and thereafter from the other Avoidance Actions Trust Assets, subject in each case to the prior written approval of the Trust Advisory Board.

## ARTICLE IX

## SUCCESSOR TRUSTEE

9.1     Resignation.  The Trustee may resign from the Avoidance Actions Trust by giving at least sixty (60) days' prior written notice thereof to each member of the Trust Advisory Board. Such resignation shall become effective on the later to occur of (a) the date specified in such written notice and (b) the effective date of the appointment of a successor Trustee in accordance with Section 9.4 and such successor's acceptance of such appointment in accordance with Section 9.5.

9.2     Removal.  The Trustee may be removed by a majority vote of the members of the Trust Advisory Board.  Such removal shall become effective on the date specified in such action by the Trust Advisory Board.

137122262v7

9.3 <u>Effect of Resignation or Removal</u>. The resignation, removal, incompetency, bankruptcy or insolvency of the Trustee shall not operate to terminate the Avoidance Actions Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by the Trustee. All fees and expenses properly incurred by the Trustee prior to the resignation, incompetency or removal of the Trustee shall be paid from the Avoidance Actions Trust Assets, unless such fees and expenses are disputed by (a) the Trust Advisory Board, or (b) the successor Trustee, in which case the Title III Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Title III Court shall be paid from the Avoidance Actions Trust Assets. In the event of the resignation or removal of the Trustee, such Trustee shall: (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Trustee or directed by the Title III Court to effect the termination of such Trustee's capacity under this Trust Agreement; (ii) promptly deliver to the successor Trustee all documents, instruments, records and other writings related to the Avoidance Actions Trust as may be in the possession of such Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

9.4 <u>Appointment of Successor</u>. In the event of the death, resignation, removal, incompetency, bankruptcy or insolvency of the Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by a majority of the Trust Advisory Board; <u>provided</u>, <u>however</u>, that under no circumstance shall the successor Trustee be a director or officer of any Affiliate of the Avoidance Actions Trust.

9.5 <u>Acceptance of Appointment by Successor Trustee</u>. Any successor Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Title III Court for filing and to the Trust Advisory Board and, in case of the Trustee's resignation, to the resigning Trustee. Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Avoidance Actions Trust with like effect as if originally named Trustee and shall be deemed appointed pursuant to the Confirmation Order and the Plan. The resigning or removed Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such resigning or removed Trustee hereunder and shall, as directed by the Title III Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Trustee.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1 <u>Binding on the Debtor</u>. This Trust Agreement shall be binding on the Debtor and shall remain binding on the Debtor notwithstanding any dissolution of the FOMB or any other event that may cause the FOMB to cease to exist or to cease serving as a representative of the Debtor.

137122262v7

10.2    <u>Governing Law</u>.  This Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of laws; <u>provided</u>, <u>however</u>, that the Trust Advisory Board shall be subject to Puerto Rico laws governing ethics, anti-corruption and conflicts of interest, and such laws shall be, and shall be deemed to be, incorporated into the Trust Advisory Board's by-laws.

10.3    <u>Jurisdiction</u>.  Subject to the proviso below, the parties agree that the Title III Court shall have exclusive jurisdiction over the Avoidance Actions Trust and the Trustee, including the administration and activities of the Avoidance Actions Trust and the Trustee, and, pursuant to the Confirmation Order or the Plan, the Title III Court has retained such jurisdiction; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the Trustee shall have power and authority to bring any action in any court of competent jurisdiction (including the Title III Court) to prosecute any Claims or Causes of Action assigned to the Avoidance Actions Trust.

10.4    <u>Severability</u>.  If any provision of this Trust Agreement or the application thereof to any Person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

10.5    <u>Notices</u>.  Any notice or other communication required or permitted to be made under this Trust Agreement (each, a "<u>Notice</u>") shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, sent by e-mail or facsimile transmission, sent by nationally recognized overnight delivery service or mailed by first-class mail:

(a)    If to the Trustee, to:

[Name]
[Address]
[E-mail]


with a copy to counsel to be identified by the Trustee.

(b)    If to members of the Trust Advisory Board, then to each of:

[Name]
[Address]
[Email]

[Name]
[Address]
[E-mail]

(c)    If to any Avoidance Actions Trust Beneficiary, to the last known address of such Avoidance Actions Trust Beneficiary according to the Debtor's Schedule, such Avoidance

137122262v7

Actions Trust Beneficiary's proof of claim or the lists of record holders provided to the Trustee; and

<blockquote>

(d)    If to the FOMB, the Debtor or the Reorganized Debtor:

Financial Oversight and Management Board for Puerto Rico
268 Muñoz Rivera Ave,
Suite 1107 San Juan, PR 00918-1813
Attn: [●]

With a copy to:

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq., Paul V. Possinger, Esq., Ehud Barak, Esq., James P. Gerkis, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900
</blockquote>

A Notice shall be effective and shall be deemed delivered:  (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its address, e-mail address, facsimile number or other information for the purpose of Notices to that party by giving Notice specifying such change to the other parties hereto.

      10.6   <u>Headings</u>.  The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

      10.7   <u>Actions Taken on a Date Other Than A Business Day</u>.  If any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

      10.8   <u>Relationship to the Plan</u>.  The terms of this Trust Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order, and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan).  Additionally, the Trustee and the Trust Advisory Board may seek any orders from the Title III Court, upon notice and a hearing in furtherance of implementation of the Plan, the Confirmation Order and this Trust Agreement.  However, to the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order:  (a) *first*, this Trust Agreement; (b) *second*, the Confirmation Order; and (c) *third*, the Plan.

