**GUIDELINES FOR THE GOVERNANCE, ADMINISTRATION, AND MONITORING OF THE PUERTO RICO PLAN OF ADJUSTMENT FOR THE PREPA PAYGO TRUST**

**I.  INTRODUCTION; PREPA PAYGO TRUST**

**1.1  Purpose:** In connection with the Modified Second Amended Plan of Adjustment for the Puerto Rico Electric Power Authority (as amended from time to time and confirmed by the Title III Court, the "**Plan of Adjustment**" or "**Plan**"),[1] the accrued and future obligations of the Puerto Rico Electric Power Authority ("**PREPA**") to make employer contributions to the PREPA ERS to fund defined benefit retirement payments to PREPA's retirees will be adjusted such that (a) no further defined benefits for Active PREPA ERS Participants shall accrue from and after the Effective Date, (b) no further cost of living adjustments shall accrue to any active or retired Participant in the PREPA ERS, and (c) PREPA shall reimburse the PREPA ERS on an annual or other periodic basis for payments made to its retirees on a pay-as-you-go (PayGo) basis. The Plan provides for the creation of a new trust, the Puerto Rico Electric Power Authority PayGo Trust ("**PayGo Trust**") for the purpose of receiving periodic PayGo payments from PREPA, reviewing requests for reimbursement of pension payments from the PREPA ERS, and making reimbursement payments to the PREPA ERS for payments that are consistent with and limited by the treatment of the claim of the PREPA ERS as provided in the Plan. The guidelines set forth herein (the "**Guidelines**") and the PREPA PayGo Trust Deed of Trust to which the Guidelines are appended provide for the creation and governance of the PayGo Trust, as set forth below. These Guidelines will be included in the Plan Supplement, and the terms and conditions set forth herein shall be incorporated into the PayGo Trust Deed of Trust, which will be executed and put into effect on or before the Plan Effective Date. The PayGo Trust shall operate on a July 1 to June 30 fiscal year.

**1.2  Responsibilities of the PREPA PayGo Trust Board:** The PREPA PayGo Trust Board of Trustees (the "**Board**"), among other things, shall have the sole responsibility for the collection, custody, administration, investment, and distribution of the funds held in the PayGo Trust.

**1.3  Term of the Board:** The Board shall exist until thirty (30) calendar days after the termination of the PREPA PayGo Trust in accordance with Section 6.2.

**1.4  Account Structure and Initial Funding of the PREPA PayGo Trust:**

  A.  Account Structure of the PREPA PayGo Trust: The PREPA PayGo Trust shall include (i) investment accounts, and (ii) an account for administrative and operating expenses of the Board to be included in the total assets of PREPA PayGo Trust. The Board shall have the authority to establish additional accounts as deemed necessary in the exercise of the Board's duties. All such accounts shall be in the name of the PayGo Trust and controlled by the Board.

  B.  Initial Funding: Upon the Effective Date, PREPA shall deposit an initial funding of $1,000,000.00 as provided in the Plan into the PREPA PayGo Trust's administrative and operating account after the establishment of such account by the Oversight Board pursuant to Section 4.7(A).

**1.5  Responsibilities of PREPA and PREPA ERS:** PREPA shall make contributions to the PREPA PayGo Trust in accordance with the Plan. PREPA ERS shall maintain all documentation of all retiree

---

[1] Any capitalized terms not defined herein shall have the respective meanings ascribed to such terms in the Plan of Adjustment.

benefit payments, including supporting calculations associated with any new annual benefits, and its administrative expenses paid during each fiscal year of the PREPA PayGo Trust, and upon PREPA ERS' request for reimbursement for any payments or expenses, such documentation shall be presented to the Board.

## II.     PAYGO TRUST BOARD OF TRUSTEES

**2.1    Composition of the Board:**

A.  <u>Membership</u>:  The Board shall consist of three (3) trustees, to be appointed within three (3) months after the occurrence of the Effective Date.  The Oversight Board shall appoint one (1) trustee (the "**FOMB Trustee**"), the Commonwealth of Puerto Rico ("**Commonwealth**") shall appoint one (1) trustee, and PREPA shall appoint one (1) trustee; <u>provided</u>, <u>however</u>, that if any of such persons is not timely appointed or designated, such delay shall not delay or impair the operation of the Board, which shall commence its activities on the first business day of the first calendar week following expiration of the three (3)-month period following the Effective Date on which there are at least two (2) appointed Board trustees (the "**Commencement Date**").  As each trustee is appointed, the appointing entity shall certify to the Oversight Board, the Commonwealth and PREPA, as applicable, such appointment and the trustee's specific qualifications that satisfy the criteria in <u>Section 2.1(C)</u>.

