**DRAFT**

NATIONAL CUSTODIAL TRUST

———————

TRUST AGREEMENT

among

Autoridad de Energía Eléctrica de Puerto Rico, whose name in English is PUERTO RICO ELECTRIC POWER AUTHORITY, as Depositor,

NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,

[●],
as Trustee

and

[●],
as Delaware Trustee

DATED AS OF

[●], 2023

———————

TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| SECTION 1. | STANDARD TERMS | 1 |
| SECTION 2. | DEFINED TERMS | 1 |
| SECTION 3. | ORGANIZATION OF TRUST | 2 |
| SECTION 4. | NOTIONAL AMOUNT | 2 |
| SECTION 5. | BOOK-ENTRY TRUST UNITS | 2 |
| SECTION 6. | SCHEDULES | 3 |
| SECTION 7. | PATRIOT ACT | 3 |
| SECTION 8. | GOVERNING LAW; VENUE; JURY WAIVER | 3 |
| SECTION 9. | FORCE MAJEURE | 4 |
| SECTION 10. | INTENT OF PARTIES | 4 |
| SECTION 11. | NON-PETITION | 7 |
| SECTION 12. | CERTAIN TERMS REGARDING THE DEPOSITOR | 7 |

TRUST AGREEMENT

THIS TRUST AGREEMENT, dated as of [●], 2023 (this "**Agreement**"), is hereby executed by and among Autoridad de Energía Eléctrica de Puerto Rico, whose name in English is PUERTO RICO ELECTRIC POWER AUTHORITY ("**PREPA**" or the "**Depositor**"), NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION ("**National**"), [●], as trustee (the "**Trustee**") and [●], as Delaware trustee (the "**Delaware Trustee**", and together with the Trustee, the "**Trustees**") under this Agreement and the Standard Terms to Trust Agreement, dated as of [●], 2023 (the "**Standard Terms**"), all the provisions of which are incorporated herein and shall be a part of this Agreement as if set forth herein in full (this Agreement with the Standard Terms so incorporated, the "**Trust Agreement**").

PRELIMINARY STATEMENT

The parties are entering into the Trust Agreement for purposes of forming the National Custodial Trust, a Delaware statutory trust (the "**Trust**"). In furtherance of the structure approved in the PREPA Plan and in order to facilitate the implementation thereof, the Trust is being established by the Depositor and the Trustees solely for the benefit of and on behalf of the applicable National Legacy Bondholders holding the National Legacy Bonds CUSIPs set forth on **Schedule I** hereto that elected National Non-Commutation Treatment Option 2B pursuant to the terms and provisions of the PREPA Plan. Except for the establishment of the Trust and the deposit therein pursuant to the PREPA Plan at the election of the applicable National Legacy Bondholders, the Depositor shall have no other rights or obligations with respect to the Trust or with respect to any securities payable from the assets thereof. The Trustees shall file a Certificate of Trust of the Trust with the Office of the Secretary of State of the State of Delaware on the date hereof. The Trust shall issue beneficial ownership interests consisting of trust units to be known as the "Trust Units" and each holder of a Trust Unit, a "Trust Unit Holder" or "Holder". The issue of Trust Units authorized under this Trust Agreement shall be issued in book-entry form and be transferable in the Unit Registry maintained by the Unit Registrar.

Section 1.   **Standard Terms**.

The Trustees acknowledge that the Standard Terms prescribe certain obligations of the Trustees with respect to the Trust and the Trust Units. The Trustees agree to observe and perform such prescribed duties, responsibilities and obligations, and acknowledge that the Standard Terms (including without limitation, the rights, protections, indemnities and immunities afforded to the Trustees thereunder) are and shall be a part of this Agreement to the same extent as if set forth herein in full.

Section 2.   **Defined Terms**.

With respect to the Trust Units and in addition to the definitions set forth in the Standard Terms, the following provisions shall govern the defined terms set forth below. To the extent the meanings assigned to the defined terms set forth below are inconsistent with the meanings assigned to such terms in the Standard Terms, the meanings assigned herein shall control. Capitalized terms used herein but not defined herein or in the Standard Terms shall have the meanings ascribed to them in the PREPA Plan.

"**Delaware Trust Statute**": Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code § 3801 *et seq.,* as the same may be amended from time to time.

"**Maturity Date**": The original maturity date of the relevant National Legacy Bonds (prior to acceleration).

