**DRAFT**

---

# STANDARD TERMS

# TO

# TRUST AGREEMENT[1]

Autoridad de Energía Eléctrica de Puerto Rico, whose name in English is PUERTO RICO ELECTRIC POWER AUTHORITY, as Depositor,

NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,

[●],
as Trustee,

and

[●],
as Delaware Trustee,

Custodial Trust Units

Dated as of [●], 2023

---

[1] [**NTD**:  Please note this draft remains subject to ongoing review by counsel and National.]

# TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS ................................................................................. 1
     Section 1.01.    Defined Terms .......................................................... 1
     Section 1.02.    Other Definitional Provisions .................................... 7

ARTICLE II     TRUST ESTATE ............................................................................. 8
     Section 2.01.    Trust Assets .............................................................. 8
     Section 2.02.    Acceptance by Trustee .............................................. 9
     Section 2.03.    Purpose, Activities of Trust .................................... 10
     Section 2.04.    Limitations of Trust ................................................ 11
     Section 2.05.    Voting Rights .......................................................... 11

ARTICLE III    ADMINISTRATION OF THE TRUST ............................................. 12
     Section 3.01.    Accounts ................................................................. 12
     Section 3.02.    Distributions ........................................................... 12
     Section 3.03.    National Advancement Option ................................. 13
     Section 3.04.    Sale of New Bonds .................................................. 14
     Section 3.05.    Adjustments to Principal Amounts ............................ 14
     Section 3.06.    Payments on National Insurance Policies .................. 15
     Section 3.07.    Payments at Maturity Date ....................................... 16

ARTICLE IV     REPORTING/REMITTING TO TRUST UNIT HOLDERS ............... 17
     Section 4.01.    Statements to Trust Unit Holders ............................. 17
     Section 4.02.    Compliance with Withholding Requirements ............ 17

ARTICLE V      TRUST UNITS ............................................................................. 18
     Section 5.01.    Trust Units .............................................................. 18
     Section 5.02.    Registration of Units ............................................... 18
     Section 5.03.    No Obligation to Register ........................................ 19
     Section 5.04.    Persons Deemed Owners ......................................... 19
     Section 5.05.    Appointment of Trust Unit Paying Agent ................. 19

ARTICLE VI     CONCERNING THE TRUSTEE ...................................................... 19
     Section 6.01.    Duties of Trustee .................................................... 19
     Section 6.02.    Certain Matters Affecting Trustee ............................ 20
     Section 6.03.    Trustee Not Liable for Trust Units or Securities ....... 23
     Section 6.04.    Trustee May Own Units ........................................... 23
     Section 6.05.    Trustee's Fees and Expenses ................................... 23
     Section 6.06.    Eligibility Requirements for Trustee, Successor
                      Trustee, and Trust Unit Paying Agent ..................... 24
     Section 6.07.    Resignation and Removal of Trustee ........................ 25
     Section 6.08.    Successor Trustee ................................................... 25

i

## TABLE OF CONTENTS
### (continued)

Page

Section 6.09.    Merger or Consolidation of Trustee ........................................... 26
Section 6.10.    Appointment of Custodians ...................................................... 26
Section 6.11.    Trustee May Enforce Claims Without Possession of
                 Trust Units .......................................................................... 26
Section 6.12.    Trustee Indemnity ................................................................. 27

ARTICLE VII   TERMINATION OF TRUST ........................................................ 27

Section 7.01.    Termination; No Redemption Rights ......................................... 27
Section 7.02.    Procedure for Termination ..................................................... 27

ARTICLE VIII  TAX PROVISIONS ....................................................................... 28

Section 8.01.    Grantor Trust Provisions ........................................................ 28
Section 8.02.    Characterization .................................................................... 29
Section 8.03.    Grantor Trust Administration .................................................. 29
Section 8.04.    Reports to Trust Unit Holders and Tax Authorities .................. 30

ARTICLE IX    MISCELLANEOUS PROVISIONS ................................................. 31

Section 9.01.    Amendment of Trust Agreement .............................................. 31
Section 9.02.    Counterparts; Electronic Signatures ......................................... 32
Section 9.03.    Limitation on Rights of Trust Unit Holders .............................. 32
Section 9.04.    Notices ................................................................................ 34
Section 9.05.    Severability of Provisions ....................................................... 34
Section 9.06.    Third-Party Beneficiaries ....................................................... 35
Section 9.07.    Acts of Trust Unit Holders ..................................................... 35
Section 9.08.    Headings .............................................................................. 35
Section 9.09.    No Waiver; Cumulative Remedies ........................................... 35
Section 9.10.    Merger and Integration .......................................................... 35
Section 9.11.    Delaware Trustee ................................................................... 36
Section 9.12.    Timing of Distributions and Other Trust Actions ..................... 37

## RECITALS

Autoridad de Energía Eléctrica de Puerto Rico, whose name in English is PUERTO RICO ELECTRIC POWER AUTHORITY ("**PREPA**" or the "**Depositor**"), and NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION ("**National**") have entered into a Trust Agreement (the "**Trust Agreement**") with [●], as trustee (the "**Trustee**") and [●], as Delaware trustee (the "**Delaware Trustee**" and together with the Trustee, the "**Trustees**"), which Trust Agreement provides for the issuance of trust units ("**Trust Units**"), each evidencing a beneficial ownership interest in the property owned by the Trust created by the Trust Agreement.  These Standard Terms are a part of, and are incorporated by reference into, the Trust Agreement.

## STANDARD PROVISIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants, representations and warranties made in the Trust Agreement, the Depositor, National and the Trustees agree as follows:

## ARTICLE I

## DEFINITIONS

**Section 1.01.  *Defined Terms.***

Except as otherwise specified herein or in the Trust Agreement or as the context may otherwise require, whenever used herein, the following words and phrases shall have the meanings specified in this Article.  Capitalized words and phrases used herein but not defined herein shall, when applied to a Trust, have the meanings set forth in or pursuant to the Trust Agreement.

"**Adverse Trust Event**": As defined in Section 8.03 hereof.

"**Affiliate**": Any person or entity controlling, controlled by or under common control with the Depositor, National or either of the Trustees, as the context may require.  "Control" means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise.  "Controlling" and "controlled" shall have meanings correlative to the foregoing.

"**Amended Election Notice**": The *Amended Election Notice for National Insured Bondholders With Claims in Class 5* attached as Exhibit A to the *Informative Motion Regarding Amended Election Notice for National Insured Bondholders With Claims in Class 5 of the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* filed at Docket No. 3471.

"**Bankruptcy Code**": Title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time.

1

"**Bond Documents**": The bond resolutions, indentures, trust agreements, or similar agreements pursuant to which (i) the National Legacy Bonds, and (ii) the New Bonds, were issued.

"**Bond Sale**": As defined in Section 3.04(a) hereof.

"**Bonds**": Collectively, (i) the PREPA Revenue Bonds and (ii) the New Bonds.

"**Business Day**": Any day that is not a Saturday, Sunday, holiday, or other day on which commercial banking institutions in the City of New York, the city of San Juan, Puerto Rico or the State of Delaware or, if different, the city and state in which the Corporate Trust Office is located are authorized or obligated by law or executive order to be closed.

"**Cash Proceeds**": As defined in Section 3.04(b) hereof.

"**Code**": The Internal Revenue Code of 1986, as amended.

"**Confirmation Order**": The order of the Title III Court confirming the PREPA Plan in accordance with Section 314 of PROMESA and Section 1129 of the Bankruptcy Code.

"**Corporate Trust Office**": The respective principal corporate trust office of the Trustees at which the Trust is administered from time to time.

"**Custodian**": The Trustee or the agent for the Trustee which shall hold all or a portion of the Trust Estate, or documents relating thereto, with respect to a specific Trust.

"**Distribution**": Any distribution to Trust Unit Holders made pursuant to Section 3.02 hereof.

"**Effective Date**": The "Effective Date" as defined in the PREPA Plan and identified in a public notice by the Oversight Board; provided, however, that any action required by this Trust Agreement to be taken or event required by this Trust Agreement to have occurred on the Effective Date shall be deemed to have been taken or to have occurred on the Effective Date if such action is taken or such event occurs within ten (10) Business Days of the Effective Date.

["**EMMA**": The Electronic Municipal Market Access system operated by the Municipal Securities Rulemaking Board, or, if not available for the purposes provided herein, a website specified by the Trustee. Any obligation to post a document to EMMA shall be understood as an obligation to post such document under the CUSIP for each Trust Unit to which such document relates.]

"**Extraordinary Expenses**": As defined in Section 6.05(b) hereof.

"**Grantor Trust Provisions**": Subpart E of subchapter J of chapter 1 of the Code and section 7701 of the Code, and final Treasury Regulations, published rulings, notices and announcement, promulgated thereunder, as the foregoing may be in effect from time to time.

"**Insurance Policy Account**": As defined in Section 3.01(c) hereof.

"**Insured Amount**": As of any date, the accrued and unpaid interest on, and outstanding principal amount of, such National Legacy Bond as of such date.

"**Maturity Date**": As defined in the Trust Agreement.

"**National Acceleration Option**": National's right, in accordance with (i) the terms of the National Insurance Policies, (ii) the terms of [Article XX(B) and] Article XX(C) of the PREPA Plan, and/or (iii) Section 3.03 hereof to elect to discharge its payment obligations with respect to any National Legacy Bonds CUSIP in whole or in part prior to the stated Maturity Date thereof by paying the applicable National Acceleration Price to the holders thereof.

"**National Acceleration Price**": With respect to any National Insured Bond being accelerated or redeemed, an amount equal to the outstanding principal amount of such National Insured Bond plus the accrued and unpaid interest thereon as of the date of payment.

"**National Advancement Option**": Either (i) the National Acceleration Option, or (ii) the rights assigned by PREPA to National pursuant to Article XX(D) of the PREPA Plan to redeem and call in whole or in part the National Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by National as if it were PREPA for such purpose, and any amounts due in connection with such redemption shall be equal to the lesser of the applicable redemption price and the National Acceleration Price.

"**National Deferred Expenses**":  As defined in Section 6.05(c) hereof. Any Trustee Costs or Trust expenses paid in cash to the Trustee or the Trust by National.

"**National Insurance Policies**": As defined in the PREPA Plan.

"**National Insured Bonds**": As defined in the PREPA Plan and set forth in the Exhibit [●] herein.

"**National Insurer Event**": A default by National on its payment obligations under an applicable National Insurance Policy, which default is continuing.

"**National Legacy Bond**": Any National Insured Bond the beneficial holder of which has validly elected National Non-Commutation Treatment Option 2B.

"**National Legacy Bondholder**": The beneficial holder of a National Legacy Bond.

"**National Legacy Bonds CUSIP**": Any maturity of National Legacy Bonds that bears a unique CUSIP such that such maturity of National Legacy Bonds is separately identifiable from other maturities of National Legacy Bonds with unique CUSIPs; provided, however, that for all Secondary Market National Legacy Bonds, the "National Legacy Bonds CUSIP" for purposes of this Trust Agreement shall be the CUSIP of the related custody receipt evidencing a beneficial interest in such Secondary Market National Legacy Bonds and the related National Insurance Policy rather than the CUSIP of the underlying Secondary Market National Legacy

3

Bonds.  For the avoidance of doubt, each National Legacy Bonds CUSIP is either a Primary Market National Legacy Bonds CUSIP or a Secondary Market National Legacy Bonds CUSIP.

"**National Non-Commutation Treatment**": As defined in the PREPA Plan.

"**National Non-Commutation Treatment Option 2B**": The treatment option 2B set forth in the Amended Election Notice, pursuant to which a holder validly elects to receive the National Non-Commutation Treatment and further elects to (i) agree to and not dispute acceleration of such holder's National Insured Bonds and the obligations of National with respect to such holder under the applicable National Insurance Policy, in each case, in National's sole discretion, on the Effective Date or any time thereafter, and (ii) (A) deposit, or be deemed to have deposited, among other things, such holder's Pro Rata Share of the National Trust Consideration, the National Insured Bonds allocable to such holder, and the related National Insurance Policies into the applicable National Trust, (B) be deemed to have received such holder's Pro Rata Share of the National Trust Consideration and National Certificates in consideration therefor, and (C) have no recourse to National or the National Insurance Policies other than as provided for under the terms of the National Trust.

"**National PSA**": That certain *Plan Support and Settlement Agreement*, dated as of January 31, 2023, by and among PREPA, the Oversight Board, and National, including any exhibits or schedules thereto, as it may be amended, modified, or supplemented in accordance with the terms thereof, but in all events only to the extent National remains a party thereto and has not terminated such agreement.

