# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------ x
                                                                   :
In re:                                                             :
                                                                   :
THE FINANCIAL OVERSIGHT AND                                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                  :   Title III
                                                                   :
         as representative of                                      :   Case No. 17-BK-3283 (LTS)
                                                                   :
THE COMMONWEALTH OF PUERTO RICO, et al.,                           :   (Jointly Administered)
                                                                   :
         Debtors.¹                                                 :
------------------------------------------------------------------ x
                                                                   :
In re:                                                             :
                                                                   :
THE FINANCIAL OVERSIGHT AND                                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                  :   Title III
                                                                   :
         as representative of                                      :   Case No. 17-BK-4780 (LTS)
                                                                   :
PUERTO RICO ELECTRIC POWER AUTHORITY,                              :
                                                                   :
         Debtors.                                                  :
------------------------------------------------------------------ x
```

---

1. The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

RELEVANT BACKGROUND ...................................................................................................... 2

    A. Mr. Brownstein's Testimony ............................................................................................. 3

    B. Mr. Skeel's Testimony ....................................................................................................... 9

ARGUMENT ................................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
 455 F.3d 195 (3d Cir. 2006) .................................................................................. 13, 14

*Engineered Prods. Co. v. Donaldson Co.*,
 313 F.Supp.2d 951 (N.D. Iowa 2004) ........................................................................... 14

*Galaxy Computer Servs., Inc. v. Baker*,
 325 B.R. 544 (E.D. Va. 2005) ....................................................................................... 14

*Hays v. Equitex, Inc. (In re RDM Sports Grp., Inc.)*,
 277 B.R. 415 (Bankr. N.D. Ga. 2002) .......................................................................... 13

*In re MSTG, Inc.*,
 675 F.3d 1337 (Fed. Cir. 2012) ............................................................................... 14, 15

*In re Residential Capital, LLC*,
 491 B.R. 63 (Bankr. S.D.N.Y. 2013) ............................................................................. 14

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ........................................................................................ 13

*United States v. Workman*,
 138 F.3d 1261 (8th Cir. 1998) ....................................................................................... 13

**Statutes**

11 U.S.C. § 1122(a) ........................................................................................................... 3

PROMESA § 314(b)(6) & (7) ........................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(C) ................................................................................................ 3

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY FROM DAVID BROWNSTEIN AND DAVID SKEEL AT THE CONFIRMATION HEARINGS AS TO MATTERS OVER WHICH THE OVERSIGHT BOARD ASSERTED PRIVILEGE DURING THEIR DEPOSITIONS

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (the "Committee"),[2] moves to preclude witnesses David Brownstein and David Skeel from testifying at the upcoming July 2023 confirmation hearing ("Confirmation Hearing") as to matters on which they refused to answer questions in their depositions based on a "mediation privilege" or attorney-client privilege and states as follows:

### PRELIMINARY STATEMENT

In accordance with the Court's scheduling order for plan confirmation discovery, the Committee and other parties-in-interest took the depositions of Messrs. Brownstein and Skeel. Both witnesses refused to answer certain questions based on the instructions of their counsel that doing so would disclose information covered by the "mediation privilege" and/or would reveal attorney-client communications.

Specifically, at his May 16, 2023 deposition taken in preparation for the Confirmation Hearings (the "Brownstein Deposition", Exhibit 1), Mr. Brownstein repeatedly invoked the "mediation privilege" and refused to answer (or was instructed not to answer) numerous questions regarding his anticipated testimony as proffered in the Oversight Board's expert disclosures, including testimony relating to the negotiations leading to the settlements with National and the Fuel Line Lenders. When directly asked, Mr. Brownstein

---

2. The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

conceded that he, along with the Oversight Board, might decide to testify at the Confirmation Hearing on the very same issues that he refused to answer during his deposition based on a claim of mediation privilege.

Mr. Skeel also refused to answer certain questions during his deposition relating to the negotiation of the National settlement on the grounds of the purported mediation privilege. Similarly, he declined to answer certain questions regarding the basis for his belief that the Oversight Board's settlement with the Fuel Line Lenders is not unfairly discriminatory to other creditors on the grounds that doing so would violate the attorney-client privilege. Notwithstanding these refusals to answer, Mr. Skeel intends to provide testimony at the Confirmation Hearing concerning these matters.

