# Exhibit 2

Page 1

```
 1
 2    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF PUERTO RICO
 3    Case No. 17-BK-3283-LTS
      ---------------------------------------------x
 4    In re:
 5    THE FINANCIAL OVERSIGHT AND MANAGEMENT
      BOARD FOR PUERTO RICO,
 6
      as representative of
 7
      THE COMMONWEALTH OF PUERTO RICO, et al.,
 8
                                Debtors.
 9    ---------------------------------------------x
      Case No. 17-BK-4780-LTS
10    ---------------------------------------------x
      In re:
11
      THE FINANCIAL OVERSIGHT AND MANAGEMENT
12    BOARD FOR PUERTO RICO,
13    as representative of
14    THE PUERTO RICO ELECTRIC POWER AUTHORITY,
15                              Debtor.
      ---------------------------------------------x
16                         May 3, 2023
                           10:00 a.m.
17
18         VIDEOTAPED DEPOSITION of DAVID SKEEL,
19    held at the offices of Kramer Levin
20    Naftalis & Frankel LLP, located at 1177
21    Avenue of the Americas, New York, New York
22    10036, before Anthony Giarro, a Registered
23    Professional Reporter, a Certified Realtime
24    Reporter and a Notary Public of the State
25    of New York.
```

Page 250

1 DAVID SKEEL
2 says, "The mediation process assisted the
3 oversight board in reaching deals with
4 two major creditor groups, the fuel line
5 lenders holding over $700 million in
6 unsecured claims and National Public
7 Finance Guarantee Corporation, a monoline
8 insurer of PREPA's revenue bonds and
9 holder of certain claims against PREPA."
10 And then it goes on.
11 Do you see that sentence?
12 A I do see that sentence.
13 Q Is it your testimony that
14 the mediation was involved in brokering
15 the settlement with National?
16 MR. FIRESTEIN: I'm going to
17 object and instruct on the grounds
18 that that invades first mediation
19 process and the communications that
20 would have occurred --
21 MR. KIRPALANI: No, sir.
22 You cannot use a reference to the
23 mediation process as a sword to
24 defend the good-faith of an unfairly
25 discriminatory settlement and then

```
                                              Page 251
 1                 DAVID SKEEL
 2   prevent me from asking about that.
 3             MR. FIRESTEIN:  Who says
 4   that that's what the intention is
 5   going to be?  A mediation process
 6   includes not only involvement of the
 7   mediators, but also other
 8   directors --
 9             MR. KIRPALANI:  Now you're
10   testifying.
11             MR. FIRESTEIN:  If you're
12   going to make a statement, then I'm
13   going to tell you what I think.  If
14   you're going to tell me what I can't
15   do, I'm going to tell you why I can.
16             MR. KIRPALANI:  I'm going to
17   tell you.  We're going to bring Mr.
18   Skeel back to answer this question if
19   you instruct him.
20             MR. FIRESTEIN:  You could do
21   what you wish relative to that.
22             MR. KIRPALANI:  That's fine.
23             So just to be clear, you're
24   instructing the witness not to answer
25   a question about whether the
```

Page 252

1  DAVID SKEEL
2  mediation team was involved in the
3  settlement with National?
4    MR. FIRESTEIN: That's not
5  what the sentence says.
6    MR. KIRPALANI: I'm asking
7  you a question.
8    MR. FIRESTEIN: Yes. The
9  answer is yes.
10   Q   Who at the oversight board
11 negotiated the settlement with National?
12   A   The primary negotiation was
13 done by our lawyers and financial
14 advisors.
15   Q   Were you involved yourself
16 in negotiating that settlement?
17   A   I was not involved in
18 directly negotiating, no.
19   Q   Under the plan of the
20 oversight board, non-settling
21 bondholders, even if they prevailed in
22 the adversary proceeding, they would do
23 worse than National under every scenario
24 contemplated by this plan; isn't that
25 correct?

