# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Movant,<br><br>v.<br><br>AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., SYNCORA | |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

GUARANTEE, INC., U.S. BANK NATIONAL
ASSOCIATION AS PREPA BOND TRUSTEE,

Respondents.

**DEBTOR'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CHALLENGING**
**<u>OVERSIGHT BOARD'S CERTIFICATION DETERMINATIONS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

CHALLENGES TO THE CERTIFIED FISCAL PLANS ........................................................ 2

RELIEF REQUESTED............................................................................................................. 7

ARGUMENT............................................................................................................................. 7

CONCLUSION........................................................................................................................ 12

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. For P.R.)*,
297 F. Supp. 3d 269 (D.P.R. 2018), *aff'd,* 927 F.3d 597 (1st Cir. 2019) ..........................7, 8, 9

*Asociacion Puertorriquena de Profesores Universitarios, v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
60 F.4th 9 (1st Cir. 2023)..................................................................................................8

*Kenney v. Head*,
670 F.3d 354 (1st Cir. 2012).............................................................................................9

*Mendez-Nunez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
916 F.3d 98 (1st Cir. 2019).........................................................................................7, 11

*Plaza-Torres v. Rey*,
No. 02-1216, 2006 WL 6884391 (D.P.R. Apr. 21, 2006) ...........................................8

*Rossello Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
330 F. Supp. 3d 685 (D.P.R. 2018), *aff'd and remanded sub nom. Vazquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R.,* 945 F.3d 3 (1st Cir. 2019) ...........................8

*Union de Trabajadores de la Industria Electrica y Riego v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
7 F.4th 31 (1st Cir. 2021)..................................................................................................7

STATUTES & RULES

48 U.S.C. §§ 2101–2241...................................................................................................1

PROMESA § 104..............................................................................................................11

PROMESA § 106......................................................................................................... passim

PROMESA § 201......................................................................................................... passim

PROMESA § 314........................................................................................1, 9, 10, 11

Fed. R. Evid. 401 ..............................................................................................................8

Fed. R. Evid. 402 ..............................................................................................................8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),
as the sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA," or the
"Debtor") respectfully submits this motion *in limine* for an order substantially in the form attached
hereto as **Exhibit A** (the "Proposed Order") excluding evidence in support of any objection to
confirmation of PREPA's Modified Second Amended Title III Plan of Adjustment (the "PREPA
Plan") that constitutes a challenge to the Oversight Board's certification determinations under the
Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[1]  In support
hereof, the Oversight Board respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Congress assigned to the Oversight Board the exclusive power and duty to certify
fiscal plans, among other governmental instruments, and expressly withdrew the Oversight
Board's certification determinations from review in any United States district court. In turn, the
statutory standards for confirmation of Title III plans of adjustment do not require any inquiry into,
or consideration of the correctness of any determinations by the Oversight Board which
PROMESA requires the Oversight Board to certify.  To the contrary, PROMESA § 314(b)(7)
requires plans of adjustment to be consistent with the applicable fiscal plan certified by the
Oversight Board.

2.      Notwithstanding PROMESA §106(e)'s express language barring judicial review of
the Oversight Board's certification decisions, the Ad Hoc Group of PREPA Bondholders, Assured
Guaranty Corp. and Assured Guaranty Municipal Corp., Syncora Guarantee Inc., and U.S. Bank
National Association as PREPA Bond Trustee (collectively, the "Bondholders"), through their

---

[1]      PROMESA is codified at 48 U.S.C. §§ 2101–2241.

experts, seek to attack the January 27, 2022 fiscal plan for the Commonwealth of Puerto Rico (the

"Commonwealth Fiscal Plan," attached hereto as **Exhibit B**),[2] and the June 28, 2022 PREPA fiscal

plan (the "PREPA Fiscal Plan," attached hereto as **Exhibit C** and together with the Commonwealth

Fiscal Plan, as amended or modified, the "Fiscal Plans").  The Bondholders thus seek to replace

the Oversight Board's determinations with assumptions, models, and projections benefiting them.

