**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
                Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH JUNE 8, 2023 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

      The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the June 8, 2023 omnibus hearing and in response to this Court's order, dated May 26, 2023 [Case No. 17-BK-03283, ECF No. 24336].

## I.     General Status and Activities of the Oversight Board

### HTA Plan of Adjustment

1.     The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico.  To those ends, the Oversight Board proposed the Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority [Case No. 17-BK-03567, ECF No. 1377] (as amended, supplemented, or modified, the "HTA Plan of Adjustment") for confirmation pursuant to Title III of PROMESA.  On October 12, 2022, the Court confirmed the HTA Plan of Adjustment (the "HTA Confirmation Order").

### Appeals from the HTA Confirmation Order

2.     On October 24, 2022, the plaintiffs in *Vazquez Velazquez v. P.R. Highways & Transp. Auth.* [Case No. 21-1739, Docket Entry No. 1287] (the "Vazquez Velazquez Objection," and an objector to the HTA Plan of Adjustment, the "Vazquez Velazquez Group") filed a notice of appeal to the United States Court of Appeals for the First Circuit (the "First Circuit") [Case No. 17-BK-03567, ECF No. 1423].  The Vazquez Velazquez Group argues that their asserted claims were improperly classified in Class 16 (HTA General Unsecured Claims) and that the HTA Plan of Adjustment should be amended to have their asserted claims placed into a separate class of nondischargeable claims.  In confirming the HTA Plan of Adjustment, the Court overruled the Vazquez Velazquez Objection, holding the Vazquez Velazquez Group's claims, which arise from litigation concerning a discontinued HTA compensation program, are not exempt from discharge, and thus are not "substantially dissimilar" to the other general unsecured claims in the class.  *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Fifth*

2

*Amended File III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1416], ¶ 114 n.14.  The Vazquez Velazquez Group also concurrently filed a motion to stay confirmation of the HTA Plan of Adjustment pending appeal [Case No. 17-BK-03567, ECF No. 1424].

3.      In accordance with the Court's briefing order [Case No. 17-BK-03567, ECF No. 1425], on October 28, 2022, the Oversight Board and certain monoline insurers filed their oppositions to the Vazquez Velazquez Group's motion to stay the effectiveness of the HTA Confirmation Order and the consummation of the HTA Plan of Adjustment [Case No. 17-BK-03567, ECF Nos. 1432, 1434].  Similarly, on October 31, 2022, the Vazquez Velazquez Group filed a reply in support of its motion [Case No. 17-BK-03567, ECF No. 1435].

4.      On November 15, 2022, the Court denied the Vazquez Velazquez Group's motion to stay confirmation of the HTA Plan pending appeal.  [Case No. 17-BK-03567, ECF No. 22867]. On November 21, 2022, after failing to obtain a stay pending appeal from this Court, the Vazquez Velazquez Group filed a motion to stay confirmation of the HTA Plan of Adjustment pending appeal with the First Circuit [Case No. 22-1829, Doc. 00117945812].  Following briefing on the issue, the Vazquez Velazquez Group filed a withdrawal of its request for a stay pending appeal. On November 30, 2022, the First Circuit granted the Vazquez Velazquez Group's request to withdraw their motion for a stay pending appeal [Case No. 22-1829, Doc. 00117949042].  Briefing with respect to the merits of the Vazquez Velazquez appeal continues.  By notice, dated May 25, 2023, the First Circuit informed the Vazquez Velazquez Group and the Oversight Board that the pending appeal will be considered on the submitted briefs and without oral argument.

5.      On December 6, 2022, the HTA Plan of Adjustment became effective.  The transactions therein significantly lessen HTA's debt burden by reducing HTA's funded debt by

seventy-five percent (75%), from approximately $6.4 billion to $1.245 billion senior and $359 million subordinate HTA toll road-supported debt. The substantial consummation of the HTA Plan of Adjustment represents a significant achievement in advancing Puerto Rico's public policy objective to attain fiscal responsibility and to access the capital markets, and will promote better and safer roads across Puerto Rico and more efficient commerce.

