# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                             Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                             Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

## PUERTO RICO MANUFACTURERS ASSOCIATION OBJECTION TO THE CONFIRMATION OF THE PUERTO RICO ELECTRIC POWER AUTHORITY'S PLAN OF ADJUSTMENT

*[Space intentionally left blank]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**TO THE HONORABLE DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

**COMES NOW** the Puerto Rico Manufacturers Association (Asociación de Industriales de Puerto Rico-AIPR, by its Spanish acronym), as party in interest pursuant to 11 U.S.C. § 1109, through their undersigned attorney, and respectfully requests that the Court deny the confirmation of the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority ECF No. 3296 ("Plan of Adjustment").

<strong><u>PRELIMINARY STATEMENT</u></strong>

1. PRMA is a party in interest in the Puerto Rico Electric Power Authority's ("PREPA"), Title III Bankruptcy. <u>See</u> 11 U.S.C. § 1109(b).

2. The Puerto Rico Manufacturers Association is a private, voluntary, and non-profit organization established in 1928, composed of more than close to 1,000 active members, with the objective of uniting Puerto Rico's manufacturing industries and Businessmen into an effective organization, promoting members´ interests and the economic development of Puerto Rico.

    The Association was established in 1928 before Operation *Bootstrap* and was the entity that suggested the creation of the Puerto Rico Industrial Development Company (PRIDCO). The organization has a diverse membership, ranging from small and mid-size companies, in the manufacturing sector, and related sectors such as transport and logistics, professional services, construction, energy, gas, health, insurance, telecommunications and similar industries, as well as multinational and big companies, such as pharmaceutical and medical devices companies.

3. The question of who is a "party in interest" should be answered on a case-by-case basis. The definition is non-exhaustive. It generally refers to anyone with a financial stake or significant legal or practical stake in the outcome of a bankruptcy. <u>See, for example, Savage & Assocs.</u>

P.C. v. K&L Gates LLP (In re Teligent, Inc.), 640 F.3d 53 (2d Cir. 2011). That should mean anyone who will be significantly impacted.

4. The manufacturing sector of Puerto Rico's economy constitutes the principal and leading sector; accounting for more than 48% of the GNP. As outlined by a 2021 Puerto Rico Department of Labor and Human Resources report:

"The main sectors of Puerto Rico's economy, in terms of production and income, are manufacturing and services. **Manufacturing, is the main contributor to the GDP.** It has undergone fundamental changes over the years, as a result of increased emphasis on higher-wages, high-technology industries, such as, pharmaceuticals, biotechnology, professional and scientific instruments; and certain high technology machinery and equipment. Manufacturing in Puerto Rico basically concentrates in certain major industries: pharmaceuticals and medicine; and chemical manufacturing. **In FY 2020 this sector generated $49,756.9 millions or 48.2% of the GDP." See: PR Economic Analysis Report FY 2020-2021 (00000002) en pdf.pdf (dol.gov)** (emphasis added)

5. PRMA, as well as all of its members have purchased or currently purchase electric power from PREPA, and therefore are parties in interest in this matter; insofar as energy costs have a direct impact on PRMA's and its members' property interests.

6. There should no question that Puerto Rico, in its effort to attract or retain industrial and other types of capital investment, is competing against domestic or international jurisdictions with much lower energy costs and a more friendly business climate to operate as an ongoing business.

7. In this particular scenario, this Plan represents a substantial setback in our competitiveness, adding to our major deficiencies in the frailty of our electric infrastructure, and burdensome costs of doing business.

8. The substantial rate increases proposed by the Plan will curtail Puerto Rico's economic advantage as a manufacturing destination. All current and future PRMA members depend on reasonable energy costs within Puerto Rico, as an essential element to maintain and promote

investments in the Puerto Rico economy.

