*Certified Translation*  by: Olga M. Alicea, fcci, njitce-s

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SAN JUAN JUDICIAL CENTER**

| | |
|---|---|
| ELECTRICAL INDUSTRY AND IRRIGATION WORKERS UNION (UTIER, by its Spanish acronym)<br>**Plaintiff**<br><br>v.<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA)<br>**Defendant**<br><br>v.<br><br>INDEPENDENT PROFESSIONAL EMPLOYEES UNION (UEPI by its Spanish acronym)<br>**Defendant in Name Only**<br><br>ELECTRIC POWER AUTHORITY'S RETIREES ASSOCIATION (AJAEE, by its Spanish acronym); INDUSTRIAL AND ELECTRICAL CONSTRUCTION WORKERS INSULAR UNION (UITICE, by its Spanish acronym); AND ELECTRIC POWER AUTHORITY'S PILOTS UNION (UPAEE, by its Spanish acronym)<br>**Intervenors** | **CIVIL NO:** SJ2015CV00100<br><br>**COURTROOM:** 907<br><br>**RE:**<br>INJUNCTION AND DECLARATORY JUDGMENT |

**PARTIAL SUMMARY JUDGMENT AND ORDER**

The Court has before its consideration a Request for Partial Summary Judgment, filed by plaintiff the ELECTRICAL INDUSTRY AND IRRIGATION WORKERS UNION (UTIER, by its Spanish acronym) and intervenor the ELECTRIC POWER AUTHORITY'S RETIREES ASSOCIATION (AJAEE, by its Spanish acronym).[1] They

---

[1] Joining in the Request for Partial Summary Judgment were intervenors the Electric Power Authority's Pilots Union (UPAEE, by its Spanish acronym) and the Industrial and Electrical Construction Workers Insular Union (UITICE, by its Spanish acronym).

*CERTIFIED TRANSLATION*            BY: OLGA M. ALICEA, FCCI, NJITCE-S

request the entry of a declaratory judgment finding that the Retirement Systems of the employees of the Electric Power Authority (PREPA) is and has always been a trust since its creation on June 25, 1945, and that its inclusion in the Puerto Rico Trusts Registry be ordered.

Having examined the motion and the documents that were submitted in support thereof, as well as PREPA's opposition, the request for partial summary judgment is GRANTED in part.

## I.

On April 14, 2015, the UTIER filed a complaint for injunction and declaratory judgment against the Puerto Rico Electric Power Authority (PREPA). In sum, they requested (1) that PREPA be ordered to execute a public deed of trust that had been approved by unanimity by the Retirement System's Board of Trustees; and (2) that the Retirement System be declared to be a *de facto* trust. Jointly, the UTIER filed a request for preliminary injunction to force PREPA to execute the deed of trust.

Having examined the complaint, the Court scheduled a hearing to argue the propriety of the preliminary injunction for April 23, 2015.

Moments before the hearing began, the AJAEE filed an urgent motion requesting intervention, a motion to dismiss, and a motion in opposition to the preliminary injunction requested. On its part, PREPA filed a motion in opposition to the injunction.

Pursuant to the documents filed and to the arguments of the parties during the April 23, 2015 hearing, the Court decided:[2] (i) to authorize the intervention of the AJAEE; (ii) to order the parties to file stipulations of facts regarding the existence of the

---

[2] See, Minutes-Resolution of the April 23, 2015 hearing, notified on April 28, 2015. Annotation #17 of SUMAC.

<u>CERTIFIED TRANSLATION</u>　　　　　　　　　　　　BY: OLGA M. ALICEA, FCCI, NJITCE-S

*de facto* trust; and (iii) leave pending the request for dismissal regarding the execution of a public deed.[3]

After plaintiff notified about the impossibility of preparing stipulations of facts, the UTIER and the AJAEE filed on June 29, 2015, the request for partial summary judgment at issue before us today. They request the recognition of "the Trust of the Electric Power Authority's Retirement System [as] an implicit trust" and "the order[ing] of the Registration of the Retirement System's Trust in the Puerto Rico Trust Registry [...]."

