1IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO POWER AUTHORY<br>Debtors | PROMESA<br>Title III<br><br>Case No. 17-bk-3283 (LTS)<br><br>(Jointly Administered)[1] |

**OBJECTION TO CONFRMATION OF THE MODIFIED SECOND AMENDED TITLE III PLAN OF ADJUSTMENT FOR THE PUERTO RICO POWER OF AUTHORITY AND THE PROPOSED DRAFT OF ORDER OF CONFIRMATION**

Filed by:

**Isla del Rio Inc., Inc.**

Holder of Claim No. 21904      Case No. 17-bk-4780 (LTS)
Holder of Claim No  179740

**Members  Sucesion Yazmin Galib**

Holder of Claim No. 179742      Case No. 17-bk-4780(LST)

**Jorge Lucas P Valdivieso Torruella**

Holder of Claim No. 153947      Case No. 17-bk-4780(LST)

Represented by:
**Isabel M. Fullana-Fraticelli & Assocs. PSC**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, PR 00918-2013
Tel. (787) 250-7242
Fax. (787) 756-7800

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

# Table of Contents

I.   PRELIMINARY STATEMENT .......................................................................... 3

II.  RELEVANT FACTUAL BACKGROUND ............................................................ 5

III. The Plan Violates The Taking Clause Of The Fifth Amendenment .................... 8

   A.  The Taking Clause of the Fifth Amendment ............................................................... 8
   B.  Fifth Amendment protection is not limited to security interests. ..................... 12
   C.  The Fifth Amendment protects all property interests, not just security interests. ............................................................................................................................. 15

IV.  CONCLUSION ............................................................................................... 17

TO THE HONORABLE COURT:

COMES NOW **Isla del Rio Inc., Inc., t**he members of Sucesión Lucas Valdivieso Torruella y Yesmín Galib and Jorge Lucas P. Valdivieso Torruella (herein "_Isla del Rio et als._" ), creditors in the captioned case, whom, through the undersigned legal counsel, very respectfully state, pray, and request that this Honorable Court denies confirmation of Docket 3296]*, et al.* (the "Plan") filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board")  for the reasons stated herein below.

**I.      PRELIMINARY STATEMENT**

On  March 1, 2023 , the Oversight Board filed the  *Second Amended Modified Title III Plan of Adjustment of the Puerto Rico electric Power Authority*[Docket 3296]  and moved for confirmation of the same " Isla del Rio Inc et al" hereby objects to the confirmation of the Plan and moves the Court to deny confirmation on three general issues: (1) the unconstitutionality of the sought discharge of  Eminent Domain Claim/ Inverse Condemnation Claims ; (2) the unconstitutionality of the Plan's impairment of Eminent Domain Claim/ Inverse Condemnation Claims; As it will be discussed herein, the Plan was not proposed in good faith and cannot be considered legal as it violates the Takings Clause of the Fifth Amendment of the U.S. Constitution and section  Moreover, the Plan is not in the best interests of Eminent Domain Claimants/ Inverse Condemnation Claims , such as " *Isla del Rio Inc et al*" ., insofar the   Fifth Amendment of Constitution of the  United States of America   declares that just compensation contemplates payment in full plus interest .

"*Isla del Rio Inc, et als"*. holds against the Commonwealth of [2]Puerto Rico claims for  Inverse Condemnation Claims.  Several of these claims are reduced to a final and unappealable judgment, " *Isla del Rio Inc et als*" . filed separate claims in this case to participate in the distribution of this Tittle III case of the Debtor. Notwithstanding " *Isla

---

[2] Claim o. 179740 in the amount of $453,780.00
 Claim No 179740 in the account of $117,999.00( members of Sucesion Yesmin Galib)
 Claim No. 21904 in the amount of $10,400.00.00
 Claim No.153947 in the amount of $500,000.00!

3

*del Rio Inc et al"* claims against the Debtor, its Disclosure Statement nor the Second Amended Plan provides for full distribution for eminent domain claims/ inverse condemnation Claims. On the contrary, it seeks to limit distribution to holders of direct and condemnation claims to a prorate share in a recovery fund, and further seek to discharge any unpaid portion.

