## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re:** | **PROMESA** |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO** | **Title III** |
| **as representative of** | **No. 17 BK 3283-LTS** |
| **THE COMMONWEALTH OF PUERTO RICO, et al** | |
| **Debtors** | |

## MOVANT'S REPLY TO OBJECTION
## BY THE COMMONWEALTH OF PUERTO RICO
## RE THE MOTION FOR RELIEF FROM STAY
## REGARDING THE SECOND CAUSE OF ACTION (ATTORNEYS FEES)
## IN *ARES ET AL V, SECRETARY OF LABOR.*

**TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN:**

**NOW COMES the attorney for Petitioners** in the *Mandamus* action entitled *Ares et al v. Secretario del Trabajo, Civ. No. SJ 2017 CV02280,* before the Superior Court of Puerto Rico, and hereby submits this ***reply*** to the Objection raised by the Commonwealth of Puerto Rico (Docket No. 23992) to the request presented by the undersigned at *Docket No. 23894* for additional relief from the Stay imposed by this Court, allowing the Puerto Rico court to address the issue of attorneys fees.[1]

As argued in more detail below, under the law of Puerto Rico, the claim for attorneys fees is entirely separate from that of the underlying claim, for which the Stay

---

[1] Although the undersigned submitted the referenced motion on March 30, 2023, it bore the incorrect filing date, dating to September of 2019.  The undersigned regrets the error.

was long ago lifted.  Also, as argued in more detail below, the instant request concerns a claim which accrued only six months ago, in *December of 2022*, when the petitioners were finally granted their pension rights.  This, in turn, was long after the end of any period for which claims in Puerto Rico have been stayed - either through the initial stays after the presentation of this Title III action, or the application of the discharge order and adjustment plan to claims arising between May 3, 2017 and March 21, 2022.

The petitioners in the 2017 *mandamus* action were seventeen (17) long-time employees of the Department of Labor of the Commonwealth of Puerto Rico*, who* requested mandamus relief against the Secretary of the Department, who had violated his ministerial duty to honor their right to an early retirement pursuant to Law 211-2015 (the pre-retirement program).  Among other things, the petitioners in the above-referenced case indicated that their inclusion in the above retirement plan would represent a savings for the Government of Puerto Rico.

By motion submitted on March 31, 2023, at *Docket No. 23894,* the undersigned asks this Court to lifting original Stay, to allow her to pursue her claim for statutory attorneys fees, since that Stay should not have applied to a claim which had not yet accrued. Importantly, under Puerto Rico law, a claim for attorneys fees for representing employees is not a "fee-shifting" like that typically found in federal statutory schemes such as Title VII employment claims.  On the contrary, this is a separate claim, under a law which *prohibits* other forms of compensation to an employee's attorney, and which *obliges* the employer to pay those fees.  Because of the particular structure of the applicable Law 402-1950, *32 LPRA sections 3114 to 3117,* this claim did not *accrue* until

the clients of the undersigned actually obtained their earned pension rights.

The Commonwealth opposed the motion on April 13, 2023. *See, Docket No. 23992*.  By Consent Motion submitted at Docket No. 24233, the parties requested additional time for the undersigned to Reply, due to a serious accident she suffered on April 9, 2023, requiring surgery and extensive therapy.  By Order at Docket No. 24236, this Court granted an extension to Reply until June 13, 2023.

In the instant motion, the undersigned will address only new issues raised by the Commonwealth, concentrating on the question of "accrual."  Her earlier arguments, set forth at Docket No. 23894, should be understood to be incorporated herein.


## I. __Pertinent background__

On October 31, 2017,  seventeen petitioners, all reaching retirement eligibility after decades of work at the Puerto Rico Department of Labor, filed a *mandamus* action in the Superior Court of Puerto Rico, affirming that the Secretary of Labor had failed to comply with his ministerial duty to retire them pursuant to Commonwealth Law 211-2015 (the "Preretiro" program).

In their *mandamus* petition, which was presented just short of six months *after* the filing of this Title III action before this Court, the petitioners set forth two causes of action. *First,* they alleged a ministerial obligation on the part of the Secretary of the Labor to honor their rights to a "pre-retirement" pension.  *Second,* the undersigned, as their attorney, requested payment of the *attorneys'* fees which accrued upon the conclusion of the underlying claim of their clients.

In December of 2022, after several years of litigation, including the successful defense of two interlocutory appeals to the Puerto Rico Appellate Court, as well as a slew of motions and hearings before the Superior Court, and several motions before this Court, the claims of each and every one of the petitioners represented by the undersigned came to a *successful* conclusion, with the petitioners receiving their earned pension rights. Four of the original 17 petitioners retired on their own. Through the efforts of the undersigned and the supervision of the Superior Court, the remaining 13 employees received their full participation in the "pre-retirement" program (which, in fact, represented a *savings* to the Government as compared to their continued employment with the Department of Labor.)

