# EXHIBIT 35

Page 1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
Case No. 17-BK-3283-LTS
---------------------------------------x
In re:
THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

                          Debtors.
---------------------------------------x
Case No. 17-BK-4780-LTS
---------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,
as representative of
THE PUERTO RICO ELECTRIC POWER AUTHORITY,
                          Debtor.
---------------------------------------x
                 May 16, 2023
                 9:31 a.m.

     VIDEOTAPED DEPOSITION of DAVID
BROWNSTEIN, held at the offices of Kramer
Levin Naftalis & Frankel LLP, located at 1177
Avenue of the Americas, New York, New York
10036, before Anthony Giarro, a Registered
Professional Reporter, a Certified Realtime
Reporter and a Notary Public of the State of
New York.
```

                    DAVID BROWNSTEIN

1
2    enforceable claim, but the priority of
3    that claim.
4         Q        Other than the dispute over
5    the priority of the fuel line lenders'
6    claim, are you aware of any dispute
7    between the oversight board and the fuel
8    line lenders relating to their claim?
9              MR. MERVIS:  On that one,
10        David, at least for the moment,
11        please limit your answer to yes, no
12        or I don't know.
13        A        Well, I think your question
14   was, am I aware?  So the answer is no.
15        Q        As part of your involvement
16   in negotiations leading to the fuel line
17   lenders' PSA, did you do anything to find
18   out whether there was any dispute between
19   the oversight board and the fuel line
20   lenders relating to their claim, other
21   than the issue of priority?
22        A        Well, we were settling the
23   litigation, which had to do with whether
24   there were priority over the bondholders;
25   right?  And the challenge we were faced

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 4 of 15

Page 82

1 DAVID BROWNSTEIN
2 with is we could litigate that out, but
3 until we knew whether they were entitled
4 to priority and what that would mean, we
5 would be unable to fully settle with the
6 bondholders because we didn't know
7 obviously how much cash we had left over.
8 So the goal was to settle with them, so
9 that we could move on to creating a
10 settlement with the bondholders.
11     Q     What is your understanding
12 of the fuel line lenders' assertion as to
13 their priority over the bondholders?
14            MS. SPILLANE: Objection to
15   form.
16            MR. MERVIS: I join.
17     A     That the fuel line lenders
18 believed that in the priority of
19 payments, because they were named as a
20 portion of where payments go that they
21 had priority, both over the general
22 unsecureds and the bondholders.
23     Q     And why did the litigation
24 of that dispute prevent the oversight
25 board from reaching resolution with the

Page 83

1              DAVID BROWNSTEIN
2    bondholders?
3              MS. SPILLANE: Objection to
4        form.
5              MR. MERVIS: Objection to
6        the form.
7         A     You have to know how much
8    money you have available after that
9    settlement or litigation, if you don't
10   have a settlement, in order to find a
11   settlement with the bondholders.
12        Q     Had the dispute between the
13   oversight board and the fuel line lenders
14   concerning the fuel line lenders'
15   asserted priority been resolved prior to
16   agreement to the 2019 RSA?
17        A     I don't recall.
18        Q     Are you aware of any
19   settlement between the oversight board
20   and the fuel line lenders, preceding the
21   agreement to the 2019 RSA?
22        A     No.  They were part of the
23   2019 RSA.  So all of it was developed in
24   one package.  But you had their
25   agreement.  So you didn't have the

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 6 of 15

Page 84

1                DAVID BROWNSTEIN
2    dispute issue to worry about, that they
3    were litigating, and they would take
4    money that belonged to the bondholders in
5    the RSA because then we'd have to cancel
6    the RSA.
7         Q       And when you say they would
8    take money that belonged to the
9    bondholders, what do you mean by that?
10        A       If they won the litigation
11   and were entitled to first cash flow,
12   were they entitled to 100 cents on the
13   dollar, 100 cents plus accruals or not.
14   And if they were, that would mean based
15   on what we at the time believed we could
16   afford to pay wouldn't have enough money
17   to pay the bondholders what we would have
18   agreed to if we had done them first
19   without knowing the results on the fuel
20   lines.
21        Q       If the fuel line lenders in
22   the absence of a settlement were to
23   prevail in their priority litigation,
24   would that require PREPA to pay
25   additional sums in total creditor

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 7 of 15

Page 85

1  DAVID BROWNSTEIN
2  recoveries?
3  MS. SPILLANE: Objection to
4  form.
5  A    No. As I just said to you,
6  it would have required that we not offer
7  as much to the bondholders.
8  MR. MADDEN: Tab 4 of the
9  binder.
10  (The above-referred-to
11  document was marked as Exhibit 91 for
12  identification, as of this date.)
13  Q    Mr. Brownstein, do you
14  recognize the agreement that begins on
15  page 5 of 32 of -- let me take a step
16  back.
17  MR. MADDEN: I didn't mark
18  this. We're going to mark as Exhibit
19  91 a document that is Exhibit M to
20  the disclosure statement, dated
21  March 1, 2023.
22  A    Okay.
23  Q    And so my question was going
24  to be, Mr. Brownstein, do you recognize
25  the agreement that begins on page 5 of 32

