**<u>Natbony Declaration Exhibit 5</u>**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

# 𝔉𝔦𝔯𝔰𝔱 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

Case Nos. 22-1079, 22-1092,
22-1119, 22-1120

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF
PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO
RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT
SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO;

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO, SAN JUAN, IN CASE NO. 3:17-BK-03283-LTS

## BRIEF FOR DEBTORS-APPELLEES/CROSS-APPELLANTS

TIMOTHY W. MUNGOVAN
JOHN E. ROBERTS
ADAM L. DEMING
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600

JOSEPH S. HARTUNIAN
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW,
   Suite 600 South
Washington, DC 20004
(202) 416-6800

MARTIN J. BIENENSTOCK
JEFFREY W. LEVITAN
MARK D. HARRIS
BRIAN S. ROSEN
EHUD BARAK
LUCAS KOWALCZYK
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

PAUL V. POSSINGER
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
(312) 962-3550

*Attorneys for Debtors-Appellees/Cross-Appellants*

Case: 23-1162 Document: 00118054425 Page: 3 Date Filed: 06/12/23 Entry ID: 6574128

Case: 17-03283-LTS Doc#: 24542 Filed: 06/12/23 Entered: 06/12/23 22:44:57 Desc: Exhibit 5 - FOMB Brief in 22-1119 Page 3 of 87

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF
THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

*Debtors,*

---

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF
PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE
PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

*Debtors-Appellees/Cross-Appellants,*

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES
RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

*Debtor-Appellee,*

v.

COOPERATIVA DE AHORRO Y CREDITO ABRAHAM ROSA;
COOPERATIVA DE AHORRO Y CREDITO DE CIALES; COOPERATIVA
DE AHORRO Y CREDITO DE JUANA DIAZ; COOPERATIVA DE AHORRO
Y CREDITO DE RINCON; COOPERATIVA DE AHORRO Y CREDITO DE
VEGA ALTA; COOPERATIVA DE AHORRO Y CREDITO DR. MANUEL
ZENO GANDIA,

*Objectors-Appellants/Cross-Appellees,*

SUIZA DAIRY CORP.,

*Objector/Claimant-Appellant/Cross-Appellee,*

LUIS F. PABON BOSQUES; RAUL MARTINEZ PEREZ; ELVIN A. ROSADO
MORALES; CARLOS A. ROJAS ROSARIO; RAFAEL TORRES RAMOS,

*Creditors-Appellants/Cross-Appellees,*

DESARROLLADORA ORAMA, S.E.; C.O.D. TIRE DISTRIBUTORS
IMPORTS ASIA, INC.; CORREA TIRE DISTRIBUTOR INC.; WORLD WIDE
TIRE, INC.; SEQUERIA TRADING CORPORATION; SABATIER TIRE
CENTER, INC.; VICTOR LOPEZ CORTES, INC.; MULTI GOMAS, INC.;
JOSE COLLAZO PEREZ; IVELISSE TAVARES MARRERO; MANUEL
PEREZ ORTIZ; CORAL COVE, INC.; SUCESION ANGEL ALVAREZ

PEREZ; ANTONIO COLON SANTIAGO; COOPERATIVA DE AHORRO Y
CREDITO DE AGUADA; VILMA TERESA TORRES LOPEZ; VIVIANA
ORTIZ MERCADO; ORLANDO TORRES BERRIOS; GERMAN TORRES
BERRIOS; JUAN ALBERTO TORRES BERRIOS; VHERMANOS TORRES
TORRES, INC.; CORPORACION PLAYA INDIA, S.E.; MARIANO RAMOS
GONZALEZ; RAMON MORAN LOUBRIEL; RAFAEL MORAN LOUBRIEL;
ANA MORAN LOUBRIEL; SAN GERONIMO CARIBE PROJECT, INC.;
CARIBBEAN AIRPORT FACILITIES INC.; ESTATE OF RAUL DE PEDRO
& DIANA MARTINEZ; ALFONSO FERNANDEZ CRUZ; SUN AND SAND
INVESTMENTS, CORP.; FDR1500, CORP.; MARGARETA BLONDET;
SUCESION COMPUESTO POR MARIA I. RUBERT BLONDET; SONIA
RUBERT BLONDET; MARGARITA RUBERT BLONDET; SONIA RUBERT,
Administradora; MANUEL A. RIVERA-SANTOS; PABLO MELENDEZ
BRULLA; SUCESION AGUSTIN RODRIGUEZ COLON; GLORIA M.
ESTEVA MARQUES; SUCESION MANUEL MARTINEZ RODRIGUEZ;
LUIS REYES FEIKERT; JORGE RAMON POZAS; MIRIAM SANCHEZ
LEBRON; JUAN A. TAPIA ORTIZ; ANTONIO PEREZ COLON,

*Claimants-Appellees,*

PFZ PROPERTIES, INC.; OSCAR ADOLFO MANDRY APARICIO; MARIA
DEL CARMEN AMALIA MANDRY LLOMBART; SELMA VERONICA
MANDRY LLOMBART; MARIA DEL CARMEN LLOMBART BAS; OSCAR
ADOLFO MANDRY BONILLA; GUSTAVO ALEJANDRO MANDRY
BONILLA; YVELISE HELENA FINGERHUT MANDRY; MARGARET ANN
FINGERHUT MANDRY; VICTOR ROBERT FINGERHUT MANDRY; JUAN
CARLOS ESTEVA FINGERHUT; PEDRO MIGUEL ESTEVA FINGERHUT;
MARIANO JAVIER MCCONNIE FINGERHUT; JANICE MARIE MCCONNIE
FINGERHUT; VICTOR MICHAEL FINGERHUT COCHRAN; MICHELLE
ELAINE FINGERHUT COCHRAN; ROSA ESTELA MERCADO GUZMAN;
EDUARDO JOSE MANDRY MERCADO; SALVADOR RAFAEL MANDRY
MERCADO; MARGARITA ROSA MANDRY MERCADO; ADRIAN
ROBERTO MANDRY MERCADO; VICENTE PEREZ ACEVEDO;
CORPORACION MARCARIBE INVESTMENT; DEMETRIO AMADOR INC.;
DEMETRIO AMADOR ROBERTS; MARUZ REAL ESTATE CORP.; LORTU-
TA LTD., INC.; LA CUARTEROLA, INC.; JUAZA, INC.; CONJUGAL
PARTNERSHIP ZALDUONDO-MACHICOTE; FRANK E. TORRES
RODRIGUEZ; EVA TORRES RODRIGUEZ; FINCA MATILDE, INC.;
JORGE RAFAEL EDUARDO COLLAZO QUINONES,

*Objectors/Claimants-Appellees,*

ANTONIO MARTIN CERVERA; MARIA TERESITA MARTIN; WANDA
ORTIZ SANTIAGO; NANCY I. NEGRON-LOPEZ; GROUP WAGE
CREDITORS; YASHEI ROSARIO; ANA A. NUNEZ VELAZQUEZ;
EDGARDO MARQUEZ LIZARDI; MARIA M. ORTIZ MORALES; ARTHUR
SAMODOVITZ; MIGUEL LUNA DE JESUS; ISMAEL L. PURCELL SOLER;
ALYS COLLAZO BOUGEOIS; MILDRED BATISTA DE LEON; JAVIER
ALEJANDRINO OSORIO; SERVICE EMPLOYEES INTERNATIONAL
UNION (SEIU); INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; MAPFRE PRAICO INSURANCE COMPANY; CERTAIN
CREDITORS WHO FILED ACTIONS IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF PUERTO RICO; MED CENTRO, INC., f/k/a

Case: 22-1119 Document: 00117954425 Page: 5 Date Filed: 06/12/2023 Entry ID: 6487128
Case: 17-03283-LTS Doc#: 24254 Filed: 06/12/23 Entered: 06/12/23 22:44:57 Desc:
Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.; ASOCIACION DE
Exhibit 5 - OMB Brief in 22-1119 Page 5 of 87

JUBILADOS DE LA JUDICATURA DE PUERTO RICO; HON. HECTOR
URGELL CUEBAS; COOPERATIVA DE AHORRO Y CREDITO
VEGABAJENA; UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM
TRUST; PETER C. HEIN; MIRIAM E. LIMA COLON; BETZAIDA
FELICIANO CONCEPCION; ANGEL L. MENDEZ GONZALEZ;
ASOCIACION DE MAESTROS PUERTO RICO; ASOCIACION DE
MAESTROS DE PUERTO RICO-LOCAL SINDICAL; MORGAN STANLEY
& CO. LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES
LLC; SANTANDER SECURITIES LLC; SIDLEY AUSTIN LLP; BMO
CAPITAL MARKETS GKST, INC.; CITIGROUP GLOBAL MARKETS INC.;
SAMUEL A. RAMIREZ & CO., INC.; MESIROW FINANCIAL, INC.;
MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; MERRILL LYNCH
CAPITAL SERVICES, INC.; BARCLAYS CAPITAL INC.; RBC CAPITAL
MARKETS, LLC; RAYMOND JAMES & ASSOCIATES, INC.; COMMUNITY
HEALTH FOUNDATION OF P.R. INC.; QUEST DIAGNOSTICS OF PUERTO
RICO, INC.; U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee for
the PRPFC Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA
Bonds; U.S. BANK NATIONAL ASSOCIATION, as Trustee for the PRPFC
Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds;
NILSA CANDELARIO; EL OJO DE AGUA DEVELOPMENT, INC.; PEDRO
JOSE NAZARIO SERRANO; JOEL RIVERA MORALES; MARIA DE
LOURDES GOMEZ PEREZ; HECTOR CRUZ VILLANUEVA; LOURDES
RODRIGUEZ; LUIS M. JORDAN RIVERA; TACONIC CAPITAL ADVISORS
LP; AURELIUS CAPITAL MANAGEMENT, LP; CANYON CAPITAL
ADVISORS LLC; FIRST BALLANTYNE LLC; MOORE CAPITAL
MANAGEMENT, LP; PUERTO RICO FISCAL AGENCY AND FINANCIAL
ADVISORY AUTHORITY; HON. PEDRO R. PIERLUISI URRUTIA; UNITED
STATES, on behalf of the Internal Revenue Service; ASOCIACION
PUERTORRIQUENA DE LA JUDICATURA, INC.; FEDERACION DE
MAESTROS DE PUERTO RICO, INC.; GRUPO MAGISTERIAL
EDUCADORES(AS) POR LA DEMOCRACIA, UNIDAD, CAMBIO,
MILITANCIA Y ORGANIZACION SINDICAL, INC.; UNION NACIONAL
DE EDUCADORES Y TRABAJADORES DE LA EDUCACION, INC.; MARIA
A. CLEMENTE ROSA; JOSE N. TIRADO GARCIA, as President of the United
Firefighters Union of Puerto Rico,

*Objectors-Appellees,*

VAQUERIA TRES MONJITAS, INC.; BLACKROCK FINANCIAL
MANAGEMENT, INC.; EMSO ASSET MANAGEMENT LIMITED; MASON
CAPITAL MANAGEMENT, LLC; SILVER POINT CAPITAL, L.P.; VR
ADVISORY SERVICES, LTD; AURELIUS CAPITAL MANAGEMENT, LP,
on behalf of its managed entities; GOLDENTREE ASSET MANAGEMENT LP,
on behalf of funds under management; WHITEBOX ADVISORS LLC, on behalf
of funds under management; MONARCH ALTERNATIVE CAPITAL LP, on
behalf of funds under management; TACONIC CAPITAL ADVISORS L.P., on
behalf of funds under management; ARISTEIA CAPITAL, LLC, on behalf of
funds under management; FARMSTEAD CAPITAL MANAGEMENT, LLC, on
behalf of funds under management; FOUNDATION CREDIT, on behalf of funds
under management; CANYON CAPITAL ADVISORS LLC, in its capacity as a
member of the QTCB Noteholder Group; DAVIDSON KEMPNER CAPITAL
MANAGEMENT LP, in its capacity as a member of the QTCB Noteholder
Group; SCULPTOR CAPITAL LP, in its capacity as a member of the QTCB

Noteholder Group; SCULPTOR CAPITAL LP, in its capacity as a member of the QTCB Noteholder Group; AMBAC ASSURANCE CORPORATION; ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY; CROWN MANAGED ACCOUNTS, for and on behalf of Crown/PW SP; LMA SPC, for and on behalf of Map 98 Segregated Portfolio; MASON CAPITAL MASTER FUND LP; OAKTREE-FORREST MULTI-STRATEGY, LLC (SERIES B); OAKTREE OPPORTUNITIES FUND IX, L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE HUNTINGTON INVESTMENT FUND II, L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OAKTREE VALUE OPPORTUNITIES FUND HOLDINGS, L.P.; OCEANA MASTER FUND LTD.; OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.; PWCM MASTER FUND LTD.; REDWOOD MASTER FUND, LTD.; BANK OF NEW YORK MELLON; OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; OFFICIAL COMMITTEE OF RETIRED EMPLOYEES; NATIONAL PUBLIC FINANCE GUARANTEE CORP.; FINANCIAL GUARANTY INSURANCE COMPANY; AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB Debt Recovery Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as Collateral Monitor for the GDB Debt Recovery Authority.; ATLANTIC MEDICAL CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY HEALTH CARE SERVICES, INC.; CORP. DE SERV. MEDICOS PRIMARIOS Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC.; CENTRO DE SALUD DE LARES, INC.; CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANER, INC.; GNMA & US GOVERNMENT TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; MORTGAGE-BACKED & US GOVERNMENT SECURITIES FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; PUERTO RICO RESIDENTS BOND FUND I, f/k/a Puerto Rico Investors Bond Fund I; PUERTO RICO RESIDENTS TAX-FREE FUND, INC., f/k/a Puerto Rico Investors Tax-Free Fund, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND II, INC., f/k/a Puerto Rico Investors Tax-Free Fund II, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND III, INC., f/k/a Puerto Rico Investors Tax-Free Fund III, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND IV, INC., f/k/a Puerto Rico Investors Tax-Free Fund IV, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND V, INC., f/k/a Puerto Rico Investors Tax-Free Fund V, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND VI, INC., f/k/a Puerto Rico Investors Tax-Free Fund VI, Inc.; TAX-FREE FIXED INCOME FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund, Inc.; TAX-FREE FIXED INCOME FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund II, Inc.; TAX-FREE FIXED INCOME FUND III FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund III, Inc.; TAX-FREE FIXED INCOME FUND IV FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund IV, Inc.; TAX-FREE FIXED INCOME FUND V FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund V, Inc.; TAX-FREE FIXED INCOME FUND VI FOR PUERTO RICO RESIDENTS, INC., f/k/a

