**<u>Natbony Declaration Exhibit 6</u>**

# United States Court of Appeals

*for the*

# First Circuit

---

Case Nos. 22-1079, 22-1092,
22-1119, 22-1120

---

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO;

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO, SAN JUAN, IN CASE NO. 3:17-BK-03283-LTS

---

## REPLY BRIEF FOR DEBTORS-APPELLEES/CROSS-APPELLANTS

---

TIMOTHY W. MUNGOVAN
JOHN E. ROBERTS
ADAM L. DEMING
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600

JOSEPH S. HARTUNIAN
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW,
  Suite 600 South
Washington, DC 20004
(202) 416-6800

MARTIN J. BIENENSTOCK
JEFFREY W. LEVITAN
MARK D. HARRIS
BRIAN S. ROSEN
EHUD BARAK
LUCAS KOWALCZYK
SHILOH A. RAINWATER
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

PAUL V. POSSINGER
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
(312) 962-3550

*Attorneys for Debtors-Appellees/Cross-Appellants*

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF
THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

*Debtors,*

---

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF
PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE
PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

*Debtors-Appellees/Cross-Appellants,*

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES
RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

*Debtor-Appellee,*

v.

COOPERATIVA DE AHORRO Y CREDITO ABRAHAM ROSA;
COOPERATIVA DE AHORRO Y CREDITO DE CIALES; COOPERATIVA
DE AHORRO Y CREDITO DE JUANA DIAZ; COOPERATIVA DE AHORRO
Y CREDITO DE RINCON; COOPERATIVA DE AHORRO Y CREDITO DE
VEGA ALTA; COOPERATIVA DE AHORRO Y CREDITO DR. MANUEL
ZENO GANDIA,

*Objectors-Appellants/Cross-Appellees,*

SUIZA DAIRY CORP.,

*Objector/Claimant-Appellant/Cross-Appellee,*

LUIS F. PABON BOSQUES; RAUL MARTINEZ PEREZ; ELVIN A. ROSADO
MORALES; CARLOS A. ROJAS ROSARIO; RAFAEL TORRES RAMOS,

*Creditors-Appellants/Cross-Appellees,*

DESARROLLADORA ORAMA, S.E.; C.O.D. TIRE DISTRIBUTORS
IMPORTS ASIA, INC.; CORREA TIRE DISTRIBUTOR INC.; WORLD WIDE
TIRE, INC.; SEQUERIA TRADING CORPORATION; SABATIER TIRE
CENTER, INC.; VICTOR LOPEZ CORTES, INC.; MULTI GOMAS, INC.;
JOSE COLLAZO PEREZ; IVELISSE TAVARES MARRERO; MANUEL
PEREZ ORTIZ; CORAL COVE, INC.; SUCESION ANGEL ALVAREZ

PEREZ; ANTONIO COLON SANTIAGO; COOPERATIVA DE AHORRO Y
CREDITO DE AGUADA; VILMA TERESA TORRES LOPEZ; VIVIANA
ORTIZ MERCADO; ORLANDO TORRES BERRIOS; GERMAN TORRES
BERRIOS; JUAN ALBERTO TORRES BERRIOS; VHERMANOS TORRES
TORRES, INC.; CORPORACION PLAYA INDIA, S.E.; MARIANO RAMOS
GONZALEZ; RAMON MORAN LOUBRIEL; RAFAEL MORAN LOUBRIEL;
ANA MORAN LOUBRIEL; SAN GERONIMO CARIBE PROJECT, INC.;
CARIBBEAN AIRPORT FACILITIES INC.; ESTATE OF RAUL DE PEDRO
& DIANA MARTINEZ; ALFONSO FERNANDEZ CRUZ; SUN AND SAND
INVESTMENTS, CORP.; FDR1500, CORP.; MARGARETA BLONDET;
SUCESION COMPUESTO POR MARIA I. RUBERT BLONDET; SONIA
RUBERT BLONDET; MARGARITA RUBERT BLONDET; SONIA RUBERT,
Administradora; MANUEL A. RIVERA-SANTOS; PABLO MELENDEZ
BRULLA; SUCESION AGUSTIN RODRIGUEZ COLON; GLORIA M.
ESTEVA MARQUES; SUCESION MANUEL MARTINEZ RODRIGUEZ;
LUIS REYES FEIKERT; JORGE RAMON POZAS; MIRIAM SANCHEZ
LEBRON; JUAN A. TAPIA ORTIZ; ANTONIO PEREZ COLON,

*Claimants-Appellees,*

PFZ PROPERTIES, INC.; OSCAR ADOLFO MANDRY APARICIO; MARIA
DEL CARMEN AMALIA MANDRY LLOMBART; SELMA VERONICA
MANDRY LLOMBART; MARIA DEL CARMEN LLOMBART BAS; OSCAR
ADOLFO MANDRY BONILLA; GUSTAVO ALEJANDRO MANDRY
BONILLA; YVELISE HELENA FINGERHUT MANDRY; MARGARET ANN
FINGERHUT MANDRY; VICTOR ROBERT FINGERHUT MANDRY; JUAN
CARLOS ESTEVA FINGERHUT; PEDRO MIGUEL ESTEVA FINGERHUT;
MARIANO JAVIER MCCONNIE FINGERHUT; JANICE MARIE MCCONNIE
FINGERHUT; VICTOR MICHAEL FINGERHUT COCHRAN; MICHELLE
ELAINE FINGERHUT COCHRAN; ROSA ESTELA MERCADO GUZMAN;
EDUARDO JOSE MANDRY MERCADO; SALVADOR RAFAEL MANDRY
MERCADO; MARGARITA ROSA MANDRY MERCADO; ADRIAN
ROBERTO MANDRY MERCADO; VICENTE PEREZ ACEVEDO;
CORPORACION MARCARIBE INVESTMENT; DEMETRIO AMADOR INC.;
DEMETRIO AMADOR ROBERTS; MARUZ REAL ESTATE CORP.; LORTU-
TA LTD., INC.; LA CUARTEROLA, INC.; JUAZA, INC.; CONJUGAL
PARTNERSHIP ZALDUONDO-MACHICOTE; FRANK E. TORRES
RODRIGUEZ; EVA TORRES RODRIGUEZ; FINCA MATILDE, INC.;
JORGE RAFAEL EDUARDO COLLAZO QUINONES,

*Objectors/Claimants-Appellees,*

ANTONIO MARTIN CERVERA; MARIA TERESITA MARTIN; WANDA
ORTIZ SANTIAGO; NANCY I. NEGRON-LOPEZ; GROUP WAGE
CREDITORS; YASHEI ROSARIO; ANA A. NUNEZ VELAZQUEZ;
EDGARDO MARQUEZ LIZARDI; MARIA M. ORTIZ MORALES; ARTHUR
SAMODOVITZ; MIGUEL LUNA DE JESUS; ISMAEL L. PURCELL SOLER;
ALYS COLLAZO BOUGEOIS; MILDRED BATISTA DE LEON; JAVIER
ALEJANDRINO OSORIO; SERVICE EMPLOYEES INTERNATIONAL
UNION (SEIU); INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; MAPFRE PRAICO INSURANCE COMPANY; CERTAIN
CREDITORS WHO FILED ACTIONS IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF PUERTO RICO; MED CENTRO, INC., f/k/a

Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.; ASOCIACION DE JUBILADOS DE LA JUDICATURA DE PUERTO RICO; HON. HECTOR URGELL CUEBAS; COOPERATIVA DE AHORRO Y CREDITO VEGABAJENA; UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM TRUST; PETER C. HEIN; MIRIAM E. LIMA COLON; BETZAIDA FELICIANO CONCEPCION; ANGEL L. MENDEZ GONZALEZ; ASOCIACION DE MAESTROS PUERTO RICO; ASOCIACION DE MAESTROS DE PUERTO RICO-LOCAL SINDICAL; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; SANTANDER SECURITIES LLC; SIDLEY AUSTIN LLP; BMO CAPITAL MARKETS GKST, INC.; CITIGROUP GLOBAL MARKETS INC.; SAMUEL A. RAMIREZ & CO., INC.; MESIROW FINANCIAL, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; MERRILL LYNCH CAPITAL SERVICES, INC.; BARCLAYS CAPITAL INC.; RBC CAPITAL MARKETS, LLC; RAYMOND JAMES & ASSOCIATES, INC.; COMMUNITY HEALTH FOUNDATION OF P.R. INC.; QUEST DIAGNOSTICS OF PUERTO RICO, INC.; U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; U.S. BANK NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; NILSA CANDELARIO; EL OJO DE AGUA DEVELOPMENT, INC.; PEDRO JOSE NAZARIO SERRANO; JOEL RIVERA MORALES; MARIA DE LOURDES GOMEZ PEREZ; HECTOR CRUZ VILLANUEVA; LOURDES RODRIGUEZ; LUIS M. JORDAN RIVERA; TACONIC CAPITAL ADVISORS LP; AURELIUS CAPITAL MANAGEMENT, LP; CANYON CAPITAL ADVISORS LLC; FIRST BALLANTYNE LLC; MOORE CAPITAL MANAGEMENT, LP; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. PEDRO R. PIERLUISI URRUTIA; UNITED STATES, on behalf of the Internal Revenue Service; ASOCIACION PUERTORRIQUENA DE LA JUDICATURA, INC.; FEDERACION DE MAESTROS DE PUERTO RICO, INC.; GRUPO MAGISTERIAL EDUCADORES(AS) POR LA DEMOCRACIA, UNIDAD, CAMBIO, MILITANCIA Y ORGANIZACION SINDICAL, INC.; UNION NACIONAL DE EDUCADORES Y TRABAJADORES DE LA EDUCACION, INC.; MARIA A. CLEMENTE ROSA; JOSE N. TIRADO GARCIA, as President of the United Firefighters Union of Puerto Rico,

*Objectors-Appellees,*

VAQUERIA TRES MONJITAS, INC.; BLACKROCK FINANCIAL MANAGEMENT, INC.; EMSO ASSET MANAGEMENT LIMITED; MASON CAPITAL MANAGEMENT, LLC; SILVER POINT CAPITAL, L.P.; VR ADVISORY SERVICES, LTD; AURELIUS CAPITAL MANAGEMENT, LP, on behalf of its managed entities; GOLDENTREE ASSET MANAGEMENT LP, on behalf of funds under management; WHITEBOX ADVISORS LLC, on behalf of funds under management; MONARCH ALTERNATIVE CAPITAL LP, on behalf of funds under management; TACONIC CAPITAL ADVISORS L.P., on behalf of funds under management; ARISTEIA CAPITAL, LLC, on behalf of funds under management; FARMSTEAD CAPITAL MANAGEMENT, LLC, on behalf of funds under management; FOUNDATION CREDIT, on behalf of funds under management; CANYON CAPITAL ADVISORS LLC, in its capacity as a member of the QTCB Noteholder Group; DAVIDSON KEMPNER CAPITAL MANAGEMENT LP, in its capacity as a member of the QTCB Noteholder Group; SCULPTOR CAPITAL LP, in its capacity as a member of the QTCB

Noteholder Group; SCULPTOR CAPITAL LP, in its capacity as a member of
the QTCB Noteholder Group; AMBAC ASSURANCE CORPORATION;
ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY; CROWN
MANAGED ACCOUNTS, for and on behalf of Crown/PW SP; LMA SPC, for
and on behalf of Map 98 Segregated Portfolio; MASON CAPITAL MASTER
FUND LP; OAKTREE-FORREST MULTI-STRATEGY, LLC (SERIES B);
OAKTREE OPPORTUNITIES FUND IX, L.P.; OAKTREE OPPORTUNITIES
FUND IX (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND IX
(PARALLEL 2), L.P.; OAKTREE HUNTINGTON INVESTMENT FUND II,
L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.; OAKTREE
OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE
OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OAKTREE VALUE
OPPORTUNITIES FUND HOLDINGS, L.P.; OCEANA MASTER FUND LTD.;
OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER
FUND LTD.; PWCM MASTER FUND LTD.; REDWOOD MASTER FUND,
LTD.; BANK OF NEW YORK MELLON; OFFICIAL COMMITTEE OF
UNSECURED CREDITORS; ASSURED GUARANTY CORP.; ASSURED
GUARANTY MUNICIPAL CORP.; OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES; NATIONAL PUBLIC FINANCE GUARANTEE CORP.;
FINANCIAL GUARANTY INSURANCE COMPANY; AMERINATIONAL
COMMUNITY SERVICES, LLC, as servicer for the GDB Debt Recovery
Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as Collateral
Monitor for the GDB Debt Recovery Authority.; ATLANTIC MEDICAL
CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD
FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY
HEALTH CARE SERVICES, INC.; CORP. DE SERV. MEDICOS PRIMARIOS
Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC.; CENTRO DE
SALUD DE LARES, INC.; CENTRO DE SERVICIOS PRIMARIOS DE
SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANER, INC.;
GNMA & US GOVERNMENT TARGET MATURITY FUND FOR PUERTO
RICO RESIDENTS, INC., f/k/a Puerto Rico GNMA & U.S. Government Target
Maturity Fund, Inc.; MORTGAGE-BACKED & US GOVERNMENT
SECURITIES FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto
Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; PUERTO
RICO RESIDENTS BOND FUND I, f/k/a Puerto Rico Investors Bond Fund I;
PUERTO RICO RESIDENTS TAX-FREE FUND, INC., f/k/a Puerto Rico
Investors Tax-Free Fund, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND
II, INC., f/k/a Puerto Rico Investors Tax-Free Fund II, Inc.; PUERTO RICO
RESIDENTS TAX-FREE FUND III, INC., f/k/a Puerto Rico Investors Tax-Free
Fund III, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND IV, INC., f/k/a
Puerto Rico Investors Tax-Free Fund IV, Inc.; PUERTO RICO RESIDENTS
TAX-FREE FUND V, INC., f/k/a Puerto Rico Investors Tax-Free Fund V, Inc.;
PUERTO RICO RESIDENTS TAX-FREE FUND VI, INC., f/k/a Puerto Rico
Investors Tax-Free Fund VI, Inc.; TAX-FREE FIXED INCOME FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund, Inc.;
TAX-FREE FIXED INCOME FUND II FOR PUERTO RICO RESIDENTS,
INC., f/k/a Puerto Rico Fixed Income Fund II, Inc.; TAX-FREE FIXED
INCOME FUND III FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico
Fixed Income Fund III, Inc.; TAX-FREE FIXED INCOME FUND IV FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund IV,
Inc.; TAX-FREE FIXED INCOME FUND V FOR PUERTO RICO
RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund V, Inc.; TAX-FREE
FIXED INCOME FUND VI FOR PUERTO RICO RESIDENTS, INC., f/k/a

Case: 22-1119   Document: 00117945026   Page: 7   Date Filed: 06/22/2022   Entry ID: 6499457

Case:17-03283-LTS Doc#:21454 Filed:06/22/22 Entered:06/22/22 22:44:17   Desc:
Exhibit 6 - FOMB Reply Brief in 22-1119   Page 7 of 43

