# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| IN RE:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>as representative of<br><br>**THE COMMONWEALTH OF PUERTO RICO, et al.,**<br><br>Debtor | Confirmation Date:<br>July 17–21, 24–28, 2023<br><br>PROMESA Title III<br><br>**No. 17 BK 3283-LTS**<br>(Jointly Administered) |
| IN RE:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>as representative of<br><br>**PUERTO RICO ELECTRIC POWER AUTHORITY**<br><br>Debtor. | PROMESA Title III<br><br>**No. 17 BK 4780-LTS**<br>(Jointly Administered) |

## OBJECTION BY THE ENVIRONMENTAL GROUPS TO THE MODIFIED SECOND AMENDED TITLE III PLAN OF ADJUSTMENT OF THE DEBT OF THE PUERTO RICO ELECTRIC POWER AUTHORITY

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ............................................................................................ 2

STANDARD OF REVIEW FOR PLAN CONFIRMATION ........................... 5

ARGUMENT ................................................................................................ 6

A.  The Plan Would Force PREPA to Violate Puerto Rico Law and Energy Policy. ... 8

    i.   The Modified Second Amended Plan interferes with PREPA's obligations to
end Puerto Rico's addiction to fossil fuels. ......................................... 8

    ii.  The Modified Second Amended Plan unfairly penalizes and targets
households that invest in rooftop solar and storage. ....................... 13

    iii. The Modified Second Amended Plan will force PREPA to violate its
obligation to provide universal access to affordable energy. ......................... 16

B.  The Court Should Reject the Modified Second Amended Plan of Adjustment
Because PREB Has Exclusive Approval Authority Over the Plan's Legacy
Charge and FOMB Has Failed to Obtain Required Approval From PREB. ........ 19

    i.   The Modified Second Amended Plan must be rejected because PREB also
possesses the exclusive mandate to ensure all charges imposed on energy
bills in Puerto Rico comply with the Legislature's energy affordability
requirements. ....................................................................... 19

    ii.  The Modified Second Amended Plan must be rejected because PREB has
exclusive approval authority over any charges levied on Puerto Rican energy
consumers. .......................................................................... 21

iii. The Modified Second Amended Plan must be rejected because PREB is the
ultimate arbiter of all finances and charges related to the Puerto Rican
electricity system and energy market. .............................................................. 23

iv. The Modified Second Amended Plan must be rejected because PREB has
significantly expanded authority over its budget and finances to ensure the
proper implementation of Puerto Rican energy policy as required by the
Legislature. ..................................................................................................... 24

v. The Modified Second Amended Plan must be rejected because PREB's
exclusive approval authority over any charges even extends specifically to
charges related to the payment of debt service by PREPA to its
bondholders.............................................................................…..………………25

C. The Modified Second Amended Plan is Not Feasible. .......................................... 29

RELIEF REQUESTED.............................................................................................. 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re City of Detroit,*
  524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................................ 29

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
  No. 17 BK-3567, 2022 WL 6949992 (D.P.R. Oct. 12, 2022) ........................ 3, 5, 34

*In re Mount Carbon Metro. Dist.,*
  242 B.R. 18 (Bankr. D. Colo. 1999) ..................................................................... 29

*In Re: Review of the Puerto Rico Electric Power Authority Integrated
  Resource Plan,*
  PREB Dkt. No. CEPR-AP-2018-0001 ................................................................. 2, 9

**Statutes**

22 L.P.R.A.§ 192 ..................................................................................... 10, 19, 26

22 L.P.R.A. §195 .................................................................................................. 7

22 L.P.R.A. § 196.......................................................................................... *passim*

22 L.P.R.A. § 1014(c) .......................................................................................... 15

22 L.P.R.A. § 1051 .............................................................................................. 19

22 L.P.R.A. § 1054 ........................................................................................ 27, 28

22 L.P.R.A. § 1141 ........................................................................................ *passim*

11 U.S.C. § 1123................................................................................................... 6

48 U.S.C. § 745 ................................................................................................... 3

48 U.S.C. § 2101 ................................................................................................. 2

48 U.S.C. § 2161(a) ............................................................................................. 6

48 U.S.C. § 2174 ......................................................................................... *passim*

Act 17-2019, Puerto Rico Energy Public Policy Act ..................................... 1, 7, 27

Act 57-2014, Puerto Rico Energy Transformation and RELIEF Act............. 19, 27, 28

iv

Act 83-1941, Puerto Rico Electric Power Authority Act............................................... 19

Jones-Shafroth Act of 1917........................................................................................... 3

**Other Authorities**

Puerto Rico Dept. of Envl. and Nat. Resources, Regulation for the
     Control of Atmospheric Pollution Amendment (Rule 102, 210 and
     425, Rule 425) ........................................................................................................ 13

**COME NOW**, Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace Latino de Acción Climática (ELAC), Comité Yabucoeño Pro-Calidad de Vida, Inc. (YUCAE), Alianza Comunitaria Ambientalista del Sureste, Inc. (ACASE), Sierra Club Inc. and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., Amigos del Río Guaynabo, Inc., (collectively, "Environmental Groups"), as parties in interest, by and through the undersigned counsel, and hereby submit this *Objection by the Environmental Groups to the Modified Second Amended Title III Plan of Adjustment of the Debt of the Puerto Rico Electric Power Authority submitted by the Financial Oversight and Management Board*, Dkt. No. 17 BK 3283, Doc. 23663, and in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

We urge the Court to reject the Modified Second Amended Title III Plan of Adjustment proposed by the Financial Oversight and Management Board ("FOMB") for the restructuring of outstanding debt owed by the Puerto Rico Electric Power Authority ("PREPA") for three reasons. Under 48 U.S.C. 2174(b)(3), this Court must reject the Plan because the Modified Second Amended Plan's Legacy Charge would force PREPA to violate Act 17-2019, the Puerto Rican Energy Public Policy Act. Second, under 48 U.S.C. 2174(b)(5), this Court must reject the Plan because the Puerto Rico Energy Bureau ("PREB") has exclusive approval authority over any electricity charges, and FOMB has failed to obtain such approval. Third, under 48 U.S.C. 2174(b)(6), this Court must reject the Plan because it is infeasible: it will

1

inevitably cause mass grid defection and emigration from the archipelago, rendering PREPA unable to finance its debt service.

## BACKGROUND

1. In the aftermath of Puerto Rico's fiscal crisis in 2014, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[1] PROMESA authorizes the FOMB to represent the Commonwealth of Puerto Rico in PROMESA Title III cases. In this capacity, FOMB proposes plans of adjustment for the restructuring of the archipelago's debt.[2] A plan of adjustment may only be confirmed subject to this Title III Court's determination it satisfies Section 314 of PROMESA.[3]

2. In December 2022, FOMB filed the Modified Second Amended Plan of Adjustment of the Debt ("PAD" or "Plan") that would force PREPA customers to pay $5.68 billion of PREPA's $10B of debt.[4] FOMB undertook negotiations with bondholders to issue these new bonds on behalf of PREPA.[5] This debt reduction is lower than that for previously confirmed plans of adjustment for other Puerto Rico agencies, which had their debts reduced from as much as $30.5 billion to $7.4 billion.[6]

---

[1] 48 U.S.C. § 2101.

[2] *Id.* §§ 2121(b)(1), 2161–2177.

[3] *Id.* § 2174(b).

[4] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. D at 6, ECF No. 23664-4; *see also Puerto Rico's Debt Restructuring Process*, Financial Oversight & Management Board for Puerto Rico, https://oversightboard.pr.gov/debt/ (last visited June 12, 2023).

[5] *Id.* at 4; Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, ECF No. 23664.

[6] Findings Of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority at 131–32, ECF No. 19812.

