# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF Nos. 3296, 3587** |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY'S STATEMENT REGARDING THE MODIFIED SECOND AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO ELECTRIC POWER AUTHORITY AND THE PROPOSED ORDER AND JUDGMENT CONFIRMING MODIFIED SECOND AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO ELECTRIC POWER AUTHORITY**

To the Honorable United States District Court Judge Laura Taylor Swain:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), respectfully submits this statement with regard to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (the "Plan") [ECF No. 3296] and proposed *Order and Judgment Confirming Modified Second Amended Title III Plan Of Adjustment of the Puerto Rico Electric Power Authority* (the "Confirmation Order") [ECF No. 3587, Exhibit A] filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"). AAFAF respectfully states as follows:

## PRELIMINARY STATEMENT

1. PREPA's primary duty and responsibility is to "provide and allow electric power to be provided in a reliable, clean, efficient, resilient, and affordable manner thus contributing to the general wellbeing and the sustainable development of the people of Puerto Rico."[2] The complete transformation of Puerto Rico's energy sector is essential to achieving this statutory duty. As a result, the Government of Puerto Rico's top priority has been supporting such transformation through: (i) securing private operation and management of PREPA's transmission and distribution system and legacy generation assets; (ii) deploying federal funds to harden, strengthen, and modernize PREPA's grid and generation, including transitioning to renewable energy generation; (iii) advocating for PREPA's exit from Title III with a sustainable debt load; and (iv) insisting on the role of an independent, knowledgeable, and strong energy regulator.

2. PREPA's restructuring will have a profound impact on Puerto Rico and its people, businesses, and economy for generations to come. An affordable, sustainable, and feasible plan is critical to allow PREPA to emerge from Title III and fulfill its statutory duty. But an unaffordable

---

[2] 22 L.P.R.A. § 196(a) as amended by Puerto Rico Energy Public Policy Act, No. 17-2019 ("Act 17"), § 2.8 (available at https://aeepr.com/es-pr/QuienesSomos/Ley17/A-17-2019%20PS%201121%20Politica%20Publica%20Energetica.pdf).

2

Plan will do the opposite—threatening PREPA's ability to fund an essential service in direct contradiction with PROMESA's goals.[3]

3. PREPA and the people and businesses it serves cannot bear unsustainably high rates, particularly given that, compared to the mainland United States, Puerto Rico has the lowest median household income and one of the highest electric rates.[4] AAFAF remains concerned that the Plan's proposed Legacy Charge[5] will overly burden Puerto Rico's residents and businesses. Creditor demands that PREPA charge more could not only imperil PREPA's future feasibility, but also threaten Puerto Rico's fragile recovery from years of economic depression, natural disasters, and pandemics. An excessive increase in rates may force Puerto Rico's residents to choose between paying for medication or other basic necessities and keeping their lights on. It may also force businesses to close their doors permanently and stall Puerto Rico's economic development.

4. Moreover, AAFAF expressly rejects creditor demands that the Commonwealth must spend more of its revenues to subsidize additional recoveries for PREPA creditors in excess of what is contemplated in the Plan. The Puerto Rico central government has already supported PREPA and its ability to provide *any* recovery to creditors. The central government has provided, and is providing, over $1.2 billion of support to PREPA to allow PREPA to meet its obligations under the contracts for the private operation of PREPA's transmission and distribution operations

---

[3] *See* PROMESA § 405(n) (noting that one of PROMESA's purposes is to provide the Government of Puerto Rico with the resources and the tools it needs to address the current crisis).

[4] *2022 Certified Fiscal Plan for the Puerto Rico Electric Power Authority* 32–33 (June 28, 2022), https://drive.google.com/file/d/1f6VCpY8sWmshvshWLNlJn52LFAvLABgk/view ("2022 PREPA Fiscal Plan"); *see* U.S. Energy Info. Admin., *Puerto Rico Territory Energy Profile* (Jan. 19, 2023), https://www.eia.gov/state/print.php?sid=RQ; U.S. Dept. of Health & Hum. Servs., *Overview of the State – Puerto Rico – 2022* (last visited June 12, 2023), https://mchb.tvisdata.hrsa.gov/Narratives/Overview/11398a5a-3858-47e2-a7b3-e0d3f8226c3b ("The 1YR 2019 PRCS median household income was $20,474, less than half of Mississippi ($44,787), the state with the lowest US median household income in 2019.").

