# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>        Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 3580 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>        Movant,<br><br>   v.<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>        Respondent. | |

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**DEBTOR'S OPPOSITION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION *IN LIMINE* TO PRECLUDE TESTIMONY FROM DAVID BROWNSTEIN AND
DAVID SKEEL AT THE CONFIRMATION HEARINGS AS TO MATTERS OVER WHICH
THE OVERSIGHT BOARD ASSERTED PRIVILEGE DURING THEIR DEPOSITIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 2

    A.    PREPA's Confidential Mediation ........................................................ 2

    B.    PREPA's Plan and the Court's Confirmation Procedures Order ............ 3

    C.    PREPA's Disclosures Pursuant to the Confirmation Procedures Order ........ 3

    D.    Messrs. Skeel and Brownstein's Depositions and the Motion .............. 7

ARGUMENT .................................................................................................... 8

I.    At Deposition, Counsel for the Debtor Instructed Messrs. Skeel and Browtnsein Not to
Answer Questions that Invaded Clearly Applicable Privileges ......................... 8

II.    The Motion is Premature ........................................................................... 10

III.    The UCC's Motion Unfairly and Misleadingly Presents the Deposition Testimony
of Mr. Brownstein and Mr. Skeel ................................................................ 12

    A.    *David Skeel Testimony* ..................................................................... 13

    B.    *David Brownstein Testimony* ............................................................ 15

CONCLUSION ................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ACQIS, LLC v. EMC Corp.*,
    No. 14-CV-13560, 2017 WL 2818984 (D. Mass. June 29, 2017)...........................................9

*Bulow v. Bulow (In re von Bulow)*,
    828 F.2d 94 (2d Cir. 1987)...........................................................................................................9

*Est. of Leavitt Rey v. Marrero Gonzalez*,
    No. 16-2769, 2020 WL 4464467 (D.P.R. Aug. 4, 2020).............................................................4

*Ford as Next Friend of Doe v. NCL Bahamas Ltd.*,
    No. 17-CV-24404, 2019 WL 3937127 (S.D. Fla. June 4, 2019).................................................4

*Luxottica Grp. S.p.A. v. Liquidity Servs., Inc.*,
    No. CV 18-7821, 2019 WL 2620727 (C.D. Cal. May 24, 2019).................................................9

*Manske v. UPS Cartage Servs., Inc.*,
    No. 2:10-cv-00320-JAW, 2012 WL 13211725 (D. Me. May 9, 2012).......................................12

*Stewart Title Guar. Co. v. Owlett & Lewis, P.C.*,
    297 F.R.D. 232 (M.D. Pa. 2013)...............................................................................................10

*Swidler & Berlin v. United States*,
    524 U.S. 399 (1998).....................................................................................................................8

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021)..................................................................................................................8

*United States v. Razo*,
    No. 1:11–cr–00184–JAW, 2012 WL 6569334 (D. Me. Dec. 17, 2012)..............................11, 12

*Wiand v. Fam. Tree Est. Plan., LLC*,
    No. 21-cv-361, 2022 WL 17572769 (M.D. Fla. Nov. 7, 2022)...................................................9

*XYZ Corp. v. United States (In re Keeper of Recs. (Grand Jury Subpoena
    Addressed to XYZ Corp.))*,
    348 F.3d 16 (1st Cir. 2003)......................................................................................................11, 12

STATUTES & RULES

11 U.S.C. § 1129(b)(1) ..........................................................................................................8, 14, 15

48 U.S.C. §§ 2101–2241...................................................................................................................1

Fed. R. Civ. P. 26(a)(2)(C) ........................................................................................................4, 5

Fed. R. Civ. P. 30(b)(6).................................................................................................................7

Fed. R. Civ. P. 30(c)(2)............................................................................................................9, 10

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA," or the "Debtor"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this opposition (the "Opposition") to the Official Committee of Unsecured Creditors' (the "UCC") *Motion in Limine to Preclude Testimony from David Brownstein and David Skeel at the Confirmation Hearings as to Matters Over Which the Oversight Board Asserted Privilege During their Depositions* [ECF No. 3580][3] (the "Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Motion, while styled as a motion *in limine*, is merely a complaint Messrs. Brownstein and Skeel were instructed not to answer questions during deposition that invaded the attorney-client and mediation privileges and mediation confidentiality.  But, the instructions were entirely proper.  The instructions were directly in response to a host of improper questions and consistent with the Court's clear direction that any communications concerning mediation remain absolutely confidential.

