# <u>Exhibit E</u>

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40



**Financial Guaranty Insurance Company**
125 Park Avenue
New York, NY 10017
T 212·312·3000
T 800·352·0001

# Municipal Bond
# New Issue Insurance Policy

| | | | |
|---|---|---|---|
| **Issuer:** | Puerto Rico Electric Power Authority | **Policy Number:** | 05010237 |
| | | **Control Number:** | 0010001 |
| **Bonds:** | $301,450,000.00 in aggregate principal amount of Power Revenue Bonds, Series RR, maturing on July 1 in the Years 2021 through 2024 and 2035 | **Premium:** | $6,864,832.83 |

Financial Guaranty Insurance Company ("Financial Guaranty"), a New York stock insurance company, in consideration of the payment of the premium and subject to the terms of this Policy, hereby unconditionally and irrevocably agrees to pay U.S. Bank Trust National Association or its successor, as its agent (the "Fiscal Agent"), for the benefit of Bondholders, that portion of the principal and interest on the above-described debt obligations (the "Bonds") which shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

Financial Guaranty will make such payments to the Fiscal Agent on the date such principal or interest becomes Due for Payment or on the Business Day next following the day on which Financial Guaranty shall have received Notice of Nonpayment, whichever is later. The Fiscal Agent will disburse to the Bondholder the face amount of principal and interest which is then Due for Payment but is unpaid by reason of Nonpayment by the Issuer but only upon receipt by the Fiscal Agent, in form reasonably satisfactory to it, of (i) evidence of the Bondholder's right to receive payment of the principal or interest Due for Payment and (ii) evidence, including any appropriate instruments of assignment, that all of the Bondholder's rights to payment of such principal or interest Due for Payment shall thereupon vest in Financial Guaranty. Upon such disbursement, Financial Guaranty shall become the owner of the Bond, appurtenant coupon or right to payment of principal or interest on such Bond and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.

This Policy is non-cancellable for any reason. The premium on this Policy is not refundable for any reason, including the payment of the Bonds prior to their maturity. This Policy does not insure against loss of any prepayment premium which may at any time be payable with respect to any Bond.

As used herein, the term "Bondholder" means, as to a particular Bond, the person other than the Issuer who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof. "Due for Payment" means, when referring to the principal of a Bond, the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity and means, when referring to interest on a Bond, the stated date for payment of interest. "Nonpayment" in respect of a Bond means the failure of the Issuer to have provided sufficient funds to the paying agent for payment in full of all principal and interest

FGIC is a registered service mark used by Financial Guaranty Insurance Company under license from its parent company, FGIC Corporation.

Form 9000 (10/93)                                                                                                    Page 1 of 2

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40



**Financial Guaranty Insurance Company**
125 Park Avenue
New York, NY 10017
T 212·312·3000
T 800·352·0001

## Municipal Bond
## New Issue Insurance Policy

Due for Payment on such Bond. "Notice" means telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from a Bondholder or a paying agent for the Bonds to Financial Guaranty. "Business Day" means any day other than a Saturday, Sunday or a day on which the Fiscal Agent is authorized by law to remain closed.

In Witness Whereof, Financial Guaranty has caused this Policy to be affixed with its corporate seal and to be signed by its duly authorized officer in facsimile to become effective and binding upon Financial Guaranty by virtue of the countersignature of its duly authorized representative.

President

Effective Date: April 4, 2005

Authorized Representative

U.S. Bank Trust National Association acknowledges that it has agreed to perform the duties of Fiscal Agent under this Policy.

Authorized Officer

FGIC is a registered service mark used by Financial Guaranty Insurance Company under license from its parent company, FGIC Corporation.

Form 9000 (10/93)                                                                                 Page 2 of 2

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40



**Financial Guaranty Insurance Company**
125 Park Avenue
New York, NY 10017
T 212·312·3000
T 800·352·0001

# Endorsement
## To Financial Guaranty Insurance Company
## Insurance Policy

Policy Number: 05010237                    Control Number:    0010001

It is further understood that the term "Nonpayment" in respect of a Bond includes any payment of principal or interest made to a Bondholder by or on behalf of the issuer of such Bond which has been recovered from such Bondholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction.

NOTHING HEREIN SHALL BE CONSTRUED TO WAIVE, ALTER, REDUCE OR AMEND COVERAGE IN ANY OTHER SECTION OF THE POLICY. IF FOUND CONTRARY TO THE POLICY LANGUAGE, THE TERMS OF THIS ENDORSEMENT SUPERSEDE THE POLICY LANGUAGE.

In Witness Whereof, Financial Guaranty has caused this Endorsement to be affixed with its corporate seal and to be signed by its duly authorized officer in facsimile to become effective and binding upon Financial Guaranty by virtue of the countersignature of its duly authorized representative.

