## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | Case No. 17-BK-4780-LTS |

**URGENT MOTION OF THE AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., SYNCORA GUARANTEE, INC, AND U.S. BANK NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE TO SUSPEND UPCOMING CONFIRMATION DEADLINES DUE TO THE OVERSIGHT BOARD'S DELAY IN CERTIFYING PREPA'S 2023 FISCAL PLAN**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Ad Hoc Group of PREPA Bondholders ("Ad Hoc Group"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured"), Syncora Guarantee Inc. ("Syncora"), and U.S. Bank National Association, in its capacity as the PREPA Bond Trustee (collectively, the "Bondholders"), in response to the Financial Oversight and Management Board for Puerto Rico's ("Oversight Board"), Informative Motion (ECF No. 3767) regarding its further delay in certifying a 2023 Fiscal Plan for the Puerto Rico Electric Power Authority ("PREPA"), and announcement that the 2023 Fiscal Plan will require "amendments" to the proposed Modified Second Amended Title III Plan of Adjustment of PREPA, filed on March 1, 2023 (ECF No. 3296) (the "Plan of Adjustment"), respectfully submit this urgent motion (the "Motion") requesting the entry of an order, substantially in the form annexed hereto as Exhibit A, adjourning the current deadlines (i) for parties to file witness lists, exhibit lists, and deposition designations (currently June 21, 2023), and (ii) for parties to file witness declarations (currently June 26, 2023) pending further proceedings before the Court on the plan-confirmation schedule.

## PRELIMINARY STATEMENT

1.      On Saturday, June 17, the Oversight Board filed an Informative Motion alerting the Court and interested parties that the Board had failed to meet its own June 16 deadline to certify PREPA's 2023 Fiscal Plan, that it has unilaterally decided to make that certification on June 23, and that it will, at the same time, propose material new amendments to its Plan of Adjustment. There is much to be determined in the wake of these pronouncements. In the meantime, this Urgent Motion seeks the suspension of two upcoming plan-confirmation deadlines. The Oversight Board and a number of other parties agree to that relief.

1

2.     The Oversight Board reports that it has spent the past several weeks constructing a new fiscal plan that purports to significantly dial back PREPA's projections of future electricity load and revenue—projections the Board has insisted are sacrosanct, and on which the parties have just completed more than three months of massively expensive and expedited discovery, including multi-tracked depositions, designed to meet the Court's deadlines.  The Board's changes to PREPA's projections and fiscal plan will be so substantial, the Board now says, that they will require amendments to the Plan of Adjustment purportedly to "maintain its feasibility" and possibly requiring new vote solicitations from creditor classes.

3.     In other words, the Board has taken it upon itself to hit the "reset" button *after* all creditors have met their deadline to file objections to the operative Plan of Adjustment—likely rendering the enormous time and expense incurred by all creditors a wasted effort.  Nor has the Oversight Board filed any motion for leave to redo the Plan of Adjustment at this late stage of the process, and yet it evidently now hopes to start the process all over again with brand-new numbers.

4.     The Oversight Board blames this state of affairs on its receipt of "new information" from external sources, but that excuse rings hollow.  According to LUMA, it provided the Board with new load forecast data and information *in April* (since which time the Board has refused to produce this same information to Bondholders).  Moreover, LUMA has stated publicly that its new load forecast in turn relies upon the Board's own macroeconomic forecasts—meaning that the Board's own advisors helped to *create* the new data and information that the Board will now rely upon to support moving the goalposts on creditors yet again.  Lest there be any doubt, PREPA's 2023 Fiscal Plan will be another made-for-litigation document designed to try to justify PREPA paying its creditors as little as possible.  Otherwise, there would be no excuse for the Oversight Board's decades-long projections to change wildly from year-to-year to suit its current positions,

2

or for it to have kept Bondholders in the dark about these new projections for so long.  The
Oversight Board's latest move to abandon the current Plan of Adjustment based on supposedly
unforeseen new data echoes its earlier support for tearing up the 2019 RSA based on new data,
and its similar refusal to certify the prepetition RSA based on new information and data.  If nothing
else, this history demonstrates that the Oversight Board cannot credibly and reliably forecast load
or revenues at PREPA.

