## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

## UTIER'S REPLY TO DEBTOR'S OPPOSITION TO UTIER'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF GLENN R. GEORGE

*[SPACE INTENTIONALLY LEFT BLANK]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**TO THE HONORABLE DISTRICT COURT:**

**COMES NOW** Unión de Trabajadores de la Industria Eléctrica y Riego  ("UTIER") duly represented by the undersigned counsel and respectfully states as follows:

## I.   BACKGROUND

1. The *Modified Second Amended Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Plan of Adjustment") was filed on March 1st, 2023. **ECF No. 3296.**

2. On April 28, 2023, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA"), filed the *Expert Report of Glenn R. George, MBA, PE, PhD* ("George Report") in support of the confirmation of the Plan of Adjustment. **ECF No. 3418-1.**

3. Pursuant to the *Third Amended and Restated Order establishing, among other things, procedures and deadlines concerning objections to confirmation and discovery in connection therewith* ("Procedural Order"), **ECF No. 3565**, on June 2nd, 2023, UTIER's *Motion in Limine to Exclude Expert Testimony of Dr. Glenn George* ("Motion") was filed. **ECF No. 3573.**

4. On June 13, 2023, the Oversight Board filed *Debtor's Opposition to UTIER's Motion in Limine to Exclude Expert Testimony of Glenn R. George* ("Opposition"). **ECF No. 3741.**

5. The Oversight Board characterizes UTIER's Motion as asserting that the testimony should be excluded because "(1) the reasonableness of the Fiscal Plan's (defined below) fuel forecast; (2) the affordability analysis underlying the Revenue Envelope and Legacy Charge; and (3) the ability of PREPA to continue to operate with the imposition of the Legacy Charge." **ECF No. 3741 ¶ 3.** Thus, the Oversight Board concludes that UTIER's arguments go to the weight of the testimony rather than its admissibility. UTIER respectfully disagrees for the reasons stated herein.

## II.  LEGAL ARGUMENTS

6. As stated in the Motion, the principal rule of admissibility of expert testimony is Rule 702 of the Federal Rules of Evidence. "Under Rule 702, it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and **to ensure that the testimony rests on a reliable basis**." Baldwin v. Bader, 539 F. Supp. 2d 443, 444 (D. Me. 2008)(citing Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006))(emphasis added)(quotation marks omitted). Reliability of the testimony is established with the Daubert guidelines:

> (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline. However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case. Baldwin, 539 F. Supp. 2d at 444-45 (citations omitted).

7. While the standard grants the Court flexibility, it does not require "a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Id. at 445 (citing Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998). "[W]hile methodology remains the central focus of a Daubert inquiry trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Alifax Holding Spa v. Alcor Sci., Inc., 387 F. Supp. 3d 170, 173 (D.R.I. 2019)(citations and ellipses omitted).

8. Because expert testimony must be based on sufficient facts or data to be admissible, Courts "may **evaluate the data** offered to support an expert's bottom-line opinions **to determine if that data provides adequate support to mark the expert's testimony as reliable**." Lawes

v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 91 (1st Cir. 2020)(citation omitted)(emphasis added).

9.  "These requirements obligate a trial court to act as a gatekeeper in order to ensure, **as a condition of admissibility**, that proffered expert testimony rests **on a sufficiently trustworthy foundation**." United States v. Tavares, 843 F.3d 1, 5 (1st Cir. 2016) (*citing Daubert*, 509 U.S. at 597)(emphasis added). To satisfy the reliability requirement, the expert's report must expressly "include the factual basis and the process of reasoning which makes the conclusion viable." Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 38 (1st Cir. 1995)(citation omitted).

10.  In the Motion, UTIER argued that the *George Report* was based on insufficient evidence, partly because it was uncritically grounded in PREPA's 2022 Certified Fiscal Plan ("Fiscal Plan"). As argued in the Motion, this results in a significant omission which renders the entire *George Report* unreliable. Lawes, 963 F.3d at 91 (allowing a court to evaluate whether the expert's data provides adequate support to determine reliability). This lack of reliability makes the testimony inadmissible; it does not go only to the weight of the testimony. See Bado-Santana v. Ford Motor Co., 364 F. Supp. 2d 79, 101 (D.P.R. 2005)("[E]xpert testimony that is not based on sufficient facts and data must be excluded.").

