# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                                                     Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                                                     Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

## SREAEE'S REPLY TO DEBTOR'S OPPOSITION TO SREAEE'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF GLENN R. GEORGE

*[SPACE INTENTIONALLY LEFT BLANK]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**TO THE HONORABLE DISTRICT COURT:**

**COMES NOW** Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") duly represented by the undersigned counsel and respectfully states as follows:

## I. BACKGROUND

1. The *Modified Second Amended Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Plan of Adjustment") was filed on March 1st, 2023. **ECF No. 3296.**

2. On April 28, 2023, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA"), filed the *Expert Report of Glenn R. George, MBA, PE, PhD* ("George Report") in support of confirmation of the Plan of Adjustment. **ECF No. 3418-1.**

3. Pursuant to the *Third Amended and Restated Order establishing, among other things, procedures and deadlines concerning objections to confirmation and discovery in connection therewith* ("Procedural Order"), **ECF No. 3565**, *SREAEE's Motion in Limine to Exclude Expert Testimony of Dr. Glenn George* ("Motion") was filed on June 2nd, 2023. **ECF No. 3571.**

4. On June 13, 2023, the Oversight Board filed *Debtor's Opposition to SREAEE's Motion in Limine to Exclude Expert Testimony of Glenn R. George* ("Opposition"). **ECF No. 3744.**

5. In its *Opposition,* the Oversight Board summarizes Dr. George's testimony as follows:

    Dr. George opines on (*i*) whether the Legacy Charge provides PREPA's creditors with reasonable recoveries on their claims for rate-making purposes (not confirmation purposes) given PREPA's need to continue its operations, as well as **the burden on ratepayers and the Puerto Rico economy of increased rates**; (*ii*) whether the methodology used by Brattle to determine the Legacy Charge is appropriate; and (*iii*) **whether the design of the Legacy Charge is consistent with principles of just and reasonable rates**. ECF No. 3744 ¶ 18 (emphasis added).

6. Moreover, the Oversight Board characterizes SREAEE's Motion as asserting that the testimony should be excluded because:

(*i*) **Dr. George does not include an analysis of every one of the Bonbright principles when concluding that the Legacy Charge rates were just and reasonable and his analysis was not the product of a "scientific" method;** and (*ii*) Dr. George fails to account for the principles propounded by Karl. R. Rábago and Radina Valova, two authors who SREAEE claims "updated" the Bonbright principles **and for certain alleged macroeconomic effects of the Legacy Charge**. **ECF No. 3744 ¶ 23** (emphasis added).

7. The Oversight Board concludes that SREAEE's arguments go to the weight of the testimony rather than its admissibility. SREAEE respectfully disagrees for the reasons stated herein.

## II. LEGAL ARGUMENTS

8. As stated in the Motion, the principal rule of admissibility of expert testimony is Rule 702 of the Federal Rules of Evidence. "Under Rule 702, it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and **to ensure that the testimony rests on a reliable basis**." Baldwin v. Bader, 539 F. Supp. 2d 443, 444 (D. Me. 2008)(citing Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006))(emphasis added)(quotation marks omitted). Reliability of the testimony is established with the Daubert guidelines:

    (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline. However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case. Baldwin, 539 F. Supp. 2d at 444-45 (citations omitted).

9. "The Supreme Court has interpreted Rule 702 to direct the trial judge to evaluate an expert's proposed testimony for both reliability and relevance prior to admitting it." In re Loestrin 24 Fe Antitrust Litig., 433 F. Supp. 3d 274, 299 (D.R.I. 2019)(citations and quotations omitted).

    This flexible inquiry into the overall reliability of a proffered expert's methodology involves review of such factors as the **verifiability of the expert's theory or technique,** the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community. **Put simply, the expert's opinion and testimony should**

3

**impart scientific knowledge rather than guesswork**. In re Loestrin 24 Fe Antitrust Litig., 433 F. Supp. 3d 274, 299 (D.R.I. 2019)(citations and quotation marks omitted)(emphasis added).

10. In the Motion, SREAEE argued that the *George Report* is not the product of reliable principles and methodology applied reliably to conclude an essential element of feasibility of the Plan of Adjustment—whether the Legacy Charge is consistent with principles of fair and reasonable rates. In the *George Report,* under Heading III, "The methodology applied by the Oversight Board to determine the Legacy charge is logical and reasonable[,]", Dr. George concludes that the Legacy Charge is consistent with these principles. Specifically, in Section III.C. with the title "The resulting Legacy Charge is consistent with the principles of just and reasonable rates", Dr. George concludes:

> (98) One way of determining whether utility rates are just and reasonable is to judge them against the "attributes of a sound rate structure" articulated by James C. Bonbright in a seminal work in the field of public utility ratemaking. These attributes, which are intended to help regulators determine whether utility rates appropriately balance the interests of ratepayers with those of the utility company itself, are as follows:
> 
> - Rates should have the following practical attributes: simplicity, understandability, public acceptability, and feasibility of application.
> - Rates should be free from controversies as to proper interpretation.
> - Rates should effectively yield total revenue requirements under the fair return standard.
> - Rates should provide revenue stability from year to year.
> - Rates themselves should be stable, i.e., rates should experience minimal unexpected changes that are seriously adverse to existing customers.
> - Rates should apportion the total cost of service fairly among different consumers.
> - Rate relationships should avoid "undue discrimination."
> - Rates should promote efficiency, discouraging wasteful use of energy while promoting all justified types and amounts of use.
> 
> (97) Although the Legacy Charge constitutes only one element in total charges to be paid by PREPA's customers, **my review of the Revenue Envelope Model and the Legacy Charge Model revealed no violation of any of the Bonbright principles or indeed any divergence from practices generally applied in the field of utility ratemaking.**

4

> (98) **In my opinion, the Legacy Charge and associated Legacy Charge Revenues are consistent with the concept of just and reasonable rates.** *George Report* ¶ 96-98 (emphasis added).

