# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered)<br><br>Re: ECF No. 3581 |
| PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Movant,<br><br>v. | |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., SYNCORA GUARANTEE, INC., U.S. BANK NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE,

                Respondents.

**REPLY IN SUPPORT OF DEBTOR'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CHALLENGING OVERSIGHT BOARD'S CERTIFICATION DETERMINATIONS**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ................................................................................................................................ 4

CONCLUSION ............................................................................................................................. 9

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
  297 F. Supp. 3d 269 (D.P.R. 2018), *aff'd*, 927 F.3d 597 (1st Cir. 2019) .................................5

*Fin. Sec. Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
  188 B.R. 799 (E.D.La. 1995), *aff'd,* 116 F.3d 790 (5th Cir. 1997) ..........................................7

*In re BSA*,
  642 B.R. 504 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023) ..............................7, 9

*In re Celotex Corp.*,
  204 B.R. 586 (Bankr. M.D. Fla. 1996) ....................................................................................7

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  432 F. Supp. 3d 25 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020) .......................................8

*Mendez-Nunez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
  916 F.3d 98 (1st Cir. 2019) ......................................................................................................5

*Rossello Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
  330 F. Supp. 3d 685 (D.P.R. 2018) ......................................................................................5, 6

**STATUTES**

11 U.S.C. § 1129 ..............................................................................................................................6

PROMESA § 106(e) ................................................................................................................ passim

PROMESA § 201 ............................................................................................................................1

PROMESA § 201(b) ..............................................................................................................2, 4, 6

PROMESA § 201(b)(1)(H) ............................................................................................................5

PROMESA § 201(b)(1)(I) .............................................................................................................7

PROMESA § 201(c)(3) ..................................................................................................................2

PROMESA § 201(d)(2) .................................................................................................................2

PROMESA § 314(b) ........................................................................................................................2, 6

PROMESA § 314(b)(7) ................................................................................................................ passim

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
    Texts* (2012) ...........................................................................................................................8, 9

To the Honorable United States District Court Judge Laura Taylor Swain:

The Oversight Board[1] respectfully submits this reply in further support of its *Motion in Limine to Exclude Evidence Challenging Oversight Board's Certification Determinations* [ECF No. 3581] (the "Motion") and in reply to *Response of the Ad Hoc Group of PREPA Bondholders, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Syncora Guarantee, Inc., and U.S. Bank National Association as PREPA Bond Trustee to Debtor's Motion in Limine to Exclude Evidence Challenging Oversight Board's Certification Decisions* [ECF No. 3746] ("Opposition" or "Opp.").

## PRELIMINARY STATEMENT

1. The Bondholders' Opposition is entirely based on their erroneous premises that a plan of adjustment must pay them "all that it can afford to pay," Opp. at ¶ 2, and that the requirement in PROMESA § 314(b)(7) that the plan of adjustment be consistent with the fiscal plan, actually means the plan of adjustment must be consistent with what the Court believes the fiscal plan should have provided. The Bondholders compound their erroneous premises by submitting the Court should interpret the Bankruptcy Code's fair and equitable requirement to override the fiscal plan. If the Bondholders are correct, PROMESA §§ 106(e), 201, and 314(b)(7) have no meaning because the outcome the Bondholders desire would be the same if those sections were deleted from PROMESA. The General/Specific Canon quickly dispenses with the notion that a statute as specific as section 314(b)(7) can be overridden by a general fair and equitable requirement. That the Court previously held it must determine whether the plan of adjustment is consistent with the fiscal plan for purposes of PROMESA § 314(b)(7), demonstrates the Oversight

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

Board is correct here, and does not help the Bondholders. The Oversight Board totally supports its previous representations that the Court need not confirm a plan if it does not satisfy confirmation requirements. Not confirming a plan because it is consistent with a fiscal plan the Court would change, would be wrong because it is not a confirmation requirement that the plan be consistent with a different fiscal plan the Court would prefer. Additionally, under the guise of honoring congressional intent, the Bondholders defy it. As they would have it, a district court can find the certified fiscal plan is wrong, so long as the court reaches that conclusion in the context of a Title III confirmation. That outcome is the opposite of what Section 314(b)(7) provides and requires the Court to exercise the precise jurisdiction Section 106(e) carves out. The bondholders' contention that fiscal plan certifications do not apply outside PROMESA Title II, does not survive the most elemental analysis. What does the debt sustainability analysis in the certified fiscal plan do, if it does not apply in Title III? Nothing. Similarly, PROMESA §§ 201(c)(3) and 201(d)(2), providing the Oversight Board determines "in its sole discretion" whether a fiscal plan satisfies the requirements of PROMESA § 201(b), including the debt sustainability analysis, has no meaning under the Bondholders' contention that the Court determines the debt sustainability analysis despite Sections 106(e) and 201(c) and (d).

