# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------ X
                                                                   :
In re:                                                             :
                                                                   :
THE FINANCIAL OVERSIGHT AND                                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                  :   Title III
                                                                   :
         as representative of                                     :   Case No. 17-BK-3283 (LTS)
                                                                   :
THE COMMONWEALTH OF PUERTO RICO *et al.,*                          :   (Jointly Administered)
                                                                   :
         Debtors.[1]                                              :
------------------------------------------------------------------ X
                                                                   :
In re:                                                             :
                                                                   :
THE FINANCIAL OVERSIGHT AND                                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                  :   Title III
                                                                   :
         as representative of                                     :   Case No. 17-BK-4780 (LTS)
                                                                   :
PUERTO RICO ELECTRIC POWER AUTHORITY,                              :   (Jointly Administered)
                                                                   :
         Debtor.                                                   :
------------------------------------------------------------------ X

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK SHANKWEILER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARUGMENT .......................................................................................................................... 2

I.     Oversight Board Failed to Satisfy Burden to Establish Mr. Shankweiler as
Qualified to Provide Opinion Estimating GUC Pool.......................................... 2

II.    Mr. Shankweiler Acted as Mere Mouthpiece for Oversight Board's and PREPA's
Attorneys........................................................................................................... 5

III.   Oversight Board Failed to Respond to Committee's Argument that Mr.
Shankweiler's Testimony Will Be Inadmissible Legal Opinion ........................ 9

IV.   Oversight Board Cannot Use Privilege Claims to Prevent Scrutiny of Mr.
Shankweiler's Opinion....................................................................................... 9

CONCLUSION....................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alves v. Affiliated Care of Putnam, Inc.*,
    2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ..........................................................................8

*Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*,
    1996 WL 466673 (10th Cir. Aug. 16, 1996) ..........................................................................8

*Berry v. City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) ..................................................................................................4

*Coco Rico, LLC v. Universal Insurance Co.*,
    2023 WL 3735108 (D.P.R. May 30, 2023) ..............................................................................5

*Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*,
    240 F.3d 1 (1st Cir. 2001) ......................................................................................................8

*Insight Tech. Inc. v. Surefire, LLC*,
    2005 WL 6001396 (D.N.H. Aug. 2, 2005) ..............................................................................4

*Marrero-Rolon v. Autoridad de Energia Electrica*,
    2018 WL 8805485 (D.P.R. Sept. 10, 2018) ............................................................................7

*Noel v. N.Y.C.*,
    2023 WL 3170430 (S.D.N.Y. Apr. 28, 2023) ........................................................................9

*Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau*,
    2008 WL 2446331 (D.P.R. June 16, 2008) ............................................................................8

*Santos v. Posadas De Puerto Rico Assocs., Inc.*,
    452 F.3d 59 (1st Cir. 2006) ....................................................................................................4

*The Campbell v. N.Y.C.*,
    2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) ......................................................................8, 11

*United States v. Hoffman*,
    832 F.2d 1299 (1st Cir. 1987) ................................................................................................4

*Wilson v. Dep't of Veterans Affs.*,
    2021 WL 1840753 (D. Me. May 7, 2021) ..............................................................................9

The Committee[2] respectfully submits this reply in response to *Debtor's Opposition to Official Committee of Unsecured Creditors' Motion to Exclude Expert Testimony of Mark Shankweiler* [Dkt. 3728] (the "Opposition" or "Opp'n"), and in further support of *Official Committee of Unsecured Creditors' Motion to Exclude Expert Testimony of Mark Shankweiler* [Dkt. 3579] (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

1.      The Opposition makes plain why the Motion should be granted, and Mr. Shankweiler should be precluded from testifying as an expert at the confirmation hearing.

2.      *First*, given the opportunity to supplement the record regarding Mr. Shankweiler's qualifications, the Opposition provides nothing new regarding his ability to opine on an estimate of the GUC pool.  The Oversight Board does not explain how Mr. Shankweiler's expertise as a general bankruptcy restructuring professional renders him at all qualified to evaluate the unique legal issues arising out of the huge, complicated claims asserted against an electric power authority in Puerto Rico (in contrast to the traditional trade creditor claims that Mr. Shankweiler has likely dealt with in his prior bankruptcy work).  Nor does the Oversight Board dispute that it bears the burden of demonstrating Mr. Shankweiler's qualifications.

