UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | PROMESA Title III |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : | (Jointly Administered) |
| Debtors.[1] | : | |

---

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | PROMESA Title III |
| as representative of | : | Case No. 17-BK-4780 (LTS) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | : | |
| Debtors. | : | |

---

---

1. The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

                                                                                                      **Page**

REPLY AND SUPPORTING MEMORANDUM OF LAW .................................................. 1

    A.  The Oversight Board Avoids the Key Issue Implicated by the Motion with a Series of Uncompelling Diversions ........................................................................................ 2

    B.  The Motion is Not Premature ................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*ACQIS, LLC v. EMC Corp.*,
   14-CV-13560, 2017 WL 2818984 (D. Mass. June 29, 2017) ...................................... 8, 11

*Air Prods. & Chems. v. Airgas, Inc.*,
   2011 WL 284989 (Del. Ch. Jan. 20, 2011) ................................................................... 8

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ........................................................................................ 5

*Columbia Pictures Television, Inc. v. Krypton Broad of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ...................................................................................... 8

*Cox v. Adm'r U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir. 1994) ...................................................................................... 5

*Hasbro, Inc. v. Sweetpea Entm't, Inc.*,
   CV133406, 2014 WL 12561624 (C.D. Cal. Mar. 18, 2014) ............................................. 4

*In re Symbol Techs., Inc. Sec. Litig.*,
   CV053923, 2017 WL 1233842, at *16 (E.D.N.Y. Mar. 31, 2017) ................................... 5

*In re von Bulow*,
   828 F.2d 94 (2d Cir. 1987) ........................................................................................... 8

*Luxottica Group S.p.A. v. Liquidity Services, Inc.*,
   CV 18-7821-FMO (RAO), 2019 WL 2620727 (C.D. Cal. May 24, 2019) ....................... 8

*Marathon Ashland Pipe Line LLC v. Maryland Gas. Co.*,
   243 F. 3d 1232 (10th Cir. 2001) ................................................................................... 4

*Swidler & Berlin v. United States*,
   524 U.S. 399 (1998) ..................................................................................................... 8

*United Realty Advisors, LP v. Verschleiser*,
   14-CV-5903(JGK), 2019 WL 4889420 (S.D.N.Y. Oct. 3, 2019) .................................... 13

*United States v. Tartaglione*,
   228 F.Supp.3d 402 (E.D. Pa. 2017) ............................................................................ 13

*United States v. Tsarnaev*,
   968 F.3d 24 (1st Cir. 2020) ......................................................................................... 12

*United States v. Workman*,

138 F.3d 1261 (8th Cir. 1998) ........................................................................................ 8

*William F. Shea, LLC v. Bonutti Research, Inc.*,

No. 2:10-CV-00615-GLF, 2013 WL 2424382  (S.D. Ohio June 4, 2013) ...................... 13

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
REPLY CONCERNING ITS MOTION [D.E. 3580]² *IN LIMINE* TO PRECLUDE
TESTIMONY FROM DAVID BROWNSTEIN AND DAVID SKEEL AT THE
CONFIRMATION HEARINGS AS TO MATTERS OVER WHICH THE
OVERSIGHT BOARD ASSERTED PRIVILEGE DURING THEIR DEPOSITIONS**

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (the "Committee")³ files this reply to the opposition [D.E. 3745] ("Opposition") of the Oversight Board⁴ to the Committee's *Motion* In Limine *to Preclude Testimony from David Brownstein and David Skeel at the Confirmation Hearings as to Matters Over Which the Oversight Board Asserted Privilege During Their Depositions* [D.E. 3580] (the "Motion"). In further support, the Committee respectfully states as follows:

**REPLY AND SUPPORTING MEMORANDUM OF LAW**

The Motion and Opposition appear to agree about the fundamental fact relevant to the resolution of the Motion — Messrs. Brownstein and Skeel "were instructed not to answer questions during deposition" and the attorney-client and mediation privileges were raised to prevent testimony.⁵ The issue is whether the Oversight Board should be prevented from introducing evidence at Confirmation Hearing that it maintained was privileged and should not be disclosed. The Committee maintains that the Oversight Board should be so prohibited. The Opposition fails to provide a legitimate basis to contravene the basic laws of evidence and other doctrines applicable to the assertion of privilege.

