# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>Re: ECF No. 24050 |

***INTERNATIONAL TRAFFIC SYSTEMS, LLC'S RESPONSE TO THE FIVE HUNDRED SEVENTIETH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO CLAIMS FOR WHICH THE DEBTORS ARE NOT LIABLE***

**COMES NOW,** International Traffic Systems, LLC ("ITS"), a creditor, by and through the undersigned legal counsel, and respectfully submits its response to the *Five Hundred Seventieth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, the Employees Retirement Systems of the Government of the Commonwealth of Puerto Rico, the Puerto Rico Highways And Transportation Authority, And Puerto Rico Public Buildings Authority To Claims For Which Debtors Are Not Liable* (the "Objection") filed on April 20, 2023.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

**PRELIMINARY STATEMENT**

Nearly five years after the filing of ITS's Proof of Claim Number 79073 (the "Proof of Claim"), **and almost nine years** after ITS was contracted by the Puerto Rico Highways and Transportation Authority ("HTA") to provide services on the implementation and operation of an automatic traffic control system project (in Spanish "Sistema de Monitoreo Electrónico de Intersecciones y Tránsito," or "SIMONE" for short), the Financial Oversight and Management Board ("FOMB") filed the Objection to seek the disallowance of the Claim without any factual support or legal basis for the same. The Proof of Claim stems from HTA's termination of ITS' validly executed, and registered, contract despite ITS' years-long investment in Puerto Rico, which contract was reneged due to political pressure exerted on HTA by officials from the Government of Puerto Rico. The binding contract provides remedies for ITS in case of termination by convenience by HTA (as occurred here) yet HTA refused to abide by such terms.

From ITS's perspective, the Objection adds another layer of salt to a deeply infected wound. The Government of Puerto Rico used (and abused) ITS as a political pawn and ultimately caused ITS to abandon its operations in Puerto Rico due to the massive losses suffered by ITS because of governmental irresponsibility and recklessness. If the Objection is granted, it would reward the unjustified behavior of the Government of Puerto Rico and HTA. Worse yet, it would have a chilling effect on potential new investors to the Island who may be exploring the possibility of doing business with the Government of Puerto Rico. This behavior cannot stand. ITS has been patiently waiting for its contractual remedy as evidenced in the Proof of Claim, even though it understands that its recovery under the Claim will be limited to the treatment provided in HTA's confirmed plan of adjustment.

For the reasons asserted herein, the Objection should be denied.

**RELEVANT PROCEDURAL BACKGROUND**

1. ITS filed the Proof of Claim on June 29, 2018. *See* Claim Number 79073.

2. On April 20, 2023, Debtors filed the Objection seeking the disallowance of the Proof of Claim on the basis that "[b]ased on a declaration attesting to a reasonable review of the agency's books and records, there are no outstanding liabilities associated with [ITS'] invoices in the agency's system." *See* Dkt. No. 24050-2 at 7.

3. ITS originally had until May 22, 2023 to respond to the Objection. *See* Dkt. No. 24045 at 1. On May 18, 2023, ITS filed an Urgent Motion requesting a thirty-day extension to respond to the Objection until June 22, 2023 (Dkt. No. 24243), which extension was granted by the Court on May 18, 2023. *See* Dkt. No. 24265.

**TIMELINE OF RELEVANT FACTS
IN SUPPORT OF PROOF OF CLAIM**

1. ITS was formed and organized on June 5, 2013 and the Internal Revenue Services assigned ITS with an Employer Identification Number on June 12, 2013. *See* Attachment 1 of **Exhibit A**.

2. On December 26, 2013, the Puerto Rico General Services Administration's Unique Registry of Bidders issued Certificate of Eligibility No. 0262 to ITS. Attachment 2 of **Exhibit A**.

3. On December 30, 2013, HTA and ITS executed a "Services Contract (Contract Number 2014-000182)" (the "Contract"). HTA was represented by the Secretary of the Department of Transportation and Public Works ("DTOP"), Mr. Miguel A. Torres Díaz ("Mr. Torres Díaz") and the Executive Director of HTA, Mr. Javier E. Ramos Hernández ("Mr. Ramos

3

Hernández"). ITS was represented by its Authorized Director, Mr. Jonathan Miller ("Mr. Miller"). *See* Attachment 3 of **Exhibit A**.[2]

4. On December 20, 2013, HTA issued a Certification of Funds for the Fiscal Year 2013-2014 stating that the contract with ITS does not necessitate disbursement of funds. *See* Attachment 4 of **Exhibit A**.

