Cuantía Total: $1.00
Cuentas: N/A

Vigencia desde: (12/30/2013)

## COMMONWEALTH OF PUERTO RICO
## DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS
## PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY
## SAN JUAN, PUERTO RICO

### SERVICES CONTRACT

2014-000182
### CONTRACT NUMBER _____

### APPEARS



**AS FIRST PARTY:** The PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTORITY (the "PRHTA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act No. 74 of June 23, 1965, as amended, represented herein by the Secretary of the Department of Transportation and Public Works (the "DTPW"), Eng. Miguel A. Torres Diaz, (the "Secretary"), of legal age, single, and resident of San Juan, Puerto Rico, who appears in his capacity as depositary of the powers of the PRHTA, and its Executive Director, Eng. Javier E. Ramos Hernández, of legal age, married, and resident of Bayamón, Puerto Rico, acting under the powers conferred on them by Act No. 74 and the Reorganization Plan No. 6 of 1971 (3 L.P.R.A. App. III Art. VI); hereinafter referred to as "PRHTA".

**AS SECOND PARTY:** International Traffic Systems, LLC, a Limited Liability Company of Puerto Rico with its principal place of business at Ponce de Leon Ave., 416, Suite 1701, San Juan, PR 00918, and which is the representative in Puerto Rico of the *National Public Safety Consortium*, a Consortium of companies dedicated to traffic control and public safety, represented by its authorized Director, Jonathan Miller, of legal age, (CIVIL STATUS), and resident of Conyers, Georgia; hereinafter referred to as "ITS" or "COMPANY".

### WITNESSETH

**WHEREAS:** Article 23.06 of Act Number 22 of January 7, 2000, as amended, 9 L.P.R.A. §5687, empowers the Secretary of the DTPW to use and operate an *automatic traffic control system* to be able to issue administrative tickets for traffic violations in designated high risk road intersections for drivers and pedestrians (the SYSTEM).

**WHEREAS:** Pursuant said Article 23.06, the funds recovered from the administrative tickets issued pursuant the SYSTEM shall be deposited in a special account to the order of the PRHTA, who shall use those funds to implement and

International Traffic Systems
Services Agreement
Page 2 of 37

operate the system and for its corporate purposes. It is clarified that the funds so deposited will go to pay for the implementation and operation of the SYSTEM and to the PRHTA, as per the terms and conditions set forth in this Contract.

**WHEREAS**: After careful evaluation, the PRHTA have determined that they do not have the trained and capable human resources to perform the services necessary in order to successfully implement and operate the SYSTEM, nor do they have the economic resources necessary to hire the same, taking into consideration the hardware and software necessary and the operational capital also needed to put the SYSTEM in place.

**WHEREAS**: In order to implement and operate such automatic system, the DTPW and the PRHTA need to contract external, highly technical and consulting resources, to be able to implement and operate the system.

**WHEREAS**: The COMPANY is the representative for Puerto Rico of the "National Public Safety Consortium", an organization whose purpose is to develop public safety, traffic monitoring and other transportation services solutions to transportation, law enforcement and related entities.

**WHEREAS**: The COMPANY has seventeen partners, all of which are leaders in their particular areas and are willing and able to provide all the necessary resources to implement and operate the SYSTEM. Several of the COMPANY's partners have demonstrated their interest and commitment to the implementation of a Pilot Project and its success; which companies are the ones need to implement this Pilot Project.

**WHEREAS**: With its partners, ITS represents a single point solution that could promote the implementation and operation of the automated system Law 22, as amended, authorizes.

**WHEREAS**: The PRHTA does not have the economic resources to implement and operate the automated system. However, the economic proposal submitted by the COMPANY is a self-financing one, where the COMPANY assumes the risk of recovering its initial investment (for the implementation phase) and subsequent operational capital investment (for the operations phase) with no risk for either the DTPW or the PRHTA. Therefore, under the COMPANY's proposal no up-front public

International Traffic Systems
Services Agreement
Page 3 of 37

funds are needed to provide for the successful implementation or operation of the system.

**WHEREAS**: The COMPANY has proven, to the satisfaction of PRHTA personnel, that it has the economic soundness and technical experience to provide the services needed by the PRHTA to implement the SYSTEM.

**WHEREAS**: The COMPANY has proven, to the satisfaction of the PRHTA that the proposal can be readily implemented and can start to produce the desired results in a short period of time.

**WHEREAS**: The PRHTA wishes to implement the SYSTEM as a Pilot Project in the metropolitan area of Puerto Rico. The result of it will provide the scenario for it to be latter considered to be implemented all around Puerto Rico.

**WHEREAS:** Pursuant Article VI, Subsection C of the Regulation for Bids of the PRHTA, No. 02-001 of June 30, 1995, the PRHTA's Director may waive the bidding process when it is considered that for the best interest of the PRHTA, if it is more convenient to enter into direct negotiations.

**WHEREAS**: It has been determined by the Secretary and the Executive Director that it is in the best interest of the PRHTA to implement and execute the SYSTEM, as a Pilot Project, with the COMPANY.

**THEREFORE**: The PRHTA agrees to contract with the COMPANY to implement and operate the SYSTEM as a Pilot Project for a period of sixty (60) months after it has been declared operational and the COMPANY has agreed to perform the services necessary thereof, subject to the following:



### TERMS AND CONDITIONS

**FIRST: SCOPE OF THE SERVICES.** The COMPANY represents that it is fully capable, through itself and its partner members, to perform the services required under this Contract and that all personnel actually performing the services contracted, be it professional, supervisory, technical or any other type, are legally authorized to reside and work in the United States of America and are in good standing to practice in the Commonwealth of Puerto Rico. Therefore, all parties agree that the Scope of Services (SOS) is as follows:

The COMPANY is to provide, at its own cost and expense, to the PRHTA, all specialized, technical, administrative and advisory services needed to carry out the implementation of Article 23.06 (a) of the Vehicle and Traffic Law of Puerto Rico (the "Act), 9 LPRA § 5686 and the Regulation for the Implementation of an Automatic Traffic Control System in High Risk Intersections (the "Regulation"), with the companies, equipment, services, etc., as per the proposal attached herein, which include, but are not limited to:

1.1 Identification of all the license plates at intersections identified as related to vehicles which are High Risk which are to be designated by the DTPW / PRHTA for implementation of the system. Should it not be possible to identify all license plates, the system will be programmed to identify those that are fixed onto cars which have been detected as having violated the Act and other license plates at random.

1.2 Analysis of the above mentioned license plates against BOLO lists (Be On the Look Out) and Hot Lists which have been issued by law enforcement agencies, as well as any other such lists as may be indicated from time to time by the DTPW/PRHTA to ITS. In accordance with this, the computer systems to be installed and operated by ITS in its Command Center must interface with the computerized systems of DTPW/PRHTA and also the law enforcement agency(ies) required to perform this work. DTPW/PRHTA will ensure that ITS has access at all times to the DAVID, or any successor system, and any other law enforcement databases, to ensure that all available Hot Lists, BOLOs and compliance lists are available. ITS will create, maintain and use current databases for use in regards to the identification of vehicles involved with violations and make that system available to law enforcement and the courts as may be required.

1.3 Except for those vehicles as identified by their license plates that the cameras identify as committing or potentially committing a violation of the Act or arising from the fact that the license plate is on the list of BOLO or Hot Lists of law enforcement agencies, all photos and data created by the system must be disposed of in accordance with a protocol that ensures the security and privacy of citizens and the confidentiality of the information contained therein.

International Traffic Systems
Services Agreement
Page 5 of 37



1.4  Coordinate the operation of the Command Center, keeping control of the site - physically and operationally - at all times and having in it available 24 hours a day, 7 days a week, the technical and administrative personnel needed to operate and repair all systems and equipment necessary to carry out all functions  necessary for the identification of violations of the Act, reading license plates, delivery and issuance of administrative fines which are carried out under the provisions of the Act and the Regulations immediately the system is declared fully operational. Incidental to these services, the Command Center shall be equipped with all the necessary features to comply with all applicable federal and state labor laws and regulations, as well as all laws, regulations and/or generally accepted parameters related to security and information technology applicable to similar operations or to facilities similar to the Command Center. The Command Center will be open and functional 24 hours a day, 7 days a week, except in case of force majeure emergency conditions that warrant, for security reasons, that it be closed. However, the Command Center will reopen and start operating as soon after the emergency as possible.

