**Diversified Strategies Consulting, LLC**

13 de mayo de 2015

**POR CORREO ELECTRÓNICO**

Ledo. Víctor D. Candelario
Quiñones & Arbona
vcandelario@qalawpr.com

> Re: Compensación por Terminación Contractual
> *International Traffic Systems, LLC*

Estimado licenciado Candelario:

    Reciba un cordial saludo de nuestra parte. Según acordado durante nuestra reunión del pasado 11 de mayo de 2015 en las oficinas del Departamento de Transportación y Obras Públicas ("DTOP"), adjunto le sometemos la presente misiva con el propósito de clarificar la posición de nuestro cliente, International Traffic Systems, LLC ("ITS"), en relación al asunto de referencia.

    Cabe señalar que las manifestaciones y/o aseveraciones vertidas en la misiva se presentan estrictamente para fines de la negociación extrajudicial del presente asunto y bajo ningún concepto serán admisibles dentro de ningún procedimiento judicial y/o administrativo. Por tanto, ITS expresamente establece que no autoriza la divulgación de la presente misiva a ninguna tercera persona y/o entidad adicional a las aquí incluidas.

    Como es de su conocimiento, el 30 de diciembre de 2013, la Autoridad de Carreteras y Transportación ("ACT"), el DTOP (conjuntamente denominados "PRHTA") y ITS suscribieron el Contrato de Servicios Número 2014-000182 (el "Contrato"), mediante el cual se contrató a ITS para implementar y operar un sistema de control de tráfico para la expedición de multas administrativas por violaciones a las leyes de transito en intersecciones de alto riesgo (el "Sistema").

**I. REQUISITO DE *FULLY OPERATIONAL* PARA COMIENZO DE PAGOS**

    De conformidad con la sección 2.1 del Contrato, los pagos por servicios prestados por ITS a PRHTA comenzarían una vez PRHTA determinase que el sistema había sido implementado, lo que conllevaba la demostración de que los tres (3) sistemas de

PO Box 10051 • San Juan, PR 00908 • 787-934-0805

Ledo. Víctor D. Candelario
13 de mayo de 2015
Página 2

reconocimiento de tablillas (speed, red light, trailer mounted and fixed site/general purpose) estaban "**fully operational**" o enteramente operacionales.

Específicamente, la cláusula contractual antes mencionada establece lo siguiente:

> Section 2.1 "Payment for the services to be provided by the Company to PRHTA regarding the System, will commence only after PRHTA declare the System implemented which shall follow the live demonstration of each one of the three following types of license plate recognition system-enabled systems (speed and red light, trailer-mounted, and fixed site/general purpose), being fully operational and shall be payable only from proceeds after each month's accounting reconciliation which is to be no later tan the fifteenth (15th) day of the following month, and shall consist of the following distribution of revenues of al notices/assessments/ citations issued pursuant to the System (the Payment Schedule)".

Por lo tanto, del lenguaje específico de la anterior cláusula contractual surge inequívocamente cuales son los requisitos para la determinación de que el Sistema estaba "fully operational", lo que, a su vez, activaría las obligaciones de pago por parte de PRHTA a favor de ITS.

Por otro lado, la sección 7 del Contrato establece que el mismo tendrá vigencia desde la fecha de su firma y será considerado "fully operational", para propósitos de la sección 2.1 antes mencionada, desde la fecha en que PRTHA y ITS establezcan por escrito que el sistema estaba apto para operar por un término de 60 meses. De hecho, del propio Contrato, específicamente en la Sección 7, establece que se estima que el Sistema estaría siendo declarado "enteramente operacional" en un período estimado de tres (3) meses, por lo cual el termino del contrato sería por unos 63 meses a partir de la fecha de la firma del mismo, es decir, hasta el 30 de marzo de 2019.

> Section 7 - "TERM. This Contract shall be considered effective from the date of its execution and shall be considered declared fully operational for purposes of section 2.1 from the date in which PRHTA and Company agree in writing that data from DAVID has been successfully sourced and is accurate and ready for use and then for a period of sixty months. For purposes of this section, it is estimated that the System will be declared fully operational in a period of 3 months, making this contract's term one of sixty three (63) months after its execution, this is, until March 30th, 2019. Which term may be amended or renewed at the PRHTA's sole discretion, except in case of the adjustment in the term to the real initial pre "declared fully operational" phase, which adjustment in term shall automatically be agreed to by all parties. Within 15 days of its execution, the parties shall meet to establish a calendar of events that must happen and/or requirements the Company must comply with so that the PRHTA can give it the go ahead to implement the Pilot Project. DTPW and PRHTA shall provide all

PO Box 10051 • San Juan, PR 00908 • 787-934-0805

Ldo. Victor D. Candelario
13 de mayo de 2015
Página 3

support, information and access to Company regarding DAVD and other necessary data and support so that Company can comply with the agreed calendar of events."

