## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>       Debtor. | PROMESA<br><br>Title III<br><br>No. 17-BK-4780-LTS |

## JOINT STATUS REPORT OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND OTHER PARTIES IN INTEREST REGARDING CONFIRMATION SCHEDULE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

**To the Honorable United States District Judge Laura Taylor Swain:**

In the *Order Concerning Informative Motion of the Financial Oversight and Management Board for Puerto Rico Regarding Extension to June 23, 2023 for Certification of 2023 PREPA Fiscal Plan* [ECF No. 3768] (the "June 23 Order"), the Court directed the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] to meet and confer with counsel for the objectors to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [ECF No. 3296] (as it may be amended, supplemented, or modified, the "Title III Plan") as soon as practicable after the certification of the 2023 PREPA Fiscal Plan, and file a joint status report (the "Joint Status Report") by June 28, 2023 at 5:00 p.m. (A.S.T.). *See* June 23 Order at 2.

After the Oversight Board filed the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico Listing Primary Amendments to Title III Plan of Adjustment in Connection with Certification of 2023 PREPA Fiscal Plan* [ECF No. 3793], the Court adjusted the status report deadline to June 27, 2023 at 2:00 p.m. (A.S.T.). *See Order Concerning Informative Motion of the Financial Oversight and Management Board for Puerto Rico Listing Primary Amendments to Title III Plan of Adjustment in Connection with Certification of 2023 PREPA Fiscal Plan and Joint Status Report Concerning Confirmation Proceedings* [ECF 3794] (the "June 24 Order") at 2.

This Joint Status Report is being submitted by the following:

(i)     The Oversight Board;

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

(ii)     National Public Finance Guarantee Corporation ("National");

(iii)    The Fuel Line Lenders ("FLL");

(iv)    The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF");

(v)     The Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group"), U.S. Bank National Association (the "Trustee"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured"), Syncora Guarantee Inc. ("Syncora," and collectively with the Ad Hoc Group, Trustee, and Assured, "Bondholders");

(vi)    The Official Committee of Unsecured Creditors (the "Committee");

(vii)   The Ad Hoc Committee of National Claim Assignees (the "Ad Hoc Committee");

(viii)  Unión de Trabajadores de la Industria Eléctrica y Riego ("UTIER");

(ix)    Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE");

(x)     Instituto de Competitividad y Sostenibilidad Económica de Puerto Rico ("ICSE");

(xi)    PV Properties, Inc. ("PV Properties"); and

(xii)   Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.-Enlace de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., and Amigos del Río Guaynabo, Inc. (collectively, the "Environmental Advocacy Groups," and together with Bondholders, UCC, Ad Hoc Committee, UTIER, SREAEE, ICSE, and PV Properties, the "Objectors").

I.      **Background**

1.      On June 17, 2023, the Oversight Board filed the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico Regarding Extension to June 23, 2023 for Certification of 2023 PREPA Fiscal Plan* [ECF No. 3767].  Therein, the Oversight Board informed the Court it was unable to responsibly certify a fiscal plan for PREPA for fiscal year 2023 (the "2023 PREPA Fiscal Plan") by its anticipated deadline of June 16, 2023, and committed to certifying the 2023 PREPA Fiscal Plan and identifying any necessary amendments to the Title III Plan by June 23, 2023.  The Oversight Board further committed to upload to the Plan Depository the model and other source data supporting the 2023 PREPA Fiscal Plan as soon as they are available.

2.      On June 18, 2023, the Court entered the Order, requiring the Oversight Board to meet and confer with counsel for the objectors and file this Joint Status Report.  Additionally, the Court directed the Oversight Board to meet and confer with counsel for the objectors within 24 hours of the certification of the 2023 PREPA Fiscal Plan and file an additional status report by June 28, 2023, subsequently adjusted to June 27, 2023.

