# **EXHIBIT 1**

# **Engagement Letter**

citi

January 27, 2017

Financial Oversight and Management Board
for Puerto Rico
By Email Transmittal
Attention: José B. Carrión, Chair

Dear Sirs:

**Overview**

Citigroup Global Markets Inc. is pleased to accept our appointment by the Financial Oversight and Management Board for Puerto Rico (the "Board"), established under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. Chapter 20 ("PROMESA"), to serve as investment banker and financial advisor to the Board in connection with the Board's statutory duties under PROMESA and its task of working with the people and government of Puerto Rico (the "Commonwealth") to create the necessary foundation for economic growth and to restore opportunity to the people of Puerto Rico. Citi welcomes the opportunity to bring our expertise in municipal finance, capital markets, restructuring (both in and out of court) and infrastructure and utility finance to bear in assisting the Board in seeking to provide the Commonwealth with the necessary tools to restructure its debt, access the capital markets and get back on a path to economic recovery. The terms and conditions of Citi's appointment are set forth in this letter agreement (this "Agreement").

As used herein, "Citi" shall mean Citigroup Global Markets Inc. and its successors and permitted assigns.

**Scope of Services**[1]

In connection with this engagement, Citi will offer the services set forth below:

1. Evaluate the Commonwealth's current fiscal situation, and interface with the Board and its other professional advisors in connection therewith;

2. Review and evaluate the Commonwealth's capital structure and advise the Board on possible restructuring strategies (including developing financing and debt issuance models and alternatives) and in negotiating with the Commonwealth and the Commonwealth's creditors;

3. Advise the Board on the Commonwealth's ability to access the capital markets, including providing advice on market strategy;

4. Undertake discussions on behalf of the Board with rating agencies, creditors, and other third parties as requested by the Board;

5. Perform such other investment banking and financial advisory services as the Board may reasonably request in connection with this engagement, including providing testimony in connection with the services provided under this Agreement.

---

[1] The term "Commonwealth" as used in this section shall include its "covered entities" (as defined below).

January 27, 2017
Page 2

### Fees

The fees to Citi under this agreement shall include the following:

(i) a fixed monthly retainer of $250,000, payable monthly in arrears (upon the submission of monthly invoices) commencing on the date of this Agreement (such retainer to be pro rated for any partial month), plus

(ii) a success fee equal to 0.0333% of the par amount of any bonds (A) issued by the Commonwealth or any of its agencies, authorities, public corporations or instrumentalities ("covered entities"[2]) as part of a PROMESA related restructuring, for the avoidance of doubt, excluding any bonds issued in connection with any bonds restructured under clause B below, or (B) restructured as part of a PROMESA related restructuring (calculated by multiplying 0.000333 times the restructured bond par amount), in each case, without duplication, and subject in all cases to an aggregate success fee cap of $10 million. A success fee shall be due and payable upon each successful closing of all or a portion of a debt restructuring of the existing debt of the Commonwealth and its covered entities, whether accomplished pursuant to Title III or Title VI of PROMESA or otherwise, and whether completed in a single transaction or multiple transactions, but in all cases subject to the aggregate success fee cap referenced above.

The success fee payable by the Board shall be subject to reduction in the event that Citi, with the prior permission of the Board, serves as either a senior managing or co-senior managing underwriter on any debt issued by the Commonwealth of Puerto Rico or its covered entities as part of such debt restructuring. In that event, the success fee shall be reduced by 80% of the amount of any compensation received by Citi from the Commonwealth or any covered entity pursuant to such restructuring bond underwriting engagements.

### Expenses

The Board agrees to reimburse Citi, upon request, for all our reasonable, documented out-of-pocket expenses directly related to this Agreement, including but not limited to reasonable fees and expenses of a single outside counsel to Citi on a monthly basis, upon submission to the Board of an invoice or invoices. Such reimbursement of expenses shall be subject to an annual aggregate cap (commencing on the date of this Agreement) of $250,000, subject to modification by mutual agreement of the parties hereto.

