# **EXHIBIT 2**

**Amended and Restated Engagement Letter**



February 13, 2018

Financial Oversight and Management Board
for Puerto Rico
By Email Transmittal
Attention: José B. Carrión, Chair

Amended and Restated Engagement Letter between Citigroup Global Markets Inc. and the
Financial Oversight and Management Board for Puerto Rico

Dear Sirs:

It is hereby agreed that this letter agreement (this "Agreement") shall serve as an amended and restated agreement that shall replace, in its entirety, the agreement entered into between the Financial Oversight and Management Board for Puerto Rico (the "Board") and Citigroup Global Markets Inc. (together with its successors and permitted assigns, "Citi") on January 27, 2017 (the "Original Agreement").

### Overview

Citigroup Global Markets Inc. is pleased to accept our appointment by the Board, established under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. Chapter 20 ("PROMESA"), to serve as investment banker and financial advisor to the Board in connection with the Board's statutory duties under PROMESA and its task of working with the people and government of Puerto Rico (the "Commonwealth") to create the necessary foundation for economic growth and to restore opportunity to the people of Puerto Rico, including working as the Board's exclusive strategic mergers and acquisition adviser to render certain strategic advisory and investment banking services related to the potential sale or restructuring of Puerto Rico Electric Power Authority (the "Company"). Citi welcomes the opportunity to bring our expertise in municipal finance, capital markets, restructuring (both in and out of court), infrastructure and utility finance, and mergers and acquisitions and strategic transactions advisory services to bear in assisting the Board in seeking to provide the Commonwealth with the necessary tools to restructure its debt, access the capital markets, consider certain potential strategic transactions related to the Company and get back on a path to economic recovery. The terms and conditions of Citi's appointment are set forth in this Agreement.

### Scope of Services[1]

In connection with this engagement, Citi will offer the services set forth below:

1. Evaluate the Commonwealth's current fiscal situation, and interface with the Board and its other professional advisors in connection therewith;

---
[1] The term "Commonwealth" as used in this section shall include its "covered entities" (as defined below).

February 13, 2018
Page 2

2. Review and evaluate the Commonwealth's capital structure and advise the Board on possible restructuring strategies (including developing financing and debt issuance models and alternatives) and in negotiating with the Commonwealth and the Commonwealth's creditors;

3. Advise the Board on the Commonwealth's ability to access the capital markets, including providing advice on market strategy;

4. Undertake discussions on behalf of the Board with rating agencies, creditors, and other third parties as requested by the Board;

5. Perform such other investment banking and financial advisory services as the Board may reasonably request in connection with this engagement, including providing testimony in connection with the services provided under this Agreement; and

6. Citi will perform such strategic advisory and investment banking services for the Board as are customary and appropriate in identifying, evaluating and/or implementing various strategic or financial alternatives for the Company (including advice on the structure, negotiation strategy, valuation analyses, and other financial matters, and, along with the Company's other advisors, on solutions that support grid resiliency and environmental sustainability) that the Board reasonably requests (collectively, the "Services"). Such Services will include providing advice on the structure terms of a long-term concession agreement involving the Company's power transmission and distribution assets as well as providing advice in connection with a potential "privatization" involving the Company's power generation assets (each of which, for clarity, shall be deemed to constitute a "Transaction," collectively "Transactions," as defined below).

In particular, Citi will perform such of the following strategic advisory and investment banking services as the Board may reasonably request:

a. Citi will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company (provided that the Board shall remain responsible for conducting appropriate due diligence with respect to any Transaction hereunder); and

b. Citi will perform such strategic advisory and investment banking services in connection with the proposed Transaction as are customary and appropriate in transactions of this type (including advice on the structure, negotiation strategy, valuation analyses, financial terms and other financial matters). For purposes of this Agreement, "Transaction" means, whether in one or a series of transactions, the sale, transfer or other disposition, directly or indirectly, of all or a significant portion of the business, assets or securities of the Company, whether by way of a merger or consolidation, reorganization, restructuring, negotiated purchase, leveraged buyout, minority investment or partnership, collaborative venture or otherwise, long-term concession, lease agreement or operating agreement or similar "privatization" transaction, or any other extraordinary corporate transaction involving the Company.

