## <u>EXHIBIT 6</u>

**Second Amended and Restated Engagement Letter**

February 16, 2019
Page **1** of **10**



February 16, 2019

Financial Oversight and Management Board for Puerto Rico
By Email Transmittal
Attention: Jose B. Carrion, Chair

Second Amended and Restated Engagement Letter *between* Citigroup Global Markets Inc. and the
Financial Oversight and Management Board for Puerto Rico

Dear Sirs:

It is hereby agreed that this letter agreement (this "Agreement") shall serve as a second amended
and restated agreement (the "Second Amended Agreement," also referred to herein as "this
Agreement") that shall replace, in its entirety, but only upon its effective date, the agreement
entered into between the Financial Oversight and Management Board for Puerto Rico (the "Board")
and Citigroup Global Markets Inc. (together with its successors and permitted assigns, "Citi") on
February 13, 2018 (the "First Amended Agreement"), such First Amended Agreement having
replaced, in its entirety, the agreement entered into between the Board and Citi on January 27,
2017 (the "Original Agreement").  The effective date of this Second Amended Agreement shall be
February 1, 2019.

**Overview**

Citigroup Global Markets Inc. is pleased to accept our continuing appointment by the Board,
established under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C.
Chapter 20 ("PROMESA"), to serve as investment banker and financial advisor to the Board in
connection with the Board's statutory duties under PROMESA and its task of working with the
people and government of Puerto Rico (the "Commonwealth") to create the necessary foundation
for economic growth and to restore opportunity to the people of Puerto Rico, including working as
the Board's exclusive strategic mergers and acquisition adviser to render certain strategic advisory
and investment banking services related to the potential sale or restructuring of Puerto Rico Electric
Power Authority (the "Company"). Citi welcomes the opportunity to bring our expertise in municipal
finance, capital markets, restructuring (both in and out of court), infrastructure and utility finance,
and mergers and acquisitions and strategic transactions advisory services to bear in assisting the
Board in seeking to provide the Commonwealth with the necessary tools to restructure its debt,
access the capital markets, consider certain potential strategic transactions related to the Company
and get back on a path to economic recovery. The terms and conditions of Citi's continuing
appointment are set forth in this Agreement.

The term "Commonwealth" as used in this section shall include its "covered entities" (as defined below).

**Scope of Services**

In connection with this engagement, Citi will offer the services set forth below:

1. Evaluate the Commonwealth's current fiscal situation, and interface with the Board and its other professional advisors in connection therewith;

2. Review and evaluate the Commonwealth's capital structure and advise the Board on possible restructuring strategies (including developing financing and debt issuance models and alternatives) and in negotiating with the Commonwealth and the Commonwealth's creditors;

3. Advise the Board on the Commonwealth's ability to access the capital markets, including providing advice on market strategy;

4. Undertake discussions on behalf of the Board with rating agencies, creditors, and other third parties as requested by the Board;

5. Perform such other investment banking and financial advisory services as the Board may reasonably request in connection with this engagement, including providing testimony in connection with the services provided under this Agreement; and

6. Citi will perform such strategic advisory and investment banking services for the Board as are customary and appropriate in identifying, evaluating and/or implementing various strategic or financial alternatives for the Company (including advice on the structure, negotiation strategy, valuation analyses, and other financial matters, and, along with the Company's other advisors, on solutions that support grid resiliency and environmental sustainability) that the Board reasonably requests (collectively, the "Services"). Such Services will include providing advice on the structure and terms of a long-term concession agreement involving the Company's power transmission and distribution assets as well as providing advice in connection with a potential "privatization" involving the Company's power generation assets (each of which, for clarity, shall be deemed to constitute a "Transaction," collectively "Transactions," as defined below).

In particular, Citi will perform such of the following strategic advisory and investment banking services as the Board may reasonably request:

   a.  Citi will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company (provided that the Board shall remain responsible for conducting appropriate due diligence with respect to any Transaction hereunder); and

   b.  Citi will perform such strategic advisory and investment banking services in connection with the proposed Transaction as are customary and appropriate in transactions of this type (including advice on the structure, negotiation strategy, valuation analyses, financial terms and other financial matters).  For purposes of this Agreement, "Transaction" means, whether in one or a series of transactions, the sale, transfer or other disposition, directly or indirectly, of all or a significant portion of the business, assets or securities of the Company, whether by way of a merger or consolidation, reorganization, restructuring, negotiated purchase, leveraged buyout,

February 16, 2019
Page **3** of **10**

minority investment or partnership, collaborative venture or otherwise, long-term concession, lease agreement or operating agreement or similar "privatization" transaction, or any other extraordinary corporate transaction involving the Company.

c.   The Services shall expressly exclude any advice or recommendations related to the issuance of municipal bonds or any municipal financial products. All Services rendered hereunder will be provided exclusively to the Board and not to the Company.

Moreover, Citi will not be responsible for setting the scope of or for reviewing the Company's or the Board's due diligence exercise but, will coordinate the Board's other advisers in carrying out such exercise, as requested by the Board. Furthermore, the Board will remain solely responsible for the commercial assumptions on which any strategic advice provided by Citi is based and for the decision to proceed with any Transaction.

**Fees**

The fees to Citi under this Agreement shall include the following:

1. commencing on the date of the Original Agreement and continuing until, but excluding  the effective date of this Second Amended Agreement, a fixed monthly retainer of $250,000, payable monthly in arrears (upon the submission of monthly invoices) , and, thereafter, until termination of this Second Amended Agreement, a fixed monthly retainer of $900,000, payable monthly in arrears (upon the submission of monthly invoices)  (such retainer payments to be pro-rated for any partial month), plus

2. commencing on the date of the Original Agreement and continuing until, but excluding  the effective date of this Second Amended Agreement,  a success fee equal to 0.0333% of the greater of the  par amount of any bonds (A) issued by the Commonwealth or any of its agencies, authorities, public corporations or instrumentalities ("covered entities"[1]) as part of a PROMESA related restructuring, for the avoidance of doubt, excluding any bonds issued in connection with any bonds restructured under clause B below, or (B) restructured as part of a PROMESA related restructuring (calculated by multiplying 0.000333 times the restructured bond par amount), in each case, without duplication, and subject in all cases to an aggregate success fee cap of $10 million. A success fee shall be due and payable upon each successful closing of all or a portion of a debt restructuring of the existing debt of the Commonwealth and its covered entities, whether accomplished pursuant to Title III or Title VI of PROMESA or otherwise, and whether completed in a single transaction or multiple transactions, but in all cases subject to the aggregate success fee cap referenced above; and, thereafter, until termination of this Second Amended Agreement, no success fee shall be payable under this paragraph 2 for work on bond restructurings, except that, for the avoidance of doubt and regardless of the effective date of this Second Amended Agreement, the Board and Citi agree that Citi shall be entitled to receive the success fee described in clause (B) of this paragraph in connection with its work prior to the effective date of this Second Amended

---

[1] "Covered entities" are those identified by the Board in its list of` Initial covered entities subject to oversight under the PROMESA Act" posted on November 18, 2016 on the Board's website (https://juntasupervision.pr.gov/wp-content/uploaddwpfd/50/58345e7a9bd5a.pdf).

