C2017-000126
24-2017-2126

**CERTIFIED TRANSLATION:**

## COMMONWEALTH OF PUERTO RICO
## DEPARTMENT OF THE TREASURY

## ADVERTISING SERVICES AGREEMENT

### APPEAR

**FOR THE FIRST PART:** THE DEPARTMENT OF THE TREASURY of the Commonwealth of Puerto Rico, represented herein by Juan Zaragoza Gómez, in his capacity as Secretary of the Department of the Treasury, married, of legal age and resident of San Juan Puerto Rico, hereinafter referred to as the TREASURY.

**FOR THE SECOND PART:** Badillo Saatchi & Saatchi, Inc., a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, represented herein by Ana M. Echenique Gaztambide, in her capacity as president of COMSTAT, a division of Badillo Saatchi & Saatchi, Inc., of legal age, single, and resident of Guaynabo, Puerto Rico, as duly authorized by Resolution dated June 17, 2016, hereinafter referred to as the COMPANY.

The **PARTIES** assure that they have the capacity to perform and execute this act, which they hereby bind themselves to prove whenever and wherever required, and in such capacity, they

### SET FORTH

The TREASURY, pursuant to the powers and faculties conferred upon it by the Constitution of the Commonwealth of Puerto Rico and the tax laws it administers, particularly the Puerto Rico Internal Revenue Code of 2011, is authorized to engage such professional, technical and advisory services as may be necessary and convenient to carry out the activities, programs, and operations of the TREASURY or to fulfill any public purpose so authorized by law.

The TREASURY is interested in retaining the professional services of the COMPANY to carry out the services indicated below. The COMPANY affirms that it has the necessary and required experience to perform the retained services. For such purposes, both parties agree to execute the instant Agreement and, consequently, execute it in accordance with the following:

### CLAUSES AND CONDITIONS

**FIRST:** The COMPANY will provide to the TREASURY the advertising services set forth below, as well as such others as are incidental to its work, as detailed in the proposal submitted by the COMPANY dated June 1, 2016, which is attached hereto (the "Services"), provided that in the event of inconsistencies between the provisions of the proposal and the provisions of this Agreement, the provisions of this Agreement shall prevail. The Services include the following:

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

1. Provide to the TREASURY all the services usually rendered by advertising agencies, as broad as convenient, according to the TREASURY's needs. Said services will be provided in compliance with the laws, regulations, and professional practices applicable to the advertising industry. All services rendered will comply, among others, with the provisions of the following applicable laws and regulations:
   a. "Regulations against Misleading Practices and Advertisements" enforced by the Department of Consumer Affairs.
   b. Act No. 128 of August 9, 1995 (3 LPRA sec. 341 e-2), as amended. Pursuant to this Act, no announcement of the TREASURY shall sponsor or be placed in advertising spot of a broadcast television program that is not classified or that is recommended for adults only, in accordance with the rating system designed by the Advisory Board created by Act No. 128.
   c. "The Puerto Rico Election Code" (16 LPRA secs. 4001 et seq.), as amended. In Article 8.001, this law provides for the control of government public broadcasting expenditures
   d. Circular Letter of July 8, 1999, from the Office of the Comptroller on expenditure of public funds for broadcasting governmental advertisements and advertising expenses (OC-2000-1).
   e. Circular Letter of August 12, 2011, from the Department of Treasury on contracting advertising services (CC-1300-02-12).
2. Design effective advertising campaigns, place such campaigns in the media and make pertinent recommendations to the TREASURY.
3. Create media advertisements subject to commission or for other media required by the TREASURY.
4. Purchase all materials and services as may be necessary for the production of advertisements and commercials related to the matters entrusted to it, as included in the approved estimates.
5. Order advertising slots and time or other means to broadcast the TREASURY's advertising material in the media subject to a commission with appropriate instructions.
6. Prepare several publications for the TREASURY at the request of the TREASURY.
7. Carry out other activities required by the TREASURY related to the services contracted herein, such as, but not limited to, strategic planning and consulting; market research; development and programming (front end and back end) of internet and mobile websites and microsites; development, programming and integration of applications (front end and back end) that facilitate the operation of the Treasury Department.
8. The COMPANY will provide, at no additional cost, copies of the printed and digital works in electronic format, electronic or computer copy, and in the formats specified by the TREASURY.
9. The COMPANY further acknowledges and agrees that the TREASURY may contract with other

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **2** of **16**

persons to provide the services required by the TREASURY as part of this Agreement.

