CERTIFIED TRANSLATION

[Letterhead: Diversified Strategies Consulting, LLC]

May 13, 2015

**VIA ELECTRONIC MAIL**

Víctor D. Calendario, Esq.
Quiñones & Arbona
vcandelario@qalawpr.com

    Re:    **Compensation for Termination of Contract**
            *International Traffic Systems, LLC*

Dear Attorney Candelario:

    Greetings from our team. As discussed at our meeting held last May 11, 2015, in the headquarters of the Department of Transportation and Public Works ("DTOP"), we submit this letter to clarify the position of our client (International Traffic Systems, LLC ("ITS") with regard to the above captioned matter.

    It should be noted that the representations and/or assertions made in the letter are purely intended to negotiate this issue out of court and under no circumstances will be admissible in a judicial and/or administrative proceeding. Therefore, ITS expressly establishes that it does not authorize the disclosure of this letter to any third party and/or entity other than those included herein.

    As you are aware, on December 30, 2013, the Highways and Transportation Authority (HTA), DTOP (hereinafter jointly referred to as "PRHTA") and ITS executed Service Contract Number 2014-000182 (the "Contract") whereby ITS was contracted to implement and operate a traffic control system for issuing traffic fines for violations of traffic laws at high-risk intersections (the "System").

    1.    **FULLY OPERATIONAL REQUIREMENT FOR COMMENCEMENT OF PAYMENTS**

    In accordance with section 2.1 of the Contract, payments for services to be provided by ITS to PRHTA will commence once PRHTA determines that the system has been implemented, after a demonstration that the three (3) license plate recognition systems



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:24709-8 Filed:07/06/23 Entered:07/06/23 11:24:18 Desc: Certified Translation of Docket No. 24634-40 Page 2 of 6

CERTIFIED TRANSLATION

Víctor D. Candelero, Esq.
May 13, 2015
Page 2

(speed, red light, trailer mounted and fixed site/general purpose) are **fully operational**.

Specifically, the contract clause mentioned above provides the following:

**Section 2.1** "Payment for the services to be provided by the Company to PRHTA regarding the System will commence only after PRHTA declare the System implemented which shall follow the live demonstration of each one of the three following types of license plate recognition system-enabled systems (speed, red light, trailer mounted and fixed site/general purpose) being **fully operational** and shall be payable only from the proceeds after each month's accounting reconciliation which is to be no later tan[sic] the fifteenth (15th) day of the following month, and shall consist of the following distribution of revenues of al[sic] notices/assessment/citations issued pursuant to the System (the Payment Schedule)."

Therefore, the language of the above contractual clause specifically and unequivocally sets forth the requirements for determining whether the System is fully operational, which, in turn, would activate PRHTA's payment obligations to ITS.

Furthermore, section 7 of the Contract provides that it will be effective from the date of execution and be considered fully operational for purposes of section 2.1, *supra*, from the date in which PRHTA and ITS agree in writing that the System was ready for use for a period of 60 months. In fact, Section 7 of Contract specifically provides, it is estimated that the System will be declared "fully operational" in a period of three (3) months, making the contract's term one of sixty-three (63) months after its execution, that is, until March 30, 2019.

Section 7.- "TERM. This Contract shall be considered effective from the date of its execution and shall be considered declared fully operational for purposes of section 2.1 from the date in which PRHTA and Company agree in writing that data from DAVID has been successfully sourced and is accurate and ready for use and then for a period of sixty months. For purposes of this section, it is estimated that the System will be declared fully operational in a period of 3 months, making the contract's term one of sixty-three (63) months after its execution, that is, until March 30, 2019. Which term may be amended or renewed at the PRHTA's sole discretion except, in case of the adjustment in the term to the real initial pre "declared fully operational" phase, which adjustment in term shall automatically be agreed to by all parties. Within 15 days of its execution, the parties shall meet to establish a calendar of events that must happen and/or requirements the Company must comply with so that the PRHTA can give it the go ahead to implement the Pilot Project. DTPW and PRHTA shall provide all support, documentation and access to

PO Box 10051 • San Juan, PR 00908 •787-934-0805

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Víctor D. Candelero, Esq.
May 13, 2015
Page 3

Company regarding DAVID and other necessary data and support so that Company can comply with the agreed calendar of events."

In accordance with sections 2.1 and 7 of the Contract, on July 14, 2014, PRHTA sent a written communication to ITS certifying that the system was "fully operational" and authorizing the notice of violations.

2. **METHOD OF PAYMENT**

According to Section 2.1 of the Contract, PRHTA was required to pay ITS 45% of all revenues generated by notices, fines, and/or citations for each month of the 1st year on or before the 15th day of the following month.

It must be noted that, according to section 2.2 of the Contract all revenues generated and collected by the System shall be deposited in an Escrow Account in BPPR, with instructions for the revenues to be distributed, upon payment of bank fees, according to the percentages established in the Contract.

Section 2.2 provided ITS with electronic access to said Escrow Account and to review the status of payments. However, in violation of the Contract, PRHTA never deposited any funds in the Escrow Account, despite having generated revenues on account of the fines imposed by using the System. PRHTA did not make any payment whatsoever to ITS according to the percentages agreed upon or provide it with access to the Escrow Account's information. Proof thereof is shown in the account statements provided by BPPR, as escrow agent, to ITS.

3. **TERMINATION OF CONTRACT FOR CONVENIENCE**

Section 8 of the Contract governs the different termination scenarios. Section 9 governs termination for just cause, which does not apply to this case. Under Section 8, PRHTA reserves the right to terminate the Contract in the event it determines that termination serves its best interests.

