Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 1 of 15

KEPDS-10 FONDOS ARRA 2012- 0421

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE SALUD
SAN JUAN, PUERTO RICO

CONTRATO DE SERVICIOS PROFESIONALES Y CONSULTIVOS DE PROGRAMACION DE COMPUTADORAS PARA IMPLANTACION DE HERRAMIENTAS ESPECIALIZADAS COMPUTADORIZADAS Y DE FUENTE ABIERTA PARA MANEJO DE INFORMACION DE SALUD

## COMPARECEN

DE LA PRIMERA PARTE: EL DEPARTAMENTO DE SALUD, representado por su Secretario de Salud, **LORENZO GONZALEZ FELICIANO, MD**, mayor de edad, casado, médico de profesión y vecino de **CAROLINA**, Puerto Rico, o representado por la Subsecretaria de Salud, **CONCEPCION QUIÑONES DE LONGO, MD**, mayor de edad, casada y vecina de **GUAYNABO**, Puerto Rico, quien comparece en representación del Secretario de Salud y está autorizada a firmar contratos en virtud de la delegación hecha por el Secretario en comunicación del 18 de agosto de 2009, de conformidad con la Ley Núm. 81 de 14 de marzo de 1912, en adelante denominado la **PRIMERA PARTE**.

Y DE LA SEGUNDA PARTE: **PHARMA-BIO SERV PR, INC.** (DBA "INTEGRATEK") con número de seguro social patronal **66-0549685**, representado por el Oficial Principal de Finanzas ("CFO", por sus siglas en inglés) el Sr. **PEDRO JOSE LASANTA ROBLES**, mayor de edad y residente de **CAROLINA**, Puerto Rico en adelante denominada la SEGUNDA PARTE.

A tenor con la Ley Núm. 81 de 14 de marzo de 1912, según enmendada, el Memorando Circular Número 07-93, emitido el 8 de marzo de 1993 y el Boletín Administrativo Núm. OE-1991-24, emitido el 18 de junio de 1991, según enmendado por el Boletín Administrativo Núm. OE-1992-52 de 28 de agosto de 1992, **AMBAS PARTES** convienen en efectuar este contrato, con arreglo a las siguientes:



## EXPONEN

El Departamento de Salud se encuentra conduciendo un proyecto para el cual el Gobierno de Puerto Rico ha recibido fondos federales como subvención ("*Grant*") por medio de la Oficina del Gobernador de Puerto Rico, relacionado a Intercambio de Información de Salud (HIE, por sus siglas en inglés) en forma electrónica. Dicho proyecto establecerá en Puerto Rico la infraestructura requerida para ser utilizada por los sectores públicos y privados de la salud en la Isla, para manejo e intercambio de información de salud en forma electrónica entre sistemas computadorizados para manejo de información de salud (HIT, por sus siglas en inglés). Dicha implantación persigue, para los sectores públicos y privados de salud en Puerto Rico:

(a) mejorar la calidad de los servicios de salud
(b) establecer control ante el aumento en costos por servicios y/o productos de salud
(c) reducción en errores durante servicios
(d) reducción en duplicidad de servicios
(e) mejor coordinación de servicios
(f) facilitar la toma de decisiones médicas informadas
(g) apoyo a servicios de salud basados en evidencia científica
(h) acceso de los ciudadanos a su información de salud y a participación en la colección y manejo de la misma
...entre otros asuntos.

Para formar parte de este esfuerzo se contrata a la **SEGUNDA PARTE** con arreglo a las Cláusulas y Condiciones que siguen a continuación.

## CLAUSULAS Y CONDICIONES

**PRIMERO: SERVICIOS:** La SEGUNDA PARTE, a través del personal que para ello contrate, prestará los Servicios Profesionales que se enumeran y describen a continuación. Los

1

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 2 of 15

KEPDS-10 FONDOS ARRA                                              2012-DS  0127

servicios que se contratan se realizarán previa solicitud de la **PRIMERA PARTE** o su representante autorizado.

SERVICIOS A PRESTAR:

1. La **SEGUNDA PARTE** proveerá recursos de programación en computadora y otras tareas dirigidas a la implantación de herramientas especializadas y de fuente abierta para el manejo de información clínica de salud y habilitar el Intercambio de Información de Salud en forma electrónica, conocido por sus siglas en inglés, HIE ("Health Information Exchange"), para la **PRIMERA PARTE** y el Gobierno de Puerto Rico.

2. La **SEGUNDA PARTE** administrará y manejará los recursos que proveerá a la **PRIMERA PARTE**, tomando en consideración las mejores prácticas de gerencia de proyectos del "Project Management Institue" (PMI).

3. La **SEGUNDA PARTE** será responsable de diseñar y establecer controles y procesos de gerencia de proyectos que guíen los recursos provistos a la **PRIMERA PARTE**.

4. La **SEGUNDA PARTE** será responsable de ejecutar las siguientes tareas del proyecto de HIE al que hace referencia este contrato:
   - Planificación de uso de recursos.
   - Desarrollo y mantenimiento del plan de trabajo.
   - Coordinación de los recursos de programación.
   - Seguimiento al desarrollo y calidad de cada uno de los entregables dentro del Proyecto de HIE para los cuales la **PRIMERA PARTE** debe responder ante la Oficina del Coordinador Nacional del Departamento de Salud y Servicios Humanos de los EE.UU. (ONC, por sus siglas en inglés), así como el presupuesto y tiempo dedicado por cada recurso en la ejecución del proyecto.
   - Identificación y manejo de riesgos.
   - Seguimiento y solución de situaciones.
   - Asegurar que la documentación del proyecto cumpla con los requisitos de documentación establecidos por la ONC y la **PRIMERA PARTE**. Mantener dicha documentación de forma organizada y disponible.
   - Hacer cumplir las normas, políticas y procedimientos de la **PRIMERA PARTE** a toda entidad, recurso y/o individuo provisto por la **SEGUNDA PARTE**.

5. La **SEGUNDA PARTE** ejecutará las tareas necesarias para el desarrollo y entrega a la **PRIMERA PARTE** de los siguientes entregables:

   - E-Prescribing Components Enhancements
   - HIE-Participants Account Management Enhancements
   - E-labs
   - Direct Messaging Components

6. Para cada uno de los entregables, la **SEGUNDA PARTE** desarrollará un diseño completo el cual deberá ser debidamente aprobado por la **PRIMERA PARTE** antes de ejecutar el desarrollo de los entregables.



7. La **SEGUNDA PARTE** desarrollará un Plan de Trabajo detallado con las tareas necesarias para desarrollar cada uno de los entregables. El Plan deberá incluir tiempo, recursos asignados y precedencia de las tareas. Dicho Plan deberá ser debidamente aprobado por la **PRIMERA PARTE**.

