# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GOVERNMENT OF PUERTO RICO EX REL.
FRANCISCO PUJOL MENESES
HAROLD D. VICENTE GONZÁLEZ,

    *Plaintiff*,

      v.

UBS BANK, USA AND
UBS FINANCIAL SERVICES INC.,

    *Defendants*.

Case No. _____

## NOTICE OF REMOVAL

**TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that Defendants UBS Bank, USA and UBS Financial

Services Inc. (collectively, "UBS"), by their undersigned counsel, file this Notice of Removal

pursuant to 48 U.S.C. § 2166(d)(1), removing the action (the "Qui Tam Action") commenced

against them by Plaintiff Government of Puerto Rico ex rel. Francisco Pujol Meneses and Harold

D. Vicente González (the "Relators"), from the Commonwealth Court of Puerto Rico, Court of

First Instance, San Juan Part (the "Court of First Instance"), to the United States District Court

for the District of Puerto Rico. This Court has original jurisdiction over this action pursuant to

48 U.S.C. § 2166(a)(2) (PROMESA jurisdiction). Pursuant to 48 U.S.C. § 2166(d)(3) and Local

Rule 3A of the United States District Court for the District of Puerto Rico, this case should be

transferred to the Honorable Laura Taylor Swain as a proceeding related to *In re Commonwealth*

*of Puerto Rico*, No. 17-bk-03283 (D.P.R.).

**INTRODUCTION AND SUMMARY OF GROUNDS FOR REMOVAL**

1.　　The unprecedented default of the Commonwealth and various Puerto Rico issuers and municipal entities on billions in government-issued debt contributed to a severe financial crisis in Puerto Rico, and drove Congress to enact the 2016 Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 *et seq.* ("PROMESA"), which established the Financial Oversight and Management Board (the "Oversight Board") for Puerto Rico, created a bankruptcy-like process for the adjustment of municipal debts ("Title III"), and provided other relief.  The Commonwealth, along with several other Puerto Rico entities, commenced insolvency proceedings under Title III (the "Title III Cases").  On January 14, 2022, the Commonwealth filed its Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Buildings Authority (the "Commonwealth Plan" or "Plan")).  *In re Commonwealth of Puerto Rico*, No. 17-bk-3283 (D.P.R. January 14, 2022), Dkt. No. 19784.[1]  On January 18, 2022, Judge Swain entered an order confirming the Commonwealth Plan (the "Confirmation Order").  Dkt. No. 19813.

2.　　In this litigation, the Relators seek to recover income taxes and licensing fees arising from certain of UBS's lending activities from 2003 to 2013 that UBS allegedly failed to pay to the Commonwealth.

3.　　UBS intends to move to dismiss at the appropriate time, as the Complaint has several fundamental legal defects.  To start, though, this dispute—which concerns tax revenue that is a central component of the Commonwealth Plan and the rights of the Commonwealth and its creditors thereunder—should proceed in federal court, and particularly before this Court.

---

[1] Unless otherwise stated, all references herein to "Dkt. No." are to the docket in the consolidated Title III Cases.

4.      Federal jurisdiction exists because this action is, at the very least, related to the

Title III Cases, especially the Title III Case of the Commonwealth.  *See* 48 U.S.C. § 2166(a)(2).

It not only asserts claims that are property of the Commonwealth and that could affect

distributions under the Commonwealth Plan, but also it raises substantial issues regarding the

proper interpretation and implementation of that Plan.   First, the Commonwealth Plan vested all

of the Commonwealth's assets not otherwise accounted for, including the causes of action at

issue here and any recovery therefrom, in the reorganized Commonwealth, depriving (or at a

minimum calling into question) the Relators' ability to assert these causes of action.  Second, the

Commonwealth Plan provides for the Commonwealth's tax revenues to be pledged as collateral

for the new bond issuances distributed to creditors, and the Relators threaten to impermissibly

deplete that collateral by seeking a percentage of any recovery under Law 154.  At least these

issues, and possibly others, will require interpretation of the Commonwealth Plan and

Confirmation Order, and by attempting to litigate claims that belong to the Commonwealth, the

Relators are interfering with the administration of the Commonwealth Plan and the

Commonwealth's ability to perform its obligations to its creditors thereunder.

## BACKGROUND AND PARTIES

5.      The Relators are natural persons who purport to bring the underlying action on

behalf of the Government of Puerto Rico as plaintiffs under 32 L.P.R.A. §§ 2931 *et seq.*, Puerto

Rico's qui tam law ("Law 154").  *See* Certified Translated Complaint ¶ 1.1, attached to this

Notice of Removal as Exhibit A ("Compl.").

