# EXHIBIT B

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

RECEIVED
OPERATION
JUN 13 2023
UBS FINANCIAL SERVICES INC. OF PR - SAN JUAN, PR
By:_____

| | |
|---|---|
| GOBIERNO DE PUERTO RICO *EX REL* FRANCISCO PUJOL MENESES HAROLD D. VICENTE GONZALEZ<br><br>**Demandantes**<br><br>v.<br><br>UBS BANK, USA y UBS FINANCIAL SERVICES, INC.<br><br>**Demandados** | CIVIL NÚM.:<br><br>SALA:<br><br>SOBRE: Reclamación *Qui Tam* (Ley 154-2018) |

### DEMANDA *QUI TAM* JURADA

**ANTE EL HONORABLE TRIBUNAL:**

COMPARECE la parte Demandante, GOBIERNO DE PUERTO RICO *EX REL*, FRANCISCO PUJOL MENESES (en adelante "PUJOL") y HAROLD D. VICENTE GONZALEZ (en adelante "VICENTE"), por conducto de la representación legal que suscribe, y muy respetuosamente EXPONEN, ALEGAN y SOLICITAN:

**I.     INTRODUCCIÓN:**

1.1. PUJOL y VICENTE (en adelante, en conjunto, los "Delatores") comparecen ante este Honorable Tribunal en representación y para beneficio del Gobierno de Puerto Rico y en calidad de Delatores de un fraude fiscal contra el Gobierno de Puerto Rico, según autorizado por la Ley Número 154, del 23 de julio de 2018, conocida como *"Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno de Puerto Rico"*, 32 L.P.R.A. § 2931 et. seq. (en adelante la "Ley 154"). Los demandantes PUJOL y VICENTE han obtenido, de manera independiente, evidencia que demuestra la comisión por parte de los aquí demandados de violaciones a la Ley 154 y su participación en un esquema de fraude para evadir el pago de contribución sobre ingresos y patentes municipales en Puerto Rico. Por ello, acuden a este Honorable Tribunal en busca de los remedios contemplados en dicha ley. So pena de perjurio, los Delatores certifican que no obtuvieron la información

1

contenida en la presente demanda de persona alguna que tenga una prohibición de presentar una demanda de conformidad con el Artículo 1.02(g) de la Ley 154.

1.2. Mediante la presente demanda (la "Demanda"), se persigue recuperar y remediar los significativos daños causados al erario público de Puerto Rico por un esquema de fraude cometido por las partes aquí demandadas desde el año 2003 hasta el 21 de diciembre de 2013.

1.3. Dicho fraude consistió en la evasión por parte de UBS Bank USA (en adelante "BUSA") del pago de contribución sobre ingresos y patente municipal por intereses devengados y cobrados por BUSA sobre préstamos concedidos por BUSA en Puerto Rico, a deudores residentes en Puerto Rico, los cuales se utilizaron principalmente para financiar la compra o tenencia de acciones de fondos mutuos cerrados puertorriqueños (en adelante los "Fondos"), que concentraban sus carteras de inversiones en bonos de Puerto Rico. Estos préstamos se colateralizaban o garantizaban con gravámenes sobre las acciones de los Fondos y las acciones de los Fondos se mantenían en cuentas en su afiliada UBS Financial Services Incorporated of Puerto Rico ("UBS-PR"), en Puerto Rico. Después del 31 de diciembre de 2013, UBS-PR se fusionó con UBS Financial Services, Inc. ("UBS") y UBS fue la entidad sobreviviente después de la fusión.

1.4. Los intereses cobrados por BUSA a deudores residentes en Puerto Rico por dichos préstamos durante los años 2003 al 2013 se detallan a continuación y ascendieron aproximadamente a $185.4 millones, sobre los cuales BUSA no tributó al Departamento de Hacienda de Puerto Rico ni a municipio alguno de Puerto Rico:

| Año | Intereses Cobrados por BUSA |
|---|---|
| 2003 | $ 954,779 |
| 2004 | $ 6,153,494 |
| 2005 | $ 15,164,882 |
| 2006 | $ 25,304,887 |
| 2007 | $ 25,200,586 |
| 2008 | $ 21,182,621 |
| 2009 | $ 13,692,147 |
| 2010 | $ 16,253,632 |
| 2011 | $ 19,025,391 |
| 2012 | $ 21,998,856 |
| 2013 (hasta el 21 de diciembre) | $ 20,453,285 |
| TOTAL | $185,383,908 |

2

1.5. Mediante carta del 21 de diciembre de 2013, del entonces Comisionado de Instituciones Financieras de Puerto Rico ("OCIF") dirigida a BUSA y debidamente aceptada por BUSA, ésta acordó (i) vender y ceder todos los referidos préstamos a UBS-PR (hoy "UBS"); y (ii) no hacer más préstamos similares en Puerto Rico. Esa aceptación por BUSA del requerimiento que le hiciera OCIF equivale a un reconocimiento de la ilegalidad cometida.

