Hearing Date: August 30, 2023, at 9:30 AM (Atlantic Standard Time)
Response Deadline: August 14, 2023, at 4:00 PM (Atlantic Standard Time)

PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO
TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the<br>Commonwealth, ERS, and HTA.** |

**FIVE HUNDRED SEVENTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF
THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT
SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,
AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO
LITIGATION CLAIMS FOR WHICH THE DEBTORS ARE NOT LIABLE**

---

[1] The Debtors in the Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this five hundred seventy-ninth omnibus objection (the "Five Hundred Seventy-Ninth Omnibus Objection") to claims that seek recovery for amounts for which none of the Debtors are liable, as set forth in **Exhibit A** hereto, and in support of the Five Hundred Seventy-Ninth Omnibus Objection, respectfully represent as follows:

## JURISDICTION

1.    The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section 306(a).

2.    Venue is proper in this district pursuant to PROMESA Section 307(a).

## BACKGROUND

### A.    The Bar Date Orders

3.    On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). *Pursuant to the Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to August 9, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA and CCDA Qualifying Modifications**

5.      On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended and modified, the "Plan") [ECF No. 19053]. The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.      Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the*

---

[3] Unless otherwise set forth herein, all ECF numbers refer to documents filed in Case No. 17-BK-3283-LTS.

*Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders. *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19784].

7.     On January 18, 2022, the Court confirmed the Plan. *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

8.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.    The CCDA QM and PRIFA QM also became effective on March 15, 2022. *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

C.      **Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

11.      To date, approximately 182,552 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.      Of the proofs of claim filed, approximately 118,807 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Additionally approximately 53,359 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS. Approximately 2,305 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

13.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief [ECF No. 4230]; Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions*

*of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claim in an efficient

manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other

things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection

Procedures").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, to date the Court has held over 28 hearings and entered orders on over 500

omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, the Puerto Rico Electric Power Authority ("PREPA"), PBA, and/or ERS.

Based upon rulings and orders of the Court to date, as well as the expungement of certain claims

pursuant to the Plan, approximately 116,000 claims asserting $43.6 trillion in liability against the

Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and expunged

from the claims registry in the Title III proceedings.  In addition, approximately 45,317 claims

have been transferred into the Administrative Claims Reconciliation process for resolution using the Debtors' ordinary-course administrative processes.

## OBJECTIONS TO PROOFS OF CLAIM

16.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

17.     The Five Hundred Seventy-Ninth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, a claim that seeks recovery for amounts for which neither the Commonwealth nor any of the other Title III Debtors are liable, as set forth on **Exhibit A** hereto (the "Claim to Be Disallowed").

18.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  The Claims to Be Disallowed purport to assert liabilities associated with certain multi-plaintiff litigations brought against the Commonwealth, one of its component agencies, and/or one of its instrumentalities. However, based on the master proof(s) of claim filed on behalf of all plaintiffs in such litigations, the claimant(s) associated with the Claims to Be Disallowed are not named plaintiffs in the litigations asserted therein.

19.     Specifically, the attorneys representing all claimants in one of the following litigations (the "Litigations") have filed: (1) a master claim on behalf of all plaintiffs in the litigation captioned *Alfredo Maldonado Colón et al. v. Puerto Rico Department of Corrections & Rehabilitation*, Case No. KAC-1996-1381 (the "Maldonado Colón Master Claim"); (2) master claims on behalf of all plaintiffs in the litigation captioned *Francisco Beltrán Cintrón et al. v. Puerto Rico Department of Family Affairs*, Case No. KAC-2009-0809 (the "Beltrán Cintrón

