**Hearing Date: August 30, 2023, at 9:30 AM (Atlantic Standard Time)**
**Response Deadline: August 14, 2023, at 4:00 PM (Atlantic Standard Time)**

---

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

### FIVE HUNDRED EIGHTY-EIGHTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO MUNICIPALITY CLAIMS FOR WHICH THE COMMONWEALTH IS NOT LIABLE

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>" or the "<u>Debtor</u>"), by and through the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as sole Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight,*

---

[1] The Debtors in the Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "<u>Debtors</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Management, and Economic Stability Act* ("PROMESA"),[2] files this five hundred eighty-eighth

omnibus objection (the "Five Hundred Eighty-Eighth Omnibus Objection") to the proofs of claim

listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") filed by certain

municipalities and as to claims for which the Commonwealth is not liable.  In support of the Five

Hundred Eighty-Eighth Omnibus Objection, the Debtor respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section

306(a).

2.      Venue is proper in this district pursuant to PROMESA Section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA Section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255] (the "Bar Date Motion")*.*  Pursuant to the *Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

claim in the Commonwealth Title III Case.  Upon the informative motion of certain creditors, and

the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for*

*Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160]

(together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to

August 9, 2018 at 4:00 p.m. (Atlantic Time).

**B.     Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and
the PRIFA and CCDA Qualifying Modifications**

5.     On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico

Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title*

*III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended

and modified, the "Plan") [ECF No. 19053].  The Court considered confirmation of the Plan, and

any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for*

*Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth*

*of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to*

*the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the*

*Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the*

*Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight

Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth*

*Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No.

19784].

7.     On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment*

*Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth*

of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority [ECF No. 19813].

8.      On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.      The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**C.     The GDB Title VI Proceedings and Qualifying Modification**

11.     The Government Development Bank ("GDB") is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

12.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB,

pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA Section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

13.     On August 24, 2017, the Commonwealth enacted Law 109-2017, the Government Development Bank for Puerto Rico Debt Restructuring Act (the "GDB Restructuring Act"), to address the GDB's insolvency and effectuate the terms of the Qualifying Modification.  As part of its reforms, Law 109-2017 created two new public entities: the Recovery Authority and the Public Entity Trust (the "PET").

14.     The Recovery Authority was created as a statutory public trust and governmental public instrumentality of the Commonwealth for the purpose of implementing the RSA by issuing restructuring bonds in exchange for certain previously held GDB bonds (the "Participating Bonds").  *See* GDB Restructuring Act, Arts. 201, 203.  The GDB Restructuring Act further establishes that the Recovery Authority is a "separate legal entity from the Government of Puerto Rico, GDB, and any other Government Entity."  *See* GDB Restructuring Act, Art. 202.

15.     The GDB Restructuring Act further authorized the GDB to execute the Public Entity Deed of Trust (the "PET Deed"), the terms of which would govern the treatment of the deposits and liabilities of Commonwealth public entities.  Together, the GDB Restructuring Act and the PET Deed created the PET for the purpose of receiving from the GDB, among other assets, the deposit liabilities (the "Designated Deposits") of non-municipal government entities (the "Designated Depositors").  Pursuant to the GDB Restructuring Act and the PET Deed, the transfer of the Designated Deposits to the GDB "shall be treated as an irrevocable,

non-voidable and absolute transfer of all of GDB's legal and equitable right, title and interest[.]" GDB Restructuring Act, Art. 303. Furthermore, upon the assumption by the PET of the Designated Deposits, the Designated Depositors "shall, immediately and forever . . . cease to have any right, interest or claim against the GDB or any of its assets, or any successors or assigns thereof (other than the Public Entity Trust)." *Id.*

16.     The PET was constituted as a public trust and governmental instrumentality of the Commonwealth, independent and separate from any other government entity, including the GDB and the Recovery Authority. *See* GDB Restructuring Act, Art. 302; PET Deed at 3. The GDB Restructuring Act controls both the balance of liabilities owed to non-municipal government entities and the disbursement of funds. In accordance with the GDB Restructuring Act, the balance of liabilities was determined by applying the outstanding balance of any deposit of a non-municipal government entity and GDB against the outstanding balance of any loan owed to the GDB by such non-municipal government entity. *See* GDB Restructuring Act, Art. 302. Moreover, the GDB Restructuring Act dictates that that the PET Deed "shall set forth the manner in which the Public Entity Trust Assets shall be distributed among the Designated Depositors." GDB Restructuring Act, Art. 305.

