# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br> THE COMMONWEALTH OF PUERTO RICO, *et al.* <br><br> Debtors. | PROMESA <br> Title III <br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br> PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA") <br><br> Debtor.[1] | PROMESA <br> Title III <br><br> No. 17 BK 4780-LTS <br><br> **Re: 17-BK-04780-LTS, ECF Nos. 3834, 3840** |

**JOINT RESPONSE OF THE FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR PUERTO RICO,
PUERTO RICO ELECTRIC POWER AUTHORITY, AND
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY
TO THE INFORMATIVE MOTION OF COBRA ACQUISITIONS LLC
IN CONNECTION WITH THE ORDER REGARDING
<u>COBRA ACQUISITIONS LLC'S MOTION TO MODIFY STAY ORDER</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties"), in accordance with this Court's *Order Concerning Informative Motion of Cobra Acquisitions LLC in Connection with the Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* (ECF No. 3840), respectfully submit this response (the "Response") to the *Informative Motion of Cobra Acquisitions LLC's [sic] in Connection with the Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3834; Case No. 17-03283, ECF No. 24717][2] (the "Informative Motion").[3] In support of this Response, the Government Parties respectfully state as follows:

**RESPONSE**

1. On June 14, 2023, the Government Parties filed the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* (ECF No. 3754) (the "Invoice Status Report") providing detailed information regarding the steps involved in PREPA's review of the Approved Unpaid Invoices and where each of these invoices were in the review process at that time. Additionally, based on estimates provided by PREPA's outside consultant retained to

---

[2] Docket numbers refer to Case No. 17-4780 unless otherwise noted.

[3] Terms that are capitalized but not defined herein have the meanings ascribed in the Informative Motion.

2

complete this review, the Invoice Status Report provided expected completion dates for the review of each open invoice. At that time the total balance of the Approved Unpaid Invoices was approximately $103 million. As the Invoice Status Report indicated, payment of eleven of those invoices totaling approximately $10,750,000 was then in progress. That payment was completed on June 14.

2. PREPA and its outside advisors have been working diligently to complete the invoice review and validation process. This is not a simple process and, particularly given Cobra's former CEO's criminal conviction, it is an extremely important and sensitive one. Prior to this indictment, PREPA timely approved and paid more than a billion dollars to Cobra. The indictment of Cobra's former CEO (for actions related to the contract at issue) brought FEMA's and PREPA's review process to a standstill. In the meantime, PREPA transitioned the operation of the grid to LUMA Energy, which left PREPA without any of the personnel previously charged with reviewing and approving Cobra's invoices. PREPA was thus required to hire an outside consultant to complete this work, which it did in November 2022.

3. Although the Approved Unpaid Invoices are the subject of a FEMA determination memo obligating funds to pay the federal share of those invoices (90%, or about $93 million), PREPA is required by federal regulation to follow its own documented procedures for the acquisition of services funded by federal grants (2 C.F.R. § 200.318(a)) and, pursuant to its subgrant agreement with the Central Office for Recovery, Reconstruction and Resiliency ("COR3"), the Puerto Rico agency that serves as the Recipient and pass-through entity for FEMA Public Assistance funds, PREPA is liable for the return of obligated funds, "including funds paid to any contractor," if COR3 or FEMA "disallow costs and recover funds based on a later audit or

3

review during or after performance of the subaward to ensure compliance with the terms of the Agreement and subaward document."

4. In addition, the regulation at 2 C.F.R. § 200.332 outlines the requirements for pass-through entities like COR3. The regulation requires COR3 to "ensure that the subaward is used for authorized purposes, in compliance with Federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved." Failure to follow these requirements can result in PREPA being required to return funds it received. If COR3 (or FEMA, at closeout) determines that PREPA "fail[ed] to comply with the U.S. Constitution, Federal statutes, regulations or the terms and conditions of a Federal award," then it may impose a remedy for noncompliance pursuant to 2 C.F.R. § 200.339, which includes disallowing costs, among other remedies. Payment by PREPA for work that is not necessary, reasonable, or adequately documented violates federal regulations. *See* 2 C.F.R. § 200.403, Factors affecting allowability of costs. The regulations also require PREPA to "[b]e consistent with policies and procedures that apply uniformly to both federally-financed and other activities of the non-Federal entity." *Id*. at § 200.403(c). In other words, PREPA cannot reserve its strictest standards for payments made out of its own funds while applying more liberal treatment to federally-financed work.

