IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.<br><br>Debtors.[1] | PROMESA Title III<br><br>NO.: 17-BK-3283-LTS (Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

**EMPRESAS OMAJEDE'S RESPONSE TO THE FOURTH OBJECTION (DKT. 24186) TO ITS PROOF OF CLAIM (CLAIM # 70324) AND TO ITS MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM (DKT. 23272)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE LAURA TAYLOR SWAIN:

COMES NOW, EMPRESAS OMAJEDE INC., by and through the undersigned counsel, and, in response to Dkt. 24186 (which is titled *Objection of the Commonwealth of Puerto Rico to Proof of Claim (Claim # 70324) of Empresas Omajede, Inc. Claim and to Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 USC §503)*, states, alleges and prays.

I. PROCEDURAL BACKGROUND

1.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA

---

[1]     The Last Four Digits of the Federal Tax ID of the Commonwealth of Puerto Rico (the Debtor in Bankruptcy Case No. 17-BK-3283 (LTS)) is 3481.

section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case"). Dkt. 1

2.      The Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* (the "Initial Bar Date Order").[2] Dkt. 2521

3.      The Bar Date Order states that "[a]ny disallowance of claims (including, without limitation, duplicate claims) shall be made in accordance with, and to the extent provided for under, applicable law without giving effect to the entry of this Order (other than the form, timing, manner of filing, and other procedural requirements for filing proofs of claim set forth herein)." Dkt. 2521

4.      The Bar Date Order states that "All proofs of claim must (i) be written in English or Spanish; (ii) be denominated in lawful currency of the United States as of the relevant Title III Case commencement date; (iii) set forth with specificity the legal and factual basis for the asserted claim; (iv) include a copy of the supporting documentation (or, if such documentation is voluminous, a summary of such documentation must be attached) or an explanation as to why such documentation is not available, with such documentation, summary, or explanation being provided in English or Spanish; (v) include an original or electronic signature of the claimant or an authorized agent of the claimant; and (vi) substantially conform to the Proof of

---

[2]   The Initial Bar Date Order was amended by the Order in Dkt. 3160 which extended the bar date for filing proofs of claim to June 29, 2018 at 4:00pm (Atlantic Time). Dkt. 3160

Claim Form approved by this Order if submitted using an alternative form. Any claimant that provides a summary in lieu of supporting documentation shall transmit the documents in support of its claim to Prime Clerk [now Kroll] and the applicable Debtor within ten days after the date of any written request by the applicable Debtor for such documents, to the extent such documents are in the possession of the claimant. After the applicable Bar Dates, amendments to timely filed proofs of claim will only be allowed to the extent an amended claim is based on the same facts and circumstances as a timely filed claim, and in accordance with applicable law, or as otherwise ordered by the Court." Dkt. 2521

5.     On November 14, 2018, the Court entered the *Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* (the "Initial Omnibus Objection Procedure Order"). Dkt. 4230

6.     The Initial Omnibus Objection Procedure Order exempts the Debtors from complying with Bankruptcy Rule 3007(e)(6), raises the amount of claims that may be accumulated in a single omnibus objection to five hundred and, among other things, states that "[n]otwithstanding anything to the contrary in PROMESA, the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, and pursuant to Bankruptcy Rule 3007(c), the Debtors may file Omnibus Objections that include objections to claims on any basis provided for in Bankruptcy Rule 3007(d)(1) – (7)." Dkt. 4230

3

7.     On June 14, 2019, the Court entered the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* (the "Second Omnibus Objection Procedure Order"). Dkt. 7440

8.     The Second Omnibus Objection Procedure Order exempts the Debtors from complying with Bankruptcy Rule 3007(e)(3), raises the amount of claims that may be accumulated in a single omnibus objection to one thousand and, among other things, states that in addition to the grounds provided for in Bankruptcy Rule 3007(d)(1) – (7), the Debtors may assert, as additional grounds, any of the following: "a. Claims are inconsistent with the Debtors' books and records; b. Claims fail to specify the asserted amount for each Claim, or for each Claim only list the amount as 'unliquidated'; c. Claims seek recovery of amounts for which the Debtors are not liable; d. Claims are incorrectly or improperly classified; or e. Claims are filed against non-Debtors." Dkt. 7440

9.     The Second Omnibus Objection Procedure Order together with the Initial Omnibus Objection Procedure Order will hereafter referred to as the "Amended Omnibus Objection Procedures").

10.    On March 12, 2021, the Commonwealth filed a first omnibus objection with respect to Empresas Omajede's Claim, which is titled *Two Hundred Ninety-Eight Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, the and the Employees*

4

*Retirement System of the Commonwealth of Puerto Rico to Subsequently Amended Claims*. Dkt. 16018. The **298th Omnibus Objection** was filed under the Amended Omnibus Objection Procedures.

11.     The **298th Omnibus Objection** requested that the original claim be disallowed and expunged because it was later amended, and the amended claim superseded the original claim. Dkt. 16018.

12.     With respect to Empresas Omajede's Claim, in the Exhibit to the **298th Omnibus Objection**, the Commonwealth stated that, with respect to Claim #21372 which was filed on 05/25/2018 with respect to 17-BK-03283-LTS and the Commonwealth Debtor and that asserts a claim for $338,503.37, the reason for the objection is that the claim was "[a]mended and superseded by a later filed Proof of Claim" and listed Claim #70324 which was filed on 06/25/2018 with respect to 17-BK-03283-LTS and the Commonwealth Debtor and that asserts a claim for $338,503.37 as the remaining claim. Dkt. 16018 (Exhibit A).

