# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :

                                                    :

EMPRESAS OMAJEDE, INC.,                             :          Case No. 12-10113 (ESL)

                                                    :

    Debtor                     :          Chapter 11

_____            :

## <u>URGENT MOTION FOR CONTEMPT</u>

**TO THE HONORABLE COURT:**

**COMES NOW** Empresas Omajede, Inc. (the "Debtor"), represented by the undersigned attorney, respectfully requesting that the Court enter an order holding the Designated President of the Public Service Commission of Puerto Rico ("PSC"), Lcdo. Luis D. Garcia Fraga ("Garcia"), in contempt for failure to submit rent invoices to the Puerto Rico Department of Treasury ("Treasury") for payment. In support of this motion, the Debtor respectfully states as follows:

1. On October 24, 2016, the Debtor filed a Second Urgent Motion seeking an Order to Show Cause directed to Treasury and the PSC for nonpayment of rent (Docket No. 382). At that time, the PSC was in arrears in the amount of $179,383.52.

2. Moreover, as of September 1, 2016, PSC became a holdover tenant upon the expiration of its five- year lease on August 31, 2016.

3. When the last lease was signed on March 9, 2011, the parties negotiated and contracted that in the event that a new lease was not signed prior to the expiration of that lease, the rent would increase by $20,666.66 per month beginning on August 1, 2016. See **Exhibit A**.

4. The Court issued an Order to Show Cause on October 24, 2016 (Docket No. 383).

5. On November 14, 2016, Treasury filed a Motion to Inform (Docket No. 385), wherein

it stated that two payments had been made and that others were being processed. Treasury requested an additional fourteen days to inform the status of pending payments.

6. On November 18, 2016, the Court granted Treasury's request for an extension of time (Docket No. 386), with a response being due on November 28, 2016.

7. Treasury failed to comply with the order of the Court.

8. Thereafter on December 11, 2016, the Debtor requested an order requiring Treasury and PSC to pay the outstanding rent and electricity payments owed to Debtor (Docket No. 388), which the Court granted on December 20, 2016 (Docket No. 390)

9. While additional payments have been received from Treasury on behalf of PSC, the present arrears are $268,115.30. Such arrears seriously jeopardize the Debtor's confirmed Plan of Reorganization.

10. In certifications from PSC to Treasury of the amounts to pay the Debtor, Garcia has never included the $20,666.66 per month rent increase and, upon information and belief, Treasury only pays debts that are certified by the agencies.

11. The undersigned communicated with the legal representative of Treasury and PSC in this bankruptcy proceeding, Attorney Migda Rodriguez Collazo, by E-mail on February 24, 2017 and March 1, 2017, regarding the necessity of paying the $20,666.66 increase, as well as the other outstanding rent and electricity, and no response has been received. Likewise, telephone calls went unanswered.

12. The Debtor notified PSC by letter of March 21, 2017, of its intention to cut the electricity to the agency on April 3, 2017, for nonpayment of rent.

13. On March 31, 2017, PSC obtained an ex-parte injunction from the local court, prohibiting the Debtor from disconnecting the power. See **Exhibit B**. PSC failed to inform the

local court of its significant rental arrears and in fact falsely denied the arrears. See **Exhibit C**.
A hearing has been scheduled in the local court for April 11, 2017.

14. It appears that PSC is moving out of the building and thus that the Debtor is losing
any leverage that it had to get paid the arrears through cutting the power. The local court has
issued its injunction allowing PSC to continue using the premises without payment of rent and
electricity.

15. Based upon the significant arrears, Garcia's failure to certify the contracted debt to
Treasury and Treasury's failure to pay such debt, the Debtor requests that the Designated
President be held in contempt of this Court's Order to make payment and that he either certify
the proper amount of the debt or that Treasury be ordered to pay the increased monthly amount
without such certification.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order holding
the Designated President of the Public Service Commission of Puerto Rico, Lcdo. Luis D.
Garcia Fraga, in Contempt for failure to certify and/or pay the outstanding rent and electricity
payments owed to the Debtor, in the present amount of $268,115.30 and/or that the Puerto Rico
Department of Treasury be ordered to make such payment to the Debtor without the need for
such certification.

**Respectfully submitted**,

In San Juan, Puerto Rico this 3rd day of April, 2017.

> **G.A. Carlo-Altieri & Associates**
> 254 San Jose St., Third Floor,
> San Juan, Puerto Rico 00901
> Phone: (787) 247-6680
> Fax: (787) 919-0527
>
> /s/ Kendra Loomis
> Kendra Loomis
> USDC PR No. 227408
> E-mail: loomislegal@gmail.com
> Mobile: (787) 370-0255

**CERTIFICATE OF SERVICE:** It is hereby certified that on this same date, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Office of the United States Trustee and to all CM/ECF participants in this case, including Attorney Migda L. Rodriguez Collazo, who has appeared on behalf of the Puerto Rico Department of Justice, the Puerto Rico Department of Treasury and the Public Service Commission in this case. It is further certified that the Debtor will send E-mail notification of the filing to the local court counsel for PSC, cabella@justicia.pr.gov and slugo@justicia.pr.gov and hand deliver a copy of this motion to the Public Service Commission.

## <u>CERTIFICATION</u>

The Debtor has: a) carefully examined the matter and concluded that there is a true need for an urgent hearing; b) has not created the urgency through any lack of due diligence; and c) has made a bona fide effort to resolve the matter without a hearing.

> **Empresas Omajede, Inc.**
>
> /s/ Antonio Betancourt Capó
> Antonio Betancourt Capó
> President

4

## <u>VERIFICATION</u>

I, Antonio Betancourt Capó, President of the Debtor, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that the allegations contained in this Urgent Motion are true and correct to the best of my knowledge and belief.

