**A** Neutral

As of: July 31, 2023 5:37 PM Z

## *Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, Peticionarios v. Estado Libre Asociado de Puerto Rico, Recurrida*

Tribunal Supremo De Puerto Rico

5 de abril de 2023

CC-2021-0681

**Reportero**

2023 PR Sup. LEXIS 48 *; 2023 TSPR 43; 2023 WL 2971467

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, Peticionarios v. Estado Libre Asociado de Puerto Rico, Recurrida

**Historia Previa:** [*1] Materia: Derecho Real - Si procede la acción de expropiación forzosa a la inversa cuando cierta dependencia gubernamental se mantiene ocupando una propiedad, luego de vencido determinado contrato de arrendamiento, y tras un requerimiento formal y con premura dirigido a desocupar el inmueble en cuestión.

*Ortiz Zayas v. E.L.A., 2021 PR App. LEXIS 2346, 2021 WL 4191402 (P.R. Ct. App.)*

## Resumen de Caso

**Terminos Principales**

propiedad, contrato, compensación, Estado, partes, justa, derecho, arrendamiento, gubernamental, expropiación, matrimonio, como, uso, cuando, caso, ser, sin, forzosa, también, sobre, Esto, incautación, anterior, inversa, además, tiempo, controversia, puede, mediante, presente

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

**Abogados:** Abogados de la parte peticionaria: Lcdo. Julio Eduardo Tores, Lcda. Ivette Ortiz Hernández.

Oficina del Procurador General: Hon. Fernando Figueroa Santiago, Procurador General, Lcdo. Omar Andino Figueroa, Subprocurador General, Lcdo. Guillermo Mangual Amador, Procurador General Auxiliar.

**Jueces:** Tribunal de Apelaciones: Panel V. Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

**Opinion Por:** COLÓN PÉREZ

## Opinion

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 5 de abril de 2023.

En el presente caso nos corresponde determinar si procede, o no, la acción de expropiación forzosa a la inversa -- y, consecuentemente, el derecho a una justa compensación -- cuando cierta dependencia gubernamental se mantiene ocupando una propiedad, luego de vencido determinado contrato de arrendamiento, y tras un requerimiento formal y con premura dirigido a desocupar la misma.

 [*2] Adelantamos que, tras un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y jurisprudenciales aplicables, hemos llegado a la conclusión de que en escenarios como los antes descritos procede la acción de expropiación forzosa a la inversa y, en consecuencia, una justa compensación, sujeto al cumplimiento de lo aquí pautado. Veamos.

I.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 3 of 25

Page 3 of 25

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, Peticionarios v. Estado Libre Asociado de Puer....

El Sr. Eddie Alberto Ortiz Zayas (en adelante, "señor Ortiz Zayas") es dueño de una propiedad comercial, de dos niveles, ubicada en el municipio de Aibonito. Allá para el 1998, el señor Ortiz Zayas arrendó el segundo nivel de la referida propiedad comercial al Departamento de Justicia del Estado Libre Asociado de Puerto Rico (en adelante, "Departamento de Justicia"). Esto, para que la mencionada agencia gubernamental estableciera allí la Oficina de la Fiscalía y la Oficina de Asuntos de Menores y Relaciones de Familia del Distrito Judicial de Aibonito.[1]

Así las cosas, para noviembre de 2016 el Departamento de Justicia le notificó al señor Ortiz Zayas que, a diferencia de los contratos anteriores, no tenía intención de renovar el contrato de arrendamiento antes mencionado por un periodo prolongado [*3] de tiempo. En específico, personal de la mencionada agencia gubernamental le indicó al señor Ortiz Zayas que había gestionado un nuevo local al cual se proponían mudar al año siguiente. En ese contexto, el Departamento de Justicia y el señor Ortiz Zayas otorgaron un nuevo contrato de arrendamiento en el cual estipularon que el mismo vencería en abril de 2017.

Posteriormente, previo a vencerse el aludido contrato de arrendamiento, personal de la mencionada agencia gubernamental le notificó al señor Ortiz Zayas que no podrían desalojar el local para la fecha pactada, por lo que deseaban extender el contrato por un periodo de dos meses adicionales, en específico hasta el 30 de junio de 2017. Consecuentemente, el Departamento de Justicia y el señor Ortiz Zayas enmendaron el contrato de arrendamiento y extendieron su vigencia hasta la mencionada fecha.[2]

---

[1] Por su parte, y en lo relacionada al primer nivel de la referida propiedad comercial, en el 2016 el Departamento de Hacienda de Puerto Rico (en adelante, "Departamento de Hacienda") cerró un negocio allí operante perteneciente al señor Ortiz Zayas. Esto, debido a una deuda por concepto del impuesto de ventas y uso. Como consecuencia, el 23 de febrero de 2016 el señor Ortiz Zayas se declaró en quiebra.

Coetáneamente, el Departamento de Justicia inició una investigación de carácter penal en contra del señor Ortiz Zayas. Dicha investigación culminó con la radicación de cargos por infracciones al Código de Rentas Internas de Puerto Rico de 2011, Ley Núm. 1-2011, **13 LPRA secs. 30011 et seq.**

[2] En el referido contrato enmendado, el señor Ortiz Zayas incluyó una cláusula -- en específico, la cláusula vigésima primera -- en la cual se establecía que:

Al terminar este contrato, el departamento entregará el local en el mismo estado y condiciones que le fue entregado, salvo el desgaste por el uso normal en el transcurso del tiempo, o si hubiese perecido o sido menoscabado por causa inevitable. Véase, Apéndice del *certiorari*, pág. 138.

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Así las cosas, al aproximarse la fecha en que el contrato [*4] de arrendamiento -- según extendido -- vencería, y al no ver que el Departamento de Justicia realizara acción alguna para desocupar la propiedad que le pertenecía, el señor Ortiz Zayas se comunicó con el personal del Departamento de Justicia y les indicó que, para el 30 de junio de 2017, debían abandonar la propiedad y entregarle las llaves correspondientes.

Ahora bien, no empece al anterior esfuerzo, tras vencer el contrato de arrendamiento el 30 de junio de 2017, el Departamento de Justicia no desocupó el local perteneciente al señor Ortiz Zayas. Siendo ello así, -- y según aceptado por las partes --, el señor Ortiz Zayas se comunicó en diversas ocasiones con el personal de la referida agencia gubernamental para que desocuparan el mencionado local y le hicieran entrega de éste. Sin embargo, el Departamento de Justicia hizo caso omiso, o respondió de forma evasiva, a dichos requerimientos.

En específico, y como parte del proceso de finiquitar la relación contractual con el Departamento de Justicia, surge que al principio del segundo semestre de 2017 el señor Ortiz Zayas acudió, -- junto al Sr. Ángel Manuel Avilés Rivera, Contador Público Autorizado --, a la referida agencia gubernamental. [*5] En dicha visita, el señor Ortiz Zayas le solicitó al Departamento de Justicia que desocupara el local y se lo entregara.

