## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) PROMESA |
| | ) Title III |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) No. 17 BK 3283-LTS |
| | ) |
| as representative of | ) (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, | ) |
| *et al.* | ) |
| | ) |
| Debtors. | ) |
| | ) |
| In re: | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) No. 17 BK 4780-LTS |
| as representative of | ) |
| PUERTO RICO ELECTRIC POWER | ) |
| AUTHORITY ("PREPA") | ) |
| | ) |
| Debtor.[1] | ) **Re: 17-BK-04780-LTS, ECF No.** |
| | ) **3155** |
| | ) |

## JOINT STATUS REPORT PURSUANT TO
## JANUARY 18, 2023 RULING ORDERING FURTHER STATUS REPORT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura T. Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with PREPA and the Oversight Board, the "Government Parties") and Cobra Acquisitions LLC ("Cobra" and, together with the Government Parties, the "Parties"), respectfully submit this joint Status Report pursuant to the Court's *Order Setting Deadline for Further Status Report* [ECF No. 3155][2] (the "Status Report Order").  The Parties respectfully state as follows:

## I.    Background

1.    On January 18, 2023, the Title III Court issued the Status Report Order, continuing the litigation stay on Cobra's *Motion for Allowance and Payment of Administrative Expense Claims*, dated September 30, 2019 [Case No. 17-3283, ECF No. 8789] (the "Administrative Expense Motion"), and directing the Parties to file this Status Report addressing the following items: (i) the status of any administrative appeals in connection with the November 2022 and December 2022 determination memoranda (each, a "DM") issued by FEMA regarding the second contract between PREPA and Cobra (the "Second Contract"), (ii) the status of the criminal case, and (iii) a summary of the outstanding unpaid amounts arising from the first contract between PREPA and Cobra (the "First Contract" and, together with the Second Contract, the "Contracts") and the Second Contract and whether the Government Parties dispute Cobra's entitlement to these amounts.  *See* Status Report Order.

---

[2] Docket numbers refer to Case No. 17-4780 unless otherwise noted.

2.      On May 16, 2023, Cobra filed *Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3507] (the "Stay Modification Motion"), seeking to modify the litigation stay to permit motion practice on the allowance of the Approved Unpaid Invoices.[3] The Government Parties opposed the Stay Modification Motion [ECF No. 3541] (the "Stay Modification Objection"), including on the basis the invoices remained subject to review and validation by PREPA at that time.

3.      On June 8, 2023, the Title III Court held a hearing on the Stay Modification Motion. At the conclusion of the hearing, the Title III Court requested that Cobra file on notice of presentment an order requiring PREPA by June 14, 2023 to report as to the remaining steps for PREPA to review and validate the Approved Unpaid Invoices and the timetable on which PREPA proposed to complete such review, as well as PREPA's information as to the Central Office for Recovery, Reconstruction and Resilience's ("COR3") timeframe to complete their additional review. *See* June 8, 2023 Hr'g Tr. 30:2-6.  In addition, the Title III Court stated that it would "leave the July 31 reporting deadline in place [for this Status Report], and we'll see where we go in terms of focus on this 99 million [i.e., the Approved Unpaid Invoices] once we have a sense of the timetable." *Id.* at 30:7-10.

4.      On June 13, 2023, the Title III Court issued the *Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* [Case No. 17-BK-3283, ECF No. 24547], requiring PREPA to provide an update on the status of PREPA's review and validation of the Approved Unpaid Invoices.  On June 14, 2023, the Government Parties filed an informative motion

---

[3] "Approved Unpaid Invoices" means Cobra's invoices to PREPA under the Second Contract that FEMA determined were eligible for reimbursement with public assistance funding, for which Cobra had not been paid as of the filing of the Stay Modification Motion.  Specifically, public assistance funding from FEMA in an aggregate amount of approximately $210 million was obligated on or about March 27, 2023, of which a substantial portion are the Approved Unpaid Invoices.  The balance of the funding is in respect of invoices for which Cobra has been paid by PREPA already.

with the information requested by the Title III Court. *Informative Motion of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3754] (the "Invoice Status Report").

5.  On July 10, 2023, Cobra filed the *Informative Motion of Cobra Acquisitions LLC's [sic] in Connection with the Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3834] (the "Informative Motion"), informing the Title III Court that the expected timetable for completion of PREPA's review and submission of the invoices to COR3 had been delayed. The Title III Court subsequently issued an order requiring the Government Parties to respond to the Informative Motion [ECF No. 3840].

