UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

<u>MEMORANDUM ORDER CONCERNING MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Before the Court is the motion titled *Motion for Relief from Automatic Stay* (Docket Entry No. 21912 in Case No. 17-3283)[2] (the "Motion") filed on behalf of Cruz Alberto Rivera Quiñones ("Rivera"), Luis F. Cruz Figueroa ("Cruz"), Cruz Rivera Aviles, Carmen Quiñones Figueroa, Hainze Rivera Quiñones, Lorrainne Quiñones Jorge, Nicmari Rodriguez Colon, Jorge David Rivera Vega, CJRV, Derek Rivera Rodriguez, Maria De Los Angeles

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]     Unless otherwise noted, all references herein to Docket Entry Nos. are references to Case No. 17-3283.

Figueroa Quero, Alexandra M. Davila Sierra, and CCD (collectively the "Movants"). Movants are plaintiffs in the lawsuit captioned Rivera Quiñones et al. v. Commonwealth of Puerto Rico et al., No. 15-cv-02382 (the "Action") which was filed in the United States District Court for the District of Puerto Rico. The Action seeks monetary relief against the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Police Department (the "PRPD"), and certain PRPD officials, among others, arising out of Rivera and Cruz's employment with the PRPD and alleged work as undercover agents for the Federal Bureau of Investigation (FBI) prior to the commencement of the Commonwealth's Title III case (the "Title III Case"). The Court has carefully considered the Motion and the *Objection of the Commonwealth of Puerto Rico to Motion for Relief from Automatic Stay* (Docket Entry No. 22499) (the "Objection"). For the following reasons, the Court holds that the automatic stay imposed by section 362 of the Bankruptcy Code in connection with the Title III Case has expired, and that Movants' claims, to the extent they assert prepetition claims against the Commonwealth and the PRPD for which no proof of claim was filed, were discharged by confirmation of the *Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (Docket Entry No. 19784) (the "Plan"), and Movants are now subject to a permanent injunction barring further prosecution of the Action with respect to any such claims.

BACKGROUND

Except where otherwise indicated, the following recitation of facts is drawn from the Motion, Reply, and the Second Amended Complaint filed in the Action. See Second Amended Complaint, Rivera Quiñones et al. v. Commonwealth of Puerto Rico et al., No. 15-cv-02382-PAD (D.P.R. October 24, 2016), ECF No.186 (the "Second Amended Complaint").

A. <u>Background of the Action</u>

In 2008, Rivera and Cruz were both employees of the Commonwealth working for the PRPD. <u>See</u> Second Am. Compl. ¶¶ 89-94. Between 2008 and 2009, Rivera and Cruz were allegedly contracted by the FBI to serve as undercover agents to investigate corruption within the PRPD. (Mot. ¶ 6.) Rivera and Cruz allege that their work as undercover agents led to the arrest of eighty-nine PRPD employees, many of whom were convicted of federal crimes. (Mot. ¶¶ 6-7.) As a result of the investigation and subsequent arrests, Rivera, Cruz, and their family members allegedly received death threats and experienced workplace retaliation at the PRPD. (Mot. ¶¶ 9-14.) Movants assert that the threats and retaliation required all of them to change homes or leave the Commonwealth for their safety. (Mot. at 4-5 ¶¶ 18-30.)

On September 30, 2015, Movants—comprising Rivera, Cruz, and many of their family members[3]—commenced the Action in the United States District Court for the District of Puerto Rico. In their Second Amended Complaint, filed on October 24, 2016, Movants asserted claims against multiple defendants including the Commonwealth, the PRPD, PRPD officials, and FBI officials. <u>See generally</u> Second Am. Compl. Movants seek declaratory, injunctive, and monetary relief based on claims arising under federal law[4] and Puerto Rican law for alleged harm suffered because of Rivera and Cruz's work as undercover FBI agents. <u>See</u> Second Am. Compl. ¶¶ 246-58. (Mot. ¶¶ 1-5.) On December 7, 2016, the Commonwealth, the PRPD, and other defendants filed a motion to dismiss the Action. <u>See</u> *Motion to Dismiss for Failure to State a Claim and Want of Subject Matter Jurisdiction*, <u>Rivera Quiñones et al. v. Commonwealth of</u>

---

[3] "CJRV" and "CCD" are the minor children of Rivera and Cruz, respectively. <u>See</u> Second Am. Compl. ¶¶ 57, 61.

[4] The federal causes of action asserted in the Second Amendment Complaint include claims brought under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO). (Mot. ¶¶ 1-3.)

Puerto Rico et al., No. 15-cv-02382-PAD (D.P.R. December 7, 2016), ECF No. 204 (the "Motion to Dismiss"). (Obj. ¶ 9.)

