**KEPDS-10 ARRA FUNDS**                                                                                          **2012-DS 0427**

<div align="center">

**COMMONWEALTH OF PUERTO RICO**
**DEPARTMENT OF HEALTH**
**SAN JUAN, PUERTO RICO**

**AGREEMENT FOR COMPUTER PROGRAMMING PROFESSIONAL AND CONSULTING SERVICES RELATED TO THE IMPLEMENTATION OF SPECIALIZED OPEN-SOURCE DIGITAL TOOLS FOR THE MANAGEMENT OF HEALTH INFORMATION**

**APPEARING PARTIES**

</div>

FROM THE FIRST PARTY: THE DEPARTMENT OF HEALTH, represented by its Secretary of Health, **LORENZO GONZALEZ FELICIANO, MD,** of legal age, married, physician by trade, and resident of **CAROLINA**, Puerto Rico, or represented by its Undersecretary of Health, **CONCEPCION QUIÑONES DE LONGO, MD**, of legal age, married, and resident of **GUAYNABO**, Puerto Rico, who appears on behalf of the Secretary of Health and is authorized to sign contracts by virtue of the authority delegated by the Secretary in a letter dated August 18, 2009 under Law No. 81 of March 14, 1912, henceforth referred to as the **FIRST PARTY**.

**AND THE SECOND PARTY: PHARMA-BIO SERV, PR, INC.** (DBA "INTEGRATEK") with employer identification number **66-0549685**, represented by its Chief Financial Officer (CFO), Mr. **PEDRO JOSE LASANTA ROBLES**, of legal age and resident of **CAROLINA**, Puerto Rico, henceforth referred to as the **SECOND PARTY**.

In accordance with Law No. 81 of March 14, 1912, as amended, Circular Memorandum 07-93, issued on March 8, 1993, and Administrative Bulletin OE-1991-24, issued on June 18, 1991, as amended by Administrative Bulletin OE-1992-52 of August 28, 1992, **BOTH PARTIES** agree to execute this contract in accordance with the following:



<div align="center">

**RECITALS**

</div>

The Department of Health is administering a project for which the Government of Puerto Rico has received federal funding as a grant related to electronic Health Information Exchange (HIE) through the Office of the Governor of Puerto Rico. Said project shall establish in Puerto Rico the required infrastructure that is to be used by public and private medical sectors on the Island to manage and exchange health information electronically between computerized health information management (HIT)[sic] systems. Said implementation seeks to accomplish the following for the public and private medical sectors in Puerto Rico:
    (a) improve the quality of medical services
    (b) establish control in light of the rising costs of medical services and/or products
    (c) reduce errors during services
    (d) reduce redundant services
    (e) improve the coordination of services
    (f) facilitate the process of making informed medical decisions
    (g) support medical services based on scientific evidence
    (h) provide citizens with access to their health information and allow them to participate in the collection and management of said information
...among other matters.

The **SECOND PARTY** is being hired to form part of this effort in accordance with the Terms and Conditions below.

<div align="center">

**TERMS AND CONDITIONS**

</div>

**FIRST: SERVICES:** The **SECOND PARTY**, through the personnel it hires for said purpose, shall provide the Professional Services listed below. The services being procured shall be performed at the prior request of the **FIRST PARTY** or its authorized representative.

<div align="center">1</div>


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS** 2012-DS <u>0427</u>

**SERVICES TO BE PROVIDED:**

1. The **SECOND PARTY** shall provide computer programming resources and other tasks directed at the implementation of specialized open-source tools for the management of clinical health information and for enabling electronic Health Information Exchange (HIE), for the **FIRST PARTY** and the Government of Puerto Rico.
2. The **SECOND PARTY** shall administrate and manage the sources provided by the **FIRST PARTY**, taking into consideration the best practices outlined by the Project Management Institute (PMI) for the management of projects.
3. The **SECOND PARTY** shall be responsible for designing and establishing control mechanisms and project management processes that shall guide the resources provided by the **FIRST PARTY**.
4. The **SECOND PARTY** shall be responsible for carrying out the following tasks in the HIE project that concerns this agreement:
    - Planning for the use of resources.
    - Development and maintenance of the work plan.
    - Coordination of programming resources.
    - Tracking the development and quality of each of the deliverables in the HIE Project for which the **FIRST PARTY** must respond before the Office of the National Coordinator of the Department of Health and Human Services of the United States (ONC), as well as the budget and time dedicated by each resource in the development of the project.
    - Risk identification and management.
    - Situation monitoring and resolution.
    - Ensuring that the project's documentation complies with the documentation requirements established by the ONC and the **FIRST PARTY**. Maintaining said documentation in an organized and available manner.
    - Ensuring that any entities, resources, and/or individuals provided by the **SECOND PARTY** comply with the **FIRST PARTY'S** regulations, policies, and procedures.
5. The **SECOND PARTY** shall carry out the tasks necessary to develop and deliver to the **FIRST PARTY** the following deliverables:
    - E-Prescribing Components Enhancements
    - HIE-Participants Account Management Enhancements
    - E-labs
    - Direct Messaging Components
6. For each one of the deliverables, the **SECOND PARTY** shall develop a complete design, which must be duly approved by the **FIRST PARTY** before the development of the deliverables is carried out.
7. The **SECOND PARTY** shall develop a detailed Work Plan that includes the necessary tasks to develop each one of the deliverables. The Plan must include the time, assigned resources, and priority for each task. Said Plan must be duly approved by the **FIRST PARTY**.
8. The **SECOND PARTY** shall attend all meetings related to its obligations under this Agreement and shall submit any studies and reports requested by the **FIRST PARTY**.
9. The **SECOND PARTY** shall keep the **FIRST PARTY** informed of all achievements and situations that may affect the completion date of each one of the deliverables.

