## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD OF PUERTO RICO<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS |

### RESPONSE TO FIVE HUNDRED SEVENTY-EIGHT OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO PROOF OF CLAIM NUMBER 46107 AND FOR RELIEF FROM STAY

**TO THE HONORABLE COURT:**

NOW comes, Robert Anel Díaz-Morales (hereafter, "Movant"), represented by the undersigned counsel, and respectfully opposes the Commonwealth of Puerto Rico's (hereafter, "the Commonwealth") Five Hundred Seventy-Eighth Omnibus Objection of the Commonwealth of Puerto Rico filed at Docket Entry No. 24749 (hereafter, "the Objection"), and moves the Court for an Order as follows for an order to lift the stay or, in the alternative, to allow Movant's Proof of Claim in the full amount filed of $1,600,000($1.6M):

### CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT

This certification asserts a full compliance with the Sixteenth Amended Case Management Procedures Notice, Case Management and Administrative Order, as set forth in section III of the *Order Further Amending Case Management Procedures*. In compliance with

the Case Management Procedures and in good faith, the undersigned counsel hereby certify that they served a *Stay Relief Notice* on May 5, 2023, to counsel for the Financial Oversight and Management Board of Puerto Rico and the Puerto Rico Fiscal Advisory Authority ("Commonwealth's legal representatives or Commonwealth's counsel"). (**Exhibit 1**). Since no response was received, Counsel for Movant followed up with Commonwealth's legal representatives or Commonwealth's counsel on June 8, 2023. (**Exhibit 2**). Again, absent of any good faith or consideration toward Movant, or his counsel, the individual defendants' counsel filed an Objection to Movant's Proof of Claim on July 31, 2023. (**Exhibit 3**). Counsel for Movant tried yet once again, in the spirit of resolution, rather than continuing with the adversary mode, to call the attention of the Commonwealth's counsel of the reasons that justify either the lifting of the stay or the allowance of Movant's claim in its entirety, and sent yet another letter on August 2, 2023, given the Commonwealth's counsel failure to respond to the prior attempts to meet and confer made in good faith by Movant. (**Exhibit 4.**) In that letter, Movant's counsel showed that the  Commonwealth's position in its Objection is diametrically inapposite to the position that the Department of Justice of the Commonwealth assumed before the United States District Court of Puerto Rico ("USDC-PR") (Delgado, J) in *Robert Anel Díaz-Morales v. Limaris Cruz-Vélez, Sergio Rubio-Paredes, and Emilio Arill-García,* Civil No. 13-1360, to have

Movant's claim against the individual defendants stayed in that Court.

The Objection clearly shows bad faith and temerity as the Commonwealth **now** claims in this PROMESA case that the Movant's claim is **not** against the Commonwealth and that the individual defendants are not protected by the automatic stay of this case, when it made the completely opposite argument before the USDC-PR to have Movant's attempt to continue with the action against the individual defendants stayed. The unwillingness of the Commonwealth's counsel to answer any communication sent by Movant's counsel with the intention of trying to reach an agreement as to the lifting of the stay, or a settlement of Movant's Proof of Claim, to avoid further litigation, is patently evident from the Commonwealth's temerarious Objection to Movant's Proof of Claim. Therefore, the undersigned counsel had no choice but to submit this Response to the Objection to Movant's Proof of Claim so that it is deemed so the stay can be lifted, or in the alternative, the Proof of Claim be allowed for the entire one million six hundred thousand dollars ($1.6M), which it was agreed in the Settlement Agreement that the Commonwealth executed. Because of the position assumed by the Commonwealth in its Objection, this Honorable Court should allow Movant to continue the action against the individual defendants in the USDC-PR or deem the Proof of Claim allowed in the full amount filed.

## **PRELIMINARY STATEMENT**

This Honorable Court has before itself the opportunity to correct a violation to the constitutional rights of a United States citizen. These fundamental rights were infringed every day of the eight and a half (8 ½) years that Movant was illegally imprisoned due to a criminal process riddled with errors, which was overturned in *The People of Puerto Rico v. Robert Anel Díaz Morales*, 170 DPR 749 (2007). As a result, a 21-year-old was forced to suspend his academic development, and his ability to positively contribute to the Commonwealth's working class as a law-abiding citizen. He served eight and a half years (8 ½) years in prison for a crime he did not commit due to the wanton disregard and actions of the individuals defendants, acting under color of law.

Since May 5, 2023, Movant's legal representation has attempted to contact the Commonwealth's legal representatives' numerous times, in order to try to reach an agreement that would settle the Commonwealth's obligation to pay the Settlement Agreement reached by the parties in the USDC-PR action. Movant's counsel efforts to communicate were to no avail and felt on deaf ears. Even though a last-minute attempt to try to get a response was made in a call by Movant's counsel, followed by a text message showing the impropriety of the Objection, a return call or email acknowledgement was never received. Movant's legal representation

sent out one last communication attempt on August 2, 2023, with hopes of scheduling a meeting and trying to reach a settlement of Movant's claim to avoid unnecessary proceedings before this Court and help promote judicial efficiency. (**Exhibit 4**). Sadly, Movant's good faith attempts have fallen, once again, on deaf ears, remained unanswered, and thus, been infructuous.

