**Hearing Date: October 4, 2023 at 9:30AM (Atlantic Standard Time)**
**Response Deadline: September 18, 2023 at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                 Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

### SIX HUNDRED FOURTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO PROOFS OF CLAIM FILED BY VARIOUS COOPERATIVAS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways

and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this six hundred fourth omnibus objection (the "Six Hundred Fourth Omnibus Objection") to disallow, in their entirety, the proofs of claim listed on **Exhibit A** hereto, filed by various credit unions chartered under Puerto Rico law (the "Cooperativas") and asserting liabilities stemming from (*a*) the adversary proceeding styled *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 18-00028 (the "Cooperativas Adversary Proceeding"), which was dismissed, in its entirety, by the Title III Court, and which dismissal was affirmed on appeal; (*b*) an ownership interest in bonds issued by the Puerto Rico Public Finance Authority ("PRPFC") for amounts for which the Debtors are not liable because the issuing entities are not Title III Debtors and have not guaranteed repayment for the bonds; and (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB").  In addition, certain of the proofs of claim listed on **Exhibit A** hereto are deficient because they (*i*) fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim and/or (*ii*) assert liabilities for purported investment losses, but fail to state a claim on which the Debtors can be held liable for their purported investment losses.  In support of the Six Hundred Fourth Omnibus Objection, the Debtors respectfully represent as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section 306(a).

---

[2]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2.      Venue is proper in this district pursuant to PROMESA Section 307(a).

## BACKGROUND

**A.    The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case"). On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for HTA, pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "HTA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases"). On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only. ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs*

---

[3]      Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

*of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA, CCDA, PRPFC, and PRTDF Qualifying Modifications**

5.      On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended and modified, the "Plan") [ECF No. 19053].  The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.      Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19784].

7.      On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

8.      On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved
(a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case
No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the
Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA
QM"), which complement the transactions contained in the Plan.

9.      The Plan became effective on March 15, 2022 (the "Commonwealth Effective
Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry
of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the
Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of
the Effective Date* [ECF No. 20349].

10.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See*
Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

11.     On December 30, 2022, pursuant to Title VI of PROMESA, the Court approved the
*Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance
Corporation* (the "PRPFC QM") [Case No. 21-01493, ECF No. 78].  The PRPFC QM became
effective on January 12, 2023 [Case No. 21-01493, ECF No. 80] and all PRPFC indebtedness was
discharged in full.

12.     On July 18, 2023, the Puerto Rico Fiscal Agency and Financial Advisory Authority
commenced a Title VI proceeding for approval of the *Qualifying Modification Pursuant to
PROMESA Title VI for the Puerto Rico Tourism Development Fund* (the "PRTDF QM") [Case
No. 23-01373, ECF No. 1].  The Oversight Board is a co-proponent of the PRTDF QM, which
modifies certain debt issued by the Puerto Rico Tourism Development Fund.  The Court will hold
a hearing to consider approval of the PRTDF QM during the August 30, 2023 hearing.

C.      **Confirmation of the HTA Title III Plan of Adjustment**

13.     On August 13, 2022, the Oversight Board filed the *Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1377] (the "Fifth Amended HTA Plan").  The Court considered confirmation of the Fifth Amended HTA Plan, and objections thereto, at a hearing on August 17, 2022, after which it took the proposed order to confirm the Fifth Amended HTA Plan under submission.

14.     On September 6, 2022, in response to the Court's prior order requesting certain revisions to the Fifth Amended HTA Plan, the Oversight Board filed the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1404] (the "HTA Plan").

15.     On October 12, 2022, the Court confirmed the HTA Plan.  [Case No. 17-bk-3567, ECF No. 1415].

16.     The HTA Plan became effective on December 6, 2022.  [Case No. 17-bk-3567, ECF No. 1450].  On July 12, 2023, the United States Court of Appeals for the First Circuit denied the sole appeal taken from confirmation of the HTA Plan.  *See Vazquez-Velazquez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R)*, No. 22-1829 (1st Cir. July 12, 2023).

D.      ***Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.**, Adv. Proc. No. 18-00028*

17.     On March 22, 2018, several Cooperativas filed an adversary complaint against the Commonwealth, the Oversight Board and its members, and other Commonwealth instrumentalities (including COFINA, HTA, ERS, PREPA, and GDB), seeking declaratory judgments that their Puerto Rico debt holdings are not dischargeable and seeking monetary damages for alleged fraud in connection with the credit unions' purchase of Puerto Rico debt instruments.  [Adv. Proc. No.

18-00028, ECF No. 1] (the "Adversary Proceeding").  Each of the Cooperativas also filed proofs

of claim asserting (1) liabilities associated with the bond instruments owned by the Cooperativas,

and (2) liabilities arising from the Adversary Proceeding.

18.    On August 6, 2018, defendants, including the Oversight Board, for itself and as

representative of the Debtors, moved to dismiss the complaint [Adv. Proc. No. 18-00028, ECF No.

29].

19.    Thereafter, on April 16, 2019, the Cooperativas filed an amended complaint, which

eliminated claims premised on securities law and added claims for fraud, negligence,

misrepresentation, violation of the Puerto Rico Organized Crime Law, and violation of the Takings

Clause of the U.S. and Commonwealth Constitutions [Adv. Proc. No. 18-00028, ECF No. 79].

20.    On July 22, 2019, defendants filed motions to dismiss the amended complaint [Adv.

Proc. No. 18-00028, ECF Nos. 88, 91, 94, 97].

