**Hearing Date: October 4, 2023 at 9:30AM (Atlantic Standard Time)**
**Response Deadline: September 18, 2023 at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

### SIX HUNDRED FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO PARTIAL DUPLICATE, NO LIABILITY, AND INCORRECT DEBTOR BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

      The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways

and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by

---

[1]      The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight
Board"), as sole Title III representative of the Debtors pursuant to Section 315(b) of the *Puerto
Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this six hundred
fifth omnibus objection (the "Six Hundred Fifth Omnibus Objection") to partially disallow the
proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bond
claims that are duplicative of one or more master proofs of claim filed against the Debtors on
behalf of the holders of certain bonds; (*b*) an ownership interest in bonds issued by the Puerto Rico
Public Finance Corporation ("PRPFC") or the Puerto Rico Industrial, Tourist, Educational,
Medical and Environmental Control Facilities Financing Authority ("AFICA"), which are not Title
III Debtors, for amounts for which the Debtors have not guaranteed repayment; (*c*) investments in
mutual funds, which in turn may have invested in bonds issued by the Debtors; and/or (*d*) bond
claims based on bonds issued by the Puerto Rico Infrastructure Financing Corporation ("PRIFA"),
which claims have been discharged pursuant to the Commonwealth Confirmation Order and the
PRIFA QM (as defined below).  Further, another portion of the liabilities asserted by certain proofs
of claim listed on **Exhibit A** is associated with general obligation bonds issued by the
Commonwealth, which bonds were treated by the Plan and paid pursuant to its terms, and may be
expunged pursuant to the terms of the Commonwealth Confirmation Order.  Certain proofs of
claim listed on **Exhibit A** also assert claims based on bonds issued by the Puerto Rico Electric
Power Authority ("PREPA"); such claims should be reclassified because they are properly
asserted, if at all, against PREPA.  In support of the Six Hundred Fifth Omnibus Objection, the
Debtors respectfully represent as follows:

---

[2]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section 306(a).

2.      Venue is proper in this district pursuant to PROMESA Section 307(a).

## BACKGROUND

### A.      The Bar Date Orders

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for HTA, pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "HTA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of*

---

[3]      Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

*Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.    Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA, CCDA, PRPFC, and PRTDF Qualifying Modifications**

5.    On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended and modified, the "Plan") [ECF No. 19053].  The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.    Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19784].

7.     On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Commonwealth Confirmation Order").  Among other things, the confirmed Plan provides that "any Bond Claim filed by any Entity, for amounts due under existing securities, shall be deemed satisfied and expunged and the Oversight Board shall instruct [Kroll], its court-appointed representative, to remove such Bond Claims from the registry maintained for the benefit of the Title III Court . . . ."  Plan § 82.1(a).  "Bond Claim" is defined to include any "Claim on account of a GO Bond, a PBA Bond, a CW Guarantee Bond, or an ERS Bond . . . ."  Plan § 1.120.

8.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.    The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

11.     On December 30, 2022, pursuant to Title VI of PROMESA, the Court approved the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the "PRPFC QM") [Case No. 21-01493, ECF No. 78].  The PRPFC QM became effective on January 12, 2023 [Case No. 21-01493, ECF No. 80] and all PRPFC indebtedness was discharged in full.

12.     On July 18, 2023, the Puerto Rico Fiscal Agency and Financial Advisory Authority commenced a Title VI proceeding for approval of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Tourism Development Fund* (the "PRTDF QM") [Case No. 23-01373, ECF No. 1].  The Oversight Board is a co-proponent of the PRTDF QM, which modifies certain debt issued by the Puerto Rico Tourism Development Fund.  The Court will hold a hearing to consider approval of the PRTDF QM during the August 30, 2023 hearing.

**C.      Confirmation of the HTA Title III Plan of Adjustment**

13.     On August 13, 2022, the Oversight Board filed the *Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1377] (the "Fifth Amended HTA Plan").  The Court considered confirmation of the Fifth Amended HTA Plan, and objections thereto, at a hearing on August 17, 2022, after which it took the proposed order to confirm the Fifth Amended HTA Plan under submission.

14.     On September 6, 2022, in response to the Court's prior order requesting certain revisions to the Fifth Amended HTA Plan, the Oversight Board filed the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1404] (the "HTA Plan").

15.     On October 12, 2022, the Court confirmed the HTA Plan.  [Case No. 17-bk-3567, ECF No. 1415].

16.     The HTA Plan became effective on December 6, 2022.  [Case No. 17-bk-3567, ECF No. 1450].  On July 12, 2023, the United States Court of Appeals for the First Circuit denied the sole appeal taken from confirmation of the HTA Plan.  *See Vazquez-Velazquez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R)*, No. 22-1829 (1st Cir. July 12, 2023).

**D.     Bond Debt Master Proofs of Claim Filed in the Commonwealth Title III Cases**

17.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by PRIFA and PRASA (collectively, the "Master Claims").

18.     ***PRIFA***—PRIFA is an affiliate of GDB and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting

"claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.  As noted above, the PRIFA QM was approved by the Court and has been consummated, with all PRIFA Bonds and related claims having been discharged.

19.     ***PRASA***— PRASA was established pursuant to Act Number 40 of May 1, 1945. PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.  PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Kroll as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

E.      **Bond Debt Issued by the Puerto Rico Public Finance Corporation**

20.      PRPFC is a subsidiary corporation of the GDB created pursuant to Resolution No.

5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant

to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September

23, 1948, as amended.  PRPFC provides government agencies, instrumentalities, municipalities,

and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing

needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds

and other obligations.