137122262v7

10.9    Entire Trust Agreement.  This Trust Agreement (including the recitals and any annex hereto), the Plan and the Confirmation Order constitute the entire agreement and understanding by and among the parties and supersede all prior and contemporaneous agreements or understandings, by and between the parties or any other person with respect to the subject matter hereof.

10.10    Cooperation.  The Debtor and the Reorganized Debtor shall turn over or otherwise make available to the Trustee at no cost to the Avoidance Actions Trust or the Trustee, all books and records (or copies thereof) and other information, in each as may be reasonably requested by the Trustee, including all communications by and between the FOMB and its professionals and the Avoidance Action defendants.  The Debtor and the Reorganized Debtor further agree to reasonably cooperate with the Trustee in carrying out its duties hereunder, including by, among other things:  (a) delivering to the Trustee work product developed by their respective professionals in connection with the prosecution of the Avoidance Actions, subject to the confidentiality provisions herein to preserve the confidential nature of the Debtor's and the Reorganized Debtor's books and records; (b) following the Effective Date, participating in meetings with the Trustee, at the Trustee's reasonable request and at such times and upon such notice as does not unreasonably interfere with the operations of such party, for purposes of coordinating the transition of the Avoidance Actions Trust Assets; (c) providing assistance in discovery responses and witness testimony as is reasonably necessary for the resolution of the Avoidance Actions; and (d) maintaining all data rooms, hard drives and other media containing information and/or documents related to the Avoidance Actions, as reasonably requested by the Trustee, to facilitate access to such information and/or documents.  The Trustee agrees to give the Debtor, the Reorganized Debtor and/or their designated counsel reasonable access to attend (i) witness preparations related to the Avoidance Actions for any witness who will be providing testimony in his or her capacity as a current or former employee of the Debtor or the Reorganized Debtor, and (ii) the depositions of any witness who provides testimony related to the Avoidance Actions in his or her capacity as a current or former employee of the Debtor or the Reorganized Debtor; provided, however, that such attendance (A) will be solely as an observer, and (B) shall not constitute a waiver of any privileges.

10.11    Amendment and Waiver.  Any provision of this Trust Agreement may be amended or waived by the Trustee with the unanimous consent of all voting members of the Trust Advisory Board.  Notwithstanding this Section 10.11, (a) any amendment to this Trust Agreement shall not be inconsistent with the purpose and intention of the Avoidance Actions Trust to liquidate in an expeditious but orderly manner the Avoidance Actions Trust Assets in accordance with Treasury Regulations section 301.7701-4(d) and Section 2.2, and (b) the prior written consent of the FOMB or the Reorganized Debtor shall be required for any amendment or waiver of any provision hereof if such amendment or waiver relates to the FOMB or the Reorganized Debtor or adversely affects the FOMB or the Reorganized Debtor.

10.12    Confidentiality.  The Trust Parties and their advisors, including the Trust Professionals (each a "Confidential Party" and, collectively, the "Confidential Parties") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to the Debtor or the Reorganized Debtor to which any of the Avoidance Actions Trust Assets relates; provided, however, that such information may be disclosed if:  (a) it is now or in the future becomes generally

32

available to the public other than as a result of a disclosure by the Confidential Parties; or (b) such disclosure is required of the Confidential Parties pursuant to legal process. including subpoena or other court order or other applicable laws or regulations.  If any Confidential Party is requested to divulge confidential information pursuant to clause (b) above, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Trustee (or the Trust Advisory Board in case the Trustee is the disclosing party) to allow sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Trustee (or the Trust Advisory Board, as applicable) in making any such objection, including appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

10.13   Rules of Construction.  Except where the context otherwise may require, (a) words of any gender include the other gender, and (b) words importing the singular number shall include the plural number and *vice versa*.  The headings in this Trust Agreement are for convenience only and in no way define, limit or otherwise affect the scope or intent hereof. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require.  All terms defined in this Trust Agreement in their singular or plural forms have correlative meanings when used herein in their plural or singular forms, respectively.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or to any provisions of PROMESA or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Trust Agreement.  The terms "hereof", "hereto", "herein" and words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement.  The terms "include", "includes" and "including" shall be construed as if followed by the words "without limitation".

10.14   Counterparts.  This Trust Agreement may be executed with counterpart signature pages or in any number of counterparts, each of which counterparts shall be deemed an original, but all such counterparts shall together constitute but one and the same instrument.  A facsimile, portable document file (PDF) or other electronic transmission signature of any party shall be considered to have the same binding legal effect as an original signature.

10.15   Intention of Parties to Establish Avoidance Actions Trust.  This Trust Agreement is intended to create a "liquidating trust" for United States federal income tax purposes within the meaning of Treasury Regulations section 301.7701-4(d), and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively. This Trust Agreement is not intended to create and shall not be interpreted as creating a corporation, association, partnership or joint venture of any kind for United States federal income tax purposes or for any other purposes.

10.16   Third Party Beneficiaries. The FOMB, the Debtor and the Reorganized Debtor are express third party beneficiaries of this Trust Agreement.

137122262v7

**IN WITNESS WHEREOF**, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**PUERTO RICO ELECTRIC POWER AUTHORITY**, by and through the Financial Oversight and Management Board for Puerto Rico as its sole Title III representative

By: _____
     Name:
     Title:

**[●], as Trustee**

By: _____
     Name:
     Title:

**Annex A**

<u>Initial Trust Advisory Board Members</u>

[●]