Upon termination of the Oversight Board, (i) the FOMB Trustee shall be entitled to serve the remainder of his or her term, and (ii) the Commonwealth shall be entitled to appoint a member to the Board to fill the seat previously occupied by the FOMB Trustee. The Commonwealth thereafter shall have the right prospectively to appoint any successor to such jointly appointed member of the Board.

A person may not serve more than two (2) terms as a member of the Board, regardless of whether such person has served consecutive terms.

B.  <u>Inaugural Meeting</u>. On or as soon as practicable after the earlier of the Commencement Date and the appointment of all trustees to the Board, the Board shall call and convene an inaugural meeting of the Board (the "**Inaugural Meeting**"). For purposes of the Inaugural Meeting, the FOMB Trustee shall serve as the interim Chairman and the shall appoint another trustee of the Board to serve as interim Secretary. If the FOMB Trustee has not yet been appointed, the Commonwealth shall designate one appointee as interim Chairman.  At the Inaugural Meeting, the Oversight Board shall deliver custody of all documents and information regarding or related to the Oversight Board's activities on behalf of the PREPA PayGo Trust and the Board, including all bank account information for the administrative and operating accounts opened by the Oversight Board for the PayGo Trust in the name of the Board. By convening the Inaugural Meeting, the Oversight Board's duties and authority under <u>Section 4.7</u> shall automatically cease. At or immediately after the Inaugural Meeting, the Oversight Board shall take all other necessary and reasonable steps to transfer to the Board control of all bank accounts and any other assets of the PayGo Trust, as well as any documents and information of or belonging to the PayGo Trust or the Board.

C. <u>Eligibility and Qualifications</u>: No trustee shall be appointed to the Board who has a known or reasonably perceived conflict of interest. Except for the Commonwealth's appointee, trustees of the Board cannot concurrently be active employees of Puerto Rico or any of its agencies, instrumentalities or public corporations. In addition, no trustee can be a former member of the board of PREPA ERS. Each trustee of the Board shall have proven leadership skills and have expert knowledge or extensive experience with respect to either:

    i. Economics, finance or institutional investments, as evidenced by one or more of the following:

        (a) An earned masters or Ph.D. in economics or finance from a doctorate-granting U.S.-accredited institution;

        (b) The Chartered Financial Analyst credential of the CFA Institute; or

        (c) A minimum of fifteen (15) years of professional experience as a certified public accountant with audit expertise of financial management, pension or insurance clients;

*or*

    ii. Asset management expertise, as evidenced by one or both of the following:

        (a) At least fifteen (15) years of asset management industry experience; and

        (b) Technical competencies, including investment strategy, investment management across different asset classes, investment risk management, third party management of external asset managers and custodians, corporate governance, financial management, strategic leadership, communication and stakeholder management.

D. <u>Term</u>: Trustees of the Board shall serve for a term of four (4) years, beginning on January 1 of the relevant year; <u>provided</u>, <u>however</u>, that if the term of the initial Board begins on a date other than January 1, the term of service for the members of that initial Board shall consist of that partial first year plus three (3) additional calendar years; <u>provided</u> <u>further</u>, <u>however</u>, that a trustee of the Board can be reappointed at the expiration of his or her term. If a trustee of the Board does not complete his or her term for any reason, the entity or person that appointed such trustee pursuant to <u>Section 2.1(A)</u> (subject to the last sentence of <u>Section 2.1(A)(i)</u>) shall appoint a replacement trustee who is eligible to serve in such position. In each case, the replacement trustee shall serve for the remainder of the four-year term.