"**U.S.A. PATRIOT Act**": The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Title III of Pub. L. 107 56 (signed into law October 26, 2001) and its implementing regulations.

**Section 3.      Organization of Trust**.

The Trust is being created on the date hereof pursuant to the execution of this Agreement and the filing by the Trustees of a Certificate of Trust of the Trust (the "**Certificate of Trust**") with the Office of the Secretary of State of the State of Delaware (the "**Secretary of State**"), under the name "National Custodial Trust" in which name the Trust shall have power and authority and is hereby authorized and empowered, without the need for further action on the part of the Trust, and the Trustee shall have power and authority, and is hereby authorized and empowered, to conduct the activities of the Trust. It is the intention of the parties hereto that the Trust hereby created constitutes a statutory trust under the Delaware Trust Statute and that the Trust Agreement (including the Standard Terms) constitutes the governing instrument of the Trust. Notwithstanding any other provision of this Agreement to the contrary, the Trustees are hereby authorized and directed to, and shall, on the date hereof, execute and file the Certificate of Trust with the Secretary of State in substantially the form attached as **Exhibit A** hereto. The Trustee shall have power and authority, and is hereby authorized and empowered to take all actions on behalf of the Trust as set forth in the Trust Agreement and each of the Trustees is authorized and empowered to execute and file with the Secretary of State any other certificate required or permitted under the Delaware Trust Statute to be filed with the Secretary of State. The office of the Trust shall be in the care of the Trustee at the Corporate Trust Office or at such other address as the Trustee may designate by written notice to the Trust Unit Holders and National.

**Section 4.      Notional Amount**.

The aggregate Notional Amount of the Trust Units that may be executed and delivered under this Agreement is limited to the outstanding principal amount as of the Effective Date of the National Legacy Bonds deposited into the Trust as set forth on **Schedule I** hereto.

**Section 5.      Book-Entry Trust Units**.

(a)     The Trust Units shall be issued in book-entry form and be transferable through the Unit Registry maintained by the Unit Registrar. No owner of Trust Units will receive a definitive certificate representing such owner's interest in such Trust Units.

(b)     The Trustee may charge a reasonable service fee for any such registration of transfer or exchange, and the Trustee or the Unit Registrar may require payment of a sum sufficient to cover any tax or governmental charge payable in connection therewith or any expense incurred thereby.

**Section 6.** **Schedules**.

**Schedule I** and **Schedule II** are attached hereto and incorporated herein by reference as contemplated herein or by the Standard Terms.

**Section 7.** **Patriot Act**.

The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustees, like all financial institutions and in order to help fight the funding of terrorism and money laundering, are required to obtain, verify, and record information that identifies each person or legal entity that establishes a relationship or opens an account with the Trustees. The parties to this Trust Agreement agree that they will provide the Trustees with such information as they may request in order for the Trustees to satisfy the requirements of the U.S.A. PATRIOT Act.

**Section 8.** **Governing Law; Venue; Jury Waiver**.

THIS AGREEMENT, THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, AND ANY CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF, OR LEADING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY OR PERFORMANCE, SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. EACH PARTY HERETO HEREBY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, OR (B) IN ANY WAY IN CONNECTION WITH OR PERTAINING TO OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. EACH OF THE PARTIES IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURTS SITTING IN THE STATE OF DELAWARE IN RESPECT OF ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDINGS IN ANY SUCH COURT AND ANY CLAIM THAT ANY PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**Section 9.** <u>**Force Majeure**</u>.

In no event shall the Trustees be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, epidemics, pandemics and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that the Trustee shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

**Section 10.** <u>**Intent of Parties**</u>.

(a) The parties hereto intend that, for all purposes, the transfer to the Trust of the Trust Estate shall be, and shall be construed as, a transfer of such Trust Estate on behalf of the applicable National Legacy Bondholders in lieu of a transfer of such assets to the Trust directly by the applicable National Legacy Bondholders and shall constitute, in all respects, an absolute, irrevocable transfer, conveyance, and assignment, without recourse, of the Trust Estate to the Trust, and immediately after giving effect to the transfer contemplated hereby on the Effective Date, the Depositor will have no further interest (legal or equitable) in the Trust Estate and the Trust Estate will not be property of the Depositor or of the Depositor's estate in the event of a liquidation, reorganization, or similar proceeding of the Depositor and the Trust shall have the absolute right to take whatever action it may deem appropriate with respect to the Trust Estate. The parties agree to treat the transfer contemplated hereby for all purposes (including financial accounting purposes) as an absolute transfer on all relevant books, records, financial statements and other documents.