"**New Bonds**": As defined in the PREPA Plan, and including the Taxable New Bonds and Tax-Exempt New Bonds.

"**Notice of Claim and Certificate**": As defined in Section 3.06(a) hereof.

"**Notional Amount**": As of any day, the aggregate outstanding Notional Amount of all Trust Units shall be the aggregate outstanding principal amount of all National Legacy Bonds as of such day, including after giving effect to any reduction pursuant to Section 3.05.

"**Officer**": When used with respect to either of the Trustees, any senior vice president, any vice president, any assistant vice president, any assistant treasurer, any trust officer, any assistant secretary in the Corporate Trust Office of either of the Trustees, or any other officer of the Trustees customarily performing functions similar to those performed by the persons who at the time shall be such officers, and who, in each case, shall have direct responsibility for the administration of the Trust Agreement (including these Standard Terms), and also to whom with respect to a particular corporate trust matter such matter is referred because of such officer's knowledge of and familiarity with the particular subject.  With respect to any other Person, the chairman of the board, the president, a vice president (however designated), the treasurer or controller.

["**Opinion of Counsel**": A written opinion of either (i) nationally recognized counsel who is reasonably acceptable to the parties to whom it is delivered, or (ii) internal counsel to National or any of its Affiliates.]

4

"**Original Scheduled Interest Payment Date**": A date, other than the Maturity Date, on which a scheduled payment of interest is due in respect of such National Legacy Bond in accordance with the terms of the applicable National Insurance Policy.

"**Original Scheduled Payment Date**": An Original Scheduled Interest Payment Date or Original Scheduled Principal Payment Date, as applicable, including the Maturity Date.

"**Original Scheduled Principal Payment Date**": A date on which a scheduled payment of principal is due in respect of such National Legacy Bond in accordance with the terms of the applicable National Insurance Policy, including the Maturity Date.

"**Oversight Board**": As defined in the PREPA Plan.

"**Payment Shortfall**": As defined in Section 3.06(a) hereof.

"**Person**": Any individual, corporation, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency, instrumentality, or political subdivision thereof.

"**PREPA Fiscal Agent**": U.S. Bank Trust National Association, New York, New York, solely in its capacity as fiscal agent with respect to the PREPA Revenue Bonds.

"**PREPA Payment Shortfall**": As defined in Section 3.06(b) hereof.

"**PREPA Payments**": Payments received by the Trustee on account of New Bonds.

"**PREPA Plan**": The [*Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, Case No. 17-3567-LTS, ECF No. 23630], including the exhibits and schedules thereto, as the same is further amended, supplemented, or modified from time to time in accordance with the provisions of PROMESA and the Bankruptcy Code, but in all events solely to the extent in form and substance reasonably satisfactory to National and otherwise consistent with the National PSA.

"**PREPA Revenue Bonds**": As defined in the PREPA Plan.

"**Primary Market National Legacy Bonds CUSIP**": Any National Legacy Bonds CUSIP that is not a Secondary Market National Legacy Bonds CUSIP.  For the avoidance of doubt, the Primary Market National Legacy Bonds CUSIPs consist of National Legacy Bonds CUSIPs listed on **Schedule 1** hereto.

"**PROMESA**": The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §2101, et. seq.

"**pro rata**": Unless otherwise stated, any pro rata payment or distribution made to, or any pro rata allocation of any cost or expense borne by, (i) Holders of Trust Units for a particular National Legacy Bonds CUSIP shall be calculated based on the Notional Amount of Trust Units outstanding with respect to such National Legacy Bonds CUSIP, and (ii) all Holders of Trust Units without regard to National Legacy Bonds CUSIP shall be calculated

5

based on the outstanding principal amount of the National Legacy Bonds underlying such Trust Units.

"**Reorganized PREPA**": As defined in the PREPA Plan.

"**Requisite Trust Unit Holders**": With respect to any Trust, Holders of a majority (measured by outstanding principal amount of the underlying National Legacy Bonds CUSIP) of Trust Units.

"**Sale Notice**": As defined in Section 3.04(a) hereof.

"**Secondary Market National Legacy Bonds**": The National Legacy Bonds that are insured through National Insurance Policies issued in the secondary market.

"**Secondary Market National Legacy Bonds CUSIP**": The National Legacy Bonds CUSIP of a Secondary Market National Legacy Bond, consisting of the CUSIP of the related custody receipt evidencing a beneficial interest in such Secondary Market National Legacy Bond and the related National Insurance Policies.  For the avoidance of doubt, the Secondary Market National Legacy Bonds CUSIPs consist of National Legacy Bonds CUSIPs listed on **Schedule 2** hereto.

"**Securities**": Collectively, the National Legacy Bonds and the New Bonds.

"**Securities Act**": The Securities Act of 1933, as amended.

"**Standard Terms**": These standard terms, as amended or supplemented, incorporated by reference into the Trust Agreement.

"**Subject Bonds**": As defined in Section 3.04(a) hereof.

"**Tax Costs**": As defined in Section 8.04(c) hereof.

"**Taxable Bond Account**": As defined in Section 3.01(b) hereof.

"**Taxable New Bonds**": New Bonds that are not tax-exempt bonds (if any).

"**Tax-Exempt Bond Account**": As defined in Section 3.01(a) hereof.

"**Tax-Exempt New Bonds**": New Bonds that are tax-exempt bonds.

"**Termination Notice**": As defined in Section 7.02 hereof.

"**Title III Case**": The Title III case under PROMESA pending for PREPA in the Title III Court, captioned as *In re Financial Oversight & Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority* (Case No. 17-BK-4780-LTS (D.P.R.)).

"**Title III Court**": The United States District Court for the District of Puerto Rico or such other court having jurisdiction over the Title III Case.

6

"**Treasury Regulations**": Regulations, including proposed or temporary regulations, promulgated under the Code. References herein to specific provisions of regulations, including proposed or temporary regulations shall include analogous provisions of final Treasury Regulations as well as any successor or replacement Treasury Regulations.

"**Trust**": With respect to each National Legacy Bonds CUSIP, the separate trust formed pursuant to the applicable Trust Agreement.

"**Trust Assets**": With respect to each Trust, as applicable: (i) the property to be deposited into and/or held by such Trust pursuant to Section 2.01 hereof, (ii) any other property that National may determine, in its sole discretion, to deposit in the applicable Trust for the benefit of the Trust Unit Holders, and (iii) any proceeds of any of the foregoing.

"**Trust Estate**": Collectively, and with respect to any Trust, (i) the Trust Assets deposited and held in such Trust for the benefit of the Trust Unit Holders, and (ii) any other property deposited and held in such Trust for the benefit of the Trust Unit Holders (if any).

"**Trust Unit**": With respect to each Trust that is formed for the benefit of the beneficial holders of a National Legacy Bonds CUSIP, the trust unit(s) to be issued by such Trust.

"**Trust Unit Holder**" or "**Holder**": As applicable, (i) a beneficial owner of a Trust Unit, or (ii) National, to the extent National has been subrogated to the rights of a Beneficial Owner of a Trust Unit.

"**Trust Unit Paying Agent**": The paying agent appointed pursuant to Section 5.05 hereof.

"**Trustee Costs**": As defined in Section 6.05(a) hereof.

"**Unit Register**" and "**Unit Registrar**": The register maintained and the registrar appointed pursuant to Section 5.02 hereof.

"**U.S. Person**": A person who is a "United States person" within the meaning of section 7701(a)(30) of the Code.

"**Voting Rights**": Any voting or control rights granted to holders of Securities.

"**WHFIT Regulations**": As defined in Section 8.04(a) hereof.

**Section 1.02.** *Other Definitional Provisions.*

The words "hereof," "herein" and "hereunder" and words of similar import when used in these Standard Terms shall refer to these Standard Terms as a whole and not to any particular provision of these Standard Terms, and Section, subsection, Annex and Exhibit references are to these Standard Terms unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms, and the singular shall include the plural as reqired by context. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." Any reference to any

7

document in these Standard Terms shall be deemed to include any amendment, restatement, supplement or modification thereto.

## ARTICLE II

## TRUST ESTATE

**Section 2.01.   *Trust Assets.***

Pursuant to and in accordance with the Trust Agreement and the PREPA Plan, upon the Effective Date:

(a)   With respect to each National Legacy Bonds CUSIP:

(i)   The Depositor shall, on behalf of each of the National Legacy Bondholders holding National Legacy Bonds CUSIPs, deposit any New Bonds allocable to such National Legacy Bonds CUSIP into the Trust for that National Legacy Bonds CUSIP.

(ii)   As provided in Section 3.01(a) and Section 3.01(b) hereof, the Trustee shall establish and maintain in the name of the Trust:

1.   a Tax-Exempt Bond Account into which any such Tax-Exempt New Bonds (and any proceeds thereof) shall be deposited, and

2.   a Taxable Bond Account into which any such Taxable New Bonds (and any proceeds thereof) shall be deposited;

provided, however, that the Trustee shall transfer from the Taxable Bond Account to the Tax-Exempt Bond Account any Taxable New Bonds which National has notified the Trustee in writing have become Tax-Exempt New Bonds, and from the Tax-Exempt Bond Account to the Taxable Bond Account any Tax-Exempt New Bonds which National has notified the Trustee in writing have become Taxable New Bonds.

(iii)   As provided in Section 3.01(c) hereof, the Trustee shall establish and maintain in the name of the Trust an Insurance Policy Account into which applicable National Legacy Bonds shall be deemed to have been deposited.

(iv)   Pursuant to Article [XXIV.E.7] of the PREPA Plan, the National Legacy Bonds deemed deposited into the Trust shall not be cancelled and all rights and remedies under the existing National Legacy Bonds and the applicable Bond Documents (other than payment obligations of the Depositor and the continuation of any lien granted as security for such National Legacy Bonds) shall remain in full force and effect solely to the extent necessary to preserve any claims relating to the National Legacy Bonds deposited in the Trust under the applicable National Insurance Policy.  Such existing National Legacy Bonds shall not form the basis for the assertion of any claim against the

8

Depositor or Reorganized PREPA. The National Insurance Policies (other than as satisfied in accordance with these Standard Terms) shall be preserved and remain in full force and effect.

(b)     Solely with respect to each Primary Market National Legacy Bonds CUSIP:

(i)     The PREPA Fiscal Agent shall, on behalf of each National Legacy Bondholder holding such Primary Market National Legacy Bonds CUSIP, transfer the National Insurance Policy for that Primary Market National Legacy Bonds CUSIP and any and all agreements, documents and instruments relating to such National Insurance Policy that are within its control to the applicable Trust, and all corresponding rights of the applicable National Legacy Bondholders shall be deemed to have been deposited into the applicable Trust.

(ii)     The Depositor shall, on behalf of each National Legacy Bondholder holding such Primary Market National Legacy Bonds CUSIP, transfer any and all agreements, documents and instruments relating to the National Insurance Policy for that Primary Market National Legacy Bonds CUSIP that are within its control to the applicable Trust, and all corresponding rights of the applicable National Legacy Bondholders shall be deemed to have been deposited into the applicable Trust.

(iii)     Each National Legacy Bondholder holding such Primary Market National Legacy Bonds CUSIP shall be deemed to have deposited its National Legacy Bond(s) into the Trust for the applicable Primary Market National Legacy Bonds CUSIP as of the Effective Date.

(c)     Solely with respect to each Secondary Market National Legacy Bonds CUSIP:

(i)     Each National Insured Bondholder holding custody receipts of such Secondary Market National Legacy Bonds CUSIP will be deemed to have deposited such custody receipts into the applicable Trust.

(ii)     The Trust (as the holder of the applicable custody receipts) and National will be deemed to have collapsed the existing custodial arrangement(s) with respect to such Secondary Market National Legacy Bonds CUSIP, such that the Trust will be deemed to hold the related National Insured Bonds underlying the applicable custody receipts and the related National Insurance Policies, without any further action on the part of the existing custodian(s). In the event a single National Legacy Bonds CUSIP is insured by more than one National Insurance Policy, the Trust for such National Legacy Bonds CUSIP shall be deemed to hold all such National Insurance Policies insuring the National Legacy Bonds CUSIP corresponding to such Trust.

**Section 2.02.   *Acceptance by Trustee.***

(a)     By its execution of the Trust Agreement, the Trustee acknowledges and declares that it will hold or has agreed to hold all documents, instruments, and other property

9

delivered to it or received by it from time to time with respect to the Trust Assets and all other assets included in the definition of Trust Estate, in each case in trust for the exclusive use and benefit of all present and future Trust Unit Holders and for the purpose of administering the trusts created by the Trust Agreement (including these Standard Terms).