Axiomatically, neither the Oversight Board nor its witnesses may invoke a privilege as both a shield and a sword. The Oversight Board (and any other party) should therefore be precluded from offering Mr. Brownstein's and Mr. Skeel's testimony at the Confirmation Hearings as to issues on which the Committee and other interested parties were prevented from obtaining discovery.

## RELEVANT BACKGROUND

1. On March 3, 2023, this Court entered the *Amended and Restated Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Dkt. No. 3305][3] (the "Amended and Restated Procedures Order").Pursuant to the Amended and Restated Procedures Order, on March 11, 2023, the Financial Oversight and Management Board for Puerto Rico (the

---

3. Unless otherwise specified, references to the docket are to Case No. 17-04780-LTS.

"Oversight Board" and as representative of PREPA, the "Debtor"), filed its *Preliminary List of Witnesses to Be Offered in Support of Confirmation of Plan of Adjustment* [Dkt. No. 3329] (the "FOMB Witness List").

2. Among others, the FOMB Witness List identified Mr. Brownstein, managing director of Citigroup Global Markets Inc., and Mr. Skeel, Chairman of the FOMB, as fact witnesses in support of confirmation. The FOMB also listed Mr. Brownstein as a witness who may "offer opinion testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C)." *See* FOMB Witness List, at 3-4.

### A. Mr. Brownstein's Testimony

3. The FOMB Witness List described the topics about which Mr. Brownstein "will testify" as follows:

> David Brownstein*: Managing Director, Citigroup Global Markets Inc.: May provide testimony showing the Plan complies with the provisions of PROMESA sections 314(b)(6)[4] and 314(b)(7)[5] and Bankruptcy Code section 1122(a).[6] Mr. Brownstein may also provide testimony about facts showing (i) some or all of the Plan Settlements are reasonable, (ii) the releases provided in the Plan are reasonable and appropriate, integral to the Plan, and constitute an essential component of the compromises identified above and in the Plan, (iii) the Plan's structuring and consummation fees and professional reimbursement fees are fair and reasonable, (iv) the terms and structure of the New Bonds and CVI, and (v) the calculation of creditor recoveries.

*Id.* at 3.

---

4. Section 314(b)(6) concerns considerations as to whether PREPA's plan "is feasible and in the best interests of creditors." PROMESA § 314(b)(6).

5. Section 314(b)(7) concerns considerations as to whether PREPA's "plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II." *Id.* § 314(b)(7).

6. Of course, § 1122(a) requires a debtor to classify similar claims in the same class. *See* 11 U.S.C. § 1122(a).

4. Consistent with the Amended and Restated Procedures Order, on April 28, 2023, the Oversight Board submitted *Debtor's Opening Expert Report and Disclosures* [Dkt. No. 3418] (the "Expert Disclosures") in support of confirmation. The Expert Disclosures identified Mr. Brownstein as an important expert witness who would testify on an extensive variety of critical issues, as set forth in the disclosure. Expert Disclosures, at 2-5. These disclosures are set forth in five categories. Focusing on just as to two of the five topics of testimony, topics (iv)[7] and (v),[8] for the purpose of this Motion:

> Mr. Brownstein is expected to testify concerning the National PSA and Fuel Line Lenders PSA. Mr. Brownstein is ***expected to testify, to the extent consistent with mediation privilege***, as to the ***nature of the negotiations that took place between the parties leading to those settlements, as well as the terms of the settlements, the benefits that they provide to PREPA, and the risks to PREPA were it to lose any of the disputes that are resolved through these settlements***. Mr. Brownstein will also testify concerning the fees and other amounts proposed to be reimbursed or paid to National and the Fuel Line Lenders, as well as the releases provided for by the settlement and proposed to be effectuated by the Plan. Mr. Brownstein is also expected to testify the fess and other amounts proposed to be paid pursuant to these settlements are fair and reasonable in light of the obligations, responsibilities, and efforts undertaken by the proposed fee recipients, the relative magnitude of the fee payments compared to PREPA's overall debt, and the use and magnitude of such fees in comparable cases. Mr. ***Brownstein will base this testimony on his personal participation in the negotiation*** of the National PSA and Fuel Line Lender PSA, his ***personal participation*** in, or supervision of, communications between and among advisors to the Oversight Board, and his significant expertise and experience in the municipal bond market and with Title III restructurings.