Page 281

1 DAVID SKEEL
2 THE VIDEOGRAPHER: The time
3 is 4:26 p.m. And we're back on the
4 record.
5 EXAMINATION BY
6 MR. BASSETT:
7 Q Good afternoon, Mr. Skeel.
8 I'm Nick Bassett from Paul Hastings. As
9 you know, we represent the official
10 committee of unsecured creditors. And
11 I'll have a few additional questions for
12 you today.
13 A Thank you.
14 MR. BASSETT: I'd like my
15 colleague, if he could, to put into
16 Exhibit Share, the document that is
17 labeled as tab 2.
18 (The above-referred-to
19 document was marked as Exhibit 34 for
20 identification, as of this date.)
21 MR. BASSETT: And I do have
22 some hard copies.
23 Q I'll represent to you, Mr.
24 Skeel, that the document that I have
25 introduced is the debtors's preliminary

Page 282

1            DAVID SKEEL
2  list of witnesses to be offered in
3  support of confirmation of the plan of
4  adjustment.
5            Mr. Skeel, have you seen
6  this document before?
7       A     Yes.  I have seen this
8  document.
9       Q     If you scroll down to the
10 bottom of page 2, beginning of page 3,
11 you are listed there as a potential
12 witness?
13      A     I do understand I'm listed.
14      Q     And have you had occasion
15 prior to this to read the description
16 that contains the subjects of testimony
17 that you may provide?
18      A     Yes, I have.
19      Q     And is this, to the best of
20 your knowledge, paragraph 1 here
21 reflect -- the subjects identified in
22 paragraph 1 here the subjects, to the
23 best of your understanding, that you may
24 testify on in support of the plan?
25      A     Yes, they are.

|     | Page 330 |
|-----|----------|
| 1   | DAVID SKEEL |
| 2   | that qualifies in my view. |
| 3   | Q      If there was another |
| 4   | unsecured claim that qualifies as a |
| 5   | current expense claim, is there any |
| 6   | reason, to your knowledge, why a fuel |
| 7   | line lender's claim would be entitled to |
| 8   | better treatment than such other |
| 9   | unsecured claim that is also a current |
| 10  | expense claim? |
| 11  |         MR. FIRESTEIN:  Lacks |
| 12  |     foundation, calls for a legal |
| 13  |     conclusion.  If your source of |
| 14  |     information is anything other than |
| 15  |     conversations you had with your |
| 16  |     lawyers, you can speak to that if you |
| 17  |     understand the question, otherwise I |
| 18  |     would instruct you not to answer. |
| 19  |     A       I'll just say that there are |
| 20  | other considerations that go in. |
| 21  | Settling a big claim is more attractive |
| 22  | than settling a small claim.  So I really |
| 23  | can't answer the question in the |
| 24  | abstract. |
| 25  |     Q       Setting aside those other |

Case:17-03283-LTS Doc#:24407-2 Filed:06/02/23 Entered:06/02/23 19:55:29 Desc:
Exhibit 2 - D. Skeel Deposition Page 9 of 14

Page 331

1  DAVID SKEEL
2  considerations, are you aware of any
3  reason why a fuel line lender's claim
4  would have a greater legal entitlement to
5  payment from PREPA as compared to another
6  general unsecured claim that is also a
7  current expense claim?
8           MR. FIRESTEIN: I'm going to
9       instruct him not to answer that
10      question. You're expressly asking
11      for a legal conclusion. It's clearly
12      invading attorney-client privilege
13      because you excluded his answer that
14      he gave you before. So I don't know
15      how it could be anything but.
16          MR. BASSETT: I don't know
17      how he's able to sit here and testify
18      to the reasonableness of a settlement
19      if he's not able to explain the basis
20      for how he gets that.
21          MR. FIRESTEIN: You could
22      argue that sometime if you'd like.
23      But he's already articulated for you
24      what his reasonable basis is.
25   Q    You're not going to answer