This type of tactic is exactly what Congress sought to avoid by insulating the Oversight Board's

certification determinations from influence and pressure from creditors, political stakeholders and

others.  Indeed, with PROMESA § 106(e), Congress went to the extraordinary length of insulating

the Oversight Board from pressure by creditors and the Government to move in their directions to

avoid litigation over certified fiscal plans.  Congress deprived federal courts of jurisdiction over

such litigation.

3.      Therefore, evidence attacking or second guessing the Fiscal Plans serves no

purpose because Congress expressly deprived federal courts of power to order the Oversight Board

to change them.  Admitting this impermissible, irrelevant evidence at the confirmation hearing

would compel the Oversight Board to rebut the evidence, leading to a full scale battle over the

Fiscal Plans, which battle would only waste time and resources.  The evidence should therefore be

excluded.

### CHALLENGES TO THE CERTIFIED FISCAL PLANS

4.      The Bondholders have demonstrated, through their filed expert reports, they intend

to challenge the Fiscal Plans the Oversight Board certified.  One of the Bondholders' experts, Dr.

---

[2] The Bondholders' expert reports challenge macroeconomic determinations in the Commonwealth Fiscal
Plan certified in January 2022.  The Oversight Board has since certified a new Fiscal Plan for the
Commonwealth of Puerto Rico dated April 3, 2023, which is not addressed by any of the Bondholders'
experts.  The PREPA Fiscal Plan, however, is based in part on the 2022 Commonwealth Fiscal Plan.

Sebastian Edwards, opines the Commonwealth Fiscal Plan's forecast of Puerto Rico's gross national product ("GNP") is "fundamentally flawed." Expert Report of Sebastian Edwards dated April 28, 2023, ECF No. 3424-2 ("Edwards Report"), Section IV, at 12 – 50.[3] Dr. Edwards asserts the Commonwealth Fiscal Plan's GNP forecast methodology "ignores, or departs from, . . . accepted methodology, which leads to unreliable results," Edwards Report, at 27 ¶ 48 , fails to "account[ ] for one of the key drivers of economic growth render[ing] [the] forecast unreliable," *id*. at 32 ¶ 59, and wrongly projects "the capital stock, one of [the forecast's] key inputs, to decline over time, and . . .  does not incorporate the growth impact of" infrastructure reforms, *id*. at 32 ¶ 61.  In short, the entire purpose of Dr. Edwards's report is to refute the Commonwealth Fiscal Plan's GNP forecast in its entirety. In its place, he advocates using a new GNP projection, which he creates with a macroeconomic technique called a Solow Growth Model. Needless to say, the Bondholders are attacking the Fiscal Plans precisely because they know the proposed plan of adjustment must be consistent with them.

5.      This is no small matter.  The GNP forecast Dr. Edwards challenges and attempts to replace with his own conclusions is foundational to and inextricable from the Commonwealth Fiscal Plan. The Commonwealth Fiscal Plan's GNP forecast is core to its revenue forecast, expenditure and debt-sustainability analyses, and other elements required of the fiscal plan by PROMESA § 201(b).  *See* Commonwealth Fiscal Plan, at 32 (describing the economic outlook model that forecasts GNP) & generally Part II ("Puerto Rico's path to fiscal and economic sustainability"), at 32-76 (applying economic outlook model to forecast Puerto Rico's fiscal future).

6.      Dr. Edwards does not stop at the Commonwealth Fiscal Plan. He also attempts to

---

[3] All ECF references are to the docket no. 17-BK-4780-LTS, unless otherwise noted.