### Fiscal Plans and Budgets

6.      The Oversight Board remains focused on developing and certifying budgets for the fiscal year 2023. On May 12, 2023, the Oversight Board, in consultation with the Governor and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), certified an amended fiscal 2023 budget for the Commonwealth. The amended Commonwealth budget reflects updated revenue and expense projections, as well as includes $650 million previously authorized for the Government's Emergency Reserve and $545 million for a loan to PREPA to ensure sufficient working capital. The certified amended budget also provides an additional $100 million requested by the Puerto Rico Health Insurance Administration ("ASES") to fund a potential Medicaid funding shortfall.

7.      Additionally, since the beginning of March, the Oversight Board, in consultation with the Governor and AAFAF, has announced the certification of the fiscal year 2023 fiscal plans for the Commonwealth, and a number of instrumentalities, including COFINA, the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), the Puerto Rico Industrial Development Company ("PRIDCO"), the Municipal Revenue Collection Center, and the Public Corporation for Supervision and Insurance of Cooperatives.

### Recent First Circuit Decisions

8.      On May 17, 2022, the First Circuit, in *Centro De Periodismo Investigativo, Inc. v. Financial Oversight And Management Board For Puerto Rico* [Case No. 21-1301, Doc.

00117876976], held (two to one) that Congress, through PROMESA section 106, abrogated the Oversight Board's sovereign immunity from being sued in federal court on a Commonwealth claim.  The Oversight Board filed a petition for rehearing *en banc* [Case No. 21-1301, Doc. 00117882073], which was denied two to one on June 7, 2022 [Case No. 21-1301, Doc. 00117884913].  The only two judges in regular service who were not on the panel that decided the case turned out to be recused from voting on the rehearing.  On June 14, 2022, the Oversight Board filed a motion requesting that the First Circuit stay the mandate, as the Oversight Board planned to file a petition for a writ *certiorari* to the United States Supreme Court seeking review of the First Circuit's decision.  On June 21, 2022, the First Circuit granted a stay of the mandate pending U.S. Supreme Court review if the Oversight Board filed its petition for a writ of *certiorari* on or before July 20, 2022.  On July 20, 2022, pursuant to the First Circuit's order, the Oversight Board petitioned the Supreme Court for a writ of *certiorari* to review the First Circuit's decision.  On October 3, 2022, the Supreme Court granted the Oversight Board's petition for a writ of *certiorari*. Accordingly, the action in the District Court remains stayed pending the Supreme Court's review. On January 11, 2023, the Supreme Court heard oral argument.  On May 11, 2023, the Supreme Court issued a ruling reversing the First Circuit's decision and remanding the case.

## II.   General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

### *PFC QM*

9.      The Oversight Board, AAFAF, and PFC Bond Trustee have been working collaboratively on the Puerto Rico Public Finance Corporation's Title VI case.  On December 14, 2022, the Court held a hearing to consider approval of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the "PFC QM").  On December 30, 2022, the Court approved the PFC QM [Case No. 22-01517, ECF No. 78] (the "PFC

Approval Order"). The PFC QM became effective on January 12, 2023. [Case No. 22-01517, ECF No. 80]. Pursuant to the PFC QM and the PFC Approval Order, approximately $13.8 million was distributed to holders of certain bonds issued by the Puerto Rico Public Finance Corporation (the "PFC Bonds") and the trustee for the PFC Bonds.

10.     Pursuant to a joint stipulation approved on December 1, 2022 [Case No. 22-01517, ECF No. 32], the Oversight Board, with the assent of AAFAF, and Cantor-Katz Collateral Monitor LLC, as Collateral Monitor (the "Collateral Monitor") for the holders of bonds issued by the GDB Debt Recovery Authority (the "DRA Bonds"), are proceeding with the determination of whether additional DRA Bonds may be issued as contemplated by the PFC QM (the "DRA Bond Issue") on a separate schedule. On May 10, 2023, the Court heard oral argument on the DRA Bond Issue and took the matter *sub judice*.

### *PREPA*

11.     On February 28, 2023, the Court approved the *Disclosure Statement for Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [Case No. 17-3283, ECF No. 23631; Case No. 17-4780, ECF No. 3279] (the "PREPA Disclosure Statement") ruling, among other things, that the PREPA Disclosure Statement contained adequate information, and that PREPA's proposed Title III plan of adjustment is not patently unconfirmable. [Case No. 17-3283, ECF No. 23675; Case No. 17-4780, ECF No. 3304].