9. As noted by a 2022 article, published by Princeton University:

"Puerto Rico's debt crisis reached a peak when it announced that it could not service or repay its outstanding debts in 2014. Puerto Rico faced an unsustainable burden of over $72 billion in debt with more than $55 billion in unfunded pension liabilities (FOMB 2021). Consequently, the federal government signed the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) in 2016, which established a Federal Oversight and Management Board (FOMB) to restructure the debt to sustainable levels and achieve a balanced fiscal budget. The debt restructuring process involved mediated negotiations to reach a compromise between creditors and the FOMB, which represented the Puerto Rican government. Through this legal process, the government would pay creditors a proportion of the defaulted debt, allowing the government to regain access to capital markets. **As Puerto Rico emerges from its debt crisis, reliable, affordable, and resilient energy can help rejuvenate economic growth**. See Lee, Jua Jun; Princeton University Journal of Public and International Affairs, May 20, 2022. https://jpia.princeton.edu/news/renewing-growth-puerto-rico-evaluating-island%E2%80%99s-transition-distributed-solar-energy (emphasis added).

PROMESA gives FOMB the mandate to achieve fiscal responsibility with pro-growth reforms. One of PROMESA's main goals is to ensure the continuity of adequate services to the people of Puerto Rico, such as electricity, and Puerto Rico's sustainable economic development. FOMB has also recognized that it is essential to improve the reliability and cost of electricity in Puerto Rico to set the foundation for long-term sustainable economic growth and development. However, PREPA's debt restructuring, as it is proposed, represents an unsustainable burden to present and future generations of Puerto Rico energy consumers. Imposing the "legacy charge" on an impoverished population is counterproductive. Puerto Rico's economy will continue to experience contraction, thus diminishing the possibility of achieving sustainable development – clearly contrary to PROMESA's mandates and goals.

10. The proposed fixed charge for industrial PREPA clients, plus the proposed *volumetric charge* ranging from 1.45 to 2.18 KW/hrs; constitutes a substantial increase in our member's monthly energy expenditure; directly increasing such members' direct and incremental costs; and further diminishing such members' bottom line profitability. This has only one real meaning; a substantial reduction in Puerto Rico's competitive position as a manufacturing destination.

4

11. Therefore, PRMA is a party in interest that "may raise and may appear and be heard on any issue in a case under this chapter". 11 U.S.C. § 1109(b).

## PROCEDURAL BACKGROUND

12. For over a decade, Puerto Rico's economy has been in trouble and, by 2016, its massive debt became unsustainable. On June 30, 2016, PROMESA was signed into law. 48 U.S.C. § 2101 et seq. It created Title III to allow the territory access to bankruptcy relief for its instrumentalities. On July 2, 2017, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") initiated a Title III case for PREPA. On December 16, 2022, the Oversight Board filed the first *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*. This has been amended 3 times. The current version of the Plan of Adjustment was filed on March 1, 2023.

## LEGAL ARGUMENT

13. Section 314 of PROMESA has the requirements for the confirmation of a Plan of Adjustment. 48 U.S.C. § 2174(b).

> The Title III court shall confirm a plan of adjustment so long as certain requirements are met, including that: the debtor is not prohibited by law from taking any action necessary to carry out the plan; . . . any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval; . . . [and] the plan is feasible. <u>Fin. Oversight & Mgmt. Bd. for P.R. v. Federacion de Maestros de P.R., Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.)</u>, 32 F.4th 67, 76 (1st Cir. 2022) (citation omitted)

14. Certainly, the Plan is not feasible, viable nor sustainable. The most overwhelming effect it would have over PRMA's members and Puerto Rico's manufacturing sector is its *legacy charge*, which represents an onerous payment for the different industrial, commercial, and residential clients, forcing them to assume an inherited debt for a significant period of 35 years.

15. This substantial financial burden imposed over PREPA's clients, is in no way remotely related

5

to any funding for capital improvements to our *grid,* nor covering operational expenses. It represents on the other hand, an extremely onerous imposition on the Puerto Rican economy that threatens to jeopardize any real possibilities of recovery in the next decade.

16. In this context, the Plan of Adjustment is not feasible for the reasons stated in the expert declarations of Mr. Tom Sanzillo, ECF No. 3416; Dr. José I. Alameda Lozada, ECF No. 3417, Mr. Agustín Irizarry, ECF No. 3414, and of Mr. Ramon Luis Nieves, ECF No. 24087-1 and Dr. Ramon Cao, ECF No. 24087-2 in Case 17-03283-LTS.

17. For instance, according to Dr. Caos's economic analysis, this Plan would result in an alarming decrease in Puerto Rico's Gross National Product (GNP), as well as an increase in our unemployment rates. This would have a compounded effect over an impoverished and decreasing population, facing decades of fiscal and economic constraints and the resulting social and safety consequences Puerto Rico has endured.