Subsequently, PREPA filed on September 8, 2015, a motion arguing that the Industrial and Electrical Construction Workers Insular Union (UITICE, by its Spanish acronym), the Independent Professional Employees Union (UEPI by its Spanish acronym), the Electric Power Authority's Pilots Union (UPAEE, by its Spanish acronym), and the Management Employees Association (AEG, by its Spanish acronym) were indispensable parties as they are union organizations that grouped or represented other PREPA employees. Having evaluated the motion, as well as the opposition and the reply, the Court entered a Resolution on September 23, 2015, in which it ordered the UTIER to bring to the action the UITICE, UEPI, UPAEE, and AEG. The Court ruled that those unions benefitted or contributed to the Retirement System, thus, they are indispensable parties to be able to adjudicate the issue presented.

Thus, the AEG and the UITICE requested on October 13 and 16, 2015, respectively, intervention in the lawsuit; which was authorized by the Court on October 16, 2015.

---

[3] On September 10, 2015, at the request of intervenor AJAEE, the Court deemed desisted the request for dismissal filed on April 23, 2015. See, annotations #34 and 35 of SUMAC.

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-3 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 4 of 19

CERTIFIED TRANSLATION                                    BY: OLGA M. ALICEA, FCCI, NJITCE-S

On October 21, 2015, the UTIER filed an Amended Complaint, in order to include the UEPI and UPAEE, who up until then had not requested intervention in the lawsuit. Subsequently, the UPAEE requested intervention on October 28, 2015, which was authorized that same day; and PREPA filed its answer to the amended complaint on October 29, 2015.

After several procedural incidents, at plaintiff's request, the Court entered an Order on December 4, 2015, entering default against codefendant UEPI and it deemed submitted the motion for partial summary judgment. PREPA requested reconsideration of said Order and requested that it be allowed to conduct discovery regarding the facts on which the request for summary judgment is based, which UTIER opposed. The Court denied the request for discovery and granted PREPA a final term to express itself regarding the merits of the request for summary judgment.

In compliance with the order, PREPA filed on January 19, 2016, its opposition to the request for partial summary judgment. On the one hand, it acquiesced to plaintiff's request, in that PREPA's Retirement System be declared to be a *de facto* trust. However, it opposed the Retirement System's *de facto* trust's being recorded in the Trusts Registry, pursuant to the provisions of Articles 5 and 7 of Law No. 219 of August 31, 2012, as amended, known as the Trusts Act.

By Order entered on January 20, 2016, the UTIER and the intervenors were ordered to state their positions regarding whether something would remain pending in the case, given the position assumed by PREPA of acquiescing to the PREPA Retirement System being declared a *de facto* trust and to reply to PREPA's opposition as to its recordation in the Trusts Registry.

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:189-3 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 5 of 19

*CERTIFIED TRANSLATION*                                BY: OLGA M. ALICEA, FCCI, NJITCE-S

On February 12, 2016, the UTIER filed a motion in compliance with order, to which it was joined by the AEG on February 16, 2016, in which it stated the reasons why the Retirement System was recordable at the Trusts Registry. Similarly, it requested an additional term to amend the complaint in order to fine tune its allegations regarding the claim concerning the draft deed that was approved by unanimity by the Retirement System's Board of Trustees on September 19, 2014, through its Resolution 2014-044, and remitted to PREPA's Board of Directors for the execution thereof.

The amendment having been authorized, the UTIER filed on March 28, 2016, a Second Amended Complaint. PREPA filed its answer to the amended complaint on May 15, 2016, and UITICE did the same on May 20, 2016.

The request for partial summary judgment having been submitted, the Court proceeds to decide.

## II.

## FINDINGS OF FACTS[4]

1. PREPA's Retirement System was created as a result of the collective bargaining process between the UTIER and PREPA.

2. The UTIER and PREPA subscribed their first Collective Bargaining Agreement on September 30, 1942, in whose Article Vi they agreed "that a pension system will be established" for the benefit of all of the members of the UTIER, "whose study and drafting is left in the hands of a committee comprised of representations of the Union and of the Authority."[5]

---

[4] Findings of facts 1-8, 13-18, and 18-22 correspond to the facts that are not at issue proposed by the UTIER in its request for summary judgment, admitted by PREPA. Facts 9-12 and 17 were not disputed by PREPA, thus, they are deemed admitted.