The instant Title III case is a special bankruptcy proceeding set forth by the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") which incorporates certain provisions of the Bankruptcy Code. PROMESA's Section 301, 48 USC § 2161, imposes on the Oversight Board certain obligations as the plan proponent such as that the plan may not unfairly (or artificially) classify holders of similar claim, 11 USC § 1122, and requires that the plan be proposed in good faith and not by any means prohibited by state law, 11 USC § 1129(a)(3).

Moreover, with respect to confirmation, PROMESA's Section 314[48 USCA further provides that:

> "The court shall confirm the plan if –
>
> […]
>
> (3) the debtor is not prohibited by law from taking any action necessary to carry out the plan.
>
> […]
>
> (6) the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan;" 48 USC § 2174

As it will be explained herein, the Plan seeks to impair and discharge takings claim in contravention to the Takings Clause of the Fifth Amendment. Therefore, the Plan was not proposed in good faith and its action are specifically prohibited by the Fifth Amendment of the United States Constitution an thus prohibited by law and the aforementioned section of PROMESA.

**II.    RELEVANT FACTUAL BACKGROUND**

1. Isla del Rio Inc. is a corporation organized under the laws of the Commonwealth of Puerto Rico. It is the owner in fee simple absolute (*dominio* in Spanish) of a land parcel in Peñuelas Puerto Rico.

2. Sucesion of Lucas Valdivieso Torruella y Yesmín Galib through its members Yesmín Marie Valdivieso Galib, Lucas Valdivieso Galib, Maria Teresa Valdivieso Galib and Maria Cristina Valdivieso Galib owners of a parcel of land in Peñuelas Puerto Rico

3. Jorge Lucas Valdivieso Torruella owner of a parcel of land in Peñuelas Puerto Rico .

4. On July 2, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") initiated the instant Title III case for PREPA.

5. After various procedural filings, on December 16, 2022, the Oversight Board filed the *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (ECF No. 23094).

6. On February 9, 2022, the Oversight Board filed the *First Amended Title III Plan of Adjustment of The Puerto Rico Electric Power Authority* (ECF No. 23506).

7. On March 1, 2023, the Oversight Board filed the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (the "*Plan of Adjustment*", ECF No. 23663) (EFC No. 3296, 3297) and the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (ECF No. 23664).

8. On March 3, 2023, the Court entered an *Order* approving the adequacy of the information contained in the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (the *Order Approving Disclosure Statement*" (. ECF No. 23675)(ECF 3304) and setting distribution, election and voting procedures as well as confirmation deadlines.

9. After various procedural filings, on May 31, 2023, the Court entered a *Third Amended and Restated Order Establishing, Among Other Things, Procedures and*

5

*Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* (the "*Third Amended and Restated Order*", ECF No. 24376), setting forth, among other things, the deadline to file an objection to the *Plan of Adjustment*.

10. Pursuant to the *Third Amended and Restated Order*, the deadline to file an objection to the Plan of Adjustment lapses today, June 12, 2023. Id. at 5.

11. Appearing Creditors submit this objection to confirmation of the *Plan of Adjustment* in compliance with the *Third Amended and Restated Order*.

12. The appearing Creditors also object to the Proposed Order of Adjustment submitted by the Oversight Board on June 5, 2023 [ ECF No.3587 ]

13. In the main case of the Commonwealth of Puerto Rico Title III petition [17-3283], the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al [ECF No. 19813-1] treatment to Eminent Domain/Inverse Condemnation claims contemplated a treatment and language similar if not identical to the one been proposed in the PREPA title III *Second Amended Modified Tittle III Plan of Adjustment of the Puerto Rico Electric Power Authority* before this Court .