At the current juncture, all that remains to be decided by the Superior Court is the claim *of the undersigned* for attorneys fees. As noted, and as will be explained in detail in Section II below, this is a claim which is *entirely separate* from the claim of the employees for whatever relief they are asserting. *See,* Berkan/Méndez v. Mead Johnson, *204 D.P.R. 183 (2020).* Also, the claim for attorneys fees did not accrue until *December of 2022,* when the final pension rights were established. This is long after the approval of the Adjustment Plan for the Commonwealth and the issuance of the discharge injunction and the approval of the adjustment plan for the Commonwealth.

In response to the motion presented by the undersigned, the Commonwealth relies primarily on a supposed *procedural* defect - the fact that the undersigned did not submit a post-discharge order claim against the Commonwealth. According to the Commonwealth, the instant claim is barred, because it is *either* a pre-petition claim or

a post-petition (pre-discharge) claim. If the former, then a claim should have been filed years ago. If the latter, then, according to the Commonwealth, as an "administrative expense" which "fits squarely within the discharge provision of the Commonwealth Plan and Confirmartion Order." *Opposition to request, Docket No. 23,992, at ¶3, page 9.*

As will be explained in more detail below, the Commonwealth's position fails to examine the nature of the claim now before this Court. The Commonwealth erroneously poses a one-size-fits-all resolution of this matter, a wholly misguided proposal which fails to take into account the nature of the claim and Law 402 which governs the same. This claim plainly does not "fit squarely" within either the Stay provisions of 2016 and 2017 (the oiginal PROMESA Stay and the Title III petition Stay) or the more recent (2017-2022) extinction of claims for the period between May 3, 2017 and March 21, 2022, following the March, 2022 discharge order.

Any obligation to file a claim applied only to those claims which *existed* at the time of the aforementioned "effective date." It *does not apply* to the instant controversy. The *Sonnax* factors are likewise inapplicable. Since Puerto Rico law provides that the instant case for attorneys fees did not *arise* until *after* all both the filing of the petition and the claims which were covered under the *March 21, 2022* discharge order, the instant claim cannot be considered to be part of the estate.

## II. ARGUMENT

### A. Puerto Rico Law on accrual applies

At page 9 of its Objection at Docket Number 23992, the Commonwealth boldly affirms in footnote 5 that "state law is not determinative of when a claim arises." In

support of that notion, the Commonwealth cites one isolated order of the district court, in PR Elec. Power Auth v. Maxon Engineering, *2007 U.S. Dist LEXIS 108800 (D.P.R., May 10, 2007),* which was amended on reconsideration of several points thereafter, at *2007 U.S. Dist LEXIS 108984 *October 3, 2007),* and was never the subject of appellate review.  This unsupported point is simply wrong; "Accrual" must indeed be determined under the law of the forum, i.e. under the law of Puerto Rico. *See, for example,* Cusano v. Klein, *264 F.3d 936, 945-47 (9th Cir. 2001).*

A claim which has not yet accrued under the applicable law is simply not part of the estate in bankruptcy.  As observed by the Second Circuit, "[a] debtor's cause of action automatically becomes property of the chapter 7 bankruptcy estate '*if that cause of action had already accrued [under state law]* at the time of filing.' " *Id, citing* Osborne v. Tulis, 594 Fed. App'x 39, 40 (2d Cir. 2015) (citing Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (further internal cites omitted; emphasis supplied).  *See, also,* Winick & Rich, P.C. v. Strada Design Assocs. (In re Strada Design Assocs.), *326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005)* ("... [C]auses of action that accrue under state law prior to the filing of a bankruptcy petition become 'property of the estate.'")A cause of action that has accrued prior to the debtor's petition date is an estate asset that must be scheduled. Boland v. Crum (In re Brown), 363 B.R. 591, 604 (Bankr. D. Mont. 2007)(citing In re Cusano, 264 F.3d at 947). However, a debtor generally has no duty to schedule a cause of action that did not accrue prior to bankruptcy.

## B. Law 402's provisions and accrual

Whether the undersigned can raise her claim for attorneys fees or is barred

under this Court's stays and its recent injunction depends, in the first instance, upon an analysis of the particular cause of asserted in this case and the substantive law of Puerto Rico.

The undersigned has come before this Court to assert her claim for attorneys fees, a claim which is *separate* from the underlying claim asserted by her clients in their *mandamus* action. The dispositive question is: When did this claim arise? The answer, to this question, while it may seem odd to someone unfamiliar with the specifics of the labor law of Puerto Rico, is quite clear. Under Puerto Rico law 402-1950, *32 LPRA 3114 et seq.,* a uniquely and distinctive law of Puerto Rico which is unlike labor law provisions handled daily by practitioners outside of this jurisdiction, a claim for attorneys fees in a labor case arises *only* when the underlying claim is settled or determined to be in favor of the employee. Then, and only then, does a claim arise. Before this occurs, or indeed if the underlying employee claim is deemed without merit, no claim for attorneys fees "exists."