```
 1                    DAVID BROWNSTEIN
 2    sustainable system.
 3        Q      Maybe I'm misunderstanding
 4    your point then.
 5               Do you mean it affects the
 6    amount of total cash you would have to
 7    pay other creditors?
 8        A      To pay all creditors, right;
 9    you as well as them.
10        Q      Right.
11               But it doesn't -- losing the
12    priority litigation doesn't increase or
13    decrease the total amount of cash
14    available to pay all creditors, does it?
15        A      No.  What it does is it
16    keeps us from settling with you because
17    we don't know how much we have.
18        Q      Understood.
19               If you turn in Exhibit 91,
20    there are a number of whereas clauses at
21    the beginning, tab 4 of your binder.
22    It's Exhibit 91.
23               MR. MERVIS:  Matt, you want
24        us to start looking at page --
25               MR. MADDEN:  Page 2 of the
```

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 9 of 15

Page 114

1          DAVID BROWNSTEIN
2     Q      Will the legacy charge
3  itself need to increase to --
4     A      -- cover the accrued
5  interest, correct.
6     Q      Does the plan of adjustment
7  provide other bondholders an interest
8  accrual through the plan's effective
9  date?
10         MR. MERVIS:  Objection to
11     the form.
12     A      Subject to PREB approval,
13  the National PSA provides National with
14  one cent --
15     Q      I want to try to do these
16  agreements one at a time.  So I'm focused
17  here on the fuel line lenders' PSA only.
18     A      So your question was, does
19  anyone else?
20     Q      I see.  I understand the
21  disconnect.  Thank you.
22     A      We can come to that later.
23     Q      No.  That's fine.
24            Other than National, which
25  has its own PSA, does the plan of

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 10 of 15

Page 115