Puerto Rico Fixed Income Fund V, Inc.; TAX FREE FUND FOR PUERTO
RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund, Inc.; TAX FREE
FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico
Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond
Fund, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND II FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund
II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO TARGET MATURITY FUND
FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio
Target Maturity Fund, Inc.; TAX FREE TARGET MATURITY FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Target Maturity
Fund, Inc.; UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND;
SERVICIOS INTEGRALES EN LA MONTANA (SIM),

*Creditors-Appellees,*

UNITED STATES,

*Respondent-Appellee.*

## CORPORATE DISCLOSURE STATEMENT

Appellee / Cross-Appellant the Financial Oversight and Management Board

for Puerto Rico, as Title III representative of the Commonwealth of Puerto Rico,

the Employees Retirement System of the Government of the Commonwealth of

Puerto Rico, and the Puerto Rico Public Buildings Authority, is not required to file

a Corporate Disclosure Statement pursuant to Federal Rule of Appellate

Procedure 26.1 because it is not a non-governmental corporate party.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF JURISDICTION ........................................................ 5

QUESTIONS PRESENTED .................................................................. 5

STATEMENT OF THE CASE ............................................................... 6

    A.    PROMESA ............................................................................ 6

    B.    The Plan of Adjustment ....................................................... 7

    C.    The Confirmation Order ....................................................... 7

        1.    The Suiza Objection ................................................... 8

        2.    The Cooperativas' Objection ..................................... 11

            a.    The Cooperativas' Adversary Proceeding ..................... 11

            b.    The Cooperativas' Confirmation Objection .................. 13

        3.    The Individual Appellants .......................................... 14

        4.    The Takings Claimants' Objection ............................ 16

    D.    The Present Consolidated Appeals ....................................... 17

SUMMARY OF ARGUMENT ............................................................. 18

STANDARD OF REVIEW ................................................................... 27

ARGUMENT ....................................................................................... 28

I.    THE TITLE III COURT ERRED IN HOLDING PREPETITION,
    UNSECURED JUST-COMPENSATION CLAIMS ARE NON-
    DISCHARGEABLE AND MUST BE PAID IN FULL .............. 28

II.    THE COOPERATIVAS' ARGUMENTS AGAINST
    CONFIRMATION ARE MERITLESS ....................................... 41

    A.    The Cooperativas' "Takings" Claims Will Receive Proper
    Treatment .......................................................................... 42

    B.    The Plan Was Not Required to Except the Cooperativas' Fraud
    Claims from Discharge ........................................................ 44

        1.    11 U.S.C. § 105(a) Cannot Be Used to Create an
        Exception to Discharge ............................................. 46

2.     No Exception to Discharge Exists Under 11 U.S.C. § 944(c)(1) ......................................................... 50

3.     The Cooperativas' Discussion of the Merits of Their Fraud Claims Is Irrelevant .......................................... 51

C.     The Cooperativas' Remaining Arguments Fail ................................. 51

III.    SUIZA'S OBJECTIONS TO THE PLAN WERE PROPERLY OVERRULED .......................................................... 53

A.     Suiza Does Not Have a Takings Claim ................................ 54

B.     Suiza's Procedural Challenge Fails .................................... 59

C.     The Plan Does Not Discriminate Against Suiza ................................. 62

D.     The Plan Does Not Contain Non-Consensual Third-Party Releases ............................................................. 63

IV.    THE COURT LACKS JURISDICTION OVER THE INDIVIDUAL APPELLANTS' APPEAL ........................................... 64

CONCLUSION ............................................................. 66

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Bessemer City,*
470 U.S. 564 (1985)....................................................................................54

*Archer v. Warner,*
538 U.S. 314 (2003)....................................................................................57

*Begier v. IRS,*
496 U.S. 53 (1990)......................................................................................33

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971)....................................................................................38

*Blanchette v. Conn. Gen. Ins. Corps.,*
419 U.S. 102 (1974)....................................................................................29

*Block v. North Dakota,*
461 U.S. 273 (1983)....................................................................................35

*Butz v. Economou,*
438 U.S. 478 (1978)....................................................................................39

*Caplin & Drysdale v. United States,*
491 U.S. 617 (1989)....................................................................................38

*Carlson v. Green,*
446 U.S. 14 (1980)......................................................................................38

*Chaparro-Febus v. Int'l Longshoremen Ass'n, Loc. 1575,*
983 F.2d 325 (1st Cir. 1992)........................................................................56

*Chevron USA Inc. v. Sch. Bd. Vermilion Parish,*
294 F.3d 716 (5th Cir. 2002) .......................................................................64

*Church of Scientology of Cal. v. United States,*
506 U.S. 9 (1992)........................................................................................65

iv

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981)..................................................................49

*Davis v. Passman*,
   442 U.S. 228 (1979)..................................................................38

*Dopp v. HTP Corp.*,
   947 F.2d 506 (1st Cir. 1991).....................................................55

*Gilbert v. City of Cambridge*,
   932 F.2d 51 (1st Cir. 1991).......................................................35

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)..................................................................39

*Hanover Nat'l Bank v. Moyses*,
   186 U.S. 181 (1902)..................................................................29

*In re Ahlers*,
   794 F.2d 388 (8th Cir. 1986) ....................................................34

*In re Andersen*,
   215 B.R. 792 (B.A.P. 10th Cir. 1998) .......................................61

*In re Automatic Plating of Bridgeport*,
   202 B.R. 540 (Bankr. D. Conn. 1996).......................................47

*In re Big3D, Inc.*,
   438 B.R. 214 (B.A.P. 9th Cir. 2010) .........................................34

*In re Briggs Transp. Co.*,
   780 F.2d 1339 (8th Cir. 1985) ..................................................32

*In re City of San Bernadino*,
   566 B.R. 46 (Bankr. C.D. Cal. 2017) ........................................48

*In re City of Stockton*,
   909 F.3d 1256 (9th Cir. 2018) ............................................passim

*In re Crocker*,
   362 B.R. 49 (B.A.P. 1st Cir. 2007).............................28, 46, 48

*In re Dietrich*,
    490 F. App'x 802 (6th Cir. 2012) ...................................................42

*In re Dorsey*,
    870 F.3d 359 (5th Cir. 2017) .......................................................42

*In re Hines*,
    193 F. App'x 391 (6th Cir. 2006) ...................................................61

*In re Jacobson*,
    378 B.R. 805 (Bankr. E.D. Tex. 2008) ...........................................48

*In re Jones*,
    129 B.R. 1003 (Bankr. N.D. Ill. 1991) ...........................................47

*In re Ludlow Hosp. Soc'y*,
    124 F.3d 22 (1st Cir. 1997)..........................................................46

*In re Mansaray-Ruffin*,
    530 F.3d 230 (3d Cir. 2008) ........................................................52

*In re Nichols*,
    440 F.3d 850 (6th Cir. 2006) .......................................................31

*In re Perez*,
    411 B.R. 386 (D. Colo. 2009).................................................25, 47

*In re Plaza de Diego Shopping Ctr., Inc.*,
    911 F.2d 820 (1st Cir. 1990).......................................................47

*In re Purdue Pharma L.P.*,
    635 B.R. 26 (S.D.N.Y. 2021) .......................................................48

*In re Quanta Resources Corp.*,
    739 F.2d 912 (3d Cir. 1984) ........................................................32

*In re SPM Mfg. Corp.*,
    984 F.2d 1305 (1st Cir. 1993).................................................25, 47

*In re SW Bos. Hotel Venture, LLC*,
    748 F.3d 393 (1st Cir. 2014)........................................................27

*In re Thompson*,
965 F.2d 1136 (1st Cir. 1992)................................................................65

*In re Thrall*,
196 B.R. 959 (Bankr. D. Colo. 1990)...................................................47

*In re Treco*,
240 F.3d 148 (2d Cir. 2001) ...............................................................32

*In re Tully*,
818 F.2d 106 (1st Cir. 1987)................................................................57

*In re Valenti*,
310 B.R. 138 (B.A.P. 9th Cir. 2004) ...................................................47

*In re Watson*,
403 F.3d 1 (1st Cir. 2005)....................................................................66

*Knick v. Twp. of Scott*,
139 S. Ct. 2162 (2019).........................................................28, 38, 58

*Kuehner v. Irving Trust Co.*,
299 U.S. 445 (1937)........................................................................30, 31

*Lancaster Cmty. Hosp. Dist. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) ..............................................................50

*Langton v. Hogan*,
71 F.3d 930 (1st Cir. 1995)..................................................................56

*Liu v. SEC*,
140 S. Ct. 1936 (2020).........................................................................49

*Louisville Joint Stock Land Bank v. Radford*,
295 U.S. 555 (1935)......................................................................passim

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992)...........................................................................40

*Lynch v. United States*,
292 U.S. 571 (1934).............................................................................33

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986) ............................................................... 39

*Nw. Bank Worthington v. Ahlers*,
    485 U.S. 197 (1988) ........................................................... 25, 47

*P.R. Dairy Farmers Ass'n v. Pagan*,
    748 F.3d 13 (1st Cir. 2014) ............................................. 8, 9, 54

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978) ........................................................... 43, 59

*Poinsett Lumber Mfg. v. Drainage Dist. No. 7*,
    119 F.2d 270 (8th Cir. 1941) ............................................ 35, 36

*Reading v. Brown*,
    391 U.S. 471 (1968) ............................................................... 31

*Rivera-Rosario v. U.S. Dep't of Agric.*,
    202 F.3d 35 (1st Cir. 2000) .................................................... 55

*Root v. Railway Co.*,
    105 U.S. 189 (1882) ............................................................... 49

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ............................................................... 40

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ............................................................... 35

*Soriano v. United States*,
    352 U.S. 270 (1957) ............................................................... 35

*Stellwagen v. Clum*,
    245 U.S. 605 (1918) ............................................................... 29

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at
    Lakeridge, LLC*,
    138 S. Ct. 960 (2018) ............................................................. 28

*Union de Trabajadores de la Industria Eléctrica y Riego v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
7 F.4th 31 (1st Cir. 2021).................................................................24, 45

*United States v. Dow*,
357 U.S. 17 (1958)...............................................................................40

*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982)...............................................................21, 22, 29

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990)...................................................................51

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010).............................................................................62

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981).............................................................................56

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
587 F.3d 464 (1st Cir. 2009)......................................................passim

*Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*,
293 B.R. 489 (B.A.P. 9th Cir. 2003) .................................................61

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985).............................................................................37

*Wright v. Union Cent. Life Ins. Co.*,
304 U.S. 502 (1938).............................................................................32

**STATUTES AND RULES**

32 L.P.R.A. § 2907 ...............................................................................16

11 U.S.C. § 105.............................................................................passim

11 U.S.C. § 502......................................................................59, 61

11 U.S.C. § 503......................................................................19, 29

11 U.S.C. § 506 ........................................................................................33

11 U.S.C. § 507 ..........................................................................19, 28, 45

11 U.S.C. § 510 .................................................................................44, 45

11 U.S.C. § 523 ..................................................................................passim

11 U.S.C. § 544 ........................................................................................33

11 U.S.C. § 545 ........................................................................................33

11 U.S.C. § 547 ........................................................................................32

11 U.S.C. § 548 ........................................................................................33

11 U.S.C. § 944 .................................................................................23, 50

11 U.S.C. § 1121 ......................................................................................50

11 U.S.C. § 1129 ......................................................................................45

11 U.S.C. § 1141 ...............................................................................23, 50

11 U.S.C. § 1324 ......................................................................................47

11 U.S.C. § 1327 ......................................................................................47

11 U.S.C. § 1330 ......................................................................................47

28 U.S.C. § 1291 ........................................................................................5

42 U.S.C. § 1983 ................................................................................37, 39

48 U.S.C. § 2121 ........................................................................................6

48 U.S.C. § 2144 ......................................................................................15

48 U.S.C. § 2161 ..................................................................................passim

48 U.S.C. § 2166 ........................................................................................5

48 U.S.C. § 2172 ......................................................................................50

48 U.S.C. § 2174 ........................................................................................6

48 U.S.C. § 2194 .................................................................................. 6

Fed. R. Civ. P. 9 .................................................................................. 11

Fed. R. Civ. P. 12 ................................................................................ 12

**OTHER AUTHORITIES**

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 2947 (3d ed. 2021) ....................................................... 56

## PRELIMINARY STATEMENT

Each of these four appeals attacks a different aspect of the Title III court's order (the "Confirmation Order") confirming the comprehensive plan of adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA") (collectively, the "Debtors"). Although, as the Title III court found, the plan is "a crucial step in the effort to achieve the economic recovery of the Commonwealth of Puerto Rico and its instrumentalities," FOMB-Add14,[1] this consolidated appeal, no matter its outcome, will not undo the plan's primary debt restructurings and benefits to the Commonwealth.