Puerto Rico Fixed Income Fund V, Inc.; TAX FREE FUND FOR PUERTO
RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund, Inc.; TAX FREE
FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico
Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond
Fund, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND II FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund
II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO TARGET MATURITY FUND
FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio
Target Maturity Fund, Inc.; TAX FREE TARGET MATURITY FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Target Maturity
Fund, Inc.; UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND;
SERVICIOS INTEGRALES EN LA MONTANA (SIM),

*Creditors-Appellees,*

UNITED STATES,

*Respondent-Appellee.*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ...................................................................................................4

I.    THE TITLE III COURT DECIDED JUST-COMPENSATION
      CLAIMS MUST BE PAID IN FULL AS A MATTER OF LAW,
      AND REVIEW IS *DE NOVO*. ...................................................................4

II.   THE DISCHARGE OF UNSECURED, PREPETITION CLAIMS
      FOR JUST COMPENSATION DOES NOT VIOLATE THE FIFTH
      AMENDMENT. ........................................................................................6

      A.    The Just-Compensation Claims at Issue Are Prepetition,
            Unsecured Rights to Payment. ........................................................8

      B.    Unsecured Just-Compensation Claims are Dischargeable in
            Bankruptcy Consistent with the Fifth Amendment...........................8

            1.    The Takings Clause Protects Only Secured and
                  Ownership Property Interests.................................................10

            2.    Just-Compensation Claims Are No Different from Other
                  Unsecured Claims for Purposes of Discharge. .......................12

      C.    The Takings Clause Protects Only Secured or Ownership
            Interests in Specific Property in Existence when the Bankruptcy
            Case is Commenced. ....................................................................16

      D.    The Eight and Ninth Circuits Resolved the Question Presented
            as the Board Urges Here.................................................................20

III.  APPELLEES' REMAINING ARGUMENTS FAIL. ....................................27

CONCLUSION ...............................................................................................28

Case: 23-1058 Document: 00117454026 Page: 9 Date Filed: 06/12/2023 Entry ID: 6491314
Case: 17-03283-LTS Doc#:24504 Filed:06/12/23 Entered:06/12/23 22:44:57 Desc:

Exhibit 6 - FOMB Reply Brief in 22-1119   Page 9 of 43

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
  705 F.3d 44 (1st Cir. 2013).................................................................27

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
  374 F.3d 23 (1st Cir. 2004)...............................................................21

*Bank of N.Y. v. Treco (In re Treco)*,
  240 F.3d 148 (2d Cir. 2001) .............................................................11

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971)..........................................................................13

*Blanchette v. Conn. Gen. Ins. Corps.*,
  419 U.S. 102 (1974).....................................................................10, 16

*Block v. North Dakota*,
  461 U.S. 273 (1983)..........................................................................12

*Boroff v. Tully (In re Tully)*,
  818 F.2d 106 (1st Cir. 1987)...............................................................9

*Chapman v. Houston Welfare Rights Org.*,
  441 U.S. 600 (1979)..........................................................................14

*City of Monterey v. Del Monte Dunes*,
  526 U.S. 687 (1999)..........................................................................14

*Cobb v. City of Stockton (In re City of Stockton)*,
  909 F.3d 1256 (9th Cir. 2018) ...........................................21, 22, 23, 24

*Davis v. Passman*,
  442 U.S. 228 (1979)..........................................................................13

*E. Enters. v. Apfel*,
  524 U.S. 498 (1998)..........................................................................11

*F.C.C. v. NextWave Pers. Commc'ns*,
  537 U.S. 293 (2003)............................................................................7

*Farrey v. Sanderfoot,*
  500 U.S. 291 (1991)..............................................................................9

*Francis v. Desmond (In re Francis),*
  996 F.3d 10 (1st Cir. 2021) ................................................................9

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002)............................................................................14

*In re Ahlers,*
  794 F.2d 388 (8th Cir. 1986) .............................................................19

*In re Murel Holding Corp.,*
  75 F.2d 941 (2d Cir. 1935) ................................................................19

*In re Timbers of Inwood Forest Assocs., Ltd.,*
  793 F.2d 1380 (5th Cir. 1986) ......................................................2, 19

*Katz v. Pershing, LLC,*
  672 F.3d 64 (1st Cir. 2012)................................................................27

*Knick v. Twp. of Scott,*
  139 S. Ct. 2162 (2019)..................................................7, 12, 18, 24

*Kuehner v. Irving Tr. Co.,*
  299 U.S. 445 (1937)........................................................7, 11, 16, 18

*Louisville Joint Stock Land Bank v. Radford,*
  295 U.S. 555 (1935)...................................................................passim

*Luehrmann v. Drainage Dist. No. 7 of Poinsett Cnty.,*
  104 F.2d 696 (8th Cir. 1939) .............................................................26

*Mission Prod. Holdings, Inc. v. Tempnology, LLC,*
  139 S. Ct. 1652 (2019)........................................................................9

*New Haven Inclusion Cases,*
  399 U.S. 392 (1970)......................................................................19, 20

*Poinsett Lumber Mfg. v. Drainage Dist. No. 7,*
  119 F.2d 270 (8th Cir. 1941) .................................................21, 25, 26

*Pratt v. GMAC (In re Pratt)*,
   462 F.3d 14 (1st Cir. 2006)...........................................................9

*Sain v. Cypress Creek Drainage Dist.*,
   257 S.W. 49 (Ark. 1923)..............................................................26

*Soriano v. United States*,
   352 U.S. 270 (1957).....................................................................12

*St. Francis Drainage Dist. v. Austin*,
   296 S.W.2d 668 (Ark. 1956) ........................................................26

*Torres-Rivera v. O'Neill-Cancel*,
   524 F.3d 331 (1st Cir. 2008).........................................................6

*United States v. Sec. Indus. Bank*,
   459 U.S. 70 (1982).......................................................11, 16, 18

*Wright v. Union Cent. Life Ins. Co.*,
   311 U.S. 273 (1940).......................................................................9

**STATUTES**

11 U.S.C. § 101(5)(A).........................................................................7

11 U.S.C. § 363 ....................................................................................3

11 U.S.C. § 547 ..................................................................................17

11 U.S.C. § 552(b) .............................................................................19

11 U.S.C. § 944(c) .......................................................................5, 6, 9

42 U.S.C. § 1983 ........................................................................14, 15

48 U.S.C. § 2161(a) ........................................................................5, 7

48 U.S.C. § 2175 ...............................................................................27

**OTHER AUTHORITIES**

4 *Collier on Bankruptcy* ¶ 506.03 (Alan N. Resnick & Henry J.
   Sommer eds., 16th ed. 2017) .........................................................8

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...........................................................................4

House Rep., No. 595, 95th Cong., 1st Sess ..............................................................3

## PRELIMINARY STATEMENT

Appellees' claims indisputably arose prepetition. And no appellee has identified any collateral or other property interest it held during the Title III case. Thus, most of them and the United States admit their claims are prepetition, unsecured claims. Additionally, no appellee disputes that, as a general matter, prepetition, unsecured claims arising under the Constitution are dischargeable in bankruptcy. Rather, appellees contend the affirmative obligation in the Fifth Amendment to pay just compensation puts prepetition, unsecured just-compensation claims outside the reach of the bankruptcy power the Constitution grants Congress. Given that most rights are illusory if not enforceable with money damages, and the Supreme Court has recognized in many circumstances, violations of constitutional rights are remediable with damages, appellees' whole argument turns on their proposition that the remedy for a taking is somehow unique and immune from the bankruptcy power while damages for violations of other constitutional rights are not. Unsurprisingly, the jurisprudence and logic disprove that proposition.