FOMB's plans must effectuate restructuring to restore "fiscal responsibility, access to capital markets, and economic prosperity and growth to Puerto Rico" in line with such reductions and without levying severe impacts on everyday Puerto Ricans.[7]

3. Under the Plan, PREPA must take on $5.68B in new debt, most of which will be used to pay bondholders, with interest. PREPA will be unable to tax any of this interest because of the Jones-Shafroth Act of 1917, granting interest payments by the Puerto Rican government to bondholders a triple exemption from municipal, state, or federal taxation.[8] Puerto Rico's inability to levy taxes on substantial interest payments, compounded with a meagerly reduced financial obligation to investors, will prove problematic if PREPA cannot finance exorbitant debt commitments.

4. The Plan relies on a Legacy Charge[9] that largely consists of a fixed charge that will render electricity costs on the island even more unaffordable. Puerto Ricans' average electricity bills are double that of electricity bills in the continental United

---

[7] *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK-3567, 2022 WL 6949992, at *2 (D.P.R. Oct. 12, 2022).

[8] *See* 48 U.S.C. § 745 (providing that "all bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.").

[9] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. P at 2, ECF No. 23664-16.

States,[10] and Puerto Ricans' median income is approximately half of that in Mississippi, the poorest U.S. state.[11] The Legacy Charge would force electricity prices past a point of tolerability.

5. The FOMB decided to collect the Legacy Charge largely through a fixed charge, in order to penalize the use of grid-connected rooftop solar and storage systems. The FOMB notes that customers with these systems can avoid volumetric charges, but not fixed charges.

6. While the fossil fuel-powered grid has failed Puerto Ricans, rooftop solar and storage systems represent an affordable, resilient, and sustainable option for Puerto Ricans,[12] as well as the archipelago's main pathway to coming into compliance with Act 17. The Legacy Charge is blind to Puerto Rico's unsustainably expensive electricity bills and structural obstacles to energy consumption.

7. Given the state of electricity prices and the energy system in Puerto Rico, the Plan will force energy consumers off the fossil fuel-powered electricity grid by rendering

---

[10] Fred Imbert, *Five Years After Hurricane Maria, Puerto Rico's Power Grid is Still Costly and Unreliable*, CNBC (Oct. 22, 2022), https://www.cnbc.com/2022/10/22/puerto-ricos-power-grid-is-still-costly-and-unreliable-after-hurricane-maria.html (showing data from the U.S. Energy Information Administration indicating that as of June 2022 commercial customers in Puerto Rico on average pay 29.4 cents per kilowatt hour, more than double the U.S. average of 12.9 cents per kWh); *see also Puerto Rico Territory Energy Profile*, U.S. Energy Information Administration, https://www.eia.gov/state/print.php?sid=RQ (last updated Jan. 19, 2023).

[11] *How Mississippi is Catching Up – and Puerto Rico is Not*, Puerto Rico Report (Aug. 2, 2017), https://www.puertoricoreport.com/how-mississippi-is-catching-up-and-puerto-rico-is-not/; *compare Puerto Rico*, United States Census Bureau, https://www.census.gov/quickfacts/PR (last visited June 12, 2023) (showing that between 2017–2021 the median household income in Puerto Rico was $21,967), *and Mississippi*, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/MS/BZA115221 (last visited June 12, 2023) (showing that between 2017–2021 the median household income in Mississippi was $49,111).

[12] Expert Report of Agustín Irizarry-Rivera, ll. 526–28 (Apr. 28, 2023), ECF No. 24082.

energy even less affordable and penalizing the use of already viable solar rooftop solar and storage systems. Fewer Puerto Ricans will remain on the grid, and PREPA will be forced to increase its Legacy Charge to compensate for a shrunken customer base.[13] PREPA will be unable to continue payments on billions of dollars of debt,[14] and Puerto Ricans will face energy unaffordability, a failed electricity system, and the loss of home, while PREPA's creditors will face an inability to recover bond principal and interest.[15]

8. Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace Latino de Acción Climática (ELAC), Comité Yabucoeño Pro-Calidad de Vida, Inc. (YUCAE), Alianza Comunitaria Ambientalista del Sureste, Inc. (ACASE), Sierra Club, Inc. and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., Amigos del Río Guaynabo, Inc., (collectively the "Environmental Groups"), present this objection to FOMB's proposed Plan.

## STANDARD OF REVIEW FOR PLAN CONFIRMATION

1. The Debtors have the burden of proving satisfaction of the requirements of section 314 ("Confirmation") of PROMESA by a preponderance of the evidence.[16]

---

[13] *Id.* at ll. 35–41.

[14] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. D at 4, ECF No. 23664-4.

[15] *Id.*

[16] 48 U.S.C. 2174(b); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK-3567, 2022 WL 6949992, at *6 (D.P.R. Oct. 12, 2022).

2. Under section 314 of PROMESA, the court shall confirm a plan only if it meets seven requirements.[17] We highlight three points relevant to this Objection:

   a. The debtor is not prohibited by law from taking any action necessary to carry out the plan.[18]

   b. Any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained or such provision is expressly conditioned on such approval.[19]

   c. The plan is feasible and in the best interests of creditors, which shall require the court to consider whether the available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan.[20]

3. Under Bankruptcy Code section 1123(a)(5),[21] made applicable by PROMESA section 301(a),[22] the Court cannot confirm the PAD without ensuring that there are adequate means to implement this Plan, and that PREPA is best able to provide critical government services to its customers in an efficient, reliable, and sustainable manner.

## ARGUMENT

The Court should reject the Modified Second Amended Title III Plan of Adjustment proposed by the FOMB for PREPA for the following three reasons.

---

[17] 48 U.S.C. § 2174(b).
[18] *Id.* § 2174(b)(3).
[19] *Id.* § 2174(b)(5).
[20] *Id.* § 2174(b)(6).
[21] 11 U.S.C. § 1123(a)(5).
[22] 48 U.S.C. § 2161(a).

First, the Plan would force PREPA to take actions prohibited by Puerto Rican law, including the Puerto Rico Energy Public Policy Act.[23] Puerto Rico law and energy policy requires PREPA to end its addiction to fossil fuels and encourage integration of residential rooftop solar and storage systems. The Plan would not allow PREPA to complete these requirements, so this Court should reject the Plan under PROMESA Section 314(b)(3).[24]

Second, the Plan may not be confirmed because the FOMB has not obtained, and cannot obtain, the Puerto Rico Energy Bureau's approval of the Legacy Charge. PREB has exclusive authority to approve or reject any charges levied on Puerto Rican energy consumers – therefore PREB approval of the Legacy Charge is a regulatory approval necessary under applicable law in order to carry out the Plan. FOMB has not obtained legally required approval from PREB for the Legacy Charge,[25] thus the Court should reject the Plan under 2174(b)(5).[26]

Finally, the PAD is not sustainable, either for PREPA's continued operations, or repayment of PREPA's reorganized debt. The Plan's Legacy Charge will result in mass grid defection for those who can afford it and emigration from the archipelago for those who cannot, rendering the Plan a failure both for Puerto Rico's energy system and for PREPA's debt amortization.[27] The Court must reject the Modified Second Amended Plan under 2174(b)(6) because it is neither feasible nor in the best

---

[23] *See Puerto Rico Energy Public Policy Act,* Act 17-2019, 22 L.P.R.A. § 1141.
[24] 48 U.S.C. 2174(b)(3).
[25]. 22 L.P.R.A §§ 1141(b), 1141(d)(3)(a), 1141(i)(h); *see also Puerto Rico Electric Power Authority Act*, Act No. 83 of May 12, 1941, as amended, 22 L.P.R.A. §195a-1(l).
[26] 48 U.S.C. 2174(b)(5).
[27]  Expert Report of Agustín Irizarry, ll.157-8, ECF No. 24082.

interest of creditors who will be unable to recover under a financing scheme that is highly likely to fail. Failed recovery under this Plan, compounded with PROMESA's preemption of other remedies, will prove catastrophic to creditors' interests, an outcome PROMESA explicitly seeks to avert.[28]

### A. The Plan Would Force PREPA to Violate Puerto Rico Law and Energy Policy.

> **i.** The Modified Second Amended Plan interferes with PREPA's obligations to end Puerto Rico's addiction to fossil fuels.