[5] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan.

3

and legacy generation assets.[6] Further, the Plan provides for the central government to buy $400 million in the Administrative Expense Bonds so that PREPA can pay Allowed Administrative Expense Claims, as required for Title III emergence.[7] Central Government resources should be used for public policy initiatives and to protect Puerto Rico's most vulnerable. The same bondholders and insurers that stood in this Court and inveighed about the sanctity of entity separateness when it came to other Puerto Rico public corporations and argued that all surplus revenues at the Commonwealth should be provided to Commonwealth creditors cannot now claim that they have a legal entitlement to require the Commonwealth to enhance their PREPA recoveries. AAFAF is confident that the Court will keep these considerations in mind when evaluating the Plan.

5. The Plan and Confirmation Order must also be clear that, consistent with PROMESA § 314(b)(5) and Bankruptcy Code § 1129(a)(6), the Plan respects the role of PREPA's independent regulator, the Puerto Rico Energy Bureau ("PREB"), in PREPA rate setting, implementation, and bill design. While the Plan includes the Oversight Board's perspective on the charges necessary to fund the new bonds to be issued under the Plan, these charges do not reflect PREB's input. PREB is tasked with setting PREPA's electric rates. Puerto Rico Act No. 57-2014

---

[6] Disclosure Statement for Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority 103, Case No. 17-3283, ECF No. 23664 (Mar. 1, 2023); *see also* Financial Oversight and Management Board for Puerto Rico, *Media Release* (May 12, 2023), https://drive.google.com/file/d/1PFCtUK5--deX2YEqR-lHfV5_DqB0UhKL/view.

[7] Plan at Art. XVIII.H, Case No. 17-3283, ECF No. 23663 (Mar. 1, 2023) ("On the Effective Date, in order to provide for payment of the Allowed Administrative Expense Claims, the Commonwealth shall purchase, and Reorganized PREPA shall sell, assign, transfer, and convey to the Commonwealth the Administrative Expense Bonds for Cash in an aggregate purchase price equal to the sum of the Administrative Expense Bonds Amount" (*i.e.*, approximately $400,000,000)).

("Act 57-2014"), as amended, established procedures and standards for determining electric rates to be charged by PREPA and regulations and procedures for rate-setting and billing.

6. Together, the filed Plan and proposed Confirmation Order can be read to request the Court require PREB to approve the Legacy Charge in the specific form the Oversight Board has proposed.[8] While these documents, as filed, are problematic, the Oversight Board has recognized PREB's independent, legally mandated role in the rate setting process post-Plan filing and has been working with AAFAF to address its concerns in the proposed Confirmation Order. Certain provisions in the proposed Confirmation Order go part way to resolving AAFAF's concerns, but further clarity is needed as to whether PREB's statutory role is preserved.

7. Given the Plan's current posture, AAFAF emphasizes that PREB is the only entity with the legal power to determine a suitable rate structure for Puerto Rico. To be clear, PREB will do so with reference to an order of this Court determining PREPA's future debt obligations. But PREB must determine the specific rate charges to customers—not be forced to abandon its regulatory duties by being forced to rubber stamp the Legacy Charge. Consequently, any confirmed Plan must grant PREB the necessary leeway to fulfill its statutory obligations to protect Puerto Rico's energy sector.

8. Lastly, the proposed Confirmation Order contains vague preemption provisions that must be modified to expressly identify what Commonwealth laws the Oversight Board seeks to preempt. Vague and overly broad preemption provisions could lead to unintended consequences in the future, as the Government attempts to navigate what remains valid law.

---

[8] Plan at Art. XXXI.A(b)(ix); Notice of Filing of Proposed Order and Judgment Confirming Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, Ex. A ¶¶ 10, 24, ECF No. 24420 (June 5, 2023).

5

## AAFAF'S POSITION

### A. PREPA's Restructuring Must Prioritize PREPA's Viability and the Public Interest First.

9. "PROMESA is largely modeled on municipal debt principles set forth in Chapter 9 of the bankruptcy code."[9] Unlike a corporate bankruptcy which seeks to maximize creditor recoveries, the purpose of a municipal bankruptcy, like PREPA's under Title III of PROMESA, is to allow the municipal debtor to continue providing public services while restructuring its debts.[10] These guiding principles are paramount in considering whether the Plan meets the confirmation requirements and creditors' objections that Plan recoveries should require even higher electric rates.