2.      More fundamentally, however, and notwithstanding the propriety of the instructions at issue, the specific relief the UCC seeks is premature.  Although the UCC asks the Court to preclude Messrs. Skeel and Brownstein from proffering testimony concerning the same topics over which the attorney-client and mediation privileges and mediation confidentiality were invoked during deposition, Messrs. Skeel and Brownstein have not yet proffered their witness

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3]      Docket references contained herein refer to the docket for Case No. 17-4780 unless otherwise specified.

declarations (*i.e.*, their actual testimony).  Those are not due until June 26, 2023.  Unlike a "sword and shield" situation, the UCC cannot point to any actual testimony the Debtor has affirmatively put at issue for its benefit and over which it simultaneously claims privilege.  Thus, any ruling from the Court would not address a live controversy.  If a true controversy ever arises on this issue, the Court can address it at the appropriate time.  Moreover, the UCC cites no authority for the proposition that the holder of a valid privilege cannot waive it at trial if it did not waive it during discovery.

3.     Finally, the Motion fails to present the totality of circumstances and unfairly presents the depositions of Messrs. Skeel and Brownstein as somehow preventing examination into certain subjects.  As described below, and as is clear throughout the deposition transcripts made available to the Court, Messrs. Skeel and Brownstein testified exhaustively to the facts and bases for their positions.

4.     For the foregoing reasons, the Motion should be denied.

## BACKGROUND

**A.  PREPA's Confidential Mediation.**

5.     On April 8, 2022, this Court entered the *Order Establishing the Terms and Conditions of Mediation* [ECF No. 2773] (the "Mediation Order"), establishing terms and conditions to facilitate confidential mediation in connection with PREPA's Title III case.

6.     Therein, the Court was explicit that mediation in connection with PREPA's Title III case "shall be kept confidential."  Mediation Order ¶ 8 ("All communications made by and all submissions prepared by a Mediation Party *in connection with* the Mediation . . . shall remain confidential . . . .") (emphasis added); *id.* ¶ 9 ("The Mediation Parties and their counsel and advisors shall not in any way disclose to any non-party or to any court, including, without

limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, or Settlement Proposal . . . that may be made or provided *in connection with* the Mediation . . . .") (emphasis added).

7.      To that end, this Court has repeatedly instructed counsel for parties in interest at various hearings explicitly ***not*** to divulge discussions and communications regarding PREPA's mediation.  *See* May 8, 2023 Hearing on the Status of Mediation Tr. 8:18-22 (describing the court-ordered mediation as a context in which the parties can approach each other "frankly and confidentially"); 9:9-11 (THE COURT:  "I will not be asking any party or the mediators to reveal the particulars of any negotiation positions or confidential information exchanged in mediation."); December 14, 2022 Omnibus Hearing Tr. 10:7-17 ( "MR. BIENENSTOCK:  Okay, your Honor. As the Court understands, the mediation confidentiality severely constrains what I think any of us can and should be saying . . . . THE COURT:  I do want you to be careful not to breach mediation confidentiality, so I appreciate your attention to that.").

**B. PREPA's Plan and the Court's Confirmation Procedures Order.**

8.      On March 1, 2023, the Oversight Board filed the *Modified Second Amended Title III Joint Plan of Adjustment of the Puerto Rico Electric Power Authority* [ECF No. 3296] (as it may be amended, modified, or supplemented, the "Plan").

9.      Following submission of the Plan, the Court established a schedule and procedures relating to confirmation of the Plan, including a timeline for parties to file preliminary witness lists.  *See Third Amended and Restated Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 3565] (the "Confirmation Procedures Order").

### C. PREPA's Disclosures Pursuant to the Confirmation Procedures Order.

10.     Pursuant to the Confirmation Procedures Order, parties in interest seeking to proffer fact testimony at the confirmation hearing on the Plan were required to file "preliminary fact witness list[s] and topics about which each witness will testify."  Confirmation Procedures Order ¶ 3.

11.     In accordance with the Confirmation Procedures Order, on March 11, 2023, the Debtor filed its *Preliminary List of Witnesses to Be Offered in Support of Confirmation of Plan of Adjustment* [ECF No. 3329] ("Preliminary Fact Witness List"), which identified (1) Mr. David Skeel, Chairperson of the Oversight Board, as a fact witness, and (2) Mr. David Brownstein, Managing Director, Citigroup Global Markets Inc., as both a fact witness and a witness who ***may*** offer opinion testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C).[4]  Preliminary Fact Witness List at 3-4.