President

Effective Date:   April 4, 2005

Acknowledged as of the Effective Date written above:

Authorized Representative

Authorized Officer
U.S. Bank Trust National Association, as Fiscal Agent

FGIC is a registered service mark used by Financial Guaranty Insurance Company under license from its parent company, FGIC Corporation.

Form E-0002 (10/93)                                                                                       Page 1 of 1

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated April 4, 2005, is entered into by and between the Puerto Rico Electric Power Authority (the "Authority") and U.S. Bank Trust National Association, as successor trustee (the "Trustee"), under the Trust Agreement dated as of January 1, 1974, as amended (the "Trust Agreement"), by and between the Authority and the Trustee, pursuant to which the Authority is issuing its $509,520,000 aggregate principal amount of Puerto Rico Electric Power Authority Power Revenue Bonds, Series RR (the "Bonds").

### W I T N E S S E T H:

WHEREAS, the Authority has determined to issue its Bonds and in connection therewith, to obtain a municipal bond new issue insurance policy to be issued by Financial Guaranty Insurance Company, a New York stock insurance company, or any successor thereto (the "Bond Insurer") insuring the payment when due of the principal of and interest on certain of the Bonds, to wit:  the $22,410,000 principal amount maturing July 1, 2021, $23,560,000 principal amount maturing July 1, 2022, $24,765,000 principal amount maturing July 1, 2023, $26,035,000 principal amount maturing July 1, 2024 and $204,680,000 principal amount maturing July 1, 2035 (collectively, the "FGIC Insured Bonds"); and

WHEREAS, as a condition to the issuance of the Bond Insurance Policy (as defined herein), the Bond Insurer has requested that the Authority and the Trustee agree to certain provisions; and

WHEREAS, the Authority and the Trustee are willing to abide by the requirements of the Bond Insurer for so long as the Bond Insurance Policy is in effect and the Bond Insurer is not in default thereunder, all as more specifically provided in this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Trustee hereby agree as follows:

Section 1.    Defined Terms.  All terms used herein in capitalized form and not defined shall have the meanings ascribed to such terms in the Trust Agreement or, if not defined therein, in Resolution No. 3255 adopted by the Authority on March 8, 2005.  In addition, the following terms shall have the following meanings:

(a)    "Bond Insurance Policy" shall mean the municipal bond new issue insurance policy issued by the Bond Insurer that guarantees payment of principal of and interest on the FGIC Insured Bonds.

(b)    "Bond Insurer" shall mean Financial Guaranty Insurance Company, a New York stock insurance company, or any successor thereto.

Section 2.    Notices.  (a)  Any notices required to be given by the Authority or the Trustee under the Trust Agreement shall also be given to the Bond Insurer.  Any notice required

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

CONFIDENTIAL

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

to be given to the Bond Insurer pursuant to the immediately preceding sentence, and any other notice required to be given to the Bond Insurer or to the Fiscal Agent (as defined in Section 3) shall be addressed as follows:

> (i)  if to the Bond Insurer
>
> Financial Guaranty Insurance Company
> 125 Park Avenue
> New York, New York 10017
> Attention: Risk Management
>
> (ii)  if to the Fiscal Agent
>
> U.S. Bank Trust National Association
> 100 Wall Street, 19th Floor
> New York, New York 10005
> Attention: Corporate Trust Department

(b)  In addition to the Notices required by (a) above, the Bond Insurer shall be provided with the following:

> (i)  Notice of the redemption, other than mandatory sinking fund redemption, of any of the FGIC Insured Bonds, or of any advance refunding of the FGIC Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;
>
> (ii)  Notice of the downgrading by any rating agency of the Authority's underlying public rating, or the underlying rating on the FGIC Insured Bonds or any parity obligations, to "non-investment grade";
>
> (iii)  Notice of any rate covenant violation with respect to the FGIC Insured Bonds;
>
> (iv)  Notice of any material events pursuant to Rule 15c2-12 under the Securities Exchange Act of 1934, as amended; and
>
> (v)  Such additional information as the Bond Insurer may reasonably request from time to time.