5.    Despite the significant impact of these announcements on this Title III case, the
Oversight Board asked the Court only to move the June 21 deadline for a joint status report
concerning the new Fiscal Plan to June 28.  And although the Board's Informative Motion (at ¶ 4)
made passing reference to the upcoming plan-confirmation deadlines, and to the likelihood that
"the Oversight Board (and other parties) may seek to change the confirmation schedule" (*id.*), it
included no concrete proposal for dealing with the most imminent of those deadlines.

6.    Earlier today, the Court granted the Oversight Board's limited requested relief,
while also maintaining a deadline for an initial joint status report to be filed on June 21.  The
Court's Order instructed the Oversight Board to meet and confer with objectors before each of the
two upcoming joint status reports, and to report to the Court this coming Wednesday on "whether
and to what extent the parties believe that confirmation-related dates and deadlines should be
altered or suspended in advance of the [June 28] Status Report."

7.    This Urgent Motion addresses two of those dates and deadlines that are fast
approaching, including one deadline that is currently set for *this Wednesday* when the parties'
initial joint status report is due.  Even while the parties meet and confer with the Oversight Board
this week about broader scheduling issues, consistent with the Court's Order this morning,
Bondholders respectfully request that near-term plan-confirmation deadlines be suspended

pending those discussions and further action by the Court. It would impose pointless additional burden and expense on Bondholders to have to proceed over the next nine days with generating and filing "finalized" witness lists, exhibit lists, and deposition designations (all due June 21), as well as witness declarations (due June 26), all concerning a Plan of Adjustment and underlying Fiscal Plan that are about to change and will require further discovery. For now, therefore, Bondholders ask that those two deadlines be suspended.[2]

8.      At the same time, and recognizing that the Court will address the confirmation schedule after receiving this Wednesday's joint status report, Bondholders submit that the Oversight Board's delay in certifying a new Fiscal Plan, and its forthcoming changes to the Plan of Adjustment, have made the current schedule untenable. As set forth below, Bondholders are entitled to reasonable time to obtain discovery into whatever new projections, data and models the Board now plans to rely upon, to receive (and respond to) expert disclosures addressing the propriety of the new projections and data, and to depose witnesses whose analyses and testimony the Board intends to offer in support of its new models and Plan of Adjustment. In light of yesterday's announcement by the Board, that is not remotely possible by July 17.

9.      This is not the result that Bondholders wanted. We have been working diligently— around the clock and at enormous cost—to evaluate the Board's patently unconfirmable Plan of Adjustment. In the past six weeks, Bondholders took a dozen depositions of the Board's fact and expert witnesses, proffered four plan-confirmation experts (who wrote six expert reports), and filed multiple comprehensive plan objections. Bondholders have done everything possible to keep this six-year-old Title III case on track for a July confirmation hearing to give the Oversight Board one

---

[2] The Oversight Board, Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), Unión de Trabajadores de la Industria Eléctrica y Riego, Inc., Sistema de Retiro de Empleados de la Autoridad de Energía Eléctrica, the Ad Hoc Committee of National Claim Assignees, PV Properties, Inc., and the Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico do not oppose that specific relief.

more chance to confirm a plan. The Oversight Board, by contrast, is behaving as though the confirmation schedule was merely optional, and subject to its last-minute change by fiat. The Board simply assumes that it can now file a *different* plan of adjustment—something not contemplated by the Court's prior orders. Indeed, at the status conference on May 8, 2023, the Court specifically stated that if the Board cannot confirm its existing Plan of Adjustment, it may not be willing to give the Board the time and money "to experiment with the development of another take-it-or-leave-it plan strategy." 5/8/23 Hr'g Tr. 14. Rather than risk that outcome, the Board has simply *assumed* permission to file a new plan and stated its intent to do so this Friday. The Bondholders reserve all rights to oppose the filing of any new plan at this stage of the process.