11.  In In re TMI Litig., 193 F.3d 613 (3rd Cir. 1999), the Third Circuit upheld a "decision to exclude the testimony of an expert witness on the grounds **that the information provided to that witness was unreliable**." Crowley v. Chait, 322 F. Supp. 2d 530, 546 (D.N.J. 2004)(emphasis added). "Though not factually a perfect fit, *TMI* is applicable here . . ." where Dr. George relied on information provided by Counsel and conducted no independent investigation. See id.

12.  While this is the main contention of UTIER's Motion, the Oversight Board addresses this issue

in a footnote, stating that (1) the Oversight Board provided instructions regarding the underlying assumptions, therefore, Dr. George's reliance on the Fiscal Plan is proper; and (2) UTIER is impermissibly looking to challenge the validity of the Fiscal Plan. **ECF No. 3741 ¶ 21 f.n. 8.**

13. On the first point, we must look to case law which establishes that opinion testimony based on materials provided by counsel, without independent verification, can subject such testimony to exclusion. See, for example, Lyman v. St. Jude Medical S.C. Inc., 580 F. Supp.2d 719, 726-27 (E.D. Wisc. 2008). The reliability of the expert testimony under Rule 702 is intrinsically tied to the underlying data.

14. On the second point, UTIER vehemently opposes such a broad interpretation of Section 106 of PROMESA. While the statute bars the Court from reviewing "**challenges** to the Oversight Board's **certification determinations**[,]" 48 U.S.C. § 2126(e)(emphasis added), this is a far cry from forcing the Court to accept every single element of the Fiscal Plan as an irrefutable truth. Were that the case, there would be little use to the confirmation process and discovery. The Oversight Board could simply certify a Fiscal Plan stating that the confirmation of its own proposed plan is the only way forward for PREPA and call it a day. This would be absurd.

15. As such, UTIER maintains that this significant omission in the data relied on by Dr. George renders the *George Report* unreliable. Because Dr. George fails to include the correct natural gas contract prices adders, the fuel forecast is not reliable and any opinion relying on it suffers the same fate.

16. As Dr. George himself declares, "[f]uel costs account for a majority of PREPA's annual revenue requirements." *George Report*, ¶ 104. In fact, he states that "**the reliability of the forecasts used to estimate PREPA's fuel costs play an important role when determining**

**the Revenue Envelope**, . . . ." *Id.* (emphasis added). Yet, failing to add contract price adders significantly alters the fuel forecast, even under the Oversight Board's methodology in the Fiscal Plan. The data relied on by Dr. George is based on a **point-of-sale price** at the Henry Hub, whereas the Fiscal Plan uses **delivered natural gas price to the grid in Puerto Rico**. Without this adder, the comparison is unreasonable, and the omission makes any result unreliable. Point-of-sale price is inapplicable to the circumstances of Puerto Rico and its geographical/political landscape.

17. As such the omission of the adder is fatal and makes the conclusions unreliable.

### III.   CONCLUSION

**WHEREFORE**, for all the reasons, UTIER respectfully reiterates its request that this Honorable Court exclude the *George Report* and subsequent expert testimony from being offered by the Oversight Board in support of the Plan of Adjustment under Rules 702 and 403 of the Federal Rules of Evidence.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *First Amended Standing Order.*

In Ponce, Puerto Rico, this 20th day of June, 2023.

*[Signatures on the next page]*



BUFETE EMMANUELLI, C.S.P.
P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 787-841-1435

*/s/Rolando Emmanuelli-Jiménez*
Rolando Emmanuelli-Jiménez, Esq.
USDC: 214105
rolando@emmanuelli.law


*/s/Jessica E. Méndez-Colberg*
Jessica E. Méndez-Colberg, Esq.
USDC: 302108
jessica@emmanuelli.law


*/s/ Zoé C. Negrón-Comas*
Zoé C. Negrón-Comas, Esq.
USDC: 308702
zoe@emmanuelli.law


*Counsel for UTIER*