11. This is the **only** methodology included in this Section of the *George Report*. As such, it is difficult to see, as the Oversight Board suggests, that "Dr. George's analysis does not turn on whether the Legacy Charge was consistent with the Bonbright principles . . .", on the topic of just and reasonable rates. **ECF No. 3744 ¶ 30.** If Dr. George considered another methodology for the specific analysis of whether the rates were just and reasonable, he did not include them in the *George Report*. Thus, SREAEE submits that the Bonbright Principles **are** the basis for that conclusion. Therefore, they should have been discussed rather than just listed. If, on the other hand, another method was used, then the *George Report* omits it, making it impossible for the Court to review its reliability.

12. "At minimum, the expert testimony should include a description of the method used to arrive at the level of exposure and scientific data supporting the determination. The expert's assurance that the methodology and supporting data is reliable will not suffice." <u>Mitchell v. Gencorp Inc.</u>, 165 F.3d 778, 781 (10th Cir. 1999)(citation omitted).

13. Moreover, if the Bonbright principles are not the basis for the conclusion of just and reasonable rates, turning to the other areas of this Section does not change the result. For example, Dr. George states:

> **Historically, the concept of "just and reasonable rates" has been left open to interpretation, oftentimes before legal or regulatory bodies**. **The just and reasonable standard is typically informed by evidence and testimony submitted by stakeholders.** Nonetheless, just and reasonable rates have come to mean those which allow the utility to be compensated for prudently incurred costs and the opportunity to earn a return on and of reasonably invested capital. *George Report* ¶ 93 (emphasis added)(footnotes omitted).

14. Here Dr. George sets forth two principles of ratemaking which are ignored in the *George*

5

*Report*, as well as in the development of the Legacy Charge. There is no analysis of the "just and reasonable rates" concept interpreted by the Puerto Rico Energy Bureau ("PREB"). Additionally, there is no evidence or testimony submitted by stakeholders.

15. As argued in the Motion, even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." Clark v. Takata Corp., 192 F.3d 750, 759, f.n. 5 (7th Cir. 1999). SREAEE need not dig deeper into case law for the Court to see that the *George Report* provides only a conclusory sentence regarding whether the Legacy Charge meets the requirements of a "just and reasonable" rate.

16. Moreover, while it is true that expert testimony may be based on technical knowledge rather than scientific methodology, as the Oversight Board comments, **ECF No. 3744 ¶ 14,** this is not a blanket rule. The Court must consider **the nature of the testimony**. See, for example, Crowley v. Chait, 322 F. Supp. 2d 530, 539 (D.N.J. 2004)("As a preliminary matter, it is worth observing that the type of testimony involved in this case is more closely akin to that of technical knowledge as discussed in *Kumho Tire* than to traditional scientific knowledge. In such cases of nonscientific testimony, the emphasis is placed not on the methodology of the expert testimony, but on the professional and personal experience of the witness."). Dr. George is offered as an expert to assess a technical issue based on complex data and a unique set of circumstances. If his opinion is based solely on experience, it is not reliable. This is an instance where technical and/or scientific knowledge is required. This is an analysis involving specialized knowledge in economics, utility rates and other subject areas. While Dr. George's credentials are not in question, only such knowledge, with its corresponding methodology, will help the Court at confirmation and only if it is set forth.

### III. CONCLUSION

**WHEREFORE**, for all the reasons, SREAEE respectfully reiterates its request that this Honorable Court exclude the *George Report* and subsequent expert testimony from being offered by the Oversight Board in support of the Plan of Adjustment under Rules 702 and 403 of the Federal Rules of Evidence.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *First Amended Standing Order*.

In Ponce, Puerto Rico, this 20th day of June 2023.



| | |
|---|---|
| ORTIZ MENDOZA & FARINACCI FERNÓS, LLC | BUFETE EMMANUELLI, C.S.P. |
| Edificio Banco Cooperativo Plaza | P.O. Box 10779 |
| 623 Ponce de León Ave., Suite 701-B | Ponce, Puerto Rico 00732 |
| San Juan, PR 00917-4820 | Tel.: 787-848-0666 |
| Tel: 787-963-0404 | |
| /s/Rafael A. Ortiz-Mendoza | /s/Rolando Emmanuelli-Jiménez |
| Rafael A. Ortiz-Mendoza, Esq. | Rolando Emmanuelli-Jiménez, Esq. |
| USDC-PR: 229103 | USDC: 214105 |
| rafael.ortiz.mendoza@gmail.com | rolando@emmanuelli.law |
| *Co-counsel to SREAEE* | /s/Jessica E. Méndez-Colberg |
| | Jessica E. Méndez-Colberg, Esq. |
| | USDC: 302108 |
| | jessica@emmanuelli.law |
| | /s/ Zoé C. Negrón-Comas |
| | Zoé C. Negrón-Comas, Esq. |
| | USDC: 308702 |
| | zoe@emmanuelli.law |
| | *Co-counsel to SREAEE* |