2. Far from "obliterat[ing]" Title III (Opp. ¶ 2), the Oversight Board's position carries out each section of PROMESA mentioned above. The Court must confirm a plan of adjustment if it satisfies the seven elements listed in Section 314(b), including that "the plan [of adjustment] is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II." PROMESA § 314(b)(7). It is the Bondholders' position that requires an interpretation of PROMESA that yields the same outcome that would exist if PROMESA §§ 106(e), 201(c), 201(d), and 314(b)(7) were each deleted. Congress envisioned a battle in which the debtor argues the plan

2

of adjustment is *consistent with* the fiscal plan, and the creditor argues the plan of adjustment is *inconsistent with* the fiscal plan. Nothing in PROMESA supports the Bondholders' view that Congress envisioned the creditor could argue the plan of adjustment cannot be confirmed because it is *consistent with a fiscal plan* it does not like. *Consistency with* a certified fiscal plan is the issue, not whether the creditors or the Court would have drafted the certified fiscal plan differently.

3.  Moreover, the Bondholders make their argument about the fiscal plan to support their contention that the plan of adjustment must pay them all it can afford. In the context of PROMESA, the Commonwealth and people could more forcefully argue the plan of adjustment must provide for all the improvements to PREPA's antiquated and decrepit infrastructure that PREPA can afford, so the people do not have to suffer all the blackouts and brownouts plaguing the Commonwealth. Repairing PREPA's infrastructure is directly tied to attaining fiscal responsibility and market access. Moreover, whichever might be considered "the best" plan, is not a confirmation requirement, as decades of jurisprudence has shown. The Oversight Board respects both the creditors' view and the Commonwealth and people's view. It cannot, however, follow either view to the exclusion of the other.

4.  The Bondholders talk about reading Section 106(e) "in the context of" the Court's authority to adjust debts and "in the context of" the Oversight Board's Title II authority. (Opp. ¶ 11.) For all that context, the Bondholders have neglected to simply apply the law as written. Section 314(b)(7) requires the plan of adjustment to be consistent with the certified fiscal plan, not a different plan. It is inconceivable Congress wrote that, and enacted Section 106(e) precluding judicial review of a fiscal plan, with the intent that the Court should not abide by the certified fiscal plan for which it granted the Oversight Board "sole discretion" in PROMESA §§ 201(c) and (d).

5.  There is no need to delay decision of the Motion. The Bondholders have already

3

submitted expert reports previewing their contention that the Commonwealth and PREPA Fiscal Plans were improperly constructed. To adjudicate this material at trial only causes exercise of subject matter jurisdiction Congress carved out and an interpretation of PROMESA as if sections 201(b), 201(c), 201(d), and 314(b)(7) do not exist.

## ARGUMENT

6.The Motion made clear, and the Bondholders do not contest and thus concede, that the Oversight Board used the GNP forecast the Bondholders challenge, and related analyses they challenge, to meet the Oversight Board's obligations to formulate a fiscal plan in accordance with PROMESA § 201(b). (*E.g.*, Motion ¶ 18.) The Bondholders' complaint that the Oversight Board is using its fiscal plans to "adjust debts, by unilaterally setting the amount PREPA can pay," (Opp. ¶ 10.), is a complaint they should send to Congress, and cannot send to the Court because Congress carved out the Court's power to preside over challenges to certified fiscal plans.

7.To no avail, the Bondholders attempt to paint their challenge to the debt sustainability analysis in the certified fiscal plan as a challenge to "aspects of the *models* underlying the Board's Fiscal Plan." (*Id.* ¶ 12 (emphasis in original).)[2] The Bondholders' attempt is unavailing because they are not requesting an order determining the certified fiscal plan should use a different model. They are requesting an order determining the fiscal plan is wrong because its debt sustainability analysis comes up with a purportedly wrong debt amount. Absent such an order, the Bondholders cannot have a meritorious confirmation objection that the plan fails to issue enough debt. "[Section] 106(e) bars district courts from reviewing *the reasons for certification*

---

[2]Bondholders' experts plainly reject and criticize these models. The suggestion that PREPA actually adopts the new models the Bondholders' experts contrive (such as the "alternative forecast" advocated by Dr. Tierney (*see* Opp. ¶ 12 n.4)) is belied by the PREPA fiscal plan itself. (*See* Motion ¶ 8.)