3.       *Second*, the Oversight Board concedes that the estimates for the claims in the GUC pool were created by Proskauer, Diaz & Vazquez, PREPA's arbitration office, etc.—that is, almost anyone aside from Mr. Shankweiler or his team at BRG.   This is not surprising in light of Mr. Shankweiler's repeated admissions (adopted by the Oversight Board) that he simply lacks the legal expertise to estimate the value of the claims in the GUC pool.  At most, the Oversight Board has demonstrated that Mr. Shankweiler and BRG took care of the administrative aspects

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or the Opposition.

of calculating the estimate of the GUC pool, for example, by compiling the documents and
information that the Oversight Board's and PREPA's lawyers needed to actually evaluate the
claims.

4.      *Third*, the Oversight Board fails to even respond to the Committee's argument
that Mr. Shankweiler's testimony will be inadmissible legal opinion.  As explained in the
Motion, experts cannot testify as to legal conclusions, since those are reserved exclusively to the
trier of fact.

5.      *Fourth*, the Oversight Board admits that the Committee is entitled to the facts,
data, and assumptions Mr. Shankweiler used to arrive at his estimation of the claims in the GUC
pool.  But the Oversight Board's claim that all of the facts, data, and assumptions behind an $800
million estimate of the allowed amount of thousands of claims with an asserted amount of
billions of dollar is contained in a three-page discussion in the Disclosure Statement is laughable.
Equally absurd is the Oversight Board's twisting of the meaning of the word "assumptions" to
cover the legal analyses provided by the Oversight Board's and PREPA's lawyers to Mr.
Shankweiler, which (as Mr. Shankweiler himself explained during his deposition) were the
sources of the estimates of the claims in the GUC pool.

## **ARUGMENT**

## I.      **OVERSIGHT BOARD FAILED TO SATISFY BURDEN TO ESTABLISH MR. SHANKWEILER AS QUALIFIED TO PROVIDE OPINION ESTIMATING GUC POOL**

6.      The Oversight Board does not dispute that it bears the burden to show that Mr.
Shankweiler is qualified to provide an expert opinion estimating the GUC pool.  Mot. ¶ 22.  Mr.
Shankweiler should be precluded from testifying because the Oversight Board has failed to
satisfy this burden—he simply lacks the "knowledge, skill, experience, training or education"
necessary to provide an expert opinion regarding allowed amount of claims in the GUC pool.

7.     As the Motion demonstrated, Mr. Shankweiler's deposition testimony was thin on

evidence demonstrating that he could be qualified as an expert.  Mot. ¶¶ 24-26.  Given the

opportunity to bolster Mr. Shankweiler's credentials in the Opposition, the Oversight Board was

able to muster nothing more than a one-page CV (Opp'n ¶ 20), which provided no significant

information that Mr. Shankweiler had not already proffered during his deposition testimony.

8.     The Oversight Board attempts to support Mr. Shankweiler's credentials by stating

over and over that he has "extensive bankruptcy and restructuring experience."  Opp'n ¶ 17; *see*

*also id*. ("extensive experience in bankruptcy and restructuring"); *id*. ¶ 3 ("extensive experience

in the restructuring industry").  The Oversight Board also notes that Mr. Shankweiler holds a

degree in accounting and business administration, is a certified insolvency and restructuring

advisor, and a CPA.  Opp'n ¶ 20.  But neither the Oversight Board nor Mr. Shankweiler provide

any detail on how his experience or credentials qualify Mr. Shankweiler to provide an estimate

of the GUC Pool for PREPA.[3]  As Mr. Shankweiler's testimony makes clear, estimating the

allowed amount of the general unsecured claims against PREPA is an exercise in evaluating how

strong or weak a claim is as a matter of law.  It requires applying the facts and circumstances of a

claim to the applicable law, determining the potential value of a claim, and handicapping the

claim for likelihood of success.  The claims asserted against PREPA—for example, PPOA

claims, union claims, employee claims, etc.—are specific to public utilities.  These claims are

not run-of-the-mill trade creditor claims asserted in any bankruptcy, which can be evaluated

mechanically by a straightforward review of invoices and work done.  Instead, these are huge

claims that raise complicated legal issues, and it is those legal issues that are wholly

---

[3] The Oversight Board's attempt to distinguish the Committee's cases fails because it merely restates the holdings of
the cases, and otherwise fails to show Mr. Shankweiler's circumstances are different, or how his experience permits
him to estimate the value of the GUC pool.  *Cf.* Opp'n, at 8 n.8.