---

2. Docket references contained herein refer to the docket for Case No. 17-4780 unless otherwise specified.
3. The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.
4. Capitalized terms not otherwise defined in this reply are intended to have the meanings ascribed to such terms in the Motion.
5. *See, e.g.*, Opposition at 1-2 (acknowledging that "Messrs. Brownstein and Skeel were instructed not to answer questions during deposition"); *see also id.* at 8-10.

The Motion is rooted in rudimentary principles of evidence and fairness that are bedrock values of United States jurisprudence. Simply put, it is expressed as:

> The Oversight Board defensively prevented certain discovery at the depositions of Messrs. Brownstein and Skeel, therefore the Oversight Board cannot offensively use the precluded discovery at the Confirmation Hearing to prove its case.

The Oversight Board makes two fundamental arguments in response: (1) that the mediation and attorney-client privileges and this Court's order on mediation confidentiality support its position; and (2) that the Motion is premature. These arguments fall flat and side-step the applicable authorities raised in the Motion.

### A. The Oversight Board Avoids the Key Issue Implicated by the Motion with a Series of Uncompelling Diversions

The Motion presents a straightforward question of law: Can the Oversight Board introduce evidence at the Confirmation Hearing that it blocked from discovery through the assertion of mediation or attorney-client privileges? The Opposition does not directly address this issue or the Committee's arguments. Instead, it uses straw men, red herrings, and unfounded accusations to detract from the lack of substance in their arguments.

**First**, in its Opposition, the Oversight Board conflates its asserting of the "mediation privilege" with this Court's *Order Establishing the Terms and Conditions of Mediation* [D.E. 2773] ("Mediation and Confidentiality Order") to concoct some justification for its repeated instructions that the witness not answer. At the depositions of Messrs. Brownstein and Skeel, the Oversight Board objected on the basis of the mediation privilege. The Committee has not located an instance where, as the Oversight Board now represents, its counsel instructed the witnesses not "to divulge information in contravention of the Court's Mediation [and Confidentiality] Order." Opposition at 9-10.

2

Looking to the specific citations provided by the Oversight Board,[6] neither of the Oversight Board's attorneys invoke the Court's order (or even use the word "order" at all). *See, e.g.*, Opposition, Ex. 1, Skeel Dep. 250:13-251-19 (instructing not to answer on the basis of invading the "mediation process"); *id.* at 296:8-296:15; *id.* at 296:8-15 (instructing witness and contending that the progress or discussions or efforts towards settlement "are not admissible or appropriate, whether in the mediation context or otherwise under Rule 408"); *id.*, Ex. 2, Brownstein Dep. Tr. 89:21-24 (no mention of any order); *id.* at 91:17-94:9 (instructing not to answer on basis of "mediation confidentiality" and "mediation privilege" without reference to any order); *id.* at 144:5-144:18 (witness could not answer "due to mediation privilege" in response to question concerning the reasonableness of National settlement). Similarly, the relevant expert disclosures do not provide that testimony would be in conformity with this Court's Mediation and Confidentiality Order. *See, e.g.*, Opposition at 6, ¶ 16 ("Mr. Brownstein is expected to testify concerning the National PSA and the Fuel Line Lenders PSA. Mr. Brownstein is expected to testify, **to the extent consistent with mediation privilege**, as to the nature of the negotiations . . . ." (emphasis in original)).

In either event, neither the mediation privilege nor the Mediation and Confidentiality Order support the Oversight Board's effort to shield evidence from discovery but then use it as a sword at the Confirmation Hearing. The Oversight Board claims that the "mediation privilege" — which was the actual objection at deposition — is a privilege that it cannot unilaterally waive because it is shared by all the mediation parties. *See* Opposition at 11. Notably, no other party to the mediation ever objected at the depositions on the basis of

---

6. Skeel Dep. Tr. 250:16-20, 252:8-9, 296:8-15; Brownstein Dep. Tr. 89:21-24; 91:17-94:9; 145:22-146:5.

privilege; nor did the Oversight Board indicate that it was objecting on behalf of all parties. But irrespective of that fact, if a mediation privilege enjoyed by all parties to the mediation did apply, then that same privilege would necessarily preclude using that testimony at the Confirmation Hearing and the Oversight Board cannot unilaterally waive it now.

Realizing the infirmity of the "mediation privilege" to support its position, the Oversight Board wants to entirely recharacterize it as an objection that it never raised at deposition — adherence to this Court's Mediation and Confidentiality Order. This is a classic straw man argument. But the argument still fails. If that Order prohibited Messrs. Skeel and Brownstein from testifying on certain issues at deposition, then that same order would preclude that testimony at the Confirmation Hearing. Either one of the Oversight Board's arguments supports excluding testimony at the Confirmation Hearing that it instructed its witnesses not to answer at deposition.