5. The Contract was remitted to the Puerto Rico Office of the Comptroller, and, on January 14, 2014, the Comptroller's Office issued a confirmation of receipt of the Contract. *See* Attachment 5 of **Exhibit A**.

6. On February 3, 2014, the Puerto Rico Treasury Department issued a Merchant's Registration Certificate for ITS. *See* Attachment 6 of **Exhibit A**.

7. On April 30, 2014, ITS presented an Update for Proof of Concept of Pilot to DTOP. *See* Attachment 7 of **Exhibit A**.

8. On June 15, 2014, DTOP issued its final Summary Report for the Intelligent Traffic System Proof of Concept. From that date onward, the Proof of Concept was deemed "qualified." *See* Attachment 8 of **Exhibit A**.

9. On June 24, 2014, ITS provided a status update on the project where, among other things, it stated that in order for SIMONE to work, the government needed to do three things: (i) regulate, enablement, and sign-off on the SIMONE project; (ii) ITS getting paid because the bank account for the project was still not fully established at the time; and (iii) provide more data to ITS such as driver's data. *See* Attachment 9 of **Exhibit A**.

10. On June 27, 2014, ITS sent an e-mail to DTOP and related parties regarding remaining action items and reiterating that the sign-off for SIMONE was still pending. *See*

---

[2] Unless stated otherwise, communications sent by ITS to relevant parties will have been sent by Mr. Miller in representation of ITS.

4

Attachment 10 of **Exhibit A**. Likewise, there are additional e-mail chains from June 29, 2014 documenting ongoing issues with data collection from DTOP and with driver information requests and government plates (among other information) as well as status of signs at PR Road No. 177. *See* Attachment 11 of **Exhibit A**.

11. On July 1, 2014, ITS and DTOP met and established action items for each party. Notably, DTOP had as an action item to "sign proof of concept doc so that next phase can begin". *See* Attachment 12 of **Exhibit A**.

12. On July 2, 2014, ITS sent multiple e-mails related to the action discussed in the July 1st meeting stating that the Commonwealth government confirmed that there is no other initiative of any kind regrading speed or red-light camera units planned or that will be supported other than SIMONE, and stating the they have a list of final candidate sites to implement the project. The e-mail also discussed speed limits in school zones. The e-mail chain also included an additional note stating that "Target Sign / go Live Date: Thursday, July 3. DTOP to advise if/ how much this is postponed but to work to ensure it happens very quickly." *See* Attachment 13 of **Exhibit A**.

13. On July 14, 2014, DTOP issued a sign off sheet for the proof of concept signed by HTA Technical Representative, Mr. Hermán López, HTA Financial Department Representative, Mr. César Gandiaga, Legal Department Representative, Mrs. Yasmin M. Santiago Zayas, ITS Representative, Mr. Miller and Chief Information Officer, José L. Pabón Venegas. *See* Attachment 14 of **Exhibit A**.

14. On July 22, 2014, HTA (represented by Mr. Ramos Hernández), ITS (represented by Mr. Miller), and Banco Popular de Puerto Rico ("BPPR") (represented by Mr. Hector Rivera Rivera)*,* executed an Escrow Agreement wherein HTA and ITS declared their intent to establish a

5

special escrow account with BPPR acting as Escrow Agent in the name of HTA to receive the payment of the fines initiated on its behalf by ITS under the SIMONE project. To wit, the Escrow Agreement states that HTA wishes for the Escrow Agent to provide monthly distributions of the funds in the account to HTA and ITS per the terms set forth in the agreement. Further, the Escrow Agent (BPPR) was instructed to segregate the monthly deposits for payments to HTA and ITS as per instructions to be provided by HTA. It also stated that payment must be made to both entities simultaneously. *See* Attachment 15 of **Exhibit A**.

15. On July 23, 2014, there was a meeting between DTOP and ITS which included, among other items on the agenda, a public announcement from the Governor, the Escrow Account and Banco Popular Offer status, status for implementation of installations, and support documents for fines for the past two months. *See* Attachment 16 of **Exhibit A**.

16. On September 30, 2014, DTOP sent to ITS the rules (referred to as "*Business Rules*") which will apply to the SIMONE project and how it issues fines. Notably, this document was signed by Mr. Torres Díaz and Mr. Ramos Hernández as well as agreed to and accepted by Mr. Miller. *See* Attachment 17 of **Exhibit A**.