1.5 The Command Center will have a Violations Processing Center, which will be equipped by ITS so that law enforcement representatives, or the person designated by the Secretary in lieu of, which could include ITS personnel, can perform their responsibilities in the implementation of the system and carry out all related duties, this is, to revise and issue the administrative fines. In addition ITS will provide on-site all the necessary staff responsible for providing technical assistance to law enforcement representatives or the persons designated by the Secretary in lieu of, as well as all adequate facilities required by the law enforcement representatives and by the ITS staff in order for them to perform their work in support of law enforcement. As part of their responsibilities regarding the Violations Processing Center, ITS will ensure processing of all issued citations, which citation format must comply with the requirements of the Act, the Regulations and any requests of the DTPW/PRHTA. The citation format shall clearly contain, at a minimum:

     a. The name and address of the owner of the vehicle that committed the offense, as recorded in the records of the DTPW/PRHTA;
     b. The license plate number of the vehicle involved in the violation, as it appears from the photos, microphotographs, or video images of a similar nature that are used to identify the vehicle and the registration number of such vehicle, as recorded in the records of the DTPW/ITS ;

   c. The date, time and place on which the violation occurred;

   d. The identification number of the unit or team that took the pictures, microphotographs, or video images of a similar nature on which the violation is based;

   e. Case number assigned by ITS;

   f. Legal information regarding the rights to request a hearing within a period of fifteen (15) days from date of the notification; otherwise the fine shall be firm and final and may not be challenged;

   g. Amount of the fine and section of the Law on which the same is based; and

   h. Any other warnings or additional information required, including information related to the payment of the fine.

1.6 Create and maintain a record of all fines issued as well as any applicable surcharges and penalties thereof. Oversight for such fines will be conducted by ITS at the Command Center or in at any other place it may located the Violations Processing Center, as ITS may considered convenient to administer the records and, but the location of this facility or facilities, at all times, must be notified to DTPW/PRHTA as well as any changes in location thereof. Regardless of the location(s) of the records, ITS will provide the necessary security measures and backup systems to ensure their integrity and availability to DTPW/PRHTA at all times.

1.7 Regular updating and maintenance of all systems (programming, protocols, hardware, software, etc.) and equipment to ensure compliance at all times with the highest standards of quality and thus always achieve the purposes of recognition of license plates, comparing them against lists provided by law enforcement agencies and/or the DTPW/PRHTA, detection of violations of the Act, validation of Act violations, issuance of citations and processing of the fines. ITS shall provide DTPW/PRHTA with a schedule of such renovations, updates and regular maintenance. Additionally, ITS will update said systems at any such time as DTPW/PRHTA requests ITS to do so, particularly when either agency up-grades or changes its systems.

1.8 Maintenance, repair and replacement of the software, equipment, physical facilities, and any other goods or services necessary for the operation of the Command Center. COMPANY shall provide a schedule of the maintenance services, which shall be provided without disruption or the least disruption possible to the operation of the Command Center. All necessary repairs to software, equipment or the facilities in the Command Center shall be made without interrupting the operation of the Command Center or, if this is not possible, with the least amount of disruption to the operations of the Command Center.

1.9 Perform all services necessary so that the equipment, software and all computerized systems effectively communicate and interface with the DAVID system used by DTPW/PRHTA, which system stores the information of each vehicle and its owners, or any other successor system which, in DTPW/PRHTA"s sole discretion, might replace or complement DAVID.

1.10 Provide all technical and physical infrastructures necessary to provide the services described herein, including the telecommunications system needed to provide them.

1.11 Establish and operate Customer Service - Collection Centers, as may be necessary and reasonably requested by the DTPW and the PRHTA, according to the intersections designated by the DTPW/PRHTA, to serve the citizens and process payments of fines under the provisions of the Regulation. These Customer Service Centers will have all the equipment, software and any other data transmissions facilities required to interface with DAVID (or any other system that succeeds DAVID) so that all paid fines can be cancelled in DAVID. With this in mind, the COMPANY is to be provided data transmissions and ITS is to have the equipment and systems necessary to make such transmissions to DAVID for interface or its successor system to cancel the fines that would otherwise result in a potential duplication of such fines. At the request of or if previously agreed to with the DTPW and the PRHTA, these Customer Services – Collection Centers could be worked as call centers.



1.12 The system must have a protocol, approved by PRHTA, to ensure the deposit of the funds collected from the fined citizens into an escrow account to be opened in a commercial bank selected jointly with the PRHTA, so that the selected bank, acting as escrow agent, segregates the monthly deposits, net of bank charges, as appropriate, in accordance with the table shown in Section 2.1.

1.13 Incidental to the services to be provided, ITS will:

a. Supply and install all cameras and other related devices with the hardware and software needed to perform the Automatic Vehicle Identification Services, as those services are described herein, in the Proposal and the Law and Regulation. The cameras and other equipment may be fixed or movable type, depending on the conditions found on each particular High Risk intersection, which decision shall be made jointly with the DTPW/PRHTA; in case no agreement can be reached, DTPW/PRHTA will decided which method to use. The cameras and all other equipment must be maintained in optimal conditions, must be calibrated at all times, and shall be repaired and replaced as needed in a period not to exceed 24 hours from the time of detection of a malfunction.

International Traffic Systems
Services Agreement
Page 8 of 37

b. Provide, install and maintain an Automatic Traffic Monitoring System, as such term is defined in the Regulations and described in the Proposal and herein.

c. Maintain all other equipment calibrated and in good working conditions at all times so that the system will detect any violations of the Act and provide the evidence to sustain any fines imposed thereunder.

d. Provide, install and maintain Command, Violations Processing and the Customer Services Centers all other equipment necessary, including hardware and software, to be able to operate and maintain in good repair the Command Center, the Violations Processing Center(s) and the Customer Services Center(s), as per the terms of this agreement, the Act and the Regulation.

1.14 Provide DTPW/PRHTA authorized personnel access to the Command, Violations Processing and Customer Services Centers and will allow them to inspect the quality of the services and to ensure that they are being provided pursuant to the terms and conditions of this Agreement, its exhibits, specifications,, protocols, procedures, any agreed performance parameters and pursuant to all applicable laws and regulations, both local and federal.

1.15 Provide DTPW/PRHTA with all reports, lists and any other information related to the operation and performance of the services, the equipment and software (as they pertain to the services rendered) that may be requested from ITS during the term of the agreement between the parties.

1.16 Provide any incidental, additional or complementary services to the ones described above, as may be required and mutually agreed by the parties.

1.17 If there are changes in legal or contractual obligations of the COMPANY as a result of the implementation of new laws and regulations of the federal Government or the Government of Puerto Rico relating to such obligations, COMPANY must comply with new laws or rules making the necessary changes to its obligations on this contract, also shall notify DTPW and PRHTA using the quickest means available, prior to implementing them. The COMPANY shall have on file receipt of such notification. Any costs associated with said change shall be borne by the revenues of the SYSTEM itself before distribution to the parties, and any excess shall be assumed by the COMPANY. In no event shall the DTPW nor the PRHTA be held responsible for any such costs from other sources.

International Traffic Systems
Services Agreement
Page 9 of 37

### SECOND: COMPENSATION

**2.1** Payment for the services to be provided by the Company to PRHTA regarding the SYSTEM, will commence only after PRHTA declare the SYSTEM implemented which shall follow the live demonstration of each one of the three following types of license plate recognition system-enabled systems, (speed and red light, trailer-mounted, and fixed site/general purpose), being fully operational and shall be payable only from proceeds after each month's accounting reconciliation which is to be no later than the fifteenth (15th) day of the following month, and shall consist of the following distribution of revenues of all notices/assessments/ citations issued pursuant to the SYSTEM (the Payment Schedule).

| YEAR (from – to) | PRHTA | ITS |
|---|---|---|
| First 12 month period after the SYSTEM is declared fully operational | 55% | 45% |
| Second 12 month period after the SYSTEM is declared fully operational | 60% | 40% |
| Third 12 month period after the SYSTEM is declared fully operational | 65% | 35% |
| Fourth 12 month period after the SYSTEM is declared fully operational | 65% | 35% |
| Fifth 12 month period after the SYSTEM is declared fully operational | 70% | 30% |

**2.2** For the benefit of all interested parties, any and all revenues collected from the SYSTEM shall be deposited in a special escrow account, in the name of the PRHTA as directed by Law Number 22, with instructions that its proceeds are to be divided monthly, as per the Payment Schedule, after payment of all of the account's incidental costs, bank charges, etc. Said Escrow Account shall be set by the PRHTA with appropriate agencies' knowledge and consent, at a future date, but before the PRHTA declares the System implemented. The COMPANY and PRHTA shall have on-line access to this account for monitoring purposes and both shall retain the ability at all times to review then-current status of payments. PRHTA acknowledges that a percentage of funds collected as detailed in Section 2.1, and subject to conditions herein, will be designated to pay the COMPANY's percentage despite account being in the name of PRHTA.