De conformidad con lo dispuesto en las secciones 2.1 y 7 del Contrato, el 14 de julio de 2014, PRHTA cursó una comunicación escrita a ITS certificando que el sistema estaba "fully operational" y autorizando la notificación de multas.

## 2. MÉTODO DE PAGO

Según la Sección 2.1 del Contrato, PRHTA venia obligada a remitir a ITS el 45% de todos los ingreso generados por notificaciones, multas y/o citaciones por cada mes del 1er año en o antes del día 15 del mes siguiente.

Cabe señalar que, conforme a la sección 2.2 del Contrato, todos los ingresos generados y recolectados por el Sistema debían ser depositados en un "Escrow Account" en el BPPR, con instrucciones para que se dividieran los ingresos, luego del pago de los gastos bancarios, según los porcientos establecidos en el Contrato.

La sección 2.2 le daba derecho a ITS de tener acceso electrónico a dicho Escrow Account y a revisar el status de los pagos. Sin embargo, en violación al Contrato, PRHTA nunca depositó fondo alguno en el Escrow Account. PRHTA, a pesar de haber generado ingresos por la imposición de multas utilizando el Sistema. PRHTA tampoco hizo pago alguno a ITS correspondiente a los porcientos acordados ni proveyó acceso a ITS a la información del Escrow Account. Dicha evidencia surge de los estados de cuenta provistos por parte de BPPR, como Escrow Agent, a ITS.

## 3. TERMINACIÓN CONTRACTUAL POR CONVENIENCIA

La sección 8 del Contrato regula los distintos escenarios de terminación. La sección 9 regula la terminación por causa justificada, la cual no resulta aplicable en este caso. Bajo la sección 8, PRHTA se reserva el derecho de terminar el Contrato en la eventualidad de que determine que la terminación sirve sus mejores intereses.

Específicamente, en lo pertinente, la sección 8 del Contrato establece lo siguiente:
Section 8 – "TERMINATION FOR CONVENIENCE". "The PRHTA may terminate this contract, in whole or part, whenever it determines that such termination is in its best interest. Any such termination shall be effected by delivery of a Notice of Termination specifying the extent to which performance under the contract is terminated, and the date upon which such termination becomes effective (the Date of Termination), which in any event will be no less tan thirty (30) calendar days from the Notice of Termination and could be indicated as part of a conditional clause (pending a future event). In this case, the PRTHA will receive all materials and services at that time and the Company will be compensated as per the terms of this contract for the services rendered up to date of the resolution, subject to what it stated in section Ninth of this contract."

PO Box 10051 • San Juan, PR 00908 • 787-934-0805


Ledo. Víctor D. Candelario
13 de mayo de 2015
Página 4

El proceso para la terminación delimitado en el Contrato requiere una Notificación de Terminación, 30 días antes de la efectividad de la misma. En este caso, PRHTA envió la Notificación de Terminación el 14 de enero de 2015 dado que, tal y como reza dicha misiva, entendía que dicha terminación "servía sus mejores intereses". Contados los treinta (30) día a partir de la notificación, la terminación contractual se hizo efectiva el 16 de febrero de 2015.

### A. "PRE-FULLY OPERATIONAL TERMINATION FOR CONVENIENCE"

La sección 8.1 regula la terminación contractual **antes de** que el sistema haya sido declarado "fully operational". En este caso, según previamente establecido, PRHTA había certificado que el sistema estaba enteramente operacional o, en inglés, "fully operational", por lo cual la cláusula aplicable es la Sección 8.2 que discutiremos a continuación.

### B. "POST-FULLY OPERATIONAL TERMINATION FOR CONVENIENCE"

La sección 8.2 del Contrato regula la terminación contractual **después de** que el sistema ha sido declarado "fully operational". Lo esencial, para fines de este asunto, es que la terminación se dio luego de que el sistema había sido determinado enteramente operacional y antes de que ITS recuperara su inversión inicial.