3.      On June 20, 2023, consistent with the Order, counsel for the Oversight Board met and conferred with counsel for National, FLL, AAFAF, and the Objectors to discuss whether and to what extent upcoming confirmation-related dates should be altered or canceled in advance of the issuance of the 2023 PREPA Fiscal Plan and the forthcoming June 28 Status Report.  Counsel for the Oversight Board informed the Objectors that the Oversight Board (i)  anticipated certifying PREPA's 2023 Fiscal Plan on Friday, June 23; (ii) intended, in connection with such certification, to describe any changes it anticipated making to its proposed plan of adjustment pursuant to PROMESA § 313; and (iii) consistent with prior practice, it may take up to two weeks following

any fiscal-plan certification to provide models and data underlying the new fiscal plan to Objectors, although the Oversight Board would endeavor to provide the materials faster if possible.

4.      On June 21, 2023, the Oversight Board and other parties in interest filed the *Joint Status Report of the Financial Oversight and Management Board for Puerto Rico and Other Parties in Interest Regarding Confirmation Schedule* [ECF No. 3781].   Therein, the parties informed the Court that, following their meet-and-confer, there was a consensus that there was no choice but to request all remaining confirmation-related deadlines be suspended.

5.      Also on June 21, 2023, the Oversight Board filed the *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Suspension of Certain Confirmation Deadlines* [ECF No. 3782] requesting the Court suspend all confirmation-related dates and deadlines, including the dates for the Confirmation Hearing.  The Oversight Board further stated that, following certification of the 2023 PREPA Fiscal Plan, it would identify necessary amendments to the Title III Plan.  *Id.* at 6.

6.      That same day, the Court entered the *Order Suspending Confirmation Deadlines* [ECF No. 3783] suspending all deadlines established by by the Solicitation Procedures Order,[3] the Confirmation Procedures Order,[4] and the Confirmation Hearing Procedures Order,[5] pending

---

[3] The "Solicitation Procedures Order" is the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 3304].

[4] The "Confirmation Procedures Order" is the *Third Amended and Restated Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 3565].

[5] The "Confirmation Hearing Procedures Order" is the *Amended Order Regarding Procedures for Hearing on Confirmation of PREPA Plan of Adjustment* [ECF No. 3759].

further order of the Court.

7.       On June 23, 2023, the Oversight Board certified the 2023 PREPA Fiscal Plan.

8.       Also on June 23, 2023, the Oversight Board filed the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico Listing Primary Amendments to Title III Plan of Adjustment in Connection with Certification of 2023 PREPA Fiscal Plan* [ECF No. 3793]. Therein, the Oversight Board outlined certain amendments to the Title III Plan for it to be consistent with the certified 2023 PREPA Fiscal Plan and committed to certifying and submitting a Third Amended PREPA plan of adjustment on or before July 14, 2023.

9.       On June 24, 2023, the Court entered the June 24 Order, adjusting the June 28 status report deadline to June 27, 2023 at 2:00 p.m. and ordering the parties to "set forth [their] respective views on the appropriate timetable and any necessary discovery and other proceedings in advance of a hearing on confirmation of the proposed Third Amended Plan of Adjustment described in the Informative Motion." June 24 Order at 2.

## II.    Parties' Positions[6]

### Oversight Board's Statement:

10.      The Oversight Board is proposing a schedule that allows for necessary additional discovery and related proceedings to the extent required by the modifications it is making to PREPA's currently proposed plan of adjustment. The Oversight Board submits all additional discovery should be limited to the modifications. Its proposed schedule allows for a confirmation hearing to commence mid-October 2023. The Oversight Board shared a draft of the proposed

---

[6] As of the filing of this Joint Status Report, counsel for the Oversight Board had not received notice from counsel for UTIER, SREAEE, or the Environmental Advocacy Groups as to whether they had a statement they wished to include. PV Properties and ICSE stated that they did not have a statement.

schedule with the parties in interest on Monday, June 26, 2023.   Attached hereto as Exhibit 1 is the Oversight Board's proposed confirmation schedule.  Attached hereto as Exhibit 2 is the parties' correspondence from June 26 at 12:30 p.m. through June 27 at 1:01 p.m., which sets forth the parties' positions as to issues pertaining to scheduling matters.