### Conditions

This Agreement is not a commitment, express or implied, on the part of Citi to underwrite or purchase any securities or to commit any capital, nor does it obligate us to enter into an underwriting agreement, dealer manager agreement or similar commitment. Citi's participation in any financing transaction will be subject to, among other things, (i) satisfactory completion of all documentation for the transaction (including, but not limited to, one or more disclosure documents and a dealer manager agreement, other documents necessary to the consummation of a

---

[2] "Covered entities" are those identified by the Board in its list of "Initial covered entities subject to oversight under the PROMESA Act" posted on November 18, 2016 on the Board's website (https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/58345e7a9bd5a.pdf).

January 27, 2017
Page 3

tender or exchange offer); (ii) satisfactory completion of a customary due diligence review; (iii) in our determination, the absence of any material adverse change in the financial markets or in the financial condition, operations or prospects of the issuer, taking into account their current financial condition; (iv) receipt of all required governmental and other approvals and appropriate legal opinions, including a 10b-5 disclosure opinion delivered by counsel acceptable to the issuer and otherwise in form and substance acceptable to Citi and its counsel and (v) approval of our internal credit and commitment committees.

**Certain Acknowledgments**

The Board understands that Citigroup Global Markets Inc. and its affiliates (together, the "Group") are engaged in a wide range of financial services and businesses (including investment management, financing, securities trading, corporate and investment banking and research). Members of the Group and businesses within the Group generally act independently of each other, both for their own respective accounts and for the accounts of clients. Accordingly, there may be situations where parts of the Group and/or their clients either now have or may in the future have interests, or take actions that may conflict with the interests of the Commonwealth and its covered entities. For example, the Group may, in the ordinary course of business, engage in trading in financial products or undertake other investment businesses for its own account or on behalf of other clients, including, but not limited to, trading in or holding long, short or derivative positions in securities, loans or other financial products of the Commonwealth and its covered entities and any other entities involved in the restructuring of the Commonwealth's debt.

Subject to the last sentence of this paragraph, neither this Agreement, the receipt by the Group of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Board agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Board or use on behalf of the Board any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. However, consistent with the Group's long-standing policy to hold in confidence the affairs of its customers and the obligations imposed by its own policies and procedures, the Group will not use confidential information obtained from the Board except in connection with its services to, and its relationship with, the Board.

The Board and Citi acknowledge that all of the services to be performed by Citi under this Agreement are solely for or on behalf of the Board. Neither the Commonwealth nor any of its covered entities shall be a client or recipient of direct or indirect advice of Citi under this Agreement. It is Citi's understanding that the Board does not constitute a "municipal entity" or "obligated person" as such terms are defined under the Securities and Exchange Commission's Municipal Advisor Rule (the "MA Rule"). As such, it is Citi's understanding that Citi is not acting as a "municipal advisor" (as defined in the MA Rule) or fiduciary to the Board or any other party hereunder. The Board agrees to notify Citi if it becomes aware of a change in its status that could result in it being considered a municipal entity, obligated person or an issuer of municipal securities. Furthermore, the Board agrees that it is solely responsible for making its own judgments in connection with any particular transaction that it seeks to undertake or any advice it wishes to convey to the Commonwealth or its covered entities.

**Indemnification**

The Board agrees to indemnify and hold harmless the "indemnified parties" as provided in Appendix A attached hereto, the terms of which are incorporated into this Agreement in their entirety.

January 27, 2017
Page 4

### Governing Law

This Agreement is governed by the laws of the State of New York without regard to conflicts of law principles and will be binding upon and inure to the benefit of the Board and Citi and their respective successors and assigns. Any suit action, or proceeding brought in connection with this Agreement shall be brought exclusively in the Federal Courts of the Commonwealth of Puerto Rico, San Juan, Puerto Rico, and the parties hereby irrevocably consent to the exclusive jurisdiction of such court in any proceeding arising out of or relating to this Agreement and agree not to commence any suit, action, or proceeding relating thereto except in such court, and waive, to the fullest extent permitted by law, the right to move to dismiss or transfer any suit, action or proceedings brought in such court on the basis of any objections as to venue or inconvenient forum or on the basis of any objection to personal jurisdiction.

The Board and Citi agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed transaction or the engagement of or performance by Citi of its services hereunder.