February 13, 2018
Page 3

        c.    The Services shall expressly exclude any advice or recommendations related to the issuance of municipal bonds or any municipal financial products. All Services rendered hereunder will be provided exclusively to the Board and not to the Company.

Moreover, Citi will not be responsible for setting the scope of or for reviewing the Company's or the Board's due diligence exercise but, will coordinate the Board's other advisers in carrying out such exercise, as requested by the Board. Furthermore, the Board will remain solely responsible for the commercial assumptions on which any strategic advice provided by Citi is based and for the decision to proceed with any Transaction.

**Fees**

The fees to Citi under this agreement shall include the following:

1. until termination of this Agreement, a fixed monthly retainer of $250,000, payable monthly in arrears (upon the submission of monthly invoices) commencing on the date of the Original Agreement (such retainer to be pro rated for any partial month), plus

2. a success fee equal to 0.0333% of the par amount of any bonds (A) issued by the Commonwealth or any of its agencies, authorities, public corporations or instrumentalities ("covered entities"[2]) as part of a PROMESA related restructuring, for the avoidance of doubt, excluding any bonds issued in connection with any bonds restructured under clause B below, or (B) restructured as part of a PROMESA related restructuring (calculated by multiplying 0.000333 times the restructured bond par amount), in each case, without duplication, and subject in all cases to an aggregate success fee cap of $10 million. A success fee shall be due and payable upon each successful closing of all or a portion of a debt restructuring of the existing debt of the Commonwealth and its covered entities, whether accomplished pursuant to Title III or Title VI of PROMESA or otherwise, and whether completed in a single transaction or multiple transactions, but in all cases subject to the aggregate success fee cap referenced above

    The success fee payable by the Board shall be subject to reduction in the event that Citi, with the prior permission of the Board, serves as either a senior managing or co-senior managing underwriter on any debt issued by the Commonwealth of Puerto Rico or its covered entities as part of such debt restructuring. In that event, the success fee shall be reduced by 80% of the amount of any compensation received by Citi from the Commonwealth or any covered entity pursuant to such restructuring bond underwriting engagements

---

[2] "Covered entities" are those identified by the Board in its list of "Initial covered entities subject to oversight under the PROMESA Act" posted on November 18, 2016 on the Board's website (https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/58345e7a9bd5a.pdf).

February 13, 2018
Page 4

3. until termination of this Agreement, in connection with the Services, an additional fixed monthly retainer of $400,000 payable monthly in arrears (upon the submission of monthly invoices) commencing on the signing of this agreement, plus

4. in connection with the Services, a cash fee in the amount of $24 million, payable upon consummation of a Transaction(s) (provided that any amounts less than $2.5 million already paid under the above clause 3 shall be creditable against the amounts owed under this clause 4 to the extent amounts under this clause 4 are paid in full). Citi and the Board will work together to determine a mutually agreed upon allocation of the fee owed under this clause 4 to any Transaction(s) that may occur.

Notwithstanding anything to the contrary herein, payment of fees (including retainer and success fees) and expenses hereunder is subject to (1) in the case of fees payable under clauses 2 and 4, issuance of a final, non-appealable and unconditional order of the court (whether under Title III or Title VI of PROMESA, as applicable) approving the transaction giving rise to such fee and (2) in the case of fees payable under clauses 1 and 3, as well as expenses payable hereunder, compliance with the court order setting procedures for interim compensation and reimbursement of professionals, to the extent applicable.

### Expenses

The Board agrees to reimburse Citi, upon request, for all our reasonable, documented out-of-pocket expenses directly related to this Agreement, including but not limited to reasonable fees and expenses of a single outside counsel to Citi on a monthly basis, upon submission to the Board of an invoice or invoices. Such reimbursement of direct expenses shall be subject to an annual aggregate cap (commencing on the date of the Original Agreement, but except for expenses pursuant to Indemnification hereunder and legal expenses related to Citi's outside counsel) of $375,000 (the "Annual Cap"), subject to modification by mutual agreement of the parties hereto. For clarification, any expenses relating to the Transaction outside of Citi's direct Services provided herein (e.g. dataroom providers, potential site visit travel and logistics, etc.) shall not be subject to the Annual Cap and shall be accrued to the Board or the Company, as appropriate. If for any reason Citi's reasonable and approved expenses might exceed the Annual Cap, the Board agrees to consider increasing the Annual Cap to an appropriate level, based on information provided by Citi.