Agreement on restructuring the par amount of prior bonds restructured in both the GDB Title VI restructuring and in the COFINA Title III restructuring; in addition, for the avoidance of doubt, Citi also shall be entitled to receive all fees set forth under paragraphs 3 and 4 herein related to the Services, plus

3. Commencing on the date of the First Amended Agreement and continuing until termination of this Second Amended Agreement, in connection with the Services, an additional fixed monthly retainer of $400,000 payable monthly in arrears (upon the submission of monthly invoices), plus

4. in connection with the Services, a cash fee in the amount of $24 million, payable upon consummation of a Transaction(s) (provided that any amounts less than $2.5 million already paid under the above clause 3 shall be  creditable against the amounts owed under this clause 4 to the extent amounts under this clause 4 are paid in full). Citi and the Board will work together to determine a mutually agreed upon allocation of the fee owed under this clause 4 to any Transaction(s) that may occur.

Notwithstanding anything to the contrary herein, payment of fees (including retainer and success fees) and expenses hereunder is subject to (1) in the case of fees payable under clauses 2 and 4, issuance of a final, non-appealable and unconditional order of the court (whether under Title III or Title VI of PROMESA, as applicable) approving the transaction giving rise to such fee and (2) in the case of fees payable under clauses 1 and 3, as well as expenses payable hereunder, compliance with the court order setting procedures for interim compensation and reimbursement of professionals, to the extent applicable.

**Expenses**

The Board agrees to reimburse Citi, upon request, for all our reasonable, documented out-of-pocket expenses directly related to this Agreement (commencing on the date of the Original Agreement) including but not limited to reasonable fees and expenses of a single outside counsel to Citi on a monthly basis, upon submission to the Board of an invoice or invoices. Such reimbursement of direct expenses shall be subject to an annual aggregate cap (commencing on the date of the Original Agreement, but except for expenses pursuant to Indemnification hereunder and legal expenses related to Citi's outside counsel) of $375,000 (the "Annual Cap"), subject to modification by mutual agreement of the parties hereto. For clarification, any expenses relating to the Transaction outside of Citi's direct Services provided herein (e.g. dataroom providers, potential site visit travel and logistics, etc.) shall not be subject to the Annual Cap and shall be accrued to the Board or the Company, as appropriate. If for any reason Citi's reasonable and approved expenses might exceed the Annual Cap, the Board agrees to consider increasing the Annual Cap to an appropriate level, based on information provided by Citi.

**Conditions**

This Agreement is not a commitment, express or implied, on the part of Citi to underwrite or purchase any securities or to commit any capital, nor does it obligate us to enter into an underwriting agreement, dealer manager agreement or similar commitment. Citi's participation in any financing transaction will be subject to, among other things, (i) satisfactory completion of all

documentation for the transaction (including, but not limited to, one or more disclosure documents and a dealer manager agreement, other documents necessary to the consummation of a tender or exchange offer); (ii) satisfactory completion of a customary due diligence review; (iii) in our determination, the absence of any material adverse change in the financial markets or in the financial condition, operations or prospects of the issuer, taking into account their current financial condition; (iv) receipt of all required governmental and other approvals and appropriate legal opinions, including a 10b-5 disclosure opinion delivered by counsel acceptable to the issuer and otherwise in form and substance acceptable to Citi and its counsel and (v) approval of our internal credit and commitment committees.

**Use of Information**

The Board recognizes and confirms that Citi in acting pursuant to this engagement will be using publicly available information and information in reports and other materials provided by others, including, without limitation, information provided by or on behalf of the Company and/or the Board, and that Citi does not assume responsibility, for and may rely, without independent verification, on the accuracy and completeness of any such information. The Board agrees to use reasonable best efforts to cause the Company to warranty that any information related to the Company, or its affiliates, or the Transaction that is furnished to Citi by or on behalf of the Company will be true and correct in all material respects and not misleading by omission or otherwise and that every statement of opinion, intention or expectation therein will be honestly held. The Board agrees that any information or advice (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) rendered by Citi or any of its representatives in connection with this engagement is for the confidential use of the Board only in its evaluation of a Transaction and the Board will not, and will not permit any third party to, use it for any other purpose or disclose or otherwise refer to such advice or information, or to Citi, in any manner without Citi's prior written consent.

**Certain Acknowledgments**

In connection with the Services, the Board acknowledges that Citi has been retained hereunder solely as a financial adviser to the Board, and not as an adviser to or agent of any other party, and that the Board's engagement of Citi is as an independent contractor and not in any other capacity including as a fiduciary. Citi may, to the extent it deems appropriate, render the Services hereunder through one or more of its affiliates. Any duties that arise out of this agreement or Citi's engagement will be owed solely to the Board, and neither this engagement, nor the delivery of any advice in connection with this engagement, is intended to confer rights upon any other parties (including security holders, employees or creditors of the Board) as against Citi or its affiliates or their respective directors, officers, agents and employees. Citi may, after public announcement of a Transaction and at its own expense, place announcements or advertisements in financial newspapers, journals and marketing materials describing Citi's services hereunder.