10. The COMPANY will submit, for the written approval of the authorized representative of the TREASURY, a detailed description of the traditional or digital advertising requested, particularly including details on the production, project or research to be carried out, its scope, and cost estimate. It will also submit the marketing plan for written approval. The COMPANY will not place any advertisement or publicity without first submitting the text, artwork, and designs for written approval by the TREASURY, who reserves the right, at its sole discretion, to modify or reject it in whole or in part and to instruct the COMPANY to cease work in progress. When so instructed, the COMPANY will immediately cease all internal work it is performing and shall notify external collaborators, such as advertisers, printers, engravers, artists, designers, or programmers, to cease their work, unless otherwise instructed by the TREASURY regarding those external collaborators. The TREASURY will not be responsible for any additional costs incurred by the COMPANY or its subcontractors or collaborators for the COMPANY's failure to act or promptly notify such third parties after receiving instructions or notice from the TREASURY, provided that these cancellations have been conducted following the cancellation procedures established by the subcontractors and external collaborators.

11. Once the work and its cost estimates have been approved, said costs may not exceed the estimate, unless the estimate is amended and the authorized representative of the TREASURY approves the amendment in writing. When the urgency of the situation does not allow preparing a written authorization document, as an exception, the COMPANY will obtain verbal authorization from the authorized representative of the TREASURY, followed by written confirmation, which must be received no later than one (1) business day after the verbal authorization.

12. The COMPANY shall use experienced professionals in the performance of the tasks entrusted in this Agreement. External experts will be consulted, from time to time, as necessary, but only with the prior approval of the TREASURY. In any case in which subcontracting is used to perform the contracted or approved services, the COMPANY will obtain the written authorization of the authorized representative of the TREASURY before engaging such third parties to perform work on behalf of the TREASURY.

**SECOND:** It is hereby provided that all written, visual, graphic, or other materials created by the tasks and actions conducted by the COMPANY in compliance with the provisions of this Agreement or that it purchases or hires to perform the tasks delegated by this Agreement, are original works of or for the Agency and shall be considered "works made for hire" under the U.S. Copyright Act for the benefit of the TREASURY and will be the property of the TREASURY and therefore of the Commonwealth of Puerto Rico without this entailing any additional compensation for the COMPANY. Likewise, the COMPANY acknowledges its obligation to deliver and return to the TREASURY all writings, designs, graphics, photos,

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

recordings, files, documents, or digital and programming files, reports, or materials (whether or not they are subject to copyright) that are produced under this Agreement or that are in its possession as a result of its contractual relationship with the TREASURY as soon as its assignments are concluded, upon request or termination of the contractual relationship, as applicable in each case. If the COMPANY does not deliver or return to the TREASURY the aforementioned writings, documents, photos, recordings, graphics, or designs, the TREASURY may request the delivery of the same to the COMPANY or its successors through the appropriate procedure or legal action. Furthermore, in order to facilitate this transfer of documents, products, titles of ownership or interest, including property rights or copyrights, free of any charge or encumbrance to the TREASURY, the COMPANY will obtain all necessary permits, consents, and understandings and will retain all necessary documents for these purposes, at least during the period of use of the advertisement or promotion and the relevant prescriptive periods. The COMPANY will deliver to the TREASURY, at no additional cost, such agreements, consents, releases, and/or documents, as well as any necessary assistance required by the TREASURY to establish, perfect, or confirm the exclusive rights of the TREASURY on the works and products, including, but not limited to, the delivery of evidence of claims or procedures to obtain, maintain, and claim trademark rights, copyrights, patents or any other rights related to the works and products. It shall be understood that, at the time of delivery of the material, the TREASURY will have no outstanding balance due to the COMPANY.

**THIRD**: The COMPANY shall conduct the studies, render the reports, and draft the documents necessary for the proper performance of the functions entrusted to it under the provisions of this Agreement. The COMPANY will coordinate and meet with the TREASURY, or its authorized representative, as many times as necessary, to discuss, plan and make decisions in relation to the services covered by this Agreement.

**FOURTH**: The COMPANY may not disclose, publish, distribute, or otherwise use, for purposes other than those expressly authorized by this Agreement, the information contained in the documents and information it receives or becomes aware of as a result of its actions under this Agreement. as a result of its transactions under this Agreement. All information will be considered confidential; therefore, the COMPANY agrees not to disclose the information provided by the TREASURY regarding the assignments under this Agreement, including, but not limited to, any person who may retain the COMPANY's services. The PARTIES may deliver confidential information when so required by law or by a court or entity with venue and jurisdiction to so require, but the PARTY receiving the request or order will notify the other PARTY immediately upon receipt, to allow such PARTY an opportunity to object to the request or otherwise participate in the process of delivering the information or to proceed as it deems appropriate in the matter.