Specifically, in pertinent part, section 8 of the Contract provides the following:

Section 8. – TERMINATION FOR CONVENIENCE "The PRHTA may terminate this contract, in whole or in part, whenever it determines that such termination in its best interest. Any such termination shall be effected by delivery of a Notice of Termination specifying the extent to which performance under the contract is terminated, and the date upon which such termination becomes effective (the Date of Termination), which in any event will be no less than thirty (30) calendar days from the Notice of Termination and could be indicated as part of a conditional clause (pending a future event). In this case, the PRHTA will receive all materials and services at that time and the Company will be compensated as per the terms of this contract for the services rendered up to date of the resolution, subject to what is stated in section Ninth of this contract."

PO Box 10051 • San Juan, PR 00908 •787-934-0805



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Víctor D. Candelero, Esq.
May 13, 2015
Page 4

The termination process set forth in the Contract requires the delivery of a Notice of Termination within thirty (30) days from the effective date thereof. In this case, the PRHTA sent the Notice of Termination on January 14, 2015, because, as stated in the letter, it believed that it "was in its best interests." The termination of the Contract became effective on February 16, 2015, that is, thirty (30) days after notice.

A. "PRE-FULLY OPERATIONAL TERMINATION FOR CONVENIENCE"

Section 8.1 governs contract termination **before** declaring the system "fully operational". In this case, as previously stated, the PRHTA had already certified that the system was fully operational, thus, the appliable clause is Section 8.2, which we will be discussed below.

B. "POST-FULLY OPERATIONAL TERMINATION FOR CONVENIENCE"

Section 8.2 of the Contract governs contract termination **after** declaring the system "fully operational." What is essential, for purposes of this issue, is that the contract was terminated after having declared the system "fully operational" and before ITS was able to recover its initial investment.

It must be noted that, for purposes of the Contract, this clause provides that ITS would have recovered its initial investment after receiving $6,000,000.00 plus operating expenses for the period to be counted from the date in which the system was declared "fully operational" to the effective date of the termination. In this case, given that the PRHTA did not make the required payments under Section 2.1 of the Contract, ITS had no way of recovering its initial investment.

The requirements for this type of termination, which occurred before ITS was able to recover its initial investment, are the following:

(i) The PRHTA will be liable to ITS if the product of the required initial investment ($6,000,000 + operating expenses) minus the total value of all equipment removed and held by ITS, minus the total amounts paid to ITS under the Contract, is greater than zero.

PO Box 10051 • San Juan, PR 00908 •787-934-0805



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:24709-8 Filed:07/06/23 Entered:07/06/23 11:24:18 Desc:
Certified Translation of Docket No. 24634-40 Page 5 of 6

CERTIFIED TRANSLATION

Víctor D. Candelero, Esq.
May 13, 2015
Page 5

        ***Computation of Compensation for Termination***:
        **$6 million**
        **+ operating costs**
        **- value of removed equipment**
        <u>**- amounts paid to ITS by the PRHTA**</u>
        **Compensation for Termination of Contract**

(ii)     In the event the product is greater than zero, the parties will discuss the compensation to be paid to ITS as a result of the termination for convenience.

**4.     ITS POSITION**

Under Section 7 of the Contract, the system was declared "fully operational" by the PRHTA on July 14, 2014.

In the Notice of Termination, dated January 14, 2015, the language employed establishes that termination was made pursuant to section 8 of the Contract, that is, for convenience, and in the best interest of the PRHTA.

Therefore, under the Notice of Termination, the PRHTA expressly recognizes that compensation for termination of Section 8 was applicable.

In view of the fact that there was a declaration of "fully operational," termination is governed by section 8.2 of the Contract. In addition, by January 14, 2015, ITS had not recovered its initial investment. Therefore, compensation for termination is computed based on the provisions of section 8.2, specifically, the scenario prior to having recovered the $6 million plus operating costs.

For purposes of the computation of the compensation pending payment to ITS, as discussed above, during the course of these settlement conversations, and subject to the PRHTA being in a position to consider a potential contract termination payment. ITS will be in a position to present documentary evidence which clearly shows the following: (i) ITS operating expenses; (ii) the value of the equipment removed and retained by ITS; (iii) conciliation of amounts owed and paid by PRHTA to ITS.

PO Box 10051 • San Juan, PR 00908 •787-934-0805

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:24709-8 Filed:07/06/23 Entered:07/06/23 11:24:18 Desc:
Certified Translation of Docket No. 24634-40 Page 6 of 6

CERTIFIED TRANSLATION

Víctor D. Candelero, Esq.
May 13, 2015
Page 6

Also, but not less important, for purposes of a fair and proper analysis of the matter at hand, it is worth noting that while the contract was in effect, among other things:

1. The PRHTA failed to remit the money collected to the accounts created under the Contract and prevented ITS from accessing such those accounts, as required by the Contract.
2. The PRHTA failed to provide all the data and assistance required under the Contract.
3. The PRHTA prevented ITS from sending the notices of violation duly issued for different reasons, which amount to multimillion dollars.
4. On several occasions, the PRHTA made erroneous declarations regarding ITS' performance, thus causing substantial damages to the reputation of the company and its officers.

All of the foregoing may lead to a multi-million-dollar lawsuit against the PRHTA. However, ITS may desist from seeking compensation on such account, if an out-of-court settlement is reached based on the compensation formula established in Section 8.2, just as we described it in this letter.

Lastly, we reiterate our availability to engage in a good-faith discussion about these issues and discuss the content of this letter at the meeting scheduled for next Friday, May 19, 2015.

We appreciate your timely attention to this matter.

Sincerely,

[*Illegible signature*]
Alejandro J. Figueroa-Colón

[*Illegible signature*]
Carlos J. Sagardía-Abreu

PO Box 10051 • San Juan, PR 00908 •787-934-0805

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.