8. La **SEGUNDA PARTE** asistirá a las reuniones relacionadas con sus obligaciones bajo este Contrato y rendirá aquellos estudios e informes solicitados por la **PRIMERA PARTE**.

9. La **SEGUNDA PARTE** mantendrá informada a la **PRIMERA PARTE** de todos los logros y situaciones que ocurran que puedan afectar la fecha de culminar cada uno de los entregables.

2

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 3 of 15

KEPDS-10 FONDOS ARRA                                    2012-DS L 0427

10. La **SEGUNDA PARTE** ejecutará cualquier otra función y/o operación relacionada a desarrollo, implantación, certificaciones, manejo y/o administración de proyectos en donde estén involucrados los recursos de programación antes descritos.

11. Todos los códigos de las aplicaciones que se desarrollen bajo este contrato así como toda la documentación deberán permanecer en servidores y/o computadoras de la propiedad de la **PRIMERA PARTE**. La **SEGUNDA PARTE** será responsable de mantener actualizada las versiones de las codificaciones que estén desarrollando bajo este contrato.

12. La propuesta sometida por la **SEGUNDA PARTE** para estos servicios se hace parte de este contrato. En caso de alguna discrepancia entre este contrato y la propuesta, prevalecerá lo estipulado en el contrato.

SEGUNDO: **HORARIO Y LUGAR DE TRABAJO**: La **SEGUNDA PARTE** se compromete a trabajar para la **PRIMERA PARTE** en horario regular del gobierno o según se establezca por la **PRIMERA PARTE**.

TERCERA: **COMPENSACION**: La **SEGUNDA PARTE** someterá facturas por los trabajos realizados y completados según cada una de las etapas indicadas en la siguiente tabla:



| Deliverable 1: E-Prescribing Components Enhancements | | |
|---|---|---|
| Etapa | Porciento (%) | Cantidad |
| Diseño | 20 | $ 24,400 |
| Desarrollo | 30 | 36,600 |
| Pruebas | 25 | 30,500 |
| Entrega | 25 | 30,500 |
| Deliverable Total Cost | | $ 122,000 |
| Deliverable 2: HIE-Participants Account Management Enhancements | | |
| Etapa | Porciento (%) | Cantidad |
| Diseño | 20 | $ 11,000 |
| Desarrollo | 30 | 16,500 |
| Pruebas | 25 | 13,750 |
| Entrega | 25 | 13,750 |
| Deliverable Total Cost | | $ 55,000 |
| Deliverable 3: E-Labs | | |
| Etapa | Porciento (%) | Cantidad |
| Diseño | 20 | $ 35,600 |
| Desarrollo | 30 | 53,400 |
| Pruebas | 25 | 44,500 |
| Entrega | 25 | 44,500 |
| Deliverable Total Cost | | $ 178,000 |
| Deliverable 4: Direct Messaging Components | | |
| Etapa | Porciento (%) | Cantidad |
| Diseño | 20 | $ 3,000 |
| Desarrollo | 30 | 4,500 |
| Pruebas | 25 | 3,750 |
| Entrega | 25 | 3,750 |
| Deliverable Total Cost | | $ 15,000 |
| Project Total Cost | | $370,000 |

Las facturas deberán presentarse en triplicada que indicará, de manera precisa, la siguiente información:
   1. Nombre del entregable
   2. Etapa del entregable
   3. Aceptación por parte de la **PRIMERA PARTE** de la etapa por la que se factura.

Dicha factura deberá ser certificada por el Principal Oficinal de Informática (CIO, por sus siglas en inglés) del Departamento de Salud de Puerto Rico, o su representante autorizado. La **PRIMERA**

3

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc:
Exhibit Exhibit 4 - Agreement Page 4 of 15

KEPDS-10 FONDOS ARRA                                                       2012-DS  0427

PARTE se reserva el derecho de revisar la corrección de las facturas y efectuar auditorías que estime convenientes.

Este contrato será administrado por el CIO quien se reportará a la Oficina del Secretario de Salud y será evaluado para medir resultados obtenidos conforme a la necesidad del servicio.

Este contrato será efectivo a la fecha de su firma y estará vigente hasta el 30 de septiembre de 2012, y podrá ser renovado durante períodos adicionales y/o enmendado según mutuo acuerdo.

**CUARTA: RECURSOS PARA PAGAR LOS SERVICIOS:** Los servicios prestados bajo este contrato se pagarán de la Partida de Servicios Profesionales y Consultivos, cifra de cuenta PRIFAS 256-0710000-081-2010-1090HT0001SUB y PeopleSoft 256-0710000-06F-2010-1000/SUBHIE, hasta el máximo de $370,000.00, durante la vigencia del contrato y serán financiados mediante fondos del American Recovery and Reinvestment Act (ARRA, por sus siglas en inglés).

**QUINTA: CONTRATISTA INDEPENDIENTE:** AMBAS PARTES libre y voluntariamente acuerdan que bajo los términos de este contrato, no se están estableciendo relaciones de patrono y empleado entre éstas y que la SEGUNDA PARTE actuará y prestará servicios en todo momento como contratista independiente y conviene no reclamar a la PRIMERA PARTE por concepto de vacaciones, licencias por enfermedad, retiro, bono de navidad, ni póliza de responsabilidad profesional, ni Seguro Social Federal.

A la SEGUNDA PARTE no se le efectuarán retenciones ni descuentos de sus honorarios para el pago del Seguro Social Federal. La PRIMERA PARTE podrá retener del pago debido a la SEGUNDA PARTE por servicios prestados hasta el 7% que dispone la Sección 1143 del Código de Rentas Internas de Puerto Rico de 1994, según enmendada, de conformidad con los reglamentos aprobados por el Secretario de Hacienda.

La SEGUNDA PARTE se obliga, como condición necesaria a este contrato, a presentar las certificaciones, relevos y documentos que acrediten su situación contributiva, que sean requeridos por la PRIMERA PARTE o su representante autorizado.

La SEGUNDA PARTE es responsable de rendir sus planillas y pagar las aportaciones correspondientes, al Seguro Social Federal y al Negociado de Contribución Sobre Ingresos del Departamento de Hacienda, por cualquier cantidad tributable como resultado de los ingresos devengados bajo este contrato. La PRIMERA PARTE notificará al Negociado de Contribución Sobre Ingresos los pagos y reembolsos que sean efectuados a la SEGUNDA PARTE.

La SEGUNDA PARTE será responsable de asegurar con el Fondo del Seguro del Estado a sus empleados y a todo el personal que preste servicios bajo este contrato. Copia de la póliza del Fondo del Seguro del Estado se une y hace formar parte de este contrato.

**SEXTA: INFORMES:** La SEGUNDA PARTE vendrá obligada a rendir a la PRIMERA PARTE o su representante autorizado un informe mensual sobre la labor realizada en todos aquellos asuntos sometidos ante su consideración por la PRIMERA PARTE.