6.      UBS Bank USA ("BUSA") is an industrial bank organized under the laws of the

State of Utah.  UBS Financial Services Inc. is organized under the laws of the State of Delaware

and is the successor in interest to UBS Financial Services Incorporated of Puerto Rico ("UBS-

PR").

3

7.      The Relators allege that from approximately 2003 to 2013, UBS issued thousands

of loans and provided other banking services to residents of Puerto Rico without necessary

licenses, *see* Compl. ¶ 5.10, and that UBS failed to pay income taxes it owed on the interest

earned from its loans, *see id.* ¶ 5.11.  The Relators assert causes of action for (i) unpaid income

tax of at least $48.5 million, plus penalties, surcharges and interest, subject to trebling, *id.* ¶ 6.2;

and (ii) unpaid municipal license fees of at least $1.5 million, plus penalties, surcharges and

interest, subject to trebling, *id.* ¶ 6.5.  The Commonwealth itself has not seen fit to bring any of

these claims.

8.      In response to Puerto Rico's public debt crisis, Congress passed PROMESA to

stabilize the territory and provide a sorely needed process for the adjustment of debts.  On June

30, 2016, President Obama signed PROMESA into law.  PROMESA sets forth Congress's

explicit finding that "[a] comprehensive approach to [Puerto Rico's] fiscal, management, and

structural problems ... is necessary, involving independent oversight and a Federal statutory

authority for the Government of Puerto Rico to restructure debts in a fair and orderly process."

48 U.S.C. § 2194(m)(4).

9.      The enactment of PROMESA operated as an automatic stay of any enforcement

and debt-collection activities against Puerto Rico and its agencies.  *See* 48 U.S.C. § 2194(b).

Shortly after that stay expired, the Commonwealth filed for relief under Title III of PROMESA,

commencing its Title III proceedings on May 3, 2017.  Pursuant to 48 U.S.C. § 2168, Chief

Justice Roberts designated U.S. District Judge Swain, of the Southern District of New York, to

preside over the Title III Cases.  *See* Order of Designation, *In re Commonwealth of Puerto Rico*,

No. 17-bk-03283 (D.P.R. May 5, 2017), Dkt. No. 4.

4

10.     As discussed above, the Commonwealth filed the Commonwealth Plan on January 14, 2022, and Judge Swain issued the Confirmation Order on January 18, 2022.

11.     The Commonwealth Plan provides various forms of treatment to the Commonwealth's creditors, but of particular relevance here, it provides for (i) the distribution of new fixed-rate bonds (the "GO Bonds"), (ii) the distribution of contingent value instruments that yield payments if the Commonwealth generates certain amounts of sales and use tax (the "CVIs"), and (iii) the establishment of a fund (the "Pension Reserve Trust") for the payment of certain restored pension benefits.

## GROUNDS FOR REMOVAL

12.     Removal of the Qui Tam Action to federal court, and to this Court in particular, is proper because, at a minimum, this action is "related to" the Title III Cases under PROMESA. *See* 48 U.S.C. § 2166(a)(2) (granting the district courts original jurisdiction over civil proceedings "related to cases under this subchapter"); *id.* § (d)(1) (providing for removal).

13.     In the bankruptcy context, related-to jurisdiction exists whenever "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). As Judge Swain recently observed, the same test applies under PROMESA. *In re Fin. Oversight and Mgt. Bd. for Puerto Rico* (hereinafter "*Commonwealth I*"), 650 B.R. 334, 349 n.11 (D.P.R. 2023). Under that test, a federal court's related-to jurisdiction may narrow some after confirmation of a plan of reorganization, but it by no means disappears. *See id.* at 349 n.12 (citing *In re Bos. Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005)). Rather, even after confirmation of a plan, related-to jurisdiction continues to exist where "a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust

5

agreement." *Commonwealth I*, 650 B.R. at 349 (quoting *In re Enivid, Inc.*, 364 B.R. 139, 147 (Bankr. D. Mass. 2007)).

14.    The Qui Tam Action is "related to" the Title III Cases because it not only has the potential to affect distributions under the Commonwealth Plan (and, indeed, to interfere with the Commonwealth's administration and performance of the Plan), but it will require, from the outset, judicial interpretation of the Plan to determine whether the Relators are even entitled to assert the underlying claims.

15.    Judge Swain has already found that she has post-confirmation related-to jurisdiction where a question exists as to a plaintiff's right to assert causes of action that were apportioned under the Commonwealth Plan. *In re Fin. Oversight and Mgt. Bd. for Puerto Rico* (hereinafter "*Commonwealth II*"), 650 B.R. 323, 330 (D.P.R. 2022). In *Commonwealth II*, beneficiaries of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") asserted certain derivative claims against UBS on behalf of the ERS. UBS argued that those claims had been assigned to a litigation trust under the Commonwealth Plan, precluding the beneficiary plaintiffs from asserting them. Judge Swain found that because the issue "related to the administration and execution of the Plan" and "concern[ed] the interpretation and enforcement of the Plan and the confirmation order," she had post-confirmation related-to jurisdiction over the dispute. *Id.* at 329.