1.6. El balance adeudado de préstamos vendidos y cedidos por BUSA a UBS-PR al 21 de diciembre de 2013, en virtud de dicha carta, ascendía a $557,971,952, y el balance de dichos préstamos al final de los años 2003 al 2012 era como sigue:

| Año | Balance Adeudado |
|---|---|
| 2003 | $153,356,084 |
| 2004 | $241,891,211 |
| 2005 | $322,263,188 |
| 2006 | $370,293,057 |
| 2007 | $358,052,102 |
| 2008 | $489,127,405 |
| 2009 | $612,624,784 |
| 2010 | $686,457,805 |
| 2011 | $770,615,962 |
| 2012 | $866,095,953 |

1.7. Se trata, como se puede apreciar, de préstamos por cientos de millones de dólares, sobre cuyas ganancias producto de los intereses cobrados no se ha tributado en Puerto Rico. **Las contribuciones y patentes dejados de pagar al erario de Puerto Rico sobre dichas ganancias y volumen de negocios se estiman en más de $50 millones, sin contar intereses, penalidades y/o recargos. Cobrar dichas contribuciones y patentes es de vital importancia para Puerto Rico, sobre todo ante la situación económica presente. Es decir, se trata de una reclamación revestida de un alto interés público.**

1.8. Además, la Demanda en este caso es una excelente oportunidad para que los tribunales de Puerto Rico interpreten las disposiciones de la Ley 154 y provean los remedios que correspondan en virtud de la misma, para vindicar y penalizar un fraude multimillonario contra el Gobierno de Puerto Rico.

1.9. Cualquier término prescriptivo no ha comenzado a decursar, porque BUSA nunca radicó en Puerto Rico planilla de contribución sobre los ingresos devengados y, además, el fraude contributivo nunca prescribe.

3

Por todo lo anterior y por las razones adicionales que aparecen a continuación, los Demandantes respetuosamente solicitan de este Honorable Tribunal que declare Con Lugar la presente Demanda y conceda todos los remedios aquí solicitados.

## II. LAS PARTES:

2.1. El demandante Francisco Pujol Meneses ("PUJOL") es mayor de edad, casado, abogado y vecino de San Juan, Puerto Rico. Comparece en la presente demanda en su carácter personal, como Delator. Su dirección postal es PO Box 363042, San Juan, Puerto Rico 00936-3042. Su dirección física es Suite 200, Edificio Puerta del Condado, Calle Wilson #1095, San Juan, Puerto Rico 00907. Su dirección electrónica es fpujol@pujollawpr.com y su teléfono es el 787-724-0900.

2.2. El demandante Harold D. Vicente González ("VICENTE") es mayor de edad, casado, abogado y vecino de Guaynabo, Puerto Rico. Comparece en la presente demanda en su carácter personal, como Delator. Su dirección postal es PO Box 11609, San Juan, Puerto Rico 00919-1609. Su dirección física es Suite PH-1, Capital Center (Sur), Avenida Arterial de Hostos #239, San Juan, Puerto Rico 00918. Su dirección electrónica es hvicente@vclawpr.com y su teléfono es el 787-751-8000.

2.3. Para las fechas relevantes el demandado BUSA era un banco industrial organizado y existente al amparo de las leyes del Estado de Utah, Estados Unidos de América, con sus depósitos asegurados por la Federal Deposit Insurance Corporation ("FDIC"), regulado y supervisado por el Utah Department of Financial Institutions. Su dirección es 95 State Street, Suite 2200, Salt Lake City, Utah, 84111. Véase https://www.ubs.com/us/en/wealth-management/who-we-serve/individuals-and-families/banking.ubs-bank-usa.html.