Master Claims"); (3) master claims on behalf of all plaintiffs in the litigation captioned *Juan Pérez Colón et al. v. Puerto Rico Department of Transportation & Public Works*, Case No. KAC-1990-0487 (the "Pérez Colón Master Claims"); (4) master claims on behalf of all plaintiffs in the litigation captioned *Madeline Acevedo Camacho et al. v. Puerto Rico Department of Family Affairs*, No. 2016-05-1340 (the "Acevedo Camacho Master Claims"); (5) a master claim on behalf of all plaintiffs in the litigation captioned *Frente Unido de Policías Organizados et al. v. Puerto Rico Police Department*, Case No. KAC-2007-4170 (the "FUPO Master Claim"); (6) master claims on behalf of all plaintiffs in the litigation captioned *Jeannette Abrams Diaz et al. v. Department of Transportation & Public Works*, Case No. KAC-2005-5021 (the "Abrams Diaz Master Claims"); (7) master claims filed on behalf of all plaintiffs in the litigation captioned *Prudencio Acevedo Arocho et al. v. Puerto Rico Department of Treasury*, Case No. KAC-2005-5022 (the "Acevedo Arocho Master Claims"); (8) a master claim filed on behalf of all plaintiffs in the litigation captioned *Nilda Agosto Maldonado et al. v. Commonwealth of Puerto Rico Family Department et al.*, Civil No. KPE 2005-0608 (the "Agosto Maldonado Master Claim");or  (9) the individual claims filed on behalf each plaintiff in the litigation captioned *Cruz Hernandez v. Commonwealth of Puerto Rico*, No. KAC-1991-0665 (the "Cruz Hernandez Claims," and together with the Maldonado Colón Master Claim, the Beltrán Cintrón Master Claims, the Pérez Colón Master Claim, the Acevedo Camacho Master Claims, the FUPO Master Claim, and the Acevedo Arocho Master Claims, the "Litigation Claims").

20.     The Maldonado Colón Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by employees of the Puerto Rico Department of Corrections and Rehabilitation ("DCR").  Therein, plaintiffs contend they are owed unpaid salary increases provided for in, among other things, various DCR administrative orders.  On September

28, 2002, judgment was entered in favor of plaintiffs.  The Maldonado Colón Master Claim asserts approximately $18 million associated with outstanding payments due in accordance with the court's judgment, was filed on behalf of all plaintiffs in the litigation, and attaches a chart identifying each individual plaintiff in the litigation.

21.     The Beltrán Cintrón Master Claims assert liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by employees of the Department of the Family (the "Family Department"), alleging that the Family Department failed to pay plaintiffs appropriate wages as a result of the improper implementation of the Office of Public Service Personnel's "General Memorandum No. 5-86" (the "Memorandum").  The Beltrán Cintrón Master Claims assert approximately $105 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions, name the creditor as the "Beltrán Cintrón Plaintiff Group," and were filed by the attorney representing all plaintiffs in the litigation.  As supporting documentation, the Beltrán Cintrón Master Claims attach a chart identifying each individual plaintiff in the Beltrán Cintrón Plaintiff Group.  Further, the attorney representing all plaintiffs submitted a *Verified Statement Pursuant to FRBP 2019 of the Beltrán-Cintrón Plaintiff Group* [ECF No. 3403], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

22.     The Pérez Colón Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by Puerto Rico Department of Transportation and Public Works ("DTOP") employees, asserting DTOP failed to pay appropriate wages pursuant to the Memorandum.  The Pérez Colón Master Claim identifies the creditor as the "Pérez Colón Plaintiff Group," and asserts approximately $3 million in liabilities associated with alleged back pay.  The attorney who represents all plaintiffs in the litigation filed the Pérez Colón Master Claims on behalf

of all members of the Pérez Colón Plaintiff Group.  That attorney also submitted a *Verified Statement Pursuant to FRBP 2019 of the Pérez-Colón Plaintiff Group* [ECF No. 3506], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

23.     The Acevedo Camacho Master Claims assert liabilities associated with a complaint filed in the Commission for Appeals for Public Service Court by Family Department employees, alleging the employees were entitled to back pay due to the Family Department's illegal implementation of the Memorandum.  The Acevedo Camacho Master Claims were filed on behalf of the "Acevedo Camacho Plaintiff Group," and assert approximately $50 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions.  The Acevedo Camacho Master Claims include, among other things, a chart identifying each plaintiff in the Acevedo Camacho Plaintiff Group.  In addition to filing the Acevedo Camacho Master Claims, the attorney representing the Acevedo Camacho Plaintiff Group submitted a *Verified Statement Pursuant to FRBP 2019 of the Acevedo-Camacho Plaintiff Group* [ECF No. 3406], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

24.     The FUPO Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by members of Frente Unido de Policías Organizados and the Concilio Nacional de Policías, alleging the Superintendent of the Puerto Rico Police Department failed to implement Act No. 227 of 2004, which provided for salary increases for Police Department employees.  The FUPO Master Claim was filed by the Concilio Nacional de Policías, Inc. on behalf of all plaintiffs in the litigation, asserts $280 million in liabilities associated with unpaid salary increases, and attaches a chart identifying each plaintiff in the litigation.