17.     Pursuant to the GDB Restructuring Act's mandate, the PET Deed established the procedure for disbursing funds to the Designated Depositors. Each Designated Depositor was granted a pro rata share of common units in the PET, called PET Units, in full and final satisfaction of any and all claims such Designated Depositor may have against GDB. *See* PET Deed, § 1.7. The Trustee may then, in its discretion, distribute cash to the Designated Depositors on account of their respective PET Units. *Id.* Upon any such distribution of cash from the PET to a Designated Depositor, the cash disbursed from the PET shall no longer

constitute part of the PET, and the Designated Depositor's interest in the PET shall be deemed satisfied to the extent of such cash distribution. *Id.*

18.     In addition, prior to January 1, 2017, certain municipalities held undisbursed cash deposits, known as "Excess CAE," at GDB on account of proceeds of a special additional tax that GDB certified as surplus from the Municipal Public Debt Redemption Fund (as defined in the Municipal Financing Act, Act 64-1996).  Pursuant to the GDB Restructuring Act, the GDB entered into settlement agreements with certain of these municipalities whereby each such municipality accepted 55% of its Excess CAE for the period 2015-2017 as full, final, and complete settlement, satisfaction, and accord of the full amount of their 2015-2017 Excess CAE, and "such municipality will have no further rights or claims" undisbursed Excess CAE, and "GDB will have no further obligation or liability to such municipality in respect of the Excess CAE." *Solicitation Statement* at 12.

19.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held

by GDB) or from GDB.  *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

20.     On November 17, 2018, this Court issued its *Findings of Fact, Conclusions of Law, and Order Approving Qualifying Modification for the Government Development Bank for Puerto Rico Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (the "Qualifying Modification Order") [ECF No. 270] in the GDB's Title VI case, Case No. 18-1561 (LTS) (the "Title VI Case").   In the Qualifying Modification Order, this Court, *inter alia*, approved GDB's application for a Qualifying Modification based on the terms in the RSA, as amended.

21.     Under the Qualifying Modification Order, (i) holders of Participating Bonds agreed to the cancellation of their Participating Bonds in exchange for new secured bonds issued by the Recovery Authority; (ii) the Recovery Authority agreed to issue new bonds to holders of Participating Bonds in exchange for the irrevocable transfer of all of GDB's assets (except certain excluded assets) as of July 1, 2018 to the Recovery Authority; and (iii) GDB agreed to irrevocably transfer these assets to the Recovery Authority in consideration of the Recovery Authority's issuance of the new bolds to the holders of Participating Bonds in exchange for the cancellation of the Participating Bonds.  Upon this exchange, Article 404 of the GDB Restructuring Act states that the holders of Participating Bonds, and all other creditors of GDB, "shall, immediately and forever, and without further actions or documentation, cease to have any right, interest or claim against GDB or any of its assets, or any successors or assigns thereof."

22.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation*

*of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at*
http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

**D.     Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

23.     To date, approximately 182,552 proofs of claim have been filed against the Debtors

and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total

approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated

amounts asserted.

24.     Of the proofs of claim filed, approximately 118,807 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar

Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,

such as being subsequently amended, not putting forth a claim for which the Debtor is liable, being

duplicative of other proofs of claim, or failing to provide information necessary for the Debtor to

determine whether the claim is valid.

25.     In order to efficiently resolve as many of the unnecessary proofs of claim as

possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order*

*(A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of*

*Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus

Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion

by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection*

*Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting*

*Related Relief [ECF No. 4230]; Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,

the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

26.      In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

27.      Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 28 hearings and entered orders on over 500 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), PBA, and/or ERS.  Based upon rulings and orders of the Court to date, as well as the expungement of certain claims pursuant to the Plan, approximately 116,000 claims asserting $43.6 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and expunged from the claims registry in the Title III proceedings.   In addition, approximately 45,317 claims have been transferred into the

Administrative Claims Reconciliation process for resolution using the Debtors' ordinary-course administrative processes.

## **OBJECTION TO PROOFS OF CLAIM**

28.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

29.     The Five Hundred Eighty-Eighth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery for amounts for which the Commonwealth is not liable, each as set forth on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed").

30.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  Each of the Claims to Be Disallowed purports to assert liabilities against the Commonwealth, but, as a result of the Qualifying Modification, the Commonwealth is not liable for the liabilities asserted in the Claims to Be Disallowed.