5. All of the steps required for PREPA's approval of the Approved Unpaid Invoices are set forth at the top of the columns in the chart attached to the Invoice Status Report as <u>Exhibit A</u>. One of the steps shown on this chart is "Confirmation of Approval by Authorized Personnel." This requirement is derived from two sources. First, PREPA's *Procedimiento para el Trámite de los Contratos por Servicios Profesionales, No Profesionales o de Expertos*, specifically its *Instrucciones para la Verificación, Evaluación y Pago de los Servicios*, requires, among other things, that the end user of the services verify each invoice to determine if the amount corresponds

with the task performed and certify the invoice for payment. Second, Article 3 of Cobra's Second Contract requires that "Prior to payment, the invoices submitted by the Contractor must be approved by the Engineer and must be accompanied by the proper supporting documents (such as inspection certifications, work reports and third-party invoices)." Article 2 of the Second Contract defines "Engineer" as "the Transmission and Distribution Director of PREPA, acting directly or through his properly authorized representatives."

6. This step is neither new nor something Cobra did not know. Its own contract with PREPA requires an engineer on staff at PREPA authorized by the Transmission and Distribution Director to confirm the subject work was performed as requested by PREPA. As indicated in the Invoice Status Report submitted on June 14, this step had not yet been completed for a substantial majority of the Approved Unpaid Invoices. PREPA's outside consultant performing the invoice validation worked diligently to complete its review according to the schedule reported to the Court on June 14, including to confirm invoice certification by an authorized engineer as required by the Second Contract. However, when it reached this point it determined that this particular step would be problematic, given that PREPA's Transmission and Distribution division no longer exists—it now resides with LUMA Energy. There are no remaining PREPA personnel that can authorize Cobra invoices.

7. PREPA's consultant reported to the Government Parties on June 23, 2023 (more than a week after the Invoice Status Report was filed and more than two weeks after the June 8 omnibus hearing) that its invoice validation process was essentially complete, with the exception of "Confirmation of Approval by Authorized Personnel" for invoices that were never approved by PREPA personnel. Thereafter, the Government Parties contacted LUMA Energy to obtain access to the former PREPA engineer that was authorized to approve the invoices so that PREPA's

5

consultant could complete its validation and obtain the required approval. Counsel to the Oversight Board informed Cobra of these facts on June 28, and subsequently informed Cobra that it had only recently learned of these developments and also that none of PREPA's remaining employees have the knowledge needed to confirm approval. Notwithstanding these facts, Cobra falsely accused the Oversight Board in the Informative Motion of withholding this information from the Court.[4] Regardless, since learning of this issue the Government Parties have been attempting to address it, including evaluating other paths to certify these invoices in lieu of utilizing a current LUMA employee.

8.  In addition, since the filing of the Invoice Status Report, PREPA has continued to work diligently with its outside advisors to complete its review of the Approved Unpaid Invoices within the estimated timeframes reported to the Court. On July 17, PREPA's invoice validation consultant recommended an additional payment of $8,357,746 billed under 26 invoices to be submitted to PREPA's systems for payment and for submission to COR3 for reimbursement. PREPA does not intend to wait for disbursement of FEMA funds from COR3 before making this payment to Cobra.