13.     On May 28, 2021, the Court entered an order granting the **298th Omnibus Objection**, which disallowed the Initial POC in its entirety. Dkt. 16823

14.     On August 20, 2021, the Commonwealth filed a second omnibus objection with respect to Empresas Omajede's Claim, which is titled *Three Hundred Seventy Second Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Partially Satisfied and Partially No Liability Claims*. Dkt. 17918. The **372nd Omnibus Objection** was filed under the Amended Omnibus Objection Procedures.

5

15.    The **372ⁿᵈ Omnibus Objection** requested that the asserted claim amount be reduced because of 2 alleged post-petition payments purportedly reduced the claim to $182,692.41. Dkt. 17918.

16.    With respect to Empresas Omajede's Claim, in the Exhibit to the **372ⁿᵈ Omnibus Objection**, the Commonwealth stated that, with respect to Claim #70324 which was filed on 06/25/2018 with respect to 17 BK 03283-LTS and the Commonwealth Debtor and that asserts a claim for $338,503.37, the reason for the objection is that the "Invoices totaling $155,810.96 were paid via multiple EFT's during the period 02/08/2017 and 05/11/2017. The Claimant shall retain the non-modified portion of the claim." Dkt. 17918 (Exhibit A).[3]

17.    On September 16, 2022, the Commonwealth filed an omnibus objection with respect to Empresas Omajede's Claim, which is titled *Five Hundred Nineteenth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Public Buildings Authority and the Puerto Rico Highways and Transportation Authority to Deficient Claims*. Dkt. 22254. The **519ᵗʰ Omnibus Objection** was filed under the Amended Omnibus Objection Procedures.

18.    With respect to Empresas Omajede's Claim, in the Exhibit to the **519ᵗʰ Omnibus Objection**, the Commonwealth stated that, with respect to Claim #70324 which was filed on 06/25/2018 with respect to 17 BK 03283-LTS and the

---

[3]    Since the Title III petition for the Commonwealth was filed on May 3, 2017, only the payments allegedly made after May 3, 2017 would be post-petition payments.

Commonwealth Debtor and that asserts a claim for $338,503.37, the reason for the objection is that the "[p]roof of claim purports to assert liabilities associated with the Commonwealth of Puerto Rico, but fails to provide any basis or supporting documentation for asserting a claim against the Commonwealth of Puerto Rico, such that the Debtors are unable to determine whether claimant has a valid claim against the Commonwealth of Puerto Rico or any of the other Title III debtors. Claim #70324 also contained on Exhibit A to the 372nd Omnibus Claims Objection for Modified Claims." Dkt. 22254 (Exhibit A). The Kroll website shows the **519th Omnibus Objection** as pending.

19.     Although Exhibit A to the **519th Omnibus Objection** mentioned that it was also contained in Exhibit A to the **372nd Omnibus Objection**, it did not reflect that the Commonwealth requested the modification of the asserted claim amount in the **372nd Omnibus Objection**. Dkt. 22254 (Exhibit A).

20.     On October 17, 2022, Empresas Omajede filed a response (the "First Response") to the **519th Omnibus Objection** that stated that said objection had procedural deficiencies and that the reason provided therein to object to Empresas Omajede's Claim did not actually correspond to said claim, as it was neither unsubstantiated nor deficient and it appeared that the Commonwealth *had* been able to identify the basis of claim because, in the **372nd Omnibus Objection**, the Commonwealth purportedly found 2 payments reducing the asserted amount claimed to be owed by the Commonwealth by $155,810.96. Dkt. 17918.

7

21.     Moreover, the First Response asserted that it was factually incorrect that Empresas Omajede's Claim did not provide *any* basis or supporting documentation, and that the Claim did comply with all of the requirements of the Bar Date Order to assert a claim against the Commonwealth; and additional documentation was submitted with said response.[4]

22.     On May 10, 2023, the Commonwealth filed a fourth objection[5] to Empresas Omajede's claim (Dkt. 24186) seeking to disallow most of the claim ($400,365.03) on the basis that said proof of claim and its supporting documentation allegedly do not evidence a valid right to receive a payment from the Commonwealth, on the premise that Puerto Rico jurisprudence invalidates the penalty clause in the contract and because allegedly, part of the claim had already been paid; and seeking to allow the rest of the claim (in the amount of $4,805.00).

23.     On July 31, 2023, Empresas Omajede will file a response to the **Fourth Objection** and, contemporaneously, will file a separate motion requesting a stay of the claims objection procedure to allow Empresas Omajede's claim to be addressed in the priorly filed proceeding ("Empresas Omajede's Stay Motion").

---

[4]   The **First Response** also mentioned that on that same date, Empresas Omajede had filed an adversary proceeding because the Commonwealth's objection needed to be resolved through an adversary proceeding and requested that the objection resolved in the adversary. Dkt. 17918.

[5]   The **Fourth Objection**, which was filed in Dkt. 24186, is titled *Objection of the Commonwealth of Puerto Rico to Proof of Claim (Claim No. 70324) of Empresas Omajede, Inc. and to Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503.*

24.     On this same date, July 31, 2023, Empresas Omajede has also filed a motion for leave to amend the proof of claim to supplement the documentation for its right to payment of $395,471.60 ($338,503.37 from the Third POC and $66,666.66 from the Administrative Expense Claim) and has herein submitted all of said documentation as exhibits to this response.

25.     In light of all of the above, with the documentation supplementing Empresas Omajede's timely filed proof of claim, it has complied with the requirements of Section 501 of the Bankruptcy Code, to establish a *prima facie* validity of the amended proof of claim that asserts Empresas Omajede's Claim as a valid, allowable claim against the Commonwealth, the Debtor in this Title II Proceedings, which is deemed allowed pursuant to Section 502(a) of the Bankruptcy Code. Moreover, the Commonwealth has not met its burden to overcome the *prima facie* validity of the amended proof of claim, which must then be allowed pursuant to Sections 502(b) and 502(c) of the Bankruptcy Code. Nevertheless, as set forth in the Empresas Omajede's Stay Motion, the claims objection procedure must be stayed to allow Empresas Omajede's Claim to be addressed and adjudicated in the priorly filed proceeding.