Executed in San Juan, Puerto Rico, this 3rd day of April, 2017.

**Empresas Omajede, Inc.**

/s/ Antonio Betancourt Capó
Antonio Betancourt Capó
President

**2011-000009**
Núm. Departamento

P.O. BOX 190870, SAN JUAN, PR 00919-0870
Dirección

Núm. de radicación de la
Oficina del Contralor

## CONTRATO DE ARRENDAMIENTO DE LOCALES
## POR CINCO AÑOS HASTA TREINTA AÑOS

**El ESTADO LIBRE ASOCIADO DE PUERTO RICO**, representado por José H Banuchi-Hernández como presidente de la CSP quien en adelante se denominará el arrendatario; y Empresas Omajede, Inc., representado por su Presidente el Lic. Antonio Betancourt Capó, T/c/c Jesús Antonio Betancourt Capó, quien en adelante se denominará el arrendador, convienen de mutuo acuerdo en lo siguiente:

1. Que el arrendador certifica y garantiza que previo a la formalización de este contrato ha entregado las siguientes certificaciones: √ Certificación Registral de la propiedad incluyendo cargas y gravámenes √ Certificación de deuda expedida por el Departamento de Hacienda. No se posee Certificación Negativa de Propiedad Inmueble del Centro de Recaudación de Ingreso Municipal.

2. Que el arrendatario certifica que previo a la formalización de este contrato cuenta con un Informe de Valoración firmado por un tasador y aprobado por un tasador revisor.

3. Que el arrendador y el arrendatario certifican que los documentos antes mencionados no tienen más de seis meses de expedidos a la fecha de otorgarse el presente contrato. Exceptuando la Certificación Registral, con fecha del 22 de febrero de 2010. El Arrendador certifica que no ha habido cambio en la realidad registral del bien desde entonces y hará llegar una actualizada antes de entrar en vigor el presente contrato.

4. Que el arrendador cede en calidad de arrendamiento al arrendatario la propiedad que se describe más adelante:

    a. Construcción  Local Comercial sito en el bien inmueble ubicado en la Carretera #1, Calle Bori, Núm. 1608, San Juan, PR,  Primer Piso del Edificio Conocido como La Electrónica

    b. Área:  (1) Del solar_____ Metros Cuadrados.
            (2) Del Local_____32,000.00_____ Pies Cuadrados.
            (3) Del Estacionamiento_____125_Estacionamientos_____ Pies Cuadrados.

    c. Localización y Certificación Registral del inmueble (incluyendo cargas y gravámenes) Terreno en el Barrio Monacillos, del termino municipal de San Juan, Puerto Rico, compuesto de tres punto doscientos ochenta y siete (3.287) cuerdas, equivalentes a una hectárea, veintinueve áreas y diecinueve centiáreas. En linderos: Norte, con Rafael Nevares; Sur, con Antonio Cosme; Este, nueva Carretera Estatal número 1, de concreto que va de Río Piedras a Caguas; Oeste, con una quebrada que la separa de terrenos de Antonio Emmanuelli, hoy el Pueblo de Puerto Rico, Enclava una edificación de concreto para fines comerciales y de oficinas.  Finca 11660, Tomo 301, Folio 204, mejor conocida como La Electrónica. Se incluye Certificación Registral. Esta gravada en Hipoteca.

5. Que la propiedad será usada por el arrendatario como Oficinas de la Comisión de Servicio Público

6. Este contrato entrará en vigor 30 días después de que el Arrendatario advenga en posesión del inmueble y se extenderá por un periodo de 60 meses. El Arrendador entregará el inmueble objeto de este contrato en o antes del 30 de junio de 2011, lo cual se certificará y se hará formar parte de este contrato.  Se anejan aprobaciones de OGP, Fortaleza y JEREF.  El arrendador podrá en cualquier momento resolver el contrato siempre que notifique por escrito su intención al arrendador con treinta días de antelación a la fecha deseada.

7. Que el Arrendador se compromete de interesar vender el inmueble a ofrecer la primera opción de compra al Arrendatario. Donde el arrendatario podrá adquirir el derecho de propiedad sobre la edificación durante la vigencia de este contrato, sujeto a los términos y condiciones que se acuerden en el Modelo SC 854.2, Contrato de Arrendamiento de Locales (Hoja de Continuación) el cual formará parte integrante de este contrato.

8. Que el arrendador posee la propiedad descrita en calidad de Corporación dueña, la cual es propiedad de Empresas Omajede Inc., y fue construida y/o inaugurado en Diciembre de 1972.

9. Que el canon de arrendamiento fijado por las partes contratantes es de Cuarenta y Seis Mil Dólares ($46,000.00) mensuales, equivalente a $17.25 costo por pie cuadrado, pagaderos de la siguiente forma:
El pago se hará mediante dos cheques o giros, uno por la cantidad de Quince Mil Setecientos Noventa con Cuarenta y Nueve Centavos ($15,790.49), a nombre del Banco de Desarrollo Económico y un segundo cheque o giro por la cantidad de Treinta Mil Doscientos Nueve con Cincuenta y Cinco Centavos ($30,209.55) a nombre del Arrendador. Ambos cheques se enviarán a: Empresas Omajede, Inc., La Electrónica Building, Suite 218, 1608 Bori Street, San Juan, PR 00927.