Asimismo, durante el año 2018 y principios del año 2019, el señor Ortiz Zayas continuó realizando gestiones dirigidas a lograr que la referida agencia gubernamental desalojara finalmente el local comercial. No obstante, el Departamento de Justicia hizo caso omiso a los requerimientos del señor Ortiz Zayas.

Posteriormente, durante el verano de 2019 el señor Ortiz Zayas, -- ahora por medio de su representación legal, el Lcdo. Julio Eduardo Torres y el Lcdo. Alberto Ortiz Rivera --, le requirió nuevamente a la referida agencia gubernamental que desalojara la propiedad, no obstante, dicha gestión resultó infructuosa.

---

Según arguye el señor Ortiz Zayas, esta cláusula se debía a que no tenía expectativa de que el Departamento de Justicia le renovara el contrato de arrendamiento del local. Esto, por su situación personal frente a las agencias gubernamentales.

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Así pues, tras agotar los mecanismos antes descritos, el 23 de enero de 2020 el señor Ortiz Zayas, su esposa la Sra. Ada Irma Mateo Ortiz y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, "matrimonio Ortiz Mateo"), radicaron una demanda de desahucio en precario en contra del Departamento de Justicia. En ésta, solicitaron que el Departamento de Justicia desalojara la propiedad en cuestión y le hicieran entrega de la misma a sus respectivos [*6]  dueños.

Evaluada la demanda instada por el matrimonio Ortiz Mateo, el Tribunal de Primera Instancia señaló una vista para el 3 de febrero de 2020. En dicha fecha, y previo a celebrarse la mencionada vista, el Departamento de Justicia le entregó al señor Ortiz Zayas las llaves del local comercial que hasta ese momento ocupaba y que es objeto de la presente controversia. Como consecuencia de ello, la referida agencia gubernamental solicitó al foro primario la desestimación de la demanda de desahucio en precario instada por el matrimonio Ortiz Mateo; solicitud a la que accedió el Tribunal de Primera Instancia mediante *Sentencia* del 10 de febrero de 2020.

Por otra parte, como consecuencia de lo anterior, y en lo pertinente a la controversia ante nuestra consideración, el 6 de julio de 2020 el matrimonio Ortiz Mateo instó ante el foro primario una *Demanda* sobre expropiación forzosa a la inversa en contra del Estado Libre Asociado de Puerto Rico (en adelante, "ELA"). En síntesis, el referido matrimonio alegó que el ELA, a través del Departamento de Justicia, por un periodo de 31 meses -- entiéndase, del 1 de julio de 2017 al 3 de febrero de 2020 -- le privó del uso de su propiedad sin pagarle [*7]  una justa compensación. Ello, a pesar de que diligentemente requirió con premura la desocupación de la misma.

Enterado de lo anterior, el Departamento de Justicia, mediante *Moción de Desestimación*, solicitó al Tribunal de Primera Instancia la desestimación de la demanda instada en su contra, ello por entender que las alegaciones que acompañaban la misma no justificaba la concesión de un remedio en derecho. En particular, la referida agencia gubernamental sostuvo que las acciones de expropiación forzosa a la inversa no eran aplicables a casos como el de autos, por

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

ser éstas incompatibles con los requisitos impuestos por nuestras leyes especiales sobre contratación gubernamental y con los principios de sana administración pública.

En oposición, el matrimonio Ortiz Mateo presentó *una Moción Solicitando Sentencia Sumaria Parcial y Oposición a Moción de Desestimación* en la que argumentó sobre su posición sobre la aplicabilidad -- en el caso de marras -- de la figura de expropiación forzosa a la inversa y, en consecuencia, de una justa compensación. En específico, el referido matrimonio insistió en que el ELA había ocupado su propiedad sin pago alguno por un periodo de 31 meses, limitando [*8] su uso y disfrute, por lo que tenía derecho a una justa compensación.

Por su parte, y en lo que respecta a la solicitud de sentencia sumaria, el Departamento de Justicia aceptó los hechos propuestos por el matrimonio Ortiz Mateo como incontrovertidos y ratificó sus argumentos de derecho previamente establecidos en cuanto a la inaplicabilidad de la figura de expropiación forzosa a la inversa y, consecuentemente, de una justa compensación al caso de autos.

Examinadas las comparecencias de ambas partes, el 16 de abril de 2021 el foro primario dictó una *Resolución* mediante la cual denegó la *Moción de Desestimación* presentada por el Departamento de Justicia y, además, declaró ha lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por el matrimonio Ortiz Mateo. Al así hacerlo, el Tribunal de Primera Instancia sostuvo que, en el presente caso, el Departamento de Justicia -- en efecto -- había ocupado por un periodo de tiempo la propiedad objeto del presente litigio, que dicha ocupación fue para un fin público, que la misma ocurrió luego de vencido el contrato y que, a pesar de los requerimientos de entrega del propietario, éste fue privado del uso de su propiedad. Como resultado, el [*9]  foro primario concluyó que la actuación de la referida agencia gubernamental constituyó una incautación física que activó el remedio de la expropiación forzosa a la inversa y,

consecuentemente, de una justa compensación. Establecido lo anterior, el foro de referencia dejó pendiente la adjudicación de la cuantía con relación a la justa compensación.[3]

En desacuerdo con el proceder del Tribunal de Primera Instancia, el ELA, en representación del Departamento de Justicia, compareció al Tribunal de Apelaciones mediante *Petición de certiorari*. En síntesis, en el referido escrito, el Estado arguyó que la determinación del foro primario era contraria a la doctrina que, en nuestra jurisdicción, rige el tema de la contratación gubernamental y el desembolso de fondos públicos. En específico, el ELA apuntó que el matrimonio Ortiz Mateo no podía solicitar el desembolso de fondos públicos por un periodo de tiempo en el cual no existió un contrato entre las [*10]  partes, por lo que insistió en que la demanda instada por éste no justificaba la concesión de un remedio en derecho.

En oposición, el matrimonio Ortiz Mateo señaló que, en efecto, al momento de la ocupación de la propiedad objeto del presente litigio, no existía un contrato entre las partes, ni expectativa de que se realizara uno. Por el contrario, lo que, a su juicio, si existía era la obligación del ELA de devolverle su propiedad en el término establecido en el contrato de arrendamiento, más el ELA no lo hizo, por lo que insistió en su derecho a una justa compensación.

Tras analizar los alegatos de ambas partes, el 23 de agosto de 2021 el Tribunal de Apelaciones dictó una *Sentencia* mediante la cual revocó la *Resolución* emitida por el Tribunal de Primera Instancia y, consecuentemente, desestimó con perjuicio la causa de acción instada por el matrimonio Ortiz Mateo. Lo anterior, por entender que, según los hechos y las circunstancias particulares del presente caso, el ELA no había realizado aquí una incautación física que activara el derecho a una justa compensación.