6.  On July 21, 2023, the Government Parties filed the *Joint Response of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority to the Informative Motion of Cobra Acquisitions LLC in Connection With the Order Regarding Cobra Acquisitions LLC's Motion to Modify Stay Order* [ECF No. 3857] (the "Informative Motion Response"). The Government Parties explained in the Informative Motion Response the delay resulted from circumstances learned during the validation process undertaken after the filing of the Invoice Status Report. The Government Parties have been diligently attempting to address this issue since the issue came to their collective attention.

## II.  Status Regarding FEMA Appeals

7.  FEMA has issued two DMs on the eligibility analysis of costs claimed under the Second Contract. PREPA filed first-level administrative appeals of each of FEMA's DMs under the Second Contract in January and February 2023. The appeals challenge FEMA's denial of approximately $73.7 million invoiced by Cobra under the Second Contract. As required by

regulation, COR3, the Puerto Rico government agency that serves as the pass-thru entity for FEMA

funds, forwarded PREPA's first-level appeals to FEMA in March and April 2023.  The appeals are

now under FEMA review.  The Government Parties have not received any communications or

contact with FEMA since the appeals were filed.

### III.   Status Regarding Criminal Case

8.     On May 18, 2022, the District Court presiding over the criminal case against

Cobra's former president, Donald Keith Ellison, approved a plea agreement by Mr. Ellison.  See

ECF Nos. 3, 5, *U.S. v. Ellison*, Case No. 22-cr-00220 (D. P.R.).  Pursuant to the plea agreement,

Mr. Ellison pled guilty to a gratuity charge under 18 U.S.C. § 201.  *Id.*  The stipulation of facts

filed as part of the plea agreement related to a proposal by Cobra to reconstruct the electrical grid

on the island of Vieques in Puerto Rico.  *Id.*  Cobra was not awarded this contract.

9.     At the sentencing hearing on December 13, 2022, the U.S. Government introduced

no additional evidence.  The District Court dismissed the indictment on the same day.  *See* ECF

No. 31, U.S. v. Ellison, Case No. 22-cr-00220 (D. P.R.).

10.    The criminal case, therefore, has been resolved.

### IV.   Summary of Outstanding Amounts Under the First and Second Contracts and Whether the Government Parties Dispute Cobra's Entitlement to Those Amounts

A.     <u>First Contract</u>

11.    Cobra believes it is owed no less than approximately $69 million under the First

Contract, excluding interest.  *See* Administrative Expense Motion, Ex. A (PREPA Receivable

Summary).[4]  The Government Parties dispute Cobra's entitlement to any further payment based on the First Contract.

12.     The majority of the unpaid amounts under the First Contract relate to tax reimbursements.  Specifically, Exhibit B to the First Contract contains a "tax gross up" or "TGU" provision, which provides, "[i]n the event any amounts to be paid to [Cobra] under this Contract are subject to any taxes (including withholding) imposed by any governmental authority of Puerto Rico in excess of 8.5% and [Cobra] has not obtained an exemption from such taxes, the amount to be paid to [Cobra] shall be increased by an amount that, after the payment of such taxes, leaves [Cobra] with the amount that [Cobra] would have received if [Cobra] had been exempt from all such taxes."  PREPA and Cobra disagree as to the correct amount of TGU and have been exchanging information in an attempt to reconcile the discrepancy.  Cobra believes it is entitled to approximately $62 million in TGU.  Cobra has invoiced PREPA more than $77 million in TGU of which PREPA has paid nearly $16 million.  PREPA's position is that Cobra's claimed TGU is substantially overstated and does not represent actual taxes paid to the Government of Puerto Rico in excess of 8.5%, and that no further TGU is owed to Cobra.

13.     The balance of the amounts owed under the First Contract relate to work performed in connection with Hurricane Beryl, mobilization and other miscellaneous invoices.  The amount of these unpaid amounts is approximately $7.5 million.  PREPA disputes Cobra's entitlement to these amounts.

---

[4] Cobra reserves its rights to amend, supplement or modify the Administrative Expense Motion, and the amounts for which Cobra seeks allowance of an administrative expense claim.  Without limiting the generality of the foregoing, Cobra invoiced PREPA $46.2 million for municipal and construction excise taxes in February 2023.  These amounts were not previously invoiced as they were not yet payable by Cobra when Cobra filed the Administrative Expense Motion.  PREPA disputes any obligation to pay this amount.

14.     Finally, the First Contract provides for a finance charge of 1% per month on payments made after the date due.  As of June 2023, Cobra has invoiced PREPA for approximately $72.3 million in interest under the First Contract.[5]  PREPA disputes Cobra's interest demand and calculations.