On September 4, 2017, prior to any ruling on the Motion to Dismiss, the Commonwealth, the PRPD, and other defendants filed an informative motion regarding the automatic stay in the Commonwealth's Title III case. See *Motion Regarding Notice of Automatic Stay and Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III Case*, Rivera Quiñones et al. v. Commonwealth of Puerto Rico et al., No. 15-cv-02382-PAD (D.P.R. September 4, 2017), ECF No. 274 (the "Notice of Automatic Stay"). (Obj. ¶ 10.) The court stayed the Action on September 30, 2017. See *Order*, Rivera Quiñones et al. v. Commonwealth of Puerto Rico et al., No. 15-cv-02382-PAD (D.P.R. September 30, 2017) ECF No. 275 (the "Stay Order"). (Obj. ¶ 10).

B. The Commonwealth's Title III Case and Plan of Adjustment

On May 3, 2017 (the "Petition Date"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") commenced the Title III Case in this Court on behalf of the Commonwealth pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[5]

On February 15, 2018, the Court issued its *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (Docket Entry No. 2521) (the "Initial Bar Date Order"), setting May 29, 2018, as the deadline for filing proofs of claim concerning claims (as defined in section 101(5) of the Bankruptcy Code, 11 U.S.C. § 101(5)) against the Commonwealth that arose prior to the Petition Date. On May 25,

---

[5] PROMESA is codified at 48 U.S.C. §§ 2101 et seq. References herein to "PROMESA" section numbers are to the uncodified version of the legislation.

2018, the Court extended that deadline to June 29, 2018 (the "Bar Date"). (See *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof*, Docket Entry No. 3160 (the "Bar Date Extension Order").)

On January 18, 2022, the Court confirmed the Plan. (See *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Docket Entry No. 19813 (the "Confirmation Order").) The Plan became effective on March 15, 2022 (the "Effective Date"). (See *Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date*, Docket Entry No. 20349.)

DISCUSSION

Through the Motion, Movants seek relief from the automatic stay imposed by section 362 of the Bankruptcy Code to continue litigating the Action. (Mot. at 6 ¶ 23.) Movants argue that they are entitled to relief because the stay under section 362 "cannot be extended to non-debtor defendants." (Mot. at 6 ¶ 25.) Furthermore, Movants argue, there is "cause" for the Court to modify the stay under section 362(d) of the Bankruptcy Code. (Mot. at 7-8 ¶¶ 29-30 (analyzing some of the factors enumerated in Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990)).)

As explained below, on the Effective Date of the Plan, the Commonwealth was granted a discharge from a broad range of claims, and the automatic stay under section 362 of the Bankruptcy Code was terminated. See 11 U.S.C. § 362(c)(2)(C). Although the automatic stay no longer precludes the assertion of Movants' claims against the Commonwealth and the PRPD,

Movants' claims against those entities cannot go forward because they have been discharged under the Plan of Adjustment and are permanently enjoined by the Plan.

    A.    <u>Movants' Claims Against the PRPD Are Claims Against the Commonwealth</u>

Movants argue that the automatic stay does not apply to "non-debtor defendants," but do not specify which defendants they believe are "non-debtor defendants." (Mot. at 6 ¶¶ 25-26.) To the extent Movants seek relief to litigate their claims against the PRPD, Movants' claims against the PRPD are claims against the Commonwealth and thus are claims against the Debtor. <u>See</u> <u>Reyes v. Supervisor of DEA</u>, 834 F.2d 1093, 1097-98 (1st Cir. 1987) (holding that the Eleventh Amendment precluded claims against the PRPD and PRPD officials in their official capacity "since [such claims] must, if successful, be satisfied from the coffers of the Commonwealth of Puerto Rico."); (<u>see</u> also *Informative Motion Regarding Entities Constituting the Central Government of the Commonwealth* Docket Entry No. 2828, ¶¶ 7-8, Ex. B at 3 (listing the "Puerto Rico Police Bureau"[6] or "Negociado de la Policia de Puerto Rico" as a governmental entity that comprises the central government of the Commonwealth and should be considered inseparable from the Commonwealth).)

    B.    <u>The Automatic Stay Under Section 362 Has Been Superseded by a Permanent Injunction</u>

Upon the commencement of a case under Title III of PROMESA, the automatic stay—which is codified in section 362 of the Bankruptcy Code—prohibits the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

---

[6]     The "Puerto Rico Police Department" or "PRPD" is the more common title for the Puerto Rico Police Bureau. <u>See</u> Hernández-Zorrilla v. Roselló-Nevares, No. 19-1397 (SCC), 2021 WL 1931956 at *1 n.1 (D.P.R. May 12, 2021)

commencement of the case . . . , or to recover a claim against the debtor that arose before the commencement of the case … [.]" 11 U.S.C.A. § 362(a)(1) (Westlaw through P.L. 118-10). Section 362(d) permits parties in interest to seek relief from the automatic stay, including for "cause." See 11 U.S.C. § 362(d). Additionally, under section 362(c)(2)(C), the automatic stay expires at the time a discharge is granted. 11 U.S.C. § 362(c)(2)(C).[7]