2


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                                                      **2012-DS 0427**

10. The **SECOND PARTY** shall perform any other functions and/or operations related to the development, implementation, certification, management, and/or administration of the project in which the abovementioned programming resources are involved.
11. All of the application source code developed under this contract, in addition to all of the documentation, must be kept in servers and/or computers belonging to the **FIRST PARTY**. The **SECOND PARTY** shall be responsible for keeping the versions of the source code developed under this agreement updated.
12. The proposal submitted by the **SECOND PARTY** for these services forms part of this agreement. In the event that there is a discrepancy between this agreement and the proposal, what is stipulated in the agreement shall take precedence.

**SECOND: SCHEDULE AND PLACE OF WORK:** The **SECOND PARTY** agrees to work for the **FIRST PARTY** during regular government hours or as established by the **FIRST PARTY**.

**THIRD: COMPENSATION:** The **SECOND PARTY** shall submit invoices for the work performed and completed in accordance with each one of the stages indicated in the following table:

| *Deliverable 1: E-Prescribing Components Enhancements* | | |
|---|---|---|
| **Stage** | **Percentage (%)** | **Amount** |
| Design | 20 | $ 24,400 |
| Development | 30 | 36,600 |
| Testing | 25 | 30,500 |
| Delivery | 25 | 30,500 |
| *Deliverable Total Cost* | | $ 122,000 |
| *Deliverable 2: HIE-Participants Account Management Enhancements* | | |
| **Stage** | **Percentage (%)** | **Amount** |
| Design | 20 | $ 11,000 |
| Development | 30 | 16,500 |
| Testing | 25 | 13,750 |
| Delivery | 25 | 13,750 |
| *Deliverable Total Cost* | | $ 55,000 |
| *Deliverable 3: E-Labs* | | |
| **Stage** | **Percentage (%)** | **Amount** |
| Design | 20 | $ 35,600 |
| Development | 30 | 53,400 |
| Testing | 25 | 44,500 |
| Delivery | 25 | 44,500 |
| *Deliverable Total Cost* | | $ 178,000 |
| *Deliverable 4: Direct Messaging Components* | | |
| **Stage** | **Percentage (%)** | **Amount** |
| Design | 20 | $ 3,000 |
| Development | 30 | 4,500 |
| Testing | 25 | 3,750 |
| Delivery | 25 | 3,750 |
| *Deliverable Total Cost* | | $ 15,000 |
| **Project Total Cost** | | $ 370,000 |

The invoices must be presented in triplicated and must indicate, in a precise manner, the following information:

1. Name of the deliverable
2. Stage of the deliverable
3. Approval on behalf of the **FIRST PARTY** for the stage being billed.

Said invoices must be certified by the Chief Information Officer (CIO) of the Puerto Rico Department of Health, or their authorized representative. The **FIRST PARTY** reserves the right to review the accuracy of the invoices and perform any audits it deems appropriate.

3


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                                                                2012-DS <u>0427</u>

This agreement shall be managed by the CIO, who shall report to the Office of the Secretary of Health and shall be evaluated in order to measure the results obtained based on the service's needs.

This agreement shall enter into effect on the date it is signed and shall be effective until September 30, 2012, and may be renewed for additional periods and/or amended through a mutual agreement.

**FOURTH: <u>RESOURCES TO PAY FOR THE SERVICES</u>:** The services rendered under this agreement shall be paid from the Professional and Consulting Services Account, PRIFAS account number <u>256-0710000-081-2010-1090HT0001SUB</u> and PeopleSoft account number <u>256-0710000-06F-2010-1000150BHIE</u> up to a maximum of <u>$370,000.00</u>, while this agreement is in effect, and they shall be funded using funds from the American Recovery and Reinvestment Act (ARRA).

**FIFTH: <u>INDEPENDENT CONTRACTOR</u>: BOTH PARTIES** freely and voluntarily agree that, under the terms of this agreement, an employer and employee relationship is not being established, and that the **SECOND PARTY** shall act and provide its services as an independent contractor at all times and agrees not to request that the **FIRST PARTY** provide vacation time, sick leave, pensions, holiday bonuses, professional liability insurance policies, or Federal Social Security.



The **SECOND PARTY** shall not have any of their wages withheld or reduced in order to pay for Federal Social Security. The **FIRST PARTY** may withhold payments to the **SECOND PARTY** for services provided up to the 7% stipulated in Section 1143 of the Puerto Rico Internal Revenue Code of 1994, as amended, in accordance with the regulations approved by the Secretary of the Treasury.

The **SECOND PARTY** agrees, as an essential condition of this agreement, to present the certifications, releases, and documentation that accredit their taxpayer situation, as required by the **FIRST PARTY** or their authorized representative.

The **SECOND PARTY** is responsible for filing their tax returns and paying the corresponding taxes to the Federal Social Security and the Income Tax Bureau of the Department of the Treasury for any taxable amounts resulting from the income earned through this contract. The **FIRST PARTY** shall notify the Income Tax Bureau of the payments and reimbursements made to the **SECOND PARTY**.

The **SECOND PARTY** shall be responsible for insuring its employees and any personnel that provides services under this contract with the State Insurance Fund. A copy of the State Insurance Fund policy is attached to and forms part of this contract.