This is not an instance in which an ordinary creditor seeks payment by virtue of a traditional debt owed by the Commonwealth for credit he has for services rendered, nor goods sold and unpaid, nor are we attempting to satisfy any overdue and enforceable debt. *A contrario sensu*, it is before an instance in which the Commonwealth can indemnify a citizen for violating his constitutional right to liberty through what is considered a small payment in the grand scheme of PROMESA related judicial issues. Consequently, Movant files this Response to what undersigning counsel respectfully understands to be frivolous, reckless, and imbued with bad faith Objection to his Proof of Claim filed by the Commonwealth pertaining to his claim (No. 46107). Specifically, Movant contends that the settlement amount one million six hundred thousand dollars ($1.6M) represents a small price to pay to indemnify Movant, a citizen whose constitutional rights it contravened for almost ten (10) years. Specially, when it is taken under consideration that, ***only*** for services rendered by Special Litigation Counsel to the Official Committee of Unsecured

Creditors between April 19, 2019, and December 31, 2022, the Commonwealth paid five million one hundred forty-nine thousand seventy-five dollars ($5,149,075.56). **ECF No. 24790.** The Commonwealth has spent millions of dollars in this case, and the one million six hundred thousand dollars ($1.6M) claim of Movant is just a drop on the huge bucket of water of fees spent by the Commonwealth. This Honorable Court can take judicial notice of the fees paid to counsel in this case

Now, we respectfully submit to this Honorable Court that the Objection and the position taken by the Commonwealth before the USDC-PR are completely contradictory to each other and both cannot stand. Either the Proof of Claim is against the Commonwealth, and it is deemed to be allowed for the entire agreed upon settlement amount ($1.6M). If this Honorable Court should find that the Commonwealth's Objection is adequately based on law and facts, Movant must be allowed to proceed against the individual defendants who illegally imprisoned him for eight and a half (8 ½) years for a crime he did not commit.

Therefore, the undersigning counsel prays that the Objection to the Proof of Claim be OUTRIGHT DENIED, it is allowed in the full amount filed and that the stay be lifted. If the Objection proceeds, then the claim should be detached from all PROMESA related procedures and Movant allowed to proceed against the individual defendants.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On May 8, 2013, Movant filed two (2) complaints: one before the Commonwealth State Court, seeking compensation for the damages after a wrongful conviction (*Robert Anel Díaz Morales v. Commonwealth of Puerto Rico, et al.*, Case No. HSCI201300751) and another Complaint before the USDC-PR for violations to Movant's constitutional rights under the IV, VI, VII and XIV Amendments to the U.S. Constitution. *Robert Anel Díaz-Morales v. Sergio Rubio-Paredes, et al.*, Case No. 13-1360. At the Commonwealth Court level, the Complaint was filed under PR Law No. 104 of 1955, the so called Claims and Demands against the State Act, 32 LPRA § 3077 *et seq*. At the USDC-PR, the Complaint was against the individual defendants, in their personal capacities as officers of the Commonwealth, in connection with the investigation and prosecution of the murder of Ms. Kenia Rosario Viera. **ECF No. 1 (This and any other reference to a docket filing refer to Case No. 13-1360)**. The Commonwealth action, filed by Movant and his close relatives, sought compensation from the Commonwealth, Puerto Rico's Department of Justice, the Puerto Rico Police, and their insurance companies for the damages he and his relatives suffered after Movant was incarcerated for being falsely accused and convicted of the first-degree murder of Ms. Keila Rosario Viera, aggravated burglary, and aggravated restriction of liberty.

On that same date, Movant filed another Complaint before the USDC-PR against the individual defendants in their personal capacities, *Robert Anel Díaz-Morales v. Sergio Rubio-Paredes, et al.*, Case No. 13-1360, pursuant to 42 U.S.C. § 1983 for violations to Movant's constitutional rights under the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution in connection with the investigation and prosecution of the murder of Ms. Kenia Rosario Viera. **ECF No. 1.**

Through the actions filed in both jurisdictions, Movant sought to be indemnified for the damages he suffered after eight and a half (8 ½) years of unjust imprisonment due to the illegal acts of the Commonwealth, its governmental instrumentalities, and the individual defendants, as officers of the Commonwealth acting under color of law.

After almost four years of litigation, on the eve of trial, the parties reached a confidential settlement agreement on February 3, 2017. **ECF No. 248.** In this agreement, Movant agreed to settle all matters pending in both the Commonwealth and the USDC-PR actions for the total amount of one million six hundred thousand dollars ($1.6M). The Commonwealth agreed to pay the total settlement amount in six (6) equal yearly installments of two hundred twenty-eight thousand five hundred seventy-one dollars ($228,571.00), and a final instalment of two hundred twenty-eight thousand five hundred seventy-four dollars ($228,574.00). Movant agreed to petition the

Commonwealth Court for the dismissal with prejudice of the action filed there. He and his relatives waived the right to file a lawsuit in any forum of whatever nature for all and any claims arising out of his federal action. Nevertheless, under the Settlement Agreement the Commonwealth did not waive its 11th Amendment sovereign immunity.  The Settlement Agreement predates this PROMESA case.