21.    Thereafter, on December 6, 2019, the Cooperativas filed a motion for leave to file

a second amended complaint [Adv. Proc. No. 18-00028, ECF No. 116], which the Court granted

[Adv. Proc. No. 18-00028, ECF No. 125].

22.    On April 16, 2020, the Cooperativas filed their second amended complaint [Adv.

Proc. No. 18- 00028, ECF No. 126].  The second amended complaint asserted seven causes of

action.  Counts I and II sought declarations excepting the Cooperativas' claims from impairment

or discharge in any Title III plan of adjustment on the ground the claims arose from fraudulent

conduct.  Count III alleged a violation of Puerto Rico's RICO statute based on the allegedly

fraudulent scheme.  Counts IV  and V alleged fraud and fraudulent inducement in violation of

various Puerto Rico fraud and negligence statutes.  Count VI asserted the Cooperativas' bond

purchases amounted to an unconstitutional taking without just compensation.  And Count VII alleged unjust enrichment.

23.     On April 20, 2020, as per the Court's briefing schedule, the Oversight Board [Adv. Proc. No. 18-00028, ECF No. 128], GDB [Adv. Proc. No. 18-00028, ECF No. 129], and the DRA Parties [Adv. Proc. No. 18-00028, ECF No. 130] refiled their motions to dismiss the first amended complaint as motions to dismiss the second amended complaint.  And, on May 21, 2020, the Oversight Board [Adv. Proc. No. 18-00028; ECF No. 143], GDB [Adv. Proc. No. 18-00028; ECF No. 145] and GDB DRA [Adv. Proc. No. 18-00028; ECF No. 146] filed supplemental briefs in support of their motions to dismiss, addressing new allegations contained in the Cooperativas' second amended complaint.

24.     After full briefing, on December 27, 2021, the Title III court dismissed the second amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) [Adv. Proc. No. 18-00028; ECF No. 192 (the "Decision")].  In the Decision, the court analyzed each of the claims asserted against each of the defendants and determined either that the court lacked jurisdiction over the claim or the second amended complaint failed to state a viable claim for relief.

25.     Thereafter, on January 12, 2022, the Cooperativas filed a notice of appeal of the Decision to the United States Court of Appeals for the First Circuit [Adv. Proc. No. 18-00028; ECF No. 194].

26.     On November 23, 2022, the United States Court of Appeals for the First Circuit affirmed the Decision. *Cooperativa de Ahorro y Credito Abraham Rosa v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 54 F.4th 42 (1st Cir. 2022).

E.     **The GDB Title VI Proceedings and Qualifying Modification**

27.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

28.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA Section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

29.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA Section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any

indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

30.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**F.     Bond Debt Issued by the Puerto Rico Public Finance Corporation**

31.     PRPFC is a subsidiary corporation of the GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  PRPFC provides government agencies, instrumentalities, municipalities, and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.

32.     PRPFC is not a Title III debtor; it is a separate, legally distinct entity from the Debtors, and its liabilities are not guaranteed by the Debtors or any other Title III Debtors.  *See, e.g.*, 3 L.P.R.A. § 9081(c) (referring to PRPFC as an "independent juridical entity" separate from the Commonwealth).

33.     U.S. Bank National Association ("U.S. Bank") and U.S. Bank Trust National Association ("U.S. Bank Trust") serve as trustee for certain Series 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC (the "PRPFC Bonds").

On behalf of the holders of the Series 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC, U.S. Bank and U.S. Bank Trust filed a proof of claim against the Commonwealth (the "PRPFC Master Claim"), which was logged by Kroll as Proof of Claim No. 13374.

34.     U.S. Bank and U.S. Bank Trust filed an objection to confirmation of the Plan [Case No. 17-3283, ECF No. 18631] relating to the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC (the "PFC Bond Trustee Objection"). At the hearing to consider confirmation of the Plan, the Oversight Board announced that an agreement, subject to certain approvals and definitive documentation, had been reached (*i*) to resolve the PFC Bond Trustee Objection and (*ii*) for the terms for the restructuring of the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC pursuant to Title VI of PROMESA.  Pursuant to such agreement, and in exchange for the compromises and settlements provided therein, the PFC Bond Trustee Objection was resolved.  On October 25, 2022, in accordance with the agreement and definitive documentation, solicitation was commenced seeking acceptance of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the " PRPFC QM").  The PRPFC QM proposed to discharge the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims.

35.     On October 28, 2022, the Oversight Board commenced a Title VI proceeding regarding the PRPFC QM [Case No. 22-01517, ECF No. 1].  On December 30, 2022, pursuant to Title VI of PROMESA, the Court approved the PRPFC QM [Case No. 21-01493, ECF No. 78]. The PRPFC QM became effective on January 12, 2023 [Case No. 21-01493, ECF No. 80] and all PRPFC indebtedness was discharged in full.

G.      **Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

36.      To date, approximately 182,599 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.75 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

37.      Of the proofs of claim filed, approximately 118,837 have been filed in relation to, or reclassified to be asserted against, Commonwealth.  Approximately 2,305 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

38.      To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

39.    In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

40.    Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 28 hearings related to over 500 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, PREPA, PBA, and/or ERS.  Based upon rulings and orders of the Court to date, as well as the expungement of certain claims pursuant to the Plan, approximately 124,966 claims asserting $43.6 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and expunged from the claims registry in the Title III proceedings.   In addition, approximately 46,230 claims have been transferred into the Administrative Claims Reconciliation process for resolution using the Debtors' ordinary-course administrative processes.