21.      PRPFC is not a Title III debtor, and is a separate, legally distinct entity from the

Debtors, and its liabilities are not guaranteed by the Debtors or any other of the Debtors.  *See, e.g.*,

3 L.P.R.A. § 9081(c) (referring to PRPFC as an "independent juridical entity" separate from the

Commonwealth).

22.       U.S. Bank National Association ("U.S. Bank") and U.S. Bank Trust National

Association ("U.S. Bank Trust") serve as trustee for certain Series 2011A, Series 2011B, and

Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC (the "PRPFC Bonds").

On behalf of the holders of the Series 2011A, Series 2011B, and Series 2012A Commonwealth

Appropriation Bonds issued by the PRPFC , U.S. Bank and U.S. Bank Trust filed a proof of claim

against the Commonwealth (the "PRPFC Master Claim"), which was logged by Kroll as Proof of

Claim No. 13374.

23.      U.S. Bank and U.S. Bank Trust filed an objection to confirmation of the Plan [Case

No. 17-3283, ECF No. 18631] relating to the 2011A, Series 2011B, and Series 2012A

Commonwealth Appropriation Bonds issued by the PRPFC (the "PFC Bond Trustee Objection").

At the hearing to consider confirmation of the Plan, the Oversight Board announced that an

agreement, subject to certain approvals and definitive documentation, had been reached (*i*) to resolve the PFC Bond Trustee Objection and (*ii*) for the terms for the restructuring of the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC pursuant to Title VI of PROMESA.  Pursuant to such agreement, and in exchange for the compromises and settlements provided therein, the PFC Bond Trustee Objection was resolved.  On October 25, 2022, in accordance with the agreement and definitive documentation, solicitation was commenced seeking acceptance of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the "PRPFC QM").  The PRPFC QM proposed to discharge the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims.

24.     On October 28, 2022, the Oversight Board commenced a Title VI proceeding regarding the PRPFC QM [Case No. 22-01517, ECF No. 1].  On December 30, 2022, pursuant to Title VI of PROMESA, the Court approved the PRPFC QM [Case No. 21-01493, ECF No. 78]. The PRPFC QM became effective on January 12, 2023 [Case No. 21-01493, ECF No. 80] and all PRPFC indebtedness was discharged in full.

**F.     Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority**

25.     AFICA is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et seq.*). P.R. Laws Ann. tit. 12, § 1254.  AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and

construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.

26.     In 2011, AFICA issued Educational Facilities Revenue Bonds, 2000 Series A  (the "2000 Series A University Plaza Project Bonds," or the "AFICA Bonds"), in the aggregate amount of $86,735,000, in order to, among other things, "finance the development, construction and equipping of certain educational and related facilities" to be leased by the University of Puerto Rico.  *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Tourism Revenue Refunding Bonds, 2000 Series A (University Plaza Project), *available at*  https://emma.msrb.org/MS174328-MS149636-MD288819.pdf.  The 2000 Series A University Plaza Project Bonds are payable solely from rent payments made by the University of Puerto Rico pursuant to a lease agreement.  The offering statement issued in connection with the 2000 Series A University Plaza Project Bonds states that the bonds "shall not constitute an indebtedness of the Commonwealth or of any of its political subdivisions or instrumentalities, other than AFICA, and neither the Commonwealth nor any of its political subdivisions or instrumentalities, other than AFICA, shall be liable thereon."  *Id.*

## G.     Proofs of Claim, Omnibus Objection Procedures, and Claim Objections

27.     To date, approximately 182,599 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.75 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

28.     Of the proofs of claim filed, approximately 118,837 have been filed in relation to, or reclassified to be asserted against, Commonwealth.  Approximately 2,305 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms

of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

29.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

30.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019,

the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

31.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 28 hearings related to over 500 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, PREPA, PBA, and/or ERS. Based upon rulings and orders of the Court to date, as well as the expungement of certain claims pursuant to the Plan, approximately 124,966 claims asserting $43.6 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and expunged from the claims registry in the Title III proceedings.    In addition, approximately 46,230 claims have been transferred into the Administrative Claims Reconciliation process for resolution using the Debtors' ordinary-course administrative processes.

32.     This Six Hundred Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

33.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA Section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370,

372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

34.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

35.     This Six Hundred Fifth Omnibus Objection seeks to partially expunge the proofs of claim listed on **Exhibit A** hereto (the "Claims to Be Partially Disallowed"), each of which is purportedly based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds; (*b*) an ownership interest in bonds issued PRPFC or AFICA, which are not Title III Debtors, for amounts for which the Debtors have not guaranteed repayment; (*c*) investments in mutual funds, which in turn may have invested in bonds issued by the Debtors; and/or (*d*) bond claims based on bonds issued by PRIFA, which claims have been discharged pursuant to the Commonwealth Confirmation Order and the PRIFA QM.  Further, another portion of the liabilities asserted by each proof of claim listed on **Exhibit A** is associated with general obligation bonds issued by the Commonwealth, which bonds were treated by the Plan and paid pursuant to its terms, and may be expunged pursuant to the terms of the Commonwealth Confirmation Order.  The remaining liabilities asserted by each proof of claim listed on **Exhibit A** assert claims based on bonds issued by the Puerto Rico Electric Power Authority ("PREPA"); such claims should be reclassified because they are properly asserted, if at all, against PREPA.  **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

14

### A.  No Liability for Duplicate Bond Claims

36.    As set forth in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport to assert liability, in part, on the basis of bonds issued by PRASA (collectively, the "Partial Duplicate Bond Claims").  *See, e.g.*, Claim Nos. 66420 and 66382.

37.    Each of the Partial Duplicate Bond Claims purports to assert, in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by, among others, PRASA.  To the extent the Partial Duplicate Bond Claims purport to assert any liability against HTA in connection with bonds issued by PRASA, claimants fail to proffer any valid basis for asserting such a claim against HTA.  Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Title III Cases.