3

## III.     BOARD GOVERNANCE

**3.1     By-laws:**  Within [●] months of the Inaugural Meeting, the Board shall by an affirmative vote of at least two (2) trustees adopt a set of by-laws to govern the Board's conduct, which shall be consistent with the Plan and these Guidelines.  Such by-laws shall include appropriate provisions regarding fiduciary duties consistent with fiduciary standards set forth in the Internal Revenue Code, obligations of the Board, meetings of the Board, removal and replacement of Board trustees, and voting on matters by Board trustees.  In particular, without otherwise limiting the Board's ability to develop appropriate by-laws, the Board's by-laws shall provide that each Board trustee shall have one vote, subject to any disqualifying conflict of interest, with respect to any matter being voted upon.  In accordance with Section 2.1(A), the Board may form subcommittees as it deems necessary.

**3.2     Code of Conduct and Ethics Policy:** The Board's by-laws shall include a Code of Conduct and Ethics Policy setting forth the Board's obligation to act ethically in connection with the use of public funds and in the interest of PREPA ERS and the Participants, and affirming the Board's commitment to do so.  The Code of Conduct and Ethics Policy shall include provisions regarding confidentiality, conflicts of interests and self-dealing, as well as a gift policy and an enforcement policy consistent with relevant provisions of Puerto Rico law and as required by the Plan and the Confirmation Order.  The Code of Conduct and Ethics Policy shall be posted on any website maintained by the Board.

**3.3     Compensation:**  Board members shall be paid an annual compensation in an amount not to exceed $25,000.00 (subject to adjustment for inflation), paid in four equal installments at the end of each calendar quarter; provided, however, that compensation may be adjusted by resolution of any subcommittee of the Board formed for the purposes of evaluating such compensation.  Compensation for the period from the date of the Inaugural Meeting to the end of the first calendar quarter thereafter shall be prorated and paid on the first business day following such calendar quarter or as soon as practicable.  The Board trustees also shall be reimbursed for their reasonable expenses incurred in attending meetings and otherwise carrying out their responsibilities as Board trustees.  Notwithstanding the foregoing, any Board trustee employed by the Government of Puerto Rico or any public corporation or instrumentality shall not receive compensation for his or her service on the Board while so employed, but may receive reimbursement of expenses as provided in this Section 3.3.

**3.4     Budget:**  The Board shall, in its sole discretion, prepare a budget of anticipated expenses to be incurred in the forthcoming fiscal year for ordinary and recurring activities of the Board and for other non-recurring activities reasonably foreseeable to occur in the forthcoming fiscal year. The initial budget shall be approved by the Oversight Board.

**3.5     Annual Report**:  Following the end of each fiscal year, the Board, with the assistance of its retained professionals as described in Sections 4.1 and 4.4, promptly shall prepare and issue a public report, as of the end of the fiscal year, regarding the composition of the PayGo Trust assets and investments over the course of the reporting period and the performance of such investments by asset class and by each investment manager during the calendar year just ended and such other information that the Board determines is relevant.  Each such annual report shall be posted on any website maintained by the Board.

## IV. POWERS OF THE BOARD

**4.1 Management of PayGo Trust**: The Board shall be responsible for the management of the PayGo Trust, including, but not limited to, employing staff as needed at its discretion for the PayGo Trust, collection of Cash payments from PREPA sufficient for the PREPA PayGo Trust to reimburse PREPA ERS for retirement benefits paid and administrative expenses incurred in the prior Fiscal Year ending June 30 in accordance with Article XXVI of the Plan, collection of debt service payments on any New Bonds distributed by PREPA to the PREPA PayGo Trust under the Plan, selecting a custodian to hold the assets of the PayGo Trust, directing (in consultation with the investment advisor(s) selected pursuant to this Section 4.1) the investment of the assets of the PayGo Trust, and managing the administration of the PayGo Trust. The Board also shall have responsibilities with respect to reviewing the ongoing operations of PREPA ERS, including review of benefit payments, reviewing and approving contribution requests and, if needed, advance requests, administrative expenses, and confirmation of compliance with the Plan, including the freeze of benefit accruals as of the Effective Date and the elimination of cost of living adjustments. The Board will have the authority to take any and all steps it determines are necessary or desirable in its discretion to maximize the tax efficiency of the assets and investments of the PREPA PayGo Trust.