(b) The Trust Estate will be held by the Trust free and clear of any lien or encumbrance of any Person claiming through or under the Depositor.

(c) Notwithstanding anything to the contrary in the Trust Agreement or in any other document governing the formation, management, or operation of the Trust, if and for so long as any Trust Unit remains outstanding, none of the Trust Unit Holders, National, the Trustees, nor any other Person shall authorize, cause or permit the Trust to (and the Trust shall not and neither Trustee shall directly take any action that to its actual knowledge would constitute any of the following):

    (i) engage in any business or engage in any activity other than those activities expressly permitted under <u>Section [2.03]</u> of the Standard Terms and will not have, incur, guarantee or become liable for any indebtedness or obligations except as expressly contemplated in the Trust Agreement;

    (ii) acquire or own any assets other than the Trust Estate or lease (as lessor) any assets;

    (iii) fail to preserve its existence as an entity duly formed, validly existing and in good standing (if applicable) under the laws of the State of Delaware, or

|      |      |
|------|------|
|      | fail to remain qualified to do business in each state in which such qualification is required, for any reason, including, but not limited to, in order to perform its obligations under the Trust Agreement; |
| (iv) | fail to observe at any time any necessary, appropriate and customary corporate, organizational, company and/or other legal formalities to maintain its separate existence; |
| (v) | fail to act solely in its own name or in the name of the Trustee on behalf of the Trust through duly authorized agents in the conduct of its activities; |
| (vi) | provide for the payment of its expenses, indebtedness or other obligations other than from its own separate assets; |
| (vii) | have its debts or other obligations guaranteed by any other person or hold itself out as responsible for the debts or other obligations of any other Person; |
| (viii) | commingle its assets or liabilities with those of any other Person; |
| (ix) | fail to maintain its own records, books of account, bank accounts, accounting records and other entity documents separate and apart from those of any other Person; |
| (x) | divert funds for any purpose other than as set forth in the Trust Agreement; |
| (xi) | enter into any contract, agreement or transaction with any Trust Unit Holders, the Depositor, National, principal or other affiliate of the Trust, or any shareholder, general partner, member, principal or affiliate thereof, except as expressly authorized in the Trust Agreement; |
| (xii) | maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person; |
| (xiii) | incur, create or assume any indebtedness of or buy or hold evidence of indebtedness issued by any other Person (other than as contemplated by the Trust Agreement); |
| (xiv) | guarantee or hold itself out to be responsible for the debts of another Person or otherwise pledge its assets to secure the obligations of any other Person, or hold out its credit or assets as being available to satisfy the obligations of any other Person or seek to incur, create or assume any indebtedness based upon the assets of any other Person; |
| (xv) | perform any duties or obligations of the Depositor or any other Person; |

5

(xvi) make any loans or advances to any third party, including, without limitation, any Trust Unit Holder, Depositor or Affiliate of the Trust, or any principal or Affiliate thereof;

(xvii) fail to file its own tax returns as and if required to do so by applicable law (subject to any permitted extensions and except to the extent the Trust is treated as a grantor trust for tax purposes) and to pay any taxes required to be paid by it under applicable law;

(xviii) fail to hold itself out to the public as a legal entity separate and distinct from any other Person, fail to conduct its activities solely in its own name or in the name of the Trustee and as a separate and distinct entity, or fail to correct any known misunderstanding regarding its separate identity;

(xix) identify itself as a department or division of any other Person;

(xx) fail to observe all formalities required of a Delaware statutory trust;

(xxi) fail to pay its expenses and liabilities only out of its own funds to the extent such funds are available and fail to hold its assets only in its own name; provided, however, the foregoing shall not require the Depositor to sell any assets, or make any capital contribution, to the Trust;

(xxii) conduct any oral or written communication, including, without limitation, letters, invoices, purchase orders, contracts, statements and applications, other than in its own name or in the name of the Trustee on behalf of the Trust;