(b)    The Trustee represents and warrants that, except as expressly permitted by the Trust Agreement, (i) it has not and will not, other than in its capacity as trustee for the benefit of the Trust Unit Holders, assert any claim or interest in the Trust Estate and will hold (or its agent will hold) such Trust Estate and the proceeds thereof in trust pursuant to the terms of the Trust Agreement, and (ii) it has not encumbered or transferred, and will not encumber or transfer, its right, title or interest in the Trust Estate.

(c)    Except as specifically provided herein, the Trustee shall not sell, pledge or assign any interest in the Trust Estate.

**Section 2.03.  *Purpose, Activities of Trust.***

It is the intention of the parties hereto that the Trust shall not engage in any business or activities other than certain non-business activities in connection with, or relating to the following:

(a)    receiving, accepting, and holding in trust the Trust Estate;

(b)    creating one or more accounts or sub-accounts in accordance with the terms of the Trust Agreement (including these Standard Terms);

(c)    making claims and receiving payments under the National Insurance Policies;

(d)    receiving payments pursuant to the PREPA Plan and the securities issued thereunder;

(e)    issuing one or more series of Trust Units to holders of National Legacy Bonds in accordance with the terms of the Trust Agreement (including these Standard Terms);

(f)    making distributions to the Trust Unit Holders in accordance with the terms of the Trust Agreement (including these Standard Terms);

(g)    coordinating communications with Trust Unit Holders directly;

(h)    following, accepting or acting upon any instruction or direction from National or the Requisite Trust Unit Holders, as applicable, in each case only as expressly permitted in the Trust Agreement;

(i)    making payments and distributions as contemplated by the Trust Agreement (including these Standard Terms); and

(j)    engaging in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto.

10

**Section 2.04.   *Limitations of Trust.***

(a)      Except as otherwise provided herein, the affairs of the Trust will be managed by or under the direction of the Trustee.  None of the Depositor, Reorganized PREPA, or National, or any of their respective Affiliates will have authority to act for, or to assume any obligation or responsibility on behalf of, the Trust or the Trustee in its capacity as Trustee.

(b)      The Trust will keep correct and complete books and records of accounts and minutes of the meetings and other proceedings of the Trust.  Any resolutions, agreements and other instruments will be continuously maintained by the Trustee as official records of the Trust.

(c)      The Trust will provide for its own operating expenses and liabilities from the Trust Estate, including, any expenses of the Trust or Trustee Costs.  General overhead and administrative expenses of the Trust will not be charged or otherwise allocated to the Depositor, Reorganized PREPA, or National or their respective Affiliates.

(d)      All oral and written communications, including letters, invoices, contracts, statements and applications, will be made solely in the name of the Trust if related to the Trust.

(e)      There will be no guarantees made by the Trust with respect to obligations of the Depositor, Reorganized PREPA, or National or their respective Affiliates.  There will not be any indebtedness relating to borrowings or loans between the Trust, the Depositor, Reorganized PREPA, or National or their respective Affiliates; provided, however, that National may own Trust Units.

(f)      The Trust will act solely in its own name, or in the Trustee's name on the Trust's behalf, and through its or the Trustee's duly authorized officers or agents in the conduct of its activities.  The Trust will not:  (i) operate or purport to operate as an integrated, single economic unit with respect to the Depositor, Reorganized PREPA, or National or any other affiliated or unaffiliated entity; (ii) seek or obtain credit or incur any obligation to any third party based upon the assets of the Depositor, Reorganized PREPA, or National or their respective Affiliates; or (iii) induce any such third party to reasonably rely on the creditworthiness of the Depositor, Reorganized PREPA, or National or any other affiliated or unaffiliated entity in its dealings with the Trust.

(g)      The Trust will maintain a Delaware Trustee with an office in the State of Delaware.

(h)      The Trust will not engage in any transaction with an Affiliate on any terms other than would be obtained in an arm's-length transaction with a non-Affiliate.

**Section 2.05.   *Voting Rights.***

National shall be deemed the sole holder of the Voting Rights with respect to the Securities held by the Trust.

## ARTICLE III

## ADMINISTRATION OF THE TRUST

**Section 3.01.  *Accounts.***

The Trustee shall establish and maintain in the name of the Trust the following non-interest bearing accounts for the Trust to be held in trust for the benefit of the Trust Unit Holders (all amounts held in these accounts will be uninvested) and the name and number of such accounts shall be listed on <u>Schedule II</u> to the Trust Agreement:

(a)  <u>Tax-Exempt Bond Account</u>.  An account into which the Trustee shall deposit any Tax-Exempt New Bonds allocable to the applicable National Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**Tax-Exempt Bond Account**"), including any Taxable New Bonds that become Tax-Exempt New Bonds;

(b)  <u>Taxable Bond Account</u>.  An account into which the Trustee shall deposit any Taxable New Bonds allocable to the applicable National Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**Taxable Bond Account**"), including any Tax-Exempt New Bonds that become Taxable New Bonds; and

(c)  <u>Insurance Policy Account</u>.  An account into which the Trustee shall deposit the applicable National Legacy Bonds insured by the applicable National Insurance Policy (or any other securities, monies, proceeds or property received on account of or in exchange therefor) (the "**Insurance Policy Account**").

**Section 3.02.  *Distributions.***

(a)  <u>Tax-Exempt Distributions</u>.  Promptly following receipt thereof by the Trustee, unless National shall otherwise instruct the Trustee, the Trustee shall be required to and shall distribute to the Trust Unit Holders on a pro rata "pass-through" basis, all income of the Trust, including payments of principal, interest or other cash received by the Trust on or prior to the Maturity Date on account of the New Bonds deposited in the Tax-Exempt Bond Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs, Tax Costs, and National Deferred Expenses as of the date of distribution.

(b)  <u>Taxable Distributions</u>.  Promptly following receipt thereof by the Trustee, the Trustee shall be required to and shall distribute to the Trust Unit Holders on a pro rata "pass-through" basis, all income of the Trust, including payments of principal, interest or other cash received by the Trust on or prior to the Maturity Date on account of the New Bonds deposited in the Taxable Bond Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs, Tax Costs, and National Deferred Expenses as of the date of distribution.

(c)      <u>Insurance Policy Distributions</u>.   Promptly following receipt thereof by the Trustee, the Trustee shall, subject to <u>Section 3.06(c)</u>, be required to and shall distribute to the Trust Unit Holders on a pro rata "pass-through" basis, all income of the Trust, including payments received by the Trust on or prior to the Maturity Date on account of the National Insurance Policy insuring the National Legacy Bonds deposited in the Insurance Policy Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Tax Costs as of the date of distribution.

**Section 3.03.   *National Advancement Option.***

(a)      In addition to National's option to accelerate under the National Insurance Policies and/or Article XX.C of the PREPA Plan, National shall have the right to exercise, with [ten (10) days'] prior written notice to the relevant holders of National Legacy Bonds and/or Trust Unit Holders, the National Advancement Option (including the National Acceleration Option) with respect to the National Legacy Bonds, in whole or in part, at any time, and the Trust Unit Holders and the Trustees shall be required to accept the same in satisfaction of National's obligations under the applicable National Insurance Policy with respect to the principal amount of such bonds being paid.

(b)      Upon the exercise of any National Advancement Option and the payment of the applicable National Acceleration Price or redemption price with respect to any National Legacy Bonds CUSIP, the Trustee shall be required to disburse such National Acceleration Price or redemption price to the Trust Unit Holders of the relevant Trust as set forth in <u>Section 3.02</u> above, net of the allocable portion of any outstanding Tax Costs as of the date of distribution, and, if paid in whole, National shall become fully subrogated to all of the rights of such Trust Unit Holders, including, upon the termination of the relevant Trust, rights to any then remaining Trust Assets. For the avoidance of doubt, notwithstanding such acceleration or redemption, there shall be no acceleration of any payment required to be made under any National Insurance Policy unless National elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis.

(c)      If paid in whole, upon the disbursement of such National Acceleration Price or redemption price to the relevant Trust Unit Holders as set forth above, the Trust Units of such Trust shall be retired, National's obligations under the applicable National Insurance Policy shall be fully satisfied and extinguished (notwithstanding any provision of the applicable National Insurance Policy or other documents related to the National Insured Bonds), such Trust shall be terminated, and the Trustee shall deliver the remaining Trust Assets of such Trust, less any outstanding Trustee Costs and other remaining costs of the Trust, to or at the direction of National.  At any time on or after the date of receipt of such Trust Assets, National shall have the right to sell all or certain of the New Bonds constituting part of such Trust Assets for value, including by (i) selling all or certain of the applicable Tax-Exempt New Bonds constituting part of such Trust Assets for value as tax-exempt bonds, and (ii) selling all or certain of the Taxable New Bonds constituting part of such Trust Assets for value as taxable bonds.

(d)     Payment of the applicable National Acceleration Price or redemption price with respect to any National Insured Bond shall satisfy and discharge all of National's obligations under the applicable National Insurance Policy with respect to the principal amount of such National Insured Bond repaid.

(e)     In receiving any Trust Units, the holder of such Trust Unit(s) shall be deemed to acknowledge, represent to and agree that (i) it has received a copy of the Trust Agreement and these Standard Terms, the PREPA Plan, the related disclosure statement, and such other related documents, court orders, and information as it deems necessary to make a decision to receive any Trust Units, and (ii) National has the right and option to exercise the National Advancement Option as described in this Section 3.03. By electing to receive the National Non-Commutation Treatment Option 2B and becoming a Trust Unit Holder, each Trust Unit Holder shall (i) be deemed to have agreed to and (ii) not dispute the National Advancement Option.

Section 3.04.     *Sale of New Bonds.*

(a)     At any time and from time to time prior to the Maturity Date, so long as a National Insurer Event is not occurring under the applicable National Insurance Policy, National shall have the right to instruct the Trustee to sell any New Bonds of any series, in an aggregate principal amount determined by National (the "**Subject Bonds**") that are part of the Trust Assets for cash (a "**Bond Sale**"). National will direct the Trustee to utilize a specific broker which will arrange the Bond Sale pursuant to the terms set forth in this Section 3.04(a). The Trustee shall not be responsible for the selection of the broker or for any determination required to be made in connection with the Bond Sale. Prior to any Bond Sale, National will notify the Trustee of the intended Bond Sale through a sale notice (the "**Sale Notice**").

(b)     The Sale Notice will include a statement identifying the Subject Bonds and the principal amount of Subject Bonds to be sold.

(c)     Following delivery of the Sale Notice to the Trustee, the applicable Trust Unit Holders will promptly receive a pro rata share of actual net cash proceeds (the "**Cash Proceeds**") from the sale of Subject Bonds, net of the allocable portion of any outstanding Trustee Costs, Tax Costs, and National Deferred Expenses.

Section 3.05.     *Adjustments to Principal Amounts.*

(a)     Each Distribution made on or prior to the Maturity Date to Trust Unit Holders shall result in a deemed simultaneous dollar-for-dollar reduction, first, of unpaid interest and principal then due (or due within 5 Business Days) on the Original Scheduled Payment Date and/or the Maturity Date, and second, of all or a portion of the outstanding principal amount plus accrued and unpaid interest associated with such principal amount of, such National Legacy Bonds, as of the date of such Distribution and in an amount equal to such Distribution. For the purposes of such reduction, any deduction from any Distribution in respect of Tax Costs, Trustee Costs and National Deferred Expenses shall be treated as if such amounts deducted were paid to the applicable Trust Unit Holders in cash as part of the Distribution and shall reduce the applicable interest amount or outstanding principal amount accordingly.

14

(b)      Any Bond Sale resulting in a distribution of Cash Proceeds to Trust Unit Holders shall result in a deemed simultaneous dollar-for-dollar reduction, of all or a portion of the outstanding principal amount plus accrued and unpaid interest associated with such principal amount of, such National Legacy Bonds, as of the date the Cash Proceeds of such Bond Sale are distributed by the Trustee to the applicable Trust Unit Holders and in an amount equal to the aggregate Cash Proceeds from such Bond Sale distributed to the applicable Trust Unit Holders.  For the purposes of such reduction, any deduction from the Cash Proceeds in respect of Tax Costs, Trustee Costs or National Deferred Expenses shall be treated as if such amounts deducted were paid to the applicable Trust Unit Holders in cash and shall reduce the applicable accrued and unpaid interest amount or outstanding principal amount, accordingly.