>
> More specifically, with respect to the Fuel Line Lenders PSA, Mr. Brownstein is ***expected to testify regarding the key benefits the Oversight***

---

7. Topic (iv) is "the negotiation of the nation PSA and Fuel Line Lenders PSA, including the benefits of those settlements . . . ."
8. Topic (v) is "the basis of the releases and professional fees provided in connection with those settlements in the Plan."

4

>    ***Board took into account in approving the settlement,*** including, among other things, its resolution of the litigation filed by the Fuel Line Lenders regarding the asserted priority of the Fuel Line Lenders' claims. Regarding the release called for by the settlement, Mr. Brownstein may testify as to how such release's proposed terms provide flexibility for the Oversight Board to enter into subsequent agreements with other parties.
>
>    As to the National Settlement, Mr. Brownstein is expected to testify that its structure, including its use of a trust commutation, is consistent with other settlements approved by this Court in other Title III plan confirmations, as well as prior municipal bond structures in which Mr. Brownstein has been involved. ***Mr. Brownstein may also address the National Reimbursement Claim, including its particular features.*** Further, Mr. Brownstein may also testify about the work done by National's professional advisors relating to the structure of the Series B Bonds, and how such efforts provide a benefit to creditors who may enter into future settlements.

*Id.* at 4-5 (emphasis added).

5. On May 16, 2023, several interested parties, including the UCC, deposed Mr. Brownstein, as an expert and corporate representative of the Oversight Board, in anticipation of the Confirmation Hearing.

6. More than 20 times during his deposition, Mr. Brownstein claimed the mediation privilege and refused to answer (or the Debtor, through the Oversight Board, asserted the mediation privilege and instructed the witness not to answer). The Oversight Board Counsel drew a "bright line," indicating that it would invoke the mediation privilege as to the "process" leading to the settlement that forms part of Mr. Brownstein's anticipated testimony.[9] Specifically, counsel inquired:

>    [I]f I were to ask additional questions about the process as between the oversight board and the fuel line lenders and mediation that led to the

---

9. *See, e.g.*, Brownstein Dep. Tr. 93:4-23.

agreement to the fuel line lenders' PSA, is it fair to say that you'll instruct the witness not to answer those process questions?

Mr. MERVIS: Probably. . .. One bright line, I will say, in terms of what went back and forth, yeah, that, I'm going to instruct him not to answer.

Brownstein Dep. Tr. 93:13-94:9.

7. The following table includes a sample of questions challenged on the basis of the mediation privilege:

| EXCERPTS |
|---|
| What information, if any, did you provide to board members concerning proposals to the fuel line lenders? <br> A All proposals to and from the fuel line lenders were reviewed and approved by the board. <br> Q How many rounds of back-and-forth proposals and counterproposals were there? <br> MR. MERVIS[10]: I think I have to instruct the witness not to answer that question on the basis of mediation confidentiality.[11] |
| Q When did negotiations toward the National PSA beg[i]n? <br> A During mediation. <br> Q Early in mediation, middle in mediation, toward the end? <br> A Early to in the middle. <br> . . . . <br> Q And was the mediation team involved in those negotiations? <br> MR. MERVIS: That one, I'm going to instruct the witness not to answer that question.[12] |
| Q My question is just whether the package of terms that you agreed to with National on its bond claim, is that same or different from the offer of settlement that was made to all PREPA bondholders under the terms of the plan of adjustment? |

---

10. Mr. Mervis, of the Proskauer Rose LLP law firm, appeared on behalf of the Oversight Board, as representative for PREPA.

[11] Brownstein Dep. Tr. 91:6-19.
[12] Brownstein Dep. Tr. 133:23-134:12.

> A Right. And what I'm saying to you is, in my view, that answer to that question incorporates things that are mediation privilege. So I can't answer.
>
> Q I don't know how that could be. But we'll move on.[13]

> Q Now, in the same paragraph, it says, "Mr. Brownstein will base this testimony on his personal participation in the negotiation of the National PSA and fuel line lender PSA." My question is, was that negotiation as to either one of those PSAs outside of the mediation context?