Page 332

1 DAVID SKEEL
2 the question?
3 MR. FIRESTEIN: He's going
4 to follow my advice.
5 MR. KIRPALANI: I'd like to
6 add an objection to your instruction.
7 If this witness tries to put any
8 testimony in, in support of
9 settlements that you've prohibited
10 him to answer questions about, we're
11 going to move to exclude that
12 testimony on the basis of your
13 instruction today.
14 MR. FIRESTEIN: I don't
15 understand that objection. But to
16 the extent that he provides testimony
17 that is consistent with what he's
18 already -- what he's already said
19 today, you have your rights. And we
20 have ours. You would have had it
21 tomorrow if you hadn't said it today.
22 MR. KIRPALANI: No. I want
23 to be very clear that your
24 instruction is jeopardizing his
25 ability to testify fully about the

Case:17-03283-LTS Doc#:24407-2 Filed:06/02/23 Entered:06/02/23 19:55:29 Desc:
Exhibit 2 - D. Skeel Deposition Page 11 of 14

Page 333

1 DAVID SKEEL
2 reasons that the board entered into a
3 settlement. I want to make sure that
4 you're doing that knowingly because
5 we're going to take that position.
6 MR. FIRESTEIN: Okay. I
7 reject that characterization. The
8 question that was posed of him was
9 what are the legal reasons for why it
10 is that you would do something. That
11 question in its form has -- is
12 absolutely directed at
13 attorney-client communication because
14 he has testified at some length today
15 about the reasons why he thinks the
16 settlements are fair or not fair or
17 reasonable or not reasonable.
18 MR. KIRPALANI: We will see
19 if that's sufficient.
20 MR. FIRESTEIN: I agree with
21 that.
22 MR. BASSETT: I join in the
23 objection. He testified earlier that
24 he understands that in determining
25 whether or not a plan is fair and

Page 334

1                DAVID SKEEL
2     reasonable, a creditor's legal
3     entitlements have to be considered.
4     He also testifies that he believes
5     the settlements are reasonable. If
6     he's not able to provide the basis
7     for how he gets there using those
8     underlying principals, how can he
9     offer that testimony?
10         MR. FIRESTEIN: That's not
11     true. He can offer facts. And
12     lawyers are empowered to use those
13     facts and apply the law to them. And
14     that's what lawyers do. And that's
15     what you'll hear at confirmation. A
16     witness is not obligated to give you
17     facts and his legal opinion on
18     things.
19   Q    Mr. Skeel, what facts are
20 you aware of that entitle the fuel line
21 lenders to a greater recovery than
22 general unsecured creditors? What facts
23 are you aware of?
24   A    Facts that I'm aware of are
25 that the fuel line lenders had a

Page 335

1                    DAVID SKEEL
2    particularly strong claim to current
3    expense treatment because they're named
4    in the -- explicitly in the trust
5    agreements.  And they have contracts with
6    PREPA that describe them as entitled to
7    current expense treatment.
8        Q     Let's look at the trust
9    agreement.  That was introduced earlier,
10   Exhibit 22.
11                You said they are named in
12   the trust agreement.  I'm going to direct
13   your attention to the definition of
14   current expenses which I believe -- it's
15   on page 20 of the document at the bottom.
16   I don't know if that's different from the
17   PDF.  Let me know when you're there.
18       A     I am there.
19       Q     Now, can you show me -- if
20   you go to the second page of that lengthy
21   definition, there are a series of
22   sentences that begin with the language,
23   "Notwithstanding the foregoing or
24   anything herein to the contrary."
25                Do you see where I am on the

Case:17-03283-LTS Doc#:24407-2 Filed:06/02/23 Entered:06/02/23 19:55:29 Desc: Exhibit 2 - D. Skeel Deposition Page 14 of 14

Page 394

C E R T I F I C A T I O N

I, ANTHONY GIARRO, a Shorthand Reporter and a Notary Public, do hereby certify that the foregoing witness, DAVID SKEEL, was duly sworn on the date indicated, and that the foregoing, to the best of my ability, is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

_____
ANTHONY GIARRO