alter basic elements of the PREPA Fiscal Plan.  He opines the PREPA Fiscal Plan's electricity-usage projection should be based on his own GNP projection.  In the alternative, Dr. Edwards says, the electricity-usage projection should be based on a version of the Commonwealth Fiscal Plan's forecast that Dr. Edwards modifies and that projects *higher* GNP (a so-called forecast "with Income Adjustment"), rather than the version of the Commonwealth Fiscal Plan GNP forecast *actually used* in the current[4] PREPA Fiscal Plan (a forecast "without Income Adjustment"). Edwards Report at 51-53, ¶¶ 84-85.  The Oversight Board's choice of the specific GNP forecast that Dr. Edwards criticizes—the forecast *without* Income Adjustment—is essential to the PREPA Fiscal Plan's revenue forecast, PREPA Fiscal Plan, p. 151 ("The Certified Fiscal Plan Base Case (the "Base Case") developed by PREPA and LUMA includes a load scenario based on assumptions for key gross load drivers (GNP and population projections consistent with Commonwealth Certified Fiscal Plan"),  which the Oversight Board developed and certified in accordance with the requirements of PROMESA § 201(b). Simply put, the Oversight Board's forecast "without Income Adjustment" is foundational to the PREPA Fiscal Plan.

7.      To be clear, although Dr. Edwards says he has "not been asked to opine on any PREPA Fiscal Plan or Commonwealth Fiscal Plan, *as such*," Edwards Report at 1 ¶ 2 (emphasis added), in fact he takes aim at both Fiscal Plans because "PREPA's electricity demand (or 'load') . . . ties back to a load forecast in PREPA's 2022 Certified PREPA Fiscal Plan. That load forecast, in turn, relies on macroeconomic projections in the 2022 Commonwealth Fiscal Plan certified by the FOMB." *Id*. Through Dr. Edwards' report, Bondholders essentially assert the Court should direct the Oversight Board to revise the Fiscal Plans for the obvious purpose of giving them a

---

[4] The Oversight Board contemplates certifying PREPA's next fiscal plan for the coming fiscal year in less than two weeks.

4

higher recovery.

8.      Another Bondholders expert, Dr. Susan Tierney, builds on and adds to Dr. Edwards' rejection of the Fiscal Plans' GNP projections. For purposes of forecasting future "net load"[5] for PREPA (which informs the proposed creditor recoveries under the PREPA Plan), Dr. Tierney calculates three new net load forecasts: (i) a forecast of load based on the "alternative case" set forth in the PREPA Fiscal Plan that, though included in the PREPA Fiscal Plan to show what might happen if energy efficiency targets mandated by law are *not* met, is not a fulsome projection that accounts for revenue requirements and is not adopted in the PREPA Fiscal Plan; (ii) a forecast that is based on the "alternative case" *and* replaces the PREPA Fiscal Plan's GNP forecast with the GNP forecast created by Dr. Edwards (the Solow Growth Model projection); and (iii) a forecast that is based on the "alternative case" *and* replaces the PREPA Fiscal Plan's GNP forecast with Dr. Edwards' modified version of the Commonwealth Fiscal Plan GNP forecast (the GNP forecast *with* Income Adjustment—which the PREPA Fiscal Plan does not use and thus implicitly rejects); *See* Expert Report of Susan Tierney dated April 28, 2023, ECF No. 3424-4 ("Tierney Report"), Section V.C, p. 39, ¶ 70; *see also* App'x D to the Tierney Report. The Bondholders, in short, would use Dr. Tierney's testimony to advocate for the rejection of the Oversight Board's forecasts central to both certified Fiscal Plans.[6]

---

[5] "Gross load" refers to the volume of electricity that PREPA would sell to customers for a given period, whereas "net load" refers to the gross load modified to reflect customers' projected adoption of (i) energy efficiency measures, (ii) distributed generation technologies such as rooftop solar panels, and (iii) electric vehicles for that period. Expert Report of Susan Tierney dated April 28, 2023, ECF No. 3424-4 ("Tierney Report"), p. 10, ¶ 25.

[6] Dr. Tierney also takes issues with the PREPA Fiscal Plan in another way: Dr. Tierney argues the capital expense forecasting in the PREPA Fiscal Plan is "over-generous" and "overly inflated due to outdated data." *Id.* at 7, 54, ¶¶ 17, 101. Capital expense forecasting, too, is a critical part of the PREPA Fiscal Plan's revenue and expenditure forecasting and provision for capital expenditures and investments necessary to promote economic growth under PROMESA § 201(b)(1)(A) and (J), respectively, and the Oversight Board's certification thereof.