12.     On March 3, 2023, the Court entered the *Amended and Restated Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Case No. 17-3283, ECF No. 23676; Case No. 17-4780, ECF No. 3305], outlining the discovery and confirmation schedule of PREPA's proposed Title III plan of adjustment.

13.     The Court has scheduled a confirmation hearing for July 2023 and the Oversight Board continues to work to minimize the number of contested issues at that hearing.  Several of the mediation parties mediated in May, and although no settlement exists yet the Oversight Board believes the discussions were constructive.

### *Legislation*

14.     The Oversight Board's relationship with the Government of Puerto Rico (the "Government") continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration.  The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority.  Governor Pierluisi is serving as his own ex officio representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues.  The Governor and the Oversight Board, however, continue to disagree on various pieces of significant legislation.

### Act 41

15.     The Oversight Board is committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation because the Oversight Board's statutory mission cannot be carried out when legislation impedes PROMESA's purposes.  On June 20, 2022, the Government enacted Act 41-2022 ("Act 41"), formerly known as House Bill 1244, which is inconsistent with the Commonwealth's certified fiscal plan ("Commonwealth Fiscal Plan") and impairs or defeats PROMESA's purposes.  In short, Act 41 reestablished many of the burdensome labor restrictions existing before enactment of Act 4-2017, and hindered Puerto Rico's economic growth and job creation by, among other things, reintroducing the presumption that employee dismissals are unjustified, increasing sick and vacation day accrual rates, and easing eligibility requirements for Christmas bonuses.  On September 1, 2022, the Oversight Board filed an

adversary proceeding seeking declarative and injunctive relief pursuant to PROMESA to nullify and enjoin Act 41.  *See* Adv. Proc. No. 22-00063 [ECF No. 1].  The Governor and the Speaker of the Puerto Rico House of Representatives (the "Speaker")[2] filed oppositions to the Oversight Board's motion for summary judgment, and the Oversight Board filed an opposition to the Governor's motion for judgment on the pleadings.  On October 21, 2022, the parties filed replies in support of their respective motions.[3]  On March 3, 2023, the Court issued an Opinion and Order [ECF No. 90] denying the Governor's motion for judgment on the pleadings and granting the Oversight Board's motion for summary judgment on Count II of its Complaint ("Act 41 Order").  Concurrently, the Court issued an order directing the parties to show cause in writing as to why the Court should not dismiss as moot Count I of the complaint. [ECF No. 91].  In Count II of the complaint, the Oversight Board alleged the Governor had not complied with the formal estimate and certification requirements of PROMESA section 204(a), and that Act 41 should be nullified to ensure the Commonwealth's compliance with the Commonwealth Fiscal Plan was not adversely affected.  Count I involved the merits of the Oversight Board's determination under PROMESA section 108(a)(2) that Act 41 impairs or defeats PROMESA's purposes.  The parties fully briefed the issue of whether the Court should dismiss Count I as moot.  [ECF Nos. 98, 101, 113].  On April 7, 2023, the Court issued an order dismissing Count I as moot.  [ECF No. 122].

16.     On March 16, 2023, the Speaker filed a motion to stay the Act 41 Order pending appeal.  [ECF No. 95].  The Oversight Board filed an opposition to the motion to stay, [ECF No. 109], and the Governor and the Speaker filed replies [ECF Nos. 111, 112].  On April 3, 2023, the

---

[2] On October 5, 2022, the Court issued an order granting the Speaker's motion to intervene in the adversary proceeding.

[3] The Speaker filed a motion to join in the Governor's motion for judgment on the pleadings, and filed a reply in support of that motion on October 20, 2022.

Court issued an order denying the Speaker's motion to stay pending appeal. [ECF No. 116]. Three days later, the Governor filed a motion to stay pending appeal [ECF Nos. 118], which the parties fully briefed [ECF Nos. 126, 130]. On May 1, 2023, the Court issued an order denying the Governor's motion to stay pending appeal. [ECF No. 137].

17.     On March 7, 2023, House Bill 1651 ("HB 1651"), which contains the same provisions as Act 41, was introduced in the Puerto Rico House of Representatives (the "House"). HB 1651 has been referred to a House Committee. The Oversight Board is monitoring that measure and will take appropriate action if and when necessary.