18. It is deeply concerning for our industrial and commercial members, that after years of assuming gigantic energy invoices from PREPA, they would face an enormous and unreasonable *legacy charge,* within an Adjustment Plan, that does not provide information as to the resulting capacity of PREPA to pay its debt or modernize and improve its infrastructure.

19. In this sense, this Plan is founded in the outrageous premise that PREPA and its debtors are handed a blank check, in the form of a *legacy charge*, without addressing the most basic considerations for the clients that will have to pay and suffer the diverse financial, economic, and social consequences.

20. Additionally, the Plan does not make whatsoever a minimum analysis or endeavor to explain how this Plan would be consistent with current regulations, such as Act 17-2019, outlining Puerto Rico's public energy policy, to pursue the integration of renewable energy sources.

Besides, the Plan does not take into basic consideration the higher rate of clients migrating to alternate energy sources, as a result of the burdensome increases in the energy rates imposed by this Plan. Certainly, the Plan of Adjustment interferes with Puerto Rico Energy Policy goals. Act17-2019 mandates include aggressive goals for the integration of renewable energy of 40% by 2025; 60% by 2040 and 100% by 2050. However, the Plan of Adjustment does not include any concrete analysis on the potential impact of the "legacy charge" on the renewable energy transition and how the desertion of customers, from the electricity grid, may impose a disproportionate burden for those who have no alternative but staying connected to the grid.

21. This Plan of Adjustment is seriously divorced from the economic, regulatory and social outlook of Puerto Rico's current conditions. Thus, our members foresee that our already fragile fiscal and economic state would be aggravated by the effects of the costs imposed by the Plan and by the fundamental matters the Plan fails to address.

22. "Under PROMESA, a plan of adjustment must be supported by financial projections that are 'reasonable and demonstrate a probability that the debtor will be able to satisfy its obligations under the Plan". In re Fin. Oversight & Mgmt. Bd., 637 B.R. 223, 302-03 (D.P.R. 2022).

23. This means asking: "Is it likely that the debtor, after the confirmation of the Plan of Adjustment, will be able to sustainably provide basic municipal services to the citizens of the debtor and to meet the obligations contemplated in the Plan without the significant probability of a default?" Id.

24. The Plan of Adjustment will affect Puerto Rico's economy and ratepayers, such as PRMA's members and industries. Therefore, PREPA will not be able to generate enough revenue and comply with its obligations to creditors or to the people of Puerto Rico. Because of this, the Plan of Adjustment is not feasible.

25. In light of the above, the Honorable Court should not confirm a Plan of Adjustment that is exclusively designed for the satisfaction of bondholders and hence, disregards the detrimental effects on Puerto Rico's economic growth or development.

## CONCLUSION

26. In conclusion, this Court should not confirm the Plan of Adjustment because it does not meet the requirements under PROMESA. Additionally, confirmation of the Plan of Adjustment would cause great prejudice to the PRMA, its members and the people of Puerto Rico.

27. This Plan of Adjustment is not viable or feasible, insofar as it will prompt and promote more customers to resort to renewable sources of electric power and disconnecting from the grid, thereby reducing PREPA's revenues and income, to the point that they will be insufficient to fund the plan and the payments to creditors contemplated therein.

28. PREPA's restructuring is very important, because electric power is necessary both for consumers and businesses alike. It is the driving force of Puerto Rico's economy. If PREPA's restructuring becomes too burdensome on the people and businesses of Puerto Rico, it will affect any possibility of economic growth and development.

## RELIEF REQUESTED

**WHEREFORE**, PRMA respectfully requests that the Court take notice of the above stated and denies the confirmation of the Plan of Adjustment.

**WE HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties.

In San Juan, Puerto Rico, this 12th day of June 2023.

/s/ **ISMAEL H. HERRERO III**
**LAW OFFICES OF HERRERO III**
**& ASSOCIATES, P.S.C.**
USDCPR #203002
P.O. BOX 362159
San Juan, P.R. 00936-2159
Tel. (787) 754-5000/(787) 509-3666
Email: herreroiLLL@herrerolaw.com