[5] See also, Preamble of Law No. 34 of July 27, 2005.

<u>CERTIFIED TRANSLATION</u>                                              BY: OLGA M. ALICEA, FCCI, NJITCE-S

3. The following year (1943), the UTIER and PREPA subscribed another collective bargaining agreement in which, among other issues, they agreed that PREPA would continue "studying a plan to establish a pension system for all of its regular employees."[6]

4. According to those agreements, on August 31, 1944, PREPA's Board of Directors approved Resolution 175, pursuant to which it authorized its Executive Director to contract the actuaries that may be necessary for the establishment of a pensions system for all of its employees.

5. The Regulation adopted through Resolution No. 200 entrusted the administration of PREPA's Retirement System to a Board of Trustees comprised by eight (8) members of which: one (1) is the Executive Director of PREPA, who may be substituted during his absences by the Acting Director of PREPA; three (3) are active members of PREPA's Retirement System, elected by the very active members through individual vote carried out under PREPA's supervision; three (3) are appointed by PREPA's Board of Directors; and one (1) is a retired member, elected by the retired members through individual vote carried out under the supervisions of PREPA's Retirement System.

6. The aforementioned Regulations, as amended, provide among other things, (i) that the Board of Trustees will be the depository of the different funds of PREPA' Retirement System; (ii) that the Board of Trustees may deposit, invest, and reinvest the System's funds according to the Investment Policy adopted by the latter and ratified by PREPA's Board of Directors; (iii) that the Board of Trustees

---

[6] *Id.*

<u>CERTIFIED TRANSLATION</u>  BY: OLGA M. ALICEA, FCCI, NJITCE-S

will maintain an accounting system that shows the transactions carried out by the System and that contains the necessary information for the actuarial valuations of capital and of their obligations; (iv) that the Board of Trustees will present to PREPA's Board of Directors an annual report certified by an [auditor][7] to be contracted by the Board of Trustees "which shows the accrued assets and securities and the last balance sheet showing the System's financial status, through an actuarial valuation of the assets and liabilities thereof"; and (v) that the decisions of the Board of Trustees with respect to the payment of benefits to the retirees are definitive within the administrative process.

7. In addition, the Regulation that PREPA's Retirement System created provided that the Board of Trustees would maintain all of the funds it received for the payment of the benefits listed therein and that, in the event of termination, "all of the System's capital will be used solely for benefits of the active members, retired members, and their beneficiaries under the System and for no other purpose."

8. PREPA's Retirement System is funded from contributions made both by PREPA and by the individual employees. In addition, the System earns income from the investments made by the Board of Trustees at its entire discretion. The retirees have been receiving their retirement pension benefits, from its creation and until the present, as a result of the [Retirement System].[8]

---

[7] As proposed by the UTIER, the fact read "public accountant." However, in its opposition, PREPA adduced that the report must be certified by an "auditor." After having reviewed the evidence that supports the fact (Exhibit 3, Regulations of the System), it is concluded that according to the latter, it should read "auditor."

[8] As proposed by the UTIER, the fact read "Trust." However, in its opposition, PREPA adduced that the documents on which such fact was based refers at all times to the Retirement System and not to a trust. Having reviewed the document (Exhibit 4, paragraph 5), it is concluded that the fact should read "Retirement System."

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-3 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 8 of 19

CERTIFIED TRANSLATION                          BY: OLGA M. ALICEA, FCCI, NJITCE-S

9. The contributions made by PREPA and its employees, as well as the other income from PREPA's Retirement System, have been deposited at all times in different accounts separate from those of PREPA.

10. The Board of Trustees is the only one that designates the people authorized to carry out transactions with the assets of PREPA's Retirement System and to draw against its accounts.