14. This Honorable Court Findings Facts and Conclusion regarding the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*'s treatment to eminent domain/ inverse condemnations this Honorable Court stated [ ECF No: 19812 ¶ 66 pp.55-57 ]

> "*As set forth more fully below the Court concludes that the Eminent Domain/inverse Condemnation claims identified in Class 54 are not subject to **impairment and discharge.** Accordingly , the Class 54 claimants assertion that their Claims should be paid in full or deemed nondischargeable are sustained and such allowed claims must be paid in accordance with Debtors Full Payment Proposal in connection with eminent Domain /Inverse Condemnation Claims( as set forth in Plan 58.77.1(e)" The Courts' January Order conditioned entry of this FFCL on the Debtors' revision of the Plan to incorporate the treatment of allowed Eminent Domain/inverse Condemnation Claims as set forth in the Full – Payment Proposal*"

15. Upon appeal to the First Circuit Court, the First Circuit Court answering the Constitutional question posited before the court stated:

6

> *"'Satisfied that we must answer the constitutional question presented by this appeal, we move on to assessing whether the Fifth Amendment precludes the impairment or discharge of prepetition claims for just compensation in Title II bankruptcy. For the following reason we conclude that it does'*
>
> ...........................
>
> *"Reduced to its nub, the issue we decide is rather simple. The Fifth Amendment provides that if the government takes private property, it must pay just compensation. Because the prior plan proposed by the Board rejects any obligation by the Commonwealth to pay just compensation , the Tittle III court properly found that the debtor was prohibited by law from carrying out the plan as proposed. Se 48 USC §21749(b) (3)* ³

Thus the rule of law within the First Circuit Court, is that the "***fifth amendment to the US Constitution precludes the impairment and discharge of prepetition claims for just compensation".***⁴

The Supreme Court has said often and with great emphasis that "the doctrine of *stare decisis* is of fundamental importance to the rule of law" . <u>Welsh v. Texas Dept of Highways and Public Transportation,</u> <u>483 US 468, 494(1987)</u>. As a principle of policy, it is indisputable that *stare decisis* is a basic self-governing principle within the judicial Branch , which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon " an arbitrary discretion" the federalist, No 78, p. 490( h. Lodge ed. 1888)( A. Hamilton).

Such Doctrine ensures that "the law will not merely change erratically" and ""permits society to presume the bedrock principles are founded in the law rather than the proclivities of individuals" <u>Vazquez v. Hillery</u>, 474 US 254, 265 (1986)

Thus, it follows that when case before the Court, such as the Plan of Adjustment submitted by the Oversight Board, presents the same facts( treatment of eminent domain claims) as the past case decided by higher Court ( First Circuit Opinion dated July 18,

---

³ Case No 22-1119 Document 00117899244, Opinion dated July 18, 2022
⁴ Emphasis added.

2022 aforementioned), stare decisis requires that this Court decide that the present Plan of Adjustment submitted on March 1, 2023[ECF No. 23663] in a similar manner.

Consequently, the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (the "*Plan of Adjustment*", ECF No. 23663) a before this Court cannot be confirmed as it seeks to impair and discharge eminent domain/Inverse condemnation takings claims in clear contravention of the Fifth Amendment and the most recent and binding determination of the Circuit Court of appeal for the First Circuit.

Notwithstanding our position regarding the doctrine of *stare decisis* we discuss the merits of Eminent Domain/Inverse Condemnation Creditor's objection to the confirmation of the *Second Amended Modified Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*[Docket 3296]

### III. THE PLAN VIOLATES THE TAKING CLAUSE OF THE FIFTH AMENDENMENT

#### A. The Taking Clause of the Fifth Amendment

The Fifth Amendment of the Constitution of the United Stated, ("Takings Clause") provides that:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for public use, without just compensation**." (Emphasis was added).

The first ten amendments to the Constitution are a bill of rights. Monongahela Navigation Co. v. United States, 148 U.S. 312, 324 (1983). Such amendments were adopted "in order to quiet the apprehension of many that without some declaration of rights the government would assume, and might be held to possess, the power to trespass

8

upon those rights of persons and property which by the Declaration of Independence were affirmed to be unalienable rights." Id.