There appears to be no equivalent to Law 402 in any other jurisdiction which operates under the United States flag. Law 402 absolutely *prohibits* attorneys who represent employees against their employers from charging *any* amounts to their clients. *By law*, the undersigned is prevented from charging her clients — or anyone else for that matter — any amounts whatsoever for her attorneys fees. *See,* Berkan/Méndez v. Mead Johnson, *supra*; Hernández Maldonado v. The Taco Maker, Inc., *181 D.P.R. 281 (2011)*; Belk Arce v. Martínez, *163 D.P.R. 196 (2004)*; López Vicil v. Itt Intermedia, Inc.,

*142 D.P.R. 857 (*1997).[2]

On the other hand, as a result of partial or complete success to the benefit of the employee, an attorney may not, under any circumstances, take a portion of any amounts obtained. On the contrary, the obligation to cover the attorneys' fees is *exclusively* that of the *employer*. This obligation arises, moreover, *only* if the employee is successful in his/her claims. This leads to the inexorable conclusion that such a claim for attorneys fees *arises* only when the underlying claim is successful.

Let us examine the case at bar. Although the undersigned had extraordinary success in assuring that the Secretary of Labor comply with his ministerial duties, at *no cost* to the Commonwealth, she has not received *any* compensation for her professional work. Nor *could* she have received such compensation at an earlier stage of the proceedings, because the law would have *prohibited* her claim.

Once the claims of the petitioners were successfully resolved, however, a *separate* claim for attorneys fees, which *belongs* to the attorney, not to the client, *accrued*. It was only upon the successful completion of the litigation, when the employees finally obtained their well-deserved pensions, that a claim for attorneys fees *existed*.

An examination of the provisions of the law on point is instructive:

Puerto Rico Law 402, as amended, originally passed on May 12, 1950, is codified at *32 LPRA 3114 et seq.* The policy of Puerto Rico is set forth in Article I of the law, *32 LPRA § 3114:* (entitled "Attorney's fees—Government policy"), which provides as

---

[2] It should be observed that a Law 402 claim is entirely different from a claim of "temerity" under Rule 44.1 of the Puerto Rico Rules of Civil Procedure. In the latter case, "belong" to the client and are intimately tied into the litigation. *Cf.* Berkan/Méndez, *op cit.*

8

follows:

> The Legislature of Puerto Rico hereby declares that to permit collection of attorney's fees from workers or employees who need to file claims against their employers under federal or local labor legislation or under an individual or collective work contract is equivalent to permitting the worth of their hire to be reduced by the amount they pay their attorneys ...

> It is therefore declared that the policy of the Government of Puerto Rico is to safeguard workers and employees against such reductions in the worth of their hire and to protect the public interest against said percentage basis contracts, inasmuch the same redound to the detriment of industrial peace.

For its part, Article II of the Law, codified at *32 LPRA Sec. 3115*, provides that it is the obligation of the *employer* to pay for the attorneys fees of the employee's representative, when that employee is successful in his/her claim (and only at that point in time). Article II, entitled in pertinent part, "Attorney's fees—Payment by employer," provides that "[i]n *every case* filed in the courts of Puerto Rico by a worker or an employee in which *any right* or sum of money is claimed against his employer under federal or local labor legislation or an individual or collective work contract and in which the claim is granted in whole or in part, the *attorney's fees shall be levied on the employer* (with one exception not pertinent herein) *(emphasis supplied)*.

The following two articles, Articles III and IV of the Law, 32 LPRA sections 3116 and 3117, respectively, declare the nullity of all contracts allowing for  an attorney in such cases to be paid by his or her client, and provide that an attorney who attempts to obtain fees from his/her client must pay double damages to his/her client. Ironically, under Article IV of Law 402, the Puerto Rico Secretary of Labor and Human Resources

is authorized to present the claim against the attorney on behalf of the employee. *32 LPRA section 3117*.

This plainly is not a typical fee-shifting provision. To the contrary, the Legislature of Puerto Rico saw fit to distinguish this particular kind of claims from all others. Whereas in all other kinds of cases, contingency fees and hourly, flat-fee or hybrid fee arrangements are permitted (even if applicable law contemplates potential fee-shifting), these are not permitted in the labor context, because such contracts are deemed to be "in detriment to industrial peace." *32 LPRA sec. 3114*. The Legislature declared this measure as public policy in protection of workers, because allowing attorneys to charge for their services in this field would be tantamount to reducing the value of the employee's services to the employer by the amount they pay to their attorneys." *32 LPRA 3114*. The Supreme Court of Puerto Rico has also heldy that an attorney who charges his/her client in such circumstances violates the ethical rules of the profession. See, <u>Berkan/Méndez</u>, op. cit; <u>In re Martí</u>, *194, DPR 467 (2016)* and <u>In re Rivera</u>, supra.