```
 1              DAVID BROWNSTEIN
 2   adjustment provide for interest accrual
 3   for any other creditors?
 4        A      No.
 5        Q      Why not?
 6              MR. MERVIS:  Object to the
 7        form.  But you can answer if you
 8        understand.
 9        A      We're not going to agree to
10   do something like that for people who we
11   don't have a settlement with.  There's no
12   reason that we need to do it.
13        Q      If you look at the bottom of
14   the plan, the first page of the plan term
15   sheet, there's a box for Series A Bonds.
16   Do you see that?
17        A      Yes.
18        Q      Why does the plan support
19   agreement limit the Series A Bonds to the
20   fuel line lenders?
21              MR. MERVIS:  Object to the
22        form.  But you can answer.
23        A      So based on the settlement
24   of the priority claim, their bonds are
25   receiving first principal.  All bonds
```

Page 137

1  DAVID BROWNSTEIN
2  settlement summary in the National PSA,
3  it's at the back.
4      MR. MERVIS: Page 37 of 43.
5      MR. MADDEN: Thank you.
6    A    Yes, sir.
7    Q    It's page 35 of the
8  agreement, page 37 of 43 of the PDF.
9      I'm looking at the top box.
10     But my question is just,
11 what is the nature of the National bond
12 claim? What is it?
13   A    I'm not sure I understand
14 your question.
15   Q    Am I right that the National
16 bond claim reflects National's -- what
17 National believes it is owed under the
18 bonds it has insured or owns?
19     MR. MERVIS: Objection to
20   the form.
21   A    It is the claim based on
22 their belief that they're entitled to par
23 on the bonds that haven't been paid, plus
24 accrued interest to the petition date.
25   Q    And in that respect, is the

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc:
Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 12 of 15

Page 138

1            DAVID BROWNSTEIN
2    National bond claim different in nature
3    from the bond claim asserted by any other
4    PREPA bondholder?
5             MR. MERVIS:  Go ahead.  I
6        object to the form.
7        A       From the asserted bond
8    claim, no, I don't believe so.
9        Q       And is the National bond
10   claim different in nature from the
11   asserted bond claim of the PREPA bond
12   trustee?
13            MR. MERVIS:  I object to the
14       form.
15       A       I don't know what the
16   trustee is saying.  So I can't answer
17   that.
18       Q       The next box of the
19   settlement summary is titled "Exchange
20   Ratio."
21            You see that?
22       A       Yes, sir.
23       Q       What does that mean?  What
24   does the exchange ratio describe here
25   mean?

Case:17-03283-LTS Doc#:24535-35 Filed:06/12/23 Entered:06/12/23 21:36:46 Desc: Exhibit AHG Ex 35 2023-05-16 Excerpted Brownstein_FULL Page 13 of 15

Page 147

1  DAVID BROWNSTEIN
2  71.65 percent exchange ratio?
3  MS. SPILLANE: Objection to
4  form.
5  MR. MERVIS: I object to the
6  form of the question.
7  MR. MADDEN: Let me try it
8  again.
9  Q   Given that there are
10 bondholders who have only received an
11 offer of settlement from the oversight
12 board, that's the one in the plan of
13 adjustment, which was a 50 percent
14 exchange ratio, how is the agreement with
15 National to a 71.65 percent exchange
16 ratio on its bond claim fair and
17 reasonable?
18 MS. SPILLANE: Objection to
19 the form.
20 MR. MERVIS: Objection to
21 the form.
22 A   What I would tell you is
23 that there's a settlement with National
24 to deal with all the potential
25 litigation. And so the settlement pays

Page 148

1  DAVID BROWNSTEIN
2  them more than it pays other creditors
3  who can vote for or against the plan.
4  Q    Were all PREPA bondholders'
5  claims subject to that pending
6  litigation?
7  MR. MERVIS:  I object to the
8  form.
9  A    Well, I don't believe --
10 first of all, I don't believe that the
11 other creditors, other than the monoline
12 insurers and potential secondary market
13 purchasers of those bonds, have a
14 reimbursement claim.
15 Second, what National
16 accepted were two additional things.
17 One, that they would not receive a CVI
18 and, Two, that in the event there was
19 excess cash flow that would have gone to
20 settling bondholders through the flow of
21 funds in the plan, they will only receive
22 50 percent on the dollar of what is
23 available to them until the other
24 accepting bondholders get to the same
25 recovery that they have.

Page 154

1  DAVID BROWNSTEIN
2  National has made to bondholders and for
3  which it seeks reimbursement, does that
4  comprise principal and interest on the
5  insured bonds?
6      A      I'm sorry.  You need to
7  break that up.
8      Q      Okay.
9             Do the sums for which
10 National seeks reimbursement from PREPA
11 include principal it's paid to its
12 insured on account of PREPA bonds?
13     A      No.  The reimbursement claim
14 is strictly post-petition interest
15 claims.
16     Q      Understood.  I'm trying to
17 skip ahead.
18            There's a clause in here
19 that begins, "Provided however" under
20 reimbursement claim.  This is on page 35
21 of the National PSA.  Do you see that?
22     A      I see, "Provided further."
23 Is it above that or below that?
24     Q      It's above that.  There's
25 another underlined, "Provided, however."