The Financial Oversight and Management Board for Puerto Rico (the "Board") brings one of the appeals because the Confirmation Order requires the Debtors to pay too much. Contrary to the plain language of Title III and the holdings of other circuits, the Confirmation Order requires the Debtors to pay in full up to $400 million of prepetition, unsecured Fifth Amendment takings claims on the ground payment of just compensation is a non-dischargeable constitutional

---

[1] Citations to "FOMB-Add" are to the Addendum to this brief, and "FOMB-App" refers to the Appendix filed in Appeal No. 22-1119. "Suiza-App" refers to the Appendix filed in Appeal No. 22-1092, "Coop-App" refers to the Appendix filed in Appeal No. 22-1079, and "Individual-Add" refers to the Addendum filed in Appeal No. 22-1120.

requirement.  As other circuits have ruled, however, the Constitution grants
Congress the bankruptcy power, which makes prepetition, unsecured monetary
claims under the Constitution subject to discharge and restructuring in bankruptcy,
just like any other unsecured claim.  If the Board is correct on this point, the two
appeals seeking to have claims treated as Fifth Amendment takings claims would
be moot because the claims' treatment would not change regardless of whether
they are prepetition takings claims.  All parties agree their claims are prepetition,
unsecured claims.[2]

Suiza Dairy Corp. ("Suiza") settled its takings (and other) claims before the
Commonwealth's Title III case commenced but now contends its settlement claim
for a series of money payments should be treated as a takings claim.  No final
judgment declared that a taking occurred, however, and, by settling, Suiza waived
its right to a final judgment and to prosecute any appeals.  In the settlement
agreement, Suiza agreed to dismiss with prejudice any claims it had under the
Takings Clause and various other constitutional provisions in exchange for
contractual promises, including for certain payments.  Suiza's contention that the
Commonwealth failed to make those promised payments is a contract claim, not a
takings claim.

---

[2] The fourth appeal is unrelated to the Fifth Amendment and is already moot.

The appeal brought by a group of credit unions (the "Cooperativas")
contends the Title III court erred by relying on its prior ruling to determine the
Cooperativas had no non-dischargeable fraud or takings claim against the
Commonwealth.  The Cooperativas' underlying claim is the Commonwealth used
its influence to compel them to purchase governmental bonds, the bonds defaulted,
and therefore a taking and fraud occurred.  The Title III court previously dismissed
the Cooperativas' claims, holding they failed to state viable causes of action.  The
Cooperativas are separately appealing that order in Appeal No. 22-1048.

In their appeal here, the Cooperativas spend most of their brief arguing they
should prevail in their other appeal.  The question in this appeal of the
Confirmation Order, however, is simply whether the Cooperativas were entitled to
re-litigate their takings and fraud claims in the context of confirmation.  Clearly,
they were not.

As a practical matter, the Board agrees that, if the Cooperativas have a valid
takings claim, it should be treated the same way this Court determines other
takings claims should be treated.  That is precisely the relief the Cooperativas have
requested, so there is no dispute to resolve as to the Cooperativas' takings claim in
this appeal.

As to the Cooperativas' fraud claims, the merits of those claims make no
difference in this appeal because valid fraud claims are dischargeable in Title III

Case: 22-1119   Document: 724541   Page: 22   Date Filed: 06/12/23   Entry ID: 6487128
Case: 22-1119   Document: 724542   Page: 22   Date Filed: 06/12/23   Entry ID: 6487128

Exhibit 5 - FOMB Brief in 22-1119   Page 22 of 87

cases.  The Cooperativas argue fraud claims are special and should be excepted

from discharge, but that is not the law.  In enacting the Puerto Rico Oversight,

Management, and Economic Stability Act ("PROMESA"), Congress did not

incorporate § 523(a)(2) of the Bankruptcy Code, which excepts fraud claims from

discharge in cases of human persons, not entities.  The Cooperativas argue the Title

III court should have exercised its power under 11 U.S.C. § 105(a) to legislate its

own exception to discharge for fraud claims.  But § 105(a) expressly provides

courts can use it to carry out the bankruptcy statute, not override it.  Thus, even if

the Cooperativas have allowable fraud claims, the plan of adjustment properly

treats them as dischargeable.

The fourth appeal is brought by individuals appealing a single issue:  an

alleged holding by the Title III court that "Act 80-2020, Act 81-2020, and Act 82-

2020 are preempted by PROMESA."  Individual-Add254.  The Title III court

never made any such holding.  Instead, it ruled Acts 80–82 are no longer on the

books, and therefore any question about whether those Acts are preempted by

PROMESA "has been mooted."  FOMB-Add97.  This Court thus lacks jurisdiction

over the fourth appeal because there is no ruling it can issue to remedy something

that did not occur.

The Board therefore requests the Court to:  (a) rule that unsecured,

prepetition takings claims are dischargeable and not entitled to full payment;

(b)(i) dismiss the Cooperativas' appeal as moot as to their asserted takings claims because the Board has agreed to treat those claims the same as other takings claims if they are not dischargeable and if the Cooperativas ultimately prevail on those claims, and (ii) affirm the ruling that the Cooperativas' fraud claims are dischargeable; (c) dismiss Suiza's appeal as moot if the Court sustains the Board's position on prepetition takings claims, or otherwise affirm the ruling that Suiza does not hold a takings claim, and; (d) dismiss the individual appellants' appeal for lack of appellate jurisdiction.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Appeal No. 22-1119 pursuant to 28 U.S.C. § 1291 and 48 U.S.C. § 2166(e)(2).  The Court lacks jurisdiction over Appeal No. 22-1120 for the reasons stated below.

## QUESTIONS PRESENTED

1)   Did the Title III court err by holding that prepetition, unsecured takings claims arising under the Fifth Amendment are immune from impairment and discharge?

2)   If the Board's position on Fifth Amendment takings claims is not sustained, did the Title III court commit clear error in finding Suiza's settlement agreement does not provide Suiza a Fifth Amendment takings claim?

3)    Did the Title III court err in holding that the Cooperativas' fraud-based claims are dischargeable and in refusing to allow the Cooperativas to re-litigate their takings claim even if this Court does not sustain the Board's position on Fifth Amendment takings claims?

4)    Should the appeal brought by the individual appellants be dismissed because there is no appellate remedy for a trial court order that does not exist?

## STATEMENT OF THE CASE

### A.    PROMESA

Puerto Rico was subject to what Congress found to be a "fiscal emergency" resulting from a "combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing . . . ." 48 U.S.C. § 2194(m)(1).  To address that emergency, Congress enacted PROMESA, which established the Board and charged it with helping the Commonwealth "achieve fiscal responsibility and access to the capital markets." *Id.* § 2121(a).  The Board commenced the first debt-restructuring case under Title III of PROMESA on behalf of the Commonwealth in May 2017.

The Title III court "shall" confirm a plan of adjustment proposed by the Board if the plan meets the criteria enumerated in PROMESA. *Id.* § 2174(b).

6

## B. The Plan of Adjustment

After nearly five years of extensive litigation, mediation, and negotiations stretched out by decimating hurricanes, earthquakes, and COVID-19, on November 3, 2021, the Board filed an eighth amended plan of adjustment for the Commonwealth, ERS, and PBA (the "Plan"). Coop-App346. Although the Plan received widespread support from creditors and other stakeholders, Suiza, the Cooperativas, and certain claimholders with claims for just compensation under the Takings Clause objected to the Plan's treatment of their claims.

## C. The Confirmation Order

After reviewing the record, the Title III court issued an order on December 14, 2021, explaining why it believed prepetition Fifth Amendment takings claims are not subject to discharge or impairment. FOMB-App225–28. The Title III court directed the Board either to show cause why the court should not deny confirmation or to revise the Plan to provide for full payment of such claims. FOMB-App232–33. By response dated December 21, 2021, the Board showed cause, but also declared it would, subject to its appellate rights, modify the Plan to provide for full payment of takings claims if the Title III court adhered to its prior opinion. FOMB-App238–73. By order dated January 10, 2022, the Title III court directed the Board, subject to preservation of its appellate rights, to

provide for full payment of takings claims, which the Board did.  FOMB-App325–28.

On January 18, 2022, the Title III court confirmed the Plan.  FOMB-Add160–252; *see also* FOMB-Add1–159 (Findings of Fact and Conclusions of Law in support of the Confirmation Order).  While the Title III court required that Fifth Amendment takings claims neither be impaired nor discharged, it overruled Suiza's and the Cooperativas' confirmation objections contending they had Fifth Amendment takings claims or other bases to avoid discharge.

### 1.      *The Suiza Objection*

Suiza is one of three milk processors in Puerto Rico.  *See P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 16 (1st Cir. 2014).  It purchases "raw milk" from dairy farmers and then processes and sells it to consumers.  *Id.*

Suiza filed an unsecured claim for $48,485,151.22 in the Commonwealth's Title III case for payments due under a prepetition settlement with Puerto Rico's Milk Industry Regulation Administration ("ORIL" by its Spanish acronym).  *See* Suiza-App1–60 (proof of claim including exhibits); *see also Pagan*, 748 F.3d at 17–18.  In 2004, Suiza sued ORIL's administrator in federal court, alleging certain ORIL regulations governing milk prices violated numerous constitutional provisions, including the Takings Clause.  *See Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 471–72 (1st Cir. 2009).

8

In 2007, the district court granted Suiza's motion for a preliminary injunction to preclude ORIL from enforcing the regulations. *Irizarry*, 587 F.3d at 472; Suiza-App2836–930. The district court found Suiza demonstrated a likelihood of success on its claims that the regulations violated the Takings, Due Process, Equal Protection, and dormant Commerce Clauses, and ordered ORIL to pay Suiza a temporary regulatory accrual. *Irizarry*, 587 F.3d at 472. This Court affirmed the injunction, *id.* at 487–88, and held the regulatory accrual was not just compensation but rather an equitable remedy, *id.* at 479–80.

On October 29, 2013, the parties agreed to settle the case. *See Pagan*, 748 F.3d at 18; *see also* Suiza-App5–12 (the "Settlement Agreement"). Under the Settlement Agreement, Suiza agreed to dismiss its claims "with prejudice," Suiza-App6, and ORIL pledged to make certain payments (the "regulatory accrual") "to allow [Suiza] to recoup a fair rate of return on [its] products," *Pagan*, 748 F.3d at 23. The Settlement Agreement stated ORIL did not concede the merits of Suiza's claims. Suiza-App5–6. The court incorporated the Settlement Agreement into a final judgment and closed the case, retaining jurisdiction to enforce the agreement. Suiza-App3103–05.

Suiza's proof of claim in the Title III case does not check the box for secured claim or priority, and it describes the basis of the claim as a "regulatory

accrual claim for . . . violations involving Takings Clause" and then references the

Settlement Agreement.  Suiza-App3.

The Plan classifies Suiza's claim as part of Class 53, which includes a

similar claim by another milk processor under the Settlement Agreement.  FOMB-

Add54–55.  Claims in Class 53 receive a 50% recovery.  *Id.*  That is more

favorable than the treatment provided to the Commonwealth's other general

unsecured claimholders because "the dairy industry is one of the Commonwealth's

largest agricultural industries and employs a significant number of Puerto Rico's

residents."  FOMB-App208; Suiza-App3385.

Suiza nevertheless objected to confirmation of the Plan, arguing it is entitled

to a full recovery because, in its view, its claim is for just compensation under the

Takings Clause and is protected from discharge by the Fifth Amendment.  Suiza-

App352–83.  The Title III court rejected Suiza's argument that it holds a non-

dischargeable takings claim, finding Suiza's claim instead arises under the

Settlement Agreement.  FOMB-Add114–17.  As the court explained, to the extent

Suiza previously asserted a takings claim, it had agreed to dismiss that claim with

prejudice.  FOMB-Add115–16.  "Accordingly, it follows that Suiza merely has a

contract-based claim for payment pursuant to the [Settlement Agreement]," which

is subject to impairment and discharge.  FOMB-Add116.

### 2.   *The Cooperativas' Objection*

The Cooperativas are a group of state-chartered credit unions owning government bonds.  Coop-App1331.  They filed proofs of claim in the Commonwealth's Title III case based on alleged fraud and takings by the Commonwealth regarding their purchase and ownership of such bonds.  *See* FOMB-App86–171.  The allegations underlying those claims were also the subject of an adversary proceeding dismissed with prejudice before confirmation.

### a.   <u>The Cooperativas' Adversary Proceeding</u>

In March 2018, the Cooperativas commenced an adversary proceeding claiming the Commonwealth, its instrumentalities, and other governmental parties had fraudulently induced them to purchase bonds despite knowing the bonds would decline in value as a result of the Commonwealth's insolvency.  *See* Coop-App1331–33.  Their complaint alleged seven causes of action.  Counts One and Two sought declarations that the Cooperativas' claims were excepted from discharge because they alleged dishonest conduct.  Coop-App1391–98.  Counts Three through Five alleged tort, contract, and territorial-law RICO claims.  Coop-App1398–1410.  Count Six alleged that the fraudulent inducement amounted to an unconstitutional taking without just compensation.  Coop-App1410–13.  Count Seven alleged unjust enrichment.  Coop-App1413.

After giving the Cooperativas several opportunities to amend, the Title III court in December 2021 dismissed their complaint in its entirety under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  FOMB-App274–317.  The court held that the first five counts failed as a matter of law because each alleged fraud but did not plead fraudulent conduct with the requisite particularity.  FOMB-App295–96.  The court concluded the Cooperativas had not sufficiently alleged the purported misrepresentations were knowingly false when made and had failed to identify the speakers or the Cooperativas' representatives who had relied on them.  FOMB-App294, 297–98.

The court further held the sixth count failed to allege a viable claim under the Takings Clause.  FOMB-App312–15.  The alleged appropriation of the Cooperativas' money through the bond purchases did not constitute a "taking" because the Cooperativas failed to allege any facts showing they had been *compelled* to buy those bonds.  *Id.*  The court also held that, even if the Cooperativas' fraud-based claims had been viable, they would be dischargeable because PROMESA contains no provision excepting fraud claims from discharge.  *See* FOMB-App299–304.

The Cooperativas appealed the order dismissing their adversary complaint, and that appeal is pending in this Court as Appeal No. 1048.  Coop-App1496.  The

Cooperativas filed their opening brief in that appeal on March 23.  *See* Doc. No. 00117856391.

### b.    The Cooperativas' Confirmation Objection

Before the dismissal of their adversary proceeding, the Cooperativas objected to confirmation of the Plan, arguing the fraud and takings claims in their then-pending adversary proceeding should be excepted from discharge.  *See* Coop-App319–26; Coop-App329–33.  They contended their takings claims could not be impaired or discharged because constitutional claims are supposedly not subject to Congress's bankruptcy powers.  Coop-App319–26.  They further argued all their claims should be excepted from discharge because they sound in fraud.  Coop-App329–33.