Appellees latch onto the Supreme Court's ruling that the "bankruptcy power . . . is subject to the Fifth Amendment," *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935), but they fail to acknowledge its context and *Radford*'s next three sentences. Under the Fifth Amendment, the *Radford* ruling

Case: 22-1119   Document: 00117045426   Page: 14   Date Filed: 06/12/2023   Entry ID: 6491314

Case: 17-03283-LTS   Doc#:24540   Filed:06/22/23   Entered:06/22/23 22:44:57   Desc:
Exhibit 6 - FOMB Reply Brief in 22-1119   Page 14 of 43

barred the bankruptcy statute from taking creditors' interests (mortgage rights) in property of the bankruptcy estate.  Here, appellees have no property interests.  The next sentence in *Radford* provides:  "Congress may discharge the debtor's personal obligation."  *Id.*  Here, that obligation is the Commonwealth's obligation to pay just compensation.  Appellees also ignore the next sentences of *Radford* explaining the taking there was of "substantive rights in specific property," which the creditor held when the bankruptcy case was filed.  *Id.* at 590.  The creditors here had no substantive rights in specific property when the Title III case was filed.

The United States concedes *Radford*'s statement that the bankruptcy power is "subject to" the Fifth Amendment does not control because it concerned a "question distinct from the one presented here."  U.S. Br. 8.  It further concedes appellees in this case hold unsecured, prepetition claims.  *Id.* at 11.  The United States and other appellees nevertheless argue that unsecured claims under the Takings Clause are somehow special and must be paid in full because the Fifth Amendment requires payment of just compensation.

Appellees overlook that, as shown below, application of the Fifth Amendment to bankruptcy cases is routine.  Bankruptcy statute requirements to provide adequate protection of collateral and to pay creditors its value emanate from the Fifth Amendment.  *See, e.g.*, *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1396 (5th Cir. 1986) (citing House Rep., No. 595, 95th Cong.,

1st Sess., at 339).  In *Timbers* and other chapter 11 cases of partnership or corporate entities, the government was not a party.  Those cases' treatment of secured claims can be tied to the Fifth Amendment only because the bankruptcy statute permits use and consumption of creditors' collateral for a public use.  11 U.S.C. § 363; House Rep., No. 595, at 334–35.  As shown by the legislative history of the Bankruptcy Code, bankruptcy serves the public by preserving jobs, investments, and competitors.  House Rep. No. 595 at 220–21.  No appellee has cited a decision issued since the first constitutional municipal-bankruptcy statute in 1937 holding a municipality liable for creditors' collateral it consumed prepetition.  Instead, the debt secured by that collateral has been discharged.  Appellees are asking this Court to impose liabilities the debtor-creditor laws have no mechanism to restructure.  This Court should thus join the only two Circuits to address the question and hold that unsecured, prepetition claims for just compensation are dischargeable in bankruptcy.

Appellees accuse the Board of reading the bankruptcy power to override the Fifth Amendment.  But there is no conflict between the bankruptcy power and the Fifth Amendment in this case.  The Fifth Amendment applied fully here:  When a taking occurred before bankruptcy, the claimholders immediately received a right to payment of just compensation.  When the Commonwealth later commenced a Title III case, however, the bankruptcy power authorized Congress to discharge

3

those and other unsecured obligations without payment in full. In line with Supreme Court jurisprudence dating from *Radford*, the discharge of those personal obligations is permissible under the Fifth Amendment. It is appellees who strain to place the Fifth Amendment and the bankruptcy power into conflict by asserting prepetition money claims to just compensation created by the Fifth Amendment conflict with the Constitution's grant to Congress of the bankruptcy power to restructure money claims. Neither the Title III court nor appellees offer any rationale for interpreting the two provisions to conflict and overruling basic canons that favor interpretations giving each provision validity and rendering them compatible.[1] Under the Board's reading, both provisions are given effect. The Fifth Amendment provided appellees prepetition rights to just compensation, and the bankruptcy power allowed those claims to be restructured.

## **ARGUMENT**

I. **THE TITLE III COURT DECIDED JUST-COMPENSATION CLAIMS MUST BE PAID IN FULL AS A MATTER OF LAW, AND REVIEW IS *DE NOVO*.**

Below, several claimants objected to confirmation of the Plan's predecessor on the ground it did not provide full payment for their Fifth Amendment takings claims for just compensation. The Confirmation Order sustained the objections

---

[1] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012).

and confirmed the revised Plan providing for (*i*) payment in full of such claims if the Confirmation Order becomes final and no longer subject to review, or (*ii*) the lesser treatment for other general unsecured claims if the Confirmation Order's takings requirements are reversed.  Because at present the takings claims are paid in full, the Confirmation Order nowhere provides that, pursuant to 11 U.S.C. § 944(c)(1), the takings claims are non-dischargeable and it nowhere provides or implies the takings claims are made non-dischargeable in the court's discretion to avoid a constitutional issue.  To the contrary, the Title III court ruled at least fourteen times the takings claims must be paid in full to satisfy the Fifth Amendment.  *See, e.g.*, FOMB-Add55–57; FOMB-Add102–03, FOMB-Add106–07.

Remarkably, and clearly to avoid the *de novo* review standard, the United States ignores the record and, without record support, argues "the district court avoided the need to resolve that issue by exercising its discretion to exclude the claims from discharge under the plan."  U.S. Br. 5.  But that is simply not what happened below.  The United States also misrepresents the statute.  It argues it is proper here to exclude claims from discharge under 11 U.S.C. § 944(c)(1) because "Congress has not specifically enumerated what debts are nondischargeable."  *Id.*  But Congress has enumerated which debts are non-dischargeable:  11 U.S.C. § 944 (incorporated by 48 U.S.C. § 2161(a)) provides "all debts" are discharged other

than those identified in § 944(c).  Even other appellees reject the United States'
"discretion" argument because it has no support in the record.  *See, e.g.*, Finca
Matilde Br. 12 n.1.  In any case, even if the Title III court's decision could be
considered an exercise of discretion (which it was not), an exercise of discretion
based on a mistake of law is reversible error.  *See Torres-Rivera v. O'Neill-Cancel*,
524 F.3d 331, 336 (1st Cir. 2008).

## II.   THE DISCHARGE OF UNSECURED, PREPETITION CLAIMS FOR JUST COMPENSATION DOES NOT VIOLATE THE FIFTH AMENDMENT.

Except for certain creditors' rights to escrowed funds that partially secured
their takings claims (which were never proposed to be impaired), the just-
compensation claims treated by the Plan are unsecured, prepetition rights to
payment—a point the United States and other appellees concede.  *See, e.g.*,
U.S. Br. 11.  Nearly a century of jurisprudence confirms that unsecured, prepetition
claims can be impaired and discharged regardless of whether they derive from
constitutional violations.  Consistent with that precedent, two Circuits have held
claims for just compensation are dischargeable.

Appellees nevertheless argue prepetition, unsecured claims for just
compensation under the Takings Clause are uniquely non-dischargeable because
*Radford* provides "[t]he bankruptcy power . . . is subject to the Fifth Amendment."
295 U.S. at 589.  The Supreme Court has never construed the Fifth Amendment to

restrict the dischargeability of any unsecured, prepetition claims, however. To the contrary, the Court has long held the Fifth Amendment proscribes only the exercise of the bankruptcy power to affect specific property interests in existence during the bankruptcy case. Each Supreme Court ruling shows the bankruptcy power being "subject to" the Fifth Amendment means the exercise of the bankruptcy power itself cannot effectuate a taking of property rights.