FOMB acknowledges that the Plan must give PREPA the funds "necessary to meet PREPA's operational and capital expenditure needs."[29] PREPA's needs are significantly higher than utilities' in the continental United States because of the statutory mandate to rapidly transform the grid from a centralized grid reliant on fossil fuel power plants to a decentralized grid powered by distributed clean generation. Recent studies of the Puerto Rico electric grid estimate that PREPA will need about $6B for these costs.[30] Overall, the Plan expects Puerto Ricans to pay, in terms of Net Present Value, $5.571B over the next 28 years.[31] The vast majority of these funds, 73.4%, would go to pay the reorganized debt.[32] The remaining scraps are

---

[28] 48 U.S.C. 2174(b)(6).

[29] Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, ECF No. 23663, at 362, Section VIII.

[30] Puerto Rico Department of Housing's December 2022 study estimated these costs at $6.4B, assuming $14B in funds from FEMA. Agustin Direct lines 513-515. PREPA's October 2019 Transformation Plan estimated the costs at $20.3B, without any assumption of FEMA funds. Sanzillo Direct Table E-1. If we apply the same $14B assumption, the October 2019 Transformation Plan called for $6.3B in costs.

[31] Expert Report of Glenn R. George at 27, Table 5 (Apr. 28, 2023), ECF No. 24083.

[32] *Id.*

billions short of the amount PREPA needs for capital expenditures, fuel costs, and costs to deal with the next hurricane.

One critical capital expenditure, required under Puerto Rico law and energy policy and the approved IRP, is the scheduled replacement of Puerto Rico's aging fossil fuel power plants.[33]  The approved Integrated Resource Plan[34] requires retirement of 21 oil & diesel units at San Juan, Palo Seco, and Aguirre by August 2025. Act 17-2019 requires shutdown of the AES coal-fired power plant by January 1, 2028.[35] If the Modified Second Amended Plan deprives PREPA of the capital necessary to retire these units, then the Plan runs afoul of PREB's approved Integrated Resource Plan.

The approved Integrated Resource Plan and Puerto Rico law require PREPA to use its customers' hard-earned money to pay for the required grid transition – the Plan would instead funnel that money to pay unsecured claims. Dr. Agustín Irizarry, expert that the appearing environmental groups disclosed and filed his expert report on April 28, 2023, Dkt. No. 17 BK 03283, Doc. 24082-1, points out: "the Proposed [Plan] fails to include needed investments in the electric grid to achieve reliable electric service… This leaves PREPA with inadequate funds to even keep the service

---

[33] Act 17-2019 refers to these as the "Legacy Power Generation Assets." 22 L.P.R.A. §1141(a). Additionally, Act 17-2019 requires PREPA to "eliminate electric power generation from fossil fuels" on a steady timeline: 40% by 2025, sixty percent by 2040, and 100% by 2050. 22 L.P.R.A. §1141e(7).

[34] *See* In Re: Review of the Puerto Rico Electric Power Authority Integrated Resource Plan, Final Resolution and Order on the Puerto Rico Electric Power Authority's Integrated Resource Plan, at ¶¶. 101-102, CEPR-AP-2018-0001, (Aug, 24, 2020), https://energia.pr.gov/wp-content/uploads/sites/7/2020/08/AP20180001-IRP-Final-Resolution-and-Order.pdf. .

[35] 22 L.P.R.A. 1141e(3).

from deteriorating further…"[36] Mr. Thomas Sanzillo, expert appearing on behalf of
UTIER, also concludes that "the [Modified Second Amended] Plan of Adjustment will
not allow PREPA to provide future electrical service at the level necessary to support
the Commonwealth's viability", resulting in "a continued unreliable and expensive
system that is incapable of producing a steady revenue stream for bondholders..."[37]
That PREPA revenue is the "seed corn" necessary for the future of the utility and the
grid - and FOMB is handing that absolutely essential capital to pay unsecured claims.

Under Puerto Rico law, a viable agreement with creditors would (1) implement
reform measures, (2) modernize power generation, (3) optimize transmission and
distribution, and (4) achieve operational savings.[38] FOMB acknowledges the urgency
of these measures,[39] but the Plan does none of those things – even worse, it actively
frustrates PREPA's current efforts to modernize power generation and eliminate the
costs of importing fossil fuels.

PREB has exclusive authority to approve any charges related to the contents
of the Integrated Resource Plan ("IRP"): which means that prior PREB approval is a
regulatory approval necessary to carry out the Plan, under PROMESA Section

---

[36] Expert Report of Agustin Irizarry at ll. 476-77, ECF No. 24082.
[37] Expert Declaration of Mr. Thomas Sanzillo in Support of the Unión de Trabajadores de la
Industria Eléctrica y Riego, Inc.'s Objection to the Confirmation of the Puerto Rico Electric
Power Authority's Plan of Adjustment, Sanzillo Direct at ll. 271-274 (Apr. 28, 2023) ECF No.
24085.
[38] 22 L.P.R.A. § 192(a).
[39] FOMB acknowledges the urgency of these measures, but does nothing more than suggest
some timid, generic, and aspirational steps: "The Oversight Board has proposed, among
others, the following reform measures: (1) clean renewable energy; (2) increasing service
reliability; (3) expanding and prioritizing structurally hardened infrastructure to withstand
extreme weather events." FOMB well knows that these measures require significant funding
– funding missing from FOMB's plan.

314(b)(5). As we show below, Act 17-2019 grants PREB exclusive authority over charges and financing set forth in the IRP—no terms in the PAD can contravene PREB's authority over these charges, lest FOMB impose on Puerto Ricans a plan of adjustment of the debt in clear violation of Puerto Rican law. First, Act 17 states that every IRP will be "subject to the dispositions of this Law and to the rules promulgated by PREB, which must approve [the IRP]."[40] Thus, PREB has authority over the terms of the IRP, including all relevant charges. Act 17 further requires "every electric power service company in Puerto Rico to comply with   the Integrated Resource Plan approved by the Energy Bureau[41] So, if PREB has authority over approval of the IRP's terms, and all electricity service companies must abide by these, then the proposed PAD cannot legally be allowed to supersede such an intentionally structured chain of authority by introducing charges not contemplated in the IRP that were thus subject to PREB oversight.

Finally, Act 17 notes repeatedly that the IRP must be approved by PREB, and that "any amendment or modification of the IRP must be approved by PREB prior to its implementation."[42] Any such approval of the IRP must be consistent with "energy policies in this law [Act 17].[43] Act 17 reiterates this and strengthens PREB's authority by noting that "under no circumstances should the IRP be eliminated or altered without prior evaluation and approval by PREB," and "PREB will issue all necessary rulings related to...[the] IRP and the achievement of its goals," including "energy costs

[40] 22 L.P.R.A.§ 1141a(p).
[41] *Id.* § 1141e(15).
[42] *Id.* § 1141h(1).
[43] *Id.* § 1141h(2).

11

per kWh," "sustainability," "emissions reductions," and more.[44] Because the IRP must be consistent with the energy public policy mandate in Act 17, and PREB is the ultimate arbiter of whether the IRP can be approved, altered or modified as consistent with Act 17 in shaping Puerto Rican energy policy, the proposed PAD is in conflict with both the IRP and its fulfillment of Act 17 plainly infringes on PREB's status as the IRP's sole regulatory agent. This Court must reject the proposed Plan because its unapproved Legacy Charge violates Act 17's mandate as effectuated in the IRP and as approved by PREB, and because FOMB's use of the Plan to impose an unauthorized Legacy Charge improperly attempts to supplant PREB as the sole regulatory agent overseeing Puerto Rican energy policy as embodied in the IRP. Therefore, the Court, pursuant to sections 2174(b)(3) and (5), should not confirm the proposed PAD.