10. Creditors objecting to the Plan recoveries ignore the unique considerations under PROMESA and its incorporation of certain concepts under Bankruptcy Code chapter 9. This case is literally about keeping the lights on for millions of residents and businesses in Puerto Rico at a reasonable rate.[11] As this Court has repeatedly recognized, the goal of Title III "is not merely to maximize creditors' recoveries"—"[t]he needs, concerns and future of a political entity that is the home of millions of American citizens, as well as the needs, concerns and rights of a broad range of parties in interest and the ability to propose confirmable plans of adjustment, are all implicated here."[12] Title III proceedings require a "holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the

---

[9] *In re Fin. Oversight & Mgmt. Bd.*, 919 F.3d 121, 125 (1st Cir. 2019).

[10] *Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.)*, 954 F.3d 1, 7–8 (1st Cir. 2020); *In re Fin. Oversight & Mgmt. Bd.*, 432 F. Supp. 3d 25, 30 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020).

[11] *See* May 22, 2017 Hearing Tr. at 8:8–12, Case No. 17-3283, ECF No. 207 (declaring that in these Title III cases, failure "is not an option. We cannot turn off all of the lights and close the door on Puerto Rico.").

[12] *See Fin. Oversight & Mgmt. Bd.*, 432 F. Supp. 3d at 30.

6

Commonwealth's residents as well as provide proper recompense of creditors."[13] Therefore, all parties must recognize that PREPA's restructuring is not strictly about assets and liabilities, but rather about protecting "the viability of [PREPA], and the ability of the government to continue to provide [essential] services to its people, and to ensure the economic viability of the territory" in order to truly fulfill the objectives of PROMESA.[14]

11. Historically, Puerto Rico has suffered from inherently disadvantaged energy infrastructure.[15] PREPA's physical infrastructure is weak; its generation and transmission and distribution systems need massive upgrades. The Oversight Board's "first day" statement in this Title III case noted that PREPA experienced outages at a rate more than 50% higher than national averages.[16] And Hurricane Maria not only resulted in the tragic death of thousands of Puerto Rico residents, but also represented a worst case scenario for PREPA's infrastructure.[17]

12. Moreover, PREPA's pensions are massively underfunded. As of June 30, 2020, PREPA's retirement system asserted actuarial liability to Participants of approximately $4.3

---

[13] *Id.*

[14] *See* Commonwealth Disclosure Statement Hearing Tr. 80:13–25, Case No. 17-3283, ECF No. 17379 (July 15, 2021).

[15] *See* Puerto Rico Public-Private Partnerships Authority, *Partnership Committee Report – Puerto Rico Public-Private Partnership for the Puerto Rico Electric Power Thermal Generation Facilities* at 4 (Jan. 18, 2023), https://www.p3.pr.gov/wp-content/uploads/2023/01/LGA-Partnership-Report.pdf (noting that PREPA's "Legacy Generation Assets experience above industry average equivalent forced outage rates, primarily as a result of poor equipment conditions due to the age of the units and poor operational practices."); *see also* Puerto Rico Public-Private Partnerships Authority, *Partnership Committee Report – Puerto Rico Public-Private Partnership for the Electrical Power Transmission and Distribution System* at 16 (May 15, 2020), https://www.p3.pr.gov/wp-content/uploads/2020/06/20-0520-02-partnership-committee-report-r18.pdf ("Puerto Rico's dated and fragile electric system has faced significant operational and reliability challenges and has struggled to provide residents with reliable and affordable power, as evidenced by reliability, customer satisfaction, and safety metrics that stand well below U.S. mainland and other island utility industry standards").

[16] Statement of Oversight Board Regarding PREPA's Title III Case ¶ 9, Case No. 17-4780, ECF No. 2.

[17] *See LUMA Annual Budgets: Fiscal Years 2024 to 2026* at 121 (May 15, 2023), https://energia.pr.gov/wp-content/uploads/sites/7/2023/05/20230516-MI20210004-FY2024_Annual-Budgets_redacted.pdf.