12.     Specifically, the Debtor disclosed that Mr. Skeel:

> ***May*** provide fact testimony showing the Plan complies with the provisions of PROMESA section 314(b)(1), including, without limitation, that it complies with the provisions of Bankruptcy Code sections 1122(a), 1122(b), 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b)(1), 1123(b)(2), 1123(b)(3), 1123(b)(5), 1123(b)(6), 1123(d), 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8) (if applicable), 1129(a)(10), 1129(b)(1), and 1129(b)(2), PROMESA section 314(b)(2), 314(b)(3), 314(b)(4), 314(b)(5), 314(b)(6), and 314(b)(7).  Mr. Skeel ***may*** also provide testimony about facts showing (i) the Fuel Line Lender PSA, the National PSA, the Vitol Settlement Agreement, and Uninsured Bondholder Settlement Agreement (collectively, the "Plan Settlements") are reasonable, (ii) the releases, injunctions, and

---

[4]     Fed. R. Civ. P. 26(a)(2)(C) governs the disclosure standards for "hybrid" witnesses, or witnesses who "provide both fact and opinion testimony based on their scientific, technical, or other specialized knowledge."  *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, No. 17-CV-24404, 2019 WL 3937127, at *2 (S.D. Fla. June 4, 2019).  Such witnesses are not required to submit expert reports.  *Est. of Leavitt Rey v. Marrero Gonzalez*, No. 16-2769, 2020 WL 4464467, at * 1 (D.P.R. Aug. 4, 2020).

exculpation provisions provided in the Plan are reasonable and appropriate, integral to the Plan, and constitute an essential component of the compromises identified above and in the Plan, and (iii) certain of the Commonwealth statutes the Oversight Board contends are preempted, or portions thereof, are inconsistent with PROMESA.

*Id.* at 2-3 (emphasis added).

13.     In addition, the Debtor disclosed that Mr. Brownstein:

*May* provide testimony showing the Plan complies with the provisions of PROMESA sections 314(b)(6) and 314(b)(7) and Bankruptcy Code section 1122(a). Mr. Brownstein *may* also provide testimony about facts showing (i) some or all of the Plan Settlements are reasonable, (ii) the releases provided in the Plan are reasonable and appropriate, integral to the Plan, and constitute an essential component of the compromises identified above and in the Plan, (iii) the Plan's structuring and consummation fees and professional reimbursement fees are fair and reasonable, (iv) the terms and structure of the New Bonds and CVI, and (v) the calculation of creditor recoveries.

*Id.* at 3 (emphasis added).

14.     Pursuant to the Confirmation Procedures Order, parties in interest seeking to proffer expert testimony at the confirmation hearing on the Plan were required to file (1) opening expert disclosures by April 14, 2023, and (2) opening expert reports on or before April 28, 2023. Confirmation Procedures Order ¶¶ 24-25.

15.     In accordance with the Confirmation Procedures Order, on April 14, 2023, the Debtor filed the *Debtor's Identification of Expert Witnesses* [ECF No. 3394] (the "Identification of Experts").  Therein, again, the Debtor expressly identified that Mr. Brownstein *may* provide opinion testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C).  Identification of Experts ¶ 2(a).  And on April 28, 2023, the Debtor filed the *Debtor's Opening Expert Reports and Disclosures* [ECF No. 3418] (the "Opening Expert Disclosures") in which Debtor provided the requisite disclosure for the witnesses it identified as Fed. R. Civ. P. 26(a)(2)(C) witnesses, including Mr. Brownstein.

Specifically, the Debtor explained:

> The subject matters on which Mr. Brownstein *may* testify include: (i) a description of the structure and terms of the New Bonds and CVI to be issued pursuant to the Plan; (ii) the impact of the New Bonds' terms on the Plan's feasibility under PROMESA § 314(b)(6); (iii) the consistency of the New Bonds and CVI to be issued pursuant to the Plan with PREPA's fiscal plan under PROMESA § 314(b)(7); (iv) the negotiation of the National PSA and the Fuel Line Lender PSA, including the benefits of those settlements; and (v) the basis for the releases and professional fees provided in connection with those settlements in the Plan.

Opening Expert Disclosures ¶ 2(a) (emphasis added).

16.    With respect to topics (iv) and (v)—the National PSA and the Fuel Line Lenders

PSA—the Debtor disclosed that:

> Mr. Brownstein is expected to testify concerning the National PSA and the Fuel Line Lenders PSA. Mr. Brownstein is expected to testify, *to the extent consistent with mediation privilege*, as to the nature of the negotiations that took place between the parties leading to those settlements, as well as the terms of the settlements, the benefits that they provide to PREPA, and the risks to PREPA were it to lose any of the disputes that are resolved through these settlements. Mr. Brownstein will also testify concerning the fees and other amounts proposed to be reimbursed or paid to National and the Fuel Line Lenders, as well as the releases provided for by the settlements and proposed to be effectuated by the Plan. Mr. Brownstein is also expected to testify the fees and other amounts proposed to be paid pursuant to these settlements are fair and reasonable in light of the obligations, responsibilities, and efforts undertaken by the proposed fee recipients, the relative magnitude of the fee payments compared to PREPA's overall debt, and the use and magnitude of such fees in comparable cases. Mr. Brownstein will base this testimony on his personal participation in the negotiation of the National PSA and the Fuel Line Lender PSA, his personal participation in, or supervision of, communications between and among advisors to the Oversight Board, and his significant expertise and experience in the municipal bond market and with Title III restructurings.
>
> More specifically, with respect to the Fuel Line Lenders PSA, Mr. Brownstein is expected to testify regarding the key benefits the Oversight Board took into account in approving the settlement,