Section 3.  Claim Procedures.  (a) If, on the third day preceding any interest payment date for the FGIC Insured Bonds there is not on deposit with the Trustee sufficient moneys available to pay all principal of and interest on the FGIC Insured Bonds due on such date, the Trustee shall immediately notify the Bond Insurer and U.S. Bank Trust National Association, New York, New York or its successor, in its capacity as fiscal agent to the Bond Insurer (the "Fiscal Agent") of the amount of such deficiency.  If, by said interest payment date, the Authority has not provided the amount of such deficiency, the Trustee shall simultaneously make available to the Bond Insurer and to the Fiscal Agent the registration books for the FGIC Insured Bonds maintained by the Trustee.  In addition:

Miami/16177.1

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

CONFIDENTIAL

FOMB_PREPA 00024579

Confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

(i)      The Trustee shall provide the Bond Insurer with a list of the bondholders entitled to receive principal or interest payments from the Bond Insurer under the terms of the Bond Insurance Policy and shall make arrangements for the Bond Insurer and its Fiscal Agent (1) to mail checks or drafts to bondholders entitled to receive full or partial interest payment from the Bond Insurer and (2) to pay principal of the FGIC Insured Bonds surrendered to the Fiscal Agent by the bondholders entitled to receive full or partial principal payments from the Bond Insurer; and

(ii)     The Trustee shall, at the time it makes the registration books available to the Bond Insurer pursuant to (i) above, notify bondholders entitled to receive the payment of principal of or interest on the FGIC Insured Bonds from the Bond Insurer (1) as to the fact of such entitlement, (2) that the Bond Insurer will remit to them all or part of the interest payments coming due subject to the terms of the Bond Insurance Policy, (3) that, except as provided in paragraph (b) below, in the event that any bondholder is entitled to receive full payment of principal from the Bond Insurer, such bondholder must tender his FGIC Insured Bond with the instrument of transfer in the form provided on the FGIC Insured Bond executed in the name of the Bond Insurer, and (4) that, except as provided in paragraph (b) below, in the event that such bondholder is entitled to receive partial payment of principal from the Bond Insurer, such bondholder must tender his FGIC Insured Bond for payment first to the Trustee, which shall note on such FGIC Insured Bond the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of the Bond Insurer, to the Fiscal Agent, which will then pay the unpaid portion of principal to the bondholder subject to the terms of the Bond Insurance Policy.

(b)      In the event that the Trustee has notice that any payment of principal of or interest on a FGIC Insured Bond has been recovered from a bondholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to the Bond Insurer, notify all bondholders that in the event that any bondholder's payment is so recovered, such bondholder will be entitled to payment from the Bond Insurer to the extent of such recovery, and the Trustee shall furnish to the Bond Insurer its records evidencing the payments of principal of and interest on the FGIC Insured Bonds which have been made by the Trustee and subsequently recovered from bondholders, and the dates on which such payments were made.

(c)      The Bond Insurer shall, to the extent it makes payment of principal of or interest on the FGIC Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Insurance Policy and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Trustee shall note the Bond Insurer's rights as subrogee on the registration books maintained by the Trustee upon receipt from the Bond Insurer of proof of the payment of interest thereon to the bondholders of such FGIC Insured Bonds and (ii) in the case of subrogation as to claims for past due principal, the Trustee shall note the Bond Insurer's rights as subrogee on the registration books for the FGIC Insured Bonds maintained by the Trustee upon receipt of proof of the payment of principal thereof to the bondholders of such FGIC Insured Bonds.  Notwithstanding anything in this authorizing document or the FGIC Insured Bonds to the contrary, the Trustee shall make

3

Miami/16177.1

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

Confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

payment of such past due interest and past due principal directly to the Bond Insurer to the extent that the Bond Insurer is a subrogee with respect thereto.

Section 4.     Events of Default.   (a) In determining whether a payment default has occurred or whether a payment on the FGIC Insured Bonds has been made under the Trust Agreement, no effect shall be given to payments made under the Bond Insurance Policy.

(b)     The Bond Insurer shall receive immediate notice of any payment default and notice of any other Event of Default known to the Trustee or the Authority within 30 days of the Trustee's or the Authority's knowledge thereof.

(c)     For all purposes of the Trust Agreement governing Events of Default and remedies, except the giving of notice of default to Bondholders, the Bond Insurer shall be deemed to be the sole holder of the FGIC Insured Bonds for so long as it has not failed to comply with its payment obligations under the Bond Insurance Policy.

(d)     Any waiver of an Event of Default as to the FGIC Insured Bonds by the Trustee shall be subject to the prior written consent of the Bond Insurer.

Section 5.     Events of Defaults and Remedies.   FIGC shall be recognized as the registered owner of each FIGC Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the FIGC Insured Bonds.  With respect to any FIGC Insured Bonds, FIGC shall have the right to institute any suit, action or proceeding at law or in equity under the same terms as a bondholder in accordance with the applicable provisions of the Trust Agreement.

Section 6.     Party in Interest.  The Bond Insurer shall be included as a party in interest and as a party entitled to (i) notify the parties of the occurrence of an Event of Default as to the FGIC Insured Bonds under the Trust Agreement and (ii) request the Trustee to intervene in judicial proceedings that affect the FGIC Insured Bonds or the security therefor.  The Trustee shall be required to accept notice of an Event of Default as to the FGIC Insured Bonds from the Bond Insurer.