10.     Finally, Bondholders suggest that the Court take note of how we got here. The Court imposed deadlines for proceeding toward plan confirmation, and it urged the parties for months to take those deadlines seriously. It stayed the Bondholders' motion to dismiss to give the Oversight Board a chance to meet those deadlines. Now, after months of discovery and *after* Bondholders filed their confirmation objections, the Oversight Board states that it may very well withdraw the operative Plan of Adjustment based on information generated in recent weeks that somehow so fundamentally changes Puerto Rico's outlook for the coming decades as to require replacing the Plan of Adjustment with something new. The Board is effectively seeking a "do-over," and showing that this Court's confirmation schedule means very little to it. After six years in bankruptcy, there must be some end to this gamesmanship.

### JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to PROMESA § 306(a)

12.     Venue is proper pursuant to PROMESA § 307(a).

## RELIEF REQUESTED

13.     Bondholders respectfully request, for the reasons stated in this Urgent Motion, that the Court suspend (i) the June 21 deadline for filing witness lists, exhibit lists, and deposition designations, and (ii) the June 26, 2023 deadline for filing witness declarations, each pending further scheduling order of the Court in light of the Oversight Board's delayed certification of PREPA's 2023 Fiscal Plan and forthcoming amendments to the Plan of Adjustment.   The Oversight Board, AAFAF, Unión de Trabajadores de la Industria Eléctrica y Riego, Inc., Sistema de Retiro de Empleados de la Autoridad de Energía Eléctrica, the Ad Hoc Committee of National Claim Assignees, PV Properties, Inc., and Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority have indicated that they do not oppose that specific relief (and that specific relief only).

## BACKGROUND

### A.     The Proposed Plan of Adjustment Relies Heavily on PREPA's 2022 Fiscal Plan

14.     The Oversight Board's existing proposed Plan of Adjustment relies on PREPA's 2022 Fiscal Plan in numerous and important ways.  The Plan of Adjustment's proposed Legacy Charge is "[b]ased on electricity demand projections pursuant to PREPA's 2022 certified fiscal plan." 3/1/23 Discl. Stmt. (ECF No. 3297) at 5.  As a result, the maturities and expected repayment dates of New Bonds that would provide the bulk of the Plan of Adjustment's creditor recoveries are also "based upon 2022 Fiscal Plan Projections."  *Id.* at 33, 36-37, 282-83; *see also* Plan art. I.A.1 (defining "2022 Fiscal Plan Projections" as the 30-year load forecast attached to the 2022 Certified Fiscal Plan).  Further, the Board's "Best Interest Analysis," which is intended to demonstrate that the Plan satisfies the confirmation requirement of being in creditors' best

interests, relies on "revenue and expense projections as contained in the June 2022 PREPA Certified Fiscal Plan." 3/1/23 Discl. Stmt. Ex. K at 2.

15.     The Plan's reliance on 2022 Fiscal Plan and its underlying models, projections, and forecasts means that most of the fact and expert discovery since early March has been about those models, projections, and forecasts.  For example, the Oversight Board intends to offer testimony from William Zarakas and Jurgen Weiss, both of The Brattle Group, regarding their Legacy Charge Derivation.  That testimony is the Board's core evidentiary support for the limited recovery the Plan of Adjustment would provide creditors.  ***Nearly every key input into their Legacy Charge calculation took the 2022 PREPA Fiscal Plan's projections as a starting point***.  Both Zarakas and Weiss testified that their analysis uncritically relied on the 2022 PREPA Fiscal Plan's forecasts for data and projections on load, rates, revenues, and expenses.  Zarakas Dep. Tr. 39, 46, 65-67, 81-82, 90-91, 138-46, 272, 275-76, 289; Weiss Dep. Tr. 100, 112-14, 135-36, 146-47, 177-78. Another Oversight Board expert, Dr. Glenn George, purports to vouch for Zarakas's and Weiss's Legacy Charge Derivation, again "tak[ing] as given[] the PREPA 2022 fiscal plan."  George Dep. Tr. 109.  And Ojas Shah, who prepared the Oversight Board's Best Interest Analysis, also relied on the 2022 Fiscal Plan for numerous inputs and assumptions.  Shah Dep. Tr. 53-54, 68-73, 92, 133-35.