4

*determinations* as much as the certification determinations themselves." *Mendez-Nunez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 113 (1st Cir. 2019) (emphasis added); *see also Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 297 F. Supp. 3d 269, 289 n.11 (D.P.R. 2018), *aff'd*, 927 F.3d 597 (1st Cir. 2019) (Section 106(e) bars challenges to "Oversight Board determinations that are inherent in the certification of a Fiscal Plan.").

8. The Bondholders suggest they are not really challenging the fiscal plans, because, they say, if the Court agrees with them that the fiscal plans were wrongly constructed (if, for example, the Commonwealth's GNP forecast were incorrect), then it would be up to the Oversight Board, not the Court, to actually discard the fiscal plans. (Opp. ¶ 19.) That construct turns PROMESA upside down. The certified fiscal plan's debt sustainability analysis, combined with the Congressional grant to the Oversight Board of "sole discretion" to develop it and the requirement that the plan of adjustment be consistent with it, together with the carveout of the Court's power to preside over a challenge to it, all have no meaning whatsoever if the debt sustainability analysis is up for grabs as the Bondholders contend. The Bondholders seem to imagine (*i*) the Court will decide, for example, that the Oversight Board's certified "independent forecast[ ] of revenue for the period covered by the Fiscal Plan," PROMESA § 201(b)(1)(H), was wrong and, at the same time, (*ii*) the Court's decision is not a "review [of a] challenge[] to the Oversight Board's certification determination[ ]," PROMESA § 106(e). This makes no sense as a matter of statutory interpretation or common sense. If the Court were to decide the Oversight Board did a bad job in certifying a fiscal plan, *that is a review of the fiscal plan*.[3]

---

[3] *Rossello Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685 (D.P.R. 2018) does not hold otherwise. (*Contra* Opp. ¶ 14.)

5

9. For all their talk about the purposes and structure of PROMESA (Opp. ¶¶ 9-11) and a foray into legislative history about the value of settlement (*id*. ¶ 13 n.5), the Bondholders fail to explain why the Court should read into Section 106(e) a carveout applicable in the Title III context. Unlike in this Court's disposition of the motion *in limine* in the Commonwealth's Title III case (Case No. 17-BK-03283, ECF No. 20146 (D.P.R. Feb. 15, 2022)), no textual conflict between Sections 106(e) and 314(b)—or any other statute—requires a carveout to harmonize the provisions. On the contrary, harmonization of Section 106(e) with Section 314(b)(7)'s "consistent with" element requires that Section 106(e) apply precisely in this context, to bar review of a fiscal plan in a confirmation hearing. (Motion ¶ 20.) This has always been the Oversight Board's and its counsel's position throughout Title III litigation, as the record attests. (*Contra* Opp. ¶ 17; *see* Opp. Ex. 1.)

10. Confirmation under Title III is a narrower inquiry than confirmation under 11 U.S.C. § 1129. That is simply the scheme Congress legislated. What "debtors . . . [do] all the time"—like when "they must go back to the drawing board and craft plans that are confirmable"—has no relevance here. (*Id*. ¶ 19.) Here, if a fiscal plan has been certified, its debt sustainability analysis cannot be challenged.[4] Notably, the Bondholders nowhere explain what purpose the debt sustainability analysis serves, other than limiting the debt to be issued under a Title III plan. If

---

That case distinguished between "the Oversight Board's determination that a plan or budget meets the requirements for certification or is compliant with particular aspects of PROMESA Section 201(b)" (unreviewable) and "litigation seeking clarification as to the effect of particular provisions of a certified fiscal plan or budget on preexisting Puerto Rico law, or on the powers of the executive and legislative branches of the government of Puerto Rico" (reviewable). *Id.* at 695. Here, the Bondholders' assertion is that the Oversight Board did not do its job properly under Section 201(b). It is therefore a precluded challenge to "the propriety[ ] of the certification of the Fiscal Plan. . . ." *Id.*

[4] That the Oversight Board has the power to change a fiscal plan (*see* Opp. ¶ 17 n.6) does not give the Court that power or the power to review a fiscal plan. It does not have these powers.

6

PREPA proposes a plan issuing less debt than the debt sustainability analysis allows, then the Bondholders might argue the plan is not confirmable. But attacking the debt sustainability analysis is not available to them.