determinative of what the allowed amount of the claims should be.  There is nothing in the

record to suggest that Mr. Shankweiler has any experience with these sorts of claims, much less

that he has experience valuing such claims under, for example, Puerto Rico law.  As the *Berry*

court explained, "[t]he issue with regard to expert testimony is not the qualifications of a witness

in the abstract, but whether those qualifications provide a foundation for a witness to ***answer a***

***specific question***."  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (emphasis

added).  Mr. Shankweiler's testimony should be excluded because the Oversight Board has failed

to show that he is qualified to "answer a specific question"—what is the estimated allowed

amount of claims in the GUC pool.[4]

9.     The Oversight Board's cases (Opp'n ¶ 21) change nothing, as the witnesses in

those cases were clearly qualified to provide the opinions they actually provided.  In *Santos v.*

*Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006), the expert in a slip and

fall case was qualified because he held "a doctorate in mechanical engineering . . . [was] certified

by the National Academy of Safety as a tribologist (that is, someone who deals with friction and

the application of friction to the way pedestrians walk), [and] in his professional capacity . . .

[had] analyzed approximately 2,000 slip-and-fall accidents since 1990."  In *United States v.*

*Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987), the proposed expert witness was qualified to

interpret phrases used in the narcotics trade because of his experience as a DEA agent and his

participation in hundreds of investigations.  In *Insight Tech. Inc. v. Surefire, LLC*, 2005 WL

6001396, at *2 (D.N.H. Aug. 2, 2005), the court held that the proposed witness in a patent case

was qualified to testify as an expert because he was the founder and current president of the

---

[4] Oddly, the Oversight Board seems to suggest at one point that the experience Mr. Shankweiler has gained through
his work ***on this case*** (Opp'n ¶ 17; "specifically PREPA's Title III case") provides him with the expertise to testify
***in this case***.  The Oversight Board provides no authority to support its self-fulfilling argument that an expert can
gain expertise to testify in a given case through work on that case itself.

company, had thirty years of relevant experience, and was a named inventor on the patent.

Opp'n ¶ 21.  And in *Coco Rico, LLC v. Universal Insurance Co.*, 2023 WL 3735108, at *5

(D.P.R. May 30, 2023), the proposed witness was qualified to provide loss calculations because

she had a bachelor's degree in accounting, an MBA, and was a "Certified Fraud Examiner."[5]

Unlike the experts in these cases, Mr. Shankweiler lacks the experience or training to credibly

opine on the specific question he has been called upon to address (*i.e.*, to provide an estimate of

the allowed amount of the GUC pool) and therefore should be excluded.

## II.   MR. SHANKWEILER ACTED AS MERE MOUTHPIECE FOR OVERSIGHT BOARD'S AND PREPA'S ATTORNEYS

10.   Mr. Shankweiler's $800 million opinion is an estimate of the allowed amount of

all of the claims in the GUC pool.  But the Opposition makes plain that it was counsel for the

Oversight Board and PREPA—and not Mr. Shankweiler—that came up with those amounts.  As

the Opposition explains, "to prepare an accurate estimate of such claims, [Mr. Shankweikler and

his team] needed to rely on counsel for 'a determination as to what in their legal opinion the

litigation claim ***would be worth***."  Opp'n ¶ 28 (quoting Shankweiler Dep. Tr. 34:16-23)

(emphasis added).  The Opposition likewise admits that Mr. Shankweiler relied on the legal

expertise of the Oversight Board's and PREPA's counsel "in order to ***come up with a value***" for

the claims in the GUC pool.  *Id.* (emphasis added).  The determinations made by Diaz &

Vazquez, and Mr. Shankweiler's total reliance on those determinations, are particularly

questionable in light of that firm's ongoing role as counsel to PREPA on some of those very

---

[5] The Oversight Board notes that Mr. Herriman testified in the Commonwealth, PBA, ERS, and HTA Title III cases regarding the potential allowed amount of general unsecured claims without objection.  Opp'n, at 7 n.7.  Putting aside the obvious fact that Mr. Herriman was a different expert hired to opine in different cases, the most obvious reason why the Committee did not object to Mr. Herriman's qualifications is because the Oversight Board and the Committee had entered into settlements in those cases.  The Committee would welcome the opportunity to moot this Motion through a negotiated settlement.

claims.  *See* Shankweiler Dep. Tr. 34:5-10; 84:8-20; 124:13-16.  Similarly, the Opposition
admits that it was not Mr. Shankweiler or BRG, but "PREPA's arbitration office" that
"determined a settlement value for each of the grievance claims."  Opp'n ¶ 27.  Mr. Shankweiler
cannot testify as to the estimates when it was counsel or others that determined the allowed
amount for each claim.