The Oversight Board's suggestion that it could still waive the attorney-client and mediation privileges at the Confirmation Hearing if it wanted to[7] fares no better. *See, e.g.*, *Marathon Ashland Pipe Line LLC v. Maryland Gas. Co.*, 243 F. 3d 1232, 1253 (10th Cir. 2001) (confirming that a party "may not enter anything into evidence at trial concerning matters about which it claimed a privilege"). In fact, it is the precise sort of trial-by-ambush gamesmanship that the sword-and-shield concept (and related notions of implied waiver) prevent. *See, e.g.*, *Hasbro, Inc. v. Sweetpea Entm't, Inc.*, CV133406, 2014 WL 12561624, at *2 (C.D. Cal. Mar. 18, 2014) (ruling that, under shield-and-sword principles, courts have discretion to bar a party from testifying at trial as to matters "claimed to be privileged during

---

7. *E.g.*, *id.* at 2, 11.

deposition" and noting that courts may "fashion remedies to prevent <u>surprise and unfairness</u>" (internal quotations omitted) (emphasis added) (quoting *Columbia Pictures*, 259 F.3d at 1196); *In re Symbol Techs., Inc. Sec. Litig.*, CV053923, 2017 WL 1233842, at *16 (E.D.N.Y. Mar. 31, 2017) (discussing the interrelationship between sword-and-shield concept and notions of implied waiver and fundamental notions of fairness implicated by them); *cf. id.* ("Thus, it matters not whether the nine memoranda are ultimately admissible or whether Plaintiff would attempt to make use of these memoranda at trial. Rather, the focus at this stage is concerned with whether plaintiffs are attempting to use the report as both a sword and a shield by using the privilege to prejudice defendants' case or to disclose some selected communications or documents for self-serving purposes" (internal quotations omitted)).[8]

**Second**, the Oversight Board has squarely identified, and put "at issue," those matters on which its witnesses may testify at the Confirmation Hearing, which makes those matters discoverable at deposition. *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) (notions of waiver and fairness require introduction of evidence where party places evidence at issue); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("[A]ttorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.") (internal quotation marks omitted).

---

8     The *Hasbro* and *Symbol* cases demonstrate how closely the relief sought in the Motion and issues of implicit waiver are connected. For instance, in *Hasbro*, the court emphasized that the shield-and-sword concept is generally applied to find that parties waive privilege, the "same fairness concerns" warranted the limitation of testimony. 2014 WL 12561624 at *2.

5

Specifically, the Oversight Board has said Messrs. Brownstein and Skeel may testify at the confirmation hearing as to, among other matters:

(a) "[T]he negotiation of the" National and Fuel Line Lender PSAs and the "benefits of those settlements." Opposition at 5-6 (citing Brownstein expert disclosures) (emphasis added).

(b) The basis for the releases and professional fees provided in connection with those settlements.

(c) PREPA's plan's compliance with § 314 of PROMESA and the various confirmation issues under §§ 1122, 1123, 1128, and 1129 of the Bankruptcy Code. *Id.* at 4-5 (citing the Oversight Board's preliminary fact witness list and matters about which Mr. Skeel may testify).

(d) The reasonableness and propriety of the various PSAs and settlement agreements in the plan. *Id.* (citing the Oversight Board's preliminary fact witness list and matters about which Mr. Skeel may testify)

At the same time, the Oversight Board and its witnesses precluded the Committee and others from obtaining deposition testimony directly related to these matters. By way of example, the following questions, without limitation, were left unanswered:

(a) "[A]re you aware of any reason why a fuel line lender's claim would have a greater legal entitlement to payment from PREPA as compared to another general unsecured claim that is also a current expense claim?" *See* Motion, Ex. 2, Skeel Dep. Tr. 330:25-335:7 (emphasis added).

(b) "What is the basis on which the settlement with National is in your view reasonable when all PREPA bondholders were being offered a 50 percent exchange ratio under the plan of adjustment?" Motion, Ex. 1, Brownstein Dep. Tr. 141:17-142:25 (emphasis added).

(c) "What is the basis on which you plan to testify that the National settlement is fair and reasonable when all PREPA bondholders were offered only a 50 percent exchange ratio under the plan of adjustment?" Opposition, Ex. 2, Brownstein Dep. Tr., 142:10-144:18 (emphasis added).