17. On September 30, 2014, HTA sent a letter to ITS stating that ITS had been contracted to operate the traffic system and informing of the designation of Juan O. Fontánez Colón and Angel L. Colón Nieves as part of the ITS's operations team for the issuance and review of notifications of fines. *See* Attachment 18 of **Exhibit A**.

18. A meeting was held between DTOP, HTA and ITS on October 2, 2014 where some of the topics discussed included: the upcoming intersections of the SIMONE project so that new equipment can be ordered; Mr. Miller informed that ITS would have a website to deposit all SIMONE information and will provide an access code to the team members; ITS agreed to develop

6

a schedule for the program for the next meeting; the HTA traffic office stated it would develop the drawing for pavement markings and signage at intersections under SIMONE; HTA traffic office would inform which intersections need as-builds and will mark which ones correspond to HTA and which ones are assigned to ITS and ITS will present to HTA traffic office an Intersection Condition Report and which will include a certification of the cameras. *See* Attachment 19 of **Exhibit A**.

19. On October 3, 2014, another meeting was held and attended by DTOP, HTA and ITS representatives regarding SIMONE. *See* Attachment 20 of **Exhibit A**.

20. On November 6, 2014, a meeting was held and attended by DTOP, HTA, ITS and GATSO USA (staff which dealt with the processing side) representatives regarding photographic fines. *See* Attachment 21 of **Exhibit A**.

21. On December 23, 2014, HTA sent a letter to ITS regarding the SIMONE Operational Rules During the Academic Recess. *See* Attachment 22 of **Exhibit A**.

22. On January 1, 2015, HTA sent another letter to ITS regarding the SIMONE Operational Rules during the Academic Recess and regarding the start of the school year and when the fines for speeding in school zones shall take effect. *See* Attachment 23 of **Exhibit A**.

23. On January 7, 2015, HTA sent a letter to ITS referencing the approved business rules on October 1, 2014 between HTA and ITS and HTA's request that registration period with DTOP's DAVID+ systems be increased to fifteen (15) days. *See* Attachment 24 of **Exhibit A**.

24. On January 14, 2015, HTA, in a letter signed by Mr. Ramos Hernández, stated that "after an intense evaluation of the progress of the Pilot Project for the automatic traffic control system . . . **[HTA] has determined that is in its best interest to terminate the project and therefore contract**." It also stated that in accordance with Clause Eight of the Contract, the

effective date of termination would be February14, 2015. *See* Attachment 25 of **Exhibit A** (Emphasis added).

25. On January 15, 2015, ITS sent a letter to the then-Governor of Puerto Rico, Mr. Alejandro García-Padilla, detailing the lack of reasons for the termination of the contract and delving into just some of the roadblocks ITS has encountered during the implementation of SIMONE. *See See* Attachment 26 of **Exhibit A**.

26. On January 15, 2015, ITS sent an invoice to DTOP for the first month distribution in the amount of $57,015.00 for ITS's share of High Risk intersection collections. *See* Attachment 45 of **Exhibit A**.

27. On January 16, 2015, ITS responded to HTA's letter stating that it acknowledged receipt of the same on January 16 and that it did not agree with the cancellation of the Contract. *See See* Attachment 27 of **Exhibit A**.

28. On January 21, 2015, the Chairman of ITS, Mr. Andrew Fox ("Mr. Fox"), sent a letter to Mr. Torres Díaz stating his intention to save SIMONE and reiterating the release of the pending funds held in escrow. It also addresses DTOP's refusal to let ITS speak to the press. *See* Attachment 28 of **Exhibit A**.

29. On January 25, 2015, Mr. Fox, sent a letter to Mr. Torres Díaz urging the continuation of the "Marbete" program which would bring in millions in revenue, requested Mr. Torres Díaz to undo the cancellation notice or, at least, cancellation of the moving violations part of SIMONE while continuing with other programs. *See* Attachment 29 of **Exhibit A**.