International Traffic Systems
Services Agreement
Page 10 of 37

### THIRD: INVOICES

**3.1** The COMPANY shall submit a properly documented invoice to the PRHTA, with copy to the Escrow Agent, at the office with the agency to be identified by the Executive Director in writing, within fifteen (15) days after the end of the month the services were rendered as per the Payment Schedule, requesting the withdrawal of a dollar amount equal to the amount represented by the percentage in 2.1 above, and the Escrow Agent will disburse said amount when PRHTA agrees to the disbursement requested by the COMPANY, which, if not disputed within 7 business days, shall be deemed agreed to, and at the same time disburse in favor of the PRHTA the sum representing the a dollar amount represented by the corresponding percentage of the Payment Schedule. At no time will disbursement be made only to COMPANY or to PRHTA. Disbursement must be made to both simultaneously.

**3.2** The COMPANY shall prepare and maintain all required records, reports and calculations needed to document COMPANY's services and performance under this Contract and shall timely produce and provide any and all reports and information when requested by the PRHTA.



**FOURTH:** During the term of this contract, the COMPANY shall report at the request of the Secretary, the Executive Director or their authorized representatives, the state of progress of activities and comments or recommendations regarding the services rendered. Any information collected by the COMPANY in the performance of its duties, and any report prepared for this purpose, may not be published or made available to other persons or entities without the prior written consent of the Secretary and the Executive Director or their authorized representatives, who reserve the right of reproduction all or part therein, except as provided by law or valid Court Order.

**4.1** All such information collected and any report prepared in the performance of the services rendered under this contract by the COMPANY, shall be deemed confidential. The COMPANY agrees that all reports and documents prepared or assembled by the COMPANY pursuant to this Agreement are to remain confidential. The COMPANY agrees to keep confidential and not to divulge in any manner, directly or indirectly, expressly or implicitly any information regarding the Services and/or this Pilot Project which is either furnished to the COMPANY by the PRHTA, any law enforcement

entity or any other governmental entity. This information includes, but is not limited to, the following: the BOLOs List, Hot List, DAVID's system information, the PRHTA's contract negotiation information, strategy or alternatives regarding this Pilot Project; any other information that the COMPANY, its offices, shareholders, employees, agents, or any other person representing the same, may receive or come in contact with as part of the performance of the services included in this agreement. The COMPANY may obtain permission to disclose specific confidential information or types of confidential information by submitting a written request to the PRHTA. Such permission shall be deemed granted only upon receipt of written permission by the PRHTA. Further, the COMPANY agrees that any information, reports, records and/or documents shall not be made available to any individual or organization, other than the PRHTA or courts of competent jurisdiction or administrative agencies pursuant to a subpoena, without the prior written approval of the PRHTA.

Confidential information of the COMPANY shall be only disclosed based on prior written approval or request from COMPANY or if required by a court of competent jurisdiction or as otherwise required by law. This obligation shall survive the termination of the contract.



**4.1.1** To the extent applicable, the PRHTA reserve an exclusive (within Puerto Rico), perpetual and irrevocable license to reproduce, publish or otherwise use, and to authorize others in the government of the Commonwealth of Puerto Rico to use, for the PRHTA purposes only: (a) the copyright or patent in any Services developed, discovered or not entered under this Agreement and (b) any rights of copyright or patent to which the COMPANY purchases ownership with the funds generated by this Pilot Project and that are installed in any equipment that the DTPW and PRHTA retain ownership after the termination of this agreement, if any, other than source code, third party software and proprietary communications software not under the direct control or ownership of the parties.

**4.1.2** The PRHTA shall have exclusive ownership of all proprietary interest in, and the right to full and exclusive possession of all information, materials, and documents discovered or produced by the COMPANY, any contractor(s) and/or subcontractor(s) pursuant to the terms of this Agreement, including but not limited to

reports, memoranda or letters concerning the findings, research and reporting tasks of this Agreement.

**FIFTH:** The parties certify that no officers or employee of government or any individual unit or agency of government has direct or indirect financial interest in this Contract and that no officer or employee of the Executive Branch has a financial interest in the profits or benefits of the Contract, pursuant to the provisions of the Government Ethics Act.

**SIXTH**: The Parties agree that in case of any overpayment or any error related to an electronic payment, there will be a correction, if any is required, of that error within the next month's payments/revenue distribution after such error is noticed and cleared.

**SEVENTH: TERM.** This Contract shall be considered effective from the date of its execution and shall be considered declared fully operational for purposes of section 2.1 from the date in which PRHTA and COMPANY agree in writing that data from DAVID has been successfully sourced and is accurate and ready for use and then for a period of sixty months. For purposes of this section, it is estimated that the SYSTEM will be declared fully operational in a period of 3 months, making this contract's term one of sixty three (63) months after its execution, this is, until March 30th, 2019, which term may be amended or renewed at the PRHTA's sole discretion, except in case of the adjustment in the term to the real initial pre "declared fully operational" phase, which adjustment in term shall automatically be agreed to by all parties. Within 15 days of its execution, the parties shall meet to establish a calendar of events that must happen and/or requirements the COMPANY must comply with so that the PRHTA can give it the go ahead to implement the Pilot Project. DTPW and PRHTA shall provide all support, information and access to COMPANY regarding DAVID and other necessary data and support so that COMPANY can comply with the agreed calendar of events.

**EIGHTH:  TERMINATION FOR CONVENIENCE**. The PRHTA may terminate this contract, in whole or part, whenever it determines that such termination is in its best interest. Any such termination shall be effected by delivery of a Notice of Termination specifying the extent to which performance under the contract is terminated, and the date upon which such termination becomes effective (the Date of Termination), which in any event will be no less than thirty (30) calendar days from the Notice of Termination



International Traffic Systems
Services Agreement
Page 13 of 37

and could be indicated as part of a conditional clause (pending a future event). In this case, the PRHTA will receive all materials and services at that time and the COMPANY will be compensated as per the terms of this Contract for the services rendered up to date of the resolution, subject to what is stated in section NINTH of this Contract.

8.1 At any point before the SYSTEM is declared fully operational the PRHTA may terminate this contract for convenience, including a termination agreed to with the COMPANY, if it determined by the PRHTA that the SYSTEM will not be able to operate or if any amount of capital investment would be required from the PRHTA to make the SYSTEM work. In this case, the contract will be understand to have been rescinded and no compensation shall be given to any party.

8.2 It is acknowledged by the parties to this Contract that the COMPANY is assuming the risk for all the start-up costs and cost of the implementation and operation of the SYSTEM; in consideration thereof it is agreed that, should PRHTA terminate this contract for convenience prior to the sixtieth month after the SYSTEM is declared fully operational, all the equipment, materials, resources, etc. that can be removed without any prejudice to the property of the PRHTA where it is installed or otherwise not provided by the PRHTA, will remain property of the COMPANY up and until its cost, hereinafter, Initial Capital Investment, has been recovered by the COMPANY with the proceeds of this Agreement. For purposes of this Section, COMPANY shall have recovered from the proceeds of this agreement its Initial Capital Investment after it has received $6,000,000.00 and its demonstrated operational expenses of the first twelve months period or the period between that date in which the SYSTEM has been declared fully operational and the declaration of termination by convenience, whichever period is shorter. After, and including said date, all equipment, materials, resources, etc. employed in the implementation and operation of the Scope of Work is and shall remain property of the PRHTA, except as provided herein for the information obtained by the COMPANY in the discharge of its services under this contract and the reports and other documents produced by the COMPANY, or any of its subcontractors, in the fulfillment of its services, which reports and documents and information shall be, at all times, property of the PRHTA. It is further provided that in the event a termination for convenience is issued before the date in which the COMPANY receives its initial capital

International Traffic Systems
Services Agreement
Page **14** of 37

investment as hereinbefore established, the PRHTA shall only be liable to the COMPANY if the product of the Initial Capital Investment, minus the value of the equipment that the COMPANY removes and retains, minus the sum of all amounts already paid to the COMPANY pursuant to this agreement is greater than ZERO ($0.00). In case such product is greater than ZERO ($0.00) then the parties will discuss to any kind of further compensation that the COMPANY may receive as part of the termination by convenience. Provided that if the contract remains in force for sixty (60) months, the equipment will be provided and ownership fully transferred to the PRHTA. For purposes of clarity, termination by convenience shall mean situations such as, but not limited to, a government agency with proper authority and jurisdiction establishing that the contract or SYSTEM is illegal, unethical, or there is a change of law or Court's interpretation that renders the same inoperable or illegal.