Cabe señalar que para fines del Contrato, esta cláusula establece que ITS habrá recuperado su inversión inicial una vez haya recibido $6,000,000.00 más sus gastos operacionales para el período a ser contado partiendo de la fecha de certificación de que el sistema estaba "fully operational" hasta la fecha de efectividad de la terminación. En este caso, dado que PRHTA no remitió los pagos requeridos bajo la Sección 2.1 del Contrato, ITS no tenía manera alguna de haber recuperado su inversión inicial.

Los requisitos para este tipo de terminación que ocurre antes de que ITS haya recuperado su inversión inicial, son los siguientes:

(i) PRHTA le responderá a ITS si el producto de la inversión inicial requerida ($6,000,000 + gastos operacionales) menos la suma del valor de los equipos que ITS remueve y retiene, menos la suma de todas las cantidad pagadas a ITS bajo el Contrato, es mayor que cero.

Ledo. Víctor D. Candelario
13 de mayo de 2015
Página 5

### Cálculo de Compensación por Terminación:
**$6 millones**
**+ gastos operacionales**
**- valor de equipo removido**
**- cantidades pagadas a ITS por PRHTA**
Compensación por Terminación Contractual

(ii) En caso de que el producto sea mayor que cero, las partes discutirán la compensación pagadera a ITS como resultado de la terminación por conveniencia.

### 4. POSICIÓN DE ITS

Bajo la sección 7 del Contrato, el sistema fue declarado "fully operational" por la PRHTA el 14 de julio de 2014.

En la Notificación de Terminación, con fecha del 14 de enero de 2015, el lenguaje utilizado establece que la terminación fue bajo la sección 8 del Contrato, entiéndase por conveniencia, y que se hizo en base a los mejores intereses de la PRHTA.

Por tanto, bajo la propia Notificación de Terminación, PRHTA reconoce expresamente que la cláusula de compensación por terminación de la sección 8 resulta aplicable.

A la luz del hecho de que existía una declaración de "fully operational", la terminación se rige por la sección 8.2 del Contrato. Además, a la fecha del 14 de enero de 2015, ITS no había recuperado su inversión inicial. Por tanto, la compensación por terminación se calcula en base a lo dispuesto en la sección 8.2, particularmente, el escenario específico previo a haberse recuperado los $6 millones más gastos operacionales.

Para propósitos del cálculo de la compensación pendiente pagadera a ITS, según discutido anteriormente, durante el transcurso de las presentes conversaciones transaccionales, y sujeto a que PRHTA esté en posición de auscultar un posible acuerdo de pago por terminación contractual, ITS estará en posición de someter evidencia documental fehaciente en virtud de la cual se establezca con meridiana claridad las siguientes partidas: (i) gastos operacionales de ITS; (ii) valor de los equipos removidos y retenidos por ITS; y (iii) reconciliación de las cantidades debidas y pagas por PRHTA a ITS.

Ledo. Víctor D. Candelario
13 de mayo de 2015
Página 6

Por otro lado, pero no menos importante para fines del análisis justo y adecuado del presente asunto, resulta indispensable señalar que durante el transcurso del contrato, entre otras consideraciones:

1. PRHTA no remitió los dineros cobrados a las cuentas creadas bajo el Contrato y privó a ITS de tener el acceso a esas cuentas, conforme lo requería el Contrato.
2. PRHTA no proveyó la totalidad de la información y asistencia requerida bajo el contrato.
3. PRHTA no permitió que ITS enviara notificaciones de multas debidamente emitidas por distintos conceptos que suman cantidades multimillonarias.
4. PRHTA se pronunció en reiteradas ocasiones de manera incorrecta en cuanto al desempeño de ITS causando daños y perjuicios sustanciales a la reputación de la empresa y sus principales.

Todo lo anterior podría resultar en un pleito legal con una reclamación multimillonaria en contra de PRHTA. Sin embargo, ITS podría desistir de solicitar compensación por dichos conceptos en la medida que se logre un acuerdo de transacción extrajudicial basado en la fórmula de compensación establecida en la Sección 8.2, tal y como hemos descrito en esta misiva.

Finalmente, reiteramos nuestra disponibilidad para sostener un diálogo de buena fe sobre estos asuntos y estaremos disponibles para discutir el contenido de esta misiva durante la reunión pautada para el próximo martes, 19 de mayo de 2015.

Agradeciendo su pronta atención a este asunto, quedamos de usted.

Cordialmente,

Alejandro J. Figueroa-Colón

Carlos J. Sagardía-Abreu

PO Box 10051 • San Juan, PR 00908 • 787-934-0805