11.    At 1:36 pm, the Board received the bondholders' position below.  Pursuant to PROMESA section 313, the plan proponent, as of right, can modify a plan at any time before confirmation.  The Court did not deprive the Board of that right.  The Bondholders have been determined to have only unsecured claims, other than in respect of cash safely held in special funds.  Accordingly, Bankruptcy Code section 362(e) does not apply because there is no stay of acts against property.  The Bondholders' request to prosecute a stay relief motion is a request to prosecute an unsecured claim to the prejudice of all other unsecured claims.  The Bondholders' request to prosecute a motion to dismiss the Title III case, when a confirmation hearing will take place in a few months, simply makes no sense.  Such a motion fails on its face.  The Bondholders' request to prosecute their appeal can lead to the bondholders having no unsecured claim.  In any event, there is no reason to delay confirmation whether the appeal goes forward or not. The Bondholders know the plan amendments provide less for non-settling bondholders.  That class will reject again.  Nevertheless, if the Court desires resolicitation, it can be done during the currently proposed schedule, and should not delay the confirmation hearing.

**Bondholders' Statement:**

1.    Bondholders have not even seen the proposed plan or its underlying models, and as a matter of due process they should not be required to agree to a new confirmation schedule for a plan they know next to nothing about.  The Oversight Board has provided only "summary descriptions" of amendments it believes are required to the plan, and even those "are preliminary

and subject to change" until the amended plan is filed on July 14.  ECF No. 3793 at 7 n.15.  Instead, the Oversight Board has emphasized the setting of dates for each step of the process, which although important and addressed further below, elides the main issue:  No new confirmation schedule should be set at this time.  At a minimum, the confirmation process should be put on pause to permit an appeal of the Court's adjudication and disposition of the adversary proceeding, the outcome of which remains the "gating issue" for developing a confirmable plan of adjustment. Bondholders were previously denied the opportunity to interlocutory appeal of the Court's summary judgment decision, but yesterday's order disposing of the allowed amount of Bondholders' Unsecured Net Revenue Claim leaves pending only a handful of discrete matters which can be resolved promptly.  The Court should first resolve those discrete pending issues so that Bondholders can exercise their appellate rights; not doing so risks wasting valuable time and resources on confirming a plan that may require substantial changes that make it unconfirmable.

    2.    Even if the Court wishes to grant the Oversight Board the right to file and prosecute a new plan, in contravention of the existing order, the Court should set a schedule that affords the First Circuit a reasonable period of time to review the disposition of the adversary proceeding which would promote judicial economy and ensure due process and fundamental fairness of the adversarial system.  With respect to the latter, the Oversight Board abandoned its plan of adjustment, for which discovery was complete, votes solicited, and even final objections had been filed. The Bondholders did not cause this situation; they adhered in good faith to the process imposed by the Court and reasonably and legitimately expected those efforts would not be in vain. To the extent the Court denies Bondholders' request to pause these proceedings pending appeal and instead grants the Oversight Board the opportunity to pursue a new plan of adjustment, the schedule must build in time to seek approval of a new disclosure statement and for re-solicitation,

both of which are statutorily required.  Bondholders also submit that the process to date has unfairly prejudiced their right to proceed with their motion to dismiss or lift the automatic stay, which was filed in September 2022.  To the extent the Title III confirmation process is not paused to permit the First Circuit to review the "gating issues" decided in the adversary proceeding against Bondholders, then at the very least the Court's stay in respect of Bondholders' motion filed nine months ago should be lifted so each side's request for judicial relief can progress in parallel, in the event the Oversight Board cannot meet the requirements to confirm its new amended plan.  As set forth more fully below, confirmation should not proceed at this time.

3.    *First*, due to the Oversight Board's inability to confirm a plan on the schedule set by the Court (despite the Court's admonition last year that a plan must be realistically confirmable and not a mere placeholder), Bondholders should be permitted to move forward with their own request for judicial relief, filed last September, after five years of delays and the Oversight Board's abandonment of the 2019 RSA, seeking dismissal or lifting of the automatic stay.  ECF No. 2973. That is the only outcome consistent with this Court's prior order and fairness to both sides.  The Court stayed Bondholders' motion "until the earlier of (i) the day after the deadline set by the Court for filing a proposed plan of adjustment and related materials, or if such plan deadline is not met, (ii) the termination of the plan confirmation process."  ECF No. 3013 at 4.  The Oversight Board filed a plan (over which they had discretion on how to formulate), and the parties undertook three months of costly discovery on that plan, only for the Oversight Board to announce last week that it wants to start over, even though Puerto Rico's economy has continued to improve.