### Termination

This Agreement shall be effective as of the date first above written and may only be terminated by a party hereto with 30 days' notice to the non-terminating party, except as noted below; provided that if the Commonwealth terminates this Agreement for any reason other than those set forth in the next paragraph, the Commonwealth shall pay to Citi, in lieu of any other fees or expenses otherwise provided under this Agreement, an amount equal to 12 months' retainer fee (i.e., $3 million) in addition to any amounts otherwise owed under this Agreement through the date of such termination. The provisions of this paragraph and the provisions set forth under the captions "Certain Acknowledgments," "Indemnification," and "Governing Law" shall survive any termination of this Agreement.

Citi's willful misconduct in fulfilling, and/or its negligent discharge or abandonment of, the duties assigned hereunder shall constitute a breach of this Agreement and the Board will be entitled to terminate this Agreement forthwith, without having to comply with the requirements of notice set forth above, without limitation of any other rights and remedies under law and will release and discharge the Board from any further obligations and liabilities hereunder.

### Other

The Board acknowledges that it is not relying on the advice of Citi for tax, legal or accounting matters, it is seeking and will rely on the advice of its own professionals and advisors for such matters and it will make an independent analysis and decision regarding any financing or restructuring transaction based upon such advice.

This Agreement shall not be assignable without the prior written consent of the other party (and any purported assignment without such consent shall be null and void), is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto. This Agreement may not be amended or waived except by an instrument in writing signed by each of the parties hereto. This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Agreement by facsimile or electronic mail transmission shall be effective as delivery of manually executed counterpart hereof. This Agreement is the only Agreement that

January 27, 2017
Page 5

has been entered into among us with respect to the services to be provided hereunder and set forth the entire understanding of the parties with respect thereto.

[CONTINUES ON FOLLOWING PAGE]

January 27, 2017
Page 6

We look forward to working with you on these important matters. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this Agreement.

Yours sincerely,

CITIGROUP GLOBAL MARKETS INC.

By: *[signature]*
Name: John C. Gavin
Title: Managing Director

Accepted and agreed to as of the
date set forth above:

FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO

By: *[signature]*
Name:  José B. Carrión, III
Title:  Chair

January 27, 2017
Page 7

## Appendix A

### Indemnification

In connection with the engagement of Citi to assist the Board as described in the Agreement to which this Appendix is attached, including modifications or future additions to such engagement and related activities prior to the date of the Agreement (the "Engagement"), the Board agrees that it will indemnify and hold harmless Citi and its affiliates and their respective directors, officers, agents and employees and each other person controlling Citi or any of its affiliates (each, an "indemnified party"), to the full extent lawful, from and against any losses, expenses, claims or liabilities (collectively, "losses") which any indemnified party may incur or become subject to (i) related to or arising out of (A) the contents of oral or written information provided by the Board or its employees or its other agents, which information either the Board or Citi provide to any actual or potential buyers, sellers, investors or offerees, or (B) any other action or failure to act by the Board, its employees or its other agents or by Citi or any indemnified party in accordance with and at the Board's request or with the Board's express written consent, or (ii) otherwise related to or arising out of the Engagement, except that clauses (i) and (ii) shall not apply with respect to any losses to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party or result from a claim brought by the Board against an indemnified party for breach of such indemnified party's obligations hereunder, if the Board has obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction ("uncovered losses"). The Board further agrees that no indemnified party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Board or any of the Commonwealth's creditors or security holders for or in connection with the Engagement or any actual or proposed transaction relating to the Agreement involving Citi or other conduct in connection therewith except for losses incurred by the Board to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party; provided, however, that the foregoing shall in no manner relieve or excuse Citi from any liability arising from any breach by Citi of the Agreement.

The Board will also promptly reimburse each indemnified party for all reasonable and documented expenses (including reasonable fees and expenses of outside counsel, which shall be limited to the fees and expenses of one counsel in each relevant jurisdiction) as they are incurred by such indemnified party in connection with investigating, preparing for, defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Citi or any indemnified party is a party to such claim or proceeding) or in enforcing this Appendix.

The foregoing provisions are in addition to any rights any indemnified party may have at common law or otherwise and shall be binding on and inure to the benefit of any successors, assigns, and personal representatives of the Board and each indemnified party. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING ARISING HEREUNDER IS WAIVED.** The provisions of this Appendix shall remain in full force and effect notwithstanding (i) any investigation made by or on behalf of Citi or (ii) the completion or termination of the Engagement.