### Conditions

This Agreement is not a commitment, express or implied, on the part of Citi to underwrite or purchase any securities or to commit any capital, nor does it obligate us to enter into an underwriting agreement, dealer manager agreement or similar commitment. Citi's participation in any financing transaction will be subject to, among other things, (i) satisfactory completion of all documentation for the transaction (including, but not limited to, one or more disclosure documents and a dealer manager agreement, other documents necessary to the consummation of a tender or exchange offer); (ii) satisfactory completion of a customary due diligence review; (iii) in our determination, the absence of any material adverse change in the financial markets or in the financial condition, operations or prospects of the issuer, taking into account their current financial condition; (iv) receipt of all required governmental and other approvals and appropriate legal opinions, including a 10b-5 disclosure opinion delivered by counsel acceptable to the issuer and

February 13, 2018
Page 5

otherwise in form and substance acceptable to Citi and its counsel and (v) approval of our internal credit and commitment committees.

### Use of Information

The Board recognizes and confirms that Citi in acting pursuant to this engagement will be using publicly available information and information in reports and other materials provided by others, including, without limitation, information provided by or on behalf of the Company and/or the Board, and that Citi does not assume responsibility for and may rely, without independent verification, on the accuracy and completeness of any such information. The Board agrees to use reasonable best efforts to cause the Company to warranty that any information related to the Company, or its affiliates, or the Transaction that is furnished to Citi by or on behalf of the Company will be true and correct in all material respects and not misleading by omission or otherwise and that every statement of opinion, intention or expectation therein will be honestly held. The Board agrees that any information or advice (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) rendered by Citi or any of its representatives in connection with this engagement is for the confidential use of the Board only in its evaluation of a Transaction and the Board will not, and will not permit any third party to, use it for any other purpose or disclose or otherwise refer to such advice or information, or to Citi, in any manner without Citi's prior written consent.

### Certain Acknowledgments

In connection with the Services, the Board acknowledges that Citi has been retained hereunder solely as a financial adviser to the Board, and not as an adviser to or agent of any other party, and that the Board's engagement of Citi is as an independent contractor and not in any other capacity including as a fiduciary. Citi may, to the extent it deems appropriate, render the Services hereunder through one or more of its affiliates. Any duties that arise out of this agreement or Citi's engagement will be owed solely to the Board, and neither this engagement, nor the delivery of any advice in connection with this engagement, is intended to confer rights upon any other parties (including security holders, employees or creditors of the Board) as against Citi or its affiliates or their respective directors, officers, agents and employees. Citi may, after public announcement of a Transaction and at its own expense, place announcements or advertisements in financial newspapers, journals and marketing materials describing Citi's services hereunder.

The Board understands that Citigroup Global Markets Inc. and its affiliates (together, the "Group") are engaged in a wide range of financial services and businesses (including investment management, financing, securities trading, corporate and investment banking and research). Members of the Group and businesses within the Group generally act independently of each other, both for their own respective accounts and for the accounts of clients. Accordingly, there may be situations where parts of the Group and/or their clients either now have or may in the future have interests, or take actions that may conflict with the interests of the Commonwealth and its covered entities. For example, the Group may, in the ordinary course of business, engage in trading in financial products or undertake other investment businesses for its own account or on behalf of other clients, including, but not limited to, trading in or holding long, short or derivative positions in securities, loans or other financial products of the Commonwealth and its covered entities and any other entities involved in the restructuring of the Commonwealth's debt.

February 13, 2018
Page 6

Subject to the last sentence of this paragraph, neither this Agreement, the receipt by the Group of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Board agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Board or use on behalf of the Board any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. However, consistent with the Group's long-standing policy to hold in confidence the affairs of its customers and the obligations imposed by its own policies and procedures, the Group will not use confidential information obtained from the Board except in connection with its services to, and its relationship with, the Board.