The Board understands that Citigroup Global Markets Inc. and its affiliates (together, the "Group") are engaged in a wide range of financial services and businesses (including investment management, financing, securities trading, corporate and investment banking and research). Members of the Group and businesses within the Group generally act independently of each other,

February 16, 2019
Page **6** of **10**

both for their own respective accounts and for the accounts of clients. Accordingly, there may be situations where parts of the Group and/or their clients either now have or may in the future have interests, or take actions that may conflict with the interests of the Commonwealth and its covered entities. For example, the Group may, in the ordinary course of business, engage in trading in financial products or undertake other investment businesses for its own account or on behalf of other clients, including, but not limited to, trading in or holding long, short or derivative positions in securities, loans or other financial products of the Commonwealth and its covered entities and any other entities involved in the restructuring of the Commonwealth's debt.

Subject to the last sentence of this paragraph, neither this Agreement, the receipt by the Group of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Board agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Board or use on behalf of the Board any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. However, consistent with the Group's long-standing policy to hold in confidence the affairs of its customers and the obligations imposed by its own policies and procedures, the Group will not use confidential information obtained from the Board except in connection with its services to, and its relationship with, the Board.

In recognition of the foregoing, the Board agrees that the Group is not required to restrict its activities as a result of this engagement, and that the Group may undertake any business activity without further consultation with or notification to the Board. Neither this agreement nor the receipt by Citi of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Board agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Board or use on behalf of the Board any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. However, consistent with the Group's long-standing policy to hold in confidence the affairs of its customers, the Group will not use confidential information obtained from the Board except in connection with its services to, and its relationship with, the Board.

The Board and Citi acknowledge that all of the services to be performed by Citi under this Agreement are solely for or on behalf of the Board. Neither the Commonwealth nor any of its covered entities shaft be a client or recipient of direct or indirect advice of Citi under this Agreement. It is Citi's understanding that the Board does not constitute a "municipal entity" or "obligated person" as such terms are defined under the Securities and Exchange Commission's Municipal Advisor Rule (the "MA Rule"). As such, it is Citi's understanding that Citi is not acting as a "municipal advisor" (as defined in the MA Rule) or fiduciary to the Board or any other party hereunder. The Board agrees to notify Citi if it becomes aware of a change in its status that could result in it being considered a municipal entity, obligated person or an issuer of municipal securities. Furthermore, the Board agrees that it is solely responsible for making its own judgments in connection with any

particular transaction that it seeks to undertake or any advice it wishes to convey to the Commonwealth or its covered entities.

The Board acknowledges that Citi is required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with Citi and that Citi will ask for the Board's complete name, street address, and taxpayer ID number. Citi may also request corporate formation documents, or other forms of identification, to verify information provided.

The Board acknowledges that communications between the parties may involve the use of email or other electronic means of communication and that such electronic communications are not secure or virus or error free and could be intercepted, corrupted, lost, destroyed or arrive late. The Board agrees that Citi and any of its affiliates may monitor, record and retain communications between Citi and the Board.

**Indemnification**

The Board agrees to indemnify and hold harmless the "indemnified parties" as provided in Appendix A attached hereto, the terms of which are incorporated into this Agreement in their entirety.

**Governing Law**

This Agreement is governed by the laws of the State of New York without regard to conflicts of law principles and will be binding upon and inure to the benefit of the Board and Citi and their respective successors and assigns. Any suit action, or proceeding brought in connection with this Agreement shall be brought exclusively in the Federal Courts of the Commonwealth of Puerto Rico, San Juan, Puerto Rico, and the parties hereby irrevocably consent to the exclusive jurisdiction of such court in any proceeding arising out of or relating to this Agreement and agree not to commence any suit, action, or proceeding relating thereto except in such court, and waive, to the fullest extent permitted by law, the right to move to dismiss or transfer any suit, action or proceedings brought in such court on the basis of any objections as to venue or inconvenient forum or on the basis of any objection to personal jurisdiction.

The Board and Citi agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed transaction or the engagement of or performance by Citi of its services hereunder.

**Termination**

Except in connection with the Services, this Agreement shall be effective as of the date of the Original Agreement and may only be terminated by a party hereto with 30 days' notice to the non-terminating party, except as noted, below; provided that if the Board terminates this Agreement for any reason other than those set forth in the next paragraph, the Board shall pay to Citi, in lieu of any other fees or expenses otherwise provided under this Agreement, an amount equal to $3.6 million in addition to any amounts otherwise owed under this Agreement through the date of such termination. The provisions of this paragraph and the provisions set forth under the captions

"Certain Acknowledgments," "Indemnification," and "Governing Law" shall survive any termination of this Agreement.

Citi's willful misconduct in fulfilling, and/or its negligent discharge or abandonment of, the duties assigned hereunder shall constitute a breach of this Agreement and the Board will be entitled to terminate this Agreement forthwith, without having to comply with the requirements of notice set forth above, without limitation of any other rights and remedies under law and will release and discharge the Board from any further obligations and liabilities hereunder.

Notwithstanding the foregoing, in connection with the Services, the Board and Citi acknowledge that Citi commenced providing services to the Board on February 13, 2018 and that the terms of this Agreement applicable to the Services shall be deemed to have applied since this date. Each of Citi and the Board agree that the terms of this Second Amended Agreement will continue to apply until January 31, 2020, unless extended by mutual written consent or earlier terminated as provided below. Either the Board or Citi may terminate this Agreement at any time, with or without cause, by giving written notice to the other party; provided, however, that no such expiration or termination will affect the matters set out in this paragraph or under the captions "Use of Information," "Certain Acknowledgments," "Indemnity" and "Other." It is expressly agreed that following the expiration or termination of this Agreement, Citi will continue to be entitled to receive fees as described above that have accrued prior to such expiration or termination but are unpaid, as well as reimbursement for expenses as contemplated above. It is also expressly agreed that, if a Transaction is consummated within 24 months after the date of expiration or termination of this agreement or if a definitive agreement that results in a Transaction is entered into during the term of this agreement or within such period, Citi shall be entitled to its full fees as described above.

**Other**

The Board acknowledges that it is not relying on the advice of Citi for tax, legal or accounting matters, it is seeking and will rely on the advice of its own professionals and advisors for such matters and it will make an independent analysis and decision regarding any financing or restructuring transaction based upon such advice.

This Agreement shall not be assignable without the prior written consent of the other party (and any purported assignment without such consent shall be null and void), is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto. This Agreement may not be amended or waived except by an instrument in writing signed by each of the parties hereto. This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Agreement by facsimile or electronic mail transmission shall be effective as delivery of manually executed counterpart hereof. This Agreement is the only Agreement that has been entered into among us with respect to the services to be provided hereunder and set forth the entire understanding of the parties with respect thereto.