**FIFTH**: The COMPANY will ensure that its communication and advertising works shall have the public purpose of enlightening and informing the citizen objectively about the assigned campaign. The COMPANY must avoid, in coordination with the TREASURY, expenditures of public funds that are excessive, extravagant ,or unnecessary as defined by the applicable laws and regulations. The COMPANY

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

will exercise its best judgment and judgment when preparing any announcement, promotion, advertisement, publicity, or other material prepared under this Agreement. This duty entails compliance with all laws, regulations, and generally accepted practices within its professional field, including the level of diligence and austerity required in government services, as well as exercising all due care and responsibility to avoid claims, complaints, or causes of action of any nature for alleged violations of (a) copyrights, patents, trademarks, (b) rights of any person or artistic or literary creation, (c) violation of contracts, (d) violation of the right to privacy or publicity of third parties, or (e) others of a similar nature. The COMPANY will seek to obtain the necessary releases or permissions, transferable to the TREASURY, if necessary, and for as long as necessary to protect the TREASURY from any possible claim of this nature.

**SIXTH:** The COMPANY releases the TREASURY and the Commonwealth of Puerto Rico from any liability arising out of the contractual relationships contracted by the COMPANY with third parties, natural or juridical, in connection with this Agreement, whose contracts shall expressly provide that the COMPANY is the only one financially liable to the third party.

It will also be the COMPANY's responsibility to ensure and hold the TREASURY harmless from any liability related to the agreements and releases required to obtain the necessary rights from those whose names, likenesses, testimonials, scripts, musical compositions, similar materials or rights are used in the promotion, publicity, advertisements, or other materials prepared under this Agreement. All liability for failing to obtain them or for breach of any stipulation or agreement hereunder shall be the sole responsibility of the COMPANY.

The COMPANY will indemnify, defend and hold the TREASURY harmless, as well as the Commonwealth of Puerto Rico, from and against any claims, lawsuits, judgments or damages (including litigation costs and attorneys' fees) arising in connection with actions or breaches in the performance of the COMPANY's obligations or on the part of its officers, employees, agents, subcontractors or representatives during the performance of its obligations under this Agreement. The COMPANY acknowledges its exclusive responsibility for any claim, lawsuit, judgment, damages, or amount of money to be paid to a third party, for any reason whatsoever, including damages and attorney's fees, as a result of the actions and work carried out by the COMPANY for the TREASURY giving rise to any claim, lawsuit or proceedings related to libel, defamation, invasion of privacy, piracy, plagiarism, unfair competition, embezzlement, violation of copyrights or other similar violations, as well as any claim for damages to person or property where there has been no negligence on the part of the TREASURY.

**SEVENTH**: The COMPANY will pay on time all persons or companies supplying merchandise or services in connection with the campaigns or programs of the TREASURY. When purchasing materials or services for the TREASURY, the COMPANY will act as the TREASURY's agent, and this fact will be stated in the agreements with the media and other suppliers. Notwithstanding the foregoing, and without affecting any existing rights, the agreements and contracts of the COMPANY with such third parties will clearly state that the COMPANY is solely responsible for the payment of the materials and services.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

**EIGHTH**: The COMPANY accepts and acknowledges that this Agreement, its rights, and obligations may not be assigned or transferred, in whole or in part, to any third party except with the prior written consent of the TREASURY.

**NINTH**: The contracting PARTIES hereby state that no officer or employee of the TREASURY, or any member of his or her family unit, has any direct or indirect pecuniary interest in this Agreement, pursuant to the provisions of the Puerto Rico Governmental Ethics Act.

**TENTH**: The COMPANY certifies that it has no legal proceedings in progress against the TREASURY or any other government agency or department.

**ELEVENTH**: The COMPANY also acknowledges that in the discharge of its professional duties it has a duty of complete loyalty to the TREASURY, which includes not having or representing interests contrary to said government agency. This duty also includes the continuous obligation to disclose to the TREASURY all the circumstances of its relations with clients and third parties and any interest that may influence the agency at the time of granting the Contract or during its term. The COMPANY represents conflicting interests when, for the benefit of a client, it must encourage anything that it must oppose or refrain from doing in compliance with its obligations toward another former or current client. It is also deemed a conflict of interest when its conduct is described as such in the ethical standards applicable to its profession, or in the laws and regulations of the Commonwealth of Puerto Rico. These conflicting interests include representing clients or products that have or could have conflicting interests with or compete for the same market as the TREASURY. Therefore, the COMPANY accepts and acknowledges that, during the term of this Agreement, it may not provide advertising services regarding any product that competes with the TREASURY's products. The COMPANY will even avoid giving the appearance of conflicting interests.

The COMPANY acknowledges that it shall be a violation of this prohibition for any of its officers, directors, associates or employees to engage in the conduct described herein.

The COMPANY further agrees that it will not use the services or products of any subsidiary or affiliate thereof or of any entity in which it has any pecuniary interest or which, to the best of the COMPANY's knowledge, any of its officers, directors, or employees have any pecuniary interest ("related companies"), except with the prior approval of the TREASURY, after submitting information on these interests and the rates or prices proposed by the related companies. The COMPANY acknowledges the oversight power of the Secretary of the Treasury regarding the observance of the prohibitions contained in this clause.