**SEPTIMA:** Convienen las PARTES que la SEGUNDA PARTE no podrá alterar los procedimientos establecidos o tomar decisiones que afecten sustancialmente la Política Administrativa establecida por la PRIMERA PARTE, sin el previo consentimiento por escrito de ésta.

**OCTAVA: NEGLIGENCIA O ABANDONO:** El desempeño negligente de sus funciones o el abandono de éstas por la SEGUNDA PARTE se considerará una violación a este contrato y será causa suficiente para que la PRIMERA PARTE lo declare terminado inmediatamente, sin sujeción a la Cláusula de Resolución y quede relevada de toda obligación y responsabilidad bajo el mismo. Queda expresamente convenido que la SEGUNDA

4

KEPDS-10 FONDOS ARRA                                     2012-DS C427

PARTE completará cualquier trabajo que quede pendiente al momento de la resolución, sin que por ello la PRIMERA PARTE venga obligada a pagar a la SEGUNDA PARTE retribución o compensación adicional sobre el mismo.

NOVENA: DISCRIMEN EN LA PRESTACION DE LOS SERVICIOS: La SEGUNDA PARTE se compromete a no discriminar en la prestación de estos servicios por razones de índole política, religiosa, de raza, condición social, edad, sexo, nacionalidad, condición o impedimento físico o mental y/o cualquier otro tipo de discrimen.

DECIMA: PROPIEDAD INTELECTUAL: Es expresamente convenido que la producción que resulte de los servicios prestados por la SEGUNDA PARTE, ya sea en forma de estudios, investigaciones, consultas o en cualesquiera otra forma que se manifiesten, constituirá en todo momento propiedad de la PRIMERA PARTE, sin que ésta venga obligada a pagar a la SEGUNDA PARTE retribución alguna por esa producción o por derecho sobre la misma, en adición a la compensación estipulada en la Cláusula TERCERA de este contrato. La PRIMERA PARTE queda también expresamente autorizada y con pleno derecho para dar a dicha producción el uso que estime conveniente y a su discreción.

La SEGUNDA PARTE no podrá utilizar dicha producción para propósitos ajenos a la PRIMERA PARTE.

DECIMA PRIMERA: VIGENCIA Y DURACION: Este contrato entrará en vigor a partir de la firma de la PRIMERA PARTE y estará vigente hasta el 30 de septiembre de 2012, y podrá ser renovado durante períodos adicionales, previa enmienda escrita a esos efectos, firmada por AMBAS PARTES, siempre que los servicios sean necesarios y que existan fondos necesarios y debidamente asignados.



DECIMA SEGUNDA: RESOLUCION: Este contrato podrá ser resuelto antes de su vencimiento, por cualquiera de AMBAS PARTES, mediante notificación escrita a la OTRA PARTE, con treinta (30) días de antelación a la fecha de resolución deseada, sin que por ello incurran las PARTES entre sí en obligación alguna.

La insuficiencia de fondos será causa suficiente para la terminación inmediata y/o modificación en compensación de este contrato.

Serán causas suficientes para que la PRIMERA PARTE declare el contrato terminado inmediatamente, y la PRIMERA PARTE quede relevada de toda obligación y responsabilidad bajo este contrato, por la infracción o incumplimiento por la SEGUNDA PARTE a las siguientes condiciones:
1. Infracción o infracciones por la SEGUNDA PARTE a la Ley Núm. 12 de 24 de julio de 1985, según enmendada, conocida como Ley de Ética Gubernamental de Puerto Rico.
2. Desempeño negligente por la SEGUNDA PARTE de sus funciones o por el abandono de éstas.
3. Incumplimiento por la SEGUNDA PARTE de los Reglamentos y procedimientos establecidos por la PRIMERA PARTE.
4. Convicción o determinación de causa probable para arresto contra la SEGUNDA PARTE por la comisión de algún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal y/o estatal.
5. Incurrir en actos que van en contravención con legislación de Política Pública, tales como Hostigamiento Sexual, Discrimen y Uso y Abuso de Sustancias Controladas.
6. Que la SEGUNDA PARTE haya sido acusada, administrativamente o criminalmente, o convicta de haber obtenido fraudulentamente cualquier credencial.
7. Que la SEGUNDA PARTE quede desprovista de su licencia profesional o de no mantener su licencia profesional vigente (si aplica).
8. Incumplimiento con cualquier cláusula de este contrato.

La PRIMERA PARTE podrá terminar inmediatamente este contrato si en su total y única discreción determina que la SEGUNDA PARTE ha incurrido en una violación de los acuerdos de privacidad, confidencialidad y seguridad en cuanto al uso y divulgación de la información de salud

5

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 6 of 15

KEPDS-10 FONDOS ARRA 2012-DS

protegida de pacientes de la PRIMERA PARTE y/o de terceros a este contrato. Será causa de terminación contractual la falta de notificación a la PRIMERA PARTE de cualquier violación al manejo de la Información de Salud Protegida ("*Protected Health Information*", o PHI, por sus siglas en inglés) por parte de la SEGUNDA PARTE, sus asociados y/o sub-contratistas. La PRIMERA PARTE se reserva el derecho de referir al Departamento de Salud y Servicios Humanos Federal sobre violaciones no subsanadas de la SEGUNDA PARTE.

Queda expresamente convenido que la SEGUNDA PARTE completará cualquier trabajo que quede pendiente al momento de la resolución, sin que por ello la PRIMERA PARTE venga obligada a pagar a la SEGUNDA PARTE retribución o compensación adicional sobre el mismo

**DECIMA TERCERA: INTERES PECUNIARIO**: La SEGUNDA PARTE hace constar que ningún funcionario o empleado de la agencia, contratante, o algún miembro de su unidad familiar, tiene, directa o indirectamente, interés pecuniario en este contrato y que ningún funcionario o empleado de la Rama Ejecutiva tiene interés en las ganancias o beneficios producto de este contrato.

La PRIMERA PARTE certifica que, a su mejor entender, ningún empleado o funcionario de esta agencia o algún miembro de su unidad familiar tiene, directa o indirectamente, interés pecuniario en este contrato y que ningún funcionario o empleado de la Rama Ejecutiva tiene interés en las ganancias o beneficios producto de este contrato.

**DECIMA CUARTA: INTERPRETACION**: Este contrato estará sujeto en todo momento a las Leyes y Reglamentos del Estado Libre Asociado de Puerto Rico y será interpretado de acuerdo a los mismos.

**DECIMA QUINTA: EX-SERVIDORES PUBLICOS**: El representante de la SEGUNDA PARTE certifica que los socios y/o incorporadores no son servidores públicos ni lo han sido durante los últimos dos años.