16.    For the same reasons, this action is likewise related to the Title III Cases. The outcome of the action could not only affect distributions under the Plan by increasing or reducing the funds available to the Commonwealth, but indeed affect the Commonwealth's administration and performance of the Plan by interfering with its own determination whether or not to pursue the claims. Moreover, resolution of this action will require the presiding court to consider and

6

interpret the Plan, as several of the Plan's provisions appear to preclude the Relators from

asserting the causes of action at issue.  As a result, the proper construction of the Plan and the

effect it has under PROMESA will be threshold issues in the case.

17.     First, the causes of action, and all proceeds therefrom, have been vested solely

with the reorganized Commonwealth under the terms of the Commonwealth Plan.

18.     The Plan thus provides, in relevant part, that "[e]xcept as provided in the

Confirmation Order, on the Effective Date, title to all Assets and properties of the Debtors

encompassed by the Plan shall vest in Reorganized Debtors, free and clear of all Liens (except

the Liens granted pursuant to the Plan and Confirmation Order).  Commonwealth Plan § 92.1.

19.     The Commonwealth Plan defines "Assets" as:

> With respect to the Debtors, (i) all "property" of the Debtors, including, without
> limitation, such property as it may be reflected on the Debtors' books and records
> and the Confirmation Order as of the Effective Date and (ii) **all Causes of Action,**
> **and any subsequent proceeds thereof, that have been or may be commenced**
> **by the Debtors** or other authorized representative for the benefit of the Debtors
> and its Creditors, unless modified or released pursuant to the Plan or a Final
> Order, including, without limitation, any Avoidance Action.

*Id.* § 1.83 (emphasis added).

20.     The Commonwealth Plan defines "Causes of Action" as:

> All claims, actions, causes of action, rights to payment, choses in action, suits,
> debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,
> covenants, contracts, controversies, agreements, promises, variances, trespasses,
> damages, judgments, remedies, rights of setoff, third-party claims, subrogation
> claims, contribution claims, reimbursement claims, indemnity claims,
> counterclaims, and cross claims (including, but not limited to, all claims for
> breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and
> abetting, fraud, inducement, avoidance, recovery, subordination, and all
> Avoidance Actions) that are pending or **may be asserted against any Entity**
> **whether arising on or before the Effective Date**, based in law or equity,
> including, but not limited to, under the Bankruptcy Code, **whether known,**
> **unknown,** reduced to judgment, not reduced to judgment, liquidated,
> unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,
> secured or unsecured **and whether asserted or assertable directly or**

7

**derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date**.

*Id.* § 1.126 (emphasis added).

21.     The Commonwealth Plan defines "Entity" as:

A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

*Id.* § 1.216.

22.     Taken together, these provisions make clear that the causes of action asserted in the Qui Tam Action were "vest[ed]" in the reorganized Commonwealth under of the Commonwealth Plan.  The claims arise from conduct alleged to have taken place from 2003 to 2013, and thus must have existed "on or before the Effective Date," bringing them within the definition of Causes of Action under the Commonwealth Plan, and thus, Assets.  As a gating matter, then, this Court must determine whether the Plan precludes the Relators from asserting the claims and, instead, the Commonwealth must itself bring the claims if it believes they claims have any merit at all.

23.     This distinction is not academic.  The Relators have invoked a right to seek "between 25% and 30%" of any recovery in the Qui Tam Action in accordance with Article 4.03 of Law 154.  Compl. ¶ 4.6.  This is significant, because the definition of "Assets" includes "all Causes of Action, **and any subsequent proceeds thereof**."  The Relators have thus tacitly stated their intention to extract value from assets that have been vested in the reorganized Commonwealth, in contravention of the terms of the Commonwealth Plan.

24.     Second, the Plan also appears to bar the Relators from asserting the claims because the causes of action are designated under the Plan as collateral for the GO Bonds and CVIs.

25.     The Commonwealth Plan provides, as a condition precedent to its going effective, that "the Commonwealth shall have pledged its full faith, credit and taxing power under the Commonwealth Constitution and applicable Puerto Rico law for the payment of principal and interest on the New GO Bonds and payment on the CVIs." Commonwealth Plan § 86.1(b)(vi). Indeed, the Confirmation Order includes a factual finding that "the Commonwealth has validly pledged its full faith, credit and taxing power under the Commonwealth Constitution and applicable Puerto Rico law for the payment of principal and interest with respect to the New GO Bonds and payment with respect to the CVIs." Confirmation Order ¶ 3(H).