2.4. La demandada UBS Financial Services, Inc ("UBS") es una corporación organizada y existente al amparo de las leyes de Delaware, Estados Unidos de América, con sus oficinas principales en 1000 Harbor Boulevard, Weehawken, NJ 07086. UBS tiene oficinas en Puerto Rico, localizadas en en la Avenida Muñoz Rivera número 250, PH, San Juan, Puerto Rico 00918-9998. UBS es parte de un enorme conglomerado financiero conocido como "UBS", con sede en Suiza y oficinas, sucursales y/o afiliadas en distintas partes del mundo. UBS aparece aquí demandada como sucesora en interés de la corporación puertorriqueña UBS-PR, la cual se fusionó

4

con UBS después del 31 de diciembre de 2013, quedando UBS como corporación sobreviviente después de dicha fusión.

### III. JURISDICCIÓN Y COMPETENCIA:

3.1. Este Honorable Tribunal tiene jurisdicción y competencia sobre la presente Demanda en virtud de la *Ley de la Judicatura de Puerto Rico,* 4 L.P.R.A. § 24 et seq., y el Artículo 5.01 de la Ley 154, 32 L.P.R.A. § 2935.

3.2. Los Delatores certifican, so pena de perjurio, que no obtuvieron la información que aquí divulgan de parte de persona alguna con prohibición de presentar una demanda de conformidad con el Artículo 1.02(g) de la Ley 154. A estos efectos, los Delatores afirman y declaran bajo juramento que son la fuente original de la información objeto de la presente Demanda. Se incluye la presente alegación informativa para darle estricto cumplimiento a los requisitos legales aplicables al amparo de la Ley 154.

### IV. LA LEY 154 COMO MECANISMO LEGAL CONTRA EL FRAUDE GUBERNAMENTAL:

4.1 La Ley 154 es el análogo estatal de la ley federal conocida como el False Claims Act, 31 U.S.C. §3729-3733 (en adelante "FCA"), cuyo objetivo, entre otros, es incentivar, mediante remuneración económica, a la ciudadanía a delatar, perseguir y penalizar el fraude contra diversos programas gubernamentales. Según expresado en la Exposición de Motivos de la Ley 154:

> *El propósito de esa legislación fue el promover la participación ciudadana en aquellos momentos cuando el Gobierno estaba siendo defraudado en las compras que se tenían que hacer por motivo de la guerra. Dicha legislación le brinda jurisdicción al Gobierno de los Estados Unidos a entablar demandas y reclamaciones civiles para el recobro de pérdidas por fraude a programas federales e imposición de multas. A su vez, el False Claims Act federal permite a los ciudadanos entablar demandas a nombre y beneficio del Gobierno de los Estados Unidos para el recobro de tales pérdidas atribuibles a fraude. A cambio de esto, el Gobierno le otorga un porcentaje del dinero recuperado a raíz de la información suministrada por estos ciudadanos al amparo de lo que hoy en día se conoce como el "Qui Tam Provision". Véase Exposición de Motivos, Ley 154.*

4.2 En cuanto a la Ley 154, expresó además el legislador que:

> *Mediante esta Ley de Reclamaciones Fraudulentas a los Programas, Contratos y Servicios del Gobierno*

5

> *de Puerto Rico buscamos crear el andamiaje para procesar civilmente el fraude a los Programas del Gobierno y a los contratos de servicio. Con este mecanismo estaríamos estableciendo un procedimiento en los Tribunales donde el Gobierno puede someter reclamaciones para buscar que estas personas que han defraudado al Gobierno reciban una penalidad monetaria por sus actuaciones. De igual manera, estaríamos fomentando la participación ciudadana en los procedimientos al crear disposiciones Qui Tam Provision donde estas personas serán remuneradas por la información brindada. Véase, Ídem*

4.3 El Artículo 1.03 de la Ley 154 expresa la declaración de política pública y la regla de interpretación estatutaria como sigue:

> **Constituye política pública del Gobierno prevenir, atacar el fraude a los Programas, Contratos y Servicios del Gobierno de Puerto Rico [... ] y la conducta lesiva al buen uso y manejo de loa fondos asignados a dichos programas, contratos y servicios.** *La erradicación de dicha conducta constituye una prioridad en la agenda del presente Gobierno, pues somos conscientes de las repercusiones del fraude en los servicios que se ofrecen en Puerto Rico [... ].* **Ciertamente, reconocemos que la disponibilidad de fondos para tales servicios depende de la capacidad gubernamental para detectar y prevenir el fraude, y para facilitar el eventual procesamiento criminal y/o las acciones de recobro que correspondan.**
>
> *De conformidad con lo anterior, el Gobierno hará. todos los esfuerzos necesarios para fortalecer las estructuras de investigación y/o procesamiento de actuaciones fraudulentas, y el desarrollo eficaz y vigoroso de tales pesquisas y procedimientos. Conforme a lo anterior,* ***la presente legislación será interpretada de manera que promueva y facilite la investigación y el procesamiento criminal y las acciones civiles que procedan para minimizar el impacto de la conducta fraudulenta e ilegal a los programas, contratos y servicios que se ofrecen en Puerto Rico [...].*** *(32 LPRA §2931b). Énfasis provisto.*