25.     The Abrams Diaz Master Claims assert liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by DTOP employees, asserting DTOP failed to pay appropriate wages pursuant to the Memorandum.  The Abrams Diaz Master Claims were filed on behalf of the "Abrams Diaz Plaintiff Group," and assert over $40 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions.  The Abrams Diaz Master Claims include, among other things, a chart identifying each plaintiff in the Abrams Diaz Plaintiff Group.  In addition to filing the Abrams Diaz Master Claims, the attorney representing each plaintiff in the Abrams Diaz Plaintiff Group submitted a *Verified Statement Pursuant to FRBP 2019 of the Abrams-Diaz Plaintiff Group* [ECF No. 3505], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

26.     The Acevedo Arocho Master Claims assert liabilities associated with a state court complaint brought by employees of the Department of Treasury ("Hacienda"), alleging Hacienda failed to pay plaintiffs appropriate wages as a result of the Memorandum.  The Acevedo Arocho Master Claims each assert over $20 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions, list the creditor as the "Acevedo Arocho Plaintiff Group," and were filed by the attorney representing all plaintiffs in the Acevedo Arocho Plaintiff Group. The state court complaint and a chart identifying each individual plaintiff in the Acevedo Arocho Plaintiff Group are included as supporting documentation to the Acevedo Arocho Master Claims. Further, the attorney representing all plaintiffs submitted a *Verified Statement Pursuant to FRBP 2019 of the Acevedo-Arocho Plaintiff Group* [ECF No. 3402], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

27.     The Agosto Maldonado Master Claim asserts liabilities associated with a complaint

filed in the Puerto Rico Court of First Instance by employees of the Puerto Rico Department of the Family. Therein, plaintiffs contend they are owed, among other things, wage increases in connection with improper implementation of the federal minimum wage.  On September 16, 2010, judgment was entered in favor of plaintiffs (the "Judgment"). The Agosto Maldonado Master Claim asserts approximately $3 million associated with outstanding payments due on account of unpaid pension adjustments in accordance with the Judgment, was filed on behalf of the group of creditors named the "Agosto-Maldonado Plaintiff Group," and attaches a chart identifying each individual plaintiff in the litigation.

28.     The Cruz Hernandez claims assert approximately $2 million in liabilities associated with a stipulated judgment (the "Stipulated Judgment") entered by the Court of First Instance approving certain salary increases for plaintiffs, each of whom is a former Family Department employee.  The Stipulated Judgment identifies the complete list of 360 plaintiffs subject to the judgment, and is based on, among other things, allegations regarding the Family Department's purported illegal implementation of the Memorandum.

29.     As described above, each of the Litigation Claims attaches a chart or a list identifying all applicable plaintiffs in the Litigation, or attaches filings in the Litigations that included lists, charts, or captions identifying all named plaintiffs.  The claimants subject to the Five Hundred Seventy-Ninth Omnibus Objection assert liabilities associated with these Litigations.  In each instance, however, the names of the claimants associated with the Claims to Be Disallowed do not appear in the lists, charts or captions included in the attachments to the corresponding Litigation Claim(s).  Accordingly, the claimants associated with the Claims to Be Disallowed are not plaintiffs in the Litigations, and the Debtors are therefore not liable to those claimants for the liabilities asserted by the Litigations.  Further, even if the holders of the Claims

to Be Disallowed were parties to the Litigations, the liabilities asserted would be subsumed within the applicable Litigation Claims. Any failure to disallow the Claims to Be Disallowed will therefore result in the applicable claimants potentially receiving an additional unwarranted recovery to the detriment of other stakeholders in these Title III Cases.

30.     Because this Five Hundred Seventy-Ninth Omnibus Objection to the Claims to Be Disallowed does not constitute an objection to the Litigation Claims, the Debtors reserve their right to object to the Litigation Claims on any other grounds whatsoever.

31.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Five Hundred Seventy-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Highways and Transportation Authority to Litigation Claims for which the Debtors Are Not Liable*, dated July 14, 2023, attached hereto as **Exhibit B**.