31.     In addition, the burden of proof with respect to a proof of claim rests initially, and ultimately, with the claimant who must allege facts sufficient to support its proof of claim.  *In re Plourde*, 397 B.R. 207, 217-18 (Bankr. D. N.H. 2008), *aff'd in part, rev'd in part on other grounds*, 418 B.R. 495, 62 Collier Bankr. Cas. 2d (MB) 877 (B.A.P. 1st Cir. 2009).   "When a claim ... is based on a writing, the original or duplicate shall be filed with the proof of claim."  Fed. R. Bankr. P. 3001(c). In such cases, a properly executed and filed proof of claim consists of: (1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting documents.  *See id*.  If a proof of claim fails to include sufficient facts

or attach sufficient supporting documentation, it is not entitled to the presumption of *prima facie* validity, and the claimant is required to prove both the validity and amount of its claim. *Id.*; *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (claimant is only entitled to have the claim considered prima facie valid if the claimant alleges "facts sufficient to support the claim"). Each of the Claims to Be Disallowed fails to provide sufficient information or documentation to allow the Debtor to reconcile some or all of the liabilities asserted therein and the claimants associated with such claims have not responded to outreach regarding such proofs of claim, and they therefore fail to satisfy the requirements for a proof of claim.

33. Each of the Claims to Be Disallowed identifies GDB as the agency against which the claim is asserted, but in each instance, the Commonwealth is either not liable for the liabilities asserted in the proof of claim, or the municipality has failed to respond to requests for additional information regarding the liabilities asserted.

33. The Municipality of Mayaguez filed Proof of Claim No. 154568 (the "Mayaguez Claim"), which asserts liabilities against the Commonwealth in the amount of $38,638,236.02, states "project loan funds" as the basis for the claim, and attaches as supporting documentation what appear to be ledgers for certain ongoing projects. Pursuant to the Qualifying Modification Order, however, Mayaguez's funds on deposit at the GDB have already been offset against loans owed by Mayaguez to the GDB. Further, although Mayaguez had alleged undisbursed Excess CAE as of January 1, 2017, it entered into a settlement agreement with the GDB regarding such Excess CAE, thereby resolving any claims it may have to such funds. To the extent the Mayaguez Claim purports to assert any liabilities associated with loans that it alleges are somehow not

covered by the Qualifying Modification, it fails to include any information regarding said loan, such as the loan number, the amount of the loan, or any documentation regarding such loan.

34.     The Municipality of San Juan filed Proof of Claim No. 91946 (the "San Juan Claim"), asserts liabilities against the Commonwealth purportedly associated with "Loan Government Development Bank" in the amount of $6,939,046.89.   Pursuant to the Qualifying Modification Order, however, San Juan's funds on deposit at the GDB have also already been offset against loans owed by San Juan to the GDB.   To the extent the San Juan Claim purports to assert any liabilities associated with loans that it alleges are somehow not covered by the Qualifying Modification, it fails to include any information regarding said loan, such as the loan number, the amount of the loan, or any documentation regarding such loan.   Instead, each claim attaches several pages of account statements that, on their face, do not provide additional information regarding the alleged loans claimed.

35.     The Municipality of San German filed Proof of Claim No. 48801 (the "San German Claim"), which asserts liabilities against the Commonwealth in the amount of $6,072,718.76, and states "construction contracts, project loan funds, certificates of deposit" as the basis for the claim. Pursuant to the Qualifying Modification Order, however, San German's funds on deposit (except for federal funds) at the GDB have already been offset against loans owed by San German to the GDB.   San German also had $37,645.75 in federal funds deposited at the GDB, which funds were not subject to setoff; such funds were subsequently disbursed to the municipality.   Further, although San German had alleged undisbursed Excess CAE as of January 1, 2017, it entered into a settlement agreement with the GDB regarding such Excess CAE, thereby resolving any claims it may have to such funds.   To the extent the San German Claim purports to assert any liabilities associated with loans that it alleges are somehow not covered by the Qualifying Modification, it

fails to include any information regarding said loan, such as the loan number, the amount of the loan, or any documentation regarding such loan.

36.     Proof of Claim No. 82613 (the "Añasco Claim"), which was filed by the Municipality of Añasco, asserts liabilities against the Commonwealth in the amount of $4,915,444.75 and identifies the GDB's purported failure to permit the withdrawal of funds as the claim basis.  It does not include any other facts or attach any supporting documentation.  Like all other municipalities, however, Añasco's deposits were set off against its outstanding loans pursuant to the Qualifying Modification, and accordingly, neither the Commonwealth nor any other Title III debtor is liable to Añasco for its alleged deposits.