9.  The 149 invoices that still need Engineer certification amount to over $72 million of FEMA-approved costs. The Government Parties are continuing to work diligently to find a way over this hurdle. Once the invoices are certified or a workaround is achieved, PREPA's consultant will be able to recommend the invoices for payment, subject to any discrepant amounts that failed

---

[4] Cobra asserts in its Informative Motion that the Government Parties failed to "adequately inform[]" both Cobra and the Title III Court regarding "the need for LUMA Energy's assistance." Informative Motion ¶ 10. Cobra further asserted the "Government Parties have not satisfactorily answered Cobra's repeated questions as to why no current employee of PREPA can provide such verification or what will happen if this former employee is no longer available or accessible." Informative Motion ¶ 9. This assertion is also false. The Oversight Board provided an answer to this exact question in an email dated July 7, 2023, in which the Oversight Board explained "all of PREPA's Transmission & Distribution personnel who authorized Cobra's work are now with LUMA."

the validation process (which would become disputed amounts to be resolved through settlement or litigation). Any such amounts will be identified and quantified in a separate report to the Court identifying remaining disputes.

10. Regarding Cobra's assertions that PREPA has available FEMA funds, as the Government Parties explained in previous filings, none of the funds obligated by FEMA for the federal share of the Approved Unpaid Invoices are available to PREPA until COR3 releases such funds. Nonetheless, PREPA used its limited unrestricted cash to pay Cobra approximately $10.75 million on June 14, 2023 in advance of formally submitting an RFR to COR3 for those invoices and is processing an additional approximately $8million in payments. These now – or soon to be satisfied invoices fall within those Cobra identifies as the Approved Unpaid Invoices, i.e., the approximately $103 million at issue in the Lift Stay Motion.

11. Cobra also once again inappropriately admonishes PREPA for seeking reimbursement of payments it previously made to Cobra, while delaying submission invoices for payment to Cobra.[5] As PREPA explained in the Lift Stay Objection, prior to paying these invoices from its own resources in the first instance, PREPA completed the same invoice review process it is now undertaking for the Approved Unpaid Invoices (at a time when it was fully staffed for this task). Because the invoices were already internally validated, approved, and paid years ago, all of the prerequisites for submission of a request for reimbursement were long ago completed. Moreover, due to the criminal misconduct of Cobra's former CEO, PREPA has been forced to wait almost *five years* for reimbursement of these payments from FEMA funds.

---

[5] *See* Informative Motion ¶ 2 ("By April 4, 2023, PREPA had submitted a request for reimbursement from these available funds to pay itself . . . . Yet, as of the filing of the Lift Stay Motion, no request for reimbursement had been made by PREPA with respect to the Approved Unpaid Invoices.").

7

12. Finally, regarding the status of settlement discussions, on June 29, 2023, on the eve of the four-day July 4th holiday weekend and nearly three months after the Oversight Board communicated a settlement proposal to Cobra (to which Cobra has yet to respond), Cobra requested the relevant parties enter into mediation of the remaining outstanding disputes regarding Cobra's asserted administrative claim. At that time, the Oversight Board was in the midst of completing fiscal year 2023 and certifying the then-outstanding fiscal plans and budgets for fiscal year 2024. Four business days after the July 4th holiday, Cobra filed the Informative Motion, criticizing the Oversight Board for, among other things, failing to respond to the request for mediation. Informative Motion ¶ 15. Cobra's complaint is especially inappropriate given Cobra's complete lack of a response to the Oversight Board's April 3 settlement proposal. The Oversight Board is considering Cobra's request, though it is difficult to assess the benefits of mediation when the Oversight Board has not received a substantive response to its prior proposal. However, the Oversight Board concurs with Cobra that settlement of all outstanding issues is the best path forward, and commits to working in good faith to achieve it.

San Juan, Puerto Rico
July 21, 2023

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/ *Paul V. Possinger*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com
* admitted *pro hac vice*

*Attorneys for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Arturo Díaz Angueira*
Arturo Díaz Angueira
adiaz@diazvaz.law
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918
Tel. (787) 395-7133
Fax. (787) 497-9664

*Co-Attorneys for Puerto Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
mdiconza@omm.com

9

-and-

Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
pfriedman@omm.com

-and-

Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*