## II. FACTS RELEVANT TO EMPRESAS OMAJEDE'S CLAIM

26.     The Public Service Commission (known in Spanish as "La Comisión de Servicio Público") is an agency of the Commonwealth of Puerto Rico and for whom the Commonwealth is liable. *See* **Exhibit 1**, Lease Agreement.

27.    On March 9, 2011, the Public Service Commission signed a lease agreement titled "*Contrato de Arrendamiento de Locales por Cinco Años hasta Treinta Años*" in Spanish, which is translated to English as *Lease Agreement of Locals for Five Years to Thirty Years*. *See* **Exhibit 1-A**, Lease Agreement.

28.    On March 9, 2011, Contract #2011-000009 was filed with the Office of the Comptroller of Puerto Rico. *See* **Exhibit 1-B**, Lease Agreement Registration.

29.    On August 1, 2011, the Public Service Commission signed a "Documento de Aceptación y Toma de Posesión del Local La Electrónica-Anejo I al Contrato 2011-000009" in Spanish, which is translated to English as *Document of Acceptance and Taking Possession of Local -Exhibit I to Contract #2011-000009. See* **Exhibit 2-A**, Acceptance to Take Possession.

30.    On August 1, 2011, Contract #2011-000009 was filed with the Office of the Comptroller of Puerto Rico. *See* **Exhibit 2-B**, Acceptance Registration.

31.    On September 7, 2012, the Public Service Commission signed a "*Enmienda al Contrato 2011-000009, para cumplir con la Cláusula de Amortización de Mejoras. Se Aneja Como Parte Integral del Contrato Original Núm. 2011-000009.*" in Spanish, which is translated to English as *Amendment to Contract #2011-000009, to Comply with the Improvements Amortization Clause. Attached as an Integral Part of the Original Contract #2011-000009. See* **Exhibit 3-A**, Lease Amendment.

32.     On September 7, 2012, the Amendment to Contract #2011-000009 was filed with the Office of the Comptroller of Puerto Rico. *See* **Exhibit 3-B**, Lease Amendment Registration.

33.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case"). Dkt. 1

34.     The Commonwealth's PROMESA Title III case stayed all of Empresas Omajede's collection actions. Dkt. 1

35.     On June 13, 2017, the Public Service Commission handed back the keys and sent a letter by email to Empresas Omajede to confirm the handover of the keys. *See* **Exhibit 4**, First Letter and **Exhibit 5**, Second Letter.

36.     The first letter (dated June 13, 2017) states that, even though the Public Service Commission had unoccupied the building, the keys had not been returned and requested instructions as to the return of the keys. *See* **Exhibit 4**, First Letter.

37.     A second letter (also dated June 13, 2017) states that the return of the keys is confirmed therein. *See* **Exhibit 5**, Second Letter.

38.     As of the return of the property, CSP owed $395,471.60 (composed of a pre-petition claim of $328,804.94 and a post-petition administrative expense claim of $66,666.66.

11

| Detail of Invoices | | | | | | | |
|---|---|---|---|---|---|---|---|
| Invoice Number | Invoice Date | | | Amount Due | Date Received by CSP | | |
| | Day | Month | Year | | Day | Month | Year |
| CSP SEP16-ADJ | 1 | 9 | 2016 | $ 20,666.66* | 20 | 10 | 2016 |
| CSP OCT16-ADJ | 1 | 10 | 2016 | $ 20,666.66* | 20 | 10 | 2016 |
| CSP NOV16 | 1 | 11 | 2016 | $ 20,666.66* | 20 | 10 | 2016 |
| CSP 20161129 | 29 | 11 | 2016 | $ 4,805.00 | 29 | 11 | 2016 |
| CSP DEC16 | 1 | 12 | 2016 | $ 20,666.66* | 16 | 11 | 2016 |
| CSP JAN17 | 1 | 1 | 2017 | $ 20,666.66* | 20 | 12 | 2016 |
| CSP FEB17 | 1 | 2 | 2017 | $ 20,666.66* | 17 | 1 | 2017 |
| CSP MAR17 | 1 | 3 | 2017 | $ 66,666.66 | 14 | 2 | 2017 |
| CSP APR17 | 1 | 4 | 2017 | $ 66,666.66 | 15 | 3 | 2017 |
| CSP MAY17 | 1 | 5 | 2017 | $ 66,666.66 | 18 | 4 | 2017 |
| Pre-petition amount due: | | | | $ 328,804.94 | | | |
| CSP JUN17 | (Administrative Expense Claim) | | | $ 66,666.66 | | | |
| Total Amount Due: | | | | $ 395,471.60 | | | |

*\* Balance remaining unpaid after crediting a payment of $46,000.*

*See* **Exhibit 6**, Excel Table.

39.     As demonstrated in the table, the Public Service Commission's unpaid balance related to the lease, as of the commencement of the Commonwealth's Title III proceeding was $328,804.94. *See* **Exhibit 6**, Excel Table.

40.     As demonstrated in the table, the sum of $9,698.43 in electricity bills[6] for March and April 2017 is not included in the pre-petition claim for the sum of

---

6     The payment for $9,698.43 in electricity bills was made on May 12, 2017, after the filing of the Title III petition, hence the Initial POC included said payment as a credit, after the May 3, 2017 total of $338,503.37.