10. Que el arrendador queda obligado en todo tiempo a efectuar los arreglos y reparaciones necesarias para conservar el inmueble en condiciones utilizables, y mantener en funcionamiento, todos sus servicios, equipo y accesorios dentro de las normas de seguridad establecidas o que se establezcan.

11. Se hace constar que ningún funcionario o empleado de la Rama Ejecutiva, ningún funcionario o empleado de la Comisión de Servicio Público tiene directa o indirectamente interés pecuniario en este contrato.

12. Descripción de los servicios, equipo y accesorios incluidos en el contrato por cuenta del arrendador:
      Estacionamiento- Núm. espacios 125  Agua SI  Aire Acondicionado SI  Instalación Eléctrica SI
      Vigilancia NO  Luz NO  Limpieza NO  Facilidades Telefónicas NO  Ascensor NO  Otros: Mejoras estructurales

13. Que el pago de las pólizas para cubrir los riesgos tales como: incendios, huracanes, terremotos, inundaciones o cualquier otro acto de la naturaleza, responsabilidad pública y cualesquiera otra necesaria, será por cuenta del ARRENDADOR

    Compañía aseguradora Triple-S Núm. de Póliza: CP-81041090
    _____ Núm. _____
    _____ Núm. _____

Case 17-03283-LTS Doc 24831-18 Filed 04/03/23 Entered 04/03/23 15:46:28 Desc: Exhibit Exhibit A395 of 12-10 Page 2 of 24

Page 7 of 24

Modelo SC 854.2 (Hoja de Cont.)    Estado Libre Asociado de Puerto Rico

16 mar 05
CC 1300-16-05                                    Página Núm. 3 de 14

Comisión de Servicio Público
Agencia
P.O. BOX 190870, SAN JUAN, PR 00919-0870
Dirección

**2011-000009**
Núm. de Contrato
De la agencia

CONTRATO DE ARRENDAMIENTO DE LOCALES
(HOJA DE CONTINUACION)

Núm. de Contrato de la
Oficina del Contralor

√ Hasta Cinco Años o Menos o        Hasta 10 Años en el Exterior            Hasta 30 Años

OTRAS ESTIPULACIONES:

-----DE LA PRIMERA PARTE: Empresas Omajede, Inc., corporación propietaria, representada en este act
por el licenciado Antonio Betancourt Capó, t/c/c Jesús Antonio Betancourt Capó, mayor de edad, soltero
vecino de Guaynabo, Puerto Rico, en carácter de Presidente de la corporación, con número de Seguro Socia
Patronal 66-0369044 y con oficinas en San Juan, Puerto Rico, en adelante denominado **EL ARRENDADOR**.-
-----DE LA SEGUNDA PARTE: La Comisión de Servicio Público de Puerto Rico, con Seguro Social Patrona
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, representada en este acto por la licenciada José H. Banuchi-Hernández, mayor de edad, solter
y vecino de San Juan, Puerto Rico, en su carácter de Presidente, en adelante denominada E
**ARRENDATARIO.** -------------------------------------------------------------------------------------------------------

**EXPONEN**

**PRIMERO:** Las partes comparecientes han acordado otorgar un contrato de arrendamiento de un loca
comercial sito en el bien inmueble ubicado en la Carretera # 1, Calle Bori Núm. 1608, San Juan, Puerto Rico
El local objeto de arrendamiento está en la primera planta del edificio y tiene una cabida de aproximadament
treinta y dos mil (32,000) pies cuadrados. El espacio arrendado también incluye ciento veinticinco (125
estacionamientos reservados para uso exclusivo del ARRENDATARIO.

**SEGUNDO:** El término de vigencia del presente contrato es de cinco (5) años, sujeta su vigencia
obligatoriedad a la aprobación de las agencias gubernamentales que la intervienen y aprueban. Este contra
entrará en vigor 30 días después de que el ARRENDATARIO advenga en posesión del inmueble y s
extenderá por un periodo de 60 meses. El ARRENDADOR entregará el inmueble objeto de este contrato, e
o antes del 30 de junio de 2011, una vez termine con las renovaciones y/o mejoras al mismo. Esta prome
de entrega, es solo eso, una promesa y de no cumplirse no invalida el presente contrato ni es justa caus
para su rescisión. Pasados 6 meses de la firma del presente contrato y no haberse dado la entrega d
inmueble por parte del ARRENDADOR, entonces está tardanza será causa suficiente para rescindir
contrato. Este contrato de arrendamiento no tiene cláusula de renovación, ni está sujeto a novación. La
partes renuncian a cualquier derecho explícito o por operación de ley a cualquier novación de est
arrendamiento. Un año antes de la expiración del término inicial o del término extendido, según sea el cas
del contrato de arrendamiento entre las partes, el ARRENDADOR le enviará al ARRENDATARIO una nuev
propuesta de arrendamiento por correo certificado. El ARRENDATARIO tendrá un término de ciento veint
(120) días para notificarle por escrito al ARRENDADOR su interés de permanecer en la propiedad por cinc
(5) años adicionales o de desalojar la propiedad una vez terminado el contrato de arrendamiento. Si a s
vencimiento ninguna de las partes ha expresado su intención de rescindir el contrato, se procederá con lo
trámites de otro nuevo contrato de arrendamiento, estableciéndose que la vigencia del contrato será mes po
mes con un canon de arrendamiento de veinticinco (25) dólares por pie cuadrado hasta que se otorgue
nuevo contrato o se proceda con la mudanza.------------------------------------------------------------------------------

Las partes contratantes acordamos que este documento formará parte integrante del Contrato original que
se suscribe en San Juan, PR, hoy 9 de marzo de 2011.