En específico, y a juicio del foro apelativo intermedio, el matrimonio Ortiz Mateo le cedió al ELA el uso y disfrute de [*11]  su propiedad por medio de un contrato de arrendamiento, por lo que no podía alegar que hubo una ocupación. Además, el Tribunal de Apelaciones sostuvo que el

_____

[3] **Es importante mencionar aquí que, el foro primario razonó que en el presente caso no era de aplicación la normativa relacionada a los contratos de arrendamiento, la contratación gubernamental y la inaplicabilidad de la tácita reconducción**. Véase, Apéndice del *certiorari*, págs. 211-224.

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

tiempo en que el ELA mantuvo la posesión de la propiedad, limitando el uso a los dueños, ocurrió debido a que estos no realizaron la acción correspondiente para excluir a otras personas del uso y posesión de la propiedad. Resolvió esto porque el matrimonio Ortiz Mateo tenía disponible la acción de desahucio y por tanto, no procedía la acción de expropiación a la inversa.

Insatisfecho con el dictamen del foro apelativo intermedio, el matrimonio Ortiz Mateo compareció ante nos mediante recurso de *certiorari*. En éste, el matrimonio de referencia nos solicita que revoquemos la *Sentencia* dictada por el Tribunal de Apelaciones y que mantengamos en vigor la *Resolución* emitida por el foro primario. En su escrito, el matrimonio Ortiz Mateo precisa que el ELA, vencido el contrato de arrendamiento y tras varios requerimientos para que le devolvieran su propiedad, se mantuvo por un periodo de 31 meses ocupando la misma. En esa línea, insiste en que dicha actuación constituyó una intromisión a su derecho propietario, por lo que se configuró [*12]  una expropiación forzosa a la inversa y, por tanto, el derecho a una justa compensación.

A dicha solicitud, oportunamente, el ELA, en representación del Departamento de Justicia, se opuso. En lo pertinente, el Estado reitera argumentos similares a los esbozados ante el Tribunal de Primera Instancia y el Tribunal de Apelaciones.

Evaluados los alegatos de las partes, el 18 de marzo de 2022 expedimos, en reconsideración, el presente recurso de *certiorari*. Dicha determinación fue oportunamente notificada a todas las partes con interés en el litigio.

Trabada así la controversia y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa que gobierna los asuntos ante nuestra consideración.

II.

A.

Como es sabido, nuestra Constitución reconoce el derecho fundamental al disfrute de la propiedad. *Art. II, Sec. 7, Const.* ELA, LPRA, Tomo 1. En cuanto a este derecho de rango constitucional, esta Curia ha establecido que "junto al derecho a la vida y a la libertad, es uno de los cimientos de nuestra convivencia social democrática". *Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943, 952, 1991 Juris P.R. 18 (1991)*.

De igual forma, este Tribunal ha sentenciado que el derecho al disfrute de la propiedad no es uno absoluto. *Adm. Terrenos v. Ponce Bayland, 2021 TSPR 91, 207 DPR 586, 603 (2021)*; *Mun. de Guaynabo v. Adquisición M2, 2010 TSPR 220, 180 D.P.R. 206, 216, 2010 Juris P.R. 229 (2010)*; *A.C.T. v. 780.6141M2, 2005 TSPR 92, 165 DPR 121, 130, 2005 Juris P.R. 97 (2005)*. Ello es así, pues el mismo cede, por ejemplo, ante el poder inherente [*13] que tiene el Estado para adquirir bienes privados mediante el procedimiento de la expropiación forzosa. *Íd.*

Ahora bien, en cuanto a esto último, es menester señalar que la Constitución del ELA, *supra*, establece límites importantes al ejercicio de tal facultad. Sobre el particular, nuestra Carta Magna claramente establece que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". *Art. II, Sec. 9*, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 333.

De forma similar, la *Quinta Enmienda de la Constitución de Estados Unidos de América* prescribe que ninguna persona será privada de sus bienes sin el debido proceso de ley ni se le podrá expropiar su propiedad para destinarla a un uso público sin una justa compensación.[4] *Enmda. V, Const.* EE. UU., LPRA, Tomo 1, pág. 191. Además, la *Decimocuarta Enmienda* de la Constitución federal establece que "ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes". *Emda. XIV, Const.* EE. UU., LPRA, Tomo 1, ed. 2016, [*14] págs. 207-208.

---

[4] "No person shall [...] be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation". *Emda. V, Const.* EE. UU., LPRA, Tomo 1, ed. 2016, pág. 179.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 10 of 25   Page 10 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Como se puede apreciar, de las aludidas disposiciones constitucionales indudablemente se desprende que, para que el Estado pueda expropiar forzosamente una propiedad privada, será necesario que se pague una justa compensación; que se destine el bien expropiado a un fin o uso público, y; que se proceda con sujeción a las leyes que regulan este procedimiento en nuestra jurisdicción.[5] *Adm. Terrenos v. Ponce Bayland, supra, págs. 604-605*. Véase, *Ley de Expropiación Forzosa*, *32 LPRA sec. 2901 et seq.*; Reglas 58 y 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 58 y 60. Ahora bien, ¿cuándo se entiende que el Estado ha expropiado una propiedad y, por ende, viene obligado a compensar a su propietario?

Al respecto, precisa señalar que el Estado viene obligado a compensar a un propietario en los siguientes escenarios: (1) cuando se ejerce el poder de dominio eminente al presentar un recurso de expropiación; (2) **cuando ocurre una incautación de hecho mediante ocupación física**, o (3) cuando se reglamenta el uso de una propiedad. *Aut. Carreteras v. 8554.741 M/C II, 2008 TSPR 4, 172 D.P.R. 1050, 1060, 2008 Juris P.R. 25 (2008)*; *Velázquez Velázquez v. E.L.A., 135 DPR 84, 88, 1994 Juris P.R. 9 (1994)*; *Culebra Enterprises Corp. v. E.L.A., supra, págs. 952-953*. [*15]  El segundo de esos escenarios es el que está presente en la controversia que nos ocupa.

---

[5] La *Ley de Expropiación Forzosa, infra*, establece que este procedimiento "será in rem", es decir, que la acción se dirige contra la propiedad o propiedades a expropiar. *Adm. Terrenos v. Ponce Bayland, supra, pág. 604*; **ELA v. Registrador, 11 P.R. Offic. Trans. 152, 111 D.P.R. 117, 120 (1981)**; **Pueblo v. McCormick, Alcaide & Co., 78 P.R.R. 895, 78 DPR 939, 945 (1956)**. No obstante, tanto la *Ley de Expropiación Forzosa, infra*, como la Regla 58 de Procedimiento Civil, *infra*, requieren que desde el inicio del pleito el ELA acumule a las personas "que tengan o reclamen un derecho" sobre la propiedad y cuyos nombres se conozcan. Regla 58.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 58.3(b). Véase, también, *Adm. Terrenos v. Ponce Bayland, supra, pág. 604*; *Mun. de Guaynabo v. Adquisición M2, supra, pág. 218*.