B.     <u>Second Contract</u>

15.     Cobra believes it is owed no less than approximately $135 million under the Second Contract (less the amounts PREPA has recently paid), excluding interest.  *See* Administrative Expense Motion, Ex. A (PREPA Receivable Summary).[6]  The Government Parties dispute Cobra's entitlement to portions of the approximately $135 million figure.

16.     Specifically, with respect to the Second Contract, FEMA has issued two DMs for the projects formulated to capture costs of the Second Contract.  Project Worksheet (PW) 466 (also referred to as Grants Manager Project (GMP) 49848) captures costs under the Second Contract reimbursed at 100% federal share.  PW 11211 (also referred to as GMP 49831) captures costs under the Second Contract reimbursed at 90% federal share.[7]

17.     FEMA issued a DM on November 21, 2022 for PW 466 / GMP 49848.  In this DM, FEMA determined $5,599,775.33 in costs are ineligible for reimbursement because the costs "are

---

[5] Interest charges under the First Contract are not eligible for reimbursement by FEMA and thus FEMA has not reviewed or approved such amounts.

[6] As with the First Contract, there are amounts due to Cobra that Cobra did not include in the Administrative Expense Motion at the time it was filed, but for which Cobra will seek allowance of when the litigation stay is lifted.  These include, among others, work performed on a project referred to as Roosevelt Roads (approximately $9.9 million) and demobilization expenses (approximately $27.5 million).

[7] A summary of all FEMA projects for Cobra-related costs is provided in the chart below:

| PW No. | GMP No. | Contract | Date Range of Costs Incurred | Federal Cost Share |
|--------|---------|----------|------------------------------|--------------------|
| 251 | 49797 | First Contract | October 19, 2017 to July 20, 2018 | 100% |
| 466 | 49848 | Second Contract | July 21, 2018 to August 16, 2018 | 100% |
| 11211 | 49831 | Second Contract | Aug. 17, 2018 to May 26, 2019 | 90% |

not supported by the terms of [the Second Contract] and/or cannot be tied to the performance of eligible work." (DM at 8 of 11).[8]  PREPA has already paid Cobra $52,018,933.94 for work associated with PW 466 / GMP 49848, which is more than the amount FEMA determined eligible for reimbursement for the applicable invoices.  Thus, FEMA's decision in the November 2022 DM did not result in additional funds to PREPA for Cobra-related costs, or further payments to Cobra. Cobra disagrees that FEMA's decisions are determinative of PREPA's liability.

18.    In addition, FEMA issued a separate DM on December 21, 2022 for PW 11211 / GMP 49831.  In this DM, FEMA determined $233,683,116.76 in costs to be eligible and determined that $68,061,726.22 is ineligible for reimbursement because the costs "are not supported by the terms of [the Second Contract] and/or cannot be tied to the performance of eligible work." (DM at 8 of 11).[9]

19.    In    its    DM,    FEMA    determined    $233,683,116.76    in    costs    under PW 11211 / GMP 49831 are eligible for reimbursement.  FEMA obligated this funding at the applicable 90% federal cost share—$210,314,805.09—in March 2023.  In April, PREPA submitted a request for reimbursement to COR3 for the portion of FEMA's approved costs that were already paid to Cobra—$130,206,424.49.   COR3 disbursed FEMA's 90% share of this amount— $117,157,073.80—to PREPA on June 22, 2023.  The remaining $103,476,692.31 of FEMA-approved costs (which FEMA has obligated at a 90% share—$93,129,023.08) are amounts charged by Cobra in the Approved Unpaid Invoices.  PREPA was not in a position to request this amount from COR3 when FEMA obligated the funds in March 2023, because they remained subject to

---

[8] Details regarding the reasons for FEMA's ineligibility determinations are set forth in the Parties' January 7, 2023 Joint Status Report, ECF No. 3146 (the "January 2023 Status Report"), at 4.

[9] Details regarding the reasons for FEMA's ineligibility determinations are set forth in the January 2023 Status Report at 5-6.

PREPA's internal review and validation as detailed in the Stay Modification Objection and the Informative Motion Response.

20.     Unlike the First Contract, the Second Contract does not include a TGU provision, so there are no open issues between the Parties as to PREPA's liability for Cobra's taxes under the Second Contract.

21.     Finally, like the First Contract, PREPA's liability for and the amount of interest Cobra claims is disputed.  As of June 2023, Cobra has invoiced PREPA approximately $102.2 million in interest under the Second Contract.  As noted above, PREPA disputes Cobra's interest demand and calculations.