Paragraph 56 of the Confirmation Order and section 92.2 of the Plan set forth the scope of the discharge that took effect upon the Effective Date:

> (a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever . . . . Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.
>
> (b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or

---

[7] The plain language of 11 U.S.C. § 362(c)(2)(C) refers only to cases "under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13" of the Bankruptcy Code. 11 U.S.C.A. § 362(c)(2)(C) (Westlaw through P.L. 118-10). Section 301(d) of PROMESA, however, provides that "a reference to 'this title', 'this chapter', **or words of similar import** in a section of title 11, United States Code made applicable in a case under this title shall be deemed to be a reference to this title." 48 U.S.C.A. § 2161(d) (Westlaw through P.L. 118-10) (emphasis added).

> Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property, all such Claims.

(Confirmation Order ¶ 56(b); see also Plan § 92.2(b).) Pursuant to those provisions, upon the occurrence of the Effective Date (as that term is defined in the Plan) on March 15, 2022, the Commonwealth was granted a discharge from a broad range of claims and, under section 362(c)(2)(C) of the Bankruptcy Code, the automatic stay terminated. See 11 U.S.C. § 362(c)(2)(C).

Furthermore, the automatic stay has been superseded by a permanent injunction (the "Plan Injunction") that has an effect similar to that of the automatic stay and does not expire,

even upon dismissal of the Commonwealth's Title III case. See 11 U.S.C. §§ 524(a)(2), 944(b). (See also Plan § 92.3; Confirmation Order ¶ 59.)

        C.        <u>Movants' Claims Against the Commonwealth and the PRPD Have Been Discharged and Permanently Enjoined by the Plan Injunction.</u>

Although the automatic stay no longer precludes the assertion of Movant's claims against the Commonwealth and the PRPD, any such claims have been discharged by the Plan and cannot be pursued because they are subject to the Plan Injunction.

Movants were required to file a proof of claim prior to the Bar Date to have any prepetition claims addressed within the Commonwealth's Title III proceedings. (See Initial Bar Date Order ¶ 15 ("[A]ny creditor who fails to file a proof of claim on or before the applicable Bar Date … with respect to such claim: (a) shall not be treated as a creditor of the Debtors for purposes of voting upon or receiving distributions under any plan of adjustment in these Title III Cases, and (b) shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors or thereafter filing a proof of claim thereto in these Title III Cases (unless otherwise ordered by the Court), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim.").)

Movants did not file a proof of claim with respect to their claims against the Commonwealth in the Title III case. The result of Plan confirmation and the occurrence of the Effective Date is that all claims against the Commonwealth arising prior to the Effective Date and not expressly provided for under the Plan have been discharged. See 11 U.S.C. § 944(b). (See also Plan § 92.2(b); Confirmation Order ¶ 56(b).) Movants' claims, which were not filed, were not expressly provided for under the Plan. Thus, upon occurrence of the Effective Date, Movants' prepetition claims against the Commonwealth—which include their claims against the PRPD—were discharged and subject to the Plan Injunction. Movants therefore cannot proceed

with the Action because they are permanently enjoined by the terms of the Plan from pursuing those claims. See In re Residential Cap., LLC, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014) (denying a movant's post confirmation motion to lift the stay because movant had failed to file a proof of claim and their claims were discharged and permanently enjoined by the confirmed plan).

## CONCLUSION

In conclusion, Movants' claims against the Commonwealth and the PRPD were subject to the automatic stay and, upon the Effective Date of the Plan, final disposition in the Commonwealth's PROMESA Title III Case. Now that the Plan for the Commonwealth, which bars recovery on claims that were not timely filed, has been confirmed and has become effective, Movants' Action cannot be prosecuted as to the claims against the Commonwealth and the PRPD. Those claims have been discharged and are permanently subject to the Plan Injunction. The Motion for stay relief is therefore denied insofar as it seeks leave to resume litigation of Movants' claims against the Commonwealth and the PRPD.[8]

This Memorandum Order resolves Docket Entry No. 21912 in Case No. 17-3283.

SO ORDERED.

Dated: August 7, 2023

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

[8] Movants have not requested any narrower form of relief (such as, for example, relief to litigate specific claims that might not be barred by the Plan Injunction) and the parties therefore have not addressed whether any narrower subset or permutation of the claims pleaded in the Second Amended Complaint (such as, for example, claims against the PRPD officials in their personal capacities) are subject to the Plan Injunction. Thus, the Court denies the Motion without addressing this issue. Furthermore, the Court does not address the scope of the Stay Order imposed by the district court.