**SIXTH: <u>REPORTS</u>:** The **SECOND PARTY** must submit to the **FIRST PARTY** or its authorized representative a monthly report on the work carried out concerning all of the matters submitted for their consideration by the **FIRST PARTY**.

**SEVENTH:** The **PARTIES** agree that **SECOND PARTY** may not alter the established procedures or make decisions that substantially affect the Administrative Policy established by the **FIRST PARTY** without its written consent.

**EIGHTH: <u>NEGLIGENCE OR ABANDONMENT</u>:** The negligent performance of its functions or abandonment of them by the **SECOND PARTY** shall be considered a violation of this contract and shall be sufficient cause for the **FIRST PARTY** to declare it terminated immediately, without being subject to the Termination Clause, and being relieved of all obligations and liabilities under it. It is expressly agreed

4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                                                            **2012-DS 0427**

that the **SECOND PARTY** shall complete any work that is pending at the moment of termination, without the **FIRST PARTY** being obligated to pay the **SECOND PARTY** any additional compensation or remuneration for it.

**NINTH: DISCRIMINATION IN THE PROVISION OF SERVICES:** The **SECOND PARTY** agrees to not discriminate while it provides these services, be it for reasons of political beliefs, religious beliefs, race, social status, age, sex, nationality, physical or mental condition or disability, and/or any other type of discrimination.

**TENTH: INTELLECTUAL PROPERTY:** It is expressly agreed that anything produced as a result of the services provided by the **SECOND PARTY**, be it in the form of studies, research, consulting, or any other form in which it was produced, shall, at all times, be the property of the **FIRST PARTY**, without said party being obligated to pay **SECOND PARTY** any compensation for what was produced or for the rights over it in addition to the compensation stipulated in the THIRD Clause of this agreement. The **FIRST PARTY** is also expressly authorized and has full rights to use said product in any way it deems appropriate and at its discretion.

The **SECOND PARTY** may not use said product for any purposes other than those of the **FIRST PARTY**.

**ELEVENTH: EFFECTIVE DATE AND DURATION:** This agreement shall be effective from the moment it is signed by the **FIRST PARTY** and shall remain in effect until September 30, 2012, and it may be renewed for additional terms through a prior amended to that effect signed by **BOTH PARTIES**, as long as the services are necessary, and the necessary funds exist and are duly assigned.

**TWELFTH: TERMINATION:** This agreement may be terminated before its term concludes by **BOTH PARTIES** through written notification to the **OTHER PARTY** thirty (30) days before the desired termination date, without this resulting in either of the **PARTIES** being subject to any obligations to each other.

The lack of sufficient funds shall be sufficient cause for the immediate termination and/or modification of compensation in this agreement.

It shall be sufficient cause for the **FIRST PARTY** to declare the agreement terminated immediately, and for the **FIRST PARTY** to be relieved of all obligations and responsibilities under this agreement, if the **SECOND PARTY** violates or fails to comply with the following conditions:

1. Violation or violations committed by the **SECOND PARTY** regarding Law No. 12 of July 24, 1985, as amended, known as the Puerto Rico Government Ethics Act.
2. Negligent performance on behalf of the **SECOND PARTY** regarding its duties, or its abandonment of these.
3. Failure by the **SECOND PARTY** to comply with the Regulations and procedures established by the **FIRST PARTY**.
4. Conviction or determination of probable cause for an arrest against the **SECOND PARTY** for committing any crime against the treasury, public faith, or the civil service; against the operation of the government; or that involves public funds or property, at either a federal and/or state level.
5. Engaging in actions that go against Public Policy legislation, such as Sexual Harassment, Discrimination, and the Use and Abuse of Controlled Substances.
6. That the **SECOND PARTY** has been accused, either criminally or administratively, or convicted for having obtained any fraudulent credentials.
7. That the **SECOND PARTY** loses its professional license or does not maintain an active professional license (if applicable).
8. Failure to comply with any of the clauses in this agreement.

The **FIRST PARTY** may immediately terminate this agreement if, entirely at its sole discretion, it determines that the **SECOND PARTY** has committed a violation of the privacy, confidentiality, and security agreements concerning the use and disclosure of the protected health information of the **FIRST**

5


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                        **2012-DS 0427**

**PARTY'S** patients and/or third parties to this contract. It shall be cause for termination if the **FIRST PARTY** is not notified of any violations concerning the handling of Protected Health Information (PHI) by the **SECOND PARTY**, their associates, and/or their subcontractors. The **FIRST PARTY** reserves the right to refer violations not rectified by the **SECOND PARTY** to the Federal Department of Health and Human Resources.

It is expressly agreed that the **SECOND PARTY** shall complete any work left pending at the time of termination, without the **FIRST PARTY** being obligated to pay the **SECOND PARTY** any additional compensation for it.

**THIRTEENTH: PECUNIARY INTEREST:** The **SECOND PARTY** attests that no official or employee of the agency, contractor, or any member of their family unit, has any direct or indirect pecuniary interest in this agreement, and that no official or employee of the Executive Branch has an interest in the earnings or benefits produced by this agreement.

The **FIRST PARTY** certifies that, to the best of its knowledge, no official of this agency, or any member of their family unit, has a direct or indirect pecuniary interest in this agreement, and that no official or employee of the Executive Branch has an interest in the earnings or benefits produced by this agreement.

**FIFTEENTH: FORMER PUBLIC SERVANTS:** The representative of the **SECOND PARTY** certifies that its associates and/or members are not public services, and that they have not been public servants for the past two years.