Before the first installment was due, on May 3, 2017, the Financial Oversight and Management Board filed a petition for bankruptcy relief on behalf of the Commonwealth under Title III of PROMESA. Then, on September 4, 2017, the individual defendants, invoking the alleged rights of the non-party Commonwealth in the USDC-PR action, and without submitting the Commonwealth to the jurisdiction of USDC-PR, through an Informative Motion, moved to stay the proceedings solely based on the filing of this Title III case. **ECF No. 256.** On October 19, 2017, the USDC-PR issued an Order denying the application of the stay. **ECF No. 258.** The District Court's rationale was that the stay should be denied because the Complaint in the USDC-PR action was not against the Commonwealth, the Commonwealth was never a party to the action nor the Settlement Agreement (although it agreed to pay it), and that the Complaint was it on account of a debt or a claim of the Commonwealth. The Court made it clear that Movant did not seek in the Complaint any claim-debt-related collection litigation against the Commonwealth,

and that the damages claim against the individual defendants are certainly not "debts." individual defendants appealed and on May 10, 2021, the First Circuit affirmed the USDC-PR's Order denying the applicability of the stay (*see* **ECF No. 258**), because there was "no 'action' or plaintiff 'proceeding' demanding that the Commonwealth make the payment to the plaintiff, and there has been no effort to 'commence' or 'continu[e]' one." **ECF No. 279** at 9.

On June 8, 2021, after receiving the First Circuit's mandate, Movant moved to schedule a status conference to "address pending matters and properly schedule this case going forward." **ECF No. 282.** In this case —being as it still was, in its final stages with only trial scheduled to commence— a status conference was held to discuss possible solutions to the matter of the payment of the installments due and payable, and that had already settled the action against the individuals with the Commonwealth paying for the settlement, as counsel for the individual defendants, and as compensation for Movant's damages, explore other alternatives for settlement, or continue the action against the individual defendants. **ECF No. 288.**

After the status conference, the individual defendants filed yet another motion to inform this Court of the applicability of the automatic stay. **ECF No. 290.** Then, on November 22, 2021, another settlement conference was held before the USDC-PR, and the conference report and order were issued. **ECF No. 301.** In hopes

that the parties could or would identify alternatives for Movant
to obtain, at least partial execution of the Judgment before the
imposition of the stay, the Court instructed counsel for the
individual defendants to meet with their superiors, including the
Commonwealth's Secretary of Justice, and identify mechanisms that
may bring the action to a negotiated resolution. Nevertheless,
before the Court could dispose of the motion for the applicability
of the stay and before the follow up conference, the individual
defendants appealed from the settlement conference report and
Order of November 22, 2021.

On April 13, 2022, the automatic stay was extended to this case
pending the resolution of *In re: The Financial Oversight and
Management Board for Puerto Rico*, Case No. 17-3283 (LTS) or further
order from the Court. **ECF No. 308.** This was in response to the
individual defendants' informative motion regarding the
applicability of the automatic stay provision of the Puerto Rico
Oversight, Management, and Economic Stability Act ("PROMESA") to
the individual defendants as government officials. **ECF No. 290.**
Motion which was opposed by Movant and then replied by the
individual defendants. **ECF Nos. 292; 297.**

The main argument in support of this decision was that:

> [T]he Court finds that Plaintiff sought to enforce the
> Commonwealth to pay Plaintiff according to the terms of
> the settlement agreement during the status conference on

*September 30, 2021, because the Commonwealth is the only
party that has expressly committed to pay the agreed-
upon amount. Therefore, the Court holds that the case is
stayed pursuant to PROMESA's automatic stay provision.*
**ECF No. 307 at p. 7.**

On July 31, 2023, Movant's legal representatives were
notified that the Proof of Claim filed by him on May 25 of
2018 was objected because it:

*"fails to provide a basis for asserting a claim against
the Commonwealth of Puerto Rico. Proof of claim and
supporting documentation only show liability between the
claimant and individuals in their personal capacities,
who are not part of the Title III proceedings."*

## STANDARD OF REVIEW FOR A RELIEF STAY MOTION

Section 362(a) of the Bankruptcy Code provides that the filing
of a bankruptcy petition operates as a stay on all creditor
collection efforts against the debtor's assets, 11 U.S.C. § 362(a).
This is known as an "automatic stay" and, although the reach of
the automatic stay is broad, it is not unlimited. 3 Collier, *On
Bankruptcy* ¶ 362.01. Overall, the stay bars any debt collection
effort, except those arising from debts which were constituted
post-bankruptcy petition.

The general purpose of the automatic stay is to grant time to
the debtor to reorganize his or her finances without being harassed

by creditors. But like most of the rights the law grants, the automatic stay is not a bulletproof and insurmountable barrier. Subsection (d)(1) of section 362 provides that, on the request of a party-in-interest and after notice and a hearing, the court shall grant relief from the automatic stay "for cause," 11 U.S.C. § 362(d).

Aside from the "lack of adequate protection" of a secured creditor, **the term "cause" is not defined** in the Bankruptcy Code and neither it is defined in Title III of PROMESA. Consequently, in the absence of a statutory criterion, different courts have devised various multi-factor tests to determine whether "cause" has been met in any given case to lift the stay. *See, e.g.*, *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2nd Cir. 1990); *In re Rexen Prods. Co.*, 141 Bankr. 574 (D. Del. 1992); *In re Granati*, 271 Bankr. 89 (E.D. Va. 2001); *In re Johnson*, 115 Bankr. 634 (D. Minn. 1989); *In re Pro Football Weekly, Inc.*, 60 Bankr. 824 (N.D. Ill. 1986); *In re Curtis*, 40 Bankr. 795 (D. Utah 1984). Up until now, courts have not considered every factor of the multi-factor test to lift a stay in such a way that, in some cases, they have even relied on a single factor. For example, the Bankruptcy Court for the Southern District of Georgia stated that "[i]n weighing these factors, this Court does not need to specifically address each of the various factors, but instead only needs to consider those factors relevant to the particular case, and this Court does not

need to assign them equal weight." *In re R. J. Groover Construction*, 411 Bankr. 460, 464 (S.D. Ga. 2008). Thus, district courts have relied on some of the relevant factors of their multi-factor test without assigning equal weight to them in order to grant relief from stay.