41.     This Six Hundred Fourth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

### OBJECTIONS TO PROOFS OF CLAIM

42.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA Section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

43.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

44.     This Six Hundred Fourth Omnibus Objection seeks to disallow, in their entirety, the proofs of claim listed on **Exhibit A** hereto, each of which is based on (*a*) the liabilities asserted in the Cooperativas Adversary Proceeding, which was dismissed in its entirety by the Title III Court, and which dismissal was affirmed on appeal; (*b*) an ownership interest in bonds issued by PRPFC for amounts for which the Debtors are not liable because the issuing entities are not Title III Debtors and have not guaranteed repayment for the bonds; or (*c*) an ownership interest in bonds issued by the GDB.  In addition, certain of the proofs of claim listed on **Exhibit A** hereto are deficient because they (*i*) fail to provide sufficient information to enable the Debtors to reconcile

the proofs of claim and/or (*ii*) assert liabilities for purported investment losses, but fail to state a claim on which the Debtors can be held liable for their purported investment losses. **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

### A. No Liability for Claims Asserting Liabilities Stemming from the Cooperativas Adversary Proceeding

45.    As set forth in Exhibit A hereto, each of the Claims to Be Disallowed purport to assert liability based, in part, on the same liabilities alleged in the Cooperativas Adversary Proceeding, which this Court dismissed, in its entirety, pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) (collectively, the "Partial Cooperativas Adversary Proceeding Claims"). *See, e.g.*, Claim Nos. 169491, 169494, and 169512.

46.    Each of the Partial Cooperativas Adversary Proceeding Claims was (1) filed by a Cooperativa that was a named plaintiff in the Cooperativas Adversary Proceeding, and (2) purports to assert liabilities associated with the Cooperativas Adversary Proceeding. *See e.g.*, Claim No. 169512, Ex. B (claiming "[l]osses, amounts and damages in the amount of $31,856,539 pursuant to Adversary Complaint Case 18-00028, which is still and active pending case.").

47.    However, neither the Debtors nor any other Title III Debtor are liable for the claims asserted in the Cooperativas Adversary Proceeding because this Court's December 27, 2021 Decision dismissed the Cooperativas Adversary Proceeding, in its entirety, and that Decision was affirmed by the United States Court of Appeals for the First Circuit on November 23, 2022.

48.    Certain of the Partial Cooperativas Adversary Proceeding Claims also assert claims for unpaid principle and interest in connection with their alleged "[d]ebt instruments issued by Commonwealth of Puerto Rico," but failed to identify, by CUSIP number, issuer, series, or other identifying information, the particular bonds they assert. Accordingly, such claimants fail to

provide any basis or supporting documentation for asserting a claim against the Debtors, or any other Title III Debtor, and so the Debtors are unable to determine the validity of their claim.

49.      Any failure to disallow the Partial Cooperativas Adversary Proceeding Claims will therefore result in the applicable claimants receiving an unwarranted recovery to the detriment of other stakeholders in these Title III Cases.   Accordingly, the Partial Cooperativas Adversary Proceeding Claims should be disallowed.

### B.  No Liability for Claims Based on PRPFC Bonds

50.      As identified in **Exhibit A** hereto, certain portions of the Claims to Be Disallowed purport to assert claims based on an alleged ownership interest in PRPFC Bonds issued by PRPFC (collectively the "Partial PRPFC Bondholder Claims").  *See, e.g.*, Claim Nos. 169491 and 169507. However, PRPFC is not a Title III Debtor and its liabilities are not guaranteed by the Commonwealth, HTA, or any other of the Title III Debtors.

51.      Each of the Partial PRPFC Bondholder Claims purports to assert, in part, liabilities against the Debtors associated with PRPFC Bonds not guaranteed by the Commonwealth, HTA, or any of the other Debtors.  PRPFC is not a Title III debtor, and is a separate, legally distinct entity from the Debtors.  *See, e.g.*, 3 L.P.R.A. § 9081(C) (referring to PRPFC as an "independent juridical entity" separate from the Commonwealth).

52.      With respect to PRPFC Series 2012A bonds asserted in each of the Partial PRPFC Bondholder Claims, the offering statement issued in connection with those bonds explicitly states that "[t]he 2012 Series A Bonds will not constitute an obligation of the Commonwealth or any of its political subdivisions or public instrumentalities (other than the Corporation), and neither the Commonwealth nor any of its political subdivisions or public instrumentalities (other than the

16

Corporation) will be liable thereon.  The corporation has no taxing power." *See* Offering Statement for PRPFC 2012 Series A Bonds at 1.[4]

53.     Further, on January 12, 2023, the PRPFC QM became effective, which discharged the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims. [Case No. 21-01493, ECF No. 80].

54.     Because the Debtors cannot be held liable for the Partial PRPFC Bondholder Claims, these claims should be disallowed in their entirety.

**C.  No Liability for GDB Bondholder Claims**

55.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively, the "Partial GDB Bondholder Claims").  *See, e.g.*, Claim No. 169491.

56.     Each of the Partial GDB Bondholder Claims purports to be based, in part, on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the Partial GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the

---

[4]     https://emma.msrb.org/ER602315-EA371499-EA768292.pdf

Qualifying Modification.  Accordingly, the Partial GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.

57.    Because the Partial GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed, because they seek recovery of amounts for which the Commonwealth is not liable.

### D.  Claims Asserting Investment Losses

58.    As set forth in Exhibit A hereto, certain of the Claims to Be Disallowed purport to assert liability, in part, based on liabilities arising out of alleged investment losses (collectively, the "Partial Deficient Claims Asserting Investment Losses").  *See, e.g.*, Claim No. 29506.