38.    The holders of the Partial Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

### B.  No Liability for Claims Based on PRPFC Bonds or AFICA Bonds

39.    As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially Disallowed purport to assert liabilities based on an alleged ownership interest in PRPFC Bonds issued by PRPFC (collectively the "Partial PRPFC Bondholder Claims") or AFICA Bonds issued by AFICA (collectively the "Partial AFICA Bondholder Claims").  *See, e.g.*, Claim Nos. 4015 and 22175.  However, neither PRPFC nor AFICA is a Title III Debtor and their liabilities are not guaranteed by the Commonwealth, HTA, or any other of the Debtors.

40.     Each of the Partial PRPFC Bondholder Claims purports to assert, in part, liabilities against the Debtors associated with PRPFC Bonds not guaranteed by the Commonwealth, HTA, or any of the other Debtors.  PRPFC is not a Title III debtor, and is a separate, legally distinct entity from the Debtors.  *See, e.g.*, 3 L.P.R.A. § 9081(c) (referring to PRPFC as an "independent juridical entity" separate from the Commonwealth.

41.     With respect to PRPFC Series 2012A bonds asserted in each of the Partial PRPFC Bondholder Claims, the offering statement issued in connection with those bonds explicitly states that "[t]he 2012 Series A Bonds will not constitute an obligation of the Commonwealth or any of its political subdivisions or public instrumentalities (other than the Corporation), and neither the Commonwealth nor any of its political subdivisions or public instrumentalities (other than the Corporation) will be liable thereon.  The corporation has no taxing power."  *See* Offering Statement for PRPFC 2012 Series A Bonds at 1.[4]

42.     On January 12, 2023, the PRPFC QM became effective, which discharged the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims. [Case No. 21-01493, ECF No. 80].

43.     Because the Debtors cannot be held liable for the Partial PRPFC Bondholder Claims, these claims should be disallowed in their entirety.

44.     As to the Partial AFICA Bondholder Claims, AFICA is also not a Title III debtor, and is also a separate, legally distinct entity from the Debtors.  With respect to the 2000 Series A University Plaza Project Bonds, the offering statement issued in connection therewith states that the bonds "shall not constitute an indebtedness of the Commonwealth or of any of its political subdivisions or instrumentalities, other than AFICA, and neither the Commonwealth nor any of its

---

[4]        https://emma.msrb.org/ER602315-EA371499-EA768292.pdf

political subdivisions or instrumentalities, other than AFICA, shall be liable thereon." *See, e.g.*,
Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities
Financing Authority, Offering Statement, Tourism Revenue Refunding Bonds, 2000 Series A
(University Plaza Project), *available at* https://emma.msrb.org/MS174328-MS149636-MD288819.pdf.

45.     Because the Debtors cannot be held liable for the Partial AFICA Bondholder
Claims, these claims should be disallowed in their entirety.

### C.  No Liability for Claims Based on Investments in Mutual Funds

46.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert
liability based in part on investment(s) in one or more mutual funds that, in turn, may have invested
in bonds issued by the Debtors (collectively, the "Partial Mutual Funds Claims").  *See, e.g.*, Claim
No. 22175.

47.     A claimant bears the burden of establishing standing to file a proof of claim.  *In re
Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor
or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11
U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,
392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of
claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's
estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with
"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's
bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no
standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803
F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re
Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest

17

are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

48.    "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Because, at most, the Partial Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Partial Mutual Funds Claims were not filed by an actual creditor of the Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor). Instead, the Partial Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court. *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings"). Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

49.    Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just

so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any

of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate

claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS.

STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the

claim is disallowed for lack of an individual interest in COFINA securities.”); *see also Order*

*Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to*

*Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying*

*Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No.*

*152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Debtors and lack

standing to assert derivative claims.  Because the Debtors cannot be held liable for the Partial

Mutual Funds Claims, these claims should be disallowed in their entirety.

### D.  No Liability for Bondholder Claims Discharged by the Confirmation Order

50.     As set forth in **Exhibit A** hereto, certain of the Claims to Be Partially Disallowed

purport to assert liability, in part, based on the alleged ownership of bonds issued by PRIFA (the

“Discharged Bondholder Claims”).  *See, e.g.*, Claim No. 6264.

51.     The Discharged Bondholder Claims assert liabilities against the Debtors associated

with various PRIFA Bonds issued by PRIFA.  Claims asserted against the Commonwealth based

on any bonds issued or guaranteed by or loans made to or guaranteed by HTA, CCDA, or PRIFA

have been fully discharged pursuant to the Plan and the Commonwealth has no further liability on

account of such Claims.  *See* Commonwealth Confirmation Order ¶ 72 (“The Claims asserted

against the Debtors or the Reorganized Debtors based on any bonds issued or guaranteed by or

loans made to or guaranteed by HTA, CCDA, PRIFA, or MBA shall, to the extent allowed, be

allowed as a Claim arising prior to the Petition Date and classified in Classes 59 through 62 (except

Allowed ERS Bond Claims to the extent secured) and are hereby discharged and the Debtors and the Reorganized Debtors have no further liability on account of such Claims.").

52.     In addition, on March 15, 2022, the PRIFA QM became effective, which discharged, among others, the Special Tax Revenue Bonds, Series 2006 issued by PRIFA. [Case No. 21-01492, ECF No. 84].  Because the Debtors cannot be held liable for the Discharged Bondholder Claims pursuant to the PRIFA QM, these claims should be disallowed in their entirety.

53.     To the extent the Discharged Bondholder Claims purport to assert any liability against HTA in connection with bonds issued by PRIFA, claimants fail to proffer any valid basis for asserting such a claim against PRIFA.