   A. Selection of Investment Advisor(s): The Board shall retain one or more qualified investment advisors through a competitive and public process. The Board shall set minimum qualification requirements, including the following requirements: (i) the investment advisor must be registered as an investment advisor under the Investment Advisers Act of 1940; (ii) the investment advisor and each of its key professionals must not have material conflicts of interest with the Board; (iii) the investment advisor must agree to serve as a fiduciary; and (iv) the investment advisor must have a verifiable and successful operating history with at least three (3) pension fund clients each of which has a minimum of $5 billion in assets under management. As soon as reasonably practicable following the Effective Date of the Plan, the Board shall conduct a public Request for Proposal ("**RFP**") process in order to search for such investment advisor(s). The goal of the RFP shall be to solicit and evaluate proposals in a fair and objective manner, and the RFP process shall be documented and public. The Board may retain a qualified consultant to manage the RFP process. As it determines to be necessary or prudent, the Board may renew the RFP process from time to time to select one or more additional or replacement investment advisor(s); provided, however that: (x) while the Oversight Board is in existence with respect to PREPA, any engagement agreements with any such investment advisor(s) or any consultant engaged to assist with the RFP process shall be subject to review and approval by the Oversight Board pursuant to its Contract Review Policy as in effect from time to time; and (y) all contracts executed by the Board on behalf of the Board and/or the PayGo Trust shall be made public and shall be registered with the Comptroller Office pursuant to applicable Puerto Rico laws.

   B. Roles & Responsibilities: The investment advisor(s) shall have the following roles and responsibilities, and the terms of such relationship shall be set forth in a written agreement in which the advisor shall acknowledge its fiduciary status:

      i. Advising the Board on issues concerning the selection of investments for the PayGo Trust;

5

    ii.    Assisting in the development and maintenance, and periodic review and modification as appropriate, of an investment policy statement designed to set forth the goals, objectives and risk tolerances of the PayGo Trust's investment program (the "**Investment Policy Statement**"), as described below;

    iii.    Advising in the development of the PayGo Trust's asset allocation strategy;

    iv.    Providing investment advice to the Board with respect to the PayGo Trust;

    v.    Assisting in the analysis, selection, monitoring and replacement of investments and investment managers;

    vi.    Assisting the Board with the review of the performance and risk of the selected investments, on at least a semi-annual basis, in comparison to their stated objectives and their related performance and pricing as compared to their peers and benchmarks;

    vii.    Bringing information to the Board, on an ad hoc basis as appropriate, that the investment advisor feels may be relevant to the Board's assessment of a given investment, asset class or strategy; and

    viii.    Provide Outsourced Chief Investment Officer services, if so engaged by the Board.

C.    <u>Development of Investment Policy Statement</u>: The Board, together with expert assistance from its investment advisor(s), shall develop the Investment Policy Statement within [●] months of the Inaugural Meeting. The Investment Policy Statement shall be designed to provide meaningful direction for the Board, the investment advisor(s) and the investment managers in the management of the PayGo Trust.

D.    <u>Investment Objective</u>: The Board, the investment advisor(s) and the investment managers shall perform their duties for the exclusive benefit of and in the best economic interest of the PREPA ERS and the Participants. The objective of the PayGo Trust's investment program is to generate returns within an appropriately risk-constrained framework, net of reasonable investment fees and expenses, in order to serve the intended purposes of the PayGo Trust under the Plan of Adjustment. This will be accomplished through a carefully planned and executed long-term investment program that allocates and manages the assets of the PayGo Trust.

E.    <u>Prudent Management of the PayGo Trust</u>: This <u>Section 4.1</u> is meant to serve as a general framework for the prudent management of the PREPA PayGo Trust. Changing conditions, economic trends or other factors may necessitate modification of this framework. The Investment Policy Statement at all times shall reflect the current objectives and guidelines for the Board's management of the PREPA PayGo Trust, and the Investment Policy Statement may be modified by written approval of the Board. The Board shall promptly provide a copy of such modified Investment Policy Statement to the Act 106 Board, and shall post that documentation on the Board's website.