(xxiii) (a) institute proceedings to have the Trust declared or adjudicated a bankrupt or insolvent, (b) consent to the institution of bankruptcy or insolvency proceedings against the Trust, (c) file a petition or consent to a petition seeking reorganization or relief on behalf of the Trust under any applicable federal or state law relating to bankruptcy, (d) consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or any similar official) of the Trust or a substantial portion of the property of the Trust, (e) make any assignment for the benefit of the Trust's creditors, (f) cause the Trust to admit in writing its inability to pay its debts generally as they become due or (g) take any action, or cause the Trust to take any action, in furtherance of any of the foregoing;

(xxiv) supplement, modify, amend, restate, replace, waive or repeal this Section 10 or Sections [2.03, 2.04, 9.01 or 9.03] of the Standard Terms, or the definitions used in such Sections, in each case except for any supplement, modification, amendment or restatement of any such provision that (x) corrects any error and (y) would not (individually or together with other changes) be reasonably likely to cause the Trust to no longer be a "special purpose entity" in accordance with applicable law and standards; or

   (xxv) supplement, modify, amend, restate, replace, waive or repeal any portion of this Trust Agreement or the Standard Terms except as expressly permitted by Section [9.01] of the Standard Terms.

 (d) Failure of the Trust, the Depositor, National, any Trust Unit Holder, any Trustee or any other Person on behalf of the Trust, to comply with any of the foregoing covenants set forth in this Section 10 shall not affect the status of the Trust as a separate legal entity (unless in violation of the Delaware Trust Statute) nor cause the Trust to dissolve or terminate.

 (e) To the extent that any provision of this Section 10 conflicts with, violates or otherwise is in contravention with any other provision of the Trust Agreement or the Standard Terms, the parties hereto and each Trust Unit Holder agree that the terms set forth in this Section 10 shall be controlling as expressly set forth herein.

**Section 11.** **Non-Petition**.

 The Depositor, National, the Trustee and the Delaware Trustee, by entering into this Agreement, and the Trust Unit Holders, by electing National Non-Commutation Treatment Option 2B, hereby covenant and agree that they will not at any time institute against the Trust, or join in instituting against the Trust, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any federal or state bankruptcy or similar law; provided, however, that in the event a bankruptcy or similar proceeding is instituted against the Trust by another person, the Trustee may file appropriate proofs of claim. For the avoidance of doubt, no adequate remedy at law exists with respect to any breach of this Section 11, and specific performance shall in all circumstances be available as a remedy for the enforcement of this Section 11.

**Section 12.** **Certain Terms Regarding the Depositor**.  For the avoidance of doubt and notwithstanding any terms appearing herein or elsewhere to the contrary:

 (a) The obligations of the Trust under the Trust Units and this Trust Agreement are non-recourse obligations of the Trust payable solely from the Trust Estate, and following realization of the Trust Estate, and its reduction to zero, any claims of the Holders of the Trust Units shall be extinguished. The Trust Units are not obligations of, and are not guaranteed by, the Depositor, and no recourse shall be had against any Officer, director, manager, employee, security holder or incorporator of the Depositor, or its successors or assigns, for the payment of any amounts payable under the Trust Units or the payment or performance of any obligation of the Trust under or pursuant to this Trust Agreement.

 (b) The recitals contained in this Trust Agreement and in the Trust Units, shall be taken as the statements of the Trust, and the Depositor assumes no responsibility for their correctness. The Depositor makes no representation as to the validity or sufficiency of this Trust Agreement, of the Trust, or of the Trust Units.

 (c) In purchasing or acquiring any Trust Units, the purchaser or acquirer shall be deemed to acknowledge, represent to and agree, and in purchasing or acquiring any book-entry beneficial interests in the Trust Units, the purchaser or acquirer shall be deemed to acknowledge, represent

and agree, that none of the Depositor nor any of its affiliates, is acting as a fiduciary or a financial or investment advisor for such purchaser or acquirer, and such purchaser or acquirer is not relying (for purposes of making any investment decision or otherwise) upon any advice, representations or recommendations (in each case whether written or oral) of the Depositor or any of its affiliates.

(d) The Depositor shall not be accountable for the use or application by the Trust of the Trust Units or the proceeds thereof or any amounts paid to the Trust pursuant to the provisions of this Trust Agreement.

**IN WITNESS WHEREOF**, the Depositor, National, the Trustee and the Delaware Trustee have caused this Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the date first set forth above.