(c)      If the principal amount of the applicable National Legacy Bonds CUSIP is reduced to zero at any time, National shall be entitled to any remaining Trust Assets, including any remaining Trust Assets in the Tax-Exempt Bond Account, the Taxable Bond Account or the Insurance Policy Account, as applicable.

(d)      Any reduction of the outstanding principal amount of National Legacy Bonds pursuant to this Section 3.05 shall result in a corresponding reduction in the Notional Amount of Trust Units and such Trust Units shall be cancelled.

(e)      For the avoidance of doubt, it is expressly understood and agreed that to the extent the principal amount of the applicable National Legacy Bonds CUSIP is reduced to zero prior to the Maturity Date, as of the date the principal amount is reduced to zero, (i) the applicable Trust Units shall be cancelled; (ii) all of National's obligations under the applicable National Insurance Policies and National Legacy Bonds will be satisfied and discharged; (iii) the applicable National Insurance Policies shall be indefeasibly cancelled; and (iv) subject to National's entitlement to any remaining Trust Assets, the Trust shall terminate in accordance with the provisions of Article VII hereof.

**Section 3.06.   *Payments on National Insurance Policies.***

(a)      After taking into account any adjustments made pursuant to Section 3.05, if there are insufficient funds (determined without taking into account any securities or other non-cash Trust Assets) in the Tax-Exempt Bond Account, the Taxable Bond Account, or the Insurance Policy Account, as applicable, to satisfy the accrued and unpaid interest and/or unpaid principal due on an Original Scheduled Payment Date (the amount of any such shortfall, the "**Payment Shortfall**"), then at least [five (5)] Business Days prior to such Original Scheduled Payment Date, the Trustee shall deliver a notice in substantially the form attached hereto as Exhibit A (a "**Notice of Claim and Certificate**") to National.  National agrees that such notice provided by the Trustee shall constitute a valid notice of the type required under the applicable National Insurance Policy in order for the Trustee to draw on the applicable National Insurance Policy, and the Trustee shall make draws on the applicable National Insurance Policy to make payment, from the Insurance Policy Account, of any accrued and unpaid interest or any unpaid principal due on the Original Scheduled Payment Date.  The Trustee is authorized to take all actions necessary to draw on the National Insurance Policies for such purposes, including actions that, under the applicable National Insurance Policies and related agreements, would otherwise be taken by the PREPA Fiscal Agent, and the Trustee

15

shall have all powers and authority of the PREPA Fiscal Agent for such purposes. In the event a particular Trust holds more than one National Insurance Policy insuring the same National Legacy Bonds CUSIP, the Trustee shall draw pro rata on all such National Insurance Policies insuring the same National Legacy Bonds CUSIP.

(b)     If and to the extent National fails to make any payment at the time, in the amount and in the manner set forth herein, the Trustee shall take, subject to its rights and protections herein, all necessary or desirable actions to enforce the applicable National Insurance Policy (including, to the extent applicable, as and when directed by the Requisite Trust Unit Holders as set forth in Section 6.01 hereof).

(c)     If the Trustee receives PREPA Payments, (i) after the Trustee draws on an National Insurance Policy pursuant to Section 3.06(a), but (ii) prior to the Trustee using the amounts drawn from the National Insurance Policy to pay accrued and unpaid interest and/or unpaid principal due on that Original Scheduled Payment Date, then the Trustee shall (x) distribute and apply the PREPA Payments received in accordance with Section 3.02 and Section 3.05, (y) only apply amounts drawn from the National Insurance Policy to pay accrued and unpaid interest and/or unpaid principal to the extent the PREPA Payments received are insufficient (the amount of such insufficiency, the "**PREPA Payment Shortfall**") to pay the accrued and unpaid interest and/or unpaid principal due on that Original Scheduled Payment Date such that the amounts so applied are not in excess of the PREPA Payment Shortfall, and (z) promptly return to National any amounts drawn on the National Insurance Policy that are in excess of such PREPA Payment Shortfall.

Section 3.07.    ***Payments at Maturity Date.***

(a)     On the Maturity Date, after giving effect to any Distribution made from other Trust Assets on the Maturity Date, and subject to National having received a Notice of Claim and Certificate in accordance with Section 3.06 hereof, National shall pay to the Trustee, and the Trustee shall distribute to all Trust Unit Holders, a pro rata share of the Payment Shortfall, if any, net of any Tax Costs, following which National shall be entitled to any remaining Trust Assets, including any remaining Trust Assets in the Tax-Exempt Bond Account, the Taxable Bond Account or the Insurance Policy Account, as applicable.

(b)     On the Maturity Date, after giving effect to any Distributions made on the Maturity Date (including the payment and distribution of any Payment Shortfall (in accordance with Section 3.07(a) hereof)), (i) the applicable Trust Units shall be cancelled; (ii) all of National's obligations under the applicable National Insurance Policies and National Legacy Bonds will be satisfied and discharged; (iii) the applicable National Insurance Policies shall be indefeasibly cancelled; and (iv) subject to National's entitlement to any remaining Trust Assets following payment of any Trustee Costs and any other remaining Trust expenses, the Trust shall terminate in accordance with the provisions of Article VII hereof.

# ARTICLE IV

# REPORTING/REMITTING TO TRUST UNIT HOLDERS

**Section 4.01.   *Statements to Trust Unit Holders.***

No later than [three (3)] Business Days after the date on which the Trustee makes any Distribution to any Trust Unit Holder, the Trustee shall prepare [and post] a statement [to EMMA], substantially in the form attached hereto as **Exhibit B**, and [upon request] deliver such statement by mail to any Trust Unit Holder, setting forth:

(a)     With respect to the Tax-Exempt Bond Account, the Taxable Bond Account and the Insurance Policy Account, as applicable, distributions made from each such account during the month and during the year to date (on an aggregate and per unit basis);

(b)     The accrued and upaid interest on, and principal amount of as of the month end of the relevant National Legacy Bonds CUSIP (or any other securities or property received in respect thereof or in exchange therefor) (on an aggregate and per unit basis);

(c)     Any other distributions made to Trust Unit Holders;

(d)     Any required tax reporting for such period (as specified in Section 8.04); and

(e)     All other information required to complete **Exhibit B**.

[The Trustee shall deliver a copy of any statement it posts to EMMA pursuant to this Section 4.01 to National promptly after such statement is posted to EMMA.]

**Section 4.02.   *Compliance with Withholding Requirements.***

Notwithstanding any other provisions of the Trust Agreement, the Trustee shall comply with all federal withholding requirements with respect to payments to the Trust Unit Holders that the Trustee reasonably believes are applicable under the Code.  The consent of the Trust Unit Holders shall not be required for such withholding.  In the event the Trustee does withhold any amount from payments to any Trust Unit Holder pursuant to federal withholding requirements, the Trustee shall indicate with any payment to such Trust Unit Holders the amount withheld.  Any amounts withheld shall be treated as a distribution of cash to the Trust Unit Holder, as the case may be, in the amount of the withholding and shall thereby reduce amounts otherwise distributable to such Trust Unit Holder.  If an amount required to be withheld was not withheld, the Trust may reduce subsequent distributions by the amount of such required withholding.

17

## ARTICLE V

## TRUST UNITS

**Section 5.01.**   *Trust Units.*

Each series of Trust Units shall bear unique CUSIPs and be transferable in the Unit Registry of Trust Unit Holders maintained by the Unit Registrar.  So long as a National Insurer Event is not occurring under the applicable National Insurance Policy, National shall be deemed the sole holder of the New Bonds deposited in the respective Trusts with respect to voting, amendment, acceleration, events of default and election and direction of rights and remedies, including in connection with insolvency proceedings.  In addition, National shall be fully subrogated to the rights of the respective Trust Unit Holders in respect of the New Bonds deposited in the respective Trusts. The Trust Units are not guaranteed by any governmental agency or instrumentality.

The Trust Units shall be designated in the Trust Agreement.  Unless otherwise specified in the Trust Agreement, the Trust Units in the aggregate will represent the entire beneficial ownership interest in the Trust Estate. With respect to any day, the Notional Amount of the Trust Units will be equal to the oustanding principal amount of the National Legacy Bonds underlying such Trust Units, including after giving effect to any reduction pursuant to Section 3.05.

The Trust Units will be represented in book-entry form as registered in the name of the holder in the Unit Registry by the Unit Registrar, in denominations equal to the denomination of the applicable underlying National Legacy Bonds or any integral multiple of the amount specified therein.  Each Trust Unit will share ratably in all Trust Assets of the applicable Trust and in all rights of the related Trust Unit Holders.

Upon original issue, the Trust Units shall be issued and delivered by the Trustee, and the Trustee shall cause the Trust Units to be recorded by the Unit Registrar upon receipt by the Trustee of the documents specified in Section 2.02.  No Trust Unit shall be entitled to any benefit under the Trust Agreement or be valid for any purpose, unless such Trust Unit is registered in the records maintained by the Unit Registrar.

**Section 5.02.**   *Registration of Units.*

The Trustee shall cause to be kept at its Corporate Trust Office a Unit Register in which, subject to such reasonable regulations as it may prescribe, the Trustee shall provide for the registration of Trust Units.  The Trustee will initially serve as Unit Registrar for the purpose of registering Trust Units and transfers and exchanges of Trust Units.

The Trustee will cause the Unit Registrar (unless the Trustee is acting as Unit Registrar) to provide notice to the Trustee of each transfer of a Trust Unit, and will provide the Trustee with an updated copy of the Unit Register on January 1 of each year.

**Section 5.03.   *No Obligation to Register.***

The Trustee is not obligated to register or qualify any Trust Unit under the Securities Act or any other securities laws or to effect any qualification under the Trust Indenture Act of 1939, as amended.

**Section 5.04.   *Persons Deemed Owners.***

Prior to due presentation of an appropriate document for registration or transfer, the Trustees, the Unit Registrar and any agent of any of them may treat the person in whose name any Trust Unit is registered as the owner of such Trust Unit for the purpose of receiving distributions, and neither the Trustee, the Unit Registrar nor any agent of any of them shall be affected by notice to the contrary. The person in whose name any Trust Unit is registered as owner of such Trust Unit shall take such action and deliver such documents as may be reasonably requested or required by National, the Trustees or the Unit Registrar to effectuate the purpose or provisions of this clause including any distribution, registration, transfer or assignment in connection with such Trust Units.

**Section 5.05.   *Appointment of Trust Unit Paying Agent.***

The Trustee shall serve as the initial Trust Unit Paying Agent hereunder and thereafter, solely in the event that legal or regulatory requirements require the appointment of a different Trust Unit Paying Agent, the Trustee may appoint on behalf of, and as an expense of, the Trust, any other Trust Unit Paying Agent for the purpose of making distributions to Trust Unit Holders; underlined provided, underlined however, that any replacement Trust Unit Paying Agent shall be required to meet the eligibility requirement set forth in underlined Section 6.06. The Trustee shall cause such Trust Unit Paying Agent to execute and deliver to the Trustee an instrument in which such Trust Unit Paying Agent shall agree with the Trustee that such Trust Unit Paying Agent will hold all sums held by it for the payment to Trust Unit Holders in trust for the benefit of the Trust Unit Holders entitled thereto until such sums shall be paid to the Trust Unit Holders. All funds remitted by the Trustee to any such Trust Unit Paying Agent for the purpose of making distributions shall be paid to Trust Unit Holders as soon as practicable following receipt thereof by the Trust Unit Paying Agent and any amounts not so paid shall be returned as soon as practicable to the Trustee.

# ARTICLE VI

# CONCERNING THE TRUSTEE

**Section 6.01.   *Duties of Trustee.***

Every provision of the Trust Agreement (including these Standard Terms) relating to the conduct of, affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article VI.

The Trustee undertakes to perform such duties and only such duties as are specifically set forth in the Trust Agreement and no implied covenants or obligations shall be read into the Trust Agreements against the Trustee.

19

The Trustee shall (at the direction of the Requisite Trust Unit Holders), subject to its rights and protections herein, take all necessary or desireable actions to enforce the National Insurance Policies as set forth herein.

The Trustee shall deliver to all Trust Unit Holders copies of all notices and written communications received from Depositor or Reorganized PREPA, as applicable.