>
> A No.
>
> Q So is it your belief that your personal participation in the negotiation of those two PSAs would also be encompassed by the mediation privilege?
>
> MR. MERVIS: Object to the form.
>
> A Well, those agreements are now in the public domain.
>
> Q Correct.
>
> A So it changes to some extent, not in full, but what we could talk about. I mean the dialogue we had with National along the way is something I'd be concerned about. The negotiations of the agreement and the deliberations by the board, I'd be concerned about. But explaining what the agreement is, is no longer mediation privileged. It's in the public domain.
>
> Q Why would you be concerned about the dialogue with National?
>
> MR. MERVIS: I object to the form.
>
> A Well, again, as I said, this is something we're going to have to talk with people about and get sign-offs on. I'm not going to make my own decision as to what we can and can't do without talking to people who also are impacted by it.[14]

> Q You can't answer without revealing mediation privilege why the oversight board in its plan of adjustment did not offer to all PREPA bondholders the same exchange ratio that it offered and agreed to with National?
>
> A Correct.
>
> . . . .
>
> Q What is the basis on which you plan to testify that the National settlement is fair and reasonable when all PREPA bondholders were offered only a 50 percent exchange ratio under the plan of adjustment?
>
> . . . .

---

[13] Brownstein Dep. Tr. 149:17-151:6.
[14] Brownstein Dep. Tr. 366:15-368:6.

| |
|---|
| A I just don't know how to not say it's mediation privilege. So I can walk it through with you.[15] |
| Q . . . Do you think that proposals that are made in mediation are relevant to any issues concerning whether this plan should be confirmed?<br><br>. . . .<br><br>A I think that the challenge we have is that in order to properly answer those questions, I would need to be able to describe what happened in mediation. And I don't know how to split the two. I wish I could, so that we could come up with an answer to your question. I'm trying to avoid going out of school on mediation which I really need to be very cautious about.[16] |

8. Mr. Brownstein took an expansive view of the mediation privilege, contending that it would apply to negotiations, proposals, counterproposals and other communications between the mediating parties during the "mediation process," irrespective if it was during a mediation session. (Brownstein Dep. Tr. 354:6-356:19). He defined the "mediation process," as the period that commenced with the "first mediation" until an impasse or settlement. (*Id*. at 356:6-13). He further testified that "any negotiations with creditors, any proposals made to them, any responses we receive from them in the mediation process" would "remain privileged." (*Id*. at 355:3-10).

9. At his deposition, Mr. Brownstein was asked if he intended to waive the mediation privilege at all when called to testify at the confirmation hearing. (*Id*. at 356:22-25). He answered that "I can't answer that today." (*Id.* at 357:14). When asked when he could answer it, he testified "When I've had discussions with both the mediators and my lawyers and other parties." (*Id*. at 357:18-20).

---

[15] Brownstein Dep. Tr. 141:10-142:25.
[16] Brownstein Dep. Tr. 210:22-211:12.

8

10. Thus, at Mr. Brownstein's deposition, the Oversight Board prevented the Committee and others from discovering information concerning negotiations and proposals leading to the fuel line lenders' plan settlement agreement, negotiations and proposals concerning the settlement with National Public Finance Guarantee Corporation ("National"), the reasonableness of any settlement with the Fuel Line Lenders and National.

B. **Mr. Skeel's Testimony**

11. The FOMB Witness List described the topics about which Mr. Skeel "will testify" as follows:

> ***May provide fact testimony showing the Plan complies with the provisions of PROMESA section 314(b)(1), including, without limitation, that it complies with the provisions of Bankruptcy Code sections*** 1122(a), 1122(b), 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b)(1), 1123(b)(2), 1123(b)(3), 1123(b)(5), 1123(b)(6), 1123(d), 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8) (if applicable), 1129(a)(10), ***1129(b)(1)***, and 1129(b)(2), PROMESA section 314(b)(2), 314(b)(3), 314(b)(4), 314(b)(5), 314(b)(6), and 314(b)(7). ***Mr. Skeel may also provide testimony about facts showing (i) the Fuel Line Lender PSA, the National PSA***, the Vitol Settlement Agreement, and Uninsured Bondholder Settlement Agreement (collectively, the "Plan Settlements") ***are reasonable***, (ii) the releases, injunctions, and exculpation provisions provided in the Plan are reasonable and appropriate, integral to the Plan, and constitute an essential component of the compromises identified above and in the Plan, and (iii) certain of the Commonwealth statutes the Oversight Board contends are preempted, or portions thereof, are inconsistent with PROMESA.