9.      Yet another Bondholders expert, Dr. Maureen Chakraborty, adopts Dr. Edwards'

and Dr. Tierney's conclusions and incorporates their positions contrary to the Fiscal Plans.  *See*

Expert Report of Maureen M. Chakraborty dated April 28, 2023, ECF No. 3441-1 (the

"Chakraborty Report").  For example, Dr. Chakraborty notes that, although the creditor recoveries

contemplated under the PREPA Plan are derived using the electricity demand forecasts from the

PREPA Fiscal Plan, Dr. Tierney finds the Oversight Board's demand forecasts to be "flaw[ed]"

and "based on unfounded and unreasonable assumptions."  *Id.* at 45, ¶ 74.  Likewise, Dr.

Chakraborty observes that Dr. Edwards "discusses other overly pessimistic inputs used to create

the 2022 Certified PREPA Fiscal Plan forecast [and] opines that PREPA's load forecasts are based

on forecasts of future growth in Puerto Rico's GNP that use an inappropriate methodology and

implausibly predict a multi-decade economic recession in Puerto Rico."  *Id.* at 45-46, ¶ 74.

Adopting Dr. Edwards' and Dr. Tierney's conclusions, Dr. Chakraborty claims PREPA can issue

and sustain as much as $564 million more debt than the Oversight Board concludes in the PREPA

Plan.  *Id.* at 14, Table 1, row [G].  This amount can be even greater, Dr. Chakraborty says, if her

(impermissible) "correction" to the Fiscal Plans is made in conjunction with yet other revisions

proposed by Dr. Chakraborty and Dr. Tierney.  *Id.* at 14, ¶ 23 ("I note that the combination of these

corrections can have compound effects, such that the impact of two or more corrections can add

to more than the arithmetic sum of the individual effects.").

10.     Thus, the Bondholders' experts, individually and together, make clear their goal is

to have the Court reject Fiscal Plan components that Congress requires in each certified fiscal plan,

and order the Oversight Board to issue more debt to Bondholders as a condition of confirmation.

What the Bondholders are attempting to do is precisely what Congress took extraordinary steps to

prevent.

6

**RELIEF REQUESTED**

11.     The Oversight Board respectfully requests the Court enter an order to preclude these experts, and any other witnesses, from presenting any evidence in support of any objection to confirmation of the PREPA Plan that constitutes a challenge to the Fiscal Plans the Oversight Board certified.

**ARGUMENT**

12.     The Oversight Board has "exclusive authority" to certify fiscal plans for the Commonwealth and its instrumentalities, including PREPA. *Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. For P.R.)*, 297 F. Supp. 3d 269, 283 (D.P.R. 2018), *aff'd,* 927 F.3d 597 (1st Cir. 2019); PROMESA § 201. "Section 201(b) of PROMESA identifies fourteen specific objectives and requirements" the fiscal plans "must satisfy," *Ambac*, 297 F. Supp. 3d at 283, including requirements that the fiscal plan contain "independent forecasts of revenue for the period covered by the Fiscal Plan." PROMESA § 201(b)(1)(H). The Oversight Board's certification "necessarily rest[s] on determinations that the Section 201(b) requirements have been met." *Ambac*, 297 F. Supp. 3d at 283.

13.     The Oversight Board's certification is not subject to review by the District Court, which has "no jurisdiction . . . to review challenges to the Oversight Board's certification determinations under [PROMESA]." PROMESA § 106(e). "[Section] 106(e) bars district courts from reviewing the reasons for certification determinations as much as the certification determinations themselves." *Mendez-Nunez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 113 (1st Cir. 2019); *Union de Trabajadores de la Industria Electrica y Riego v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 7 F.4th 31, 40 (1st Cir. 2021) ("PROMESA insulates FOMB's certification

7

determinations from judicial review in the federal courts."); *see also Asociacion Puertorriquena de Profesores Universitarios, v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 60 F.4th 9, 15-16 (1st Cir. 2023) (barring "claims [that] rest[ed] on challenges to the Oversight Board's certifications and reasoning . . . ."). Although Section 106(e) does not bar review of "all conceivable litigation touching on certified documents," it bars litigation that challenges the propriety—as distinct from the mere impact—of a certification decision. *Rossello Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 694 (D.P.R. 2018), *aff'd and remanded sub nom. Vazquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R.,* 945 F.3d 3 (1st Cir. 2019). Such jurisdictionally-barred challenges include "implicit challenges of a certification decision as violating the requirements set forth in Section 201(b) . . . ." *Id.* at 695 n.11.