18.     The Speaker and the Governor filed notices of appeal of the Act 41 Order and the order dismissing Count I. [ECF Nos. 92, 94, 108, 123]. On March 29, 2023, the First Circuit issued an order consolidating the appeals and scheduling expedited briefing. The appeal has been fully briefed. On May 5, 2023, the Governor filed a motion to stay pending appeal, and the Speaker filed a motion to join the Governor's motion. The Oversight Board filed an opposition on May 10, 2023. On May 15, 2023, the First Circuit issued an order (i) allowing the Speaker's motion to join, and (ii) denying the Governor's motion to stay pending appeal. The First Circuit is scheduled to hear oral arguments on June 7, 2023.

Act 119-2022

19.     On November 7, 2022, the Puerto Rico Senate (the "Senate") approved House Bill 1182 ("HB 1182"), and on November 9, 2022, the House approved HB 1182. The Governor signed HB 1182 into law as Act 119-2022 ("Act 119") on December 23, 2022. Act 119, among other things, increases the rate at which public employees accrue vacation leave from 1.25 to 2 days per month, such that public sector employees will now accrue 24 vacation days a year, nine more than the 15 days they enjoyed prior to the enactment of Act 119. The Government informed

the Oversight Board that Act 119 has not been implemented because implementing regulations have not been submitted to the Oversight Board for approval as required by the Oversight Board's Rules, Regulations and Orders Review Policy, established pursuant to § 204(b)(4) of PROMESA. On January 9, 2023, the Oversight Board received the Governor's submission pursuant to PROMESA § 204(a). The Oversight Board is reviewing the submission and looks forward to engaging with the Governor through the PROMESA § 204(a) process. Based on the results of that process, the Oversight Board will take appropriate action as necessary.

Act 5-2023 (formerly Senate Bill 552)

20.    On November 15, 2022, the Senate and the House voted to enact Senate Bill 552 ("SB 552"), which is inconsistent with the Commonwealth Fiscal Plan. SB 552, among other things, amends Act 60-2019, known as the "Puerto Rico Incentives Code," to increase the current cap on certain film industry tax incentives from $38 million to $100 million per year. The Commonwealth Fiscal Plan requires that "any tax reform or tax law initiative that the Government undertakes or pursues during a year within the 2022 Fiscal Plan period must be revenue neutral, that is, all tax reductions must be accompanied by specific, offsetting revenue measures of the same amount identified in the enabling legislation." *See* Certified Commonwealth Fiscal Plan at 299. The Oversight Board has found no evidence indicating the incremental tax incentives would attract additional film-making sufficient to create revenues and taxes to offset the cost of SB 552. Indeed, the current tax incentives for film production in Puerto Rico—capped at $38 million—are not revenue neutral, costing the Commonwealth approximately $23 million annually. SB 552 would reduce Commonwealth revenues and does not identify offsets from spending reductions and/or revenue increases to address the current $23 million shortfall or the increased shortfall created by SB 552 in violation of the Commonwealth Fiscal Plan.

21.      Prior to its enactment, on April 1, 2022, the Oversight Board sent a letter to Senator

Zaragoza Gómez informing the Legislature that the then-current version of SB 552 was

inconsistent with the Commonwealth Fiscal Plan because it failed to include sufficient offsetting

revenues or expenditure reductions.  Notwithstanding the Oversight Board's letter, the Legislature

amended SB 552 to remove the few offsets previously included.  After the bill's passage but prior

to its enactment, on December 8, 2022, the Oversight Board sent a letter to the Governor reiterating

its concerns about SB 552 and its conclusion that the measure was inconsistent with the

Commonwealth Fiscal Plan and violated PROMESA.  On December 28, 2022, the Oversight

Board sent another letter to the Governor (i) reiterating that SB 552 violates the certified

Commonwealth Fiscal Plan and multiple provisions of PROMESA; (ii) informing the Governor

the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that SB 552 impairs or

defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2)

barred him from signing SB 552.