11. The Board of Trustees keeps its accounting in accordance with the practices and principles generally accepted for pension plans and it follows the pronouncements and guidelines of the Government Accounting Standards Board, which is the organism that promulgates the standards of accounting known as GASBs, by its English acronym, which are used by government entities in the United States.

12. From 1996 until 2013, the Board of Trustees presented its audited financial statements in accordance with GASB 25, which applied to "pension trust funds."

13. According to the Glossary of the GASB 25, the definition of "pension trust fund" is:

> A fund held by a government entity in a trustee capacity for pension plan members; uses to account for the accumulation of assets for the purpose of paying benefits when they become due in accordance with the terms of the plan; a pension plan included in the financial reporting entity of the plan sponsor or a participating employer.

14. In the year 2014, the Board of Trustees began presenting their auditors financial statements in accordance with GASB 67, which amended GASB 25, which applies to pension plans "that are administered through trusts or equivalent arrangements."

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 9 of 19

*CERTIFIED TRANSLATION*          BY: OLGA M. ALICEA, FCCI, NJITCE-S

15. PREPA's Financial Statements for the year 2014, prepared according to GASB 67, including the following statement:

> B) Summary of significant accounting policies- The accounting policies followed by the System conform to predominant industry practices and follows accounting principles generally accepted in the United States of America. The following summarizes most significant account policies:
>
> Basis of presentation- The System follows the provisions of Government Accounting Standard No. 67. Financial Reporting for Defined Pension Plans and Note Disclosures for Defined Contribution Plans, an amendment of GASB Statement No. 25 issued by the Governmental Accounting Standards Board. The accompanying financial statements have been prepared on the accrual basis of accounting. Members' and employer's contributions are recognized as additions in the period in which members services are performed. Benefits and refunds are recognized when due and payable In accordance with the terms of the plan.

16. GASB 67 explicitly provides that the assets of a pension plan are in a trust and that they are protected from the creditors. To those ends, in pertinent part, it reads as follows:

> Standard of Governmental Accounting and Financial Reporting. Scope and Applicability Statement
>
> 3. This Statement establishes financial reporting standards for state and local government pension plans- defined benefit pension plans and defined contribution pension plans- that are administered through trusts or equivalent arrangements (hereafter jointly referred to as trusts) in which:
>
>     a. Contributions from employers and nonemployer contributing entities to the pension plan and earnings on those contributions are irrevocable,
>
>     b. Pension plan assets are dedicated to providing pensions to plan members in accordance with the benefit terms.
>
>     c. Pension plan assets are legally protected from creditors of employers, nonemployer contributing entities, and the pension plan

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-3 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 10 of 19

CERTIFIED TRANSLATION                           BY: OLGA M. ALICEA, FCCI, NJITCE-S

17. administrator. If the plan is a defined benefit plan, plan assets also are legally protected from creditors of the plan members.

17. In the Reciprocity Act, Law No. 59-1953, 3 L.P.R.A. § 787, *et seq.*, the Puerto Rico Legislature recognized the existence of PREPA's Retirement System and equated it to all of the other government retirement systems of the Commonwealth of Puerto Rico, which are trusts created by law. This fact was not disputed by PREPA, thus it is deemed admitted.

18. In accordance with GASB 67, the notes of a pension plan's financial statements should show, among other things:

> Notes to Financial Statement
>
> 30. The following should be disclosed in notes to financial statements, as applicable:
>
> a. Plan description:
>
> (1) The name of the pension plan, identification of the public employee retirement system or other entity that administers the pension plan, and identification of the pension plan as a single-- employer, agent, or cost-sharing pension plan.

19. According to GASB 67, "public employee retirement system" means:

> A special-purpose government that administers one or more pension plans; also may administer other types of employee benefit plans, including postemployment healthcare plans and deferred compensation plans.

20. In the case of the Retirement System's financial statement, to comply with the foregoing the following is disclosed:

> 1) Organization and Summary of Significant Accounting Policies:
>
> A) Organization: The Employees' Retirement System of Puerto Rico Electric Power Authority (the System) is a single-employer defined benefit pension plan that covers the employees of the Puerto Rico Electric Power Authority (PREPA), a component unit of the Commonwealth of Puerto Rico (Commonwealth).