With the enactment of the Fifth and Fourteenth Amendment, "[t]he Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, "property must be secured, or liberty cannot exist." *Quoted* by Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2021 US Lexis 3394, *12. The protection of property rights empowers persons to shape and plan their own destiny in a world where governments are always eager to do so for them. Id. Consequently, the right to just compensation is irrevocable, and the federal bankruptcy power cannot impair this obligation to pay just compensation.

"One of the specific purposes of the Takings Clause is to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Dolan v. City of Tigard, 512 U.S. 374, 383 (1994). Thus, "[t]he government **must** pay for what it takes." Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2021 US Lexis 3394, 12 [Emphasis was added]. The power of eminent domain is not dependent of any specific grant; it is an attribute of sovereignty, limited and conditioned by the Fifth Amendment. Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587 (1923). A property owner is protected by the rule that property cannot be taken until just compensation has been ascertained or a reasonable expectation or provision of payment is granted. Id. To this end, the Supreme Court has long held that "the power to take property reaches back of all constitutional propositions"; moreover, the Supreme Court further held that it is "settled principle of universal law that the right to compensation is an incident to the exercise of that power." Monongahela Navigation Co. v. United States, 148 U.S. 312, 324-325 (1833). The government's power to take property is so inseparable connected with the right to just compensation, that one cannot exist without the other. Id. at 325.

The Supreme Court has further held that:

> "The Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public." United States v. Sec. Indus. Bank, 459 U.S. 70, 77 (1982).

The Fifth Amendment states the exact limitation on the power of the government to take private property, to pay just compensation. Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1893). The noun 'just compensation,' standing by itself carries the idea of an equivalent. Id. at 326. Nevertheless, this compensation is not the equivalent of damages to the owner. The Supreme Court reasoned that by adding the adjective "just" to compensation, makes it evident that the compensation must be a full and perfect equivalent *for* the property taken. Id. In the words of Mr. Justice Brewer:

> "The language used in the Fifth Amendment in respect to this matter is happily chosen. The entire amendment is a series of negations, denials of right or power in the government, the last, the one in point here, being, nor shall private property be taken for public use without just compensation. The noun "compensation," standing by itself, carries the idea of an equivalent. Thus, we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and the latter imposed by way of punishment. So that if the adjective "just" had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective "just." There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. **And this just compensation, it will be noticed, is for the property, and not to the owner**. Every other clause in this Fifth Amendment is personal. No person shall be held to answer for a capital, or otherwise infamous crime, etc. Instead of continuing that form of statement and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the "just compensation" is to be a full equivalent for the property taken. This excludes the taking into account, as an element in the compensation, any supposed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it, to stand as a declaration, that no

10

> private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner." Id. at 325-326. [Emphasis was added].

If the Court were to confirm a Plan of Adjustment that provides less than this "a full and exact equivalent", the Plan would be in direct violation of the Takings Clause. A bedrock of bankruptcy law is that, unlike the states, Congress may discharge a debtor's personal obligation and impair creditors contractual obligations. *See* Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). This authority, however, is not without limits. While Congress, through the enactment of the Bankruptcy Code, may impair contractual rights through the bankruptcy system, it cannot discharge its Fifth Amendment obligations. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." Id. See also In re: Kennewick Pub. Hosp. Dist., 2017 Bankr. Lexis 3965, 10 (Bankr. E.D. Wa. 2017); In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014); United States v. Sec. Indus. Bank, 459 U.S. 70 (1982); Brockett v. Terra Cotta Co., 81 F.2d 949 (1936).

Even though Puerto Rico is not a state, "Congress, in legislating for the territories would be subject to those fundamental limitations in favor of personal rights which are founded in the Constitution and its amendments" Balzac v. Porto Rico, 258 U.S. 29, 312-313 (1922). Therefore, is has long been held that the people of Puerto Rico "are entitled under the principles of the Constitution to be protected in life, liberty and **property**", Downes v. Bidwell, 182 U.S. 244, 283 (1901),[5] and "[t]he guaranties of certain fundamental personal rights declared in the Constitution, as for instance that no person could be deprived of life, liberty or property without due process of law, had from the beginning full application in the Philippines and Porto Rico [*sic*]" Balzac v. Porto Rico, 258 U.S. 29, 312-313 (1922).