The claim before this Court at *this* moment is *not* the claim of the *mandamus* petitioners. The claim for attorneys fees commenced its existence (i.e. accrued) some six months ago, *not before*. It is a claim which was *not* covered by any Stay or Order issued by this Court.

Since this claim did not "arise" until the underlying claims of the petitioners were resolved in December of 2022, the claim simply *cannot* be part of the estate of the "bankrupt" Commonwealth. *See,* <u>Krohn v. Glaser</u>, *816 Fed. Appx 103, 104 , (9ᵗʰ Cir. 2020) (*applying state law, the Ninth Circuit determines that a debtor's claim for legal

malpractice, is *not* part of the bankruptcy estate.)Since the claim for attorneys fees did not *exist* either at the time of the initial bankruptcy filing or in the five years thereafter, culminating in the Confirmation Order and the discharge injunction, it is not covered thereby.

## C. <u>The purported procedural failings - a look at the Commonwealth's contentions</u>

As a final matter, it is respectfully submitted that one must consider the implications of several contentions made by the Commonwealth. Crediting the Commonwealth's contention at paragraph 3, on page 2 of the Objection, that the instant claim is covered by *Section 1.135* of the referenced Plan of Adjustment, would lead to an endless bankruptcy, as newly accrued claims would continue to enter into the pot. Plainly, the discharge injunction cannot be thought to apply to *unaccrued* claims which do not yet exist, even if the Plan's language speaks of unliquidated, pre-judgment, and immature claims, whether "asserted or unasserted." There would be an endless bankruptcy proceeding, applying the stay and injunction to all events subsequent not only to the bankruptcy petition, but also to the *conclusion* of the period covered by the discharge injunction.  Certainly, this language is not meant to apply to claims which have not yet *accrued* and which *could not have been asserted* at an earlier date.

Similarly fallacious is the notion advanced by the Commonwealth that the claim in the case at bar is an "administrative expense" for which a claim had to be presented on or before September of 2022 (later extended to early 2023).

The inclusion of "administrative expenses" is not as expansive as the

Commonwealth posits.  This is demonstrated by the language of the Adjustment Plan itself, which in its Section 1.52 defines an "administrative expense" as "a Claim against the Debtors or their Assets constituting *a cost or expense of administration* of the Title III Cases ..... in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code *(emphasis supplied by plaintiff.)*  Of the aforementioned provisions of the Bankruptcy Code, it is Section 503(b) which defines what constitutes an administrative expense.[3] The term refers to those which are "the actual, necessary costs and expenses of preserving the estate," i.e. what is necessary to keep the Commonwealth of Puerto Rico operating.   Thus, the term includes obligations such as "wages, salaries and commissions for services rendered after the commencement of the case" and certain taxes, fines or penalties, and reasonable compensation for certain "professional services rendered by an attorney or an accountant of an entity" or a "trustee" and expenses for fees and mileage. *Id.  11 USC §503(b)*.  Plainly, this is inapplicable to the instant case.

Independently of the definition question, however, it is beyond serious question that the undersigned cannot be faulted for her supposed "failure" to file a proof of claim, asserted by the Commonwealth at paragraph 2 of its Objection.  Even if one were to consider a claim for statutorily obligated attorneys fees to be an "administrative expense," the Plan and the discharge injunction apply only to those claims which arose on or before *March 21, 2022*.[4]  This does not apply to the claim at bar.

---

[3]Section 507, for its part, does not address the definition issue; rather it addresses the priority given to administrative claims in the bankruptcy process.

[4]Remarkably absent from the Objection is any reference the effective *date* of the discharge injunction and the Plan's approval.  This is not surprising, since such a reference clearly would have signified that the discharge order is *not applicable* to the request for attorneys fees in this matter.

## III. <u>CONCLUSION</u>

The Commonwealth has filed a standard Objection to a legitimate request to this Court to allow for the pursual of a claim for attorneys fees which accrued in the last six months.  Its Objection fails to take into account the nature of the claim and its recent accrual.  The plaintiff's motion should be granted.


Respectfully submitted in San Juan, Puerto Rico this 12th day of June, 2023.

**Berkan/Mendez**
O'Neill St. G-11
San Juan, P.R. 00918-2301
Tel. (787) 764-0814;Fax (787) 250-0986
berkanmendez@gmail.com

By:    /s/ JUDITH BERKAN
USDC No.200803
berkanj@microjuris.com


**CERTIFICATION**: This is to certify that this motion is being submitted today through the ECF filing system, which will automatically notify all counsel of record.


/s/ JUDITH BERKAN