The Title III court overruled the Cooperativas' objections for the same reasons stated in its decision dismissing their adversary proceeding.  *See* FOMB-Add104.  As the court had previously explained, the Cooperativas failed to state a claim for fraud, and, even if they had, no statutory or other basis existed for excepting fraud claims from discharge.  *See* FOMB-App296–304.  The court further held that, because the Cooperativas had failed to adequately allege a taking, the Fifth Amendment did not protect their claims from impairment and discharge.  FOMB-Add104.

13

### 3.    *The Individual Appellants*

Appellants Raul Martinez-Perez, Luis F. Pabon Bosques, Carlos A. Rojas Rosario, Elvin A. Rosado Morales, and Rafael Torres Ramos (the "Individual Appellants") are former Commonwealth employees.  None of them objected to confirmation of the Plan below.

In their notice of appeal, they state their appeal is taken only "from the portions" of the Confirmation Order "holding that Act 80-2020, Act 81-2020, and Act 82-2020 are preempted by PROMESA."  Individual-Add254.  The Title III court, however, did not make any ruling concerning the preemption of Acts 80–82 because Acts 80–82 had already been invalidated.

Acts 80–82 permitted certain government employees to retire early and provided enhanced retirement benefits.  In November 2020, the Commonwealth Government agreed with the Board not to implement the Acts until an agreement was reached concerning their financial viability.  *See* FOMB-App213–15.  No such agreement was reached.  Nevertheless, in November 2021, the Government enacted Joint Resolution 33 ("JR 33"), which required the Commonwealth to partially implement Act 80, thereby breaching the Government's promise.

In response to JR 33, the Board commenced an adversary proceeding seeking to nullify and enjoin enforcement of the three Acts and JR 33 on several grounds, including that they were significantly inconsistent with the

Commonwealth's certified fiscal plan. *See* FOMB-App234–37; *see also* 48 U.S.C. § 2144(a). On December 27, 2021, the Board, the Government, and the Office of Management and Budget executed a stipulation (the "Stipulation") to resolve the adversary proceeding. *See* FOMB-App318–24. The parties agreed that Acts 80, 81, and 82 and JR 33 were "invalidate[d] . . . pursuant to PROMESA, including as significantly inconsistent with the [relevant] certified fiscal plan," except as otherwise provided in the Stipulation. FOMB-App321. The Title III court so-ordered the Stipulation and entered final judgment. FOMB-App324. There was no appeal.

Before the resolution of the adversary proceeding challenging Acts 80–82, the Board had requested a ruling in its proposed confirmation order that PROMESA preempts Acts 80–82. FOMB-Add96–97. In the Confirmation Order, the Title III court declined to address that question. Instead, it noted that any question concerning the preemption of Acts 80–82 "has been mooted by the Court's approval of the [Stipulation] . . . [which] resolved litigation concerning the validity of [the] Acts" and invalidated the Acts on the ground they were "significantly inconsistent with the relevant certified fiscal plan." FOMB-Add97. The Individual Appellants thus appeal a ruling that never issued.

### 4.      *The Takings Claimants' Objection*

Several claimholders filed proofs of claim in the Commonwealth's Title III

case seeking just compensation for alleged prepetition takings of their private

property.  Those claims arose either from eminent-domain proceedings under

Puerto Rico's "quick take" statute, 32 L.P.R.A. § 2907, *e.g.*, FOMB-App62–86, or

from inverse-condemnation proceedings, *e.g.*, FOMB-App1–62.  Eminent-domain

claims are partially secured by monies held on deposit with the Puerto Rico Court

of First Instance pursuant to 32 L.P.R.A. § 2907, although some eminent-domain

claimants asserted unsecured claims for compensation in excess of the deposited

funds.

To the extent eminent-domain claims are allowed, the plan filed by the

Board in November 2021 would have provided claimholders with:  (*i*) as to the

secured portion of their claims, full recovery of the funds held on deposit for their

benefit with the Court of First Instance and (*ii*) as to the unsecured portion, a pro-

rata share of the recovery allocable to general unsecured claimholders.  *See* Coop-

App128.  That plan would have treated inverse-condemnation claims as general

unsecured claims.  Coop-App48–49.

Certain claimholders objected to the plan's treatment of eminent-domain and

inverse-condemnation claims, arguing that the Fifth Amendment prohibits the

impairment or discharge of any claim for just compensation arising under the

16

Takings Clause.  The Board responded by citing precedent holding prepetition, unsecured claims under the Takings Clause and other constitutional provisions are subject to impairment and discharge, like any other unsecured claim.  FOMB-App190–205.

As discussed, the Title III court held allowed eminent-domain and inverse-condemnation claims must be paid in full.  FOMB-Add112.  The court concluded the Takings Clause creates an "irreducible entitlement to just compensation" that cannot be discharged or impaired in a bankruptcy case.  *See* FOMB-Add106.  The court noted the Board "preserved for appeal" its argument that unsecured claims for just compensation can be impaired and discharged.  FOMB-Add113.

### D.    The Present Consolidated Appeals

Suiza, the Cooperativas, and the Individual Appellants appealed from the Confirmation Order.  As noted above, the Notice of Appeal filed by the Individual Appellants states their appeal is taken only "from the portions" of the Confirmation Order "holding that Act 80-2020, Act 81-2020, and Act 82-2020 are preempted by PROMESA," Individual-Add254, which is a holding the Title III court did not make.

The Cooperativas moved the Title III court to stay the Confirmation Order pending appeal.  Coop-App1121–37.  The Title III court denied that motion,

finding the Cooperativas were unlikely to succeed in their appeal.  Coop-App1291–1321.

The Board appealed the Title III court's holding that the Fifth Amendment precludes the Plan from impairing or discharging prepetition, unsecured claims for just compensation under the Takings Clause.  FOMB-Add253–72.  This Court consolidated the Board's appeal with those of Suiza, the Cooperativas, and the Individual Appellants and ordered expedited briefing.  Doc. 00117849999.

## SUMMARY OF ARGUMENT

**I.**  The Fifth Amendment takings claims here are conceded to be unsecured prepetition takings claims.  Before the Title III cases commenced, the Debtors took property either by direct condemnation or by regulation (inverse condemnation).  For the direct condemnations, the Plan provides the former property owners with all the moneys the Commonwealth set aside for them.  The only remaining claims are by former property owners for additional compensation and by current property owners for compensation for the regulations that allegedly diminished the value of their properties.  No one contends there is any collateral or other property interest held by any of the claimants for the remaining claims.

The Title III court ruled the unsecured, prepetition, just-compensation claims for Fifth Amendment takings are non-dischargeable and must be paid in full.  FOMB-Add106–13.  It supported its ruling with two authorities:  (*i*) Supreme

18

Court authority holding the bankruptcy power is subject to the Fifth Amendment
and (*ii*) the Fifth Amendment's requirement of just compensation for takings.

The court's fundamental error was applying Supreme Court precedent out of
context to prepetition, unsecured claims.  The precedent only governed required
Fifth Amendment treatment of secured claims or other property interests existing
during bankruptcy.  In each instance in which the Supreme Court observed the
bankruptcy power is subject to the Fifth Amendment, it was referring to how a
litigant's *postpetition* property interest must be treated during the bankruptcy.  In
no instance did the Supreme Court consider, discuss, or opine the bankruptcy
estate must compensate a litigant for a *prepetition*, unsecured claim for the debtor's
having diminished or taken the claimant's collateral or other property interest
before bankruptcy.

The Title III court's decision is contrary to PROMESA, logic, precedent,
and bankruptcy practice for over two hundred years.

Just as it is undisputed that the takings claims at issue are unsecured, it is
undisputed that PROMESA grants no priority to such claims.  Section 301(a) of
PROMESA (48 U.S.C. § 2161(a)) incorporates Bankruptcy Code § 507(a)(2),
which grants priority only to administrative expenses allowed by Bankruptcy Code
§ 503(b) for necessary expenses preserving the debtor's property or estate.  The
takings claims are prepetition claims.  They provide nothing to preserve the

debtor's property.  The Title III court did not identify a priority in the statute for takings claims.  Rather, it determined the Fifth Amendment's just-compensation requirement is a constitutional imperative that transcends the statute.

Logic shows that determination is erroneous.  While the Fifth Amendment creates and imposes a just-compensation claim, Article I, Section 8, clause 4 of the Constitution grants Congress bankruptcy power to discharge claims.  There is no basis in the text or in logic to conclude one such provision trumps the other or that they even address the same issue.

The Title III court assumed one provision must control the other, and relied on Supreme Court rulings providing the bankruptcy power is subject to the Fifth Amendment.  The Supreme Court never made that ruling in connection with a prepetition, unsecured claim, however.  Instead, that ruling applied to the treatment of a litigant's postpetition lien value or other property interest, or the government's postpetition taking of a railroad's property for the public good.  There are many statutory and jurisprudential examples of federal bankruptcy law's taking property postpetition without triggering the just-compensation requirement and without rendering a claim non-dischargeable.  Those examples prove the obvious:  the Supreme Court's ruling that the bankruptcy power is subject to the Fifth Amendment can be applied only in the contexts in which the Supreme Court ruled,

not the instant context involving prepetition, unsecured claims and no postpetition taking, security interest, or other property interest.

Since the first bankruptcy statute in 1800 and the first constitutional municipal bankruptcy statute in 1937, no bankruptcy statute or decision has required payment in full for, or ruled non-dischargeable, a claim for a private or governmental debtor's prepetition consumption of collateral or other property interest.  In virtually all reorganizations under chapters 9 and 11 involving secured debt or other property interests, the private or governmental debtors consume some of their creditors' collateral before bankruptcy.  There simply is no such thing as a claim to payment in full for collateral consumed prepetition, and the consumption does not convert the creditor's claim into a non-dischargeable claim.  To the contrary, as shown below, the bankruptcy law has uniformly entitled secured claimholders only to protection of their property interests from the time they request it after a bankruptcy case commences, and entitles them only to payment of the value of their collateral as such value exists during or at the end of the bankruptcy case.

The two decisions the Title III court cited as holding the bankruptcy power is subject to the Fifth Amendment are great examples of how the Fifth Amendment only protects property interests in specific interest in bankruptcy.  *See United States v. Sec. Indus. Bank*, 459 U.S. 70 (1982); *Louisville Joint Stock Land Bank v.*

*Radford*, 295 U.S. 555, 589 (1935). In *Radford*, the issue was whether a mortgagee having a lien against the debtor's property during the bankruptcy case could be constitutionally deprived of various state-law rights of a mortgagee in specific property, such as the right to a foreclosure sale, receiver, and the like. In the sentence immediately following the sentence the Title III court cited that the bankruptcy power is subject to the Fifth Amendment, the Supreme Court ruled the debtor's personal obligation was dischargeable. *Radford*, 295 U.S. at 589. The Supreme Court then made crystal clear the Fifth Amendment protects only specific rights in property. *Id.* at 590. Here, the creditors holding prepetition Fifth Amendment takings claims have no rights in specific property. The property was taken prepetition. That is why they have only prepetition, unsecured claims. The only two circuits to determine the same issue this appeal presents have both held that such claims are dischargeable just as any other prepetition, unsecured claims.

In *Security Industrial Bank*, the issue was whether during the bankruptcy the debtor could avoid a creditor's lien against collateral constituting exempt property. 459 U.S. at 71–72. It had nothing to do with a prepetition, unsecured claim.

Manifestly, non-dischargeability and its consequence that a claim must be paid in full, hinder or prevent bankruptcy's fresh-start and rehabilitation policies. It is no surprise the Bankruptcy Code limits non-dischargeability almost exclusively to cases of individual (human) debtors, and only when they are guilty

22

of fraudulent conduct.  *See, e.g.*, 11 U.S.C. §§ 523, 944 (made applicable to Title III cases by 48 U.S.C. § 2161(a)), 1141.  This avoids the predicament of a school district, irrigation district, town, or city becoming insolvent due to inverse-condemnation claims for restricting the uses of property and then being unable to emerge from Bankruptcy Code chapter 9 or PROMESA Title III and having to close down.  To be sure, if a municipality intentionally and willy-nilly inflicts inverse or direct condemnation on property owners on the theory it will exploit bankruptcy to discharge its liability, the bankruptcy case may be dismissed for lack of good faith.  But bankruptcy cases filed for proper purposes could fail if prepetition, unsecured takings claims must be paid in full rather than paid in accordance with the debtor's means.

**II.**   The Cooperativas' appeal concerns whether the Title III court properly relied on its prior ruling dismissing the Cooperativas' complaint asserting takings and fraud claims to determine whether the Plan treated the Cooperativas' claims properly as dischargeable claims.  The Cooperativas nevertheless spend most of their brief arguing about a different issue—namely, whether they stated viable causes of action for fraud and takings in their adversary proceeding against the Commonwealth and others that the Title III court previously dismissed.  Coop. Br. 18–25, 31–37.  The Cooperativas will have the opportunity to argue about the viability of their takings and fraud causes of action in Appeal No. 22-1048, which

challenges the order dismissing their adversary proceeding.  The issues in this

appeal of the Confirmation Order are much narrower.

  The first issue is whether the Plan properly treats the Cooperativas' takings

claim.  On that point, there is no dispute between the parties.  The Board agrees

that if the Cooperativas can establish a valid Fifth Amendment takings claim, that

claim will receive the same treatment as eminent-domain and inverse-

condemnation takings claims.  That is precisely the relief the Cooperativas request

in this appeal.  In reality, the Cooperativas will not be able to establish their takings

claim, which has already been dismissed by the Title III court.  But if the

Cooperativas somehow prevail in Appeal No. 22-1048 and establish a taking on

remand, the Board agrees their takings claim would receive the same treatment as

other takings claims.

  The only issue in dispute concerns the Plan's discharge of the Cooperativas'

fraud claims.  The Cooperativas contend they have fraud claims and that those

claims are not dischargeable under PROMESA.  That is incorrect.  No provision of

PROMESA excepts fraud claims from discharge.  Section 523(a)(2) of the

Bankruptcy Code—which excepts fraud claims from discharge in individual

(human) bankruptcy cases—was not incorporated into PROMESA (*see* 48 U.S.C.

§ 2161(a)), a strong indication Congress did not intend for such an exception to

apply, *see Union de Trabajadores de la Industria Eléctrica y Riego v. Fin.*

*Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 7
F.4th 31, 38 (1st Cir. 2021).