The operation of the bankruptcy power on appellees' prepetition, unsecured claims does not violate the Fifth Amendment because the Fifth Amendment does not protect unsecured claims. All appellees concede the relevant taking of their real property occurred prepetition, and the Supreme Court has made clear a claim for just compensation arises at the time of the taking. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019). A just-compensation claim is a "right to payment" of money, falling within the broad definition of "claim" under the Bankruptcy Code and PROMESA. 11 U.S.C. § 101(5)(A) (incorporated by 48 U.S.C. § 2161(a)); *see also F.C.C. v. NextWave Pers. Commc'ns*, 537 U.S. 293, 302 (2003) (construing "claim" as having the "broadest available definition"). No appellee has pointed to any specific property securing their claim. They are thus unsecured claims which arose prepetition, and the Supreme Court has long held the discharge of unsecured claims does not violate the Fifth Amendment. *See, e.g.*, *Kuehner v. Irving Tr. Co.*, 299 U.S. 445, 452 (1937).

### A.   The Just-Compensation Claims at Issue Are Prepetition, Unsecured Rights to Payment.

As an initial matter, it is clear the takings claims at issue in this appeal are prepetition, unsecured claims for payment.  Appellees do not contest that the Commonwealth took their property prior to the commencement of its Title III case. Nor does any appellee identify any "specific items of property" securing their claims other than certain escrowed funds not at issue in this appeal.  *See* 4 *Collier on Bankruptcy* ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) (defining "secured claims").  Indeed, several appellees concede—as they must— the takings claims proposed to be discharged by the Plan are unsecured, prepetition rights to payment.  *See* U.S. Br. 11; Finca Matilde Br. 27.  The Title III court similarly acknowledged that characterization when it held just-compensation claims need not be secured to survive discharge.  FOMB-Add106 n.37.[2]

### B.   Unsecured Just-Compensation Claims are Dischargeable in Bankruptcy Consistent with the Fifth Amendment.

It is well established that unsecured claims may be impaired and discharged in bankruptcy.  As a general matter, the Bankruptcy Code "[s]afeguards . . . the

---

[2] PFZ's contrary assertion that its takings claim is "secured" by a "pledge" of just compensation under the Takings Clause itself is meaningless double-talk.  PFZ is contending its claim for just compensation is secured by itself, without ever identifying any collateral.  PFZ Br. 24.  Notably, when PFZ filed its proof of claim against the Commonwealth, it conceded the claim was *not* secured.  *See* FOMB-App64 (Claim No. 20351).  PFZ has not attempted to amend its claim.

8

rights of secured creditors . . . to the extent of the value of" their collateral. *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278 (1940); *see also Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) (stating that "secured interests survive bankruptcy"). Yet "unsecured creditors . . . in a typical bankruptcy may receive only cents on the dollar." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019); *Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 17 (1st Cir. 2006) ("[T]he unsecured portion of a secured creditor's claim may be discharged."). Allowing the discharge of such claims is critical to ensuring that debtors receive a "fresh start," which is a principal purpose of bankruptcy. *See Francis v. Desmond (In re Francis)*, 996 F.3d 10, 14 (1st Cir. 2021).

Suiza Dairy offers the unremarkable observation that unsecured claims are not "automatically" dischargeable because the Bankruptcy Code and PROMESA except certain unsecured claims from discharge. Suiza Dairy Br. 14. Congress's decision to carve out specific exceptions does not help Suiza Dairy, however. In 11 U.S.C. § 944(c), Congress excepted certain claims from discharge, but it did not except just-compensation claims. Exceptions to discharge should be construed narrowly in favor of the debtor. *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

None of the other appellees disputes the general rule that unsecured claims are dischargeable. They simply contend secured and unsecured *takings* claims are

9

immunized from discharge by the Fifth Amendment, to which the bankruptcy power is "subject" under *Radford* and its progeny.  *See, e.g.*, Sucesión Mandry Mercado Br. 7; Cooperativas Br. 22.  That position has no legal support and runs contrary to over a century of jurisprudence.

> ### 1. *The Takings Clause Protects Only Secured and Ownership Property Interests.*

Several appellees argue the text of the Takings Clause makes no distinction between secured and unsecured interests.  *See* Finca Matilde Br. 25; *see also* Suiza Dairy Br. 14.  Thus, they argue, the Title III court correctly ruled the existence of a security interest in specific property "is not determinative of Fifth Amendment protection."  PFZ Br. 18 (quoting FOMB-Add105).

The Supreme Court has limited the Takings Clause's protections in bankruptcy cases to secured property interests and ownership, however.  *See, e.g.*, *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 162 (1974) (Fifth Amendment protected estate's ownership of railroad assets); *Radford*, 295 U.S. at 589 (Fifth Amendment protected mortgagees' security interests).  In *Radford*, the Court made clear that, although the bankruptcy power is subject to the Fifth Amendment, secured and unsecured creditors receive "fundamentally" different protections. 295 U.S. at 588.  As the Court explained, the Fifth Amendment protects only "rights in specific property" while permitting the discharge of the debtor's personal obligations.  *See id.* at 601.  Expanding on that distinction, the Court subsequently

10

held that, where a creditor lacks a "property right in[] the debtor's assets," the Fifth

Amendment does not prohibit impairing the creditor's remedy against the debtor if

such impairment is "consonant with a fair, reasonable, and equitable distribution of

those assets." *Kuehner*, 299 U.S. at 452.  More recently, the Supreme Court

confirmed that a taking of "property within the prohibition of the Fifth

Amendment" occurs only when the bankruptcy power is "used to defeat traditional

property interests." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982); *see*

*also E. Enters. v. Apfel*, 524 U.S. 498, 544 (1998) (Kennedy, J., concurring in the

judgment and dissenting in part) (under *Security Industrial Bank*, a taking "must

relate to a specific property interest to implicate the Takings Clause").  It therefore

is irrelevant that the Takings Clause does not expressly distinguish between

secured and unsecured interests.  The Supreme Court has long recognized

"fundamental" differences in the Fifth Amendment's protections of secured and

unsecured interests in bankruptcy.  Simply put, "[i]f the claim is unsecured, it is

not 'property' for purposes of the Takings Clause" and may be discharged without

payment in full.  *Bank of N.Y. v. Treco (In re Treco)*, 240 F.3d 148, 161 (2d Cir.

2001).[3]

---

[3] Notably, the Board is not proposing to pay appellees nothing.  The Plan provides
for fair payment for all unsecured claims, including just-compensation claims, if
the Title III court's just-compensation ruling is reversed.

### 2.    *Just-Compensation Claims Are No Different from Other Unsecured Claims for Purposes of Discharge.*

Appellees argue the unsecured takings claims at issue are different from all other unsecured claims because they arise from alleged violations of the Fifth Amendment, which mandates "just compensation" when property is taken for public use. *See, e.g.*, U.S. Br. 7. Unsurprisingly, they offer no authority for the proposition that the Takings Clause operates as a permanent guarantee of full collection that cannot be modified by statute. Nor could they. As no appellee disputes, a claim for just compensation under the Takings Clause is subject to statutes of limitation. *See Block v. North Dakota*, 461 U.S. 273, 292 (1983); *Soriano v. United States*, 352 U.S. 270, 277 (1957). The existence of a statute of limitations is fundamentally incompatible with appellees' theory that a claim for just compensation can never be extinguished by statute or subsequent events.[4]

The United States counters that "greater" interests support denying just compensation when a limitations period lapses, *see* U.S. Br. 15–16, but it fails to identify what those interests are, much less explain how such "interests" override