The PAD also underestimates PREPA's expenses by billions of dollars. First, FOMB predicts that fuel costs will drop from $2.9B in Fiscal Year 2023 to $1.4B in FY2024, based on a mistaken assumption that 3.75 GW of utility-scale solar will come online in three years, by July 2026.[45] Dr. Irizarry explains that PREPA will have nowhere close to this figure, more likely closer to zero MW.[46] Without the utility-scale solar online, PREPA will have to spend far more than forecasted to import fuel to be burned at fuel power plants.

---

[44] *Id.* §§ 1141h(4); 1141h(5).

[45] *See* Expert Declaration of Mr. Thomas Sanzillo at ll. 115-125; 132-134, ECF No. 24085.

[46] *See* Expert Report of Agustin Irizarry at ll. 127-132, ECF No. 24082, where Dr. Irizarry highlights that as of March 30, 2023, not a single one of the 18 planned utility-scale solar projects have begun construction.

Second, FOMB's Plan uses only the forecast cost for standard diesel,[47] whereas the proposed State Implementation Plan from the Commonwealth would end diesel use for many units at the Palo Seco, San Juan, and Aguirre power plants by February 2024 instead requiring higher-cost Ultra-Low Sulfur Diesel.[48] Therefore, PREPA's fuel costs will be much higher than the PAD anticipates.

### ii. The Modified Second Amended Plan unfairly penalizes and targets households that invest in rooftop solar and storage.

Rooftop solar and storage units "empower the consumer to be part of the energy resources portfolio…"[49] Dr. Agustín Irizarry, an engineer with decades of experience observing and overseeing the Puerto Rico electric grid, concludes that the current cost of rooftop solar and storage systems, "is already less than the cost of electricity from the … grid… and superior in terms of reliability and resiliency."[50] This Court will receive objections, comments, and emails from Puerto Ricans that are fortunate enough to have rooftop solar and storage, who can tell the Court about the widespread availability and affordability of these systems.

In Exhibit P, the drafters of the PAD acknowledge that rooftop solar and storage is "relatively attractive for a variety of reasons, including the large number of sunny days, the prevalence of buildings with flat roofs, and the generous incentives offered to adopters of solar technology under Puerto Rico law. Consumers purchasing

---

[47] *See* Expert Report of Glenn R. George, ¶¶ 106-107, 113, ECF No. 24083.
[48] Regulation for the Control of Atmospheric Pollution Amendment (Rule 102, 210 and 425, Rule 425(II)(A)(1), (II)(B)(3), (III)(A)(1),
https://docs.pr.gov/files/DRNA/8.2022%20RCAP%20Rules%20102-210-425.pdf.
[49] 22 L.P.R.A. §1141d(2)(e).
[50] Expert Report of Agustin Irizarry at ll. 28-31, ECF No. 24082.

solar panels would see an immediate reduction on their bill from all volumetric charges."[51]

In sum, all parties agree that Puerto Rican households gain significant benefits to affordability, reliability, and resiliency from rooftop solar and storage systems. All stakeholders see this as a positive – all except FOMB. In fact, FOMB designed its Legacy Charge specifically to **decrease** the benefit of rooftop solar + storage systems. FOMB observed the decrease in volumetric charges and decided to attack customers with rooftop systems through a fixed charge instead: "Fixed charges (as opposed to volumetric charges) are preferable as the primary instrument for raising additional revenues, as they are less impacted by the adopted of solar panels by customers."[52] The vast majority of the Legacy Charge is imposed through a Fixed Charge - $21 out of the $24.19 monthly charge.[53] FOMB anticipates that Puerto Ricans will seek ways to escape the intolerable energy burden imposed by the Legacy Charge, and looks to cut off avenues of escape.

The FOMB's deliberate targeting of customers with rooftop solar and storage violates PROMESA and Puerto Rico law, and will not actually work (see Section "c.," showing how the Plan is unsustainable). The discriminatory fixed charge violates Act 17-2019's "impartiality principle."[54] The biased Legacy Charge would force PREPA to

---

[51] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. P at 4, ECF No. 23664-16.
[52] *Id.*
[53] Expert Report of Glenn R. George,¶ 66, Table 4, ECF No. 24083.
[54] 22 L.P.R.A § 1141c(5): "The impartiality principle requires that, under the same conditions, consumers are treated equally regardless of their social condition and purchasing power, or the technical conditions or characteristics of the service rendered…"

violate its statutory duty to "facilitate and not hinder the interconnection of distributed renewable energy producers, distributed generators, and independent power producers to the electric power grid…"[55] Just as these Puerto Ricans gained some measure of energy independence, getting closer to the Puerto Rico's vision for consumers to become prosumers,[56] the FOMB seeks to re-capture them, and again tie them to the past mistakes and bad acts of PREPA's bondholders and bond issuers, for decades to come. Indeed, the Puerto Rico legislature explicitly prohibited charges, like the fixed Legacy Charge, that discriminate against customers with rooftop solar and storage:

> The Electric Power Authority or the transmission and distribution network Contractor shall not impose any charge or modify the monthly electric power usage consumption rate of its net metering customers, or customers who interconnect any distributed generation system, without prior authorization from the Bureau as provided above. Likewise, the rate approved by the Bureau for net metering customers shall not be discriminatory or discourage entering into net metering agreements.[57]

The massive fixed Legacy Charge would discourage efforts at conservation at efficiency, leading to wasteful use of energy. This violates principles of ratemaking.[58]

Dr. Irizarry explains that the "[Modified Second Amended] Plan of Adjustment uses a fixed charge to impose an energy burden on Puerto Ricans that they can only

---

[55] 22 L.P.R.A. § 1141i(d). Section (f) also requires PREPA "to refrain from any action that may deny, stay, interfere, delay, or hinder the orders issued by the Bureau", including the approved Integrated Resource Plan.

[56] "Prosumers" means "any users or customers of the Electrical System who have the capacity to generate electric power for self-consumption that, in turn, have the capacity to supply any energy surplus through the electric power grid." 22 L.P.R.A § 1141a(r).

[57] 22 L.P.R.A. § 1014(c).

[58] *See* Expert Report of Glenn R. George, ¶ 96, ECF No. 24083: "Rates should promote efficiency, discouraging wasteful use of energy."

escape by leaving the archipelago or defecting from the grid."[59] He concludes that the "fixed component of the proposed 'Legacy Charge' is designed to tax the adoption of residential solar energy and it penalizes net metering adoption of solar photovoltaic rooftop generation." Later, Dr. Irizarry states that the fixed Legacy Charge "is designed to make ownership of a rooftop solar photovoltaic system far more expensive than it has to be…"[60] In more temperate climates with more stable grids, this type of discriminatory charge might only harm customers' wallets. In Puerto Rico, the Legacy Charge is a matter of life and death – it will "impede the ability to survive hurricanes in … an island that lies squarely in the hurricane path of the Caribbean Sea."[61]

### iii.   The Modified Second Amended Plan will force PREPA to violate its obligation to provide universal access to affordable energy.