7

billion, which amount was supported by only $762 million in assets.[18] Today, the retirement system is virtually out of money, requiring pensions be funded on a "pay-go" basis.

13. PREPA's first priority, therefore, must be to preserve its "viability . . . and the ability of the government to continue to provide [essential] services to its people, and to ensure the economic viability of the territory."[19]

14. Creditors are, instead, focused on obtaining outsized recoveries inconsistent with the purpose of municipal bankruptcy and these Title III cases. Excessive electric rates have the potential to place an undue burden on Puerto Rico's residents and businesses and risk the viability of PREPA itself. Moreover, expensive electricity hurts Puerto Rico's economy, hinders new investments, and causes outmigration. If its electricity costs are unreasonably higher than other U.S. jurisdictions, Puerto Rico will lose out on investment opportunities, which will perpetuate the negative economic cycle, energy insecurity, and outmigration of the past decade. Conversely, affordable and reliable electricity can help both stem outmigration and potentially lure back some residents and businesses that have left over the last 15 years.

15. By proposing the Legacy Charge, the Oversight Board is attempting to strike a balance between PREPA's viability and providing meaningful recovery to creditors. But AAFAF is concerned about the size of the Legacy Charge since Puerto Rico's energy consumers already pay more for electricity relative to their income than consumers in any mainland U.S. state.[20] That said, if this Plan is confirmed, AAFAF will work with the Oversight Board and PREB to implement it as needed, in a manner that mitigates its impact on Puerto Rico's most vulnerable citizens.

---

[18] 2022 PREPA Fiscal Plan, *supra* note 4, at 175.

[19] Commonwealth Disclosure Statement Hearing Tr. 80:13–25.

[20] 2022 PREPA Fiscal Plan, *supra* note 4, at 32–33.

8

Successfully restructuring PREPA's debt and ending PREPA's bankruptcy remains a top priority for AAFAF and the Government of Puerto Rico.

### B. The Plan Must Respect PREB's Role, as Puerto Rico's Independent Energy Sector Regulator.

16. PREB is the only Puerto Rico entity with the power to set electric rates. PROMESA and the Bankruptcy Code require PREB's approval of any rate increases. PROMESA § 314(b)(5) states that, in order to confirm the Plan, the Oversight Board must prove that "regulatory . . . approval necessary under applicable law in order to carry out any provision of the plan has been obtained." Bankruptcy Code § 1129(a)(6) (incorporated by PROMESA § 301(a)) further specifically provides that Plan confirmation is conditioned on "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor [approving] any rate change provided for in the plan, or such rate change [being] expressly conditioned on such approval" in the Plan.

17. Act 57, as amended, created PREB[21]—a specialized independent regulator for PREPA in charge of regulating, overseeing, and enforcing the public policy on energy of the Government of Puerto Rico. PREPA's enabling act specifically provides that PREB shall be in charge of the rate review process and that such "process shall ensure that all rates are just and reasonable and consistent with sound fiscal and operational practices that provide for a reliable and adequate service at the lowest reasonable cost."[22]

18. The Plan and proposed Confirmation Order do not clearly provide for PREB's exercise of its statutory authority. While the Plan provides that it is a condition to both confirmation

---

[21] Formerly known as the Puerto Rico Energy Commission or "PREC."

[22] 22 L.P.R.A. § 196a(a), as amended by Act 17 § 5.20.

9

and effectiveness that PREB shall have approved the Legacy Charge,[23] there is also a condition precedent to confirmation that the Title III Court shall have entered an order or orders determining "*that PREB is required* to approve the Legacy Charge as a rate, fee, and/or charge necessary to guarantee that Reorganized PREPA meets its obligations to holders of New Bonds."[24] Similarly, the proposed Confirmation Order conditions the Legacy Charge, or such other Legacy Charge that complies with the Amendment Test, on PREB approval,[25] but then requires PREB to approve the Legacy Charge *as proposed by the Oversight Board*.[26]

19.  These Plan and proposed Confirmation Order provisions imply that the Plan and Confirmation Order would require PREB to approve and implement the Legacy Charge as specifically designed by the Oversight Board. But PREB—not the Oversight Board—is tasked with setting PREPA's electric rates.[27] And both PROMESA and the Bankruptcy Code respect independent regulatory duties, particularly in the area of rate making.