6

including, among other things, its resolution of the litigation filed by the Fuel Line Lenders regarding the asserted priority of the Fuel Line Lenders' claims. Regarding the release called for by the settlement, Mr. Brownstein *may* testify as to how such release's proposed terms provide flexibility for the Oversight Board to enter into subsequent settlements with other parties.

As to the National Settlement, Mr. Brownstein is expected to testify that its structure, including its use of a trust commutation, is consistent with other settlements approved by this Court in other Title III plan confirmations, as well as prior municipal bond structures in which Mr. Brownstein has been involved. Mr. Brownstein is also expected to testify about the key benefits the Oversight Board took into account in approving the National Settlement. Mr. Brownstein *may* also address the National Reimbursement Claim, including its particular features. Further, Mr. Brownstein *may* also testify about the work done by National's professional advisors relating to the structure of the Series B Bonds, and how such efforts provide a benefit to creditors who may enter into future settlements.

*Id.* at 4-5 (emphasis added).

17.     Pursuant to the Confirmation Procedures Order, the Debtor will file the witness declarations of Messrs. Skeel and Brownstein on June 26, 2023.  Confirmation Procedures Order at 6.  No direct testimony of either witness has been filed as of this date.

**D.  Messrs. Skeel and Brownstein's Depositions and the Motion.**

18.     Mr. Skeel was deposed on May 3, 2023 (Ex. 1, "Skeel Dep. Tr.") and Mr. Brownstein was deposed on May 16, 2023 (Ex. 2, "Brownstein Dep. Tr.").[5]  Among other things, Messrs. Skeel and Brownstein testified in accordance with the Debtor's prior disclosures. Although counsel for the Oversight Board instructed Messrs. Skeel and Brownstein not to answer

---

[5]     On April 28, 2023, the UCC noticed the depositions of Messrs. Skeel and Brownstein, as well as the deposition of PREPA representatives pursuant to Fed. R. Civ. P. 30(b)(6).  [ECF No. 3419.]  On May 9, 2023, PREPA served its responses and objections to the 30(b)(6) notices, designating David Brownstein as PREPA's witness as to several topics, including the National PSA and the Fuel Line Lender PSA.  *See* Ex. 3 at 9-12.

questions that invaded either the attorney client privilege or mediation privilege, counsel for the UCC had a full opportunity to examine Messrs. Skeel and Brownstein on their designated topics, and indeed, they did provide extensive testimony on those matters.[6]

19.     On June 2, 2023, the UCC filed the Motion seeking to preclude Messrs. Skeel and Brownstein "from testifying at the upcoming July 2023 confirmation hearing [] as to matters on which they refused to answer questions in their depositions based on a 'mediation privilege' or attorney-client privilege . . . ."[7]   Motion at 1.   In particular, the UCC referenced instructions provided to Messrs. Skeel and Brownstein regarding the disclosure of information relating to the Fuel Line Lenders and National settlements.   *See, e.g.*, *id.* ¶ 7 (Brownstein), ¶ 14 (Skeel). No motion to compel was ever filed on any of the instructions at issue here.

## ARGUMENT

### I.     At Deposition, Counsel for the Debtor Instructed Messrs. Skeel and Brownstein Not to Answer Questions that Invaded Clearly Applicable Privileges

20.     Privileges must be preserved absent waiver.   The attorney-client privilege is "intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of

---

[6]     *See, e.g.*, Brownstein Dep. Tr. 96:23-97:25 (the benefits of the settlements with National and the Fuel Line Lenders); *id.* 94:18-95:3 (the effect the Fuel Line Lenders settlement had on PREPA's ability to make an offer to bondholders); *id.* 99:16-22 (same); *id.* 142:3-150:10 (the National settlement was reasonable); 125:25-128:12 (the consummation and professional reimbursement fees); Skeel Dep. Tr. 170:22-171:6 (the Fuel Line Lenders settlement was reasonable), 286:6-12 (same); 340:23-341:14 (the National settlement was reasonable); 334:24-335:7 (the Plan's compliance with Section 1129(b)(1) of the Bankruptcy Code); 159:14-25 (the consummation and professional reimbursement fees); 345:8-348:2 (same).