Section 7.     Amendments and Supplements.   Any amendment or supplement to the Trust Agreement affecting the FGIC Insured Bonds shall be subject to the prior written consent of the Bond Insurer.  In addition, FGIC shall have the right to consent in lieu of the owners of the FGIC Insured Bonds to all agreements supplemental to the Trust Agreement to which the owners of FGIC Insured Bonds have the right to consent.  Any rating agency rating the FGIC Insured Bonds must receive notice of each amendment and a copy thereof at least 15 days in advance of its execution or adoption.  The Bond Insurer shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

Section 8.     Successor Trustees.   No resignation or removal of the Trustee shall become effective until a successor has been appointed and has accepted the duties of trustee. The Bond Insurer shall be furnished with written notice of the resignation or removal of the Trustee and the appointment of any successor thereto.

4

Miami/16177.1

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

CONFIDENTIAL

Confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

Section 9.    Defeasance of FGIC Insured Bonds.  Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated AAA by S&P or Aaa by Moody's (or any combination of the foregoing) shall be used to effect defeasance of the FGIC Insured Bonds unless the Bond Insurer otherwise approves.  In the event of an advance refunding, the Authority shall cause to be delivered a verification report of an independent nationally recognized entity having favorable repute for the preparation of such reports.  If a forward supply contract is employed in connection with the refunding, (i) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (ii) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the Trust Agreement, if no separate escrow agreement is utilized), the terms of the escrow agreement or the Trust Agreement, if applicable, shall be controlling.

Section 10.    Redemption Notices.  Notice of any redemption of FGIC Insured Bonds shall either (i) explicitly state that the proposed redemption is conditioned on there being on deposit in the applicable fund or account on the redemption date sufficient money to pay the full redemption price of the FGIC Insured Bonds to be redeemed, or (ii) be sent only if sufficient money to pay the full redemption price of the FGIC Insured Bonds to be redeemed is on deposit in the applicable fund or account.

Section 11.    Reimbursement of Expenses.  To the extent permitted by law, the Authority shall pay or reimburse the Bond Insurer for any and all charges, fees, costs and expenses that the Bond Insurer may reasonably pay or incur in connection with the following: (i) the administration, enforcement, defense, or preservation of any rights or security under the Trust Agreement or under any other transaction document; (ii) the pursuit of any remedies under the Trust Agreement, under any other transaction document, or otherwise afforded by law or equity; (iii) any amendment, waiver, or other action with respect to or related to the Trust Agreement, this Agreement or any other transaction document whether or not executed or completed; (iv) the violation by the Authority of any law, rule, or regulation or any judgment, order or decree applicable to it; (v) any advances or payment made by the Bond Insurer to cure an Event of Default of the Authority under the Trust Agreement as to the FGIC Insured Bonds; or (vi) any litigation or other dispute in connection with this Agreement, any other transaction document, or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of the Bond Insurer to honor its payment obligations under the Bond Insurance Policy.  The Bond Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver, or consent proposed in respect of the Trust Agreement, this Agreement or any other transaction document.  The obligations of the Authority to the Bond Insurer shall survive discharge and termination of the Trust Agreement and this Agreement.

Section 12.    Applicability of this Agreement.  Notwithstanding anything to the contrary contained herein, the Authority and the Trustee shall be bound by, and required to comply with

Miami/16177.1

5

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

FOMB_PREPA 00024582

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

the provisions of, this Agreement only for so long as the Bond Insurance Policy is in effect and the Bond Insurer is not in default thereunder.

Section 13.    Counterparts.    This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

[Balance of Page Intentionally Left Blank]

6

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

CONFIDENTIAL

FOMB_PREPA 00024583

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority and U.S. Bank Trust National Association, as Trustee, Bond Registrar and Paying Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By: _____
     Acting Executive Director

U.S. BANK TRUST NATIONAL
    ASSOCIATION, Trustee

By: _____
     Authorized Officer

Acknowledged and agreed
to by FINANCIAL GUARANTY
INSURANCE COMPANY,
this 4th day of April, 2005.

FINANCIAL GUARANTY
INSURANCE COMPANY

By: _____
     Name:
     Title:

7

Miami/16177.1

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

CONFIDENTIAL

FOMB_PREPA 00024584

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority and U.S. Bank Trust National Association, as Trustee, Bond Registrar and Paying Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By: _____
Acting Executive Director

U.S. BANK TRUST NATIONAL
ASSOCIATION, Trustee

By: _____
Authorized Officer

Acknowledged and agreed
to by FINANCIAL GUARANTY
INSURANCE COMPANY,
this 4th day of April, 2005.

FINANCIAL GUARANTY
INSURANCE COMPANY

By: _____
Name: Karen Daly
Title: Managing Director - Public Finance

Miami/16177.1

7

confidential
D Desatnik
Proskauer Rose
Jan 10, 2017 11:40