16.     Bondholders' experts have likewise based their analyses and opinions on PREPA's 2022 Fiscal Plan—identifying ways in which the Oversight Board misused and misapplied the Fiscal Plan's projections, and the models that generated them, to justify its Plan of Adjustment. Dr. Susan Tierney's expert analysis is entirely about load forecasts that the Oversight Board now tells us that it plans to abandon and replace.  And Dr. Maureen Chakraborty in part relies on Dr. Tierney's analysis to calculate a more realistic Revenue Envelope and Legacy Charge.  She also

makes other corrections to Zarakas's and Weiss's Revenue Envelope calculations, which in turn rely on assumptions from the 2022 PREPA Fiscal Plan.  In sum, both sides' experts have used the 2022 PREPA Fiscal Plan projections as a baseline, and now the Oversight Board intends to replace them.

17.    Finally, the Oversight Board asserts that, under PROMESA, any plan of adjustment must be "consistent with the applicable fiscal plan certified by the Oversight Board," 3/1 Discl. Stmt. at 28, 260, 347-48, 351, and such consistency is a condition precedent to confirmation under the Plan, *id.* at 329, 332.  Any proposed plan must also satisfy the "best interests of creditors" confirmation requirement, under PROMESA Section 314(b)(6), which the Oversight Board has asserted is based on what creditors could expect "based on available remedies under the non-bankruptcy laws and the Commonwealth Constitution *and the certified PREPA fiscal plan*."  *Id.* at 347 (emphasis added).  Likewise, the Oversight Board has asserted that the Court must assess the feasibility of any proposed plan based in part on "whether the plan provides for an amount of ongoing debt within the range of the debt sustainability analysis *in the certified fiscal plan*," *id.* at 347 (emphasis added), and acknowledged the potential to "update the analysis if a new fiscal plan is certified," *id.* at 348.

18.    The Oversight Board has even gone so far as to seek to exclude any expert testimony that deigns to criticize the 2022 Fiscal Plan's underlying economic analyses—analyses which the Board now intends to rewrite.  ECF No. 3581; *see also* ECF No. 3746.  Yet these latest developments show that the Oversight Board's projections and models are mutable and judgmental, not precise or infallible.  And while actual results have repeatedly demonstrated the Board's forecasts and projections to be biased downward, the Board plans to throw a wrench in this process by moving its ever-pessimistic projections even further down.

8

**B.**      **The Oversight Board and PREPA Have Repeatedly Delayed The 2023 Fiscal Plan Process While Withholding New Information and Data from Bondholders**

19.      On March 21, 2023, the Oversight Board announced a schedule for achieving a certified 2023 PREPA Fiscal Plan.   Under that schedule, PREPA was required to submit a proposed fiscal plan by April 12, and the Oversight Board planned to certify the fiscal plan by June 2.  On April 19, the Oversight Board extended to April 21 PREPA's already-missed deadline to propose a fiscal plan.  That deadline, too, came and went.  Then, on May 5, the Oversight Board further extended PREPA's deadline to May 9 and pushed back the Oversight Board's scheduled certification of a fiscal plan to June 9.  The letters announcing these schedule changes attributed them to delays in "long-term generation dispatch" and "fuel and purchase power expense projections."

20.      PREPA ultimately proposed a fiscal plan on May 12.  On May 19, the Oversight Board issued a notice of violation to PREPA—demanding that, among other things, it change its assessment of the impact of legacy debt, modify its pension forecast, account for the potential need for additional matching funds to access federal grants, and include sensitivity analyses accounting for energy efficiency, electric vehicles, and distributed generation.  It did not, however, change its June 9 deadline to certify the fiscal plan.