11. As mentioned above, the Bondholders' premise is wrong in any event. There is no requirement in PROMESA Title III that a plan of adjustment issue all the debt the debtor can afford. That would be totally inconsistent with PROMESA § 314(b)(7) requiring the plan of adjustment to be consistent with the fiscal plan. Significantly, PROMESA § 201(b)(1)(I) nowhere provides the debt sustainability analysis must yield the maximum amount of debt PREPA can afford to issue. Indeed, that would maximize the likelihood of default. As explained above, the Commonwealth and people can make a stronger case that to attain fiscal responsibility and market access, PREPA should maximize the overhaul of its antiquated and decrepit infrastructure plaguing the people with blackouts and brownouts in a hot climate. Indeed, the law has consistently been that plans are confirmable even if they do not yield the "best" return to creditors. *In re BSA*, 642 B.R. 504, 660 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023) ("The Plan fosters a result consistent with the Code, is proposed for the purpose of reorganizing and delivers value to creditors. That there might be another plan, or even a better one, is not grounds to find a lack of good faith."); *In re Celotex Corp.*, 204 B.R. 586, 611–12 (Bankr. M.D. Fla. 1996) ("The Court need not and ought not consider if a proposed plan is the 'best' plan of reorganization that could be promulgated, providing for the highest return to creditors of the Debtors' Estates."); *Fin. Sec. Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 188 B.R. 799, 806 (E.D.La. 1995), *aff'd,* 116 F.3d 790 (5th Cir. 1997) ("The plan need not be the best alternative for the creditor, but only one that is fair, equitable and feasible under the Code."). This is particularly true in PROMESA, where this Court and the First Circuit have repeatedly observed

7

"[t]he goal of these PROMESA cases … is not merely to maximize creditors' recoveries." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020)); *see, also Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-bk-3283, ECF No. 19812] ¶ 211 (The best interests test in PROMESA does not to "impose a litmus test or establish a floor for creditor recoveries.").

12. The Bondholders effort to thwart the certified fiscal plan's debt sustainability analysis by purporting to enforce the fair and equitable requirement quickly fails under common sense and the General/Specific Canon. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183-188 (2012). Common sense dictates that Congress would not impose a confirmation requirement that would render a plan unconfirmable. But that is exactly what the Bondholders contend. When Congress writes into PROMESA that the plan of adjustment must be consistent with the certified fiscal plan, it defies common sense and the canon that the general fair and equitable requirement can mean the plan of adjustment cannot be consistent with the debt sustainability analysis in the fiscal plan. Besides, the fair and equitable requirement is known for imposing the absolute priority requirement whereby junior classes cannot be paid until senior classes are paid in full. To stretch the fair and equitable requirement into forcing the Oversight Board to change its debt sustainability analysis to have a confirmable plan would be contrary to fundamental statutory interpretation. It does not simply violate the General/Specific Canon, it violates others. For instance, it violates the Harmonious Reading Canon that one part of a statute is not to be read to defeat another because section 314(b)(7) and the fair and equitable

requirement should be interpreted to render them compatible. *Id.* at 180-182.

13. The Motion is ripe. (*Contra* Opp. ¶¶ 20-22.) The Bondholders' expert reports were filed in April [ECF No. 3424], rebuttals were filed in May [ECF No. 3503], and Dr. Edwards, Dr. Tierney, Dr. Chakraborty have all been deposed. Their reports, testimony, and the Opposition establish the Bondholders intend to challenge fiscal plans the Oversight Board has certified for the Commonwealth and PREPA. That evidence is irrelevant to the confirmation proceedings because PROMESA § 314(b)(7) requires that the plan of adjustment be consistent with the certified fiscal plan, and that plan sets the debt sustainability. Additionally, the Court has no jurisdiction to review any challenge to the Oversight Board's certification determinations, but even if it did, the other sections of PROMESA discussed above require adherence to the debt sustainability analysis in the certified fiscal plan.

## **CONCLUSION**

14. For the foregoing reasons and those set forth in the Motion, the Oversight Board respectfully requests the Court enter the Proposed Order excluding all evidence that challenges the Oversight Board's certification determinations inherent in the Fiscal Plans and grant such other and further relief as is just.

[*Remainder of Page Intentionally Left Blank*]

Dated: June 20, 2023  
New York, New York

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock  
Paul V. Possinger  
Ehud Barak  
Margaret A. Dale  
Michael T. Mervis  
Julia D. Alonzo  
Laura Stafford  
Adam Farbiarz  
(Admitted *Pro Hac Vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board, as representative for PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer  
USDC No. 215205  
**O'NEILL & BORGES LLC**  
250 Muñoz Rivera Ave., Suite 800  
San Juan, PR 00918-1813  
Tel: (787) 764-8181  
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board, as representative for PREPA*

10

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Hermann D. Bauer*
Hermann D. Bauer