11.     The Oversight Board makes much of Mr. Shankweiler's explanation of the work
he and his firm purportedly did to develop the $800 million estimate for the GUC pool.  *See, e.g.*,
Opp'n ¶ 24.  But the only work that Mr. Shankweiler and BRG seem to have done on their own,
without the input of counsel, was purely administrative.  *See id.* ("obtained all proofs of claim;"
"categoriz[ing]" each claim; "reviewed the support provided" for each claim).  Such
administrative tasks are, of course, not proper subjects for expert testimony.  In contrast, all of
the actual valuation work was done with counsel.  *Id.* ("BRG conferred ***with counsel to PREPA
or the Oversight Board*** 'to adjust any of the asserted claims'") (emphasis added); (BRG
"assigned a range of values and an adjusted estimated value for each category of claims . . .
based on [BRG's] own review of the claims ***and the input they received from counsel***")
(emphasis added).

12.     As the Opposition admits, "Mr. Shankweiler and his team are not attorneys."
Opp'n ¶ 28.  In light of Mr. Shankweiler's lack of legal expertise, Mr. Shankweiler could not
have materially contributed to the valuation of any of the claims in the GUC pool.  For example,
the Opposition explains that, due to the uncertainty regarding the validity of claims for lost
profits under PPOAs under Puerto Rico law, Mr. Shankweiler estimated the range of such
awards would be 0% on the low side and 30% on the high side.  Opp'n ¶ 25.  Likewise, the
Opposition states that "Mr. Shankweiler and his team applied a five percent (5%) adjustment to

6

the claim 'to cover any potential claims that could arise' from the medical plan modifications."
*Id*. ¶ 26.  But as Mr. Shankweiler himself admitted, a non-lawyer is simply not in a position to
handicap the strength of the legal claims that make up the GUC Pool.  Mot. ¶ 26 ("Q: Do you
believe that you have the expertise . . . to estimate the allowed amount of what you referred to as
litigation claims?  A:  So me personally and my team personally as it relates to valuation of
litigation claims, the answer is no.") (quoting Shankweiler Dep. Tr. 45:4-11).

      13.     The Oversight Board emphasizes that Mr. Shankweiler and his team looked at
"each one of the claims" and "[t]o the extent that we felt that a claim had to be adjusted based on
a review, we adjusted it."  Opp'n ¶ 30 (quoting Shankweiler Dep. Tr. 41:2-10).  But because the
Oversight Board has refused to produce anything to substantiate the analysis, there is nothing in
the record to show what contributions, if any, Mr. Shankweiler and his team actually made in the
"collaborative approach" (Opp'n ¶ 27 (quoting Shankweiler Dep. Tr. 123:8-125:2)) used to
arrive at the estimated asserted amounts of claims.  This is in obvious contrast to *Marrero-Rolon
v. Autoridad de Energia Electrica*, 2018 WL 8805485, at *3 (D.P.R. Sept. 10, 2018) (Opp'n
¶ 29), where the expert was entitled to rely on "***information*** provided by defense counsel" that
was available to all parties, "including materials considered by Plaintiffs' expert, the report
prepared by the Senate Commission, and publicly available documents" (emphasis added).
Here, Mr. Shankweiler admits that he relied not on generally available ***information*** provided by
counsel, but undisclosed ***legal analysis and legal conclusions*** provided by the Oversight Board's
and PREPA's counsel regarding the estimated allowed amount of the claims.[6]

---

[6] For certain claims, Mr. Shankweiler does not even attempt to claim that he was involved in the valuation of the
claims, and instead he merely "establish[ed] a process" for their valuation.  Opp'n ¶ 27 (UTIER claims).