(d) "Was that package of terms [of the National treatment] the one that was offered to all PREPA bondholders under the plan of adjustment?" *Id.* at 149:7-151:4 (emphasis added).

6

(e) "How many rounds of back-and-forth proposals and counterproposals were there [concerning the fuel line lenders settlement]?" Motion, Ex. 1, Brownstein Dep. Tr. 91:6-91:19.

The Oversight Board has already shielded the Committee and others from completely exploring each of these matters. Principles of fundamental fairness demand that the Oversight Board not be permitted to offer testimony on these same matters at trial.

**Third**, the Oversight Board creates another straw man argument contending that it was entirely appropriate to prevent the Committee (and others) from obtaining relevant testimony because the underlying questions triggered "applicable privileges." (*See* Motion at 8, Part I). But that is not the argument nor the basis of the motion *in limine*. The issue is not whether the Oversight Board was entitled (or required) to "preserve" its privileges. Rather, the point is that having elected to assert the mediation privilege in respect of various inquiries made at the depositions of Messrs. Brownstein and Skeel, the Oversight Board cannot use testimonial evidence at the Confirmation Hearing that it blocked from discovery at those depositions.

Precisely none of the various authorities describing the mediation and attorney-client privileges cited in the Opposition addressed whether a court should permit a party to introduce evidence in a proceeding that it previously prevented an opposing party from

7

accessing in discovery. (*e.g.*, *Swidler & Berlin*,[9] *ACQUIS, LLC*,[10] *Luxottica Grp. S.p.A*,[11] *Bulow*[12]). The Oversight Board's argument in Part I of its Opposition does not focus on the shield-and-sword issues that are the crux of the Motion.

Courts addressing the sword versus shield issue necessarily go beyond the threshold issue of whether a privilege was "applicable" and analyze whether evidence that was protected by an asserted privilege can be used later at, for example, a trial or hearing. *See, e.g.*, *United States v. Workman,* 138 F.3d 1261, 1264 (8th Cir. 1998) (defendant could not selectively assert the attorney-client privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with his attorney for his own benefit); *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (party could not deny discovery and then use that very discovery through its expert); *see also Air Prods. & Chems. v. Airgas, Inc.*, 2011 WL 284989, at *3 (Del. Ch. Jan. 20, 2011) (providing that courts addressing the "sword and shield" concept "have precluded a party from shielding evidence from an opposing party and then relying on the evidence at trial to meet its burden of proof on an issue central to the resolution of the parties' dispute"); *Columbia Pictures Television, Inc. v. Krypton Broad of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001)

---

9. In *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998), prosecutors attempted to subpoena a decedent's law firm for records relating to the firm's meetings with the decedent. *Id.* at 402-03. Prosecutors sought to use those records in a criminal investigation against a third party. The Court considered whether the attorney-client privilege survived death to bar production. *See id.*
10. In *ACQIS, LLC v. EMC Corp.*, 14-CV-13560, 2017 WL 2818984 (D. Mass. June 29, 2017), the defendant sought to compel production of certain settlement communications and challenged the breadth of the plaintiff's asserted mediation privilege. *See id.* at *1. Based on the record before it, the court could not "conclude that [the records were] protected." *Id.* at *2.
11. In *Luxottica Group S.p.A. v. Liquidity Services, Inc.*, CV 18-7821-FMO (RAO), 2019 WL 2620727, (C.D. Cal. May 24, 2019), the court actually <u>denied</u> a party's motion for protective order after the opposing party sought to depose the party's in-house counsel. *Id.* at *2.
12. In *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987), the Second Circuit reviewed whether the publication of confidential communications in the book of a party's attorney constituted a waiver of the attorney-client privilege.

(applying the "sword and shield" concept and noting that "the court may fashion remedies to prevent surprise and unfairness to the party seeking discovery"). Accordingly, Oversight Board may not preclude discovery parties from accessing evidence and later rely on that evidence at the Confirmation Hearing, irrespective of whether any assertion of privilege was appropriate *ab initio*.