30. On February 4, 2015, ITS sent a letter to Mr. Torres Díaz regarding lack of access to view funds in escrow account and explaining that the January distribution of $57,015 was not in compliance with the agreed-upon methods. Likewise, it repeated that the escrow account

survives the contract termination and thus ensured ITS' 45% share for citations issued. Lastly, it alerted as to DTOP's cancellation of the traffic violation citations without authority or cause. *See* Attachment 30 of **Exhibit A**. [3]

31. On February 4, 2015, Attorney Teresa Jimenez Melendez, on behalf of ITS, sent a letter to Mr. Torres Díaz regarding the cancellation the Contract and advanced that DTOP should anticipate legal action if the Contract is not honored. Lastly, she requested DTOP preserve all documents related to the SIMONE cancellation. *See* Attachment 31 of **Exhibit A**.

32. On February 4, 2015, Mr. Fox emailed Mr. Torres Díaz stating that ITS planned to fire 26 SIMONE staff and requesting DTOP fire the four staff members personally appointed by Mr. Torres Díaz for the operational center but that are paid by ITS. *See* Attachment 32 of **Exhibit A**.

33. On February 11, 2015, Attorney Teresa Jimenez Melendez, on behalf of ITS, sent a letter to DTOP's Legal Counsel, Mrs. Yasmin Santiago, regarding the cancellation for convenience of the Contract and noted that the release of the cancellation to the press violated the Contract since DTOP incorrectly stated that ITS failed to comply with the terms of the Contract. *See* Attachment 33 of **Exhibit A**.

34. On February 15, 2015, ITS sent an invoice to DTOP for $379,350.00 as only part of ITS's 45% share of proceeds as recorded by Ranger American stemming from total revenues amounting to $843,000.00 which would have been purportedly paid had it not been for Mr. Torres Díaz cancellation of citations. The invoice also references the alleged almost $27 Million in traffic violation citations which ITS did not issue at the behest of DTOP due to problems with AutoExpreso and Transcore. *See* Attachment 34 of **Exhibit A**.

---

[3] ITS acknowledges that this amount would be discounted from any settlement amount it may receive in the future.

35. On February 15, 2015, ITS sent an invoice to DTOP for $7,673,540.00, amount which includes the $6 million as a result of the termination by convenience of the Contract, and $1,673,540 due as reimbursable costs per the Contract. *See* Attachment 35 of **Exhibit A**.

36. On March 2, 2015, ITS sent a letter to Mr. Torres Díaz referencing a previous February 4 letter warning about DTOP's illegal cancellation of traffic violation citations and DTOP's refusal to honor its fiduciary duties to the Escrow Account in DTOP's name. While it recognized that DTOP remitted some funds to ITS, as of the March 2 letter there were still funds which had yet to be distributed to ITS and reiterated that DTOP cannot withdraw funds without ITS being paid as well. *See* Attachment 36 of **Exhibit A**.

37. On March 4, 2015, Mr. Miller sent a letter to Ms. Giovanna Colón, the Commercial Relationship Officer at BPPR, referencing the Escrow Agreement, BPPR's fiduciary duties thereunder, and the fact that an account was set up so that there would be monthly disbursement to the DTOP/ HTA and ITS. The letter also reiterated that funds could not be provided to one entity and not the other and that DTOP/HTA had sole control of the account. ITS also recognized it had already received a sum of $57,017 for its first Invoice, but only received a second distribution of $25,960 which is a small portion of the February invoice which amounted to $379,350. *See* Attachment 37 of **Exhibit A**.

38. On March 4, 2015, ITS sent an invoice to DTOP for $353,350 representing a difference between the $379,350.00 previously invoiced, and accepting payment for that amount, and the sum of $25,960 provided by BPPR. *See* Attachment 38 of **Exhibit A**.

39. On March 13, 2015, BPPR responded to the March 4 letter, informing ITS that it is aware of its fiduciary duties and that no deposits have been made into the Escrow Account to date

10

and that no disbursement instructions have been given by HTA and that as such no disbursement have been made. *See* Attachment 39 of **Exhibit A**.

40. On May 13, 2015, Attorneys Alejandro J. Figueroa-Colón ("Figueroa-Colón") and Carlos J. Sagardía-Abreu ("Sagardía-Abreu"), on behalf of ITS, sent a letter to Victor D. Candelario, attorney for HTA, regarding how the SIMONE system had been approved by DTOP and HTA as fully operational, explaining how HTA must abide by the Contract's specific terms, and quoting the same, and highlight ongoing issues regarding the operation of SIMONE. *See* Attachment 40 of **Exhibit A**.

41. On May 26, 2015, Figueroa-Colón and Sagardía-Abreu sent a letter to Victor D. Candelario regarding HTA's failures during the Contract's term and the funds still owed by HTA to ITS. *See* Attachment 41 of **Exhibit A**.