**NINTH: TERMINATION FOR CAUSE.**

    **9.1**    Immediately and without previous notification, the DTPW or the PRHTA reserves the right to cancel immediately this contract and without previous notification, for any of the following: (1) when and if Company abandons the system, recovers equipment and/or terminates services. (2) When and if Company, any of its partner companies or any of its officials is convicted of any offense and conduct described in Act No. 458 of December 29, 2000, as amended. Should there be charges brought against the COMPANY or any partner company or any of its/their officials, such entity(ies) and/or person(s) shall be immediately terminated from any and all actions regarding this contract and remain so until and only if such charges are dismissed.

    **9.2**    **Return of Documents, Equipment and Products.** If this Contract is terminated for any reason detailed herein, the COMPANY shall deliver to the PRHTA, all documents and services completed to date for such action and a copy of those data elements detailing actions which were in progress.

    a.    In the event of a termination for cause or for convenience, the Company's duty to keep all information confidential shall survive any termination unless otherwise ordered by a court having jurisdiction over the PRHTA or unless by consent to release by the PRHTA.

b.   In the event of a termination for cause or for convenience, neither party to this contract has any obligation to the other party of any kind, except those obligations that survive the termination of the Contract, after the Date of Termination, except as otherwise provided in this Contract. The COMPANY shall deliver all finished or unfinished documents as described above, regardless if it has been paid in full or not.

9.3   An Event of Default shall be construed as a material breach of this Contract, be sufficient grounds for a termination for cause and occurs when:

a.   The COMPANY fails to begin work in accordance with the terms of this contract;

b.   The COMPANY abandons the work or service to be undertaken;

c.   The COMPANY cannot complete the work to be performed under this Contract within the time herein provided or within such time as has been agreed to by the parties; provided, however, that the impossibility of timely completion is, attributable to conditions within the COMPANY's control;

d.   The COMPANY transfers, conveys, or otherwise disposes of this contract in whole or part, without prior approval of the PRHTA, including the change of any subcontractor without prior express written approval of the PRHTA, subject to the terms of Section **30.2.4** herein;

e.   Any DTPW or PRHTA officer or employee acquires an interest directly or indirectly in this contract; provided that the term officer or employee herein used shall include any ex-officer or ex-employee within 2 years after terminating its employment contract with the DTPW or PRHTA;

f.   The COMPANY violates any of the provisions of this contract, disregards applicable laws, ordinances, permits, licenses, that are specifically applicable to this contract according to the Laws of the Commonwealth of Puerto Rico, or disregards or does not follow instructions or orders dictated and properly documented and communicated by the PRHTA;

g.   The COMPANY, or any of its Partner members, fail in the performance of the services to be provided herein as properly documented and communicated, after giving reasonable time to cure;



h.    The COMPANY, or any of its partners performing services under this agreement, ceases to conduct business in the normal course by reason of insolvency, bankruptcy, or any similar proceedings whether voluntarily or involuntarily, filed under any present or future bankruptcy or other applicable law;

i.    The PRHTA become aware of a material misrepresentation, whether negligent or willful and whether in the inducement or in the performance, made by the COMPANY, or any of its Partner members, to the PRHTA; or

j.    The COMPANY admits in writing its inability to pay its debts generally as they become due.

**9.4**    In the event of default, the PRHTA may terminate this contract by notification, in writing, of its decision to terminate the services, subject to the terms and conditions of this agreement, and particularly Section NINTH, and any other term or condition set forth in the Notice of Termination, including but not limited to, time and manner to cure, if any is granted by the PRHTA.

**9.5**    In the event of termination for cause, the PRHTA and any other governmental agencies involved shall immediately provide access so that retrieval is enabled of all property including all equipment, software and system elements of all types owned by COMPANY. Additionally, any revenue share due to COMPANY at that time shall be forfeited.

**TENTH: INSURANCES; WARRANTIES; LICENSES; COOPERATION**

**10.1** The COMPANY shall obtain and keep in effect at all times any and all insurance required under law with respect to its employees, including but not limited to, workers' compensation, non-occupational disability, unemployment and chauffeurs insurance, which shall be secured by the COMPANY from the appropriate corporate or governmental entities, agencies or providers. These insurances coverage must be in place before the execution of this Agreement and is a condition precedent to it and, if necessary or convenient, name the DTPW and the PRHTA as additional insured.

**10.2.1** Liability insurance, property insurance and any other insurance obtained incidental to the performance of the services provided under this agreement, shall be obtained by the COMPANY and the DTPW and the PRHTA shall be named as

additional insured.  The COMPANY shall investigate and furnish the DTPW and the PRHTA with reports as to all accidents, claims, and potential claims, for personal injury and damage relating to the services provided herein.  The DTPW and the PRHTA shall cooperate with the COMPANY and its insurers in the evaluation and disposition of each claim. All of said insurances shall have a hold harmless clause/endorsement in favor of the DTPW and the PRHTA.

**10.2.2** The COMPANY shall obtain the following insurance coverage:

A. Worker's Compensation - Statutory Amount;

B. Employer's Liability - $100,000.00 minimum;

C. Insurance for the amount of $3,000,000.00 (for payment of employees, suppliers, sub-contractors, etc. in case they are not paid by COMPANY and directly claim to the PRHTA.  As such, it will be required at the time the SYSTEM is declared fully operational – such declaration of fully operational status to be determined by the Parties);

D. Comprehensive General Liability (minimum):

    1.    $500,000.00 bodily injury per person;

    2.    $1,000,000.00 per occurrence;

    3.    $500,000.00 property damage; or

    5.    $1,000,000.00 combined single limit.

The DTPW and the PRHTA shall be named additional insured.  The insurance will include a hold harmless clause in favor of the PRHTA.

E. Auto Insurance – with endorsements of hired and non-owned.  The PRHTA will be named as additional insured.

F. Any other law required or customary insurance for the work to be performed to cover all risk associated with the contract. The PRHTA may require any additional insurance, as it may deem necessary and appropriate provided such requirement complies with normal operations and industry standards for such a need regarding identification of non-compliant vehicles in high risk intersection applications.  The COMPANY shall provide such insurance policy certifications and documents prior to commencement of full operations.   Such certifications and related

documents will not be required before the SYSTEM is declared fully operational and such declaration of fully operational status to be determined by the Parties and documented in the SoS prior to commencement of Pilot.

The COMPANY shall instruct its insurance carrier(s) of all its insurance that a copy of the cancellation notification has to be sent to the DTPW and the PRHTA.

The COMPANY shall deliver, or cause to deliver, to the DTPW and the PRHTA, evidence of the required renewal of any insurance, under the same terms and conditions specified herein for its original, within a period of sixty (60) natural days prior to the expiration date of the then existing insurance.

**10.3.1** In the event of any termination of this Agreement, the COMPANY shall cooperate fully and as requested by the PRHTA to ensure an efficient and non-disruptive transition of the COMPANY's responsibilities to the  PRHTA or to eliminate the SYSTEM. The COMPANY shall deliver promptly to the PRHTA all work product and other documents, information and records necessary to maintain and operate the SYSTEM or otherwise relating to its duties obtained by or prepared or developed by the COMPANY during the performance of its duties, including, without limitation, the originals of all permits, licenses, warranties and approvals relating to the SYSTEM and its duties, and all plans, specifications and drawings relating to the same.

In any case the permits, licenses and warranties, whenever possible, shall be issued in the name of COMPANY and the PRHTA.

**10.3.2** The COMPANY hereby grants to the PRHTA a perpetual, non-exclusive, irrevocable, royalty-free license to use the Software incident to the services herein contracted in object code form to install, operate, upgrade, and maintain the SYSTEM as described herein and in all extensions, modifications or replacements thereto (the "Software License").. This Software License includes all error corrections, upgrades, and enhancements to the System Software delivered by the COMPANY or any of its Subcontractors or suppliers (the "System Software Modifications") under its control, provided such subcontractors or suppliers provide such software and otherwise client level software will be provided along with all documentation received and not restricted by license, without any charge to the PRHTA. The PRHTA shall be entitled to request

International Traffic Systems
Services Agreement
Page 19 of 37

the COMPANY to make modifications, improvements, and enhancements to the System Software and to create derivative works there. The PRHTA may use such modifications, improvements and enhancements in connection with the SYSTEM alone or in conjunction with computer systems used by other agencies or political subdivisions of the Commonwealth of Puerto Rico. The PRHTA may make copies of the System Software for back-up and archival purposes. The PRHTA may use the System Documentation relating to the System Software in connection with its installation, operation, maintenance and improvement of the SYSTEM. The PRHTA may not sell or sublicense any of the System Software except in connection with the sale or other disposition of items of Equipment that are replaced or for which the PRHTA no longer has any use. The COMPANY shall comply with its obligation hereunder with respect to System Software that is not owned by COMPANY ("Third Party Software") when it obtains for the PRHTA a license from the applicable party(ies) providing the same rights to the PRHTA to use the Third Party Software as are granted to the PRHTA under this section with respect to other components of System Software; provided, however, that the COMPANY shall not be required to deliver the source code for commercially available Third Party Software including the internal license plate recognition systems to be used.