4.    It is fundamental in bankruptcy cases that debtors not be allowed to linger for years while creditors are frozen out by the automatic stay, and while the debtor continues to breach its agreements and to selectively pay some creditors but not others and to encumber the debtor with

9

new liabilities, all with no court oversight.  The Oversight Board has shown it is unable to prosecute this case by proposing a confirmable plan, even after the Court cautioned the Oversight Board that if that plan could not be confirmed, then "the risk of dismissal is, frankly, higher than the likelihood [the Court] w[ould] be willing to afford the Board years, and hundreds of millions of additional dollars, to experiment with the development of another take-it-or-leave-it-plan strategy."  5/8/23 Hr'g Tr. 14.  Bondholders therefore intend to file a motion for the Court to lift the litigation stay on their motion to dismiss or lift the automatic stay, and to file a renewed motion to lift the automatic stay.  They also intend to ask the Court to hold a hearing on their requests within 30 days of their motion, as required by Section 362(e) of the Bankruptcy Code.  And, in the meantime and until these motions on the continued viability of this case are decided, no confirmation schedule should be established.  The Oversight Board has stated that it opposes Bondholders' request for relief, except that it would agree to expedited consideration of a challenge to the constitutionality of Title III under the uniformity requirement of the Bankruptcy Clause.

5.    *Second*, if this case is not dismissed, then confirmation proceedings should be put on hold pending appeal of the decisions in the adversary proceeding.  In the last three months, this Court has issued two unprecedented rulings in the adversary proceeding:  The first, the Summary Judgment Order, stripped Bondholders of substantially all of their collateral and denied they even had a right to be paid the amounts loaned.  And the second, the Claim Estimation Order, reduced the unsecured amount owed Bondholders by over 75% of what was loaned.  These rulings, if allowed to stand, would materially alter and impair the rights of the holders of the revenue bonds

in this case and strip this debtor of access to collateral—prospective revenue streams—that they have historically relied upon to support their financing needs.

6.      Given the significance of these rulings to this case, they should be reviewed now. If reversed, the PREPA's contemplated plan would likely be unconfirmable.  As the Oversight Board conceded in its Disclosure Statement, if the First Circuit holds that Bondholders' liens extend to PREPA's revenues and those revenues are found to have a greater value than the value of Series B bonds in the Plan, the Plan may be unconfirmable.  ECF No. 3297 at 352.  Further, so long as these orders are subject to the appeal, the plan cannot go effective and begin making distributions, unless PREPA is required to keep a reserve of all recoveries.

7.      Bondholders intend to appeal from these rulings and to promptly seek expedited review.  To the extent the Court is not inclined to permit interlocutory review, the Court should promptly resolve the pending motion to dismiss the counterclaims and set a firm, short deadline for the disposition of the outstanding lien perfection issues.  And to facilitate a proper and efficient resolution of these matters, this Court should defer setting a new confirmation schedule on a new plan that has yet to be filed n until after the First Circuit has ruled on the request for expedited review.   Once the appellate schedule is known, this Court can then assess the best way to harmonize the proceedings before it with those that will soon be before the First Circuit.  In the alternative, the Court should require that any new plan preserve Bondholders' appellate rights as of its effective date that cannot be waived by the Board.  It would also afford Bondholders and other interested parties an opportunity to review what the new plan provides, and what is contained

11

in the underlying data (or new judgments based on that data) to help inform the scope of discovery and experts that may be needed.

8.      *Third*, the Oversight Board is statutorily be required to file a new disclosure statement and to re-solicit votes with respect to any materially modified plan.  The Board originally contended that it is not required to obtain approval of an updated disclosure statement or re-solicit votes because the only creditors adversely affected by the new plan will be rejecting classes.  *See* ECF No. 3793 ¶ 28.  That is not true:  For example, the proposed modifications adversely alter the Series B Bonds by extending their weighted average life, *see id.* ¶ 22, and thus materially affect the rights of even formerly *accepting* creditors, such as the Settling Bondholders class.  Upon raising this issue with the Oversight Board, it has now recognized today that it needs to "examin[e] the point."