In recognition of the foregoing, the Board agrees that the Group is not required to restrict its activities as a result of this engagement, and that the Group may undertake any business activity without further consultation with or notification to the Board. Neither this agreement nor the receipt by Citi of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Board agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Board or use on behalf of the Board any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. However, consistent with the Group's long-standing policy to hold in confidence the affairs of its customers, the Group will not use confidential information obtained from the Board except in connection with its services to, and its relationship with, the Board.

The Board and Citi acknowledge that all of the services to be performed by Citi under this Agreement are solely for or on behalf of the Board. Neither the Commonwealth nor any of its covered entities shall be a client or recipient of direct or indirect advice of Citi under this Agreement. It is Citi's understanding that the Board does not constitute a "municipal entity" or "obligated person" as such terms are defined under the Securities and Exchange Commission's Municipal Advisor Rule (the "MA Rule"). As such, it is Citi's understanding that Citi is not acting as a "municipal advisor" (as defined in the MA Rule) or fiduciary to the Board or any other party hereunder. The Board agrees to notify Citi if it becomes aware of a change in its status that could result in it being considered a municipal entity, obligated person or an issuer of municipal securities. Furthermore, the Board agrees that it is solely responsible for making its own judgments in connection with any particular transaction that it seeks to undertake or any advice it wishes to convey to the Commonwealth or its covered entities.

The Board acknowledges that Citi is required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with Citi and that Citi will ask for the Board's complete name, street address, and taxpayer ID number. Citi may also request corporate formation documents, or other forms of identification, to verify information provided.

The Board acknowledges that communications between the parties may involve the use of email or other electronic means of communication and that such electronic communications are not secure or virus or error free and could be intercepted, corrupted, lost, destroyed or arrive late. The Board agrees that Citi and any of its affiliates may monitor, record and retain communications between Citi and the Board.

February 13, 2018
Page 7

### Indemnification

The Board agrees to indemnify and hold harmless the "indemnified parties" as provided in Appendix A attached hereto, the terms of which are incorporated into this Agreement in their entirety.

### Governing Law

This Agreement is governed by the laws of the State of New York without regard to conflicts of law principles and will be binding upon and inure to the benefit of the Board and Citi and their respective successors and assigns. Any suit action, or proceeding brought in connection with this Agreement shall be brought exclusively in the Federal Courts of the Commonwealth of Puerto Rico, San Juan, Puerto Rico, and the parties hereby irrevocably consent to the exclusive jurisdiction of such court in any proceeding arising out of or relating to this Agreement and agree not to commence any suit, action, or proceeding relating thereto except in such court, and waive, to the fullest extent permitted by law, the right to move to dismiss or transfer any suit, action or proceedings brought in such court on the basis of any objections as to venue or inconvenient forum or on the basis of any objection to personal jurisdiction.

The Board and Citi agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed transaction or the engagement of or performance by Citi of its services hereunder.

### Termination

Except in connection with the Services, this Agreement shall be effective as of the date of the Original Agreement and may only be terminated by a party hereto with 30 days' notice to the non-terminating party, except as noted below; provided that if the Board terminates this Agreement for any reason other than those set forth in the next paragraph, the Board shall pay to Citi, in lieu of any other fees or expenses otherwise provided under this Agreement, an amount equal to $3 million in addition to any amounts otherwise owed under this Agreement through the date of such termination. The provisions of this paragraph and the provisions set forth under the captions "Certain Acknowledgments," "Indemnification," and "Governing Law" shall survive any termination of this Agreement.

Citi's willful misconduct in fulfilling, and/or its negligent discharge or abandonment of, the duties assigned hereunder shall constitute a breach of this Agreement and the Board will be entitled to terminate this Agreement forthwith, without having to comply with the requirements of notice set forth above, without limitation of any other rights and remedies under law and will release and discharge the Board from any further obligations and liabilities hereunder.