February 16, 2019
Page **9** of **10**

We look forward to working with you on these important matters. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this Agreement.


Yours sincerely,


CITIGROUP GLOBAL MARKETS INC.


By:

Name: John C. Gavin

Title: Managing Director

Accepted and agreed to as of the date set forth above:


**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

By:

Name: Jose Carrion III

Title: Chairman

February 16, 2019
Page **10** of **10**

## Appendix A

## Indemnification

In connection with the engagement of Citi to assist the Board as described in the Agreement to which this Appendix is attached, including modifications or future additions to such engagement and related activities prior to the date of the Original Agreement (the "Engagement"), the Board agrees that it will indemnify and hold harmless Citi and its affiliates and their respective directors, officers, agents and employees and each other person controlling Citi or any of its affiliates (each, an "indemnified party"), to the full extent lawful, from and against any losses, expenses, claims or liabilities (collectively, "losses") which any indemnified party may incur or become subject to (i) related to or arising out of (A) the contents of oral or written information provided by the Board or its employees or its other agents, which information either the Board or Citi provide to any actual or potential buyers, sellers, investors or offerees, or (B) any other action or failure to act by the Board, its employees or its other agents or by Citi or any indemnified party in accordance with and at the Board's request or with the Board's express written consent, or (ii) otherwise related to or arising out of the Engagement, except that clauses (i) and (ii) shall not apply with respect to any losses to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party or result from a claim brought by the Board against an indemnified party for breach of such indemnified party's obligations hereunder, if the Board has obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction ("uncovered losses"), The Board further agrees that no indemnified party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Board or any of the Commonwealth's creditors or security holders for or in connection with the Engagement or any actual or proposed transaction relating to the Agreement involving Citi or other conduct in connection therewith except for losses incurred by the Board to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party; provided, however, that the foregoing shall in no manner relieve or excuse Citi from any liability arising from any breach by Citi of the Agreement.

The Board will also promptly reimburse each indemnified party for all reasonable and documented expenses (including reasonable fees and expenses of outside counsel, which shall be limited to the fees and expenses of one counsel in each relevant jurisdiction) as they are incurred by such indemnified party in connection with investigating, preparing for, defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Citi or any indemnified party is a party to such claim or proceeding) or in enforcing this Appendix.

The foregoing provisions are in addition to any rights any indemnified party may have at common law or otherwise and shall be binding on and inure to the benefit of any successors, assigns, and personal representatives of the Board and each indemnified party. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING ARISING HEREUNDER IS WAIVED.** The provisions of this Appendix shall remain in full force and effect notwithstanding (i) any investigation made by or on behalf of Citi or (ii) the completion or termination of the Engagement.

## APPENDIX [B]

## FOMB EXPENSE REIMBURSEMENT

**Financial Oversight and Management Board for Puerto Rico**
*June 30, 2017*

**Expense Reimbursement Policy**

### 1. Introduction

The Board of Members of the Financial Oversight and Management Board for Puerto Rico ("the Board") recognizes that board members, officers, staff, and contractors* of the Board may be required to travel or incur in other expenses from time to time to conduct Board business.

The Reimbursed Expenses Policy (the "Policy") is designed to govern the reimbursement of reasonable, defined expenses incurred on authorized Board activities.  Consequently, all reimbursed expenses must be consistent with a business objective and carried out in a timely and cost-effective manner.

This Policy applies to board members, officers, staff, and contractors* who incur authorized and approved travel and other expense items in the context of the Board's business. While exceptions are not normally permitted, there is clear recognition of certain special business needs.  In any such exceptional situations, all board members, officers, staff, and contractors* are expected to apply a high degree of common sense and good judgment.

### 2. Purpose of the Policy

The purpose of this policy is to ensure that (a) adequate cost controls are in place, (b) travel and other expenditures are appropriate, and (c) to provide a uniform and consistent approach for the timely reimbursement of authorized expenses incurred by the Board. It is the policy of the Board to reimburse only reasonable and necessary expenses incurred by board members, officers, staff, and contractors.

### 3. Principles of the Policy

The Policy aims to provide a flexible framework for travel and other expenses based on the following principles:

**3.1**     This Policy applies to board members, officers, staff, and contractors* undertaking  travel  other expenses on  Board business and for the purposes of this Policy, the term "staff" shall mean employees of the Board.

**3.2**     It is the responsibility of board members, officers, staff, and contractors* to ensure the selection of the most direct and economical travel options and that all expenses are attributable to a valid Board business purpose.

**3.3**     Board members, officers, staff, and contractors* shall be entitled to reimbursement of expenses on production of supporting vouchers and invoices meeting the requirements of an "Accountable

Plan" provided under Regulation No. 8297 dated December 18, 2012 issued by the Puerto Rico Department of Treasury. No expense reimbursement will be allowed for amounts in excess of actual expenditures incurred. No expense reimbursement will be allowed for estimates of expenditures incurred. This includes coach-class airfare or train fare (or business class train fare if rates are comparable); and hotels and transportation (e.g. taxis).

**3.4**    It is the responsibility of the Board members, officers, staff, and contractors* to obtain travel authorization from the Chairman of the Board, the Executive Director or Authorized Representative prior to organizing or incurring any travel costs [See Appendix A for Authorization Authority]. Expense reimbursement is subject to having received prior authorization. Exceptions shall be made under the consideration of the Chairman, Executive Director or Authorized Representative.

**3.5**    The use of video and telephone conferencing instead of travel should always be considered to reduce travel expenses.

## 4.  Travel Expenses

### 4.1 Air Travel

**4.1.1**    Costs for air travel will be reimbursed on an actual cost incurred basis.

**4.1.2**    For all flights, board members, officers, staff, and contractors* are required to travel in a cabin class no higher than premium economy class and, when possible, the cheapest fare in this class.

**4.1.3**    Flights should be booked to provide the best value/lowest cost and fit between cost and convenience. Board staff shall book flights through the Board's Executive Assistant. Board members may book flights through the Board's Executive Assistant or independently. Board contractors must book flights independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

**4.1.4**    The Board will not reimburse costs incurred due to deviations from the most direct routes taken for personal travel reasons.  In such cases, if the Board purchased the ticket, the traveler must reimburse the Board for any additional costs over and above the authorized travel.