**TWELFTH**: The COMPANY certifies that none of its incorporators, shareholders, directors, or employees is an officer or employee of any agency, department, board, or public corporation of the Commonwealth of Puerto Rico, nor its municipalities and that none of them is on regular, sick or military leave from the aforementioned agencies or departments, nor receives a pension from the Government during the term of this Agreement.

**THIRTEENTH**: The COMPANY declares that as of the date of execution of this Agreement it has

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

contractual relations with the following government agencies or departments:

1. The Department of Agriculture
2. Government Development Bank

The COMPANY certifies that such agreements do not interfere with the duties and obligations contracted with the TREASURY under this Agreement.

**FOURTEENTH**: Payment for the services covered by this Agreement will be made as set forth hereunder:

A. The COMPANY will invoice for professional services rendered related to subcontracting, art production, television, radio, or any other supplier of advertising goods or services, and it shall receive a maximum commission of the actual cost value incurred by the COMPANY and duly documented to the satisfaction of the TREASURY, plus a fifteen percent (15%) service charge of the total gross amount invoiced. Marketing studies and marketing and public opinion research that the COMPANY deems necessary to prepare the advertising plan, once authorized by the TREASURY, will be invoiced at the actual cost incurred by the COMPANY plus a fifteen percent (15%) service charge of the total gross amount invoiced. For media advertising spots, the COMPANY will receive the standard commission recognized by the media. If an advertising media does not specify the commission, the COMPANY will be entitled to invoice a commission whose maximum shall be equal to 15% of the gross amount invoiced. The maximum commission for professional services rendered by the advertising agency associated with outsourcing services or providing services as intermediaries with the media, production, or any other supplier of advertising goods or services will be 15%. This commission shall be included in the estimate to be approved by the TREASURY, in order to have a clear idea of the approved estimate. The COMPANY understands and accepts to establish a prompt payment incentive system, whereby a 2% discount of the net cost of the advertising media invoices billed to the TREASURY will be made, provided that the latter pays all invoices, including those without discount, within a term of 30 (thirty) calendar days from the date on which the invoices are received by the TREASURY. Invoices for internal services are not subject to the prompt payment incentive, nor are administrative costs and production and other invoices not related to advertising media. However, these invoices must be paid simultaneously in order to qualify for the incentive. All invoices in dispute, under claim or returned for correction will be entitled to the prompt payment incentive counted from the moment the dispute or correction has been resolved. The TREASURY shall not be entitled to the prompt payment incentive if it maintains invoices or balances pending payment over thirty (30) days for invoices that are not in dispute.

B. All extraordinary and unusual work that is requested in writing by the TREASURY will be invoiced at a rate to be mutually agreed upon in writing before work is begun.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

C. As per the standard practices of the Communications Industry in Puerto Rico and the Commonwealth of Puerto Rico, the COMPANY agrees to honor to the TREASURY the volume discount negotiated for government agencies by the Secretary of Public Affairs so that all benefits, discounts, and commissions for business volume or frequency of advertising spots based on either the volume of the TREASURY or government agencies, whichever is more advantageous, will be received. In this case, the COMPANY will invoice the TREASURY for the cost invoiced by the Advertising Media, minus the volume discount reflected in the invoice. The COMPANY will withhold volume discounts and commissions not related to this Agreement, as well as any volume discounts received from the Advertising Media or Suppliers, based on the COMPANY's volume of business.

D. Any other administrative or operational expenses incurred by the COMPANY while performing tasks related to this Advertising Services Agreement may be invoiced to the TREASURY only for the net cost thereof, provided that there has been prior authorization from the TREASURY to incur such expenses.

E. **Costs and Services**

Costs shall be invoiced according to the estimates approved by the TREASURY. When submitting invoices, the COMPANY will include a copy of the last approved estimate corresponding to the invoices.

1. The maximum amount subject to invoicing under this Agreement will be seven hundred thousand dollars ($700,000) during the term thereof, which amount shall be subject to the availability of funds in the budget of the TREASURY. The COMPANY will not be entitled to, nor may it require payment of anticipated and unreceived profits, in case of non-use of its services or termination of this Agreement for any cause whatsoever. Incidental (out-of-pocket) expenses must be previously authorized in writing by the TREASURY in order to be reimbursable. Incidental expenses include expenses such as: printing, mailing and distribution of materials, photocopying, artwork, and photography. Food expenses will not be reimbursed.

2. No advance payments will be made, except in the case of deposits, up to a fifty percent (50%) deposit typically required in the Advertising Industry for Production Companies to begin a production job.

3. The COMPANY, through its accounting division, will keep daily account and expense records in an account in the name of the TREASURY under this Agreement to keep daily control of the budget.