**DECIMA SEXTA: DELITOS CONTRA EL ERARIO PUBLICO:**

_____ La SEGUNDA PARTE certifica que ni ella, ni ninguno de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices ha sido convicto, ni se ha encontrado causa probable para su arresto, por ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

_____ La SEGUNDA PARTE reconoce su deber continuo de informar, durante la vigencia del contrato, cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito contra el erario, la fe o con la función pública; contra el ejercicio gubernamental; que involucre fondos o propiedad pública, en el ámbito federal o estatal.

_____ La SEGUNDA PARTE certifica que durante los diez años anteriores a la formalización del contrato, ni ella, ni ninguno de sus accionistas, socios, oficiales principales, empleados, subsidiarias o compañías matrices, no han cometido ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

**DECIMA SEPTIMA: CERTIFICACION CONTRIBUTIVA:**

_____ La SEGUNDA PARTE certifica y garantiza que al momento de suscribir este contrato ha rendido su planilla contributiva durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Estado Libre Asociado de Puerto Rico. También certifica que no tiene deuda contributiva alguna, entendiéndose por deuda contributiva, cualquier deuda por concepto de contribución sobre ingresos, arbitrios, contribución sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias,

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 7 of 15

KEPDS-10 FONDOS ARRA                                          2012-DS____-0427

contribuciones retenidas en el origen en el pago de salarios a empleados, en el pago de intereses, dividendos, rentas, salarios y otros emolumentos a individuos o por cualquier otro concepto.

O

_____ La SEGUNDA PARTE certifica y garantiza que al momento de suscribir este contrato ha rendido planilla contributiva durante los cinco (5) años previos a este contrato y que se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo. **Copia del o de los Planes de Pago, forman parte del expediente de este contrato.**

O

_____ La SEGUNDA PARTE certifica que al momento de suscribir este contrato NO ha rendido su planilla contributiva durante alguno de los periodos contributivos dentro de los cinco (5) años previos a este contrato y que no adeuda contribuciones al Estado Libre Asociado de Puerto Rico. También certifica que no tiene deuda contributiva alguna, entendiéndose por deuda contributiva, cualquier deuda por concepto de contribución sobre ingresos, arbitrios, contribución sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias, contribuciones retenidas en el origen en el pago de salarios a empleados, en el pago de intereses, dividendos, rentas, salarios y otros emolumentos a individuos o por cualquier otro concepto.

O

_____ La SEGUNDA PARTE certifica que tiene una deuda contributiva, pero que la misma está en proceso de revisión o ajuste en el Departamento de Hacienda o por el CRIM. La SEGUNDA PARTE expresamente reconoce y se obliga a que, de no proceder la revisión o el ajuste, se compromete a cancelar dicha deuda, mediante retención con cargo a los pagos a que tiene derecho a recibir por los servicios prestados bajo este contrato. Además de los documentos requeridos en esta cláusula, la SEGUNDA PARTE someterá una Certificación emitida por el Departamento de Hacienda y o por el CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPAL (CRIM), donde se informe que la SEGUNDA PARTE tiene deuda en revisión. La SEGUNDA PARTE está obligada a informar trimestralmente (marzo 31, junio 30, septiembre 30 y diciembre 31) a la PRIMERA PARTE del progreso o denegación de la revisión o el ajuste.

Y

La SEGUNDA PARTE someterá, en original, del Departamento de Hacienda Certificación de Radicación de Planillas de Contribución Sobre Ingresos (Modelo SC 6088), si procede, Corrección Manual a la Certificación de Radicación de Planillas de Contribución sobre Ingresos (Modelo SC 2888) y Certificación de Deuda (Modelo SC 6096) y del CENTRO DE RECAUDACION DE INGRESOS MUNICIPAL (CRIM), Certificación de Radicación de Planillas de Contribución sobre Propiedad Mueble (de no poseer propiedad mueble y de no figurar radicando planilla en el sistema contributivo mecanizado del CRIM, la SEGUNDA PARTE someterá una Declaración Jurada, en cumplimiento con los términos requeridos en la Carta Circular 1300-21-06 del Departamento de Hacienda) y una Certificación de Deuda por Todos los Conceptos, las cuales forman parte de este contrato.

La SEGUNDA PARTE está obligada a requerir a todos los Sub-Contratistas que presten servicios bajo este contrato, y de ser la SEGUNDA PARTE una Sociedad, a todos los Socios residentes en Puerto Rico el cumplimiento con las disposiciones de esta cláusula.

La SEGUNDA PARTE se compromete además, a someter con su última factura el Modelo SC-6096, Certificación de Deuda expedido por el Departamento de Hacienda. La SEGUNDA PARTE acepta y reconoce que el último pago a efectuarse bajo el contrato, sólo se tramitará si la Certificación de Deuda indica que la SEGUNDA PARTE no tiene deuda con el Departamento de Hacienda. De tener deuda, la SEGUNDA PARTE se compromete a cancelar la misma mediante retención en los pagos a que tiene derecho a recibir por los servicios objetos de esta contratación.

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 8 of 15

KEPDS-10 FONDOS ARRA                                              2012-DS- 0427

Expresamente se reconoce que estas son condiciones esenciales del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tenga que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

**DECIMA OCTAVA: CERTIFICACION A FAVOR DEL DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS:** La SEGUNDA PARTE certifica y garantiza que al momento de suscribir este contrato ha pagado las contribuciones de:

_____ Seguro por Desempleo

_____ Incapacidad Temporal

__N/A__ Seguro Social para Choferes

__N/A__ La SEGUNDA PARTE se encuentra acogida a un Plan de Pago, con cuyos términos y condiciones está cumpliendo. Copia del Plan de Pago forma parte del expediente de este contrato.

Expresamente se reconoce que ésta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la SEGUNDA PARTE tenga que reintegrar a la PRIMERA PARTE toda suma de dinero recibida bajo este contrato.

**DECIMA NOVENA:** La SEGUNDA PARTE reconoce que en el descargo de su función profesional tiene un deber de lealtad completa hacia la agencia, lo que incluye el no tener intereses adversos a dicho organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con **la PRIMERA PARTE**. Este deber, además, incluye la obligación continua de divulgar a la agencia todas las circunstancias de sus relaciones con clientes, terceros, y cualquier interés que pudiera influir en la agencia al momento de otorgar el contrato o durante su vigencia.

**UNDECIMA: CONFIDENCIALIDAD:** La SEGUNDA PARTE se compromete a no utilizar o hacer público ningún tipo de información que llegue a su conocimiento, referente a los servicios que se compromete a prestar, en virtud de este contrato.