26.     The Confirmation Order further provides that "The Government of Puerto Rico, including without limitation, any Entity or Person acting for or on behalf thereof, shall not enact any statute, resolution, policy, or rule that would repeal, change, or negate any law currently existing that authorizes debt issued pursuant to the Plan or any law pledging the full faith, credit, and taxing power of the Commonwealth to secure debt issued pursuant to the Plan." Confirmation Order ¶ 80.

27.     The causes of action in the Qui Tam Action arise from allegedly unpaid income taxes and government licensing fees, and thus appear to arise from "taxing power of the Commonwealth" within the meaning of the Commonwealth Plan and Confirmation Order. As such, the causes of action appear to have been pledged as collateral for the GO Bonds and CVIs, such that the Relators are in violation of the terms of the Commonwealth Plan and Confirmation Order by attempting to assert control over and impermissibly extract value from such collateral.

9

28.     The Relators will no doubt dispute this reading of the Plan.  But the test for "related to" jurisdiction is whether the action "could conceivably" affect the estate.  Here, the litigation raises threshold, gating issues as to whether the action is contrary to the binding terms of the Plan and will interfere with the Commonwealth's implementation of the Plan.   That is more than sufficient to provide "related to" jurisdiction.

## TIMELINESS

29.     UBS was served with process no earlier than June 13, 2023.  Accordingly, this petition is timely.  *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## NO WAIVER

30.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of UBS's rights to assert any defenses or objections.

31.     If any question arises as to the propriety of the removal of this action, UBS requests the opportunity to brief any disputed issues and to present further evidence and oral argument in support of its position that this case has been properly removed to this Court.

## RELATED CASES

32.     As discussed above, this Qui Tam Action is related to the Title III Cases for Puerto Rico (17-03283) (jointly administered under lead Case No. 17-03283).

## OTHER COMPLIANCE

33.     Although removal based on 48 U.S.C. § 2166 does not require unanimity, both UBS Bank USA and UBS Financial Services Inc. join in this Notice of Removal.

34.     UBS has attached to this Notice of Removal as Exhibits B through D copies of all process, pleadings, and orders served upon them in the Qui Tam Action that they have been able

to locate after a reasonable search.  The attachment of such documents does not waive or

relinquish any arguments that service of process was insufficient or lacking.  *See supra* ¶ 30.

35.     Today, UBS will serve written notice of this Notice of Removal on the Relators

and will file a copy of the notice with the clerk of the Court of First Instance pursuant to 28

U.S.C. § 1446(d).

## VENUE

36.     Venue is properly laid in this Court as the U.S. district court for the district in

which the Qui Tam Action is pending.  48 U.S.C. § 2166(d)(1).

## TRANSFER

37.     Pursuant to 48 U.S.C. § 2166(d)(3) and Local Rule 3A of the United States

District Court for the District of Puerto Rico, this case should be transferred to the Honorable

Laura Taylor Swain as a proceeding related to *In re Commonwealth of Puerto Rico*, No. 17-bk-

03283 (D.P.R.).  *See, e.g.*, *Voya Institutional Tr. Co. v. Univ. of Puerto Rico*, 266 F. Supp. 3d

590, 599-600 (D.P.R. 2017) (transferring to Judge Swain cases that were removed as related to

the Title III Cases).

WHEREFORE, UBS respectfully requests that this Court accept this Notice of Removal,

refer the action to Judge Swain, and grant them such other and further relief as the Court deems

just and proper.

Dated: July 13, 2023
      San Juan, Puerto Rico

Respectfully submitted,


*/s/ Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
USDC-PR No. 211512
RCQ@mcvpr.com

*/s/ Myrgia M. Palacios-Cabrera*
Myrgia M. Palacios-Cabrera
USDC-PR No. 230807
MPC@mcvpr.com
McCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Tel.: (787) 250-2631 / 5602
Fac.: (787) 759-8282

‒ and ‒

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Peter G. Neiman (admitted *pro hac vice*)
Philip D. Anker (admitted *pro hac vice*)
Ross E. Firsenbaum (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.:  (212) 230-8800
E-mail:   peter.neiman@wilmerhale.com
        philip.anker@wilmerhale.com
        ross.firsenbaum@wilmerhale.com

*Counsel to Defendants UBS Bank, USA and
UBS Financial Services Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that on this 13th day of July,

2023, I caused a true and correct copy of UBS's **NOTICE OF REMOVAL** to be served on

counsel for the Relators via e-mail and certified mail, return receipt requested.


/s/ *Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
McCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Tel.:  (787) 250-2631 / 5602
Fac.: (787) 759-8282