4.4 Al igual que el FCA, el Artículo 4.01 (1) (d) de la Ley 154 incluye una disposición de reclamaciones fraudulentas a la inversa (en inglés *"reverse false claims"),* que impone responsabilidad a aquel que "[c]on conocimiento haga, use, o cause que se haga o que se use un récord falso o una declaración que sea fundamental para una obligación de pagar, transmitir dinero o propiedad al Gobierno, **o con conocimiento esconda e impropiamente evada o disminuya una obligación de pagar o transmitir dinero** o propiedad, relativa a cualquier Programa de Gobierno o a algún contrato de servicio, según definido en esta Ley." (32 LPRA § 2934). (Énfasis provisto).

4.5 Aquella persona que viole el Artículo 4.01(1) estará sujeta a pagar

6

al Gobierno una penalidad civil de no menos de $11,181.00 y no más de $22,363.00 y estará sujeta a pagar tres (3) veces la cantidad de los daños que haya sufrido el Gobierno a consecuencia de esas actuaciones fraudulentas. Asímismo, en su tercer inciso dispone que "[L]a persona que viole los incisos 1(a) al 1 (d) de este Artículo, deberá pagar además por los honorarios de abogado y las costas incurridas para recobrar la penalidad civil y/ o los daños incurridos." (32 LPRA § 29341).

4.6     La Ley 154 creó incentivos para que individuos con conocimiento de fraude cometido contra el Gobierno de Puerto Rico (en adelante, "Gobierno") provean la información sin temor a represalias y que partes privadas empleen sus recursos en la persecución del fraude en nombre y para beneficio del Gobierno. El Artículo 4.02 (4) de la Ley 154 provee que "[s]i el Gobierno decide no intervenir en la causa de acción, el Secretario [de Justicia] pudiera permitir que la persona que presentó la demanda en beneficio y a favor del Gobierno continúe gestionando la acción ante el Tribunal." (32 LPRA §2934a). El Artículo 4.03 provee que el Delator recibirá una compensación de entre 25% y 30% del acuerdo transaccional o la sentencia impuesta por el Tribunal, además de los gastos necesarios y razonables incurridos en la litigación del pleito. (32 LPRA §2934a).

### V. RELACIÓN DE HECHOS CONSTITUTIVOS DE FRAUDE POR LOS AQUI DEMANDADOS

5.1.    El demandado BUSA es un banco que tiene sus oficinas principales y centro de operaciones en Utah, Estados Unidos de América, y es una empresa relacionada con y afiliada a la demandada UBS.

5.2.    La demandada UBS tiene oficinas principales en New Jersey, Estados Unidos de América, así como oficinas o sucursales en varias ciudades de ese país. UBS tiene también oficinas en San Juan, Puerto Rico, donde está autorizada por la Oficina del Comisionado de Instituciones Financieras de Puerto Rico ("OCIF") para hacer negocios como corredora de valores ("securities broker dealer"). UBS es una empresa relacionada con BUSA y UBS-PR y afiliada a BUSA y a UBS-PR.

5.3.    UBS-PR era una corporación organizada y existente al amparo de las leyes de Puerto Rico, donde estaba autorizada por OCIF para hacer negocios como corredora de valores ("securities broker dealer") y donde, durante el período relevante

7

al presente caso, llegó a ser, por mucho, la mayor casa de corretaje de valores de Puerto Rico, con una cuota de mas del cincuenta por ciento (50%) del mercado local.

5.4. UBS-PR llegó a tener aproximadamente ciento treinta (130) corredores y seis (6) sucursales en Puerto Rico, de las cuales había dos (2) en el municipio de San Juan, una (1) en el municipio de Guaynabo, una (1) en el municipio de Ponce, y una (1) en el municipio de Mayaguez.