## NOTICE

32.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors have provided notice of this Five Hundred Seventy-Ninth Omnibus Objection to (a) the individual creditors subject to this Five Hundred Seventy-Ninth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Seventeenth Amended Case Management Procedures* [ECF No. 24726-1]), which is available on the case website at https://cases.ra.kroll.com/puertorico. A copy of the notice for this Five Hundred Seventy-Ninth Omnibus Objection is attached hereto as Exhibit C. Spanish translations of the Five Hundred Seventy-Ninth Omnibus Objection and all of the exhibits attached hereto are being

13

filed with this objection and will be served on the parties.  The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be given.


[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the such other and further relief as is just.

Dated: July 14, 2023
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial*
*Oversight and Management Board*
*for Puerto Rico, as representative for*
*the Commonwealth, ERS, and HTA*

**Fecha de la vista: 30 de agosto de 2023, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de agosto de 2023, a las 4:00 p.m. (AST)**

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Número: 17-BK-3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA, el SRE y la ACT.** |

## QUINGENTÉSIMA SEPTUAGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES DE LITIGIOS POR LAS QUE LOS DEUDORES NO SON RESPONSABLES

---

[1] Los Deudores en el marco de los casos de Título III, junto con el respectivo número de caso radicado conforme al Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Causa de Quiebra Número 17-BK-3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17-BK-3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17-BK-3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17-BK-3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17-BK-4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("SRE") y la Autoridad de Carreteras y Transportación de Puerto Rico ("ACT", y junto con el ELA y el SRE, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión") como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican la presente quingentésima septuagésima novena objeción (la "Quingentésima septuagésima novena objeción global") a reclamaciones que buscan recuperar montos por los que ninguno de los Deudores es responsable, según se establece en el **Anexo A** del presente documento, y en apoyo de la Quingentésima septuagésima novena objeción global, manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF Número 2255][3] (la "Moción de Fecha Límite"). *Conforme a la Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF. Número 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para presentar evidencias de reclamaciones en el marco del Caso de Título II del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó forma y la manera de su notificación* [ECF Número 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 9 de agosto de 2018, a las 4:00 p.m. (AST).

**B.      Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y de las Modificaciones Calificadas de la AFI y de la ADCC**

5.      El 3 de noviembre de 2021, la Junta de Supervisión radicó, en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (en su versión enmendada y modificada posteriormente, denominado el "Plan") [ECF

---

[3] Salvo disposición en contrario contenida en el presente documento, todas las citas ECF harán referencia al Caso Número 17-BK-3283-LTS.

Número 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

6. Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la* moción para la confirmación del *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7. El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813].

8. El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.      El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma la versión modificada del Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF Número 20349].

10.     Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

**C.      Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

11.     Hasta la fecha, se han radicado aproximadamente 182,552 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43,6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

12.     De las evidencias de reclamaciones radicadas, aproximadamente 118,807 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Además, aproximadamente 53,359 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Aproximadamente 2,305 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por

ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13. Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado [ECF Número 4230]; Procedimientos relativos a Objeciones Globales [ECF Número* 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF Número 4381] (la "Orden de Notificación").

14. En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que

pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF Número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF Número 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

15.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 28 vistas y ha dictado órdenes sobre más de 500 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, y de la retirada de determinadas reclamaciones conforme al Plan, aproximadamente 116,000 reclamaciones que reivindicaban $43.6 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, el SRE y la AEP fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III. Además, aproximadamente 45,317 reclamaciones han sido transferidas al proceso de Reconciliación de Reclamaciones Administrativas para su resolución utilizando procesos administrativos habituales de los Deudores.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

16.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las

bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

17.     La Quingentésima septuagésima novena objeción global pretende que se rechace, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, una reclamación que busca recuperar montos por los que ni el ELA ni ningún otro Deudor de Título III son responsables, según se expone en el **Anexo A** del presente documento (las "Reclamaciones que han de ser rechazadas").

18.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Las Reclamaciones que han de ser rechazadas pretenden alegar responsabilidades vinculadas con determinados litigios iniciados por varios demandantes, radicados contra el ELA, una de sus agencias integrantes y/o una de sus instrumentalidades. Sin embargo, sobre la base de la(s) evidencia(s) de reclamaciones principales radicadas en nombre de todos los demandantes en el marco de dichos litigios, el/los reclamante(s) asociado(s) con las Reclamaciones que han de ser rechazadas no es/son el/los demandante(s) que figura(n) en los litigios alegados.