37.     Proof of Claim No. 12069 (the "Loiza Claim"), which was filed by the Municipality of Loiza, asserts liabilities in the amount of $283,000 against the Commonwealth and identifies "federal funds / reimbursement of federal funds" as the basis for the claim.  Like Proof of Claim No. 82613, it does not include any other facts or attach any supporting documentation.  AAFAF disbursed $197,877.24 in federal funds to Loiza subsequent to the filing of the Loiza Claim, and its records do not show additional federal funds owed to Loiza by GDB at this time.  Accordingly, the Commonwealth has already disbursed to Loiza the funds its records indicate Loiza is owed, and it is not liable for the remaining balance.

38.     Accordingly, the Claims to Be Disallowed identified on Exhibit A should be disallowed.

39.     In support of the foregoing, the Debtor relies on the *Declaration of Jay Herriman in Support of the Five Hundred Eighty-Eighth Omnibus Objection (Non-Substantive) of the*

*Commonwealth of Puerto Rico to Municipality Claims for which the Commonwealth Is Not Liable*,

dated July 14, 2023, attached hereto as **Exhibit B**.

## NOTICE

40.     In accordance with the Amended Omnibus Objection Procedures and the Court's

Notice Order, the Commonwealth is providing notice of this Five Hundred Eighty-Eight Omnibus

Objection to (a) the individual creditors subject to this Five Hundred Eighty-Eighth Omnibus

Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Seventeenth*

*Amended Case Management Procedures* [ECF No. 24726-1]), which is available on the Debtors'

case website at https://cases.kroll.com/puertorico.  The notice for this Five Hundred Eighty-Eighth

Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Five Hundred

Eighty-Eighth Omnibus Objection and all of the exhibits attached hereto are being filed with this

objection and will be served on the parties.  The Commonwealth submits that, in light of the nature

of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Debtor respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtor such other and further relief as is just.

Dated: July 14, 2023
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico*

**Fecha de la vista: 30 de agosto de 2023, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de agosto de 2023, a las 4:00 p.m. (AST)**

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>                    Deudores.[1] | PROMESA<br>Título III<br><br>Número: 17-BK-3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

## QUINGENTÉSIMA OCTOGÉSIMA OCTAVA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE MUNICIPIOS POR LAS QUE EL ELA NO ES RESPONSABLE

---

[1] Los Deudores en el marco de los casos de Título III, junto con el respectivo número de caso radicado conforme al Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Causa de Quiebra Número 17-BK-3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17-BK-3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17-BK-3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17-BK-3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17-BK-4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente quingentésima octogésima octava objeción global (la "Quingentésima octogésima octava objeción global") a las pruebas de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas") a reclamaciones de ciertos municipios por las que el ELA no es responsable. En apoyo de la Quingentésima octogésima octava objeción global, el Deudor manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1. El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2. La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A. Órdenes de Fecha Límite

3. El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije*

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

*la manera de su notificación* [ECF Número 2255] (la "Moción de Fecha Límite"). Conforme a la

*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)*

*aprueba la forma y la manera de su notificación* [ECF. Número 2521] (la "Orden Inicial de Fecha

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para presentar evidencias de reclamaciones en el marco del Caso de Título

II del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*

*evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF Número

3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"),

extendiendo dichas fechas límite hasta el 9 de agosto de 2018, a las 4:00 p.m. (AST).

**B.      Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme
al Título III y de las Modificaciones Calificadas de la AFI y de la ADCC**

5.      El 3 de noviembre de 2021, la Junta de Supervisión radicó, en nombre del ELA, del

SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"), el *Octavo Plan de Ajuste*

*Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al*

*Título III* (en su versión enmendada y modificada posteriormente, denominado el "Plan") [ECF

Número 19053].  El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este

en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

6.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la* moción

para la confirmación del *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado*

*de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7.     El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813].

8.     El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.     El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma la versión modificada del Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al*

*Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor*
[ECF Número 20349].