$328,804.94, which is composed of the unpaid balance of the months of Sept., Oct., Nov. and Dec. 2016, and Jan. and Feb. 2017 and the entire penalty clause amounts for the months of Mar., Apr. and May 2017 and invoice CSP 20161129 (one consolidated bill for several small repairs that adds up to $4,805).

41.    The first proof of claim on 05/25/18 filed by Empresas Omajede (the "Initial POC") is for a claim in the amount of $338,503.37 related to debt incurred by the Commonwealth as a result of the Public Service Commission entering into a lease agreement for the rental of the "La Electrónica" building (Claim #21372).[7] The Initial POC (Claim #21372) is listed in the Claims Register under the enumeration # 1539-1. *See* **Exhibit 7**, Claim #21372, which is listed in the Claims Register under # 1539-1.

42.    The second proof of claim filed on 06/25/18 by Empresas Omajede (the "First Amended POC") is for a claim in the amount of $338,503.37 related to debt incurred by the Commonwealth as a result of the Public Service Commission entering into a lease agreement for the rental of the "La Electrónica" building (Claim #70324).[8] It is an amended claim, that amends the Initial POC (Claim #21372). The First Amended POC (Claim #70324) is listed in the Claims Register as Claim # 1539-2, which reflects that it is an amended claim related to the Initial POC. *See* **Exhibit 8**, Claim #70324, which is listed in the Claims Register under # 1539-2.

---

[7]    *See* footnote 6.
[8]    *See* footnote 6.

13

43.     The third proof of claim filed on 10/17/22 by Empresas Omajede (the "Second Amended POC") is for a claim in the amount of $338,503.37 related to debt incurred by the Commonwealth as a result of the Public Service Commission entering into a lease agreement for the rental of the "La Electrónica" building, as an amended claim, that amends the First Amended POC (Claim #70324) by supplementing the supporting documentation with English translations and a written statement regarding the basis for the claim. *See* **Exhibit 9**, Filing of Second Amended Claim.[9]

44.     On July 31, 2023, Empresas Omajede requested leave to file an amended proof of claim to supplement the documentation in response to the Commonwealth's request to invalidate the penalty clause. Dkt. 24818.

45.     Once granted, Empresas Omajede's First Amended POC shall be supplemented with the supplementary documentation herein attached as **Exhibit 10** (the "Third POC").

46.     The Third POC shows a prepetition claim of $328,804.94, which is composed of the unpaid balance of the months of Sept., Oct., Nov. and Dec. 2016, and Jan. and Feb. 2017 and the entire penalty clause amounts for the months of Mar., Apr. and May 2017 and invoice CSP 20161129 (one consolidated bill for several small repairs that adds up to $4,805).

---

[9]   Empresas Omajede did not request leave to amend its proof of claim prior to filing the Second Amended POC.

47.     Both the Claim and the Administrative Expense Motion seek administrative expense priority for the unpaid June 2017 rent of $66,666.66.

48.     The June 2017 rent is due and payable because the CSP did not complete delivery of the property by handing over the keys to said property until June 13, 2017.

### III. ARGUMENTS

**A. Sufficiency of Documentation**

49.     The Third POC is an amended claim, that amends the First Amended POC (Claim #70324). *See* **Exhibit 10**, Third POC.

50.     The Empresas Omajede's Claim, as asserted in the Initial POC, First Amended POC and Third POC, was filed within a proof of claim form, a written statement and supporting documentation, pursuant to Section 501 and, as such, Empresas Omajede's Claim therein asserted is deemed allowed under Section 502(a).

51.     The *prima facie* validity of Empresas Omajede's Claim has not been overcome by the Commonwealth with the **Fourth Objection** in order for the Commonwealth to obtain the disallowance of Empresas Omajede's Claim under Section 502(b) and 502(c) of the Bankruptcy Code.[10]

52.     As such, Empresas Omajede has filed an Second Amended Complaint in the previously filed adversary proceeding (22-ap-0076) requesting a declaratory judgment that determines that the Third POC asserts a valid claim against the Commonwealth and that the Third POC is allowed in the asserted amount of

---

[10] The Commonwealth's **372nd Omnibus Objection** and **519th Omnibus Objection** also did not overcome the *prima facie* validity of the First Amended POC.

$338,503.37, so that it may participate in the corresponding distribution that may be provided by the plan that may eventually be approved in this Title III proceeding.

53.     Moreover, the reasons provided in the **Fourth Objection** to disallow most of the claim ($400,365.03) do not apply to Empresas Omajede's Claim, as detailed in and supported by the Third POC which is neither unsubstantiated nor deficient, which does not include the electricity invoices that were previously paid by the Commonwealth and because the penalty clause is not subject to invalidation by the Commonwealth in accordance with the Puerto Rico jurisprudence cited by the Commonwealth and because the Bankruptcy Court's final order ordering the Commonwealth to pay Empresas Omajede has not been appealed, set aside and is final and unappealable.

54.     First, it is incorrect that Empresas Omajede's Claim does not provide any basis or supporting documentation. Upon examination of the First Amended POC, it is plain to see that supporting documentation is provided and the same documentation was also provided with the Initial POC. *See* **Exhibit 7**, Initial POC and **Exhibit 8**, First Amended POC.

55.     Second, Empresas Omajede's Claim does comply with all of the requirements of the Bar Date Order to assert a claim against the Commonwealth because:

(i)     The Claim is in English and the supporting documentation is in Spanish, which fulfills the requirement that the claim be written in English or Spanish;

16

(ii)   The Claim states, in the lawful currency of the United States, what amount was owed by the Commonwealth as of the Commonwealth's Title III Case commencement date and sets forth;

(iii)  The Claim states with specificity the legal and factual basis for the asserted claim, which is the unpaid balance of a real estate lease;

(iv)   The Claim includes copies of all of the required supporting documentation, which is in the Spanish language;

(v)    The Claim includes an original or electronic signature of the claimant's authorized agent;

and

(vi)   the Claim was filed with a form that substantially conforms to the Proof of Claim Form approved by the Bar Date Order.