José H. Banuchi Hernández
**Comisión de Servicio Publico**

Antonio Betancourt Capó
**Empresas Omajede, Inc.**

Case 1:23-cv-00384-FB-SJB Document 24-3 Filed 04/03/23 Entered 04/03/23 21:46:29 Desc: Exhibit Exhibit B - Injunction Page 8 of 24

EXHIBIT B - INJUNCTION

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

**ESTADO LIBRE ASOCIADO DE PUERTO RICO, por sí en representación de la COMISIÓN DE SERVICIO PÚBLICO,**
Parte Demandante;

V.

**EMPRESAS OMAJADE, INC., ANTONIO BETANCOURT CAPO,**
Parte Demandada.

CIVIL NÚM. **SJ2017CV00121**

SALA: **(904)**

SOBRE: **ENTREDICHO PROVISIONAL, *INJUNCTION* PROVISIONAL Y PERMANENTE.**



**ORDEN
DE ENTREDICHO PROVISIONAL**

En la demanda jurada de epígrafe se alega que el 30 de marzo de 2017, la parte demandada de epígrafe, Empresas Omajade, Inc. (Omajade) le informó a la demandante Comisión de Servicio Público (CSP) que debido a que no se pagó un mes (1) por el arrendamiento, procedería a desconectar el servicio de energía eléctrica el lunes 3 de abril de 2017. A esos efectos, la CSP afirma que de no emitirse un entredicho provisional prohibiendo la suspensión del servicio de energía eléctrica, se pondría en riesgo irreversible el equipo y data que maneja la CSP y se paralizaría el servicio de la agencia a nivel de todo el País, pues esta quedaría inoperante. Además, manifestó que si se permitiera la interrupción del servicio de energía eléctrica en sus instalaciones, los "computers servers" de la agencia no operarían. Por lo cual, peticionó que emitamos un entredicho provisional prohibiendo la suspensión del servicio mientras se evalúa judicialmente la procedencia de los pagos requeridos por la parte demandada.

La Regla 57.3 de Procedimiento Civil, 32 LPRA AP. V R.57.3, prescribe los criterios que el tribunal debe considerar al expedir una orden de entredicho provisional. Los mismos son, entre otros, los siguientes:

    a) la naturaleza del daño a que está expuesto la parte peticionaria;

    b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;

SJ2017CV00121                                                                                2

    c)  la probabilidad de que la parte promovente prevalezca;

    d)  la probabilidad de que la causa se torne en académica;

    e)  el impacto sobre el interés público del remedio que se solicita, y

    f)  la diligencia y la buena fe con que ha obrado la parte peticionaria.

A tenor con lo anterior el Tribunal, acorde con lo dispuesto en la Regla 57.1 de Procedimiento Civil de Puerto Rico, *supra* R. 57.1 declara con lugar la solicitud de entredicho provisional.

En este caso entendemos que permitir la interrupción del servicio de energía eléctrica, en donde se encuentran ubicadas las oficinas y el equipo de la CSP, le ocasionaría un daño irreparable al equipo, a la data y a los servicios que ofrece esta agencia. Ello no impide que se diluciden posteriormente los méritos del reclamo en una vista de interdicto. En su consecuencia, **se le ordena a la parte demandada o a cualquier persona natural o jurídica representante de esta, so pena de desacato, no interrumpir de forma alguna los servicios de energía eléctrica, ni cualquier otro servicio esencial para el funcionamiento de las facilidades en donde ubican las oficinas de la CSP, hasta tanto este tribunal resuelva finalmente el interdicto presentado.**

La presente orden de entredicho provisional expedida hoy **31 de marzo de 2017 a las 5:29 de la tarde**, será archivada y registrada inmediatamente en la Secretaría de este Tribunal. **La misma expirará en diez días** a menos que este plazo sea prolongado por justa causa.

Asimismo, se le ordena a los demandados a comparecer a este Tribunal el **11 de abril de 2017 a las 9:00 a.m.,** al Salón de Sesiones 904, fecha en que se celebrará la vista de *injunction* preliminar. La parte demandante notificará a la parte demandada con copia de esta orden, de la demanda y su emplazamiento a tenor con lo dispuesto en la Regla 57.1 (a) de Procedimiento Civil a más tardar el 5 de abril de 2017.

Se exime a la demandante de prestar la fianza correspondiente.

Cualquier persona que viole lo aquí dispuesto será encontrado (a) incurso (a) en desacato, con pena de multa y/o cárcel o ambas penas a discreción del Tribunal.

Advertimos a la parte demandada que el caso deberá tramitarse a través del sistema electrónico SUMAC. Por lo cual deberá cumplirse con lo ordenado en la

Case 1:22-cv-01338-FB-SJL Document 24-5 Filed 04/03/23 Entered 04/03/23 15:46:29 Desc: Exhibit Exhibit B 395 join06 110 Page Page 10 of 24

SJ2017CV00121                                                                    3

**Orden Administrativa Núm. OA-JP2013-173**, emitida por el Juez Presidente del Tribunal Supremo de Puerto Rico, Hon. Federico Hernández Denton, que entró en vigor el 28 de enero de 2014, así como con las directrices administrativas aprobadas en virtud de dicha orden. La tramitación del caso se hará de forma electrónica a tenor con lo expuesto precedentemente.

    **NOTIFÍQUESE.**

    En San Juan, Puerto Rico, a 31 de marzo de 2017.

**f/ ANTHONY CUEVAS RAMOS**
**JUEZ SUPERIOR**

SJ2017CV00121

4

## DILIGENCIAMIENTO

Yo,_____,

mayor de edad, _____, empleado(a) y vecino(a)

de_____, Puerto Rico, bajo juramento

**DECLARO**:

Que mi nombre y circunstancias personales son las antes dichas,

sé leer y escribir y no soy abogado(a) en este asunto, ni parte en el

pleito, ni pariente de éstos, y no tengo interés en este pleito.