Conforme a la mencionada ley, toda acción o procedimiento de expropiación forzosa iniciado por el Estado deberá presentarse en la sala de San Juan del Tribunal de Primera Instancia. *32 LPRA sec. 2905*. Si la declaración cumple con los requisitos que dispone la ley y se consigna en el tribunal la compensación estimada, el título de dominio queda investido en la entidad gubernamental que solicitó la expropiación. *Amador Roberts v. ELA, 2014 TSPR 87, 191 DPR 268, 278, 2014 Juris P.R. 97 (2014)*; *Mun. de Guaynabo v. Adquisición M2, supra, pág. 217*; *A.C.T. v. Iñesta, 2005 TSPR 150, 165 DPR 891, 904-905, 2005 Juris P.R. 155 (2005)*. Una vez el titular o dueño de la propiedad es notificado del procedimiento de expropiación, este puede presentar una contestación y presentar las defensas y objeciones que tenga sobre el fin público de la expropiación o sobre la cuantía declarada como justa compensación. *Amador Roberts v. ELA, supra, pág. 278*; *Mun. de Guaynabo v. Adquisición M2, supra, pág. 217*; *A.C.T. v. 780,6141m2, supra, pág. 133*.

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Sobre el particular, el Tribunal Supremo de los Estados Unidos ha establecido que, cuando el gobierno toma posesión física de un inmueble para el cual tiene algún interés de fin público, tiene el deber categórico de indemnizar al antiguo propietario, independientemente de que dicha posesión se trate de toda una parcela o sólo una parte de ella. Por lo tanto, la compensación es obligatoria, aunque ese uso sea temporal ("[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof. Thus, compensation is mandated [...] even though that use is temporary"). *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 US 302, 322, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002)*. Véase, además, *Lucas v. South Carolina Coastal Council, 505 US 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)*.

i.

Establecido lo anterior, y en lo pertinente a la controversia que nos ocupa, es menester mencionar que la incautación física de una propiedad se considera la intrusión más seria de los intereses propietarios de una persona ("[t]he historical rule that a permanent physical occupation of another's [*16]  property is a taking has more than tradition to commend it. Such an appropriation is perhaps the most serious form of invasion of an owner's property interests."). *Loretto v. Teleprompter Manhattan CATV Corp., 458 US 419, 435, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982)*. Véase, también, *Horne v. Department of Agriculture, 576 US 351, 360, 135 S. Ct. 2419, 192 L. Ed. 2d 388 (2015)*. Lo anterior se debe a que el propietario pierde sus facultades básicas de ocupar su propiedad, beneficiarse de su uso y, a la vez, excluir a otras personas de su uso y posesión ("the owner has no right to possess the occupied space himself, and also has no power to exclude the occupier from possession and use of the space."). *Íd.*

**En específico, este Tribunal ha dispuesto que la incautación física de una propiedad es "cualquier privación o interferencia sustancial en el dominio o el disfrute de una cosa"**. *E.L.A. v. Northwestern Const. Inc., 3 P.R. Offic. Trans. 523, 103 DPR 377, 384 (1975).* En esos escenarios, cuando el gobierno ha realizado una incautación física, pierde relevancia si el

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 12 of 25   Page 12 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

propósito gubernamental perseguido era de gran importancia o si el impacto económico causado al dueño de la propiedad es mínimo ("[i]n short, when the character of the governmental action is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic [*17] impact on the owner."). *Loretto v. Teleprompter Manhattan CATV Corp., supra, págs. 434-435*.[6]

En esa dirección, y por entender que es determinante para la justa consideración de los asuntos ante nos, es menester señalar también que la incautación puede ser permanente o temporal. Sobre esta última, se ha dicho que "existe una expropiación temporal cuando se priva a una persona de la posesión, disfrute y disposición de su propiedad por un término que se podrá establecer antes de que el evento de la privación ocurra o posteriormente, cuando se devuelve la propiedad". C. Torres Torres, *La Expropiación Forzosa de Puerto Rico: ley, jurisprudencia, estudio y guía práctica*, San Juan, First Book Pub., 2002, pág. 129.

ii.

De otra parte, y en lo relacionado a la exigencia del pago de la justa compensación, este Tribunal ha sentenciado que -- con ello -- se pretende "colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad". *Adm Terrenos v. Corp. Pesquera Henares, 2018 TSPR 155, 201 D.P.R. 14, 22 (2018)*. Véase, además, *Amador Roberts et als. v. ELA, 2014 TSPR 87, 191 DPR 268, 278-279, 2014 Juris P.R. 97 (2014)*. Por tanto, y de ordinario, "[l]a justa compensación a que tiene derecho el dueño de un bien expropiado es aquella cantidad que representa todo el valor de la propiedad al tiempo de la incautación". *ELA v. El Ojo de Agua Development, 2020 TSPR 122, 205 DPR 502, 519 (2020)* citando a *E.L.A. v. Fonalledas Córdova, 84 P.R.R. 552, 84 DPR 573,*

---

[6] De ahí que proceda la compensación por esa incautación o "taking" físico, siempre y cuando no se trate de una acción temporera y no planificada en la que el gobierno incurre durante un momento de emergencia. *YMCA v. United States, 395 US 85, 93-94, 89 S. Ct. 1511, 23 L. Ed. 2d 117 (1969)*. Véase, también, *Arkansas Game and Fish Com'n v. U.S., 568 US 23, 38-39, 133 S. Ct. 511, 184 L. Ed. 2d 417 (2012)*; *Penn Cent. Transp. Co. v. City of New York, 438 US 104, 128, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978)*.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 13 of 25   Page 13 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

*579 (1962)*. Véase, también, *Amador Roberts et als. v. ELA, supra, págs. 278-279*. En otras palabras, la compensación por una propiedad [*18] expropiada es aquella "que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiese expropiado". *Aut. Carreteras v. 8,554.741 M/C I, 2007 TSPR 178, 172 D.P.R. 278, 294, 2007 Juris P.R. 184 (2007)*. *Véase, además, E.L.A. v. Rexco Industries, Inc., 137 DPR 683, 689, 1994 Juris P.R. 151 (1994)*; *Seaboard Air Line Ry. v. United States, 261 U.S. 299, 304, 43 S. Ct. 354, 67 L. Ed. 664 (1922)*.