**V.     Status of Invoice Review**

22.     As expressed in both the Invoice Status Report and the Informative Motion Response, PREPA continues to diligently review the Approved Unpaid Invoices, and this process is now close to conclusion.  As detailed in the Invoice Status Report and the Informative Motion Response, most of the Approved Unpaid Invoices are missing the engineer certification required by PREPA's internal review procedures and the terms of the Second Contract.  All other steps in the review process for all of these invoices have been completed.  For those invoices that did have the engineer certification, PREPA paid Cobra approximately $10.7 million in June and has since recommended for payment approximately $9 million, for a total of approximately $20 million. PREPA is currently working on a solution regarding the missing engineer certifications for approximately $83.4 million in Approved Unpaid Invoices that remain unpaid so valid charges can be paid by PREPA and/or submitted to COR3 for payment as soon as possible.  Additionally, PREPA has identified approximately $1.5 million in charges contained in these invoices it disputes

for various reasons.  Attached hereto as **Exhibit A** is a further update on the status of all Approved Unpaid Invoices.

### VI.   Status of Settlement Negotiations

23.   As previously reported to the Court, the Oversight Board made an illustrative settlement proposal (subject to formal Oversight Board approval) to Cobra on April 3, 2023.  Cobra declined to respond until receipt of payment on the Approved Unpaid Invoices.  The Parties recently agreed to enter mediation to attempt to resolve their remaining disputes.  The Parties will contact the mediation team this week and hope that mediation will begin in the following weeks.

### VII.   Parties' Positions

#### a.   Government Parties' Position

24.   Given the intention of the Parties to begin mediation sessions in the coming weeks, the Government Parties submit it is inappropriate to commence litigation at this time.  Instead, the Government Parties request the Title III Court maintain the litigation stay through at least October 31, 2023 to allow mediation to proceed and hopefully yield a settlement.  In addition, continuing the stay of litigation would conserve both the Parties' and the Title III Court's resources while the Oversight Board advances its amended plan of adjustment, and avoid motion practice on issues that may be resolved through out-of-court agreements.

25.   Moreover, the Oversight Board is currently in the process of negotiating and drafting a third amended plan of adjustment for PREPA, for which it intends to pursue confirmation as expeditiously as practicable.  As the Title III Court has recognized on multiple occasions, PREPA is under no obligation to satisfy the Administrative Expense Claim until consummation of a plan of adjustment.  *See, e.g.*, [ECF No. 2590] at 5 ("PREPA's ability to fund a reserve or resolve [Cobra's] claim, and issues regarding the appropriate magnitude of the claim, can be addressed in the context of confirmation."); June 29, 2022 Hr'g Tr. at 26:1-4 ("[W]e have the practical situation

that PREPA is not, in the Title III context, required to make the payment to your client until there is a confirmation proceeding to the extent it's going to be paid as an administrative claim."), 41:12-14 ("[T]he Court also notes that the prejudice being suffered by Cobra isn't materially different from that of others who are awaiting payments of administrative expense claims.").  Additionally, as explained above, PREPA intends to pursue payment of undisputed charges in the Approved Unpaid Invoices, either from its own funds or federal funds from COR3, as quickly as it can and not conditioned on the results of mediation.  Thus, Cobra would not be prejudiced in any way by maintaining the stay of litigation of the Administrative Expense Motion through October 31, 2023. Continuing the stay would also allow for the further development of a complete record, as during such time PREPA will work to pursue the outstanding FEMA administrative appeals and any further appeals as appropriate.  Even if mediation does not result in a settlement of all issues, the Government Parties are optimistic that it can, at a minimum, narrow or better define the litigation issues requiring Court intervention.

   **b.  Cobra's Position**

26.    The Government Parties, once again, opt for delay to Cobra's substantial prejudice. Cobra completed its work in March 2019.  Cobra submitted, with limited exceptions, all its invoices to PREPA by July 2019.  Under the express terms of the Contracts, PREPA was required to determine whether the invoice adhered to the contract and approve the invoice within 15 calendar days after receipt.  PREPA failed to do so when required, both initially and apparently when submitting invoices to FEMA for public assistance funding.  Of course, for the approximately $130 million in invoices PREPA had already paid Cobra, PREPA was able to timely ensure that it had the documentation it apparently requires.  Because of PREPA's failure to approve invoices timely and in accordance with its contractual obligations at the time Cobra submitted the invoices, Cobra is now being subjected to an indefinite wait for PREPA to develop a "solution" to

10

missing engineer certifications—four years after the work was performed, and when apparently PREPA no longer has any personnel with the requisite authority—so that PREPA can submit the Approved Unpaid Invoices to COR3 (which, in turn, has its own review process).   To be clear, FEMA has already reviewed and approved the Approved Unpaid Invoices; whatever additional process PREPA believes it must complete defies the reality of the past four years, when Cobra's invoices and costs have been subject to an extraordinary amount of scrutiny by FEMA and other third parties.  PREPA can and should simply pay Cobra the remaining balance of the Approved Unpaid Invoices now without further delay.