**SIXTEENTH: CRIMES AGAINST THE TREASURY:**

**[SIGNED]** The **SECOND PARTY** certifies that neither it nor any of its shareholders, partners, chief officers, employees, subsidiaries, or holding companies has been convicted, nor has probable cause for their arrest been found, for any crime against the treasury, public faith, or the civil service; against the functioning of the government; or that involves public funds or property, either at the federal or state level.

**[SIGNED]** The **SECOND PARTY** acknowledges its ongoing obligation to report, while this agreement is in effect, any situation concerning the developing of any investigation related to crimes committed against the treasury, public faith, or the civil service; against the functioning of the government; that involves public funds or property, either at the federal or state level.

**[SIGNED]** The **SECOND PARTY** certifies that, during the ten years preceding the formalization of this agreement, neither it or any of its shareholders, partners, chief officers, employees, subsidiaries, or holding companies, have committed any crimes against the treasury, public faith, or the civil service; against the functioning of the government; or that involves public funds or property, either at the federal or state level.

**SEVENTEENTH: TAX CERTIFICATE:**

**[SIGNED]** The **SECOND PARTY** certifies that, as of the moment it signs this agreement, it has filed its income tax return during the five (5) years preceding this agreement and owes no taxes to the Commonwealth of Puerto Rico. It also certifies that it does not owe any taxes, with taxes owed being understood to be any debt related to income tax, excise tax, property tax, including taxes imposed on a special capacity, license fees, tax withheld from employee wages, the payment of interest, dividends, revenues, salaries, and other forms of compensation to individuals for any other concept.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**  2012-DS <u>0427</u>

**OR**

_____ The **SECOND PARTY** certifies and guarantees that, as of the moment it signs this agreement, it has filed its income tax return for the five (5) years preceding this agreement, and that it is under a payment plan, and that it is complying with said plan's terms and conditions.
**Copies of the Payment Plans are incorporated into this agreement's file.**

**OR**

_____ The **SECOND PARTY** certifies that, as of the moment it signs this agreement, it has NOT filed its tax return during some of the tax years within the five (5) years preceding this agreement, and that it does not owe taxes to the Commonwealth of Puerto Rico. It also certifies that it does not owe any taxes, with taxes owed being understood to be any debt related to income tax, excise tax, property tax, including taxes imposed on a special capacity, license fees, tax withheld from employee wages, the payment of interest, dividends, revenues, salaries, and other forms of compensation to individuals for any other concept.

**OR**

_____ The **SECOND PARTY** certifies that it has a tax debt, but it is in the process of being reviewed or adjusted at the Department of Treasury or by the CRIM. The **SECOND PARTY** expressly acknowledges and agrees that, should the review or adjustment not be approved, it agrees to pay off said debt by having the payments to which it has a right to receive for the services provided under this agreement withheld. In addition to the documents required in this clause, **the SECOND PARTY shall submit a Certificate issued by the Department of Treasury and/or by the MUNICIPAL INCOME COLLECTION CENTER (CRIM, for its initialism in Spanish) that states that the SECOND PARTY has a debt that is under review. The SECOND PARTY must inform the FIRST PARTY of the progress or rejection of the review or adjustment on a quarterly basis (March 31, June 30, September 30, and December 31).**

**AND**

**The SECOND PARTY shall submit an original copy of an Income Tax Return Filing Certificate (Form SC 6088) from the Department of Treasury, if applicable, a Manual Correction to the Income Tax Filing Certificate (Form SC 2888) and a Debt Certificate (Form SC 6096), and from the MUNICIPAL INCOME COLLECTION CENTER (CRIM, for its initialism in Spanish), a Personal Property Tax Filing Certificate (should it not own personal property and should it not appear filed in the CRIM's automated tax system, the SECOND PARTY shall submit a Sworn Declaration, in compliance with the terms required in Circular Letter 1300-21-06 of the Department of Treasury) and a Debt Certificate for All Purposes, which shall form part of this agreement.**

The **SECOND PARTY** must require all of its Subcontractors that are providing services under this agreement, and should the **SECOND PARTY** be a Partnership, all of its Partners who reside in Puerto Rico, to comply with all of the provisions of this clause.

**The SECOND PARTY also agrees to submit a Debt Certificate issued by the Department of Treasury, Form SC-6096, along with its final invoice. The SECOND PARTY agrees and acknowledges that the final payment made under this contract shall only be made if the Debt Certificate indicates that the SECOND PARTY does not have a debt with the Department of Treasury. Should the SECOND PARTY have a debt, it agrees to pay it off by having the payments to which it has a right to receive for the services that concern this contract withheld.**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**KEPDS-10 ARRA FUNDS**           **2012-DS 0427**

It is expressly acknowledged that these are essential conditions of this agreement, and that should the above certification not be correct, either in whole or in part, this shall constitute sufficient cause for the hiring party to cancel it and for the hired party to be obligated to refund the hiring party any sum of money received under this agreement.

**EIGHTEENTH: CERTIFICATION TO THE DEPARTMENT OF LABOR AND HUMAN RESOURCES:** The **SECOND PARTY** certifies and guarantees that, at the moment of signing this agreement, it has paid the following taxes:

**[SIGNED]** Unemployment Insurance

**[SIGNED]** Temporary Disability

**[SIGNED]** Social Security for Drivers

**[SIGNED]** The **SECOND PARTY** is under a Payment Plan and is complying with its terms and conditions. A copy of the Payment Plan is incorporated into this agreement's file.