To be clear, the automatic stay does not confer absolute immunity to the filer against claims that are sustained by just cause. The Court has the discretionary power to decide case-by-case if sufficient "cause" has been shown to lift the stay. But, as *In re Kerns* made clear: the court does not have "total discretion" in deciding to lift the stay because § 362(d) of the Bankruptcy Code directs the court to grant relief from the stay for cause by using the word "shall" instead of "may", and therefore, "**where cause is found to exist, the courts have no discretion to deny relief**," *In re Unanue-Casal*, 159 Bankr. 90, 94 (D. P. R. 1993) (emphasis added) (quoting *In re Kerns* 111 Bankr. 777, 782 footnote 2 (S.D. Ind. 1990)). For this reason, this Court should engage in an equitable balancing of the various harms at stake and determine that there is more than sufficient cause to lift the stay.

In Puerto Rico, with PROMESA, a similar stay is also barring any and every effort of creditors to collect against the Commonwealth, its instrumentalities, and its property. And like the Bankruptcy Code, section 405(e) of PROMESA provides that, upon

request of a party and "after notice and hearing," the Court shall grant relief from the stay "for cause shown" 48 U.S.C. § 2194(e). That is, in both cases, the stay is not an absolute blockage and may be lifted by presenting "cause" for its relief as we respectfully do in this motion.

In our District Court, there has been at least one case decided that provided a multi-factor test which was later affirmed by the First Circuit, that is, *In re Unanue-Casal*, 159 Bankr. 90 (D. P. R. 1993) (later aff'd by *In re Unanue-Casal*, 23 F.3d 395 (1st Cir. 1994)). This Court in *In re Unanue-Casal*, in an effort to consider the harms at stake, took guidance from the multi-factor test put forward in *In re Curtis*, *supra* at 799-800, which consists of the following 12 factors:

> ***(1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case;*** *(3) whether the foreign proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;* ***(7) whether litigation in another forum would prejudice the interest of other creditors, the creditors' committee and other interested parties;*** *(8) whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;* ***(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;***

> *(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial;* **(12) the impact of the stay on the parties and the "balance of hurt."**

Additionally, the Court relied on two more factors: namely, the **misconduct or bad faith** of the debtor, and whether the creditor has a probability of prevailing on the merits, *In re Unanue-Casal*, *supra* at 96.

Let us now submit our arguments in accordance with the causes that have guided this Court in the past to lift a stay. These arguments are to be measured against the central argument in support of staying this case as it was held by the USDC-PR in its *Opinion and Order* of April 12, 2022. **ECF No. 307.** To be brief, the USDC-PR held that the case should be stayed because Movant sought to enforce the Commonwealth to pay him since the Commonwealth is the only entity that has expressly agreed to pay the settlement amount. Following the case law cited above, we will exclusively consider factors that are relevant to this case and assign them the whole weight of the criterion.

### A. FACTOR: WHETHER THE RELIEF WILL RESULT IN A PARTIAL OR COMPLETE RESOLUTION OF THE ISSUES

The action filed by Movant was in its final stages in the USDC-PR and a settlement had been reached with the individual defendants before they requested that PROMESA's automatic stay be applied to the action. Thus, if relief from stay is granted, then

it would result in a complete resolution of the issues since the only step yet taken is that the Commonwealth provide monetary relief to Movant, considering it was its Courts who deprived him of eight and a half (8 ½) years of his life in clear violation of his constitutional rights. Otherwise, if the settlement is not enforceable in the USDC-PR after lifting the stay, the action should continue against the individual defendants and the Commonwealth will determine whether it is going to defend them or not.  Under any circumstance, lifting the stay would conclude any PROMESA implications.

### B. **FACTOR: THE LACK OF ANY CONNECTION WITH OR INTERFERENCE WITH THE BANKRUPTCY CASE**

This factor is supported by the Bankruptcy Code's legislative history as stated in the following Senate Report which asserts that "[t]he lack of adequate protection of an interest in property is one cause for relief, but is not the only cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case." S. Rep. No. 989, 95th Cong., 2d Sess. 52. Adequate protection is not applicable here as the claim of Movant is not a secured debt. This we look at the other factor. Furthermore, Collier adds that "[a]ctions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum," 3 *On Bankruptcy* ¶ 362.07(3). It is clear enough to see that in our

case, Movant, as a third party of the Commonwealth's bankruptcy case, holds a claim which is only remotely related to the Commonwealth's bankruptcy under PROMESA's statutory provisions.

Movant is not an investor nor has any lien nor interest in the estate of the Government, its instrumentalities, or agencies. He is not attempting to satisfy a credit owed by the Commonwealth, but he is attempting to obtain indemnification because of the damages he suffered after being wrongfully incarcerated for the better part of a decade. Movant's claim is not a "debt," rather **it is a compensatory indemnification**. Plus, the amount already settled upon between Movant and the individual defendants is of no significance for a proper reorganization of the Debtor, whose plan already has been confirmed, and which was never a party in the litigation before the USDC-PR and only agreed to pay the amount because of the damages caused by its officers who it provided legal defense thought the Commonwealth's counsel. Therefore, Movant's claim will have no significant effect on the bankruptcy estate.