59.    To the extent they assert investment losses that are independent from the investment losses asserted in the Cooperativas Adversary Proceeding, none of the Partial Deficient Claims Asserting Investment Losses assert any potential causes of action against the Debtors that might render the Debtors liable for alleged damages incurred as a result of the claimants' decision to sell their bonds at a loss.  Accordingly, the Debtors are not liable for the losses asserted in the Partial Deficient Claims Asserting Investment Losses.  *See English v. Energy Future Holdings (In re Energy Future Holdings)*, 2018 U.S. Dist. LEXIS 49952, at *7 (D. Del., March 27, 2018) (holding bankruptcy court's order disallowing proof of claim was proper where claimant had sold bonds issued by the debtor and, thus, neither had any right to payment with respect to the bonds, nor did claimant show it had any potential cause of action against the debtor for the alleged damages incurred by the claimant in selling the debtor's bonds at a loss); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)) ("Initially, the claimant must allege facts sufficient to support the claim").

60.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Six Hundred Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to Proofs of Claim Filed by Various Cooperativas*, dated August 18, 2023, attached hereto as **Exhibit B**.

### **NOTICE**

61.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Six Hundred Fourth Omnibus Objection to (a) the individual creditors subject to this Six Hundred Fourth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Seventeenth Amended Case Management Procedures* [ECF No. 24726-1]), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico.  The notice for this Six Hundred Fourth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Six Hundred Fourth Omnibus Objection and all of the exhibits attached hereto are being filed and served with this objection. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 18, 2023
    San Juan, Puerto Rico

    Respectfully submitted,

    */s/ Hermann D. Bauer*
    Hermann D. Bauer
    USDC No. 215205
    Carla García-Benítez
    USDC No. 203708
    Gabriel A. Miranda
    USDC No. 306704
    **O'NEILL & BORGES LLC**
    250 Muñoz Rivera Ave., Suite 800
    San Juan, PR 00918-1813
    Tel:  (787) 764-8181
    Fax:  (787) 753-8944

    */s/ Martin J. Bienenstock*
    Martin J. Bienenstock (*pro hac vice*)
    Brian S. Rosen (*pro hac vice*)
    **PROSKAUER ROSE LLP**
    Eleven Times Square
    New York, NY 10036
    Tel:  (212) 969-3000
    Fax:  (212) 969-2900

    *Attorneys for the Financial
    Oversight and Management Board
    for Puerto Rico, as representative for
    the Commonwealth of Puerto Rico
    and the Puerto Rico Highways and
    Transportation Authority*

**Fecha de la vista: 4 de octubre de 2023, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 18 de septiembre de 2023 a las 4:00 p.m. (AST)**

---

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>  como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                    Deudores.[1] | PROMESA<br>Título III<br><br>Número: 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA y la ACT.** |

---

### SEXCENTÉSIMA CUARTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A EVIDENCIAS DE RECLAMACIONES RADICADAS POR VARIAS COOPERATIVAS

---

[1]     Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Número 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta sexcentésima cuarta objeción global (la "Sexcentésima cuarta objeción global") en la que se solicita que se rechacen en su totalidad las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, radicadas por varias cooperativas de crédito constituidas en virtud de la legislación de Puerto Rico (las "Cooperativas") y en las que se alegan responsabilidades que surgen de *a*) un procedimiento adversario con epígrafe *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. c. Estado Libre Asociado de Puerto Rico, et al.*, Proc. Adv. Número 18-00028 (el "Procedimiento Adversario de Cooperativas") que fue desestimado en su totalidad por el Tribunal de Título III, desestimación que fue confirmada en apelación; *b*) una participación patrimonial en bonos emitidos por la Corporación para el Financiamiento Público de Puerto Rico (la "CFPPR") por unos montos por los que los Deudores no son responsables porque las entidades emisoras no son Deudores de Título III y no han garantizado el reembolso de los bonos; y *c*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"). Además, algunas de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento son deficientes porque *i*) no proporcionan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones y *ii*) alegan responsabilidades por

---

[2]     PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

supuestas pérdidas por inversiones, pero no explican por qué los Deudores podrían ser responsables por sus supuestas pérdidas por inversiones. En apoyo de la Sexcentésima cuarta objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la ACT", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos

3

de Título III únicamente con fines procesales. ECF Número 537.[3]

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF Número 2255]  (la "<u>Moción de Fecha Límite</u>"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF. Número 2521] (la "<u>Orden Inicial de Fecha Límite</u>"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF Número 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "<u>Órdenes de Fecha Límite</u>"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y de las Modificaciones Calificadas de la AFI, la ADCC, CFP, y FDTPR**

5.     El 3 de noviembre de 2021, la Junta de Supervisión radicó, en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "<u>AEP</u>"), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (en su versión enmendada y modificada posteriormente, denominado el "<u>Plan</u>") [ECF Número 19053].  El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

---

[3]     Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Número 17 BK 3283-LTS.

4

6.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado y Modificado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7.      El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado y Modificado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813].

8.      El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.      El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A)*

5

*emisión de orden por la que se confirma la versión modificada del Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF Número 20349].

10.    Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

11.    El 30 de diciembre de 2022, conforme al Titulo VI de PROMESA, el Tribunal aprobó la *Modificación Calificada de la Corporación Para el Financiamiento Público de Puerto Rico* (la "MC de la CFP") [Caso Número 21-01493, ECF Número 78]. La MC de la CFP advino efectiva el 12 de enero de 2023 [Caso Número 21-01493, ECF Número 80] y toda la deuda de la PRPFC fue descargada en su totalidad.