54.     Any failure to disallow the Discharged Bondholder Claims will result in the applicable claimants potentially receiving an unwarranted recovery against the Commonwealth, to the detriment of other stakeholders in the Debtors' Title III Cases.

### E.  Partially Reclassified Bond Claims

55.     Finally, a portion of certain of the Claims to Be Partially Disallowed identifies HTA as obligor, when such portion is properly asserted, if at all, against PREPA, and appears to assert liability, in part, on the basis of bonds issued by PREPA (collectively, the "Partially Reclassified Bond Claims").  *See, e.g.*, Claim No. 6264.

56.     In each of the Partially Reclassified Bond Claims, the claimant appears to purport to assert, in part, liabilities associated with municipal bond(s), but the proof of claim, supporting documentation provided by the claimant, and/or CUSIP information show that the portions of the liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted, if at all, against PREPA.  Accordingly, the Partially Reclassified Bond Claims should be reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column

20

titled "Corrected" in **Exhibit A** hereto. The Debtors reserve their right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.[5]

57.      In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Six Hundred Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to Partial Duplicate, No Liability, and Incorrect Debtor Bond Claims*, dated August 18, 2023, attached hereto as **Exhibit B**.

<u>**NOTICE**</u>

58.      In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Six Hundred Fifth Omnibus Objection to (a) the individual creditors subject to this Six Hundred Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Seventeenth Amended Case Management Procedures* [ECF No. 24726-1]), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico.  The notice for this Six Hundred Fifth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Six Hundred Fifth Omnibus Objection and all of the exhibits attached hereto are being filed and served with this objection.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

---

[5] Certain of the Claims to Be Partially Disallowed also assert Bond Claims (as defined by the Plan). Pursuant to section 82.1 of the Plan, such Bond Claims are deemed satisfied and expunged.  The Oversight Board will instruct Kroll to remove the remaining portions of the Claims to Be Partially Disallowed.

Dated: August 18, 2023
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico
and the Puerto Rico Highways and
Transportation Authority*

**Fecha de la vista: 4 de octubre de 2023, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 18 de septiembre de 2023 a las 4:00 p.m. (AST)**

---

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> Número: 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA y la ACT.** |

---

### SEXCENTÉSIMA QUINTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES POR BONOS PARCIALMENTE DUPLICADAS, EN LAS QUE NO EXISTE RESPONSABILIDAD Y RADICADAS CONTRA EL DEUDOR INCORRECTO

---

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1]     Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Número 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores, conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican la presente sexcentésima quinta objeción global (la "Sexcentésima quinta objeción global") en la que se solicita que se rechacen en parte las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa parcialmente *a*) en reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas; *b*) en una participación patrimonial en bonos emitidos por la Corporación para el Financiamiento Público de Puerto Rico (la "CFP") o la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental (la "AFICA"), que no son Deudores de Título III, por unos montos por los que los Deudores no han garantizado el reembolso; *c*) en inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores; y/o *d*) en reclamaciones por bonos basadas en unos bonos emitidos por la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), que han sido descargados conforme a la Orden de Confirmación del ELA y la MC de la AFI (según se define abajo). Además, otra parte de las responsabilidades alegadas en determinadas evidencias de reclamaciones que aparecen en el **Anexo A** está vinculada con bonos de obligación general emitidos por el ELA, bonos que han sido tratados por el Plan y pagados conforme a sus propios términos, por lo que podrán ser eliminadas conforme a los términos de la Orden de Confirmación del ELA.

---

[2]     PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

Determinadas evidencias de reclamaciones que aparecen en el **Anexo A** también alegan reclamaciones sobre la base de unos bonos emitidos por la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"); dichas reclamaciones deben reclasificarse porque lo correcto sería, si acaso, alegarlas contra la AEE. En apoyo de la Sexcentésima quinta objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

A.      **Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la ACT", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos

de Título III únicamente con fines procesales. ECF Número 537.[3]

4.    El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF Número 2255]  (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF Número 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF Número 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y de las Modificaciones Calificadas de la AFI, ADCC, CFP, y FDTPR**

5.    El 3 de noviembre de 2021, la Junta de Supervisión radicó, en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (en su versión enmendada y modificada posteriormente, denominado el "Plan") [ECF Número 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

---

[3]    Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Número 17 BK 3283-LTS.

6.        Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado y Modificado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7.        El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813] (la "Orden de Confirmación del ELA"). Entre otras cosas, el Plan confirmado dispone que "cualquier Reclamación por Bonos radicada por una Entidad por montos adeudados en virtud de los títulos valores existentes se considerará satisfecha y eliminada, por lo que la Junta de Supervisión dará instrucciones [a Kroll], su representante designado judicialmente, para que retire dichas Reclamaciones por Bonos del registro mantenido en beneficio del Tribunal de Título III . . . ."  Plan § 82.1(a). "Reclamación por Bonos" se define de manera que incluya cualquier "Reclamación por concepto de un Bono de Obligación General, un Bono de la AEP, un Bono de Garantía del ELA o un Bono del SRE . . ."  Plan § 1.120.

8.        El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto*

*Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.      El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma la versión modificada del Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF Número 20349].

10.     Tanto la MC de la ADCC como la MC de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

11.     El 30 de diciembre de 2022, conforme al Titulo VI de PROMESA, el Tribunal aprobó la *Modificación Calificada de la Corporación Para el Financiamiento Público de Puerto Rico* (la "MC de la CFP") [Caso Número 21-01493, ECF Número 78]. La MC de la CFP advino efectiva el 12 de enero de 2023 [Caso Número 21-01493, ECF Número 80] y toda la deuda de la PRPFC fue descargada en su totalidad.