  F. <u>Tax Matters</u>:  The funds held in the PREPA PayGo Trust shall be exempt from the payment of any taxes to Puerto Rico and its municipalities and instrumentalities.  The Board, and the Oversight Board in its interim role as applicable, shall be empowered to seek favorable tax status for U.S. and foreign investments. The PREPA PayGo Trust's income is excludable from gross income under Section 115 of the Internal Revenue Code (IRC) because the PREPA PayGo Trust's income accrues to the benefit of a public corporation within the government of a possession of the United States.

**4.2** **Development of PREPA ERS Reimbursement Policy:** The Board, together with expert assistance from its legal counsel, shall develop the PREPA ERS Reimbursement Policy Statement within [●] months of the Inaugural Meeting.  The PREPA ERS Reimbursement Policy Statement shall (i) be designed to provide meaningful direction for the Board and PREPA ERS in managing reimbursement requests, (ii) establish the mechanisms, timing and approval process for reimbursement requests, and (iii) administrative review of operations, including the calculation of the freeze on benefit payments and elimination of cost of living adjustments in accordance with the Plan.  Reimbursements from the PayGo Trust to PREPA ERS shall commence as soon as practicable after the conclusion of Fiscal Year 2024 and continue thereafter either annually or otherwise as determined by the Board in its discretion.  Notwithstanding the foregoing, the administration of any pension benefit payments shall be made by PREPA ERS.

**4.3** **Requests for Documents and Information:**  The Board shall keep complete and accurate records of all transactions affecting the PayGo Trust. The Board shall have the right to request and receive any information deemed necessary by the Board in order to carry out its responsibilities as set forth in these Guidelines and the Deed of Trust, including documentation requested from PREPA ERS relating to the calculation and payment of pensions to Participants and from PREPA.  To the extent that there is a disruption in collections for the PayGo Trust due to circumstances beyond PREPA's control, such as a hurricane or other natural disaster, PREPA shall update the Board each month regarding the anticipated and actual impact of such disruption, until collections return to previous levels.

**4.4** **Employment of Professionals:** In addition to the investment professionals retained pursuant to <u>Section 4.1</u>, the Board may engage other professionals and service providers necessary and desirable in the performance of its duties hereunder.  The Board shall have the authority to enter into contracts and incur fees and expenses in connection with hiring such service providers.  All such fees and expenses shall be paid from the PayGo Trust.

**4.5** **Power to Sue and Jurisdiction of U.S. District Court:**  The Board has legal capacity and the power to bring any cause of action in the name of the Board and/or the PREPA PayGo Trust, as appropriate, against any appropriate party, regarding any matters in connection with the implementation of the PREPA PayGo Trust, including payments from PREPA that are inconsistent with the Plan or the Confirmation Order, and the performance of the Board's duties pursuant to these Guidelines. The Board has legal capacity and power to bring any cause of action in the name of the Board and/or the PREPA PayGo Trust, as appropriate, to resolve a dispute.  The U.S. District Court for the District of Puerto Rico shall have original and exclusive jurisdiction over any such causes of action of the PREPA PayGo Trust, as well as any causes of action against the Board or PREPA PayGo Trust.

**4.6** **Independence:** For the avoidance of doubt, neither the Board nor the PREPA PayGo Trust shall be an instrumentality of PREPA, nor are they responsible for the obligations of PREPA under the

Plan. The Board from time to time may adopt such rules and regulations as may be necessary or desirable for its proper and efficient administration. All reasonable and proper expenses incurred in the administration of the Board's responsibilities pursuant to an approved budget will be paid out of the assets of the PREPA PayGo Trust. The property, assets, title and rights of the PREPA PayGo Trust together constitute a fully autonomous separate estate from PREPA and the PREPA ERS, and administration of the estate is limited to the specific purposes established by the Plan and these Guidelines. Creditors of PREPA or PREPA ERS shall have no recourse against the PREPA PayGo Trust or any of its assets. The assets of the PREPA PayGo Trust shall not be subject to attachment or any other legal remedy by or on behalf of creditors of PREPA or PREPA ERS. Without limiting the generality of the foregoing, the PREPA PayGo Trust shall have the protections set forth in applicable provisions of Puerto Rico law. Further, for the avoidance of doubt, notwithstanding the foregoing, the Board is not to be incorporated and is not to be deemed to have legal personality separate from the PREPA PayGo Trust.