**PUERTO RICO ELECTRIC POWER AUTHORITY,**
As Depositor

By: _____
Name: _____
Its: _____


**NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

By: _____
Name: _____
Its: _____


[●],
As Delaware Trustee

By: _____
Name: _____
Its: _____


[●],
As Trustee

By: _____
Name: _____
Its: _____

9

# SCHEDULE I

## National Legacy Bonds Schedule

| Insured CUSIP | Original CUSIP | Insurance Policy Number(s) | Tax-Exempt/Taxable | Coupon | Original Maturity | Outstanding Principal Amount as of the Effective Date |
|---|---|---|---|---|---|---|
| 74526QCM2 | 74526QCM2 | FG04010536 | Tax-Exempt | 5.00% | 7/1/2024 | [●] |
| 74526QDD1 | 74526QDD1 | FG05010237 | Tax-Exempt | 5.00% | 7/1/2024 | [●] |
| 74526QES7 | 74526QES7 | 460020 | Tax-Exempt | 5.00% | 7/1/2024 | [●] |
| 74526QET5 | 74526QET5 | 460020 | Tax-Exempt | 4.25% | 7/1/2024 | [●] |
| 74526QPH9 | 74526QPH9 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2024 | [●] |
| 74526QSW3 | 74526QKS0 | 505200 | Tax-Exempt | 5.00% | 7/1/2024 | [●] |
| 74526QCN0 | 74526QCN0 | FG04010536 | Tax-Exempt | 5.00% | 7/1/2025 | [●] |
| 74526QEU2 | 74526QEU2 | 460020 | Tax-Exempt | 5.00% | 7/1/2025 | [●] |
| 74526QEV0 | 74526QEV0 | 460020 | Tax-Exempt | 4.30% | 7/1/2025 | [●] |
| 74526QPJ5 | 74526QPJ5 | 496040 | Tax-Exempt | 5.25% | 7/1/2025 | [●] |
| 74526QPK2 | 74526QPK2 | 496040 | Tax-Exempt | 5.25% | 7/1/2026 | [●] |
| 74526QSY9 | 74526QKU5 | 506190 | Tax-Exempt | 5.00% | 7/1/2026 | [●] |
| 74526QPM8 | 74526QPM8 | 496040 | Tax-Exempt | 5.25% | 7/1/2029 | [●] |
| 74526QPN6 | 74526QPN6 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2030 | [●] |
| 74526QPQ9 | 74526QPQ9 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2032 | [●] |
| 74526QAR3 | 74526QAR3 | 421620 | Tax-Exempt | 4.75% | 7/1/2033 | [●] |
| 74526QPR7 | 74526QPR7 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2033 | [●] |
| 74526QPS5 | 74526QPS5 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2034 | [●] |
| 74526QPT3 | 74526QPT3 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2035 | [●] |

**SCHEDULE II**

**Relevant Trust Information**

I. **Trust Accounts**

| Account | Account Number | Initial Deposits |
|---|---|---|
| Tax-Exempt Bond Account | [●] | [●] |
| Taxable Bond Account | [●] | [●] |
| Insurance Policy Account | [●] | [●] |

II. **References in Standard Terms**

In the Standard Terms, CUSIP [●] is referred to as a:

(i)  [●]; and

(ii) [●].

See Section 2.01[●] of the Standard Terms for more information regarding the Trust Assets deposited in this Trust.

See Section 3.01[●] of the Standard Terms for more information regarding the accounts for this Trust.

See Section 3.02[●] of the Standard Terms for more information regarding distributions to be made in connection with this Trust.

## **EXHIBIT A**

FORM OF CERTIFICATE OF TRUST OF
NATIONAL CUSTODIAL TRUST

THIS Certificate of Trust of National Custodial Trust (the "Trust"), is being duly executed and filed by the undersigned, as trustees, to form a statutory trust under the Delaware Statutory Trust Act (12 DEL. CODE, Sections 3801 *et seq*.) (the "Act").

1. NAME. The name of the statutory trust formed hereby is "National Custodial Trust."

2. DELAWARE TRUSTEE. The name and business address of a trustee of the Trust having its principal place of business in the State of Delaware are [●].

3. EFFECTIVE DATE. This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned, being the trustees of the Trust, have executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

[●],
as Delaware Trustee


By:_____
Name:
Title:


[●],
as Trustee


By:_____
Name:
Title:

A-1