Except as provided in Section 6.02 hereof, no provision of the Trust Agreement shall be construed to relieve the Trustee from liability for its own grossly negligent action, grossly negligent failure to act or willful misconduct; provided, however, that:

(a)     The Trustee shall not be liable for an error of judgment made in good faith by an Officer of the Trustee, unless it shall be proved that the Trustee was grossly negligent in ascertaining the pertinent facts;

(b)     The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of National or, in the event that the Voting Rights are held by a party other than National, Trust Unit Holders entitled to a majority of the Voting Rights (or such other percentage as may be specified herein) relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the New Bonds or exercising any trust or power conferred upon the Trustee with respect to the New Bonds, under the Trust Agreement;

(c)     The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Requisite Trust Unit Holders relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the National Insurance Policies or exercising any trust or power conferred upon the Trustee with respect to the National Insurance Policies, under the Trust Agreement; and

(d)     Any determination of gross negligence, willful misconduct or bad faith of the Trustee shall be made only upon the rendering of a final judgment of a court of competent jurisdiction no longer subject to appeal or review.

**Section 6.02.   *Certain Matters Affecting Trustee.***

(a)     The Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it in good faith to be genuine and to have been signed or presented by the proper party or parties.  Further, the Trustee may accept a copy of the vote of the board of directors or equivalent governing body of any party certified by its clerk or assistant clerk or secretary or assistant secretary as conclusive evidence of the authority of any Person to act in accordance with such vote, and such vote may be considered as in full force and effect until receipt by the Trustee of written notice to the contrary;

(b)     The Trustee may, in the absence of bad faith on its part, conclusively rely upon an Opinion of Counsel or certificate of an Officer of the appropriate Person whenever in the

20

administration of the Trust Agreement the Trustee shall deem it desirable that a matter be proved or established (unless other evidence be herein specifically prescribed) prior to taking, suffering or omitting any action hereunder;

(c)        The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in reliance on such advice or Opinion of Counsel;

(d)        The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by the Trust Agreement or to institute, conduct, defend or continue any litigation thereunder or in relation thereto at the request, order or direction of any of the Trust Unit Holders, pursuant to the provisions of the Trust Agreement, unless such Trust Unit Holders shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby;

(e)        The Trustee shall not be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by the Trust Agreement (including these Standard Terms);

(f)        The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by National or, in the event that the Voting Rights are held by a party other than National, Trust Unit Holders entitled to a majority of the Voting Rights; provided, however, that if the payment within a reasonable time to the Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Trustee, not assured to the Trustee by the security afforded to it by the terms of the Trust Agreement, the Trustee may require indemnity against such expense or liability as a condition to taking any such actions;

(g)        The Trustee may execute any of the trusts or powers under the Trust Agreement or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees and the Trustee shall not be responsible for the supervision of or any misconduct or negligence on the part of any agent or attorney appointed with due care by it under the Trust Agreement (including these Standard Terms);

(h)        Whenever the Trustee is authorized herein to require acts or documents in addition to those required to be provided it in any matter, it shall be under no obligation to make any determination whether or not such additional acts or documents should be required unless obligated to do so under Section 6.01;

(i)        The Trustee shall not be deemed to have notice of any matter unless one of its Officers has received written notice thereof at the Corporate Trust Office and such notice references the applicable Trust Units generally, the applicable Depositor(s), the Trust or the Trust Agreement;

(j)      None of the provisions of the Trust Agreement or these Standard Terms shall require the Trustee to expend or risk its own funds or otherwise to incur any liability, financial or otherwise, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it;

(k)      Notwithstanding anything herein to the contrary, in no event shall the Trustee be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action;

(l)      The permissive rights of the Trustee to perform any discretionary act enumerated in the Trust Agreement or these Standard Terms shall not be construed as a duty or obligation, and the Trustee shall not be answerable in the performance of such act other than for its gross negligence or willful misconduct;

(m)     The rights, privileges, protections, immunities and benefits given to the Trustee, including its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian, co-trustee and other Person employed to act hereunder;

(n)      The Trustee shall have no duty (A) to see to any recording, filing, or depositing of the Trust Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any re-recording, re-filing or re-depositing of any thereof, (B) to see to any insurance, (C) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Estate, or (D) to confirm or verify the contents of any reports or certificates delivered to the Trustee pursuant to the Trust Agreement (including these Standard Terms) believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties;

(o)      The Trustee shall have no liability or responsibility for the acts or omissions of any other party to any of the Trust Agreement, these Standard Terms or any related document;

(p)      The Trustee shall have no duty or obligation to obtain or solicit any collateral or any funds to be remitted in any of the accounts established under the Trust Agreement or these Standard Terms, and shall have a duty only to accept such collateral or funds delivered to it in accordance with the Trust Agreement (including these Standard Terms);

(q)      The Trustee shall not be required to give any bond or surety in respect of the performance of its powers and duties hereunder;

(r)      The Trustee may request the delivery of a certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to the Trust Agreement;

(s)      All rights of action under the Trust Agreement or under any of the Trust Units, enforceable by the Trustee, may be enforced by it without the possession of any of the Trust Units, or the production thereof at the trial or other proceeding relating thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all the Holders of such Trust Units, subject to the provisions of the Trust Agreement; and

(t)      The rights, protections, privileges and immunities granted to the Trustee shall be applicable to the Trustee in its capacity as Unit Registrar and Trust Unit Paying Agent, *mutatis mutandis*.

### Section 6.03.   *Trustee Not Liable for Trust Units or Securities.*

The Trustee assumes no responsibility for the correctness of the recitals contained in the Trust Agreement and in the Trust Units.   The Trustee makes no representations or warranties as to the validity or sufficiency of the Trust Agreement or of the Trust Units (other than the signature and authentication of the Trustee on the Trust Units) or of the Securities or related documents.   The Trustee shall not be accountable for the use or application of any of the Trust Units, or for the use or application of any funds in respect of the Securities or deposited in or withdrawn from the Trust in accordance with the Trust Agreement other than, in each case, any funds held by or on behalf of the Trustee in accordance with Section 3.01 and Section 3.02.   The Trustee, in its capacity as Trustee hereunder, shall have no responsibility or obligation to comply with, or to monitor any other Person's compliance with, the Bond Documents.

### Section 6.04.   *Trustee May Own Units.*

The Trustee in its individual capacity or any other capacity may become the owner or pledgee of Trust Units with the same rights it would have if it were not Trustee.

### Section 6.05.   *Trustee's Fees and Expenses.*

(a)      Each of the Trustee and the Delaware Trustee shall be entitled to receive from the Trust compensation that shall be agreed upon in writing with National (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) for all services rendered by it in the execution of the trusts created under the Trust Agreement and in the exercise and performance of any of the powers and duties thereunder of the Trustee. Each of the Trustee and the Delaware Trustee shall be entitled to reimbursement for (i) all reasonable fees, expenses, costs and disbursements (other than Extraordinary Expenses) incurred or made by the Trustee or the Delaware Trustee in accordance with any of the provisions of the Trust Agreement (including these Standard Terms) (including but not limited to the fees, expenses and disbursements of their respective counsel and of all persons not regularly in their respective employ), in each case as agreed to between the Trustees and National, and (ii) Extraordinary Expenses reimbursable pursuant to Section 6.05(b). Additionally each of the Trustee and the Delaware Trustee shall be entitled to indemnification as provided in Section 6.12.   All such amounts payable to the Trustees, collectively, the "**Trustee Costs**" shall be paid pursuant to the terms of any agreement between the Trustees and National and provisions of this Trust Agreement and may be reimbursed to the Trustee

23

and the Delaware Trustee in accordance with the terms and provisions of this Trust Agreement, including Section 3.02 hereof. For the avoidance of doubt, the obligations to the Trustee shall include the Trustee in its capacity as Unit Registrar and Trust Unit Paying Agent.

(b)       In furtherance of Section 6.05(a), each of the Trustee (including in its capacities as the Unit Registrar and Trust Unit Paying Agent) and the Delaware Trustee shall be entitled to receive reimbursement for all reasonable out-of-pocket expenses which are properly documented and incurred or made by it, including costs of collection, payable as a result of or in connection with litigation, enforcement actions or other proceedings brought by Trust Unit Holders against the Depositor, Reorganized PREPA, the Trust, or each of the Trustees except for proceedings, litigation or enforcement actions that relate to the Trustee's or Delaware Trustee's, as the case may be, own grossly negligent action, grossly negligent failure to act or its own willful misconduct as determined by a final judgment of a court of competent jurisdiction no longer subject to appeal or review (the "**Extraordinary Expenses**").  Subject to any agreement between the Trustees and National, the Trustee may make withdrawals from the Trust, to pay or reimburse itself the amount of any Extraordinary Expenses, up to a payment limit of $150,000 in the aggregate for the Trusts of Extraordinary Expenses in any calendar year or pro rata portion thereof in the case of the initial and the final years of the Trust based upon the portion of the applicable calendar year in which the Trust exists.

(c)       In the event that National pays any Trustee Costs or expenses of the Trust to the Trustee or the Trust (any such amounts paid, the "**National Deferred Expenses**"), such National Deferred Expenses will be reimbursed by the Trust.

(d)       For the avoidance of doubt, neither the Depositor nor National shall be liable for any Trustee Costs or Extraordinary Expenses.

**Section 6.06.  *Eligibility Requirements for Trustee, Successor Trustee, and Trust Unit Paying Agent.***

The Trustee, any successor Trustee, and any successor Trust Unit Paying Agent shall at all times be a corporation or national banking association that: (i) is not an Affiliate of the Depositor or National; (ii) is neither affilliated with the Commonwealth or its instrumentalities, public corporations, or municipalities, nor located in the Commonwealth; (iii) is organized and doing business under the laws of any state or the United States of America; (iv) is authorized under such laws to exercise corporate trust powers; (v) is in good standing under the law of the jurisdiction in which it is organized; (vi) has a combined capital and surplus of at least $50,000,000; (vii) is subject to supervision or examination by federal or state authority; and (viii) is regularly acting as a trustee in the municipal finance market.  If such corporation publishes reports of its conditions at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of conditions so published.  In case at any time any Trustee, successor Trustee, or successor Trust Unit Paying Agent shall cease to be eligible in accordance with the provisions of this Section, such Trustee, successor Trustee, or successor Trust Unit Paying Agent shall resign immediately in the manner and with the effect specified in Section 6.07.

**Section 6.07.   *Resignation and Removal of Trustee.***

(a)      The Trustee may at any time resign and be discharged from the trusts created pursuant to a Trust Agreement by giving 60 days written notice to National.  Upon receiving such notice of resignation, National shall promptly appoint a successor trustee meeting the requirements set forth in Section 6.06 by written instrument, in duplicate, which instrument shall be delivered to the resigning Trustee and to the successor trustee.  A copy of such instrument shall be delivered to the Trust Unit Holders by the successor trustee.  If no successor trustee shall have been so appointed and have accepted appointment within 60 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee at the expense of the Trust.

(b)      If at any time the Trustee shall cease to be eligible in accordance with the provisions of Section 6.06 and shall fail to resign after written request therefor by National, or if any time the Trustee shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then National may remove the Trustee and appoint a successor trustee by written instrument, in duplicate, which instrument shall be delivered to the Trustee so removed and to the successor trustee.

(c)      National may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, one complete set of which instruments shall be delivered to the Trustee so removed and one complete set to the successor trustee so appointed.

(d)      Any resignation of the Trustee and appointment of a successor trustee pursuant to any of the provisions of this Section 6.07 shall not become effective until the acceptance of appointment by the successor trustee as provided in Section 6.08 hereof.  The compensation and reimbursement for fees and expenses of any successor trustee appointed in connection with the resignation of the Trustee shall be the sole responsibility of the Trust, including the costs and expenses incurred in connection with any such succession.

(e)      Any removal of the Trustee and appointment of a successor trustee pursuant to any of the provisions of this Section 6.07 shall not become effective until (i) acceptance of appointment by the successor trustee as provided in Section 6.08 hereof and (ii) payment of all costs, expenses and indemnities (other than Extraordinary Expenses) due and owing to the outgoing Trustee, including the costs and expenses incurred in connection with any such succession.

(f)      Notwithstanding the replacement of the Trustee pursuant to this Section 6.07, the rights, benefits, protections and indemnities afforded to the Trustee under this Article VI shall continue to the benefit of the retiring Trustee.

**Section 6.08.   *Successor Trustee.***

Any successor trustee appointed as provided in Section 6.07 shall execute, acknowledge and deliver to the Trust Unit Holders and to the predecessor trustee an instrument

accepting such appointment under the Trust Agreement and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor thereunder, with the like effect as if originally named as trustee therein.  The predecessor trustee shall deliver to the successor trustee all related documents and statements held by it under the Trust Agreement and the Trust Unit Holders and the predecessor trustee shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee all such rights, powers, duties and obligations.

No successor trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor trustee shall be eligible under the provisions of Section 6.06 hereof.