See FOMB Witness List, at 2-3. Importantly, section 1129(b)(1) of the Bankruptcy Code provides, among other things, that the plan must not "discriminate unfairly" against any impaired class of creditors not accepting the plan.

12. On May 3, 2023, the Committee and various other interest parties took Mr. Skeel's deposition (the "Skeel Deposition", Exhibit 2). During the deposition, Mr. Skeel confirmed that he intends to testify at the Confirmation Hearing on the matters set forth in

9

the FOMB Witness List, including the reasonableness of the plan settlements, and the plan's compliance with section 1129(b)(1) of the Bankruptcy Code.[17]

13. When questioned on these matters, however, Mr. Skeel at times declined to answer on grounds of privilege. For example, when asked whether the mediation was used to broker the FOMB's settlement with National, he refused to answer the question based upon the purported mediation privilege:

> Q Is it your testimony that the mediation was involved in brokering the settlement with National?
>
> MR. FIRESTEIN: I'm going to object and instruct on the grounds that that invades first mediation process and the communications that would have occurred --
>
> MR. KIRPALANI: No, sir. You cannot use a reference to the mediation process as a sword to defend the good-faith of an unfairly discriminatory settlement and then prevent me from asking about that.
>
> MR. FIRESTEIN: Who says that that's what the intention is going to be? A mediation process includes not only involvement of the mediators, but also other directors --
>
> MR. KIRPALANI: Now you're testifying.
>
> MR. FIRESTEIN: If you're going to make a statement, then I'm going to tell you what I think. If you're going to tell me what I can't do, I'm going to tell you why I can.
>
> MR. KIRPALANI: I'm going to tell you. We're going to bring Mr. Skeel back to answer this question if you instruct him.
>
> MR. FIRESTEIN: You could do what you wish relative to that.
>
> MR. KIRPALANI: That's fine. **So just to be clear, you're instructing the witness not to answer a question about whether the mediation team was involved in the settlement with National?**
>
> MR. FIRESTEIN: That's not what the sentence says.

---

[17] *See,* Skeel Dep. Tr. 281:18-282:25.

10

>MR. KIRPALANI: *I'm asking you a question.*
>
>MR. FIRESTEIN: *Yes. The answer is yes.*

Skeel Dep. Tr. 250:13-252:9 (emphasis added).

14. Mr. Skeel also invoked the attorney-client privilege when asked why he believes it is fair for the plan of adjustment to treat the Fuel Line Lenders differently from other unsecured creditors (*i.e.*, the exact issue on which he proposes to offer testimony at the confirmation hearing in relation to section 1129(b)(1) of the Bankruptcy Code). Mr. Skeel initially testified in his deposition that, when determining the fairness of the plan's treatment of particular creditors, the FOMB needs to consider such creditor's legal entitlements. *See id*. at 294:11-295:7 ("[O]ne of the things that we look at, what is their claim, are there legal infirmities with the claim and things of that sort."). However, when asked to explain whether the Fuel Line Lenders have greater legal entitlements on their claims than other unsecured creditors, he refused to answer based on the attorney-client privilege:

>Q Setting aside those other considerations, are you aware of any reason why a fuel line lender's claim would have a greater legal entitlement to payment from PREPA as compared to another general unsecured claim that is also a current expense claim?
>
>MR. FIRESTEIN: I'm going to instruct him not to answer that question. You're expressly asking for a legal conclusion. It's clearly invading attorney-client privilege because you excluded his answer that he gave you before. So I don't know how it could be anything but.
>
>MR. BASSETT: I don't know how he's able to sit here and testify to the reasonableness of a settlement if he's not able to explain the basis for how he gets that.
>
>MR. FIRESTEIN: You could argue that sometime if you'd like. But he's already articulated for you what his reasonable basis is.