14.     The jurisdictional bar applies to "any claim that challenges the Oversight Board's certification decision itself and any implicit challenges of a certification decision . . . ." *Rossello Nevares*, 330 F. Supp. 3d at 695 n.11. Put another way, Section 106(e) bars challenges to "Oversight Board determinations that are inherent in the certification of a Fiscal Plan." *Ambac*, 297 F. Supp. 3d at 290 n.11 (D.P.R. 2018); *id.* 283–84 (dismissing claims under Section 106(e) "to the extent they, implicitly or explicitly, s[ought] invalidation of the certification of the Fiscal Plan . . . .").

15.     Irrelevant evidence is inadmissible. Fed. R. Evid. 402; see also, e.g., *Plaza-Torres v. Rey*, No. 02-1216, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion in limine to exclude irrelevant evidence pursuant to Rule 401). Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401 (evidence only relevant where it bears

8

on a fact "of consequence in determining the action"); *see also Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence").

16.    Here, evidence is relevant only if it tends to prove or disprove any valid argument for or against the confirmation of the PREPA Plan under PROMESA § 314(b).  Evidence that purports to challenge the Oversight Board's fiscal plan certification determinations, which reflect its unbiased determinations of net revenue available to pay debt, should be excluded, for three reasons.

17.    *First*, the Court has no jurisdiction to review any challenge to the Oversight Board's "certification determinations." PROMESA § 106(e). To the extent the Bondholders seek to present evidence that inherently challenges the propriety of the Oversight Board's certifications of the Fiscal Plans—which "necessarily" include certifications "that the Section 201(b) requirements have been met," *Ambac*, 297 F. Supp. 3d at 283—that evidence may not be reviewed by the Court.

18.    The Oversight Board used the Commonwealth Fiscal Plan's GNP forecast to meet the requirement, among others, that it "create independent forecasts of revenue for the period covered by the Fiscal Plan." PROMESA § 201(b)(1)(H); *see* Commonwealth Fiscal Plan, Part II, at 32-76.  The Oversight Board similarly used the GNP forecast and load forecasts in the PREPA Fiscal Plan to project, among other things, PREPA's ability to generate revenues for payment of debt—again, a requirement for the Oversight Board's certification under Section 201(b). PREPA Fiscal Plan, p. 151.

19.    Dr. Edwards's critique of the GNP forecast, Dr. Tierney's and Dr. Chakraborty's embrace of that critique and use of alternative, non-Oversight-Board-certified GNP forecasts, and their resulting advocacy of an "alternative case" load scenario are all designed to justify a different net revenue availability and therefore all run afoul of Section 106(e)'s jurisdictional bar.  The

9

Bondholders' experts' alternative GNP and load forecasts are an improper invitation to the Court

to "review challenges to the Oversight Board's certification determinations." PROMESA §

106(e). Even if the experts' objectionable opinions were to be admitted into evidence, the opinions

cannot be a basis for concluding PREPA must pay creditors more. Thus the opinion testimony of

Dr. Edwards, Dr. Tierney, Dr. Chakraborty, or any witness, that contravenes the Oversight Board's

certification determinations with respect to the Fiscal Plans has no relevance to confirmation

because it may not be considered by the Court. Notably, aside from the Oversight Board believing

there is less net revenue than the Bondholders contend, the Fiscal Plan and the proposed PREPA

Plan of Adjustment reflect other judgments the Oversight Board is required to make such as how

quickly or slowly it can rebuild PREPA's antiquated infrastructure and equipment and how much

burden it can and should impose on Puerto Rico's ratepayers.