22.      The Governor signed SB 552 into law on January 9, 2023, enacting the bill as

Act 5-2023.  AAFAF informed the Oversight Board that the law is not currently in effect and

cannot go into effect in the absence of implementing regulations which are subject to prior

Oversight Board review and approval.  On February 24, 2023, the Oversight Board received the

Governor's submission for Act 5-2023 pursuant to PROMESA § 204(a).  The Oversight Board is

reviewing the submission and looks forward to engaging with the Governor through the

PROMESA § 204(a) process.  Based on the results of that process, the Oversight Board will take

appropriate action as necessary.

Act 104-2022

23.      On November 10, 2022, the Senate and the House approved House Bill 1119

("HB 1119") and the Governor signed it into law as Act 104-2022 ("Act 104") on

11

December 14, 2022.[4]  Act 104, among other things, amends Act 11-1933, also known as the "Gaming Machine Act," to reduce the license fee for gaming machines from $1,500 to $250, reduce the tax imposed on gambling winnings, alter the current distribution of revenues derived from gaming machines in a manner depriving the General Fund of revenues, and modify the requirements for the centralized computer connectivity system for gambling machines in the Commonwealth.  Act 104 is inconsistent with the Commonwealth Fiscal Plan because, among other things, it would reduce Commonwealth revenues without providing offsetting savings or alternative revenues.  AAFAF informed the Oversight Board that the law is not currently in effect and cannot go into effect in the absence of implementing regulations which are subject to prior Oversight Board review and approval.  On February 3, 2023, the Oversight Board received the Governor's submission for Act 104-2022 pursuant to PROMESA § 204(a).  The Oversight Board is reviewing the submission and looks forward to engaging with the Governor through the PROMESA § 204(a) process.  Based on the results of that process, the Oversight Board will take appropriate action as necessary.

Act 80

24.    On July 21, 2022, the Oversight Board and AAFAF reached an agreement on a path for the partial implementation of Act 80-2020, which agreement would allow implementation of the early retirement program contemplated under the law for certain non-essential employees.  The Oversight Board and the Government continue to work together to implement the agreement reached in July 2022.

Act 81

---

[4] On the same day the Governor signed the bill into law, the Oversight Board sent a letter to the Governor urging him not to sign HB 1119.  On December 19, 2022, the Oversight Board sent a letter to the Governor noting that he had enacted Act 104 prior to receiving the Oversight Board's letter, reiterating the Oversight Board's concerns, and confirming the steps required before the Act may be implemented.

25.      On May 2, 2023, certain retired police officers filed a motion to intervene in Adv. Proc. No. 21-000119, seeking an order reopening the adversary proceeding as it pertains to Act 81-2020, or in the alternative, for an order directing the Oversight Board, the Governor, and AAFAF to produce the agreement between the Oversight Board and the Government regarding "a means to provide enhanced retirement benefits to police officers." [ECF No. 17]. The parties are engaged in discussions to potentially resolve the motion without the need for further briefing or Court involvement.

Senate Bill 465

26.      Senate Bill 465 ("SB 465") would, among other things, establish the Puerto Rico Guards Reserve to be comprised of former PREPA line guards currently working in other Commonwealth functions, and makes them available to be called up to act as guards by PREPA for any reason or no reason. When called up, the Commonwealth would continue to pay them unless they become PREPA employees, but would not have them available for their current functions. SB 465 conflicts with the certified Commonwealth and PREPA fiscal plans by expanding PREPA's role in day-to-day operations, interfering with the transition of PREPA's grid assets to private operators, and driving up labor costs for Commonwealth agencies. On December 13, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that SB 465 violates the certified fiscal plan for PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that SB 654 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) barred him from signing SB 465. On December 21, 2022, the Legislature sent SB 465 to the Governor for signature or veto. Prior to a determination by the Governor, on January 17, 2023, the Legislature initiated a process to reconsider the measure. The Oversight Board continues to monitor developments with respect to this bill and will take appropriate action as necessary.