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 11 of 19

*CERTIFIED TRANSLATION*          BY: OLGA M. ALICEA, FCCI, NJITCE-S

> The responsibility for the proper operation and administration of the System is vested in a Board of Trustees composed of eight members, one of which is the Executive Director of PREPA, three are active members of the System, and one is a retiree. The remaining three members are appointed by the Governing Board of PREPA. All Trustees are appointed for three years, except for the Executive Director, who serves as long as he/she is Executive Director. The Board of Trustees appoints the System's Administrator. [...]
>
> 2) Description of the System:
>
> A) General- The System is a trust fund created by PREPA to administer its pension plan.

21. The Retirement System's financial statements reflect that it has assets and liabilities recognized in its books.

22. In accordance with the financial statements, the Retirement System is subject to legal proceedings, as the evidence submitted reads:

> 9) The System Is subject to certain to certain legal proceedings and claims, which have arisen in the ordinary course of business. Although there can be no assurances in this regard, in the opinion of the System's management and after consulting with its legal counsels, such proceedings as well the aforementioned actions, will not have a material effect in the System's financial conditions or changes in plan net assets.

23. On June 25, 1945, PREPA's Board of Directors approved Resolution No. 200, in which the proposed Retirement System and the rules and regulations of the Retirement System were approved and adopted. Resolution No. 200 reads:

> [ ... ]
>
> WHEREAS, the Executive Director entered into a contract with George B. Buck, Consulting Actuary of New York City, who has rendered a report and prepared rules and regulations for a proposed Pension System to be adopted by the Authority.
>
> THEREFORE BE IT RESOLVED, that the proposed Pension System as described in the report and in the rules and regulations

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit 3 Page 12 of 19

CERTIFIED TRANSLATION                                BY: OLGA M. ALICEA, FCCI, NJITCE-S

filed this day with the Secretary and marked Exhibit is herby *[sic]* approved and adopted to be effective July 1, 1945.

Exhibit 1 of the opposition.

24. PREPA admitted that the intention of the parties was to establish the Retirement System as a trust and that it has always been operated as such. PREPA acquiesced to plaintiff's request in that the Retirement System be declared to be a *de facto* trust.

## IV.

## CONCLUSIONS OF LAW

The request for partial summary judgment before the Court's consideration is for the sole purpose of disposing of the request for declaratory judgment, in connection with the nature of the Retirement System.

### A.

The motion for summary judgment is contemplated in Rule 36 of Civil Procedure of Puerto Rico, 32 L.P.R.A. App. V, R. 36.1. The purpose of such motion is to propitiate a fair, speedy, and economical solution in civil actions that do not contain genuine issues in their material facts, thus, they do not warrant the holding of a trial on the merits. *Reyes Sanchez v. Eaton Electrical*, 189 D.P.R. 586, 594 (2013); *Quest Diagnostics* v, *Mun. San Juan,* 175 D.P.R. 994,1003 (2009).

A summary judgment will be entered immediately if from the allegations, depositions, or answers, among others, it appears that there is no genuine substantial issue as to any essential and pertinent fact. Rule 36.3(e) of Civil Procedure, *supra*. This way, if used correctly, a summary judgment is a valuable procedural mechanism to unclog judicial calendars. *Carpets & Rugs v. Tropical Reps*., 175 D.P.R. 615,638

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 13 of 19

CERTIFIED TRANSLATION                    BY: OLGA M. ALICEA, FCCI, NJITCE-S

(2009). However, a summary judgment is only warranted when it clearly appears that the respondent cannot prevail and that the court has the truth as to all of the facts necessary to be able to resolve the issue presented. *Construcciones José Carro, SE v. Municipio de Dorado, et al.*, 186 D.P.R. 113, 129 (2012). Therefore, when the court does not have clear certainty as to the material facts of the dispute, summary judgment must not be entered. However, any doubt as to a fact is not sufficient to defeat a motion for summary judgment, rather it must be that doubt "that allows one to conclude that a genuine and substantial issue exists as to relevant and pertinent facts." *Ramos Pérez v. Univisión*, 178 D.P.R. 200, 214 (2010).