Now, prior to the commencement of the above captioned Tilled III case, the Commonwealth of Puerto Rico, approved a legislative act that the Ponce Court

---

[5] Emphasis was added.

11

determined that the Commonwealth had taken Isla del Rio Inc.'s use of its real property and, as such, Isla del Rio Inc. was entitled to a principal award of over $11 million in just compensation for the taking, plus interests. As this Honorable Court can see, unlike bondholders, suppliers, or other contractual creditors, Isla del Rio Inc. did not enter into a voluntary conventional obligation with the Debtor, nor is Isla del Rio Inc.'s claims the result of a tortuous action taken by the government or its agents. Isla del Rio Inc.'s claim arose out of the Debtor's exercise of its eminent domain power. Yet, the Oversight Board seeks to impair Isla del Rio Inc.'s right to "just compensation" and to discharge the Debtor's obligation to pay such compensation. This makes Debtor's plan illegal as it is contrary to the Fifth and Fourteenth Amendment and the Court may not confirm it, not only because it would be unconstitutional, but also because it fails to comply with the good faith requirement of Section 1129(a)(3) as incorporated by PROMESAS's Section 301, 48 U.S.C.§ 2161, as well as PROMESA's Section 201(b)(1)(N) which provides that the fiscal plan shall "respect the relative lawful priorities or lawful liens as may be applicable in the constitution, other laws, or agreements of a covered territory" 48 U.S.C § 2141.

**B. Fifth Amendment protection is not limited to security interests.**

Under the Fifth Amendment, a property owner is entitled to compensation for the loss of his property. To this end, the "government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. This constitutional obligation to pay just compensation is only limited by the Constitution itself. Nevertheless, the Oversight Board seeks to limit this obligation to the recovery of certain avoidance actions. It, thus, follows that if recovery is insufficient, eminent domain claimants such as Isla del Rio Inc. will not be able to collect on any unpaid portion of the takings claim. This impairment, however, does not pass muster of the Fifth Amendment. "The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." United States v. Sec. Indus. Bank, 459 U.S. 70, 74-75 (1982) [Internal citation omitted].

The Supreme Court has held, that "[t]he availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim" Knicks v. Township of Scott, 558 U.S. \_\_ (2019), 139 S. Ct. 2162, 2171. It then follows that the debt adjustment process created by Congress in PROMESA, as a post taking remedy, cannot infringe Isla del Rio Inc.'s right to just compensation, particularly when payment of just compensation is a condition for any type of taking. As previously mentioned, the power of eminent domain is not dependent of any specific grant; it is an attribute of sovereignty, limited and conditioned by the Fifth Amendment. Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587 (1923). A property owner is protected by the rule that property cannot be taken until just compensation has been ascertained or a reasonable expectation or provision of payment is granted. Id. To confirm a plan that allows a debtor to impair Takings Claims would do, precisely, that which the Fifth Amendment forbids.

"A Takings Clause violation is defined by two elements: (1) the public taking of private property, and (2) the subsequent denial of just compensation for that taking." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). The government's post-taking actions cannot impair the property owner's existing Fifth Amendment right insofar, under the Fifth Amendment, "where the government's activities have already worked a taking of all use of property, **no subsequent action by the government can relieve it of the duty to provide compensation**." Knicks v. Township of Scott, 558 U.S. \_\_ (2019), 139 S. Ct. 2162, 2171 [Emphasis was added]. Neither PROMESA nor Chapter 9 of the Bankruptcy Code can be construed as an exception to the government's duty to provide just compensation. If the proposed Plan of Adjustment is confirmed it would violate the Fifth Amendment to the extent that it limits liability to a percentage of the recovered funds (if any), and any unpaid portion would be discharged or otherwise uncollectible. For this reason, the Plan is patently unfeasible as unconstitutional.