 The Cooperativas argue the Title III court should have used its equitable
powers under § 105(a) of the Bankruptcy Code to except their fraud claims from
discharge.  Coop. Br. 16.  But a court's powers under § 105(a) are limited to
carrying out provisions of the Bankruptcy Code.  *See Nw. Bank Worthington v.
Ahlers*, 485 U.S. 197, 206 (1988).  A court cannot invoke § 105(a) to create new
rights or exceptions to discharge not provided in the Code.  *See In re SPM Mfg.
Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re Perez*, 411 B.R. 386, 402
(D. Colo. 2009).  The Title III court thus did not abuse its discretion when it
declined to rule the Cooperativas' fraud claims are not dischargeable under
§ 105(a).

 **III.** Suiza argues it holds a takings claim against the Commonwealth that
cannot be discharged by the Plan.  Suiza Br. 12–27.  The Title III court correctly
rejected that argument because Suiza's claim arises from a breach of contract, not a
taking.  FOMB-Add116.  Suiza effectively concedes the point when it declares the
"basis" of its claim is ORIL's failure to pay the regulatory accrual due under the
Settlement Agreement.  Suiza Br. 17–18.  Because Suiza's right to payment arises
under a contract (the Settlement Agreement), it was properly impaired and
discharged.  *See, e.g.*, *In re City of Stockton*, 909 F.3d 1256, 1266 (9th Cir. 2018).

Suiza contends its claim should be treated as a takings claim because a court supposedly ruled Suiza suffered a taking.  Suiza Br. 15–17.  No court ever issued such a ruling, however.  Rather, Suiza secured a preliminary injunction by demonstrating a likelihood of success on its takings allegation in an earlier lawsuit, *see Irizarry*, 587 F.3d at 472, and that injunction was dissolved more than eight years ago when Suiza voluntarily dismissed the suit before final judgment.  In all events, the Settlement Agreement changed the nature of Suiza's rights.  By agreeing to dismiss with prejudice its lawsuit alleging a taking, Suiza voluntarily extinguished any rights under the Takings Clause in exchange for contractual rights.  *See* Suiza-App5–9.

Suiza also argues its contractual right to payment of the regulatory accrual under the Settlement Agreement represents just compensation for a taking, and it therefore has a takings claim.  Suiza Br. 18–19.  The Settlement Agreement does not state the regulatory accrual is just compensation for a taking, however.  To the contrary, the government parties to the Settlement Agreement expressly denied any taking had occurred.  *See* Suiza-App5–6.  Moreover, this Court held the regulatory accrual required by the preliminary injunction in Suiza's former lawsuit did *not* represent just compensation for a taking.  *See Irizarry*, 587 F.3d at 479–80.  Because that same regulatory accrual was incorporated into the Settlement

Agreement, the accrual under the Settlement Agreement likewise does not represent just compensation for a taking.

Suiza's remaining objections to the Plan fail for the reasons explained below.

IV.   The Court lacks jurisdiction over the Individual Appellants' appeal because the sole issue identified in their notice of appeal concerns the preemption of Acts 80–82, which was not decided below because Acts 80-82 were previously invalidated.  *See* Individual-Add254 (limiting appeal to purported "holding that Act 80-2020, Act 81-2020, and Act 82-2020 are preempted by PROMESA"); FOMB-Add97 (declining to decide preemption question).

The Individual Appellants challenge the Stipulation, which invalidated Acts 80–82 and was so-ordered by the Title III court.  The order adopting the Stipulation was not appealed, however, and cannot be challenged in this appeal. The Individual Appellants lack standing to challenge the Stipulation in any event because they were not parties to it or to the adversary proceeding in which the Stipulation was ordered.

## STANDARD OF REVIEW

When reviewing an order confirming a plan of adjustment, this Court reviews conclusions of law de novo and factual findings for clear error.  *In re SW Bos. Hotel Venture, LLC*, 748 F.3d 393, 402 (1st Cir. 2014).  The standard of

review of determinations of mixed questions of law and fact is clear error when the mixed question is largely factual. *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). When the Title III court declines to exercise its power under 11 U.S.C. § 105, its decision is reviewed for abuse of discretion. *In re Crocker*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007).

## **ARGUMENT**

I.  **THE TITLE III COURT ERRED IN HOLDING PREPETITION, UNSECURED JUST-COMPENSATION CLAIMS ARE NON-DISCHARGEABLE AND MUST BE PAID IN FULL.**

The claimants here allege prepetition takings of their private property by the Commonwealth through either eminent-domain or inverse-condemnation proceedings. To the extent the Commonwealth set aside money for such claims, the Plan transfers the money to the claimants. None of the remaining claims at issue are secured by any property. Therefore, all claims for just compensation beyond amounts deposited with the Commonwealth court are prepetition, unsecured claims. They are prepetition claims because all the takings occurred prepetition, and the Supreme Court has definitively ruled takings claims arise at the time of taking. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2171 (2019).

Nothing in Title III grants priority to takings claims or requires them to be paid in full. PROMESA § 301(a) incorporates Bankruptcy Code § 507(a)(2),

which grants priority only to administrative expenses allowed under Bankruptcy Code § 503(b) as necessary expenses to preserve property.  Prepetition takings claims clearly are not allowable administrative expenses.

The constitution grants Congress the bankruptcy power to legislate the discharge of debts, *see Stellwagen v. Clum*, 245 U.S. 605, 616 (1918); *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902), and the Fifth Amendment requires payment of just compensation for takings.  Nothing in the Constitution provides prepetition takings claims cannot be discharged.  The Title III court relied on the Supreme Court's rulings in *Radford*, 295 U.S. 555, and *Security Industrial Bank*, 459 U.S. 70, that the bankruptcy power is subject to the Fifth Amendment to conclude prepetition Fifth Amendment takings claims cannot be discharged.  But the Supreme Court's rulings were in the context of requiring Fifth Amendment treatment of property interests held by creditors in specific property during bankruptcy cases, not treatment of prepetition, unsecured claims.  *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102, 162 (1974) is another example of the Supreme Court applying the Fifth Amendment to a postpetition— not prepetition—taking.

The Title III court applied the Supreme Court's rulings about the treatment of secured claims existing during bankruptcy cases to the treatment of prepetition, unsecured claims.  *See* FOMB-Add106–13.  That was error.  Indeed, *Radford*

explained the Fifth Amendment requires protection of "rights in specific property," 295 U.S. at 601, not non-dischargeability. In the sentence immediately following *Radford*'s ruling that the bankruptcy power is subject to the Fifth Amendment, *Radford* ruled the claims are dischargeable: "Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligation of contracts." *Id.* at 589.

Here, claimants have no postpetition "rights in specific property." All their property rights were taken prepetition. That is why the Fifth Amendment does not require full payment of their prepetition, unsecured takings claims. In *Kuehner v. Irving Trust Co.*, 299 U.S. 445 (1937), the Supreme Court demonstrated the Fifth Amendment does not require full payment of unsecured claims. There, a landlord attempted to invoke the Fifth Amendment and *Radford* to avoid operation of a section of the Bankruptcy Act of 1898, as amended, that artificially capped landlord damage claims against their debtor-tenants for rejection of their leases. The cap effectively took from the landlord a portion of the damage claim it had under state law and limited the amount the landlord could collect from the debtor's estate. The Supreme Court observed that, unlike *Radford*, the landlord had no lien or other property interest in the debtor's assets, and held the Fifth Amendment "does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's

participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets." *Kuehner*, 299 U.S. at 452.

Thus, contrary to the Title III court's ruling, *Kuehner* shows that the absence of a lien or other property interest makes a difference in applying the Fifth Amendment. Without a property interest, the creditor's claim is subject to payment on any equitable basis. It does not require payment in full.

The Title III court asserted the existence of a security interest in specific property "is not determinative of Fifth Amendment protection." FOMB-Add105. To be sure, the Fifth Amendment applies to multiple property interests, not just security interests. For instance, if a litigant has an ownership interest in property during the bankruptcy case and the government takes the property during the bankruptcy case, the Fifth Amendment would require full payment of just compensation. The debtor's liability for full payment would be an allowable administrative expense under *Reading v. Brown*, 391 U.S. 471 (1968). But here, none of the claimants has a property interest. They have only prepetition, unsecured claims for money. Under *Kuehner*, those claims are subject to any equitable distribution of the debtor's assets, not payment in full.

The Courts of Appeals addressing the issue unanimously agree the Takings Clause protects only specific property interests in bankruptcy cases, not unsecured claims. *See, e.g.*, *In re Nichols*, 440 F.3d 850, 854 (6th Cir. 2006) (explaining the

Takings Clause protects only a "*property right* . . . in the collateral that secures the debt"); *In re Treco*, 240 F.3d 148, 161 (2d Cir. 2001); *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985); *In re Quanta Resources Corp.*, 739 F.2d 912, 922 n.11 (3d Cir. 1984).  The Title III court's reliance on the Fifth Amendment to infuse claimants' prepetition, unsecured takings claims with a right to payment in full is simply contrary to established law.

The Title III court rejected the Board's argument that, even during a bankruptcy case, the bankruptcy power can avoid property interests protected by the Fifth Amendment.  FOMB-Add111 n.41.  The Title III court asserted the avoidable transfers are already avoidable by applicable state law.  *Id.*  That is true for some avoidable transfers, but not others.  Before bankruptcy, when a debtor pays a valid debt, its creditor receives clear and valid ownership of the money the debtor paid.  But Bankruptcy Code § 547 can take the money away from the creditor as a voidable preference.  Avoidance of the preferential transfer is not avoidable by state law.  The Supreme Court has nonetheless recognized the bankruptcy statute can take valid property rights by its "invalidation of transfers working a preference." *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 517 (1938).  On the Title III court's theory, an entity deprived of the money the debtor paid it suffers a taking that must be repaid in full.  Clearly, no purpose would be served by avoiding a preferential transfer if it has to be repaid in full, which it does

not.  The Supreme Court has never held preference transferees hold non-
dischargeable claims for just compensation; indeed, requiring such compensation
would effectively defeat the point of avoidance, which is to ensure *equitable
distribution* of the debtor's property among all creditors of equal priority.  *See
Begier v. IRS*, 496 U.S. 53, 58 (1990).  The Code's numerous other avoidance
provisions—none of which has been held unconstitutional—further illustrate the
point.  *See, e.g.*, 11 U.S.C. § 544(a) (avoidance of otherwise valid but unperfected
security interests); *id.* § 545 (avoidance of otherwise valid statutory liens in certain
circumstances); *id.* § 548(a) (avoidance of certain transfers regardless of their
state-law validity).[3]

    Several analogies show the Title III court's ruling is also inconsistent with
the understanding of the Fifth Amendment that has shaped bankruptcy practice and
jurisprudence.  First, when a debtor consumes its creditor's collateral before
bankruptcy, Bankruptcy Code § 506 does not give the creditor an allowable

---

[3] The Title III court notably acknowledged that, by its logic, the Takings Clause
could "preclude a debtor's exercise of avoidance powers."  FOMB-Add112.  The
court insisted that avoidance would be limited only in "highly specific"
circumstances.  *Id.*  The court thus conceded its theory upends operation of the
bankruptcy statute itself in some circumstances.  The Title III court also ignored
that contracts have been held to be property protected by the Fifth Amendment
from taking.  *Lynch v. United States*, 292 U.S. 571, 579 (1934).  The Title III
court's reasoning, taken to its logical conclusion, means contract claims cannot be
impaired and discharged, writing the bankruptcy power out of the Constitution.

secured claim for the prepetition destruction of the collateral.  It grants only a secured claim based on the remaining collateral value during the bankruptcy case. Second, when a secured claimholder desires adequate protection against the diminution of the value of its collateral arising from operation of the bankruptcy law, the law is clear that its entitlement to adequate protection commences with its postpetition request for adequate protection.  *In re Ahlers*, 794 F.2d 388, 395 n.6 (8th Cir. 1986) ("[T]he starting date should not be when the petition is filed, but rather when the secured creditor seeks either possession of the collateral or adequate protection . . . ."), *rev'd on other grounds*, 485 U.S. 197 (1988); *In re Big3D, Inc.*, 438 B.R. 214, 228 (B.A.P. 9th Cir. 2010) ("A significant majority of later decisions follow *Ahlers*' lead in setting the point for commencement of adequate protection payments at the filing of the motion for relief from stay or adequate protection" and collecting cases).

In sum, allowing discharge of the instant unsecured prepetition takings claims would not violate *Radford* or make the bankruptcy power any less "subject to" the Fifth Amendment.  Rather, it would mean that the Fifth Amendment and the bankruptcy power have two different effects at two different times:  (*i*) in the past, the Takings Clause gave the claimant a claim for just compensation; and (*ii*) later, PROMESA allowed that claim to be adjusted in a Title III case.

PROMESA did not cause the taking, and thus the bankruptcy power's being subject to the Fifth Amendment is not violated.

The Title III court observed the Constitution provides the remedy of just compensation as a reason why no statute can discharge it. *First,* outside bankruptcy, just-compensation claims are routinely modified by operation of law after the taking occurs. For example, such claims "can become time-barred just like any other claim can" without violating the Fifth Amendment. *Block v. North Dakota*, 461 U.S. 273, 292 (1983); *see also Soriano v. United States*, 352 U.S. 270, 277 (1957); *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–59 (1st Cir. 1991). As with other claims, the expiration of the limitations period "bars the remedy" of just compensation even if it "does not extinguish the substantive right" under the Takings Clause. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504 (2001). So, too, the claim can be waived or settled at less than full value.

Notably, the two circuits that have addressed the issue determined the constitutional origin of claims for just compensation does not preclude their adjustment in bankruptcy. *Stockton*, 909 F.3d at 1268 (rejecting argument that a takings claim "has protected status because it was originally founded as a constitutional claim"); *Poinsett Lumber Mfg. v. Drainage Dist. No. 7*, 119 F.2d 270, 272–73 (8th Cir. 1941) (holding that a just-compensation claim is not "invested with a constitutional sanctity beyond other forms of liability" that limits

its adjustment).[4]  And the Ninth Circuit specifically held unsecured claims for

payment arising from prepetition takings almost identical to those at issue here are

dischargeable, consistent with the Fifth Amendment.  *See Stockton*, 909 F.3d at

1268–69.  The Ninth Circuit's reasoning is unassailable and should be adopted by

this Court.