---

[4] The Supreme Court's statement that nothing "can relieve [the government] of the duty to provide compensation" for a taking does not counsel otherwise. Suiza Dairy Br. 5 (quoting *Knick*, 139 S. Ct. at 2171). That statement meant only that a government cannot nullify a Fifth Amendment claim after it takes property by, for example, "repeal[ing] the challenged ordinance." *Knick*, 139 S. Ct. at 2171. The Court did not suggest that Congress cannot modify just-compensation remedies by operation of law.

any constitutional concerns in that context or how to measure "greatness." If the
Constitution ensures an inviolable right to just compensation, that right would
displace all other interests, no matter how "great." Nor does the United States
explain why the interests in a bankruptcy case, where almost all creditors receive
substantial reductions on their claims due to insufficient funds, are somehow lesser
than with statutes of limitation. Notably, no appellee attempts to defend the Title
III court's reasoning relating to statutes of limitation.[5]

Contrary to the contention of some appellees, the reference to "just
compensation" in the Takings Clause does not elevate Fifth Amendment claims
over claims brought under other constitutional provisions. The Constitution
provides an implied damages remedy for violations of other constitutional rights
besides the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 230 (1979);
*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,
396 (1971). A damages remedy is often the only way to remedy certain violations
of other constitutional rights. *See Bivens*, 403 U.S. at 409–10 (Harlan J.
concurring). Since such damages remedies can be discharged in bankruptcy, there
is no reason why Fifth Amendment claims cannot likewise be discharged. It is of

---

[5] PFZ dismisses the analogy to statutes of limitation as "clearly inapplicable" in
light of *Radford*'s supposed command that all takings claims survive bankruptcy.
*See* PFZ Br. 29–30. As explained above, however, *Radford* does not prohibit the
discharge of unsecured claims for just compensation. *See* pages 10–11, *supra*.

no moment that such implied remedies are available only for a "narrowly limited set of constitutional violations" and not for a "particular amount of compensation." U.S. Br. 16.  Implied remedies are available for at least *some* violations, and they can result in a *non-zero amount* of compensation for those violations.  The Takings Clause resembles a liquidated-damages provision in that it "specifies the quantum of compensation" for its violation, *see id.* at 5, but the *measure* of the remedy does not speak to whether a claim to that measure of damages can be discharged in bankruptcy.  As the Supreme Court has explained, "just compensation is[] like ordinary money damages," *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 710 (1999), and there is thus no reason why unsecured claims for just compensation cannot be discharged the same as any other unsecured claim.

For similar reasons, appellees' attempts to distinguish just-compensation claims from § 1983 claims fall short.  As shown in the Board's opening brief, constitutional claims under § 1983 are dischargeable in bankruptcy, and therefore Fifth Amendment claims should be as well.  *See* FOMB Br. 39–40.  PFZ argues that, unlike the Fifth Amendment, § 1983 is subject to "modifications" and "does not create any substantive rights."  PFZ Br. 32.  But § 1983 is merely an enforcement mechanism for "rights independently 'secured by the Constitution,'" which are substantive and not subject to modification.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600,

617–18 (1979) ("All civil suits, as every lawyer understands, which [§ 1983] authorizes, are not based upon it; they are based upon the right of the citizen."). That the *enforcement mechanism* is statutory does not justify differential treatment of the underlying fundamental claim in bankruptcy.

The United States counters that the Fifth Amendment is unique in that it conditions governmental takings on the payment of just compensation, whereas other amendments prohibit certain actions altogether.  U.S. Br. 5.  The mention of "just compensation" in the Takings Clause, however, simply articulates the circumstances in which takings are *allowed*, *i.e.*, where the taking is for public use and for just compensation.  The mere allowance of a taking does not suggest an intent to create a *non-dischargeable claim* based on that taking.  Other amendments do not allow the government to violate personal freedoms on the condition that it pays damages—those amendments just prohibit certain governmental conduct.  There is no logical reason to infer from that fact alone that it was intended just compensation claims would for some reason be non-dischargeable in bankruptcy, but other claims based on constitutional rights would not be.  None of the appellees provide any reasoning to support such a contention.

### C.   The Takings Clause Protects Only Secured or Ownership Interests in Specific Property in Existence when the Bankruptcy Case is Commenced.

As shown in the Board's opening brief, the Fifth Amendment protects only property interests that exist after the filing of a bankruptcy case.  FOMB Br. 29–35. Several appellees downplay the distinction between pre- and postpetition takings as "illogical" because the Fifth Amendment itself does not expressly make such a distinction.  Sucesión Mandry Mercado Br. 2; Finca Matilde Br. 25.  Manifestly, the Constitution sets forth broad principles, not details.  Its grant of the bankruptcy power to Congress demonstrates its recognition that claims must be subject to adjustment in bankruptcy.  Appellees gloss over binding jurisprudence narrowing the scope of the Fifth Amendment's protections in the bankruptcy context.

The Supreme Court has never held unsecured, prepetition claims are non-dischargeable.  Rather, it has held only that the bankruptcy power cannot be exercised in a manner that effectuates a taking of interests in specific property without paying for it.  *See Sec. Indus. Bank*, 459 U.S. at 74 (considering whether "the exercise of the bankruptcy power . . . takes property within the prohibition of the Fifth Amendment"); *Kuehner*, 299 U.S. at 451 (same).  Indeed, every case in which the Court has addressed a takings issue in the bankruptcy context has centered on whether the treatment of a creditor's specific property interest postpetition would effectuate a taking.  *See, e.g.*, *Blanchette*, 419 U.S. at 162

16

(Regional Rail Reorganization Act worked a taking by requiring that certain companies transfer assets); *Radford*, 295 U.S. at 589 (Frazier-Lemke Act effected a taking by substantially impairing mortgagee's enforcement rights).  In that context, where the bankruptcy power and the Fifth Amendment both apply to property rights in existence during the bankruptcy case, the Court has ruled the former is "subject to" the latter, so the value of the property must be paid. *Radford*, 295 U.S. at 589.  Nothing of the sort occurred here, where PROMESA did not cause the alleged takings, which occurred prepetition.[6]

The United States correctly points out that *Radford* and *Blanchette* addressed a "question distinct from the one presented here," *i.e.*, whether the taking "of property rights in bankruptcy *itself*" requires just compensation.  U.S. Br. 8; *see also* Finca Matilde Br. 23.  That is precisely the point.  The Supreme Court has held the Fifth Amendment protects only property interests in existence

---

[6] As the Board explained in its opening brief, FOMB Br. 32–33, the bankruptcy power can take property interests protected by the Fifth Amendment even during bankruptcy, such as through the avoidance of prepetition preferential transfers under Bankruptcy Code § 547.  That provision allows debtors to escape full payment of unsecured, prepetition obligations, yet the United States dismisses the comparison because the avoided obligation is not "the obligation to pay just compensation for a taking of property."  U.S. Br. 10–11.  The United States also misunderstands how § 547 works.  At the time of the clawback, the target of the clawback has full legal rights to funds received from the debtor in payment of a valid debt and is not a "creditor" with a claim that will be treated in the bankruptcy.  In that sense, the clawback of a preference works a "taking" and is not precluded by the Fifth Amendment.

as of the commencement of the bankruptcy case and has never extended its

protections to unsecured, prepetition claims treated in bankruptcy.  On the

contrary, the Court has held such claims are not protected by the Fifth Amendment.

*See Kuehner*, 299 U.S. at 452.  Simply put, unless the exercise of the bankruptcy

power "*takes property* within the prohibition of the Fifth Amendment," the

Takings Clause is not implicated.  *Sec. Indus. Bank*, 459 U.S. at 75 (emphasis

added).  Applying the Fifth Amendment's protections to the claims here would

thus be unprecedented.