All parties agree that "affordability" is a critical component to a feasible plan, because, as FOMB says, a "sharp and substantial increase in electricity rates may drive customers from the grid" through grid defection and also "accelerate outmigration…"[62] FOMB acknowledges that the Legacy Charge cannot be approved if total customer costs would "exceed the conceptual upper bound of affordability."[63] The Puerto Rico legislature has set a 20 cents/kWh affordability standard, based a

---

[59] Expert Report of Agustin Irizarry at ll. 155-158, ECF No. 24082.
[60] *Id.* at ll. 564-565.
[61] *Id.* at ll. 566-568.
[62] Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority at 367, ECF No. 23663.
[63] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. P at 4 ECF, No. 23664-16.

comprehensive, forward-looking examination of the Puerto Rico grid, and the energy burden placed on Puerto Rican households.[64] This figure aligns with the findings of the FOMB's own economic advisor, Dr. Andrew Wolfe, who argued that a rate above 21.4 cents/kWh would harm the island's economic competitiveness, and "would eventually contribute to a downward economic spiral that would result in Puerto Rico returning to a path of declining economic activity, which would in turn adversely impact the demand for electricity and in the end lead to another debt service payments crisis for PREPA."[65]

The FOMB adopted the same affordability threshold of 20 cents/kWh in 2018,[66] but abandons it in the proposed Plan. Instead, the FOMB, oblivious to historical data and recent trends, instead improperly proposes a Legacy Charge that would increase costs to 32 cents per kWh.[67] The FOMB proposal is improperly based on comparison to utilities and customers in the continental U.S.,[68] which are in a much different situation than Puerto Rico. FOMB acknowledges the comparison may not be legitimate since "incomes… in the mainland U.S. are significantly higher than in

---

[64] 22 L.P.R.A. § 1141e(16); 22 L.P.R.A. §196(l).

[65] Expert Declaration of Mr. Thomas Sanzillo at ll. 290-294, ECF No. 24085.

[66] PREPA's 2018 Certified Fiscal Plan at 42.; Expert Declaration of Mr. Thomas Sanzillo at ll. 295-297, ECF No. 24085.

[67] Expert Report of Agustin Irizarry at ll. 499-502, ECF No. 24082.

[68] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex.P at 2, ECF No. 23664-16: "The fixed charge portion of rates applied by electric utilities across the U.S. were used as benchmarks of the level of fixed charges that can reasonably be applied in Puerto Rico"; *see also* at 5: "Affordability was set at 6% of total income … because this 6% energy burden is currently used in several mainland U.S. States as a baseline for providing support to customers"; *see also* Expert Report of Glenn R. George ¶ 58, ECF No. 24083.

Puerto Rico."[69] FOMB also makes an egregious mistake in assuming, incorrectly, that "electric rates in the mainland U.S. are significantly higher than in Puerto Rico."[70] Dr. George and Dr. Irizarry both note, and nobody will deny, that Puerto Ricans pay some of the highest electric rates in the country.[71] Puerto Ricans pay, on average, 5.6% of their income towards electricity costs.[72] The literature on energy affordability explains that there is very little room to increase that: households can pay, at maximum, 6% of their income towards energy.[73] FOMB's Plan violates even that limit, imposing an AVERAGE energy burden of 6.05%.[74] Only the very poorest Puerto Ricans would be exempt from the fixed Legacy Charge - FOMB's expert, Dr. Glenn George, highlights the "hardship for residential customers who are below the estimated median income of $24,000 and who are not exempt from the Legacy Charge, who would end up paying more than 6% of their monthly income on electricity."[75] And all Puerto Ricans would be forced to pay higher prices for goods and services, since providers would be forced to pass on higher energy costs. Under these circumstances, the Court, pursuant to Section 2174(b)(3), should not confirm the proposed PAD.

---

[69] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. P at 5, ECF No. 23664-16.

[70] *Id.*

[71] Expert Report of Glenn R. George ¶¶ 17-19, ECF No. 24083-1 (stating "PREPA's customers already pay high rates for electricity relative to ratepayers in the mainland U.S." (the current cost of electricity in Puerto Rico is 28.4 cents per kWh)); *see also* Expert Report of Agustín Irizarry at ll. 498–99, ECF No. 24082.

[72] Expert Report of Glenn R. George ¶ 18, ECF No. 24083-1.

[73] *Id.* ¶¶ 39-40.

[74] *Id.* ¶¶ 39–40, 66, Table 4.

[75] Rebuttal Report of Glenn R. George ¶ 31, ECF No. 24213.

**B.** **The Court Should Reject the Modified Second Amended Plan of Adjustment Because PREB Has Exclusive Approval Authority Over the Plan's Legacy Charge and FOMB Has Failed to Obtain Required Approval From PREB.**

The Puerto Rican Legislature has granted PREB exclusive authority to accept or reject charges added to Puerto Ricans' electricity bills. In fact, Act 17-2019 and its amendments to Act 83-1941, the "Puerto Rico Electric Power Authority Act,"[76] and Act 57-2014, the "Puerto Rico Energy Transformation and RELIEF Act,"[77] affirm the Legislature's explicit grant of authority to PREB over each of the following: (i) ensuring compliance with energy affordability requirements; (ii) any electricity charges levied on Puerto Rican energy consumers; (iii) the Puerto Rican electricity system and energy market; (iv) PREB's own budgetary autonomy and finances as needed for the execution of Puerto Rico's energy policy; (v) and charges related to the payment of debt service by the debtor, PREPA, to its creditors, or the bondholders under the recent FOMB-investor negotiations.

  i.   The Modified Second Amended Plan must be rejected because PREB also possesses the exclusive mandate to ensure all charges imposed on energy bills in Puerto Rico comply with the Legislature's energy affordability requirements.

PREB is also granted a mandate under Act 17 to ensure energy affordability in Puerto Rico. The Legislature authorized PREB to reject any fee or charge, including a legacy debt charge, that violated the "affordability" standard set by the

---

[76] *Puerto Rico Electric Power Authority Act*, Act No. 83 of May 12, 1941, as amended, 22 L.P.R.A.§ 192.
[77] *Puerto Rico Energy Transformation and RELIEF Act*, 22 L.P.R.A. § 1051.

Legislature. PREPA operates under a Certified Fiscal Plan, which requires PREPA to keep customer costs as close to twenty cents per kWh as possible.[78] The Puerto Rico Energy Bureau is thus charged with evaluating PREPA's efforts, and rejecting any "fees, rents, rates, and any other type of charge" that would harm reliability, is not "just and reasonable" and does not come "as close as possible" to the overall 20 cents/kWh figure.[79] This includes the Legacy Charge - PREB approval of the Legacy Charge is a "regulatory . . . approval necessary under [Act 17-2019] in order to carry out [the Modified Second Amended Plan's]"[80] In Act 17-2019 amendments to Act 83-1941 explicitly stated that each of the "different charges and credits" on Puerto Ricans' electricity bills required prior PREB approval.[81]

Therefore, the Legislature has required that PREB act as the ultimate arbiter in determining whether the charges levied by an energy company are "just, reasonable, and consistent with the fiscal and operational practices that will provide a reliable service at the lowest reasonable cost."[82] Without prior PREB approval, no Legacy Charge may be legally applied to Puerto Rican energy bills—much less one that violates the cost affordability threshold so specifically designated by the Legislature as the metric PREB must use in its required evaluations of all additional energy charges.[83] PREB has not approved its Legacy Charge, and PREB cannot

---

[78] 22 L.P.R.A. 1141e(16).
[79] 22 L.P.R.A. § 1141d(1)(a).
[80] 48 U.S.C. § 2174(b)(5).
[81] 22 L.P.R.A. § 1141li(h); *see also* 22 L.P.R.A. § 196(i).
[82] 22 L.P.R.A. § 1141d(1)(a); 22 L.P.R.A. § 1141d(3)(a).
[83] 22 L.P.R.A. § 1141e(17); 22 L.P.R.A. § 196(l).

approve the Charge anyway because the Charge violates the mandated affordability threshold.