---

[23] Plan at Art. XXXI.A(d) (conditioning Plan confirmation on PREB providing any required approval of "the rates, fees, and charges, including the Legacy Charge, necessary to guarantee that Reorganized PREPA meets its obligations to holders of New Bonds."); Plan at Art. XXXII.A.4 (conditioning Plan effectiveness on PREB approving all "rates, fees, and charges necessary to guarantee that Reorganized PREPA meets its obligations to holders of New Bonds . . . including the Legacy Charge.").

[24] Plan at Art. XXXI.A(b)(ix) (emphasis added).

[25] Confirmation Order ¶ 9 ("On or prior to the Effective Date, the Legacy Charge shall be implemented by Reorganized PREPA or any qualified operator of the transmission and distribution system (including LUMA Energy) *after approval by PREB*, as detailed in Schedule B of the PREPA Plan and required by the New Master Indenture *or such other Legacy Charge that complies with the Amendment Test*." (emphasis added)).

[26] *Id.* ¶ 10 ("On or prior to the Effective Date, PREB shall have provided any required approval of . . . the Legacy Charge."); *see also id.* ¶ 24 (requiring PREPA or any Entity or Person acting for or on behalf thereof, in an equally troubling fashion, to "take any and all actions necessary to consummate the transactions contemplated by the PREPA Plan, *including setting, implementing and enforcing the Legacy Charge*." (emphasis added)).

[27] *See* Puerto Rico Energy Transformation and RELIEF Act, No. 57-2014, § 6.3(q), https://energia.pr.gov/wp-content/uploads/sites/7/2015/10/AN-ACT-57-20141.pdf, as amended by the Puerto Rico Energy Public Policy Act, No. 17-2019, https://aeepr.com/es-pr/QuienesSomos/Ley17/A-17-2019%20PS%201121%20Politica%20Publica%20Energetica.pdf.

20. PROMESA § 314(b)(5) was modeled after Bankruptcy Code § 943(b)(6).[28] The legislative history of Bankruptcy Code § 943(b)(6) demonstrates that the Title III Court cannot simply order PREB to approve the Legacy Charge, but rather must respect its independent regulatory role:

> New subsection (6) says that if regulatory . . . approval is necessary under nonbankruptcy law to carry out any provision of the plan, either such approval must be obtained before the court can confirm the chapter 9 plan, or this provision of the plan must be expressly conditioned on getting such approval. Many municipal actions require regulatory or electoral approval under constitutional, statutory or charter provisions. . . . If such approval is required before certain action can be taken by a municipality, either it must be obtained before the plan can be confirmed, or the provisions in the plan setting forth this action must be expressly conditioned on getting such approval."[29]

21. Moreover, Bankruptcy Code § 1129(a)(6), as incorporated by PROMESA § 301(a), further demands respecting PREB's duties. Under § 1129(a)(6), Plan confirmation on "[a]ny governmental regulatory commission *with jurisdiction*, after confirmation of the plan, over the rates of the debtor [approving] any rate change provided for in the plan, or such rate change [being] expressly conditioned on such approval" in the Plan.[30] In PREPA's case, this means PREB's approval is required.[31]

---

[28] 11 U.S.C. § 943(b)(6) is not incorporated in PROMESA, but PROMESA § 314(b)(5)'s almost identical text merits analyzing 11 U.S.C. § 943(b)(6)'s intent.

[29] H.R. Rep. No. 100-1011 at 8–9 (1988).

[30] 11 U.S.C. § 1129(a)(6).

[31] In other bankruptcies, state commissions have been required to approve plans with rate change provisions. *See, e.g.*, *In re PG&E Corp.*, 2019 WL 2482412, Case No. 19-30088-DM, at *4 (Bankr. N.D. Cal. May 28, 2019) (finding that "if any future plan includes a rate change, the [PG&E] would first have to obtain full approval from the [California Public Utilities Commission (the "CPUC")] . . . ."); *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 402–03; 410–11 (Bankr. N.D. Cal. 2004) (concluding that it could lawfully confirm PG&E's chapter 11 plan because confirmation of the Plan was conditioned upon the approval of the CPUC of a settlement agreement that contained rate change provisions, which it did); *In re Wabash Valley Power Ass'n, Inc.*, 77 B.R. 991, 994, 1005 (Bankr. S.D. Ind. 1987) (stating that § 1129(a)(6) requires a plan which includes a rate increase to be approved by the state commission before confirmation would become effective where the state commission had jurisdiction over rates).