[7]     Counsel for the Oversight Board also instructed Messrs. Brownstein and Skeel not to answer questions to the extent they treaded on the deliberative process privilege, which protects the deliberative "process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021) (citation omitted). The Motion does not challenge the invocation of this privilege.

justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403, (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  The mediation privilege protects "communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation., *ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560, 2017 WL 2818984, at *2 (D. Mass. June 29, 2017), and, pursuant to the Mediation Order, the Court here mandated that *all* negotiations and settlements related to the mediation be kept confidential. Mediation Order ¶¶ 8-9.  To preserve a privilege or to otherwise enforce a limitation ordered by a court, the Federal Rules authorize counsel to instruct deponents not to answer.  *See* Fed. R. Civ. P. 30(c)(2).  Significantly, while the Oversight Board owns its attorney-client privilege, it does not own or control the mediation privilege.

21.     During the depositions of Messrs. Skeel and Brownstein, the examiners repeatedly asked questions that invaded the attorney-client privilege.  *See e.g.*, Skeel Dep. Tr. 161:9-14, 258:23-259:11, 331:8-15.  Counsel for the Oversight Board was warranted in instructing the witnesses not to divulge information covered by the privilege.  *Luxottica Grp. S.p.A. v. Liquidity Servs., Inc.*, No. CV 18-7821, 2019 WL 2620727, at *2 (C.D. Cal. May 24, 2019) ("To the extent that any deposition questioning may call for the disclosure of [attorney-client] privileged communications, the deponents may be instructed not to answer to preserve the privilege.").  This is because, absent waiver, the examiners have no legal right to any such information.  *See Bulow v. Bulow (In re von Bulow)*, 828 F.2d 94, 100 (2d Cir. 1987) ("[T]he [attorney-client] privilege belongs solely to the client and may only be waived by him.").

22.     Likewise, counsel's instructions to Messrs. Skeel and Brownstein not to answer questions implicating the mediation privilege or requiring the witnesses to divulge information in

9

contravention of the Court's Mediation Order, *see* Skeel Dep. Tr. 250:16-20, 252:8-9, 296:8-15; Brownstein Dep. Tr. 89:21-24; 91:17-94:9; 145:22-146:5, were required. *Wiand v. Fam. Tree Est. Plan., LLC*, No. 21-cv-361, 2022 WL 17572769, at \*1-2 (M.D. Fla. Nov. 7, 2022) (denying motion to compel response to deposition question about tentative settlement agreement as agreement was subject to mediation privilege and instructions to witness not to answer were proper); *see Stewart Title Guar. Co. v. Owlett & Lewis, P.C.*, 297 F.R.D. 232, 241 (M.D. Pa. 2013) (noting counsel could have instructed witness not to answer questions regarding mediation memo at deposition pursuant to Rule 30(c)(2)).  Indeed, this Court has been explicit that mediation in connection with PREPA's Title III case "shall remain confidential," Mediation Order ¶ 8, and "[t]he Mediation Parties and their counsel and advisors shall not in any way disclose to any non-party or to any court . . . any such discussion, mediation statement, other document or information, correspondence, resolution, or Settlement Proposal . . . that may be made or provided *in connection with* the Mediation . . . .", *id.* ¶ 9 (emphasis added).  As such, the fact that Messrs. Skeel and Brownstein were instructed not to disclose discussions concerning settlements that occurred during or in connection with the mediation is unremarkable, unsurprising, and consistent with the Court's explicit direction.

## II.    The Motion is Premature

23.    Putting aside the fact that it was entirely appropriate to instruct Messrs. Skeel and Brownstein not to answer questions invading clearly applicable privileges or requiring them to disclose information in violation of a court order, to the extent the UCC is concerned about testimony Mr. Skeel or Mr. Brownstein ***might*** offer in their direct testimony, the Motion is premature and should be denied.

24.    Contrary to the UCC's Motion, topics and issues were not secreted.  *See* Motion at 14.  The UCC procured responses on all topics and issues, but without privileged communications.

The UCC's requested relief addresses a purely speculative scenario, but a scenario that is entirely legal, namely a scenario in which the attorney-client privilege is waived.  The Oversight Board has not determined to waive its privilege at trial, but there is no law or rule prohibiting it from doing so.  Moreover, Messrs. Skeel and Brownstein have not proffered their witness declarations yet; that is not required until June 26, 2023.  *See* Confirmation Procedures Order at 6.  With respect to the mediation privilege, the UCC conveniently ignores the Debtor explicitly indicated Mr. Brownstein will only testify regarding negotiations that led to settlements with the Fuel Line Lenders and National "***to the extent consistent with mediation privilege***."  Opening Expert Disclosures at 4 (emphasis added).  And to avoid any waiver, Mr. Skeel will testify in the same fashion.  The Oversight Board lacks the power to waive the mediation privilege as long as the Court maintains its order.