21.      In the meantime, on May 16, LUMA (PREPA's transmission-and-distribution system operator) submitted a fiscal year 2024 budget to PREB (PREPA's regulator) that appears to be premised on the same new load forecast information and data that the Board says will now cause changes to PREPA's fiscal plan and resulting amendments to the Plan of Adjustment. LUMA's fiscal year 2024 budget submission, which does not include a multi-decade load forecast, states that LUMA's new load projections were built upon the Board's own (gloomy) macroeconomic forecasts.  In fact, a LUMA representative testified that LUMA built its new load

9

forecast based on information *developed by the Oversight Board*, and then LUMA delivered the results back to PREPA and the Oversight Board *in April*.  *See* Estrada (LUMA 30(b)(6)) Dep. Tr. 45-46 ("March 24th we received updated macros from the FOMB and in April demand projections based on those macros were delivered to PREPA." (emphasis added)).  Presumably, the Oversight Board also has had access to detailed monthly consumption data from LUMA all along the way.  And notwithstanding Bondholders' longstanding requests to receive exactly this kind of information, the Oversight Board has refused to produce it on spurious "deliberative process" grounds—with the effect of keeping the Board's engineering of a new PREPA Fiscal Plan and Plan of Adjustment while keeping the data it is relying on secret for as long as possible.

22.    The result has been that the Oversight Board's self-policed deadlines to move forward with PREPA's 2023 Fiscal Plan have come and gone, notwithstanding the long-ago, court-ordered schedule for the parties to proceed to a July confirmation hearing.  Even while the Oversight Board's delay made a July confirmation hearing more and more implausible, and even while the parties continued to devote time and resources to litigating soon-to-be-superseded projections underlying a soon-to-be-superseded Plan of Adjustment, the Oversight Board inexplicably failed to bring these issues to the attention of the parties or the Court.

23.    It was only at the June 8 Omnibus Hearing, and even then, only in response to questions from Bondholders, that the Oversight Board's counsel advised that the Board's certification of PREPA's new fiscal plan might not happen the following day as scheduled.  "[B]ut it will be this week or next week," counsel assured the Court.  6/8/23 Omni Hr'g Tr. 8-9.  Counsel also explained, for the first time, that the reason for the delay was "that the Oversight Board received data from LUMA as to load" and was still considering the changed load forecast's effect. *Id.*  Counsel stated that once "a new fiscal plan is certified," then "all of us and the Court will then

have to see whether there are material changes and determine whether that needs to change any of the procedure going forward," but that he could not be "more specific" than that. *Id.* at 9. The Court asked whether the Oversight Board could offer so much as a "preliminary assessment" of the potential effect of the changes on these proceedings, but counsel declined to do so. *Id.*

24.     Later the same morning, at the outset of the proceedings on estimating the amount of Bondholders' claim under Section 502(c), the Oversight Board's counsel further updated the Court that the Board anticipated certifying the 2023 PREPA Fiscal Plan on Friday, June 16. 6/8/23 Estimation Hr'g Tr. 8. The Court responded that it was "disappointed to hear that the new plan is a week out, given the schedule that we have." *Id.* The Court then ordered the parties to meet and confer promptly after the June 16 certification and then to file, on June 21, a "joint status report regarding the anticipated impact, if any, of the new fiscal plan on the confirmations proceedings and schedules." *Id.* at 9.

25.     As late as June 16, the Oversight Board had provided no different guidance to Bondholders. In fact, during the afternoon of June 16, in response to further inquiries by Bondholders' counsel, the Oversight Board's counsel reported that the Board planned to meet at 4:00 p.m. to certify a new fiscal plan, and that the new fiscal plan would be emailed shortly after it had been certified. Yet June 16 came and went without any certification news. No meet and confer ever took place. Midday on June 17, the Oversight Board filed its Informative Motion— and did so without any prior notice to or consultation with Bondholders. They have still not communicated with Bondholders about their plans and intentions with respect to the new fiscal plan, the amended Plan of Adjustment, or the confirmation hearing and schedule.

**ARGUMENT**

26.     The Oversight Board now says that it intends to certify a 2023 Fiscal Plan, and file significant amendments to the proposed Plan of Adjustment, on Friday, June 23.  That commitment is no more certain than its previous commitment to certify a fiscal plan by June 16, or its commitment before that to certify a fiscal plan by June 9, or its original commitment to certify a fiscal plan by June 2.