14.     The Oversight Board claims that "[a]ny potential expert testimony Mr. Shankweiler may offer would not be drawn to the propriety of certain legal conclusions, but rather to his analysis and estimation of the GUC pool." Opp'n, at 15 n.13.  That is wrong.  Mr. Shankweiler's estimation of the GUC pool is exactly based on the "legal conclusions" of the Oversight Board's and PREPA's counsel regarding the legal strength and validity of the claims that make up the GUC pool.  The Oversight Board's supporting cases are thus irrelevant to this issue, because they deal specifically with *assumptions* given to experts in rendering their opinions.  For example, in *The Campbell v. N.Y.C.*, 2021 WL 826899, at *3 (S.D.N.Y. Mar. 4, 2021) (Opp'n, at 14 n.13), which dealt with unpaid overtime claims, the expert was told to assume that "plaintiffs were in fact working during all of the 'uncompensated time' logged in the CityTime platform."  Likewise, in *Alves v. Affiliated Care of Putnam, Inc.*, 2022 WL 1002817, at *8 (S.D.N.Y. Mar. 30, 2022), the expert did not rely on counsel for legal opinions, but instead "for his [m]ethodology, for his data and for his primer about New York's [Medicaid program]" (citations omitted).[7]

15.     Finally, the Oversight Board's effort to distinguish the Committee's cases (Opp'n, at 16 n.15) fails.  The Oversight Board attempts to distinguish *Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau*, 2008 WL 2446331, at *5 (D.P.R. June 16, 2008) and *Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, 1996 WL 466673, *1, *7-8 (10th Cir. Aug. 16, 1996) by noting the opinions were properly excluded because they were based on bad evidence.  Opp'n, at 16 n.15 ("clearly contradictory evidence" in *Rivera-Cruz*; "the report he relied on were unreliable" in *Beck's*).  Here, the Oversight Board has not provided the Committee with the

---

[7] The Oversight Board's citation to *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001) is likewise irrelevant, as it dealt with one expert relying on the opinion of another expert who had passed away.  Moreover, the testifying expert in that case "had first-hand knowledge of the fire scene and the observable facts there upon which to base that opinion." *Id*.

information on which Mr. Shankweiler relied, rendering the Committee wholly unable to

evaluate whether that evidence is in fact good or bad.  And as in *Noel v. N.Y.C.*, 2023 WL

3170430, at *4 (S.D.N.Y. Apr. 28, 2023), Mr. Shankweiler's testimony should be excluded

because he "has provided no information as to ***how*** he reached his conclusions," "nor does he

proffer any rational link between his experience and the speculations he offers" (emphasis

added).

### III.   OVERSIGHT BOARD FAILED TO RESPOND TO COMMITTEE'S ARGUMENT THAT MR. SHANKWEILER'S TESTIMONY WILL BE INADMISSIBLE LEGAL OPINION

16.     In the Motion, the Committee explained that Mr. Shankweiler's testimony should

be excluded because it will constitute inadmissible legal opinion.  *See* Mot. ¶¶ 33-34.  As this

court has already recognized, expert testimony on purely legal issues is "rarely admissible."

*Opinion and Order Denying UTIER's Motions to Exclude Expert Testimony*, at 13 n.10, Adv.

Proc. No. 17-00229-LTS [Dkt. 225] (quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100

(1st Cir. 1997)).

17.     The Oversight Board failed to address this argument meaningfully in the

Opposition.  "When arguing its position, a party must fully develop the argument on which it

relies. '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.'"  *Wilson v. Dep't of Veterans Affs.*, 2021 WL 1840753, at

*3 (D. Me. May 7, 2021) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  As

a result, the Oversight Board has conceded this argument.

### IV.   OVERSIGHT BOARD CANNOT USE PRIVILEGE CLAIMS TO PREVENT SCRUTINY OF MR. SHANKWEILER'S OPINION

18.     The Committee and the Oversight Board agree that "the Committee is allowed to

know what facts, data, and assumptions were used in Mr. Shankweiler's estimation of the

general unsecured claims."  Opp'n ¶ 32.  But because the Oversight Board has repeatedly refused

to produce such "facts, data, and assumptions," Mr. Shankweiler's opinion is inadmissible and

should be excluded.

19.     The Oversight Board claims that such information has been disclosed "in the

Disclosure Statement and in discovery."  Opp'n ¶ 32.  But the discussion in the Disclosure

Statement [Dkt. 3297] is only three pages,[8] and it provides nothing more than a general overview

of the claims that make up the GUC pool, with no real analysis or explanation.  *See* Disclosure

Statement at 55-57.  The absurdity of the Oversight Board's reliance on the Disclosure Statement

is made manifest by reviewing, as an example, the discussion of the UTIER Grievance claims.

In support of its estimate that the ***$1.1 billion*** of asserted claims against PREPA, across ***26,000***

individual grievance claims, should have an allowed amount of ***$230 million***, the Oversight

Board proffers ***a single, five-sentence paragraph***.  *Id*. at 56.  Three pages is simply not enough

to justify the value of thousands of claims with an asserted value of billions of dollars.