**Fourth**, the Oversight Board's contention that the Committee unfairly presented the depositions of Mr. Brownstein and Mr. Skeel (*see* Opposition at 12, Part III) is nothing more than a diversionary tactic to lessen the focus on its lack of substantive argument. The Oversight Board claims that Mr. Brownstein and Mr. Skeel "testified exhaustively as to the facts and bases for their positions"[13] and both provided "extensive testimony" that does not "disappear" because of the assertion of privilege.[14] But, of course, the Motion is not about the curated narrative that Mr. Brownstein, Mr. Skeel, and the Oversight Board provided at their depositions. The Motion is about the testimony that the Oversight Board blocked from disclosure through assertions of the mediation and attorney-client privileges after putting those exact topics at issue. Obviously, the Committee does not request the Court to limit trial testimony that was not subject of privilege or an instruction not to answer during the deposition.

The *Bakst v. Cmty. Mem'l Health Sys., Inc.*, CV0908241, 2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) case exemplifies why the Oversight Board's assertions are a distraction. There, the plaintiff had questioned the defendant's witnesses about certain meetings that occurred with an internal investigation undertaken by the defendant. *Id.* at *27. Because

---

13. Opposition at 2.
14. *Id.* at 12-13.

lawyers were present at the meetings, the defendant's attorneys directed the witnesses to invoke the attorney-client privilege. The plaintiff moved, among other things, to preclude the defendant from "waiving the privilege now" and "having its witnesses testify on these subjects." *Id.* Like the Oversight Board here, the defendant did not actually "dispute the basic premise" of the motion, but instead argued that the plaintiff was attempting to preclude it from offering other broader categories of evidence. *See id.* at *27-29. The court rejected the defendant's characterizations, did not interpret the motion so "broadly," and found that the plaintiff "merely seeks to preclude [defendant] from offering evidence concerning [its attorney's] investigation and conversations that occurred during the [subject] meetings." *Id.* Indeed, the court found that the defendant could introduce other broader categories of evidence so long as "they were disclosed during discovery." *Id.* at *29-30. As in *Bakst*, the Committee is not seeking to preclude the Oversight Board from admitting evidence that it in fact disclosed in discovery. Rather, the Committee moves to preclude the Oversight Board from introducing testimony it specifically withheld through assertions of privilege.

**Fifth**, the Oversight Board states, in passing, that a motion to compel was not filed on their attorneys' instructions not to answer.[15] As with their other arguments, this straw man argument misses the point as well. The Oversight Board had the (tactical and strategic) choice of invoking privileges and, at the same time, not offering evidence on the subject matter of the blocked evidence. The Committee is not seeking to compel testimony of (allegedly) privileged information; it is simply holding the Oversight Board to its tactical

---

15. *E.g.*, Opposition at 8.

10

and strategic choice and ensuring the Oversight Board does not offer evidence at the Confirmation Hearing that was subject to privilege.

**Sixth**, even if the Court were inclined to credit the Oversight Board's view, the Opposition's own authorities suggest that the Oversight Board's use of the mediation privilege was overbroad and improper. For example, the Oversight Board cited the *ACQIS* decision, which did note that communications "to which a mediator was personally privy" or undertaken with the specific intent to present them to a mediator for purposes of mediation may be protected. 2017 WL 2818984 at *1-2. But, the *ACQIS* court made an important caveat in the very next sentence:

> Settlement negotiations in which a mediator is not actively and directly involved that follow a formal mediation are not protected by the mediation privilege, even when they contain information learned during the mediation or where they occurred in light of mediation, and such communications must therefore be produced barring any other applicable rules. See [Folb v. Motion Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1178 (C.D. Cal. 1998), aff'd, 216 F.3d 1082 (9th Cir. 2000)] (holding that "any post-mediation communications are protected only by Rule 408's limitations on admissibility").

*Id.* at *2 (emphasis added). Against this guidance — that the Oversight Board itself cited — it is apparent that the Oversight Board has blocked the Committee and others from discovery that is outside the scope of any mediation privilege. This is apparent from Mr. Brownstein's testimony itself. At deposition, Mr. Brownstein testified that his conception of the mediation privilege would apply to negotiations, proposals, counterproposals and other communications between the mediating parties during the "mediation process," irrespective of if it was during a mediation session. (Motion, Ex. 1, Brownstein Dep. Tr. 354:6-356:19). He defined the "mediation process," as the period that commenced with the "first mediation" until an impasse or settlement. (*Id.* at 356:6-13). He further testified that "any negotiations

11

with creditors, any proposals made to them, any responses we receive from them in the mediation process" would "remain privileged." (*Id.* at 355:3-10).