42. On January 13, 2016, ITS requested BPPR's assistance via letter. The letter stated that two accounts were set up to received funds form the SIMONE system: (1) the escrow account set up per the Escrow Agreement on July 22, 2014, and (2) another account to receive local funds which would then be transferred to the escrow account. It further sought clarification as to why funds from the second account had not been transferred and why BPPR claimed no amount had been deposited into the Escrow Account.[4] *See* Attachment 42 of **Exhibit A**.

43. On January 12, 2016, ITS sent a still-pending invoice to DTOP in the amount of $84,768.75 for LightCast Radar/ Speed/ Blue Light Alert trailers provided by ITS on September 1, 2014 bought at the personal direction of Mr. Torres Díaz. This amount includes the cost of the

---

[4] Copies of HTA and ITS Escrow Accounts for statements dated 06/01/2015 to 06/30/2015, 01/01/16 to 12/31/2016, 01/01/2017 to 12/31/2017 and 01/01/2015 to 12/31/2015, all showing balances of $0.00, are included as Attachment 43 of **Exhibit A**.

11

trailers, shipping and a 25% late fee per month added to the original invoice of $61,650. *See* Attachment 44 of **Exhibit A**.

## LEGAL POSITION

### A. Proofs of Claim under the Bankruptcy Code

The Bankruptcy Code states that proofs of claims tend to be "deemed allowed, unless a party in interest" objects. *See* 11 U.S.C. § 502. Relatedly, the Federal Rules of Bankruptcy Procedure hold that "a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "An objection [to a proof of claim] does not overcome the presumption of prima facie validity of [the] claim unless [it is] supported by 'substantial evidence.'" Kittery Point Partners, LLC, 623 B.R. 825, 836 (1st Cir. BAP 2021) (quotation omitted). If the objector can meet this burden of proof, then the burden will shift to claimant to support its claims and prove them by a preponderance of the evidence. In re Santiago Ruiz, 2017 WL 3084379, at *3 (Bkrtcy. D.P.R. 2017) (quotation omitted).

### B. Obligations under Puerto Rico law

The 1930 Puerto Rico Civil Code (the "Civil Code") outlines a parties' general contractual obligations.[5] To wit, Article 1041 of the Civil Code states that "every obligation consists in giving, doing, or not doing something." P.R. Laws. Ann. Tit. 31, § 2991. Further, Article 1042 asserts that obligations are created by law, by contracts, and quasi contracts, as well as by illicit acts and omissions in which a kind of fault or negligence occurs. Id., § 2992. Critically, Article 1044 of the Civil Code states that "**obligations arising from contracts have legal force between the**

---

[5] Article 1813 of the Puerto Rico Civil Code of 2020, 31 L.P.R.A. §11718, provides that the provisions of this Code are not applicable to ongoing contracts in execution in force at the time of its effectiveness. Because the contract at issue here was executed in 2013, the Civil Code of 1930 is the applicable law to this claim.

12

**contracting parties, and must be fulfilled in accordance with their stipulations**." Id., § 2994 (emphasis added).

Article 1206 of the Puerto Rico Civil Code provides that "[a] contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." Id., § 3371. Article 1208 also holds that the validity and fulfillment of contracts cannot be left to the will of one of the contracting parties. Id., § 3373. Accordingly, the Civil Code is clear that there is no contract unless the following exists: consent of the contracting parties, a definite object which may be the subject of the contract, and the cause for the obligation which may be established. See Id., § 3391. Notably, it clarifies that "[c]ontracts without consideration or with an illicit one have no effect whatsoever." Burk v. Paulen, 100 F. Supp. 3d, 126, 131 (D.P.R. 2015) (*quoting* P.R. Laws. Ann. Tit. 31, § 3432).

A contract shall be binding once the essential conditions required for their validity, as outlined above, are met. *See* P.R. Laws. Ann. Tit. 31, § 3451. A party has breached the contract when they have failed to uphold or abide by the terms and conditions of the binding contract. *See* Burk, 100 F. Supp. 3d at 133. As a result, the elements of a cause of action for breach of contract include a valid contract and a breach by one of the parties to the contract. Id. (*quoting* Markel Am. Ins. Co. v. Diaz–Santiago*, 674 F.3d 21, 31 (1st Cir.2012)).