**ELEVENTH: CONFLICT OF INTEREST.** The COMPANY understands that in the discharge of its duties, the COMPANY has the obligation of complete loyalty towards the DTPW and the PRHTA. This includes not having, and avoiding, any interests that are adverse to the DTPW and the PRHTA. These adverse interests include providing services to clients that have or might have conflicts of interest with the DTPW and the PRHTA. Furthermore, this includes the continuing obligation to disclose to the DTPW and the PRHTA all the circumstances of its relationships with clients and third parties, as well as any interest that may have an effect on the DTPW or the PRHTA at the time of granting this contract or during its effectiveness.

**11.1** A conflict of interest exists when, for the benefit of a client, it is the COMPANY's obligation to promote that which it should oppose in the fulfillment of its obligation towards a former, actual, or potential client. Also, a conflict of interest takes

International Traffic Systems
Services Agreement
Page 20 of 37

place when conduct is defined as such in the ethical rules and standards recognized in the applicable profession, or in the laws and regulations of Puerto Rico.

**11.2** It will be a violation of the prohibitions described herein, if any of the COMPANY's officers or personnel, or any of its directors, principals, partners, associates or employees, engages in the aforementioned conduct. The COMPANY is to avoid even the appearance of a conflict of interest.

**11.3** Regarding the prohibitions herein mentioned, the COMPANY acknowledges to DTPW and the PRHTA its commitment to ensure compliance with these prohibitions. If the DTPW or the PRHTA believes that there is or has been a conflict of interest, or the appearance of a conflict of interest, it will notify the COMPANY of the DTPW or the PRHTA's findings. The COMPANY shall make full disclosure of all material facts, and shall have a period of thirty (30) days after receipt of such notice to cure the conflict of interest or the appearance of conflict of interest, including the right to request a meeting with the DTPW and the PRHTA to set forth or explain its position. This meeting will always be granted, when timely requested. If the conflict of interest or appearance of conflict of interest is not cured to the satisfaction of the DTPW and the PRHTA, or the controversy is not otherwise resolved prior to the expiration of such 30-day period, the DTPW or the PRHTA may terminate this contract as detailed herein.



**11.4** The COMPANY covenants that it presently has no interest and shall not acquire any interest, directly or indirectly, which would conflict in any manner or degree with the performance of the Services under this contract.

**11.5** The COMPANY represents that no member of the governing body of the DTPW or the PRHTA; no other official, agent, or employee of the DTPW or the PRHTA; nor their family members, who exercise any functions or responsibilities in the review or approval of the undertaking or carrying out of this contract, has any personal or financial interest, direct or indirect, in this contract or in the proceeds thereof.

**11.6** The COMPANY warrants that it will not and has not employed or retained any company or person, other than bona fide employees working solely for the COMPANY, to solicit or secure the work to be performed under this contract, and that it has not paid or agreed to pay any company or person, other than bona fide employees and consultants working for the COMPANY, any fee, commission, percentage,

International Traffic Systems
Services Agreement
Page 21 of 37

brokerage fee, gift, or any other consideration, contingent upon or resulting from the award or execution of this contract.

11.7   The COMPANY certifies that none of its officers or employees, nor any principals, associates, officers, directors, shareholders or employees, are public officials or employees within the meaning of Public Law No. 1 of January 3rd, 2012 (Puerto Rico Ethic's Law). The COMPANY certifies the receipt of a copy of this law at the moment of signing this contract.

11.8   The COMPANY also hereby agrees to comply with the provisions of Act Num. 84 of June 18, 2002, establishing the Code of Ethics for CONTRACTORS, Suppliers and Petitioners of Economics Incentives, of the executive agencies of the Commonwealth of Puerto Rico and certifies the receipt of a copy of this law at the moment of signing this contract.

11.9   The COMPANY represents that it has secured or will secure at its own expense, all personnel required in performing the services under this contract. Such personnel shall not be employees of, or have any contractual relationship with, the DTPW or the PRHTA.

11.10   No person employed in the work covered by this contract shall be discharged or in any way discriminated against because he/she has filed any complaint or instituted or caused to be instituted any proceeding or has testified or is about to testify in any proceeding relating to the labor standards applicable hereunder to this employer.

11.11   The COMPANY certifies that its salaried employees do not receive, and shall not receive during the term of this contract, salaries or compensations from any agency and/or instrumentality of the Government of the Commonwealth of Puerto Rico, and that it shall comply with the applicable laws in relation to any employment of government employees.  The COMPANY also certifies that it does not have, nor shall have during the term of this contract, any other contract or contract with said agencies and instrumentalities that is, or could be, in conflict with this contract and its duty of loyalty to the DTPW or the PRHTA.

**11.12** GOVERNMENT ETHICS: The COMPANY, for itself and its shareholders, directors, officials and employees, as defined in the Puerto Rico Government Ethics Act, certify that:

a) None of the DTPW or PRHTA public officers or employees have a direct or indirect pecuniary interest in this contract, or any other interest that may adversely affect the same;

b) no public employee or any member of any employee's family has or has had a direct or indirect pecuniary interest as a result of this contract;

c) none of the Company's directors, officers, agents or employees, as applicable, or their family members, acted as public employees or officers who have access in the decision making process to determine the need for the services to be rendered under this contract and to the process of negotiation or execution of the same;

d) Upon signature of this contract, there exists no conflict of interest that may affect the services to be rendered and they do not have and will not represent any other client or interest that may be in conflict or that may cause conflict of the public policy established by DTPW or PRHTA in relation to this contract;

e) No employee or official of DTPW or PRHTA or their family members have or have had during the last four (4) years before occupying it position, direct or indirect pecuniary interest in this contract and they have no knowledge of any employee of the Commonwealth of Puerto Rico that has any interest in the profits or benefits derived from this contract.

f) No director, officer or employee of the COMPANY, as applicable, has worked as a public official or employee, in relation to the services herein provided, within two (2) years preceding the execution of this contract.

g) The COMPANY certifies acceptance of this professional code of ethics and that it will abide by it throughout the performance of its professional services herein required by DTPW or PRHTA.

h) The COMPANY certifies that it has received in this act a copy of the Government Ethics Law of Puerto Rico, and has signed the Certification of

Absence of Conflict of Interest, as required by the Office of Government Ethics of Puerto Rico, Letter Number 2002-05.

i)    The COMPANY shall certify that it has no pending claims or litigations against the Commonwealth of Puerto Rico.

j)    The COMPANY agrees to fully comply with the Code of Ethics for Contractors, Suppliers of goods and services and Financial Incentives Applicants of the Executive Agencies of the Commonwealth of Puerto Rico established by virtue of Act No. 84 of June 18, 2002.

PRHTA certify that none of its public officers or employees who have the authority to approve and authorize Contracts, or any member of their families, have or have had, during the four (4) years prior to occupying their position, direct or indirect pecuniary interest in the COMPANY'S FIRM.

**TWELFTH:**  The COMPANY represents and certifies that it has not failed to file any tax return due and payable during the past five fiscal years. The COMPANY herein certifies that it does not owe any taxes to the Commonwealth of Puerto Rico.



**12.1**    Upon the execution of this Contract, the COMPANY shall provide to the PRHTA the following certifications;

a.    Certification from the Department of the Treasury of Puerto Rico to the effect that the COMPANY has no outstanding tax returns for the previous five (5) years;

b.    That the COMPANY does not currently owe the Department of Treasury any amount of money on account of income taxes or that it has a payment plan in place;

c.    Merchant Certificate of Registration pursuant Section 2801 of the Tax Fairness Act of 2006;

d.    That it does not currently owe any monies to the CRIM on account of any types of property taxes or that it has a payment plan in place; and has filed in the last five (5) years personal property tax.

e.    That the COMPANY does not currently owe to ASUME (Administración para el Sustento de Menores) any amount of money of alimony or that it has a payment plan in place;

International Traffic Systems
Services Agreement
Page 24 of 37



    f.    That the COMPANY has paid the municipal patent according to the volume of its business or that it has a payment plan in place;

    g.    That the COMPANY certifies it has no outstanding debt under the Social Security program for drivers and other employees because it has drivers at its office;

    h.    That it does not owe any monies to the Department of Labor and Human Resources on account of unemployment and disability benefits or social security; and

    i.    Department of State authorization to do business in Puerto Rico, as well the Good Standing Certification.