9.      In any event, the Bankruptcy Code is clear that "[t]he proponent of a modification shall comply with section 1125 of this title," requiring court approval of a disclosure statement and solicitation of votes by means of that disclosure statement, "with respect to the plan as modified."  11 U.S.C. § 1127(c).  Furthermore, Federal Rule of Bankruptcy Procedure 3019(a) does not permit deemed acceptance of a modified plan where that plan includes changes adverse to "*any*" creditor who has not accepted such modifications, expressly providing that *only* "[i]f the court finds after hearing . . . that the proposed modification does not adversely change the treatment of the claim of **any creditor** . . . who has not accepted in writing the modification" shall the plan "be deemed accepted  by all creditors . . . who have previously accepted the plan."  Fed. R. Bankr. P. 3019(a) (emphasis added); *see, e.g.*, *In re America-CV Station Group, Inc.*, 56 F.4th 1302, 1309 (11th Cir. 2023) ("interest holders that previously rejected (or did not vote for) a reorganization plan are still entitled to additional disclosure and voting if the treatment of their interests is

materially and adversely affected by a modification.").  Consequently, the Oversight Board's presumption that Bondholders and other objecting creditors would vote against the Modified Plan does not excuse the Board's compliance with §§ 1125 and 1127(c).  Any revised schedule should account for this required process to move forward.  At the very least, after expedited motion practice, the Court should issue a decision on whether the Board or Bondholders are correct on this legal issue following the filing of a new Plan of Adjustment.

10.    If the Court nonetheless decides to proceed with establishing a confirmation schedule as the Oversight Board contemplates, the Oversight Board's proposed schedule should not be accepted as proposed.  The Oversight Board's proposed schedule is unfairly compressed.  That is particularly so with respect to its timing for new expert reports, given that Oversight Board has not produced its data and models, that in the past its productions have been slow and incomplete, and given that it will not file a plan until the middle of July.  To remedy these timing issues, Bondholders, joined by the Committee, proposed a slightly modified and more realistic confirmation schedule to the Oversight Board, which rejected these modifications without any discussion.  Accordingly, Bondholders and the Committee ask the Court to adopt their alternative schedule.  A clean version of the schedule is attached as Exhibit 3-A and a redline against the Oversight Board's proposal is attached as Exhibit 3-B.

11.    *First*, as just noted, the Oversight Board's proposed schedule leaves too little time for Bondholders' experts to analyze the Oversight Board's new model, data, and plan that have not even been disclosed yet, and then to prepare opening and rebuttal reports.  We know from experience that these are extraordinarily complex models, replete with embedded assumptions and data used based on instructions from counsel, and that the Board will not accompany them with the customary expert reports to explain their operation and bases.  There are also a number of other

specific deadlines that do not accommodate the reality that there will be scheduling challenges with both sides' witnesses in the last two weeks of August, and that in some instances the Oversight Board provides far too little time for briefing or other steps in the confirmation process. The schedule also contains other unfair anomalies. For example, the Oversight Board's proposed schedule would have the parties' document requests due only three days after it files its new plan, its deadline for deposition notices before expert rebuttal witnesses are even identified, and it provides objectors only two days to respond to the Oversight Board's proposed findings of fact and conclusions of law. Bondholders' proposed modifications to the schedule to make it more manageable and logical, but the Oversight Board rejected it out of hand.

12.     *Second*, Bondholders ask that the Court hold a hearing on and decide the Oversight Board's *Motion* in Limine *to Exclude Evidence Challenging Oversight Board's Certification Determinations* [ECF No. 3581] before discovery begins in earnest. The Oversight Board has argued that Bondholders (and the Committee) are not permitted to challenge its economic models. That position is wrong, not least because it in essence eliminates the Court's role in the Title III process. But either way, the outcome of the motion would bear on the scope of expert discovery, and it would benefit all sides for the issues to be decided before the parties are deep into discovery.