Notwithstanding the foregoing, in connection with the Services, the Board and Citi acknowledge that Citi commenced providing services to the Board on February 13, 2018 and that the terms of this Agreement applicable to the Services shall be deemed to have applied since this date. Each of Citi and the Board agree that the terms of this Agreement will continue to apply until June 30, 2019, unless extended by mutual written consent or earlier terminated as provided below. Either the Board or Citi may terminate this Agreement at any time, with or without cause, by giving written notice to the other party; provided, however, that no such expiration or termination will

February 13, 2018
Page 8

affect the matters set out in this paragraph or under the captions "Use of Information," "Certain Acknowledgments," "Indemnity" and "Other." It is expressly agreed that following the expiration or termination of this Agreement, Citi will continue to be entitled to receive fees as described above that have accrued prior to such expiration or termination but are unpaid, as well as reimbursement for expenses as contemplated above. It is also expressly agreed that, if a Transaction is consummated within 24 months after the date of expiration or termination of this agreement or if a definitive agreement that results in a Transaction is entered into during the term of this agreement or within such period, Citi shall be entitled to its full fees as described above.

### Other

The Board acknowledges that it is not relying on the advice of Citi for tax, legal or accounting matters, it is seeking and will rely on the advice of its own professionals and advisors for such matters and it will make an independent analysis and decision regarding any financing or restructuring transaction based upon such advice.

This Agreement shall not be assignable without the prior written consent of the other party (and any purported assignment without such consent shall be null and void), is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto. This Agreement may not be amended or waived except by an instrument in writing signed by each of the parties hereto. This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Agreement by facsimile or electronic mail transmission shall be effective as delivery of manually executed counterpart hereof. This Agreement is the only Agreement that has been entered into among us with respect to the services to be provided hereunder and set forth the entire understanding of the parties with respect thereto.

[CONTINUES ON FOLLOWING PAGE]

February 13, 2018
Page 9

We look forward to working with you on these important matters. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this Agreement.

Yours sincerely,

CITIGROUP GLOBAL MARKETS INC.

By: _____
Name: John L. Gavin
Title: Managing Director

Accepted and agreed to as of the
date set forth above:

FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO

By: _____
Name: Jose B. Carrión III
Title: Chairman

## Appendix A

### Indemnification

In connection with the engagement of Citi to assist the Board as described in the Agreement to which this Appendix is attached, including modifications or future additions to such engagement and related activities prior to the date of the Agreement (the "Engagement"), the Board agrees that it will indemnify and hold harmless Citi and its affiliates and their respective directors, officers, agents and employees and each other person controlling Citi or any of its affiliates (each, an "indemnified party"), to the full extent lawful, from and against any losses, expenses, claims or liabilities (collectively, "losses") which any indemnified party may incur or become subject to (i) related to or arising out of (A) the contents of oral or written information provided by the Board or its employees or its other agents, which information either the Board or Citi provide to any actual or potential buyers, sellers, investors or offerees, or (B) any other action or failure to act by the Board, its employees or its other agents or by Citi or any indemnified party in accordance with and at the Board's request or with the Board's express written consent, or (ii) otherwise related to or arising out of the Engagement, except that clauses (i) and (ii) shall not apply with respect to any losses to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party or result from a claim brought by the Board against an indemnified party for breach of such indemnified party's obligations hereunder, if the Board has obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction ("uncovered losses"). The Board further agrees that no indemnified party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Board or any of the Commonwealth's creditors or security holders for or in connection with the Engagement or any actual or proposed transaction relating to the Agreement involving Citi or other conduct in connection therewith except for losses incurred by the Board to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party; provided, however, that the foregoing shall in no manner relieve or excuse Citi from any liability arising from any breach by Citi of the Agreement.

The Board will also promptly reimburse each indemnified party for all reasonable and documented expenses (including reasonable fees and expenses of outside counsel, which shall be limited to the fees and expenses of one counsel in each relevant jurisdiction) as they are incurred by such indemnified party in connection with investigating, preparing for, defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Citi or any indemnified party is a party to such claim or proceeding) or in enforcing this Appendix.

The foregoing provisions are in addition to any rights any indemnified party may have at common law or otherwise and shall be binding on and inure to the benefit of any successors, assigns, and personal representatives of the Board and each indemnified party. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING ARISING HEREUNDER IS WAIVED.** The provisions of this Appendix shall remain in full force and effect notwithstanding (i) any investigation made by or on behalf of Citi or (ii) the completion or termination of the Engagement.