**4.1.5**    Any alteration to original travel plans must be justified and approved in accordance with the Policy.

### 4.2 Train Travel

**4.2.1**    The Board may reimburse travelers for their economy train fares or business class train fares when those fares are comparable to the equivalent, economy class airfare on the same route.

**4.2.2**    Board staff shall book trains through the Board's Executive Assistant. Board Members may book trains through the Board's Executive Assistant or independently. Board contractors must book trains independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

### 4.3 Hotels and Lodging

**4.3.1**   Accommodation costs may be reimbursed by the Board. Board members, officers, staff, and contractors should not exceed cost of accommodation per night published in the U.S. Government GSA Per Diem Rates (https://www.gsa.gov/perdiem), unless approved by the Chairman or his authorized representative.

**4.3.2**   Board staff shall book hotels through the Board's Executive Assistant. Board members may book hotels through the Board's Executive Assistant or independently. Board contractors must book hotels independently, though they are allowed to consult the Board's Executive Assistant on fares the Board members, officers, and staff are using.

## 4.4 Transportation

**4.4.1**   Transportation costs during trips associated to Board business will be reimbursed. Board members, officers, and staff* can expense the following transportation costs: 1) transportation to and from the airport / train station and 2) transportation to and from the meeting location. Transportation costs cover taxi services or equivalent (e.g. Uber, Lyft or any other transportation means).

## 4.5 Business Meals

**4.5.1**   When travelling to a location other than the Board members, officers, staff, and contractors'* local city, business meals are reimbursable based on the following limits:

- Breakfast: $15; Lunch: $25; Dinner: $40
- Snack expenses are reimbursable when they replace a meal.

**4.5.2**   If meals are provided during the meeting, only meals not provided can be expensed.

## 5.   Other Expenses

**5.1** Other expenses are reimbursable provided they are legitimate, necessary and reasonable expenses directly connected with or pertaining to the Board, such as office supplies, printing and reproduction, telephone calls, and messengers, among other.

## 6.   Reimbursement of Expense

**6.1** Travel arrangements are authorized in advance through the completion and approval of a travel authorization email and the validation of a travel plan between the traveler and the designated approver [See Appendix A].

**6.2** Expenses are reimbursed through the completion, approval, and validation of expense report [See Appendix B] that the members, officers, and staff must submit to the designated approver [See Appendix C].

**6.3** Expense claims should be submitted immediately following and, where possible, no more than 10 days after the completion of each trip, but at least a monthly.

**6.4** In rare circumstances, and on an exceptional basis, reimbursement in excess of stated limits may be provided when lodging options are not available below. In such rare circumstances, the need for higher reimbursement shall be indicated on the attached reimbursement form and justified in writing by the members, officers, and staff.  Reimbursement will be limited to the following:

- Lodging: average rate for available 3-star hotels listed for the applicable metropolitan area on Expedia;

The Chairman of the Board or his authorized representative will have sole discretion to approve or deny such expenditures.

**6.5** Receipts are required for all expenditures billed, such as airfare and hotel charges. No expense in excess of $25.00 will be reimbursed to Board members, officers, staff and contractors unless the individual requesting reimbursement submits with the Expense Report written itemized receipts from each vendor (not a credit card receipt or statement) showing the vendor's name, a description of the services provided (if not otherwise obvious), the date, and the total expenses. If a receipt is not available, a full explanation of the expense and the reason for the missing receipt is required.

**6.6** Alcoholic beverages will not be reimbursed under any circumstance.

**APPENDIX A: Authorization Authority**

| Expense to be Incurred By: | Authorization From: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Staff | Executive Director or Authorized Representative |
| Board Contractors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | N/A |

**APPENDIX B: Expense Report**

**Financial Management and Oversight Board for Puerto Rico**

*To be completed by* members, officers, and staff *and submitted to designated approver*

| DATE | DESCRIPTION | AIR FARE | GROUND FARE | HOTEL | MEALS | OTHER | TOTAL (1) |
|------|-------------|----------|-------------|-------|-------|-------|-----------|
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
|      |             |          |             |       |       |       | $      -  |
| TOTAL |            | $        | $           | $     | $     | $     | $      -  |

Signature:_____                Date:_____

Approved by:_____                Date:_____

**(1) SUBMIT RECEIPTS FOR THE AMOUNTS TO BE
REIMBURSED.**

**APPENDIX C: Expense Report Approval Authority**

| Expense Incurred By: | Expense Approved By: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Personnel | Executive Director or Authorized Representative |
| Board Advisors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | Executive Director or Authorized Representative |

I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Expense Reimbursement Policy:

Vendor Name:  Citigroup Global Markets, Inc.

_____                    February 16, 2019
Signature of Vendor Authorized Representative         _____
                                                      Date

        John C. Gavin   Managing Director
_____
Printed Name and Title of Vendor Authorized Representative

**APPENDIX [C]**

**[VENDOR/CONSULTANT/REPRESENTATIVE CODE OF CONDUCT]**

The Financial Oversight and Management Board for Puerto Rico (the "Board") is committed to ethical and lawful behavior, and to acting professionally and fairly in all of its business dealings and relationships.  The Board seeks to maintain high ethical standards and to comply with all applicable laws and regulations.  The Board expects its vendors, consultants, and representatives to embrace this commitment to ethical and lawful behavior by complying with and training its employees on the Board's Vendor Code of Conduct.  The Board also expects its vendors to have their own codes of conduct that ensure ethical business conduct and practices.

## I.  Compliance with the Vendor Code of Conduct

All vendors, consultants, and representatives and their employees, agents, and subcontractors (collectively referred to as "Vendors") must adhere to this Code of Conduct while conducting business with or on behalf of the Board.  Vendors must promptly inform the Executive Director, the General Counsel, or a member of the Board when any situation develops that causes, or may cause, the Vendor to violate any provision of this Code of Conduct.  Although Vendors are expected to self-monitor and demonstrate their compliance with this Code of Conduct, the Board may audit Vendors and/or inspect Vendors' facilities and records to confirm compliance.

The Board may require the immediate removal from any project or engagement of any Vendor representative(s) or personnel who behave in a manner that is unlawful or inconsistent with this Code of Conduct or any Board policy.  Compliance with this Code of Conduct, as well as attendance at any training on this Code of Conduct as may be offered by the Board, is required in addition to any other contractual obligations a Vendor may have to the Board.