4. The COMPANY is committed to ensuring that its employees do not receive a separate or additional compensation or any item of substantial value from any supplier or media in the business as consideration or cause for such suppliers or media to obtain business relating

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

to the services rendered by the COMPANY under this Agreement.

**F. Invoicing**

1. [The COMPANY] will prepare and submit for the TREASURY's approval, the advertising campaign plans, and/or communication strategies, together with the production cost estimates, according to the categories established in the Proposal. The COMPANY may not, without the consent of the TREASURY, incur any other expense or obligation for which it may be legally or morally liable to the TREASURY, except for emergency situations where such action, in the COMPANY's opinion, proves necessary to protect the interests of the TREASURY.

2. The services covered by this Agreement will be paid by the TREASURY upon presentation of a monthly invoice in which the COMPANY will state, in detail, the nature of the services rendered, including evidence of the invoices received by the COMPANY from third parties and of the incidental expenses approved, submitting copies of the same and evidence of the placement of the advertisements or promotion. Each invoice must be submitted within thirty (30) days from the end of the previous month covered by the invoice in question. Any invoice submitted after ninety (90) days of the month in which the service was rendered will not be paid. The COMPANY will submit, together with the invoice it submits to the TREASURY, evidence of the discounts obtained. All invoices and documents evidencing the services rendered must be certified by the COMPANY and approved as correct by the Secretary of the Treasury or his/her authorized representative.

3. The TREASURY will have the right to examine and audit at any time, and upon reasonable prior notice, the books and records of the advertising agency to determine the accuracy of expenses incurred and/or billed for contracted services. The books, records, documents, correspondence, estimates, invoices, and any other information evidencing the services rendered and amounts billed and paid under this Agreement will be kept by COMPANY for at least seven (7) years from the termination of the Agreement and will be accessible to the TREASURY for inspection and audit during such period.

4. Furthermore, every invoice must comply with Administrative Bulletin No. EO 2001-72, approved on November 29, 2001. This Bulletin provides that all invoices submitted to the heads of agencies and departments of the Executive Branch for the collection of goods or personal or professional services provided, including invoices related to construction works and projects, must bear the following certification:

   *"Under penalty of absolute nullity, I hereby certify that no public official of the Department of the Treasury is a party to or has any interest in the profits or benefits resulting from the agreement covered by this invoice, and should he or she be a party to or have any interest in the profits or benefits resulting from the agreement, a prior waiver has been issued. The only consideration for providing the goods or services covered by the agreement has been the payment agreed upon with the agency's authorized representative. The amount of this*

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

*invoice is fair and correct. The services have been rendered and no payment has been received therefor.*"

5. The payment to the COMPANY for its services will be made within thirty (30) days from the receipt of the invoices approved by the TREASURY, except when such invoice needs to be corrected, in which case the date of receipt will be when the final invoice is received. In case of doubts related to the services invoiced, the TREASURY will notify this in writing to the COMPANY. In such case, the time elapsed will be interrupted until the invoice in question is clarified and the date of clarification is evidenced so that the remaining days to make the payment begin to count. The COMPANY understands and accepts the establishment of a prompt payment system as defined in clause FOURTEENTH (A).

6. Payment for services will be made from account number E1270- 176-0240000-081-2001 up to a maximum of Seven Hundred Thousand Dollars ($700,000), subject to available funds from the budget of the TREASURY.

7. The Company will not obtain any commission for advertising spots that do not imply any cost for the TREASURY.

8. Invoices submitted for payment shall be submitted no later than the first ten (10) days following the month in which the Services were rendered. The COMPANY undertakes to indicate on each of its invoices the remaining amount of funds available to it, taking into consideration the maximum amount of funds agreed upon in this Agreement. The COMPANY acknowledges and accepts that the TREASURY will not pay invoices for services rendered once the maximum amount of funds allocated for this Agreement is exhausted.

**FIFTEENTH**: The COMPANY will not make any withholdings or deductions from its fees towards the payment of the Federal Social Security.

The TREASURY may withhold from the payment to the COMPANY for services rendered up to seven (7%) percent as provided in Section 1062.03 of the Puerto Rico Internal Revenue Code of 2011, as amended. The TREASURY will also withhold an amount equivalent to one point five (1.5%) of the gross amounts for commission, pursuant to Act No. 48 of June 30, 2013. The COMPANY undertakes, as a necessary condition to this Agreement, to submit the certifications, waivers, and other documents evidencing its tax status, as may be required by the TREASURY or its authorized representative. The COMPANY will submit a withholding waiver certificate for each calendar year, otherwise, the TREASURY will withhold from the payment the seven (7%) percent provided for in Section 1062.03 of the Puerto Rico Internal Revenue Code of 2011, as amended.