**DUODECIMA: CODIGO DE ETICA:** La PRIMERA PARTE hace saber a la SEGUNDA PARTE que AMBAS PARTES están sujetas y cumplirán las disposiciones de la Ley de Ética Gubernamental y del Código de Ética para contratistas, suplidores y solicitantes de incentivos económicos de las agencias ejecutivas del Estado Libre Asociado de Puerto Rico y del gobierno federal, documentos que se comprometen a conocer y de los cuales pueden solicitar una copia impresa a la **PRIMERA PARTE**.

**DUODECIMA PRIMERA: CUMPLIMIENTO CON POLITICA PUBLICA:** De la SEGUNDA PARTE incurrir en actos que van en contravención con legislación de Política Pública, tales como Hostigamiento Sexual, Discrimen y Uso y Abuso de Sustancias Controladas, el contrato será terminado de inmediato sin sujeción a la Cláusula de Resolución.

**DUODECIMA SEGUNDA: CUMPLIMIENTO CON LEY NUMERO 127 DE 31 DE MAYO DE 2004:** AMBAS PARTES reconocen y aceptan que ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor, a tenor con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada por la Ley Núm. 127 de 31 de mayo de 2004.

8

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 9 of 15

KEPDS-10 FONDOS ARRA                                                2012-DS - R427

**DUODECIMA TERCERA: LITIGIOS:** La SEGUNDA PARTE certifica que al momento de suscribir este contrato no tiene litigios en proceso contra ninguna agencia o instrumentalidad gubernamental, incluyendo al Departamento de Salud.

**DUODECIMA CUARTA: CERTIFICACION DE LA ADMINISTRACION PARA EL SUSTENTO DE MENORES:**

La SEGUNDA PARTE someterá a la PRIMERA PARTE una Certificación de Estado de Cumplimiento de la Administración para el Sustento de Menores (ASUME).

Esta certificación se emite en los casos de personas jurídicas (compañías, corporaciones) para corroborar que cumplen con las órdenes emitidas a su nombre como patrono, para retener del salario de sus empleados los pagos de pensión alimentaria.

**DUODECIMA QUINTA: SUB-CONTRATACION:** La SEGUNDA PARTE no podrá subcontratar con entidad privada alguna para delegar los servicios esenciales objeto de esta contratación. La SEGUNDA PARTE solo podrá subcontratar servicios personales y servicios profesionales y consultivos con el fin de dar cumplimiento a los servicios objeto de esta contratación. De ninguna manera y bajo ninguna circunstancia debe interpretarse que el consentimiento de la PRIMERA PARTE para autorizar dichas subcontrataciones implica que la PRIMERA PARTE incurre en obligaciones adicionales al monto total en dólares convenido en este contrato, o que la SEGUNDA PARTE queda relevada de responsabilidad por cualesquiera daños y perjuicios que pueda ocasionar la parte que se subcontrate.



Cualquier subcontratación que la SEGUNDA PARTE estime necesaria realizar y que no esté contemplada entre las subcontrataciones permisibles, requerirá la autorización escrita de la PRIMERA PARTE. Todo subcontrato estará sujeto a las condiciones especiales estipuladas en este contrato y a cualquier otra condición que la PRIMERA PARTE estime necesaria para su aprobación, y a todas las leyes y reglamentos estatales y federales aplicables al contrato originado entre la PRIMERA PARTE y la SEGUNDA PARTE.

**DUODECIMA SEXTA: INTRANSFERIBILIDAD:** Excepto por la transferencia a otra afiliada de la SEGUNDA PARTE como se describe bajo la comparecencia (primera página) de este contrato (Ej. DBA "INTEGRATEK"), los servicios que prestará la SEGUNDA PARTE no pueden ser transferidos sin previa notificación y acuerdo con la PRIMERA PARTE. La delegación de éstos, sin previa notificación y acuerdo con la PRIMERA PARTE será causa suficiente para dar por terminado inmediatamente este contrato. El incumplimiento de esta cláusula hará responsable a la SEGUNDA PARTE por cualesquiera daños y perjuicios que fueran causados a la PRIMERA PARTE, ya sean éstos en forma directa o indirecta.

**DUODECIMA SEPTIMA: POLIZA:** La SEGUNDA PARTE mantendrá en vigor durante el período de vigencia de este contrato una póliza de Responsabilidad Pública, bajo la forma "Commercial General Liability" con límites combinados no menores de **QUINIENTOS MIL DOLARES ($500,000.00)**. Esta póliza "Commercial General Liability", tendrá un endoso nombrando a la PRIMERA PARTE como Asegurado Adicional y con un Relevo de Responsabilidad o "Hold Harmless Agreement" a favor de la PRIMERAPARTE.

La SEGUNDA PARTE someterá además, copia de la póliza de "Error and Omitions Professional Liability"



Todas las pólizas contendrán una disposición a los efectos de que las mismas no podrán ser canceladas ni modificadas, a menos que medie una notificación por escrito con treinta (30) días de anticipación a la PRIMERA PARTE, Oficina de Seguros y Riesgos, Apartado 70184, San Juan, Puerto Rico, 00936-8184.

Copia de las pólizas pasarán a formar parte de este contrato y el incumplimiento de cualquiera de las disposiciones de esta cláusula, será causa suficiente para la terminación inmediata del mismo.

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc:
Exhibit Exhibit 4 - Agreement Page 10 of 15

**KEPDS-10 FONDOS ARRA**      2012-DS **C427**

La **PRIMERA PARTE** no pagará los servicios prestados durante cualquier período de tiempo en que la póliza no esté vigente.

**DUODÉCIMA OCTAVA:** <u>ESCENARIO DE TRABAJO LIBRE DE HUMO</u>: La **SEGUNDA PARTE** se compromete con las disposiciones de la Ley Núm. 40 de 3 de agosto de 1993, según enmendada, conocida como "Ley para Reglamento la Práctica de Fumar en Determinados Lugares Públicos y Privados"; y con el Reglamento del Secretario de Salud y la Policía de Puerto Rico Núm. 7304, según enmendado, las cuales prohíben la práctica de fumar en sus instalaciones, incluyendo áreas internas y externas tanto abiertas como cerradas, entre otros.

**DUODÉCIMA NOVENA:** <u>CONFLICTOS DE INTERESES</u>: La **SEGUNDA PARTE** reconoce que en el descargo de su función profesional tiene un deber de lealtad completa hacia la agencia, lo que incluye el no tener intereses adversos a dicho organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con la **PRIMERA PARTE**. Este deber, además, incluye la obligación continua de divulgar a la agencia todas las circunstancias de sus relaciones con clientes, terceros, y cualquier interés que pudiera influir en la agencia al momento de otorgar el contrato o durante su vigencia.

La **SEGUNDA PARTE** certifica que no está representando ni representará durante la vigencia de este contrato, intereses particulares en casos o asuntos que involucren conflictos de intereses o de política pública contra la **PRIMERA PARTE**.