5.5. UBS-PR se fusionó con UBS después del mes de diciembre de 2013. UBS fue la corporación sobreviviente de dicha fusión. A tenor con la misma, UBS asumió todos los activos y pasivos de UBS-PR.

5.6. BUSA condujo negocios bancarios en Puerto Rico desde las oficinas locales de UBS y/o UBS-PR (hoy UBS), donde los corredores o asesores financieros empleados de UBS y/o de UBS-PR actuaban como facilitadores o intermediarios financieros en la negociación, originación, otorgamiento y administración de cientos de millones de dólares en préstamos que otorgó BUSA a cientos de clientes de UBS y/o UBS-PR residentes de Puerto Rico, garantizados por gravámenes sobre acciones de los Fondos y utilizados para financiar la compra y/o tenencia de dichas acciones. BUSA pagaba a UBS y/o a UBS-PR honorarios por dichos servicios.

5.7. Dichos facilitadores o intermediarios empleados de UBS y/o de UBS-PR recibían compensación de UBS y/o UBS-PR por sus referidos servicios en la negociación, originación, otorgamiento y administración de los referidos préstamos otorgados por BUSA a deudores residentes de Puerto Rico.

5.8. BUSA operó en Puerto Rico y condujo negocios bancarios en Puerto Rico, sin autorización o licencia para ello, desde el año 2003 hasta el 21 de diciembre de 2013, cuando fue forzado por OCIF a (i) vender o traspasar a UBS-PR todos los préstamos entonces adeudados por clientes residentes de Puerto Rico a BUSA; y (ii) comprometerse a no hacer más préstamos en Puerto Rico.

5.9. Dicha venta o transferencia de préstamos de BUSA a UBS-PR (hoy UBS) fue requerida por OCIF debido a que BUSA había otorgado los préstamos sin contar con la licencia requerida para hacer negocios bancarios en Puerto Rico.

5.10. Durante los aproximadamente diez (10) años en que BUSA sin licencia condujo negocios bancarios en Puerto Rico, otorgó más de seis mil (6,000) préstamos

8

en Puerto Rico a deudores residentes de Puerto Rico, por importes que en algunos momentos superaron los $866 millones. BUSA no tributó contribución o pagó patente alguna al Gobierno de Puerto Rico o a los municipios puertorriqueños donde hacía negocios por el volumen de negocio y los ingresos por intereses que BUSA devengó de dichos préstamos. Dichos ingresos por intereses constituyen "ingresos brutos de fuentes de Puerto Rico", según la sección 1123 (a) del Código de Rentas Internas de Puerto Rico de 1994, 13 L. P. R. A. §8523 (a)(1), y disposiciones similares del Código de Rentas Internas de Puerto Rico de 2011, y estaban sujetos a contribución sobre ingresos en Puerto Rico, en virtud de la Sección 1150 del Código de Rentas Internas de Puerto Rico de 1994, 13 L.P.R.A. §8550, la Sección 1231(a)(1)(A)(i), 13 L.P.R.A. §8615, del mismo Código y disposiciones similares del Código de Rentas Internas de Puerto Rico del 2011, incluyendo, sin limitación, su Sección 1035.01, 13L.P.R.A. §301511, así como a patente municipal en Puerto Rico, en virtud de la Sección 651a (21 L.P.R.A. 651a) y la Sección 651d (21 L.P.R.A. 651d) del Código de Rentas Internas de Puerto Rico de 1994 y disposiciones similares del Código de Rentas Internas de Puerto Rico de 2011. Según se ha mencionado anteriormente, el importe de dichos intereses cobrados por BUSA ascendió a $184.5 millones aproximadamente.

5.11. Lo que aquí denuncian los Delatores es el fraude fiscal por parte de BUSA, con la ayuda y complicidad de UBS y de UBS-PR (hoy UBS), al evadir el pago al erario de Puerto Rico de las contribuciones y patentes correspondientes a los intereses devengados y cobrados por BUSA por los referidos préstamos otorgados por BUSA en Puerto Rico a deudores residentes en Puerto Rico. Esos intereses fueron claramente ingresos para BUSA de fuentes de Puerto Rico. Dichos intereses no estaban exentos del pago de contribución sobre ingresos y patentes al erario puertorriqueño.