19.     Más concretamente, los abogados que representan a todos los demandantes en uno de los siguientes litigios (los "Litigios") han radicado: 1) la reclamación principal en nombre de todos los demandantes en el litigio con epígrafe *Alfredo Maldonado Colón et al. c. el Departamento de Corrección y Rehabilitación de Puerto Rico*, Caso Número KAC-1996-1381 (la "Reclamación Principal Maldonado Colón"); 2) las reclamaciones principales en nombre de todos los demandantes en el litigio con epígrafe *Francisco Beltrán Cintrón et al. c. el Departamento de la Familia de Puerto Rico*, Caso Número KAC-2009-0809 (las "Reclamaciones Principales

Beltrán Cintrón"); 3) las reclamaciones principales en nombre de todos los demandantes en el litigio con epígrafe *Juan Pérez Colón et al. c. el Departamento de Transportación y Obras Públicas*, Caso Número KAC-1990-0487 (las "Reclamaciones Principales Pérez Colón"); 4) las reclamaciones principales en nombre de todos los demandantes en el litigio con epígrafe *Madeline Acevedo Camacho et al. c. el Departamento de la Familia de Puerto Rico,* Número 2016-05-1340 (las "Reclamaciones Principales Acevedo Camacho"); 5) la reclamación principal en nombre de todos los demandantes en el litigio con epígrafe *Frente Unido de Policías Organizados et al. c. el Departamento de Policía de Puerto Rico*, Caso Número KAC-2007-4170 (la "Reclamación Principal FUPO"); 6) las reclamaciones principales en nombre de todos los demandantes en el litigio con epígrafe *Jeannete Abrams Diaz et al. c. el Departamento de Transportación y Obras Públicas*, Caso Número KAC-2005-5021 (las "Reclamaciones Principales Abrams Diaz"); 7) las reclamaciones principales radicadas en nombre de todos los demandantes en el litigio con epígrafe *Prudencio Acevedo Arocho et al. c. el Departamento de Hacienda de Puerto Rico*, Caso Número KAC-2005-5022 (las "Reclamaciones Principales Acevedo Arocho"); 8) una reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe *Nilda Agosto Maldonado et al. c. el Departamento de la Familia del Estado Libre Asociado de Puerto Rico et al.*, Procedimiento Civil Número KPE 2005-0608 (la "Reclamación Principal Agosto Maldonado"); o 9) las reclamaciones individuales presentadas en nombre de cada demandante en el litigio denominado *Cruz Hernandez v. Puerto Rico*, No. KAC-1991-0665 (las "Reclamaciones de Cruz Hernandez" y junto con la Reclamación Principal Maldonado Colón, las Reclamaciones Principales Beltrán Cintrón, la Reclamación Principal Pérez Colón, las Reclamaciones Principales Acevedo Camacho, la Reclamación Principal FUPO, y las Reclamaciones Principales Abrams Diaz, las "Reclamaciones de Litigios").

9

20.    La Reclamación Principal Maldonado Colón alega responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por empleados del Departamento de Corrección y Rehabilitación (el "DCR") de Puerto Rico. En ella, los demandantes sostienen que se les adeudan aumentos salariales no pagados estipulados en, entre otros, varias órdenes administrativas del DCR.  El 28 de septiembre de 2002, se dictó sentencia a favor de los demandantes. La Reclamación Principal Maldonado Colón, que alega responsabilidades por un monto aproximado de $18 millones asociadas con pagos pendientes adeudados conforme a la sentencia del tribunal, fue radicada en nombre de todos los demandantes en el litigio y adjunta un cuadro donde se identifica a cada uno de los demandantes en el litigio.

21.    Las Reclamaciones Principales Beltrán Cintrón alegan responsabilidades asociadas con una reclamación radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del Departamento de la Familia de Puerto Rico (el "DOFA"), donde se alega que el DOFA no pagó a los demandantes los salarios adecuados como consecuencia de la implementación indebida del "Memorándum General Número 5-86 de la Oficina de Personal de Servicios Públicos" (el "Memorándum"). Las Reclamaciones Principales Beltrán Cintrón alegan responsabilidades por un monto aproximado de $105 millones vinculadas con el pago de supuestos salarios atrasados y aportaciones a pensiones supuestamente impagadas, nombran como acreedor al "Grupo de Demandantes Beltrán Cintrón", y fueron radicadas por el abogado que representa a todos los demandantes en el litigio. Las Reclamaciones Principales Beltrán Cintrón adjuntan como documentación justificativa un cuadro que identifica a cada demandante del Grupo de Demandantes Beltrán Cintrón. Además, el abogado que representa a todos los demandantes presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes*