10.      Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

**C.      Procedimientos conforme al Título VI del BGF y modificación calificada**

11.      El Banco Gubernamental de Fomento (el "<u>BGF</u>") es una corporación pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "<u>Gobierno</u>") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

12.      El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "<u>Modificación Calificada</u>"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

13.      El 24 de agosto de 2017, el ELA promulgó la Ley 109-2017, la Ley para la Reestructuración de la Deuda del Banco Gubernamental de Fomento para Puerto Rico (la "<u>Ley de Reestructuración del BGF</u>") para abordar la insolvencia del BGF y aplicar los términos de la Modificación Calificada. Como parte de dichas reformas, la Ley 109-2017 creó dos nuevas entidades: la Autoridad de Recuperación y el Fideicomiso de Entidad Pública (el "FEP").

14.     La Autoridad de Recuperación fue creada como un fideicomiso público estatutario e instrumentalidad gubernamental pública del ELA para implementar el AAR emitiendo bonos de reestructuración a cambio de determinados bonos anteriores del BGF (los "Bonos Participantes"). *Véase* la Ley de Reestructuración del BGF, artículos 201 y 203. Además, la Ley de Reestructuración del BGF dispone que la Autoridad de Recuperación es una "entidad legal separada del Gobierno de Puerto Rico, el BGF y cualquier otra Entidad Gubernamental". *Véase* la Ley de Reestructuración del BGF, artículo 202.

15.     Asimismo, la Ley de Reestructuración del BGF autoriza al BGF a formalizar la Escritura de Fideicomiso de la Entidad Pública (la "Escritura del FEP"), cuyos términos regularían el tratamiento de los depósitos y las obligaciones de las entidades públicas del ELA. Juntas, la Ley de Reestructuración del BGF y la Escritura del FEP crearon el FEP para recibir del BGF (entre otros activos) las obligaciones de depósitos (los "Depósitos Designados") de las entidades gubernamentales no municipales (los "Depositantes Designados"). Conforme a la Ley de Reestructuración del BGF y la Escritura del FEP, la transferencia de los Depósitos Designados al BGF "se considerará como una transferencia irrevocable, ineludible y absoluta de todo el derecho, título e interés legal y equitativo del BGF...", Ley de Reestructuración del BGF, artículo 303.   Además, una vez que el FEP asuma los Depósitos Designados, los Depositantes Designados, "inmediatamente y para siempre . . . dejarán de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos o cualquier sucesor o cesionario de los mismos (excepto el Fideicomiso de Entidad Pública)". *Id.*

16.     El FEP se creó como un fideicomiso público e instrumentalidad gubernamental del ELA, independiente y separado de cualquier otra entidad gubernamental, incluido el BGF y la Autoridad de Recuperación. *Véase* la Ley de Reestructuración del BGF, artículo 302; La

Escritura del FEP en 3. La Ley de Reestructuración del BGF controla tanto el balance de las

obligaciones adeudadas a las entidades gubernamentales no municipales como el desembolso

de los fondos. Conforme a la Ley de Reestructuración del BGF, el balance de las obligaciones

se determinó aplicando el balance pendiente de los depósitos de las entidades gubernamentales

no municipales y del BGF contra el balance pendiente de los préstamos adeudados al BGF por

tales entidades gubernamentales no municipales. *Véase* la Ley de Reestructuración del BGF,

artículo 302.  Además, la Ley de Reestructuración del BGF estipula que la Escritura del FEP

"dispondrá la manera en que los Activos del Fideicomiso de Entidad Pública se distribuirán

entre los Depositantes Designados". *Véase* la Ley de Reestructuración del BGF, artículo 305.

17.     Conforme a lo dispuesto en la Ley de Reestructuración del BGF, la Escritura

del FEP ha creado el procedimiento para desembolsar los fondos a los Depositantes

Designados. Cada Depositante Designado recibió una participación a prorrata en las unidades

comunes del FEP (llamadas "Unidades FEP") en plena y definitiva satisfacción de todas las

reclamaciones que dichos Depositantes Designados puedan tener contra el BGF. *Véase* la

Escritura del FEP, § 1.7. De esta forma, el Fideicomisario podrá, a su exclusivo criterio,

distribuir los fondos entre los Depositantes Designados en función de sus respectivas Unidades

FEP. *Id.* Una vez que se haya producido dicha distribución de fondos del FEP a un Depositante

Designado, los fondos desembolsados del FEP dejarán de formar parte del propio FEP, por lo

que los intereses que dicho Depositante Designado haya tenido en el FEP se considerarán

satisfechos en la misma medida que la mencionada distribución de fondos. *Id.*

18.     Además, antes del 1 de enero de 2017, determinados municipios mantenían en

el BGF unos depósitos en efectivo no desembolsados, conocidos como el "CAE Sobrante", a

raíz de ingresos por un canon adicional especial que el propio BGF certificó como sobrante del