56.    Third, as Empresas Omajede's Claim supplements a timely filed claim and is based on the same substantive basis as the original timely filed claim, Empresas Omajede's Claim has been timely filed. *See* **Exhibit 7**, Initial POC and **Exhibit 8**, First Amended POC.

**B. The Final Order of the Bankruptcy Court has not been appealed.**

57.    Fourth, Empresas Omajede's right to payment has already been established by the U.S. Bankruptcy Court in a final order entered in *In re Empresas Omajede, Inc.*, 12-10113-ESL11. *See* **Exhibit 11**.

58.    A decision is considered final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" *In re Vázquez-Laboy*, 647 F.3d 367, 372 (1st Cir. 2011) (quoting *Catlin v. U.S.*, 324 U.S. 229, 233 (1945)); whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to

adjudicate the cause on the merits." *In re Harrington*, 992 F.2d 3, 6 (1st Cir. 1993) (quoting *In re American Colonial Broadcasting Co.*, 758 F.2d 794, 801 (1st Cir. 1985)).

59.     Courts have noted that "[b]ankruptcy matters, with assorted disputes -- e.g., adversary proceedings, administrative applications, and contested matters -- within the larger liquidation or reorganization case, are the object of 'special considerations' under the finality doctrine." *Id.* at 647 (collecting cases). This is so because "a bankruptcy case holds more potential for the resolution of discrete disputes that might qualify as 'judicial units' for purposes of appeal." *Id.* Yet, a bankruptcy court's order is not appealable "unless it conclusively determines 'a discrete dispute within the larger case.'" *Id.* (citing *Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington)*, 992 F.2d 3, 5 (1st Cir. 1993)); *see Rodriguez-Borges v. Lugo-Mender*, 938 F. Supp. 2d 202, 208 (Dist.PR 2013).

60.     In order to accommodate concerns unique to the nature of bankruptcy proceedings, and because bankruptcy cases typically involve numerous controversies bearing only a slight relationship to each other, finality is given a flexible interpretation in bankruptcy. *In re Northwood Properties, LLC*, 509 F.3d 15, 21 (1st Cir. 2007); *In re Harrington*, 992 F.2d at 5; *see* also *In re Empresas Noroeste, Inc.*, 806 F.2d 315, 316-17 (1st Cir. 1986) (relaxation of "finality" doctrine appropriate in bankruptcy proceedings only on sufficient showing of "special considerations bankruptcy proceedings deserve"). Accordingly, orders in bankruptcy cases may be immediately appealed if they finally dispose of all the issues pertaining to a discrete

18

dispute within the larger case. *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 n. 3 (2006) (citing *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)); *In re Northwood Properties, LLC*, 509 F.3d at 21.

61.     In light of the above, it must be concluded that the US Bankruptcy Court's order in Dkt. 390 of *In re Empresas Omajede, Inc.*, 12-10113-ESL11, is a final order because it resolves the discrete dispute regarding the CSP Lease Agreement within the larger bankruptcy case. Moreover, in that case, the Bankruptcy Court had already approved a plan of reorganization (Dkt. 366 of 12-10113). As the plan filed by Empresas Omajede dated 11/20/2015 (docket #331 of 12-10113) had been confirmed, the larger bankruptcy case was also subject to a final order confirming said plan. *See* **Exhibit 11**.

62.     With regards to the amounts that Empresas Omajede had requested that the Bankruptcy Court order the Commonwealth's Treasury Department to pay, Exhibit B to Dkt. 382 of 12-10113 (Dkt. 382-2 of 12-10113) shows that the September and October penalty clause balances were included in the sums whose payment were requested. *See* **Exhibit 12**.

63.     In response, the Bankruptcy Court order the Commonwealth's Treasury Department to show cause as to why they failed to make the rent and utility payments to the debtor, Empresas Omajede, Inc. Dkt. 383 of 12-10113. *See* **Exhibit 13**.

64.     The Commonwealth did not oppose the imposition of the obligation to pay the amounts requested in Empresas Omajede's motion, rather the Commonwealth acknowledged that the requested sums were due by stating that "The appearing party owes some other payments that are in process to be issued" and only requesting additional time to inform of the status of payments. Dkt. 385 of 12-10113. *See* **Exhibit 14**.

65.     At the time that motion to inform was filed, on November 14, 2016, the Lease Agreement had already expired more than 2 months prior, on August 31, 2016.

66.     Thereafter, on December 11, 2016, Empresas Omajede again requested an order obligating the Commonwealth to make the payments under the penalty clause, including:

> $20,666.66 September rent adjustment
> $20,666.66 October rent adjustment
> $66,666.66 November rent
> $6,594.20 November electricity
> $4,805.00 Miscellaneous expenses
> $66,666.66 December rent
> $186,065.84 Total Owed From PSC.

*See* page 2 of Dkt. 388 of 12-10113, **Exhibit 15**.

67.     On December 20, 2016, the Bankruptcy Court entered an order granting the "motion filed by [Empresas Omajede] requesting that the Puerto Rico Department of Treasury, the Puerto Rico Department of Corrections and the Public Service Commission of Puerto Rico make the rent and utility payments owed to Debtor (docket #388) is hereby granted". *See* **Exhibit 16**.

20

68.     The Commonwealth did not oppose the imposition of the obligation to pay the amounts requested in Empresas Omajede's motion, which included the September and October penalty clause balances and the penalty clause in its entirety for the months of November and December 2016. *See* **Exhibit 17**, docket report of 12-10113.