Que recibí la Orden al dorso el _____ de

_____ de 2017 notificándola personalmente

a_____

_____ el _____ de _____ de 2017 a las

_____ a.m. / p.m. en _____, Puerto

Rico.

_____
**DILIGENCIANTE**

Jurado y suscrito ante mí, por

_____

_____de

las circunstancias personales antes mencionadas, a quien

doy fe_____

_____.

En _____, Puerto

Rico, a _____ de _____ de 2017.

_____
**SECRETARIA**

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 1 de 13

EXHIBIT C - COMPLAINT

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR

| ESTADO LIBRE ASOCIADO DE PUERTO RICO, por sí y en representación de la COMISIÓN DEL SERVICIO PÚBLICO | CIVIL NÚM.: |
|---|---|
| Demandante | SALA: |
| VS. | |
| EMPRESAS OMAJEDE, INC., ANTONIO BETANCOURT CAPO | SOBRE: INJUNCTION PRELIMINAR Y PERMANENTE; SENTENCIA DECLARATORIA |
| Demandados | |

PETICIÓN DE INJUNCTION PRELIMINAR Y PERMANENTE Y
SENTENCIA DECLARATORIA

**AL HONORABLE TRIBUNAL:**

**COMPARECE** ante este Tribunal, el Estado Libre Asociado de Puerto Rico (en adelante, ELA), por sí y en representación de su agencia la Comisión del Servicio Público (en adelante, CSP), por conducto de la representación legal que suscribe y muy respetuosamente **EXPONE, ALEGA Y SOLICITA:**

I. **Introducción**

1. La Comisión de Servicios Públicos, en específico la Oficina Central y Región de San Juan se encuentran ubicadas en la Electrónica 1608 calle Bori, Primer Piso, San Juan, PR 00927, propiedad perteneciente a la Empresas Omajede, Inc.

2. Para el arrendamiento de dicha oficina la CSP y Empresas Omajede, Inc. (en adelante Omajede) otorgaron un contrato de arrendamiento, con vigencia desde el 7 de septiembre de 2012 a 30 de junio de 2016.

3. El 30 de marzo de 2017, Omajede informó a la CSP que – debido a que no se pagó un mes (1) por el arrendamiento – procedería a desconectar el servicio de energía eléctrica, el lunes 3 de abril de 2017 a las 10:00 AM.

4. El alegado incumplimiento en los pagos de renta "y otros" es una controversia que ya existía entre Omajede y la CSP, ya que según surge de los hechos antes indicados el contrato entre las partes se encontraba vencido. Es

debido a dicha controversia que se solicita la Sentencia Declaratoria que argumentamos en este escrito, pero mientras la misma es resuelta por este Tribunal. La compareciente, de buena fe y para mitigar cualquier posible daño, determinó mudar sus operaciones de servicios públicos a otro local. La aquí peticionaria, CSP, se encuentra en proceso de mudanza y va a culminar el mismo dentro de los próximos quince (15) días.

5. El día 30 de marzo de 2017, la demandada Omajede le notificó a la parte aquí demandantes que interrumpiría los servicios de electricidad efectivo el lunes 3 de abril de 2017 a las 10:00 de la mañana. **_Véase correo electrónico enviado por las Empresas Omajede, Inc. al Presidente de la CSP._**

6. La determinación de Omajede de interrumpir el servicio de luz a la agencia – durante la mudanza – pone en riesgo de daño irreparable no solo los servicios que brinda la CSP a la ciudadanía que incluyen aspectos de seguridad pública sino que pone en riesgo de pérdida irreversible el equipo y la data que maneja la Comisión. Lo cierto es que Omajede tenía como remedio el solicitar el desahucio, de entender que la CSP en efecto debía la cantidad facturada del mes de marzo, que es el único mes que se ha facturado y no pagado, sin embargo en vez de utilizar dicho remedio legal insiste en afectar los servicios que la CSP brinda al País y pone en inminente peligro el equipo y data que dicha entidad está llamada a proteger.

7. No teniendo otro remedio en Ley disponible, la compareciente acude ante el auxilio de este Honorable Tribunal solicitando el remedio extraordinario de interdicto preliminar y permanente.

## II. Jurisdicción

Este Tribunal tiene jurisdicción y competencia para atender la acción de epígrafe, a tenor con las disposiciones de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como la Ley de la Judicatura. Además, de conformidad con los criterios establecidos en el Regla 57 de Procedimiento Civil, 32 LPRA Ap. III, R. 57, y los Artículos 675 al 687 del Código de Enjuiciamiento Civil, 32 LPRA 3521-3533.

## III. Las Partes

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 2 de 13

1. **Comisión del Servicio Público** es una instrumentalidad del ELA creada en virtud de la Ley Núm. 109 de 28 de junio de 1962, según enmendada, mejor conocida como Ley de Servicio Público de Puerto Rico, cuya dirección es Edificio la Electrónica 1608 calle Bori, Ofic. Primera Paso, San Juan, PR 00927. La misma, se encuentra representada por el Estado Libre Asociado de Puerto Rico.

2. **Estado Libre Asociado de Puerto Rico,** es un ente creado por la Constitución del ELA que suple capacidad jurídica a sus instrumentalidades. El mismo, es representado por el Departamento de Justicia, cuya dirección es Apartado 9020192, San Juan, Puerto Rico 00902-0192.