De igual forma, y más allá de los escenarios donde la propiedad es incautada directamente, "la obligación de pagar una compensación justa también cobra vigencia cuando el Estado realiza una incautación de hecho al afectar de manera sustancial el uso de la propiedad, físicamente o por medio de su reglamentación". *Culebra Enterprises Corp. v. E.L.A., supra, págs. 946-947*. Véase, *Hampton Development Corp. v. E.L.A., 139 DPR 877, 1996 Juris P.R. No. 4 (1996)*; *Velázquez v. E.L.A., 135 DPR 84, 1994 Juris P.R. 9 (1994)*. Ante estas situaciones, la "compensación comprenderá el valor de uso de la propiedad durante el tiempo en que el Estado privó al dueño de todo uso productivo de ella". *Culebra Enterprises Corp. v. E.L.A., supra, pág. 947*.

Sobre el alcance de la mencionada compensación, hemos establecido que "lo que determina la fecha de valoración no es la investidura del título, que puede tomar años [...], sino la ocupación de la propiedad (taking), ya sea esta judicialmente [...], o, extrajudicialmente". *Planta de Cal. Hicaco v. Tribunal Superior, 3 P.R. Offic. Trans. 534, 103 DPR 385, 387 (1975)*. Véase, *E.L.A. v. Northwestern Const., Inc., supra, págs. 382-383*. Hemos señalado, también, que tal ejercicio es uno esencialmente judicial. *E.L.A. v. Rexco Industries, Inc., supra, págs. 688-689*; [*19] *Aut. Carreteras v. 8,554.741 M/C I, supra, pág. 294*. Véanse, además, E. Rivera Ramos, *Derecho Constitucional Análisis de Término*, 71 Rev. Jur. UPR 625, 628 (2009). Sobre esto último, hemos dispuesto que:

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 14 of 25   Page 14 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

[la determinación de justa compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos — ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial... La [C]onstitución ha declarado que se tiene que pagar [una] justa compensación y que su determinación es una cuestión que le compete a los tribunales.[7] *E.L.A. v. Rexco Industries, Inc., supra, págs. 688-689*. Véase, además, *Aut. Carreteras v. 8554.741 M/C II, supra, págs. 1060-1061*; *Monongahela Navigat'n Co. v. United States, supra, pág. 327*.

A su vez, es norma firmemente establecida que el pago de intereses forma parte integral de la justa compensación. *Aut. Carreteras v. 8,554.741 M/C I, supra, pág. 294*; *E.L.A. v. Rexco Industries, Inc., supra, pág. 689*. Véase, también, J. Álvarez González, *Derecho Constitucional: la constitucionalidad de la tasa de interés estatutaria [\*20]  para casos de expropiación*, 65 Rev. Jur. UPR 799, 807 (1996).

En fin, mientras haya compensación disponible para aquellos cuya propiedad es incautada físicamente, la acción gubernamental -- entiéndase, la incautación de la propiedad -- no es inconstitucional ("maxim rests on the principle that so long as compensation is available for those whose property is in fact taken, the governmental action is not unconstitutional."). *U.S. v. Riverside Bayview Homes, Inc., 474 US 121, 128, 106 S. Ct. 455, 88 L. Ed. 2d 419 (1985)*; *Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 US 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)*. Véase, además, *Amador Roberts et als. v. ELA, supra, págs. 278-279 esc. 6*. Esto se debe a que, ya producida la incautación física de la propiedad por parte del Estado, ninguna acción posterior de éste podrá eximirlo de su deber de proporcionar una justa

---

[7] "By this legislation congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.". *Monongahela Navigat'n Co. v. United States, 148 US 312, 327, 13 S. Ct. 622, 37 L. Ed. 463 (1893)*.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 15 of 25                    Page 15 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

compensación por el período de tiempo en que fue efectiva la expropiación ("where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective"). *First English Evangelical Lutheran Church v. Los Angeles County, 482 US 304, 321, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987)*. Véase, también, *Amador Roberts et als. v. ELA, supra, pág. 281*.

iii.

**Ahora bien, establecido lo anterior, precisa recordar aquí que existen casos excepcionales en los que el Estado, en el ejercicio del poder de dominio, puede ocupar o incautar un derecho real sin haber iniciado el procedimiento judicial** [*21] **de expropiación forzosa y sin haber consignado el pago de la justa compensación**. *Amador Roberts et als. v. ELA, supra, pág. 279*; *E.L.A. v. Northwestern Const., Inc., supra, págs. 382-383*. **Para esos escenarios excepcionales -- donde ocurre una ocupación física o incautación de la propiedad sin previa consignación de una justa compensación -- es que se ha instituido la acción de expropiación forzosa a la inversa**. *E.L.A. v. Northwestern. Const., Inc., supra, pág. 382*; *Heftler International, Inc. v. J. de P., 99 P.R.R. 454, 99 D.P.R. 467, 474 (1970)*. Véase, también, Mandelker, *Inverse Condemnation*: *The Constitutional Limits of Public Responsibility*, Wis. L. Rev. 1966, pág. 3.

**De forma específica, la expropiación a la inversa es "el remedio que tiene el dueño de una propiedad afectada u ocupada físicamente por una entidad del gobierno que no ha iniciado el trámite judicial para adquirir dicha propiedad, y tampoco ha pagado la justa compensación**". Torres Torres, *op. cit.*, pág. 213. Véase, además, *Amador Roberts et als. v. ELA, supra, págs. 279-280*. **Con ello, el dueño de la propiedad afectada u ocupada físicamente por una entidad del gobierno busca obtener la compensación a la que tiene derecho**. *Amador Roberts et als. v. ELA, supra, pág. 280*; *Hampton Development Corp. v. E.L.A., supra, pág. 890*. [*22]  Véase, también, Torres Torres, *op. cit.*, pág. 213.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 16 of 25                 Page 16 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Dicho ello, conviene señalar aquí que, en la mayoría de las ocasiones, los tribunales aplican a las controversias relacionadas con la figura de expropiación forzosa a la inversa "las mismas normas y principios que rigen la acción de expropiación instada por el Estado". *Amador Roberts et als. v. ELA, supra, pág. 280*. Véase, además, *Culebra Enterprises Corp. v. E.L.A., supra, págs. 946-947 esc. 14*; *Olivero v. Autoridad de Carreteras, 7 P.R. Offic. Trans. 331, 107 DPR 301, 307 (1978)*. Teniendo siempre presente, claro está, que "la acción de expropiación a la inversa no pretende hacer del Estado un comprador involuntario de la propiedad e investirse con el título absoluto de dominio de la propiedad como, de ordinario, ocurre en la acción de expropiación iniciada por el Estado". *Amador Roberts et als. v. ELA, supra, pág. 280*. Por el contrario, una vez presentada la acción en su contra, el Estado puede elegir entre, expropiar la propiedad o liberarla, además de indemnizar al propietario por el tiempo en que la propiedad permaneció afectada. *Amador Roberts et als. v. ELA, supra, pág. 281*; *Hampton Development Corp. v. E.L.A., supra, pág. 890*. Véase, también, J.J. Álvarez González, *Análisis del Término 1998-1999: derecho constitucional [\*23]* , *69 Rev. Jur. UPR 419, 433-434 (2000)*.