27.     Since PREPA stopped paying Cobra in the summer of 2019, and as well-documented throughout the nearly four years during which this litigation stay has been imposed, Cobra has sought repeatedly to engage directly with PREPA, to resolve disputes consensually and to litigate matters the parties could not resolve consensually—only to be generally pushed aside and baselessly maligned.  Cobra has, at its own expense, dedicated substantial personnel resources to help PREPA and incurred significant legal costs to hold PREPA to its contractual obligations and ensure Cobra was paid for the work it indisputably performed to PREPA's benefit.

28.     But, in the Government Parties' conception, it is only *their* convenience that matters, as if, notwithstanding the plain terms of the contracts, PREPA will not bear the substantial costs of its delay.  Having opted to push off a resolution until now (despite the myriad earlier opportunities) or even abide by their contractual obligations to review and approve invoices in a timely manner, the Government Parties ask that the Title III Court recognize the inconvenience it would be to litigate with Cobra given the dedication of resources to PREPA's plan of adjustment. This purported hardship—and it appears to be the Government Parties' only remaining rationale for maintaining the stay, given the resolution of the criminal case and the effective completion of

11

the FEMA process—is indisputably insufficient.  The law requires a balancing of interests, and this purported hardship to PREPA surely pales in comparison to the severe and substantial prejudice that Cobra has suffered throughout the nearly four years the litigation stay has been in place.  Furthermore, it is simply incorrect that Cobra would not be prejudiced by continuing the stay because PROMESA does not require payment of allowed administrative expenses until consummation of a plan of adjustment.  The Government Parties, as before, conflate allowance of Cobra's claim with payment of its claim, and pretend that there is no clear benefit to both Cobra and PREPA to determine the amount of the allowance in advance of confirmation and otherwise.

29.     Accordingly, Cobra submits that avoiding setting a litigation schedule is precisely the wrong tack to take.  As time has shown, if PREPA is given an inch, it will take a mile.  If the Title III Court does not set a timeline toward resolution (and, indeed, even then there is little assurance, since PREPA has so far not abided by its own timelines on the Approved Unpaid Invoices), the Government Parties' pattern of behavior is that they will, again and again, find new obstacles to stand in the way of prompt payment.  Cobra is of course dedicated to conducting mediation in good faith and fully expects that the Parties can reach a consensual resolution through that process.  But resolution is not assured, and Cobra has faced four years of delay that it never bargained for.  Cobra strongly believes that committing to a litigation schedule now will focus the Parties on achieving a mutually beneficial resolution through mediation while simultaneously ensuring, if such a resolution is not possible for all or a subset of the Parties' disputes, that the Parties can pivot efficiently and without unnecessary delay toward a judicial resolution.  If progress is being made in mediation, the Parties can seek to adjourn any briefing and hearing dates as applicable.

30.     Accordingly, Cobra respectfully submits that the stay applicable to the Administrative Expense Motion be lifted and the Parties be required to submit a litigation schedule that may be adjourned so long as mediation is continuing.

[*Remainder of page intentionally left blank*]

New York, New York
July 31, 2023

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/  *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/  *Paul V. Possinger*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com
* admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board as representative of the
Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Katiuska Bolaños*
Katiuska Bolaños
kbolanos@diazvaz.com
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918
Tel. (787) 395-7133
Fax. (787) 497-9664

**REICHARD & ESCALERA, LLC**

By: /s/  *Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez (No. 122609)
Sylvia M. Arizmendi (No. 210714)
Carlos R. Rivera-Ortiz (No. 303409)
REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888
Email:  escalera@reichardescalera.com
arizmendis@reichardescalera.com
riverac@reichardescalera.com

**AKIN GUMP STRAUSS HAUER & FELD
LLP**

By: /s/  *Scott M. Heimberg*
Scott M. Heimberg (pro hac vice)
sheimberg@akingump.com
Allison S. Thornton (pro hac vice)
athornton@akingump.com
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

and

Ira S. Dizengoff (pro hac vice)
Philip C. Dublin (pro hac vice)
Abid Qureshi (pro hac vice)
idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Co-Attorneys for Puerto Rico Electric Power*
*Authority*                                              *Attorneys for Cobra Acquisitions LLC*

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/  *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
mdiconza@omm.com
-and-
Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414
pfriedman@omm.com
-and-
Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal*

*Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*

## **Exhibit A**

Approved Unpaid Invoices Review Process Summary