It is expressly acknowledged that this is an essential condition of this agreement, and that should the above certification be incorrect, either in whole or in part, this shall constitute sufficient cause for the hiring party to cancel it and for the **SECOND PARTY** to be obligated to refund the **FIRST PARTY** for any sum of money received under this agreement.

**NINETEENTH:** The **SECOND PARTY** acknowledges that, while carrying out its professional duties, it has an obligation to be completely loyal to the agency, which includes not having interests that go against said government agency. These adverse interests include representing clients that have or may have interests that conflict with those of the **FIRST PARTY**. This duty also includes an ongoing obligation to disclose to the agency all of the circumstances of its relationship with clients, third parties, and any interests that may influence the agency at the time of awarding the contract or during its term.

**ELEVENTH: CONFIDENTIALITY:** The **SECOND PARTY** agrees to not use or publish any kind of information that it gains concerning the services that it agrees to provide by virtue of this agreement.

**TWENTIETH: CODE OF ETHICS:** The **FIRST PARTY** notifies the **SECOND PARTY** that **BOTH PARTIES** are subject to and shall comply with the provisions of the Government Ethics Act and the Code of Ethics for contractors, suppliers, and financial incentive applicants of the executive agencies of the Commonwealth of Puerto Rico and the federal government, documents with which they agree to become familiar and of which they may request a printed copy from the **FIRST PARTY**.

**TWENTY-FIRST: COMPLIANCE WITH PUBLIC POLICY:** Should the **SECOND PARTY** engage in acts that go against Public Policy legislation, such as Sexual Harassment, Discrimination, and the Use and Abuse of Controlled Substances, the agreement shall be terminated immediately without being subject to the Termination Clause.



**TWENTY-SECOND: COMPLIANCE WITH LAW NUMBER 127 OF MAY 31, 2004:** **BOTH PARTIES** acknowledge and agree that the provision or consideration of any object in this agreement may be demanded until it has been presented for registration at the Office of the Comptroller in accordance with Law No. 18 of October 30, 1975, as amended by Law No. 127 of May 31, 2004.

8

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**  2012-DS <u>0427</u>

**TWENTY-THIRD:** <u>**LITIGATION**</u>**:** The **SECOND PARTY** certifies that, at the time of signing this agreement, it does not have any ongoing litigation against any government agency or organization, including the Department of Health.

**TWENTY-FOURTH:** <u>**CERTIFICATION OF THE CHILD SUPPORT ADMINISTRATION**</u>**:**

The **SECOND PARTY** shall submit to the **FIRST PARTY** a Compliance Status Certificate from the Child Support Administration (ASUME, for its initialism in Spanish).

This certificate is issued in the case of legal persons (companies, corporations) to confirm that they are in compliance with the orders issued to them as employers, to withhold wages from their employees to pay for child support.

**TWENTY-FIFTH:** <u>**SUBCONTRACTING**</u>**:** The **SECOND PARTY** may not subcontract any private entity to delegate the essential services that concern this contract. The **SECOND PARTY** may only subcontract personal services and professional and consulting services in order to comply with the services that concern this contract. In no manner and under no circumstances may the consent of the **FIRST PARTY** to authorize said subcontracting be interpreted to imply that the **FIRST PARTY** shall incur any obligation beyond the total sum of dollars agreed upon in this agreement, or that the **SECOND PARTY** is released from its liability for any damages that may be caused by the party being subcontracted.

Any subcontracting that the **SECOND PARTY** deems necessary, and that is not stipulated as permissible subcontracting, shall require the written authorization of the **FIRST PARTY**. Any subcontracting shall be subject to the special conditions stipulated in this agreement, and any other condition that the **FIRST PARTY** deems necessary for its approval, and any state and federal laws and regulations that are applicable to the agreement established between the **FIRST PARTY** and the **SECOND PARTY**.

**TWENTY-SIXTH:** <u>**NONTRANSFERABILITY**</u>**:** Except for a transfer to another affiliate of the **SECOND PARTY** as described within the appearing parties (first page) of this agreement (e.g. DBA "INTEGRATEK"), the services that the **SECOND PARTY** shall provide may not be transferred without first notifying the **FIRST PARTY** and obtaining its consent. Delegating these without first notifying the **FIRST PARTY** and obtaining its consent shall be sufficient cause to immediately terminate this agreement. Failure to comply with this clause shall make the **SECOND PARTY** liable for any damages that may be caused to the **FIRST PARTY**, be it directly or indirectly.

**TWENTY-SEVENTH:** <u>**POLICY**</u>**:** While this agreement is in effect, the **SECOND PARTY** shall maintain an active Public Liability Policy in the form of "Commercial General Liability" with a combined total coverage of no less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**. This "Commercial General Liability" policy shall have an endorsement naming the **FIRST PARTY** as an Additional Insurance Party and with a "Hold Harmless Agreement" in favor of the **FIRST PARTY**.

The **SECOND PARTY** shall also submit a copy of the "Error and Omissions Professional Liability" policy.

All of the policies shall contain a provision stating that they may not be cancelled or modified unless written notification is given to the **FIRST PARTY** thirty (30) days in advance, Office of Insurance and Risks, P.O. Box 70184, San Juan, Puerto Rico, 00936-8184.

A copy of the policies shall form part of this agreement, and failure to comply with any of the provisions of this clause shall be sufficient cause for its immediate termination.

9

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**KEPDS-10 ARRA FUNDS**                                                               **2012-DS <u>0427</u>**

The **FIRST PARTY** shall not pay for services provided during any period when the policy is not in effect.