Additionally, **the automatic stay is not serving the purpose for which Congress enacted it.** Congress' fundamental purpose of the stay to be a "breathing spell" for debtors in bankruptcy proceedings. *In re Jefferson Cnty.*, 491 Bankr. 277, 285 (N.D. Ala. 2013); *see also In re Lomas Fin. Corp.*, 117 Bankr. 64, 67 (S.D. N.Y. 1990) (remanded on other grounds, 932 F.2d 147 (2d Cir. 1991)); H.R. Rep. No. 95-595, at 340 (1977). In *In re Kerns*, *supra*, the

District Court of Southern District of Indiana expressed that "**a review of the legislative history reveals that Congress did not intend the automatic stay to remain in force when the proceedings stayed have no relationship to the purpose of the automatic stay**," 111 Bankr. at 787 (S.D. Ind. 1990).

In this case, the stay is not serving its purpose because: (1) The individual defendants, that are not debtors in this case, have no interest in gaining a "breathing spell" in order to comply with the bankruptcy proceedings because it is plainly inapplicable to them; (2) the amount settled upon is insignificant compared to the estate of the debtor; (3) Movant is not a secured creditor, that is, he has no interest nor lien on any property of the debtor, and (4) Movant's claim will have no real effect on the effective reorganization of the debtor. Therefore, Movant's claim does not interfere with the goal of equality of distribution between creditors, nor does it interfere with the purpose of the stay.

This Court will note there is no just cause for the continuance of the stay in this case. And after all, the Commonwealth has had more than a "breathing spell" by unjustifiably applying the stay to Movant's action in the USDC-PR action as the Commonwealth has not paid a single of the instalments due for 2017, 2018, 2019, 2020, 2021, 2022 and 2023. If the installments had been timely paid, only the last installment would be due on June 30, 2024, for

the amount of two hundred twenty-eight thousand five hundred
seventy-four dollars ($228,574.00).

**C. FACTOR: WHETHER LITIGATION IN ANOTHER FORUM WOULD
PREJUDICE THE INTEREST OF OTHER CREDITORS, THE
CREDITORS' COMMITTEE, AND OTHER INTERESTED PARTIES.**

In this case, there is no possibility of the claim being
litigated in another forum because the present case has already
been resolved. The reason we are before this Honorable Court is to
allow Movant to be compensated under the agreement that the
Commonwealth has agreed to pay for the violation of his civil
rights, including his right to due process under both the United
States and Commonwealth Constitutions. Therefore, there is no need
to engage in further litigation that may affect the interests or
rights of other creditors of the Commonwealth. In the interest of
doing justice to those who seek it, the Court should grant relief
from stay.

In short, we respectfully submit that granting relief from stay
will not prejudice the interests of other creditors. Therefore, in
the interest of doing justice to those who seek it, as Movants
does, the Court should grant relief from stay. And the USDC-PR
action should continue against the individual defendants with the
same consequence.

### D. FACTOR: THE INTEREST OF JUDICIAL ECONOMY AND THE EXPEDITIOUS AND ECONOMICAL DETERMINATION OF LITIGATION FOR THE PARTIES.

The proceedings in Movant's civil action, as argued above, are sufficiently advanced so as to not warrant the resolution of the Debtor's bankruptcy. It would be a waste of judicial resources to attend proceedings of Movant's civil action related to the Commonwealth (which was never a party) considering that the parties had already reached a settlement. After many years of litigation, the Court should take into consideration that any other proceeding in this case unrelated to the payment of the settlement is a waste of judicial resources and a strike against the principle of judicial economy.

### E. FACTOR: THE IMPACT OF THE STAY ON THE PARTIES AND THE "BALANCE OF HURT."

We now turn to our direct dissension against the central argument in support of staying the case of the *Opinion and Order* that the USDC-PR held on April 12, 2022. It states that the automatic stay should be granted and extended to the present case since "Plaintiff sought to enforce the Commonwealth to pay Plaintiff according to the terms of the settlement agreement during the status conference on September 30, 2021, **because the 'Commonwealth is the only party that has expressly committed to pay the agreed-upon amount.'" ECF No. 307 at p. 7.** The Court

granted and extended the stay to the individual defendants because the Commonwealth will pay the settled-upon amount.

**We respectfully dissent with the granting and extension of the stay, but not because of the issue of who will be paying for the damages, rather because staying civil rights cases under 42 U.S.C. § 1983 will provide a *carte blanche* to Puerto Rico's officials in their personal capacities to discriminate and to act against the U.S. Constitution.**

Based on this observation, Professor Carlos del Valle Cruz recommends that the automatic stay provisions at issue here must be read in light of section 7 of PROMESA, which provides that the Act "shall [not] be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws…". He further adds that "we read the reference to "compliance with Federal laws" to encompass the Constitution. Neither the nature of a § 1983 action, which does not expose the Commonwealth to monetary liability, nor PROMESA's statutory language, warrant extending the stay provisions to § 1983 actions seeking to enforce fundamental constitutional rights […]," *Brief for Appellant*, at 15, *Pabón Ortega v. Llompart Zeno* (1st Cir. 2018). In sum, Del Valle Cruz states that the stay must be lifted if the claim against the debtor stems from a civil rights action in order to correct and prevent further violations against U.S. citizens residing in Puerto Rico.