12.    El 18 de julio de 2023, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico comenzó un procedimiento para la aprobación de la *Modificación Calificada Conforme al Título VI de PROMESA del Fondo para el Desarrollo del Turismo de Puerto Rico* (la "MC de FDTPR") [Caso Número 23-01373, ECF Número 1]. La Junta de Control Fiscal es coproponente de la MC de FDTPR, la cual modifica cierta deuda emitida por el Fondo para el Desarrollo del Turismo de Puerto Rico. El Tribunal llevará a cabo una vista para considera la aprobación de la MC de FDTPR durante la vista del 30 de agosto de 2023.

## C.       Confirmación del Plan de Ajuste de la ACT elaborado conforme al Título III

13.       El 13 de agosto de 2022, la Junta de Supervisión radicó el *Quinto plan enmendado de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico elaborado conforme al Título III* [Caso Número 17-BK-3567, ECF Número 1377] (el "Quinto Plan Enmendado de la ACT"). El Tribunal tuvo en consideración la confirmación del Quinto Plan Enmendado de la ACT, así como las objeciones al mismo, en una vista celebrada el 17 de agosto de 2022, tras lo cual la orden propuesta para confirmar el Quinto Plan Enmendado de la ACT quedó pendiente de resolución.

14.       El 6 de septiembre de 2022, en respuesta a la orden anterior del Tribunal en la que se solicitaban determinadas revisiones del *Quinto Plan Enmendado de la ACT, la Junta de Supervisión radicó el Quinto plan enmendado de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico modificado elaborado conforme al Título III* [Caso Número 17-BK-3567, ECF Número 1404] (el "Plan de la ACT").

15.       El 12 de octubre de 2022, el Tribunal confirmó el Plan de la ACT. [Caso Número 17-BK-3567, ECF Número 1415].

16.       El Plan de la ACT entró en vigor el 6 de diciembre de 2022. [Caso Número 17-BK-3567, ECF Número 1450]. El 12 de julio de 2023, el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito rechazó el único recurso de apelación a la confirmación del Plan de la ACT. *Véase Vázquez-Velázquez c. la Junta de Supervisión y Administración Financiera para Puerto Rico (In re: Junta de Supervisión y Administración Financiera para Puerto Rico)*, Número 22-1829 (1st Cir. 12 de julio de 2023).

## D.       *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. c. Estado Libre Asociado de Puerto Rico, et al.*, Proc. Adv. Número 18-00028

17.       El 22 de marzo de 2018, varias Cooperativas radicaron una demanda adversaria

contra el ELA, la Junta de Supervisión y sus miembros, y otras instrumentalidades del ELA (incluidas COFINA, la ACT, el SRE, la AEE y el BGF), en la que solicitaban que se dictara una sentencia declaratoria de que sus títulos de la deuda de Puerto Rico no son descargables, y solicitaban indemnización monetaria por daños y perjuicios por supuesto fraude en relación con la compra por parte de las cooperativas de crédito de los instrumentos de deuda la de Puerto Rico. [Proc. Adv. Número 18-00028, ECF Número 1] (el "Procedimiento Adversativo"). Cada una de las Cooperativas también radicó evidencias de reclamaciones alegando 1) responsabilidades vinculadas con los instrumentos de bonos, adeudadas a las Cooperativas, y 2) responsabilidades que surgen del Procedimiento Adversario.

18.     El 6 de agosto de 2018, los demandados, incluida la Junta de Supervisión, tanto en su nombre como en representación de los Deudores, solicitó que la demanda fuera rechazada [Proc. Adv. Número 18-00028, ECF Número 29].

19.     Más tarde, el 16 de abril de 2019, las Cooperativas radicaron una demanda enmendada, en la que desaparecieron reclamaciones basadas en la legislación de títulos valores y se añadieron reclamaciones por fraude, negligencia, falsedad, incumplimiento de la legislación de Puerto Rico en materia de lucha contra el crimen organizado e incumplimiento de la Cláusulas sobre Contratos y Expropiación de la Constitución de los Estados Unidos [Proc. Adv. Número 18-00028, ECF Número 79].

20.     El 22 de julio de 2019, los demandados radicaron mociones para que se rechazara la demanda enmendada [Proc. Adv. Número 18-00028, ECF Números 88, 91, 94 y 97].

21.     Más tarde, el 6 de diciembre de 2019, las Cooperativas radicaron una moción de autorización para radicar una segunda demanda [Proc. Adv. Número 18-00028, ECF Número 116], que fue concedida por el Tribunal [Proc. Adv. Número 18-00028, ECF Número 125].

22.     El 16 de abril de 2020, las Cooperativas radicaron su segunda demanda enmendada [Proc. Adv. Número 18-00028, ECF Número 126].  La segunda demanda enmendada alegaba siete causas de acción. Las alegaciones I y II solicitaban declaraciones de que las reclamaciones de las Cooperativas no sean susceptibles de afección ni descargo en ninguno de los planes de ajuste de Título III por el motivo de que las reclamaciones surgieron de una conducta fraudulenta. La alegación III versaba sobre un incumplimiento de la Ley RICO de Puerto Rico, basado en una supuesta trama fraudulenta. Las alegaciones IV y V aludían al fraude y a la instigación fraudulenta que constituían un incumplimiento de varias leyes puertorriqueñas en materia de fraude y negligencia. La alegación VI mencionaba las compras de bonos de las Cooperativas que eran constitutivas de una expropiación sin la justa compensación. Y la alegación VII versaba sobre enriquecimiento injusto.