12.     El 18 de julio de 2023, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico comenzó un procedimiento para la aprobación de la *Modificación Calificada Conforme al Título VI de PROMESA del Fondo para el Desarrollo del Turismo de Puerto Rico* (la "MC de FDTPR") [Caso Número 23-01373, ECF Número 1]. La Junta de Control Fiscal es co-proponente de la MC de FDTPR, la cual modifica cierta deuda emitida por el Fondo para el

Desarrollo del Turismo de Puerto Rico. El Tribunal llevará a cabo una vista para considera la aprobación de la MC de FDTPR durante la vista del 30 de agosto de 2023.

**C.     Confirmación del Plan de Ajuste de la ACT elaborado conforme al Título III**

13.     El 13 de agosto de 2022, la Junta de Supervisión radicó el *Quinto plan enmendado de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico elaborado conforme al Título III* [Caso Número 17-BK-3567, ECF Número 1377] (el "Quinto Plan Enmendado de la ACT"). El Tribunal tuvo en consideración la confirmación del Quinto Plan Enmendado de la ACT, así como las objeciones al mismo, en una vista celebrada el 17 de agosto de 2022, tras lo cual la orden propuesta para confirmar el Quinto Plan Enmendado de la ACT quedó pendiente de resolución.

14.     El 6 de septiembre de 2022, en respuesta a la orden anterior del Tribunal en la que se solicitaban determinadas revisiones del Quinto Plan Enmendado de la ACT, la Junta de Supervisión radicó el *Quinto plan enmendado de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico modificado elaborado conforme al Título III* [Caso Número 17-BK-3567, ECF Número 1404] (el "Plan de la ACT").

15.     El 12 de octubre de 2022, el Tribunal confirmó el Plan de la ACT. [Caso Número 17-BK-3567, ECF Número 1415].

16.     El Plan de la ACT entra en vigor el 6 de diciembre de 2022. [Caso Número 17-BK-3567, ECF Número 1450].  El 12 de julio de 2023, el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito rechazó el único recurso de apelación a la confirmación del Plan de la ACT. *Véase Vázquez-Velázquez c. la Junta de Supervisión y Administración Financiera para Puerto Rico (In re: Junta de Supervisión y Administración Financiera para Puerto Rico)*, Número 22-1829 (1st Cir. 12 de julio de 2023).

**D.    Evidencias de reclamaciones principales relativas a la deuda de los bonos, radicadas en el marco de los Casos de Título III del ELA**

17.    Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, las evidencias de reclamaciones principales han sido radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por la AFI y la AAA (conjuntamente, las "Reclamaciones Principales").

18.    ***AFI***: la AFI es una filial del BGF y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley Número 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, los "Bonos de la AFI"), se radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI") por parte de BNYM, US Bank y UMB Bank, N.A. US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamación Número 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando "reclamaciones por montos contingentes y

8

no liquidados en relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las Obligaciones de bonos pendientes, monto mínimo de $249,099,446.17. . . ."  Cláusula Adicional de la Evidencia de reclamación Número 13386, ¶ 26. Como se explicó anteriormente, el Tribunal aprobó la MC de la AFI que ha sido consumada, y la totalidad de los Bonos de la AFI, así como las reclamaciones relacionadas, han sido liberados.

19.  *AAA*: la AAA fue creada de conformidad con la Ley Número 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142 y 144. La AAA es propietaria y se encarga de los sistemas de suministro público de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico Número 1583, por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico (el "Banco Popular") actúa como fiduciario en relación con los Bonos de la AAA, y radicó una evidencia de reclamaciones principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Kroll como Evidencia de reclamaciones Número 22620 (la "Reclamación Principal de la AAA"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de petición, así como la totalidad de las tasas, costos

y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación de tales

Bonos". Adenda de la Evidencia de Reclamación Principal de la AAA, ¶ 9.

**E.    Deuda de los bonos emitidos por la Corporación para el Financiamiento Público de Puerto Rico**

20.    La CFPPR es una corporación subsidiaria del BGF creada conforme a la Resolución

Número 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución Número

5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley Número 17 de la

Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión

enmendada. La CFPPR proporciona a las agencias públicas, instrumentalidades, municipios y a

otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades

de financiamiento. La CFPPR tiene la facultad de tomar en préstamo fondos y emitir deuda a través

de bonos y otras obligaciones.

21.    La CFPPR no es deudor de Título III y es una entidad aparte y jurídicamente

independiente de los Deudores, por lo que sus responsabilidades no están garantizadas por los

Deudores ni por ninguno de los demás Deudores. *Véase, por ejemplo,* 3 L.P.R.A. § 9081(c) (que

se refiere a la CFPPR como una "entidad jurídica independiente", separada del ELA).

22.    U.S. Bank National Association ("U.S. Bank") y U.S. Bank Trust National

Association ("U.S. Bank Trust") actúan como fiduciarios en relación con determinados Bonos de

Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR (los

"Bonos de la CFPPR"). En nombre de los Bonos de Asignación del ELA, Serie 2011A, Serie

2011B y Serie 2012A, emitidos por la CFPPR, U.S. Bank y U.S. Bank Trust radicaron una

evidencia de reclamación contra el ELA (la "Reclamación Principal de la CFPPR"), que fue

registrada por Kroll como Evidencia de reclamación Número 13374.