**4.7** **Interim Role of the Oversight Board**: The period from the Effective Date to the date of commencement of the terms of the trustees of the Board appointed pursuant to Section 2.1(A) shall be referred to herein as the "**Transitional Period**". During the Transitional Period, the Oversight Board shall perform certain of the start-up functions of the Board for the purpose of performing initial tasks to establish and commence administration of the PayGo Trust as set forth below.

    A. Upon the execution of the Deed of Trust, the Oversight Board shall have the authority to establish an interest-bearing checking account with a federally insured bank in the name of the Board, to serve as an administrative and operating account and to receive the initial funding under Section 1.4(B). For the avoidance of doubt, the Oversight Board shall not invest the funds in the administrative and operating accounts or otherwise manage them other than as described herein. In accordance with Section 2.1(B), the Oversight Board shall cease any bank authorization it has upon the convening of the Inaugural Meeting and deliver any records and documents in its possession or control in connection with the PayGo Trust to the Board.

    B. The Oversight Board is authorized to take any reasonable actions to support the timely and effective operations of the Board, which may include any of the following:

        i. commence and engage in RFP and Request for Information ("**RFI**") process to select an investment advisor, a third party asset servicer, asset managers and other essential professional advisors;

        ii. oversee the collection of principal and interest from any New Bonds distributed to the PREPA PayGo Trust under the Plan;

        iii. commence and engage legal guidance on matters critical to the operational enactment of the PayGo Trust; and

        iv. undertake any other reasonable measures or initiatives that a prudent board of trustees would undertake to enable governance, operational and organizational readiness of the PayGo Trust and the Board.

    C. The actions of the Oversight Board described in this Section 4.7 are in furtherance of the implementation of the Plan of Adjustment and carrying out its responsibilities in

accordance with PROMESA. Pursuant to PROMESA section 105, the Oversight Board, its members and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken with respect to these Guidelines.

## V. INDEMNIFICATION & INSURANCE

**5.1** **Indemnification:** Except for acts determined by a final order of the U.S. District Court for the District of Puerto Rico or an appellate court to constitute criminal acts, willful misconduct, fraud, or a material violation of the Code of Conduct and Ethics Policy, and to the extent not covered by insurance as set forth in Section 5.2, the trustees of the Board and their employees shall be indemnified by the PREPA PayGo Trust against all expenses (including costs and attorneys' fees) actually and necessarily incurred or payable by the member or the employee in connection with the defense of any action, suit or proceeding to which the member or the employee may be made a party by reason of the member or the employee being or having been so designated as a member or employee of the Board, respectively, or by reason of any action or omission or alleged action or omission by the member or the employee in such capacity.

**5.2** **Insurance:** The Board shall each maintain appropriate amounts of insurance that the Board reasonably determines is necessary. Such insurance shall be provided by a nationally recognized insurance carrier. Such insurance policies shall provide for both (i) non-indemnifiable coverage (commonly referred to as "Side A" coverage) pursuant to which the insurer will pay to, or on behalf of, the insured person the applicable amount with respect to any covered loss, except to the extent the PREPA PayGo Trust has paid such amount to, or on behalf of, the insured person as indemnification or as an advance, and (ii) indemnification coverage (commonly referred to as "Side B" coverage) pursuant to which the insurer will pay to, or on behalf of, the PREPA PayGo Trust the applicable amount with respect to any covered loss arising from claims first made against an insured person, to the extent that the PREPA PayGo Trust has paid such amount to, or on behalf of, the insured person as indemnification or advancement. All reasonable insurance costs shall be paid from the PREPA PayGo Trust.

## VI. OTHER PROVISIONS

**6.1** **Amendment of Guidelines:** Amendments to these Guidelines and/or the Deed of Trust may be made with the prior written consent of the Oversight Board, PREPA, and the Commonwealth.

**6.2** **Termination of PREPA PayGo Trust:** The PREPA PayGo Trust shall terminate at such time it determines the remaining assets of PREPA ERS, combined with the remaining assets of the PREPA PayGo Trust upon transfer to the PREPA ERS, are sufficient to pay all remaining annual retirement benefits to the Participants. Upon termination of the PayGo Trust, all its assets, property and causes of action shall be transferred to the PREPA ERS.

**End of Document**