Upon acceptance of appointment by a successor trustee as provided in this Section, the successor trustee shall mail notice of the succession of such trustee under the Trust Agreement to all Holders of Trust Units at their addresses as shown in the Unit Register.

### Section 6.09.   *Merger or Consolidation of Trustee.*

Any Person into which the Trustee may be merged or converted or with which it may be consolidated or any Person resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any Person succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee under the Trust Agreement provided such Person shall be eligible under the provisions of Section 6.06, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

### Section 6.10.   *Appointment of Custodians.*

The Trustee may appoint one or more Custodians to hold all or a portion of the Trust Estate as agent for the Trustee, by entering into a custodial agreement.  The appointment of any Custodian may at any time be terminated and a substitute custodian appointed therefor by the Trustee.  Subject to Article VI, the Trustee agrees to comply with the terms of each custodial agreement and to enforce the terms and provisions thereof against the Custodian for the benefit of the Trust Unit Holders.  Each Custodian shall be a depository institution or trust company subject to supervision by federal or state authority, shall have combined capital and surplus of at least $10,000,000 and shall be qualified to do business in the jurisdiction in which it holds any asset constituting part of the Trust Estate.  Any such Custodian may not be an Affiliate of the Depositor or National.

### Section 6.11.   *Trustee May Enforce Claims Without Possession of Trust Units.*

All rights of action and claims under the Trust Agreement or the Trust Units may be prosecuted and enforced by the Trustee without the possession of any of the Trust Units or the production thereof in any proceeding relating thereto and any such proceeding instituted by the Trustee shall be brought in its own name or in its capacity as Trustee.  Any recovery of judgment shall, after provision for the payment of the reasonable compensation, fees, expenses,

indemnities, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Trust Unit Holders in respect of which such judgment has been recovered.

**Section 6.12.  *Trustee Indemnity***

The Trustees' rights to claim indemnification for losses that they may incur with respect to the Trust Agreement (incorporating these Standard Terms) and each other document contemplated by the foregoing to which either of the Trustees is a party shall be as set forth in **Annex I** hereto, subject to, with respect to Extraordinary Expenses, the provisions of Section 6.05(b).

## ARTICLE VII

## TERMINATION OF TRUST

**Section 7.01.  *Termination; No Redemption Rights.***

Upon the indefeasible cancellation or other indefeasible termination of the relevant National Insurance Policy, the Trust (including the respective obligations and responsibilities under the Trust Agreement of the Trustee and National) shall terminate upon (i) the distribution to National or to Trust Unit Holders, as applicable, of any remaining Trust Assets held by or on behalf of the Trustee and required hereunder to be so distributed in accordance with the provisions of Section 3.03, Section 3.04, Section 3.05, or Section 3.07 hereof, (ii) payment in full of any Trustee Costs due and owing to the Trustees under the Trust Agreement (including these Standard Terms), (iii) payment in full of any National Deferred Expenses due and owing to National under the Trust Agreement (including these Standard Terms), (iv) payment in full of any known Tax Costs due and owing to any tax or governmental authority, and (v) receipt by the Trustee of an Opinion of Counsel stating that all conditions precedent herein relating to the satisfaction and discharge of the Trust Agreement have been complied with.

In no event shall the Trust be terminated or the Securities be redeemed (except in the case of a redemption of the Securities permitted under the terms of the Bond Documents) or otherwise released from the Trust Estate (except pursuant to, and in accordance with, Section 3.04 hereof) without the prior express written consent of National if either (i) the relevant National Insurance Policy has not been indefeasibly terminated or (ii) National has not been indefeasibly paid in full for any amounts owed pursuant to the PREPA Plan.

Notwithstanding anything contained herein to the contrary, the merger or consolidation of the Trustee shall not cause a termination of the Trust.

**Section 7.02.  *Procedure for Termination.***

At least [thirty (30)] days prior to the date on which the Trustee intends to make the final distribution from the Trust, solely to the extent such final distribution is required to be made to Trust Unit Holders and not to National, the Trustee shall give notice by letter to the Trust Unit Holders specifying: (i) the anticipated final distribution date; (ii) any amounts, or trust assets, remaining on deposit in the Trust will be distributed to the holders of record of the Trust Units on a pro rata basis to the extent necessary to satisfy the Insured Amount; and

(iii) that the Trustee believes that, following the occurrence of such final distributions, the conditions to termination of the Trust have been satisfied and that it intends to terminate the Trust (a "**Termination Notice**"); provided, however, that to the extent that the final distribution is to be made to National, no such Termination Notice or notice period shall be required.  The Trustee shall provide a copy of the Termination Notice to the Unit Registrar at the time such Termination Notice is given to Trust Unit Holders.

If the Requisite Trust Unit Holders do not object in writing within thirty (30) days after the Trustee has provided the Termination Notice as set forth herein then, upon completion of final distributions as set forth in the Termination Notice, the Trust shall be dissolved, wound up, and terminated; provided, however, that no Trust Unit Holder shall be permitted to object to the termination of the Trust on any grounds other than that the Insured Amount, as calculated in accordance with this Trust Agreement, the PREPA Plan, the Confirmation Order, and other applicable law, is anticipated to be greater than zero as of the anticipated date of the final distribution.

Upon the dissolution, wind up and termination of the Trust and the Trust Agreement, the Trustee or Delaware Trustee (acting solely at the written direction of the Trustee) is authorized to file a certificate of cancellation with the Secretary of State.

## ARTICLE VIII

## TAX PROVISIONS

**Section 8.01.   *Grantor Trust Provisions.***

The Trustee, the Depositor, the Trust Unit Holders (by their acceptance of the Trust Units and book-entry beneficial interests therein) and National each agree and acknowledge or have agreed and acknowledged that the Trust is intended to qualify for U.S. federal income tax purposes as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust, and it is neither the purpose nor the intent of the parties hereto to create a partnership, joint venture or association taxable as a corporation or to serve as associates in a joint enterprise for the conduct of business for profit.  In furtherance of the foregoing, (i) the purpose of the Trust is and shall be to protect and conserve the assets of the Trust Estate, and the Trust shall not at any time engage in or carry on any kind of business or any kind of commercial or investment activity, (ii) the Trust is formed to facilitate direct investment in the Trust Assets, and (iii) the Trustee (at the direction of National and/or the Requisite Trust Unit Holders), shall take, or refrain from taking, all such action as is necessary to maintain the status of the Trust as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust.

The Trustee shall not (i) acquire any assets or dispose of any portion of the Trust other than pursuant to the specific provisions of this Trust Agreement, (ii) vary the investment of the Trust within the meaning of Treasury Regulation § 301.7701-4(c), (iii) substitute new investments or reinvest so as to enable the Trust Estate to take advantage of variations in the market to improve the investment of any Trust Unit Holder or (iv) engage in any activity which may directly or indirectly, adversely affect the status of the Trust as an "investment trust"

within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust. The Trustee shall not have any authority to manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Estate except as required by the express terms of this Trust Agreement in accordance with the powers granted to or the authority conferred upon the Trustee pursuant to this Trust Agreement. The Trustee and National each agree that they shall not take any action that would result in the Trust failing to be characterized for U.S. federal income tax purposes as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust.

**Section 8.02.  *Characterization.***

Each Trust Unit Holder acknowledges and agrees to treat the Trust Units and the book-entry beneficial interests therein as undivided interests in the Trust Estate.

**Section 8.03.  *Grantor Trust Administration.***

Notwithstanding anything in this Trust Agreement to the contrary, and notwithstanding any direction or instruction by less than all the Trust Unit Holders, the Trustee shall not be authorized to take any action that would cause the Trust not to be treated as a grantor trust under the Code all of the distributions and income from which would be subject to the tax treatment described in Subpart J of Chapter 1 of the Code as to the Trust Unit Holders. The Trustee shall perform its duties hereunder so as to maintain the status of the Trust as a grantor trust under the Grantor Trust Provisions. The Trustee shall not (i) exercise any discretionary rights with respect to the Trust Assets, (ii) acquire an interest in any additional Trust Assets (other than proceeds of a sale of Trust Assets permitted under the terms of this Trust Agreement), (iii) knowingly take any other action or fail to take (or fail to cause to be taken) any other action that, under the Grantor Trust Provisions, if taken or not taken, as the case may be, could adversely affect the status of (a) the Trust as a grantor trust, (b) the Trust as a U.S. trust, or (c) the Trust Unit Holders as grantors with respect to the Trust under the Grantor Trust Provisions (any such adverse effect on trust status, an "**Adverse Trust Event**"), unless the Trustee has obtained or received an Opinion of Counsel from counsel nationally recognized as competent in matters relating to the U.S. federal income taxation of organizations such as the Trust (at the expense of the party requesting such action or at the expense of the Trust Estate if the Trustee seeks to take such action or to refrain from taking any action for the benefit of the Trust Unit Holders) to the effect that the contemplated action will not result in an Adverse Trust Event.

None of the other parties hereto shall take any action or fail to take any action (whether or not authorized hereunder) as to which the Trustee has advised it in writing that the Trustee has received or obtained an Opinion of Counsel to the effect that an Adverse Trust Event could result from such action or failure to act. The Trustee may consult with counsel to make such written advice, and the cost of same shall be borne by the party seeking to take the action not permitted by this Trust Agreement, but in no event at the cost or expense of the Trust Estate or the Trustee.

29

**Section 8.04.  *Reports to Trust Unit Holders and Tax Authorities***

(a)      The Trustee shall perform or cause to be performed on behalf of the Trust all reporting and other tax compliance duties that are required in respect thereof under the Code, the Grantor Trust Provisions or other compliance guidance issued by the Internal Revenue Service or any state or local taxing authority, including for the avoidance of doubt the filing of IRS Forms 1099 or providing other information statements to the extent required pursuant to U.S. Treasury Regulations Section 1.671-5, as amended, or any successor provision (the "**WHFIT Regulations**") (including U.S. Treasury Regulations Section 1.671- 5(c)(1)).

(b)      Consistent with the Trust's characterization for U.S. federal income tax purposes as a grantor trust, except to the extent required pursuant to the WHFIT Regulations, no U.S. federal income tax return shall be filed on behalf of the Trust unless either (i) the Trustee shall receive an Opinion of Counsel that, based on a change in applicable law occurring after the date hereof, the Code requires such a filing or (ii) the Internal Revenue Service shall determine that the Trust is required to file such a return.  In the event that the Trust is required to file tax returns, the Trustee shall prepare or cause to be prepared, and sign and file when due with the appropriate tax authorities all of the tax returns in respect of the Trust.  In no event shall the Trustees, the Depositor, or National be liable for any liabilities, costs or expenses of the Trust or the Trust Unit Holders arising out of the application of any tax law, including federal, state, foreign or local income or excise taxes or any other tax imposed on or measured by income (or any interest, penalty or addition with respect thereto or arising from a failure to comply therewith) except, in the case of the Trustee, for any such liability, cost or expense attributable to the Trustee's gross negligence or willful misconduct.

(c)      If any tax, duty, assessment, or other governmental charge is imposed, levied or assessed on the Trust, or if the Trust becomes subject to deduction, withholding, or other charge or assessment from, or with respect to, any amounts received by the Trust or any distributions made by the Trust, such tax, duty, assessment or other governmental charge, together with all incidental costs and expenses (including penalties and reasonable attorneys' fees) (collectively, the "**Tax Costs**") shall be the sole responsibility of, charged to and payable by the Trust Unit Holders on a pro rata basis.  To the extent known prior to the termination of the Trust, all Tax Costs that are withheld, collected, charged, assessed, or levied shall be paid by the Trustee from the Trust Assets and income to the applicable taxing or governmental authority and any amounts so withheld, collected and/or paid to the applicable taxing or governmental authority shall be deemed to have been paid as distributions to the applicable Trust Unit Holders and treated in accordance with the provisions of the Trust Agreement applicable to Tax Costs.  To the extent any Tax Costs become known after the termination of the Trust, the former Trust Unit Holders of such Trust shall remain responsible for such Tax Costs on a pro rata basis.

(d)      The Trustee shall, for U.S. federal income tax purposes, maintain books and records with respect to the Trust on a calendar year basis or such other basis as may be required under the Code.

(e)      All taxes due and payable on any amounts payable to a Trust Unit Holder with respect to a Trust Unit shall be that Trust Unit Holder's sole responsibility.

(f)     For the purposes of this <u>Article VIII</u> of these Standard Terms and any other provision of the Trust Agreement relating to the ownership of a Trust Unit for U.S. federal income tax purposes, including definitions, all references to Holder, Trust Unit Holder, or Beneficial Owner shall mean the beneficial owner of a Trust Unit for U.S. federal income tax purposes.  By acquiring an interest in a Trust Unit, a beneficial owner of the Trust Unit for U.S. federal income tax purposes shall be deemed to consent as a condition of acquiring such interest to comply with any requirements of such Articles, Sections, or provisions hereof.