>
>Q You're not going to answer the question?

> MR. FIRESTEIN: He's going to follow my advice.
>
> MR. KIRPALANI: I'd like to add an objection to your instruction. If this witness tries to put any testimony in, in support of settlements that you've prohibited him to answer questions about, we're going to move to exclude that testimony on the basis of your instruction today.
>
> MR. FIRESTEIN: I don't understand that objection. But to the extent that he provides testimony that is consistent with what he's already -- what he's already said today, you have your rights. And we have ours. You would have had it tomorrow if you hadn't said it today.
>
> MR. KIRPALANI: No. I want to be very clear that your instruction is jeopardizing his ability to testify fully about the reasons that the board entered into a settlement. I want to make sure that you're doing that knowingly because we're going to take that position.
>
> MR. FIRESTEIN: Okay. I reject that characterization. The question that was posed of him was what are the legal reasons for why it is that you would do something. That question in its form has -- is absolutely directed at attorney-client communication because he has testified at some length today about the reasons why he thinks the settlements are fair or not fair or reasonable or not reasonable.
>
> MR. KIRPALANI: We will see if that's sufficient.
>
> MR. FIRESTEIN: I agree with that.
>
> MR. BASSETT: I join in the objection. He testified earlier that he understands that in determining whether or not a plan is fair and reasonable, a creditor's legal entitlements have to be considered. He also testifies that he believes the settlements are reasonable. If he's not able to provide the basis for how he gets there using those underlying principals, how can he offer that testimony?
>
> MR. FIRESTEIN: That's not true. He can offer facts. And lawyers are empowered to use those facts and apply the law to them. And that's what lawyers do. And that's what you'll hear at confirmation. A witness is not obligated to give you facts and his legal opinion on things.

Skeel Dep. Tr. 330:25-335:7. As to the "facts," if any, of which Mr. Skeel is aware that

support his position regarding the fairness of the Fuel Line Lender settlement, he said he

12

believes the Fuel Line Lenders have a "strong claim" to priority treatment under the trust agreement for the PREPA bonds. *Id*. at 334:24-335:7. But when asked to elaborate on the basis for this position (including to explain how the trust agreement could possibly give the Fuel Line Lenders priority over non-bondholder creditors, including other current expense claimants), Mr. Skeel again hid behind the attorney-client privilege. *Id*. at 336:23-337:12 ("My understanding [of why the Fuel Line Lenders have a strong argument] is based on our conversations with our lawyers").

15. By raising these objections and refusing to provide answers the Committee's questions, the Oversight Board and Mr. Skeel frustrated the Committee's ability to fully explore the topics on which Mr. Skeel has said he intends to testify.

## ARGUMENT

The Oversight Board and Messrs. Brownstein and Skeel made a strategic choice to employ broad privileges at their depositions to refuse to answer numerous, relevant questions concerning matters that were identified in the FOMB's witness disclosures. This choice had the obvious effect of denying the Committee (and other interested parties) relevant discovery. Prejudicially, the Oversight Board sought to suppress this testimony during discovery while retaining the right to solicit that same evidence for the first time during the witnesses' testimony at the Confirmation Hearing.

Evidentiary privileges may not be used as both "a shield and a sword." *See, e.g., United States v. Workman,* 138 F.3d 1261, 1264 (8th Cir. 1998); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (providing that the attorney-client privilege may not be used as both a sword at trial and a shield in discovery); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 221 n.24 (3d Cir. 2006); *Hays v. Equitex, Inc. (In re RDM Sports Grp., Inc.*),

13

277 B.R. 415, 437 (Bankr. N.D. Ga. 2002) (applying the "sword and shield" concept to an asserted mediation privilege); *In re MSTG, Inc*., 675 F.3d 1337, 1348 (Fed. Cir. 2012). Accordingly, the Oversight Board cannot invoke the mediation privilege during the Brownstein Deposition to thwart discovery by the Committee and others, only to then seek to waive that privilege and testify on those very same, previously-secreted topics and issues:

> The weight of authority indicates that to permit [the witness] to testify to issues which she refused to testify to during her deposition based on privilege would allow the Defendants to use . . . privilege as both a shield and a sword. Thus, [the witness] may only testify at trial within the scope of her deposition.