20.     *Second*, for purposes of confirmation the Court must determine, among other

things, whether the PREPA Plan of Adjustment "is consistent with the applicable Fiscal Plan

certified by the Oversight Board under title II." PROMESA § 314(b)(7). Per the statute, the

"applicable Fiscal Plan"[7] is the foundation which the plan of adjustment must not contradict. It

makes no sense to permit challenges to the Fiscal Plans when a statutorily-mandated purpose of

the confirmation hearing is to assess the PREPA Plan's *consistency with* the Fiscal Plan. To permit

such a challenge would be a waste of time and irrelevant to any of the elements of Section 314(b).

Indeed, this Court has ruled that notwithstanding the Oversight Board certification of a proposed

plan of adjustment's *consistency with* the applicable fiscal plan pursuant to PROMESA § 104(j)(3),

the Court has the power and duty to review consistency at the confirmation hearing because

---

[7] Here, "applicable Fiscal Plan" is the PREPA Fiscal Plan and includes, for practical purposes, the
Commonwealth Fiscal Plan, on which the PREPA Fiscal Plan relies for certain economic projections that
the Bondholders seek to challenge.

PROMESA § 314(b)(7) requires it to do so.  Order Denying Debtors' Mot. *in Limine* [*etc.*], *In re FOMB*, No. 17-BK-3283-LTS, ECF No. 20146 (D.P.R. Feb. 15, 2022) (Swain, J.).  Notably, what the Court was required to do in that case was to determine the plan of adjustment was consistent with the fiscal plan the Oversight Board certified.  Here, the issue is different in several ways.  First, the Bondholders are attempting to propound evidence to cause the Court to require the proposed plan of adjustment to be inconsistent with the applicable fiscal plan.  Second, there is no provision of PROMESA Title III requiring the Court to review the fiscal plan, other than for the purpose of determining whether the proposed plan of adjustment is consistent with it.  There is no analogue to PROMESA § 314(b)(7).  Section 106(e) does not permit a review of the Fiscal Plan to determine whether it should be changed.

21.  *Third*, "PROMESA grants the Board exclusive authority to certify Fiscal Plans. . . . It then insulates those certification decisions from judicial review." *Méndez-Núñez v. FOMB*, 916 F.3d 98, 112 (1st Cir. 2019). The purpose of Congress' grant of authority to the Oversight Board is to prevent any United States court, creditors, and other stakeholders from supplanting the Oversight Board's expert, unbiased decision making and policy determinations. Varying the Oversight Board's impartial judgment by injecting stakeholders' assumptions, models, and projections is exactly what Congress sought to avoid when it enacted Section 106(e) insulating the Oversight Board's certification determinations from judicial review.

22.  Significantly, none of the foregoing means the Oversight Board is infallible. Rather, it means the Oversight Board, being uncompensated and solely concerned with carrying out its statutory mission, is just as likely to err by certifying a fiscal plan allowing too much debt, as too little debt.  The PREPA Title III case proves that point.  When the Oversight Board believed facts were different, it entered into a restructuring support agreement with Bondholders providing

11

for more debt than it currently believes is sustainable.  The Government terminated that agreement

with the Oversight Board's approval.  Thus, fallibility is not the issue.  Instead, the issue is to have

unbiased experts come up with net revenue conclusions without pressure or influence, including

the pressure of creditor litigation.  Manifestly, Congress understood that creditor litigation over a

fiscal plan can only create pressure to issue more debt; not because more debt is appropriate, but

because Oversight Board members might agree to more debt to avoid litigation.  Congress barred

that litigation, and the Oversight Board is attempting to carry out Congress' intent by requesting

exclusion of evidence designed to create the litigation Congress barred.

## CONCLUSION

23.     For the foregoing reasons, the Oversight Board respectfully requests that the

Court enter the Proposed Order excluding all evidence that challenges the Oversight Board's

certification determinations in the Fiscal Plans.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 2, 2023
New York, New York

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Julia D. Alonzo
Laura Stafford
Adam Farbiarz
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board, as representative for
PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board, as
representative for PREPA*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

14