13

House Joint Resolution 249

27.    House Joint Resolution 249 ("HJR 249"), among other things: (i) requires PRASA, LUMA Energy LLC ("LUMA"), and PREPA to establish a "voluntary" twelve-month moratorium on payments and rate increases for water and electricity services; (ii) forbids PRASA, LUMA, and PREPA from collecting surcharges and penalties or suspending services for failure to pay electricity and water bills due to the COVID-19 health emergency; and (iii) prohibits HTA from increasing tolls on the Island for twelve months from the enactment of HJR 249.  HJR 249 violates PROMESA and the certified fiscal plans of PRASA, HTA, and PREPA by, among other things: (i) depriving PREPA and PRASA of the ability to increase rates and collect revenues; (ii) interfering with PREB's authority as an independent regulator; (iii) depriving HTA of revenue and interfering with the authority of HTA to set rates, (iv) usurping the Oversight Board's powers under PROMESA to propose a Title III plan requiring rate increases to pay debt, and (v) interfering in fiscal plans and budgets exclusively within the Oversight Board's controls granted by PROMESA.   On November 15, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 249 violates the certified fiscal plans for HTA, PRASA, and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 249 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HJR 249.  On November 18, 2022, the Legislature sent HJR 249 to the Governor, who declined to sign the bill, thereby pocket-vetoing the measure.

Senate Joint Resolution 327

28.    Senate Joint Resolution 327 ("SJR 327"), among other things, would require the Puerto Rico Energy Bureau of the Puerto Rico Public Service Regulatory Board to submit to the legislature, within 20 days of SJR 327's enactment, "a detailed report of the compliance metrics

14

adopted to measure the proper execution of the contract awarded to LUMA" and sets out parameters and metrics of "additional compliance that should be required from a new operator in the face of the possible cancellation of the contract" with LUMA. SJR 327 undermines efforts to transform PREPA and interferes with the LUMA contract—an essential part of the certified PREPA Fiscal Plan ("PREPA Fiscal Plan") requirements regarding the transition of PREPA's transmission and distribution ("T&D") and generation assets to private operators. On November 12, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that SJR 327 violates the PREPA Fiscal Plan; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that SJR 327 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing SJR 327. The Governor did not sign the bill, thereby pocket-vetoing the measure.

House Joint Resolution 315

29.     House Joint Resolution 315 ("HJR 315"), among other things, (i) purports to require the termination of the Operation and Management Agreement ("OMA") between PREPA and LUMA within sixty days of the HJR 315's enactment for supposed breaches of contract by LUMA and its subsidiaries, and (ii) purports to order PREPA to administer the OMA during the sixty day transitionary period and subsequently take control of PREPA's T&D operations. As clearly stated in the PREPA Fiscal Plan, LUMA's continued operation of PREPA's T&D system is required and is critical to the success of the fiscal plans and Puerto Rico's energy future. On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 315 violates the certified fiscal plans for the Commonwealth and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 315 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2)

bars him from signing HJR 315.  On November 18, 2022, the Legislature sent HJR 315 to the Governor, who declined to sign the bill, thereby pocket-vetoing the measure.

House Bill 1397

30.      House Bill 1397 ("HB 1397"), among other things, purports to exempt from the P3 Authority's ("P3A") supervision all P3 contracts in which PREPA is the Participating Government Entity.  HB 1397 appears to conflict with the efforts by the Government and the Oversight Board to reform the PREPA energy system over the past five years.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining HB 1397 violates the PREPA Fiscal Plan; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HB 1397 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HB 1397.  On November 29, 2022, the Legislature sent HB 1397 to the Governor, who declined to sign the bill, thereby pocket-vetoing the measure.

House Joint Resolution 235

31.      House Joint Resolution 235 ("HJR 235") purports to, among other things, mandate the P3 Authority refrain from awarding an operation and maintenance or similar contract for the private operation of PREPA's generation assets until July 1, 2023.  HJR 235 appears to intentionally delay implementation of the PREPA Fiscal Plan requirements that PREPA assets be transitioned to private operation.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 235 violates the certified fiscal plans for the Commonwealth and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 235 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HJR 235.  On

November 18, 2022, the Legislature sent HJR 235 to the Governor, who declined to sign the bill, thereby pocket-vetoing the measure.

### House Bill 1429

32.     House Bill 1429 ("HB 1429"), among other things, purports to require conditions for the restructuring of PREPA debt and the issuance of new PREPA bonds for that purpose. HB 1429 appears to violate PROMESA Title III and the PREPA Fiscal Plan.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HB 1429 violates the PREPA Fiscal Plan and multiple provisions of PROMESA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HB 1429 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HB 1429.  On January 9, 2023, the Legislature requested reconsideration of the measure and HB 1429 was sent to conference committee.  The Oversight Board will continue to monitor developments with regard to this measure and take appropriate action as necessary.