**B.**

Rule 59.1 de Civil Procedure, 32 L.P.R.A. App. V, R. 59.1, confers authority to the Court of First Instance to "[d]eclare rights, statuses, and other legal relations even if another remedy is filed or may be filed." This is known as declaratory judgment, and is that which is entered in a process "when a substantial issue exists between parties with adverse legal interests, in order to dissipate legal uncertainty." *Mun. Fajardo v. Srio. de Justicia,* 187 D.P.R. 245,254 (2012), citing R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 5th Ed., San Juan, Lexis, 2010, Sec. 6001, p. 560; *Hernández Pérez v. Halvorsen,* 176 D.P.R. 344 (2009).

A declaratory judgment is a procedural mechanism of a remedial nature, whose objective is to provide the citizens with the opportunity to argue before the courts the merits of any claim that latently involves a potential danger against it. *Charana v. Pueblo,* 109 D.P.R. 641, 653 (1980). Rule 59.2 of Civil Procedure, *supra,* establishes that every person whose rights are affected by a statute may request a decision

regarding any divergence in the interpretation of validity and that a declaration of the rights, statuses, or other legal relationship derived therefrom be entered.

**C.**

By June 25, 1945, when the creation of the Retirement System was approved, trusts in Puerto Rico were governed ;by Articles 834-874 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 2541-2581. Article 834 defined a trust as "an irrevocable mandate pursuant to which certain assets are transferred to a person, called a trust, to dispose of them as ordered by the person who transfers them, called trustor, on behalf of the latter or of a third party called trustee." 31 L.P.R.A. § 2541. On the other hand, Articles 835 and 836 provided that the trust could be formed by *inter vivos* act and, if that were so, they had to be formed through a public deed. 31 L.P.R.A. §§ 2542 and 2543.

Notwithstanding the fact that Article 836, *supra*, required that inter *vivos* trusts be formed through public deed, the Puerto Rico Supreme Court has recognized *inter vivos* trusts that are not in a public deed, as *de facto* trusts, such as implicit, constructive, or resulting trusts, in order to reach equitable solutions and avoid injustices, such as unjust enrichment. See, Rossy v; *Tribunal Superior* y *Sucn. Lloréns Torres,* 80 D.P.R. 729 (1958); *Luperena* v, *Autoridad de Transporte,* 79 D.P.R. 464 (1956); *Fernández v. Laloma,* 56 D.P.R. 367 (1940); *Porrata Doria* v. *Fajardo Sugar Company of Porto Rico,* 57 D.P.R. 628 (1940); *Ruiz v. Ruiz,* 61 D.P.R. 823 (1943). These decisions have been protected under Article 7 of the Civil Code, which provides: "When there is no law applicable to the case, the court will decide according to equity, which means that it must bear in mind natural reason according to the general principles of law, and the accepted and established uses and customs." 31 L.P.R.A. § 7.

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 15 of 19

*CERTIFIED TRANSLATION*          BY: OLGA M. ALICEA, FCCI, NJITCE-S

Now then, it is an established rule in the matter of trusts that its express creation is not permitted nor is its tacit creation produced for a purpose contrary to the law or to circumvent public policy. *Luperena v. Autoridad de Transporte, supra*. Therefore, when the end is legal and the claims is based on a constructive or *de facto* trust, it gives rise to an action so that the purported trustee can comply with its obligation and thereby avoid unjust enrichment. See, *Rossy v. Tribunal Superior y Sucn. Lloréns Torres, supra*.

**D.**

Law No. 219 of August 31, 2012, known as the Trusts Act, 32 L.P.R.A. § 3351, *et seq.,* repealed Articles 634 - 874 of the Puerto Rico Civil Code, *supra*. This law was enacted in order to promote the use of the legal figure of a trust, not only in its familial and successions aspect but as a mechanism of economic development for Puerto Rico. Preamble of Law 219-2012*, supra.* The Legislature understood that "the current norm regarding trusts must be amply amended[,] tempering it to the current need of the population and the economy." *Id.*

Law 219-2012, *supra,* in its Article 1 defines a trust as "an autonomous patrimony that is the product of an act whereby the trustor transfers assets or rights to it, and that is administered by the fiduciary for the benefit of the trust or for a specific purpose [...]." 32 L.P.R.A. § 3351.