Now, the Oversight Board argues that Isla del Rio Inc. and all condemnation claims can be impaired and discharged because the same have been reduced to a money

13

judgment, and bankruptcy courts have impaired, and discharged claims based on 42 U.S.C. § 1983. This position is mostly based on the case of <u>Cobb v. City of Stockton (In re: City of Stockton)</u>, 909 F.3d 1259 (9th Cir. 2018). Isla del Rio Inc. submits that the Oversight legal argument erroneous and its reliance on the *Cobb* case is erroneous.

In the first place, the *Cobb* court dismissed the appeal because of equitable mootness, therefore, all discussion as to whether a Chapter 9 discharge was proper is *dicta*. Secondly, in such case Cobb requested additional remedies provided for by state law which were not provided for in the Chapter 9 Plan of Adjustment, and to which the creditor did not raise a timely objection prior to confirmation. That is not the case before this Honorable Court. Here, Isla del Rio Inc. has raised a timely objection and merely requests that the Debtor complies with its Fifth Amendment obligation to pay just compensation. Third, despite the specific statutory basis for seeking damages relief arising from harm caused by the violation of one's Constitutional rights pursuant 42 U.S.C. §1983, that statutory basis is simply a jurisdictional vehicle for federal courts to assert jurisdiction over state actors. **It is not the basis of the right itself.**

The right, and the remedy with which to enforce that right, originates with the Constitution, and the Constitution alone. In the case of claims against the Debtors for eminent domain, such claims are not just a money judgment against a tortfeasor, it is a claim safeguarded by the just compensation clause of the Fifth Amendment. Again, it is the compensation for the property, not the owner. <u>Monongahela Navigation Co. v. United States</u>, 148 U.S. 312, 325 (1983). If the government can take property without paying just compensation, it would be engaging in an action which the drafters of the Fifth Amendment sought to eradicate: the taking of private property without just compensation. "*Isla del Rio Inc.et al*" should NOT have to bear public burden of the government's eminent domain power, no matter the bankruptcy status of the Debtor. To impair or discharge *"Isla del Rio Inc.et a'"* just compensation claim would allow the government to take private property without complying with paying just compensation.

Yet, the Supreme Court has never tolerated such an outcome. See <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2021 US Lexis 3394, 24.

In the Chapter 9 case of the City of Detroit, the bankruptcy court faced a similar controversy where the Chapter 9 debtor sought to impair and discharge certain Taking Claims creditors as general unsecured creditors. The court in the City of Detroit case ruled:

> "The City argues that the Takings Clause creditors have no such property interest, and that chapter 9 does not extinguish any such property right. The City cites several cases establishing the principle that an unsecured creditor's mere right to collect payment is not a property interest.
> The Court rejects this argument. The taken property here is not the creditor's unsecured claim in bankruptcy. Moreover, the source of the taking is immaterial. In the present case, the City took, or allegedly took, the creditors' property. In Radford and Security Industrial, the bankruptcy code itself resulted in the taking. Nevertheless, all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred.
> If confirmed, this plan would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. **That violates the Fifth Amendment**." <u>In re: City of Detroit</u>, 524 B.R. 147, 269-270 (Bankr. E.D. Mich. 2014) [Emphasis was added].

**C. The Fifth Amendment protects all property interests, not just security interests.**

The Bankruptcy Code is, for the most part, a procedural statute. It "does not authorize bankruptcy courts to create substantive rights not otherwise available under applicable statutes" <u>In re: Rose</u>, 512 B.R. 790, 794 (Bankr. W.D.N.C. 2014). That is why it has been established by the Supreme Court of the United States that creditor's entitlement in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation. <u>Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.</u>, 549 U.S. 443, 450 (2007). It has also been stated that the basic federal rule in bankruptcy is that state law governs the substance of a claim. <u>Butner v. United States</u>, 440 U.S. 48, 57 (1979). Consequently, a creditor's interest, and the underlying rights to those interests which this Court ought to protect, is established by state law. See <u>United Sav.</u>

15

Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 375 (1988). Conversely, unless otherwise established by a specific provision of the Bankruptcy Code, the order for relief does not grant the Debtor greater rights over the substance of a claim filed against it. If federal courts recognize that under the Fifth Amendment a creditor's security interest is constitutionally protected against a bankrupt, so is a claimant's right to just compensation under the same amendment particularly when the compensation is for the property, not the owner. See Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1983).