Just as in this case, the claimant in *Stockton* held a prepetition claim for just

compensation (beyond amounts deposited in the claimant's favor in California

court) based on the prepetition taking of his property by the municipal debtor.  The

Ninth Circuit held the claim could be impaired and discharged.  The court

acknowledged "the bankruptcy power is subject to the Fifth Amendment," but,

consistent with *Kuehner*, ruled the claimant lacked a "property interest cognizable

as such in bankruptcy" because his just-compensation claim was not tethered to

any "actual property interest."  *See id.* at 1268.  That interest had been

"extinguished long before the bankruptcy was filed," when the claimant's property

---

[4] The Title III court distinguished *Poinsett* as factually inapposite on various
grounds, including that the claimant there had failed to timely preserve its
objection and that the case had centered on whether a governmental agency was
involved for purposes of establishing equity jurisdiction.  FOMB-Add108–10.
None of those distinctions makes any difference regarding the Eighth Circuit's
legal determination that claims for just compensation are not impervious to
adjustment in bankruptcy.  Poinsett was a debtor under the Bankruptcy Act's
chapter for municipal debtors.  Poinsett was created by the legislature, formulated
plans for drainage improvements, and levied a tax or special assessment to meet
the principal and interest on the district's bonds.

was taken by the debtor. *Id.* at 1268–69. All that remained was an "unsecured claim for greater compensation," which was adjustable in bankruptcy the same as "other constitutionally based lawsuits seeking money damages, such as § 1983 claims." *See id.* at 1268.

The Title III court declined to follow *Stockton* based in part on its view (contrary to all authority discussed *supra*) that the distinction between secured and unsecured claims "lacks any clear basis in Supreme Court jurisprudence." *See* FOMB-Add110. Instead, the Title III court sided with the dissenting judge's view that *all* Fifth Amendment claims "pass through bankruptcy unaffected." FOMB-Add110–11 (citing *Stockton*, 909 F.3d at 1278 (Friedland, J., dissenting)). That view, however, was premised on one assumption that corroborates the Board's position. Judge Friedland asserted the claimant retained a pospetition interest in the property. *Stockton*, 906 F.3d at 1276 (Friedland, J., dissenting). Judge Friedland's view was also based on another assumption the Supreme Court has overturned. She assumed a violation of the Fifth Amendment does not occur *until* just compensation is actually denied. *Id.* at 1274 (Friedland, J., dissenting) ("[N]o constitutional violation occurs until just compensation has been denied.") (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 n.13 (1985)). Judge Friedland's assertion corroborates the Board's position that the existence of a property interest during the bankruptcy is critical to

Fifth Amendment claims.  Additionally, the Supreme Court has since ruled the Fifth Amendment claim arises "at the time of the uncompensated taking," *Knick*, 139 S. Ct. at 2172, and overruled *Williamson County*, the key precedent on which Judge Friedland relied.

*Second*, the Takings Clause is not the only constitutional provision for which the Constitution itself prescribes the remedy; damages actions may be "implied directly under the Constitution" when other constitutional rights are violated. *Davis v. Passman*, 442 U.S. 228, 230 (1979) (implying damages remedy for violations of Fifth Amendment's Due Process Clause); *see also Carlson v. Green*, 446 U.S. 14, 19 (1980) (Eighth Amendment's Cruel and Unusual Punishments Clause); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971) (unreasonable searches and seizures under Fourth Amendment).  There is no basis to elevate damages remedies for some constitutional violations above others in bankruptcy, ensuring full payment on Fifth Amendment claims while allowing the discharge of others.  The Supreme Court has consistently rejected attempts to create such a hierarchy of constitutional rights.  *See Caplin & Drysdale v. United States*, 491 U.S. 617, 628 (1989) (rejecting any "distinction between, or hierarchy among, constitutional rights").[5]

---

[5] The hierarchy of rights created by the Title III court is not only contrary to Supreme Court precedent but is based on misreading of the Bill of Rights. Constitutional amendments protecting personal liberty interests and freedoms

The Court has similarly deemed "the abstract 'value' or 'importance' of constitutional rights" an impermissible measure of damages for constitutional violations.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986).

Similarly, although 42 U.S.C. § 1983 provides a remedy for constitutional violations, § 1983 claims are "routinely adjusted in bankruptcy."  *Stockton*, 909 F.3d at 1268.  The Title III court thought this point conflated constitutional guarantees (like the Takings Clause) with statutory remedies.  FOMB-Add110. But regardless of their statutory nature, § 1983 claims vindicate Constitutional rights.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing . . . rights independently 'secured by the Constitution.'"); *Butz v. Economou*, 438 U.S. 478, 504 (1978) ("The § 1983 action was provided to vindicate federal constitutional rights.").  It would be counterintuitive to distinguish among constitutional violations and allow, say, prepetition, unsecured First Amendment violations to be dischargeable in

---

accomplish their goals by prohibiting conduct altogether.  The First Amendment, for example, prohibits the passage of laws restricting speech and religion. Unsurprisingly, amendments prohibiting conduct do not permit violations if the government pays compensation after the fact.  The Fifth Amendment, by contrast, does not prohibit governmental takings; it allows takings but, to protect rights in property, it obligates the government to pay just compensation.  It is illogical to infer from that payment requirement that just-compensation claims must be paid in full in bankruptcy while other constitutional claims for damages can be discharged and paid in bankruptcy dollars.

bankruptcy but not prepetition, unsecured Fifth Amendment claims, simply because of their means of enforcement, when all are equally fundamental rights.

Finally, as a practical matter, the Title III court's ruling endangers the ability of municipalities to restructure debt—to the detriment of takings claimants. Property owners aggrieved by municipal property regulations are entitled to seek compensation equivalent to the property's value through inverse-condemnation actions. *See United States v. Dow*, 357 U.S. 17, 21–22 (1958). A broad range of regulations could give rise to such claims, such as regulations protecting wetlands by prohibiting development, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), and regulations making trade secrets public, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984). Depending on the extent of the regulations and the diminution in property value, such regulations could result in monetary claims against the municipality so substantial that the municipality is forced into bankruptcy. Under the Title III court's logic, the claimants would hold non-dischargeable claims to the municipality's revenues. That would effectively stop the municipality from reorganizing into a financially sustainable entity, as it would be barred from adjusting precisely the debts that forced it into bankruptcy in the first place, and would force such creditors to simply race to the courthouse to enforce judgments against the municipality.

## II. THE COOPERATIVAS' ARGUMENTS AGAINST CONFIRMATION ARE MERITLESS.

The Cooperativas' appeal centers on the fraud and "takings" claims they asserted in an adversary proceeding dismissed before confirmation for failure to state valid claims. *See* Coop. Br. 18–25, 31–37. Below, the Cooperativas objected to the Plan on the ground that it failed to except their fraud and "takings" claims from discharge. *See* Coop-App647–78. The Title III court correctly overruled those objections, referencing its order dismissing the Cooperativas' adversary proceeding. FOMB-Add104. In that earlier order, the court explained that fraud claims are not excepted from discharge under PROMESA and that the Cooperativas had not alleged viable takings claims regardless of whether takings claims are excepted from discharge as a general matter. *See* FOMB-App274–317.

On appeal, the Cooperativas attack the order dismissing their adversary proceeding, arguing the Title III court incorrectly dismissed their fraud and "takings" claims on the merits. Coop. Br. 18–25, 31–37. Those arguments have no place in this appeal. Whether the Cooperativas have stated valid fraud and takings claims against the Commonwealth is the subject of a different appeal, No. 22-1048, which challenges the order dismissing the adversary proceeding. The present appeal concerns whether the *treatment* the Plan provides for the Cooperativas' claims is permissible. For the reasons explained below, the answer is "yes."

If the Cooperativas prevail in Appeal No. 22-1048 and their fraud and "takings" claims are reinstated, and if the Cooperativas ultimately prove those claims on the merits, the Plan would treat those claims appropriately as general unsecured claims, or the Commonwealth would provide full payment of just compensation for the "takings" claims if the Title III court's ruling at issue in the Board's cross-appeal is affirmed and becomes final. Thus, the Cooperativas have nothing to complain about here. The Court should decline the invitation to determine as part of this appeal whether the Cooperativas have adequately alleged fraud and "takings" claims because that issue is irrelevant to confirmation and would turn this appeal into a duplicate of No. 22-1048. *See In re Dietrich*, 490 F. App'x 802, 804 (6th Cir. 2012) ("[T]he main bankruptcy case and adversary proceeding must be treated as distinct for the purpose of appeal."); *see In re Dorsey*, 870 F.3d 359, 362–63 (5th Cir. 2017) (same).

### A. The Cooperativas' "Takings" Claims Will Receive Proper Treatment.

Were the Cooperativas to prevail in Appeal No. 22-1048 and ultimately establish their takings claims, the Board agrees those claims would receive the same treatment afforded other takings claims. Because that treatment is precisely what the Cooperativas request, no dispute exists between the parties concerning the treatment of takings claims. *See, e.g.*, Coop. Br. 15 (arguing Plan should treat their

takings claims the same as other takings claims "should this Honorable Court reverse the dismissal of AP18-00028").

The Title III court ruled the Fifth Amendment requires takings claims to be paid in full.  FOMB-Add112.  In accordance with that ruling, the Plan currently provides for full payment of eminent-domain and inverse-condemnation takings claims.  Coop-App946–47, § 58.1.  The Board has challenged that ruling in its cross-appeal and seeks to treat unsecured takings claims as general unsecured claims.  *See* Point I, *supra*.  Regardless of the outcome of the cross-appeal, the Board agrees that valid takings claims, if any, held by the Cooperativas would receive the same treatment under the Plan as valid unsecured eminent-domain and inverse-condemnation takings claims.  The Cooperativas thus have no basis to complain about the Plan's treatment of their takings claims:  If they are correct that the Fifth Amendment requires takings claims to be paid in full (an issue to be decided in the cross-appeal), and if they prevail on their takings claims (an issue to be decided in Appeal No. 22-1048 and, if this Court reverses, on remand), their takings claims will be paid in full.

The Cooperativas' discussion of the merits of their takings claims is irrelevant to this appeal.  Coop. Br. 18–25.[6]  This Court will decide in Appeal

---

[6] The Board disputes the Cooperativas' arguments concerning the viability of their takings claims but will address those arguments in Appeal No. 22-1048.  The discussion of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104

No. 22-1048 whether the Cooperativas have stated viable takings claims.  For purposes of this appeal, the only salient point is that the Cooperativas' valid takings claims, if any, will be treated the same way as other valid takings claims.

### B.     The Plan Was Not Required to Except the Cooperativas' Fraud Claims from Discharge.

The Cooperativas' fraud claims against the Commonwealth in the adversary proceeding have been dismissed for failure to state valid claims.  FOMB-App316–17.  If this Court were to reinstate those claims in Appeal No. 22-1048, and if the Cooperativas were ultimately to prove them on the merits, the Plan would discharge those claims and treat them as subordinated pursuant to 11 U.S.C. § 510(b).  *See* Coop-App429 (defining "[§] 510(b) Subordinated Claims"); Coop-App480–81 (providing treatment of § 510(b) Subordinated Claims).  Section 510(b) provides all claims "for damages arising from the purchase or sale of [a security of the debtor or of an affiliate] . . . shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security . . . ."  11 U.S.C. § 510(b) (incorporated by 48 U.S.C. § 2161(a)).  The

_____

(1978) (Coop. Br. 24–25) is particularly inapt because the Title III court's *Penn Central* analysis addressed an argument the Cooperativas advanced below in opposition to confirmation but have abandoned on appeal—namely, that approval of the Plan itself would constitute a taking.

Cooperativas' fraud claims all arise from their purchase of securities and thus fall squarely within § 510(b).[7]

The Cooperativas argue PROMESA requires the Plan to except their claims from discharge because the claims sound in fraud.  Coop. Br. 25–31.  They are wrong.  Nothing in PROMESA excepts fraud claims from discharge.  As the Cooperativas concede, PROMESA does not incorporate § 523(a)(2) of the Bankruptcy Code, which excepts from discharge fraud-based claims against an *individual* debtor (not an entity or governmental debtor).  *See* 48 U.S.C. § 2161(a); Coop. Br. 27 n.4.  Congress's decision not to incorporate § 523(a)(2) into PROMESA is a clear indication Congress did not intend for a fraud exception to discharge to apply in Title III.  *See Union de Trabajadores*, 7 F.4th at 38 (ascribing meaning to Congress's choice to incorporate Bankruptcy Code § 507(a)(2), "and no other provision of § 507").  In fact, Congress opted not to incorporate *any* of the exceptions to discharge contained in § 523, which underscores its intent that a Title III discharge cover all claims.  *See* 48 U.S.C. § 2161(a).

---

[7] To the extent the Cooperativas' claims are subordinated, they will receive no distribution under the Plan pursuant to the absolute-priority rule.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii).

The Cooperativas contend other provisions incorporated into PROMESA would except their fraud claims from discharge, but the provisions they cite do no such thing.

> ### 1.    11 U.S.C. § 105(a) Cannot Be Used to Create an Exception to Discharge.

The Cooperativas first invoke equitable principles under 11 U.S.C. § 105(a) to avoid discharge of their fraud claims.  Coop. Br. 28–31.  Section 105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a) (incorporated by 48 U.S.C. § 2161(a)).  The Cooperativas contend that the court should have used its § 105(a) power to except their fraud claims from discharge so as not to reward a supposedly "dishonest Debtor."  Coop. Br. 16.

The Title III court did not abuse its discretion when it declined to invoke § 105(a) to create an exception to discharge for fraud claims.  *See Crocker*, 362 B.R. at 53 (reviewing exercise of § 105(a) powers for reversible error).  To the contrary, the Title III court would have abused its discretion if it had invoked § 105(a) to create a discharge exception Title III does not create.  The Title III court did not have the power to create a new exception to discharge under § 105(a).  "Although expansively phrased, [§] 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes 'a roving commission to do equity.'"  *In re Ludlow Hosp. Soc'y*, 124 F.3d 22, 27 (1st Cir.