Appellees contend Congress cannot use the bankruptcy power to "override"

the Takings Clause.  U.S. Br. 10; *see also* Finca Matilde Br. 17; Sucesión Mandry

Mercado Br. 5; Cooperativas Br. 18.  Appellees imagine a conflict that does not

exist, however.  Any alleged violation of the Takings Clause giving rise to a claim

for just compensation already occurred prepetition, when the Commonwealth took

certain private property for public use and did not pay the full amount of just

compensation. *See Knick*, 139 S. Ct. at 2171.  Allowing the discharge of those

claims in bankruptcy, years after the underlying takings occurred, does not

implicate the Takings Clause.  Instead, the Takings Clause and the bankruptcy

power have two different effects at two different times, with the Fifth Amendment

creating the claim for just compensation and the bankruptcy power later allowing

the claim and adjusting its treatment in accordance with the treatment of other prepetition, unsecured claims.

Notably, as shown in the Board's opening brief and not disputed by appellees, secured claimholders do not hold non-dischargeable just-compensation claims for a debtor's prepetition consumption of their collateral or for postpetition diminutions in the collateral value before they request adequate protection. *See In re Ahlers*, 794 F.2d 388, 395 n.6 (8th Cir. 1986), *rev'd on other grounds*, 485 U.S. 197 (1988)). Protections in bankruptcy for secured interests "derive[] from the fifth amendment protection of property interests," but even those protections are not "absolute." *Inwood*, 793 F.2d at 370; *see also In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (explaining Fifth Amendment mandates "completely compensatory" relief for secured creditors seeking adequate protection); 11 U.S.C. § 552(b) (creating an "equities of the case" exception to treatment of secured claim).

The *New Haven Inclusion Cases*, 399 U.S. 392, 492–94 (1970), shows the limits of the Fifth Amendment. There, a federal bankruptcy statute enabled a railroad to operate at a loss during the bankruptcy while the value of the secured bondholders' collateral further depreciated. The Supreme Court correctly treated that as a taking of property for public use during the bankruptcy case, but it denied compensation for depreciation and losses predating the valuation of the remaining

collateral because the bondholders had not requested dismissal of the case and did not supply depreciation data. *Id.* The Supreme Court expressly held that while these secured bondholders' rights were entitled to "respect," even they "are not absolute" and had to be balanced against the public interest in a reorganization. *Id.* at 491–92. Similarly, here, appellees have no priority Fifth Amendment claim for the taking of their property prior to the Commonwealth's Title III case. The appellees' argument essentially boils down to the contention they are entitled to an "absolute" right the Supreme Court expressly refused to accord to *secured* creditors in the *New Haven Inclusion Cases*, even though appellees hold only unsecured claims, which the Supreme Court has consistently held can be discharged in bankruptcy without even implicating the Takings Clause.

At bottom, simply chanting the mantra the "bankruptcy power is subject to the Fifth Amendment" does not answer any question relevant to this appeal. Nothing in the Supreme Court's takings jurisprudence suggests prepetition, unsecured claims for just compensation are protected from discharge, especially when they are treated fairly as allowed prepetition, unsecured claims.

### D. The Eight and Ninth Circuits Resolved the Question Presented as the Board Urges Here.

As the United States concedes, the Supreme Court has never decided whether unsecured, prepetition just-compensation claims must be paid in full. U.S. Br. 8; *see also* Finca Matilde Br. 23. The Eighth and Ninth Circuits, however,

have held unsecured just-compensation claims have no such right. *See Cobb v. City of Stockton (In re City of Stockton)*, 909 F.3d 1256 (9th Cir. 2018); *Poinsett Lumber Mfg. v. Drainage Dist. No. 7*, 119 F.2d 270 (8th Cir. 1941). This Court should follow the Eighth and Ninth Circuits, especially when the holding below creates a priority claim for the pre-bankruptcy use of creditors' property interests for the first time ever. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31 (1st Cir. 2004) ("A court of appeals should always be reluctant to create a circuit split without a compelling reason . . . .").

Appellees' attempts to distinguish the decisions from the Eighth and Ninth Circuits miss the mark. Several appellees argue *Stockton* is inapposite because the court found the appeal equitably moot. PFZ Br. 19; Cooperativas Br. 21; Sucesión Mandry Mercado Br. 12–13 n.10. But that argument ignores that the Ninth Circuit went on to reach the merits of the precise question presented in this case. *See Stockton*, 909 F.3d at 1266.

Appellees further argue *Stockton* involved a "convoluted procedural history" and the creditor there (unlike the claimants here) failed to protect his rights. PFZ Br. 21; *see also* U.S. Br. 18; Cooperativas Br. 21. The *Stockton* creditor's failure to seek a determination of his claim's secured status posed a distinct question from whether his unsecured claim was dischargeable as a matter of law if not paid in full, however. *See* 909 F.3d at 1266–69. And it is illogical speculation for the

21

United States to argue the *Stockton* court would have reached a different conclusion concerning the takings claims "had the creditor sought an exemption of the sort that the district court adopted here."  U.S. Br. 18.  Indeed, as explained above, there was no exemption from dischargeability here.

Appellees also argue the *Stockton* majority placed undue emphasis on the fact the creditor held only a monetary claim, given that "all" takings claims are "ultimately reduced to money claims."  PFZ Br. 20.[7]  Appellees miss the point that the claim was not only "purely . . . monetary" but also untethered to any specific property, *see* 909 F.3d at 1267, just like the unsecured claims here.

The United States contends *Stockton* is no longer good law because the Ninth Circuit's statement that the Takings Clause does not require "full compensation" for a taking has been overruled by *Knick*.  *See* U.S. Br. 13.  The statement about "full compensation" in *Stockton* was a mere aside, however, and was not critical to the holding that unsecured, prepetition takings claims are dischargeable.  *See* 909 F.3d at 1267–68.  *Stockton* therefore remains the law of the Ninth Circuit.  In fact, the Supreme Court's ruling in *Knick* may well have caused

---

[7] PFZ takes issue with *Stockton*'s characterization of the claim as a "money claim" because the creditor held "title to the property" during the bankruptcy case.  PFZ Br. 20.  As the Ninth Circuit explained, however, the creditor held only a "bare legal title" that was untethered to any specific property.  *See* 909 F.3d at 1267.  Such title is not cognizable as "property" in the bankruptcy context.  *See id.*

*Stockton*'s dissenting judge to change her mind.  Prior to *Knick*, takings claims were held not to exist before just compensation was denied; so the dissent was effectively observing there was no prepetition claim to discharge in bankruptcy. Now that *Knick* has explained the taking claim existed before the bankruptcy case, the dissent may well have decided it should have been discharged.[8]

Appellees urge this Court to side with the dissent in *Stockton*.  U.S. Br. 12–13; PFZ Br. 19; Sucesión Mandry Mercado Br. 12–13 n.10.  The United States argues the dissent was correct that the guarantee of "just compensation" for a violation of the Takings Clause is unique in the Constitution and cannot be infringed in bankruptcy.  U.S. Br. 12.  But, the dissent answered none of the issues explained here and instead relied on its determination that the claimant still owned the property.  It even acknowledged *Radford*'s "teach[ing]" that the Takings Clause prohibits the impairment of only "substantive rights in specific property." *Stockton*, 909 F.3d at 1272 (Friedland, J., dissenting).  Despite that acknowledgment, it inexplicably found the distinction between secured and unsecured claims unfounded because the Fifth Amendment *itself* does not make that distinction.  *Id.* at 1278.  Similarly, despite noting the Supreme Court has found only takings effectuated *in bankruptcy* violative of the Fifth Amendment,

---

[8] Notably, the dissent agreed with the majority on this point.  *Stockton*, 909 F.3d at 1279 (Friedland, J., dissenting).