> ii. **The Modified Second Amended Plan must be rejected because PREB has exclusive approval authority over any charges levied on Puerto Rican energy consumers.**

PREB's role as the ultimate regulator on the issue of such charges, the statute renders this command even more explicit: "[All electric service companies must] establish, with the approval of PREB, an electricity bill [for every client] that identifies clearly and in detail the categories of each charge and consumer credit subject to the terms set forth by PREB. The electricity bill should be entirely transparent and must be approved by PREB."[84]

PREB has exclusive authority to approve any charges levied on Puerto Rican energy consumers. The Legislature reiterates in Act 17 that one core goal of the statute to ensure the advancement of Puerto Rican energy policy is the "strengthening of [PREB's] capabilities and responsibilities.[85] To grant PREB such sweeping authority, Act 17 states that all electric service companies are responsible for fulfilling each of PREB's "norms, rulings, orders, mandates, [and] requests" as PREB exercises its "duty to regulate and manage the island's electricity system's finances."[86] The Court cannot approve a plan unless it "reflects the currently enacted laws and regulations that PREPA must abide by…"[87] Further, all electric service

---

[84] 22 L.P.R.A. § 1141li(h).
[85] 22 L.P.R.A. § 1141 ("Exposición de Motivos").
[86] 22 L.P.R.A. § 1141li(f).
[87] Rebuttal Report of Glenn R. George ¶ 13, ECF No. 24213.

companies are expressly prohibited from "any action that could negate, paralyze, impede, delay, or present an obstacle to PREB's orders."[88]

Whether PREPA acts independently of the FOMB or under the authority of FOMB, PREPA lacks the legal authority to impose a Legacy Charge on Puerto Rican energy consumers without approval by PREB. FOMB alludes to PREB's exclusive authority over the Legacy Charge as a mere "risk factor to be considered"[89] rather than as a legal certainty for why the PAD must be rejected by this Title III Court. FOMB notes "The New Bonds [*sic*] issuance and implementation of the Legacy Charge may be subject to approval by PREB," and then only discusses how Act 57-2014 carves out an exclusion to PREB's approval authority for the question of approving debt issuances: nowhere in this section of the Modified Second Amended Plan of Adjustment does the FOMB recognize either this or any of the following five ways in which Act 17-2019 powerfully affirms PREB's authority over the implementation of the Legacy Charge itself.[90] FOMB cannot cite to an exception to PREB's approval requirement where the Legacy Charge is concerned because one does not exist, and it similarly omits mention of Act 17-2019 because even if Act 57-2014 carves out a narrow exception for PREPA's bond issuances,[91] no such exception exists in either Act for PREB's fortified exclusive authority of approval over any associated charges to finance such bond issuances. The Puerto Rican energy policy

---

[88] 22 L.P.R.A. § 1141li(f).

[89] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority at 350–81, ECF No. 23664.

[90] *Id.*

[91] 22 L.P.R.A. §196(o).

regime is clear on this point: energy charges cannot be levied on the Puerto Rican energy consumer without PREB authorization. What FOMB calls the "Legislative Assembly['s] … attempts to interfere with…PREPA's debt," this Court should recognize as the will of Puerto Ricans to achieve energy affordability and justice as codified by the Legislature.[92] FOMB's opposition to PREB's authority over a Legacy Charge reflects a colonial attitude towards Puerto Ricans, disregarding the elected representatives' right to control their electric grid transformation. This court should recognize PREB's power to reject a Legacy Charge that hinders the transformation process.

### iii. The Modified Second Amended Plan must be rejected because PREB is the ultimate arbiter of all finances and charges related to the Puerto Rican electricity system and energy market.

PREB has been granted a mandate by the Puerto Rican Legislature to oversee all finances and charges related to the Puerto Rican electricity system and energy market. Act 17 expressly states that the Puerto Rican "electricity system will operate openly and non-discriminatorily…subject to regulation by PREB."[93] PREB is tasked with regulating the "norms that apply to the transmission or distribution of energy throughout the Electricity System, and all applicable charges to consumers and independent energy producers for such services."[94]  Further, Act 17 notes that PREB "shall be the sole entity in charge of regulating the energy market in Puerto Rico.

---

[92] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority at 357, ECF No. 23664.
[93] 22 L.P.R.A. § 1141b.
[94] 22 L.P.R.A. § 1141d; 22 L.P.R.A. § 1141f.

PREB shall have ample powers and responsibilities, such as the management of financial and technical resources, and the personnel necessary to ensure compliance with Puerto Rico's energy public policy, the dispositions and mandates of this Law, … and the management and oversight of all charges."[95] PREB not only has express authority over any charges levied on Puerto Rican energy consumers and over the alignment of the IRP and all related charges with Puerto Rican energy law, but it is the sole arbiter of Puerto Rico's electricity system and market.

    iv.    **The Modified Second Amended Plan must be rejected because PREB has significantly expanded authority over its budget and finances to ensure the proper implementation of Puerto Rican energy policy as required by the Legislature.**

PREB has significant authority over its budget and finances as needed to implement Puerto Rican energy policy. Act 17 further underscores PREB's exclusive authority over the implementation of Puerto Rican energy policy by seeking to grant it even greater budgetary and financial autonomy. Specifically, the legislation seeks to "strengthen the capabilities and functions of PREB to render viable and execute the implementation of Puerto Rico's energy public policy, granting [PREB] greater budgetary autonomy, and increasing its powers to investigate, incentivize, inspect, and penalize any natural or juridical person under its jurisdiction [for interfering with this mandate]."[96] By potentially enforcing the imposition of a Legacy Charge levied by PREPA on Puerto Rican energy consumers through its proposed PAD,

---

[95] 22 L.P.R.A. § 1141d(3)(a).
[96] 22 L.P.R.A. §1141e(14).

24

FOMB contravenes this explicit grant of authority for PREB to oversee the financial implementation of Puerto Rican law.

Further, through mandating a Legacy Charge that usurps PREB's budgetary autonomy as reinforced by Act 17, FOMB also exposes itself, PREPA, and bondholders to PREB's increased investigative and penal authority over any natural or juridical persons interfering with its mandate to implement energy law under the Act. Act 17 repeatedly highlights PREB's increased budgetary and investigative authority over any actors potentially working to interfere with its implementation of Act 17, whether in terms of hindering the archipelago's energy goal attainment or usurping PREB's authority to ensure compliance with Act 17.

> **v.    The Modified Second Amended Plan must be rejected because PREB's exclusive approval authority over any charges even extends specifically to charges related to the payment of debt service by PREPA to its bondholders.**

PREB has exclusive authority to approve any charges related to the payment of debt service by PREPA to its bondholders. Ch. II § 2.6 of Act 17-2019 specifically amends Law 83-1941 to note that PREPA can only "propose and charge just, reasonable rates not in excess of 20 cents per kilowatt hour...**as approved by PREB**...for the use of installations by PREPA, for electric energy services or other articles sold, loaned, or furnished by PREPA, which may suffice to cover reasonable costs incurred by PREPA in the development of its installations and properties, [and] **in its payment of bond principal and interest rates** (emphasis added)."[97] Amendments

---

[97] 22 L.P.R.A. § 196(l).

in Act 17-2019 to Act 83-1941 reiterate that PREPA cannot impose any rate, fee, rent, or other charge on customers, including payments "fulfilling the terms and provisions of the agreements entered into with or for the benefit of purchasers or holders of any bonds of the Authority and other creditors," without PREB approval.[98] The Legislature reiterated that any PREPA agreement with creditors must be consistent with the Puerto Rico Electric Power Authority Revitalization Act, and Puerto Rico energy policy.[99] Simply put, PREPA cannot levy any charges to cover costs incurred in the issuance of bonds and the payment of interest rates to creditors, even if to discharge financial obligations to bondholders, without approval from PREB - especially where such charges violate Puerto Rican law.