11

22. The Oversight Board appears to have acknowledged this: at the Disclosure Statement hearing, counsel for the Oversight Board called the interplay between the Bankruptcy Code and PROMESA "reverse preemption" because "Congress has reversed the preemption when it comes to regulatory rate approvals."[32] That is, Congress has directed that Puerto Rico law—in this instance, Act 17 and Act 57—is supreme over Title III when it comes to approving rate changes in bankruptcy.[33] And that means only PREB has the authority to approve the rate changes proposed in the Plan. With this in mind, AAFAF will continue to work with the Oversight Board on modifications to the proposed Confirmation Order sufficient to ensure that PREB's role is respected.

### C. The Confirmation Order Contains Overly Vague Preemption Language.

23. Finally, the proposed Confirmation Order's scope of preemption should mirror the provisions this Court approved in the Commonwealth and HTA confirmation orders. The proposed PREPA Confirmation Order is unclear and overly broad regarding the scope of preemption. Specifically, paragraph 3(B) of the Confirmation Order, summarizing proposed findings of fact and conclusions of law, states that pursuant "to PROMESA Section 4, to the extent not previously ruled preempted pursuant to an order of the Title III Court, all laws (or portions thereof) of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, that are inconsistent with PROMESA and that affect the Debtor or Reorganized PREPA, are preempted."

---

[32] PREPA Disclosure Statement Hearing Tr. 118:12–17 (Feb. 28, 2023), attached hereto as **Exhibit A**.
[33] *See id.* at 118:14–15.

12

This provision simply reiterates section 4 of PROMESA on Commonwealth laws, and it is not clear what, if any, independent effect or purpose it serves.

24. AAFAF expressed similar concerns during the Commonwealth's confirmation proceedings and this Court sustained AAFAF's objection—finding that the preemption provisions initially proposed by the Oversight Board were "vague and/or broad and thus appear to be inconsistent with section 314(b)(3) of PROMESA."[34] Accordingly, to the extent that the Confirmation Order attempts to preempt Commonwealth statutes, such preemption provision should be directed to specified legislation and should include language specifically addressing the preemptive scope.

## CONCLUSION

25. The importance of getting PREPA's restructuring right is paramount. There is an opportunity here to shape the future of Puerto Rico's energy sector and Puerto Rico more broadly, but only if the Plan and its proposed Legacy Charge is affordable, feasible, and sustainable. If the Court concludes that PREPA must charge its customers more or that the central government must involuntarily contribute more to enhance PREPA's creditors' recoveries, the consequences could negatively affect PREPA's viability and Puerto Rico's economy as a whole. Moreover, ensuring that the Plan upholds PREB's authority over PREPA's rates is crucial and required by applicable law. Any provisions in the Plan or Confirmation Order to the contrary must be stricken.

---

[34] *See* Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. 3, Case No. 17-3283, ECF No. 19517 (Dec. 14, 2021).

## **RESERVATION OF RIGHTS**

26. AAFAF reserves all rights to: (i) raise and expand on any issue set forth herein at the Plan confirmation hearing or at any time at or before confirmation; and (ii) object to any provisions of any amended Plan or Confirmation Order.

27. In addition, the proposed Confirmation Order incorporates findings of fact and conclusions of law that the Oversight Board has not yet filed with the Court or shared with AAFAF.[35] The findings of fact and conclusions of law may include several legal conclusions regarding the preemption of certain Puerto Rico laws.[36] AAFAF reserves all rights to supplement this statement with regard, or formerly object, to the preemption provisions that may be included in proposed Confirmation Order or the findings of fact and conclusions of law.

[*Remainder of Page Intentionally Left Blank*]

---

[35] *See* Confirmation Order ¶ 3.

[36] *See id*. ¶ 3(B).

Dated: June 12, 2023
    San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Maria J. DiConza*
John J. Rapisardi
Maria J. DiConza
(Admitted *Pro Hac Vice*)
Gabriel L. Olivera
USDC No. 303314
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
       mdiconza@omm.com
       golivera@omm.com

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com
       apavel@omm.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC-PR No. 222301
Carolina Velaz-Rivero
USDC-PR No. 300913
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*