25.      Thus, because the UCC does not seek to exclude any actual testimony that Mr. Brownstein or Mr. Skeel have affirmatively placed at issue in this litigation, the UCC's invocation of the "sword and shield" doctrine (Motion at 13-15) is without merit.  That concept only applies where "the party asserting the privilege place[s] protected information in issue for personal benefit through some affirmative act," and fairness dictates that the party disclose the protected information.  *XYZ Corp. v. United States (In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.))*, 348 F.3d 16, 24 (1st Cir. 2003) (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41 (Joseph M. McLaughlin ed.1997)).  Rather, the Motion only complains that the witnesses were instructed not to answer certain questions at deposition— the answers to which would have intruded the attorney-client or mediation privilege or otherwise violated mediation confidentiality—and requests relief concerning a situation it only speculates will occur.

26.     Courts are well within their discretion to deny motions *in limine* requesting resolution of speculative events, such as the situation here.  For example, in *United States v. Razo*, the court denied a motion *in limine* without prejudice based on "the Government's representation that it d[id] not intend to present the contested evidence at trial."  No. 1:11–cr–00184–JAW, 2012 WL 6569334, at *4 (D. Me. Dec. 17, 2012).  The court held that "[i]n light of the Government's representation . . . a ruling on the merits would constitute an advisory opinion."  *Id.; see also Manske v. UPS Cartage Servs., Inc.*, No. 2:10-cv-00320-JAW, 2012 WL 13211725, at *1 (D. Me. May 9, 2012) (denying motion *in limine* without prejudice where the parties did not "present [the court] with a concrete case or controversy.").  Here, the Motion presents the same scenario, as it seeks to limit the Oversight Board from proffering testimony it has not yet and likely will never put forth.  Put differently, if Messrs. Brownstein and Skeel do not offer testimony that divulges confidential mediation settlement discussions or implicates the mediation privilege or attorney-client privilege, then any ruling on this Motion limiting the Debtor from presenting such nonexistent testimony will necessarily be advisory.  If the Oversight Board actually were to place information that is either privileged or otherwise subject to mediation confidentiality at issue by including it in Messrs. Brownstein and Skeel's forthcoming declarations, the UCC is free to cross-examine the witnesses at that time.  For that reason, the UCC would not suffer any prejudice should the Motion properly be denied.

## III.     The UCC's Motion Unfairly and Misleadingly Presents the Deposition Testimony of Mr. Brownstein and Mr. Skeel

27.     Beyond the substantive defects described above, the Motion misleads the Court by suggesting Mr. Brownstein and Mr. Skeel were entirely silenced on various topics at their depositions, including the topics the Debtor identified in its witness disclosures as ones where each witness "may" testify.  That is not the case.  The fact that Debtor's counsel instructed the witnesses

not to answer questions that called for privileged or mediation confidential information does not make their extensive testimony concerning facts on the same subjects disappear. Nor does it render their hearing testimony on those same topics inadmissible or inappropriate.

28.    Both witnesses testified as to facts they knew of and the related thought processes that led each (and the Oversight Board) to pursue certain actions with respect to the settlement agreements. And counsel for the Oversight Board was quite clear that counsel for the UCC (and all other parties) could pose such questions to Messrs. Brownstein and Skeel to the extent they did not invade the relevant privileges.

### A.    *David Skeel Testimony*

29.    For example, the UCC's contention that, "the Oversight Board and Mr. Skeel frustrated the Committee's ability to fully explore the topics on which Mr. Skeel has said he intends to testify," (Motion ¶ 15) wholly ignores Mr. Skeel's extensive deposition testimony outlining the facts and the bases in support of those same topics.

30.    The UCC complains of the lack of testimony from Mr. Skeel with respect to the reasonableness of the plan settlements. *Id.* ¶ 15. But with respect to the Fuel Line Lenders settlement, Mr. Skeel testified point-blank that, in his understanding, the settlement was reasonable. *E.g.*, Skeel Dep. Tr. 170:22-171:6, 286:6-12, 306:22-23. He substantiated his basis for this view several times. For example:

> In my view, the terms of the settlement are reasonable because the fuel line lenders had plausible claims that they were entitled to current expense treatment and entitled to payment in full. And by settling it, we were able to resolve those claims at a lower level than if they had successfully litigated those claims. And we also got the benefit of substantial creditor supporting the plan of adjustment

*Id.* 304:18-305:4.[8]

---

[8]    *See also id.* 170:22-171:6; 314:12-22.