27.     Accordingly, there is reason to doubt that the Board will have any more success meeting this deadline than the last few.  But even if it does, June 23 is just 24 days before the scheduled confirmation hearing.  The Board's unreasonable delay of PREPA's new fiscal plan, and its stated intent to change the premise of the debate just *after* tens of millions of dollars were spent to complete fact and expert discovery, and *after* the parties have filed their (many) confirmation objections, is inexcusable and makes it untenable to proceed with adjudicating plan confirmation on the current schedule.  For present purposes, however, two immediately upcoming plan-confirmation deadlines should be suspended while the parties and the Court address the broader implications of the Oversight Board's conduct.

28.     *First*, "finalized" witness lists, exhibit lists, and deposition designations are currently due this Wednesday, June 21.  But it is impossible for the parties to know which witnesses, exhibits, and deposition excerpts would be relevant to some new Plan of Adjustment and to the Oversight Board's new Fiscal Plan projections on which the new Plan of Adjustment will be premised.  To date, the exhibits, witnesses, and depositions have focused on the *current* Plan of Adjustment, which in turn is premised on the *2022* Fiscal Plan's projections.

29.     *Second*, witness declarations cannot reasonably be prepared this week and then filed 72 hours after the Oversight Board certifies the 2023 Fiscal Plan and announces its

12

amendments to the Plan of Adjustment.  In substantial part, this is an expert-driven case.  The Oversight Board has multiple expert witnesses who plan to opine on the models, forecasts, projections, and assumptions underlying the proposed Plan of Adjustment.  For example:

- It has designated three different experts to testify about the Revenue Envelope and Legacy Charge Model that underpins the Plan of Adjustment's proposed creditor recoveries.

- It has designated another expert to testify about a "best interest analysis" financial model that supposedly shows that the Plan of Adjustment satisfies the related confirmation requirement.

- It has designated another expert to testify about the Oversight Board's projection of pension obligations.

- And it has designated yet another expert to testify about the proposed Plan of Adjustment's consistency with the fiscal plan's debt sustainability analysis.

30.    All of those experts' disclosures, reports, and testimony—like most of the other evidence compiled to date—are premised on PREPA's 2022 Fiscal Plan.  The Oversight Board will now pivot, however, to relying on brand-new projections and data it says it will reveal in an as-yet-uncertified, 2023 Fiscal Plan.  That pivot necessarily will require, among other things, new expert disclosures and discovery.  It is a fundamental procedural safeguard that an expert's opinions, and their bases for holding those opinions, must be disclosed to the opposing party prior to trial.  Indeed, undisclosed expert testimony is generally *precluded* "unless such failure is harmless."  *Santiago-Diaz v. Loboratorio Clinico y de Referencia del este and Sara Lopez, M.D.*, 456 F.3d 272, 276 (1st Cir. 2006) (quoting F.R.Civ.P. 37(c)(1)).  Adverse parties also have the "right to depose" experts, before trial, on their opinions and how they came to hold them.  *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 973-74 (7th Cir. 2015).  Moreover, Bondholders have established good cause for renewed discovery because the Oversight Board has refused any discovery into the in-progress 2023 PREPA Fiscal Plan, citing the deliberative process privilege.  *Gladu v. Waltz*, 2020 WL 1156115 at *1 (D. Me. 2020) (good cause for reopening

discovery "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party opponent"). Because of the Board's delay, there is insufficient time for this under the existing schedule.

31.    It is also significant that Bondholders' multiple experts have already conducted careful analyses premised on the 2022 Fiscal Plan projections and assumptions underlying the current Plan of Adjustment. Any fair procedure requires that they also be given a meaningful opportunity to review and analyze the Oversight Board's new information, data and models, and to revise and amend their prior disclosures based on what they find. Nor is this kind of complex financial analysis something that can be done overnight. For its part, the Oversight Board has said that *its* many advisors have been working "around the clock" to analyze and apply the new load-forecast data—which it has had for weeks or months and yet not produced to Bondholders. 6/8/23 Omni Hr'g Tr. 10. Fundamental fairness and due process require that Bondholders' experts be afforded the same opportunity. Indeed, "proper consideration of the [debtor's plan] plus due process and fundamental fairness, would require allowing additional time for discovery, presentation of witnesses along with cross-examination, and argument." *See In re ASARCO LLC*, 420 B.R. 314, 343-44 (S.D. Tex. 2009) (rejecting competing plan proposed by debtor late in the confirmation process).