20.     The Oversight Board's claim that the information has been disclosed "in

discovery" is simply false.  The Committee has not identified anything produced by the

Oversight Board that would substantiate Mr. Shankweiler's estimate of the GUC pool.  And if

the Oversight Board had produced such information, then surely it would have attached such

documents to the Opposition, or at least referenced them by title or bates number.  The Oversight

Board has not cited to any such documents because they simply do not exist.

21.     Essentially conceding that it has failed to produce the information it is obligated

to produce, the Oversight Board returns to its fallback argument that the Committee is "not,

---

[8] Oddly, the Oversight Board repeatedly emphasizes the length of the discussion in the Disclosure Statement
throughout the Opposition.  *See* Opp'n ¶ 7 (noting section is "approximately 3 pages"); *id.* at 7 n.6 ("several
pages"); *id.* ¶ 34 ("several pages").

however, entitled to the privileged documents and communications on which those ***assumptions***
are based." Opp'n ¶ 32 (emphasis added). This argument should be rejected. First, the
Oversight Board recognizes that the "facts or data" on which Mr. Shankweiler established his
opinion are not protected by any privilege, and thus should have been produced. Second, neither
the Oversight Board nor Mr. Shankweiler have identified any assumptions that were made in
arriving at the $800 million estimate. Third, the Oversight Board cites to no authority to support
its contention that it can withhold "documents and communications on which those assumptions
are based." *Id*.

22.    Moreover, the legal analyses that the Oversight Board's and PREPA's lawyers
have done to estimate the asserted amount of the GUC pool are not "assumptions"—they are the
actual opinions themselves. The Oversight Board's own cases demonstrate how its argument
twists the meaning of the word "assumption." In *The Campbell* (cited by the Oversight Board at
Opp'n, at 14 n.13), the expert assumed that Plaintiffs were working during the relevant
"uncompensated time" logged in the timekeeping platform. 2021 WL 826899, at *3. The court
held this was permissible because the expert was "not providing expert testimony as to the
factual question of whether Plaintiffs were in fact working during these hours, but to the extent
of the damages owed ***in the event that Plaintiffs prevail on that claim***." *Id*. (emphasis added).
Here, the $800 million estimate provided by Mr. Shankweiler does not represent what would
happen assuming the claimants prevailed, but what is purportedly "in fact" the correct allowed
amount of the unsecured claims asserted against PREPA.

23.    The Oversight Board's other attempts to justify withholding the documents that
form the basis of Mr. Shankweiler's testimony are irrelevant or otherwise wrong. The Oversight
Board argues that the "Committee certainly does not represent unallowable claims," and "[i]t

should have the same concerns as PREPA to make sure unallowable claims are not compensated under the plan of adjustment." Opp'n ¶ 33. It is hard to see how this statement is at all relevant to the Committee's motion to exclude the Oversight Board's expert regarding an estimate of the GUC pool, as excluding Mr. Shankweiler's opinion will not change which claims are allowable and which are not. It is in all of the Committee's constituents' interest to exclude Mr. Shankweiler's testimony, and therefore undermine an unsubstantiated and likely artificially low estimate of the GUC pool.

24. The Oversight Board also notes that Mr. Shankweiler did not tender an expert report. But the Committee's motion to exclude Mr. Shankweiler's testimony is not based on his failure to provide a report. It is based on, *inter alia*, the Oversight Board's failures to show Mr. Shankweiler's qualifications, as well as the Oversight Board's withholding of the facts, data and assumptions supporting the estimate for the GUC pool—problems that the Oversight Board could have tried to address in an expert report.

25. Finally, the Oversight Board claims that the Committee "neglected to ask questions regarding the specific legal assumptions provided by counsel." Opp'n ¶ 35. But just two paragraphs earlier, the Oversight Board states that it "has disclosed those facts, data, and assumptions in the Disclosure Statement and in discovery." *Id*. ¶ 33. The Oversight Board therefore appears to suggest that it is hiding ***additional*** assumptions that counsel provided to Mr. Shankweiler that have not been disclosed in the Disclosure Statement and discovery (*i.e.*, through documents or Mr. Shankweiler's testimony). If true, then this is yet one more reason why Mr. Shankweiler should be precluded from testifying.

[*Remainder of page intentionally left blank*]

## CONCLUSION

WHEREFORE the Committee respectfully requests the Court grant the Motion and

exclude the expert testimony of Mark Shankweiler.

Dated: June 20, 2023                        */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*


*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC – PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC – PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

13