## B. The Motion is Not Premature

The Oversight Board requests denial of the Motion because Messrs. Skeel and Bronstein "might" testify concerning matters to which those witnesses invoked the attorney-client or mediation privileges, arguing that the Committee is addressing a "purely speculative scenario." [16] This argument, too, fails for several independent reasons.

**First**, any motion *in limine* necessarily involves the Court's pre-trial (or pre-hearing) evaluation of the admissibility of evidence; at this juncture, using the Oversight Board's conception, *all* testimonial evidence would be "speculative" before it "might" be introduced. After all, term *in limine* connotes "at the outset" such that motions *in limine* are "raised preliminarily" especially "because of an issue about the admissibility of evidence believed by the movant to be prejudicial." *See United States v. Tsarnaev*, 968 F.3d 24, 65 n.39 (1st Cir. 2020) (citing In-Limine, Black's Law Dictionary (11th ed. 2019)) *rev'd on other grounds*, 212 L. Ed. 2d 140 (2022). Clear guidance from the Court regarding evidence that "might" be offered by the Oversight Board, whether through declarations or other means, "should" be offered at all will benefit all parties. If granted now, the apparent forthcoming written testimony of Mr. Brownstein and Mr. Skeel would benefit from clear evidentiary guideposts and could be adjusted to avoid these evidentiary pitfalls. The wait-and-see approach pushed by the Oversight Board is also inconsistent with the Court's confirmation schedule (as revised), which required parties to submit motions in *limine* by June 20 — well

---

16. *See* Opposition at 10, Part II.

12

in advance of any testimonial submissions by the Oversight Board. The Court's schedule *does not* provided for the filing of additional *in limine* motions. *See, e.g.*, D.E. 3565; 3586

The Oversight Board's "kick the can down the road" type argument ignores the fact that the Oversight Board has framed the matters "at issue" in their own witness lists and expert disclosures, and has chosen to block certain testimony from disclosure (and for the Committee's preparation for, and use at, the Confirmation Hearing). Accepting the Oversight Board's argument that the threshold shield-and-sword issue should be resolved later through an *ad hoc* process is inconsistent with the very function of motions *in limine* and the interests of judicial economy and evidentiary clarity served by them. *See, e.g.*, *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017) ("The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.").

**Second**, this is not a situation where evidence may or may not be admissible based on how it is introduced at the Confirmation Hearing. *Compare United Realty Advisors, LP v. Verschleiser*, 14-CV-5903(JGK), 2019 WL 4889420, at *3 (S.D.N.Y. Oct. 3, 2019) (rejecting notion that motion *in limine* was "premature" where there was no basis to introduce evidence), *with William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-CV-00615-GLF, 2013 WL 2424382, at *1-2 (S.D. Ohio June 4, 2013) (denying motion in *limine* that sought to preclude plaintiffs' experts "from testifying to (1) legal conclusions concerning disputed contracts and (2) personal views on the weight of the evidence" because such categories of evidence "may or may not be admissible based on how it is introduced or stated at trial"). Rather, there is no scenario in which testimony by Messrs. Brownstein and

13

Skeel concerning matters that were previously shielded from discovery should be admitted at the Confirmation Hearing.

**Third**, and relatedly, the Oversight Board's prematurity argument is entirely inconsistent with its own confidentiality arguments. If the Mediation and Confidentiality Order prohibits certain testimony, then that is the end of the inquiry because such information is prohibited until the Court vacates or modifies that order.[17] According to that position, the Oversight Board cannot use the information at all, so it could never be the basis of testimony and such an objection could not be premature as to a court-prohibited occurrence.

**WHEREFORE**, the Committee respectfully requests that the Court overrule the Opposition to the Motion, and grant the relief requested in that Motion, as well as any other such relief as the Court deems just and proper.

---

17. Notably, the Court's Mediation and Confidentiality Order is not identified in the Expert Disclosure nor does that disclosure indicate the Debtor would seek relief from the Order to permit certain testimony.

14

| | |
|---|---|
| Dated: June 20, 2023 | */s/ John Arrastia* |

John Arrastia, Esq. (Pro Hac Vice)
Jesus M. Suarez, Esq. (Pro Hac Vice)
Angelo M. Castaldi, Esq. (Pro Hac Vice)
CONTINENTAL PLLC
255 Alhambra Cir, Suite 640,
Miami, FL 33134
Tel: (305) 677-2707
jarrastia@continentalpllc.com
jsuarez@continentalpllc.com
acastaldi@continentalpllc.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*