### C. Contracts with the Puerto Rico Government

Government contracts are governed by their own set of additional requirements under Puerto Rico law. To wit, all government contracts must be: (1) in writing; (2) maintain an accurate record with the purpose of establishing their prima facie existence; (3) a copy must be sent to the Office of the Comptroller of Puerto Rico as a double proof of the execution thereof, and (4) the remittance of the contract to the Comptroller's Office shall occur within fifteen (15) days. *See*

13

Disaster Solutions, LLC v. City of Santa Isabel, Puerto Rico, 2019 WL 6719866, at *2 (D.P.R. 2019) (quotation omitted). As a result of the May 31, 2004 amendments to the Government Contract Registration Act, Act No. 18 of 1975 (the "Registration Act"), failure to register a government contract with the Comptroller's Office does not render said agreement invalid or null, but it merely prevents a private party from demanding the money that was owed until the government entity remedies that defect. See Ortiz v. Municipio de Guayama, 163 D.P.R. 208 (2004).

### D. Application of the Law to the Facts of the Proof of Claim

Debtors fail to assert any statutory or regulatory basis, either under Bankruptcy, PROMESA, or Puerto Rico law, to support their Objection to the Proof of Claim. Rather, Debtors essentially allege that BSS' claim should be rejected because they cannot find evidence of the outstanding payments. However, Debtors do not submit sufficient evidence in their Objection to overcome the presumption of *prima facie* validity of BSS' filed claim. See e.g., In re Rowlands, 2008 WL 8664766, at *4 (1st Cir. BAP Mass. 2008) ("It is often said that the objector must produce evidence equal in force to the prima facie case.") (quotation omitted). Instead, a review of the Proof of Claim shows ITS amply supported its claim with the following documents:

a. A copy of the Contract executed on December 30, 2013, by and between HTA and ITS.

b. An HTA Certification in Spanish issued on December 20, 2013 stating that the contract with ITS does not necessitate disbursement of funds.

c. A Certificate of Eligibility No. 0262 in Spanish issued by the Unique Registry of Bidders on December 26, 2013 to ITS.

  d. A Certificate by the Puerto Rico Office of the Comptroller in Spanish certifying the delivery of the contract with ITS

  e. Copies of the following Invoices in the following amounts sent by ITS to HTA: $57,015, $379,350.00, $7,673,540.00 and $84,768.75.

*See* Proof of Claim No. 30574 at 14-95.

  Furthermore, there is no doubt that ITS strictly complied with the requirements under Puerto Rico law concerning Government contracting, including the fact that the Contract was recorded without issue in the Puerto Rico Office of the Comptroller. *See* Attachment 5 of **Exhibit A** and **Exhibit B**.[6] Also, HTA has not proffered any reason why it should not be bound by the Contract. *See e.g.*, In re Evarts, 2018 WL 6584242, at *6 (Bkrtcy. D.N.H. 2018) (overruling objection in part because "the Debtor failed…to explain why she is not bound by the terms of that contract" and the Court found that Debtor did not meet her burden of providing substantial evidence to rebut the creditor's *prima facie* case.) On the contrary, HTA's repeated attempts to evade compliance with the Contract's terms is a breach of contract.

  ITS acknowledges that Clause Eight of the Contract allows HTA to terminate the same for convenience. However, Section 8.2 thereof clearly states the available remedies to ITS in the event of such termination:

> 8.2 It is acknowledged by the parties to this Contract that the COMPANY [ITS] is assuming the risk for all the startup costs and cost of the implementation and operation of the SYSTEM; in consideration thereof it is agreed that, should HTA terminate this contract for convenience prior to the sixtieth month after the SYSTEM is declared fully operational, all the equipment, materials, resources, etc. that can be removed without any prejudice to the property of the HTA where it is installed or otherwise not provided by the HTA, will remain property of the COMPANY up and until its cost, hereinafter, Initial Capital Investment, has been recovered by the COMPANY with the proceeds of this Agreement. For purposes

---

[6] [6] The Court can take judicial notice of this document given that it stems from a government website. *See* Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of facts on government websites that "are not reasonably in dispute" in accordance with Fed. R. Evid. P. 201(b)).