    **12.2**   If required, the COMPANY has to obtain the necessary waiver of any government entity and such waiver is part of the contract record. That said, no such waivers are considered necessary as all fall under control of the PRHTA.

    **12.3**   It is expressly recognized that it is an essential condition of this contract to obtain and submit to the PRHTA all required certifications. Failures to timely submit the certifications or if they are false shall be cause for the immediate termination of this contract and the COMPANY shall reimburse to the PRHTA any and all amounts, or monies received under this contract.

    **THIRTEENTH**:  The COMPANY hereby certifies that it is authorized to do business in the Commonwealth of Puerto Rico.

    **13.1**   The COMPANY shall at all times observe and comply with the provisions of all U.S. Government and Commonwealth of Puerto Rico Laws and local ordinances and regulations applicable to the prosecution of all work covered by this contract. Attention is called to the Commonwealth Income Tax Act of 1994 and to Federal and Commonwealth Labor Laws.

    **FOURTEENTH**:  The COMPANY shall be solely responsible for and shall hold the PRHTA harmless from any liability or action for any injury or damage to any person, employee and/or property to the extent such injury or damage was sustained through any act, negligence or willful misconduct of any employee of the COMPANY in connection with the performance of the services hereunder.

**14.1** This waiver and release shall be construed as ample as possible, and in such a manner to cover PRHTA in every way, unless it is demonstrated in a court of law that the PRHTA was responsible for said liability or action, and includes the payment of any sentence, penalty or settlement, and litigation expenses, interest or attorney fees to the prevailing party.

**14.2** No official, employee or agent of the PRHTA shall be charged personally by the COMPANY, or by any assignee, Contractor and/or Subcontractor of the COMPANY, with any liability or any expenses in connection thereto or be held personally liable to the COMPANY under any term or provision of this Agreement, because of the execution or attempted execution of this Agreement, or because of the performance or nonperformance of the same, or because of any breach hereof, except in regards to theft, unlawful misuse or misappropriation of COMPANY's or its subcontractors property as provided for under the laws of the Commonwealth of Puerto Rico and as would be applicable to general commerce and enterprise.

**FIFTHTEENTH: NOTICES**

**15.1** Any notices required or permitted hereunder shall be in writing and sent either by personal delivery, nationally recognized overnight courier or certified or registered mail with return receipt requested, to the Parties at the following addresses,

> To PRHTA:
> Eng. Javier E. Ramos Hernández
> Executive Director
> Puerto Rico Highway and Transportation Authority (PRHTA)
> P.O. Box 42007
> San Juan, Puerto Rico 00940-2007
>
> To Company:
> International Traffic Systems, LLC
> Jonathan Miller, Manager
> Ponce de León Ave., 416, Suite 1701, San Juan, PR 00918
>
> With copy to counsel at the following address:
>
> Rafael Ramirez Ball, CPA, JD
> 151 Tetuan Street, San Jose Cr.
> San Juan, PR  00919-5492

Notices sent by certified mail or registered mail shall be deemed given to the other Party three (3) days after deposit with the United States Postal Service, and notices delivered personally or sent by overnight courier shall be deemed given to the

other Party one (1) day after personal delivery or delivery to the overnight courier, unless otherwise specifically provided for in this Agreement. If a communication is sent through e-mail or any other electronic means, then the communication shall be deemed delivered when indicated by a read-receipt issued or in case no read-receipt is issued, when acknowledged by the recipient.

**SIXTEENTH:** COMPANY certifies that in conformity with Act No. 458 of December 30, 2000, as amended, and Article 5 (p) of Act No. 84 of June 18th, 2002, no person associated with its management has been convicted of offenses against the public as defined in the Penal Code or misappropriation of public funds and has not been convicted of this offense in the courts of the Commonwealth of Puerto Rico, in Federal courts or courts of any jurisdiction of the United States of America. The above referenced crimes are included in "Article 3 of Act No. 458, of December 29[th],2000, known as "*Ley Sobre Prohibición de Adjudicación de Subastas o Contratos sobre Servicios y Bienes*". Each and all amendments made during the life of the contract, to Articles 5(Ñ) of the Act No. 237, as well as to Article 3 of the aforementioned Act No. 458, will be an integral part of this clause. The COMPANY expressly acknowledges that this certification is an essential condition of this Contract. Not be corrected in whole or in part of this certification shall constitute sufficient cause for the PRHTA to rescind the contract immediately without prior notification.

**16.1** In accordance with Circular Letter No. 2009-01 of the Department of Justice of the Commonwealth of Puerto Rico from March 9th, 2009, THE COMPANY:

   a. Certifies that it has not been convicted or found probable cause to arrest for any offense against the public finances, faith, or the public, against the government exercise, or involving public funds or federal, commonwealth or state property.

   b. Certify that neither he nor any of its shareholders, partners, officers, principals, employees, subsidiaries or parent companies have been convicted or found probable cause to arrest for any offense against the public finances, faith, or the public; against the exercise of government, or involving public funds or property in the federal, state or commonwealth level.

International Traffic Systems
Services Agreement
Page 27 of 37

    c. Undertakes to report on an ongoing basis during the term of the contract, any fact that is related to the conduct of any investigation for the commission of a crime against the public finances, faith, or the public, against the government exercise, involving funds or public property in the federal, commonwealth or state level. This obligation must be continuous in nature at all stages of the procurement and execution of the contract.

    d. Certifies that during the ten (10) years prior to the finalization of the contract has not committed any crime against the public finances, faith, or the public, against the government exercise, or involving public funds or property in the federal, commonwealth or state level.

    e. Undertakes to report cases where there is still no determination of probable cause for arrest, guilty plea or indictment of a contractor, but expressions or admissions of crime have been made against it.

**16.2** It is understood between the parties that this contract will be resolved if probable cause for arrest for committing a crime against the public finances, faith, or the public, against the government exercise, or involving funds or public property in the federal, commonwealth or state level, is determined against the COMPANY or any of its officials or shareholders.

**SEVENTEENTH: AUDIT; MONITOR; OTHERS.** The COMPANY agrees to maintain and keep all records, invoices and personnel records, property and financial statements to allow proper identification and accounting of all costs and expenses related to this contract or any document or record that the PRHTA considers necessary to carry out a proper accounting of public funds, federal, commonwealth, state and/or municipal governments that can invest in the services under this contract. The COMPANY acknowledges that although it, not DTPW nor the PRHTA, is assuming the up-front economic risk of the Scope of Work described herein, since it will be paid by the revenues of the SYSTEM, according to the Law those revenues are property of the PRHTA and therefore it has the obligation of keeping all accounting and financial documents and information regarding this Contract for full Comptroller of Puerto Rico audit for not less than six (6) years. All other reports will be provided to the PRHTA as part of services provided.

International Traffic Systems
Services Agreement
Page 28 of 37

**17.1**   The COMPANY acknowledges the fiscal authority of the PRHTA in relation to its compliance with the prohibitions included herein; accepts and binds itself to collaborate with any and all investigations of whatever nature initiated by the PRHTA and/or the Government of the Commonwealth of Puerto Rico in connection to any business transactions, award of any contract in which the COMPANY is or was or receive any direct or indirect benefit therefore.

**17.2**   In connection with the execution of this contract, the COMPANY shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, or national origin.  The COMPANY shall take affirmative actions to ensure that applicants are employed, and the employees are treated during their employment, without regard to their race, religion, color, sex or national origin.  Such actions shall include, but not be limited to, the following:  employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay of other forms of compensation; and selection for training including apprenticeship.

**17.3**   The COMPANY certifies that all professionals and technicians who execute the contracted services are legally authorized to reside and work in the United States, and to exercise their profession or trade in the Government of Puerto Rico, with the required quotas and/or licenses, if required, while the Contract is in full force and effect.  The COMPANY further obliges itself to, in the extent possible, only employ residents of the Commonwealth of Puerto Rico to provide the services contracted herein.

**17.4**   All publicity releases to any news media related to the service herein contracted shall be approved and released only through the DTPW and the PRHTA.