13.     *Third*, Bondholders object to the Oversight Board's attempts to limit discovery to "changes in the Third Amended POA" or to limit depositions to three hours. The parties will engage in discovery in good faith and focus on additional discovery made necessary by the Oversight Board's new fiscal plan and amended plan of adjustment, rather than retreading past discovery, which is in no one's interest. But Bondholders do not even know the parameters of the plan or the underlying analyses, so they should not have their discovery limited as the Oversight Board proposes. Further, the Oversight Board's ambiguous limiting language would lead to time-

14

wasting disputes about what falls within the scope of this additional discovery period.  And, with respect to the deposition time period, there are many parties in this case, and three hours will be too short to accommodate them.

14.     *Fourth*, Bondholders request that the parties be required to file amended witness lists, expert disclosures, and expert reports, rather than "supplemental" materials as the Oversight Board proposes.  With respect to the lists and disclosures, amending the previous disclosures, rather than just identifying new witnesses or disclosures, will avoid potential confusion about which disclosures from the previous round of confirmation discovery apply to this new confirmation discovery period.  The Oversight Board appears to agree at least with respect to witness lists.  Likewise, the current expert reports are replete with discussions of the 2022 fiscal plan and the old plan of adjustment; it simply doesn't make sense just to supplement them to try to address whatever is "new."  Full new reports should be served to provide clarity to the record. The Oversight Board's position on this is unclear.

**Committee's Statement:**

A.     **Request to Defer Establishment of a Plan Confirmation Schedule or, Alternatively, Tentative Adoption of the Bondholders' Proposed Schedule**

15.     The Committee is of the view that it would be more efficient to consider what constitutes an appropriate schedule for confirmation only after the Court and the parties in interest have had an opportunity to review all of the models and factual source material underlying the 2023 PREPA Fiscal Plan, which the Oversight Board has committed to provide by June 30, 2023. In the Committee's opinion, these materials are necessary for the Committee to have a full understanding of the tasks ahead of it, and provide a clearer projection for the timeline in which the associated work may reasonably be accomplished in coordination with its expert(s) and advisors.  Alternatively, to the extent the Court proceeds with issuing a schedule prior to filing of

the "Amended … Plan of Adjustment," the Committee then joins the schedule proposed by the Bondholders (with certain exceptions noted below). The timeline proposed by the Oversight Board is too rapid and unfeasible, particularly given the unanticipated disruption of the prior schedule and need for additional work to continue many months past the earlier conclusion of the plan confirmation process.

16.     As an example of the substantial additional work that must now be undertaken because of the forthcoming Amended Plan of Adjustment, the Committee now anticipates submitting at least one opening expert report (*e.g.*, of Julia Frayer of London Economics). The Committee did not anticipate the need for Ms. Frayer to prepare a full expert analysis and report, and Ms. Frayer is in the process of rearranging other professional commitments and obligations to accommodate the unforeseen work that is now required due to the Oversight Board's abandonment of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [ECF No. 3296] (the "Previous Plan").

**B.     The Committee's Forthcoming Opposition to *Debtor's Motion in Limine to Exclude Evidence Challenging Oversight Board's Certification Determinations***

17.     Given the nature of the Previous Plan the Oversight Board has now abandoned, the Committee previously did not submit a full Opposition to *Debtor's Motion in Limine to Exclude Evidence Challenging Oversight Board's Certification* [ECF No. 3581]. Instead, the Committee served a reservation of rights [ECF No. 3736], which expressly stated "to the extent the [Previous Plan] is further modified or amended … the Committee respectfully requests an opportunity to be heard on the issues raised within [that Motion] thereafter." Given the significant changes the Oversight Board is making to the Previous Plan, the Committee intends to submit a full Opposition to this Motion and asks the Court allow that to be filed by July 24, 2023.

16

18.     The Committee takes no position on when any hearing on this Motion *in Limine* should be held, leaving this scheduling matter to the Court's discretion.  The Committee, however, does intend to appear and be heard at any hearing the Court may schedule on this issue.