## II.  Legal and Regulatory Compliance Practices

Vendors must conduct their business activities on behalf of the Board in full compliance with the letter and spirit of all applicable laws and regulations.

- **Anti-Corruption**.  The Board takes a zero-tolerance approach to bribery and corruption, and it requires its Vendors to do the same.  Vendors must not participate in bribes or kickbacks of any kind, whether in dealings with the Board, government and public officials, or individuals in the private sector.  Vendors must also comply with all applicable anti-corruption and anti-money laundering laws, as well as laws governing gifts and payments to public officials, political campaign contribution and lobbying laws, and other related regulations.  In particular, Vendors must not:

  - Offer, promise, or allow anything of value (including travel, gifts, hospitality expenses, and charitable donations) to be given on behalf of the Board to influence a business or government decision, gain an improper advantage, or otherwise improperly promote the interests of the Board in any respect;

  - Offer, promise, or allow anything of value to be given to a Board member or employee to influence a Board decision or otherwise gain an improper advantage; or

  - Ask for or accept anything of value which the Vendor knows or suspects is being offered to influence a Board decision or otherwise obtain an improper advantage in connection with the Vendor's work with or on behalf of the Board.

- **Antitrust/Fair Business Practices**.  Vendors must conduct their business in full compliance with antitrust and fair competition laws that govern the jurisdictions in which they conduct business.  Vendors must also uphold all standards of fair dealing and abide by all fair business practices, including truthful and accurate advertising.

- **Trade**.  Vendors shall comply with all applicable trade controls, as well as any applicable export, re-export, and import laws and regulations.  Vendors must not knowingly employ or do business with anyone reasonably suspected of being connected with criminal or terrorist activities or who is otherwise subject to applicable trade sanctions.

- **Freedom from Unlawful Harassment and Discrimination.**  Vendors shall provide a workplace free from harassment and/or discrimination in hiring, compensation, access to training, promotion, termination, and/or retirement on the basis of race, color, creed, religion, sex, gender identity or expression, sexual orientation, pregnancy, status as a parent, age, marital status, national origin, ancestry, citizenship status, physical or mental disability or serious medical condition, protected genetic information, political beliefs, status as a veteran, or any other characteristic protected by law.  Vendors shall further prohibit any form of reprisal or retaliation against any employee for reporting harassment or discrimination in good faith or for participating in good faith in a harassment or discrimination investigation.

- **Wages, Benefits and Working Hours**.  Vendors must comply with local applicable laws regarding wages, overtime hours and mandated benefits.  Vendors must also communicate with workers about compensation, including any overtime pay, in a timely and honest manner.

- **Freely Chosen Employment**.  No Vendor shall use any form of indentured, slave, or forced labor, including involuntary prison labor.  Vendors are also prohibited from supporting or engaging in any form of human trafficking of involuntary labor through threat, force, fraudulent claims, or other coercion.

- **Child Labor**.  Vendors shall comply with all local and national minimum working age laws or regulations and not use child labor.  All employees shall be age 18 and over unless:  (i) a country's legal age for employment or age for completing compulsory education is under 18; and (ii) the work is non-hazardous.

## III.  <u>Business Practices and Ethics</u>

Vendors must conduct their business interactions and activities with integrity.

- **Honesty and Integrity**.  Vendors must at all times be honest, direct, and truthful in discussions with the Board, its staff and agents, regulatory agency representatives, and government officials.

- **Business and Financial Records**.  The Board expects Vendors to timely, honestly, and accurately record and report all business information, including without limitation any invoices for payment, and comply with all applicable laws regarding their creation, completion, accuracy, retention, and disposal.  All invoices must be (i) timely submitted, (ii) itemized, (iii) supported by appropriate documentation, and (iv) must comply with all other requirements as set out in the relevant contract(s).

- **Conflicts of Interest**.  Vendors shall scrupulously avoid any conflict, real or perceived, direct or indirect, between their own individual, professional, or business interests and the interests of the Board.  Among other things, Vendors must not deal directly with any Board member or *ex officio* member or employee whose spouse, domestic partner, or other family member or relative is

associated with and/or holds any ownership or other financial interest in the Vendor.  In the course of negotiating the Vendor agreement or performing the Vendor's obligations, dealing directly with a Vendor personnel's spouse, domestic partner, or other family member or relative employed by the Board is also prohibited.  Complying with this requirement includes, but is not limited to, each Vendor's completion of the Vendor Conflict of Interest Disclosure Certification attached as **Appendix A** hereto.

- **Gifts and Entertainment**.  Vendors should avoid any actions with Board members or *ex officio* members or employees during any vendor selection or re-selection process that could give others the impression of favoritism or other improper advantage.  Furthermore, Vendors should not offer, and Board members, *ex officio* members, and employees must not accept, gifts or entertainment that might compromise, or appear to compromise, the Board member or employee's judgment or independence.  Even a well-intentioned gift might constitute or be perceived to be a bribe under certain circumstances, or create a conflict of interest or the appearance of a conflict of interest.  Board employees are required to conduct all business and interactions with Vendors in strict compliance with the applicable provisions of the Board's business ethics and conflict of interest policies.

  - **Confidentiality, Privacy and Data Security**.  Vendors shall, at all times while they are engaged by the Board and thereafter, (i) hold all proprietary and confidential information of the Board in strictest confidence, (ii) not use or disclose for any purpose any proprietary and confidential information of the Board to any person, business or entity, except as specifically authorized in writing by the Board, and (iii) not disclose for any purpose any non-public information concerning their retention by the Board or their services for the Board, except as specifically authorized in writing by the Board; provided, that, Vendor may to disclose the Board's proprietary and confidential information only (a) to its Representatives (as defined herein) who need to know the confidential information in connection with the Services and/or any Transaction, (b) to Vendor's regulators or examiners, and (c) to defend itself in connection with a legal proceeding regarding the performance of the Services and/or any Transaction.  In the event that, other than as set forth in the immediately preceding sentence, the Vendor or its Representatives is requested or required by law, regulation, supervisory authority or other applicable judicial or governmental order to disclose any confidential information, it will, to the extent permitted, provide the Board with prompt notice of such request or requirement so that Board may seek an appropriate protective order. If, failing the entry of a protective order, the Vendor is, in the advice of its counsel, required to disclose confidential information, then the Vendor may disclose that portion of the confidential information and will cooperate with the Board, at Board's expense, in the Board's efforts to obtain a protective order or other reliable assurance that only the designated portion of the confidential information will be disclosed. Vendors shall abide by all Board requirements and procedures for protecting the proprietary and confidential information of the Board, including signing and abiding by the Board's confidentiality agreements.  Vendors who handle proprietary and confidential information on behalf of the Board or belonging to the Board must apply and maintain sufficient privacy and information security safeguards. Vendors shall also be subject to an information and data security assessment. Notwithstanding the foregoing, to the extent of any conflict between this provision and the terms of any confidentiality agreement entered into between the Board and Vendor ("Confidentiality Agreement"), the terms of the terms of the Confidentiality Agreement shall control. For purposes of this provision, (i) "Services" and "Transaction" shall have the meaning ascribed to such terms in the Second Amended and Restated Engagement Letter between Citigroup Global Markets Inc. and the Board, dated February 16, 2019, and (ii) the Board's proprietary and confidential information excludes information that (a) was or