The COMPANY is responsible for filing its tax returns and paying the corresponding taxes to the Federal Social Security and the Department of Treasury for any taxable amount arising from the Earnings generated under this Agreement. The TREASURY will notify the Returns Processing Bureau, of the payments and refunds that are made to the COMPANY.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

**SIXTEENTH**: Pursuant to Circular Letter Number 1300-16-16 of the Department of the Treasury of Puerto Rico, before executing this Agreement, the COMPANY must submit a Certification of Filing of Income Tax Return, issued by the Internal Revenue Area of the Department of the Treasury, stating that the COMPANY has filed its income tax return for the five (5) years prior to the execution of the Agreement. Additionally, a Certification of Debt, also issued by the Internal Revenue Area of the Department of the Treasury, must be submitted. Also, prior to the execution of the Agreement, the COMPANY must submit a Certification of Debt for All Concepts issued by the Municipal Revenue Collection Center (CRIM) stating that the COMPANY has no outstanding tax debt with said governmental agency, and a Certification of Filing of Personal Property Tax Returns, Affidavit or Negative Certification of Personal Property (as applicable). In addition, it must submit a Certification of Debt from the Department of Labor and Human Resources for temporary disability insurance and/or chauffeur's social security (as applicable). and a Certification from the Administration for Child Support Enforcement (ASUME): which in the case of natural persons is the Negative Certification of Child Support Case or Certification of Account Statement, and in the case of legal entities a Compliance Certification (as applicable).

The COMPANY certifies that it is registered in the Merchant's Registry of the Department of the Treasury and will provide a copy of the Certificate.

Furthermore, it will be the COMPANY's responsibility to require subcontractors, if any, to comply with the provisions of the aforementioned Circular Letter and the obligations to be registered in the Merchant's Registry of the Department of the Treasury. When a contract is to be formalized with a legal entity organized as a partnership, all partners who are residents of Puerto Rico are required to comply with and notify the TREASURY.

**SEVENTEENTH**: The COMPANY certifies and warrants that:

1. At the time of executing this Agreement, it has filed its tax return during the five (5) years prior to the execution of this Agreement, it does not owe taxes, excise taxes, or SUT (Sales and Use Tax) to the Commonwealth of Puerto Rico or is under a payment plan, with the terms and conditions thereof complies. It further certifies that it has filed its personal property tax return under the terms set forth above, or has no personal property, and that it has no outstanding tax debt on real or personal property to the Municipal Revenue Collection Center (CRIM, its Spanish acronym).
2. At the time of executing this Agreement, it has paid unemployment insurance, temporary disability insurance, and/or chauffeur's social security, if applicable); or it is subject to a payment plan, in compliance with the terms and conditions thereof.
3. It complies with the withholding orders issued as an employer, if any, pursuant to Act No. 5 of December 30, 1986, as amended, known as the "Child Support Administration Organic Act",
4. It is registered in the Merchant's Registry of the Treasury Department and has submitted a copy of the Certificate.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

5. Pursuant to the provisions of Act 3 of 2014, the COMPANY certifies that it complies with Act 168 of 2000, as amended, better known as "Act for the Improvement of Family Assistance and for the Support of the Elderly". It further certifies that it is not subject by judicial or administrative order to comply with any obligation, pursuant to the aforementioned Act 168 of 2000, or that, if it is, is in compliance with the obligation imposed by means of withholding orders, as an employer, if any.
6. It complies with the "State Insurance Fund Act" (Act 45 of April 18, 1935).
7. It has the capacity and complies with all applicable laws to perform the Services and any other work it performs.

It is expressly acknowledged that this is an essential condition of the foregoing Agreement and if the above certification is not correct in whole or in part, this shall be enough cause for the TREASURY to rescind it and the COMPANY will have to reimburse the TREASURY any amount of money received under this Agreement. The COMPANY waives the right to raise the defense of unjust enrichment in the event that it is proven that the COMPANY has falsely or erroneously certified the information on its tax status contained in this clause. The COMPANY acknowledges that the veracity and correctness of the information it has certified is an essential element for the execution of this Agreement by the TREASURY.

**EIGHTEENTH**: The COMPANY certifies that it has not been convicted, nor is it aware that it is the subject of an investigation in a civil or criminal proceeding, neither in the state or federal courts, for facts related to a crime against the treasury, public faith or public service, or involving public funds or property.

The COMPANY certifies that it has not been convicted of crimes against public integrity, as defined in the Penal Code, or embezzlement of public funds and that it has not pleaded guilty to this type of crime in the Courts of the Commonwealth of Puerto Rico, in the federal courts or in the courts of any other jurisdiction of the United States of America or any other country. If found guilty of the aforementioned crimes, the Agreement shall be terminated. The COMPANY expressly acknowledges that this certification is an essential condition of the Agreement. Should this certification be incorrect in whole or in part, this shall be cause for the TREASURY to immediately rescind the Contract, without the need for prior notice.