La **SEGUNDA PARTE** representa intereses encontrados cuando, en beneficio de un cliente, es su deber promover aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente anterior, actual y/o potencial. Representa intereses en conflicto, además, cuando su conducta es descrita como tal en las normas éticas reconocidas a su profesión, o en las leyes y reglamentos del Estado Libre Asociado de Puerto Rico.

En contratos con sociedades o firmas constituirá una violación de esta prohibición el que alguno de sus directores, asociados o empleados incurra en la conducta aquí descrita. La **SEGUNDA PARTE** evitará aún la apariencia de la existencia de intereses encontrados.

La **SEGUNDA PARTE** reconoce el poder de fiscalización del jefe de la agencia con relación al cumplimiento de las prohibiciones aquí contenidas. De entender el jefe de la agencia que existen o han surgido intereses adversos para con la **SEGUNDA PARTE**, le notificará por escrito sus hallazgos y su intención de resolver el contrato en el término de treinta (30) días. Dentro de dicho término la **SEGUNDA PARTE** podrá solicitar una reunión a dicho jefe de agencia para exponer sus argumentos a dicha determinación de conflicto, la cual será concedida en todo caso. De no solicitarse dicha reunión en el término mencionado, o de no solucionarse satisfactoriamente la controversia durante la reunión concedida, este contrato quedará resuelto.

**TRIGÉSIMA:** <u>RESPONSABILIDAD POR DAÑOS Y PERJUICIOS</u>: La **SEGUNDA PARTE** será responsable por cualesquiera daños y perjuicios causados por el desempeño negligente o abandono de las obligaciones asumidas bajo este contrato y releva así de cualquier obligación y responsabilidad a la **PRIMERA PARTE**.

**TRIGÉSIMA PRIMERA:** <u>AUDITORIAS</u>: La **SEGUNDA PARTE** se compromete a viabilizar las auditorías que la **PRIMERA PARTE** o la Oficina del Contralor de Puerto Rico consideren necesarias, por lo cual deberán:
1. Mantener disponible para examen o inspección, en cualquier momento por la **PRIMERA PARTE** o la Oficina del Contralor de Puerto Rico, todos los expedientes, documentos, libros y datos relacionados con los asuntos objeto de este contrato.
2. Retener todos los expedientes o cualquier documento pertinente a este contrato, por un período de cinco (5) años luego de terminado el mismo. De haberse iniciado una auditoría cuyos resultados no se hubieran solucionado al finalizar los cinco (5) años, los expedientes deberán ser retenidos hasta que se emitan los resultados de la auditoría.

KEPDS-10 FONDOS ARRA                                              2012-DS- 0427

TRIGESIMA SEGUNDA: **LEY FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT DEL 1996**

A. La ley federal *"Health Insurance Portability and Accountability Act of 1996"* (HIPAA, por sus siglas en inglés), y sus Reglas de Privacidad y de Seguridad, requieren:
   a. Que toda entidad cubierta por dicha legislación adiestre a su fuerza laboral en cuanto a las disposiciones y requisitos de la misma.
   b. Que existan Políticas y Procedimientos relacionados con la privacidad y la confidencialidad y seguridad de la información de salud que reciben, crean, manejan, almacenan, accedan, transmitan y/o intercambien (en papel o por en forma electrónica) en la entidad cubierta, y que la fuerza laboral esté adiestrada en cuanto a dichas políticas y procedimientos, se obligue a cumplir con ellos, y en caso de no hacerlo sean sancionados a los más altos niveles aplicables.
   c. Que toda persona, sea o no parte de la fuerza laboral, que tenga o pudiera tener contacto con información de pacientes bajo custodia de la entidad cubierta, conozca sobre las normas de privacidad a la que tienen derecho los pacientes, y la confidencialidad y seguridad que protege a la información de salud creada, almacenada, manejada, accedida, trasmitida o intercambiada (en papel o en forma electrónica), y conozca y se rija por dicha legislación, reglas, políticas y procedimientos relacionados(as) a las disposiciones de dicha Ley.

B. HIPAA define fuerza laboral como aquellos empleados regulares, por contrato, transitorios, voluntarios, estudiantes, practicantes y cualquier persona que lleve a cabo una labor en la institución, sea o no remunerada.

C. La SEGUNDA PARTE forma parte de esa fuerza trabajadora y como tal, está sujeto al cumplimiento de las políticas y procedimientos establecidos por la entidad para el cumplimiento con la ley HIPAA y su reglamentación relacionada. A tales efectos, deberá:
   a. Estar adiestrado sobre dicha ley, su Regla de Privacidad, Regla de Códigos y Transacciones, Reglas de Identificadores, y su Regla sobre la Seguridad de la Información de Salud accedida, creada, mantenida, transmitida y/o intercambiada en forma electrónica (ePHI).
   b. Conocer y obligarse a cumplir con los términos establecidos en la Política y Procedimientos Sobre Prácticas de Privacidad y Seguridad de la institución.
   c. Cumplir con todas las políticas de la institución para la protección de la privacidad, confidencialidad y seguridad de la información de salud, irrespectivo que esta información se encuentre en papel o por forma electrónica.
   d. Cumplir con la reglamentación federal aplicable para el manejo y custodia de la información de salud protegida (*"Protected Health Information"*, o en adelante, PHI, por sus siglas en inglés), en relación al aspecto administrativo, físico y técnico según estatuido en el 45 CFR secs. 164.308, 164.310, 164.312, 164.316).

D. En cuanto al manejo de la información de salud protegida, PHI, que compartan AMBAS PARTES, se requerirá de la SEGUNDA PARTE lo siguiente:
   1. Mantener sistemas que protejan la información de salud protegida (*"Protected Health Information"*, PHI, por sus siglas en inglés), contra accesos no autorizados.
   2. Permitir al individuo, dueño, que cual se hace referencia en el PHI, acceso a su información de salud.
   3. Llevar un registro de la información de salud protegida que divulga.
   4. Informar de inmediato a la PRIMERA PARTE, cualquier uso o divulgación no autorizada tan pronto tenga conocimiento de este hecho.
   5. Exigir a cualquiera de sus sub-contratistas o agentes a que acaten las restricciones y condiciones que les son aplicables en el manejo de información de salud protegida.
   6. Incorporar cualquier enmienda a la información de un individuo que le sea transmitida por la PRIMERA PARTE.
   7. Poner a la disposición del Departamento de Salud y Servicios Humanos Federal (Department of Health and Human Services, HHS, por sus siglas en inglés), sus prácticas internas, libros y expedientes relacionados con el uso y divulgación de información protegida recibida de la PRIMERA PARTE.
   8. Devolver o destruir a la PRIMERA PARTE toda la información de salud protegida que mantenga después de terminado el contrato suscrito con la PRIMERA PARTE.