5.12. Según señalado antes, los referidos préstamos otorgados por BUSA se gestionaron por ésta en Puerto Rico por conducto de corredores o asesores financieros de UBS y/o de UBS-PR (hoy UBS), quienes actuaron como facilitadores de los mismos y como intermediarios financieros en las distintas oficinas de UBS y/o de UBS-PR (hoy UBS) en Puerto Rico, y quienes recibían compensación por dichos servicios. Para ello, esos corredores, asesores e intermediarios financieros necesitaban una licencia especial de OCIF, la cual ni fue solicitada a OCIF ni otorgada por OCIF.

9

5.13. Además de gestionar dichos préstamos otorgados por BUSA a deudores residentes en Puerto Rico, los corredores y asesores financieros de UBS y/o UBS-PR (hoy UBS) en Puerto Rico abrían cuentas corrientes en BUSA para dichos deudores y les gestionaban tarjetas de crédito y otros servicios bancarios de BUSA. Actuaban como agentes y *alter egos* de BUSA, utilizando las oficinas de UBS y/o UBS-PR (hoy UBS) en San Juan, Guaynabo, Ponce y Mayagüez, Puerto Rico.

5.14. Al no pagar contribuciones ni patentes al erario puertorriqueño sobre los ingresos por intereses en los referidos préstamos, BUSA, con la ayuda y complicidad de UBS y de UBS-PR (hoy UBS), se colocó en una posición competitiva muy ventajosa *vis a vis* la banca local puertorriqueña, pues BUSA no pagaba contribuciones ni patentes por intereses en préstamos en Puerto Rico idénticos a los concedidos por la banca local, sobre cuyos intereses la banca local sí pagaba y continúa pagando contribuciones y patentes.

5.15. BUSA hacía negocios en Puerto Rico, donde hacía préstamos, abría cuentas corrientes, otorgaba tarjetas de crédito y promovía sus servicios, con la ayuda y complicidad de sus afiliadas UBS y/o UBS-PR (hoy UBS) y en conjunto con UBS y/o UBS-PR (hoy UBS).

5.16. BUSA, UBS Y UBS-PR (hoy UBS), con conocimiento e intencionalmente, (i) evadieron el pago de contribución sobre ingresos y patentes sobre los intereses devengados y cobrados por BUSA en los referidos préstamos a deudores residentes en Puerto Rico; y (ii) no informaron o dejaron de informar los ingresos y el volumen de negocio generado por esos intereses al Gobierno de Puerto Rico, al Municipio de San Juan, al Municipio de Guaynabo, al Municipio de Ponce y al Municipio de Mayagüez, en detrimento del Gobierno de Puerto Rico y de los referidos municipios.

## VI. CAUSAS DE ACCION Y REMEDIOS SOLICITADOS

<u>Primera Causa de Acción</u>
<u>(Reclamacion *Qui Tam* bajo la Ley 154)</u>
<u>Contribución sobre Ingresos y Gastos</u>

6.1. Los demandantes adoptan e incorporan por referencia todas las alegaciones y causas de acción anterior y/o posteriormente alegadas en la presente

10

Demanda, para todos aquellos fines legales que pudieren resultar pertinentes.

6.2. Se estima que las contribuciones sobre ingresos evadidas mediante el esquema fraudulento del que se hace delación en la presente Demanda ascienden, como mínimo, a $48.5 millones, más penalidades, recargos e intereses. El importe exacto de dichas contribuciones será calculado oportunamente. Se solicita, por tanto, que, en restitución de los fondos públicos defraudados por la falta del pago de contribución sobre ingresos (bajo las disposiciones de la Ley 154 y/o cualquier otro estatuto o norma o reglamento aplicable), se ordene a las partes aquí demandadas al pago del monto íntegro de sus referidas obligaciones fiscales incumplidas, por concepto de contribución sobre ingresos al Gobierno de Puerto Rico, así como al pago de una suma igual a tres (3) veces el daño sufrido por el Gobierno de Puerto Rico como consecuencia de las actuaciones fraudulentas aquí detalladas en lo referente a contribución sobre ingresos, así como al pago de penalidades civiles dispuestas por la Ley 154, consistentes en una suma no menor de $11,181, pero no mayor de $22,363, por cada violación incurrida por los aquí demandados.

6.3. Los demandantes/delatores comparecientes alegan, reclaman afirmativamente y solicitan la compensación máxima a delatores permitida por la Ley 154, así como el pago a los demandantes/delatores, con cargo a las partes demandadas, de las costas y gastos del presente litigio, así como de la suma dispuesta por la Ley 154 por concepto de honorarios de abogados de los demandantes/delatores.