10

*Beltrán Cintrón* [ECF Número 3403] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

22.     La Reclamación Principal Pérez Colón alega responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del Departamento de Transportación y Obras Públicas (el "DTOP"), donde se alega que el DTOP no pagó los salarios adecuados conforme al Memorándum. La Reclamación Principal Pérez Colón identifica como acreedor al "Grupo de Demandantes Pérez Colón" y alega responsabilidades por un monto aproximado de $3 millones asociadas con el pago de supuestos salarios atrasados. El abogado que representa a todos los demandantes en el litigio radicó las Reclamaciones Principales Pérez Colón en nombre de todos los miembros del Grupo de Demandantes Pérez Colón. El abogado también presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Pérez Colón* [ECF Número 3506] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

23.     Las Reclamaciones Principales Acevedo Camacho alegan responsabilidades asociadas con una demanda radicada ante la Comisión Apelativa del Tribunal de Servidor Público por los empleados del Departamento de la Familia, en la que se alega que los empleados tenían derecho a un pago de salarios atrasados debido a la implementación ilegal del Memorándum por parte del Departamento de la Familia. Las Reclamaciones Principales Acevedo Camacho fueron radicadas en nombre del "Grupo de Demandantes Acevedo Camacho" y alegan responsabilidades por un monto aproximado de $50 millones asociadas con el pago de salarios supuestamente atrasados y aportaciones a pensiones supuestamente impagadas. Además, las Reclamaciones Principales Acevedo Camacho incluyen, entre otras cosas, un cuadro que identifica a cada demandante del Grupo de Demandantes Acevedo Camacho. Además de radicar las Reclamaciones

Principales Acevedo Camacho, el abogado que representa el Grupo de Demandantes Acevedo

Camacho presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de*

*Demandantes Acevedo Camacho* [ECF Número 3406] en la que proporcionó el nombre, la

dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

24.     La Reclamación Principal FUPO alega responsabilidades vinculadas con una

demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por miembros del Frente

Unido de Policías Organizados y el Concilio Nacional de Policías, y alegó que el Superintendente

del Departamento de Policía de Puerto Rico no implementó la Ley Número 227 de 2004, que

establece aumentos de salario para los empleados del Departamento de Policía. La Reclamación

Principal FUPO, que fue radicada por Concilio Nacional de Policías, Inc. en nombre de todos los

demandantes en el litigio, alega responsabilidades por un monto de $280 millones asociadas con

aumentos salariales no pagados y adjunta un cuadro donde se identifica a cada demandante del

litigio.

25.     Las Reclamaciones Principales Abrams Diaz alegan responsabilidades asociadas

con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados

del DTOP, donde se alega que el DTOP no pagó los salarios adecuados conforme al Memorándum.

Las Reclamaciones Principales Abrams Diaz fueron radicadas en nombre del "Grupo de

Demandantes Abrams Diaz" y alegan responsabilidades por más de $40 millones asociadas con el

pago de salarios supuestamente atrasados y aportaciones a pensiones supuestamente impagadas.

Además, las Reclamaciones Principales Abrams Diaz incluyen, entre otras cosas, un cuadro que

identifica a cada demandante del Grupo de Demandantes Abrams Diaz. Además de radicar las

Reclamaciones Principales Abrams Diaz, los abogados que representan a cada demandante en el

Grupo de Demandantes Abrams Diaz presentó una *Declaración verificada conforme a las RFPQ*

12

*de 2019 del Grupo de Demandantes Abrams Diaz* [ECF Número 3505] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

26.     Las Reclamaciones Principales Acevedo Arocho alegan responsabilidades asociadas con una reclamación ante un tribunal del estado radicada por empleados del Departamento de Hacienda ("Hacienda"), donde se alega que Hacienda no pagó a los demandantes los salarios adecuados como consecuencia del Memorándum. Cada una de las Reclamaciones Principales Acevedo Arocho alega responsabilidades por un monto de más de $20 millones vinculadas con el pago de salarios supuestamente atrasados y aportaciones a pensiones supuestamente impagadas, nombran como acreedor al "Grupo de Demandantes Acevedo Arocho", y fueron radicadas por el abogado que representa a todos los demandantes del Grupo de Demandantes Acevedo Arocho. La reclamación ante el tribunal del estado y una gráfica que identifica a cada demandante del Grupo de Demandantes Acevedo Arocho se incluyen como documentación justificativa en las Reclamaciones Principales Acevedo Arocho. Además, el abogado que representa a todos los demandantes presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Acevedo Arocho* [ECF Número 3402] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