Fondo de Amortización de la Deuda Pública Municipal (según la definición contenida en la Ley de Financiamiento Municipal, Ley Número 64-1996). Conforme a lo dispuesto en la Ley de Reestructuración del BGF, el BGF suscribió acuerdos de conciliación con algunos de esos municipios, de conformidad con los cuales cada uno de dichos municipios aceptaba el 55 % de su CAE Sobrante, correspondiente al período de 2015-2017, como una compensación, liquidación y satisfacción plena, final y completa del monto total de su CAE Sobrante correspondiente a 2015-2017. Además, dichos acuerdos disponían lo siguiente: "tal municipalidad no tendrá ningún otro derecho ni reclamación" en el CAE Sobrante no desembolsado, y "el BGF no tendrá ninguna otra obligación ni responsabilidad ante dicho municipio en relación con el CAE Sobrante". *Declaración de Solicitud*, en 12.

19.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF Número 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad de Recuperación de Deuda del BGF (GDB Debt Recovery Authority) a cambio de la cancelación (entre otras cosas) de determinados bonos participantes y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o mantenidos por el BGF) o del BGF. *Declaración de Solicitud*, en 57-60,

ECF Número 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 10 de ago. de 2018).

20.     El 17 de noviembre de 2018, este Tribunal dictó *Antecedentes de Hecho, Fundamentos de Derecho, y una Orden por la que se aprueba la Modificación Calificada del Banco Gubernamental de Fomento para Puerto Rico conforme a la sección 601(m)(1)(D) de la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* (la "Orden de Modificación Calificada") [ECF Número 270] en el marco del caso de Título VI del BGF, Caso Número 18-1561 (LTS) (el "Caso de Título VI"). En la Orden de Modificación Calificada, este Tribunal, entre otras cosas, aprobó la solicitud del BGF de una Modificación Calificada sobre la base de los términos del AAR, en su versión modificada.

21.     Conforme a la Orden de Modificación Calificada, i) los tenedores de los Bonos Participantes aceptaban la cancelación de sus Bonos Participantes a cambio de unos nuevos bonos garantizados emitidos por la Autoridad de Recuperación; ii) la propia Autoridad de Recuperación aceptaba emitir nuevos bonos a los tenedores de los Bonos Participantes a cambio de la transferencia irrevocable a favor de la Autoridad de Recuperación de la totalidad de los activos del BGF (con la excepción de determinados activos excluidos) al 1 de julio de 2018; y iii) el BGF aceptaba transferir irrevocablemente a favor de la Autoridad de Recuperación dichos activos como contraprestación por la emisión por parte de la Autoridad de Recuperación de los nuevos bonos a los tenedores de los Bonos Participantes a cambio de la cancelación de los Bonos Participantes. Tras dicho intercambio, el artículo 404 de la Ley de Reestructuración del BGF dispone que los tenedores de los Bonos Participantes y todos los otros acreedores del BGF "inmediatamente y para siempre, sin acción o documentación adicional, dejarán de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera

8

de sus activos, o cualquier sucesor o cesionario del mismo".

22.      El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), disponible en http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**D.      Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

23.      Hasta la fecha, se han radicado aproximadamente 182,552 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43,6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

24.      De las evidencias de reclamaciones radicadas, aproximadamente 118,807 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que el Deudor sea responsable, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que el Deudor determine si la reclamación es válida.

25.      Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF Número 4230]; Procedimientos relativos a Objeciones Globales [ECF Número 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF Número 4381] (la "<u>Orden de Notificación</u>").

26.      En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF Número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprobó procedimientos enmendados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobó*

*formas de notificación adicionales y D) concedió el remedio relacionado* [ECF Número 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

27.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 28 vistas y ha dictado órdenes sobre más de 500 objeciones globales radicadas por
el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la
Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía
Eléctrica de Puerto Rico (la "AEE"), la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes
del Tribunal dictadas hasta la fecha, y de la retirada de determinadas reclamaciones conforme al
Plan, aproximadamente 116,000 reclamaciones que reivindicaban \$43.6 billones en
responsabilidad contra el ELA, COFINA, la ACT, la AEE, el SRE y la AEP fueron rechazadas y
retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al
Título III. Además, aproximadamente 45,317 reclamaciones han sido transferidas al proceso de
Reconciliación de Reclamaciones Administrativas para su resolución utilizando procesos
administrativos habituales de los Deudores.