69.     In fact, the Commonwealth did not file a thing with the Bankruptcy Court, even though the Lease Agreement had been expired since August 31, 2016, 4 months prior to Empresas Omajede's motion in Dkt. 388 of 12-10113.

70.     Another 4 months passed, until April 3, 2017, when Empresas Omajede filed a motion for contempt, because the Commonwealth had ignored the Bankruptcy Court's order to make the rent payments and had PSC obtained an ex-parte *injunction* from the local court, issued on March 31, 2017, prohibiting the Debtor from disconnecting the power. *See* Dkt. 395 of 12-10113 in **Exhibit 18**.

71.     So, when the Commonwealth finally requested certification 5 months after the final order imposition of the obligation to pay the amounts requested in Empresas Omajede's motion, the Commonwealth was requesting relief from a final order that was not timely appealed.

**C. Puerto Rico Supreme Court Precedent Established a Taking.**

72.     Fifth, even if the Puerto Rico jurisprudence cited by the Commonwealth were applied to the facts of Empresas Omajede's claim, as supported by the additional

21

documentation submitted herein and in the Third POC, it is evident that Empresas Omajede does have a right to payment.

73.     For example, in *Ortiz Zayas v. Estado Libre Asociado de Puerto Rico*, 2023 TSPR 43, 2023 WL 2971467**, 2023 PR Sup. LEXIS 48* (April 5, 2023), the Puerto Rico Supreme Court determined that a lessor does have a right to payment when the Commonwealth has undertaken steps that amount to a seizure of property[11] through a physical possession of the property, *Ortiz Zayas v ELA*, 2023 TSPR 43, at page **7, 2023 PR Sup. LEXIS 48 at pg. *, because they have prevented the lessor from recuperating the possession of the property in violation of: (i) the Puerto Rico Constitution that states that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law", L.P.R.A. Const. Art. II, § 9; (ii) the Fifth Amendment of the US Constitution that states that "[n]o person shall [...] be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation", USCS Const. Amend. 5, and (iii) the Fourteenth Amendment of the US Constitution that establishes that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws", USCS Const. Amend. 14.

---

[11]   The Puerto Rico Supreme Court also cited *Aut. Carreteras v. 8554.741 M/C II*, 172 DPR 1050, 1060 (2008); *Velázquez Velázquez v. E.L.A.*, 135 DPR 84, 88 (1994); *Culebra Enterprises Corp. v. E.L.A.*, supra, pgs. 952-953 to establish the three situations in which a *de facto* seizure can be established.

74.    To that effect, in *Ortiz Zayas v ELA*, 2023 TSPR 43, the Puerto Rico

Supreme Court adopted the federal doctrine that:

> [w]hen the government physically takes possession of an interest in
> property for some public purpose, it has a categorical duty to compensate
> the former owner, regardless of whether the interest that is taken
> constitutes an entire parcel or merely a part thereof. Thus,
> compensation is mandated [...] even though that use is temporary.

*Ortiz Zayas v ELA*, 2023 TSPR 43, at page **7, 2023 PR Sup. LEXIS 48 at pg. * (citing
*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 US
302, 322 (2002)); *see*, also, *Lucas v. South Carolina Coastal Council*, 505 US 1003,
1015 (1992).

75.    The Puerto Rico Supreme Court concluded that "[t]he historical rule

that a permanent physical occupation of another's property is a taking has more than

tradition to commend it" because "[s]uch an appropriation is perhaps the most serious

form of invasion of an owner's property interests." *Ortiz Zayas v ELA*, 2023 TSPR 43,

at page **7, 2023 PR Sup. LEXIS 48 at pg. * (citing *Loretto v. Teleprompter

Manhattan CATV Corp.*, 458 US 419, 435 (1982)); *see*, also, *Horne v. Department of

Agriculture*, 576 US 350, 360 (2015).

76.    In *Ortiz Zayas v ELA*, *supra*, the Puerto Rico Supreme Court established

that a taking has occur when: (1) the government – in effect -- occupied the property

in dispute for a period of time; (2) that such occupation was for a public purpose; (3)

that it occurred after the expiration of a certain lease, and (4) that, despite the

requirements of the lessors for the government to return the property, the

government ignored the lessors request and continued to occupy it. *Ortiz Zayas v

ELA*, 2023 TSPR 43 at page **17, 2023 PR Sup. LEXIS 48 at pg. *32-33.

23

77.     In this case, during the time that the CSP was occupying the premises, Empresas Omajede was in bankruptcy and repeatedly requested and obtained relief from the Bankruptcy Court against the Commonwealth, as the Bankruptcy Court repeatedly ordered the Commonwealth to make the payments to Empresas Omajede in conformity with the terms of the Lease Agreement that supports the Initial POC, First Amended POC and Third POC.

78.     At first, as the Bankruptcy ordered the Commonwealth to make the payments and the Commonwealth was making payments, Empresas Omajede did not request eviction.

79.     However, as the Commonwealth continued to delay payments, in spite of the Bankruptcy Court's order to make the payments, Empresas Omajede notified the CSP by letter that, if payment was not made, electricity and water services would be cut-off.

80.     In response to said letter, CSP requested and obtained from a Puerto Rico Court of First Instance, an *injunction* preventing Empresas Omajede from cutting electricity and water services.

81.     Therefore, until said *injunction* was terminated, Empresas Omajede was prevented, by the Commonwealth's actions from evicting CSP.