3. **Empresas Omajede, Inc.,** la parte peticionaria, es una corporación doméstica con fines de lucro, debidamente inscrita en el Departamento de Estado bajo el número 41616. La misma, se encuentra ubicada en el Edificio la Electrónica 1608 calle Bori, Ofic. 218, San Juan, PR 00927.

4. **Antonio Betancourt Capo,** parte peticionaria, se incluye en su carácter de presidente y agente residente de la corporación Omajede. Su dirección es Edificio la Electrónica 1608 calle Bori, Ofic. 218, San Juan, PR 00927.

IV. **Relación de Hechos**

1. El 7 de septiembre de 2012 la CSP y Omajede suscribieron el contrato número 2011-00009B para la renta del inmueble ubicado en Edificio la Electrónica 1608 calle Bori, Primer Piso, San Juan, PR 00927. (ANEJO 1)

2. El referido contrato venció el día 30 de junio de 2016 y no fue renovado por las partes.

3. La CSP ha realizado pagos por la ocupación del edificio basado en el canon de arrendamiento pactado por las partes en el contrato vencido, únicamente no se pagó el mes de marzo de 2017. (ANEJO 2)

4. El 30 de marzo de 2017 Omajede informó a la compareciente que le desconectaría el servicio de energía eléctrica por falta de pagos de rentas y otros. (ANEJO 3)

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 3 de 13

5. La CSP, en aras de mitigar cualquier controversia entre las partes, inició su proceso de mudanza el cual proyecta que culminaría durante las próximas dos semanas.

## V. Derecho Aplicable

### Procedencia del Injunction Preliminar y Permanente

1. El interdicto, o *injunction*, es un procedimiento especial dirigido a proteger al promovente de daños irreparables a su propiedad o a otros derechos mediante una orden que prohíba u ordene ejecutar ciertos actos. El mismo está gobernado por los artículos del Código de Enjuiciamiento Civil que a continuación haremos referencia, *infra*, y por la Regla 57 de Procedimiento Civil, *infra*. Este remedio extraordinario se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. *Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612 (1973); *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978).

2. El artículo 675 del Código de Enjuiciamiento Civil define injunction como "un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". 32 L.P.R.A. sec. 3521.

3. La naturaleza de este recurso extraordinario reviste un propósito preventivo y reparador del daño que alega el peticionario. Su eficacia descansa en su naturaleza sumaria y en su pronta ejecución. 32 L.P.R.A. sec. 3533; *Peña v. Federación de Esgrima de P.R.*, supra, a la pág. 154.

4. Los criterios a considerar para expedir un injunction son la naturaleza de los daños que pueden ocasionársele a las partes de concederse o denegarse el mismo; su irreparabilidad o la existencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; la probabilidad de que la causa se torne académica de no concederse el injunction y, en especial, el posible impacto sobre el interés público del remedio que se solicita. *P.R. Telephone Co. v.*

4

central de la CSP, significa desconectar a la agencia y privar a los ciudadanos de sus servicios. (ANEJO 4)

8. De igual modo, resaltamos que por vía del sistema de informática de la agencia – basado en los servidores ubicados en San Juan – se remite información a agencias Federales. El no poder remitir esta información compromete los fondos y programas federales de los cuales es parte o recibe la CSP. (ANEJO 5)

9. Lo cierto es que, la interrupción del servicio de luz haría inoperante la Comisión de Servicios Público e imposibilitaría los servicios que provee la Comisión—entre ellos, los servicios de seguridad pública. (ANEJO 5)

10. Entre los servicios de seguridad pública que provee la Comisión y que se verían afectados se encuentran, las inspecciones transporte escolar, ambulancias, de equipo pesado e inspección del transporte de materiales peligrosos—entre éstos, los de gas licuado, productos derivados de petróleo, y los materiales radioactivos (como el plutonio y el cobalto 60). (ANEJO 5)

11. Las inspecciones que se realizan en los predios de la Comisión – Región de San Juan - se realizan de forma diaria. Así mismo, los inspectores, tanto los que inspeccionan en los predios de la Comisión, como los que inspeccionan fuera de los predios—ya sea en los muelles, o en las facilidades de la compañía inspeccionada—tiene que entrar la data recopilada de dichas inspecciones diariamente a través de los servidores (equipo tecnológico) que incluyen redes federales. (ANEJO 4 y 5)

12. Que estos servicios de seguridad pública se verían adversamente afectados, al punto de crear un daño irreparable, de verse interrumpido el servicio eléctrico, toda vez que de no poder realizarse las inspecciones y no poder entrarse la data requerida en cuanto a dichas inspecciones, se podría poner en riesgo la seguridad pública, e incluso podrían verse afectados los fondos federales que recibe el Estado para la prestación de estos servicios.

13. Por su parte, el interdicto o injunction permanente requiere que el Tribunal celebre una vista de la que se derivará su sentencia. *Municipio de Ponce v. Gobernador*, 136 D.P.R. 776 (1994); *Noriega v. Gobernador*, 130 D.P.R. 919

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 6 de 13

(1992); *P.R. Telephone Co. v. Tribunal Superior*, supra. Después del juicio en sus méritos y antes de ordenar un injunction permanente, el tribunal debe considerar, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley. Los factores que se deben tomar en consideración para emitir el recurso de injunction permanente son si el demandante ha prevalecido en un juicio en sus méritos; si posee algún remedio adecuado en ley; el interés público involucrado; y el balance de equidades. *Universidad del Turabo v. L.A.I.*, 126 D.P.R. 497, 505 (1990).