Por otro lado, y por ser sumamente importante para la correcta disposición de las controversias ante nuestra consideración, es menester reseñar aquí aquellas disposiciones estatutarias, y pronunciamientos de este Tribunal, que rigen los asuntos relacionados a la contratación gubernamental. Disposiciones estatutarias, y pronunciamientos, que se legislan o se dan en el marco de aquellas cláusulas constitucionales que establecen que sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. *Art. VI, Sec. 9*, Const. ELA, *supra*, pág. 444.

Recordemos que "la contratación gubernamental se encuentra revestida del más alto interés público, por involucrar el uso de bienes o fondos gubernamentales". *Demeter Int'l v. Srio. Hacienda, 2018 TSPR 21, 199 DPR 706, 729 (2018)*. Véase, además, *C.F.S.E. v. Unión de Médicos, 2007 TSPR 35, 170 DPR 443, 452, 2007 Juris P.R. 40 (2007)*; *De Jesús González v. A.C., 99 TSPR 66, 1999 TSPR 66, 148 DPR 255, 267-268, 1999 Juris P.R. 72 (1999)*. Es por

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 17 of 25   Page 17 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

esto que han de aplicarse rigurosamente las normas sobre contratos, a los fines de proteger los intereses y el dinero del pueblo. *Demeter Int'l v. Srio. Hacienda, supra, pág. 729*; *C.F.S.E. v. Unión de Médicos, supra, pág. 452*; *De Jesús González v. A.C., supra, págs. 267-268*.

En esa dirección, no se puede ignorar que todo organismo gubernamental está [*24] obligado a observar cabalmente la esencia de las disposiciones constitucionales, lo anterior responde a que los fondos públicos sólo pueden gastarse para fines públicos legítimos. *Demeter Int'l v. Srio. Hacienda, supra, pág. 729*; *Mun. Quebradillas v. Corp. Salud Lares, 2011 TSPR 27, 180 DPR 1003, 1017, 2011 Juris P.R. 32 (2011)*; *C.F.S.E. v. Unión de Médicos, supra, pág. 452*. En consecuencia, el gobierno "no puede actuar de un modo que esté reñido con los principios que encarna el orden constitucional". *Demeter Int'l v. Srio. Hacienda, supra, pág. 729*.

Es, pues, por todo lo anterior, que hemos determinado que todo contrato gubernamental debe cumplir con los siguientes requisitos: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. *Génesis Security v. Depto. Trabajo, 2020 TSPR 84, 204 DPR 986, 998 (2020)*; *ALCO Corp. v. Mun. de Toa Alta, 2011 TSPR 180, 183 D.P.R. 530, 537, 2011 Juris P.R. 185 (2011)*; *Ocasio v. Alcalde Mun. de Maunabo, 21 P.R. Offic. Trans. 29, 121 D.P.R. 37, 54, 1988 Juris P.R. 42 (1988)*. Siendo estos de vital importancia, hemos dispuesto que los aludidos requisitos "sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas". *Génesis Security v. Depto. Trabajo, supra, pág. 998*. Véase, también, *Vicar Builders v. ELA et al., supra*, pág. 264; *ALCO Corp. v. Mun. de Toa Alta, supra, págs. 537-538*.

Ahora bien, [*25] además de lo antes dicho, para cumplir con el mandato constitucional de protección de los fondos públicos antes reseñado, la Asamblea Legislativa ha adoptado diversas leyes que imponen controles fiscales a la contratación gubernamental. *Rodríguez Ramos et al. v. ELA et al., supra*, pág. 456; *Jaap Corp. v. Depto. Estado et al., supra*, pág. 739;

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

*ALCO Corp. v. Mun. de Toa Alta, supra, pág. 537*. A modo de ejemplo, la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como *Ley de Contabilidad del Gobierno de Puerto Rico*, *3 LPRA sec. 283 et seq.*, establece la política pública del Estado Libre Asociado en relación con el control y la contabilidad de los fondos y la propiedad pública. En específico, en su *Artículo 8(a)* se dispone que "todas las asignaciones y los fondos autorizados para las atenciones de un año económico, serán aplicados exclusivamente al pago de los gastos legítimamente incurridos durante el respectivo año o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros". *Art. 8(a) de la Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283g(a)*.

Sobre el estatuto de referencia, hemos expresado que éste "establece claramente que para que un contrato otorgado por el Estado y una parte privada sea válido y exigible, este debe constar por [*26] escrito previo a las prestaciones correspondientes." *Rodríguez Ramos et al. v. ELA et al., supra, pág. 458*. Esto "tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales [o estatales], evita la incertidumbre en la confección del presupuesto municipal [o del Estado] y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley". *Jaap Corp. v. Depto. Estado et al., supra, pág. 742*, citando a *Colón Colón v. Mun. de Arecibo, 2007 TSPR 61, 170 D.P.R. 718, 730, 2007 Juris P.R. 68 (2007)*.

En esa dirección, en innumerables ocasiones, este Tribunal ha sido enfático en que las partes que contratan con cualquier entidad gubernamental, sin cumplir con los requisitos de contratación gubernamental, se exponen a asumir la responsabilidad por sus pérdidas. *Rodríguez Ramos et al. v. ELA et al., supra, pág. 461*; *Quest Diagnostics v. Mun. San Juan, 2009 TSPR 77, 175 DPR 994, 1002, 2009 Juris P.R. 80 (2009)*; *Colón Colón v. Mun. de Arecibo, supra, págs. 728-729*. Es por esto que, "para evitar situaciones irregulares en las que

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

el Estado termine lucrándose injustificadamente, las partes deberán ser meticulosas al otorgar

sus contratos". *Vicar Builders v. ELA et al., supra, pág. 269*. [*27] [8]

En esa línea, esta Curia ha advertido que, en los contratos de arrendamiento con entes

gubernamentales, es esencial que las partes pacten de antemano: (1) en qué condiciones se

extendería el arrendamiento; (2) por cuánto tiempo adicional; (3) cuál sería el canon por pagar;

y (4) aquellas cláusulas penales necesarias para evitar que una parte se vea afectada ante el

incumplimiento de la otra. *Íd.* Esto se debe a que "la manera como las partes pacten las

cláusulas contractuales será determinante al decidir qué procede cuando vence un contrato de

arrendamiento otorgado con el gobierno". *Íd.*

C.