**TWENTY-EIGHTH: <u>SMOKE-FREE WORKPLACE</u>:** The **SECOND PARTY** agrees to adhere to the provisions of Law No. 40 of August 3, 1993, as amended, known as the "Act to Regulate Smoking in Certain Public and Private Places."; and with the Guidelines of the Secretary of Health and the Puerto Rico Police No. 7304, as amended, which prohibit smoking at their facilities, including indoor and outdoor areas, both open and enclosed, among others.

**TWENTY-NINTH: <u>CONFLICTS OF INTEREST</u>:** The **SECOND PARTY** acknowledges that, while carrying out its professional duties, it has an obligation to be completely loyal to the agency, which includes not having interests that go against said government agency. These adverse interests include representing clients that have or may have interests that conflict with those of the **FIRST PARTY**. This duty also includes an ongoing obligation to disclose to the agency all of the circumstances of its relationship with clients, third parties, and any interests that may influence the agency at the time of awarding the contract or during its term.

The **SECOND PARTY** certifies that it is not representing, nor shall it represent while this agreement is in effect, certain interests in cases or matters that involve a conflict of interest or public policy against the **FIRST PARTY**.



The **SECOND PARTY** is considered to represent conflicting interests when, to the benefit of a client, it is their duty to provide something that it should refuse to in order to comply with its obligations to another previous, current, and/or potential client. It is also a conflict of interest when their behavior is described as such in the ethical guidelines recognized for their profession, or in the laws and regulations of the Commonwealth of Puerto Rico.

In contracts with partnerships or firms, it shall be considered a violation of this prohibition when any of its directors, partners, or employees engage in the conduct described herein. The **SECOND PARTY** shall also avoid the appearance of the existence of conflicting interests.



The **SECOND PARTY** acknowledges the agency head's authority to oversee compliance with the prohibitions contained herein. Should the agency head believe that adverse interests with the **SECOND PARTY** exist or have been found, they shall notify their findings and their intent to terminate the contract within thirty (30) days in writing. During said term, the **SECOND PARTY** may request a meeting with said agency head in order to present their arguments against said determination of conflict, which shall be granted in all cases. Should said meeting not be requested within the abovementioned term, or should the controversy not be satisfactorily resolved during the granted meeting, this contract shall be terminated.

**THIRTIETH: <u>LIABILITY FOR DAMAGES</u>:** The **SECOND PARTY** shall be liable for any damages caused by their negligent performance or the abandonment of their obligations under this agreement, and thus relieves the **FIRST PARTY** of any obligation or liability.

**THIRTY-FIRST: <u>AUDITING</u>:** The **SECOND PARTY** agrees to facilitate any audits that the **FIRST PARTY** or the Office of the Comptroller of Puerto Rico consider necessary, and must therefore:

1. Keep all files, documents, logs, and data related to the matters that concerns this agreement available to be examined or inspected by the **FIRST PARTY** or the Office of the Comptroller of Puerto Rico at all times.
2. Retain all files or any documents pertinent to this agreement for a period of five (5) years after it has been terminated. In the event that an audit is initiated and its results are not resolved by the end of those five (5) years, the files must be retained until the audit's results are issued.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                                                   **2012-DS 0427**

**THIRTY-SECOND: FEDERAL LAW: HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996**

A. The federal law known as the "*Health Insurance Portability and Accountability Act of 1996*" (HIPAA) and its Privacy and Security Guidelines require:
   a. That all entities covered by said law train their workforces concerning its provisions and requirements.
   b. That Policies and Procedures exist within the covered entity regarding the privacy, confidentiality, and security of the health information they receive, create, manage, store, access, transmit, and/or exchange (in paper or electronically), and that its workforce is trained regarding said policies and procedures, is required to comply with them, and be sanctioned to the greatest extent applicable in the event that they do not do so.
   c. That any person, be they part of the workforce or not, who has or may have access to patient information in the covered entity's custody, be familiar with the privacy rules to which patients have a right, and the confidentiality and security that protects health information created, stored, managed, accessed, transmitted, or exchanged (in paper or electronically), and be familiar with and adhere to said law, rules, policies, and procedures related to said Law's provisions.
B. HIPAA defines a workforce as regular employees, contractors, temporary employees, volunteers, students, interns, and any other person who works within the institution, regardless of whether or not they receive compensation.
C. The **SECOND PARTY** is part of that workforce and, as such, must comply with the policies and procedures established by the entity to comply with the HIPAA law and its related guidelines. To that end, they must:
   a. Be trained regarding said law, its Privacy Rule, Transaction and Code Set Rule, Identifiers rule, and its Rule regarding the Security of Health Information accessed, created, maintained, transmitted, and/or exchanged electronically (ePHI).
   b. Be familiar with and comply with the terms established in the institution's Policies and Procedures regarding Privacy and Security Practices.
   c. Comply with all of the institution's policies concerning the protection of the privacy, confidentiality, and security of health information, regardless of whether said information is in paper or electronic form.
   d. Comply with applicable federal regulations concerning the management and custody of protected health information (PHI) with regard to the administrative, physical, and technical aspects as established in 45 CFR sections 164.308, 164.310, 164.312, 164.316).
D. Regarding the management of protected health information, PHI, shared between **BOTH PARTIES**, the **SECOND PARTY** shall be required to:
   1. Maintain systems that protect the protected health information (PHI) against unauthorized access.
   2. Allow the individual, the owner, who is referenced in the PHI to access their health information
   3. Maintain a record of the protected health information it discloses
   4. Immediately inform the **FIRST PARTY** of any unauthorized use or disclosure as soon as it is aware of this fact.
   5. Require all of its subcontractors or agents to adhere to the restrictions and conditions that are applicable to them concerning the management of protected health information.
   6. Incorporate any amendment to an individual's information that is sent by the **FIRST PARTY**.
   7. Share their internal practices, logs, and files related to the use and disclosure of protected health information received from the **FIRST PARTY** with the Federal Department of Health and Human Services (HHS).
   8. Destroy or return to the **FIRST PARTY** any protected health information they may be keeping after the contract signed with the **FIRST PARTY** has concluded.