We agree with Professor Del Valle Cruz and bring forth this argument for consideration by the Court. We respectfully contend that **the USDC-PR should take an exception to its own argument quoted from the *Opinion and Order* precisely because this is a case which relates to violations of constitutional rights and not just another creditor-debtor action.**

If the Court decides to continue staying the proceedings in the USDC-PR action, the inevitable consequence is a total stagnation of civil rights and the lack of constitutional protection for Puerto Rico's residents from state officials' attacks. If the application of the automatic stay is done in absolute terms — **without distinguishing civil rights cases from other creditor-debtor actions—** then the victims of government officials will have no incentive whatsoever to seek justice and correction against them. The constitutional protection of U.S. citizens residing in Puerto Rico against state officials will be *de facto* obstructed due to a lack of incentive for the victims to seek rectifying justice for the Commonwealth officials' actions.

This Court must consider if the continuance of the stay in this civil rights case equals to a lack of constitutional protection *and* a lack of incentive to pursue the protection of said constitutional rights. The balance of hurt weighs heavily for the victims of civil rights violations as it so happened here with Movant, who suffered eight and a half years of unjust imprisonment

due to the negligence and wrongful acts of state officials. At the same time, we must keep in mind that lifting the stay will not doom the Commonwealth's attempt at reorganizing, since the Movant's claim will have no real significant effect on the bankruptcy estate. These are the elements which are being put forward to the test on the scale, and it is blatantly clear after our argument that the scale weighs heavily on Movant's side.

Additionally, staying civil rights actions under PROMESA's automatic stay certainly implies due process issues to uphold fundamental constitutional guarantees. Conversely, lifting the stay runs parallel to the equal protection of the law that the Movant is entitled under the U.S. Constitution. The Court should be flexible enough in order to grant the process that is due in civil rights actions and allow the action to continue to settlement or to trial against the individual defendants who are represented by the Commonwealth under PR Law 104-1955.

This becomes more evident when faced with the fact that here, there is no simple creditor-debtor relation, rather the relation here is more aptly defined as an injured-indemnifier one. Instead of a debtor, the state is an indemnifier because it has injured a private person; and, instead of a creditor, the affected party is an injured person who has the right to be indemnified for the violation of his civil rights. Lifting the stay is the only way to correct the severe curtailment of Movant's constitutional rights.

For this reason, the stay should not be continued because the Commonwealth is the only party committed to pay; but rather the stay should be lifted because if not, then the victims of constitutional rights violations by state officers will have no incentive to seek justice, giving state officials *carte blanche* to discriminate and to act against the U.S. Constitution.

### F. FACTOR: MISCONDUCT OR BAD FAITH.

The individual defendants' motives in soliciting a stay in Movant's civil action when it was already in its final stages — *i.e.*, after having reached a settlement agreement by the parties involved— are clearly in bad faith. To be transparent, the individual defendants' actions show a palpable abusive use of this laudable judicial mechanism.

Although there is no precise standard with which to measure bad faith, courts have found factors which show an intent to abuse the judicial process. For example, in *Laventhol & Horwarth*, *supra*, **the Court determined that a factor which shows the bad faith of the debtor was whether the debtor was trying to circumvent the non-bankruptcy litigation and avoid an unfavorable state court's judgment**, cited in *In re Unanue-Casal*, *supra*, at 101.

This attempt at circumventing the non-bankruptcy litigation is exactly what is happening in Movant's civil action. The individual defendants have requested the application of an automatic stay to

this case to avoid the settlement payment. This suggests that the individual defendants' motives are to circumvent and avoid delivering justice after it was established that individual defendants, and the Commonwealth in the Commonwealth action, incurred in illegal actions that cost eight and a half (8 ½) years of Movant's life. By analogy, one can see that the debtor's bad faith as cited in *In re Unanue Casal*, applies when a third party incurs in bad faith by requesting the debtor's stay.

Another clearcut indication of the individual defendants' bad faith in requesting the stay is that it does not align with the purpose which Congress enacted it for. As stated above, Congress intended for the fundamental purpose of the stay to be a "breathing spell" for debtors in bankruptcy proceedings, H.R. Rep. No. 95-595, at 340 (1977). **The individual defendants are not gaining a "breathing spell" by adhering to the debtor's stay, rather they are abusing the automatic stay by maliciously delaying the payments that were settled upon.** "It has been long recognized that one who invokes the protective provisions of the bankruptcy laws must do so in order to accomplish and further the expressed legislative aim of the particular Chapter and not for any other purpose." *In re Mogul*, 17 Bankr. 680, 681 (M.D. Fla. 1982).

In contrast, Movant's action expresses his good faith since the confidential settlement reached on February 3, 2017, in Civil No. 13-1360 (PG) before the USDC-PR with the individual defendants

Limaris Cruz Vélez, Emilio Arill García, and Sergio Rubio Paredes
—all sued in their individual personal capacities— benefited the
Commonwealth of Puerto Rico. This is because the settlement
resulted in the dismissal with prejudice of a parallel state case
styled *Robert Anel Díaz Morales, et al. v. ELA, et al.*, Civil No.
DDP 2013-0403 (505). In that case, the Commonwealth and some of
its instrumentalities, as opposed to the action before the USDC-
PR, were indeed named parties.