23.     El 20 de abril de 2020, siguiendo el itinerario para alegatos del Tribunal, la Junta de Supervisión [Proc. Adv. Número 18-00028, ECF Número 128], BGF [Proc. Adv. Número 18-00028, ECF Número 129] y las Partes DRA [Proc. Adv. Número 18-00028, ECF Número 130] volvió a radicar sus mociones para rechazar la primera demanda enmendada como mociones para que rechazar la segunda demanda enmendada. Y el 21 de mayo de 2020, la Junta de Supervisión [Proc. Adv. Número 18-00028; ECF Número 143], BGF [Proc. Adv. Número 18-00028; ECF Número 145] y BGF DRA [Proc. Adv. Número 18-00028; ECF Número 146] radicó alegatos complementarios en apoyo de sus mociones para rechazar, abordando nuevas alegaciones contenidas en la segunda demanda enmendada de las Cooperativas.

24.     Luego de atender todos los alegatos, el 27 de diciembre de 2021 el Tribunal de Título III rechazó en su totalidad la segunda demanda enmendada conforme a las reglas 12(b)(1) y (b)(6) de la Ley Federal de Enjuiciamiento Civil [Proc. Adv. Número 18-00028; ECF Número

9

192 (la "Decisión")]. En la Decisión, el Tribunal analizó cada una de las reclamaciones alegadas contra cada demandado y concluyó que o bien el Tribunal carecía de jurisdicción sobre la reclamación o bien que la segunda demanda enmendada no contenía una petición viable de remedio.

25.    Más tarde, el 12 de enero de 2022, las Cooperativas radicaron un recurso de apelación contra la Decisión ante el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito [Proc. Adv. Número 18-00028; ECF Número 194].

26.    El 23 de noviembre de 2022, el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito confirmó la Decisión. *Cooperativa de Ahorro y Crédito Abraham Rosa c. la Junta de Supervisión y Administración Financiera para Puerto Rico (In re: Junta de Supervisión y Administración Financiera para Puerto Rico)*, 54 F.4th 42 (1st Cir. 2022).

**E.    Procedimientos conforme al Título VI del BGF y modificación calificada**

27.    El BGF es una corporación pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

28.    El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación

10

<u>Calificada</u>"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

29.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF Número 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad de Recuperación de Deuda del BGF (GDB Debt Recovery Authority) a cambio de la cancelación (entre otras cosas) de determinados bonos participantes y reclamaciones de bonos garantizados (conjuntamente, "<u>Bonos del BGF</u>"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF Número 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 10 de ago. de 2018).

30.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**F.     Deuda de los bonos emitidos por la Corporación para el Financiamiento Público de Puerto Rico**

31.     La CFPPR es una corporación subsidiaria del BGF creada conforme a la Resolución Número 5044 de la Junta Directiva del BGF, en su versión enmendada (la "<u>Resolución Número</u>

11

5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley Número 17 de la

Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión

enmendada. La CFPPR proporciona a las agencias públicas, instrumentalidades, municipios y a

otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades

de financiamiento. La CFPPR tiene la facultad de tomar en préstamo fondos y emitir deuda a través

de bonos y otras obligaciones.

32.     La CFPPR no es un deudor de Título III; se trata de una entidad aparte y

jurídicamente independiente de los Deudores, por lo que sus responsabilidades no están

garantizadas por los Deudores ni por ninguno de los demás Deudores de Título III. *Véase, por*

*ejemplo,* 3 L.P.R.A. § 9081(c) (que se refiere a la CFPPR como una "entidad jurídica

independiente", separada del ELA).

33.     U.S. Bank National Association ("U.S. Bank") y U.S. Bank Trust National

Association ("U.S. Bank Trust") actúan como fiduciarios en relación con determinados Bonos de

Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR (los

"Bonos de la CFPPR"). En nombre de los Bonos de Asignación del ELA, Serie 2011A, Serie

2011B y Serie 2012A, emitidos por la CFPPR, U.S. Bank y U.S. Bank Trust radicaron una

evidencia de reclamación contra el ELA (la "Reclamación Principal de la CFPPR"), que fue

registrada por Kroll como Evidencia de reclamación Número 13374.

34.     U.S. Bank y U.S. Bank Trust radicaron una objeción a la confirmación del Plan

[Caso Número 17-3283, ECF Número 18631] en relación con los Bonos de Asignación del ELA,

Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR (la "Objeción del Fiduciario de

los Bonos de la CFPPR"). En la vista para estudiar la confirmación del Plan, la Junta de

Supervisión anunció que, con sujeción a determinadas aprobaciones y documentación definitiva,

se había alcanzado un acuerdo *i*) para resolver la objeción del Fiduciario de los Bonos de la CFPPR y *ii*) en cuanto a las condiciones de la reestructuración de los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR, conforme al Título VI de PROMESA. Conforme a dicho acuerdo, y en virtud de los compromisos y conciliaciones en él contenidos, la Objeción del Fiduciario de los Bonos de la CFPPR fue resuelta. El 25 de octubre de 2022, de conformidad con el acuerdo y documentación definitiva, se inició una solicitación que buscaba la aceptación de la *Modificación Cualificada conforme al Título VI de PROMESA en relación con la Corporación para el Financiamiento Público de Puerto Rico* (la "MC de la CFPPR"). La MC de la CFPPR propone liberar los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR, así como las reclamaciones relacionadas.