23.     U.S. Bank y U.S. Bank Trust radicaron una objeción a la confirmación del Plan [Caso Número 17 [ECF Número 18631] en relación con los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR (la "Objeción del Fiduciario de los Bonos de la CFPPR"). En la vista para estudiar la confirmación del Plan, la Junta de Supervisión anunció que, con sujeción a determinadas aprobaciones y documentación definitiva, se había alcanzado un acuerdo *i*) para resolver la objeción del Fiduciario de los Bonos de la CFPPR y *ii*) en cuanto a las condiciones de la reestructuración de los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR, conforme al Título VI de PROMESA. Conforme a dicho acuerdo, y en virtud de los compromisos y conciliaciones en él contenidos, la Objeción del Fiduciario de los Bonos de la CFPPR fue resuelta. El 25 de octubre de 2022, de conformidad con el acuerdo y documentación definitiva, se inició una solicitación que buscaba la aceptación de la *Modificación Cualificada conforme al Título VI de PROMESA en relación con la Corporación para el Financiamiento Público de Puerto Rico* (la "MC de la CFPPR"). La MC de la CFPPR propone liberar los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR, así como las reclamaciones relacionadas.

24.     El 28 de octubre de 2022, la Junta de Supervisión inició un procedimiento de Título VI sobre la MC de la CFPPR [Caso Número 22 [ECF Número 1].  El 30 de diciembre de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó la MC de la CFPPR [Caso Número 21-01493, ECF Número 78].  La MC de la CFPPR entró en vigor el 12 de enero de 2023 [Caso Número 21-01493, ECF Número 80] y todo el endeudamiento de la CFPPR se descargó en su totalidad.

**F.    Deuda de los bonos emitidos por la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental**

25.    La AFICA es una corporación pública y organismo gubernamental del ELA creada por la Ley Número 121 de la Asamblea Legislativa de Puerto Rico, aprobada el 27 de junio de 1977 (en su versión enmendada, complementada y codificada en las Leyes de Puerto Rico, título 12, § 1251 *et seq*.). Leyes de Puerto Rico, título 12, § 1254. La AFICA facilita el financiamiento de los proyectos para fomentar el desarrollo económico del ELA, lo que incluye medidas para la promoción y construcción de nuevas infraestructuras industriales, comerciales, turísticas, agrícolas, educativas, médicas y de control medioambiental.

26.    En 2011, la AFICA emitió Bonos de Renta de Instalaciones Educativas, 2000 Serie A (los "Bonos 2000 Serie A del Proyecto Plaza de Universitaria" o los "Bonos de la AFICA"), por un monto total de $86,735,000, para (entre otras cosas) "financiar el desarrollo, la construcción y la equipación de determinadas instalaciones educativas y otras relacionadas" que alquilaría la Universidad de Puerto Rico. Véase, por ejemplo, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta de Refinanciamiento Turístico 2000 Serie A (Proyecto Plaza Universitaria), *disponible en* https://emma.msrb.org/MS174328-MS149636-MD288819.pdf. Los Bonos 2000 Serie A del Proyecto Plaza Universitaria son pagaderos únicamente de pagos de alquiler realizados por la Universidad de Puerto Rico conforme a un contrato de arrendamiento. La declaración de oferta emitida en relación con los Bonos 2000 Serie A del Proyecto Plaza Universitaria dispone que los bonos "no constituirán endeudamiento del ELA ni de ninguna de sus subdivisiones políticas o instrumentalidades, salvo la AFICA, por lo que ni el ELA ni ninguna de sus subdivisiones políticas o instrumentalidades, salvo la AFICA, será responsable de su pago". *Id.*

G.    **Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

27.    Hasta la fecha, se han radicado aproximadamente 182,599 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.75 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

28.    De las evidencias de reclamaciones radicadas, aproximadamente 118,837 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 2,305 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

29.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito*

contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado

[ECF Número 4230]; *Procedimientos relativos a Objeciones Globales* [ECF Número 4230-1]

(conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de

noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de

notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los

Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron*

*las versiones en inglés y en español de los formularios de notificación relativos a objeciones*

*globales* [ECF Número 4381] (la "Orden de Notificación").

30.    En aras del interés constante por resolver eficazmente cualquier evidencia de

reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a

procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar

objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que

pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*

*vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a*

*Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*

*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*

[ECF Número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio

de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)*

*exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*

*de notificación adicionales y D) concede el remedio relacionado* [ECF Número 7440] (los

"Procedimientos Enmendados relativos a Objeciones Globales").

31.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los

Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la

fecha 28 vistas vinculadas con más de 500 objeciones globales radicadas por el ELA, la

14

Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la AEE, la
AEP y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha,
y de la retirada de determinadas reclamaciones conforme al Plan, aproximadamente 124,966
reclamaciones que reivindicaban $43.6 billones en responsabilidad contra el ELA, COFINA, la
ACT, la AEE, el SRE y la AEP fueron rechazadas y eliminadas del registro de reclamaciones en
el marco de los procedimientos radicados conforme al Título III. Además, aproximadamente
46,230 reclamaciones han sido transferidas al proceso de Reconciliación de Reclamaciones
Administrativas para su resolución utilizando procesos administrativos habituales de los Deudores.

32.     Esta Sexcentésima quinta objeción global se radica de conformidad con los
Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

33.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en
virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §
502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye
una prueba *prima facie* de la validez de la reclamación, *véase* R. Fed. del Proc. de Quiebr. 3001(f),
aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar
dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones
esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d
367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st
Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya
introducido evidencias suficientes para refutar el caso prima facie del reclamante". (se omite cita)).