(g)     Notwithstanding any other provision of the Trust Agreement (including these Standard Terms), National makes no representations, warranties, or guarantees, and shall have no liability, with respect to the tax treatment of the Trust, the Trust Units, any payments made in connection with the Trust or the Trust Units, any Tax Costs, or any securities or other property held in the Trust or issued in connection with the Trust, including the Trust Units.  By electing National Non-Commutation Treatment Option 2B, all Trust Unit Holders expressly agree to hold National harmless, and not to seek to impose any liabiltiy on National, related to the tax treatment of the Trust, the Trust Units, any payments made in connection with the Trust or the Trust Units, any Tax Costs, or any securities or other property held in the Trust or issued in connection with the Trust, including the Trust Units.

# ARTICLE IX

## MISCELLANEOUS PROVISIONS

**Section 9.01.   *Amendment of Trust Agreement.***

The Trust Agreement (including these Standard Terms) may not be amended, waived or supplemented without the prior written consent of National.   The Trust Agreement (including these Standard Terms) may be amended, waived or supplemented from time to time by National and the Trustee without the consent of the Trust Unit Holders; <u>provided</u>, <u>however</u>, that no such amendment shall:

(a)     except as otherwise provided in the Trust Agreement (including these Standard Terms) reduce in any manner the amount of, or delay or accelerate the timing of, required distributions to any Trust Unit Holder without the written consent of such Trust Unit Holder;

(b)     compromise, waive, sell, forfeit, or otherwise diminish the rights of the Trust, the Trustee, or the Trust Unit Holders under any National Insurance Policy without the written consent of each Trust Unit Holder affected;

(c)     amend this <u>Section 9.01</u> without the written consent of each Trust Unit Holder;

(d)     adversely affect in any other material respect the interests of the Trust Unit Holders in any manner other than as described in (a) or (b) without the written consent of the Trust Unit Holders evidencing at least a majority of such Trust Units in the applicable Trust (measured by the outstanding principal amount of the underlying National Legacy Bonds), excluding, from both the numerator and the denominator, any Trust Units held by National; <u>provided</u>, <u>however</u>, that only Trust Units that an Officer of the Trustee knows are so held shall be so disregarded; or

31

(e)     reduce the aforesaid percentage of Trust Units the Holders of which are required to consent to any such amendment, without the unanimous written consent of such Holders of all Trust Units then outstanding.

Prior to executing any amendment permitted by this Article IX, (i) the Trustee shall be required to obtain an Opinion of Counsel that is nationally recognized as competent in matters relating to the federal income taxation of organizations such as the Trust to the effect that such amendment will not result in an Adverse Trust Event and (ii) the Trustee shall be entitled to receive, and shall be fully protected in relying upon an Opinion of Counsel and a certificate from an Officer of National stating that the execution of such amendment is authorized or permitted by the Trust Agreement and that all conditions precedent have been met.  The Trustee may, but shall not be obligated to, enter into any such amendment that affects the Trustee's own rights, duties, liabilities, indemnities or immunities under the Trust Agreement, these Standard Terms or otherwise.

Promptly after the execution of any such amendment the Trustee shall furnish a copy of such amendment to each Trust Unit Holder.

The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Trust Unit Holders shall be subject to such reasonable regulations as the Trustee may prescribe.

### Section 9.02.   *Counterparts; Electronic Signatures.*

The Trust Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.  The words "execution," "signed," "signature," and words of like import in the Trust Agreement (including these Standard Terms) or in any other certificate, agreement or document related to the Trust Agreement (including these Standard Terms)  shall include images of manually executed signatures transmitted by facsimile or other electronic format (including "pdf", "tif" or "jpg") and other electronic signatures (including DocuSign and Adobe Sign).  The use of electronic signatures and electronic records (including any contract or other record created, generated, sent, communicated, received, or stored by electronic means) shall be of the same legal effect, validity and enforceability as a manually executed signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law, including the US Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act and any other applicable law, including any state law based on the Uniform Electronic Transactions Act or the Uniform Commercial Code.

### Section 9.03.   *Limitation on Rights of Trust Unit Holders.*

The death or incapacity of any Trust Unit Holder shall not operate to terminate the Trust Agreement or the Trust, nor entitle such Trust Unit Holder's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Trust, nor otherwise affect the rights, obligations and liabilities of the parties hereto or any of them.

No Trust Unit Holder shall have any right to vote (except as expressly provided for herein) or in any manner otherwise control the operation and management of the Trust, or the obligations of the parties hereto, nor shall anything herein set forth, or contained in the terms of the Trust Units, be construed so as to constitute the Trust Unit Holders from time to time as partners or members of an association; nor shall any Trust Unit Holder be under any liability to any third person by reason of any action taken by the parties to the Trust Agreement pursuant to any provision hereof.

Except with respect to enforcement of the applicable National Insurance Policies in accordance with the terms hereof, no Trust Unit Holder shall have any right by virtue of any provision of the Trust Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to the Trust Agreement, unless the Requisite Trust Unit Holders shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee under the Trust Agreement, and the Trustee, for [fifteen (15) days] after its receipt of such request shall have neglected or refused to institute any such action, suit or proceeding. It is understood and intended, and expressly covenanted by each Trust Unit Holder with every other Trust Unit Holder and the Trustee, that no one or more Holders of Trust Units shall have any right in any manner whatever by virtue of any provision of the Trust Agreement to affect, disturb or prejudice the rights of the Holders of any other Trust Units, or to obtain or seek to obtain priority over or preference to any other such Holder, or to enforce any right under the Trust Agreement, except in the manner therein provided and for the equal, ratable and common benefit of all Trust Unit Holders. For the protection and enforcement of the provisions of this Section, each and every Trust Unit Holder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

In the event that an Officer of the Trustee receives a request for its consent to any amendment, modification or waiver of these Standard Terms, the Trust Agreement or any other document thereunder or relating thereto, or receives any other solicitation for any action with respect to the Securities or National Insurance Policies, the Trustee shall transmit a notice of such proposed amendment, modification, waiver, solicitation or action to each of the Trust Unit Holders within [five (5) days] of receipt thereof. The Trustee shall request instructions from the Trust Unit Holders as to whether or not to consent to or vote to accept such amendment, modification, waiver, solicitation or action.

The Trustee shall consent or vote proportionally in accordance with the written direction of the Trust Unit Holders; provided, however, that the Trustee shall not:

(a)     without the prior written consent of any Trust Unit Holder, consent or affirmatively vote on behalf of such Trust Unit Holder on any matter that would: (i) terminate the Trust, (ii) except as expressly provided herein, sell some or all of the assets of the Trust; (iii) compromise, waive, sell, forfeit, or otherwise diminish the rights of the Trust, the Trustee, or the Trust Unit Holders under any National Insurance Policy; and

(b)     without the prior written consent of National, consent or affirmatively vote on any matter that would amend, modify or waive any agreement in such a manner as to adversely impact National. Any such determination as to whether any such amendment, modification or waiver adversely impacts National shall be made in the sole and absolute discretion of National

33

and such determination shall be promptly provided by notice to the Trustee and the Trust Unit Holders.  The Trustee shall not be liable to any Trust Unit Holder or any other Person for refusing to consent or affirmatively vote on such a matter in accordance with such written direction of National.

### Section 9.04.  *Notices.*

All demands and notices under the Trust Agreement shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by first-class mail, postage prepaid, or by express delivery service, to:

(a)      in the case of the Trustee if the Trustee is [●], the notice address for the Trustee is [●].  If the Trustee is not [●], the notice address shall be the address set forth in the Trust Agreement, or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Trustee;

(b)      in the case of the Delaware Trustee, if the Delaware Trustee is [●], the notice address for the Delaware Trustee is [●].  If the Delaware Trustee is not [●], the notice address shall be the address set forth in the Trust Agreement, or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Delaware Trustee;

(c)      in the case of the Depositor, [●], or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Depositor; and

(d)      in the case of National, 1 Manhattanville Road, Suite 301, Purchase, NY 10577, or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by National.

Any notice required or permitted to be mailed to a Trust Unit Holder shall be given by first-class mail, postage prepaid, or by express delivery service, at the address of such Trust Unit Holder as shown in the Unit Register.  Notice may also be delivered by email in accordance with a separate side letter agreement entered into between the parties.  Any notice so mailed within the time prescribed in the Trust Agreement shall be conclusively presumed to have been duly given, whether or not the Trust Unit Holder receives such notice.  A copy of any notice required to be telecopied hereunder also shall be mailed to the appropriate party in the manner set forth above.  A copy of any notice given hereunder to any other party shall be delivered to the Trustee.

### Section 9.05.  *Severability of Provisions.*

If any one or more of the covenants, agreements, provisions or terms of the Trust Agreement shall be for any reason whatsoever held invalid, then to the fullest extent permitted by law such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of the Trust Agreement and shall in no way affect the validity or enforceability of the other provisions of the Trust Agreement or of the Trust Units or the rights of the Holders thereof.

**Section 9.06.   *Third-Party Beneficiaries.***

The Trust Unit Holders and their successors and assigns shall be third-party beneficiaries of the provisions of the Trust Agreement (inclding these Standard Terms).  For the avoidance of doubt, beneficial holders of Trust Units are third-party beneficiaries solely to the extent necessary to allow them to enforce the applicable National Insurance Policies as set forth herein.  Nothing in these Standard Terms or the Trust Agreement, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Trust Unit Holders, any benefit or any legal or equitable right, remedy or claim under the Trust Agreement (including these standard terms).

**Section 9.07.   *Acts of Trust Unit Holders.***

Any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Trust Agreement (including these Standard Terms) to be given or taken by Trust Unit Holders or a class of Trust Unit Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Trust Unit Holders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Trustee. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of the Trust Agreement (including these Standard Terms) and conclusive in favor of the Trustee.  The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner that the Trustee deems sufficient. The ownership of Trust Units shall be proved by the Unit Register.

**Section 9.08.   *Headings.***

Section and subsection headings in these Standard Terms are included herein for convenience of reference only and shall not constitute a part of these Standard Terms for any other purpose or be given any substantive effect.

**Section 9.09.   *No Waiver; Cumulative Remedies.***

No failure to exercise and no delay in exercising, on the part of any party of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, powers and privileges provided by law.

**Section 9.10.   *Merger and Integration.***

These Standard Terms and the Trust Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and thereof, and all prior understandings, written or oral, are superseded by the Trust Agreement (including these Standard Terms).

**Section 9.11.   *Delaware Trustee***

(a)      The Delaware Trustee is appointed to serve as the trustee of the Trust in the State of Delaware for the sole purpose of satisfying the requirement of <u>Section 3807(a)</u> of the Delaware Statutory Trust Act that the Trust have at least one trustee with a principal place of business in the State of Delaware.  It is understood and agreed by the parties hereto that the Delaware Trustee shall have none of the duties or liabilities of the Trustee or any other trustees.

(b)      The duties of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Delaware Secretary of State which the Delaware Trustee is required to execute under <u>Section 3811</u> of the Delaware Statutory Trust Act.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust or the Trust Unit Holders, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.  The Delaware Trustee shall have no liability for the acts or omissions of the Trustee or any other trustees and the Delaware Trustee shall not be liable for supervising or monitoring the performance of the duties of the Trustee, or any other trustees, or the Trust or of any other person or entity under the Trust Agreement or any related document.

(c)      The Delaware Trustee may be removed by National upon thirty days prior written notice to the Delaware Trustee.  The Delaware Trustee may resign upon thirty days prior written notice to National, with a copy to the Trustee.  No resignation or removal of the Delaware Trustee shall be effective except upon the appointment by National of a successor Delaware Trustee that (i) is reasonably acceptable to National, (ii) has a combined capital and surplus of at least $10,000,000 and (iii) is qualified to do business in the State of Delaware.  If no successor has been appointed within such [thirty (30) day] period, the Delaware Trustee, the Trustee or the Trust Unit Holders may petition a court to appoint a successor Delaware Trustee, which shall be at the expense of the Trust.

(d)      Any Person into which the Delaware Trustee may be merged or with which it may be consolidated, or any Person resulting from any merger or consolidation to which the Delaware Trustee shall be a party, or any Person which succeeds to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor Delaware Trustee under the Trust Agreement without the execution, delivery or filing of any paper or instrument or further act to be done on the part of the parties hereto, except as may be required by applicable law, provided that such resulting or successor entity otherwise satisfies the requirements set forth herein to serve as Delaware Trustee.