*Galaxy Computer Servs., Inc. v. Baker,* 325 B.R. 544, 559 (E.D. Va. 2005).[18]

The rationale for this rule — which applies in full force in bankruptcy proceedings — is rooted in notions of fundamental fairness: "A party may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *In re Residential Capital, LLC*, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013) (quoting *Trouble v. The Wet Seal, Inc*., 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001)).

The Oversight Board should be precluded from now redefining the mediation and attorney-client privileges to offer testimony that it withheld in discovery. The *MSTG* decision highlights the unfairness inherent in the tactic the Oversight Board adopted here. In *MSTG*, the Court of Appeals for the Federal Circuit evaluated whether to overturn the district court's order compelling party (MSTG) to produce certain discovery (testimony and documents) that related to settlement negotiations that ultimately resulted in an executed settlement.

---

18. *See also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 221 n.24 (3d Cir. 2006) ("[W]e remind the parties that the . . . privilege cannot be used as both a 'shield' and a 'sword': Berckeley cannot rely upon the legal advice it received [to] negat[e] its scienter without permitting Colkitt the opportunity to probe the surrounding circumstances and substance of that advice."). *Engineered Prods. Co. v. Donaldson Co.*, 313 F.Supp.2d 951, 1022-23 (N.D. Iowa 2004) (barring party's introduction of testimony at trial on issues for which opposing party denied full exploration at deposition by asserting privilege).

14

*MSTG*, 675 F.3d at 1339-40. The *MSTG* Court observed that the party's expert relied on information about the settlement discussions in rendering his expert opinion that was not contained in the parties' settlement documents.[19] The *MSTG* Court declined to overrule the district court and highlighted that "*as a matter of fairness MSTG cannot at one and the same time have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations.*" *MSTG*, 675 F.3d at 1348 (emphasis added).

As discussed above, the same notions of fairness are at play in conjunction with the Confirmation Hearing and the Oversight Board's assertion of privilege at the depositions of Messrs. Brownstein and Skeel. Specifically, with respect to Mr. Brownstein, having used the mediation privilege to shield from relevant discovery at his deposition, the Oversight Board should be precluded from referring to any matters supposedly subject of the mediation privilege at the Confirmation Hearing to show that: (a) PREPA's proposed plan of adjustment complies with the provisions of PROMESA §§ 314(b)(6) and 314(b)(7) and Bankruptcy Code section 1122(a); (b) some or all of the plan settlements are reasonable; (c) the releases provided in the Plan are reasonable and appropriate, integral to any plan; (d) PREPA's proposed plan's structuring and consummation fees and professional reimbursement fees are fair and reasonable; or (e) any other matter or topic about which Mr. Brownstein may be called to testify, whether as a Rule 30(b)(6) designee or an expert. Similarly, the Oversight Board should not be permitted to introduce testimony from Mr. Skeel (i) on topics covered by a mediation privilege relating to the negotiation of the National

---

[19]. The district court ordered production of materials relating to negotiations "because they might contain information showing that the grounds [the expert] relied on to reach his conclusion are erroneous" and to permit the alleged infringer "the ability to test the accuracy of [the expert's] opinions and assumption." *MSTG*, 675 F.3d at 1348 (citation omitted).

15

settlement or (ii) as to the basis for his belief that the Fuel Line Lenders have strong arguments supporting the Oversight Board's decision to provide the Fuel Line Lenders with greater treatment than general unsecured creditors under the plan of adjustment.

**WHEREFORE**, the Committee respectfully requests that the Court grant this motion, limit the Oversight Board from offering testimony at the Confirmation Hearing as requested in this motion, and grant such other and further relief as the Court deems necessary.

Dated: June 2, 2023

/s/ *John Arrastia*
John Arrastia, Esq. (Pro Hac Vice)
Jesus M. Suarez, Esq. (Pro Hac Vice)
Angelo M. Castaldi, Esq. (Pro Hac Vice)
CONTINENTAL PLLC
255 Alhambra Cir, Suite 640,
Miami, FL 33134
Tel: (305) 677-2707
jarrastia@continentalpllc.com
jsuarez@continentalpllc.com
acastaldi@continentalpllc.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors*

- and -

/s/ *Juan J. Casillas*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*