## III.     General Status of Claims Reconciliation

33.     To date, approximately 182,532 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.7 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

34.     As of the filing of this Status Report, approximately: (i) 6,462 proofs of claim remain asserted against the Commonwealth; (ii) 32 proofs of claim remain asserted against ERS; (iii) 204 proofs of claim remain asserted against PBA; and (iv) 560 proofs of claim remain asserted against HTA, and (v) 2 proofs of claim remain asserted against COFINA, all remaining to be reconciled (collectively, the "Remaining Claims").  Currently, the Debtors anticipate filing

omnibus objections to 468 of the Remaining Claims, and transferring 50 of the Remaining Claims to ACR.

35.     Of the Remaining Claims, 2,455 are associated with three separate multi-plaintiff litigations.  The Debtors are in the process of determining the amounts owed to each plaintiff in those litigations and/or developing settlement offers in hopes of resolving claims associated with these multi-plaintiff cases without the need for protracted litigation.  In addition, there are over 1,500 Remaining Claims that are fully unliquidated and associated with other litigations (the "Fully Unliquidated Remaining Claims").  Through the Debtors' ongoing claims reconciliation processes, approximately (a) 465 Fully Unliquidated Remaining Claims have been subject to additional outreach efforts to agencies and opposing counsel, (b) 353 Fully Unliquidated Remaining Claims have been transferred into ADR or ACR, and (c) 832 Fully Unliquidated Remaining Claims have been or are the subject of omnibus objections.

36.     The Remaining Claims continue to be the focus of the Debtors' ongoing review and reconciliation processes, described in more detail in the subsections below.

### ADR and ACR Processes

37.     Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed thirty-one notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 45,676 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation.  The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.  Subsequent thereto, the Debtors have filed notices, wherein

18

the Debtors reported the successful resolution of approximately 36,959 ACR Designated Claims.
The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on
July 18, 2023, and the Debtors anticipate reporting the successful resolution of additional ACR
Designated Claims.

38.     With respect to certain ACR Designated Claims, mailings have been made, or are
in the process of distribution, informing claimants that the administrative files for their claims are
incomplete, and requesting additional information in order to enable the Debtors to reconcile their
claims.    Certain claimants have provided responses to these mailings, and the Debtors are
evaluating the additional information received and determining whether the information received
is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send
further follow up mailings to such claimants to ensure they have a complete administrative file.
The Debtors continue to await responses from numerous additional claimants.    In many instances,
the Debtors have re-sent initial mailings to claimants who failed to respond, reiterating the
Debtors' request for information sufficient to complete the claimants' administrative file, and
warning them that ongoing failure to respond may force the Debtors to object to their claims.
Claimants who failed to respond to the initial mailings have received a final mailing, reiterating
the Debtors' request for information, and informing parties that failure to respond will force the
Debtors to object to their claims.    The Debtors continue to await responses from such claimants,
and to the extent no responses are received, the Debtors intend to object to their claims.    To date,
the Debtors have filed several objections to claimants who did not respond to the final mailings,
and anticipate filing additional objections to non-responsive claimants in the coming months.

39.     With respect to additional ACR Designated Claims, mailings have been made, or
are in the process of distribution, informing claimants of the initiation of the ACR process and the
timetable for the resolution of their ACR-related claims.

40.     As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR
all outstanding claims which they understood, as of that date, were eligible for such transfer.  The
Debtors' reconciliation of outstanding claims remains ongoing, however.  To the extent the
Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be
transferred into the ACR Procedures.  Accordingly, on February 17, 2023, the Debtors transferred
additional claims into the ACR Procedures.  The Debtors' next ACR Transfer Notice (as defined
in the ACR Order) is scheduled to be filed on June 16, 2023.  The Debtors may transfer additional
claims into Administrative Claims Reconciliation on or before that date.

41.     Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures,
(B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-
03283, ECF No. 12576] (the "ADR Order"), as amended by the *Order Granting Motion of the
Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute
Resolution Procedures* [ECF No. 23113] (the "Amended ADR Order"), the Debtors have filed
thirty-one notices transferring claims into the ADR Procedures (as defined in the Amended ADR
Order), (collectively, the "ADR Notices"), and have transferred over 1,600 claims into the ADR
Procedures.