Through the legislation, the Special Trusts Registry was created providing that all trusts constituted in Puerto Rico must be recorded in the Registry, under penalty of nullity. Article 5 of Law 219-2012, *supra.* 32 L.P.R.A. § 3351d. (Emphasis ours.) In the recordation, the following must be stated:

    (a) The name of the trust that is constituted;
    (b) the date and place of its constitution;

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 16 of 19

*CERTIFIED TRANSLATION*                                   BY: OLGA M. ALICEA, FCCI, NJITCE-S

(c) the number of the deed and name of the notary before whom it was executed, if applicable;
(d) the name and address of the trustor;
(e) the name and address of the fiduciary or fiduciaries and of their substitutes, if any; and
(f) the name and address of the trustee or trustees and of their substitutes, if any. *Id.* (Emphasis ours.)

Now then, trusts can be constituted for private purposes or for public purposes. In the instant case, the Retirement System is for private purposes, given that by its nature there is no room in the classifications of public purposes.[9] Thus, then, in trusts for private purposes, Article 7 of Law 219-2012, *supra,* demands that the "will to constitute a trust must be expressly declared by *inter vivos* act, through a public deed." 32 L.P.R.A. § 3352a. (Emphasis ours.)

**E.**

In the instant case, there is no dispute that PREPA's Retirement System has behaved like a trust since its creation on June 25, 1945. Certainly, the Retirement System (trust) was constituted for the exclusive benefit of all of the employees of PREPA (trustees), which is administered by a Board of Trustees that acts in the capacity of a fiduciary. That has been expressly recognized by PREPA, which acquiesced to plaintiff's request stating that "the parties in establishing the Retirement System intended it to be a trust and that it has always operated as such."

In addition, it has been recognized as such by certified public accountants who have audited the Retirement System's financial statements, and even the Legislature when in the Reciprocity Act, *supra*, it equated the Retirement System to the rest of the

---

[9] Law 219-2012, supra, in its Article 65 provides that trusts will be considered for public purposes: "(a) to alleviate poverty; (2) the promotion of education, of religion, or of health; (3) government or municipal purposes, such as the erection and maintenance of monuments, statues, public parks, and the like; and (d) any other purpose whose achievement is of benefit to the community in general, particularly those that have philanthropic, cultural, religious, or scientific purposes."

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 17 of 19

*CERTIFIED TRANSLATION*                              BY: OLGA M. ALICEA, FCCI, NJITCE-S

government retirement systems, which are trusts created through legislation. All of the foregoing has been proven by the evidence presented.

Therefore, since the aim pursued by the Retirement System is a perfectly lawful one, it is resolved that the PREPA Employees Retirement System is a *de facto* trust, since its creation on June 25, 1945.

As to the recordation of the Retirement System in the Trusts Registry, PREPA is opposed because presumably it is contrary to Articles 5 and 7 of the statute; as the trust is not constituted through a public deed. On its part, the UTIER alleges that one of the provisions of Article 5, *supra,* exempts the captioned parties from complying with the requirement of "deed number and name of the notary," given that the Retirement System's trust was constituted without going through a public deed.

As we stated, by June 25, 1945, when the Retirement System was approved, trusts in Puerto Rico were governed by Articles 834-874 of the Civil Code, *supra.* Those articles provided that an *inter vivos* trust had to be constituted through a public deed. Articles 835 and 836, *supra.* Even when the same were repealed by Law 219-2012, *supra,* the latter maintain in essence the requirement of constitution of trust through a public deed.