Fifth Amendment protection or state law interests in real property have long been recognized by bankruptcy courts. Since Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935), the Supreme Court held that even the federal bankruptcy power must yield to the Fifth Amendment. See Id. at 589. Now, the Oversight Board seeks to persuade the Court that, pursuant to 11 U.S.C. § 944(b), only secured claims are shielded by the Fifth Amendment; that is, that the only constitutionally protected interests in property are security interests.[6] The Oversight Board further argues that, pursuant to the 9th Circuit *Cobb* case, *supra*, that all constitutional obligations seeking money judgments are routinely adjusted in bankruptcy [Docket No. 17187, p. 46, fn. 42]. Such argument is not only based on *dicta* as previously discussed,[7] *supra*, but also because it is based on the erroneous presumption that some interests in property have a higher rank under the Fifth Amendment. This contention is erroneous for several reasons.

As a threshold matter, it is important to point out that it is a well settled principle of constitutional law that the Takings Clause does not just protect ownership interest in real property, but "any one stick" within the "bundle of rights" that ownership

---

[6] See Docket No. 171887, pp. 45-46, fn. 42.
[7] The Oversight Board also cites Poinsett Lumber Mfg. v. Drainage District No. 7, 119 F. 2d 270 (8th Cir. 1941) as a source of law to support its contention. Yet, such case distinguishable from the case at bar. The *Drainage District* did not involve a municipal debtor, it involved a two-party dispute in a composition proceeding under the revoked Bankruptcy Act. The controversy resolved by the 8th Circuit Court behooved a private party with a claim for damages against a private debtor. The creditor alleged that to stay its state court claim would constitute a taking, yet, that case was not involve an Eminent Domain Claim, as this case.

encompasses. That includes not only security interests, but also the right to exclude others, and the right to use one's property. See *e.g.,* Lucas v. S.C. Costal Council, 505 U.S. 1003, 1010 (1992), discussing Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922). Additionally, in the same light that the Fifth Amendment requires that a secured creditor be paid the indubitable equivalent of its collateral (a security property interest), a Chapter 9 or Title III debtor must pay for the property it took (ownership property interest).

### IV. CONCLUSION

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: Nor shall private property be taken for public use, without just compensation. The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, property must be secured, or liberty cannot exist. The United States Supreme Court agrees, having noted that protection of property rights is necessary to preserve freedom and empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." Cedar Point Nursery v. Hassid, 141 S. Ct. 2063 (2021).

"The Supreme Court has consistently held that bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). Taking claims includes claims resulting from either a direct or indirect condemnation by the government. Eminent domain claims include actions that are substantially different from contractual or tort claims. Hence, *Isla del Rio Inc et al.*'s claims for inverse condemnation cannot be lumped with other general unsecured claims insofar, the first cannot be impaired while the second can be impaired and discharged.

The *Second Amended Modified Title III Plan of Adjustment of the Puerto Rico electric Power Authority* may not be confirmed in as much the treatment provided to

17

eminent domain/ inverse condemnation claims *is* prohibited by law from carrying out the plan as proposed. Se 48 USC §21749(b) (3)

**WHEREFORE** Isla del Rio Inc. requests that this Honorable Court entertains the instant motion and moves Honorable Court to enter and order denying the confirmation of the Modified Second Amended Title III plan of Adjustment of Puerto Rico Electrical Power Authority and for any other and further relief as it may seem just and proper.

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court, using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case, including the Oversight Board's counsel, the U.S. Trustee for Region 21, and all parties that requested notice. We further certify, that in compliance with the *Sixteenth Amended Case Management Order* (the "*CMP Order*", ECF No. 20190-1) a copy of this motion will be served via regular or electronic mail to the Standard Parties listed in the *CMP Order* and the parties included in the Master Service List maintained by the Claims and Noticing Agent appointed in this Case.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this 12th day of June 2023.

**ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 250-7242
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com