1997).  Rather, a court's discretion "is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code." *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 830–31 (1st Cir. 1990); *see Ahlers*, 485 U.S. at 206 (§ 105(a) "must and can only be exercised within the confines of the Bankruptcy Code").  Thus, courts cannot use § 105(a) to create new substantive rights not provided in the Bankruptcy Code.  *SPM Mfg.*, 984 F.2d at 1311.  And, as relevant here, they cannot use § 105(a) to create or expand discharge exceptions that otherwise do not exist.  *Perez*, 411 B.R. at 402; *see also In re Automatic Plating of Bridgeport*, 202 B.R. 540, 541–42 (Bankr. D. Conn. 1996) (refusing to use § 105(a) to extend the § 523(a)(2) exception to corporate debtors).[8]

The Cooperativas fail to cite a single case authorizing a court to employ § 105(a) to legislate, and add what Congress specifically excluded by creating exceptions to discharge not provided in PROMESA.  *In re Thrall* holds only that discharge is an equitable remedy that falls within the purview of a judge, not a jury.  196 B.R. 959, 969–70 (Bankr. D. Colo. 1990).  *Thrall* does not hold that § 105(a) authorizes a court to create exceptions to discharge; to the contrary, it holds that "[a]lthough [§ 105(a)] gives bankruptcy courts enforcement powers, it

---

[8] *Cf. In re Valenti*, 310 B.R. 138, 141, 145 (B.A.P. 9th Cir. 2004) (improper to use § 105(a) to get around time limits in 11 U.S.C. § 1330(a); *In re Jones*, 129 B.R. 1003, 1010–11 (Bankr. N.D. Ill. 1991) (improper to use § 105(a) to get around more-specific provisions of 11 U.S.C. §§ 1324 and 1327(a)).

does not extend a bankruptcy court's authority beyond the purposes and functions of the Code."  *Id.* at 964.  *In re Jacobson* (cited in Coop. Br. at 30) likewise does not authorize new exceptions to discharge, but instead holds § 105(a) "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the *substantive provisions of the [Bankruptcy] Code*."  378 B.R. 805, 810–11 (Bankr. E.D. Tex. 2008) (emphasis added).  Because no substantive PROMESA provision recognizes an exception to discharge for fraud claims, *Jacobson* does not advance the Cooperativas' cause.[9]

The Title III court was thus not *permitted* to create an exception from discharge for fraud claims.  In all events, it certainly was not *required* to do so.  *See Crocker*, 362 B.R. at 53 (reviewing court's exercise of § 105(a) powers for abuse of discretion).  The Cooperativas cite no authority for the remarkable

---

[9] *In re City of San Bernadino* is likewise inapposite.  Coop. Br. 30 (citing 566 B.R. 46 (Bankr. C.D. Cal. 2017).  That case did not involve exceptions to discharge. Instead, it concerned whether a court could use § 105(a) in connection with third-party releases and injunctions in a plan of adjustment.  566 B.R. at 57–58.  The court held that third-party releases and injunctions were permitted under § 105(a) only if they are essential to the reorganization.  *Id.*  That use of § 105(a) was repudiated and rejected in *In re Purdue Pharma L.P.*, 635 B.R. 26, 104 (S.D.N.Y. 2021).  Here, even if *City of San Bernadino* were good law, which it is not, there has been no showing that excepting the Cooperativas from discharge is essential to the Commonwealth's reorganization.  To the contrary, excepting claims from discharge could only be detrimental to the Commonwealth's reorganization.

proposition that the Title III court would have abused its discretion by declining to craft a new exception to discharge for fraud claims even if permitted to do so.

The Cooperativas' invocation of general "equitable powers" fares no better. Coop. Br. 29.  Again, the Cooperativas cite no authority holding a court may invoke "equity" to legislate exceptions to discharge that Congress did not provide in PROMESA.  The Cooperativas' attempt to invoke "equity" to justify not discharging claims against *governmental* debtors is particularly untenable because it means giving more money to the Cooperativas and less to the people.  Even if it were possible that "equity" would require certain debts of a private debtor to be non-dischargeable, such a result would make no sense with respect to a governmental debtor, which must be able to survive and continue providing services for its constituents.  Denying a governmental discharge for certain claims would just increase the burden on the taxpayers who rely on the governmental debtor for services, a result that would not be "equitable" in any sense of the word.[10]  For similar reasons, courts have refused to assess punitive or treble damages against governmental entities because the guiltless taxpayers would ultimately bear the punishment.  *See, e.g.*, *City of Newport v. Fact Concerts, Inc.*,

---

[10] The Cooperativas' reliance on *Root v. Railway Co.*, 105 U.S. 189 (1882), and *Liu v. SEC*, 140 S. Ct. 1936 (2020), is misplaced because neither case addressed discharge in bankruptcy.  *See* Coop. Br. 28.

453 U.S. 247, 261–62, 266–67 (1981); *Lancaster Cmty. Hosp. Dist. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991).

### 2.    *No Exception to Discharge Exists Under 11 U.S.C. § 944(c)(1).*

The Cooperativas also mention in passing § 944(c)(1) of the Bankruptcy Code, *see* Coop. Br. 27, 29, which provides that a debtor is not discharged from any debt "excepted from discharge by the plan or order confirming the plan," 11 U.S.C. § 944(c)(1) (incorporated by 48 U.S.C. § 2161(a)).  That provision has no application here because neither the Plan nor the Confirmation Order excepts the Cooperativas' claims from discharge.  The same statutory language is in Bankruptcy Code § 1141(d)(1) as applied to chapter 11 reorganizations.  That language has neither been interpreted nor deployed to mean a court can simply insert discharge exceptions into a confirmation order.  Indeed, both PROMESA and the Bankruptcy Code grant the debtor the exclusive right to propose a plan. 11 U.S.C. § 1121; 48 U.S.C. § 2172(a).  Courts are not empowered to draft and propose plans.  They can insert discharge exceptions into the confirmation order only when the plan proponent or statute creates the exception as part of the restructuring.  Section 944(c)(1) by its terms does not require the Title III court to except the Cooperativas' fraud claims from discharge, and the Cooperativas cite no authority suggesting the court abused its discretion by declining to create such an exception even if it had power to do so.

50

### 3. The Cooperativas' Discussion of the Merits of Their Fraud Claims Is Irrelevant.

As they did with their "takings" claims, the Cooperativas spill significant ink arguing the merits of their fraud claims. Coop. Br. 31–37. As with their takings claims, the merits of the fraud claims are irrelevant to this appeal. To the extent the Cooperativas have allowed claims, they are unsecured claims and will be treated as such. The issue here is whether the Plan was permitted to discharge those claims, not whether the Cooperativas have valid claims. The Board will defend the Title III court's order dismissing the Cooperativas' fraud claims in Appeal No. 22-1048. For purposes of this appeal, it is sufficient for the Court to conclude the Plan and confirmation order were permitted to discharge the fraud claims.

### C. The Cooperativas' Remaining Arguments Fail.

The Cooperativas make a series of additional arguments at the back of their brief, none of which succeeds. They first argue that their fraud claims "are not a mere collection of moneys" and thus cannot be discharged under the Plan. Coop. Br. 37. That argument appears to be a restatement of their earlier arguments that fraud and takings claims are not dischargeable—arguments addressed above. To the extent the Cooperativas are attempting to make an independent argument on page 37 of their brief, the argument is neither clear nor developed and is thus waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

The Cooperativas next contend that they have a First Amendment right to have their takings and fraud claims adjudicated on the merits and that the Plan cannot be used to "evade judicial evaluation" of those claims.  Coop. Br. 38–41. That argument fails because the Cooperativas *are* receiving a "judicial evaluation" of their fraud and takings claims.  The Title III court reviewed those claims and determined that they failed to state a viable claim for relief.  FOMB-App316–17. This Court will likewise review the viability of the claims in Appeal No. 22-1408. If the Cooperativas prevail in Appeal No. 22-1408, they can continue to litigate the allowability of their fraud and takings claims in the Title III court.  The Plan does not "adjudicate" the claims; it merely determines how they would be treated if they are allowed.[11]

The Cooperativas also argue credit unions are important, and therefore the "preservation" of their claims is "required pursuant to the public interest."  Coop. Br. 41–44.  Again, the Cooperativas can pursue their claims if this Court reverses the decision dismissing those claims in Appeal No. 22-1048.  The Cooperativas

---

[11] For that reason, the Cooperativas' citation to *In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008), is of no moment.  Coop. Br. 41.  The Plan does not purport to have preclusive effect on the merits of the Cooperativas' claims against the Title III debtors.  It governs only their ultimate dischargeability (should they be found meritorious).  The Plan merely treats those claims—when and if allowed— but the merits of those claims are adjudicated in an adversary proceeding separate from the confirmation hearing.

cite no authority, however, holding their claims should be excepted from discharge on the grounds that credit unions are in the "public interest." And certainly, the Cooperativas did not provide any evidence or authority to show the Title III court abused its discretion by confirming a plan that does not favor the Cooperativas.

Finally, the Cooperativas make a series of arguments about why this appeal is not equitably moot. Coop. Br. 44–48. Because the Board has not invoked equitable mootness, those arguments are irrelevant.

## III.   SUIZA'S OBJECTIONS TO THE PLAN WERE PROPERLY OVERRULED.

Suiza's complaints about the Plan's treatment of its claim are likewise unavailing. Suiza primarily argues it has asserted a claim for a taking and that takings claims cannot be discharged. Suiza Br. 12–23. That argument fails for the simple reason that Suiza does not have a valid takings claim. Suiza, rather, settled its takings claims for a promise of monetary payments, and those takings claims were dismissed as part of the Settlement Agreement. As the Title III court held, Suiza's claim arises from its Settlement Agreement with ORIL, and claims for breach of contract can be impaired and discharged in bankruptcy. FOMB-Add115–16.

Based on the record evidence, including a declaration from the Board's executive director and the Settlement Agreement, the Title III court found the dairy producers' claims (including Suiza's) were correctly classified in their own class

and not as part of the general-unsecured-creditor or takings classes.  FOMB-Add54–55.  That finding was not clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

Moreover, even if Suiza did have a takings claim, it would be unsecured, and for the reasons stated in the Board's cross-appeal, a prepetition, unsecured takings claim is dischargeable.  *See* Point I, *supra*.  Suiza's other objections to the Plan likewise fail for the reasons stated below.

### A.    Suiza Does Not Have a Takings Claim.

Suiza's claim against the Commonwealth arises from the Settlement Agreement, which settled a prepetition litigation challenging ORIL's price-fixing regulations as a taking and a violation of the Due Process, Equal Protection, and dormant Commerce Clauses.  Before a final adjudication on the merits, Suiza agreed to dismiss all its claims, including its takings claim, with prejudice in exchange for certain promises, including that ORIL would make certain payments to Suiza.  Suiza-App5–12; *see Pagan*, 748 F.3d at 18.  Suiza's right to payment from the Commonwealth thus arose out of the Settlement Agreement, as the Title III correctly found.  FOMB-Add115–16.  Suiza concedes the point, asserting that the Settlement Agreement requires payment of a regulatory accrual and that unpaid portions of the regulatory accrual form "the basis for Suiza's [proof of claim]."

Suiza Br. 17–18.  Moreover, its proof of claim describes its right to payment by referencing and attaching the Settlement Agreement.  Suiza-App1–60.

Under Puerto Rico law, a settlement agreement is a contract, *Rivera-Rosario v. U.S. Dep't of Agric.*, 202 F.3d 35, 37 (1st Cir. 2000), a breach of which gives rise to a right to payment of damages, *Dopp v. HTP Corp.*, 947 F.2d 506, 511 (1st Cir. 1991).  And because Suiza's right to payment arises under a contract, it can be discharged.  *See, e.g.*, *Stockton*, 909 F.3d at 1266 ("[A] contractual . . . right for monetary relief . . . can be adjusted in bankruptcy.").

Manifestly, once Suiza noticed the Title III court was ruling prepetition takings claims must be paid in full and are non-dischargeable, Suiza was dissatisfied it had agreed to promises of money payments and dismissed its takings claims.  Those are the facts, however, and Suiza cannot use confirmation to amend its settlement agreement.

Suiza attempts to amend the Settlement Agreement by contending its right to payment does *not* arise from the Settlement Agreement but instead from a taking by the Commonwealth.  Suiza Br. 12–23.  In its view, the district court and this Court previously determined that a taking occurred, and the Settlement Agreement "in no way erases that."  Suiza Br. 18–19.  There are two flaws in that argument. *First*, no court has ever held that Suiza suffered a taking.  The district court granted a *preliminary injunction* and in so ruling found that Suiza was likely to succeed on

its due-process, equal-protection, and takings claims.  *See* Suiza-App2926.  This Court affirmed that Suiza had a "likelihood of success" solely on the due-process ground, not reaching the takings or other claims.  *Irizarry*, 587 F.3d at 483 n.18. A preliminary injunction is not a final ruling on the merits.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Once Suiza agreed to settle and dismiss its claims with prejudice, the dismissal dissolved the preliminary injunction without any final adjudication of whether a taking had occurred.  *See Chaparro-Febus v. Int'l Longshoremen Ass'n, Loc. 1575*, 983 F.2d 325, 331 n.5 (1st Cir. 1992) ("[P]reliminary injunctions, which are interlocutory in nature, cannot survive a final order of dismissal."); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed. 2021).