*see id.* at 1272–73, the dissent concluded that prepetition takings claims must "pass through bankruptcy unaffected," *id.* at 1278, but again, based on its theory the claimant still owned the property.

The dissent's analysis rested on the assumption the creditor retained a postpetition interest in the property in the form of title to the property. *Id.* at 1276. The United States counters that the dissent's assumption was relevant "only" because it demonstrated the creditor had an outstanding constitutional claim for just compensation, U.S. Br. 13, but that is nonresponsive. Evidently, the dissent believed the creditor had a non-dischargeable constitutional claim because he retained an interest in the property; otherwise, it would have joined the majority.

Additionally, the dissent erroneously posited the denial of a claim for just compensation in a bankruptcy case would violate the Takings Clause based on the since-overturned rule that "no constitutional violation occurs until just compensation has been denied." *Stockton*, 909 F.3d at 1274 (Friedland, J., dissenting) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 n.13 (1985)). The dissent effectively viewed the takings claim as a postpetition obligation which cannot be discharged in a bankruptcy case. The Supreme Court has since overruled *Williamson County* and held a takings claim arises at the moment of the taking. *See Knick*, 139 S. Ct. at 2172–74. The precedent underpinning the dissent's analysis is thus no longer good

law.  The United States asserts that the dissent's analysis did not "turn on" the overruled precedent, U.S. Br. 14, but that is simply incorrect.

Appellees' attempts to distinguish *Poinsett* similarly fail.  There, the Eighth Circuit concluded an unsecured just-compensation claim against a drainage district that had condemned the claimant's property was not "invested with a constitutional sanctity beyond other forms of liability" and thus could be adjusted in composition proceedings.  *Poinsett*, 119 F.2d at 272–73.  In support of that ruling, the court adverted to an earlier decision holding a plan of composition for the drainage district paying pennies on the dollar to bondholders did not effectuate a taking of the bondholders' interests without just compensation.  *See id.* (citing *Luehrmann v. Drainage Dist. No. 7 of Poinsett Cnty.*, 104 F.2d 696, 702–03 (8th Cir. 1939)).

The United States attempts to distinguish *Poinsett* on the ground the Plan in this case does not "itself effect an unconstitutional taking," U.S. Br. 14, but—as explained above—that simply confirms the absence of a Fifth Amendment issue.  The United States also notes that *Luehrmann* found the Fifth Amendment's protections inapplicable to composition proceedings under *Radford*, "as opposed to a bankruptcy proceeding" like this case.  *Id.* at 15.  As the court explained, however, *Radford* opined that no Fifth Amendment issues arise in the context of composition proceedings because such proceedings have "[n]ever . . . affected a *secured claim* held by a single creditor."  *Luehrmann*, 104 F.2d at 703 (quoting

25

*Radford*, 295 U.S. at 586) (emphasis added).  The *Luehrmann* court's

determination that composition proceedings are not "subject to" the Fifth

Amendment is thus based on the same reasoning advanced by the Board here that

only secured claims or ownership triggers the Fifth Amendment in bankruptcy.

PFZ argues *Poinsett* is inapposite because the debtor drainage district was

supposedly "not a governmental entity to which the Takings Clause applies."  PFZ

Br. 21.  That is not the ground on which either *Poinsett* or *Luehrmann* resolved the

Fifth Amendment issue, however, likely because the drainage district had many

attributes of a government such as taxing power.[9]  Those courts rejected the

argument that the Takings Clause precluded the adjustment of just-compensation

claims in composition proceedings on the ground the Fifth Amendment was

inapplicable to *those proceedings* because they did not impair secured

obligations—not because the Fifth Amendment was inapplicable to the *debtor*.

*See Poinsett*, 119 F.2d at 272–73; *Luehrmann*, 104 F.2d at 702–03.

---

[9] *See Sain v. Cypress Creek Drainage Dist.*, 257 S.W. 49 (Ark. 1923) (drainage district liable to pay just compensation for taking private property); *St. Francis Drainage Dist. v. Austin*, 296 S.W.2d 668 (Ark. 1956) (same).  Neither *Poinsett* nor *Luehrmann* undercut the proposition, supported by Arkansas law, that a drainage district has eminent-domain power and is liable to pay just compensation when it uses it.

## III.   APPELLEES' REMAINING ARGUMENTS FAIL.

The remaining arguments raised in the answering briefs are sideshows easily dispelled.  The Cooperativas contend that, because the Plan accounts for full payment of just-compensation claims, this Court's determination as to the dischargeability of such claims "will have no practical effect."  Cooperativas Br. 16–17.  Thus, they contend, the Board seeks an advisory opinion. *Id.*  The confirmed Plan, however, provides for full payment of just-compensation claims only if the Title III court's ruling concerning the requirement to pay such claims in full is upheld on appeal.  Coop-App946–47, § 58.1.  A "live controversy" therefore exists because this appeal will determine whether potentially hundreds of millions of dollars will be paid to the claimants or instead will be available to the Commonwealth to provide essential services to its citizens.  *See ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 54 (1st Cir. 2013)").

The Cooperativas also argue this appeal is improper because "no creditor has complained" about the Plan's treatment of just-compensation claims.  Cooperativas Br. 17.  That is irrelevant because the *Board,* as Title III representative of the Commonwealth pursuant to 48 U.S.C. § 2175*,* is appealing an adverse ruling and has a "personal stake" in the outcome of the appeal.  *See Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012).  The Commonwealth plainly has an interest in

saving approximately $400 million.  The Board's standing to appeal is not

dependent upon objections lodged by other parties.

## CONCLUSION

The Board respectfully requests that the Court reverse the Title III court's

determination that prepetition, unsecured just-compensation claims cannot be

impaired in Title III.

Dated: April 22, 2022                                Respectfully submitted,

                                                     /s/ Timothy W. Mungovan

TIMOTHY W. MUNGOVAN                  MARTIN J. BIENENSTOCK
JOHN E. ROBERTS                      JEFFREY W. LEVITAN
ADAM L. DEMING                       MARK D. HARRIS
PROSKAUER ROSE LLP                   BRIAN S. ROSEN
One International Place              EHUD BARAK
Boston, MA  02110                    LUCAS KOWALCZYK
Tel: (617) 526-9600                  SHILOH RAINWATER
tmungovan@proskauer.com              PROSKAUER ROSE LLP
jroberts@proskauer.com               Eleven Times Square
ademing@proskauer.com                New York, NY 10036
                                     Tel: (212) 969-3000
JOSEPH S. HARTUNIAN                  mbienenstock@proskauer.com
PROSKAUER ROSE LLP                   jlevitan@proskauer.com
1001 Pennsylvania Avenue NW,         mharris@proskauer.com
Suite 600 South                      brosen@proskauer.com
Washington, DC 20004                 ebarak@proskauer.com
Tel: (202) 416-6800                  lkowalczyk@proskauer.com
jhartunian@proskauer.com             srainwater@proskauer.com

                                     PAUL V. POSSINGER
                                     PROSKAUER ROSE LLP
                                     70 West Madison, Suite 3800
                                     Chicago, IL 60602

Tel: (312) 962-3550
ppossinger@proskauer.com

*Attorneys for Debtors-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(g), the undersigned counsel certifies that this document complies as follows:

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(C) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,498 words.

2.     The document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  April 22, 2022

                                        */s/ Timothy W. Mungovan*
                                        Timothy W. Mungovan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system, which electronically served a copy on all counsel of record.

Dated:  April 22, 2022

*/s/ Timothy W. Mungovan*
Timothy W. Mungovan