The amendment in Act 17-2019 to Act 83-2014, section 196(l), stands on its own terms and forecloses the possibility of levying any Legacy Charge on Puerto Rican energy consumers without prior authorization to do so from PREB.[100] FOMB will likely highlight the initial clause of a following subsection of the Act: section 196(o) states that, "Except with reference to bonds and other financial instruments related to the restructuring of [PREPA] in conformity with agreements reached with [PREPA's] creditors...before accepting loans or issuing bonds for any corporate end, [PREPA] must obtain approval from PREB demonstrating that the proposed financing will be used for projects and costs associated with such financing in a manner consistent with the IRP."[101]  Any reliance FOMB places on section 196(o) is

---

[98] *Id.*
[99] 22 L.P.R.A. § 192(a).
[100] 22 L.P.R.A. § 196(l).
[101] 22 L.P.R.A. § 196(o).

26

gravely misplaced: reading this statutory exception to mean PREB approval authority does not extend to the Legacy Charge would render section 196(l) a nullity. Indeed, section 196(o) only carves out an exception for PREB approval of bonds themselves: not of any charge FOMB or PREPA could use to finance hefty debt service obligations incurred in the issuance of the bonds.[102] This is the only reading consistent with the requirement in section 196(l) that PREPA can only levy charges intended to finance debt service associated with bond principal and interest rates when it has obtained necessary approval from PREB.[103]

Amendments in Act 17-2019 to Act 57-2014, section 6.3, contain a final set of affirmations that PREB is exclusively responsible for ensuring the execution of Puerto Rico's energy public policy through the management of its electricity system.[104] PREB alone can "approve, review, and, when applicable, modify rates or charges imposed [on Puerto Rican energy consumers] by electricity service companies."[105]  In fact, in line with Act 83-1941 section 196(l) discussed above, Act 57-2014 section 6.3(p) orders PREB to ensure the implementation of this mandate "over PREPA, its successor(s), electricity transmission and distribution contractors, energy companies, and any natural or juridical person who has benefited or who could benefit from Puerto Rico's electricity system, **including with respect to the approval or review of charges to ensure the payment of [PREPA's] debt service to**

---

[102] *Id.*
[103] 22 L.P.R.A. § 196(l).
[104] 22 L.P.R.A § 1054b.
[105] 22 L.P.R.A § 1054b(n).

bondholders..."[106] Puerto Rican legislators specifically sought to immunize their energy public policy and the integrity of their electricity system against any instability that could arise out of energy charges levied on Puerto Rican energy consumers by external actors seeking to circumvent PREB's authority: Act 17-2019 mandates that PREB be responsible for ensuring that "the issuance of PREPA's debt or its successor's debt conforms to the public interest [of Puerto Ricans]. **Prior to PREPA's issuance of any bonds and to the use of any means proposed for the financing of the debt issued, [PREPA] must obtain the written approval of PREB.** (emphasis added).[107]

Immediately following the above   requirement that PREB have exclusive approval authority, Act 57-2014 section 6.4 proceeds to assert PREB's "primary exclusive jurisdiction" over "all charges electricity companies may charge their clients," "all cases and controversies related to electricity billing by such companies to their clients for electricity services," and "all cases and controversies that could implicate the non-fulfillment of the energy public policy as established in [Act 57-2014]."[108] As Act 17 emphasizes in its amendments, the Legislature cannot be clearer as to PREB's exclusive authority to approve or reject charges added to Puerto Ricans' energy bills. The Legislature even specifies that this authority extends to charges potentially used to finance debt service obligations to bondholders during the archipelago's debt restructuring processes.

---

[106] 22 L.P.R.A. § 1054b(p) (emphasis added).
[107] 22 L.P.R.A. § 1054b(q) (emphasis added).
[108] 22 L.P.R.A. § 1054c(a)(1)-(3).

We urge this Court to recognize that the Puerto Rican statutory energy mandate is both consistent and explicit in its grant of exclusive approval authority to PREB. The promulgation of the PAD's unauthorized Legacy Charge would result in the violation of each of the above six statutory mandates affirming PREB's sole approval authority over any energy costs that can be imposed on Puerto Ricans' electricity bills. The Plan would make PREPA violate Puerto Rican law by circumventing PREB's exclusive approval authority, so the Plan must be rejected under 2174(b)(3). Further, FOMB has not obtained legally required approval from PREB for the Plan's Legacy Charge, thus the Court should also reject the Plan under 2174(b)(5).

### C. The Modified Second Amended Plan is Not Feasible.

PROMESA section 314(b)(6) requires the Court to determine whether the Plan is "feasible."[109] "[T]he Court has an independent duty to determine [feasibility] and to make specific findings of fact."[110] As part of that duty, this Court must examine whether PREPA can provide "future public services at the level necessary to [Puerto Rico's] viability as a [territory]."[111] The question before the Court is: "Is it likely that [PREPA] … will be able to sustainable provide basic municipal services to the citizens of [Puerto Rico] … without the significant probability of a default?"[112] The record demonstrates that the Plan is not feasible. It imposes a $21/month Legacy

---

[109] 48 U.S.C. § 2174(b)(6).
[110] *In re City of Detroit*, 524 B.R. 147, 220 (Bankr. E.D. Mich. 2014).
[111] *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 35 (Bankr. D. Colo. 1999).
[112] *In re City of Detroit*, 524 B.R. at 222.

Charge, which will drive customers off the grid in droves. More than 70,000 households already have rooftop solar systems paired with battery storage, that can power a home disconnected from the grid.[113] PREPA could lose all of those customers before collecting a single installment of the fixed Legacy Charge. The installed generation capacity of rooftop solar is doubling every 18 months, and the installed capacity of rooftop storage is doubling even faster, doubling every year.[114] Puerto Ricans with these systems will quickly find that they can avoid the fixed Legacy Charge by disconnecting from the grid, sending PREPA into the "death spiral" that FOMB's expert warns of.[115]

The PAD imposes a "significant rate increase contemplated to pay the Legacy Charge under the Plan of Adjustment…"[116] Most Puerto Rican households CANNOT afford a significant increase to their electricity bills. For that reason, Dr. George states that ANY increase to electricity bills will lower PREPA revenues due to higher adoption of rooftop solar, decreased consumption, and non-payment of bills.[117]

---

[113] Rebuttal Report of Glenn R. George ¶ 12, ECF No. 24213.

[114] Expert Report of Agustín Irizarry-Rivera ¶¶ 119-121, ECF No. 24082.  Dr. George sees this coming in the continental U.S. electric sector but does not realize this is happening RIGHT NOW in Puerto Rico. Rebuttal Report of Glenn R. George, ¶ 35, ECF No. 24213: "Thus, one can expect the price elasticity of demand for utility-supplied electric power to increase (again, in absolute value terms) as non-utility substitutes (such as rooftop solar PV, battery storage, and other technologies) become more readily available and economically attractive. In my opinion, this process is unfolding now in the electric utility sector and will continue to do so in the coming decades."

[115] Expert Report of Glenn R. George, ¶¶ 80, ECF No. 24083. Dr. George mentions the "death spiral" in his direct testimony at ¶80 and describes it at length in his rebuttal testimony, starting at ¶ 9.  Dr. George summarizes this as follows: "*any* loss of net load will, in turn, force the utility to spread its fixed costs across a smaller customer base by levying even higher rates on the remaining customers, since its costs do not decrease proportionally with the reduction in electricity consumed, thus repeating the cycle." *Id.* ¶ 12 (emphasis in original).

[116] Rebuttal Report of Glenn R. George ¶ 8, ECF No. 24213.

[117] Expert Report of Glenn R. George, ¶¶ 19, 45, ECF No. 24083.