31.    Mr. Skeel similarly testified that he believed the National settlement was reasonable

and provided his basis for that understanding.  For instance:

> I believe it's reasonable because when we entered the settlement,
> National had an argument that they were completely secured. And
> they were entitled to 100 cents on the dollar, plus post-petition
> interest for the duration of the case. And in return for the settlement,
> they compromised that argument and agreed to take the 71.65
> percent. And the other components of the deal, they agreed to
> support the plan to vote in favor of the plan. And by reaching the
> deal with them, we took roughly a billion dollars off the table.

*Id.* 340:23-341:14.[9]

32.    Finally, the UCC complains of Mr. Skeel's lack of testimony with respect to the

Plan's compliance with Section 1129(b)(1) of the Bankruptcy Code, and specifically whether the

Plan discriminates unfairly within the meaning of that section.  Motion ¶ 12.  But the UCC

overlooks the fact that Mr. Skeel offered testimony on this topic to the extent the questioning did

not seek to elicit the substance of his conversations with counsel.  First, Mr. Skeel explained his

general understanding of the Section 1129(b)(1)'s meaning.  Skeel Dep. Tr. 284:21-285:19.  And,

second, Mr. Skeel testified as to his understanding of the underlying facts for why the Fuel Line

Lenders are entitled to be treated differently under the Plan than general unsecured creditors.  *Id.*

334:24-335:7 ("Facts that I'm aware of are that the fuel line lenders had a particularly strong claim

to current expense treatment because they're named in the -- explicitly in the trust agreements.

And they have contracts with PREPA that describe them as entitled to current expense

treatment.").  And, if Mr. Skeel ever actually offers testimony at confirmation on that aspect of

Section 1129(b)(1) that was the subject of an instruction at his deposition, the parties can cross-

---

[9]    *See also id.* 286:13-16; 342:4-14; 344:5-23.

14

examine at the appropriate time.[10]

### B.   David Brownstein Testimony

33.     Likewise, while the UCC complains it was prevented from discovering information

pertaining to the National and Fuel Line Lenders settlements and the reasonableness of such

agreements, Motion ¶ 10, Mr. Brownstein provided **substantial testimony** about his personal

understanding of these topics.   Indeed, as the UCC notes in its Motion (¶ 6), counsel for the

Oversight Board drew a "bright line" and instructed Mr. Brownstein not to answer anything "in

terms of what went back and forth" in settlement talks leading to the Fuel Line Lenders PSA.[11]

Brownstein Dep. Tr. 93:3-94:9; *see also id.* 93:5-8 ("And you asked the question about how many

proposals went back and forth.   And I think that that process is – that process does get into

mediation privilege.").   However, the Oversight Board's counsel allowed Mr. Brownstein to

answer questions that probed his personal understanding of the settlement agreements as long as

he steered clear of the specific "back and forth."

34.     For instance, and merely by way of illustration, Mr. Brownstein testified about what

he perceives as the benefits of the settlements as they relate to the Debtor's ultimate goal of

---

[10]     Additionally, counsel for the Oversight Board instructed Mr. Skeel he should answer any and all questions he has a factual understanding of and only refrain from discussing the deliberative process of the Oversight Board with respect to the negotiations of the settlement agreements.  *Id.* 238:9-14 ("Without getting into how the deliberations take place, you can answer his question by reference to your general practice and how you went about it.").   The Oversight Board's counsel objected to certain questions only to the extent they went towards the progress, discussions, or efforts towards settlement because those discussions are "not admissible or appropriate, whether in the mediation context or otherwise under Rule 408."  *Id.* 296:8-15.

[11]     It is confounding that the UCC takes issue with this instruction.   The Debtor's Opening Expert Disclosures specified that Mr. Brownstein was expected to testify regarding the National PSA and the Fuel Line Lenders PSA only "to the extent consistent with the mediation privilege." Opening Expert Disclosures at 4-5.   Additionally, Mr. Brownstein was identified as the 30(b)(6) witness for the Debtor concerning the settlements with National and the Fuel Line Lenders, subject to the attorney-client and mediation privileges.  *See* Ex. 3 at 9-12.

confirming the Plan:

> The benefit I would suggest to you of each settlement that we have
> is, A, they stopped our litigation with fighting each of them. But the
> other benefit is it proves out from my perspective that because we
> have them, that's not why we did them, but that what we are
> offering, we have sophisticated institutional investors who have
> agreed to a structure that we believe provides the value that it
> provides, meaning we're giving you a bond that at 6% is worth par;
> right? And National concurs with that, otherwise they would have
> not accepted it in its form. So everybody cares about the same things
> from COFINA to Commonwealth. We care about those same things
> at the board, making sure we're trying to create the most valuable
> instrument for bondholders. And I believe that the markets have
> borne out that we did what we said we would do in creating a strong
> marketable instrument that provides the value we said it provided at
> Citi on behalf of the board."