32.    Bondholders appreciate that the broader impact of these developments on the plan-confirmation schedule will be addressed by the Court after the parties have conferred and submitted a status report. For now, therefore, Bondholders ask only that near-term deadlines be suspended until the Court and the parties have had an opportunity to sort out the significance of the Oversight Board's ongoing delay and abrupt changes to the Plan of Adjustment. Bondholders thus respectfully ask the Court to suspend (i) the June 21, 2023 deadline for filing finalized witness

14

lists, exhibit lists, and deposition designations, and (ii) the June 26, 2023 deadline for filing witness declarations, each pending further scheduling order of the Court in light of the Oversight Board's delayed certification of PREPA's 2023 Fiscal Plan and forthcoming amendments to the Plan of Adjustment.  Bondholders will also participate in any status conference the Court wishes to set, even before the supposed certification of the new Fiscal Plan on June 23, on other changes that will be needed to the hearing date and other plan-confirmation deadlines in this case.

## CERTIFICATION OF COMPLIANCE

33.     Pursuant to Local Rule 9013-1 and paragraph I.H of the Sixteenth Amended Case Management Procedures, the Movants hereby certify that they has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; and (d) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

34.     On June 18, 2023, counsel for the Ad Hoc Group of PREPA Bondholders contacted counsel for the following parties and asked them whether they objected to the relief sought herein: (i) the Oversight Board; (ii) the Ad Hoc Committee of National Claim Assignees; (iii) the Official Committee of Unsecured Creditors; (iv) Unión de Trabajadores de la Industria Eléctrica y Riego, Inc.; (v) Sistema de Retiro de Empleados de la Autoridad de Energía Eléctrica; (vi) PV Properties, Inc.; (vii) Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico; and (viii) Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.-Enlace de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., and Amigos del Río Guaynabo, Inc.

35.     As of the filing of this Motion, no party has objected to this Motion no party has expressed opposition.  The Oversight Board, AAFAF, Unión de Trabajadores de la Industria Eléctrica y Riego, Inc., Sistema de Retiro de Empleados de la Autoridad de Energía Eléctrica, the Ad Hoc Committee of National Claim Assignees, PV Properties, Inc., and Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico have stated their agreement to the specific relief requested by the Urgent Motion.  The Oversight Board and AAFAF have indicated that they do not oppose the specific relief being sought by the Urgent Motion.

**WHEREFORE** the Movants respectfully request that the Court enter an Order substantially similar to the one attached as **<u>Exhibit A</u>**.

We hereby certify that, on this same date, we electronically filed the foregoing with the

clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

Dated:  San Juan, Puerto Rico
          June 18, 2023

**TORO COLÓN MULLET P.S.C.**

*/s/ Manuel Fernández-Bared*
Manuel Fernández-Bared
USDC-PR No. 204,204
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760
E-mail: mfb@tcm.law

*/s/ Linette Figueroa-Torres*
Linette Figueroa-Torres
USDC-PR No. 227,104
E-mail: lft@tcm.law

*/s/ Nayda Perez-Roman*
Nayda Perez-Roman
USDC–PR No. 300,208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

**KRAMER LEVIN
NAFTALIS & FRANKEL LLP**

*/s/ Amy Caton*
Amy Caton*
Thomas Moers Mayer*
Alice J. Byowitz*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email:  acaton@kramerlevin.com
          tmayer@kramerlevin.com
          abyowitz@kramerlevin.com

Gary A. Orseck*
Matthew M. Madden*
2000 K Street NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
Email:  gorseck@kramerlevin.com
          mmadden@kramerlevin.com

*Admitted Pro Hac Vice

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

17

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR No. 204,809
    Ricardo F. Casellas-Sánchez
    USDC-PR No. 203,114
    Diana Pérez-Seda
    USDC–PR No. 232,014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Tel.: (787) 756-1400
    Fax: (787) 756-1401
    E-mail:  hburgos@cabprlaw.com
            rcasellas@cabprlaw.com
            dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ William J. Natbony*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    Casey J. Servais*
    William J. Natbony*
    Thomas J. Curtin*
    200 Liberty Street
    New York, New York 10281
    Tel.: (212) 504-6000
    Fax: (212) 406-6666
    Email:  howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           casey.servais@cwt.com
           bill.natbony@cwt.com
           thomas.curtin@cwt.com