>of this Section, COMPANY shall have recovered from the proceeds of this agreement its Initial Capital Investment after it has received $6,000,000.00 and its demonstrated operational expenses of the first twelve months period or the period between that date in which the SYSTEM has been declared fully operational and the declaration of termination by convenience, whichever period is shorter. After, and including said date, all equipment, materials resources, etc. employed in the implementation and operation of the Scope of Work is and shall remain property of the HTA, except as provided herein for the information obtained by the COMPANY in the discharge of its services under this contract and the reports and other documents produced by the COMPANY, or any of its subcontractors, in the fulfillment of its services, which reports and ddocuments and information shall be, at all times, property of the HTA. It is further provided that in the event a termination for convenience is issued before the dale in which the COMPANY receives its inital capital investment as hereinbefore established, the HTA shall only be liable to the COMPANY if the product of the Initial Capital Investment, minus the value of the equipment that the COMPANY removes and retains, minus the sum of all amounts already paid to the COMPANY pursuant to this agreement is greater than ZERO ($0.00). In case such product Is greater than ZERO ($0.00) then the parties will discuss to any kind of further compensation that the COMPANY may receive as part of the termination by convenience. Provided that if the contract remains in force for sixty (60) months, the equipment will be provided and ownership fully transferred to the HTA. For purposes of clarity, termination by convenience shall mean situations such as, but of limited to, a government agency with proper authority and jurisdiction establishing that the contract or SYSTEM is illegal, unethical, or there is a change of law or Court's interpretation that renders the same inoperable or illegal.

*See* Attachment 3 of **Exhibit A**, at pages 13-14.

There is no doubt that by July 14, 2014, DTOP/HTA had issued a sign off sheet for the proof of concept and, **no later than that moment onward**, SIMONE was no longer a pilot program. In fact, the document was signed by vital HTA representatives. *See* Attachment 14 of **Exhibit A**. Following this, a host of communications show that the implementation and operation of SIMONE was in earnest and, moreover, that SIMONE was a resounding success which brought in millions of dollars in revenue for fines collected. *See* Attachments 10-11, 13, 17-18, 22-24 of **Exhibit A**.

ITS was completely blindsided by DTOP/HTA's unilateral cancellation of the Contract given SIMONE's impressive accomplishments, especially when considering that, mere weeks

before the Contract's cancellation, DTOP/HTA had been communicating with ITS to go over various operational logistics without any issues. *See* Attachments 22-23 of **Exhibit A**. To add insult to injury, HTA, DTOP, and the Government of Puerto Rico engaged in a slander campaign against the SIMONE project and ITS in the press following the cancellation. *See* Attachments 28 and 33 of **Exhibit A**.

The documentation attached to the Proof of Claim and this Response unequivocally show (i) that ITS had a legally-binding and valid Contract with HTA that was registered in the Puerto Rico Comptroller's Office; (ii) that there is ample evidence of the services rendered by ITS under the Contract and the outstanding payments to ITS, including but not limited to its forty-five percent (45%) share of the revenues derived from fines issued but uncollected; (iii) that DTOP/HTA terminated the Contract by convenience despite SIMONE's success; (iv) that the SIMONE project was not a "pilot program" at the time of the Contract's cancellation; and (v) that the Contract outlines the specific remedies available to ITS in the event of convenient termination of the Contract by HTA. Moreover, the attached unsworn declaration under penalty of perjury issued by Mr. Miller on June 22, 2023 (the "Declaration") (**Exhibit A**) shows the different efforts undertaken by ITS *for years* to seek payment for services rendered and for its shares of revenue which remain unpaid after HTA's unjustified and irresponsible termination for convenience of the Contract on January 14, 2015.

Accordingly, ITS respectfully requests the Court deny the Objection.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 22nd day of June 2023.

**CERTIFICATE OF SERVICE**: In accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the *Sixteenth Amended Notice, Case Management and Administrative Procedures* Order (Docket No. 20190-2 of Case No. 17-03283 (LTS)) (the "CMP Order"), we

17

hereby certify that a true and exact copy of the foregoing was sent by electronic mail upon all the parties listed in the Master Service List and by U.S. mail upon all the Standard Parties listed in the CMP Order.

**MCCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel: 787-250-5632
Fax: 787-759-9225

By: */s/ Nayuan Zouairabani Trinidad*
Nayuan Zouairabani Trinidad
USDC No. 226411
E-mail: nzt@mcvpr.com

By: */s/ Victoria Rivera Lloréns*
Victoria Rivera Llorens
USDC No. 307808
E-mail: vrll@mcvpr.com

***Attorneys for International Traffic Systems, LLC***