The COMPANY shall not advertise or publish information for commercial benefit concerning this Contract without the prior written approval of the PRHTA and any such publication shall be made in strict concordance with the protection of the PRHTA's public interest and in order to avoid the use of public funds to promote private commercial names or endeavors.

The COMPANY shall not use the name of the DTPW or the PRHTA in any of its circulars, publications, announcements or similar advertising documents without the express written authorization of the DTPW or the PRHTA.

17.5.1 The PRHTA shall have the right to monitor the COMPANY in the performance of the services to be provided under this Agreement.  As the Agreement monitor, the PRHTA shall have at all times, access, with or without notice, to staff, all areas of the Command, the Violations Processing, and the Customer Services Centers, or any other place of business of the COMPANY or any member in the Consortium charged with maintaining records regarding citation issuance and collections, and to all books, records (including financial records and bank accounts), and reports kept by the COMPANY concerning the services provided under the terms of this agreement and equipment, hardware, software, and any other document or material incident thereto provided such place of business, financial records, bank accounts and records relate directly to the discharge of the COMPANY's obligations under this contract and in regards to the identification of non-compliant vehicles, criminal conduct, citation issuance, help desk services and collections.  Nevertheless, COMPANY shall each night provide an electronic copy of the Daily Activity Report to the PRHTA detailing the number, location and type of citations issued, the assumed responsible party as listed in data from DAVID, a list of collections or other resolutions, the amounts associated with each entry and totals by charge type, and details of the aging of all receivables along with the operational status of each implementation site regarding both equipment and communications.



17.5.2 The PRHTA will monitor compliance with all contractual obligations and responsibilities of the COMPANY hereunder. The COMPANY must maintain whatever documentation is necessary for the performance of this Agreement and shall submit the same to the PRHTA if and when required to do so.  This includes, but is not limited to, all reports and other documentation required by any governmental entity with legitimate need to know regarding violation detection, citation issuance, collections and help desk services, including the Courts of the Commonwealth of Puerto Rico, and the ones required by the PRHTA themselves, as well as all the reports required herein.

**17.5.3**  As part of this monitoring process, the PRHTA will issue, from time to time, Business Rules it may deem proper and necessary to, at all times, ensure compliance with the intent of this agreement and the needs and public policy of the PRHTA. These business rules must be agreed as reasonable among the parties and comply with industry standards.  At all times during the term of this agreement the COMPANY, in the performance of its services, shall comply with said Business Rules, provided adequate time is provided to implement them, and that they do not deviate from the original Scope of Work.  Said Business Rules will include penalties for non-compliance by the COMPANY with the terms and conditions of this Agreement but such penalties must be reasonable, comply with industry standards and reflect that it is the COMPANY, not the PRHTA that is providing the up-front investment necessary to ensure success.

**EIGHTEENTH:** The invalidity of any one or more phrases, sentences, clauses or sections contained in this Contract shall not affect the remaining portions of the same or any part thereof.  Such provision shall be deemed severed and of no effect and the remainder of the Agreement shall remain operative and in full effect.

All references to any person or entity shall be deemed to include any person or entity succeeding to the rights, duties, and obligations of such persons or entities in accordance with the terms and conditions of this Contract.

**NINETEENTH:** This contract may not be released, discharged, abandoned, supplemented, amended, changed or modified in any manner, orally or otherwise, except by an instrument in writing signed by duly authorized representatives of all the DTPW, the PRHTA and the COMPANY.

**TWENTIETH:**  The COMPANY agrees that any dispute arising out of the performance of this agreement or about the interpretation of the same, regardless of the dollar amount it may imply, will be settled by the courts of the Commonwealth of Puerto Rico.  The COMPANY waives all objections it might have to the jurisdiction or venue and hereby consents to the Commonwealth of Puerto Rico jurisdiction for any judicial proceeding, regardless of the COMPANY residence or domicile.

**20.1**   LITIGATION AGAINST THE GOVERNMENT OF PUERTO RICO: The COMPANY certifies it does not have any litigation in process against any instrumentality or agency of the Government of Puerto Rico.

**20.2**   The formation, interpretation and performance of the Contract shall be governed by the laws of the Commonwealth of Puerto Rico (without regard to any forum's principles of conflicts of laws).  Any legal action commenced by the COMPANY (or any Guarantor) arising out of, or relating to, the performance of the Contract shall be brought only in the Court of First Instance Puerto Rico.  The COMPANY, for itself and for all claims, disputes and other matters involving Subcontractors, waives its right to a trial by jury with respect to any such legal action.

**TWENTY-FIRST:**  This contract does not in any way create the relationship of principal and agent between the PRHTA and COMPANY, and under no circumstance shall the COMPANY be considered to be an agent of the PRHTA except as it acts in support of data to support law enforcement and the issuance of citations, notices and collections thereof. The execution of this contract shall not generate any right or benefit for COMPANY, its employees and officers, or employees of the PRHTA or of any other agency, instrumentality, public corporation, or municipality of the Commonwealth of Puerto Rico. This contract neither creates a relationship of employer/employee between the PRHTA and the COMPANY. Accordingly, the COMPANY and its employees are not employees of the PRHTA and are not eligible for any compensation, fringe benefits, sickness or health insurance benefits, retirement system, or other similar benefits of the PRHTA employees. The same applies to all personnel, sub-contractor and/or sub-contractors hired by the COMPANY to provide the professional services herein contracted.



**TWENTY-SECOND:** No services regarding this Contract, nor any payment or distribution shall be effected until the Contract has been registered in the Comptroller's Office, as mandated by Law Number 18 of October 30, 1975, as amended.

**TWENTY-THIRD: NO ASSIGNMENT.** The COMPANY may not assign any of its rights or obligations under the Contract without the prior written consent of the Secretary of the DTPW and the Executive Director of the PRHTA, which consent may not be unreasonably withheld.

International Traffic Systems
Services Agreement
Page 32 of 37

**TWENTY-FOURTH: WAIVER.** The failure of the PRHTA, the PRHTA's Project Managers or Monitors to enforce any provision of the Contract or any right or remedy available at law or in equity shall not be construed to be a waiver of any such provision, right or remedy, nor in any way affect the validity of the Contract or any part thereof. To be effective, a waiver of any right of the PRHTA under this Contract must be express, in writing, issued by the Secretary of the DTPW and the Executive Director of the PRHTA and specifically addressed to the COMPANY.

**TWENTY-FIFTH: CAPTIONS.** The captions or headings in any Contract Document are for convenience only and in no way define, limit or describe the scope or intent of any provisions or sections of such Contract Document.

**TWENTY-SIXTH: EXECUTION IN COUNTERPARTS.** This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

**TWENTY-SEVENTH: COPYRIGHTS.** The COMPANY, PRHTA and other agencies which may be involved in this system under PRHTA control, agree to respect and preserve the copyright of studies, books, maps, reports, and other documents belonging to third parties produced in connection with this contract. It also agrees and covenants not to disclose any confidential information it may have access incidental to the performance of the Scope of Work object of this Contract, including but not limited to, vehicles registration, its owner, identification numbers, etc.



**TWENTY-EIGHTH: CONFIDENTIALITY.** The COMPANY shall not use the information that by its nature, knowledge or expertise of the latter is considered confidential, acquired during or as a result of the service entrusted to it by contract by the PRHTA or the Commonwealth of Puerto Rico, for purposes other than the obligations under contract or to obtain, directly or indirectly or in any way, advantage or benefit for itself or any natural or legal person, business or entity. The COMPANY agrees to treat that information identified as confidential as strictly confidential or secret. DTPW or the PRHTA will notify COMPANY in writing any other information that will be considered secret and/or confidential. PRHTA shall not use the information that by its nature, knowledge or expertise of the latter is considered confidential, acquired during

or as a result of the service provided and entrusted to it by contract by COMPANY, for purposes other than the obligations under contract or to obtain, directly or indirectly or in any way, advantage or benefit for itself or any natural or legal person, business or entity. PRHTA agree to treat that information identified as confidential as strictly confidential or secret. COMPANY will notify the PRHTA in writing regarding any other information that will be considered secret and/or confidential.

### THIRTIETH: ASSIGMENT OR SUBCONTRACT

**30.1**    The COMPANY is not authorized to and will not subcontract in whole or in part any of the obligations under this contract without the express prior written consent of the PRHTA, except to members of the National Public Safety Consortium, understanding that if such occurs breach occurs, the PRHTA will have the right to immediately resolve this contract, and terminate the same for cause. From that moment on, all the rights of the COMPANY shall cease and expire. COMPANY does have the right at its sole discretion to add or remove Partner-Members in the Consortium, but to change any Consortium member rendering services under this Contract, it has to give prior notice and has to have prior written authorization of the PRHTA, which shall not be unreasonably withheld.    In any case of substitution of an existing sub-contractor or supplier, the new one has to have equal or better qualifications than the former sub-contractor or supplier.