**C.     The Committee Currently Takes No Position on Re-Solicitation and Reserves All Other Rights**

19.     The Committee notes the Bondholders' schedule implicitly provides for re-solicitation insofar as it included milestones for vote tabulation.  The Committee needs to examine the Oversight Board's Amended Plan of Adjustment and certain authority cited by the Bondholders before it may conclusively assess whether re-solicitation is required.

20.     To the extent any party in interest pursues a motion to dismiss and/or lift the automatic stay, the Committee will oppose and expressly reserves all rights with respect to same.

**UTIER and SREAEE's Statement:**

21.     XXX

**AAFAF's Statement:**

22.     AAFAF supports the Oversight Board's proposed plan of adjustment confirmation schedule, given its belief that an affordable, sustainable, and feasible PREPA Title III restructuring must be accomplished as soon as possible. AAFAF reserves all rights with respect to any amended plan of adjustment and its path forward.

**Ad Hoc Committee's Statement:**

23.     The Ad Hoc Committee supports the schedule proposed by the Bondholders in connection with confirmation of the amended plan of adjustment to be filed by the Board.  The Ad Hoc Committee makes no other statements at this time except to reserve all of its rights in connection with the Title III Cases.

**National's Statement:**

24.     National has no objection to the Oversight Board's proposed confirmation schedule.

**<u>FLL's Statement:</u>**

25.     The Fuel Line Lenders do not object to the Board's proposed schedule and object to delaying confirmation to November.  The Fuel Line Lenders reserve all rights with respect to any proposed plan modifications.

Dated: June 27, 2023
New York, New York

Respectfully submitted,

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Julia D. Alonzo
Laura Stafford
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board, as representative for
PREPA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board, as
representative for PREPA*

**O'MELVENY & MYERS LLP**

*/s/ Maria J. DiConza*
John J. Rapisardi
Maria J. DiConza
(Admitted *Pro Hac Vice*)
Gabriel L. Olivera
USDC No. 303314
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
           mdiconza@omm.com
           golivera@omm.com

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com
           apavel@omm.com

*Attorneys for the Puerto Rico Fiscal Agency*
*and Financial Advisory Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Telephone: (787) 705-2171
Facsimile:  (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency*
*and Financial Advisory Authority*

**WEIL, GOTSHAL & MANGES LLP**

By:   */s/ Robert Berezin*
Matthew S. Barr (admitted *pro hac vice*)
Jonathan Polkes (admitted *pro hac vice*)
Robert Berezin (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Email: matt.barr@weil.com
        jonathan.polkes@weil.com
        robert.berezin@weil.com

Gabriel A. Morgan (admitted *pro hac vice*)
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email: gabriel.morgan@weil.com

*Attorneys for National Public Finance*
*Guarantee Corporation*

*/s/ Nayuan Zouairabani*
Nayuan Zouairabani
USDC-PR No. 226411
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico  00918
P.O. Box 364225
San Juan, Puerto Rico  00936-4225
Telephone:  (787) 250-5604
Facsimile:  (787) 759-9225
Email:  nzt@mcvpr.com

*/s/ Amy R. Wolf*
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
         arwolf@wlrk.com
         eakleinhaus@wlrk.com
         akherring@wlrk.com
         mhcassel@wlrk.com

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*

CÓRDOVA & DICK, LLC

/s/ *Brian M. Dick Biascoechea*
Brian M. Dick Biascoechea
#403 Calle 12 de Octubre
Urb. El Vedado
San Juan, PR  00918
P.O. Box 194021
San Juan, PR  00919-4021
Telephone:  (787) 452-6425
USDC No.:  230,903
bmd@bmdcounselors.com

*Local Counsel to the Ad Hoc Committee
of National Claim Assignees*

SHEPPARD MULLIN RICHTER & HAMPTON LLP

/s/ *Lawrence A. Larose*
Lawrence A. Larose (admitted *pro hac vice*)
Benjamin O. Gilbert (admitted *pro hac vice)*
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 896-0627
Facsimile:   (917) 438-6197
Email:  llarose@sheppardmullin.com
           bogilbert@sheppardmullin.com

*Counsel to the Ad Hoc Committee of National Claim
Assignees*

**TORO COLÓN MULLET P.S.C.**

*/s/ Manuel Fernández-Bared*
Manuel Fernández-Bared
USDC-PR No. 204,204
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760
E-mail: mfb@tcm.law