becomes generally available to the public other than as a result of a disclosure in breach of this provision by the Vendor or its affiliates, or their employees, officers, directors, representatives and financial and legal advisors (collectively, "Representatives"), (b) was or becomes independently provided to the Vendor by a third party who was not known by the Vendor to be subject to an obligation of confidentiality or otherwise prohibited from transmitting such information, (c) was in the Vendor's possession prior to the receipt thereof from the Board or (d) was independently developed by, or for, the Vendor without reference to the confidential information.

- **Media**.  Vendors are prohibited from speaking to the press or making any public statements, oral or written, concerning their work for or on behalf of the Board without the express written authorization of the Board.

- **Reporting Concerns**.  Vendors shall maintain a hotline or other reporting system for their workers to confidentially and anonymously report any information or concerns about suspected non-compliance or violations of law or improper conduct by any Vendor employee or agent without threat of reprisal, intimidation or harassment.  If concerns are reported, Vendors shall promptly and thoroughly investigate any such report and take corrective action as necessary and appropriate.

[*Signature Page Follows*]

I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Code of Conduct:

Vendor Name:  Citigroup Global Markets, Inc.

_____          February 16, 2019
                                                  _____
Signature of Vendor Authorized Representative     Date

_____
     John C Gavin   Managing Director
Printed Name and Title of Vendor Authorized Representative

## APPENDIX [D]

## [VENDOR CONFLICT OF INTEREST DISCLOSURE CERTIFICATION]

All vendors, consultants, and or experts ("Vendors") interested in conducting business with the Financial Oversight and Management Board for Puerto Rico (the "Board") must complete and return this Vendor Conflict of Interest Disclosure Form to be eligible for a contract award.  Disclosing a potential conflict of interest will not automatically disqualify the Vendor.  The potential conflict of interest will be investigated to determine whether it precludes the contract award.  In the event, however, that the Vendor does not disclose potential conflicts of interest and they are discovered by the Board, the Vendor will be barred from doing business with the Board.

Please note that all Vendors must comply with the Board's Vendor Code of Conduct as stated within the certification section below.

**No Conflict of Interest**:  Except as otherwise fully disclosed below (attach additional pages as needed), the Vendor affirms, to the best of its knowledge, information and belief, that no Interested Party (as defined in Schedule A hereto), nor any person associated with any Interested Party, is an employee, Director or Trustee, Officer or consultant to/of, or has any financial interest, direct or indirect, in the Vendor, or has received or will receive any financial benefit, directly or indirectly, from the Vendor or from the contract associated with this certification.

For the purposes of this certification, "associated" persons include:  a spouse, domestic partner, child, parent or sibling of an Interested Party; a person with whom an Interested Party has a business or other financial relationship, including but not limited to employees of an Interested Party and/or a spouse, domestic partner, child, parent or sibling of such employees; and each firm in which an Interested Party has a present or potential interest.

Note that our responses to questions 1 – 4 are limited to the Vendor's actual knowledge. The Vendor is an indirect wholly owned subsidiary of Citigroup Inc. ("Citigroup"), a publicly traded company that, together with its consolidated subsidiaries, has over 200,000 full-time employees and does business in more than 160 countries and jurisdictions.  The Vendor has no way of knowing if (i) an Interested Party or associated person of an Interested Party owns Citigroup stock or (ii) an associated person of an Interested Party is employed in some part of Citibank's organization outside of the Vendor's Public Finance Department.  If a person associated with an Interested Party owned Citi stock or had a spouse or child with a job at Citi outside of the Public Finance Department, we do not believe that would have a material adverse impact on the Vendor's ability to perform under its contract with the Board or constitute a conflict of interest.

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|----|
| 1 | Is any Interested Party, or any person associated with any Interested Party, associated with any employee, Director or Trustee, Officer or consultant to/of the Vendor? | | X |
| If you answered "yes" to Question 1, please identify the names of the persons who are associated and describe the nature of their association below: | | | |

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 2 | Does any Interested Party, or any person associated with an Interested Party, have an ownership interest in the Vendor's company? | | X |

If you answered "yes" to Question 2, please identify the name(s) of the person(s) who has/have such an ownership interest and describe the nature of the interest:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 3 | Has any Interested Party, or any person associated with an Interested Party, received, or will any Interested Party, or any person associated with an Interested Party receive, a financial benefit from the Vendor or from this contract? | | X |

If you answered "yes" to Question 3, please identify the name(s) of the person(s) who have received or will receive such a financial benefit and describe the nature of the benefit below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 4 | Is any Interested Party, or any person associated with an Interested Party, contemporaneously employed or prospectively to be employed with the Vendor? | | X |

If you answered "yes" to Question 4, please identify the name(s) and title(s) of the person(s) who are or will be so employed below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 5 | Is any Interested Party, or any person associated with an Interested Party, acting as a consultant for the Vendor? | | X |

| | | | |
|---|---|---|---|
| If you answered "yes" to Question 5, please identify the name(s) of the person(s) acting as a consultant and describe the nature of his/her/their consulting services below: | | | |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 6 | Has the Vendor provided, or will the Vendor provide, any gifts or hospitality of any dollar value or any other gratuities to any Interested Party or elected official to obtain or maintain a contract? | | X |