**NINETEENTH**: It is the public policy of the Government of Puerto Rico to discourage the illegal use of controlled substances in the public sector, therefore, the TREASURY has established a program for the detection of the illegal use of controlled substances for all its personnel, per the Regulations of the Controlled Substances Detection Testing Program for Officials and Employees of the Department of the Treasury (the Regulations) of May 21, 1999, as amended. Pursuant thereto and at the request of the TREASURY, the COMPANY will conduct, at its own expense and cost, tests for the detection of illegal use of controlled substances and will submit a negative certification, no later than ten (10) days from the date on which the test was conducted. The test may be coordinated with the Liaison Officer in charge of the Program at the TREASURY, to be performed in a laboratory under contract with the TREASURY or any other entity, public or private, engaged in clinical or forensic analysis, duly authorized and licensed by the

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Secretary of Health of Puerto Rico, that processes controlled substance detection tests using the guidelines and parameters established by the National Institute of Drug Abuse (NIDA). All personnel working at the TREASURY as of the date of this Agreement, will get tested following the procedure described above, as applicable. Refusal to submit to such testing, or a positive test result so certified by the laboratory, shall be sufficient cause for the person to be ineligible for assignment or removed from the TREASURY, as the case may be. The TREASURY may require additional periodic testing as required by the TREASURY for its personnel, following the process implemented in the adopted Regulations.

**TWENTIETH:** The COMPANY has and shall maintain, at its own expense, general professional liability insurance with a minimum aggregate limit of one million dollars ($1,000,000) and an advertisers liability insurance -- agency form, with a minimum limit per occurrence of one million dollars ($1,000,000), acceptable to the TREASURY that includes in the respective coverages the liabilities of the COMPANY relating to its obligations under this Agreement, including the indemnity liability to the TREASURY provided for in clause SIXTH and, in the case of the second policy, coverage for liabilities for libel, slander, privacy, copyright, and other similar violations. The TREASURY will be named as additional insured in said policies. Upon request, the COMPANY shall submit to the TREASURY copies of each such insurance policies. The TREASURY may also require the COMPANY to obtain from any third-party supplier an insurance policy that includes protection for the TREASURY, as may be necessary for the goods or services to be provided for the benefit of the TREASURY.

**TWENTY-FIRST**: This Agreement will be in effect from the date it is signed by both parties until June 30, 2017. The term and validity of the Agreement are subject to compliance with the prohibition regarding the expenditure and obligation of public funds in a general election year established in Act 147 of June 18, 1980, as amended, and to the approval of the agencies that by law or regulation must intervene therein. It may be terminated before the expiration date by either of the PARTIES, prior written notice to the other PARTY fifteen (15) days in advance by the TREASURY and thirty (30) days in advance by the COMPANY, without the right to any additional compensation, except for what has accrued thereunder up to that date, or for cause, as hereinafter set forth. If the Agreement had been executed in violation of the provisions of the aforementioned Act 147, it may be terminated immediately, on the same date of the notice given by the TREASURY.

The rights and obligations of the PARTIES under this Agreement will remain in effect during the thirty (30) day period prior to the date of termination of this Agreement, including the conclusion of plans to place advertisements in any media whose closing dates fall within such thirty (30) days.

At the date of termination of this Agreement, the COMPANY will deliver, within five (5) days thereof, all work that has been completed, with the obligation to complete the same, if incomplete, in-house or by contracting with third parties and to use the material and ideas in its future advertising.

In the event that this Agreement is cancelled before the termination date stipulated therein, the delivery of the documents indicated in clause SECOND shall be made no later than five (5) days from notice

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

of the determination to terminate the Agreement.

This Agreement may also be terminated by the TREASURY upon the negligence or breach of the provisions of this Agreement or improper conduct of the COMPANY. Such termination shall be effective on the same date of the notice, unless the notice provides for a period to cure the breach. If the TREASURY decides to terminate this Contract, the COMPANY shall refrain from taking any further action, unless its inaction may be prejudicial to the TREASURY or imply improper professional conduct, in which case it shall notify the TREASURY of the actions to be taken.

The provisions of clauses SECOND, FOURTH, SIXTH, and TWENTY-FIRST will survive the termination or cancellation of this Agreement for any cause.

**TWENTY-SECOND**: Any failure by a PARTY to object to or take affirmative action upon a breach of this Agreement by the other PARTY shall not be construed as a waiver of its rights or as an acquiescence in the acts or omissions of the breaching PARTY. Any waiver, acceptance, forgiveness, permission, consent, or approval of any kind by a PARTY of any breach by the other PARTY or as a result of any term of this Agreement must be in writing to render it effective. This Agreement shall inure to the benefit of the PARTIES as well as to their successors or authorized assignees.