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 12 of 15

KEPDS-10 FONDOS ARRA                                                    2012-DS - 0427

E. De la **SEGUNDA PARTE** no cumplir con los estándares establecidos tanto en la ley federal HIPAA, como en la reglamentación relacionada, leyes estatales que protegen la privacidad, confidencialidad y seguridad de la información de salud de los pacientes y las Políticas y Prácticas de Privacidad y Confidencialidad y Seguridad de la institución, se expone a ser sancionado por el HHS, la **PRIMERA PARTE**, u otros, y su contrato puede ser terminado inmediatamente. La **PRIMERA PARTE** se reserva el derecho de resolver este contrato conforme establecido en la Cláusula de Resolución de este contrato.

## CLAUSULAS Y CONDICIONES
### "AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009"
### (ARRA)

**TRIGESIMA TERCERA:** Mediante la firma del presente Contrato, la **SEGUNDA PARTE** expresamente reconoce y se obliga a cumplir con todas las disposiciones, reglamentación y requisitos legales del Recovery Act, según estos sean modificados de tiempo en tiempo.

**TRIGESIMA CUARTA:** El incumplimiento de la **SEGUNDA PARTE** con cualquiera de los requisitos del Recovery Act será causa suficiente para la terminación del Contrato.

**TRIGESIMA QUINTA:** La **SEGUNDA PARTE** reconoce que de acuerdo a la Ley Núm. 8 de 9 de marzo de 2009, la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico ("AFI") ha sido delegada con la autoridad para velar por el cumplimiento y la implementación de los requisitos del Recovery Act. Nada de lo dispuesto en la presente cláusula o en el Contrato deberá interpretarse de manera tal que se limita la autoridad y deber de la **PRIMERA PARTE** de velar por el cumplimiento con las obligaciones y requisitos del Recovery Act o aquellas obligaciones específicamente impuestas por la asignación de fondos hecha a la **PRIMERA PARTE**

**TRIGESIMA SEXTA:** La **PRIMERA PARTE**, directamente o a través de AFI, deberá realizar todo aquel esfuerzo necesario para mantener a la **SEGUNDA PARTE** al tanto de cualquier desarrollo o modificación a los requisitos del Recovery Act. Cualquier modificación a los requisitos aplicables del Recovery Act deberán entenderse incorporados por referencia al Contrato inmediatamente dichos requisitos entren en vigencia.

**TRIGESIMA SEPTIMA:** La **SEGUNDA PARTE** será responsable de obtener asesoría legal independiente para asegurarse del cumplimiento con los requisitos del Recovery Act que le sean aplicables a la **SEGUNDA PARTE** o subcontratista, según aplique.

**TRIGESIMA OCTAVA:** La **SEGUNDA PARTE** será responsable de asegurar que cualquier subcontratista, a cualquier nivel, que vaya a beneficiarse directa o indirectamente con los fondos provistos por el presente Contrato esté y continúe en cumplimiento con cualquier obligación impuesta por el Contrato y cualquier requisito del Recovery Act.

**TRIGESIMA NOVENA:** La **SEGUNDA PARTE** será responsable por cualquier incumplimiento con los requisitos impuestos en el Contrato por parte del subcontratista, independientemente si dicho incumplimiento se debe o no al subcontratista. La **SEGUNDA PARTE** es responsable de asegurarse que las obligaciones y requisitos del Recovery Act se encuentran contenidas en cualquier subcontrato entre la **SEGUNDA PARTE** y un subcontratista.



**CUADRAGESIMA:** Según dispuesto en el Título XV, Sección 1512 del Recovery Act, la **SEGUNDA PARTE** deberá, de manera clara, precisa y a tiempo, proveer aquella información que surja por medio de las obligaciones contenidas en el presente Contrato y de la manera en la cual la **PRIMERA PARTE** y/o AFI razonablemente determinen es necesaria para satisfacer los requisitos de reportes de información del Gobierno de Puerto Rico bajo el Recovery Act. La información a ser solicitada por la **PRIMERA PARTE** y/o AFI, y provista por la **SEGUNDA PARTE** incluye, pero no se limita a, reportes y aquella información que evidencie el número de empleos creados o retenidos como resultado del Contrato. La **SEGUNDA PARTE** deberá retener cualquier información relacionada con el Contrato por un período de tres (3) años luego de haber

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc: Exhibit Exhibit 4 - Agreement Page 13 of 15

KEPDS-10 FONDOS ARRA 2012-DS - 0429

recibido el pago final bajo el Contrato y luego que las actividades financiadas o realizadas mediante el mismo hayan concluido. No se realizará pago adicional alguno a la SEGUNDA PARTE o subcontratista por cumplir con la obligación de proveer dicha información, documentos o reportes. La obligación de proveer el número de empleos creados o retenidos surge del presente Contrato y la SEGUNDA PARTE deberá comenzar a cumplir con dicha obligación en un término no mayor de treinta (30) días a partir de la firma del Contrato.

**CUADRAGESIMA PRIMERA:** La SEGUNDA PARTE deberá reportar a la Oficina del Servicio de Empleo del el Departamento del Trabajo y Recursos Humanos de Puerto Rico todas aquellas posiciones de empleo para las cuales interesa contratar empleados utilizando fondos del Recovery Act provistos bajo este Contrato. Dicha información deberá ser provista con al menos cinco (5) días de antelación a la decisión de emplear. La SEGUNDA PARTE deberá reportar nuevos empleos a la Oficina del Servicio de Empleo del el Departamento del Trabajo y Recursos Humanos de Puerto Rico según sea determinado por estos.

**CUADRAGESIMA SEGUNDA:** La SEGUNDA PARTE reconoce que entre las facultades contenidas en la Sección 902 del Recovery Act, el Contralor General de los Estados Unidos y sus representantes tendrán la autoridad para: (i) examinar cualquier expediente de la SEGUNDA PARTE o subcontratista que envuelvan transacciones relacionadas al Contrato o un subcontrato; y (ii) entrevistar a cualquier oficial o empleado de la SEGUNDA PARTE con respecto a dichas transacciones.

**CUADRAGESIMA TERCERA:** La SEGUNDA PARTE reconoce que la Sección 1515(a) del Recovery Act provee la autoridad a los representantes del Inspector General de los Estados Unidos para examinar cualquier expediente o entrevistar a cualquier empleado o principal que trabaje bajo el Contrato para la SEGUNDA PARTE.

**CUADRAGESIMA CUARTA:** La SEGUNDA PARTE entiende y reconoce que las disposiciones del Contrato relacionadas a las funciones y poderes del Contralor General de los Estados Unidos y/o del Inspector General de ninguna manera limitan las funciones y poderes que poseen la AFI y la Oficina del Contralor de Puerto Rico al acceso de los expedientes, documentos y cualquier otra información relacionada al presente Contrato. Además, la SEGUNDA PARTE acuerda que AFI y la PRIMERA PARTE tendrán la autoridad para reportar y publicar, en cualquier forma o medio, incluyendo en la Internet, cualquier información relacionada la SEGUNDA PARTE o subcontratistas, el uso de fondos del Recovery Act, cumplimiento con los requisitos del Recovery Act y cualquier otro asunto que estimen apropiado o necesario para cumplir con sus obligaciones bajo la Ley Núm. 8, supra, y los requisitos del Recovery Act.

**CUADRAGESIMA QUINTA:** La SEGUNDA PARTE se obliga a no cometer cualquiera de las siguientes: (i) someter o causar que se someta una solicitud de pago falsa al Gobierno de los Estados Unidos de América; (ii) a sabiendas, usar o causar que se use o se haga, una reclamación o reporte falso con el propósito de obtener un pago o aprobación; (iii) conspirar para defraudar al Gobierno de los Estados Unidos de América permitiendo que se haga o se le pague por una reclamación o solicitud falsa; o (iv) cualquier actividad o acto que tenga la intención de defraudar al Estado Libre Asociado de Puerto Rico y/o al Gobierno de los Estados Unidos de América y, en especial, con relación a los fondos provistos por el Contrato.

**CUADRAGESIMA SEXTA:** La SEGUNDA PARTE deberá, a la mayor brevedad posible, referir a la PRIMERA PARTE o AFI cualquier evidencia fehaciente que demuestre que un oficial, principal, empleado, agente, contratista, subcontratista, o cualquier otra persona haya actuado en tal manera que podría ser sujeto a responsabilidad bajo el Federal False Claims Act o haya cometido una acción criminal o en contravención a leyes que rigen el fraude, conflicto de intereses, soborno o conducta ilegal similar con respecto a fondos recibidos por el Recovery Act bajo el Contrato.

**CUADRAGESIMA SEPTIMA:** La SEGUNDA PARTE además deberá cumplir con los requisitos contenidos en la Sección 1553 del Recovery Act, la cual prohíbe que un empleado de un patrono no

13

Case:17-03283-LTS Doc#:24735-4 Filed:07/13/23 Entered:07/13/23 18:55:46 Desc:
Exhibit Exhibit 4 - Agreement Page 14 of 15

KEPDS-10 FONDOS ARRA                                          2012-DS  C427

federal sea cesanteado, descendido de puesto o de cualquier otra forma discriminado como represalia por haber informado a cualquier persona con autoridad directa o indirecta bajo el Recovery Act para dar comienzo a una investigación o acciones disciplinarias por, entre otras: (i) malversación de fondos; (ii) una emergencia o peligro sustancial a la salud y seguridad pública relacionada con la implementación o uso de los fondos otorgados bajo el Contrato; o (iii) violación a una ley, regla o reglamento relacionado a un contrato de agencia u otorgación de fondos provenientes o relacionados al Recovery Act.

**CUADRAGESIMA OCTAVA:** La **SEGUNDA PARTE** certifica que éste o sus principales no se encuentran suspendidos, propuestos para ser suspendidos, declarados inelegibles o voluntariamente excluidos de participar en transacciones cubiertas por cualquier agencia o departamento federal y que tampoco, durante los tres (3) años con anterioridad al Contrato, han sido convictos o juzgados civilmente por comisión de fraude o una ofensa criminal en conexión a una transacción pública (federal o estatal) o a un contrato relacionado a una transacción de naturaleza pública, por violación a leyes estatales o federales contra prácticas monopolísticas, malversación, hurto, falsificación o destrucción de récords, soborno, perjurio o declaraciones falsas, recibo de propiedad hurtada o se le ha cancelado o terminado una transacción de naturaleza pública por causa alguna o rebeldía, o actualmente se encuentra encausado civil o criminalmente por una agencia gubernamental por cualquiera de las faltas o delitos descritos anteriormente y que cumple con la reglamentación contenida en el 45 C.F.R. Parte 1154. La **SEGUNDA PARTE** certifica y garantiza que no se encuentra listado en el *Excluded Party List System* (https://www.epls.gov/).

**CUADRAGESIMA NOVENA:** La **SEGUNDA PARTE** certifica que no se encuentra en estado delincuente con relación al repago de cualquier deuda de naturaleza federal.

**QUINTUAGESIMA:** Este Contrato incorpora por referencia cualquier ley, reglamento o norma hasta el grado que sea relevante y obligue a **LAS PARTES**. La **PRIMERA PARTE** se reserva el derecho de enmendar el Contrato en cualquier momento para que el mismo expresamente contenga cualquier requisito adoptado por referencia y necesario para el cumplimiento con las obligaciones impuestas por el Recovery Act.

**QUINTUAGESIMA PRIMERA: ULTRAVIRES: CONFORME A DERECHO Y LAS NORMAS QUE RIGEN LA CONTRATACION DE SERVICIOS, LOS COMPARECIENTES EN ESTE CONTRATO TOMAN CONOCIMIENTO DE QUE NO SE PRESTARA SERVICIO ALGUNO BAJO ESTE CONTRATO, HASTA TANTO SEA FIRMADO POR AMBAS PARTES, DE LA MISMA FORMA, NO SE CONTINUARA DANDO SERVICIOS BAJO ESTE CONTRATO A PARTIR DE SU FECHA DE EXPIRACION, EXCEPTO QUE A LA FECHA DE EXPIRACION EXISTA YA UNA ENMIENDA FIRMADA POR AMBAS PARTES. NO SE PAGARAN SERVICIOS PRESTADOS EN VIOLACION A ESTA CLAUSULA, YA QUE CUALQUIER FUNCIONARIO QUE SOLICITE Y ACEPTE SERVICIOS DE LA OTRA PARTE EN VIOLACION A ESTA DISPOSICION, LO ESTA HACIENDO SIN AUTORIDAD LEGAL ALGUNA.**

14

KEPDS-10 FONDOS ARRA  2012-DS- 0427

EN TESTIMONIO DE LO CUAL, LAS PARTES contratantes suscriben este contrato obligándose así formalmente a cumplir con todas sus cláusulas y condiciones.

En San Juan, Puerto Rico, hoy 19-OCTUBRE- 2011.

SEGUNDA PARTE                           PRIMERA PARTE

_____                 _____
        Firma                                   Firma

Este contrato he presentado para registro en la Oficina del Contralor el ___19___ de ___OCTUBRE___ de 2011.

**CERTIFICACIÓN**

DEPARTAMENTO DE SALUD

Yo, _____ Abogado(a) de la Oficina de Asesores Legales del Departamento de Salud certifico que he revisado el contrato en todos sus pormenores y, he encontrado el mismo satisfactorio desde el punto de vista legal. Recomiendo su firma.

Firma: _____   Fecha: _____

15