### Segunda Causa de Acción
### (Reclamación *Qui Tam* bajo la Ley 154)
### Patente Municipal y Gastos

6.4. Los demandantes adoptan e incorporan por referencia todas las alegaciones y causas de acción anterior y/o posteriormente alegadas en la presente Demanda, para todos aquellos fines legales que pudieren resultar pertinentes.

6.5. Se estima que las patentes municipales evadidas mediante el esquema fraudulento delatado en la presente Demanda ascienden, como mínimo, a $1.5 millones, más penalidades, recargos e intereses. El importe exacto de dichas patentes será calculado oportunamente. Se solicita, por tanto, en restitución de los fondos públicos defraudados por la falta de pago de patente municipal antes descrita, a los municipios de San Juan, Guaynabo, Ponce y Mayaguez (bajo las disposiciones de la

11

Ley 154 y/o cualquier otro estatuto, norma o reglamento aplicable), se ordene a las partes aquí demandadas al pago del monto íntegro de sus referidas obligaciones fiscales incumplidas por concepto de patente municipal, así como al pago de una suma igual a tres (3) veces el daño sufrido por los referidos municipios de Puerto Rico (San Juan, Guaynabo, Ponce y Mayaguez) como consecuencia de las actuaciones fraudulentas aquí detalladas en lo referente a patente municipal, así como al pago de penalidades civiles dispuestas por la Ley 154, consistentes en una suma no menor de $11,181, pero no mayor de $22,363, por cada violación incurrida por los aquí demandados.

6.6. Los demandantes/delatores comparecientes alegan, reclaman afirmativamente y solicitan la compensación máxima a delatores permitida por la Ley 154, así como el pago a los demandantes/delatores, con cargo a las partes demandadas, de las costas y gastos del presente litigio, así como de la suma dispuesta por la Ley 154 por concepto de honorarios de abogados de los demandantes/delatores.

**EN MERITO DE LO ANTES EXPUESTO**, se solicita de este Honorable Tribunal que, satisfecho el trámite judicial de rigor, declare CON LUGAR la presente Demanda y en su consecuencia dicte Sentencia, Resolución y/u Orden ordenando a los demandados pagar todas las sumas requeridas en las causas de acción de esta Demanda y concediendo a los demandantes/delatores y/o al Gobierno de Puerto Rico cualquier otro remedio que en derecho o equidad proceda.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico el veinticuatro (24) de mayo de dos mil veintitrés (2023).

VICENTE LAW, LLC
P.O. Box 11609
San Juan, PR 00910-1609
Teléfono (787) 751-8000
Facsímil (787) 756-5250

*f/Harold D. Vicente Colón*
**HAROLD D. VICENTE COLÓN**
T.S.P.R. Número 11303
E-Mail: *hdvc@vclawpr.com*

## JURAMENTO

El infrascrito, FRANCISCO PUJOL MENESES, mayor de edad, abogado, casado y vecino de San Juan, Puerto Rico, bajo juramento, certifica que, según su mejor saber y entender, lo alegado en la presente demanda es correcto y verdadero. En San Juan, Puerto Rico, a _veinticuatro_ (24) de _mayo_ de dos mil veintitrés (2023).

FRANCISCO PUJOL MENESES

Affidavit Núm. 1113

Jurado y suscrito ante mi por FRANCISCO PUJOL MENESES, de las circunstancias personales antes expuestas y a quien doy fe de conocer personalmente. En San Juan, Puerto Rico, a 24 de _mayo_ de 2023.



NOTARIO PÚBLICO

## JURAMENTO

El infrascrito, HAROLD D. VICENTE GONZÁLEZ, mayor de edad, abogado, casado y vecino de Guaynabo, Puerto Rico, bajo juramento, certifica que, según su mejor saber y entender, lo alegado en la presente demanda es correcto y verdadero. En San Juan, Puerto Rico, a _veinticuatro_ (24) de _mayo_ de dos mil veintitrés (2023).

HAROLD D. VICENTE GONZÁLEZ

Affidavit Núm. 1114

Jurado y suscrito ante mi por HAROLD D. VICENTE GONZÁLEZ, de las circunstancias personales antes expuestas y a quien doy fe de conocer personalmente. En San Juan, Puerto Rico a 24 de _mayo_ de 2023.




NOTARIO PÚBLICO

13