27.     La Reclamación Principal Agosto Maldonado alega responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por empleados del Departamento de la  Familia de Puerto Rico. En dicha Reclamación los demandantes alegan que se les adeudan, entre otras cosas, unos incrementos salariales en relación con una implementación improcedente del salario mínimo federal. El 16 de septiembre de 2010, se dictó sentencia a favor

de los demandantes (la "Sentencia"). La Reclamación Principal Agosto Maldonado, que alega responsabilidades por un monto aproximado de $3 millones asociadas a pagos pendientes adeudados en concepto de unos ajustes de pensiones no pagados establecidos en la Sentencia, fue radicada en nombre del grupo de acreedores llamado el "Grupo de Demandantes Agosto-Maldonado", y adjunta un cuadro donde se identifica a cada uno de los demandantes en el litigio.

28.    Los reclamos de Cruz Hernandez afirman aproximadamente $2 millones en responsabilidades asociadas con una sentencia estipulada (la "Sentencia estipulada") dictada por el Tribunal de Primera Instancia que aprueba ciertos aumentos salariales para los demandantes, cada uno de los cuales es un ex empleado del Departamento de Familia. La Sentencia estipulada identifica la lista completa de 360 demandantes sujetos a la sentencia y se basa, entre otras cosas, en alegaciones relacionadas con la supuesta implementación ilegal del Memorándum por parte del Departamento de Familia.

29.    Como se explicó anteriormente, cada Reclamación Principal de Litigios adjunta un cuadro o una lista que identifica a todos los demandantes pertinentes en el Litigio, o adjunta las radicaciones en el marco de los Litigios que incluyen las listas, los cuadros o los epígrafes que identifican a todos los demandantes mencionados. Los reclamantes objeto de la Quingentésima septuagésima novena objeción global alegan responsabilidades vinculadas con dichos Litigios. No obstante, los nombres de los reclamantes vinculados con las Reclamaciones que han de ser rechazadas no aparecen en ningún momento en las listas, los cuadros o los epígrafes que se incluyen en los documentos adjuntos a la(s) correspondiente(s) Reclamación(es) Principal(es) de Litigios. En consecuencia, los reclamantes vinculados con las Reclamaciones que han de ser rechazadas no son demandantes en el Litigio, por lo que los Deudores no son responsables ante dichos reclamantes por las responsabilidades alegadas en los Litigios. Además, incluso si los

titulares de las Reclamaciones que han de ser rechazadas fueran partes en los Litigios, las responsabilidades alegadas se incluirían en las Reclamaciones de Litigios pertinentes. Si las Reclamaciones que han de ser rechazadas no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación adicional no justificada en detrimento de otras partes interesadas en dichos Casos de Título III.

30.     Puesto que esta Quingentésima septuagésima novena objeción global a las Reclamaciones que han de ser rechazadas no constituye una objeción a las Reclamaciones de Litigios, los Deudores se reservan el derecho a oponerse a las Reclamaciones de Litigios sobre la base de cualesquiera otros motivos que fueren.

31.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Quingentésima septuagésima novena objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones de Litigios por las que los Deudores no son Responsables*, de fecha 14 de julio de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

32.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores han notificado la presente Quingentésima septuagésima novena objeción global a) a los acreedores individuales objeto de esta Quingentésima septuagésima novena objeción global, b) al U.S. Trustee, y c) a la Lista Maestra de Notificaciones (según se define en los *Procedimientos de administración de casos enmendados Número 17* [ECF Número 24726-1]), disponibles en el sitio web de casos, en https://cases.ra.kroll.com/puertorico. Una copia de la notificación de esta Quingentésima

15

septuagésima novena objeción global se adjunta al presente como Anexo C. Las traducciones al

español de la Quingentésima septuagésima novena objeción global y de la totalidad de los anexos

adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los

Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna

otra notificación.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

Fecha: 14 de julio de 2023
      San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC Número 215205
Carla García-Benítez
USDC Número 203708
Gabriel A. Miranda
USDC Número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera., local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del ELA, del SRE y de la ACT.*