### OBJECIÓN A EVIDENCIAS DE RECLAMACIONES

28.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA
radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases
recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra
(*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en
los Procedimientos Enmendados relativos a Objeciones Globales.

29.     La Quingentésima octogésima octava objeción global pretende rechazar, de
conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones

que tratan de recuperar montos por los que el ELA no es responsable, según se expone en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas").

30.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Cada una de las Reclamaciones que han de ser rechazadas pretende alegar responsabilidades contra el ELA, pero como consecuencia de la Modificación Calificada, el ELA no es responsable de lo alegado en las Reclamaciones que han de ser rechazadas.

31.     Además, la carga de la prueba con respecto a una evidencia de reclamación corresponde inicialmente, y en última instancia, al reclamante que debe alegar hechos que sean suficientes para sostener su evidencia de reclamación. *In re Plourde*, 397 B.R. 207, 217-18 (Bankr. D. N.H. 2008), *conf. parcialmente y rev. parcialmente sobre otros motivos*, 418 B.R. 495, 62 Collier Bankr. Cas. 2d (MB) 877 (B.A.P. 1st Cir. 2009).   "Cuando una reclamación ... se basa en un escrito, el original o duplicado debe radicarse con la evidencia de reclamación".   Reg. Fed. de Pr. de Quiebr. 3001(c). En tales casos, una evidencia de reclamación debidamente formalizada y radicada consiste en lo siguiente: 1) nombre de un acreedor y su dirección, 2) fundamento de la reclamación, 3) fecha en la que se incurrió en la deuda, 4) monto de la reclamación, 5) clasificación de la reclamación y 6) documentos justificativos.  *Véase id.* Si una evidencia de reclamación no incluye suficientes hechos o no adjunta suficiente documentación justificativa, no tendrá derecho a una validez *prima facie*, por lo que el reclamante deberá probar tanto la validez como el monto de su reclamación. *Id.*; *véase también In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (un reclamante solo tiene derecho a que su reclamación sea considerada válida *prima facie* si dicho reclamante alega "suficientes hechos para sostener la reclamación"). Ninguna de las Reclamaciones que han de ser rechazadas proporciona información ni documentación suficientes

para que los Deudores puedan reconciliar algunas o todas de las responsabilidades alegadas en estas. Además, los reclamantes vinculados con dichas reclamaciones no han respondido a la comunicación relativa a tales evidencias de reclamaciones, por lo que las Reclamaciones que han de ser rechazadas no cumplen con los requisitos de una evidencia de reclamación.

32.     Cada una de las Reclamaciones que han de ser rechazadas identifica al BGF como la agencia contra la cual se alega la reclamación, pero en cada uno de los caso, al ELA no le corresponden las responsabilidades alegadas en la evidencia de reclamación o el municipio no ha respondido a las solicitudes de información adicional sobre las responsabilidades alegadas.

33.     El municipio de Mayagüez radicó la Evidencia de reclamación Número 154568 (la "Reclamación de Mayagüez") que alega responsabilidades contra el ELA por el monto de $38,638,236.02 y menciona "fondos relativos a préstamos de proyectos" como fundamento de la reclamación, y adjunta como documentación justificativa lo que parecen libros de contabilidad relativos a determinados proyectos. Sin embargo, Conforme a la Orden de Modificación Calificada, los fondos que Mayagüez tenía en depósito en el BGF ya han sido compensados contra los préstamos que Mayagüez adeudaba al BGF. Además, aunque Mayagüez hubiera alegado el CAE Sobrante no desembolsado al 1 de enero de 2017, suscribió con el BGF un acuerdo de conciliación sobre dicho CAE Sobrante, lo cual resolvió todas las reclamaciones que pudiera haber tenido con respecto a dichos fondos. En la medida en que la Reclamación de Mayagüez pretende alegar cualquier responsabilidad vinculada con los préstamos que, según alega, de alguna forma no están cubiertos por la Modificación Calificada, no incluye ninguna información sobre tal

préstamo; por ejemplo, el número del préstamo, el monto del préstamo, o cualquier otra documentación relativa a dicho préstamo.

34.    El municipio de San Juan radicó la Evidencia de reclamación Número 91946 (la "Reclamación de San Juan") que alega responsabilidades contra el ELA supuestamente vinculadas con un "Préstamo del Banco Gubernamental de Fomento" por el monto de $6,939,046.89. Sin embargo, Conforme a la Orden de Modificación Calificada, los fondos que San Juan tenía en depósito en el BGF ya han sido compensados contra los préstamos que San Juan adeudaba al BGF. En la medida en que la Reclamación de San Juan pretende alegar cualquier responsabilidad vinculada con los préstamos que, según alega, de alguna forma no están cubiertos por la Modificación Calificada, no incluye ninguna información sobre tal préstamo; por ejemplo, el número del préstamo, el monto del préstamo, o cualquier otra documentación relativa a dicho préstamo. En su lugar, cada una de las reclamaciones adjunta varias páginas de extractos de cuentas que de por sí no proporcionan información adicional sobre los supuestos préstamos alegados.

35.    El municipio de San Germán radicó la Evidencia de reclamación Número 48801 (la "Reclamación de San Germán") en la que alega responsabilidades contra el ELA por el monto de $6,072,718.76, y menciona "contratos de construcción, fondos de préstamos de proyectos y certificados de depósito" como fundamento de la reclamación. Sin embargo, Conforme a la Orden de Modificación Calificada, los fondos que San Germán tenía en depósito en el BGF (con la excepción de los fondos federales) ya han sido compensados contra los préstamos que San Germán adeudaba al BGF. Además, San Germán también tenía $37,645.75 de fondos federales depositados en el BGF, fondos que no estaban sujetos a compensación; más tarde, dichos fondos fueron desembolsados a favor del municipio. Además, aunque San Germán hubiera alegado el CAE Sobrante no desembolsado al 1 de enero de 2017, suscribió con el BGF un acuerdo de conciliación

sobre dicho CAE Sobrante, lo cual resolvió todas las reclamaciones que pudiera haber tenido con respecto a dichos fondos. En la medida en que la Reclamación de San Germán pretende alegar cualquier responsabilidad vinculada con los préstamos que, según alega, de alguna forma no están cubiertos por la Modificación Calificada, no incluye ninguna información sobre tal préstamo; por ejemplo, el número del préstamo, el monto del préstamo, o cualquier otra documentación relativa a dicho préstamo.

36.    La Evidencia de reclamación Número 82613 (la "Reclamación de Añasco"), radicada por el municipio de Añasco, alega responsabilidades contra el ELA por el monto de $4,915,444.75 e invoca como fundamento de la reclamación el hecho de que el BGF supuestamente denegara la retirada de los fondos. No incluye otros hechos ni adjunta documentación justificativa alguna. Sin embargo, al igual que en el caso de todos los demás municipios, los depósitos de Añasco fueron compensados contra los préstamos pendientes conforme a la Modificación Calificada, por lo que ni el ELA ni ningún otro deudor de Título III son responsables ante Añasco por sus supuestos depósitos.

37.    La Evidencia de reclamación Número 12069 (la "Reclamación de Loíza"), radicada por el municipio de Loíza, alega responsabilidades por el monto de $283,000 contra el ELA e identifica como fundamento de la reclamación unos "fondos federales/reembolsos de fondos federales". Al igual que la Evidencia de reclamación Número 82613, tampoco incluye otros hechos ni adjunta documentación justificativa alguna. La AAFAF desembolsó $197,877.24 de fondos federales a Loíza luego de la radicación de la Reclamación de Loíza, y en este momento sus registros no muestran que el BGF adeude fondos federales adicionales a Loíza. En consecuencia, el ELA ya ha desembolsado a Loíza los fondos que según sus registros se adeudaban a dicho municipio, por lo que el ELA no es responsable del resto del saldo.

38.     Por lo tanto, las Reclamaciones que han de ser rechazadas, identificadas en el Anexo A, deben rechazarse.

39.     En apoyo de lo anterior, el Deudor invoca la *Declaración de Jay Herriman en apoyo de la Quingentésima octogésima octava objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de municipios por las que el ELA no es responsable*, de fecha 14 de julio de 2023, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

40.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Quingentésima octogésima octava objeción global a) a los acreedores individuales objeto de esta Quingentésima octogésima octava objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados Número 17* [ECF Número 24726-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.kroll.com/puertorico. La notificación de la Quingentésima octogésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Quingentésima octogésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el Deudor solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al Deudor cualesquiera otros remedios que se consideren justos.

Fecha: 14 de julio de 2023
          San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC Número 215205
Carla García-Benítez
USDC Número 203708
Gabriel A. Miranda
USDC Número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera., local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico.*