82.     In addition, after the termination of the *injunction*, Empresas Omajede filed an eviction lawsuit.

83.     Moreover, as the documents demonstrate: (1) that the Commonwealth, through the CSP, – in effect – occupied Empresas Omajede's property (the La Electronica building's basement floor) for a period of 10 months after the expiration of the Lease Agreement; (2) that such occupation was for a public purpose as the CSP stored important information necessary for the safety of Commonwealth operations; (3) that the CSP's 10-month occupation of the La Electronica building's basement floor occurred after the expiration of the Lease Agreement, and (4) that, despite the requirements of Empresas Omajede for the CSP to return the property, the CSP ignored Empresas Omajede's request and continued to occupy it against Empresas Omajede's requests and going so far as to obtain an *injunction* against Empresas Omajede.

84.     Hence, Empresas Omajede's Claim, as asserted in the Third POC, fits the requirements outlined in *Ortiz Zayas v ELA*, 2023 TSPR 43 at page *17, that constitutes a taking and that requires the Commonwealth to compensate Empresas Omajede for the 10-month occupation of a large part of the La Electronica building's premises after the expiration of the Lease Agreement.

**D. Validity of Penalty Clause**

85.     Moreover, Empresas Omajede's Claim, as asserted in the Third POC, does not fit narrow facts where the Puerto Rico Court of Appeals invalidated a penalty clause in the case cited by the Commonwealth in the **Fourth Objection**.

25

86.     To that effect, it should be noted that the Puerto Rico Court of Appeals did not specify why it did not consider the clause at issue in that case to be a penalty clause, but from the cited decision, it is evident that the clause there established the same amount for monthly rent as the expired contract (which might be the reason that it was considered to not be a penalty clause). Said situation is not similar to the situation in this case, in which the penalty clause that the Commonwealth seeks to invalidate did set a penalty because it set a penalty rate that is higher that the monthly rent of the expired contract. Therefore, there is no valid reason upon which the Commonwealth can request the invalidation of the penalty clause in the Lease Agreement that substantiates Empresas Omajede's claim.

**E. Certification to the Puerto Rico Supreme Court**

87.     In the **Fourth Objection**, the Commonwealth argues that the Lease Agreement does not state the amount of time that the penalty clause shall apply and therefore, that this Court should persuasively apply . To that effect, we must point out that, as shown with the supplemental documentation, the Commonwealth previously had requested of the Bankruptcy Court to certify the question to the Puerto Rico Supreme Court because there was not on point precedent as to the question of the time requirement.

88.     Therefore, if this Court were to determine that the Commonwealth could request relief from the Bankruptcy Court's final order ordering the Commonwealth to make the payments to Empresas Omajede, then the issue as to the supposed

26

requirement for a time limit for the penalty clause would need to be certified to the Puerto Rico Supreme Court by the Bankruptcy Court, in *In re Empresas Omajede, Inc.*, 12-20113-ESL, in considering a motion for relief from its final order.

### F. Administrative Expense Claim

89.     The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving" the Debtor may be allowed as administrative expenses. 11 U.S.C. § 503(b)(1)(A).

90.     For the small period of time between the filing of the Title III petition and the date on which the keys were returned to Empresas Omajede, the payment of the penal clause of the Lease Agreement was the actual, necessary cost and expense of preserving the CSP's records. As the CSP is an agency of the Commonwealth, the costs and expenses of preserving CSP's records are the costs and expenses of preserving the Debtor's records.

91.     CSP's arguments to the Puerto Rico Court of First Instance as to the essential nature of conserving said records demonstrates that it was necessary cost and expense. To now argue otherwise would be disingenuous or an admission that the Commonwealth was not forthcoming with the Puerto Rico Court of First Instance when the injunction was obtained to prevent Empresas Omajede from cutting off the electricity and water service.

92.    Rather, the Commonwealth submitted an unverified letter from CSP to Empresas Omajede (dated June 13, 2017) as evidence that CSP had vacated the Property "several months ago".

93.    However, when CSP actually abandoned the leased premises and/or returned possession of the leased premises is a fact determination to be made by the Court that cannot be sustained with an unverified document. This is one of the reasons that Empresas Omajedes has insisted that it is necessary to have an unabridged and complete discovery process, so that it can gather the evidence needed to dispute such unfounded allegations.[12] Moreover, the Commonwealth has not presented evidence that the possession of the property (including the keys to the leased premises) was returned to Empresas Omajede before June 13, 2017, so the cost and expense was actually incurred by the CSP, and, therefore, incurred by the Debtor (here the Commonwealth).

## IV. Conclusion

94.    As a result of the **Fourth Objection**, Empresas Omajede has submitted all of the supplementary documentation that establishes that Empresas Omajede has a right to payment not just from the Lease Agreement, but also from the final order entered by the Bankruptcy Court, from which the Commonwealth never sought relief. In addition, with the Third POC attached to this response, Empresas Omajede has

---

[12]  Empresas Omajedes' records show that it filed an eviction proceeding against the CSP at a later date, which evidences that the June 13, 2017 letter's statement was misleading or false.

28

submitted the additional documentation that establishes that the Commonwealth's post-expiration occupation of the leased premises, notwithstanding all of Empresas Omajede's efforts to obtain payment and/or recuperate possession, is also a taking in accordance with *Ortiz Zayas v ELA*, 2023 PR Sup. LEXIS 48 at pg. *32-33.

95.   In addition, Empresas Omajede had previously filed an adversary proceeding 22-ap-00076 requesting a declaratory judgment that determines that Empresas Omajede's Claim (as set forth in the Initial POC and as amended by the First Amended POC) were filed pursuant to Section 501 and, as such, Empresas Omajede's Claim therein asserted is deemed allowed under Section 502(a) and that determines that the *prima facie* validity of Empresas Omajede's Claim has not been overcome by the Commonwealth in order for the Commonwealth to obtain the disallowance of Empresas Omajede's Claim under Section 502(b) and 502(c) of the Bankruptcy Code. In Empresas Omajede's First Response to a previous objection (the **519th Omnibus Objection**), it had requested that the validity and allowance of the First Amended POC be resolved through the adversary instead of through the objection procedure. The complaint in the adversary proceeding will now be amended to address the Commonwealth's request (in the **Fourth Objection)** that the penalty clause be invalidated and, therefore, the amended complaint will now request that Empresas Omajede's Claim, as now set forth in the Third POC, should be allowed in the asserted amount of $328,804.94 pursuant to 11 U.S.C. § 502(b)&(c), as the Commonwealth had not met its burden to overcome the *prima facie* validity of the

proof of claim and, as an allowed claim, may participate in the corresponding distribution that may be provided by the plan that may eventually be approved in this Title III proceeding and that Empresas Omajede's Administrative Expense Motion (Dkt. 23272) should also be allowed because it demonstrates actual necessary costs and expenses that were necessary to preserve the records of the CSP and, therefore, of the Debtor, the Commonwealth.

96.     As set forth in Empresas Omajede's Motion for Stay, the objection procedure arising from the **Fourth Objection** should be stayed so that the validity and allowance of the First Amended POC (as amended by the Third POC) can be determined in the adversary proceeding 22-ap-00076.

97.     Moreover, as set forth in this response, the **Fourth Objection** does not meet the requirements to obtain the disallowance of the First Amended POC, as the Commonwealth has not met its burden to overcome the *prima facie* validity of Empresas Omajede's Claim as asserted in the First Amended POC, as amended by the Third POC.

98.     First, it is incorrect that Empresas Omajede's Claim does not provide any basis for the Commonwealth's liability for rent charged after the expiration of the Lease Agreement because, as demonstrated by the Third POC, first, because all the documentation necessary to demonstrate that the Commonwealth does *not* have the right to invalidate the penalty clause or the Bankruptcy Court's final order has been supplied with the Third POC; Second, as demonstrated by the Third POC,

Empresas Omajede's Claim complies with all of the requirements of the Bar Date Order to assert a claim against the Commonwealth; and Third, as the Third POC supplements a timely filed proof of claim and is based on the same substantive basis as Empresas Omajede's timely filed Original POC, Empresas Omajede's Claim has been timely filed.

99.     Hence, the **Fourth Objection** does not meet the required threshold to refute the validity of Empresas Omajede's Claim which is a timely filed amended claim that complies with all of the requirements of Section 501 of the Bankruptcy Code and the Bar Date Order to assert a claim against the Commonwealth in the English[13] language on the Proof of Claim Form approved by the Bar Date Order and that includes all of the required supporting documentation as attachments to the Proof of Claim Form and with certified translations of those documents in the Spanish language. Moreover, all of the jurisprudence cited by the Commonwealth to try to invalidate the penal clause of the Lease Agreement in insufficient and inapposite, because the facts of Empresas Omajede's claim do not fit those of the situations in which Puerto Rico Courts have invalidated similar clauses and because the Commonwealth's post-expiration occupation of the leased premises is also a taking, in accordance with *Ortiz Zayas v ELA*, 2023 PR Sup. LEXIS 48 at pg. *32-33. In addition, as Empresas Omajede's right to payment also arises from a final order

---

[13]   Leave to file Spanish language documents has been requested (Dkt. 24818) and all certified translations shall be filed forthwith.

entered by the Bankruptcy Court in *In re Empresas Omajede, Inc.*, 12-10113 (ESL),
the Commonwealth cannot use the claims objection procedure to invalidate the final
order that was not timely appealed by the Commonwealth and from which the
Commonwealth has not sought relief. Therefore, the **Fourth Objection** should be
denied with respect to Empresas Omajede's Claim, as the Commonwealth has not
met its burden to overcome the *prima facie* validity of the Amended POC. In light of
the above, the **Fourth Objection** should be denied with respect to Empresas
Omajede's Claim and/or the **Fourth Objection** should be stayed with respect to the
First Amended POC (as amended by the Third POC), as set forth in Empresas
Omajede's Stay Motion, until the adjudication of adversary proceeding 22-ap-00076-
LTS in accordance with Fed. R. Bankr. P. 3007(b).

## V. Prayer for Relief

Wherefore, Empresas Omajede respectfully requests that the Court: (i) deny
the **Fourth Objection** with respect to Empresas Omajede's Claim, as set forth in
the First Amended POC (Claim #70324) and as amended by the Third POC, and with
respect to the Administrative Expense Motion (Dkt. 23272); or (ii) stay the
adjudication of the **Fourth Objection** with respect to the First Amended POC
(Claim #70324) and the Administrative Expense Motion (Dkt. 23272), until the
adjudication of adversary proceeding 22-ap-00076-LTS in accordance with Fed. R.
Bankr. P. 3007(b) (as set forth in Empresas Omajede's Stay Motion); and (iii) grant

Empresas Omajede any other relief that it deems just and proper or that may be granted under Puerto Rico law or in equity.

CERTIFICATION OF SERVICE: IT IS HEREBY CERTIFIED that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true and exact copy of this paper to all registered participants, including Ricardo Burgos Vargas and Martin J. Bienenstock, the attorneys for the the Financial Oversight and Management Board for Puerto Rico as representative for the Commonwealth of Puerto Rico, that filed the **Fourth Objection**.

RESPECTFULLY SUBMITTED.

In San Juan, PR, this 31st day of July, 2023.

DML |Diaz Mayoral Law
*Attorney for Empresas Omajede Inc.*

*s/ Monique Diaz Mayoral*
USDC-PR No. 225712
151 San Francisco Street
San Juan, PR 00901
(754)755-5508
m@diazmayorallaw.com

33