14. Muy respetuosamente entendemos que de este Tribunal no expedir el recurso de Injunction preliminar solicitado por la compareciente, la presente acción se tornaría académica. Como vera este Tribunal, al momento que se interrumpa o desconecte el servicio de luz, la agencia y el Pueblo comienzan a verse afectados.

15. La presente petición es una de gran interés público.

16. Tal y como hemos indicado, en el presente caso la CSP reconoce que existe una controversia en cuanto a la procedencia de los pagos a la demandada. Ante ello, y para mitigar cualquier daño y de buena fe la CSP, ha tomado la determinación de mudar la Oficina Central y Región de San Juan.

17. Sin embargo, al presente, y ante el riesgo inminente de que la parte demandada prive a la compareciente de poder brindar los servicios al Pueblo es necesario que el Tribunal - previo a evaluar la controversia de derecho que surge de la sentencia declaratoria - emita el injunction solicitado permitiendo que la CSP continúe sus funciones, hasta tanto y en cuanto, concluya su mudanza en el término de quince (15) días.

18. La sentencia declaratoria es el remedio que una parte puede solicitar en un proceso en el que los hechos demuestran que existe una controversia sustancial entre partes con intereses legales opuestos y por lo cual requieren de una certeza jurídica. *R. Hernández Colón*, Práctica Jurídica de Puerto Rico Derecho Procesal Civil, 5ta ed., San Juan, Puerto Rico, Michie of Puerto Rico, 1997, pág. 560. Es un mecanismo que permite anticipar la dilucidación de los méritos de diversas causas de acción ante un tribunal y ofrece un

procedimiento judicial práctico para resolver una controversia antes de que ésta llegue a la etapa en que el peligro contra los derechos del promovente se convierta en uno real y sea necesario otro remedio directo. *Moscoso v. Rivera*, 76 D.P.R. 481, 489 (1954).

19. De esta forma, la sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. *Romero Barceló v. E.L.A*, 169 D.P.R. 460, 475 (2006). Así pues, al dictar una sentencia declaratoria, el Tribunal de Primera Instancia debe balancear los intereses públicos y privados de las partes, la necesidad de emitir dicho recurso y el efecto que ello tiene sobre lo reclamado, por lo que debe demostrarse que los intereses de la justicia serían bien servidos. Moscoso v. Rivera, supra, págs. 492-493. Una vez dictada, la sentencia declaratoria tiene la misma eficacia y vigor que cualquier otro tipo de sentencia.

20. Sobre el particular, la Regla 59.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 59.1, establece lo siguiente:

El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará motivo suficiente para atacar un procedimiento o acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37 de este apéndice, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.

21. De otro lado, la Regla 59.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 59.2, establece que toda persona cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, ordenanza municipal, contrato o franquicia, podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquellos se deriven. Aunque la concesión de la sentencia declaratoria descansa en la sana discreción del juzgador, el aludido remedio se limita a que la controversia que se presente sea real y no

8

especulativa. "Debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada." *Moscoso v. Rivera*, supra pág. 492. Al respecto, el tratadista José Cuevas Segarra puntualiza lo siguiente:

> Debe quedar claro que el empleo de la sentencia declaratoria está limitado a que la controversia sea real, de índole práctica, y no académica o teórica, y determinante del asunto en discusión. Si una disputa no está firmemente anclada en hechos específicos, adquiere un matiz teórico que generalmente la excluye del ámbito legítimo de la sentencia declaratoria. [...] No está disponible para ofrecer opiniones consultivas. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Pubs. J.T.S., 2011, T. V, pág. 1790.

22. El mecanismo de sentencia declaratoria es el recurso adecuado para atender planteamientos sobre la constitucionalidad de una ley cuyos efectos afectan los intereses del demandante. Véase, *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978); Cuevas Segarra, op. cit., pág. 1788.

23. En el presente caso, solicitamos a este Tribunal que determine que procede dictar una Sentencia Declaratoria resolviendo que, ante la ausencia de un contrato vigente que vincule el pago de arrendamiento, es improcedente que se obligue al Estado a realizar los pagos requeridos por concepto de renta por Empresas Omajede, Inc. *Veamos.*

24. Con miras a lograr la sana administración de los fondos públicos se ha aprobado legislación para establecer un control sobre el desembolso de esos fondos y sobre la contratación gubernamental. *Rodríguez Ramos et al. v. ELA et al.*, Op. de 6 de marzo de 2014, 2014 TSPR 32, 2014 JTS 41, 190 DPR __ (2014). Tanto los procedimientos establecidos en las leyes como los preceptos de sana administración pública delimitados en nuestra jurisprudencia imponen un límite a la facultad del Estado para desembolsar fondos públicos. *Jaap Corp v. Depto. Estado et al*, 187 DPR 730, 741 (2013).

25. El Estado posee un gran interés en promover una sana y recta administración pública y en prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. *CMI Hospital v. Depto. Salud*, 171 DPR 313, 320

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 9 de 13

SJ2017CV00121 31/03/2017 04:25:53 p.m. Página 10 de 13

(2007). En ese ánimo, nuestro Tribunal ha favorecido la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno. *Véase Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 248 (2007); *Lugo v. Mun. de Guayama*, 163 DPR 208, 215 (2004). Es por eso que hemos reiterado la rigurosidad de las disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 533 (2011); *Cordero Vélez v. Mun. de Guánica*, supra; *Fernández & Gutiérrez v. Mun. San Juan*, 147 DPR 824, 829 (1999).

26. La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan, y no a base de las teorías generales de contratos. *ALCO Corp. v. Mun. de Toa Alta*, supra, pág. 537.

27. El Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 LPRA sec. 97, dispone que, "

[l]as entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda... Cuando se otorguen escrituras sobre la adquisición o disposición de bienes raíces se le enviará también al Contralor, copia de todo escrito y documento relacionado con la negociación.

El período de quince días podrá extenderse solo por quince días más si se demuestra justa causa. [d.] El incumplimiento con esa disposición —de por sí no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección. Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97(d).

28. En reiteradas ocasiones, nuestro Tribunal Supremo ha señalado los requisitos formales que deben observarse al contratar con un ente gubernamental: 1) reducir el contrato a escrito; 2) mantener un registro para establecer su existencia; 3) enviar copia a la Oficina del Contralor de Puerto Rico; y 4) acreditar la certeza de tiempo, a saber, que fue realizado y otorgado quince días antes. *Rodríguez Ramos et al. v. ELA et al.*, supra, ALCO

*Corp. v. Mun. de Toa Alta*, supra, pág. 537; *Jaap Corp. v. Depto. Estado et al.*, supra. Véase, además, *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37 (1988). Se exige el cumplimiento riguroso con cada uno de esos requisitos ya que, sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas. *ALCO Corp. v. Mun. de Toa Alta*, supra, citando a *Ocasio v. Alcalde Mun. de Maunabo*, supra, págs. 53-54.

29. En cuanto al primer requisito —que el contrato conste por escrito— nuestro Tribunal Supremo ha establecido que su cumplimiento es indispensable para que el contrato tenga efecto vinculante entre las partes. *Rodríguez Ramos et al. v. ELA et al.*, supra; *Jaap Corp. v. Depto. Estado et al.*, supra, pág. 741. El contrato escrito es "... la mejor evidencia de las obligaciones recíprocas que contraen las partes." Véase, *ALCO Corp. v. Mun. de Toa Alta*, supra, pág. 538, citando a *Colón Colón v. Mun. de Arecibo*, 170 DPR 718, 726 (2007). Los términos del contrato quedan plasmados de forma objetiva en el escrito, evitando que surjan controversias sobre los mismos.

30. El carácter sustantivo del requisito del contrato escrito supone que su incumplimiento afecta adversamente la eficacia de la obligación en él contratada. *Colón vs. Mun. De Arecibo*, 170 DPR 718 (2007). En *Fernandez & Gutierrez vs. Mun. De San Juan*, supra, se dispuso que el requisito de formular lo acordado mediante un contrato escrito, era indispensable y, conforme lo resuelto en *Hatton vs. Mun. De Ponce* supra, hay que cumplirlo, sin excepción alguna, para que lo convenido sea vinculante.

31. Por su parte, en *ALCO Corp vs. Mun. De Toa Alta*, supra, se rechazó la contratación municipal retroactiva y se determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. En esa ocasión se dispuso que validar un contrato retroactivo con un municipio "... ignoraría el interés público de regular las inspecciones de la obra y restringir los parámetros de subcontratación [...]" Id.

32. Por lo tanto, surgirá una obligación por parte del Estado —únicamente cuando exista un contrato en virtud de un compromiso legalmente válido.

*ALCO Corp. v. Mun. de Toa Alta*, supra, pág. 539. Una vez satisfechos los requisitos mencionados, los contratos serán válidos, exigibles y gozarán de la publicidad requerida por nuestro ordenamiento para la sana administración de la política pública en cuanto a la contratación gubernamental respecta. *ALCO Corp. v. Mun. de Toa Alta*, supra, citando a *Johnson & Johnson v. Mun. De San Juan*, 172 DPR 840, 853 (2007).

33. En este caso, solicitamos que se dicte sentencia declaratoria toda vez que al presente no existe un contrato que vincule el pago que le requiere Omajede a la CSP. Ante ello, el pago requerido no es procedente en derecho.

**POR TODO LO CUAL**, muy respetuosamente solicitamos de este Tribunal que tome conocimiento de lo antes esbozado y dicte el injunction solicitado que evite que la Comisión se vuelva inoperante y esté en riesgo de perder la data esencial de la entidad, mientras se evalúa la procedencia de los pagos según discutido en nuestra Solicitud de Sentencia Sumaria. De la parte demandante proceder a cortar el servicio de luz, solicitamos que se ordene con carácter de urgencia que restituya la misma.

**RESPETUOSAMENTE SOMETIDO**

**En San Juan, Puerto Rico hoy 31 de marzo de 2017**

**CERTIFICO:** Que este escrito ha sido presentado de manera electrónica a través del Sistema Unificado del Manejo y Administración de Casos (SUMAC) el cual da aviso, al mismo tiempo, a todos los abogados de record a sus respectivas direcciones de correo electrónico, lo cual constituye la notificación que debe darse entre abogados, según dispone las Reglas de Procedimientos Civil.

WANDA VÁZQUEZ GARCED
**Secretario de Justicia**

WANDYMAR BURGOS VARGAS
**Secretaria Auxiliar de lo Civil**

f/Cristina Abella
**CRISTINA ABELLA DÍAZ**
**Abogada**
**RUA: 17098**
Email: cabella@justicia.pr.gov

f/Liany Vega
LIANY VEGA NAZARIO
**Directora**
**División de Recursos Extraordinarios**

f/Susanne B. Lugo
**SUSANNE B. LUGO HERNÁNDEZ**
**Abogada**
**RUA: 15512**
Email: slugo@justicia.pr.gov

**División de Recursos Extraordinarios**
Apartado 9020192
San Juan, PR 00902-0192
T Tel: 787-721-2900 Ext. 2924
Fax: 787-721-3977