En ese sentido, habiendo hecho referencia a la figura de los contratos de arrendamiento con

entidades gubernamentales, es nuestra obligación dejar meridianamente claro que -- en nuestro

ordenamiento jurídico -- el contrato de arrendamiento puede ser de cosas, de obras o de

servicios. *Art. 1432 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4011.* [*28] [9]

Con relación al arrendamiento de cosas, el mismo consiste en que una de las partes se obliga a

dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. *Art. 1433 del

Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4012.*[10]

Conforme a ello, cuando un contrato de arrendamiento se pacta por tiempo determinado,

concluye en la fecha prefijada sin que sea necesario requerirlo. *Art. 1455 del Código Civil de*

---

[8] **Sobre este particular, hemos expresado que, en el ámbito gubernamental, nuestro ordenamiento prohíbe todo intento de contratación retroactiva.** *Engineering Services v. AEE, 2022 TSPR 84, 209 D.P.R. 1012, 1026 (2022)*; *Génesis Security v. Depto. Trabajo, supra, pág. 1006*; *Jaap Corp. v. Depto. Estado et al., supra, pág. 734*.

[9] En la presente controversia es de aplicación el Código Civil de 1930 por ocurrir los hechos pertinentes durante su vigencia. Sobre este particular, hemos establecido que "la ley aplicable al asunto es la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción". *Nieves Cruz v. U.P.R., 2000 TSPR 78, 151 DPR 150, 159, 2000 Juris P.R. 91 (2000)*.

[10] Sobre este particular, el *Artículo 1331* del Código Civil de 2020 establece que "[p]or el contrato de arrendamiento, el arrendador se obliga a ceder temporalmente al arrendatario el uso y disfrute de un bien a cambio de un precio cierto". *31 LPRA sec. 10101*.

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 20 of 25        Page 20 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

Puerto Rico de 1930, *31 LPRA ant. sec. 4062*.[11] No obstante, el *Artículo 1456* del Código Civil de Puerto Rico de 1930, *infra*, disponía que cuando un contrato de arrendamiento terminaba y el arrendatario permanecía disfrutando de la cosa arrendada por quince días con la aquiescencia del arrendador, se constituía la tácita reconducción. *31 LPRA ant. sec. 4063*.[12]

En cuanto a la figura de la tácita reconducción, hemos precisado que la misma "no supone una prórroga del contrato original, sino que constituye un contrato nuevo". *Vicar Builders v. ELA et al., supra, pág. 261*. Véase, además, *Dalmau v. Hernández Saldaña, 3 P.R. Offic. Trans. 678, 103 D.P.R. 487, 490 (1975)*. Esto es así porque, por disposición expresa de la ley, el arrendamiento cesa cuando vence su término, extinguiendo así el contrato original, a menos que concurran los requisitos de la tácita reconducción. [*29]  *Art. 1471 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 4092*. Véase, también, *Vicar Builders v. ELA et al., supra, págs. 260-262*; *Cesani Vargas v. Tribunal Superior, 92 P.R.R. 230, 92 DPR 239, 242 (1965)*.

Establecido lo anterior, es de suma importancia destacar que "[p]ara que opere la tácita reconducción, ninguna de las partes puede haber expresado su intención de dar por terminado el contrato de arrendamiento". *Vicar Builders v. ELA et al., supra, pág. 262*. Véase, también, *León Parra v. Gerardino, 58 P.R.R. 494, 58 DPR 489, 496 (1941)*. Asimismo, "se entiende que el arrendador consintió tácitamente a la reconducción si no hace requerimiento o manifestación alguna para que el arrendatario cese en el disfrute de la cosa". *Íd.*

En lo que respecta a la controversia que nos ocupa, recientemente, en *Vicar Builders v. ELA et al., supra*, establecimos que por la ley y por razones poderosas de política pública, la figura de la tácita reconducción no opera en la contratación gubernamental. Esto, debido a que:

---

[11] De igual forma, el *Artículo 1346 (i)* del Código Civil de 2020 expresa que, como parte de las obligaciones del arrendatario, éste deberá "desalojar o restituir el bien arrendado, una vez termina el arrendamiento". *31 LPRA sec. 10162*.

[12] Por su parte, el *Artículo 1335* del Código Civil de 2020 indica que "[l]legado el plazo convenido en el arrendamiento, este continúa en los mismos términos contratados hasta que cualquiera de las partes notifique a la otra su voluntad de resolver el contrato". *31 LPRA sec. 10105*.

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, Peticionarios v. Estado Libre Asociado de Puer....

[l]a naturaleza de la figura de la tácita reconducción no es compatible con las leyes ni con la jurisprudencia que regulan la contratación gubernamental. Cuando opera la tácita reconducción surge un contrato nuevo mediante un acuerdo tácito entre las partes que surge del comportamiento de ambos, el arrendador y el arrendatario. [*30] El acuerdo implícito es lo que caracteriza esa obligación. Sin embargo, para que un contrato otorgado con el Estado vincule a las partes, tiene que constar por escrito. Ese requisito de forma es insoslayable en este tipo de contrato. Por lo tanto, un contrato en el que el Estado es parte no puede surgir de un acuerdo tácito ni de las actuaciones de las partes. (Citas omitidas). *Vicar Builders v. ELA et al., supra, págs. 267-268*.

**Ahora bien, como se puede apreciar, más allá de descartar la figura de la tácita reconducción, en *Vicar Builders v. ELA et al., supra*, nada se dispuso sobre qué remedio, si alguno, tenía disponible el dueño de una propiedad afectada u ocupada físicamente por una entidad del gobierno, cuando -- vencido determinado contrato de arrendamiento y tras un oportuno requerimiento de desalojo -- ésta se niega a desocupar la misma. De eso, precisamente trata el caso ante nos**.

Por último, antes de disponer de la causa de epígrafe, debemos recordar que la acción de desahucio es el medio que tiene el dueño o dueña de un inmueble arrendado para recobrar judicialmente la posesión de éste mediante la expulsión del arrendatario o precarista que se mantiene en la propiedad sin [*31] pagar canon o merced alguna. *Cooperativa v. Colón Lebrón, 2020 TSPR 04, 203 DPR 812, 820 (2020)*; *Adm. Vivienda Pública v. Vega Martínez, 2018 TSPR 84, 200 DPR 235, 240 (2018)*; *Fernández & Hno. v. Pérez, 79 P.R.R. 231, 79 DPR 244, 247 (1956)*. En nuestro ordenamiento jurídico, el trámite de dicha acción está dispuesto en los *Artículos 620* al *634* de la *Ley de Procedimientos Legales Especiales*, contenida en el *Código de Enjuiciamiento Civil*, *32 LPRA secs. 2821-2838*.

En específico, de las aludidas disposiciones legales se desprende que, de forma ordinaria, la acción de desahucio se tramita sumariamente, pues el Estado tiene un interés en atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedida de ejercer su

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 22 of 25   Page 22 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

derecho a poseer y disfrutar de su propiedad. *Cooperativa v. Colón Lebrón, supra, pág. 820*; *ATPR v. SLG Volmar-Mathieu, 2016 TSPR 148, 196 D.P.R. 5, 9 (2016)*; *Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235, 1992 Juris P.R. 44 (1992)*. En particular, "el objetivo de esta acción especial es recuperar la posesión de hecho de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna". *ATPR v. SLG Volmar-Mathieu, supra, pág. 10*. Véase, también, *Fernández & Hno. v. Pérez, supra, pág. 247*.

**Sin embargo, más allá de recuperar la posesión de hecho de determinado bien inmueble, la acción de desahucio nada contempla sobre qué sucede cuando es el Estado quien impide a una persona ejercer su derecho a poseer y disfrutar de su propiedad, [\*32] al permanecer en un inmueble cuyo arrendamiento ha expirado, en contra de la voluntad del dueño. En estos casos, a la doctrina contractual se antepone la garantía constitucional que prohíbe tomar una propiedad privada para un fin público sin consignar el pago de una justa compensación. *Art. II, Sec. 7*, Const. ELA, LPRA, Tomo 1.**

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

III.

En el presente caso, como mencionamos anteriormente, el matrimonio Ortiz Mateo señala que el Tribunal de Apelaciones erró al determinar que el ELA no realizó una incautación física -- de determinada propiedad que le pertenecía a éste -- que activara el derecho a una justa compensación. Tiene la razón.

Y es que, tras una detenida y cuidadosa lectura del expediente ante nos, queda patentemente claro que en el caso de marras: (1) el Estado (entiéndase, el Departamento de Justicia) -- en efecto -- ocupó por un periodo de tiempo la propiedad objeto del presente litigio; (2) que dicha ocupación fue para un fin público; (3) que la misma ocurrió vencido determinado contrato de arrendamiento, y (4) que, a pesar de los requerimientos de entrega de la propiedad por [\*33]

Case:17-03283-LTS   Doc#:24819-19   Filed:07/31/23   Entered:07/31/23 15:46:48   Desc:
Exhibit 19 - Ortiz Zayas v ELA 2023 TSPR 43   Page 23 of 25                  Page 23 of 25
Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta
por ambos, Peticionarios v. Estado Libre Asociado de Puer....

parte de sus propietarios, el Estado hizo caso omiso y continuó ocupando la misma. Lo anterior fue en contra de lo acordado por las partes en su último contrato de arrendamiento, el cual establecía que el Departamento de Justicia entregaría el local al vencer el mismo; cosa que dicha dependencia no realizó hasta 31 meses luego, cuando -- luego de múltiples requerimientos extrajudiciales para que entregara la propiedad -- el matrimonio Ortiz Mateo acudió a los tribunales y solicitó el desahucio de la referida agencia gubernamental.

Ello, a todas luces, constituye una ocupación física, por parte del Estado, de la propiedad perteneciente al matrimonio Ortiz Mateo que activó la figura de la expropiación forzosa a la inversa y, en consecuencia, del derecho a una justa compensación. Se cometieron, pues, los errores señalados.

Ahora bien, tal y como hemos establecido anteriormente, las personas naturales o jurídicas deben ser meticulosas y ejercer un rol más activo al contratar con el gobierno. *Vicar Builders v. ELA et al., supra, pág. 269*. *Véase, también, CMI Hospital v. Depto. Salud, 2007 TSPR 99, 171 DPR 313, 321, 2007 Juris P.R. 105 (2007)*; *Las Marías v. Municipio San Juan, 2003 TSPR 121, 159 D.P.R. 868, 880, 2003 Juris P.R. 122 (2003)*. En ese sentido, aquella persona natural o jurídica que le haya arrendado un inmueble al Estado por determinado periodo de tiempo deberá ser diligente [*34]  y solicitar formalmente que el ente gubernamental desocupe la propiedad tan pronto cese el contrato de arrendamiento.

**La tolerancia del arrendador a la permanencia del Estado en una propiedad, luego de vencido el contrato de arrendamiento, no constituye una incautación física que active el derecho constitucional a la justa compensación por expropiación. Por ello pautamos que, es desde que el arrendador solicita formalmente que se desocupe el inmueble -- si el arrendamiento ya ha vencido -- y el ente gubernamental omite o se rehúsa a desalojarlo, que ocurre una ocupación por parte del Estado que activa la valorización de la justa compensación. Lo anterior es así, pues, es en ese momento en que el Estado, en contra de los deseos de los propietarios, limita el uso y disfrute del derecho a la propiedad privada.**

**Dicho ello pautamos también que, de persistir la negativa del Estado a desocupar el inmueble, el arrendador deberá ser diligente y acudir a los tribunales con premura para vindicar su derecho propietario**. De esta manera podemos proteger tanto el derecho constitucional al disfrute de la propiedad, como los fondos gubernamentales del País.

IV.

Para finalizar, y a modo de epílogo, en el [*35] pasado, este Tribunal advirtió que situaciones como la que hoy nos ocupa podrían ocurrir y, para esas instancias, estableció que eran las personas naturales y jurídicas que contrataban con el gobierno las que debían ser diligentes y establecer cláusulas contractuales para que no se vieran afectados sus derechos. Esto se debe a las normas firmemente establecidas en nuestro ordenamiento jurídico sobre contratación gubernamental y la prohibición de la aplicación de la tácita reconducción en este tipo de contratación.

Hoy, nuevamente, -- para evitar controversias como la que aquí nos ocupa -- hacemos el mismo llamado que previamente, y por voz del Juez Asociado señor Martínez Torres, este Tribunal realizó en *Vicar Builders v. ELA et al., supra*. Allí sentenciamos que situaciones como las que hoy atendimos:

> puede[n] preverse en el contrato de arrendamiento, pactando de antemano bajo qué condiciones se extendería el arrendamiento, por cuánto tiempo adicional y cuál será el canon a pagar. Incluso, y sin pretender ser exhaustivos, las partes cuentan con la alternativa de incluir cláusulas penales en sus contratos para evitar que una parte se vea afectada ante el incumplimiento de la otra. *Vicar Builders v. ELA et al., supra, págs. 269-270*. [*36]

V.

Por los fundamentos antes expuestos, se revoca la Sentencia emitida por el Tribunal de Apelaciones, la cual revocó la *Resolución* del Tribunal de Primera Instancia y desestimó con

Eddie Alberto Ortiz Zayas, su esposa Ada Irma Mateo Ortiz y la Sociedad Legal de Gananciales compuesta por ambos, Peticionarios v. Estado Libre Asociado de Puer....

perjuicio la causa de acción del matrimonio Ortiz Mateo. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto y, en particular, para establecer la justa compensación a la que tiene derecho el matrimonio Ortiz Mateo.

Se dictará *Sentencia* de conformidad.

Ángel Colón Pérez

Juez Asociado

SENTENCIA

En San Juan, Puerto Rico a 5 de abril de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones, la cual revocó la *Resolución* del Tribunal de Primera Instancia y desestimó con perjuicio la causa de acción del matrimonio Ortiz Mateo. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto y, en particular, para establecer la justa compensación a la que tiene derecho el matrimonio [*37]  Ortiz Mateo.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez

Secretario del Tribunal Supremo

---

**End of Document**