I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**  2012-DS <u>0427</u>

    E. Should the **SECOND PARTY** not comply with the standards established by the HIPAA federal law, or with the related regulations, state laws protecting the privacy, confidentiality, and security of patient health information, and the institution's Privacy, Confidentiality, and Security Policies and Practices, they may be subject to being sanctioned by the HHS, the **FIRST PARTY**, or others, and their agreement may be terminated immediately. The **FIRST PARTY** reserves the right to terminate this agreement as established in the agreement's Termination Clause.

<div style="text-align:center">

**TERMS AND CONDITIONS**
*"AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009"*
**(ARRA)**

</div>

**THIRTY-THIRD:** By signing this Agreement, the **SECOND PARTY** expressly acknowledges and agrees to comply with all of the provisions, guidelines, and requirements of the Recovery Act, according to how they are modified over time.

**THIRTY-FOURTH:** Should the **SECOND PARTY** fail to comply with any of the requirements of the Recovery Act, this shall be sufficient cause to terminate the Agreement.

**THIRTY-FIFTH:** The **SECOND PARTY** acknowledges that, in accordance with Law No. 8 of March 9, 2009, the Puerto Rico Infrastructure Financing Authority (PRIFA) has been delegated the authority to oversee compliance with and the implementation of the Recovery Act's requirements. None of what is stipulated in this clause or in the Agreement may be interpreted in manner that limits the authority and duty that the **FIRST PARTY** has to oversee compliance with the obligations and requirements of the Recovery Act, or of obligations specifically imposed by the assignment of funds to the **FIRST PARTY**.

**THIRTY-SIXTH:** The **FIRST PARTY**, either directly or through the PRIFA, must make all necessary efforts to keep the **SECOND PARTY** informed concerning any developments or modifications to the Recovery Act's requirements. Any modifications to the Recovery Act's applicable requirements must be understood to be incorporated by reference into the Agreement as soon as said requirements enter into effect.

**THIRTY-SEVENTH:** The **SECOND PARTY** shall be responsible for obtaining independent legal advice in order to ensure compliance with the Recovery Act's requirements that are applicable to the **SECOND PARTY** or their subcontractors, as applicable.

**THIRTY-EIGHTH:** The **SECOND PARTY** shall be responsible for ensuring that all subcontractors, at any level, who are directly or indirectly benefitting from the funds provided by this Agreement, are and continue to be in compliance with any obligations imposed by the Agreement and any Recovery Act requirements.

**THIRTY-NINTH:** The **SECOND PARTY** shall be liable for any failures to comply with the requirements imposed by the Agreement committed by subcontractors, regardless of whether said failure to comply occurred because of the subcontractor. The **SECOND PARTY** is responsible for ensuring that the Recovery Act's obligations and requirements are included in any subcontract between the **SECOND PARTY** and any subcontractors.

**FORTIETH:** As established in Title XV, Section 1512 of the Recovery Act, the **SECOND PARTY** must, in a clear, precise, and timely manner, provide any information that it obtains through the obligations contained within this Agreement, and in a manner that the **FIRST PARTY** and/or the **PRIFA** reasonably deems necessary to meet the Government of Puerto Rico's reporting requirements under the Recovery Act. The information to be requested by the **FIRST PARTY** and or the **PRIFA**, and provided by the **SECOND PARTY**, includes, but is not limited to, reports and any information that verifies the number of jobs created or retained as a result of the Agreement. The **SECOND PARTY** must retain any information related to the Agreement for a period of three (3) years after receiving the final payment under this Agreement, and



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS** 2012-DS <u>0427</u>

after the activities finances or carried out through it have concluded. No additional payments shall be made to the **SECOND PARTY** or subcontractors for meeting the obligation of providing said information, documents, or reports. The obligation to provide the number of jobs created or retained originates from this Agreement, and the **SECOND PARTY** must begin to comply with said obligation within a period of no more than thirty (30) days from the date this Agreement is signed.

**FORTY-FIRST:** The **SECOND PARTY** must report to the Employment Services Office of the Puerto Rico Department of Labor and Human Resources any jobs for which it is seeking to hire employees using funds from the Recovery Act provided under this Agreement. Said information must be provided no less than five (5) days prior to the decision to hire. The **SECOND PARTY** must report new jobs to the Employment Services Office of the Puerto Rico Department of Labor and Human Resources as determined by them.

**FORTY-SECOND:** The **SECOND PARTY** acknowledges that, among the powers contained within Section 902 of the Recovery Act, the Comptroller General of the United States and/or the Inspector General and their representatives shall have the authority to: (i) examine any file from the **SECOND PARTY** or subcontractors that may involve transactions related to the Agreement or a subcontract; and (ii) to interview any officer or employee of the **SECOND PARTY** regarding said transactions.



**FORTY-THIRD:** The **SECOND PARTY** acknowledges that Section 1515(a) of the Recovery Act confers the representatives of the Inspector General of the United States the authority to examine any file or interview any employee or officer that works for the **SECOND PARTY** under the Agreement.

**FORTY-FOURTH:** The **SECOND PARTY** understands and acknowledges that the Agreement's provisions related to the functions and authority of the Comptroller General of the United States and/or the Inspector General in no way limit the functions and authority of the **PRIFA** and the Office of the Comptroller of Puerto Rico to access files, documents, and any other information related to this Agreement. In addition, the **SECOND PARTY** agrees that the **PRIFA** and the **FIRST PARTY** shall have the authority to report and publish, in any form or medium, including on the Internet, any information related to the **SECOND PARTY** or subcontractors, the use of Recovery Act funds, compliance with Recovery Act requirements, and any other matter they deem appropriate or necessary to fulfill their obligations under Law No. 8, supra, and the requirements of the Recovery Act.

**FORTY-FIFTH:** The **SECOND PARTY** agrees to not do any of the following: (i) submit or cause the submission of a false request for payment to the Government of the United States of America; (ii) knowingly use or cause the use or submission of a false claim or report for the purpose of obtaining a payment or approval; (iii) conspire to defraud the Government of the United States of America, allow payments to be made to them for a false claim or request; (iv) any activity or act intended to defraud the Commonwealth of Puerto Rico and/or the Government of the United States of America and, in particular, in relation to funds provided by the Agreement.

**FORTY-SIXTH:** The **SECOND PARTY** must, as soon as possible, submit evidence to the **FIRST PARTY** or the **PRIFA** that verifies that an officer, chief officer, employee, agent, contractor, subcontractor, or any other person has acted in a manner that may be subject to liability under the Federal False Claims Act, or who has committed an act that is criminal or against the laws that govern fraud, conflicts of interest, bribery, or similar illegal conduct involving funds received from the Recovery Act under the Agreement.

**FORTY-SEVENTH:** The **SECOND PARTY** must also comply with the requirements contained in Section 1553 of the Recovery Act, which prohibit terminating or demoting an employee of a non-federal

13


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS** 2012-DS <u>0427</u>

employer as retribution for having informed any person with direct or indirect authority under the Recovery Act to begin an investigation or disciplinary action for, among other things: (i) embezzlement of funds; (ii) a substantial emergency or hazard to public health and safety related to the implementation or use of funds granted under the Agreement; or (iii) a violation of a law, rule, or regulation related to an agreement with an agency or the assignment of funds from or related to the Recovery Act.

**FORTY-EIGHTH:** The **SECOND PARTY** certifies that this, or their chief officers are not suspended, recommended for suspension, declared ineligible or voluntarily excluded from participating in transactions covered by any federal agency or department, and that, during the three (3) years preceding the Agreement, they have not been convicted, or found liable in a legal proceeding, for committing fraud or a crime connected to a public (federal or state) transaction or a contract related to a public transaction, for violating state or federal laws against monopolistic practices, embezzlement, theft, forgery or destruction of records, bribery, perjury or false statements, receiving stolen property, or having a public transaction cancelled or terminated because any cause or in contempt, or any of the violations or crimes described above and that comply with the regulations contained in 45 C.F.R. Part 1154. The **SECOND PARTY** certifies and guarantees that it is not listed in the *Excluded Party List System* (https://www.epls.gov/).

**FORTY-NINTH:** The **SECOND PARTY** certifies that it is not delinquent in its payments of any federal debt.

**FIFTIETH:** This Agreement incorporates, as reference, any law, regulation, or guideline to the extent that it is relevant and is applicable to **THE PARTIES**. The **FIRST PARTY** reserves the right to amend the Contract at any moment so that it expressly contains any requirement that is adopted by reference and that is necessary to comply with the obligations imposed by the Recovery Act.

**FIFTY-FIRST:** <u>**ULTRA VIRES**</u>**: IN ACCORDANCE WITH THE LAWS AND REGULATIONS THAT GOVERN THE CONTRACTING OF SERVICES, THE APPEARING PARTIES IN THIS AGREEMENT ACKNOWLEDGE THAT NO SERVICES SHALL BE PROVIDED UNDER THIS AGREEMENT UNTIL IT IS SIGNED BY BOTH PARTIES; SIMILARLY, SERVICES SHALL NOT CONTINUE TO BE PROVIDED UNDER THIS AGREEMENT AFTER ITS EXPIRATION DATE, EXCEPT WHEN AN AMENDMENT SIGNED BY BOTH**



14

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**KEPDS-10 ARRA FUNDS**                                                                     **2012-DS <u>0427</u>**

**IN WITNESS WHEREOF**, **THE PARTIES** in this agreement sign it, thus formally agreeing to comply with all of its terms and conditions.

| **SECOND PARTY** | **FIRST PARTY** |
|---|---|
| [SIGNED] | [SIGNED] |
| Signature | Signature |

This agreement was presented to the Office of the Comptroller for its registration on <u>October 19</u>, <u>2011</u>.



<div style="border:1px solid black; padding:8px">

**CERTIFICATION**

[ILLEGIBLE]
HEALTH

I, Mccw A. Mcstshri, Attorney from the Office of Legal Advisors of the Department of Health, certify that I have reviewed the agreement in detail and have found it satisfactory from a legal standpoint. I recommend that it be signed.

Signature: [Signed]                                                                                          Date: <u>Oct/7/11</u>

</div>

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.