By disposing of all the claims against the Commonwealth and its
instrumentalities after the settlement, the Commonwealth benefited
since the dismissal of the Commonwealth Action was also dismissed,
with prejudice, and it covered claims of Movant's relatives against
the Commonwealth. There is no doubt that the aforementioned should
be taken as a sign of good faith since Movant merely seeks speedy
and economic justice under 42 U.S.C. § 1983, after his
constitutional rights were violated by state officials.

We now bring the attention of the Court to what was stated by
the Bankruptcy Court for the Southern District of Georgia in *In re
R. J. Groover Construction*, *supra*, this Court only needs to rely
on the relevant factors of its standard multi-factor test as
acknowledged in *In re Unanue-Casal*, *supra*, to grant the relief
from stay here petitioned. Moreover, the automatic stay's reach is
limited, that is, it does not confer absolute immunity to the
debtor against its creditors if sufficient cause for relief has

been shown as it has effectively been done here. Following both, subsection (d)(1) of section 362 of the Bankruptcy Code, 11 U.S.C. § 362(d), and section 405(e) of PROMESA, 48 U.S.C. § 2194(e), this Court "shall grant relief from the stay" if cause has been shown. As interpreted in *In re Kerns*, *supra*, if cause has been shown and found to exist, this Court has no discretion to deny relief precisely because our laws direct the courts of our country to grant relief from stay by using the word "shall" instead of "may."

Of the multi-factor test acknowledged by this Court in *In re Unane-Casal*, *supra*, six (6) factors have been shown to be relevant and to constitute just cause for this Court to grant relief from the automatic stay. In short, it has been shown that: (1) the relief will result in a complete resolution of the issues; (2) Movant's claim will have no significant effect on the bankruptcy case nor will it cause interference on the effective reorganization of the debtor; (3) there is no more litigation needed in this case, other creditors' interest will remain unaffected regardless of the outcome of Movant's claim; (4) any other proceeding unrelated to the payment of the settlement would be a waste of judicial resources and an attack against the principle of judicial economy; (5) the balance of hurt weighs heavily for the victims of civil rights violations since it will cut any incentive to seek reparation of civil rights violations and it will provide a *carte blanche* to Puerto Rico's officials in their personal capacities to

discriminate and to act against Federal laws and the U.S. Constitution, and (6) the individual defendants' motives in requesting the application of the debtor's automatic stay are in bad faith since they are simply using it to circumvent and avoid settlement payment and they are not gaining a "breathing spell" by adhering to the stay as Congress intended its fundamental purpose to be.

We hold that, having met these six (6) factors of this Court's multi-factor test, it is more than enough for this Court to determine that just cause exists for lifting the stay. This Court has the inherent discretionary power to prevent the continuation of the stay if it perceives an intent to abuse the purpose of the Bankruptcy Code, *see* R. L. Ordin, *The Good Faith Principle in the Bankruptcy Code: a Case Study*, 38 Bus. Law. 1795 (1983). The automatic stay of Case No. 13-1360, should be lifted pursuant to 11 U.S.C. § 362(d) and 48 U.S.C. § 2194(e) *for cause shown*, including but not limited to reasons stated in this motion for relief from stay.

It is important here to highlight that the fact that the **Commonwealth is the only party that has expressly committed to paying the agreed-upon settlement amount, is immaterial for the purposes of lifting the automatic stay.** If this Court evaluates, as it has done before, the "balance of hurt" in the present case, it will find that it alone suffices to dim the *Opinion and Order*'s

reason as an argument for sustaining the stay. Thus, diminishing the consequence of whether Movant sought to enforce the Commonwealth to pay or not during the status conference on September 20, 2021, and/or any other instance. The importance of the immateriality of this point cannot be stressed enough, since it was the main reason which led the USDC-PR to grant the individual defendants' motion to stay the case under PROMESA. **ECF No. 307, at p. 7.**

## <u>RESPONSE TO THE OBJECTION OF THE PROOF OF CLAIM</u>

Under Title III of PROMESA, the automatic stay extends to actions brought to collect judgment issued before Title III was filed. *Autonomous Municipality of Ponce v. F.O.M.B. (In re F.O.M.B.)*, 939 F.3d 356, 360-61 (1st Cir. 2019). Said automatic stay also extends to the Commonwealth and officers in their official capacity. *Peaje Invs., LLC v. F.O.M.B. (In re F.O.M.B.)*, 899 F.3d 1, 5-6, 6 n.2 (1st Cir. 2018). The stay applies even if the payment agreement was struck before the Title III petition filing and to the remanent of any debt if payment started before Title III filing. *Colon-Torres v. Negron-Fernandez*, 997 F.3d 63, 73 (1st Cir. 2021).

There should be no doubt that the individual defendants' actions are imputable to the Commonwealth and any argument to the contrary, at this stage of the proceedings, as the Commonwealth's legal

representatives have done in the Objection, is inconsistent and contradictory to the Commonwealth's past actions and arguments, and, consequently, they are estopped from doing so. In this sense, the doctrine of equitable estoppel prevents one "from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made." *Clauson v. Smith*, 823 F.2d 660, 662 (1st Cir.1987). There are four requirements for this estoppel to apply: (1) the party to be estopped know the facts; (2) that party must intend that his conduct be acted upon (or must act in a way that leads the party asserting the estoppel to believe it is so intended); (3) the latter must be ignorant of the true facts; and (4) he must rely on the estopping conduct to his detriment. *Id.*

In this case, this Court will find the four (4) requirements to apply the doctrine of equitable estoppel. First, The Commonwealth knew the facts because it was party to the State Court proceedings in which they were defending themselves because of the individual defendants' actions and by virtue of the settlement agreement they consented to pay Movant a compensation in several installments. Second, Movant voluntarily dismissed the two lawsuits pursuant to the settlement agreement, and therefore acted on the premise that he would be compensated for the damages he suffered as a result of his wrongful incarceration. Third, Movant was unaware that both

the Commonwealth and the officials would use PROMESA as a
subterfuge to prevent him from being properly compensated as agreed
in the Settlement Agreement. Finally, there is no doubt that Movant
relied on the Commonwealth's actions to his detriment. Movant
agreed to have the State Court action against the Commonwealth
dismissed with prejudice by virtue of a settlement between him and
the Commonwealth that has not been satisfied. Now, the
Commonwealth's legal representatives temerariously claim that
Movant's Proof of Claim does not assert a claim against the
Commonwealth because the liability asserted was between Movant and
the individual defendants.

   Respectfully, and in conclusion, the Objection made by the
Commonwealth to Movant's Proof of Claim is reckless, frivolous,
contradictory, and constitutes a vexatious action that should be
punished by this Honorable Court. Originally, the PROMESA stay of
the Federal Court action filed by Movant was not extended to the
individual defendants, as they were government officials, and the
Commonwealth was not a party to the action before the USDC-PR.
Nevertheless, *Peaje Invs., LLC v. F.O.M.B. (In re F.O.M.B.)*, *supra*,
confirmed PROMESA's stay was to be extended to individuals that
were officers of the Commonwealth. Therefore, the counsel for the
individual defendants, who were defense counsel from the
Department of Justice of the Commonwealth, moved to apply the stay
because they claimed that the action was against the Commonwealth

(as the Commonwealth had to pay the settlement), and because the PROMESA stay applied to the individual defendants' officers. However, on July 31, 2023, the Commonwealth made a completely contradictory argument in order to object to the Proof of Claim filed by Movant in this case.

Considering this, we respectfully submit that this Honorable Court is in a position to understand why both Movant and his counsel were flummoxed when informed of opposing counsel's grounds for objecting Movant's Proof of Claim. Therefore, we respectfully ask this Court to find the Objection to Movant's Proof of Claim to be frivolous and temerarious, find it baseless, lift the stay and allow the entire amount arising from Movant's Proof of Claim of one million six hundred thousand dollars ($1.6M) as compensation for the violation of Movant's constitutional rights settled at arm's length in the USDC-PR action.

## CONCLUSION

We respectfully submit that the Honorable Court has been positioned to deny Commonwealth's counsel's frivolous and reckless Objection to Movant's Proof of Claim, to lift the stay, and to deem the Proof of Claim to be allowed for the entire agreed upon settlement of one million six hundred thousand dollars ($1.6M).

Should this Honorable Court find our Opposition to the Commonwealth's Objection to Movant's Proof of Claim is misplaced,

we request that Movant's Claim be detached from PROMESA related procedures, and that Movant be allowed to proceed with his action against the individual defendants. This is because we would not be making a claim against Commonwealth, and there would be no obstacle to Movant's ability to seek damages for the eight and a half (8 ½) years he was unjustly and illegally incarcerated for a crime he did not commit.

Regardless of how this Honorable Court decides to exercise its wisdom in resolving Movant's present Response, we request that we be allowed to participate in and present Movant's position at the hearing to be held on August 30, 2023.

**WHEREFORE,** Movant respectfully requests that this Honorable Court DENY the Omnibus Objection filed at D.E. 24749 regarding Movant's Proof of Claim, that the stay be lifted, and his claim be deemed allowed for the entire agreed upon amount of one million six hundred thousand dollars ($1.6M). Otherwise, if this Honorable Court should find that the Objection has a legal basis, that the procedures be detached from PROMESA related procedures and Movant's Proof of Claim be allowed to pursue his claim against the individual defendants. Because of the Commonwealth's actions before the USDC-PR and before this Honorable Court, and its failure to try to reach an agreement and having forced Movant to file this Response, Movant requests that this Honorable Court awards Movant reasonable attorney's fees incurred in the filing of this Response.

Movant also requests that his undesigned counsel be allowed to participate in the hearing to be held on August 30, 2023.

    **RESPECTFULLY SUBMITTED.**

    In San Juan, Puerto Rico, on August 14, 2023

    **IT IS HEREBY CERTIFIED** that the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification electronically to all attorneys of record.

| | |
|---|---|
| **SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, PSC** | **COTO & ASSOCIATES** |
| 166 Ave. de la Constitución | P O Box 71449 |
| San Juan, Puerto Rico 00901 | San Juan, P.R. 00936-8549 |
| Tel: (787) 289-9250 | Tel: (787) 756-9640 |
| Fax: (787) 289-9253 | Fax: (787) 756-9641 |
| Cel: (787) 402-5670 | |
| | |
| *s/Ángel E. Rotger-Sabat* | *s/Ramón Coto-Ojeda* |
| ÁNGEL E. ROTGER-SABAT | RAMON COTO-OJEDA |
| USDC-PR No.208601 | USDC-PR No. 202006 |
| arotger@scvrlaw.com | rco@crlawpr.com |