35.     El 28 de octubre de 2022, la Junta de Supervisión inició un procedimiento de Título VI sobre la MC de la CFPPR [Caso Número 22-01517, ECF Número 1].  El 30 de diciembre de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó la MC de la CFPPR [Caso Número 21-01493, ECF Número 78].  La MC de la CFPPR entró en vigor el 12 de enero de 2023 [Caso Número 21-01493, ECF Número 80] y todo el endeudamiento de la CFPPR se descargó en su totalidad.

## G.     Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones

36.     Hasta la fecha, se han radicado aproximadamente 182,599 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.75 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

37.     De las evidencias de reclamaciones radicadas, aproximadamente 118,837 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 2,305 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

38.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF Número 4230]; *Procedimientos relativos a Objeciones Globales* [ECF Número 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones*

14

*globales* [ECF Número 4381] (la "<u>Orden de Notificación</u>").

39.     En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF Número 7091].  El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF Número 7440] (los "<u>Procedimientos Enmendados relativos a Objeciones Globales</u>").

40.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 28 vistas vinculadas con más de 500 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("<u>COFINA</u>"), la ACT, la AEE, la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, y de la retirada de determinadas reclamaciones conforme al Plan, aproximadamente 124,966 reclamaciones que reivindicaban $43.6 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, el SRE y la AEP fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III. Además, aproximadamente 46,230

reclamaciones han sido transferidas al proceso de Reconciliación de Reclamaciones Administrativas para su resolución utilizando procesos administrativos habituales de los Deudores.

41.     Esta Sexcentésima cuarta objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

42.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso prima facie del reclamante". (se omite cita)).

43.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

44.     Esta Sexcentésima cuarta objeción global busca que se rechacen en su totalidad las evidencias de reclamaciones que aparecen en el **Anexo A** de este documento, cada una de las cuales se basa en *a*) las responsabilidades alegadas en el Procedimiento Adversario de

16

Cooperativas, que fue desestimado en su totalidad por el Tribunal de Título III, desestimación que fue confirmada en apelación; *b*) una participación patrimonial en bonos emitidos por la CFPPR por unos montos por los que los Deudores no son responsables porque las entidades emisoras no son Deudores de Título III y no han garantizado el reembolso de los bonos; o *c*) una participación patrimonial en bonos emitidos por el BGF. Además, algunas de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento son deficientes porque *i*) no proporcionan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones y *ii*) alegan responsabilidades por supuestas pérdidas por inversiones, pero no explican por qué los Deudores podrían ser responsables por sus supuestas pérdidas por inversiones. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

### A. Ausencia de responsabilidad para reclamaciones que alegan responsabilidades que surgen del Procedimiento Adversario de Cooperativas

45.     Conforme a lo expuesto en el Anexo A del presente documento, cada una de las Reclamaciones que han de ser rechazadas pretende alegar responsabilidad basada en parte en las mismas responsabilidades alegadas en el Procedimiento Adversario de Cooperativas que este Tribunal rechazó en su totalidad conforme a las reglas de la Ley Fed. de Enj. Civ. 12(b)(1) y 12(b)(6) (conjuntamente, las "Reclamaciones Parciales relativas al Procedimiento Adversario de Cooperativas"). *Véanse, por ejemplo*, Reclamaciones Números 169491, 169494 y 169512.

46.     Cada una de las Reclamaciones Parciales relativas al Procedimiento Adversario de Cooperativas fue 1) radicada por una Cooperativa que era un demandante designado en el Procedimiento Adversario de Cooperativas, y 2) pretende alegar responsabilidades vinculadas con el Procedimiento Adversario de Cooperativas. *Véase, por ejemplo*, Reclamación Número 169512, Ex. B (que alega que "[l]as pérdidas, los montos y la indemnización por daños y perjuicios por el

17

monto de $31,856,539 conforme a la Demanda Adversaria, Caso Número 18-00028, que sigue siendo un caso activo pendiente de resolución").

47.       Sin embargo, ni los Deudores ni ninguno de los demás Deudores de Título III son responsables por las reclamaciones alegadas en el Procedimiento Adversario de Cooperativas porque la Decisión de este Tribunal, de fecha 27 de diciembre de 2021, rechazó en su totalidad el Procedimiento Adversario de Cooperativas; además, dicha Decisión fue confirmada por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito el 23 de noviembre de 2022.

48.       Determinadas Reclamaciones Parciales relativas al Procedimiento Adversario de Cooperativas también reclaman el principal y los intereses no pagados relativos a sus supuestos "[i]nstrumentos de la deuda emitida por el Estado Libre Asociado de Puerto Rico", pero no han identificado (por su número CUSIP, emisor, serie u otra información identificativa) los bonos concretos que alegan. En consecuencia, dichos reclamantes no han proporcionado ningún fundamento ni documentación justificativa para alegar una reclamación contra los Deudores, o contra cualquiera de los demás Deudores de Título III, por lo que los Deudores no pueden determinar la validez de sus reclamaciones.

49.       Si las Reclamaciones Parciales relativas al Procedimiento Adversario de Cooperativas no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran una recuperación no justificada en detrimento de otras partes interesadas en dichos Casos de Título III. Por lo tanto, las Reclamaciones Parciales relativas al Procedimiento Adversario de Cooperativas deben rechazarse.

**B.  Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos de la CFPPR**

50.       Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas

18

partes de las Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas en una supuesta participación patrimonial en Bonos de la CFPPR emitidos por la CFPPR (conjuntamente, las "Reclamaciones Parciales de los Bonistas de la CFPPR"). *Véanse, por ejemplo*, Reclamaciones Números 169491 y 169507. Sin embargo, la CFPPR no es Deudor de Título III, por lo que sus responsabilidades no están garantizadas por el ELA, por la ACT ni por ninguno de los demás Deudores de Título III.

51.     Cada una de las Reclamaciones Parciales de los Bonistas de la CFPPR pretende alegar, en parte, responsabilidades contra los Deudores vinculadas con los Bonos de la CFPPR que no están garantizados por el ELA, por la ACT ni por ninguno de los demás Deudores. La CFPPR no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores. *Véase*, por ejemplo, 3 L.P.R.A. § 9081(c) (que se refiere a la CFPPR como una "entidad jurídica independiente", separada del ELA).

52.     En cuanto a los bonos de la CFPPR, serie 2012A, alegados en cada una de las Reclamaciones Parciales de los Bonistas de la CFPPR, la declaración de oferta emitida en relación con dichos bonos señala expresamente que "[l]os Bonos de 2012, Serie A, no constituirán una obligación del ELA ni de ninguna de sus subdivisiones políticas o instrumentalidades públicas (salvo la Corporación), y ni el ELA ni ninguna de sus subdivisiones políticas o instrumentalidades públicas (salvo la Corporación) será responsable de su pago. La Corporación no tiene poder impositivo". *Véase* la Declaración de Oferta relativa a los Bonos de la CFPPR de 2012, Serie A, en 1.[4]

53.     Además, el 12 de enero de 2023, la MC de la CFPPR entró en vigor y descargó los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR,

---

[4]      https://emma.msrb.org/ER602315-EA371499-EA768292.pdf

así como las reclamaciones relacionadas. [Caso Número 21-01493, ECF Número 80].

54.    Puesto que a los Deudores no se les puede atribuir la responsabilidad por las Reclamaciones Parciales de los Bonistas de la CFPPR, dichas reclamaciones deben rechazarse en su totalidad.

### C.  Ausencia de responsabilidad por las Reclamaciones de los Bonistas del BGF

55.    Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas del BGF</u>"). *Véase,* por ejemplo, Reclamación Número 169491.

56.    La totalidad de las Reclamaciones Parciales de los Bonistas del BGF pretenden basarse, en parte, en la participación patrimonial en los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos de valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no es responsable por dichas reclamaciones. En consecuencia, cada una de las Reclamaciones Parciales de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una corporación e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del ámbito de la liberación conforme a la Modificación Calificada. Por tanto, las Reclamaciones Parciales de los Bonistas del BGF fueron liberadas tras la consumación

de la Modificación Calificada el 29 de noviembre de 2018.

57.     Puesto que las Reclamaciones Parciales de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

### D.  Reclamaciones que alegan pérdidas por inversiones

58.     Conforme a lo expuesto en el Anexo A del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidades que surgen de supuestas pérdidas por inversiones (conjuntamente, las "Reclamaciones parcialmente deficientes que alegan pérdidas por inversiones"). *Véase,* por ejemplo, Reclamación Número 29506.

59.     En la medida en que dichas reclamaciones aleguen pérdidas por inversiones que sean independientes de las pérdidas por inversiones alegadas en el Procedimiento Adversario de Cooperativas, ninguna de las Reclamaciones parcialmente deficientes que alegan pérdidas por inversiones alega posible causa de acción alguna contra los Deudores que pueda generar responsabilidad de los Deudores por los supuestos daños y perjuicios sufridos como consecuencia de la decisión de los reclamantes de vender sus bonos con pérdidas. En consecuencia, los Deudores no son responsables por las pérdidas alegadas en las Reclamaciones parcialmente deficientes que alegan pérdidas por inversiones. *Véase English c. Energy Future Holdings (In re Energy Future Holdings)*, 2018 U.S. Dist. LEXIS 49952, en *7 (D. Del., 27 de marzo de 2018) (que dispone que la orden del tribunal de quiebras por la que se rechaza la evidencia de reclamación era la adecuada, cuando el reclamante había vendido los bonos emitidos por el deudor y, por lo tanto, no tenía ningún derecho a un pago en relación con los bonos ni ha demostrado el reclamante que tuviera

posible causa de acción contra el deudor por los supuestos daños y perjuicios sufridos por el reclamante al vender con pérdidas los bonos del deudor); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (que cita *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (que cita 3 L. King, *Collier* on Bankruptcy § 502.02, en 502-22 (15th ed. 1991)) ("Al principio, el reclamante debe alegar hechos que sean suficientes para sostener la reclamación").

60.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Sexcentésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Evidencias de Reclamaciones radicadas por varias Cooperativas*, de fecha 18 de agosto de 2023, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

61.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Sexcentésima cuarta objeción global a) a los acreedores individuales objeto de esta Sexcentésima cuarta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados Número 17* [ECF Número 24726-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.ra.kroll.com/puertorico. La notificación de esta Sexcentésima cuarta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Sexcentésima cuarta objeción global y de la totalidad de los Anexos que se adjuntan al presente se radican y envían con la presente objeción. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden,

esencialmente en la forma de la orden propuesta que se adjunta al presente como **<u>Anexo D</u>**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

[*El resto de la página se deja en blanco intencionadamente*]

Fecha:  18 de agosto de 2023
San Juan (Puerto Rico)

Respetuosamente sometida,


*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC Número 215205
Carla García-Benítez
USDC Número 203708
Gabriel A. Miranda
USDC Número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera., local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944


*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900


*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*

24