34.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los
Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las
bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de

Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

35.     Esta Sexcentésima quinta objeción global pretende suprimir parcialmente las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente"), cada una de las cuales se basa supuestamente, en parte, en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas; *b*) una participación patrimonial en bonos emitidos por la CFPPR o la AFICA, que no son Deudores de Título III, por unos montos por los que los Deudores no han garantizado el reembolso; *c*) en inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores; y/o *d*) reclamaciones por bonos basadas en unos bonos emitidos por la AFI, que han sido descargados conforme a la Orden de Confirmación del ELA y la MC de AFI. Además, otra parte de las responsabilidades alegadas en cada una de las evidencias de reclamaciones que aparecen en el **Anexo A** está vinculada con bonos de obligación general emitidos por el ELA, bonos que han sido tratados por el Plan y pagados conforme a sus propios términos, por lo que podrán ser eliminados conforme a los términos de la Orden de Confirmación del ELA. El resto de las responsabilidades alegadas en cada una de las evidencias de reclamaciones que figuran en el **Anexo A** alegan reclamaciones sobre la base de unos bonos emitidos por la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"); dichas reclamaciones deben reclasificarse porque lo correcto sería, si acaso, alegarlas contra la AEE. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

### A. Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos

36.   Según se expone en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por la AAA (conjuntamente, las "<u>Reclamaciones Parcialmente Duplicadas por Bonos</u>"). *Véanse, por ejemplo*, Reclamaciones núms. 66420 y 66382.

37.   Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende alegar, en parte, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la AAA (entre otras entidades). En la medida en que las Reclamaciones Parcialmente Duplicadas por Bonos pretenden alegar cualquier responsabilidad contra la ACT en relación con bonos emitidos por la AAA, los reclamantes no brindan ningún fundamento válido para alegar tal reclamación contra la ACT. Si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos de Título III.

38.   Los titulares de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

### B. Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos de la CFPPR o de la AFICA

39.   Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar

responsabilidades basadas en una supuesta participación patrimonial en Bonos de la CFPPR emitidos por la CFPPR (conjuntamente, las "Reclamaciones Parciales de los Bonistas de la CFPPR") o Bonos de la AFICA emitidos por la AFICA (conjuntamente, las "Reclamaciones Parciales de los Bonistas de la AFICA"). *Véanse, por ejemplo*, Reclamaciones núms. 4015 y 22175. Sin embargo, ni la CFPPR ni la AFICA son Deudores de Título III, y sus responsabilidades no están garantizadas por el ELA, la ACT ni por ningún otro de los Deudores.

40.     Cada una de las Reclamaciones Parciales de los Bonistas de la CFPPR pretende alegar, en parte, responsabilidades contra los Deudores vinculadas con los Bonos de la CFPPR que no están garantizados por el ELA, por la ACT ni por ninguno de los demás Deudores. La CFPPR no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores. *Véase*, por ejemplo, 3 L.P.R.A. § 9081(c) (que se refiere a la CFPPR como una "entidad jurídica independiente", separada del ELA).

41.     En cuanto a los bonos de la CFPPR, serie 2012A, alegados en cada una de las Reclamaciones Parciales de los Bonistas de la CFPPR, la declaración de oferta emitida en relación con dichos bonos señala expresamente que "[l]os Bonos de 2012, Serie A, no constituirán una obligación del ELA ni de ninguna de sus subdivisiones políticas o instrumentalidades públicas (salvo la Corporación), y ni el ELA ni ninguna de sus subdivisiones políticas o instrumentalidades públicas (salvo la Corporación) será responsable de su pago. La Corporación no tiene poder impositivo". *Véase* la Declaración de Oferta relativa a los Bonos de la CFPPR de 2012, Serie A, en 1.[4]

---

[4]     https://emma.msrb.org/ER602315-EA371499-EA768292.pdf

42.     El 12 de enero de 2023, la MC de la CFPPR entró en vigor y descargó los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFPPR, así como las reclamaciones relacionadas. [Caso Número 21-01493, ECF Número 80].

43.     Puesto que a los Deudores no se les puede atribuir la responsabilidad por las Reclamaciones Parciales de los Bonistas de la CFPPR, dichas reclamaciones deben rechazarse en su totalidad.

44.     En cuanto a las Reclamaciones Parciales de los Bonistas de la AFICA, esta última tampoco es un deudor de Título III, y además es una entidad separada y jurídicamente independiente de los Deudores. En lo que respecta a los Bonos 2000 Serie A del Proyecto Plaza Universitaria, la declaración de oferta emitida en relación con dichos bonos dispone que los bonos "no constituirán endeudamiento del ELA ni de ninguna de sus subdivisiones políticas o instrumentalidades, salvo la AFICA, por lo que ni el ELA ni ninguna de sus subdivisiones políticas o instrumentalidades, salvo la AFICA, será responsable de su pago". Véase, por ejemplo, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta de Refinanciamiento Turístico 2000 Serie A (Proyecto Plaza Universitaria), *disponible en* https://emma.msrb.org/MS174328-MS149636-MD288819.pdf.

45.     Puesto que a los Deudores no se les puede atribuir la responsabilidad por las Reclamaciones Parciales de los Bonistas de la AFICA, dichas reclamaciones deben rechazarse en su totalidad.

**C.    Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos**

46.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad basada parcialmente

en inversión(es) en uno o más fondos mutuos que, a su vez, pudo/pudieron haber invertido en bonos emitidos por los Deudores (conjuntamente, las "Reclamaciones Parciales de los Fondos Mutuos"). *Véase, por ejemplo,* Reclamación Número 22175.

47.      Los reclamantes tienen la carga de la prueba para demostrar legitimación a efectos de radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada "era" persona ajena en relación con el procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es

20

puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita In re

Refco, 505 F.3d en 115 n. 10)).

48.     "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamación contra

el deudor o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd.,

*Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las

Reclamaciones Parciales de Fondos Mutuos fueron radicadas en virtud de la condición del

reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones Parciales

de Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469

B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de

legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado

de un acreedor). En cambio, las Reclamaciones Parciales de Fondos Mutuos se derivan de las

reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal

examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se

concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla

general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe

si el fondo mutuo sigue reteniendo la propiedad de los bonos controvertidos.

49.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó

reclamaciones radicadas contra COFINA por unos inversores en los fondos mutuos que, a su vez,

invirtieron presuntamente en los bonos de COFINA, por "carecer de interés individual en los títulos

valores de COFINA". *Tr. del 13 de marzo de 2019 de la vist. ante su señoría, Laura Taylor Swain*

[ECF Número 5969], en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su

documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de

esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante

pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra

21

COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF Número 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283* [ECF Número 9121]. En consecuencia, los reclamantes no son acreedores de los Deudores y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que a los Deudores no se les puede atribuir la responsabilidad por las Reclamaciones Parciales de Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

### D. Ausencia de responsabilidad por las Reclamaciones de los Bonistas, liberadas por la Orden de Confirmación

50.    Conforme a lo expuesto en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los bonos emitidos la AFI (las "Reclamaciones Liberadas de los Bonistas"). *Véase, por ejemplo,* Reclamación Número 6264.

51.    Las Reclamaciones Liberadas de los Bonistas alegan responsabilidades contra los Deudores vinculados con varios Bonos de la AFI emitidos por la AFI. Las Reclamaciones alegadas contra el ELA basadas en cualquiera de los bonos emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT, la ADCC o la AFI, han sido liberadas en su totalidad en virtud del Plan, por lo que el ELA ya no es responsable por dichas reclamaciones. *Véase* Orden de Confirmación del ELA, ¶ 72 ("Las Reclamaciones alegadas contra los Deudores o los Deudores Reorganizados, emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT, la

ADCC, la AFI o la MBA se concederán (en la medida en que se concedan) como Reclamación que surgió antes de la Fecha de Petición, y se clasificarán en las Clases 59 a 62 (salvo las Reclamaciones por Bonos Concedidas del SRE, en la medida en que sean garantizadas) y, por medio de la presente, quedan liberadas, por lo que los Deudores y los Deudores Reorganizados ya no son responsables por dichas Reclamaciones").

52.     Asimismo, el 15 de marzo de 2022 entró en vigencia la MC de la AFI, que descargó, entre otros, los Bonos relativos a rentas de impuestos especiales emitidos por PRIFA.   [Caso Número 21-01492, ECF No. 84].   Debido a que los Deudores no pueden ser considerados responsables de los Reclamaciones Liberadas de los Bonistas de conformidad con PRIFA QM, estos reclamos deben rechazarse en su totalidad.

53.     En la medida en que las Reclamaciones Liberadas de los Bonistas pretenden alegar cualquier responsabilidad contra la ACT en relación con bonos emitidos por la AFI, los reclamantes no brindan ningún fundamento válido para alegar tal reclamación contra la AFI.

54.     Si las Reclamaciones Liberadas de los Bonistas no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación no justificada contra el ELA en detrimento de otras partes interesadas en los Casos de Título III de los Deudores.

**E.  Reclamaciones por bonos parcialmente reclasificadas**

55.     Por último, parte de algunas de las Reclamaciones que han de ser rechazadas parcialmente identifica a la ACT como deudor, cuando en todo caso lo correcto sería que dicha parte se alegara contra la AEE, y parece alegar responsabilidad, en parte, sobre la base de bonos emitidos por la AEE (conjuntamente, las "Reclamaciones por Bonos Parcialmente Reclasificadas"). *Véase, por ejemplo,* Reclamación Número 6264.

56.     En cada una de las Reclamaciones por Bonos Parcialmente Reclasificadas el reclamante parece pretender alegar, en parte, responsabilidades vinculadas con bono(s)

municipal(es), sin embargo la evidencia de reclamación, la documentación justificativa proporcionada por el reclamante y/o la información CUSIP muestran que en todo caso lo correcto sería alegar las responsabilidades vinculadas con las Reclamaciones por Bonos Parcialmente Reclasificadas contra la AEE. En consecuencia, las Reclamaciones por Bonos Parcialmente Reclasificadas deben reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la columna titulada "Corregidas" en el **Anexo A** del presente documento. Los Deudores se reservan el derecho a objetar a cualquiera de las partes de las Reclamaciones por Bonos Parcialmente Reclasificadas sobre cualquier otro motivo que fuere.[5]

57.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Sexcentésima quinta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones por bonos parcialmente duplicadas, en las que no existe responsabilidad y radicadas contra el deudor incorrecto*, de fecha 18 de agosto de 2023, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

58.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Sexcentésima quinta objeción global a) a los acreedores individuales objeto de esta Sexcentésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados Número 17* [ECF Número 24726-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.ra.kroll.com/puertorico. La

---

[5] Determinadas Reclamaciones que han de ser rechazadas parcialmente también alegan Reclamaciones por Bonos (según la definición contenida en el Plan). Conforme a la sección 82.1 del Plan, dichas Reclamaciones por Bonos se consideran satisfechas y eliminadas. La Junta de Supervisión dará instrucciones a Kroll para que retire las partes restantes de las Reclamaciones que han de ser rechazadas parcialmente.

notificación de esta Sexcentésima quinta objeción global se adjunta al presente como **Anexo C**.

Las traducciones al español de la Sexcentésima quinta objeción global y de la totalidad de los

anexos que se adjuntan al presente se radican y envían con la presente objeción. Los Deudores

sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra

notificación.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 18 de agosto de 2023
　　　　San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC Número 215205
Carla García-Benítez
USDC Número 203708
Gabriel A. Miranda
USDC Número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera., local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*