(e)      The Trust shall be responsible for the payment of any fees or expenses of the Delaware Trustee.  The Delaware Trustee shall be entitled to all of the same rights, protections, indemnities and immunities under the Trust Agreement and with respect to the Trust as the Trustee.  No amendment or waiver of any provision of the Trust Agreement which adversely affects the Delaware Trustee shall be effective against it without its prior written consent.  This provision shall survive the resignation or removal of the Delaware Trustee.

**Section 9.12.** ***Timing of Distributions and Other Trust Actions***

Notwithstanding anything to the contrary contained in this Trust Agreement, the PREPA Plan, or the Confirmation Order, if the Trust or the Trustee (on behalf of the Trust), is unable to perform any actions pursuant to this Trust Agreement within the time set forth herein due to circumstances outside the control of the Trust or the Trustee, as applicable, then such actions shall be effectuated as soon as reasonably practicable thereafter, and the Trust or the Trustee shall not be liable or held responsible for any such delays related thereto.

# ANNEX I

## INDEMNIFICATION PROVISIONS

(i)      The Trust shall indemnify each of the Trustees or any predecessor Trustees and their agents for, and to hold them harmless against, any and all loss, damage, claims, liability or expense, including taxes (other than taxes based upon, measured by or determined by the income of the Trustees), arising out of or in connection with the acceptance or administration of the Trust hereunder, including the costs and expenses of defending itself against any claim asserted by any other Person or liability in connection with the exercise or performance of any of its powers or duties hereunder, except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct as determined by a final judgment of a court of a competent jurisdiction no longer subject to appeal or review.

(ii)     The Trustees shall have the right to employ separate counsel in any such action or proceeding and participate in the investigation and defense thereof, and the Trust shall pay the reasonable fees and expenses of such separate counsel; provided, however, that the Trustees may only employ separate counsel at the expense of the Trust if in the reasonable judgement of the Trustees (1) a conflict of interest exists by reason of common representation or (2) there are legal defenses available to the Trustees that are different from or are in addition to those available to the Trust or if all parties commonly represented do not agree as to the action (or inaction) of counsel.

**Schedule 1**

**Primary Market National Legacy Bonds CUSIPs**

| Insured CUSIP | Original CUSIP | Insurance Policy Number(s) | Tax-Exempt/Taxable | Coupon | Original Maturity |
|---|---|---|---|---|---|
| 74526QCM2 | 74526QCM2 | FG04010536 | Tax-Exempt | 5.00% | 7/1/2024 |
| 74526QDD1 | 74526QDD1 | FG05010237 | Tax-Exempt | 5.00% | 7/1/2024 |
| 74526QES7 | 74526QES7 | 460020 | Tax-Exempt | 5.00% | 7/1/2024 |
| 74526QET5 | 74526QET5 | 460020 | Tax-Exempt | 4.25% | 7/1/2024 |
| 74526QPH9 | 74526QPH9 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2024 |
| 74526QCN0 | 74526QCN0 | FG04010536 | Tax-Exempt | 5.00% | 7/1/2025 |
| 74526QEU2 | 74526QEU2 | 460020 | Tax-Exempt | 5.00% | 7/1/2025 |
| 74526QEV0 | 74526QEV0 | 460020 | Tax-Exempt | 4.30% | 7/1/2025 |
| 74526QPJ5 | 74526QPJ5 | 496040 | Tax-Exempt | 5.25% | 7/1/2025 |
| 74526QPK2 | 74526QPK2 | 496040 | Tax-Exempt | 5.25% | 7/1/2026 |
| 74526QPM8 | 74526QPM8 | 496040 | Tax-Exempt | 5.25% | 7/1/2029 |
| 74526QPN6 | 74526QPN6 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2030 |
| 74526QPQ9 | 74526QPQ9 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2032 |
| 74526QAR3 | 74526QAR3 | 421620 | Tax-Exempt | 4.75% | 7/1/2033 |
| 74526QPR7 | 74526QPR7 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2033 |
| 74526QPS5 | 74526QPS5 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2034 |
| 74526QPT3 | 74526QPT3 | FG07010235 | Tax-Exempt | 5.25% | 7/1/2035 |

## Schedule 2

**Secondary Market National Legacy Bonds CUSIPs**

| Insured CUSIP | Original CUSIP | Insurance Policy Number(s) | Tax-Exempt/Taxable | Coupon | Original Maturity |
|---|---|---|---|---|---|
| 74526QSW3 | 74526QKS0 | 505200 | Tax-Exempt | 5.00% | 7/1/2024 |
| 74526QSY9 | 74526QKU5 | 506190 | Tax-Exempt | 5.00% | 7/1/2026 |

## EXHIBIT A

### NOTICE OF CLAIM AND CERTIFICATE

National Public Finance Guarantee Corporation
1 Manhattanville Road, Suite 301
Purchase, NY 10577
Attention: [●]
E-Mail: [●]

   Reference is made to the National Custodial Trust Agreement, dated as of [●], 2023 by and among the Puerto Rico Electric Power Authority (the "**Depositor**"), National Public Finance Guarantee Corporation ("**National**"), [●], (the "**Trustee**") and [●] (the "**Delaware Trustee**") (the "**Trust Agreement**"), which incorporates by reference the Standard Terms to the Trust Agreement, dated as of [●] (the "**Standard Terms**").  This Notice of Claim and Certificate is delivered pursuant to Section 3.06(a) of the Standard Terms.  Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Trust Agreement and the Policy (as defined below).

   The undersigned, a duly authorized officer of Trustee, in its capacity as Trustee for the Trust, hereby certifies to National, with reference to the Trust Agreement and Municipal Bond Insurance Policy No. [●], dated [●], 20[●] (the "**Policy**"), issued in respect of the [Name of Series of Bonds] (the "**National Legacy Bonds CUSIP**") and deposited into the Trust, that:

   (i)  The Trustee is the Trustee under the Trust Agreement.

   (ii)  After taking into account any adjustments made pursuant to Section 3.05 of the Standard Terms, the sum of all amounts on deposit with the Trustee and available for distribution to the Trust Unit Holders pursuant to the Trust Agreement will be $[●] (such amount, the "**Payment Shortfall**") less than the principal and interest of $[●] (the "**Scheduled Payments**") Due for Payment under the Policy and Trust Agreement on [●], 20[●].

   (iii)  The Trustee is hereby making a claim under the Policy and Trust Agreement for the Payment Shortfall to be applied to the payment of Scheduled Payments.

   (iv)  The Trustee agrees that, following its receipt of funds from National, it shall (a) hold such amounts in trust and, subject to Section [3.06(b)] of the Trust Agreement, apply the same directly to the payment of Scheduled Payments when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Trust Unit and the corresponding claim on the Policy.

   (v)  The Trustee, on behalf of the Trust Unit Holders, hereby assigns to National any rights of the Trust Unit Holders with respect to the Trust Assets to the extent that the principal amount of the National Legacy Bonds CUSIP is reduced

to zero.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to National in respect of such payments.  The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by National to effectuate the purpose or provisions of this clause (v) and the applicable terms in the Trust Agreement.

(vi)     The Trustee, on behalf of the Trust Unit Holders, hereby acknowledges and agrees that, so long as National shall not be in default in its payment obligations under the Policy, National may at any time during the continuation of any proceeding by or against the Depositor under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Trust Units or Trust Assets relating to such Insolvency Proceeding, including: (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made to the Trust or Trustee or in connection with the Trust Units (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of National, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Trustee hereby agrees that National shall be subrogated to the rights of each Trust Unit Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)     National shall, to the extent it makes any Scheduled Payments on the Trust Units under the Policy and Trust Agreement, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Trust Agreement.

(viii)     The Trustee hereby requests that the Payment Shortfall be deposited into the Insurance Policy Account by bank wire transfer or other immediately available funds using the following wiring instructions:

| | |
|---|---|
| Correspondent Bank: | [_____] |
| Fed ABA No: | [_____] |
| Account Name: | [_____] |
| Account No: | [_____] |
| Beneficiary A/C Name: | [_____] |
| Reference: | [_____] |

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to National.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the [●]th day of [●], 20[●].

[●], as Trustee

By: _____

      Name:

      Title:

For National or
Trustee Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

Exhibit A-3

## Appendix I

## Debt Service Payment for [ ]/[ ]/20[ ]

| Description of Bond Issue | CUSIP | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Principal | Interest | Total | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | _____ | | | _____ | _____ | _____ | _____ | | |
| | | _____ | | | _____ | _____ | _____ | _____ | | |

## **EXHIBIT B**

FORM OF NOTICE TO TRUST UNIT HOLDERS

NATIONAL CUSTODIAL TRUST
STATEMENT FOR THE DISTRIBUTIONS MADE ON OR ABOUT  [●], 20__

**[●] as Trustee**

**1.    Trust Units**[1]

| | Distributions made on or about [●], 20__ | | Year to date [●], 20 __ | | As of [●], 20 __ |
|---|---|---|---|---|---|
| | Aggregate distributions | Per Unit distributions[2] | Aggregate distributions | Per Unit distributions | [Aggregate principal amount of New Bonds] [Aggregate principal amount of Trust Units] (by CUSIP)[3] |
| Tax-Exempt Bond Account | $ | $ | $ | $ | |
| Taxable Bond Account | $ | $ | $ | $ | |
| Insurance Policy Account | $ | $ | $ | $ | [N/A (cash balance = $ [])] |

---

[1] Trustee to include only portions of this Exhibit B relevant to a particular Trust.

[2] "Per Unit distributions" and "Per Trust Unit" amounts herein are based on a Trust Unit's rate per $[●] as of the Effective Date.

[3] Or any other securities or property received in respect thereof or in exchange therefor.

Exhibit B-1

2.  **Aggregate Payment /Insured Amount Reporting for [National Legacy Bonds CUSIP]**

As of [●]

    a.    <u>Payments Made Since Effective Date on [National Legacy Bonds CUSIP]</u>:

        i.    Aggregate Interest Payments made on account of [National Legacy Bonds CUSIP] (sum of (1) and (2) below):

           **Total** _____; **Per Trust Unit** _____

           1.    Aggregate Interest Payments made by National on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

           2.    Aggregate Interest Payments from Interest Payments from Trust Assets on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

           3.    Aggregate Interest Payments from Principal Payments of Trust Assets on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

           4.    Aggregate Interest Payments from Sale of Trust Assets on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

        ii.    Aggregate Principal Payments made on account of [National Legacy Bonds CUSIP] (sum of (1) and (2) below):

           **Total** _____; **Per Trust Unit** _____

           1.    Aggregate Principal Payments made by National on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

           2.    Aggregate Principal Payments from Interest Payments from Trust Assets on account of [National Legacy Bonds CUSIP]:

               **Total** _____; **Per Trust Unit** _____

           3.    Aggregate Principal Payments from Principal Payments of Trust Assets on account of [National Legacy Bonds CUSIP]:

**Total** _____; **Per Trust Unit** _____

4.    Aggregate Principal Payments from Sale of Trust Assets on account of [National Legacy Bonds CUSIP]:

**Total** _____; **Per Trust Unit** _____

iii.    Aggregate Interest and Principal Payments made on account of [National Legacy Bonds CUSIP] (sum of (1) and (2) below): _____

**Total** _____; **Per Trust Unit** _____

1.    Aggregate Interest and Principal Payments made by National on account of [National Legacy Bonds CUSIP] (sum of 2.a.i.1 and 2.a.ii.1 above):

**Total** _____; **Per Trust Unit** _____

2.    Aggregate Interest and Principal Payments from Interest Payments from Trust Assets on account of [National Legacy Bonds CUSIP] (sum of 2.a.i.2 and 2.a.ii.2 above):

**Total** _____; **Per Trust Unit** _____

3.    Aggregate Interest and Principal Payments from Principal Payments of Trust Assets on account of [National Legacy Bonds CUSIP] (sum of 2.a.i.2 and 2.a.ii.2 above):

**Total** _____; **Per Trust Unit** _____

4.    Aggregate Interest and Principal Payments from Sale of Trust Assets on account of [National Legacy Bonds CUSIP] (sum of 2.a.i.2 and 2.a.ii.2 above):

**Total** _____; **Per Trust Unit** _____

b.    Insured Amount for [National Legacy Bonds CUSIP] after most recent distributions: _____

c.    Current Notional Amount of Trust Units after most recent distributions:

**Total** _____; **Per Trust Unit** _____

3.    <u>**Tax Reporting**</u>

[_____]

Exhibit B-3

Exhibit B-4