42.     Subsequent thereto, the Debtors have filed notices (collectively, the "ADR Status
Notices") indicating five (5) claims were settled in Evaluative Mediation (as defined in the
Amended ADR Order), twenty-four (24) claims have been fully resolved, well over one hundred
claims are currently in the Offer-Exchange (as defined in the Amended ADR Order) phase of the

ADR Procedures and have received either an Offer or an Information Request (as defined in the Amended ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

43.     The Debtors are also evaluating all responses received to Information Requests and Offers, and are attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange process. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed several objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach.

44.     The Debtors' next ADR Transfer Notice (as defined in the Amended ADR Order) is due June 8, 2023, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

45.     The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 2,000 claims. At this time, the Debtors cannot predict with certainty the timing for

the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

### *Objections to Claims*

46.     The Debtors' claims reconciliation process remains ongoing, and the Debtors project they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings.  Most recently, on April 20, 2023, the Debtors filed thirteen omnibus objections covering over 700 claims.  However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

47.     While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection.  For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases.  Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes. The deadline for the Debtors to file objections to proofs of claim is September 4, 2023.  The Debtors hope not to file a further extension.

48.     In addition, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

### *Reconciliation of COFINA Claims*

22

49.     The Debtors are pleased to report that reconciliation of claims filed against COFINA is nearly complete.  At this time, only two claims remain active on COFINA's claims register: (1) Proof of Claim No. 169423 (the "IRS Claim"), filed by the Internal Revenue Service (the "IRS"); and (2) Proof of Claim No. 168074 (the "Lehman Claim," and together with the IRS Claim, the "Remaining COFINA Claims"), filed by Lehman Brothers Special Financing Inc. ("Lehman").[5]  The Debtors anticipate that each of the Remaining COFINA Claims will be either resolved via objection or via consensual resolution in the near term.

50.     As the Court is well aware, the IRS Claim is subject to a pending claim objection. *See* ECF No. 7419.  AAFAF, the Oversight Board, and the IRS have engaged in settlement discussions in an effort to reach a consensual resolution of the IRS Claim.  The Oversight Board has also been in communication with Lehman in an effort to reach a consensual resolution of the Lehman Claim.

51.     Accordingly, in light of the anticipated resolution of the Remaining COFINA Claims in the near term, the Debtors intend to file a motion to close the COFINA case in the coming months.

### *HTA Motion Extending the Claims Objection Deadline in the HTA Title III Case*

52.     On May 16, 2023, the Oversight Board filed the *Debtor's Motion for an Order Extending the Deadline to File Objections to Proofs of Claim* [ECF No. 24217] (the "Motion") seeking a 180-day extension of the deadline established in Section 32.1(a) of the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*

---

[5] The Oversight Board's most recent status report dated March 14, 2023, also reflected that Proof of Claim No. 179414 (the "Aponte Torres Claim"), filed by Damaris I. Aponte Torres, remained outstanding.  [ECF No. 23801].  On March 22, 2023, the Court entered the *Order Granting the Three Hundred Seventy-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Sales Tax Financing Authority, Puerto Rico Highways and Transportation Authority, Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and Puerto Rico Public Buildings Authority to Late-Filed Claims* [ECF No. 23849].  Upon entry of that order, the Aponte Torres Claim was disallowed and expunged.

[ECF No. 1404] dated September 6, 2022 (as amended, supplemented, or modified), for the Debtor
to file objections to proofs of claim, from June 2, 2023, up to and including November 29, 2023.

53.     Responses or objections, if any, were to be filed and served no later than May 23,
2023 at 4:00 p.m. Atlantic Standard Time.  Because no responses or objections were received by
that deadline, the Oversight Board filed the *Certificate of No Objection Regarding the Debtor's
Motion for an Order Extending the Deadline to File Objections to Proofs of Claim* [ECF No.
24372] (the "Certificate of No Objection") on May 31, 2023 in compliance with Section III.P of
the *Sixteenth Amended Notice, Case Management and Administrative Procedures* [ECF No.
20190-1].  The Certificate of No Objection remains pending.

[*Remainder of page intentionally left blank*]

Dated: June 6, 2023
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
         brosen@proskauer.com
         ppossinger@proskauer.com
         ebarak@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*