On the one hand, Article 5 of Law 219-2012, *supra*, created the Trusts Registry and it requires that all trusts be recorded in said Registry, under penalty of nullity. Likewise, said article provides that the recordation of the trust must contain, among other things, the "number of the deed and the name of the notary before whom it was granted, as the case may be." On the other hand, Article 7 of Law 219-2012, *supra*, relative to trusts for private purposes, is clear when it specifically provides that "the will

Case:17-03283-LTS Doc#:24530-3 Filed:06/12/23 Entered:06/12/23 17:45:09 Desc:
Case:18-00047-LTS Doc#:13-5 Filed:05/29/18 Entered:05/29/18 11:41:52 Desc:
Exhibit E Page 18 of 19

*CERTIFIED TRANSLATION*                                BY: OLGA M. ALICEA, FCCI, NJITCE-S

to constitute a trust must be expressly declared by *inter vivos* act, <u>through a public deed</u>."

In light of the law in force, Law 219-2012, *supra*, it is required that the trust appear in a public deed, so that it is recorded in the Trusts Registry. Let us recall that Law 219-2012, *supra*, is the law in force on trusts in Puerto Rico and, its letter does not allow any other interpretation. "[W]hen the law is clear and free of any ambiguity, the letter thereof should not be underestimated under the pretext of fulfilling the spirit thereof." Article 14 of the Civil Code, 31 L.P.R.A. § 14.

In addition, the interpretation made by plaintiff, in that it is not necessary to execute a public deed to record the trust, is defeated by its request for an injunction, whereby it requests that PREPA be ordered to execute the draft public deed approved by the Retirement System's Board of Trustees on September 19, 2014, through Resolution 2014-044.

Therefore, it is concluded that for the Retirement System's trust to gain access to the Trusts Registry, its constitution must be expressed in a public deed.[10]

### PARTIAL SUMMARY JUDGMENT

On the grounds stated above, the Court **GRANTS** the *Request for Partial Summary Judgment,* in part, filed by the UTIER. The PREPA Employees Retirement System is declared to be a trust, since its creation on June 25, 1945. However, it is required that the same be constituted through a public deed to be able to be recorded in the Trusts Registry, in accordance with Law 219-2012, *supra*.

---

[10] Note that PREPA does not refuse to execute a public deed, provided it is written and agreed to not only by the UTIER but by all of the entities that represent the different groups of the Retirement System's beneficiaries.

*CERTIFIED TRANSLATION*                                BY: OLGA M. ALICEA, FCCI, NJITCE-S

As there is no reason to postpone the entry of partial and final judgment on what is described herein until the final resolution of the action filed, this Partial Judgment is ordered to be registered and notified according to Rule 42.3 of Civil Procedure, 32 L.P.R.A. App. V, R. 42.3. This Partial Judgment is final for all purposes with respect to the issues adjudicated herein.

### ORDER

Given that the request for injunction is pending adjudication, in which it is requested that PREPA be ordered to execute the draft public deed approved by the Retirement System's Board of Trustees on September 19, 2014, through Resolution 2014-044, a hearing is scheduled for <u>June 28, 2016, at 2:30p.m</u>., in order to determine the procedure to follow with respect to such claim.

**BE IT REGISTERED AND NOTIFIED.**

In San Juan, Puerto Rico, on May 4, 2016.

                                         (Signed)
                            AILEEN NAVAS AUGER
                          SUPERIOR COURT JUDGE

I hereby certify:
Griselda Rodríguez Collado
    Regional Clerk II
By: VANESSA NIEVES MORALES (Signed)
    Assistant Clerk

**CERTIFICATION**
I, OLGA M. ALICEA, AN ENGLISH-SPANISH INTERPRETER AND TRANSLATOR CERTIFIED TO THAT EFFECT BY THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS AND BY THE NATIONAL ASSOCIATION OF JUDICIARY INTERPRETERS & TRANSLATORS (NAJIT), DO HEREBY CERTIFY THAT I HAVE PERSONALLY TRANSLATED THE FOREGOING DOCUMENT FROM SPANISH TO ENGLISH AND THAT THE TRANSLATION IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND ABILITIES.
S/ OLGA M. ALICEA                                             MAY 25, 2018
OLGA M. ALICEA, FCCI, NJITCE-S,   FED. CERT. NO. 98-005                DATE