*Second*, contrary to Suiza's assertion, the Settlement Agreement did change the nature of Suiza's rights.  In the Settlement Agreement, Suiza agreed to dismiss its takings and other claims with prejudice.  Suiza-App6.  That dismissal extinguished any rights Suiza might have had under the Takings Clause and replaced them with contractual rights under the Settlement Agreement.  *See Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995) (explaining that when parties "agree to a settlement of [a] dispute and entry of a judgment with prejudice based on that settlement, then the terms of that judgment in relation to that legal issue are subject to res judicata principles").  Suiza contends the Settlement Agreement did

not "relieve the government from its duty to provide just compensation." Suiza Br. 14; *see also id.* at 19. But of course it did. Suiza voluntarily decided to avoid the risk and expense of litigation by dismissing its takings claim in exchange for contractual rights to a stream of payments. Once that occurred, it no longer had any entitlement to just compensation—even if its takings claim was valid in the first place. Suiza would be barred by res judicata from going into court and demanding just compensation for its takings claim. It therefore cannot recover on a takings claim in Title III, either.[12]

Suiza argues the regulatory accrual payments required by the Settlement Agreement show its claim is for a taking. Suiza Br. 18–19. Its argument proceeds in four steps: (1) the preliminary injunction required ORIL to pay Suiza a regulatory accrual; (2) the regulatory accrual was just compensation for a taking; (3) the Settlement Agreement provides for the same regulatory accrual; therefore (4) the Settlement Agreement provides just compensation for the alleged taking. *Id.* That argument fails at the second step and because Suiza's takings claim was

---

[12] *Archer v. Warner*, 538 U.S. 314, 321–22 (2003) is inapposite because it addressed 11 U.S.C. § 523(a)(2)(A), which is not incorporated into PROMESA. *See* 48 U.S.C. § 2161(a). Moreover, it is well settled that exceptions to discharge should be construed narrowly in favor of the debtor. *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987). The takings claims exception incorrectly read into PROMESA Title III by the Title III court, *see* Point I, *supra*, should not be broadly construed to encompass Suiza's claim stemming from a settlement of several constitutional and other claims, only one of which related to the Takings Clause.

dismissed with prejudice.  In an appeal of the order granting the preliminary

injunction, this Court held the regulatory accrual did *not* constitute just

compensation for any alleged taking but instead was an "equitable remedy."  *See*

*Irizarry*, 587 F.3d at 479–80 (rejecting attempt to "characteriz[e]" the preliminary

injunction as "ordering the payment of monetary damages in just compensation for

a regulatory taking").  Accordingly, the regulatory accrual in the Settlement

Agreement—which mirrors the regulatory accrual ordered in the preliminary

injunction—is likewise not just compensation for a taking.  Notably, the Settlement

Agreement itself does not characterize the regulatory accrual as just compensation,

but instead disclaims the allegation that any taking occurred.  Suiza-App5.

*Knick*, 139 S. Ct. 2162, does not help Suiza.  *See* Suiza Br. 14, 19.  That case

merely held the right to and claim for just compensation arises at the time of a

taking.  It did not hold a party like Suiza cannot agree to extinguish a takings claim

in exchange for a contractual right to payments.  If Suiza were correct that a party

that settles by dismissing its takings claim in exchange for a stream of payments

can later renege and contend its takings claim was not dismissed with prejudice, it

would undermine the "public policy encouraging the amicable resolution of cases."

*Id.* at 22.  Suiza's concern that parties would be afraid to settle takings claims out

of fear their rights under a settlement could be discharged in bankruptcy is

overblown, as settlements are made every day with entities eligible for future

bankruptcies. A settling party concerned about insolvency might also negotiate settlement terms preserving a just-compensation claim in any event. For example, parties can condition a settlement's going into effect only after the last payment is made and thus any rights that the parties had before the settlement would not be extinguished until all obligations under the settlement had been fulfilled. That is not the case here.[13]

### B.    Suiza's Procedural Challenge Fails.

Suiza further misses the mark when it argues the Title III court was not permitted to decide in the context of Plan confirmation that Suiza's claim arose from a breach of contract rather than a taking. Suiza Br. 24–27. According to Suiza, its proof of claim asserts a taking, and, because no party objected to the claim, the court was required to treat it as a takings claim. *Id.* at 24–25 (citing 11 U.S.C. § 502(a) for the proposition that a claim not objected to is "deemed allowed"). There are several flaws in that argument.

*First*, Suiza's proof of claim does not assert a takings claim. Although the word "takings" appears, the proof of claim references and attaches the Settlement Agreement, including the formulas for determining the amounts owed to Suiza

---

[13] Suiza abandons any argument the Plan itself constituted a taking. Suiza Br. 22. The Title III court's conclusion the Plan does not constitute a taking under *Penn Central*, 438 U.S. 104, is therefore not under review in this appeal. *See* FOMB-Add116–17.

under the Settlement Agreement.  Suiza-App3.  It is thus clear from the face of the

proof of claim that Suiza's right to payment arose under the Settlement Agreement.

Suiza's argument that the Title III court "change[d] the nature of the Claim without

going through the objection to claim process" (Suiza Br. 24) thus fails because

Suiza's claim as filed was contractual in nature.

*Second*, the Plan did not object to or change the nature of Suiza's claim; it

merely classified the claim in a non-takings class.  By challenging that

classification, Suiza put into play at the confirmation hearing whether its claim

should be classified with takings claims or with general unsecured claims.

*Third*, it is irrelevant a claim is "deemed allowed" if there are no objections.

Under the Plan, the time to object to claims runs until 180 days after the effective

date and has thus not expired.  Suiza-App4792–93, § 82.1.  Accordingly, the

Commonwealth is not time-barred from challenging Suiza's proof of claim,

including, if necessary, any allegation that its right to payment results from a

"taking."  Besides, to the extent, if any, Suiza's proof of claim asserted a takings

claim, the Plan's classification of it clearly objected to that part of the claim, and

Suiza litigated it by challenging classification.

*Fourth*, the question whether Suiza holds a takings or contractual claim was

properly decided at confirmation rather than during the claims-objection process.

As a practical matter, its claim can be litigated in either context.  The claims-

objection process is normally designed to determine the amount and priority of claims, which are not the issue here. *See* 11 U.S.C. § 502(b). The issue here was whether Suiza's claim is dischargeable or whether it is a takings claim that is arguably not dischargeable. Questions of dischargeability may be decided in the context of Plan confirmation. *See, e.g.*, *In re Hines*, 193 F. App'x 391, 397 (6th Cir. 2006); *In re Andersen*, 215 B.R. 792, 795 (B.A.P. 10th Cir. 1998), *aff'd*, 179 F.3d 1253 (10th Cir. 1999). Suiza cites no case holding that the "nature" of a claim can only be resolved in the claims-objection process rather than at confirmation.[14]

*Fifth*, Suiza's position elevates form over substance. Suiza had a full and fair opportunity to litigate whether its right to payment arises from a taking or a breach of contract. Suiza submitted briefing on that question, *see* Suiza-App352–83, 593–96, 1058–70, 3964–80, 3981–85, 3986–89, 3990–93, and it participated in argument at the Plan confirmation hearing, *see* Suiza-App1476–77, 1947–54,

---

[14] *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 497 (B.A.P. 9th Cir. 2003), is inapposite because that case involved an objection to the *amount* of a claim, which is not the issue here. Moreover, the *Varela* debtor "sandbag[ged]" the creditor by inserting a claim objection into a reorganization plan in the hopes the creditor would not notice it. 293 B.R. at 497. Here, by contrast, Suiza put the nature of its claim at issue in its confirmation objection by asserting its claim must be excepted from discharge. *See* Suiza-App352–83. Suiza had notice and opportunity to address whether its claim arose from a taking or a breach of contract.

2709–19.  It thus received all the process it was due.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).  As a practical matter, it makes no difference whether the takings-versus-contract issue was litigated as part of the claims-objection process or at confirmation because the Title III court would have reached the same conclusion either way.[15]

### C.    The Plan Does Not Discriminate Against Suiza.

Suiza's argument that the Plan "unfairly discriminates" is just a restatement of its argument that it holds a takings claim that cannot be discharged.  Suiza Br. 28–33.  Significantly, if the Board's cross-appeal is sustained, takings claims and general claims will be treated equally.  Thus there will be no discrimination, let alone unfair discrimination between the treatments of takings claims and general unsecured claims.  If the Board's cross-appeal is not sustained, the full payment to takings claims will be required as a matter of law, and there will be no substance to the charge that general unsecured claims not entitled to full payment are suffering unfair discrimination.  Accordingly, in substance, Suiza is arguing about whether its claim is a takings claim, not whether its treatment reflects unfair discrimination.

---

[15] Suiza's contention it should have been given the opportunity to present "additional evidence as to the constitutional nature of the claim" makes little sense.  Suiza Br. 25.  Suiza had the opportunity to present evidence below.  If the Commonwealth further objects to Suiza's claim, Suiza will have an opportunity to respond.

The alleged "discrimination" arises from the Plan's provision of a full recovery for parties with takings claims but only a 50% recovery for Suiza. *Id.*; *compare* Suiza-App4747, § 57.1, *with* Suiza-App4747–48, § 58.1. Suiza alleges its claim is for a taking and therefore must receive the same treatment as other takings claims. Suiza Br. 28. Suiza does not have a takings claim, however.

### D. The Plan Does Not Contain Non-Consensual Third-Party Releases.

Suiza's final challenge to the Plan is puzzling. It complains the Plan improperly discharges claims Suiza has against third parties who are not debtors in this case. Suiza Br. 33–37. In support, Suiza cites § 57.1(b) of the Plan, which provides that, after Suiza receives a distribution from the Commonwealth on its claim, that claim shall be discharged "and shall not be recouped . . . from any other source." Suiza Br. 33 n.99 (citing Suiza-App3678, § 57.1(b)). Section 57.1(b) is not a third-party release, however. It merely provides that once Suiza's claim against the Commonwealth for payment under the Settlement Agreement is treated and discharged, Suiza cannot recover any additional money on that claim from the Commonwealth or any other signatory to the Settlement Agreement, which are all part of the Commonwealth government and not independent entities. *See* Suiza-App10–12 (signature page). The provision does not release any claims Suiza may have against third parties that are not part of the Commonwealth government.

Suiza argues § 57.1(b) improperly releases a takings claim it has against "the public." Suiza Br. 33. It is not clear what that means. There is no such thing as a takings claim against the "public." If Suiza has a claim for a taking, it would be against the Commonwealth government (not the "public"), and it would be properly discharged under the Plan. In any event, Suiza voluntarily dismissed with prejudice its takings claim, so it no longer has any takings claim at all—never mind a takings claim against the "public." Suiza-App5–6. The Title III court thus correctly held that, except for certain releases agreed to by some of the creditors not including Suiza, the Plan does not release any claims a creditor holds against any non-debtor. FOMB-Add146.

## IV.  THE COURT LACKS JURISDICTION OVER THE INDIVIDUAL APPELLANTS' APPEAL.

The Court does not have jurisdiction over the Individual Appellants' appeal, which purports to challenge the Title III court's "holding that Act 80-2020, Act 81-2020, and Act 82-2020 are preempted by PROMESA." Individual-Add254. There was no such holding below. Instead, the Title III court noted the preemption question was "mooted by the Court's approval of the [Stipulation]" in the prior adversary proceeding, which invalidated the Acts on other grounds. FOMB-Add97. There is thus no appealable order and therefore no remedial order this Court could issue. *See Chevron USA Inc. v. Sch. Bd. Vermilion Parish*, 294 F.3d 716 (5th Cir. 2002) (dismissing appeal where issue was not decided below).

The appeal is also moot.  Even if the Court were to hold PROMESA does not preempt Acts 80–82, it would have no practical effect because the Acts are already off the books.  *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (dismissing appeal where court could not provide appellant "any effectual relief").

In their opening brief, the Individual Appellants attempt to challenge the Stipulation invalidating Acts 80–82, which was so ordered by the Title III court. Individual Br. 17–21.  The Title III court's order endorsing the Stipulation was never appealed, however, and is now final.  The Individual Appellants cannot challenge the Stipulation or the order adopting the Stipulation through an appeal of the Confirmation Order.  The Individual Appellants lack standing to challenge the Stipulation in any event because they are neither parties to it nor third-party beneficiaries, and they were not parties to the adversary proceeding resolved by the Stipulation.  *See In re Thompson*, 965 F.2d 1136, 1148 (1st Cir. 1992).[16]

The bottom line is that the only order under review here is the Confirmation Order, and that order did not address Acts 80–82.  The Individual Appellants lack

---

[16] Contrary to the Individual Appellants' assertion, there is no need for further fact-finding to reject their position.  Individual Br. 22–27.  They have identified no facts that would change the analysis.

standing to challenge the Confirmation Order anyway because they did not object

to the Plan below. *See In re Watson*, 403 F.3d 1, 7 (1st Cir. 2005).

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court

reverse the Title III court's holding that prepetition, unsecured takings claims

cannot be impaired by the Plan; affirm the Title III court's ruling that the claims

brought by Suiza and the Cooperativas can be impaired and discharged; and

dismiss the appeal brought by the Individual Appellants.

Dated:  April 1, 2022                                         Respectfully submitted,

                                                             */s/ Timothy W. Mungovan*

TIMOTHY W. MUNGOVAN                       MARTIN J. BIENENSTOCK
JOHN E. ROBERTS                           JEFFREY W. LEVITAN
ADAM L. DEMING                            MARK D. HARRIS
PROSKAUER ROSE LLP                        BRIAN S. ROSEN
One International Place                    EHUD BARAK
Boston, MA 02110                          LUCAS KOWALCZYK
Tel: (617) 526-9600                       PROSKAUER ROSE LLP
tmungovan@proskauer.com                   Eleven Times Square
jroberts@proskauer.com                    New York, NY 10036
ademing@proskauer.com                     Tel: (212) 969-3000
                                          mbienenstock@proskauer.com
PAUL V. POSSINGER                         jlevitan@proskauer.com
PROSKAUER ROSE LLP                        mharris@proskauer.com
70 West Madison, Suite 3800               brosen@proskauer.com
Chicago, IL 60602                         ebarak@proskauer.com
Tel: (312) 962-3550                       lkowalczyk@proskauer.com
ppossinger@proskauer.com

JOSEPH S. HARTUNIAN
PROSKAUER ROSE LLP

1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004
Tel: (202) 416-6800
jhartunian@proskauer.com

*Counsel to the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the type-volume limitations set forth in Fed. R. App. P. 28.1(e)(2)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 15,220 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font.

Dated:  April 1, 2022

*/s/ Timothy W. Mungovan*
Timothy W. Mungovan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.

Dated:  April 1, 2022

*/s/ Timothy W. Mungovan*
Timothy W. Mungovan