Dr. George is partially right about this. An increase in electricity bills will drive customers to adopt rooftop systems which **include not just** solar **but also** storage. This is a critical difference, because as both experts note, a household with just a rooftop solar would not be able to disconnect from the grid and would be forced to pay the fixed Legacy Charge. On the other aw Lhand, a rooftop solar system with sufficient storage could indeed power a household's needs even after the sun goes down, and therefore allow the household to defect from the grid – and avoid the Legacy Charge.[118] The PAD vaguely acknowledges that "many"[119] Puerto Rico rooftop solar installations include storage – this is wrong. Almost all of these systems include sufficient storage to disconnect from the grid. Puerto Rican households learned of the need for distributed storage the hard way when the grid was down for months following Hurricane Maria – almost all of the 70,000 rooftop systems installed since then has included a battery capable of storing enough energy to power the home through an extended blackout.[120] Households with rooftop solar + storage systems are not only capable of defecting from the grid, but actually enjoy better reliability and resiliency than the grid can offer.[121] This is an option available to the majority of

---

[118] Rebuttal Report of Glenn R. George ¶ 12, ECF No. 24213 (<u>noting that "cord-cutting" or grid defection is possible when customers</u> install rooftop solar systems "combined with enough battery storage to go off-grid altogether…").

[119] Disclosure Statement for Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority Ex. P, at 4, ECF No. 23664-16.

[120] Expert Report of Agustin Irizarry, Figures 1 and 2, ECF No. 24082.

[121] "PREPA's quality of service is low compared with mainland US utilities." Expert Report of Glenn R. George ¶ 20, ECF 24083. *See also* Expert Report of Agustín Irizarry-Rivera lines 68-71, ECF 24082: "Rooftop solar photovoltaic systems with batteries are currently less costly than unreliable electricity from the electric grid. This lack of reliability from the electricity supplied by the electric grid will further drive the adoption of rooftop solar PV systems with storage."

Puerto Rican households: the National Renewable Energy Laboratory ("NREL") estimates that over 78% of residential customers have the technical potential to install rooftop solar in Puerto Rico.[122]

The Legacy Charge imposes an "energy tax" on Puerto Rican households.[123] It is simply common sense that a Puerto Rican household hit with an "energy tax" would consider the pros and cons of leaving the system.[124] Dr. Irizarry provides the real costs of actual installed rooftop solar and storage systems, and concludes that a household's long-term costs would be far lower than staying on the grid and paying the Legacy Charge.[125] Beyond that – the household would be getting more reliable, more resilient power and they would become "prosumers."

Dr. George estimates that the average Puerto Rican customer uses 425 kWh per month.[126] Dr. Irizarry's testimony shows that this customer could obtain a rooftop solar + storage system providing 635 kWh per month,[127] at a levelized cost LOWER than the proposed $120/month bill.

FOMB and Dr. George attempted to estimate grid defection due to the Legacy Charge, but those estimates are fatally flawed because it appears they only

---

[122] Expert Report of Glenn R. George, ¶ 23, ECF No. 24083.

[123] Rebuttal Report of Glenn R. George, ¶ 33, ECF 24213.

[124] *Id.*

[125] Expert Report of Agustin Irizarry, ll 61-63, ECF 24082: "The [Levelized Cost Of Electricity] of residential rooftop solar photovoltaic systems, including batteries and using equipment of good warranty and LiFePO4 batteries, already cost less than the cost of electricity from the grid after applying the proposed legacy charge."

[126] Expert Report of Glenn R. George, ¶ 56, ECF 24083.

[127] Expert Report of Agustin Irizarry, ll. 313-319 (Table 2), ECF No. 24082. Dr. Irizarry modeled systems that provide 7,621 kWh per year, which is equivalent to 635 kWh per month.

considered rooftop solar, and not rooftop solar and storage.[128] In fact, Dr. George's direct testimony does not even mention batteries or storage of any kind. Dr. George estimates that the Legacy Charge will cause under-recovery of about 12%.[129] This fails to fully account for grid defection by customers with rooftop solar and storage – the true percentage will be much higher. Dr. George arrived at that 12% figure relying on several studies. None of the publicly available studies cited by Dr. George include significant analysis of grid defection due to rooftop solar and storage systems.[130]

Once customers are defecting from the grid *en masse*, PREPA will enter the death spiral that FOMB's expert warns of. As PREPA's revenues and collection of Legacy Charge falls, the Plan imposes a "covenant" on PREPA to increase rates yet again to pay off creditors.[131] "[C]reditors are protected" by this covenant, which comes at the expense of ratepayers.[132] Dr. George admits the FOMB designed the Legacy Charge to "maximize recoveries to PREPA's legacy creditors…"[133] This conflicts with the balanced approach required by (b)(6), where the Court must ensure that the Plan properly serves BOTH the creditors and PREPA's customers.

---

[128] Rebuttal Report of Glenn R. George, ¶ 46, ECF No. 24083.
[129] Expert Report of Glenn R. George, ¶ 84, ECF No. 24083. Dr. George expects PREPA to lose $812M out of a total Revenue Envelope of $6.4B. *Id.*
[130] Expert Report of Glenn R. George, ¶¶ 46-47 (Table 2), ECF No. 24083.
[131] Expert Report of Glenn R. George, ¶ 114, ECF No. 24083; Modified Second Am. Title III Plan of Adjustment of the Puerto Rico Electric Power Authority at 5, ECF No. 23663: "PREPA will be obligated to seek rates sufficient to cover all operating expenses…".
[132] Expert Report of Glenn R. George, ¶ 114, ECF No. 24083.
[133] *Id.* ¶ 30, ECF No. 24083.

This Court has only confirmed prior plans such as FOMB's Highways and Transportation Authority ("HTA") debt adjustment plan where they have met the legal requirements for confirmation of "[reducing] the debt burden of [the debtor] and [placing] Puerto Rico on a sustainable path forward."[134] This plan will do neither: despite FOMB's lopsided approach to maximizing creditors' recovery, the Legacy Charge will lock PREPA into a death spiral at the expense of both creditors who cannot recover and Puerto Ricans who have already suffered severe energy instability.

This Plan stretches Puerto Ricans' energy burden to the limit, and probably past it. When the next hurricane hits, PREPA will have no valuable assets, and will not be able to raise rates or borrow money. The FOMB's expert provides a description which fits:

> PREPA would have little flexibility to increase rates in response to future natural disasters, respond to fuel price fluctuations, invest in new generation or T&D assets, or implement upgrades to improve system resiliency and reliability. The limited ability to raise rates would similarly constrain PREPA's ability to raise new debt to finance these same costs. Such behavior by a utility would not be prudent. I am unaware of any utility which operates without leaving some margin for unexpected expenditures.[135]

## RELIEF REQUESTED

For the reasons detailed above, this Court should reject the Second Amended Plan of Adjustment. The Court should direct the Fiscal Oversight Management Board to draft a new plan, in close consultation with stakeholders, that aligns with Puerto

---

[134] *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK-3567, 2022 WL 6949992, at 2 (D.P.R. Oct. 12, 2022).
[135] Rebuttal Report of Glenn R. George ¶ 32, ECF No. 24213.

Rico energy policy, encourages the transition to distributed renewables, and gives PREPA the funds necessary to enable that transition.

**WHEREFORE,** it is respectfully requested from this Honorable Court to take notice of the above for all relevant purposes.

**I HEREBY CERTIFY** that, on this same date, I filed this document electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record and CM/ECF participants in this case. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *First Amended Standing Order.*

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 12th day of June 2023.

*/s/William Santiago-Sastre*
William Santiago-Sastre
USDC PR NO. 201106
P.O. BOX 1801
SABANA SECA,
Puerto Rico, 00952-1801
T: 786622-3939
wssbankruptcy@gmail.com

*/s/Laura Arroyo*
Laura B. Arroyo
USDC PR NO. 228312
Earthjustice
4500 Biscayne Blvd. Ste. 201
Miami, FL 33160
T: 305-440-5436
F: 850-681-0020
larroyo@earthjustice.org