Brownstein Dep. Tr. 96:23-97:25.

35.    He similarly testified about several aspects of the Fuel Line Lenders settlement, for

example, that it made it possible for the Oversight Board to make an offer to the bondholders. *Id.*

94:18-95:3 (testifying that without the Fuel Line Lenders settlement, "we wouldn't have been able

to make an offer to the bondholders that took the wallet we have available and put it on the table

which is what our goal was."); *id.* 99:16-22 ("[A]s I've said, if we didn't have a settlement with

them [the Fuel Line Lenders], we couldn't settle with the bondholders because we didn't know how

much we had available to pay the bondholders"). Counsel for the Oversight Board properly

allowed questions relating to this topic. *See, e.g.*, *id.* 95:4-16 (allowing the question, "Any other

benefits to PREPA from the fuel line lenders' PSA?").[12]

36.    Mr. Brownstein further testified—without breaching the mediation privilege or

---

[12]    *See also id.* at 365:13-366:2 (testifying that the settlement ensured that the bonds being
issued could be sold in the market at a proper value); 370:10-23 (further testifying to the benefits
of the settlement); 371:14-373:12 (detailing the effect of the bonds issued pursuant to the
settlement on accrued interest); 376:6-11 (testifying as to the difference in treatment between the
Fuel Line Lenders and general unsecured creditors).

mediation confidentiality—as to a number of details relating to the National PSA. For example, he provided his understanding of why the National PSA was reasonable and confirmed the exchange ratios that were offered to bondholders and to National. *See, e.g., id.* at 140:6-21, 142:3-150:10.[13] That he was instructed not to provide specifics regarding *why* the Oversight Board decided to make certain proposals was in line with the aforementioned basis on which the Oversight Board's counsel instructed him not to answer. Indeed, the Oversight Board's counsel went to so far as to encourage questioning counsel to ask Mr. Brownstein about the reasonableness of the settlements to the extent it did not probe the Oversight Board's deliberative strategy. *See id.* 143:13-17 ("MR. MERVIS: I think asking him why he thinks the settlement's fair and reasonable, that's a perfectly fair and appropriate question.").

## <u>CONCLUSION</u>

37.     Simply put, the UCC is complaining about being properly precluded from inquiring into matters protected from disclosure by various applicable privileges, including but not limited to mediation and attorney-client. As the Oversight Board's counsel made plain in Mr. Skeel's deposition, the witnesses "can offer facts. And lawyers are empowered to use those facts and apply the law to them. And that's what lawyers do. And that's what you'll hear at confirmation. A witness is not obligated to give you facts and his legal opinion on things." Skeel Dep. Tr. 334:11-18. Debtor's counsel appropriately instructed Messrs. Brownstein and Skeel not to answer questions that treaded on the attorney-client and mediation privileges or mediation confidentiality, and do not intend to introduce such testimony through the witnesses' forthcoming direct testimony

---

[13]     *See also id.* at 133:23-136:23 (testifying to the general timeline of the settlement negotiations and his involvement); 152:25-153:8 (the effects of National's recovery had it not entered into settlement); 153:12-154:15 (the nature of National's settled reimbursement claim); 387:17-388:15 (testifying as to whether the National PSA has a fiduciary out); 372:16-373:19 (detailing the effect of the bonds issued pursuant to the settlement on accrued interest).

declarations.

38.     For at least the foregoing reasons, the Court should deny the Motion.


Dated: June 13, 2023                     Respectfully submitted,
New York, New York
                                         /s/ Margaret A. Dale

                                         Martin J. Bienenstock
                                         Paul V. Possinger
                                         Ehud Barak
                                         Margaret A. Dale
                                         Michael T. Mervis
                                         Julia D. Alonzo
                                         Laura Stafford
                                         (Admitted *Pro Hac Vice*)
                                         **PROSKAUER ROSE LLP**
                                         Eleven Times Square
                                         New York, NY 10036
                                         Tel:  (212) 969-3000
                                         Fax:  (212) 969-2900

                                         *Attorneys for the Financial Oversight and*
                                         *Management Board, as representative for*
                                         *PREPA*

                                         /s/ Hermann D. Bauer

                                         Hermann D. Bauer
                                         USDC No. 215205
                                         **O'NEILL & BORGES LLC**
                                         250 Muñoz Rivera Ave., Suite 800
                                         San Juan, PR 00918-1813
                                         Tel:  (787) 764-8181
                                         Fax:  (787) 753-8944

                                         *Co-Attorneys for the Financial*
                                         *Oversight and Management Board, as*
                                         *representative for PREPA*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