**Admitted Pro Hac Vice*

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REICHARD & ESCALERA, LLC**

By: */s/  Rafael Escalara*
    Rafael Escalara
    USDC-PR No. 122,609

    */s/  Sylvia M. Arizmendi*
    Sylvia M. Arizmendi
    USDC-PR No. 210,714

    */s/  Carlos R. Rivera-Ortiz*
    Carlos R. Rivera-Ortiz
    USDC–PR No. 303,409
    255 Ponce de León Avenue
    MCS Plaza, 10th Floor
    San Juan, PR 00917-1913
    Tel.: (787) 777-8888
    Fax: (787) 765-4225
    E-mail:  escalara@reichardescalera.com
            arizmendis@reichardescalera.com
            riverac@reichardescalera.com


*Counsel for Syncora Guarantee, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/  Susheel Kirpalani*
    Susheel Kirpalani*
    Daniel Salinas
    USDC-PR No. 224,006
    Eric Kay*
    51 Madison Avenue, 22nd Floor
    New York, New York 10010-1603
    Tel.: (212) 849-7000
    Fax: (212) 849-7100
    Email:  susheelkirpalani@quinnemanuel.com
           danielsalias@quinnemanuel.com
           erickay@quinnemanuel.com

*\* Admitted Pro Hac Vice*

*Counsel for Syncora Guarantee, Inc.*

19

**RIVERA, TULLA & FERRER LLC**

*/s/ Eric A. Tulla*
Eric A. Tulla
USDC-DPR No. 118313
Email: etulla@riveratulla.com

Rivera Tulla & Ferrer Building
50 Quisqueya Street
San Juan, PR 00917-1212
Tel: (787)753-0438
Fax: (787)767-5784

*Counsel for U.S. Bank National Association, in its Capacity as the PREPA Bond Trustee*

**MASLON LLP**

*/s/ Clark T. Whitmore*
Clark T. Whitmore*
Michael C. McCarthy*
John Duffey*
Jason M. Reed*
90 South Seventh Street, Suite 3300
Minneapolis, MN 55402
Tel.: (612) 672-8200
Fax: (612) 672-8397
Email: clark.whitmore@maslon.com
mike.mccarthy@maslon.com
john.duffey@maslon.com
jason.reed@maslon.com

*\* Admitted Pro Hac Vice*

*Counsel for U.S. Bank National Association, in its Capacity as the PREPA Bond Trustee*

20

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors.[3] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | Case No. 17-BK-4780-LTS |

**[PROPOSED] ORDER GRANTING URGENT MOTION OF THE AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., SYNCORA GUARANTEE, INC, AND U.S. BANK NATIONAL ASSOCIATION TO SUSPEND CONFIRMATION DEADLINES DUE TO THE OVERSIGHT BOARD'S DELAY IN CERTIFYING PREPA'S 2023 FISCAL PLAN**

---

[3] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon consideration of the Urgent Motion of the Ad Hoc Group of PREPA Bondholders, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Syncora Guarantee Inc., and U.S. Bank National Association as PREPA Bond Trustee to Suspend Confirmation Deadlines Due to the Oversight Board's Delay in Certifying PREPA's 2023 Fiscal Plan (Docket Entry No. _____ in Case No. 17-bk-3238) (the "Urgent Motion") and the relief requested and basis for such relief set forth in the Urgent Motion, the Court hereby finds that good and sufficient cause exists for granting of the Bondholders' requested relief.

Accordingly it is hereby **ORDERED** THAT:

1.      The June 21, 2023 deadline for filing finalized witness lists, exhibit lists, and deposition designations is suspended.

2.      The June 26, 2023 deadline for filing witness declarations is suspended.

3.      Those deadlines will be suspended until new deadlines are set via a further scheduling order by this Court.

**SO ORDERED**

Dated: June _____, 2023
        San Juan, Puerto Rico

_____
HONORABLE LAURA TAYLOR SWAIN
United States District Judge

2