**30.2.1** Any request to hire a subcontractor shall specify the matters or cases in which it participates and will include all certifications, information and affidavits as required to the COMPANY under this contract. PRHTA reserve the right to refuse any subcontract it deems not in its best interests.

**30.2.2** Each subcontract signed by the COMPANY has to provide that all applicable conditions of this contract will apply to the subcontractor and its officers, agents and employees in all respects, as if they were employees of the COMPANY. In addition, the COMPANY agrees that the approval of a subcontractor by the PRHTA does not establish any rights in favor of the subcontractor and against the PRHTA, or impose on the PRHTA any obligation, responsibility or duty in favor of any subcontractor or create any contractual relationship between the subcontractor and the PRHTA.

**30.2.3** The COMPANY agrees and undertakes to include in any subcontract or agreement with its subcontractors, all contractual arrangements necessary to enforce all the above provisions under this clause and all other applicable provisions under this contract.

**30.2.4** The original consortium members that will participate in this Pilot Project, providing the services under this agreement, and that do not require further action from the PRHTA to be accepted, are:  IX Group, Inc.; NDI Recognition Systems; InsureNet International; Northern Lakes Data Corp.; and Delcan Corporation.  If any of these members were to change or be substituted, or in any event, if any other subcontract were to be awarded by the COMPANY to provide the services under this agreement, express written approval from the PRHTA shall be obtained as described herein.

**30.3** The PRHTA may undertake or award contracts for similar or additional Services provided by the COMPANY under this Agreement, related to the SYSTEM or any similar or concurrent electronic or automated system.  The COMPANY shall cooperate fully with such other Contractors and/or subcontractors and/or the PRHTA's employees in the scheduling and coordination of its own Services with such additional work.  PRHTA agree that should contracts and/or awards be made, COMPANY is not required to provide licenses, software code or use of and/or access to, COMPANY equipment and systems or third party software for such purposes unless it is absolutely necessary to make the other system work, in which case a confidentiality agreement, or any other kind of agreement to preserve the COMPANY's rights shall be executed. The COMPANY shall not commit or permit any act that will interfere with the performance of work by any other PRHTA's contractor or by the PRHTA's employees.

**30.4** COMPANY may undertake contracts for similar or additional Services provided to the PRHTA under this Agreement, related to the SYSTEM or any similar or concurrent electronic or automated system, to other Agencies and to Municipalities of Puerto Rico.  COMPANY agrees that should such contracts and/or awards be made, the PRHTA is not required to provide licenses, software code or use of and/or access to, the PRHTA equipment and systems or third party software for such purposes unless it is absolutely necessary to make the other system work, in which case a confidentiality agreement, or any other kind of agreement to preserve the rights of the PRHTA shall be

executed.   The PRHTA shall not commit or permit any act that will interfere with the performance of work by COMPANY or by the COMPANY's employees.

**THIRTY-FIRST: ASSIGNMENT OF INTEREST.** The COMPANY and the PRHTA will not assign or transfer interest in this contract without the prior written consent of the other party, provided, however, that such consent is not necessary to place an assignment or transfer of interest to another agency or governmental instrumentality of the Government of the Commonwealth of Puerto Rico to enable the continuation of the PRHTA's obligations hereunder.   Nor will said consent be necessary in case of an assignment made by operation of any law.

**THIRTY-SECOND: CONTRACTS WITH OTHER AGENCIES.** The COMPANY certifies that it has no current contracts with other agencies, and that if it did, they are compatible with and not in conflict with the services herein contracted.

**THIRTY-THIRD: TERMINATED OR DISOLVED CONTRACTS.** The COMPANY certifies that, neither it nor any of the original consortium member, nor any other subcontractor, as to the contract it has or may in the future have with other agencies of the Government of the Commonwealth of Puerto Rico or its municipalities, it has and will in the future comply with all of the obligations under those contracts. Furthermore, as no default has existed, none of these contracts were terminated or resolved by unsatisfactory performance, neglect, negligence or violation of any law or the terms of the contract.

**THIRTY-FOURTH: SOCIAL SECURITY DEDUCTIONS AND TAX REVENUES.** No discounts will be made regarding any employer obligation, except as required by Law of mandated by Court Order. The payments made under this contract will be notified to the Treasury Department. The COMPANY is responsible for making all payments it is required by law to the Social Security, Federal Income Tax Bureau, Puerto Rico's Treasury Department, Puerto Rico's Municipalities, as may be required, and any other governmental entity.

**THIRTY-FIFTH: PREFERENCE.** The COMPANY shall use and shall give preference to those items extracted, produced, assembled or packaged in the Commonwealth of Puerto Rico or distributed by agents established herein, provided that they have to meet the specifications, terms and conditions set forth in the statement of

work and its price, after applying the appropriate investment parameters, is the lowest, according to the Law for the Puerto Rican Industry Investment, Act No. 14 of January 8th, 2004. It shall also use and give preference to hire, for the performance of the services to be performed under this Contract, citizens of the Commonwealth of Puerto Rico.

**THIRTY-SIXTH: RETENTION OF PAYMENT DUE.** PRHTA may direct escrow agent to withhold from any payment due to the COMPANY under this Contract, any sum of money equivalent to the tax debt owed by the COMPANY to any of the government instrumentalities available to the Circular Letter No. 1300-26-08 of February 11th, 2008, for the Treasury Department, where this tax debt is defined according to the categories set out in the Circular, except for those instances where the tax debt is under a pre-arranged payment plan between the COMPANY and the Treasury Department or where the COMPANY can be awaiting a decision after having submitted a petition for review following the procedures established by the applicable laws and regulations, thus involving the COMPANY to cancel the debt, as appropriate, if any.

**THIRTY-SEVENTH:** This contract is not transferable. Transfer will be sufficient cause to terminate this contract immediately, without being subject to the provisions of other Clauses of reasons for termination of this contract. The COMPANY in breach of this clause will then be liable for any damages or injury caused to the PRHTA where the amounts are specified in the CONTRACT, whether they are directly or indirectly caused by the assignee or subcontractor.

**THIRTY-EIGHTH:** Under Act No. 243 of November 10th, 2006, known as the "*Ley de la Política Pública sobre el uso del Seguro Social como Verificación de Identificación*", the Parties undertake not to disclose, reveal and not deploy Federal social security numbers used to identify the other party, or anyone during the performance of the services of this agreement, for other purposes not permitted by law and make it eligible, if they relate to any natural or legal copy of this contract or any report issued under the same.

**THIRTY-NINETH: ENTIRE AGREEMENT.** The Contract constitutes the entire integrated agreement between the parties, and any and all prior or contemporaneous promises, representations, agreements or understandings, whether oral or written,

International Traffic Systems
Services Agreement
Page 37 of 37

including without limitation portions of the Proposal that are not part of the Contract, between the parties are expressly merged into the Contract, and superseded thereby.

**IN WITNESS WHEREOF**, in San Juan, Puerto Rico, this December 30 th, 2013, the PRHTA and the COMPANY have caused this contract to be executed on the day and year first above written.

**INTERNATIONAL TRAFFIC SYSTEMS, LLC**

Mr. Jonathan Miller
Chairman
Employer Identification # ███4994

**DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS**

Miguel A. Torres Díaz, PE
Secretary

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

Javier E. Ramos Hernández, PE
Executive Director
Employer Identification # ███3808



**Signature Page**

**VRB Approval**
:

| Function | Name | Signature | Date |
|---|---|---|---|
| PRHTA Technical Representative | Hernán López | | 7/14/14 |

| Function | Name | Signature | Date |
|---|---|---|---|
| PRHTA Financial Department Representative | CESAR GANDIAGA | | 7/14/14 |

| Function | Name | Signature | Date |
|---|---|---|---|
| Legal Department Representative | Yasmin. M. Santiago Reyes | | 14/2/2014 |

| Function | Name | Signature | Date |
|---|---|---|---|
| ITS Representative | JONATHAN MILLER | | 7/14/2014 |

**Management Approval:**

The review and approval of these proof of concept prior to its implementation is the joint responsibility of the following functional areas at Department of Transportation and Public Works, Puerto Rico.

| Functional Area | Name | Signature | Date |
|---|---|---|---|
| Chief Information Officer | CESAR GANDIAGA | | 07/14/2014 |
| Tya Fernando dios 07/14/2014 | Jose L. Robles Venegas | | |