*/s/ Linette Figueroa-Torres*
Linette Figueroa-Torres
USDC-PR No. 227,104
E-mail: lft@tcm.law

*/s/ Nayda Perez-Roman*
Nayda Perez-Roman
USDC–PR No. 300,208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA*
*Bondholders*

**KRAMER LEVIN**
**NAFTALIS & FRANKEL LLP**

*/s/ Amy Caton*
Amy Caton*
Thomas Moers Mayer*
Alice J. Byowitz*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email:  acaton@kramerlevin.com
         tmayer@kramerlevin.com
         abyowitz@kramerlevin.com

Gary A. Orseck*
Matthew M. Madden*
2000 K Street NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
Email:  gorseck@kramerlevin.com
         mmadden@kramerlevin.com

*Admitted Pro Hac Vice*

*Counsel for the Ad Hoc Group of PREPA*
*Bondholders*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR No. 204,809
    Ricardo F. Casellas-Sánchez
    USDC-PR No. 203,114
    Diana Pérez-Seda
    USDC–PR No. 232,014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Tel.: (787) 756-1400
    Fax: (787) 756-1401
    E-mail:  hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ William J. Natbony*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    Casey J. Servais*
    William J. Natbony*
    Thomas J. Curtin*
    200 Liberty Street
    New York, New York 10281
    Tel.: (212) 504-6000
    Fax: (212) 406-6666
    Email:  howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          casey.servais@cwt.com
          bill.natbony@cwt.com
          thomas.curtin@cwt.com

*Admitted Pro Hac Vice

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REICHARD & ESCALERA, LLC**

By: */s/ Rafael Escalara*
    Rafael Escalara
    USDC-PR No. 122,609

    */s/ Sylvia M. Arizmendi*
    Sylvia M. Arizmendi
    USDC-PR No. 210,714

    */s/ Carlos R. Rivera-Ortiz*
    Carlos R. Rivera-Ortiz
    USDC–PR No. 303,409
    255 Ponce de León Avenue
    MCS Plaza, 10th Floor
    San Juan, PR 00917-1913
    Tel.: (787) 777-8888
    Fax: (787) 765-4225
    E-mail:  escalara@reichardescalera.com
            arizmendis@reichardescalera.com
            riverac@reichardescalera.com


*Counsel for Syncora Guarantee, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Susheel Kirpalani*
    Susheel Kirpalani*
    Daniel Salinas
    USDC-PR No. 224,006
    Eric Kay*
    51 Madison Avenue, 22nd Floor
    New York, New York 10010-1603
    Tel.: (212) 849-7000
    Fax: (212) 849-7100
    Email:  susheelkirpalani@quinnemanuel.com
           danielsalias@quinnemanuel.com
           erickay@quinnemanuel.com

*\* Admitted Pro Hac Vice*

*Counsel for Syncora Guarantee, Inc.*

26

**RIVERA, TULLA & FERRER LLC**

*/s/ Eric A. Tulla*
Eric A. Tulla
USDC-DPR No. 118313
Email: etulla@riveratulla.com

Rivera Tulla & Ferrer Building
50 Quisqueya Street
San Juan, PR 00917-1212
Tel: (787)753-0438
Fax: (787)767-5784

*Counsel for U.S. Bank National Association, in its Capacity as the PREPA Bond Trustee*

**MASLON LLP**

*/s/ Clark T. Whitmore*
Clark T. Whitmore*
Michael C. McCarthy*
John Duffey*
Jason M. Reed*
90 South Seventh Street, Suite 3300
Minneapolis, MN 55402
Tel.: (612) 672-8200
Fax: (612) 672-8397
Email: clark.whitmore@maslon.com
        mike.mccarthy@maslon.com
        john.duffey@maslon.com
        jason.reed@maslon.com

*\* Admitted Pro Hac Vice*

*Counsel for U.S. Bank National Association, in its Capacity as the PREPA Bond Trustee*

27

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com
*Counsel to the Official Committee of Unsecured
Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR
225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR
306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com
*Local Counsel to the Official Committee of
Unsecured Creditors*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