If you answered "yes" to Question 6, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 7 | Has any Interested Party, or any person associated with an Interested Party, provided any gifts of any dollar value or any other gratuities to Vendor? | | X |

If you answered "yes" to Question 7, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

*[Signature Page Follows]*

I certify that the information provided is true and correct by my signature below:

_____          _____
Signature of Vendor Authorized Representative          February 16, 2019
                                                        Date


_____
         John C. Gavin    Managing Director
Printed Name of Vendor Authorized Representative

## SCHEDULE A

For purposes of the Financial Oversight and Management Board for Puerto Rico (the ("Board")'s Vendor Conflict of Interest Disclosure Certification, the following entities and individuals are Interested Parties:

Natalie Jaresko, Executive Director of the Board

Jaime A. El Koury, General Counsel of the Board

Noel Zamot, Revitalization Coordinator

Andrew G. Biggs, Member of the Board

Jose B. Carrión III, Member of the Board

Carlos M. Garcia, Member of the Board

Arthur J. Gonzalez, Member of the Board

José R. González, Member of the Board

Gov. Ricardo Rosselló Nevares, Ex-Officio Member of the Board

Ana J. Matosantos, Member of the Board

David A. Skeel Jr., Member of the Board

Elías Sánchez Sifonte, Former Ex-Officio Member of the Board as representative of the Governor

Christian Sobrino Vega, Ex-Officio Member of the Board as representative of the Governor

Commonwealth of Puerto Rico (Primary Government)

 9-1-1 Service Governing Board

Additional (Electronic) Lottery

Agricultural Enterprises Development Administration

Automobile Accidents Compensation Administration

Cardiovascular Center Corporation of Puerto Rico and the Caribbean

Commonwealth of Puerto Rico Regional Center Corporation

Company for the Integral Development of the "Península de Cantera"

Corporation for the "Caño Martin Peña" Project (ENLACE)

Corporation of Industries for the Blind and Mentally Retarded and Incapacitated Persons of Puerto Rico

Culebra Conservation and Development Authority

Economic Development Bank for Puerto Rico

Employees' Retirement System (ERS)

Employment and Training Enterprises Corporation

Farm Insurance Corporation of Puerto Rico

Fine Arts Center Corporation

Fiscal Agency and Financial Advisory Authority (AAFAF)

Governmental Development Bank for PR (GDB)

Institute of Puerto Rican Culture

Institutional Trust of the National Guard of Puerto Rico

Judiciary Retirement System (JRS)

Land Authority of Puerto Rico

Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads

Model Forest

Municipal Revenue Collection Center (CRIM)

Musical Arts Corporation

Port of the Americas Authority

PR Aqueduct and Sewer Authority (PRASA)

PR Electric Power Authority (PREPA)

PR Highways and Transportation Authority (HTA)

PR Infrastructure Finance Authority (PRIFA)

PR Maritime Shipping Authority

PR Medical Services Administration (ASEM)

PR Sales Tax Financing Corporation (COFINA)

Public Building Authority (PBA)

Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives (COSSEC)

Puerto Rico and Municipal Islands Transport Authority

Puerto Rico Conservatory of Music Corporation

Puerto Rico Convention Center District Authority (PRCCDA)

Puerto Rico Council on Education

Puerto Rico Health Insurance Administration (HIA / ASES)

Puerto Rico Industrial Development Company (PRIDCO)

Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority (AFICA)

Puerto Rico Integrated Transit Authority (PRITA)

Puerto Rico Land Administration

Puerto Rico Metropolitan Bus Authority (AMA)

Puerto Rico Municipal Finance Agency (MFA)

Puerto Rico Ports Authority

Puerto Rico Public Broadcasting Corporation

Puerto Rico Public Private Partnerships Authority (PPP)

Puerto Rico School of Plastic Arts

Puerto Rico Telephone Authority

Puerto Rico Tourism Company

Puerto Rico Trade and Export Company

Solid Waste Authority

Special Communities Perpetual Trust

State Insurance Fund Corporation (SIF)

Teachers' Retirement System (TRS)

The Children's Trust Fund (CTF)

Traditional Lottery

Unemployment Insurance Fund

University of Puerto Rico (UPR)

University of Puerto Rico Comprehensive Cancer Center

**APPENDIX [E]**

**[CONTRACTOR CERTIFICATION REQUIREMENT]**

The following certification shall be provided to the Oversight Board by each contractor under contracts submitted for review:

**1.**     The contractor's subcontractor(s) in connection with the contract is (are) the following:

**2.**     Neither the contractor nor any of its owners, directors, officials or employees, has agreed to share or give a percentage of the contractor's compensation under the contract to, or otherwise compensate, any third party, whether directly or indirectly, in connection with the procurement, negotiation, execution or performance of the contract, except as follows:

(Name of individual or firm, including names of principals or owners of the latter) (Principal terms and conditions of the compensation sharing arrangement)

**3.**     To the best knowledge of the signatory (after due investigation), no person has unduly intervened in the procurement, negotiation or execution of the contract, for its own benefit or that of a third person, in contravention of applicable law.

**4.**     To the best knowledge of the signatory (after due investigation), no person has: (i) offered, paid, or promised to pay money to; (ii) offered, given, or promised to give anything of value to; or (iii) otherwise influenced any public official or employee with the purpose of securing any advantages, privileges or favors for the benefit of such person in connection with the contract (such as the execution of a subcontract with contractor, beneficial treatment under the contract, or the written or unwritten promise of a gift, favor, or other monetary or non-monetary benefit).

**5.**     Neither the contractor, nor any of its owners, directors, officials or employees or, to the best of its knowledge (after due investigation), its representatives or sub-contractors, has required, directly or indirectly, from third persons to take any action with the purpose of influencing any public official or employee in connection with the procurement, negotiation or execution of the contract.

The above certifications shall be signed by the Chief Executive Officer (or other officer with equivalent position or authority to issue such certifications) of the contractor.

In the event that a contractor is not able to provide any of the above certifications, such contractor shall provide a written statement setting forth the reasons therefor.

[*Signature Page Follows*]

I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Contractor Certification Requirement:

Vendor Name:      Citigroup Global Markets, Inc.

Signature of Vendor Authorized Representative        February 16, 2019

                                                                         Date

       John C. Gavin     Managing Director

Printed Name and Title of Vendor Authorized Representative