**TWENTY-THIRD**: All notices required or permitted will be made personally or by certified mail, with return receipt requested and may be sent in advance via fax and will be deemed effective on the date of receipt, with proof of delivery. The addresses of the PARTIES shall be as follows until further notice in writing:

| | |
|---|---|
| TO THE TREASURY: | Juan Zaragoza Gómez<br>Secretary<br>Department of the Treasury<br>Intendente Ramírez Bldg.<br>10 Paseo Covadonga<br>San Juan, Puerto Rico 00901 |
| With copy to: | María E. Quintero<br>Director of Communications<br>Intendente Ramírez Bldg. 8th Floor<br>10 Paseo Covadonga<br>San Juan, Puerto Rico 00901 |
| TO THE COMPANY: | Ana M. Echenique Gaztambide<br>President<br>Ext. Villa Caparra<br>A15 Calle Genova<br>Guaynabo, Puerto Rico 00966-1729 |

**TWENTY-FOURTH**: This Agreement will be governed by the Laws of the Commonwealth of Puerto Rico. Any claim arising out of or related to this Agreement will be submitted solely and exclusively before the courts of the Commonwealth of Puerto Rico, which shall have exclusive jurisdiction to hear the same.

This Agreement will at all times be subject to and construed pursuant to the laws and regulations

---

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

of the Commonwealth of Puerto Rico, which are deemed to be incorporated herein. If any clause or provision of this Agreement is declared null and void or illegal by any court of competent jurisdiction, such clause or provision shall be deemed to be waived, and the remaining clauses and provisions of this Agreement will remain in full force and effect. It is clearly provided that this Agreement contains all of the covenants made by the PARTIES and any other contract or covenant in conflict with this Agreement will be subordinate to the terms and conditions set forth herein.

**TWENTY-FIFTH**: The COMPANY is an independent contractor and no clause of this Agreement shall be interpreted in such a way that a partnership or consortium relationship is deemed to exist or to convert it, or any of its employees, agents, or contractors, into employees of the TREASURY. The COMPANY offers professional services in its capacity as an independent contractor. The COMPANY is not an employee nor is it entitled to accrue regular leave, sick leave or any other kind of leave or retirement benefits, or other fringe benefits because of its independent contractor status.

**TWENTY-SIXTH**: Any substantial modification that the PARTIES agree upon regarding the terms and conditions of the Agreement shall be incorporated into the Agreement by formal written amendment per the rules governing the contracting of professional services by Government agencies.

**TWENTY SEVENTH**: No benefit or consideration under this Agreement may be demanded until the same has been filed for registration with the Office of the Comptroller pursuant to the provisions of Act No. 18 of October 30, 1975, as amended.

**TWENTY-EIGHTH**: The COMPANY certifies that it has received a copy of, understands, and acknowledges that by means of this Agreement, it agrees to be bound by the provisions set forth in Act No. 1 of January 3, 2012, as amended, known as the "Government Ethics Act of the Commonwealth of Puerto Rico" and Act No. 84 of June 18, 2002, as amended, known as the "Code of Ethics for Contractors, Service Providers and Applicants for Economic Incentives of the Executive Agencies of the Commonwealth of Puerto Rico".

**TWENTY-NINTH**: Act No. 103 of May 25, 2006, known as the "Commonwealth of Puerto Rico Government Fiscal Reform Act of 2006", as amended, provides in Section 20 that it shall be the public policy of the Government of the Commonwealth of Puerto Rico to promote the development of technology by encouraging all disbursements of public funds to be made electronically. In compliance with said statutory provisions, on December 14, 2011, the TREASURY issued Circular Letter 1300-10-12 to require agencies to establish in their agreements a clause whereby suppliers agree to receive electronic payments for goods or services rendered. To that effect, the COMPANY is required to complete Form SC 733, "Supplier Electronic Payment Authorization Agreement " to provide information as to the bank account to which the transfer will be made and which contains the following authorization:

> **I hereby authorize the Department of Treasury to electronically deposit into a bank account any amount owed to this supplier. In case of any overpayment or any error related to the electronic payment, I further authorize the Department of the Treasury to electronically debit the bank account to correct the error**.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities. S/ GLADYS RODRÍGUEZ-FORNARIS

**THIRTEENTH**: The COMPANY will keep all reports, worksheets, and other documents related to its work to be examined or copied by the Office of the Comptroller of Puerto Rico in its interventions. These documents shall be kept for a period of not less than six (6) years or until an intervention is made by the Comptroller's Office, whichever occurs first.

In witness whereof, the PARTIES hereto sign this Agreement in San Juan, Puerto Rico, this 5th day of July, 2016.

| | |
|---|---|
| _____[Signed]_____ | _____[Signed]_____ |
| JUAN ZARAGOZA GÓMEZ | ANA M. EXCHENIQUE GAZTAMBIDE |
| SECRETARY OF THE TREASURY | BADILLO SAATCHI & SAATCHI, INC. |
| 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 | 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 |

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS